**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STANDING ROCK SIOUX TRIBE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **Case No. 1:16-CV-01534** |
| U.S. ARMY CORPS OF ENGINEERS | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**DAKOTA ACCESS, LLC'S
MEMORANDUM IN SUPPORT OF UNOPPOSED
MOTION TO INTERVENE IN SUPPORT OF DEFENDANTS**

Kimberly H. Caine, DCBA #974926
William J. Leone, CSBA #11403
*(Pro Hac Vice Application Pending)*
Robert D. Comer, CSBA #16810
*(Pro Hac Vice Application Pending)*
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC  20001-4501
202-662-0200
kim.caine@nortonrosefulbright.com
william.leone@nortonrosefulbright.com
bob.comer@nortonrosefulbright.com


Edward V. A. Kussy, DCBA #982417
Alan M. Glen, Texas SBN #08250100
*(Pro Hac Vice Application Pending)*
Nossaman LLP
1666 K Street, NW, Suite 500
Washington, DC 20006
202-887-1400
ekussy@nossaman.com
aglen@nossaman.com

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

FACTUAL BACKGROUND................................................................................................... 2

ARGUMENT ........................................................................................................................... 4

    I.     DAKOTA ACCESS IS ENTITLED TO INTERVENE AS OF RIGHT. ........................... 4

       A.     This Motion is Timely. ...................................................................................... 5

       B.     Dakota Access has Legally Protected Interests at Stake. ............................................. 6

       C.     The Disposition of This Case Will Affect the Ability of Dakota Access to Protect Its Interests. ....................................................................................................................... 8

       D.     The Federal Defendants Do Not Adequately Represent Dakota Access' Interests....... 9

    II.     ALTERNATIVELY, DAKOTA ACCESS SHOULD BE PERMITTED TO INTERVENE UNDER RULE 24(b)(1)(B). ........................................................................... 10

CONCLUSION...................................................................................................................... 12

## <u>INTRODUCTION</u>

Dakota Access, LLC ("Dakota Access") respectfully submits this memorandum in support of its Unopposed Motion to Intervene ("Motion") as of right pursuant to Federal Rule of Civil Procedure 24(a)(2), or alternatively, to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b)(1)(B) as a defendant in this proceeding.  Before filing this Motion, counsel for Dakota Access contacted counsel for Plaintiff and the U.S. Army Corps of Engineers ("Corps").  Counsel for Plaintiff advised that the Plaintiff does not oppose this Motion.  Counsel for Corps also advised that it does not oppose this Motion.

Plaintiff, Standing Rock Sioux Tribe has filed with this Court its Complaint for Declaratory and Injunctive Relief against Defendant, the U.S. Army Corps of Engineers. Plaintiff has also filed a Motion for Preliminary Injunction.  Plaintiff alleges violations of The National Environmental Policy Act ("NEPA"), the Clean Water Act ("CWA"), the Rivers and Harbors Act ("RHA"), and the National Historic Preservation Act ("NHPA") with regard to federal authorizations or other actions or processes related to the Dakota Access Pipeline ("DAPL").  Among other requests, Plaintiff seeks declaratory relief regarding alleged violations of these laws and seeks to vacate Nationwide Permit 12 ("NWP 12") entirely and specifically as verified by the Corps to apply to DAPL, and to vacate federal authorizations, processes and verifications related to DAPL, including the final Environmental Assessments ("EA") and Findings of No Significant Impact ("FONSI") issued by the Corps.  The claims alleged and relief sought by Plaintiff will have significant impacts on the construction of DAPL and its operation. Dakota Access respectfully requests that this Court expeditiously grant this unopposed Motion to allow Dakota Access to participate in this litigation.

As the owner and holder of the federal permits, authorizations, and verifications for DAPL, Dakota Access has a direct stake in this litigation and would be significantly harmed if

the relief requested by Plaintiff were to be granted by this Court.  As such, Dakota Access is entitled to intervene as of right because (1) this Motion is timely; (2) Dakota Access has sufficient interests in this litigation because Plaintiff challenges the various federal permits, authorizations and verifications for DAPL; (3) the disposition of this case could impair Dakota Access' interests, including its ability to construct and operate DAPL; and (4) the Corps does not adequately represent Dakota Access' interests in this case.  *See Funds for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  Alternatively, permissive intervention is also proper under Rule 24(b).

For the foregoing reasons, and as set forth more fully below, Dakota Access' Unopposed Motion to Intervene should be granted.

## FACTUAL BACKGROUND

Dakota Access[1] is a limited liability company formed to construct and own DAPL.  In that capacity it has applied for, received, and holds various federal authorizations and verifications.  DAPL is an approximately 1,170 mile oil pipeline that will safely deliver crude oil from near Stanley, North Dakota to tank farms in Patoka, Illinois, and is co-located with industrial infrastructure along much of its route.  As provided in the attached declaration of Joey Mahmoud, Senior Vice President of Energy Transfer Partners, L.P. ( Attachment A, "Mahmoud Decl."), DAPL has an estimated capital cost of approximately $3.8 billion with an in-service date of January 1, 2017.  Mahmoud Decl. at ¶¶ 4-5.

DAPL will help meet the energy demands of the United States.  *Id.* at ¶ 4.  It will transport approximately 450,000 barrels of oil per day with a capacity as high as 570,000 barrels of oil per day.  *Id.* at ¶ 4.  DAPL is estimated to generate substantial state and local revenue

---

[1] Energy Transfer Partners, L.P., Sunoco Logistics Partners, L.P. and Phillips 66 are the beneficial owners of Dakota Access.

during construction, and an estimated $156 million in sales and income taxes.  *Id.* at ¶ 6.  DAPL is also estimated to generate $55 million annually in property taxes for the states of North Dakota, South Dakota, Iowa and Illinois.  *Id.* at ¶ 7.  Dakota Access' beneficial owners also have financial interests in downstream operations as well as contractual obligations and rights that will be affected if DAPL is stopped or delayed.  *Id*. at ¶ 9.

In comparison to its scope, DAPL crosses a nominal amount of Corps project lands and is not a federally funded project.  *Id.* at ¶ 10.  Pursuant to the National Environmental Policy Act, two Environmental Assessments ("EA") were prepared to evaluate the potential environmental effects of DAPL related to Corps actions pertaining to two of its projects.  The Corps' final EA and FONSI for the Omaha District were issued on July 25, 2016 and the St. Louis District is expected to issue an EA and FONSI shortly.  *Id.* at ¶ 11.  The Omaha District EA and FONSI concluded that there were no significant environmental impacts and that preparation of an Environmental Impact Statement ("EIS") was not warranted.  *Id.* at ¶ 12.  With the issuance of the final EA and FONSI, the Corps issued authorizations pursuant to § 408 of the RHA to cross these limited Corps project lands managed by the Omaha District office.  The Corps is expected to issue authorizations pursuant to § 408 of the RHA to cross limited Corps project lands managed by the St. Louis District office.  *Id.* at ¶13.  The Corps also issued Nationwide Permit 12 verifications pursuant to the Clean Water Act for DAPL to cross jurisdictional waters of the United States. *Id.* at ¶ 14.

The U.S. Fish and Wildlife Service ("FWS") also conducted NEPA review of potential DAPL effects across certain private lands over which FWS holds non-exclusive grassland and

conservation easements.[2]  FWS's final EA and FONSI were issued on June 22, 2016.  *Id.* at ¶ 15.

Like the Corps EAs, FWS found no significant impacts and concluded that an EIS was not

warranted.  *Id.* at ¶15.

## ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure allows parties, upon timely application,

to intervene as of right or permissively.  In determining whether intervention under Rule 24 is

appropriate, a court should accept as true the applicant's non-conclusory allegations.  *See*

*Wildearth Guardians v. Salazar,* 272 F.R.D. 4, 9 (D.D.C. 2010).  For the reasons set forth below,

Dakota Access should be allowed to intervene under Rule 24 as of right, or, alternatively,

permissibly, in order to defend the federal processes related to DAPL.

## I.      DAKOTA ACCESS IS ENTITLED TO INTERVENE AS OF RIGHT.

Dakota Access is entitled to intervene as of right to defend its interests in DAPL.  Rule

24(a)(2) provides, in pertinent part, that "[o]n timely motion, the court must permit anyone to

intervene who . . . claims an interest relating to the property or transaction that is the subject of

the action, and is so situated that disposing of the action may as a practical matter impair or

impede the movant's ability to protect its interest, unless the existing parties adequately represent

that interest."  Fed. R. Civ. P. 24(a)(2).[3]

---

[2] Although Dakota Access voluntarily participated in the FWS exercise, Dakota Access does not
believe that FWS has regulatory jurisdiction over these non-exclusive easements.

[3] The D.C. Circuit has held that a party seeking to intervene as of right as a defendant must
also satisfy the basic standing requirements of Article III of the Constitution.  *Fund for
Animals Inc.*, 322 F.3d at 732-33.  The D.C. Circuit explained that "any person who satisfies
Rule 24(a) will also meet Article III's standing requirement."  *Roeder v. Islamic Republic of
Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).  Therefore, to the extent that a separate standing
inquiry is relevant here, Dakota Access' satisfaction of Rule 24(a)'s requirements for
intervention establishes its standing under Article III.

It is well established that "qualification for intervention as of right depends on the following four factors: (1) timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (internal quotation marks and citations omitted).   Dakota Access easily satisfies these requirements.

### A.     This Motion is Timely.

The first requirement for intervention as of right is that the motion to intervene be timely. "Whether a motion to intervene is timely made is 'to be determined from all the circumstances, including the purpose for which intervention is sought … and the improbability of prejudice to those already in the case.'" *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (quoting *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 907 (D.C. Cir. 1977)) ("NRDC") (citing *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 129 (D.C. Cir. 1972)). Generally, a motion to intervene is found to be timely when it is brought at the early stages of the litigation. S*ee, e.g.*, *Fund for Animals*, 322 F.3d at 735 (motion timely when made "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer"); *Navistar, Inc. v. Jackson*, 840 F. Supp. 2d 357, 361 (D.D.C. 2012) (motion timely when filed "less than two weeks after Defendants filed their responsive pleadings, and before any discovery or substantive process had been made in the case"); *Wildearth Guardians v. Salazar*, 272 F.R.D. at 15  (motion timely when "the administrative record is yet to be filed with the Court and no briefing schedule for dispositive motions has been set").

In this case, the initial complaint was filed on July 27, 2016, and the Motion for Preliminary Injunction was filed on August 4, 2016. Federal Defendant has yet to file its Answer. No other substantive or procedural motions have been filed by either party. Therefore, Dakota Access has promptly acted to file its intervention in this matter. Intervention at this early stage would not cause any prejudice to the existing parties. Therefore, this motion is timely.

### B.    Dakota Access has Legally Protected Interests at Stake.

The second requirement for intervention of right is that the intervenor must demonstrate "an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). To demonstrate a sufficient "interest" in this litigation, prospective intervenors must show a "direct and concrete interest that is accorded some degree of legal protection." *Diamond v. Charles*, 476 U.S. 54, 75 (1986). Courts apply a "liberal approach" in evaluating a proposed intervenor's interest under Rule 24(a). *S. Utah Wilderness v. Norton,* No. 01-2518, 2002 WL 32617198, *5 (D.D.C. June 28, 2002). "The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967); *see also NRDC,* 561 F.2d at 910-11.

As the owner and holder of the federal permits, authorizations, and verifications and approvals for DAPL, Dakota Access has a direct stake in this litigation and would be significantly harmed if the relief requested by Plaintiff were to be granted by this Court. A parent company of Dakota Access also owns the operator of DAPL. Mahmoud Decl. at ¶ 9. "An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit." *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981); *see also Fund for Animals*, 322 F.3d at 735 (recognizing intervenor's interest in the property that was the subject of the action); *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1291-93 (D.C. Cir. 1980)

(intervenor who created database documents possessed a sufficient interest in a claim over a discovery request that the government produce the documents).

In addition, economic or financial interests are typically sufficient bases for intervention. *See, e.g., Dimond v. Dist. of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (recognizing prospective intervenor's "financial interest" in the litigation); *Navistar*, 840 F. Supp. at 361 (recognizing intervenor's interest as the manufacturer and seller of engines plaintiff sought to have government agency recall); *County of San Miguel, Colorado v. MacDonald*, 244 F.R.D. 36, 47 (D.D.C. 2007) (recognizing intervenors' members' economic interest in lands that were the subject of the litigation for their business operations); *Wildearth Guardians*, 272 F.R.D. at 14 (recognizing intervenor's interest in bidding on coal mining leases that would be used to extend intervenor's business operations); *S. Utah Wilderness*, 2002 WL at *5 (recognizing lessee's interest in litigation seeking to invalidate the government's issuance of mineral leases for failing to comply with environmental laws).

Dakota Access has substantial, protectable interests in DAPL.  First, Dakota Access has a $3.8 billion economic interest in completing DAPL, not including lost profits. Mahmoud Decl. at ¶ 5.  To date, Dakota Access has invested approximately $1.5 billion in the development of DAPL, and it plans to spend another approximately $2.3 billion to complete the pipeline.  *Id.* at ¶5.  Second, Dakota Access has made contractual commitments to customers to transport crude oil through the pipeline within certain timeframes.  *Id.* at ¶ 8.  Plaintiff's unfounded action could delay DAPL's construction and, as a result, put those investments and commitments at risk.

Moreover, federal district courts have granted intervention in cases directly analogous to this proceeding – to permit the sponsor of a proposed oil pipeline to defend against challenges to the validity of the Corps' permitting decisions regarding the project.  *See Sierra Club v. U.S.*

*Army Corps of Engineers,* Docket No. 1:13cv1239 (D.D.C. Sept. 5, 2013) ("MINUTE ORDER granting 16 Unopposed Motion to Intervene in Support of Defendants"); *Sierra Club v. Bostick*, Docket No. 5:12-cv-00742-R (W.D. Okla. July 23, 2012) ("Order Granting Motion to Intervene"); *Sierra Club v. Clinton,* Docket No. 09-CV-4086 (N.D. Cal. Sept. 21, 2004) ("Order Granting Enbridge Energy, LP's Unopposed Motion to Intervene").

> **C.   The Disposition of This Case Will Affect the Ability of Dakota Access to Protect Its Interests.**

In analyzing whether a prospective intervenor's ability to protect its interests in litigation may be impaired, courts must "look to the practical consequences of denying intervention." *NRDC*, 561 F.2d at 909 (internal quotation marks omitted).

Plaintiff's suit gravely threatens Dakota Access' interests.  Plaintiff seeks to invalidate the federal authorizations, permits and verifications that allow the construction of DAPL to proceed.  If granted, such relief would, at minimum, cause substantial delay in the completion of the project, thus impairing Dakota Access' ability to recover its investments and perform its contractual obligations to transport oil for the benefit of producers, shippers, and purchasers. *County of San Miguel*, 244 F.R.D. at 47 (showing an "imminent threat of lost earnings" in actions challenging agency determination is sufficient to show a threat of impairment); *see also Fund for Animals*, 322 F.3d at 736 (finding impairment because the intervenor's "loss of revenues during any interim period would be substantial and likely irreparable"); *Wildearth Guardians,* 272 F.R.D. at 15 (finding impairment where the "action may have the practical consequence of threatening [intervenor's] ability to remain competitive in the national coal market" (internal quotations omitted)).

Here, if Plaintiff is successful in challenging the Corps' authorizations, permits and verifications regarding DAPL, the process to regain federal approval will be costly and risk

delaying DAPL's operation.   Therefore, at the very least, Dakota Access' interests will be substantially impaired because reestablishing the status quo will be time-consuming and unduly burdensome.[4]

> **D.     The Federal Defendants Do Not Adequately Represent Dakota Access' Interests.**

The final element for intervention "requires that the [applicants] show that their interests are not adequately represented by the existing parties." *Foster v. Gueory,* 655 F.2d 1319, 1325 (D.C. Cir. 1981).  "This burden is minimal and is met if appellants show that representation of their interests 'may' be inadequate."   *Id.*; *see also NRDC,* 79 F.R.D. at 239 ("the proposed intervenors need only show that the representation of their interests by the other parties may be inadequate, and this burden is a minimal one") (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 527, 538 n.10 (1972)).   And a prospective intervenor's "interest need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse*, 385 F.2d at 703.

Courts often have concluded that "governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc.* 322 F.3d at 736, n.9 (collecting cases); *Dimond v. Dist. Of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (noting that the government-defendant "would face a potential conflict of interest were it to represent both the general interests of its citizens and the financial interests of [the proposed intervenor]"); *County of San Miguel,* 244 F.R.D. at 48 (contrasting FWS's obligation of representing the general public with

---

[4] *See Fund for Animals, Inc.*, 322 F.3d at 735 (finding impairment even though the intervenor would have an opportunity to 'reestablish[] the status quo" following the litigation, because reestablishment would be "difficult and burdensome"); *Navistar,* 840 F. Supp. 2d at 362 (D.D.C. (finding impairment because "[a] decision in favor of the plaintiff in this case would, at a minimum, force the movants to contest the [agency's] determination that their engines do not confirm to emissions standards").

intervenors' interests to protect their livelihoods and business operations); *Navistar*, 840 F. Supp. at 362 (finding the federal agency was "unlikely to, and arguably should not, afford the movant's 'discrete and particularized interests the same primacy' as movants would themselves" (quoting *Wildearth Guardians v. Salazar,* 272 F.R.D. at 15)); *NRDC*, 561 F.2d at 912 (finding the intervenors' interest "more narrow and focused than [the government party], being concerned primarily with the regulation that effects their industries").

Here, the Corps cannot adequately represent Dakota Access because it will necessarily pursue a broader set of interests than Dakota Access' specific interests in constructing and operating the DAPL Pipeline. The Corps administers permitting programs on behalf of the public at large and must make certain public interest determinations. In contrast, Dakota Access' private financial interests are focused on Dakota Access' specific business interests in completing and operating DAPL pursuant to applicable law. Furthermore, the Corps would suffer minimal economic harm from an adverse decision, while the harm to Dakota Access from an adverse decision would be potentially enormous. Intervention is warranted.

Thus, intervention as of right is warranted.

## II.   ALTERNATIVELY, DAKOTA ACCESS SHOULD BE PERMITTED TO INTERVENE UNDER RULE 24(b)(1)(B).

Alternatively, Dakota Access seeks permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1)(B), which allows this Court to permit intervention if a movant has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "[P]ermissive intervention is an inherently discretionary enterprise." *Aristotle Intern., Inc. v. NGP Software, Inc.*, 714 F. Supp. 2d 1, 18 (D.C. Cir. 2010) (quoting *E.E.O.C. v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)). Rule 24 is construed "liberally" in

favor of potential intervenors.  *In re Vitamins Antitrust Litigation*, 2001 WL 34088808, *3 (D.D.C. 2001).

Dakota Access' arguments in this action share common questions of law and fact with Plaintiff's action.  Permissive intervention is warranted when there is a possibility that resolution of the main action will affect the movant's rights.  *Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1235 (D.C. Cir. 2004).   Here, as explained above, Dakota Access has a direct and substantial interest in defending against Plaintiff's legal claims.  Were the relief requested by Plaintiff granted—such as enjoining the Corps from finding NWP 12 applicable to DAPL— Dakota Access would suffer significant financial harm from the resultant delay, including but not limited to: contract penalties, pipe storage costs, and lost revenue.  Mahmoud Decl. at ¶ 16.  In light of Rule 24(b)'s low threshold, these potential harms to Dakota Access's interests establish grounds for intervention.

Further, this Motion to Intervene is timely as it is filed prior to Defendants filing its Answer, and would not "unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Thus, permissive intervention also is warranted.

## **CONCLUSION**

For the foregoing reasons, Dakota Access asks this Court to grant its Motion to Intervene as of right, or alternatively, permissively.

Respectfully submitted this 5th day of August, 2016.


/s/ Kimberly H. Caine
Kimberly H. Caine, DCBA #974926
William J. Leone, CSBA #11403
*(Pro Hac Vice Application Pending)*
Robert D. Comer, CSBA #16810
*(Pro Hac Vice Application Pending)*
Norton Rose Fulbright US LLP
799 9th Street NW, Suite 1000
Washington, DC  20001-4501
202-662-0200
kim.caine@nortonrosefulbright.com
william.leone@nortonrosefulbright.com
bob.comer@nortonrosefulbright.com


Edward V. A. Kussy, DCBA #982417
Alan M. Glen, Texas SBN #08250100
*(Pro Hac Vice Application Pending)*
Nossaman LLP
1666 K Street, NW, Suite 500
Washington, DC 20006
202-887-1400
ekussy@nossaman.com
aglen@nossaman.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5ᵗʰ day of August, 2016, I served a true and correct copy to the

following via ECF filing and/or email:

        Patti A. Goldman
        Earthjustice
        705 Second Avenue, Suite 203
        Seattle, WA  98104

        Jan Hasselman
        Earthjustice
        705 Second Avenue, Suite 203
        Seattle, WA  98104
        *Admitted Pro Hac Vice*

        Stephanie Tsosie
        Earthjustice
        705 Second Avenue, Suite 203
        Seattle, WA  98104
        *Admitted Pro Hac Vice*

        *Attorneys for Plaintiff*

I further certify that on August 5, 2016, true and correct copies were served on the

following, via Federal Express overnight delivery:

Office of the Attorney for the District of    U.S. Army Corps of Engineers
Columbia    441 G Street NW
441 Fourth Street NW    Washington, DC 20314-1000
Washington, DC 20001

U.S. Attorney's Office    Office of the Attorney General
Attn: Civil Process Clerk    1350 Pennsylvania Avenue NW, Suite 409
555 Fourth Street NW    Washington, DC 20004
Washington, DC 20530

A courtesy copy via email was sent to Michael Thorp, counsel for U.S. Department of Justice
Environment and Natural Resources Division, michael.thorp@usdoj.gov.

        */s/Cecil A. Kennedy*
        Cecil A. Kennedy