# ATTACHMENT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE § § Plaintiff, § § v. § § U.S. ARMY CORPS OF ENGINEERS § § Defendant. § § § § | Case No. 1:16-CV-01534 |

DECLARATION OF JOEY MAHMOUD
IN SUPPORT OF DAKOTA ACCESS, LLC'S
UNOPPOSED MOTION TO INTERVENE
PURSUANT TO 28 U.S.C. § 1746

1. My name is Joey Mahmoud. I am over 21 years of age, of sound mind, and duly qualified to make this declaration. I make this declaration based upon my personal knowledge, including without limitation, (i) my personal involvement with the business dealings of Dakota Access, LLC ("Dakota Access") and the Dakota Access Pipeline ("DAPL"); (ii) my personal involvement in the application, authorization, verification, and other permitting procedures that DAPL was subject to and that are the subject of this litigation; and (iii) my position as Vice President of Engineering of Dakota Access, LLC and Senior Vice President of Engineering of Energy Transfer Partners, L.P., a beneficial owner of Dakota Access.

2. I received a Bachelor's of Science in Animal Science from Texas A&M University in 1993 and a Masters of Agriculture in Rangeland Ecology and Management (Ecosystem Management) with an emphasis in Rangeland and Wetland Ecology Management from Texas A&M University in 1996. My professional experience is centered on the transportation and logistics of moving energy related products across the United States and project management. Throughout my career, my emphasis has been in project management and execution, and leadership of projects for successful execution and deployment of development capital into energy infrastructure projects.

3. Dakota Access is a limited liability company formed to construct and own DAPL. In that capacity it has applied for, received, and holds various federal permits, authorizations and verifications needed for the Project.

4. DAPL is a 1,170 mile oil pipeline that will safely deliver Bakken crude oil from near Stanley, North Dakota to tank firms in Patoka, Illinois, and is co-located with industrial

infrastructure along much of its route. DAPL will transport approximately 450,000 barrels of oil per day with a capacity as high as 570,000 barrels of oil per day.

5. DAPL has an estimated capital cost of approximately $3.8 billion with an in-service date of January 1, 2017. To date, Dakota Access has invested approximately 1.5 billion in the development of DAPL to date and it plans to spend another approximately $2.3 billion to complete the pipeline.

6. DAPL will generate substantial state and local revenue during construction, estimated at $156 million in sales and income taxes.

7. DAPL is also estimated to generate $55 million annually in property taxes for the states of North Dakota, South Dakota, Iowa and Illinois.

8. Dakota Access has made contractual commitments to customers to transport crude oil through the pipeline within certain timeframes.

9. Energy Transfer Partners, L.P., Sunoco Logistics Partners, L.P. and Philips 66 are the beneficial owners of Dakota Access. Dakota Access' beneficial owners also have financial interests in downstream operations as well as contractual obligations and rights that will be affected if DAPL is stopped or delayed.

10. Given the scope of DAPL, it crosses a nominal amount of land owned or managed as part of U.S. Army Corps of Engineers ("Corps") projects. DAPL is not a federally funded project.

11. Pursuant to the National Environmental Policy Act, two Environmental Assessments ("EA") were prepared to evaluate the potential environmental effects of DAPL related to Corps actions pertaining to two of its projects. The Omaha District of Corps issued a final EA and FONSI on July 25, 2016 and the St. Louis District is expected to issue an EA and FONSI shortly.

12. The EAs and FONSIs concluded that there were no significant environmental impacts sufficient to warrant preparation of an Environmental Impact Statement ("EIS").

13. With the issuance of the final EAs and FONSIs, the Corps issued authorizations pursuant to § 408 of the Rivers and Harbors Act for DAPL to cross certain Corps project lands managed by the Omaha and St. Louis Corps Districts.

14. The Corps also issued Nationwide Permit 12 verifications pursuant to the Clean Water Act for DAPL to cross jurisdictional waters of the United States.

15. The U.S. Fish and Wildlife Service ("FWS") also conducted NEPA review of potential DAPL effects across certain private lands over which FWS holds non-exclusive grassland and conservation easements. FWS's final EA and FONSI were issued on June 22, 2016. Like the Corps EAs, FWS found no significant impacts and concluded that an EIS is not warranted.

- 3 -

16. Dakota Access would suffer significant financial harm from any delay caused by this litigation, including but not limited to: contract penalties, pipe storage costs, and permanently lost revenue.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2016.

By: Joey Mahmoud