Case No. 1:16-cv-1534-JEB

# CHEYENNE RIVER SIOUX TRIBE

# EXHIBIT 3

Case No. 1:16-cv-1534-JEB

Mnicoujou                    Itazipco          **CHEYENNE RIVER SIOUX TRIBE**
                                                       Cultural Preservation Office
PO BOX 590 98 S. Willow St.
                                                       Eagle Butte, South Dakota 57625
                                                       Telephone: (605) 964-7554
                                                       Fax: (605) 964-7552

                                               **Steven Vance**
                                               **Tribal Historic Preservation Officer**
                                               *stevev.crstpres@outlook.com*

Siha Sapa                    Oohenumpa

Date: July 6, 2016

Meg Van Ness
Regional Historic Preservation Officer
US Department of the Interior, Fish and Wildlife Service
Mountain-Prairie Region
PO Box 25486
Denver Federal Center
Denver, Colorado 80225-0486

The Cheyenne River Sioux Tribe (CRST) response to US Fish and Wildlife on comments and recommendation to the proposed Dakota Access Pipeline (DAPL) project.

This is response to information received on June 28, 2016 from the US Fish and Wildlife Service (USFWS) responding to the Advisory Council on Historic Preservation (ACHP).

First and foremost is the manner in which Section 106 Consultation has been conducted with CRST. I have submitted letters to both US Army Corp of Engineers (USACE), the lead federal agency, and USFWS that consultation has not properly initiated with CRST. USFWS and USACE must not coordinate Tribal concerns with each other as again I am submitting repeated issues. In a meeting with Tribes at Niobrara, Nebraska Colonel John Henderson stated that "official consultation started September 2015". This is incorrect.

On December 8, 2015 USACE called a meeting in Sioux Falls, SD and this, according to USACE, was during their "comment resolution period". At this meeting a single paper was on the table for Tribes, an agenda. No project information of studies or surveys conducted, no maps, just the agenda. USACE stated that a "link" was sent to Tribes by email to access reports for DAPL. Tribes informed USACE and DAPL staff that they could not access the link and USACE stated the same issue. DAPL informed the Tribes present that they would provide the information in the afternoon on a jump drive. DAPL would also send hard copies in the mail later. Because of this the Tribes did not stay for the second day that was scheduled. USFWS was not present at this meeting.

USACE called another meeting in Sioux Falls only nineteen (19) days after the first meeting. The information was massive as it covered Class III Cultural Resource Reports of the four states North Dakota, South Dakota, Iowa, and Illinois.

A thirty (30), day response period is stated in Section 106 for review of reports or information of projects. As I had not yet completed my review of the information I did not attend the second meeting.

So the only meeting that had any discussion of consultation with CRST could be the meeting in Nebraska. It was at this meeting CRST invited both USACE and USFWS to meet with CRST Tribal Council for government to government consultation. Colonel Henderson accepted. CRST Tribal Council has yet to meet with USACE and USFWS. This meeting in Nebraska was the first face to face discussions with CRST and USFWS.

The basic steps of Section 106 is consultation, identification, evaluation, determination, and affects to eligible resources by avoidance, minimization, or mitigation. USFWS may feel 106 was conducted because of the reports submitted by several archaeological firms. Nowhere in this proposed project has CRST participated in identification of cultural resources, property of spiritual significance, Sacred sites, or traditional cultural property.

CRST does not deemed either of these two (2) meetings as meaningful consultation "with the interest of Tribes in mind", or "a good faith effort" by both USACE and USFWS.

CRST disagrees with USFWS determination of "No Adverse Effect" for the proposed DAPL project.

The proposed DAPL project is deemed a federal action as " a project, activity, or program in whole or in part under the direct or indirect jurisdiction of a Federal agency". However limited USFWS views there involvement in the entire proposed route, the determination should reflect the whole proposed route.

This brings up the nest issue of identification of cultural resources or sites. CRST has not requested any site visits or other identification of sites due to the fact that consultation is still in the informational phase. USACE and USFWS may feel offering other Tribes opportunity to identify sites and feel this portion concluded but not for CRST.

Identification of sites within the area of potential effect must completed prior to issuing a determination of effects. CRST has not identified sites within the APE until there is face-to-face government-to government consultation with Tribal Council. Also prior to any issuance of a permit by USACE or USFWS Section 106 must be concluded.

USFWS stated that "No information concerning cultural resources specifically on Service easement lands was provided during consultation. There was no response to the Service letter of findings that was provided to the tribal representatives on April 20, 2016".

CRST responds to this is, where has USFWS been since April 2015? Although I sent USFWS comments to the proposed DAPL on October 29, 2015, USFWS has only met with the CRST THPO once and that was in Nebraska on February 18 and 19, 2016. Although USACE consulted with the Standing Rock Sioux Tribal Council and responded to their concerns it does not mean USACE or USFWS consulted with CRST.

CRST concurs with the ACHPs letter May 20, 2016 that the effect finding by USFWS is premature.

CRST recommends the involvement of US Environmental Agency (EPA), for the proposed DAPL project as to the present and future of air and water quality standards.

Under the US Constitution, treaties are part of the supreme law of the land, with the same legal force as federal statutes. The proposed DAPL falls within treaty territory for several tribes and the effects from leaks and spills will contaminate water and air quality. The right to hunt and fish are also part of treaty. Treaty words such as "the land and its resources" needs to be defined by USFWS. The Supreme Court explains that treaties between the US government and Indian tribes should be construed liberally in favor of tribes, giving effect to the treaty terms as tribes would have understood them, with ambiguous provisions interpreted for their benefit.

In 2010 President Barack Obama announced US support for the United Nations Declaration on the Rights of Indigenous Peoples (UNDRIP).

ACHP endorsed the UNDRIP in 2013 with a statement "This is an opportunity to promote stewardship and protection of Native historic properties and sacred places, and in doing so helps to ensure survival of indigenous cultures. The Declaration reinforces the agency's principles and goals contained in our Native American Traditional Cultural Landscapes Action Plan and other works with Native Hawaiian organizations and tribes".

Article 32 of the Declaration states;

1. Indigenous peoples have the right to determine and develop priorities and strategies for the development or use of their lands or territories and other resources.

2. States shall consult and cooperate in good faith with indigenous peoples concerned through their own representative institutions in order to obtain their free and informed consent prior to the approval of any project affecting their lands or territories and other resources, particularly in connection with the development, utilization or exploration of mineral, water or other resources.

3. States shall provide effective mechanisms for just and fair redress for any such activities, and appropriate measures shall be taken to mitigate adverse environmental, economic, social, cultural or spiritual impact.

As a Native of this continent who can establish association to cultural history and resources that will be effected from DAPL, CRST maintains the working relationship with the US government and its agencies for compliance with the Section 106 process.

CRST again objects to the identification, evaluation, and determination of Native sites by contract archaeologists and USFWS.