# EXHIBIT 1

*Standing Rock Sioux Tribe v. United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB)
United States Army Corps of Engineers' Opposition to Plaintiff's Motion for Preliminary Injunction



**DEPARTMENT OF THE ARMY**
U.S. ARMY CORPS OF ENGINEERS
441 G STREET NW
WASHINGTON, D.C. 20314-1000

CECW-CO

JAN 0 6 2009

MEMORANDUM FOR REGULATORY CHIEFS

SUBJECT: Headquarters Regulatory Community of Practice Guidance on the Continued Use and Applicability of 33 CFR 325, Appendix C

1. Purpose: To provide clear guidance with respect to the applicability and implementation of 33 CFR 325, Appendix C – Procedures for the Protection of Historic Properties, within the Context of the Regulatory Program.

2. Background:

    a. The Corps of Engineers Regulatory Program's implementing procedures for the protection of historic properties can be found at 33 CFR 325, Appendix C. These regulations are further supplemented by Interim Guidance, dated 25 April 2005 and 31 January 2007. Appendix C remains in full force and effect as the regulation governing Corps compliance with Section 106 of the National Historic Preservation Act vis-à-vis issuance of Department of the Army permits.

    b. In 2004, the Corps began the process of revising its procedures for compliance with Section 106 of the National Historic Preservation Act. Unfortunately, after a protracted coordination and consultation effort with the Advisory Council on Historic Preservation (the "Council"), the Corps and the Council were unable to a reach consensus on several fundamental policy issues. As a result, the Corps suspended its efforts to revise the procedures.

    c. In November 2008, the Council disseminated a mass email that was intended to provide closure with respect to the Council's and the Corps efforts to revise the procedures. This email message improperly characterizes the status of Appendix C, implying that Appendix C is not a valid process for complying with the Corps' responsibilities under Section 106 of the National Historic Preservation Act. The Corps' Appendix C regulations were properly promulgated as stand alone regulations establishing the process by which the Corps fulfills the requirements of the National Historic Preservation Act. Appendix C was not established as a "counterpart regulation," and, as such, did not require the approval of the Council. Appendix C has been effectively implemented for nearly two decades, and the process prescribed by Appendix C has been found to be in compliance with the requirements of Section 106 on numerous occasions.

CECW-CO
SUBJECT: Headquarters Regulatory Community of Practice Guidance on the Continued Use and Applicability of 33 CFR 325, Appendix C

3. Current Status: While the Corps regrets that new, revised regulations were not achieved, the Corps maintains that Appendix C and the Interim Guidance fully comply with Section 106 of the Historic Preservation Act. While the Council may not agree with the substance of these procedures, Appendix C remains a valid regulation. Therefore, the Corps should continue to follow the procedures found at 33 CFR 325, Appendix C unless otherwise directed by this office.

4. Any questions should be directed to Kim McLaughlin at 202-761-4663.

FOR THE COMMANDER:

JAMES R. HANNON
Acting Chief, Operations
Directorate of Civil Works

Attachments:
Appendix A (33 CFR 325, Appendix C)
Appendix B (Interim Guidance 25 April 2005)
Appendix C (Clarification to the Interim Guidance 31 January 2007)
Appendix D (Statement from OASA CW Concerning Appendix C)



**DEPARTMENT OF THE ARMY**
U.S. Army Corps of Engineers
441 G Street N.W.
WASHINGTON, D.C. 20314-1000

REPLY TO
ATTENTION OF:

CECW-CO

JAN 3 1 2007

MEMORANDUM FOR ALL MAJOR SUBORDINATE COMMANDS AND DISTRICT COMMANDS

SUBJECT: Clarification of Revised Interim Guidance for Implementing Appendix C of 33 CFR Part 325 with the revised Advisory Council on Historic Preservation (ACHP) Regulations at 36 CFR Part 800 dated 25 April 2005

1. The Headquarters Regulatory Community of Practice is continuing the process of revising its procedures for compliance with Section 106 of the National Historic Preservation Act (NHPA) and other cultural resource laws and executive orders. On 25 April 2005 Interim Guidance was issued to address amendments to the NHPA and the ACHP implementing regulations at 36 CFR 800 (enclosure 1). This Interim Guidance is used in conjunction with Appendix C of 33 CFR 325.

2. The purpose of this memorandum is to provide clarification with respect to the Interim Guidance. The Interim Guidance applies to all DA requests for authorization/verification, including individual permit (standard permits and letters of permission) and all regional general permits and nationwide permits.

3. Paragraph 6n. General Permits provide districts with options for ensuring compliance with Section 106 while affording appropriate consideration, coordination, and resolution of an activity's effect on historic properties. However, districts must comply with the provisions contained in paragraph j(2) of the interim guidance and afford the State or Tribal Historic Preservation Officer (SHPO/THPO) an opportunity to comment on no effect determinations.

 a. If a district determines that a proposed activity, that otherwise qualifies for a NWP or RGP, has no effect or no adverse effect on an historic property, the district must adequately document that determination and coordinate this determination with the SHPO/THPO, in accordance with paragraph 6j(2) of the Interim Guidance. The SHPO/THPO has 30 days to provide their response (i.e., concur with determination or disagree with determination). If the SHPO/THPO disagrees with the district's documented effect determination, the district may work with the SHPO/THPO to resolve the disagreement or request an opinion from the ACHP.

 b. If no response or no objection is received from the SHPO/THPO within 30 days of notification, the district may proceed with the verification.

4. Provisional permits are not appropriate for activities that may affect historic properties. Paragraph 6n of the Interim Guidance offers districts options for ensuring compliance with Section 106. However, if consultation is required under Section 106 of the National Historic Preservation Act, an authorization or verification may not be issued until the Section 106 process is complete (see paragraph 6h of the Interim Guidance).

FOR THE COMMANDER:

Encl

LAWRENCE A. LANG, PH.D., P.E.
Acting Chief, Operations
Directorate of Civil Works



**DEPARTMENT OF THE ARMY**
U.S. ARMY CORPS OF ENGINEERS
WASHINGTON, D.C. 20314-1000

REPLY TO
ATTENTION OF:

Directorate of Civil Works/Regulatory

APR 2 5 2005

MEMORANDUM FOR ALL MAJOR SUBORDINATE COMMANDS, DISTRICT COMMANDS

SUBJECT: Revised Interim Guidance for Implementing Appendix C of 33 CFR Part 325 with the Revised Advisory Council on Historic Preservation Regulations at 36 CFR Part 800

1. The Headquarters Regulatory Community of Practice of the U.S. Army Corps of Engineers has begun the process of revising its procedures for compliance with Section 106 of the National Historic Preservation Act (NHPA) and other cultural resource laws and Executive Orders. Since Appendix C was issued in 1990, the NHPA was amended in 1992 and the Advisory Council on Historic Preservation (ACHP) revised its regulations at 36 CFR part 800 in 2000.

2. The Headquarters Regulatory Community of Practice issued interim guidance on June 24, 2002, to address the changes to the section 106 process until our permit processing procedures can be revised through the Administrative Procedures Act process. On July 6, 2004, the ACHP amended certain provisions of 36 CFR part 800. The amendments at 36 CFR 800.4(d) and 800.5(c) affect the implementation of the Regulatory Program, where there are disagreements concerning "no effect" and "no adverse effect" determinations. Those changes affect some provisions of the June 24, 2002, interim guidance.

3. On September 27, 2004, an Advance Notice of Proposed Rulemaking (ANPRM) was published in the Federal Register (69 FR 57662) to obtain comments and suggestions for revising our permit processing procedures. The ANPRM was also mailed to 583 Indian Tribes and Alaska Native village or regional corporations. The comments received in response to the ANPRM will be used to determine how we will revise our permit processing procedures.

4. The purpose of this memorandum is to provide revised interim guidance concerning the consideration of historic properties during the Corps permit process, until the new permit processing procedures are finalized and become effective. This interim guidance supercedes the interim guidance issued on June 24, 2002. District engineers will continue to use 33 CFR part 325, Appendix C, with the interim guidance provided in the Enclosure.

Michael B. White
Chief, Operations
Directorate of Civil Works

Encl

ENCLOSURE

**Subject: Interim Guidance for Implementing Appendix C of 33 CFR part 325 with the revised Advisory Council on Historic Preservation Regulations at 36 CFR part 800**

1. *Consulting parties.* Public involvement and notification are emphasized by the ACHP regulations to assess the potential effects that undertakings may have on historic properties. For the purposes of the ACHP regulations, consulting parties include the SHPO, THPO, the designated tribal representatives (if there is not a designated THPO), Alaska Native village or regional corporations, Native Hawaiian organizations, local government representatives, and the permit applicant. Consulting parties may also include, at the discretion of the district engineer, other individuals or groups that have a demonstrated interest (i.e., a legal or economic relationship to the undertaking or affected properties, or concerns with the undertaking's effects on historic properties) in the undertaking.

2. *Consultation with Native Americans.* The ACHP regulations contain provisions requiring consultation with Indian Tribes, Alaska Native village or regional corporations, and Native Hawaiian organizations. When an Indian Tribe has assumed the functions of the SHPO on tribal lands, the THPO is the official representative for the purposes of section 106. If an Indian Tribe has not assumed the responsibilities of the SHPO on tribal lands, the district engineer will consult with a representative designated by the Indian Tribe, in addition to consulting with the SHPO. The ACHP regulations also require consultation with any Indian Tribe, Alaska Native village or regional corporation, or Native Hawaiian organization that places historic and cultural significance to historic properties, including traditional cultural properties, that may be affected by an undertaking, even if those historic properties are located on private lands. Government-to-government consultation with Indian Tribes requires meaningful communications between tribal governments and district engineers. If a proposed activity may affect historic properties to which Indian Tribes attach religious and cultural significance, the district engineer will contact the Indian Tribe(s) in a manner appropriate for government-to-government consultation. Public notices alone are insufficient means to initiate government-to-government consultation. Effective government-to-government consultation requires active communication with Native Americans and considering their interests during the decision-making process. Guidance for consultation with Native Americans is found in Policy Guidance Letter 57 and the 1998 Department of Defense American Indian and Alaska Native Policy (which are available at: http://www.usace.army.mil/inet/functions/cw/cecwp/tribal/ ). Once consultation is complete, the district engineer remains the final decision authority.

3. *Memoranda of agreement.* Memoranda of Agreement (MOAs) are necessary for resolving how adverse effects to listed or eligible historic properties will be mitigated. The terms of an MOA should be incorporated as permit conditions, to ensure compliance with the NHPA. Although MOAs are optional under Appendix C, they should normally be executed to address mitigation of adverse effects. If the district engineer and the SHPO/THPO agree on how to mitigate adverse effects, an MOA will be executed. The permit applicant should be a signatory to the MOA. The signatures of tribal representatives are required when MOAs address activities on tribal lands. If the district engineer and the SHPO/THPO cannot agree upon the terms of an MOA, or if the project is particularly complex or controversial, then the district engineer will

request the participation of the ACHP in the consultation. The ACHP is required to respond within 45 days, but may request an extension from the agency official.

4. *Intentional adverse effects.* The ACHP regulations allow resolution of Section 110(k) NHPA violations, which are intentional adverse effect violations. To resolve these violations, consultation with the ACHP is necessary. If the district engineer determines, after consideration of comments and consultation with ACHP, to grant the permit, the district engineer will notify the ACHP, the SHPO/THPO, and other parties known to be interested in the undertaking prior to issuing the permit.

5. *NEPA process.* Compliance with Section 106 of the NHPA can also be accomplished through the National Environmental Policy Act (NEPA) process. Consulting parties, such as the SHPO or THPO, should be provided the opportunity to participate early in the NEPA process. The environmental assessment and finding of no significant impact (FONSI), or environmental impact statement and record of decision (ROD), must include the appropriate scoping, assessment of effects, and any consultation leading to resolution of adverse effects. If the proposed undertaking will result in adverse effects on historic properties that may qualify for inclusion in the National Register of Historic Places, a binding commitment identifying measures to avoid, minimize or mitigate such effects will be incorporated into the FONSI or ROD or an MOA will be executed.

6. The following paragraphs provide further interim guidance where the ACHP regulations are not specific to the Corps Regulatory Program:

a. *Agency official.* The ACHP regulations refer to the "agency official", which is a Federal agency representative that has approval authority over the undertaking subject to NHPA 106 compliance, and that can commit the Federal agency to take appropriate action for a specific undertaking as a result of section 106 compliance (see 36 CFR 800.2(a)). The District Engineer is generally considered the appropriate "agency official" within the Corps responsible for ensuring that Corps permits comply with section 106.

b. *Lead Federal agency.* In Appendix C(2)(c) and 36 CFR 800.2(a)(2) designation of a lead Federal agency is critical. The Regulatory portion of a project may be part of a larger process of Federal involvement by numerous agencies. Districts should make sure they are the lead agency before undertaking the Section 106 process, and then include other potentially involved Federal agencies in their decision. Districts should not be undertaking section 106 compliance for other Federal agencies with greater jurisdiction. Appendix C provides for the acceptance of work already undertaken by outside agencies. The Corps will generally accept the compliance of the lead Federal agency. If State or other Federal agencies have already undertaken compliance work that is acceptable to cover the section 106 process, copies of compliance letters from the consulting agencies may be all that is necessary to document compliance. Section 106 compliance should not be duplicated by agencies.

c. *Defining the undertaking.* The "undertaking" is the activity that requires a Corps permit (see generally 36 CFR 800.16(y); 33 CFR 325, Appendix C (1)(f)). The scope of the undertaking is also dependent upon the amount of Federal control and responsibility for a

particular project. The district engineer will take into account the magnitude and nature of the undertaking and the degree of Federal involvement, as well as the nature and extent of potential effects on historic properties (see 36 CFR 800.4(b)(1)). Work that is required of the applicant as part of a permit condition is also part of the undertaking. The district engineer as the "agency official" under the NHPA is solely responsible for defining the undertaking within the Regulatory process.

    d. *Scope of analysis.* The ACHP regulations do not change the scope of analysis for the consideration of historic properties in the Corps regulatory program. The definition of the term "permit area" in Appendix C, including the three tests in that definition, should continue to be used. The limits of the permit area are constrained by the extent of Federal control and responsibility over a particular project (i.e., the undertaking). The district engineer remains responsible for making the final determination regarding the boundaries of the permit area. The district engineer can, in unusual or complex projects, seek the views of the SHPO/THPO before making the final determination.

    e. *Public notice and review procedures.* The ACHP regulations encourage the use of existing procedures to fulfill consultation requirements. For Corps permits, the public notice procedures at 33 CFR part 325 will satisfy the requirement for public involvement and notification, provided all consulting parties receive copies of public notices. Consultation with Indian Tribes, Alaska Native village or regional corporations, and Native Hawaiian organizations will require additional effort beyond the notification by the public notice (see paragraph 2 of this Enclosure). The public notice must accurately describe the undertaking's effects on historic properties and the knowledge of the types of historic properties potentially affected. Review of listed properties in the National Register of Historic Places is often inadequate to convey negative information or the potential to impact historic properties not currently identified (e.g., deeply buried prehistoric sites). Paragraph 3(a) of Appendix C encourages the use of other appropriate sources of information to obtain information on historic properties, including contacts with local historical societies, museums, and universities. The public notice should not contain locational and sensitive information related to archeological sites, to protect those sites from harm, theft, or destruction; such information should be provided to the SHPO/THPO by separate notice. If the undertaking will have no effect on historic properties, there should be a "no potential to cause effect" or "no effect" statement in the public notice. If the district engineer has made a preliminary determination that the undertaking will have "no adverse effect", the comment period for the public notice may be as little as 15 days. However, the SHPO/THPO should be given 30 days to respond to the preliminary "no effect" or "no adverse effect" determination.

    f. *Investigations.* District engineers cannot require permit applicants to do cultural resource surveys outside of the permit area as it has been defined during the section 106 process. For the purposes of this paragraph, work required of the applicant as part of a permit condition will be considered to be within the permit area. It is imperative that we clearly define the responsibilities of the applicants for work related to compliance with section 106, and work that exceeds what the district engineer has determined to be necessary. Applicants are welcome to undertake work beyond the scope of compliance as a voluntary measure, but the difference between what is mandatory to satisfy section 106 and what is being voluntarily accomplished

should be documented in the administrative record for the permit action. If the applicant makes a request, these additional measures can be incorporated into the permit conditions for compliance with section 106.

   g. *Eligibility determinations*. For the section 106 process to continue, the historic property that is affected must be included in, or determined eligible for inclusion in, the National Register of Historic Places. Properties initially found to be ineligible and released from the section 106 process may subsequently become eligible due to unanticipated discoveries or new information being provided.

   h. *Decision-making early in the permit process*. It is important to understand that the section 106 process is fulfilled when:

   - It is determined there is no potential to cause effects on historic properties (36 CFR 800.3(a)(1)).
   - It is determined there are no historic properties present, with no objection from the SHPO/THPO (36 CFR 800.4(d)(1)).
   - It is determined there are no historic properties affected, with no objection from the SHPO/THPO (36 CFR 800.4(d)(1)).
   - The properties are determined not eligible, with SHPO/THPO concurrence.

   i. *Types of effects*. The district engineer is responsible for evaluating the effects the undertaking will have on historic properties included in, or determined eligible for inclusion in, the National Register of Historic Places. Effects may be direct or indirect. A direct effect is caused by the undertaking and occurs at the same time and place. Examples of direct effects include demolition, excavation, grading, and other forms of ground disturbance. An indirect effect is also caused by the undertaking, but occurs later in time or is farther removed in distance, and is still reasonably foreseeable. Examples of indirect effects include visual and noise impacts resulting from the undertaking authorized by the Corps permit.

   j. *Effect determinations*. Effect determinations are still made by the district engineer, after soliciting the views of the consulting parties. See 36 CFR 800.16(i) and Appendix C(1)(e) for definitions of the term "effect". Please note the documentation requirements for "no effect" and "no adverse effect" determinations (see 36 CFR 800.11). District engineers will consider indirect (e.g., visual, noise) effects resulting from the undertaking to known historic properties located outside of the permit area (see Appendix C(5)(f)).

      (1) *"No potential to cause effects"* determinations are made by the district engineer and do not require SHPO/THPO concurrence.

      (2) *"No effect" determinations*. If the SHPO/THPO, or the ACHP if it has entered the section 106 process, does not object within 30 days of receipt of an adequately documented "no effect" determination, the Corps' responsibilities under section 106 are fulfilled. If the SHPO/THPO disagrees with the district engineer's adequately documented "no effect" determination within the 30-day review period, the district engineer may either consult with the

*[handwritten margin note: Corps and SHPO disagree w/ finding then contact ACHP]*

SHPO/THPO to resolve the disagreement, or request an opinion fr[om...]
800.4(d)(ii), and paragraph 6(k), below).

       (3) *"No adverse effect" determinations.* Unless the ACHP is reviewing the "no adverse effect" determination in accordance with 36 CFR 800.5(c)(3), the district engineer may proceed after the close of the 30 day review period if the SHPO/THPO has agreed with the determination or has not provided a response, and no consulting party has objected. If the SHPO/THPO or any consulting party notifies the district engineer in writing during the 30-day review period that it disagrees with the determination and specifies the reasons for the disagreement in the notification, the district engineer will either consult with the party to resolve the disagreement, or request an opinion from the ACHP (see 36 CFR 800.5(c)(3)(i) and (ii), and paragraph 6(k), below).

       (4) *"Adverse effect" determinations.* Adverse effect determinations require consultation to develop and evaluate alternatives or modifications to the undertaking that could avoid, minimize, or mitigate adverse effects on historic properties (see paragraph 6(m), below).

   k. *Disagreement with determinations.* If there are disagreements with the district engineer's "no effect" or "no adverse effect" determination as discussed in paragraph 6(j), above, the district engineer may either continue consultation to resolve the disagreement or request an opinion from the ACHP. Such requests must contain the documentation described at 36 CFR 800.11. If the district engineer requests an opinion from the ACHP, he will notify the other consulting parties and make the documentation available to the public.

       (1) *"No effect" determinations.* The ACHP has up to 30 days to review the determination and provide either the district engineer or the Office of the Assistant Secretary of the Army (Civil Works) (OASA(CW)) with its opinion. If the ACHP does not respond within 30 days, the district engineer may consider the section 106 responsibilities to be fulfilled and proceed with the permit process.

       (2) *"No adverse effect" determinations.* The ACHP has up to 15 days to review the determination and provide either the district engineer or the OASA(CW) with its opinion. The ACHP may extend that 15-day review period by an additional 15 days, as long as it notifies the Corps within the initial 15-day period. If the ACHP does not respond within the applicable time period, the district engineer may consider the section 106 responsibilities to be fulfilled and proceed with the permit process.

       (3) *Consideration of opinions.* If the ACHP provides an opinion to the district engineer, he will take into account that opinion when making his final decision on the determination. The district engineer must document his final decision in the administrative record for the permit action, including the rationale for the final decision and how the ACHP's opinion was considered. If the ACHP provides its opinion to the OASA(CW), the Headquarters Regulatory Community of Practice in Washington, DC (HQ Regulatory CoP) and the district will assist the OASA(CW) in preparing the required documentation for the final decision. The HQ Regulatory CoP will endeavor to provide guidance, if necessary, to the district engineer within 30 days of OASA(CW)'s receipt of the ACHP's opinion. It is important to understand

that the ACHP's opinion is advisory, and does not require the district engineer (or the OASA(CW)) to reverse its determination as the "agency official" under the NHPA.

l. *Special conditions.* As with any special condition, it must be enforceable, directly related to the section 106 work to be undertaken, and justified in the administrative record for the permit action. Conditioning for compliance is discussed in paragraph 10 of Appendix C. Compliance with section 106 through the NEPA process is provided for at 36 CFR 800.8, including approval of the undertaking by use of conditions at 36 CFR 800.8(c)(4).

m. *Mitigation measures.* If there are adverse effects on historic properties, the consultation process will include consideration of alternatives that will avoid, minimize, or mitigate those adverse effects. In cases where there are adverse effects on historic properties, the district engineer is required to notify the ACHP. The ACHP may elect to participate in the consultation process. Mitigation measures may be required through permit conditions, for activities resulting in "no adverse effect" determinations, or a memorandum of agreement (MOA) for activities with adverse effects. An MOA may be incorporated into a permit through permit conditions. If the NEPA process is used for section 106 compliance and the proposed undertaking will result in adverse effects on historic properties that may qualify for inclusion in the National Register of Historic Places, a binding commitment identifying measures to avoid, minimize or mitigate such effects will be incorporated into the FONSI or ROD or an MOA will be executed.

n. *General permits.* Activities authorized by nationwide permits are subject to nationwide permit general condition 12, which requires compliance with Appendix C. Regional and programmatic general permits should be conditioned to require compliance with Appendix C. Specific activities authorized by general permits that may affect historic properties should be coordinated with the SHPO/THPO and, if necessary, the ACHP. If general permit time frames cannot be met because of the amount of time necessary to resolve issues concerning historic properties, there are two options that can be used to ensure compliance. One option involves suspending the general permit authorization until resolution of section 106 issues is achieved. The other option involves conditioning the general permit verification to prohibit commencement of construction until the section 106 process is completed. If an MOA is necessary to address adverse effects on historic properties, then the terms of the MOA should be incorporated into the general permit verification as special conditions.