# EXHIBIT 2

*Standing Rock Sioux Tribe v. United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB)
United States Army Corps of Engineers' Opposition to Plaintiff's Motion for Preliminary Injunction

# SUPPLEMENT TO THE DECISION DOCUMENT
# FOR NATIONWIDE PERMIT 12

This document is a supplement to the national decision document for Nationwide Permit (NWP) 12, and addresses the regional modifications and conditions for use of this NWP by Corps Districts (Chicago, Louisville, Memphis, Rock Island, and St. Louis) with regulatory responsibilities within the State of Illinois. The Mississippi Valley and Great Lakes and Ohio River Division Engineers have considered the potential cumulative adverse effects on the aquatic environment that could result from the use of this NWP, including the need for additional modifications of this NWP by the establishment of regional conditions to ensure that those cumulative adverse effects on the aquatic environment are minimal. The Division Engineers have also considered the exclusion of this NWP from certain geographic areas or specific waterbodies. These regional conditions are necessary to address important regional issues relating to the aquatic environment. These regional issues are identified in this document. These regional conditions are being required to ensure that this NWP authorizes activities that result in no more than minimal individual or cumulative adverse effects on the aquatic environment.

## 1.0 Background

In the February 16, 2011, issue of the <u>Federal Register</u> (76 FR 9174), the Corps of Engineers (Corps) published its proposal to reissue 48 existing NWPs and issue two new NWPs. To solicit comments on its proposed regional conditions for these NWPs, the Illinois Districts issued a public notice on February 16, 2011. The issuance of the NWPs was announced in the February 21, 2012, <u>Federal Register</u> notice (77 FR 10184). After the publication of the final NWPs, the Illinois Districts considered the need for regional conditions for this NWP. The Illinois Districts' findings are discussed below.

## 2.0 Consideration of Public Comments

## 2.1 General Comments

No general comments received.

## 2.2 Comments on Proposed Regional Conditions

## 2.2.1 Proposed Regional Condition 1

Comment: During the first public notice period, the Mississippi River Collaborative disagreed with the proposal in Illinois Regional Condition 1 that would allow stormwater management facilities to be located within a stream under NWPs 21, 44, 49, 50 because mining can cause significant changes in stream chemistry and reduce utility to aquatic wildlife. Stormwater from a mining operation may adversely affect water quality of streams. Due to the number of mining

operations in proximity to the Mississippi River, they do not agree that this allowance will result in only minimal adverse environmental impacts, individually or cumulatively.

Response:  Given the limitations of sites where these activities occur, an instream facility may be the only practicable location for a stormwater management facility.  After receipt of the Pre-Construction Notification, the Corps will be able to review the proposal and determine whether impacts to the aquatic environment have been minimized.  The Illinois Environmental Protection Agency is responsible for establishing standards for each operation under Sections 401 and 402 of the Clean Water Act which would ensure the activity does not adversely affect the stream's water quality.  Any activity is also required to meet General Conditions 8 (Adverse Effects from Impoundments) and 25 (Water Quality).   Therefore, we will recommend the regional condition be adopted without changes.

### 3.0 Waters Excluded from NWP or Subject to Additional Pre-Construction Notification Requirements

### 3.1 Waters excluded from use of this NWP

No waters are excluded from use of this NWP.

### 3.2 Waters subjected to additional pre-construction notification requirements

No waters are subject to additional PCN requirements.

### 4.0 Alternatives

### 4.1  No Regional Conditions

Proposed Regional Condition 1 prohibits instream stormwater management facilities except for certain NWPs.  Other NWPs are presumed to have practicable alternatives to instream facilities.

### 4.2  Alternative Regional Limits or Pre-Construction Notification Thresholds

The Illinois Districts did not see a need to impose additional limitations or PCN requirements to prevent potential adverse effects resulting from the use of this NWP.

### 4.3  Alternative Regional Nationwide Permit Conditions

On December 20, 2011, the Illinois Environmental Protection Agency provided their draft Section 401 Water Quality Certification decision for the Nationwide Permits.  They also asked the Illinois Districts to consider adding the following two regional conditions for Illinois:

Best Management Practices - Projects requiring authorization under Section 404 of the Clean Water Act must implement Best Management Practices (BMPs) to protect water quality, preserve natural hydrology and minimize the overall impacts to aquatic resources during and after construction.  If the project involves a water with an approved Total Maximum Daily Load (TMDL) allocation for any parameter, measures which ensure consistency with the assumption and requirements of the TMDL will be included.  TMDL program information and water listings are available at www.epa.state.il.us/water/tmdl/.  If the project involves an impaired water listed on the Illinois Environmental Protection Agency's Section 303(d) list for suspended solids, turbidity, or siltation, measures designed for at least a 25-year, 24-hour rainfall event will be incorporated.  Impaired waters are identified at www.epa.state.il.us/water/tmdl/303d-list.html.

Endangered Species - Prior to proceeding with any work in accordance with any Nationwide Permit, potential impacts to threatened or endangered species will be identified through use of the State's Ecological Compliance Assessment Tool (EcoCAT) at http://dnrecocat.state.il.us/ecopublic/.  If potential impacts to Federal threatened or endangered species are identified, a joint application package will be completed and submitted to the agencies in accordance with General Condition 31 (Pre-Construction Notification).  If potential impacts to State threatened or endangered species are identified, the Illinois Department of Natural Resources will be consulted with.

The Illinois Districts discussed the proposal during a conference call on January 5, 2012.  The Districts did not recommend adoption of the Best Management Practices Regional Conditions because General Conditions 6, 9, 12, and 25 adequately address these issues.  It was also agreed that the TMDL and Section 303(d) designated waters would be better addressed through the terms of the Section 401 Water Quality Certification.  The Illinois Environmental Protection Agency was informed of that decision during a State-Corps coordination meeting on January 26, 2012.

After consulting with the U.S. Fish and Wildlife Service, it was determined that EcoCAT only identifies whether Federal threatened or endangered species populations have been observed at or near the site.  The tool has no analysis element for potential habitat at the location and therefore would not provide meaningful information related to potential impacts to Federal threatened or endangered species.  Since there would be no meaningful savings of work effort by the Corps to ensure compliance with General Condition 18, the Districts did not recommend adoption of the Endangered Species Regional Condition.  The Illinois Environmental Protection Agency was informed of that decision during a State-Corps coordination meeting on January 26, 2012.

## 5.0  Endangered Species Act

## 5.1  General Considerations

To ensure compliance with the Endangered Species Act, the Corps consults the U.S. Fish and Wildlife Service (USFWS) website to determine which Federal Threatened or Endangered

Species could inhabit the project area. The project site characteristics are compared to the suitable habitat descriptions for each species. If no suitable habitat is present for any identified species, the Corps makes a No Effect determination and considers the project in full compliance with General Condition 18. If suitable habitat is present, the Corps coordinates with the USFWS to determine whether the project may affect the identified species. If necessary, formal consultation is initiated and the applicant is notified that the activity cannot be verified under the NWP until all ESA requirements have been satisfied.

**5.2  Local Operating Procedures for Endangered Species**

There is no formal SLOPE agreement between the Corps and the USFWS in Illinois. Informal agreements have resulted in identifying certain impact/timing limitations for certain species that will still result in a No Effect determination for those species. Projects that exceed those identified limitations will be individually coordinated with the USFWS to ensure ESA compliance is achieved.

**6.0  National Historic Preservation Act**

**6.1  General Considerations**

The Corps reviews the project area to determine the potential for the activity to have an affect on a cultural resource eligible for or listed on the National Register of Historic Places. If a project is in a high probability area, the District makes a determination on whether further documentation or coordination may be required to ensure compliance with Section 106 of the National Historic Preservation (NHPA) Act. If additional documentation/coordination is required for a project, the applicant is notified that the activity cannot be verified under the NWP until Section 106 compliance has been achieved.

**6.2  Local Operating Procedures for National Historic Preservation Act**

Consultation/Coordination is conducted by the District with the State Historic Preservation Officer (SHPO) and other interested parties. The District provides a recommendation as to whether there is a potential impact to listed or eligible properties or whether additional evaluation of a project site is required. If concurrence is not achieved, the project is forwarded to the Advisory Council on Historic Preservation for further consultation to reach a final decision.

**7.0 Government-to-Government Consultation with Indian Tribes**

**7.1 Summary of the Consultation Process**

On December 6, 2010, all tribes with interests within Illinois were sent a letter with information regarding the upcoming renewal of the Nationwide Permits. This letter also mentioned future

4

Government-to-Government consultation requests that would occur when the 2012 Draft Nationwide Permits were published in the Federal Register. No responses were received.

On February 16, 2011, all tribes with interests within Illinois were provided a pre-publication copy of the 2012 Nationwide Permits. The Corps also requested to begin Government-to-Government consultation with the tribes for the Nationwide Permits.

The Peoria Tribe of Indians of Oklahoma responded to our invitation to consultation on the 2012 Nationwide Permits. They requested to be included on all mailing lists pertaining to this effort. We have included them in all attempts to coordinate with the tribes.

The Miami Tribe of Oklahoma responded to the NWP notification letter. They stated a general support of the NWPs and requested they be consulted with upon discovery of human remains, Native American cultural objects, or anthropological evidence at any project site. If a discovery is made on a project site, they will be consulted.

**7.2 Local Operating Procedures for Protecting Tribal Resources**

No specific sites have been identified by any tribe for special consideration or coordination.

**9.0 Supplement to National Impact Analysis**

**9.1 Public interest review factors (33 CFR 320.4(a)(1))**

In addition to the discussion in the national decision document for this NWP, the Illinois Districts have considered the local impacts expected to result from the activities authorized by this NWP, including the reasonably foreseeable cumulative effects of those activities.

(a) <u>Conservation</u>: Same as discussed in the national decision document.

(b) <u>Economics</u>: Same as discussed in the national decision document.

(c) <u>Aesthetics</u>: Same as discussed in the national decision document.

(d) <u>General environmental concerns</u>: Same as discussed in the national decision document.

(e) <u>Wetlands</u>: Same as discussed in the national decision document.

(f) <u>Historic properties</u>: Same as discussed in the national decision document.

(g) <u>Fish and wildlife values</u>: Same as discussed in the national decision document.

(h) <u>Flood hazards</u>: Same as discussed in the national decision document.

(i) <u>Floodplain values</u>:   Same as discussed in the national decision document.

(j) <u>Land use</u>:  Same as discussed in the national decision document.

(k) <u>Navigation</u>: Projects are coordinated with the appropriate Corps offices and the USCG to ensure no adverse impacts to a Federal navigation project will result.

(l) <u>Shore erosion and accretion</u>:  Same as discussed in the national decision document.

(m) <u>Recreation</u>:   Same as discussed in the national decision document.

(n) <u>Water supply and conservation</u>:  Same as discussed in the national decision document.

(o) <u>Water quality</u>:  Same as discussed in the national decision document.

(p) <u>Energy needs</u>: Same as discussed in the national decision document.

(q) <u>Safety</u>: Same as discussed in the national decision document.

(r) <u>Food and fiber production</u>:  Same as discussed in the national decision document.

(s) <u>Mineral needs</u>:  Same as discussed in the national decision document.

(t) <u>Considerations of property ownership</u>:  Same as discussed in the national decision document.

**9.2  National Environmental Policy Act Cumulative Effects Analysis (40 CFR 1508.7)**

Projects authorized by NWPs in Illinois authorize a wide variety of projects impacting streams (and their associated impoundments), lakes and wetlands.  Stream impacts occur throughout the watersheds in Illinois.  The size of streams ranges from ephemeral headwaters to mainstem navigable rivers and their adjacent wetlands.  Stream impacts include bank stabilization, streambed stabilization, stream relocation, and/or temporary disturbances such as installation of a utility.  Wetland impacts include developmental fills and temporary disturbances to allow the installation of a utility or road crossing.

Severe weather cycles have aggravated minor bank erosion situations and generated funding sources for many applicants to correct observed problems.  Banks are reconstructed at stable slopes and either vegetated or armored to prevent a recurrence.  Streams in agricultural areas have also experienced severe damage within the field areas.  Where possible, buffer strips are incorporated along streams to assist in filtering surface runoff and stabilizing the riparian corridor.

Past channelization activities throughout the State have initiated streambed downcutting problems in certain watersheds.  State and local authorities are attempting to prevent further loss of land and infrastructure threatened by downcutting.  Where possible, buffer strips are

incorporated along streams to assist in filtering surface runoff and stabilizing the riparian corridor.

Developmental sprawl expanding into the rural areas or previously undeveloped urban areas will often include wetland fills. Fills exceeding 0.10 acre of fill require mitigation. Installation of new utilities or rehabilitation of existing systems is causing many temporary impacts to streams and wetlands. These areas are restored and vegetated or armored upon completion of the work to minimize impacts.

Environmental impacts resulting from the NWP-authorized projects are minimal, individually and cumulatively. Greater environmental harm would occur if stream stabilization activities were not completed due to the additional sediments introduced to the waterbody and the continued instability of the waterway. Streams allowed to continue their meander pattern can threaten public infrastructure and increase expenditures of limited public funds. Wetland impacts are minimized to the maximum extent practicable and mitigation is provided, when required.

The National Performance Metrics require the Illinois Districts to inspect a percentage of NWP-authorized projects to verify compliance with all terms and conditions of the NWP. Observations of project performance provide the Illinois Districts feedback on the success of specific approaches for certain situations. That information is documented and shared to improve future project performance and further minimize adverse impacts to the aquatic environment.

## 9.3  Section 404(b)(1) Guidelines Impact Analysis (Subparts C-F)

(a) Substrate:  Same as discussed in the national decision document.

(b) Suspended particulates/turbidity:  Same as discussed in the national decision document.

(c) Water:  Same as discussed in the national decision document.

(d) Current patterns and water circulation:  Same as discussed in the national decision document.

(e) Normal water level fluctuations:  Same as discussed in the national decision document.

(f) Salinity gradients:  Same as discussed in the national decision document.

(g) Threatened and endangered species:  Same as discussed in the national decision document.

(h) Fish, crustaceans, molluscs, and other aquatic organisms in the food web:  Same as discussed in the national decision document.

(i) Other wildlife:  Same as discussed in the national decision document.

(j) <u>Special aquatic sites</u>: The potential impacts to specific special aquatic sites are discussed below:

    (1) <u>Sanctuaries and refuges</u>:  Same as discussed in the national decision document.

    (2) <u>Wetlands</u>:  Same as discussed in the national decision document.

    (3) <u>Mud flats</u>:  Same as discussed in the national decision document.

    (4) <u>Vegetated shallows</u>:   Same as discussed in the national decision document.

    (5) <u>Coral reefs</u>:  Same as discussed in the national decision document.

    (6) <u>Riffle and pool complexes</u>:   Same as discussed in the national decision document.

(k) <u>Municipal and private water supplies</u>:  Same as discussed in the national decision document.

(l) <u>Recreational and commercial fisheries</u>:  Same as discussed in the national decision document.

(m) <u>Water-related recreation</u>:  Same as discussed in the national decision document.

(n) <u>Aesthetics</u>: Same as discussed in the national decision document.

(o) <u>Parks, national and historical monuments, national seashores, wilderness areas, research sites, and similar areas</u>:  Same as discussed in the national decision document.

### 9.4 Section 404(b)(1) Guidelines Cumulative Effects Analysis (40 CFR 230.7(b)(3))

The cumulative effects of this NWP on the aquatic environment are dependent upon the number of times the NWP is used and the quantity and quality of waters of the United States lost due to the activities authorized by this NWP.  Based on an analysis of the types of activities authorized by the Illinois Districts during previous years, the Illinois Districts estimate that this NWP will be used approximately 220 times per year, resulting in the loss of approximately 5.0 acres of waters of the United States.  To ensure that these activities result in minimal adverse effects on the aquatic environment, individually and cumulatively, the Illinois Districts estimate that approximately 0.5 acres of compensatory mitigation will be required to offset the authorized losses of waters of the United States and ensure that the NWP authorizes only activities with minimal individual and cumulative adverse effects on the aquatic environment.

### 10.0  List of Final Corps Regional Conditions for NWP 12

### 10.1  Regional condition 1

Stormwater management facilities shall not be located within a stream, except for NWPs 21, 44, 49, or 50.

## 11.0 Water Quality Certification and Coastal Zone Management Act consistency determinations

As of the date of this supplemental decision document, the Corps has not received certifications regarding water quality (WQC) under Section 401 of the Clean Water Act or the consistency determination (determination) under the Coastal Zone Management Act (CZMA) for this subject NWP. Once the Corps receives the WQC certification and CZMA determination from the respective agencies, we will review the certification/determination and any associated conditions to assure that they are reasonably implementable or enforceable, according to 33 CFR 325.4(c). If we determine that the certification/determination or the associated conditions are not reasonably implementable or enforceable, according to 33 CFR 325.4(c), the Corps will consider the certification/determination denied and work may not proceed under the NWP, until the permittee obtains an individual water quality certification and/or coastal zone management act determination. If the Corps accepts the certification/determination and conditions, we will attach the certification/determination to this supplemental decision document.

## 12.0 Measures to Ensure Minimal Adverse Environmental Effects

The terms and conditions of the NWP, including the pre-construction notification requirements and the regional conditions listed in Section 10.0 of this document, will ensure that this NWP authorizes only activities with minimal individual and cumulative adverse effects on the aquatic environment. High value waters will be protected by the restrictions in general condition 22, the regional conditions discussed in this document, and the pre-construction notification requirements of the NWP. Through the pre-construction notification process, the Illinois Districts will review certain activities on a case-by-case basis to ensure that those activities result in minimal adverse effects on the aquatic environment, individually and cumulatively. As a result of this review, the district engineer can add special conditions to an NWP authorization to ensure that the activity results in minimal adverse effects on the aquatic environment, individually and cumulatively. During the pre-construction notification process, the district engineer will exercise discretionary authority and require an individual permit for those activities that result in more than minimal individual and cumulative adverse effects on the aquatic environment.

If, at a later time, there is clear, unequivocal evidence that use of the NWP would result in more than minimal adverse effects on the aquatic environment, individually or cumulatively, the modification, suspension, or revocation procedures at 33 CFR 330.4(e) or 33 CFR 330.5 will be used.

## 13.0 Final Determination

Based on the considerations discussed above, and in accordance with 33 CFR 330.4(e)(1) and 330.5(c), I have determined that this NWP, including its terms and conditions, all regional conditions, and limitations, will authorize only those activities with minimal adverse effects on the aquatic environment, individually or cumulatively.

Case 1:16-cv-01534-JEB   Document 28-17   Filed 09/18/16   Page 11 of 11

10