# DECLARATION OF JOEL AMES

*Standing Rock Sioux Tribe v. United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB)
United States Army Corps of Engineers' Opposition to Plaintiff's Motion for Preliminary Injunction

# DECLARATION OF JOEL AMES

*Standing Rock Sioux Tribe v. United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB)
United States Army Corps of Engineers' Opposition to Plaintiff's Motion for Preliminary Injunction

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, <br><br> Plaintiff, <br><br> v. <br><br> U.S. ARMY CORPS OF ENGINEERS, <br><br> Defendant. | Case No. 1:16-cv-1534-JEB |

## DECLARATION OF JOEL AMES

In accordance with the provisions of 28 U.S.C. 1746, I, Joel Ames, declare that the following statements are true and correct to the best of my knowledge, information, and belief and are based upon my personal knowledge and/or my review of information contained in the records of the United States Army Corps of Engineers ("Corps") or supplied by current employees:

1. I am currently employed as the Tribal Liaison for the United States Army Corps of Engineers (USACE), Omaha District (Omaha District). I have served in this capacity since November of 2003.

2. I received my Environmental and Emergency Management education while serving as an Environment Specialist in the United States Navy, Naval Submarine Base, New London, Connecticut from 1991 until I retired in 1995.

3. From 1996 until 2003, I was the Department of Defense (DoD) Regional Environment Compliance Officer (RECO) and Federal On-Scene Coordinator for Commander, Northeast Region. At the same time, I was the DoD representative to the Canada/United

1

States Joint Response Team, where I led the effort to engage Tribes and get their input in various Regional and Trans-border Emergency Response Plans to prepare for possible oil or chemical releases that crossed national borders. I was also selected to assist DoD to develop the American Indian and Alaska Native Policy with the White House Domestic Policy Office to comply with President Clinton's Executive Order 13175. In this position I worked with various Tribal and DoD representatives in the development of the policy language. This document was signed by William S. Cohen, Secretary of Defense, 20 October 1998.

4. As part of my normal duties as Tribal Liaison at the Omaha District, I advise the Commander, Department Heads, Branch Chiefs and Program Managers on all matters associated with Tribal coordination and consultation. I am also responsible for outreach, coordination, and consultation with Tribes in connection with Omaha District actions related to pipelines, water intakes, Missouri River water management, bombing ranges and munitions cleanup, flood prevention, and in-situ response actions.

5. As the Omaha District Tribal Liaison for the Dakota Access Pipeline (DAPL) project, I assisted the District's efforts to consult with Tribes under Section 106 of the National Historic Preservation Act (NHPA), to inform affected tribes about the DAPL project, and to coordinate communication with the tribes via email, phone, text messages and letters. My effort in this regard began on or about September 17, 2014, when I was asked to assist in scheduling a consultation meeting as requested by Ms. Waste' Win Young, the Standing Rock Sioux Tribe (SRST) Tribal Historic Preservation Officer (THPO).

6. Between September 17 and October 22, 2014, I made numerous phone calls and sent several e-mail and text messages to Ms. Young and the Chairman's Secretary in an effort to secure a meeting date.

7. I scheduled a meeting for November 6, 2014 at the SRST HQ building in Ft Yates, North Dakota, between the Omaha District Engineer, Colonel Cross, and his staff, including the District Counsel, a Corps archeologist, the Lake Oahe Project Manager, the Chief of Real Estate, Omaha District and the Chief of the Omaha District Recreation and Natural Resources Branch and the Tribal Chairman and the Tribal Council. We discussed a number of important items like water rights, treaties, Corps/Tribal Relations, a water taxi, impacts from the construction of the dams and reservoirs and the return of tribal lands. However, we did not discuss the DAPL project because Ms. Young, the SRST THPO, did not attend the meeting.

8. I continued my efforts to schedule a meeting with Ms. Young, but was unsuccessful until February 10, 2015, when Ms. Young and I attended an unrelated regulatory meeting in Billings, Montana. At that time, Ms. Young informed me that she was currently working directly with the applicant and did not need to consult with the Corps at that time.

9. In a letter dated February 25, 2015, Ms. Young contacted Ms. Martha Chieply, Regulatory Branch Chief, Omaha District, regarding geo-technical exploration activities proposed by Dakota Access for the Lake Oahe crossing. Ms. Young was concerned the exploration activities posed a risk to possible burials and other cultural resources in the area. After that, I made periodic efforts to schedule a consultation meeting, but we could not find a date when both the Colonel and the Chairman were available. On June 24, 2015, I learned that Ms. Young was on a Temporary Leave of Absence and would return

on approximately July 27. As far as I could ascertain, there was no one empowered to act as the THPO while she was unavailable.

10. In a letter dated August 19, 2015, Omaha District Commander, Colonel John Henderson, responded to the Standing Rock Sioux Tribal Chairman Dave Archambault's concerns associated with the DAPL project and I unsuccessfully attempted to schedule a consultation meeting with the Tribe.

11. By letter dated September 3, 2015, to Chairman Archambault, Omaha District Commander, Colonel John Henderson, referenced preconstruction notifications (PCNs) submitted by Dakota Access for the DAPL project in order to initiate consultation on the project. A map with the PCN locations and a DAPL fact sheet were included with the letter. In addition, the letter described the Corps' limited jurisdiction over the project, acknowledged the tribe's previous letters, requested information on specific sites of concerns, and invited the tribe to consult on the project. Colonel Henderson requested a response by September 30, 2015.

12. In a letter dated September 28, 2015 to Colonel Henderson, Ms. Young responded to the Colonel's September 3, 2015 letter to Chairman Archambault and welcomed the initiation of consultation, but stated the Corps had not provided adequate response to her previous consultation concerns. She mentioned the tribe should have been consulted before Dakota Access began archeological surveys and before the bore testing occurred. She concluded that it was "clear" the Corps was attempting to circumvent the Section 106 process. Ms. Young claimed that the tribe had been excluded from the Section 106 process of consultation, identification and resolution of adverse effects and was concerned about the irreparable damage to known sites if the ancillary facilities, staging

areas and roads were built without adequate buffers. Finally, she accused the Corps of piecemealing the project to avoid reviewing the entire pipeline, and again request an EIS be prepared for the project.

13. On September 29, 2015, I spoke with Chairman Archambault by phone and arranged a meeting between the Corps and the Tribe to be held in Pierre, South Dakota on October 28, 2015. The Chairman told me that he would send his Vice Chair along with a few Council Members and his THPO. Soon after I attempted to coordinate the logistics and agenda for the meeting, but was unsuccessful. On October 26, the Tribal Archeologist, Ms. Kelly Morgan, notified me by phone and e-mail that the meeting was canceled because nobody from the tribe was available to attend.

14. In an email dated October 26, 2015, after several email attempts to schedule a meeting with the SRST, Dr. Morgan postponed a meeting that had been tentatively scheduled for early November. She stated that she looked forward to a meeting between the Colonel "in a few months."

15. I renewed my efforts to schedule another meeting with the SRST and also invited tribal representatives to participate in a larger meeting with representatives from several tribes to be held on December 8, 2015 in Sioux Falls, South Dakota (phone calls and emails to the Chairman and his Secretary). In a phone call in early November, Chairman Archambault indicated he would send a tribal representative to the general meeting. However, immediately prior to the meeting, he informed me by phone that the SRST would not send a representative to the meeting because Ms. Young no longer worked for the SRST. In the same call, I requested a meeting with the Chairman and he instructed me to work with him and his Secretary to arrange a date to meet.

16. I also spoke to Mr. Steve Vance, the CRST SHPO during this meeting and committed to provide him additional information regarding the surveys conducted by Energy Transfer. He was concerned that tribal members were not present during those surveys.

17. In light of my unsuccessful attempts to schedule a meeting, Colonel Henderson requested the Omaha District Deputy Commander, LTC Michael D. Sexton, attempt to schedule a meeting. No tribal representative returned his calls.

18. In a letter dated January 8, 2016, Chairman Archambault provided the following comments on the Draft EA for the DAPL project: The Corps did not consult with the SRST; the Draft EA fails to properly address cultural, historic and archeological resource issues; the draft EA fails to properly address the potential for environmental damage to waters which are critically important to the Tribe and its members, and the draft EA fails to properly address Environmental Justice.

19. In early January 2016, I learned that Ron His Horse Is Thunder was the new SRST THPO and began working with him to arrange a consultation meeting, ultimately scheduled for January 22, 2016. Because Mr. Horse Is Thunder informed me the Chairman would not attend the meeting we scheduled a staff-level meeting between the SRST and Omaha District for January 22, 2016 at the SRST Headquarters Building in Ft. Yates, North Dakota. Colonel Henderson did not attend the meeting.

20. However, when we arrived for the January 22 meeting, we were informed that the Chairman and some non-staff tribal members wished to participate in the meeting. After introductions, Chairman Archambault gave his opening remarks. One of the first things he said was that he did not consider the meeting to be a Government to Government (G2G) Consultation. He mentioned recent visits to the reservation by President and Ms.

Obama and the Secretary of the Interior and concluded that G2G consultation would require either the President of the United States or the Secretary of Interior. Nonetheless, the meeting was productive and information gathered from the participants was later used to further develop the Draft Environmental Assessment (EA) associated with the Oahe crossing.

21. In a letter dated January 27, 2016, to Martha Chieply and me, Chairman Archambault referenced the January 22, 2016 meeting with Corps representatives and requested a written response to 12 questions posed in the letter.

22. On February 4, 2016, I began coordinating a follow-up meeting with the larger group of potentially affected Tribes, including the SRST. On February 10, while attempting to schedule another consultation meeting between the District Commander and the SRST Chairman, as discussed in the January 22 meeting.

23. On February 8, 2016, I received a voicemail message from the CRST Chairman, Harold Frazier, requesting that I contact him, although he did not tell me the nature of his call. I responded to his call on February 9, 2016, but he was unavailable and I left a message with his secretary.

24. I called Chairman Frazier again on February 10, 2016, but he was unavailable so I left another message with the Tribal Secretary. I also attempted to reach him on his cell phone, but I was unable to leave a voicemail there.

25. Also on February 10, 2016, Ron His Horse Is Thunder emailed me to tell me he was no longer the SRST THPO and that the new THPO was Jon Eagle.

26. Chairman Frazier did not return my calls, and I called again the following week but he was still unavailable. During the meeting in Niobrara, on February 18 and 19, 2016, the

CRST THPO, Mr. Steve Vance, stated that he would like the Corps to consult with his Tribe. I explained to him that I had been attempting to make that arrangement with the Chairman but needed some assistance in getting a timeframe. He agreed to help make it happen.

27. I arranged a meeting with the SRST on February 26, 2016, also at the tribal headquarters in Ft Yates, North Dakota. Again, Chairman Archambault opened the meeting by informing the Commander and District participants that the Tribe did not consider the meeting to constitute consultation. During this meeting, Chairman Archambault stressed the economic and cultural importance of the area immediately above and near the proposed Lake Oahe crossing. He was particularly concerned that the draft EA did not address the area or the reservation. At the meeting, Corps representatives committed to continue to accept and consider tribal comments, provide Dakota Access application documents which were legally releasable and would impose additional conditions on the pipeline, like double walled pipes, shutoff valves on each side of the crossing and fiber optic monitoring of the pipeline.

28. By letter dated February 29, 2016 to Colonel Henderson, Chairman Archambault referenced the February 26, 2016 meeting with the Colonel in which he showed the Colonel the area of the Oahe crossing and explained the devastating effect an oil spill would have on the reservation. He listed five commitments the Colonel made at the meeting. The Chairman closed by stating the dialogue was productive but that the Corps did not conduct meaningful and timely consultation as evidenced by the fact the draft EA did not take the reservation into consideration at all. He repeated the SRST's request for the completion of an EIS.

29. On March 3, 2016, at the request of the SRST, a meeting was held at USACE HQ between SRST Representatives, and the Principal Deputy ASA(CW), and other Corps staff.

30. Colonel Henderson responded to Chairman Archambault's February 29, 2016 letter in a letter dated March 18, 2016. In an attachment, he responded to the commitments and comments in the Chairman's letter.

31. In a letter to Martha Chieply, dated March 22, 2016, the SRST THPO, Mr. Jon Eagle, urged the Omaha District to expand the Section 106 consultation and review to the entire pipeline. Ms. Chieply responded in an email dated March 22, 2016 and explained that the Corps was limited in its authority and the scope of its jurisdiction and must review each crossing as a separate and complete project.

32. In a letter dated March 24, 2016, addressed to Colonel Henderson and Lowry A. Crook, Principal Deputy Assistant for Civil Works, and copied to Chip Smith in the Office of the Assistant Secretary of the Army for Civil Works, Chairman Archambault presented supplemental comments on the DAPL project. The Chairman reemphasized the importance of the Missouri River and the surrounding area to the SRST and offered what appears to be a legal opinion discussing the Corps processes in relation to the DAPL project.

33. Another meeting between Colonel Henderson and Chairman Archambault was held at the Tribal casino in South Dakota on April 29, 2016. Once again the Chairman expressed the Tribe's opinion that the meeting did not constitute consultation.

34. In a letter dated May 6, 2016 to Chairman Frazier, Colonel Henderson addresses the Mr. Vance's request for a meeting and my unsuccessful attempts to schedule it. He stressed

that he takes tribal requests to meet and discuss the DAPL project seriously and expressed his hope that a meeting would be scheduled.

35. In a letter dated May 11, 2016, Chairman Archambault referenced the April 29 meeting and requested that Omaha District Counsel meet with tribal attorneys to discuss specifics of the DAPL pipeline. The Omaha District Counsel was willing to discuss general procedural matters but not specific issues concerning the consideration of the DAPL project. The Chairman felt such a limited discussion would be unproductive but offered to schedule a substantive discussion if the Corps changed its position. The attorneys ultimately participated in a conference call in which they discussed general matters.

36. On Saturday, 14 May 2016, Colonel Henderson, the Chairman, and I met in Omaha to have additional discussions regarding the project and the path forward. Further communications continued until July 25, 2016, when the EA and Finding of No Significant Impact were signed and the final decision was made on the Nationwide Permit #12 verifications.

37. In a June 3, 2016 letter to the Omaha District CRST Chairman Frazier argued that the EA failed to meaningfully analyze tribal cultural issues and that the Corps had not fulfilled its obligation to consult with the CRST because it did not consult before the draft EA was published or before Dakota Access performed cultural resources surveys on the pipeline alignment. He also stated that the general tribal meetings were not consultation with the CRST. He concluded that the Corps failed to initiate or satisfy its consultation obligations and requested the immediate initiation of consultation with the CRST.

38. In a June 22, 2016 letter to Chairman Frazier, Colonel Henderson responded to the Chairman's request for consultation by mentioning that I had spoken with Vice-Chairman LeBeau on April 29, 2016, after the SRST consultation in an attempt to schedule a meeting. He referenced his May 6 letter. He included Questions and Answers in response to any questions the Chairman may have. Finally, he committed to providing Chairman Frazier with a copy of the ASA(CW) response to the ACHP as soon as it became available.

39. In a letter dated July 25, 2016, CRST Chairman Frazier objected to alleged illegal and unauthorized intrusions into tribal sovereignty because the Corps allegedly failed to adequately consult on the DAPL project. He requested the Corps complete an EIS and give due consideration to the comments of the tribes of the Great Plains.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___18 Aug 2016___.

_____, in Omaha, Nebraska.
Joel Ames