IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STANDING ROCK SIOUX TRIBE,

                    Plaintiff,

    v.

U.S. ARMY CORPS OF ENGINEERS,

                    Defendant.

Case No. 1:16-cv-1534-JEB

**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER.**

Pursuant to Local Rule 65.1(a), plaintiff Standing Rock Sioux Tribe ("Tribe")

respectfully moves for a temporary restraining order against defendant-intervenor Dakota Access

Pipeline, LLC ("DAPL") to prevent further destruction of sacred and culturally significant sites

near Lake Oahe, North Dakota,  prior to this Court ruling on the Tribe's motion for a preliminary

injunction, which the Court previously indicated is  anticipated this week.  Specifically, the Tribe

seeks: a) a TRO on any additional construction work at the site described by Mr. Tim Mentz in

his supplemental declaration filed on September 2, 2016, specifically, the pipeline route for a

length of approximately two miles west of Highway 1806 in North Dakota; and b) a TRO on any

additional construction work on the pipeline within 20 miles on either side of Lake Oahe.  This

motion is supported by the memorandum appended hereto, and the Declarations of Tim Mentz,

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Sr. and Jan Hasselman.  A TRO is required because DAPL is currently in the process of destroying sites of great historic and cultural significance to the Tribe.  A TRO is necessary to prevent additional irreparable harm to the Tribe, and further destruction of relevant evidence, prior to this Court having an opportunity to make a decision on the Tribe's motion for a preliminary injunction

Undersigned counsel has been attempted to reach counsel for defendants or defendant-intervenors to confer on this motion, but has been unable to.

Accordingly, Plaintiff respectfully requests that the Court grant its motion for a TRO.  A proposed order is submitted herewith.

Dated:  September 4, 2016                Respectfully submitted,

/s/ Jan E. Hasselman
Patti A. Goldman, DCBA # 398565
Jan E. Hasselman, WSBA # 29107
(*Admitted Pro Hac Vice*)
Stephanie Tsosie, WSBA # 49840
(*Admitted Pro Hac Vice*)
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
Telephone:  (206) 343-7340
pgoldman@earthjustice.org
jhasselman@earthjustice.org
stsosie@earthjustice.org
*Attorneys for Plaintiff*

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | Case No. 1:16-cv-1534-JEB |
| Plaintiff, | |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

INTRODUCTION

In the afternoon of Friday, September 2, 2016, the Tribe submitted recently discovered evidence of historically and religiously important stone features and graves that are in or immediately adjacent to the pipeline's proposed right-of-way approximately 2 to 4 miles away from the Lake Oahe crossing site.  One of these sites—a stone representation of a constellation used for prayer for a select group of Tribal leaders—was described by the Tribe's cultural expert, Tim Mentz, Sr., as "one of the most significant archaeological finds in North Dakota in many years."  Mr. Mentz described an extraordinary concentration of graves (including burials of important chiefs) and stone features marking a highly unusual and sacred area directly in and adjacent to the pipeline's route near Lake Oahe.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Less than 24 hours after that filing, the features described by Mr. Mentz had been

bulldozed by DAPL.  On Saturday, September 3, 2016, DAPL construction crews graded the

entire area by removing the top layer of vegetation and soil, removing or burying all stone

features in and next to the pipeline's 150 foot right of way.  The loss of these sites causes

incalculable harm to the Tribe.  A TRO will prevent additional destruction to this important site

and other potential sites nearby that remain unsurveyed pending a ruling on the preliminary

injunction.

STANDARD OF REVIEW

In considering a motion for a temporary restraining order, "the Court must consider

whether the movant has met its burden of demonstrating that '(1) it has a substantial likelihood

of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3)

other interested parties will not suffer substantial harm if the injunction is granted; and (4) the

public interest would be furthered by the injunction.'" *Morgan Stanley DW Inc. v. Rothe*, 150

F.Supp.2d 67, 72 (D.D.C.2001) (internal citation omitted).  The standards for a temporary

restraining order are the same as a motion for a preliminary injunction.  *Id.*; *Experience Works,

Inc. v. Chao*, 267 F. Supp.2d 93, 96 (D.D.C. 2003) ("The same standards apply for both

temporary restraining orders and preliminary injunctions").

ARGUMENT

I.    THE TRIBE IS LIKELY TO PREVAIL ON THE MERITS

The parties have briefed the legal issues extensively, and the Tribe's arguments with

respect to the merits are incorporated herein by reference.  Simply put, the preliminary injunction

motion involves the question of whether the Army Corps of Engineers' obligations under the

National Historic Preservation Act ("NHPA") to consult with the tribes and to consider the

impacts to culturally significant sites are limited to the immediate area of the Corps' jurisdiction,

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

or whether they extend to a broader area where Corps' authorization causes indirect effects. As the Tribe explained at length in its preliminary injunction briefing, both the Advisory Council on Historic Preservation ("ACHP") regulations and the Corps' own § 106 regulations require consideration of indirect effects, including impacts of a crude oil pipeline in upland areas outside of direct Corps jurisdiction. The Tribe's position has been supported by the ACHP repeatedly.

The site that was destroyed by DAPL on September 3, 2016, is precisely the kind of site that prompted the Tribe's lawsuit. It is a few miles away from the Lake Oahe crossing that is subject to Corps' oversight and at the center of this dispute, and was indisputably not within the area that the Corps considered under its truncated § 106 analysis. Supplemental Declaration of Tim Mentz, Sr., at ¶ 3 ("Supp. Mentz Decl."). The Tribe never had an opportunity to survey the area until a week ago, when the private landowner extended an invitation to Mr. Mentz to survey the route. *Id.* If the Tribe is successful in this litigation, the Corps would be required to comply with the § 106 process to evaluate and mitigate the impacts of areas like this when issuing permits under its Clean Water Act authorities.

## II.     THE TRIBE WILL BE IRREPARABLY HARMED WITHOUT A TRO

The Tribe's preliminary injunction motion was supported by declarations from the Tribe's Chairman, Dave Archambault, II, and the current and former Tribal Historic Preservation Officers, Jon Eagle, Sr., and Tim Mentz, Sr. The three declarations described the irreparable harm suffered by the Tribe and its members caused by the loss of cultural and sacred sites. During the oral argument on the motion, this Court inquired if the Tribe had additional evidence of specific, known sites that were in the pipeline's path. (DAPL for its part, claimed that the Tribe "has not and cannot cite to a single instance of destruction of a cultural resource." DAPL PI Opp. at 2.) While the Tribe believed that such evidence was already in the record, it submitted additional evidence on September 2 that had been discovered subsequent to the

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

hearing, after Mr. Mentz received an invitation from the landowner of the site.  In fact, the

Tribe's Sept. 2 filing discussed discovery of highly unusual stone features that link the Tribe to

its cultural heritage.  Mr. Mentz described five stone features in a narrow area that

"unquestionably" met the criteria for National Register designation.  Supp. Mentz Decl. at ¶ 7.

Mr. Mentz also catalogued no fewer than 27 grave sites within a concentrated area in and next to

the pipeline's route.  *Id*.  His declaration discusses the significance of these sites in detail.  Mr.

Mentz noted that he was not able to survey the pipeline right of way itself, but was only able to

survey up to the edge of the right of way.

Most of the stone features described in Mr. Mentz's declaration, sites that have stood

undisturbed for centuries, are now gone.  *See* Declaration of Tim Mentz, Sr. in Support of TRO

("Mentz TRO Decl."), at ¶¶ 3, 5.  The morning after the Tribe filed Mr. Mentz's declaration

describing the sites and their importance, and providing maps as to their precise location, DAPL

construction crews graded the entirety of the two mile stretch surveyed by Mr. Mentz and

described in his declaration.  *Id*.  Notably, at the time of the surveys just a few days ago, Mr.

Mentz saw no evidence of imminent construction in the area.

As Mr. Mentz described in his supplemental declaration, there are numerous burials in

that segment of the pipeline route.  Supp. Mentz Decl. at ¶ 6.  Continuing construction of the

pipeline at the site could further disturb or destroy those burial sites.  Although the stone features

are already destroyed, there are still steps Tribal elders and cultural specialists can take to

mitigate additional harm, including reburying of human remains likely to have been disturbed.

Mentz TRO Decl. at ¶¶ 8-9.  A TRO preventing additional construction at the site described by

Mr. Mentz is necessary to prevent additional desecration of these graves and remains.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Additionally, given the destruction of known sacred sites near Lake Oahe, the Tribe is entitled to a TRO preventing further clearing and grading in areas that have not been cleared in the immediate vicinity of Lake Oahe, including the area in between Highway 1806 and the Lake Oahe HDD site.  While the Tribe believes that a broader injunction is in order, including all uncleared areas in the pipeline's path, a TRO preventing additional construction within a 20 mile radius of the Lake Oahe crossing sites would at least prevent additional harm pending resolution of the preliminary  injunction motion.  As Mr. Mentz explains in his declaration, there is a high likelihood of finding additional culturally significant sites in the pipeline route that remain unsurveyed.  Mentz TRO Decl. at ¶ 13.

III.      THE BALANCE OF HARMS SUPPORTS A TRO

The relief sought by the Tribe in its preliminary injunction motion was broad—an injunction on additional construction over the length of the entire pipeline.  In this motion, however, the Tribe seeks narrow relief.  Specifically, the Tribe asks that the court temporarily enjoin the following activities pending resolution of the Tribe's preliminary injunction motion: a) any additional construction work at the site described by Mr. Mentz in his declaration, specifically, the pipeline route for a length of approximately two miles west of Highway 1806; and, b) any additional construction along the pipeline route within a 20 mile radius on either side of Lake Oahe.  Given the short timeline of the Tribe's requested relief, the economic impact of such a TRO on DAPL should be negligible.  A decision on the Tribe's motion is likely forthcoming very soon.  There is no harm to the company from having to wait for that decision for a short time in this narrow area.  In contrast, the harm to the Tribe from the potential loss of additional unknown sites, and the additional desecration of grave sites and remains west of Highway 1806, is very significant. The balance of harms supports a TRO.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

DAPL has repeatedly represented to the Court that it has taken extraordinary measures to prevent harm to culturally important sites.  For example, in the introduction of its preliminary injunction opposition, DAPL claimed:

> extraordinary precautions have been put in place by the Corps and Intervenor to ensure no sensitive cultural resources are damaged. These measures include pre-construction surveys of the route with the approval and oversight of state and federal authorities, preconstruction notification and staking to clearly identify areas of possible disturbance, prior notification before any construction activity takes place, use of archaeological and historic preservation monitors, environmental monitors, tribal monitors and state engineers before, during and after all construction activity, and comprehensive reclamation and restoration protocols.

DAPL PI Opp. at 2.  It catalogues the lengths it has supposedly gone to in order to protect cultural sites, including, it claims, rerouting to protect unevaluated tribal cultural sites.  *Id*. at 24-25.  The dramatic destruction of important and unique sites, less than 24 hours after the Tribe described them, calls these representations to the Court into question.  The Tribe never received notification of imminent construction.  It never had an opportunity to monitor that site "during and after" construction activity.  Prior to the survey this past week at the landowner's invitation, it never had an opportunity to survey the site.  The picture of care for tribal cultural sites that DAPL has presented to this Court simply doesn't accord with the facts on the ground.

IV.     THE PUBLIC INTEREST SUPPORTS A TRO

As the Court understands, the conflict between DAPL and Tribal members over the Dakota Access pipeline has become very intense.  The Tribe's position has been consistent: it has vigorously promoted nonviolence by all sides at the grassroots demonstrations, and is seeking to work within the legal system—most notably, through this litigation—to vindicate its rights.  Here, however, it appears that the Tribe's efforts to pursue its rights through this lawsuit were used against it.  Within hours of being provided with detailed evidence of major archaeological discoveries directly in and adjacent the pipeline's route, DAPL brazenly

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

bulldozed those sites, on the Saturday of a holiday weekend.  The opportunity to survey in the pipeline route itself for additional sites, which Mr. Mentz did not have, will never be available. Moreover, tribal observers have not previously observed DAPL crews working on weekends. Mentz TRO Decl. ¶ 11.   It appears that construction crews skipped over many miles of uncleared land to clear the area described by Mr. Mentz in Friday's declaration.  *Id*. at ¶ 10.   The timing suggests that DAPL destroyed these sites deliberately and knowingly in order to gain some perceived advantage.   The public interest is harmed by this kind of subterfuge of the litigation process.

DAPL's intentional destruction of cultural sites that had been submitted to the Court as evidence of irreparable harm, just hours previously, also may constitute spoliation of relevant evidence. "Spoliation" is "defined as 'the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.' " *Clarke v. Wash. Metropolitan Area Transit Auth*., 904 F.Supp.2d 11, 20 (D.D.C.2012).  A party is obligated to not spoliate evidence "it knew or reasonably should have known were relevant to the ... litigation if it knew the destruction or alteration of those documents would prejudice the plaintiff[ ].' " *Shepherd v. Am. Broad. Cos*., 62 F.3d 1469, 1481 (D.C. Cir. 1995).  Additional construction in and around the Lake Oahe site in the few days prior to the  Court's ruling on the preliminary injunction would potentially destroy other relevant evidence, and would certainly render moot any meaningful § 106 consultation that could occur on sites of significance to the Tribe should it prevail in its preliminary injunction motion.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

CONCLUSION

For the foregoing reasons, plaintiff Standing Rock Sioux Tribe respectfully requests that this Court grant the motion for a TRO. .

Dated:  September 4, 2016                    Respectfully submitted,

                                             */s/ Jan E. Hasselman*
                                             Jan E. Hasselman, WSBA # 29107
                                             (*Admitted Pro Hac Vice*)
                                             Stephanie Tsosie, WSBA # 49840
                                             (*Admitted Pro Hac Vice*)
                                             Patti A. Goldman, DCBA # 398565
                                             Earthjustice
                                             705 Second Avenue, Suite 203
                                             Seattle, WA  98104
                                             Telephone:  (206) 343-7340
                                             pgoldman@earthjustice.org
                                             jhasselman@earthjustice.org
                                             stsosie@earthjustice.org
                                             *Attorneys for Plaintiff*

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2016, I electronically filed the foregoing *Motion and Memorandum in Support of Temporary Restraining Order* with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

/s/ Jan E. Hasselman
Jan E. Hasselman

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*