## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**STANDING ROCK SIOUX TRIBE,**

               **Plaintiff,**

   **and**

**CHEYENNE RIVER SIOUX TRIBE,**

               **Intervenor-Plaintiff,**

   **v.**

**U.S. ARMY CORPS OF ENGINEERS,**

               **Defendant.**

   **and**

**DAKOTA ACCESS, LLP,**

               **Intervenor-Defendant.**

**Case No. 1:16-cv-1534-JEB**

### JOINT RESPONSE OF INTERVENOR-PLAINTIFF CHEYENNE RIVER SIOUX TRIBE AND PLAINTIFF STANDING ROCK SIOUX TRIBE TO COURT'S SEPTEMBER 23, 2016 MINUTE ORDER CONCERNING JOINT COMPLAINT

COMES NOW Intervenor-Plaintiff Cheyenne River Sioux Tribe ("CRST" or "Cheyenne River") and Plaintiff Standing Rock Sioux Tribe ("SRST" or "Standing Rock") (collectively "Tribes") and hereby submit this response to the Court's Minute Order concerning the proposed filing of a joint complaint.

The Minute Order issued on September 23, 2016 addressing Cheyenne River's Motion for Reconsideration of Minute Order Striking First Amended Complaint stated the Court's preference that the two plaintiffs file a single amended complaint stating both joint and separate claims.  The Minute Order further ordered any objection to the Court's Order to be filed by September 30, 2016

if either party determined that a joint filing resulted in prejudice.  Cheyenne River and Standing Rock have met and conferred on the Court's Order and jointly state as follows.

The Tribes are cognizant of the Court's inherent power to efficiently manage its docket. The Tribes further understand the Court's desire to avoid unnecessarily duplicative pleadings and its interest in streamlining both responsive pleading and dispositive briefing.  Indeed, the Tribes share the Court's concerns.  After meeting and conferring, the Tribes are amenable to coordinating on amended claims that the Tribes share in common and submitting amended complaints that set forth common claims in a manner that will enable efficient answers and will permit the parties to file dispositive motions that can address common claims together.  The Tribes, however, believe that the filing of a single joint pleading between the two Tribes risks prejudice, because there is not complete agreement regarding aspects of certain claims, and because a joint pleading would be incompatible with their status as sovereign nations.  The Tribes further believe that a joint pleading has the potential to hamper this Court's well-intentioned efforts to simplify the present proceeding.  Consequently, the Tribes suggest herein an alternative to a joint pleading that we believe could achieve the efficiency desired by the Court, prevent unnecessary prejudice to the Tribal parties, and avoid logistical and formatting problems.

## I.      The Tribes Are Distinct Political Entities and Sovereign Nations that Enjoy Separate Standing in this Matter

As an initial matter, the Tribes wish to emphasize their distinct political identities and their separate sovereign statuses.  In its Motion to Intervene, the Cheyenne River Sioux Tribe noted the cultural, linguistic, political, and historical commonalities between the two Tribes.  Both Tribes are comprised of Lakota-speaking bands that share a common culture and are members of the traditional Seven Council Fires of the Lakota, Dakota, and Nakota, known in our language as the *Oceti Sakowin* and in English as the Great Sioux Nation.  Four Lakota bands comprise the present-

147011-1

day Cheyenne River Sioux Tribe.  ECF No. 11 at p. 11.  One Lakota band and one Dakota band comprise the present-day Standing Rock Sioux Tribe.  ECF No. 6-2 at p. 1.  Although the bands of the *Oceti Sakowin* are culturally and politically tied to one another, traditionally, each band constituted a distinct political entity with an independent government.  Although some Treaties reserved lands in common for many bands of the Great Sioux Nation, the United States interacted with the bands as such, negotiating the extant Treaties with each band on a nation-to-nation basis.  *See generally* 1868/1851 Treaties, 11 Stat. 749 (1851) & 15 Stat. 635 (1868).  Indeed, all bands of the *Oceti Sakowin* did not sign or negotiate the same Treaties.  *Id.*  The Tribes governed themselves traditionally based upon the band system even after they were forced onto their respective reservations in 1889.

But today, under United States law, as well as under the Tribe's own laws, they are separate and distinct nations despite any similarity or common origin that they may share.  *See Worcester v. Georgia*, 31 U.S. 515, 561 (1832).  Each Tribe has adopted its own Constitution and each has adopted the Indian Reorganization Act ("IRA"), legislation intended to reverse some of the negative impacts of the homesteading era and to modernize tribal government.  25 U.S.C. § 461 *et seq.*  The United States interacts with each Tribe separately on a nation-to-nation basis on present day matters just as it interacted with each band separately on a nation-to-nation basis under the extant Treaties.  *See* Felix Cohen, Handbook of Federal Indian Law § 4.01[1][a] (2012 ed.).  The Tribes' current relationship with each other is not a legal one, but rather one of affinity that could become adverse depending on the circumstances, including in this litigation.

The Tribes take seriously their sovereign status and their distinct political identities.  For those reasons, the Tribes believe that the filing of a joint pleading in this matter is not consistent with their sovereignty or their distinct political identity.  And, as set forth below, in the event of

3

any strategic or substantive divergence of interests of the Tribes in this litigation, a joint pleading could create actual prejudice.

## II.     Political and Factual Distinctions Between the Two Tribes Present the Possibility that Some Tribal Claims in this Proceeding May be Incompatible

The political distinctions between the Tribes and their separate sovereign statuses, both in the Treaty era and in the modern era, have placed the Tribes in separate positions relative to the United States and have resulted in separate factual scenarios regarding their respective rights. Moreover, the Tribes have different demographics, different geographical locations, different citizens, and completely different leadership. The Tribes may not agree on how best to frame or assert certain claims. Neither Tribe wishes to be required to endorse, either implicitly or explicitly, a pleading that is inconsistent with its best judgment on these matters. The possibility that such a pleading could create substantive confusion in subsequent proceedings or on appeal as to the nature of each Tribe's claims in this proceeding presents a risk of prejudice to the Tribes.

## III.    A Single Omnibus Pleading Could Be Structurally Confusing

In addition to the possibility of substantive confusion of the Tribes' potentially disparate claims, a single omnibus pleading setting forth both joint and separate claims would be difficult to structure in simple and clear fashion. As set forth above, the Tribe's separate sovereign nature means that different facts exist surrounding even their common claims in this matter. Assuming that the Tribes filed a joint amended pleading setting forth both joint and separate claims, it would likely be structured as follows: (I) Joint claims: (A) an introduction that discussed joint claims; (B) Tribe One's facts concerning joint claims; (C) Tribe Two's facts concerning joint claims; (D) joint statutory framework; (E) joint claims; (F) joint prayers for relief; (G) signature block for both Tribes; (II) Tribe One's separate claims: (A) introduction; (B) facts; (C) statutory framework;(D)

4

claims; (E) prayers for relief; (F) signature; (III) Tribe Two's separate claims: (A) introduction; (B) facts; (C) statutory framework;(D) claims; (E) prayers for relief; (F) signature.

The above structure would create four separate fact sections and three of each other section. Regardless of how these sections are ordered, it is not difficult to imagine confusion arising.

**IV.     Judicial Efficiency Would Be Best Served by the Filing of Separate Amended Complaints After Consultation and Coordination Between the Tribal Parties Regarding Common Claims**

In light of the foregoing, the Tribes submit that the most efficient vehicle for the filing of amended complaints in this matter is separate amended complaints filed after consultation and coordination between the Tribal parties in order to assure that the Tribes, to the extent that it is not inconsistent with their respective rights, raise all common claims in a similar fashion, ordered and numbered similarly in their amended complaints so that responsive pleadings and dispositive briefing easily can be organized and drafted.  Any unique or separate claims can be set forth in a discrete section of the separate amended complaint.  The Tribes believe that this format best streamlines the pleading process in this matter without risking confusion or prejudice to either of the existing Tribal parties.  The Tribes are also amenable to coordinating with any additional Tribal parties whose claims may be consolidated into this action.

## CONCLUSION

For the foregoing reasons, the Tribes respectfully request that the Court permit the Tribes to file separate amended complaints as described above.

147011-1

Dated:  September 30, 2016

| CHEYENNE RIVER SIOUX TRIBE,<br>Intervenor-Plaintiff, | STANDING ROCK SIOUX TRIBE,<br>Plaintiff, |
|---|---|
| By:  /s/ Nicole E. Ducheneaux<br>     Nicole E. Ducheneaux, *Pro Hac Vice*<br>     Fredericks Peebles & Morgan LLP<br>     3610 North 163rd Plaza<br>     Omaha, NE  68116<br>     Telephone:  (402) 333-4053<br>     Facsimile:  (402) 333-4761<br>     Email:  nducheneaux@ndnlaw.com<br><br>     Conly J. Schulte<br>     FREDERICKS PEEBLES & MORGAN LLP<br>     1900 Plaza Drive<br>     Louisville, CO  80027<br>     Telephone:  (303) 673-9600<br>     Facsimile:  (303) 673-9839<br>     Email:  cschulte@ndnlaw.com | By:  /s/ Jan E. Hasselman<br>     Jan E. Hasselman, *Pro Hac Vice*<br>     Stephanie Tsosie, *Pro Hac Vice*<br>     Patti A. Goldman, DCBA #398565<br>     Earthjustice<br>     705 Second Avenue, Suite 203<br>     Seattle, WA  98104<br>     Telephone:  (206) 343-7340<br>     jhasselman@earthjustice.org<br>     stsosie@earthjustice.org<br>     pgoldman@earthjustice.org |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of September, 2016, a copy of the foregoing was filed electronically with the Clerk of the Court.  The electronic filing prompted automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

                                                          /s/ Nicole E. Ducheneaux

147011-1