**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>　　　　　　Plaintiff,<br><br>and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>　　　　　　Plaintiff-Intervenor,<br><br>　v.<br><br>UNITED STATES ARMY CORPS OF<br>ENGINEERS,<br><br>　　　　　　Defendant,<br><br>and<br><br>DAKOTA ACCESS, LLC,<br><br>　　　　　　Defendant-Intervenor. | Case Number: 16-cv-1534 (JEB) |

<u>**DAKOTA ACCESS, LLC'S ANSWER TO INTERVENOR-PLAINTIFF CHEYENNE RIVER SIOUX TRIBE'S FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND CROSS-CLAIM AGAINST DEFENDANT U.S. ARMY CORPS OF ENGINEERS**</u>

COMES NOW, Intervenor Defendant Dakota Access, LLC ("Dakota Access"), by and through its attorneys, and as for its Answer and Defenses to Intervenor-Plaintiff Cheyenne River Sioux Tribe's First Amended Complaint for Declaratory and Injunctive Relief (Case No. 1:16-cv-01534-JEB, D.E. No. 37) ("Complaint") in the above-captioned case, avers as follows and, unless specifically answered otherwise, denies each and every allegation of the Complaint.

## INTRODUCTION

1.     Paragraph 1 characterizes Intervenor-Plaintiff's statement of the case, to which no response is required.  Dakota Access Pipeline ("DAPL") is an approximately 1,172-mile-long crude oil pipeline running from North Dakota to Illinois owned by Dakota Access.  Dakota Access admits that the Cheyenne River Sioux Tribe is a federally recognized Indian Tribe with a reservation in South Dakota.  To the extent this Paragraph is deemed to contain additional allegations of fact or law, such allegations are denied.

2.     Dakota Access avers that the U.S. Army Corps of Engineers ("Corps") issued certain federal verifications and authorizations regarding DAPL.  Dakota Access avers that DAPL is planned to run underneath the Missouri River at Lake Oahe and further avers that the Corps does not have approval authority for DAPL.  Dakota Access denies that DAPL crosses current treaty lands of Plaintiff.  Dakota Access is without information or knowledge sufficient to form a belief as to the remaining allegations contained in Paragraph 2, and therefore denies the same.  To the extent that Paragraph 2 is deemed to contain allegations of violations of laws, such allegations are denied.

3.     Deny.  Paragraph 3 contains vague and ambiguous characterizations of alleged fact and law to which no response is required.  To the extent this Paragraph is deemed to contain additional allegations of fact or law, such allegations are denied.

4.     Paragraph 4 characterizes Intervenor-Plaintiff's statement of the case, to which no response is required.  Dakota Access avers that DAPL crosses certain waters of the United States.  Paragraph 4 contains conclusions of law and allegations that purport to characterize the Clean Water Act ("CWA"), Rivers and Harbors Act ("RHA"), and the National Historic Preservation Act ("NHPA"), and regulations thereunder, statutes and regulations that speak for

themselves and contain the best evidence of their contents, and to which no response is required.

To the extent that Paragraph 4 is deemed to contain allegations of violations of laws, such

allegations are denied.  To the extent this Paragraph is deemed to contain additional allegations

of fact or law, such allegations are denied.

5.      Paragraph 5 characterizes Intervenor-Plaintiff's statement of the case, to which no

response is required.  Dakota Access admits that the Corps issued certain documents on July 25,

2016.  However, Paragraph 5 purports to characterize statutes and documents in the public record

that speak for themselves and contain the best evidence of their contents.  Paragraph 5 contains

conclusions of law and allegations that purport to characterize unidentified Department of

Defense policies and regulations, the Flood Control Act, and the Act of September 3, 1954 (P.L.

83-776), to which no response is required.  To the extent that Paragraph 5 is deemed to contain

allegations of violations of laws, such allegations are denied.  To the extent this Paragraph is

deemed to contain additional allegations of fact or law, such allegations are denied.

6.      Paragraph 6 characterizes Intervenor-Plaintiff's requested relief and statement of

the case, to which no response is required.  To the extent that Paragraph 6 is deemed to contain

allegations of violations of laws, such allegations are denied.  To the extent this Paragraph is

deemed to contain additional allegations of fact or law, such allegations are denied.

7.      Paragraph 7 characterizes Intervenor-Plaintiff's requested relief and statement of

the case, to which no response is required.  To the extent that Paragraph 7 is deemed to contain

allegations of violations of laws, such allegations are denied.  To the extent this Paragraph is

deemed to contain additional allegations of fact or law, such allegations are denied.

## JURISDICTION AND VENUE

8.      Paragraph 8 contains conclusions of law to which no response is required.

Defendant denies that this case arises under the Treaty of 1851.  To the extent Paragraph 8 is

deemed to contain facts, such facts are denied.

9.      Paragraph 9 contains conclusions of law to which no response is required.  To the

extent that Paragraph 9 is deemed to contain facts, such facts are denied.

## PARTIES

10.      Dakota Access admits that the Cheyenne River Sioux Tribe is a federally

recognized Indian tribe.  Paragraph 10 contains conclusions of law and allegations that purport to

characterize the 1851 Fort Laramie Treaty and the 1868 Sioux Nation Treaty, treaties that speak

for themselves and are the best evidence of their contents, and to which no response is required.

Dakota Access is without information or knowledge sufficient to form a belief as to the

remaining allegations contained in Paragraph 10 and therefore denies the same.  To the extent

that Paragraph 10 is deemed to contain allegations of violations of laws, such allegations are

denied.  To the extent this Paragraph is deemed to contain additional allegations of law, such

allegations are denied.

11.      Dakota Access admits that DAPL is intended to cross Lake Oahe.  Dakota Access

is without information or knowledge sufficient to form a belief as to the remaining allegations

contained in Paragraph 11 and therefore denies the same.

12.      Paragraph 12 contains conclusions of law and allegations that purport to

characterize the 1851 Treaty of Fort Laramie, a treaty that speaks for itself and is the best

evidence of its contents, and to which no response is required.  Dakota Access denies that

"[t]hese Treaty lands encompass exactly the site of the proposed pipeline."  Dakota Access is

without information or knowledge sufficient to form a belief as to the remaining allegations contained in Paragraph 12 and therefore denies the same.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

13.     Paragraph 13 contains conclusions of law and allegations that purport to characterize the Act of March 2, 1889, 25 Stat. 888, a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the remaining allegations contained in Paragraph 13 and therefore denies the same.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

14.     Dakota Access admits that the Corps is an agency of the United States government and a division of the U.S. Army, part of the U.S. Department of Defense.  The remaining allegations purport to characterize the CWA, the RHA, and 33 U.S.C. § 707, statutes that speak for themselves and are the best evidence of their contents, and to which no response is required.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

15.     Paragraph 15 contains conclusions of law to which no response is required.

**TREATIES, STATUTES, AND REGULATIONS, RELATED TO THE CORPS' OBLIGATIONS TO MANAGE WATERS OF LAKE OAHE AND TRUST DUTY TO THE TRIBE**

**I.     THE FORT LARAMIE TREATY OF 1851 AND 1868 SIOUX NATION TREATY**

16.     Paragraph 16 contains conclusions of law and allegations that purport to characterize the 1851 Treaty of Fort Laramie, 11 Stat. 749 (Sept. 17, 1851), a treaty that speaks for itself and is the best evidence of its contents, and to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the remaining

allegations contained in Paragraph 16 and therefore denies the same. To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

17. Paragraph 17 contains conclusions of law and allegations that purport to characterize the 1868 Sioux Nation Treaty, 15 Stat. 635 (Apr. 29, 1968), a treaty that speaks for itself and is the best evidence of its contents, and to which no response is required. Dakota Access is without information or knowledge sufficient to form a belief as to the remaining allegations contained in Paragraph 17 and therefore denies the same. To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

## II. ACT OF MARCH 2, 1889, 25 STAT. 888

18. Paragraph 18 contains conclusions of law and allegations that purport to characterize tribal *Winters* rights and 25 Stat. 888 (Mar. 2, 1889), a statute that speaks for itself and is the best evidence of its contents, and to which no response is required. Dakota Access is without information or knowledge sufficient to form a belief as to remaining allegations contained in Paragraph 18 and therefore denies the same. To the extent this Paragraph is deemed to contain allegations of violations of law, such allegations are denied.

## III. FLOOD CONTROL ACT OF 1944, PUBLIC LAW 83-776

19. Paragraph 19 contains conclusions of law and allegations that purport to characterize Public Law 83-776, a statute that speaks for itself and is the best evidence of its contents, and to which no response is required. Dakota Access is without information or knowledge sufficient to form a belief as to the remaining allegations contained in Paragraph 19 and therefore denies the same. To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

20.     Paragraph 20 contains conclusions of law and allegations that purport to characterize the Flood Control Act, a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.

21.     Paragraph 21 contains conclusions of law and allegations that purport to characterize the Flood Control Act, a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.

## IV.     THE CORPS' TRUST RESPONSIBILITY TO THE TRIBE

22.     Paragraph 22 contains conclusions of law and allegations that purport to characterize *Winters* rights, tribal trust responsibility of the U.S., 25 U.S.C. § 162(a)-(d), 25 U.S.C. § 1632(a)(5), and 55. Fed. Reg. 9223 (Mar. 12, 1990), statutes and a regulation that speak for themselves and are the best evidence of their contents, and to which no response is required. Dakota Access is without information or knowledge sufficient to form a belief as to the remaining allegations contained in Paragraph 22 and therefore denies the same.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

23.     Paragraph 23 contains conclusions of law to which no response is required.  To the extent that Paragraph 23 is deemed to contain allegations of violations of law, such allegations are denied.

24.     Paragraph 24 contains conclusions of law to which no response is required.  To the extent that Paragraph 24 is deemed to contain allegations of violations of law, such allegations are denied.

## THE CLEAN WATER ACT

25.     Paragraph 25 contains conclusions of law and allegations that purport to characterize the CWA, a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.

26.     Paragraph 26 contains conclusions of law and allegations that purport to characterize the CWA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

27.     Paragraph 27 contains conclusions of law and allegations that purport to characterize the CWA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

28.     Paragraph 28 contains conclusions of law and allegations that purport to characterize the CWA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

## THE RIVERS AND HARBORS ACT

29.     Paragraph 29 contains conclusions of law and allegations that purport to characterize the RHA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

30.     Paragraph 30 contains conclusions of law and allegations that purport to characterize the RHA, a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.

31.     Paragraph 31 contains conclusions of law and allegations that purport to characterize the RHA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

32.     Paragraph 32 contains conclusions of law and allegations that purport to characterize the RHA, a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.

## THE NATIONAL HISTORIC PRESERVATION ACT

33.     Paragraph 33 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

34.     Paragraph 34 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

35.     Paragraph 35 contains allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

36.     Paragraph 36 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

37.     Paragraph 37 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

38.     Paragraph 38 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

39.     Paragraph 39 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

40.     Paragraph 40 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

41.     Paragraph 41 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

42.     Paragraph 42 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.  To the extent that Paragraph 42 is deemed to contain allegations of violations of laws, such allegations are denied.  Dakota Access admits that the Corps continues to follow the procedures in App. C to 33 C.F.R. Part 325.

43.     Paragraph 43 contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

44.     Dakota Access is without information or knowledge sufficient to form a belief as to the truth to the allegations in Paragraph 44, and therefore denies the same.

## THE NATIONAL ENVIRONMENTAL POLICY ACT

45.     Paragraph 45 contains conclusions of law and allegations that purport to characterize the National Environmental Policy Act ("NEPA") and regulations thereunder, a

statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

46.     Paragraph 46 contains conclusions of law and allegations that purport to characterize NEPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

47.     Paragraph 47 contains conclusions of law and allegations that purport to characterize NEPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

48.     Paragraph 48 contains conclusions of law and allegations that purport to characterize NEPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

49.     Paragraph 49 contains conclusions of law and allegations that purport to characterize NEPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

50.     Paragraph 50 contains conclusions of law and allegations that purport to characterize NEPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

## THE MINERAL LEASING ACT

51.     Paragraph 51 contains conclusions of law and allegations that purport to characterize the Mineral Leasing Act ("MLA"), a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.

52.     Paragraph 52 contains conclusions of law and allegations that purport to characterize the MLA, a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.

53.     Paragraph 53 contains conclusions of law and allegations that purport to characterize the MLA, a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.

54.     Paragraph 54 contains conclusions of law to which no response is required.  To the extent that Paragraph 54 is deemed to contain allegations of violations of laws, such allegations are denied.

55.     Paragraph 55 contains conclusions of law and allegations that purport to characterize the Administrative Procedure Act ("APA"), a statute that speaks for itself and is the best evidence of its contents, and to which no response is required.

56.     Paragraph 56 contains conclusions of law to which no response is required.

## FACTUAL ALLEGATIONS

## VI.     INTERESTS OF THE CHEYENNE RIVER SIOUX TRIBE

57.     Dakota Access is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 57, and therefore denies the same.  To the extent this Paragraph contains conclusions of law, no response is required.

58.     Dakota Access is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 58, and therefore denies the same.  To the extent this Paragraph contains conclusions of law, no response is required.

59.     Dakota Access is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 59, and therefore denies the same.  To the extent this Paragraph contains conclusions of law, no response is required.

60.     Paragraph 60 contains vague and ambiguous characterizations to which no response is required.  Dakota Access is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 60, and therefore denies the same.  To the extent this Paragraph contains conclusions of law, no response is required.

61.     Dakota Access is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 61, and therefore denies the same.

62.     Dakota Access is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 62, and therefore denies the same.  To the extent this Paragraph contains conclusions of law, no response is required.

63.     Paragraph 63 contains conclusions of law to which no response is required. Dakota Access denies the last sentence of Paragraph 63.  Dakota Access is without information or knowledge sufficient to form a belief as to the remaining allegations in Paragraph 63 and therefore denies the same.

## THE CORPS' ISSUANCE OF NWP 12

64.     Paragraph 64 contains conclusions of law and allegations that purport to characterize regulations issued under the CWA, regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.  Dakota Access denies that the regulation is "counterintuitive."

65.     Paragraph 65 contains conclusions of law and allegations that purport to characterize regulations issued under the CWA, regulations that speak for themselves and are the

best evidence of their contents, and to which no response is required.  Dakota Access admits that

the Corps considers pipelines carrying crude oil to be covered by Nationwide Permit 12

("NWP 12").

66.     Paragraph 66 contains conclusions of law and allegations that purport to

characterize regulations issued under the CWA, regulations that speak for themselves and are the

best evidence of their contents, and to which no response is required.

67.     Paragraph 67 contains conclusions of law and allegations that purport to

characterize regulations issued under the CWA, regulations that speak for themselves and are the

best evidence of their contents, and to which no response is required.  Dakota Access avers that

the Corps properly follows the preconstruction notice ("PCN") procedures and protects relevant

NHPA resources.

68.     Paragraph 68 contains conclusions of law and allegations that purport to

characterize regulations issued under the CWA, regulations that speak for themselves and are the

best evidence of their contents, and to which no response is required.

69.     Paragraph 69 contains conclusions of law and allegations that purport to

characterize the Corps Decision Document adopting NWP 12, a document in the written public

record that speaks for itself and is the best evidence of its contents, and to which no response is

required.

## FACTS RELEVANT TO CHALLENGE NWP 12

70.     Dakota Access avers that DAPL crosses 1,172 miles through North Dakota, South

Dakota, Iowa, and Illinois with a capacity of 570,000 barrels of crude oil per day and a portion of

North Dakota oil production.  To the extent that Paragraph 70 is deemed to contain any other

allegations, such allegations are denied.

71.     Dakota Access is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 71, and therefore denies the same.  Paragraph 71 contains vague and ambiguous characterizations to which no response is required.  To the extent that the allegations in Paragraph 71 are deemed to contain allegations of fact and violations of law, such allegations are denied.

72.     Dakota Access avers that portions of DAPL's construction consist of clearing and grading an access pathway for the length of DAPL, digging trenches, and building and burying the pipeline.  Dakota Access denies that such work would destroy burial grounds, sacred sites, and historically significant areas in its path.  Dakota Access is without knowledge or information sufficient to form a belief as to the remaining allegations in this Paragraph, and therefore denies the same as vague or ambiguous.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

73.     Deny.

74.     Deny.  Paragraph 74 contains characterizations that are vague and ambiguous, and to which no response is required.  To the extent that the characterizations in Paragraph 74 are deemed to contain allegations of fact and violations of law, such allegations are denied.

75.     Dakota Access avers that DAPL's route through North Dakota is approximately 359 miles.  Paragraph 75 contains allegations that purport to characterize a 2015 Wetlands and Waterbodies Delineation Report and PCNs issued for two sites in North Dakota, documents in the written public record that speak for themselves and are the best evidence of their contents, and to which no response is required.  Dakota Access is without knowledge or information sufficient to form a belief as to the remaining allegations in this Paragraph, and therefore denies

the same as vague or ambiguous.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

76.     Dakota Access avers that DAPL's route through South Dakota is approximately 273 miles.  Paragraph 76 contains allegations that purport to characterize its filings to the South Dakota Public Utilities Commission and PCNs issued for ten sites in South Dakota, documents in the written public record that speak for themselves and are the best evidence of their contents. Dakota Access is without knowledge or information sufficient to form a belief as to the remaining allegations in this Paragraph, and therefore denies the same as vague or ambiguous. To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

77.     Paragraph 77 contains vague and ambiguous characterizations to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

78.     Dakota Access avers that DAPL is proposed to cross under Lake Oahe, but denies the rest of the allegations in Paragraph 78 as vague and ambiguous.

79.     Paragraph 79 consists of vague and ambiguous characterizations to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in Paragraph 79 and therefore denies the same.

80.     Dakota Access admits that on July 25, 2016, the Corps verified that Dakota Access activities at approximately 203 locations in North Dakota, South Dakota, Iowa, and Illinois satisfied the terms and conditions of NWP 12.  These documents speak for themselves

and contain the best evidence of their contents, and allegations concerning them require no response.  Dakota Access admits that construction on DAPL in certain other locations commenced prior to July 25, 2016, but denies the rest of the allegations in Paragraph 80 as vague or ambiguous.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

81.     This Paragraph consists of vague and ambiguous characterizations to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in Paragraph 81, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

82.     This Paragraph consists of vague and ambiguous characterizations to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in Paragraph 82, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

83.     Dakota Access is without information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 83, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

84.     Dakota Access avers that archaeologists working in Iowa allegedly discovered a site of purported religious and cultural significance to Oceti Šakówiŋ, but denies the remaining allegations as vague or ambiguous.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

85.     This Paragraph contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

86.     Paragraph 86 contains conclusions of law and allegations that purport to characterize regulations under the NHPA, regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.  Paragraph 86 contains allegations that purport to characterize an Advisory Council on Historic Preservation ("ACHP") letter to the Corps dated May 6, 2016, a letter in the written public record that speaks for itself and is the best evidence of its contents, and to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

87.     Paragraph 87 contains legal conclusions and allegations that purport to characterize an ACHP letter to the Corps dated May 19, 2016, a letter in the written public record that speaks for itself and is the best evidence of its contents, and to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

88.     Dakota Access avers that any remaining eminent domain proceedings are limited to compensation issues.  Dakota Access avers that DAPL construction is underway in places where Dakota Access has secured regulatory approval and other consent.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no

response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

89.     This Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required, and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

## GENERAL FACTS REGARDING THE CORPS' ISSUANCE OF THE § 408 PERMITS AND CWA VERIFICATIONS

90.     Dakota Access avers that the Corps issued certain authorizations pursuant to 33 U.S.C. § 408, and an Environmental Assessment and Finding of No Significant Impact ("FONSI").  This Paragraph contains legal conclusions and allegations that purport to characterize those documents, which are in the written public record, that speak for themselves and are the best evidence of their contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

91.     Dakota Access denies that the verifications authorize pipeline operation.  Dakota Access avers that the Corps issued verifications for North Dakota, South Dakota, Iowa, and Illinois, and permits for construction at Lake Oahe.  This Paragraph contains legal conclusions and allegations that purport to characterize those documents, which are in the written public record, that speak for themselves and are the best evidence of their contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

92.     This Paragraph contains legal conclusions and allegations that purport to characterize a Corps public notice, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

93.     This Paragraph contains legal conclusions and allegations that purport to characterize a draft U.S. Fish and Wildlife Service EA, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required. The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

94.     Dakota Access avers that the pipeline route crosses Lake Oahe upstream of the Tribe's reservation boundary.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

95.     Deny.  Dakota Access is without knowledge or information sufficient to form a belief as to the allegations in this Paragraph and therefore denies the same.  To the extent this Paragraph contains conclusions of law, no response is required.

96.     Dakota Access avers that portions of DAPL's construction consist of clearing and grading an access pathway for the length of DAPL, digging trenches, and building and burying the pipeline.  Dakota Access denies that such work would destroy burial grounds, sacred sites, and historically significant areas in its path.  Dakota Access is without knowledge or information

sufficient to form a belief as to the remaining allegations in this Paragraph, and therefore denies the same as vague or ambiguous.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

97.     Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

98.     Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

99.     Dakota Access avers that the Corps operates the Oahe Dam for enumerated statutory purposes.  The remainder of this Paragraph consists of vague and ambiguous characterizations to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

100.    Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies

the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

## SPECIFIC FACTS RELATED TO NHPA COMPLIANCE FOR
## JULY 25, 2016 AUTHORIZATIONS

101.    Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

102.    Dakota Access admits that the Corps "undertook a process to consider the impacts of the Missouri River crossing on historic and culturally significant sites."  In all other respects, Dakota Access denies the allegations of this Paragraph.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

103.    Dakota Access avers that portions of DAPL's construction consist of clearing and grading an access pathway for the length of DAPL, digging trenches, and building and burying the pipeline.  The remainder of this Paragraph contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

104.    Deny.  This Paragraph contains conclusions of law and allegations that purport to characterize the NHPA and regulations thereunder, a statute and regulations that speak for

themselves and are the best evidence of their contents, and to which no response is required. This Paragraph also purports to characterize a draft EA, a document in the written public record that speaks for itself and is the best evidence of its contents, and to which no response is required. To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

105.    Deny. This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required. Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same. To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

106.    Deny. This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required. Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same. To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

107.    Deny. Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same. To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

108.    Deny. This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required. Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies

the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

109.   Deny.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

110.   This Paragraph contains legal conclusions and allegations that purport to characterize a February 17, 2015, Corps letter, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

111.   Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

112.   Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

113.     Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

114.     Deny.  This Paragraph contains legal conclusions and allegations that purport to characterize various letters to the Corps from the U.S. Environmental Protection Agency, the U.S. Department of Interior and the ACHP, which are in the written public record, that speak for themselves and are the best evidence of their contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

115.     Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

116.     Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

117.     Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  Dakota Access is without information or

knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies

the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations

of fact and violations of law, such allegations are denied.

118.    Deny.  This Paragraph consists of vague and ambiguous characterizations of

alleged fact and law to which no response is required.  Dakota Access is without information or

knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies

the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations

of fact and violations of law, such allegations are denied.

119.    Deny.  This Paragraph consists of vague and ambiguous characterizations of

alleged fact and law to which no response is required.  Dakota Access is without information or

knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies

the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations

of fact and violations of law, such allegations are denied.

120.    Admit.

121.    This Paragraph contains legal conclusions and allegations that purport to

characterize a May 19, 2016 ACHP letter, which is in the written public record, that speaks for

itself and is the best evidence of its contents, and to which no response is required.  The

remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and

law to which no response is required and is denied.  To the extent this Paragraph is deemed to

contain allegations of violations of laws, such allegations are denied.

122.    Deny.  This Paragraph contains legal conclusions and allegations that purport to

characterize a May 19, 2016 Tribal Historic Preservation Officer letter, which is in the written

public record, that speaks for itself and is the best evidence of its contents, and to which no

response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

123.    Deny.  This Paragraph contains legal conclusions and allegations that purport to characterize a May 19, 2016 ACHP letter, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

124.    Deny.  This Paragraph contains legal conclusions and allegations that purport to characterize an April 22, 2016 Corps determination, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

125.    This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

## SPECIFIC FACTS RELATED TO NEPA COMPLIANCE FOR
## JULY 25, 2016 AUTHORIZATIONS

126.   This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

127.   Admit, except to the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

128.   This Paragraph contains legal conclusions and allegations that purport to characterize a U.S. Fish and Wildlife Service EA, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required. The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

129.   This Paragraph contains legal conclusions and allegations that purport to characterize various NEPA documents and NWP 12 verifications, which are in the written public record, that speak for themselves and are the best evidence of their contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

130.   Deny.  This Paragraph contains legal conclusions and allegations that purport to characterize a Corps EA, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this

Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

131.   This Paragraph contains legal conclusions and allegations that purport to characterize a Corps EA, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

132.   This Paragraph contains legal conclusions and allegations that purport to characterize a Corps EA, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

133.   This Paragraph contains legal conclusions and allegations that purport to characterize comments, which are in the written public record, that speak for themselves and are the best evidence of their contents, and to which no response is required.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

134.   This Paragraph contains legal conclusions and allegations that purport to characterize an EPA letter of January 8, 2016, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and

law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

135.    This Paragraph contains legal conclusions and allegations that purport to characterize an EPA letter of March 11, 2016, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

136.    This Paragraph contains legal conclusions and allegations that purport to characterize an Interior Department letter of March 29, 2016, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

137.    This Paragraph contains legal conclusions and allegations that purport to characterize a Corps EA, which is in the written public record, that speaks for itself and is the best evidence of its contents, and to which no response is required.  The remainder of this Paragraph contains vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

### SPECIFIC FACTS RELATED TO CWA/RHA COMPLIANCE FOR JULY 25, 2016 AUTHORIZATIONS

138.    Dakota Access avers that DAPL will involve CWA and RHA authorizations. Dakota Access denies the remaining allegations of this Paragraph.

139.     This Paragraph contains legal conclusions and allegations that purport to characterize Corps permits, which are in the written public record, that speak for themselves and are the best evidence of their contents, and to which no response is required.  To the extent this Paragraph is deemed to contain allegations of violations of laws, such allegations are denied.

140.     This Paragraph contains conclusions of law and allegations that purport to characterize the CWA and NWP 12 and regulations thereunder, a statute and regulations that speak for themselves and are the best evidence of their contents, and to which no response is required.

141.     This Paragraph contains conclusions of law and allegations that purport to characterize the PCNs and verifications, documents that are in the written public record, that speak for themselves and are the best evidence of their contents, and to which no response is required.

142.     Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

143.     Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

### FACTS RELATING TO CORPS' FAILURE TO MEET TRUST RESPONSIBILITY TO TRIBE AND THE CORPS' VIOLATION OF FLOOD CONTROL ACT

144.     This Paragraph contains conclusions of law and allegations that purport to characterize Corps authorizations, permits, PCNs, and verifications, documents that are in the

written public record, that speak for themselves and are the best evidence of their contents, and to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

145.    Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

146.    This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  Dakota Access is without information or knowledge sufficient to form a belief as to the allegations in this Paragraph, and therefore denies the same.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

147.    Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

148.    Deny.  This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

## SPECIFIC FACTS RELATING TO THE CORPS FAILURE TO PROMULGATE REGULATIONS

149.    This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent that the allegations in this

Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

150.    This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

151.    This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

152.    This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

153.    This Paragraph consists of vague and ambiguous characterizations of alleged fact and law to which no response is required and is denied.  To the extent that the allegations in this Paragraph are deemed to contain allegations of fact and violations of law, such allegations are denied.

## CLAIMS FOR RELIEF

### I.    FIRST CLAIM FOR RELIEF
### FAILURE TO CONSULT UNDER § 106 OF THE NHPA

154.    Dakota Access incorporates its answers to the allegations in all preceding Paragraphs.

155.    This Paragraph consists of conclusions of law to which no response is required.

156.     This Paragraph consists of conclusions of law to which no response is required. To the extent this Paragraph consists of allegations of violations of law, such allegations are denied.

157.     Dakota Access is without knowledge sufficient to form a belief as to the truth of the allegations contained in this Paragraph.  This Paragraph consists of conclusions of law to which no response is required.

158.     This Paragraph consists of conclusions of law to which no response is required.

159.     This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the factual allegations contained in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

## II.     SECOND CLAIM FOR RELIEF
## UNLAWFUL ABDICATION OF § 106 RESPONSIBILITIES

160.     Dakota Access incorporates its answers to the allegations in all preceding Paragraphs.

161.     This Paragraph consists of conclusions of law to which no response is required.

162.     This Paragraph consists of allegations that purport to characterize ACHP regulations, regulations that speak for themselves and require no response.

163.     This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the factual allegations contained in this Paragraph.

164.     This Paragraph consists of legal conclusions and allegations that purport to characterize ACHP regulations, regulations that speak for themselves and require no response.

165.     This Paragraph consists of legal conclusions and allegations that purport to characterize ACHP regulations, regulations that speak for themselves and require no response.

166.    This Paragraph consists of legal conclusions and allegations that purport to characterize ACHP regulations, regulations that speak for themselves and require no response. Dakota Access denies the remaining allegations in this Paragraph.

167.    This Paragraph consists of legal conclusions and allegations that purport to characterize ACHP and NWP regulations, regulations that speak for themselves and require no response.  Dakota Access denies the remaining allegations in this Paragraph.

168.    This Paragraph consists of legal conclusions and allegations that purport to characterize NWP regulations, regulations that speak for themselves and require no response. Dakota Access denies the remaining allegations in this Paragraph.

169.    Dakota Access avers that it has filed PCNs and sought verification on certain locations, but denies the remaining allegations in this Paragraph.

170.    This Paragraph consists of allegations that purport to characterize a May 6, 2016 letter from the ACHP to the Corps, a letter in the written public record that speaks for itself and is the best evidence of its contents, and to which no response is required.  Dakota Access denies that the Cheyenne River Sioux Tribe has not had the opportunity to share relevant information to the Corps.  To the extent this Paragraph consists of allegations of violations of law, such allegations are denied.

171.    This Paragraph consists of conclusions of law to which no response is required.

172.    This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the remaining allegations contained in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

### III.   THIRD CLAIM FOR RELIEF
### FAILURE TO REQUIRE CONSIDERATION OF INDIRECT EFFECTS UNDER § 106

173.   Dakota Access incorporates its answers to the allegations in all preceding Paragraphs.

174.   This Paragraph consists of legal conclusions and allegations that purport to characterize ACHP regulations, regulations that speak for themselves and require no response.

175.   This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the remaining allegations contained in this Paragraph.

176.   This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations that speak for themselves and are the best evidence of their content, and to which no response is required.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

177.   This Paragraph consists of legal conclusions and allegations that purport to characterize ACHP regulations and a May 19, 2016 letter from the ACHP to the Corps, regulations and a letter that speak for themselves and are the best evidence of their content, and to which no response is required.  Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

178.   This Paragraph consists of conclusions of law to which no response is required.

179.   This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

## IV.    FOURTH CLAIM FOR RELIEF
## VIOLATIONS OF NATIONAL HISTORIC PRESERVATION ACT WITH RESPECT TO JULY 25, 2016 VERIFICATIONS AND § 408 PERMITS

180.    Dakota Access incorporates its answers to the allegations in all preceding Paragraphs.

### A.    Incorrect Definition of "Area of Potential Effects"

181.    This Paragraph consists of legal conclusions and allegations that purport to characterize the NHPA, which speaks for itself and is the best evidence of its contents, and to which no response is required.

182.    This Paragraph consists of legal conclusions and allegations that purport to characterize ACHP regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

183.    This Paragraph consists of conclusions of law to which no response is required. To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

184.    This Paragraph is denied as vague and ambiguous.  To the extent this Paragraph consists of allegations of violations of law, such allegations are denied.

185.    This Paragraph consists of conclusions of law to which no response is required. Dakota Access avers that portions of DAPL's construction consist of clearing and grading an access pathway for the length of DAPL, digging trenches, and building and burying the pipeline, but denies the rest of this Paragraph.  To the extent this Paragraph consists of allegations of violations of law, such allegations are denied.

186.    This Paragraph is denied as vague and ambiguous and consists of conclusions of law to which no response is required.  Dakota Access denies the remaining allegations in this

Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

187.    This Paragraph is denied as vague and ambiguous and consists of conclusions of law to which no response is required.  Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

**B.    Inadequate § 106 Consultation**

188.    This Paragraph consists of legal conclusions and allegations that purport to characterize the NHPA and ACHP regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

189.    This Paragraph consists of legal conclusions and allegations that purport to characterize ACHP regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

190.    This Paragraph consists of conclusions of law to which no response is required. To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

191.    This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

192.    This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

193.    This Paragraph is denied as vague and ambiguous.  To the extent that this Paragraph consists of allegations of violations of law, such allegations are denied.

194.    Dakota Access is without information or knowledge sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

195.    Deny.

196.    Deny.

197.    Dakota Access denies the first sentence of this Paragraph as vague and ambiguous.  This Paragraph consists of conclusions of law to which no response is required.  Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

198.    This Paragraph consists of legal conclusions and allegations that purport to characterize ACHP regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.  This Paragraph consists of conclusions of law to which no response is required.  Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

199.  This Paragraph consists of vague and ambiguous characterizations that require no response.  This Paragraph consists of conclusions of law to which no response is required.  Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

200.  This Paragraph consists of conclusions of law to which no response is required.  Dakota Access denies the allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

C.     **No § 106 Consultation for Verifications**

201.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

202.    This Paragraph consists of vague and ambiguous characterizations that require no response.  To the extent this Paragraph is deemed to contain allegations of violations of law, such violations are denied.  Dakota Access does not have information or knowledge sufficient to form a belief as to whether the Tribe is aware of § 106 findings and therefore denies the same.  Dakota Access denies the rest of this Paragraph.

203.    This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

### V.     FIFTH CLAIM FOR RELIEF
### VIOLATIONS OF NATIONAL HISTORIC PRESERVATION ACT WITH RESPECT TO JULY 25, 2016 VERIFICATIONS AND § 408 PERMITS

204.    Dakota Access incorporates its answers to the allegations in all preceding Paragraphs.

A.     **Failure to Consider Indirect Effects of Missouri River Crossings**

205.    This Paragraph consists of legal conclusions and allegations that purport to characterize NEPA, which speaks for itself and is the best evidence of its contents, and to which no response is required.  Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

206.    This Paragraph consists of legal conclusions and vague and ambiguous characterizations that require no response.  Dakota Access denies the remaining allegations in

this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

207.    This Paragraph consists of legal conclusions and vague and ambiguous characterizations that require no response.  Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

208.    This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

**B.    Unlawful Segmentation of Project Components**

209.    This Paragraph consists of legal conclusions and allegations that purport to characterize NEPA and regulations enacted thereunder, which speak for themselves and are the best evidence of their contents, and to which no response is required.

210.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

211.    This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

212.    Dakota Access admits that FWS issued its own Environmental Assessment and FONSI for certain aspects of DAPL, but denies the rest of this Paragraph as vague and ambiguous.  This Paragraph consists of conclusions of law to which no response is required.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

213.     This Paragraph consists of legal conclusions and allegations that purport to characterize NEPA and regulations enacted thereunder, which speak for themselves and are the best evidence of their contents, and to which no response is required.  Dakota Access denies the allegations in this Paragraph.  To the extent this Paragraph is deemed to contain allegations of violations of law, such violations are denied.

214.     This Paragraph consists of conclusions of law to which no response is required.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

## C.      **Arbitrary Economic Analysis**

215.     This Paragraph consists of legal conclusions and allegations that purport to characterize NEPA and regulations enacted thereunder, which speak for themselves and are the best evidence of their contents, and to which no response is required.

216.     This Paragraph consists of legal conclusions and allegations that purport to characterize NEPA and regulations enacted thereunder, which speak for themselves and are the best evidence of their contents, and to which no response is required.

217.     Dakota Access denies this Paragraph as vague and ambiguous.  To the extent this Paragraph is deemed to contain allegations of violations of law, such violations are denied.

218.     Dakota Access denies this Paragraph as vague and ambiguous.  To the extent this Paragraph is deemed to contain allegations of violations of law, such violations are denied.

219.     This Paragraph consists of conclusions of law to which no response is required.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

# VI.   SIXTH CLAIM FOR RELIEF
## VIOLATIONS OF THE CLEAN WATER ACT AND RIVERS AND HARBOR ACT WITH RESPECT TO JULY 25, 2016 VERIFICATIONS AND § 408 PERMITS

220.    Dakota Access incorporates its answers to the allegations in all preceding Paragraphs.

### A.    Arbitrary and Inadequate Public Interest Review for North Dakota Permits

221.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

222.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.  Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

223.    This Paragraph consists of conclusions of law to which no response is required. Dakota Access denies the remaining allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

224.    This Paragraph consists of conclusions of law to which no response is required. To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

### B.    Unlawful Verification for Lake Oahe Crossing

225.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

226.    Admit.

227.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

228.    This Paragraph consists of conclusions of law to which no response is required. To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

229.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.  Dakota Access denies the rest of this Paragraph as vague and ambiguous.  To the extent this Paragraph is deemed to contain allegations of violations of law, such violations are denied.

230.    This Paragraph appears to consist of legal conclusions and allegations that purport to characterize agency correspondences which speak for themselves and are the best evidence of their contents, and to which no response is required.  Dakota Access denies this Paragraph as vague and ambiguous.

231.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.  Dakota Access denies the rest of this Paragraph as vague and ambiguous.  To the extent this Paragraph is deemed to contain allegations of violations of law, such violations are denied.

232.    This Paragraph consists of conclusions of law to which no response is required. To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

### C.    Issuance of Verifications for 204 Jurisdictional Waters

233.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

234.    This Paragraph consists of legal conclusions and allegations that purport to characterize Corps regulations which speak for themselves and are the best evidence of their contents, and to which no response is required.

235.    This Paragraph consists of legal conclusions and vague and ambiguous allegations that require no response.  Dakota Access denies the allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

236.    This Paragraph consists of legal conclusions and vague and ambiguous allegations that require no response.  Dakota Access denies the allegations in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

237.    This Paragraph consists of conclusions of law to which no response is required.

238.    This Paragraph consists of conclusions of law to which no response is required. To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

## VII.   SEVENTH CLAIM FOR RELIEF
### BREACH OF TRUST RESPONSIBILITY

239.    Dakota Access incorporates its answers to the allegations in all preceding Paragraphs.

240.    Deny. This Paragraph consists of conclusions of law to which no response is required.

241.    This Paragraph contains allegations that purport to characterize statutes and treaties that speak for themselves, are the best evidence of their contents, and to which no response is required.  Dakota Access denies the remaining allegations contained in this Paragraph.  To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

242.    This Paragraph contains legal allegations that purport to characterize a federal trust responsibility and the Flood Control Act of 1944, which speaks for itself and is the best evidence of its contents, and to which no response is required.  The rest of this Paragraph is denied as vague and ambiguous.

243.    This Paragraph contains allegations that purport to characterize a Department of Defense Instruction which speaks for itself and is the best evidence of its contents, and to which no response is required.  Dakota Access denies the remaining allegations in this Paragraph.

244.    This Paragraph consists of conclusions of law to which no response is required.

245.    This Paragraph consists of conclusions of law to which no response is required. To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

## VIII.   EIGHTH CLAIM FOR RELIEF
## VIOLATION OF FLOOD CONTROL ACT

246.    Dakota Access incorporates its answers to the allegations in all preceding Paragraphs.

247.    This Paragraph consists of conclusions of law to which no response is required.

248.    This Paragraph consists of conclusions of law to which no response is required. To the extent this Paragraph contains allegations of violations of law, such allegations are denied.

## IX.    NINTH CLAIM FOR RELIEF
## FAILURE TO PROMULGATE REGULATIONS

249.[1]    Dakota Access incorporates its answers to the allegations in all preceding

Paragraphs.

250.    This Paragraph contains allegations that purport to characterize the MLA, which

speaks for itself and is the best evidence of its contents, and to which no response is required.

251.    This Paragraph contains allegations that purport to characterize the MLA, which

speaks for itself and is the best evidence of its contents, and to which no response is required.

252.    This Paragraph contains legal conclusions which require no response.

253.    This Paragraph contains legal conclusions which require no response.

254.    This Paragraph consists of conclusions of law to which no response is required.

To the extent this Paragraph contains allegations of violations of law, such allegations are

denied.

## PRAYER FOR RELIEF

Paragraphs 1-13 characterize Intervenor-Plaintiff's prayer for relief, to which no response

is required.

## ALL CLAIMS

Dakota Access denies each and every allegation of the Complaint not expressly admitted

above.

## AFFIRMATIVE DEFENSES

Dakota Access alleges the following affirmative defenses to Intervenor-Plaintiff's

Complaint without assuming the burden of proof where such burden is otherwise on the

---

[1]    Beginning with this Paragraph, the Tribe's paragraph numbering reverts to Paragraph 149 *et seq.*
Assuming this is an error, and for the purpose of clarity, Dakota Access will continue numbering its Paragraphs in
order.

Intervenor-Plaintiff pursuant to applicable substantive or procedural law.  Dakota Access reserves the right to amend or supplement its Affirmative Defenses.

1. Intervenor-Plaintiff's claims are barred, in whole or in part, because Intervenor-Plaintiff lacks standing to pursue its claims.

2. Intervenor-Plaintiff's claims are barred, in whole or in part, because Intervenor-Plaintiff did not exhaust its administrative remedies before invoking the jurisdiction of this Court.

3. Intervenor-Plaintiff's claims are barred, in whole or in part, by applicable statutes of limitation.

4. Intervenor-Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

5. Intervenor-Plaintiff's claims are barred by the doctrine of laches.

6. Intervenor-Plaintiff's claims are barred, in whole or in part, because they were never raised in the administrative rulemaking process.

7. Intervenor-Plaintiff's claims are barred by the doctrine of unclean hands on grounds including but not limited to Intervenor-Plaintiff's refusal to participate in consultations with the Corps or Dakota Access and/or because of Intervenor-Plaintiff's unlawful conduct.

8. Intervenor-Plaintiff's claims are barred by the doctrine of estoppel because of Intervenor-Plaintiff's refusal to participate in consultations with the Corps or Dakota Access.

9. Without any admission by Dakota Access that Intervenor-Plaintiff suffered injury or will suffer injury in any way, to the extent the Intervenor-Plaintiff did or will suffer such injury, its claims are barred in whole or in part because it failed to use reasonable means to prevent the alleged injury and failed to use reasonable means to mitigate its injury.

10. Intervenor-Plaintiff's claims fail in whole or in part to the extent it has suffered no injury.

11. Intervenor-Plaintiff's claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

12. Intervenor-Plaintiff's claims are barred, in whole or in part, by the First Amendment to the Constitution of the United States.

13. Intervenor-Plaintiff's requests for injunctive relief are barred because they are overbroad and fail to adequately specify the grounds and scope of the requested injunctive relief.

14. Dakota Access reserves the right to assert further affirmative defenses as Intervenor-Plaintiff makes disclosures and discovery proceeds herein.

## CROSS-CLAIM

Dakota Access asserts the following cross-claim for declaratory relief against the Corps pursuant to Federal Rule of Civil Procedure 13.  This cross-claim seeks a judgment declaring that Dakota Access has the legal right-of-way, within the meaning of the Mineral Leasing Act, to build and operate an oil pipeline beneath the federal land that borders Lake Oahe.  The Corps takes the position that Dakota Access will not have the right-of-way to cross beneath that land until the Corps gives it a document bearing the title of "easement."  Dakota Access contends, instead, that the Corps has already made all of the relevant determinations and given Dakota Access its right-of-way; as a result, this additional documentation (a written easement) is not needed for Dakota Access to cross beneath that land.  Dakota Access has waited more than three months for the Corps to complete the purely ministerial act of delivering a separate document that the Mineral Leasing Act does not even require.  The much preferred course would have been for political interference not to have created such costly delay in the completion of a mere formality.  That would have avoided the need to burden this Court with a legal dispute that has never before arisen for the simple reason that the Corps never before has declined to document

49

an easement after granting regulatory permission for work on federally owned land.  Dakota

Access has waited long enough for the removal of this legal cloud over its right-of-way beneath

federal land at Lake Oahe.

## I.    NATURE OF THE CLAIM

1.    Dakota Access, the company responsible for building the Dakota Access Pipeline,

has been granted every permit, approval, certificate, and right-of-way needed for the pipeline's

construction.  While the vast majority of pipe will be buried safely beneath private land, it will

cross beneath just 1,094 feet of Corps-owned land on the east and west shores of man-made Lake

Oahe, going 90 to 115 feet beneath the bed of Lake Oahe.  The Corps, in its July 2016 final

Environmental Assessment, agreed with Dakota Access that this precise location and method for

crossing the Missouri River would best minimize the environmental impact from building and

operating the pipeline, and concluded that the planned pipeline crossing of federal land at Lake

Oahe would have no significant impact on the environment.  As a result, on July 25, 2016, in a

document called Mitigated Finding of No Significant Impact, the Corps "granted two Section

408 permissions for the DAPL project," the second of which the Corps later described as

"provid[ing] an easement to cross federal property administered by [the Corps] for flood control

& navigation at Lake Oahe, ND."  USACE Information Package, Ex. A, at 3.

2.    After the Corps issued its July 25, 2016 authorization allowing Dakota Access to

cross under Corps lands at Lake Oahe, several Native American tribes filed suit to stop the

pipeline, and a number of protesters embarked on an escalating campaign of violence and

disorder designed to impede the construction of the pipeline through unlawful means.  These

protesters have repeatedly trespassed on private land, assaulted Dakota Access's employees,

committed arson against Dakota Access property and that of its contractors, attempted to shut off

and damage other oil pipelines across the country, vandalized a national monument, and even
fired shots at law enforcement officers.

3.      On September 9, 2016, the district court denied a preliminary injunction motion
that challenged the legality of the Corps's grant of permission to Dakota Access to, among other
things, cross Lake Oahe with the pipeline.  Within minutes of that order—in a joint statement
issued by the Department of the Army, the Department of Justice and the Department of the
Interior (the "September 9 Joint Statement")—the government abruptly announced the Corps
was conducting an unspecified new analysis.  Although Dakota Access had already been granted
permission to cross federally owned property at Lake Oahe, the September 9 Joint Statement
purported to withhold the same authorization until the Corps completed its analysis.

4.      On October 10, 2016—in another joint statement by the Department of the Army,
the Department of Justice and the Department of the Interior—the government issued a second
joint statement (the "October 10 Joint Statement") announcing that it was continuing an analysis
of the authorizations at issue here, and that it "hope[d] to conclude its ongoing review soon."
The October 10 Joint Statement continued to assert that the Corps would purportedly withhold
authorization to cross Corps lands at Lake Oahe until it completed its analysis.

5.      On November 14, 2016, the Department of the Army sent a letter to the Standing
Rock Sioux Tribe, cross-claimant Dakota Access, and Dakota Access's parent company, Energy
Transfer Partners regarding its review of its prior decisions.  D.E. 56-1.  That same day, the
Department of the Army and the Department of the Interior issued a joint statement regarding the
letter. D.E. 56-2.  In the letter, the Army stated that it had "completed that review, accounting for
information it has received from the Tribes and the pipeline company since September, and has
concluded that its previous decisions comported with legal requirements."  D.E. 56-1 at 1; *see*

*also* D.E. 56-2, at 1 (stating that the Army "has completed the review that it launched on

September 9, 2016").   Nonetheless, and despite again confirming that the permitting and review

process it conducted complied with applicable law, the Army further stated it has "determined

that additional discussion with the Standing Rock Sioux Tribe and analysis are warranted."  D.E.

56-1, at 2; *see also* D.E. 56-2, at 1.  The Army accordingly invited the Standing Rock Sioux

Tribe, but not Dakota Access, "to engage in discussion" regarding "potential conditions on an

easement for the pipeline crossing."  D.E. 56-1, at 2.  The Corps promised, as it had two months

earlier when this process began, that this new discussion would "be completed

expeditiously."  *Id.*

      6.     The Corps and Dakota Access disagree about the legal significance of the July 25,

2016 document—*i.e.*, the Mitigated Finding of No Significant Impact.  Dakota Access seeks a

declaratory judgment to resolve the question whether the Corps's decision in that document

(at 1) "to allow the proposed Dakota Access Pipeline (DAPL) Project to cross federal real

property interests administered by the [Omaha] District," including where it would "cross …

federally owned property at Lake Oahe" in North Dakota, satisfies all of the requirements for the

grant of a right-of-way under the Mineral Leasing Act to cross the same federally owned

property.  Administrative Record ("AR") 71174.  The Corps has said publicly that an easement is

also needed.  Had the Corps provided proper documentation of the easement, Dakota Access

would have had no need to dispute the Corps's view.  The Mineral Leasing Act requires only that

a right-of-way be granted, not that a document titled an "easement" be issued.  Because the July

25, 2016 permission and subsequent actions do everything necessary to grant Dakota Access a

right-of-way under the Mineral Leasing Act, and because the Corps's intransigence in

completing its review has already cost Dakota Access hundreds of millions of dollars and will

continue to impose costs on Dakota Access, Dakota Access seeks a declaratory judgment removing the legal cloud over its right-of-way under the Mineral Leasing Act, allowing it to engage in construction at Lake Oahe without facing the risk of government legal action for doing so.

## II.      PARTIES

7.      Cross-claimant Dakota Access LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Dallas, Texas. Dakota Access owns and is constructing the pipeline at issue here.

8.      Cross-defendant U.S. Army Corps of Engineers is an agency of the United States government, a division of the U.S. Army, and part of the U.S. Department of Defense.  The Corps has statutory authority to issue rights-of-way over land under its control.  10 U.S.C. § 2668; 33 U.S.C. § 408.

## III.      JURISDICTION AND VENUE

9.      This Court has jurisdiction to hear this cross-claim, and has authority to issue relief, under 5 U.S.C. §§ 701-706 and 28 U.S.C. §§ 1331, 1367, 2201.

10.      Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(A) and (B), because this is an action against an agency of the United States, the Corps principally resides in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

11.      This cross-claim arises out of the occurrence that is the subject matter of the original action—the Corps's granting of permission for pipeline construction within the jurisdiction of the Corps, including the federally owned land at Lake Oahe.

12.     There is an actual controversy between Dakota Access and the Corps.  In its Joint Statement with the Department of Justice and the Department of the Interior, the Corps announced that it would somehow withhold authorization of the pipeline's crossing of federal land at Lake Oahe until the Corps's new unspecified analysis is complete.  In its November 14, 2016 letter, the Corps reiterated that while new "discussions and analysis are ongoing, construction on or under Corps land bordering or under Lake Oahe cannot occur because the Army has not made a final decision on whether to grant an easement."  D.E. 56-1, at 2.  Dakota Access contends that no additional governmental authorization or documentation is required for it to cross federal land at Lake Oahe.  Dakota Access faces the threat of legal action by the federal government, including claims for penalties, if it proceeds with the construction beneath federal land without first obtaining a judgment declaring that it has a right-of-way to do so.  The delay has already cost Dakota Access more than $450 million dollars.  Further delay will cost Dakota Access tens of millions of dollars per month thereafter, none of which can be recovered. Moreover, the value of land rights that Dakota Access has purchased, and land that it has modified, over the pipeline route is adversely affected by delay.

## IV.     FACTUAL ALLEGATIONS

### A.     <u>Regulatory Background</u>

13.     No federal agency is assigned to regulate the siting of a crude oil pipeline or has been assigned to contemplate the conformance of a crude oil pipeline siting, routing or national level permitting in interstate commerce pursuant to NEPA.  Instead, federal agency jurisdiction, if any, over the construction and operation of an oil pipeline stems from the general scope of the relevant agency's regulatory scheme for distinct portions of a pipeline in conformance with other federal rules, policies or jurisdiction, but no single agency has overall jurisdiction to make a

direct agency action for the sole purpose of permitting or authorizing a crude oil pipeline.  The

Corps has jurisdiction over oil-pipeline construction to the extent the pipeline crosses or

otherwise affects a water of the United States.

14.     The Rivers and Harbors Act ("RHA") authorizes the Corps to grant permissions

to persons to engage in activities that could potentially injure, obstruct, or impair the usefulness

of a structure built by the United States for the improvement of navigable waters or flood

prevention.  33 U.S.C. § 408.  Under Section 408, the Corps may "on the recommendation of the

Chief of Engineers, grant permission for the alteration or permanent occupation or use of any of

the aforementioned *public works* when in the judgment of the Secretary such occupation or use

*will not be injurious to the public interest and will not impair the usefulness of such work*."  *Id.*

(emphasis added).

15.     By regulation, the Corps has delegated to District Engineers the Section 408

responsibilities of the Chief of Engineers.  *See* 33 C.F.R. § 208.10(a)(5).  The Corps has also

delegated its Section 408 permission authority to its District Commanders.  Thus, if the District

Engineer makes a no-adverse-effect determination, the District Commander is authorized to

approve a Section 408 permission application.

16.     When a pipeline crosses land controlled by the Corps, a right-of-way or permit is

required.  The Mineral Leasing Act authorizes the "appropriate agency head" to grant "[r]ights-

of-way through any Federal lands" "for pipeline purposes."  30 U.S.C. § 185(a).  For federal land

within the Corps's control, the Secretary of the Army is the appropriate agency head within the

meaning of this statute.  The Secretary or his delegate may grant "easements for rights-of-way" if

they "will not be against the public interest."  10 U.S.C. § 2668; *see* Army Reg. 405-80 ¶ 3-1.  A

right-of-way takes effect after notice of the agency's intent to grant the right-of-way is given to

Congress.  30 U.S.C. § 185(w); 10 U.S.C. § 2662.

**B.**     **The Dakota Access Pipeline**

17.     In early 2014, Dakota Access began planning the Dakota Access Pipeline.  The

pipeline will run 1,172 miles from the Bakken region of North Dakota on a southeast path,

passing through South Dakota and Iowa, and ending in Patoka, Illinois.  The planned route runs

approximately 4 feet below the surface in some places, and up to 120 feet below the surface in

others.  The diameter of the pipeline varies between 12 inches and 30 inches, and the pipeline is

expected to have a transportation capacity of 570,000 barrels of oil per day, with expected

volume on day one of 450,000 barrels per day.  The total cost of the pipeline is $3.8 billion, all

paid with private funds.

18.     The pipeline will cross under the Missouri River in North Dakota at Lake Oahe.

Lake Oahe is a man-made body of water created by the Corps in 1958.  The part of the pipeline

passing under Lake Oahe will be placed between 95 and 115 feet *below* the Missouri River bed.

19.     Dakota Access carefully planned the pipeline route to minimize as far as

practicable any effects on cultural or sensitive environmental resources.   Dakota Access hired

professional archeologists who surveyed the entire pipeline route in North and South Dakota.

Indeed, while the pipeline travels only about 359 miles in North Dakota, the archeologists

surveyed nearly twice that distance in carrying out Dakota Access's plan to reduce impacts on

cultural resources.  Through survey efforts and working with tribes who chose to participate in

consultations, Dakota Access changed the pipeline route 140 times in North Dakota alone to

avoid historic sites.

20.     Dakota Access also sought to minimize any potential impact by routing the

pipeline where the ground had already been dug up or otherwise disturbed by other utilities.  For

example, at and leading up to the crossing at Lake Oahe, Dakota Access sought to avoid cultural sites and environmentally sensitive locations by routing the pipeline through so-called "brownfield" sites.  That is, the planned pipeline route runs parallel with, and in close proximity to, a natural gas pipeline (comprising two side-by-side pipelines) installed underground in the 1980s and an overhead power transmission line.  This "co-location" of the three utility routes includes the point at which the pipeline will cross Lake Oahe.

21.     Shortly after the initial pipeline route was determined, Dakota Access began to secure rights of way along that route.  Through contracts with owners of 3,686 tracts of private property, the company eventually acquired the rights to a 400-foot-wide construction corridor over the length of the pipeline.

**C.     Dakota Access Begins The Regulatory Approval Process With The Corps**

22.     Because the Corps has jurisdiction over Lake Oahe and also owns the land on either side of it, various federal statutes, including Section 408 of the Rivers and Harbors Act and Section 185 of the Minerals Leasing Act, required Dakota Access to obtain permission from the Corps to cross under Lake Oahe, including the federal land on each shore.

23.     On October 21, 2014, Dakota Access submitted paperwork formally beginning the Section 408 process for the Corps to grant Dakota Access permission to drill from one side of Lake Oahe to the other, crossing approximately 500 feet of Corps-owned lands on either shoreline of the Lake, and lay pipeline in that path.  The method of drilling—Horizontal Directional Drilling or HDD—involves drilling holes in private land on each side of the lake and continuing the drilling below ground until it crosses beneath the federal land and then the lake itself.  The pipeline will be placed more than 100 feet beneath the bed of Lake Oahe, unlike the shallow crossing made by the Northern Border natural gas pipeline.

24.     Dakota Access also needed to secure a Section 408 permission from the Corps in a second location in North Dakota across an overland "flowage easement" farther up the Missouri River at Lake Sakakawea.

25.     The Corps's process for granting the Section 408 permission and the right-of-way pursuant to the Minerals Leasing Act are part of a single regulatory act and proceeding and culminated in a single decisional document on July 25, 2016.

**D.     The Corps Finalizes All Regulatory Approvals For Construction Of The Pipeline Under Lake Oahe**

26.     As part of the process for receiving authorization to cross Lake Oahe, the Corps issued a Draft Environmental Assessment.  It covered both Section 408 permissions needed from the Corps's Omaha District: (1) the Lake Oahe Crossing; and (2) the Lake Sakakawea crossing. The Corps published the draft Environmental Assessment for public comment on December 8, 2015 and accepted comments through January 8, 2016.

27.     The Environmental Assessment fully considered all of the factors that govern the grant of the right-of-way.

28.     On June 7, 2016, Rick Noel, the Real Estate Contracting Officer and Chief of the Corps's Civil Branch's Real Estate Division in Omaha, confirmed that the Section 408 permission and the grant of a right-of-way to cross Corps-owned Lake Oahe was a single approval.  Referring to the Environmental Assessment for the crossing at Lake Oahe, Noel wrote that the Corps "may have a decision on the EA/Section 408 in the near future" and, "[i]n anticipation of that occurring, I am finalizing the easement[.]"  Noel had only two questions: "to whom should [he] send the easement for signature" and would Dakota Access need to be on Corps property (and, hence, get a temporary building permit) when it commenced  its drilling beneath Lake Oahe.  (The answer to his second question was that Dakota Access did not need a

building permit; all work, including all drilling, would take place on private land.)  Noel's e-mail also stated:  "After receiving your response" to the two questions, "I will complete the easement and have it ready to be sent back to you after" two other steps that are tied to the Section 408 permission process:  the approval and signing of "the environmental documents" and receipt of "any site specific conditions" to add to the easement.

29.     On June 10, 2016, the Chief of the Recreation and National Wildlife Branch of the Corps's Omaha division sent a memorandum to the Commander of the Omaha division with the relevant approvals for Dakota Access's right-of-way under the federal land at Lake Oahe. The memorandum stated that the Corps's technical reviewers did not believe that granting the right-of-way would be injurious to the public interest, nor would it impair the usefulness of work built by the United States.

30.     On July 19, 2016, the Omaha District's coordinator for Section 408 right-of-way requests, Brent Cossette, concurred that Dakota Access's requested right-of-way met all legal and policy requirements.  Cossette also concluded that Dakota Access's application did not fall within any of the categories that might trigger the need for a higher-ranking official to approve the right-of-way; it could be granted by the Omaha District commander.

31.     On July 25, 2016, the Corps issued its final Environmental Assessment and its FONSI, signed by Col. John W. Henderson, the Omaha District Commander.  Col. Henderson has the authority, as delegated by the Army Secretary, to conduct and approve reviews under NEPA.  33 C.F.R. § 230.5.  The FONSI that Col. Henderson signed states that the Environmental Assessment was "prepared to evaluate the potential effects of" a decision by the Omaha District "granting permission under Section [408] . . . to Dakota Access . . . to allow the proposed Dakota Access Pipeline (DAPL) Project to cross federal real property interests administered by the

District."  It added:  "Specifically, the DAPL project would cross federal flowage easements near the upper end of Lake Sakakawea, . . . and federally-owned property at Lake Oahe."  The Corps made clear in this document that it "ha[d] independently evaluated and verified the information and analysis undertaken in the [Environmental Assessment] and takes full responsibility for the scope and content contained [t]herein."

32.     The Corps's final Environmental Assessment itself likewise states that it was prepared to "evaluate the effects of the" Corps "granting permission to Dakota Access . . . to place a portion of the Dakota Access Pipeline Project (DAPL Project) on federal real property interests acquired and managed for the Garrison Dam/Lake Sakakawea and Oahe Dam/Lake Oahe Projects in North Dakota."  AR 71225.  In fact, the Environmental Assessment analysis was expressly focused on determining whether to allow rights of way at Lake Sakakawea and Lake Oahe:  "The analysis is limited to the effects of allowing the pipeline to cross federal flowage easements near Lake Sakakawea and federally owned lands at Lake Oahe in North Dakota, to determine whether the placement of the pipeline *on federal real property interests* is injurious to the public interest or will impair the usefulness of *the federal projects*."  AR 71225 (emphases added).

33.     The "Purpose and Need" section of the FONSI also made clear that the "purpose and need of the federal action" was "to determine whether" the Corps "may grant permission for Dakota Access to place the pipeline on federal real property interests acquired and managed by" the Corps "for the Garrison Dam/Lake Sakakawea and Oahe Dam/Lake."  AR 71174; *see* AR 71175 ("The portion of the DAPL project relevant to the EA and this FONSI is the portion that Dakota Access proposes to construct on Corps-owned lands and flowage easements.").

34.     The FONSI also set forth various "Conditions of Easement (Lake Oahe crossing)," confirming that the Section 408 permissions also served to grant Dakota Access a right-of-way to cross the Corps-owned lands at Lake Oahe.  The FONSI included several "conditions" that "will be placed on real estate outgrants."  AR 71176.  In other words, the FONSI was issued after determining conditions needed for the right-of-way to cross federal lands.  The Conclusion section of the document confirms the determination that, with the listed easement conditions in place, the pipeline "will not impair the usefulness of the federal projects." AR 71179.

35.     The FONSI concluded with a statement by Col. Henderson that he had "evaluated the anticipated environmental, economic, cultural, and social effects, and any cumulative effects of the [Lake Oahe crossing] and determined that [it] *is not injurious to the public interest and will not impair the usefulness of the federal projects*."  AR 71179 (emphasis added).

36.     On August 2, 2016, Noel delivered to Dakota Access a "fully executed copy of Consent No. DACW45-9-16-8071," providing formal consent to construct, operate, and maintain the pipeline at Lake Sakakawea.  The easement conditions for Lake Sakakawea can *only* be satisfied if the Corps also granted Dakota Access a right-of-way to run the pipeline under Corps-owned lands at Lake Oahe.  For example, the consent to easement for Lake Sakakawea requires training exercises (a form of testing) to occur on "alternating schedules" after the pipeline is complete, with an exercise at Lake Oahe during the first triennial cycle, followed by an exercise at Lake Sakakawea the next triennial cycle, following by another exercise at Lake Oahe the next triennial cycle, and so forth.  These conditions confirm that the July 25, 2016 permissions included a right-of-way for Dakota Access to cross federal land at Lake Oahe.

37.     On August 16, 2016, Thomas Tracey, District Counsel to the Omaha District, sent an e-mail to counsel for Dakota Access attaching the paperwork for the Lake Oahe right-of-way, writing:  "Here is the Section 408 permission package for the Oahe crossing. . . . I will note that this document has not been released to the public, through posting on our external website, so I would ask that you maintain this document in a close-hold nature."  The package includes several documents that treat the (already signed) consent easement at Lake Sakakawea and the right-of-way for federal land at Lake Oahe as a single decision.  These include Colonel Henderson's approval signature, dated July 25, 2016, on a Section 408 decision document with the subject line:  "Dakota Access Pipeline Project, Garrison Project (Consent Flowage Easements), Oahe Project (Easement)."  The document stated that "technical reviewers have reviewed and have determined the request to not be injurious to the public interest and not impair the usefulness of work built by the United States."  Also in the package is a record of the determination that a "final decision by the Director of Civil Works at HQUSACE" was not needed based on answers of "no" to all seven questions relevant to the potential need for a higher approval level; "therefore, a Section 408 decision may be rendered by the District Commander."  *See* Summary of Findings, dated July 19, 2016, at 2; Section 408 Determination Checklist.  The signed approvals of more than a dozen Corps personnel appear in the approval package.

38.     Dakota Access has not previously challenged the Corps's public position that the Section 408 permission and the right-of-way, although subject to the same requirements and assessed in a single proceeding, were two separate authorizations requiring separate documentation.  Recently, though, in a November 7, 2016 document distributed to all Corps personnel by the Corps itself, the Corps acknowledged that the July 25, 2016 Section 408 permission "provided an *easement to cross federal property* administered by [the Corps] for

62

flood control & navigation *at Lake Oahe, ND*." *See* Ex. A, at 3 (emphasis added).  This contradicts the Corps's public position that the right-of-way requirements under 30 U.S.C. § 185(a) are somehow different from the Section 408 permissions.

39.   The Corps's regulatory decisions regarding the Dakota Access pipeline, including its July 25, 2016 permission, were widely reported in the media, and both the President and members of Congress have publicly commented on the project.

**E.   After The District Court Denies Standing Rock's Motion For A Preliminary Injunction, The Government Attempts to Block Pipeline Construction By Purporting To Withhold Authorization That Had Already Been Granted**

40.   Almost immediately after the Court denied the Standing Rock Sioux Tribe's motion for preliminary injunction, the Department of Justice, the Department of the Army, and the Department of Interior issued the September 9 Joint Statement, in which they said that "the Army will not authorize constructing the Dakota Access pipeline on Corps land bordering or under the Lake Oahe site until it can determine whether it will need to reconsider any of its previous decisions regarding the Lake Oahe site under the National Environmental Policy Act (NEPA) or other federal laws."  The government did not elaborate as to what decisions it planned to determine were necessary to reconsider, or what about them was open to being reconsidered, nor did the government distinguish the previously granted permission from the authorization it said it was withholding.  The government also asked the company to "voluntarily pause all construction activity within 20 miles east or west of Lake Oahe."

41.   The government made this announcement even though Dakota Access had already satisfied every precondition for a right of way to cross federal land at Lake Oahe.

42.   At a status hearing on September 16, 2016, the Court questioned whether counsel for the Corps complied with its "duty of candor to the tribunal, when [it] knew, and apparently had known for some time . . . that [the government] would reverse [its] opinion."  Sept. 16, 2016

Hr'g Tr. 5-6.  Government counsel stated that the right-of-way was being held up pending

potential reconsideration of the Corps's prior decisions under NEPA and the NHPA.  *Id.* at 9.  He

added that the change in course was driven by "conversations and considerations" between the

Department of Justice, the Department of the Interior, and the Department of the Army.  As one

Department of Justice lawyer explained to the Court:

> And I will tell you honestly that while I was not personally involved in those
> conversations, they were happening at a level higher than I was involved, those
> conversations were literally on an ongoing basis, including the content, what
> would be said, conversations from agency to agency about what we could and
> could not do appropriately given the situation and the ongoing litigation.

*Id.* at 12.

43.     The Department of the Army's November 14, 2016 letter confirms that the Army

has "completed [its] review, accounting for information it has received from the Tribes and the

pipeline company since September, and has concluded that its previous decisions comported

with legal requirements."  D.E. 56-1, at 1; *see also* D.E. 56-2, at 1 (stating that the Army "has

completed the review that it launched on September 9, 2016").  Yet, inexplicably, the letter also

states that "additional discussion with the Standing Rock Sioux Tribe and analysis are

warranted," D.E 56-1, at 2; *see also* D.E. 56-2, at 1, and it has invited the Standing Rock Sioux

Tribe, but not Dakota Access, "to engage in discussion regarding potential conditions on an

easement for the pipeline crossing."

## V.     COUNT I: DECLARATORY JUDGMENT

44.     All prior paragraphs are incorporated herein by reference.

45.     On July 25, 2016, the Corps determined that Dakota Access's request for "an

easement on Corps-owned lands with a 30- inch light crude oil pipeline" at Lake Oahe would

"not be injurious to the public interest and not impair the usefulness of work built by the United

States."  AR 71181.  In citing 33 U.S.C. § 408 as its authority for this action, *see* AR 71181, the

Corps made the full determination necessary to grant a right-of-way under 30 U.S.C. § 185(a)—

namely, that the right of way "not be against the public interest."  10 U.S.C. § 2668.

46.     A right-of-way is commonly defined as the right of passage over another person's

land.  *Wilderness Soc. v. Morton*, 479 F.2d 842, 853 (D.C. Cir. 1973) (interpreting the meaning

of "right-of-way" in Section 185).  Thus, a "right of way is nothing more than a special and

limited right of use."  *Id.* at 854 (citation omitted).

47.     The Corps granted Dakota Access a right-of-way in the Mitigated Finding of No

Significant Impact document by allowing it to use property of the federal government for a

special use: the installation and operation of an oil pipeline.  That document expressly states that

Dakota Access will use the authorization to alter Corps-owned lands.  Section 408 itself gives the

Secretary of the Army authority to grant permission "for the alteration or permanent occupation

or use of" harbor or river improvements when the occupation or use "will not be injurious to the

public interest and will not impair the usefulness of such work."  33 U.S.C. § 408.  The July 25,

2016 determination therefore grants a "[r]igh[t]-of-way" to Dakota Access "for pipeline

purposes."  30 U.S.C. § 185(a).

48.     Section 185 does not require that "[r]ights-of-way" granted by the relevant agency

be denominated as "easements" or even that they identify Section 185 as the relevant statutory

authority.  The provision refers to rights-of-way or permits; it does not mention easements.  *See*

30 U.S.C. § 185(c)(1); *see also Sierra Club v. U.S. Forest Serv.*, 828 F.3d 402, 404 (6th Cir.

2016) (noting that the U.S. Forest Service issued a "special use permit" pursuant to

Section 185(a) to construct and operate an oil pipeline); *Wilderness Soc.*, 479 F.2d at 854

(finding that a Bureau of Land Management "special land use permit" for construction of a

pipeline fell under the terms of Section 185).  Nor does the statute require a separate document

beyond the permit that has been issued for Dakota Access to cross Corps property.  The

substance of the document, not its title, is dispositive.

49.     Section 185(w) directs agency heads to notify two congressional committees

when it receives applications for rights-of-way for pipelines of 24 inches or more in diameter.

The Corps has provided that notice.  The same provision also requires notice when the Corps

grants the right-of-way.  Upon information and belief, both committees are already aware of the

Corps's July 25, 2016 authorization allowing the pipeline to cross federal real property interests

at Lake Oahe, and the declaratory relief requested would provide the required notice as well.

After the Court grants the relief requested, the Corps would also be free to notify Dakota Access

of the amount needed, pursuant to Section 185(l), to reimburse the Corps for the costs of

processing the right-of-way application.  Dakota Access stands ready to make prompt payment

of the amount required by that provision.

50.     For all of these reasons, the Court should take the Corps at its own word, *see*

USACE Information Package, Ex. A, at 3, by issuing a judgment declaring that Dakota Access

has the legal right-of-way under Section 185 of the Mineral Leasing Act to construct, operate,

and maintain a light crude oil pipeline under federal land at Lake Oahe.

## VI.     PRAYER FOR RELIEF

51.     WHEREFORE, for all the reasons stated herein, Dakota Access prays for an order

and judgment:

a.     Declaring that the Corps has issued a right-of-way under 30 U.S.C.

§ 185(a) that allows Dakota Access to construct, operate, and maintain the

pipeline beneath federal land at Lake Oahe, North Dakota, and that the

right-of-way is subject to the "Conditions of Easement (Lake Oahe)" set

forth in the July 25, 2016 Mitigated Findings of No Significant Impact;

b.    Awarding Dakota Access its reasonable costs, including attorneys' fees,

incurred in bringing this action;

c.    Granting such other and further relief as this Court deems just and proper.

Dated:  November 15, 2016

Kimberly H. Caine
William J. Leone (*Pro Hac Vice* granted)
Robert D. Comer (*Pro Hac Vice* granted)
NORTON ROSE FULBRIGHT US LLP
799 9th St. NW, Suite 1000
Washington, D.C.  20001-4501
(202) 662-0200

Edward V. A. Kussy
Robert D. Thornton
Alan M. Glen
NOSSAMAN LLP
1666 K Street, NW, Suite 500
Washington, DC 20006
202-887-1400

/s/ William S. Scherman
William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
(202) 530-9557 (fax)
wscherman@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2016, I electronically filed the

foregoing document with the Clerk of the Court for the U.S. District Court for the District of

Columbia using the CM/ECF system.  Service was accomplished by the CM/ECF system on the

following counsel:

Patti A. Goldman
Jan E. Hasselman
EARTHJUSTICE
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
pgoldman@earthjustice.org
jhasselman@earthjustice.org

*Counsel for Plaintiff Standing Rock Sioux*
*Tribe*


Nicole E. Ducheneaux,
FREDERICKS PEEBLES & MORGAN, LLP
3610 North 163rd Plaza
Omaha, NE 68116
(402) 333-4053
nducheneaux@ndnlaw.com

Conly J. Schulte
FREDERICKS PEEBLES & MORGAN, LLP
1900 Plaza Drive
Louisville, CO  80027
(303) 673-9600
cschulte@ndnlaw.com

*Counsel for Plaintiff–Intervenor Cheyenne*
*River Sioux Tribe*

Matthew M. Marinelli
Erica M. Zilioli
U.S. DEP'T OF JUSTICE
Environment & Natural Resources Division
P.O. Box 7415
Washington, D.C.  20044
(202) 514-2000
Matthew.Marinelli@usdoj.gov
Erica.zilioli@usdoj.gov

*Counsel for Defendant U.S. Army Corps of
Engineers*

  /s/ William S. Scherman
William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Defendant–Intervenor Dakota
Access, LLC*