**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>                    Plaintiff,<br><br>and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>                         Plaintiff-Intervenor,<br><br>     v.<br><br>UNITED STATES ARMY CORPS OF<br>ENGINEERS,<br><br>                    Defendant,<br><br>and<br><br>DAKOTA ACCESS, LLC,<br><br>                         Defendant-Intervenor. | Case Number: 16-cv-1534 (JEB) |

<u>**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF EXPEDITED
MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**</u>

   Defendant-Intervenor Dakota Access, LLC respectfully moves to supplement the

incomplete administrative record that the United States Army Corps of Engineers lodged with

the Court on November 10, 2016.  *See* D.E. 55.  The missing records relate to various actions

and announcements by the government during the course of this litigation.  The records missing

from the record submitted by the Corps are critical to this lawsuit for two related reasons.  First,

they directly bear on Plaintiffs' claims that the Corps did not comply with the law when it

decided to allow Dakota Access to build an oil pipeline beneath Lake Oahe in North Dakota.

Second, they also are necessary for the Court to resolve Dakota Access's cross-claim, filed

today, seeking a declaratory judgment that Dakota Access has a legal right-of-way to build

beneath the federal land bordering Lake Oahe.

## Background

Under review in this case are federal authorizations that the Corps announced and issued

for the Dakota Access Pipeline ("DAPL") Project on July 25, 2016.  Specifically, the Corps on

that date:  (i) issued a final Environmental Assessment under NEPA finding no significant

adverse impact from allowing the pipeline to run beneath at Lake Oahe, North Dakota, including

federal land on the lake's shores; (ii) issued a number of other pre-construction notice

authorizations under Nationwide Permit 12; and (iii) granted Dakota Access a Rivers and

Harbors Act Section 408 permission, which "provided an easement to cross federal property

administered by USACE for flood control & navigation at Lake Oahe, ND."  Cross-Claim,

Ex. A, at 3.

Plaintiffs allege in their claims that these authorizations violate federal law.  The Court

has already rejected a preliminary injunction motion based on alleged violations of one of those

laws—the National Historic Preservation Act.  That decision is the subject of a pending appeal.[1]

On September 9, 2016, shortly after this Court denied the preliminary injunction motion,

the Department of the Army, the Department of the Interior, and the Department of Justice

issued a joint statement announcing that the Army "will not authorize constructing the Dakota

Access pipeline on Corps land bordering or under Lake Oahe until it can determine whether it

will need to reconsider any of its previous decisions regarding the Lake Oahe site under the

National Environmental Policy Act (NEPA) or other federal laws."  *See* Press Release, Dep't of

---

[1]   On October 9, 2016, the Court of Appeals for the District of Columbia Circuit denied
      Plaintiff Standing Rock Sioux Tribe's motion for an injunction pending appeal of this
      Court's denial of its request for a preliminary injunction.

Justice, Joint Statement from the Department of Justice, the Department of the Army and the Department of the Interior Regarding Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers (Sept. 9, 2016), https://www.justice.gov/opa/pr/joint-statement-department-justice-department-army-and-department-interior-regarding-standing.  "Therefore," the statement continued, "construction of the pipeline on Army Corps land bordering or under Lake Oahe will not go forward at this time."  *Id.*

On October 10, 2016, the Department of the Army, the Department of Justice, and the Department of the Interior issued a second joint statement announcing that the government was continuing its review of the authorizations at issue here, and that it "hope[d] to conclude its ongoing review soon."  Press Release, Dep't of Justice, Joint Statement from Department of Justice, Department of the Army and Department of the Interior Regarding D.C. Circuit Court of Appeals Decision in Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers (Oct. 10, 2016), https://www.justice.gov/opa/pr/joint-statement-department-justice-department-army-and-department-interior-regarding-dc.

On November 10, 2016, the Corps lodged the administrative record with this Court.  *See* D.E. 55.  That record contains no documents dated after July 26, 2016 relating to the "review" it has apparently been conducting since September 9, 2016, nor does it have any documents after that date relating to the Corps authorizations for construction near Lake Oahe.  In particular, the Corps has lodged no documents showing what the Corps considered as part of a "review" that overlaps in whole or substantial part with the agency actions at issue in this very lawsuit.

Yesterday, November 14, 2016, the Department of the Army sent a letter to the Standing Rock Sioux Tribe, cross-claimant Dakota Access, and Dakota Access's parent company, Energy Transfer Partners, regarding the Army's review of its prior decisions.  D.E. 56-1.  Also

yesterday, the Department of the Army and the Department of the Interior issued a joint

statement regarding the letter.  D.E. 56-2.  In the letter, the Army stated that it had "completed

that review, accounting for information it has received from the Tribes and the pipeline company

since September, and has concluded that its previous decisions comported with legal

requirements."  D.E. 56-1, at 1; *see also* D.E. 56-2, at 1 (stating that the Army "has completed

the review that it launched on September 9, 2016").  The Army further stated that it has

"determined that additional discussion with the Standing Rock Sioux Tribe and analysis are

warranted."  D.E. 56-1, at 2; *see also* D.E. 56-2, at 1.  The Army accordingly invited the

Standing Rock Sioux Tribe, but not Dakota Access, "to engage in discussion" regarding

"potential conditions on an easement for the pipeline crossing."  D.E. 56-1, at 2.  The Corps

promised, as it had two months earlier when this process began, that this new discussion would

"be completed expeditiously."  *Id.*

Today Dakota Access is filing its Answer to the Complaint filed by Intervenor-Plaintiff

Cheyenne River Sioux Tribe.  Included with that Answer is a cross-claim in which Dakota

Access seeks a declaratory judgment declaring that, despite the government announcements

since July 25, 2016, Dakota Access has a legal right-of-way to construct the pipeline beneath

federal land at Lake Oahe.

## ARGUMENT

The Corps should be ordered to complete and add documents to the administrative record

because they are needed to resolve both Plaintiffs' claims and Dakota Access's cross-claim.

With respect to Plaintiffs' claims, Plaintiffs' complaint raises the question of whether the

legal requirements necessary to grant authorization were satisfied as of July 25.  Subsequent

announcements by the Corps and other federal agencies have carefully avoided contradicting the

finding that the July 25 authorizations were valid, lawful, and complete.  To the contrary, the agencies have said that they are *not* reconsidering their decision, that they were merely reviewing to determine whether reconsideration would be appropriate, and then ultimately, yesterday, said that legal requirements had been met.  The legal validity of the July 25 authorizations challenged by Plaintiffs are precisely what the Corps has now reviewed and determined.  Therefore, the documents are relevant to the review of that decision.

With respect to Dakota Access's cross-claim, Dakota Access raises the question of whether any further document is necessary at all beyond the July 25 authorizations.  In the July 25, 2016 final agency action, the Corps authorized Dakota Access to cross federal lands at Lake Oahe after determining that it would not injure the public interest.  However, the agencies injected uncertainty into the process by drawing an artificial distinction, now challenged by Dakota Access in its cross-claim, between the right-of-way and a separate document entitled "easement."  The additional records Dakota Access is seeking here will show that the July 25 determination fully resolved whether it was lawful to allow pipeline construction beneath federally owned land at Lake Oahe.  In addition, they will likely demonstrate arbitrary and capricious political interference with the implementation of a decision that was made, and has now been subsequently validated.  The documents which support the conclusion that "legal requirements have been met" will almost certainly address whether additional authorizations are necessary.  The Court will, therefore, also have the materials needed to grant Dakota Access the declaratory relief requested in its cross-claim.

In the July 25, 2016 document constituting the final agency action that Plaintiffs challenge, the Corps decided "to allow the proposed Dakota Access Pipeline (DAPL) Project to cross federal real property interests administered by the [Omaha] District," including where it

Case 1:16-cv-01534-JEB   Document 58-1   Filed 11/15/16   Page 6 of 14


would "cross . . . federally-owned property at Lake Oahe" in North Dakota.  Mitigated Finding of No Significant Impact at 1.  The Corps referred to this as an "[e]asement" for the "Lake Oahe crossing."  *Id*. at 3.  The Corps made its decision to grant a real estate right-of-way only after determining that "mitigation measures" had been put in place "so that the pipeline would not impair the usefulness of the [federal Corps] projects and the impacts to the environment would be temporary and not significant."  *Id*.  Despite this decision to allow Dakota Access to cross the federal land at Lake Oahe, the Corps's parent agency (the Department of the Army) has since joined the Department of the Interior and the Department of Justice in apparently making a contradictory announcement:  that the Corps will "not authorize" Dakota Access to cross the same land, presumably under the mistaken view that some special form of authorization is required by the statute.

The records being sought by Dakota Access all relate to whether Dakota Access is correct in contending that (i) the July 25 agency action challenged by Plaintiffs includes every determination needed to authorize Dakota Access to cross beneath federal land near Lake Oahe, and (ii) a judgment should be entered declaring that Dakota Access has a lawful right-of-way to build and operate its pipeline there.  The records being sought fall into the following categories:

1.  The September 9, 2016 Joint Statement by the Departments of Justice, the Interior, and the Army purported, for the first time, to withhold indefinitely authorizations that the Corps had already finally decided in July 2016 and that are under review in this very case.  Because the September 9 Joint Statement cannot be reconciled with the express language of the July 2016 documents announcing final agency action, the administrative record will be incomplete without all documents pertaining to the substance of the

September 9 Joint Statement, including a determination whether to revisit any of the previous decisions referenced in that statement.

2.  At this Court's September 16, 2016 Status Conference, counsel for the Corps told the Court that before the three Departments issued their Joint Statement, conversations were "happening at a level higher than I was involved, those conversations were literally on an ongoing basis, including the content, what would be said, conversations from agency to agency about what we could and could not do appropriately given the situation and the ongoing litigation."  D.E. 49, at 12.  Because this Court's review encompasses whether there is a lawful basis for the Corps purporting to withhold authorizations it had already made a final decision to grant in July 2016, all documents considered in developing and issuing the September 9 Joint Statement need to be made part of the record.

3.  At the September 16, 2016 Status Conference, counsel for the Corps also told the Court: "With respect to all authorizations that have already been approved, the Corps is looking at its prior approvals for the purposes of good governance and due diligence, to make sure that it is in compliance with the law."  D.E. 49, at 9.  A complete record for this case, in which Plaintiffs challenge the propriety of those approvals, includes all documents considered in the course of this review.

4.  The October 10, 2016 Joint Statement by the same three Departments stated that the government was continuing its review of the authorizations involved in this lawsuit, and that it "hope[d] to conclude its ongoing review soon."  The record here would not be complete without all documents pertaining to the October 10 Joint Statement, including the determination whether to reconsider any previous decisions, and all documents considered as part of that determination.

5.  On November 4, 2016, and again on November 9, 2016, the Department of the Army

    stated publicly that, because it had no authority to prevent Dakota Access from

    constructing the pipeline, it was requesting a voluntary halt to work on the pipeline.

    Because the potential need for further Corps authorization before Dakota Access

    completes the pipeline is central to the issues in this case, the full record must include

    documents relating to the determination by any of the three Departments that the Corps

    lacks authority to stop pipeline construction and must instead request a voluntary

    construction moratorium at or near Lake Oahe.

6.  On November 14, 2016, the Department of the Army sent a letter to Plaintiff Standing

    Rock Sioux Tribe, Defendant-Intervenor Dakota Access, and non-party Energy Transfer

    Partners.  The Department of the Army and the Department of the Interior also released a

    third joint statement.  The Army confirmed that the "review" begun on September 9 has

    been completed, and that the review concluded that the permits at issue here "comported

    with legal requirements."  D.E. 56-1, at 1.  Because these statements are part of the

    government's reconsideration of the permits at issue in this case, the full record must

    include documents considered in the determinations announced in these most recent

    statements.

7.  The Corps has told Dakota Access on multiple occasions that the entire approval process

    for a right-of-way to cross federal lands bordering Lake Oahe has already been

    completed, that the easement is signed, and that it is only awaiting the ministerial step of

    congressional notification.  Indeed, an internal Corps document dated November 7, 2016

    clearly states that "[o]n 25 JUL 16, USACE Omaha District (NWO) granted two Section

    408 permissions for the DAPL project," the second of which "provided an easement to

cross federal property administered by USACE for flood control & navigation at Lake Oahe, ND." This document does not appear in the administrative record. The record also contains none of the documents relating to the Corps's considerations that are delaying delivery of a written easement. The full record necessary for appropriate review must include all documents that discuss the granting of the July 25, 2016 permissions and that were considered in deciding to announce delay of an easement.

8. In an interview with NowThis news on November 1, 2016, President Barack Obama stated that "the Army Corps is examining whether there are ways to reroute this pipeline." Christine Hauser, *Obama Says Alternate Routes Are Being Reviewed for Dakota Pipeline*, N.Y. TIMES Nov. 2, 2016. The full record must include all documents considered in "examining whether there are ways to reroute th[e] pipeline."

These documents are properly part of the administrative record. The administrative record includes all "documents that were directly or indirectly considered by the" agency. *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 7 (D.D.C. 2006). The Corps is defending the lawfulness of final agency action—its own action—while also announcing that parts of the very same action have been revisited or are somehow incomplete. It is of utmost importance to the parties and the Court that the record be clear on the full scope and nature of the agency action that this Court is reviewing. Otherwise, the legal significance of the Court's judgment will be in serious doubt. The Corps's statements, such as those made jointly with the Departments of Justice, the Interior and the Army, have engendered such doubt. Those statements contradict the July 25 decision to allow a right-of-way for the pipeline to cross federal land at Lake Oahe based on the final determination that doing so would be consistent with the public interest. The Court should require the Corps to supplement the

record with documents needed to confirm the nature and scope of the agency action under review. The same documents will also allow the Court to decide whether Dakota Access is entitled to a judgment declaring that it has a right-of-way to cross federal land with the pipeline.

Dakota Access's requests provide the specificity that this Court has required. *Blue Ocean Institute v. Gutierrez*, 503 F. Supp. 2d 366, 371 (D.D.C. 2007). The circumstances here are highly unusual. The government announced a decision—to allow the pipeline to cross federal land—followed by press statements purporting to have reserved and deferred whether to allow the same pipeline to cross the same federal land. These press statements fail to inform the Court or Dakota Access of the relevant details for this contradictory position. Dakota Access does not know which documents underlie the government's about-face, nor does it know which documents are part of a purported further review. Dakota Access has provided all of the specificity it can in light of its exclusion from the process. *Cf. Oceana, Inc. v. Pritzker*, ___ F. Supp. 3d ___, 2016 WL 6581169, at * 5 (D.D.C. Nov. 4, 2016) ("In many challenges to agency action in which parties seek completion or supplementation of the record, it is not clear whether the sought-after documents actually exist.").

Dakota Access has also overcome the presumption in favor of the completeness of the administrative record as certified. *E.g.*, *Pac. Shores Subdivision*, 448 F. Supp. 2d at 6. That is because the Corps has excluded an *entire class* of documents that it erroneously deemed to be outside the record, which demonstrates, at a minimum, the sort of negligence that overcomes the presumption. *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010).

The Court should require the Corps to provide the requested records regardless of whether they meet the standard for required contents of the administrative record. The Court may order the production of extra-record evidence where "needed to assist a court's review."

*Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 156-57 (D.D.C. 2012).  Such a need is

particularly true where—as here—Plaintiffs raise claims involving NEPA.  *See Cty. of Suffolk v.*

*Sec'y of Interior*, 562 F.2d 1368, 1384 (2d Cir. 1977) (review "in NEPA cases … can sometimes

be determined only by looking outside the administrative record to see what the agency might

have ignored").  For the reasons explained above, the missing documents are needed for the

Court and the parties to ascertain the scope of any judgment that will result from Plaintiffs'

claims.  The two joint statements and other Corps statements have created intense disagreement

over the extent of the authorizations contained in the July 25 decision that this Court is

reviewing.  Records underlying the actions referred to in those statements are needed to resolve,

or at least narrow, that disagreement.

Expedited consideration is appropriate when there is "a high risk of irreparable injury."

*Laster v. Dist. of Columbia*, 439 F. Supp. 2d 93, 100 (D.D.C. 2006).  Delays in this case will

produce just such an injury.  Absent resolution of this case, Dakota Access will suffer millions of

dollars in injuries for each additional month of delay as contractual delivery obligations go

unmet.  These losses will be added to the nearly hundred million dollars already lost because of

the government's delays.  The significant costs of delay demonstrate "good cause" for an

expedited consideration of this motion.  *Achagzai v. Broadcasting Bd. of Governors*, 109 F.

Supp. 3d 67, 69 (D.D.C. 2015); 28 U.S.C. § 1657(a).

## CONCLUSION

For these reasons, Dakota Access's motion should be granted.

Dated:  November 15, 2016

Kimberly H. Caine
William J. Leone (*Pro Hac Vice* granted)
Robert D. Comer (*Pro Hac Vice* granted)
NORTON ROSE FULBRIGHT US LLP
799 9th St. NW, Suite 1000
Washington, D.C. 20001-4501
(202) 662-0200

Edward V. A. Kussy
Robert D. Thornton
Alan M. Glen
NOSSAMAN LLP
1666 K Street, NW, Suite 500
Washington, DC 20006
202-887-1400

/s/ William S. Scherman
William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
(202) 530-9557 (fax)
wscherman@gibsondunn.com

*Counsel for Defendant–Intervenor*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2016, I electronically filed the

foregoing document with the Clerk of the Court for the U.S. District Court for the District of

Columbia using the CM/ECF system.  Service was accomplished by the CM/ECF system on the

following counsel:

> Patti A. Goldman
> Jan E. Hasselman
> EARTHJUSTICE
> 705 Second Avenue, Suite 203
> Seattle, WA  98104
> (206) 343-7340
> pgoldman@earthjustice.org
> jhasselman@earthjustice.org
>
> *Counsel for Plaintiff Standing Rock Sioux
> Tribe*
>
>
> Nicole E. Ducheneaux,
> FREDERICKS PEEBLES & MORGAN, LLP
> 3610 North 163rd Plaza
> Omaha, NE 68116
> (402) 333-4053
> nducheneaux@ndnlaw.com
>
> Conly J. Schulte
> FREDERICKS PEEBLES & MORGAN, LLP
> 1900 Plaza Drive
> Louisville, CO  80027
> (303) 673-9600
> cshulte@ndnlaw.com
>
> *Counsel for Plaintiff–Intervenor Cheyenne
> River Sioux Tribe*

Matthew M. Marinelli
Erica M. Zilioli
U.S. Dep't of Justice
Environment & Natural Resources Division
P.O. Box 7415
Washington, D.C.  20044
(202) 514-2000
Matthew.Marinelli@usdoj.gov
Erica.zilioli@usdoj.gov

*Counsel for Defendant U.S. Army Corps of*
*Engineers*


  /s/ William S. Scherman
William S. Scherman
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Defendant–Intervenor Dakota*
*Access, LLC*