## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STANDING ROCK SIOUX TRIBE, | |
| Plaintiff, | |
| and | |
| CHEYENNE RIVER SIOUX TRIBE, | |
| Plaintiff-Intervenor, | |
| v. | Case Number: 16-cv-1534 (JEB) |
| UNITED STATES ARMY CORPS OF ENGINEERS, | |
| Defendant, | |
| and | |
| DAKOTA ACCESS, LLC, | |
| Defendant-Intervenor. | |

### STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO EXPEDITE

Defendant-Intervenor Dakota Access, LLC respectfully moves to expedite consideration of its cross-claim against the United States Army Corps of Engineers for declaratory relief. This Court possesses inherent authority to expedite consideration and resolution of claims where needed to avoid irreparable harm. This is such a case.

The declaratory relief sought in the cross-claim is needed to resolve a live dispute over whether Dakota Access has a right-of-way to build and operate its oil pipeline beneath two narrow strips of federal land on the shores of Lake Oahe. More than three months ago, the Corps made all of the determinations needed to give Dakota Access a right-of-way within the meaning

of the Mineral Leasing Act to build and operate an oil pipeline beneath federal land that borders Lake Oahe.  Nevertheless, the Corps has since taken the position that Dakota Access will not have its right-of-way to cross beneath the federal land until the Corps acknowledges the existence of a particular document—an "easement."  Bowing to external political pressures, the Corps has refused to document the existence of an easement—a ministerial step that the Mineral Leasing Act does not require.

The Corps's intransigence has already cost Dakota Access more than $450 million.  Each additional day imposes substantial costs and other harms on Dakota Access.  Because important deadlines for the completion of the pipeline loom, Dakota Access seeks, through the cross-claim it filed today, a declaratory judgment removing the legal cloud over its right-of-way under the Mineral Leasing Act.  Those costs and lost time cannot be recovered.  Expedited consideration of this cross-claim is therefore necessary to prevent additional irreparable harm to Dakota Access.  Dakota Access therefore proposes a schedule that would allow for a hearing on its claim on or about January 3, 2017.

## BACKGROUND

The regulatory and factual background underlying Dakota Access's cross-claim is well known to the parties and the Court.  *See* D.E. 57, Cross Claim at ¶¶ 13-43.  On July 25, 2016, the Corps issued a final Environmental Assessment and a Finding of No Significant Impact authorizing Dakota Access to cross federal lands near Lake Oahe with the Dakota Access Pipeline.  The Finding of No Significant Impact document states that the Environmental Assessment was "prepared to evaluate the potential effects of" a decision by the Omaha District "granting permission under" Section 408 of the Rivers and Harbors Act "to Dakota Access . . . to allow the proposed Dakota Access Pipeline (DAPL) Project to cross federal real property interests administered by the District."  It added:  "Specifically, the DAPL project would

2

cross . . . federally-owned property at Lake Oahe." AR 71174. The document concludes by stating that the Corps "evaluated the anticipated environmental, economic, cultural, and social effects, and any cumulative effects of the" Lake Oahe crossing "and determined that [it] *is not injurious to the public interest and will not impair the usefulness of the federal projects*." AR 71179 (emphasis added). The Corps accordingly granted permission pursuant to Section 408 of the Rivers and Harbors Act that, in the Corps's own words, "provided an easement to cross federal property administered by [the Corps] for flood control & navigation at Lake Oahe, ND." Cross-Claim, Ex. A, at 3.

Despite this determination that the pipeline would have no significant injurious effect on the federal land at Lake Oahe, on September 9, 2016, the Department of the Army, the Department of the Interior, and the Department of Justice issued a joint statement announcing that the Corps "will not authorize constructing the Dakota Access pipeline on Corps land bordering or under Lake Oahe until it can determine whether it will need to reconsider any of its previous decisions regarding the Lake Oahe site under the National Environmental Policy Act (NEPA) or other federal laws." *See* Press Release, Dep't of Justice, Joint Statement from the Department of Justice, the Department of the Army and the Department of the Interior Regarding Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers (Sept. 9, 2016), https://www.justice.gov/opa/pr/joint-statement-department-justice-department-army-and-department-interior-regarding-standing. A month later, on October 10, 2016, those agencies issued another joint statement maintaining that those decisions were still under Corps review. Press Release, Dep't of Justice, Joint Statement from Department of Justice, Department of the Army and Department of the Interior Regarding D.C. Circuit Court of Appeals Decision in Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers (Oct. 10, 2016),

https://www.justice.gov/opa/pr/joint-statement-department-justice-department-army-and-department-interior-regarding-dc.

Yesterday, November 14, 2016, the Department of the Army sent a letter to the Standing Rock Sioux Tribe, cross-claimant Dakota Access, and Dakota Access's parent company (Energy Transfer Partners), regarding the Army's review of its prior decisions.  D.E. 56-1.  Also yesterday, the Department of the Army and the Department of the Interior issued a joint statement regarding the letter.  D.E. 56-2.  In the letter, the Army stated that it had "completed that review, accounting for information it has received from the Tribes and the pipeline company since September, and has concluded that its previous decisions comported with legal requirements."  D.E. 56-1, at 1; *see also* D.E. 56-2, at 1 (stating that the Army "has completed the review that it launched on September 9, 2016").  The Army further stated that it has "determined that additional discussion with the Standing Rock Sioux Tribe and analysis are warranted."  D.E. 56-1, at 2; *see also* D.E. 56-2, at 1.  The Army accordingly invited the Standing Rock Sioux Tribe, but not Dakota Access, "to engage in discussion" regarding "potential conditions on an easement for the pipeline crossing."  D.E. 56-1, at 2.  The Corps promised, as it had two months earlier when this process began, that this new discussion would "be completed expeditiously."  *Id.*

Dakota Access took the Corps at its word that documentation of an easement would be forthcoming without significant delay.  Had that happened, it would not be necessary to challenge the Corps's position that the Section 408 permission and the Mineral Leasing Act right-of-way are two separate authorizations requiring separate documentation, when in fact they have identical requirements that the Corps itself applies (as it did here) in a unitary decision-making process.  Because the Corps continues to delay acknowledgement that Dakota Access

has a right-of-way to cross the land in question, the cross-claim Dakota Access filed today seeks

a declaration that Dakota Access has that right-of-way.  In this motion, Dakota Access

respectfully requests expedited consideration of the cross-claim to prevent further irreparable

harm to Dakota Access.

## ARGUMENT

This Court has discretion to "determine the order in which civil actions are heard," and

may expedite consideration for "good cause."  28 U.S.C. § 1657(a); *see also Achagzai v. Broad.*

*Bd. of Governors*, 109 F. Supp. 3d 67, 69 (D.D.C. 2015).  The Court is specifically empowered

to "order a speedy hearing of a declaratory-judgment action." Fed. R. Civ. Pro. 57.  Good cause

exists, and expedited consideration is warranted, when there exists a "high risk of irreparable

injury."  *Laster v. Dist. of Columbia*, 439 F. Supp. 2d 93, 100 (D.D.C. 2006).  That is the case

here.  Absent a declaration from this Court resolving the dispute between the parties over the

status of the right-of-way, Dakota Access will suffer further irreparable harm.  Absent

declaratory relief that resolves the dispute over the parties' rights and liabilities, Dakota Access

faces a real threat of adverse legal consequences if it proceeds with the construction needed to

avoid substantial, unrecoverable financial losses.  Neither option is acceptable.  The legal

consequences of construction beneath federal land without a judgment in hand could be severe.

The cost of waiting for documentation of an easement that may never materialize is tens of

millions of dollars per month, on top of more than $450 million already, none of which can be

recovered.

Irreparable injury flows from those basic facts.  As the Court already knows, further

delay in completion of the pipeline could threaten the very survival of a $3.8 billion privately

funded infrastructure project.  *See* D.E. 22-1, Ex. A. ¶ 54 ("Mahmoud Decl.").  Most pressing,

Dakota Access has long-term transportation contracts with nine shippers to have the pipeline

completed, tested, and in service by January 1, 2017. *Id.* ¶ 70.  Those shippers have the right to

terminate those contracts if that condition is unmet, *id.*, and every day of delay beyond that date

increases the likelihood they will do so.  Expedited consideration and resolution of Dakota

Access's cross-claim would significantly mitigate, if not eliminate, that serious risk of

irreparable harm to Dakota Access.  What is more, if Dakota Access cannot proceed at Lake

Oahe in the near future, the land subject to the right-of-way will have to be temporarily

stabilized, maintained, and protected to preserve its integrity, which would not only cost Dakota

Access, but also result in *more* "land disturbance" than completing construction would.  *Id.* ¶ 61.

Third parties would also suffer irreparable harm.  For instance, the shippers that have

contracts with Dakota Access may be forced to seek alternative arrangements for the transport of

crude oil.  *Id.* ¶ 70.  And Dakota Access has committed to prompt completion of the pipeline in

order to accommodate certain agriculture practices.  Thus, delay in completion of the pipeline

would also result in delay of next year's seed planting in Illinois, to the irreparable detriment of

farmers.  *Id.* ¶ 74.  More broadly, there "would be significant economic impacts to the

communities and the public" through lost tax revenue and jobs.  *Id.* ¶¶ 75-76.

The Corps itself told this Court three months ago that the harm inflicted on Dakota

Access from delay should not be tolerated.  According to the Corps, "both the Corps and Dakota

Access have invested significant time and resources and accommodated timely raised tribal

concerns" and permitting further delay "would only reward Plaintiff's unwillingness to engage

meaningfully in the consultation process."  D.E. 21, at 43.  Indeed, according to the Corps, delay

does "not serve the public interest" and would "encourage parties in the future to decline to

consult and comment and then bring last-minute challenges as construction is underway—

utilizing judicial resources in the process—rather than taking the proper steps to engage in the

planning stages when their concerns can be addressed." *Id.*  Those concerns are equally valid today.

## CONCLUSION

For these reasons, Dakota Access's motion should be granted.

Dated:  November 15, 2016

Kimberly H. Caine
William J. Leone (*Pro Hac Vice* granted)
Robert D. Comer (*Pro Hac Vice* granted)
NORTON ROSE FULBRIGHT US LLP
799 9th St. NW, Suite 1000
Washington, D.C. 20001-4501
(202) 662-0200

Edward V. A. Kussy
Robert D. Thornton
Alan M. Glen
NOSSAMAN LLP
1666 K Street, NW, Suite 500
Washington, DC 20006
202-887-1400

/s/ William S. Scherman
William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
(202) 530-9557 (fax)
wscherman@gibsondunn.com

*Counsel for Defendant-Intervenor*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2016, I electronically filed the

foregoing document with the Clerk of the Court for the U.S. District Court for the District of

Columbia using the CM/ECF system.  Service was accomplished by the CM/ECF system on the

following counsel:

Patti A. Goldman
Jan E. Hasselman
EARTHJUSTICE
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
pgoldman@earthjustice.org
jhasselman@earthjustice.org

*Counsel for Plaintiff Standing Rock Sioux
Tribe*


Nicole E. Ducheneaux,
FREDERICKS PEEBLES & MORGAN, LLP
3610 North 163rd Plaza
Omaha, NE 68116
(402) 333-4053
nducheneaux@ndnlaw.com

Conly J. Schulte
FREDERICKS PEEBLES & MORGAN, LLP
1900 Plaza Drive
Louisville, CO  80027
(303) 673-9600
cschulte@ndnlaw.com

*Counsel for Plaintiff-Intervenor Cheyenne
River Sioux Tribe*

Matthew M. Marinelli
Erica M. Zilioli
U.S. DEP'T OF JUSTICE
Environment & Natural Resources Division
P.O. Box 7415
Washington, D.C.  20044
(202) 514-2000
Matthew.Marinelli@usdoj.gov
Erica.zilioli@usdoj.gov

*Counsel for Defendant U.S. Army Corps of Engineers*

 /s/ William S. Scherman
William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Defendant-Intervenor Dakota Access, LLC*