IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Case No. 1:16-cv-01534 (JEB) <br> ) |
| UNITED STATES ARMY CORPS OF ENGINEERS, | ) <br> ) <br> ) |
| Defendant. | ) <br> ) <br> ) |

**UNITED STATES ARMY CORPS OF ENGINEERS' OPPOSITION TO EXPEDITED MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD**

## I.     INTRODUCTION

Dakota Access's Motion to Supplement effectively seeks to compel the United States Army Corps of Engineers ("Corps") to compile a new administrative record for a decision that the Corps has not yet made – whether to grant or deny Dakota Access's application for an easement to cross Corps-managed Federal land in and around Lake Oahe. Dakota Access's motion should be denied for several reasons. First, the premise of Dakota Access's motion and cross-claim – that the Corps granted it a right-of-way to construct portions of a pipeline under Lake Oahe on July 25, 2016 – would, if true, render inappropriate Dakota Access's request to supplement the record of that decision with documents that were created after the challenged decision was rendered. Second, Dakota Access's assertion that the Court should require the production of extra-record documents because of alleged "intense disagreement" regarding whether the Corps granted Dakota Access all permissions necessary to legally cross Corps-managed land at Lake Oahe – when Dakota Access has repeatedly acknowledged in public statements and filings that it lacked all such permissions – is without merit. Third, the Corps has

1

not made a decision under 30 U.S.C. § 185, much less provided the notice required by that statute to Congress, regarding whether to grant Dakota Access an easement to cross Corps-managed lands at Lake Oahe.  It is impossible for the Corps to compile an administrative record for a decision regarding whether to grant an easement because the Corps has not made a final decision on the easement.   Finally, even if Dakota Access was challenging a final agency action, it is premature for the Corps to compile, review, redact, transmit, and produce an administrative record one week after Dakota Access filed a cross-claim against the Corps.  Indeed, the Army Corps currently anticipates moving to dismiss the cross-claim for want of jurisdiction and should have the opportunity to do so before turning to potential administrative record issues.

## II.    BACKGROUND

On October 21, 2014, Dakota Access initiated the process for requesting "a permanent easement" over Corps-managed lands at Lake Oahe.  Letter from M. Howard, Dakota Access, to B. Cossette, Corps (Oct. 21, 2014) (Ex. 1).  In its June 29, 2015 application for an easement to traverse "federally owned property at Lake Oahe" Dakota Access represented that it entered into "binding long-term transportation and deficiency contracts."  Dakota Access Application for Transportation and Utility Systems and Facilities on Federal Lands (Ex. 2).  Dakota Access "began construction . . . of the DAPL Pipeline on May 16, 2016."  Decl. of J. Mahmoud, ECF 22-1, ¶ 47.  Dakota Access has acknowledged that it began construction prior to receiving all necessary approvals from the Corps "at its own risk."  Dakota Access's Request for Permission to Begin Construction Outside of PCN Areas (May 5, 2016), ECF 6-60 at 1.  *See also* Iowa Dep't of Commerce Utilities Board Order (June 7, 2016), ECF 6-61 at 9 ("Any such activities will be conducted at the company's own risk").  Dakota Access contends that it possesses

construction rights "for the majority of the project" through November 2017. Mahmoud Decl., ¶ 64.

On July 25, 2016, the Corps issued a series of decisions, including (1) verifying that Dakota Access's activities at 200 pre-construction notification sites satisfied the terms and conditions of Nationwide Permit 12 and (2) granting permissions to occupy public works used for navigation or flood control under Section 14 of the Rivers and Harbors Act, 33 U.S.C. § 408. Dakota Access has repeatedly acknowledged in Court that it "has to await the easement" before constructing its pipeline under the Corps' real property interests on the banks of and underneath Lake Oahe.[1] August 24, 2016 Hearing Tr. 41:14-41:16, ECF 27. The Corps has not issued that easement.

Plaintiff Standing Rock Sioux Tribe ("Standing Rock") filed a Complaint challenging a number of actions taken by the Corps prior to July 27, 2016. ECF 1. Standing Rock has acknowledged that its Complaint does not challenge actions that occurred after it was filed and would seek to amend its Complaint "if an easement is issued." September 16, 2016 Status Conference Tr. 31:16-22, ECF 49.

On November 10, 2016, the Corps lodged an administrative record for the July 25, 2016 decisions challenged by the Standing Rock Sioux Tribe in its Complaint. ECF 55. That record included certifications by nine Corps employees covering nine separate portions of the administrative record. On November 10, 2016, following a status conference attended by all parties, the Court entered a minute order providing the Parties until December 9, 2016 to identify

---

[1] "The distance from the western boundary of federally-owned lands to the eastern boundary of federally-owned lands on both sides of the lake, including the width of the lake, at the proposed crossing location is approximately 6,450 feet." Environmental Assessment, ECF 6-51, at 70.

and address issues relating to the completeness of the Corps' November 10, 2016 administrative record. Dakota Access filed this motion to supplement the administrative record and its cross-claim against the Corps on November 15, 2016. ECF 57 and 58.

### III.   LEGAL STANDARD

"[I]n APA cases, 'the function of the district court is to determine whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did.'" *Resolute Forest Prods. v. U.S. Dep't of Agric.*, No. 14-2103, 2016 U.S. Dist. LEXIS 64439, at *11 (D.D.C. May 17, 2016) (Boasberg, J.) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006)). An agency's administrative record "is entitled to a strong presumption of regularity." *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008) (citation omitted). "A plaintiff may show that the record is '[i]nsufficien[t]' — i.e., incomplete — only if she is able to "specif[y] . . . documents that ha[ve] been omitted.'" *Charleston Area Med. Ctr. v. Burwell*, No. 15-2031, 2016 U.S. Dist. LEXIS 146681, at *8 (D.D.C. Oct. 24, 2016) (Boasberg, J.) (quoting *NRDC v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975)). "In other words, 'a plaintiff must put forth concrete evidence' and 'identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.'" *Id*. (citation omitted). "Then, if the Court finds that the record produced 'clearly do[es] not constitute the "whole record" compiled by the agency,' it will order the agency to complete the record." *Id*. (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419 (1971)).

## IV. ARGUMENT

**A. The Court should deny Dakota Access's motion because every document it seeks to supplement the administrative record with post-dates the only final agency actions at issue – a series of decisions made on July 25, 2016.**

Dakota Access's motion should be denied because it is based almost entirely upon Dakota Access's new theory that the Corps granted Dakota Access all necessary permissions to construct portions of a pipeline under Lake Oahe on July 25, 2016.[2] Dakota Access's new theory is fatal to its motion to supplement because it is inappropriate to supplement the record of a decision made on July 25 with documents that were created after that date. *See Am. Wildlands v. Kempthorne,* 530 F.3d 991, 1001–02 (D.C. Cir. 2008) (motion to supplement record was properly denied where "[b]oth letters were written after the Service issued its Reconsidered Finding, and are therefore not part of the administrative record").

When a court reviews a final agency action pursuant to the Administrative Procedure Act's deferential standard of review, 5 U.S.C. §§ 701-706, it must generally look no further for evidence than the administrative record compiled by the agency and upon which the agency based its decision. The Court "must . . . rely only on evidence contained in the extant administrative record that supports the agency's rationale and selection at the time it made the decision." *Resolute Forest Prods.*, 2016 U.S. Dist. LEXIS 64439 at *25 (citation omitted); *see also IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that

---

[2] To the extent Dakota Access seeks to supplement the administrative record for the claims brought by Standing Rock, that too is inappropriate because Standing Rock's claims are premised on the July 25 decisions. Any documents Dakota Access seeks are therefore post-decisional. Furthermore, this Court has already provided a path forward for resolving disputes related to the administrative record related to Standing Rock's claims as set forth in its November 10 minute order.

5

were before the agency at the time its decision was made."); *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (court should have before it the information considered by the agency when it made its decision). Put another way, because an administrative record contains the documents considered in making a decision, by definition it cannot contain documents created after that decision was made.

Dakota Access's motion should be denied because it requests that the Corps supplement the administrative record for its July 25, 2016 decisions with documents that post-date those decisions. Dakota Access's motion is premised on its new theory that the Corps has already granted all necessary permissions for Dakota Access "to build an oil pipeline beneath Lake Oahe." Statement of Points and Authorities in Supp. of Expedited Mot. to Supp. the Admin. R. ("Dakota Access Mem.") 1, ECF 58-1. And the foundation of Dakota Access's cross-claim is its assertion that the Corps "made all of the relevant determinations and [gave] Dakota Access its right-of-way" on July 25, 2016. ECF 57 at 49; *id*. at 54, ¶ 12. Dakota Access's own motion and cross-claim are therefore flatly inconsistent with expanding the scope of the administrative record to include documents that post-date the July 25 decisions that Dakota Access claims granted it all necessary permissions to traverse Lake Oahe. Dakota Access's motion to supplement the record with documents that Dakota Access alleges are post-decisional should be denied.

**B. The Court should not order the Corps to produce extra-record evidence.**

Dakota Access's suggestion that the Court should order the Corps to produce extra-record evidence post-dating its decision is similarly without merit. "The APA limits judicial review to the administrative record 'except when there has been a strong showing of bad faith or improper behavior' or when the record is so bare that it prevents effective judicial review.'" *Theodore*

*Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010) (quoting *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998)). Resorting to extra-record evidence "is the exception, not the rule," and the party seeking to rely on such information has a heavy burden of showing that effective judicial review is not possible without that information. *Theodore Roosevelt Conservation P'ship*, 616 F.3d at 514.

Dakota Access has come nowhere close to carrying its burden of showing that effective judicial review of the July 25, 2016, decisions is not possible without consideration of post-decision documents. Dakota Access bases its argument on an assertion that recent statements by the Corps "created intense disagreement over" whether the Corps already granted Dakota Access the easement necessary to traverse the Corps' land. Dakota Access Mem., 10-11. To the contrary, any "intense disagreement" regarding the nature of the Corps' July 25, 2016 decisions appears to be between the new interpretation of the Corps' July 25 decision that forms the foundation of Dakota Access's cross-claim and Dakota Access's repeated acknowledgement that it cannot construct its pipeline on Corps-managed federal lands at Lake Oahe without an easement.

Dakota Access has repeatedly acknowledged that it cannot proceed to install its pipeline under Lake Oahe unless the Corps grants an easement.

- "This letter is to confirm our recent conversation regarding the upcoming decision of the U.S. Army Corps of Engineers to issue the easement to cross Lake Oahe." Letter from B. Comer to E. Zilioli (Aug. 11, 2016) (Ex. 3).

- "To be clear, nothing has been decided on the easement as it still has to go through the remaining review process." Email from E. Zilioli to B. Comer (Aug. 11, 2016) (Ex. 4).[3]

- "[A]s soon as we get the easement and the waiting period is either waived or satisfied, we would be ready to begin construction." August 24, 2016 Hearing Tr. 40:14-40:16.

- "I think the actual bore under the river has to await the easement. But the construction of the drill pads and the access roads can take place [prior to an easement being granted]." August 24, 2016 Hearing Tr. 41:14-41:16.

- "[W]e do not have any intention obviously to work where we needed an easement." September 6, 2016 Hearing Tr. 20:25-21:1.

- "'We will get this easement and we will complete our project.'" Statement of Energy Transfer Partners Chief Executive Officer Kelcy Warren, *CEO confident Dakota Access Pipeline will be completed under Trump presidency*, CBS News (Nov. 11, 2016, 6:51 AM), available at http://www.cbsnews.com/news/dakota-access-pipeline-energy-transfer-partners-ceo-kelcy-warren-breaks-silence/.

- "We received the permit from the Corps for the crossing on July 25th of this year and continue to believe that the US Army Corps of Engineers will soon issue the easement for approximately 500 feet on each side of the lake necessary for the crossing beneath Lake Oahe, the sole remaining authorization necessary for the completion of the project." Statement of Energy Transfer Partners Chief Financial Officer Tom Long, *Q3 2016 ETP and ETE Joint Earnings Conference Call*, 13:23-13:46 minute mark, Energy Transfer

---

[3] This correspondence appears inconsistent with Dakota Access's August 24 representation that its "understanding . . . is that the easement has been issued; that the notification – the requisite notification has been provided to Congress. There is a 14 day notice period" and that it had "been under the impression until just three minutes ago that the easements had been issued and we were in the 14 days waiting period." *See* August 24, 2016 Hearing Tr. 40-41

> Partners, (Nov. 10, 2016, 8:00 AM), available at
> http://ir.energytransfer.com/phoenix.zhtml?p=irol-eventDetails&c=106094&eventID=5242958.

- "We remain confident that we will receive the easement form the Army Corps in a time frame that will not result in significant delays in proceeding with drilling activities under Lake Oahe. As a result we continue to expect that commercial operations will commence in the first quarter of 2017." *Id*. at 15:36-15:56 minute mark.

Dakota Access is simply incorrect that there is any "intense disagreement" regarding whether Dakota Access has been granted the necessary easement to cross federal lands at Lake Oahe.

Dakota Access's efforts to recast the July 25 decisions falls far short of the high bar required to support this Court's consideration of specific extra-record documents identified by Dakota Access, much less an order requiring the Corps to produce a large number of unspecified documents. *Banner Health v. Burwell*, 126 F. Supp. 3d 28, 61-62 (D.D.C. 2015) ("As the D.C. Circuit has emphasized, consideration of such extra-record materials 'at most . . . may be invoked to challenge gross procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review.'" (quoting *Hill Dermaceuticals, Inc. v. FDA*, 709 F.3d 44, 47 (D.C. Cir. 2013)). And Dakota Access's bare assertion that extra-record supplementation is appropriate here because "Plaintiffs raise claims involving NEPA," Dakota Access Mem. 11, is similarly meritless. The Corps certified that its administrative record for the challenged July 25 decisions is complete. Notice of Lodging of Administrative Record, ECF 55. That certification "is entitled to a strong presumption of regularity." *Sara Lee Corp.* 252 F.R.D. at 34. To be clear, the record for the Corps' July 25 decisions does not include all documents relating to Dakota Access's easement application. *See* Letter from M. Howard, Dakota Access,

9

to B. Cossette, Corps (Oct. 21, 2014) (Ex. 1); Dakota Access Application for Transportation and Utility Systems and Facilities on Federal Lands (Ex. 2); USACE Policy Guidance Letter No. 27 (Oct. 29, 2008) (Ex. 5). But that is because the Corps has not made a final decision regarding that easement application. Thus, there is no administrative record to compile at this juncture. Dakota Access has failed to meet its burden of showing that the existing record is "so bare as to prevent judicial review" of the July 25 decisions, *Cty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 79 (D.D.C. 2008), and its motion should accordingly be denied.[4]

### C. The Court should deny Dakota Access's motion because it seeks documents relating to a decision that has not yet been made.

While Dakota Access frames its motion as one to "supplement" the existing record, they actually seek to compel the production of an administrative record for a decision – the granting or denial of an easement across Corps-managed federal lands at Lake Oahe – that has not been made. The Corps cannot compile an administrative record for a decision until it makes that decision. Dakota Access's effort to compel the Corps to lodge documents that may relate to a future decision to grant or deny the easement should be denied as unripe and directly contrary to the judicial review process as set forth in the APA.

The Dakota Access pipeline cannot traverse the Corps' real-estate interests in the bed and banks of Lake Oahe unless the Corps grants an easement under the Mineral Leasing Act. *See* 30 U.S.C. § 185. The Corps cannot grant a such an easement, or right-of-way, until it provides "the

---

[4] Dakota Access' reliance on *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150 (D.D.C. 2012), is misplaced. In that case, the court found that "exceptional circumstances" (*id.* at 157) warranted consideration of four specific extra-record documents because the existing administrative record was "entirely bare" on one of the claims at issue. *Id.* at 158. Here, the material cited by Dakota Access does not relate to the July 25 decisions under review, but rather to a different, future decision. The court's review of that decision can proceed, if necessary, once that decision is made and an administrative record for that decision is compiled.

Committee on Natural Resources of the United States House of Representatives and the Committee on Energy and Natural Resources of the United States Senate . . . notice of intention to grant the right-of-way, together with the . . . agency head's detailed findings as to the terms and conditions he proposes to impose." *Id.* § 185(w)(2). The Corps' long-standing policy is to wait 14 days after providing notice to Congress before granting any easement. USACE Policy Guidance Letter No. 27 (Ex. 5). The Corps has not yet made a final decision regarding whether it will grant an easement to cross federal lands at Lake Oahe. If the Corps ultimately decides to issue an easement, it will then notify Congress as required by statute. And as discussed above, Dakota Access has repeatedly admitted that: (1) it cannot install portions of a pipeline on Corps-managed federal lands at Lake Oahe without an easement; and (2) the Corps has not made a final decision regarding the Lake Oahe easement.

The absence of a final Corps decision on Dakota Access's easement application is fatal to Dakota Access's motion to supplement. Simply put, the Corps is unable to compile an administrative record for a decision until it makes that decision. *See Resolute Forest Prods.*, 2016 U.S. Dist. LEXIS 64439 at *25.

**D. The Court should deny Dakota Access's motion because it seeks discovery that is inappropriate in an APA case.**

Dakota Access's request that the record be supplemented with eight categories of documents created after July 25, 2016 is also inappropriate because it amounts to inappropriate discovery. "Discovery typically is not available in APA cases. But if a party makes a significant showing — variously described as a strong, substantial, or prima facie showing — that it will find material in the agency's possession indicative of bad faith or an incomplete record, it should be granted limited discovery." *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487-88 (D.C. Cir. 2011) (internal quotation marks omitted). Dakota Access simply cannot

11

make the strong showing of bad faith or improper behavior necessary to obtain such discovery, particularly where the Corps has not made a final decision on the easement, much less produced an administrative record relating to that easement decision. *See Overton Park*, 401 U.S. at 420 ("[T]here must be a strong showing of bad faith or improper behavior before [an inquiry into the administrative decisionmaking process] may be made."). Regardless, it is premature to engage in discovery related to documents that may or may not be part of the administrative record for a decision that has not been made.

> **E. Even if it were possible for the Corps to produce an administrative record for a decision that has not been made, it could not do so in one week, as proposed by Dakota Access.**

While it is premature to supplement a nonexistent record for an unmade decision, the Corps is committed to resolving this case in a manner that is both efficient and reasonably expeditious. The Corps expects that soon after concluding its discussions with Plaintiffs and Dakota Access regarding potential easement conditions it will issue a final decision granting or denying the Lake Oahe easement. In the event that one of the parties amends its Complaint to challenge that decision, the Corps expects that it will have to compile an administrative record that includes a number of documents created between July 25, 2016 and the date of its final easement decision. In anticipation of such a challenge to its forthcoming easement decision, the Corps continues to compile relevant documents, which will help expedite the full and efficient resolution of all claims related to the Dakota Access pipeline. But even if it were appropriate for the Corps to supplement the record of its July 25 decisions with the post-decisional documents sought by Dakota Access, the Corps cannot identify, collect, review, redact, transmit, and process the documents sought by Dakota Access by Dakota Access's November 21 proposed deadline.

Dakota Access's motion to supplement the administrative record is premised largely on its cross-claim, which seeks a declaratory judgment based upon Dakota Access's new theory that the Corps granted all necessary permissions for Dakota Access "to build an oil pipeline beneath Lake Oahe" on July 25, 2016. Dakota Access Mem. 1; Answer and Cross Claim, ECF 57 at 49; *id*. at 54 ¶ 12. Dakota Access filed its cross-claim against the Corps on November 15, 2016. *Id.* The Corps has 60 days to respond after a cross-claim is properly served. Fed. R. of Civ. P. 12(a)(2). And the Corps has a minimum of 60 days after service to lodge an index of the administrative record. United States District Court for the District of Columbia Local Rule 7(n). Simply put, Dakota Access is seeking to supplement an administrative record that, by rule, is not due for at least another 56 days. Dakota Access's motion is doubly premature here because the Corps expects to file a motion to dismiss Dakota Access's cross-claim.

Even if the Corps had already made a final decision regarding the Lake Oahe easement, which it has not, Dakota Access therefore seeks to reduce the Corps' time to compile the administrative record pursuant to Federal Rule of Civil Procedure 12(a)(2) and Local Rule 7(n) by at least 90%. ECF 58 at 2. Dakota Access proposes that this Court instead allow one week for: (1) the Corps to compile an administrative record; (2) the Corps to review that record to determine, among other things, whether it contains certain sensitive security information or information that is protected by the National Historic Preservation Act, 54 U.S.C. § 300101 *et seq.*; the Privacy Act, 5 U.S.C. § 552a, the attorney client privilege, the attorney work-product privilege, or the deliberative process privilege;[5] (3) the Corps to make appropriate redactions; (4)

---

[5] Dakota Access appears to focus on documents that may be deliberative or protected by various privileges. *See* Dakota Access Mem. at 7 (referencing high-level conversations between government agencies). Deliberative documents are not part of the administrative record under D.C. Circuit law. See *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 372 (D.D.C. 2007) ("Creating such a new burden on the agency, the parties and the court by forcing production of

13

the Corps to transmit the administrative record to the United States Department of Justice; and (5) the Department of Justice to process the documents transmitted by the Corps and supplement the administrative record.[6] Dakota Access's unsupported claims regarding financial harms do not support Dakota Access's proposed schedule.[7] As a practical matter, the Corps cannot produce the "record" Dakota Access seeks by November 21.

The cases cited by Dakota Access suggest a far more reasonable and orderly process for compiling and supplementing any administrative record. *See Pac. Shores*, 448 F. Supp. 2d at 2 (setting out a five-month-long, orderly process for compiling and, if necessary, supplementing administrative record). First, the Corps must take final agency action granting or denying an easement to cross Lake Oahe. Assuming that such a final agency action is challenged, the Corps would then have to compile an administrative record for that action. After reviewing that administrative record, a party may request that the Corps add specific documents to the record.[8]

---

even a limited number of inter-agency deliberative documents requires a clear command from the court of appeals, particularly in light of the unequivocal statement by that court that such materials are not a part of the administrative record when an agency decision is challenged as arbitrary and capricious."). Even if the motion sought only non-deliberative and non-privileged documents, the process of collecting, cataloging, and reviewing those documents could not be completed by November 21, as sought by Dakota Access. *See id.*

[6] Undersigned counsel represents that it took one week for the Department of Justice to process the administrative record lodged in this case on November 10, 2016, once Justice received the record from the Corps.

[7] This is particularly true where, as discussed above, Dakota Access adopted a risky strategy of (1) entering into binding contracts before applying for, much less securing, permission to cross the Corps' lands and (2) beginning construction months before obtaining necessary verifications and permissions.

[8] Dakota Access identifies a single specific document that it contends should be added to the administrative record for the Corps' July 25 decisions. That November 7, 2016 document is not properly part of the record for the July 25 decisions. The Corps might ultimately determine that this document is part of the administrative record for a future final agency action on the easement. However, for reasons discussed above, any such determination would be premature now.

The Corps sometimes agrees that the documents should be added to the record. *See Id.* Only if the Corps declines to add documents in response to a party's request would there be a dispute regarding the record's completeness. Here, once the Corps grants or denies an easement to cross Lake Oahe, any of the current parties might seek to amend their Complaint to address that decision. Dakota Access could then identify specific documents, such as the documents it provided to the Corps after September 9, 2016, if those documents were not contained in the Corps' administrative record. The Court's November 10 minute order imposed such an orderly and efficient process, giving the parties until December 9 to resolve any disputes regarding the completeness and confidentiality of the record for the decisions that the Corps has already made. The parties should engage in a similar process once the Corps makes a final decision regarding the Lake Oahe easement (and even then, only if a plaintiff lodges a challenge over which this Court would have jurisdiction).

## V. CONCLUSION

For the foregoing reasons, the Corps respectfully submits that Dakota Access's motion should be denied.

Dated: November 18, 2016

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General
Environment & Natural Resources Division

By: /s/ *Matthew Marinelli*
MATTHEW MARINELLI, IL Bar 6277967
U.S. Department of Justice
Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Washington, DC 20044
Phone: (202) 305-0293

Fax: (202) 353-2021
matthew.marinelli@usdoj.gov

ERICA M. ZILIOLI, D.C. Bar 488073
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 514-6390
Fax: (202) 514-8865
Erica.Zilioli@usdoj.gov

*Attorneys for the United States Army Corps of Engineers*

OF COUNSEL:

MILTON BOYD
MELANIE CASNER
U.S. Army Corps of Engineers
Office of Chief Counsel
Washington, DC

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 18th day of November, 2016, a copy of the foregoing was filed through the Court's CM/ECF management system and electronically served on counsel of record.

*/s/ Matthew Marinelli*
Matthew Marinelli
