# EXHIBIT 2

*Standing Rock Sioux Tribe v. United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB)
United States Army Corps of Engineers' Opposition to Expedited Motion to Supplement the Administrative Record

STANDARD FORM 299 (05/2009)
Prescribed by DOI/USDA/DOT
P.L. 96-487 and Federal
Register Notice 5-22-95

**APPLICATION FOR TRANSPORTATION AND UTILITY SYSTEMS AND FACILITIES ON FEDERAL LANDS**

FORM APPROVED
OMB Control Number: 0596-0082
Expiration Date: 1/31/2017

FOR AGENCY USE ONLY
Application Number
Date Filed

NOTE: Before completing and filing the application, the applicant should completely review this package and schedule a preapplication meeting with representatives of the agency responsible for processing the application. Each agency may have specific and unique requirements to be met in preparing and processing the application. Many times, with the help of the agency representative, the application can be completed at the preapplication meeting.

1. Name and address of applicant (*include zip code*)

Dakota Access, LLC
1300 Main Street
Houston, TX 77002

2. Name, title, and address of authorized agent if different from item 1 (*include zip code*)

3. Telephone (area code)

Applicant
Joey Mahmoud
Authorized Agent

4. As applicant are you? (*check one*)

a. ☐ Individual
b. ☒ Corporation*
c. ☐ Partnership/Association*
d. ☐ State Government/State Agency
e. ☐ Local Government
f. ☐ Federal Agency

* *If checked, complete supplemental page*

5. Specify what application is for: (*check one*)

a. ☒ New authorization
b. ☐ Renewing existing authorization No.
c. ☐ Amend existing authorization No.
d. ☐ Assign existing authorization No.
e. ☐ Existing use for which no authorization has been received *
f. ☐ Other*

* *If checked, provide details under item 7*

6. If an individual, or partnership are you a citizen(s) of the United States? ☐ Yes ☐ No

7. Project description (describe in detail): (a) Type of system or facility, (*e.g., canal, pipeline, road*); (b) related structures and facilities; (c) physical specifications (*Length, width, grading, etc.*); (d) term of years needed: (e) time of year of use or operation; (f) Volume or amount of product to be transported; (g) duration and timing of construction; and (h) temporary work areas needed for construction (*Attach additional sheets, if additional space is needed.*)

a) Crude oil pipeline
b) There are no related surface structures or facilities on the federally owned land, the pipeline will be installed below the surface via horizontal directional drill (HDD). Additional details are provided within Section 1.1.2 of the Draft EA.
c) The length of the pipeline on the federally owned property at Lake Oahe is collectively 1,109 feet and is 30 inches in diameter. A 50-foot permanent easement along the centerline of the HDD will be maintained.
d) In perpetuity. However, statute limits each term to maximum of 30 years with option to renew.
e) All year long.
f) 570,000 barrels per day (bpd) or more of crude oil (approximately 450,000 bpd initially).
g) Construction is anticipated to begin in late 2015/early 2016, the HDD beneath the federally owned lands is anticipated to take 2-3 months.
h) The federally owned property will be crossed via HDD; there is no workspace proposed for construction, just the 50-foot permanent easement.

8. Attach a map covering area and show location of project proposal

9. State or Local government approval: ☐ Attached ☒ Applied for ☐ Not Required

10. Nonreturnable application fee: ☐ Attached ☒ Not required

11. Does project cross international boundary or affect international waterways? ☐ Yes ☒ No (*if "yes," indicate on map*)

12. Give statement of your technical and financial capability to construct, operate, maintain, and terminate system for which authorization is being requested.

Dakota Access has secured binding long-term transportation and deficiency contracts from multiple committed shippers to support development of the Dakota Access Pipeline with a crude oil transportation capacity of approximately 450,000 bpd, with ninety percent (90%) of the transportation capacity subscribed by those committed shippers and the remaining ten percent (10%) of the transportation capacity reserved for walk-up shippers.

13a Describe other reasonable alternative routes and modes considered.

Multiple alternatives for the pipeline were evaluated. These include evaluation of potential route alternatives, altering existing infrastructure to increase storage and transport capacity, trucking transportation, and rail transportation. See Section 3.0 of the Draft EA for additional information on alternatives.

b. Why were these alternatives not selected?

The Company does not own or operate any existing facilities in North Dakota, for this reason there is not existing infrastructure that is a viable option to meet the Project's objectives or shippers' demands, truck and rail transportation are not economical and safe alternatives compared to a pipeline. Section 3.0 of Draft EA includes alternatives details.

c. Give explanation as t o why it is necessary to cross Federal Lands.

Due to the prevalence of federally owned properties in North Dakota, and the need to connect to customer receipt points, federally owned property could not be avoided without relocating the pipeline onto other sensitive properties. Section 3.0 of the Draft EA provides additional details.

14 List authorizations and pending applications filed for similar projects which may provide information to the authorizing agency. *(Specify number, date, code, or name)*

Consent to Easements are being requested for crossing USACE flowage easements in ND and IL. Authorization from the USACE under Section 404 (CWA), Section 10 (RHA), and some also for Section 408 for drilling the Missouri River, Des Moines River, Mississippi River, Illinois River (none of which are located on federal lands)

15 Provide statement of need for project, including the economic feasibility and items such as (a) cost of proposal (construction, operation, and maintenance); (b) estimated cost of next best alternative, and (c) expected public benefits

See attachment.

16 Describe probable effects on the population in the area, including the social and economic aspects, and the rural lifestyles

The HDD will have a short construction window (2-3 months) with a small number of construction workers dedicated to the crossing at the federally owned property. No residential homes or farms would be relocated resulting from the proposed action. Sections 4.8, 4.9, 5.9, and 5.10 of the Draft EA provide additional details.

17 Describe likely environmental effects that the proposed project will have on: (a) air quality; (b) visual impact, (c) surface and ground water quality and quantity; (d) the control or structural change on any stream or other body of water; (e) existing noise levels; and (f) the surface of the land, including vegetation, permafrost, soil, and soil stability.

See attachment.

18 Describe the probable effects that the proposed project will have on (a) populations of fish, plantlife, wildlife, and marine life, including threatened and endangered species; and (b) marine mammals, including hunting, capturing, collecting, or killing these animals.

See attachment.

19. State whether any hazardous material, as defined in this paragraph, will be used, produced, transported or stored on or within the right-of-way or any of the right-of-way facilities, or used in the construction, operation, maintenance or termination of the right-of-way or any of its facilities "Hazardous material" means any substance, pollutant or contaminant that is listed as hazardous under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. 9601 et seq., and its regulations. The definition of hazardous substances under CERCLA includes any "hazardous waste" as defined in the Resource Conservation and Recovery Act of 1976 (RCRA), as amended, 42 U.S.C. 6901 et seq., and its regulations. The term hazardous materials also includes any nuclear or byproduct material as defined by the Atomic Energy Act of 1954, as amended, 42 U.S.C. 2011 et seq. The term does not include petroleum, including crude oil or any fraction thereof that is not otherwise specifically listed or designated as a hazardous substance under CERCIA Section 101(14), 42 U.S.C. 9601(14), nor does the term include natural gas.

No hazardous material is proposed to be used, transported or stored on or within the right-of-way.

20 Name all the Department(s)/Agency(ies) where this application is being filed.

U.S Army Corps of Engineers, Omaha District, Real Estate Division

I HEREBY CERTIFY, That I am of legal age and authorized to do business in the State and that I have personally examined the information contained in the application and believe that the information submitted is correct to the best of my knowledge.

| Signature of Applicant | Date |
|---|---|
| | 06/29/2015 |

Title 18, U.S.C. Section 1001, makes it a crime for any person knowingly and willfully to make to any department or agency of the United States any false, fictitious, or fraudulent statements or representations as to any matter within its jurisdiction.

| SUPPLEMENTAL | | |
|---|---|---|
| NOTE: The responsible agency(ies) will provide instructions | CHECK APPROPRIATE BLOCK | |
| **I - PRIVATE CORPORATIONS** | ATTACHED | FILED* |
| a. Articles of Incorporation | ☒ | ☐ |
| b. Corporation Bylaws | ☒ | ☐ |
| c. A certification from the State showing the corporation is in good standing and is entitled to operate within the State | ☒ | ☐ |
| d Copy of resolution authorizing filing | ☒ | ☐ |
| e. The name and address of each shareholder owning 3 percent or more of the shares, together with the number and percentage of any class of voting shares of the entity which such shareholder is authorized to vote and the name and address of each affiliate of the entity together with, in the case of an affiliate controlled by the entity, the number of shares and the percentage of any class of voting stock of that affiliate owned, directly or indirectly, by that entity, and in the case of an affiliate which controls that entity, the number of shares and the percentage of any class of voting stock of that entity owned, directly or indirectly, by the affiliate. | ☒ | ☐ |
| f. If application is for an oil or gas pipeline, describe any related right- of-way or temporary use permit applications, and identify previous applications. | ☒ | ☐ |
| g. If application is for an oil and gas pipeline, identify all Federal lands by agency impacted by proposal. | ☒ | ☐ |
| **II - PUBLIC CORPORATIONS** | | |
| a. Copy of law forming corporation | ☐ | ☐ |
| b. Proof of organization | ☐ | ☐ |
| c. Copy of Bylaws | ☐ | ☐ |
| d. Copy of resolution authorizing filing | ☐ | ☐ |
| e. If application is for an oil or gas pipeline, provide information required by item "I - f" and "I - g" above. | ☐ | ☐ |
| **III - PARTNERSHIP OR OTHER UNINCORPORATED ENTITY** | | |
| a. Articles of association, if any | ☐ | ☐ |
| b. If one partner is authorized to sign, resolution authorizing action is | ☐ | ☐ |
| c. Name and address of each participant, partner, association, or other | ☐ | ☐ |
| d. If application is for an oil or gas pipeline, provide information required by item "I - f" and "I - g" above. | ☐ | ☐ |

*If the required information is already filed with the agency processing this application and is current, check block entitled "Filed." Provide the file identification information *(e.g., number, date, code, name)*. If not on file or current, attach the requested information.

## NOTICES

Note: This applies to the Department of Agriculture/Forest Service (FS)

This information is needed by the Forest Service to evaluate the requests to use National Forest System lands and manage those lands to protect natural resources, administer the use, and ensure public health and safety. This information is required to obtain or retain a benefit. The authority for that requirement is provided by the Organic Act of 1897 and the Federal Land Policy and Management Act of 1976, which authorize the secretary of Agriculture to promulgate rules and regulations for authorizing and managing National Forest System lands. These statutes, along with the Term Permit Act, National Forest Ski Area Permit Act, Granger-Thye Act, Mineral Leasing Act, Alaska Term Permit Act, Act of September 3, 1954, Wilderness Act, National Forest Roads and Trails Act, Act of November 16, 1973, Archeological Resources Protection Act, and Alaska National Interest Lands Conservation Act, authorize the Secretary of Agriculture to issue authorizations or the use and occupancy of National Forest System lands. The Secretary of Agriculture's regulations at 36 CFR Part 251, Subpart B, establish procedures for issuing those authorizations.

## BURDEN AND NONDISCRIMINATION STATEMENTS

*According to the Paperwork Reduction Act of 1995, an agency may not conduct or sponsor, and a person is not required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0596-0082. The time required to complete this information collection is estimated to average 8 hours hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.*

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, age, disability, and where applicable, sex, marital status, familial status, parental status, religion, sexual orientation, genetic information, political beliefs, reprisal, or because all or part of an individual's income is derived from any public assistance. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at 202-720- 2600 (voice and TDD).*

*To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, 1400 Independence Avenue, SW, Washington, DC 20250-9410 or call toll free (866) 632-9992 (voice). TDD users can contact USDA through local relay or the Federal relay at (800) 877-8339 (TDD) or (866) 377-8642 (relay voice). USDA is an equal opportunity provider and employer.*

The Privacy Act of 1974 (5 U.S.C. 552a) and the Freedom of Information Act (5 U.S.C. 552) govern the confidentiality to be provided for information received by the Forest Service.


164.5
165
165.5
166
166.5
167
167.5
ND-MO-198.000
ND-MO-199.000
ND-EM-001.100
North Dakota
Milepost
Project Centerline
DAPL Centerline
Workspace
USACE Federal Lands
0
1,750
Feet
DAKOTA ACCESS, LLC
Dakota Access Pipeline Project
Project Layout
Federal Lands
Morton County and
Emmons County, North Dakota
1:21,000
UTM 83-14F
Date: April, 2015
Path: P:\GIS\Client\ETC_EnergyTransfer\DakotaAccess_DAPL\Maps\ENV\ND_FlowEasements\03ND_LakeOahe_LandLayout.mxd
Source: ArcGIS Online Mapping

# Dakota Access, LLC SF299 – Additional Information Pages 1 and 2

**Block 15.**
The overall Project purpose is to move an economical, abundant, reliable, and domestic supply of crude oil from the Bakken and Three Forks production region in North Dakota to a crude oil market hub located near Patoka, Illinois. The Dakota Access Pipeline is being designed to safely carry 570,000 barrels per day (bpd) or more of crude oil (approximately 450,000 bpd initially) through the states of North Dakota, South Dakota, Iowa, and Illinois and ultimately terminating in Patoka, Illinois. From the Patoka hub, the crude oil will be transported by other pipelines to refineries located in the Midwest and the Gulf Coast where 80% of the U.S. refining capabilities exist today to further our Country's goal of energy independence. See Section 1.2 of the Draft EA for additional details on the purpose and need.

a) The estimated cost to construct the entire Project is $3.8 billion; the North Dakota portion of the Project is estimated to cost $1.4 billion. During the construction stage of the pipeline project, North Dakota land owners will receive approximately $57 Million in "easement and damages" payments to reimburse them for the restoration and use of their land. Once in operation, the pipeline will generate about $13 Million in local property taxes.

b) Route alternatives assessed and evaluated were not expected to have a materially different cost from the proposed. The alternatives were largely not selected as a result of other environmental and schedule limiting factors.

c) The Project will improve overall safety to the public and environment. It will reduce crude oil shipped by truck and by rail and significantly increase the amount shipped by pipeline. Pipelines are the safest and most efficient means to transport crude oil, according to statistics compiled by the United States Department of Transportation. Pipelines are heavily regulated and are subject to intense scrutiny and oversight. Time and time again, pipelines have proven to be the safest and most reliable form of transporting oil.

**Block 17.**
a) With respect to the HDD of federal lands, no long-term impacts to air quality would occur. Short-term impacts to air quality would occur during the drilling activities as a result of the use of equipment with combustion engines, however this is considered a minor indirect impact to climate change. See Sections 4.12.1 and 5.11 within the Draft EA for additional details on air quality.

b) There are no aboveground facilities associated with the Project within or adjacent to the federally owned property. Therefore, there will be no effect on visual resources.

c) Impacts to Lake Oahe would be avoided by using HDD construction methods to install the proposed pipeline underneath Lake Oahe. The primary impact that could occur as a result of a HDD is an inadvertent release of drilling fluid directly or indirectly into the water body. Dakota Access will conduct all HDD work according to the HDD Construction Plan to monitor activities to avoid a frac-out. In the event of an inadvertent release, the HDD Contingency Plan would be implemented.

The pipeline will be installed in saturated sediments as part of the HDD crossing of Lake Oahe. Due to the nature of HDD methodology, it is inherently not a risk to groundwater resources, uses benign substances (bentonite and water) to penetrate through soil, rock, and groundwater. See Sections 4.2.2 and 5.2 of the Draft EA for additional information on groundwater. Construction of the pipeline at the federally owned property is not expected to significantly negatively impact groundwater resources.

d) No control or structural change will occur to any stream or body of water.

# Dakota Access, LLC SF299 – Additional Information Pages 1 and 2

e) Construction would cause temporary increases in the ambient sound environment in the areas immediately surrounding active construction (largely the HDD entry and exit points on private lands). The use of heavy equipment or trucks would be the primary noise source during construction and excavation. It is not anticipated that the temporary increase in ambient sound levels associated with construction would result in a significant noise impact. And no residences or noise sensitive areas are expected to be impacted based on location/distance.

f) Construction of the pipeline at the federal property crossing would result in no impacts on the surface of the land as a result of drilling the tracts.

The HDD at the federally owned property crossing would result in no surface impacts; therefore no impacts to soils are expected. Additional information on soils is included in Sections 4.1.5 and 5.1 of the Draft EA.

Temporary impacts to land cover will occur in essentially all areas within the construction footprint; since the crossing at the federally owned property only consists of the HDD, no impacts to land cover are expected. See Sections 4.3 and 5.3 for additional details on vegetation.

**Block 18.**

a) The federally owned property will be crossed via HDD. Impacts to wildlife on the federal property are not expected since there will be no surface impacts.

Given the limited scope of this Project, minimization measures, and the implementation of specialized construction techniques, Dakota Access has determined that the Project will have no effect or is not likely to adversely affect all of the federally listed threatened and endangered species in the Project area of the federally owned property. See Sections 4.4, 5.4, 5.5, and 5.6 of the Draft EA for additional information on wildlife and federally listed species.

b) No marine mammals are located within the Project area.

**Dakota Access, LLC SF299 – Attachment/Additional**
**Section I – Private Corporations (Page 4)**

a. Articles of Incorporation. A Certificate of Formation, the LLC equivalent of the Articles of Incorporation, is attached.

b. Corporation By-Laws. Not applicable.

c. Certificate from the State. Attached.

d. Authorization of Filing.
Authorization for filings is pursuant to Section 7.4.1 of the Construction Management Agreement (CMA) dated October 15, 2014 between Dakota Access, LLC and DAPL-ETCO Construction Management, LLC (the "Construction Manager").

**7.4.1 Government Reports.** *Prior to the Final Acceptance of any Applicable Facility, other than with respect to any tariff-related filings or reports, Construction Manager shall Manage the preparation and filing of any reports required by any Governmental Authority having jurisdiction over any Segment of such Applicable Facility for which Final Acceptance has not occurred, including any such reports required in connection with the Management of the Design, Procurement and Construction of such Applicable Facility.*

e. Ownership Information:
Dakota Access, LLC is a Delaware limited liability company with its principal offices at 3738 Oak Lawn Avenue, Dallas, Texas 75219. The membership interest of Dakota Access, LLC is owned 75 percent by Dakota Access Holdings, LLC and the remaining 25 percent is owned by Phillips 66 DAPL Holdings LLC.
Dakota Access Holdings, LLC is owned 100 percent by Energy Transfer Partners, L.P. ("ETP"), a master limited partnership publicly traded on the New York Stock Exchange ("NYSE"). Energy Transfer Equity, L.P. ("ETE"), also a master limited partnership publicly traded on the NYSE, indirectly owns the general partner of ETP and certain of that partnership's limited partner units. ETP owns the general partner of Sunoco Logistics Partners, L.P. ("SXL") and certain of its limited partner units. (ETE and ETP are together referred to herein as "Energy Transfer"). Energy Transfer maintains its corporate headquarters at 3738 Oak Lawn Avenue, Dallas, Texas 75219 and SXL maintains its corporate headquarters at 1818 Market Street, Philadelphia, PA 19103.

ETP and SXL have reached an agreement in principle for the transfer to SXL of an indirect 30% interest in Dakota Access, LLC.

Phillips 66 Company holds a 100 percent indirect interest in Phillips 66 DAPL Holdings LLC. Phillips 66 Company is 100 percent owned by Phillips 66, a Delaware corporation.

## Dakota Access, LLC SF299 – Attachment/Additional
## Section I – Private Corporations (Page 4)

Phillips 66 maintains its corporate headquarters at 3010 Briarpark Drive, Houston, Texas 77042.

f. Related Right-of-Way or Temporary Use Applications.
Consent to Easements are being requested for crossing USACE flowage easements in ND and IL.

g. Federal Lands.
No other federally owned lands are crossed by the project.




PAGE 1

The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF FORMATION OF "DAKOTA ACCESS, LLC", FILED IN THIS OFFICE ON THE FIFTH DAY OF MARCH, A.D. 2014, AT 2:27 O'CLOCK P.M.

5493070 8100

140290951

You may verify this certificate online at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 1182953

DATE: 03-05-14

State of Delaware
Secretary of State
Division of Corporations
Delivered 02:27 PM 03/05/2014
FILED 02:27 PM 03/05/2014
SRV 140290951 - 5493070 FILE

**STATE OF DELAWARE
LIMITED LIABILITY COMPANY
CERTIFICATE OF FORMATION
OF
DAKOTA ACCESS, LLC**

The undersigned, a natural person, for the purpose of forming a limited liability company under the Delaware Limited Liability Company Act, does hereby execute this Certificate of Formation:

1. The name of the limited liability company is Dakota Access, LLC (the *"Company"*).

2. The address of its registered office in the State of Delaware is: 2711 Centerville Road, Suite 400, in the City of Wilmington, County of New Castle, Delaware 19808. The name of its registered agent at such address is Corporation Service Company.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Formation of Dakota Access, LLC this 5th day of March, 2014.

Organizer:

Peggy J. Harrison

Peggy J. Harrison

# *State of North Dakota*

## SECRETARY OF STATE




**CERTIFICATE OF GOOD STANDING**
**OF**

DAKOTA ACCESS, LLC

The undersigned, as Secretary of State of the State of North Dakota, hereby certifies that DAKOTA ACCESS, LLC, a FOREIGN LIMITED LIABILITY COMPANY, authorized to transact business in the State of North Dakota on March 20, 2014, and according to the records of this office as of this date, has paid all fees due this office as required by North Dakota statutes governing a FOREIGN LIMITED LIABILITY COMPANY.

ACCORDINGLY the undersigned, as such Secretary of State, and by virtue of the authority vested in him by law, hereby issues this Certificate of Good Standing to

DAKOTA ACCESS, LLC

Issued: June 16, 2015

Alvin A. Jaeger
Secretary of State