**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>     Plaintiff,<br><br>and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>     Plaintiff–Intervenor,<br><br> v.<br><br>UNITED STATES ARMY CORPS OF ENGINEERS,<br><br>     Defendant,<br><br>and<br><br>DAKOTA ACCESS, LLC,<br><br>     Defendant–Intervenor. | Case Number: 16-cv-1534 (JEB) |

## REPLY MEMORANDUM IN SUPPORT OF EXPEDITED MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD

The urgent need to supplement the record is a direct result of the unprecedented way the government has acted here.  First, the government argued that Plaintiff Standing Rock Sioux Tribe ("SRST") was unlikely to succeed in challenging the government's own decision to "allow the proposed Dakota Access Pipeline (DAPL) Project to cross federal real property interests administered by the [Omaha] District" of the U.S. Army Corps of Engineers ("Corps"), specifically where the pipeline crosses "federally-owned property at Lake Oahe."  Mitigated Finding of No Significant Impact, July 25, 2016 at 1, AR 71174.  Then, minutes after this Court ruled in the government's favor, the government then did an abrupt about-face.  After having

already made the final determination squarely at issue in this case—that the pipeline crossing at

Lake Oahe "is not injurious to the public interest and will not impair the usefulness of the federal

projects," *id*., AR 71179—the Corps insisted on September 9 that this *same determination* still

remains to be made:  *i.e.*, that the Corps still needs to announce that the same right-of-way "will

not be against the public interest."  10 U.S.C. § 2668 (standard for granting a right-of-way).  On

top of that, the Corps's own internal records expressly confirm that the Corps had already

granted *an easement* for the Lake Oahe crossing in July 2016, more than a month before the

Corps told the public just the opposite.  D.E. 57-1 at 3.

　　How could the government take such irreconcilable positions?  The answer, which is

critically important to this Court's decision on Plaintiffs' claims and the merits of Dakota

Access's cross-claim, will be found within documents that the Corps refuses to produce.  Dakota

Access's cross-claim seeks a declaratory judgment that on July 25, 2016, the Corps gave it a

right-of-way to cross federal land at Lake Oahe.  The records that Dakota Access seeks here will

show which issues and documents the government considered after making the July 25

determination.  Dakota Access will prevail on its cross-claim if, as expected, those records show

that the post-July 25 process consisted of reviewing the very same factors the Corps had already

reviewed when it made its no-harm-to-the-public-interest determination.  And if that is what the

documents show, it means that when the Corps concluded, yet again, on November 14 that the

decision to allow the Lake Oahe crossing "comported with legal requirements," D.E. 56-1 at 1, it

was reaffirming that Dakota Access has its right-of-way.  For similar reasons, the documents

being withheld are important to understanding the scope of the decisions at issue in Plaintiffs'

claims.  That the Corps seeks to withhold these critical documents reeks of the political

interference that has plagued this process and run afoul of the rule of law since at least
September 9.

The Corps's arguments seeking to withhold clearly relevant documents never confront
these issues and contradictions, which are central to the multiple grounds for adding these
documents to the record.  And the Corps's proposal to further delay access to these records—
documents that the Corps concedes will almost certainly need to be produced in this very case—
will impose serious financial hardship on a company that has played by the rules and satisfied
every legal requirement to complete a major infrastructure project that will safely and
economically contribute to this country's energy independence.

## ARGUMENT

There is no merit to any of the Corps's arguments against producing records revealing
which items were under consideration when the government set out to "determine whether it will
need to reconsider *any* of its previous decisions regarding the Lake Oahe site[.]"  September 9
Joint Statement (emphasis added).  The documents are squarely within the scope of Plaintiffs'
claims and Dakota Access's cross-claim.  They should be produced promptly so that Dakota
Access does not suffer substantial additional injury.

## I.     The Documents At Issue Are Properly Within The Scope Of This Case.

The Corps first argues that the records are from a time period that comes both too late
and too early to be part of the record for this case.  It argues that the decision at issue was made
on July 25, meaning that, "by definition," the record "cannot contain documents created after
that decision was made."  Opp. at 6.  It also argues that no easement decision has been made yet.
Opp. at 10.  These arguments fail to account for four independent ways the government's
unprecedented actions make these records necessary.  First, the Corps's announcement that it
would revisit unspecified earlier decisions, while simultaneously defending its decisions as final

and correct, raises doubts about the scope of the Corps's decisions that will be the subject of this Court's judgment on Plaintiffs' claims; the requested documents will resolve those doubts. Second, those documents go to the heart of Dakota Access's cross-claim for declaratory relief because the documents will show whether, and almost certainly confirm that, the Corps already granted a right-of-way.  Third, the documents qualify as extra-record materials needed to assist this Court's review of all claims.  And, fourth, because Dakota Access's cross-claim is not grounded in the APA, restrictions on discovery are no barrier even if the other three grounds fail.

### A.        Plaintiff's Claims

Because of the government's unprecedented conduct and political interference here, documents post-dating the July 25 decision are needed to complete the record.  A month and a half after the Corps determined, purportedly as a final action, that the pipeline would not be contrary to the public interest, it announced it was gathering and considering additional information as part of a determination "whether it will need to reconsider any of its previous decisions regarding the Lake Oahe site" under NEPA "or other federal laws."  September 9 Joint Statement.  Two months later, the Corps announced that its reconsideration was complete, and its prior decisions "comported with legal requirements."  D.E. 56-1 at 1.  Thus, regardless of whether the documents were "before the agency at the time the challenged action was taken," they are properly part of the record if, as here, the agency itself "invited" further comments to help "consider issues and develop policies" related to the earlier decision.  *See Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Human Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009) (in challenge to rule-making, request for public comments "for the specific purpose of helping the defendants consider issues and develop policies related to the" rule was a separate basis for adding them to the record regardless of whether defendants "ignored the comments").

The highly extraordinary circumstances surrounding that "reconsideration" make this case unlike any on which the Corps seeks to rely.  No party filed a petition to reopen any prior decisions, nor could anyone—including this Court—have anticipated that the Corps would do so on its own.  After all, the Corps had just succeeded in arguing that SRST had *refused*, time and time again, to consult about the pipeline project.  In the Corps's own words, the "public interest weigh[ed] against" granting SRST's request for an order further delaying the project "where Plaintiff did not avail itself of the opportunity to engage in the NHPA consultation process designed to protect the very interests that Plaintiff" invoked.  D.E. 21 at 42.

The Corps's decision to then create the very delay it had urged this Court to reject was not the only inconsistency; the Corps then insisted in its Answer to SRST's Complaint that all of its earlier decisions were lawful.  *See, e.g.,* D.E. 47 at ¶¶ 1-3 (denying it violated any statute or regulation at issue), 133, 146, 153, 177, 179, 182, 188, 193, 198, 202, 206, 210 & 212.  Thus, this is the rare case in which an agency has created more uncertainty over *what* it decided than whether it decided things correctly.  The withheld documents are crucial to clearing up the confusion that the government has caused over what it purports to have determined in the July 25 decisional document. They will help avoid the prospect of wasteful additional litigation over the judgment this Court ultimately enters, which is especially important given the sequence of events on September 9.

## B.    Dakota Access's Cross-claim

Dakota Access's cross-claim for declaratory relief is an independent ground for granting this motion.[1]  Documents already in the record from *on and before* July 25 repeatedly show the

---

[1]  As explained in I.D., *infra*, because the cross-claim does not depend on the APA, inclusion of the requested records is warranted regardless of whether the requirements for APA claims are satisfied.

Corps engaged in a single indivisible process for approving Dakota Access's request for permission to drill beneath federal land at Lake Oahe.  The decision to grant a right-of-way and the decision to grant permission under 33 U.S.C. § 408 were one and the same.  *See, e.g.*, D.E. 57 ¶¶ 22-25; Exhibits 1 & 2.  The Corps considered the complete universe of effects ("anticipated environmental, economic, cultural, and social effects, and any cumulative effects") that a particular construction project might have at a particular location, and it concluded that the Lake Oahe crossing "is not injurious to the public interest and will not impair the usefulness of the federal projects."  AR 71179.  Nowhere in its opposition papers does the Corps identify a single additional finding or determination that remained for purposes of a right-of-way, which is governed by the *same* "public interest" test.  10 U.S.C. § 2668.

Dakota Access's motion argues that the documents withheld from this record will confirm that when the Corps went about determining whether "it will need to reconsider any of its previous decisions," it never identified a single factor applicable to the right-of-way determination that was not already fully considered in Dakota Access's favor in reaching the July 25 decision.  D.E. 58-1 at 5.  Moreover, the cross-claim identifies post-July 25 documents absent from the record that contradict explicitly the Corps's position that the right-of-way determination is separate from the decisions already made on July 25.[2]  Again, the Corps has no response to these directly relevant documents.  Rather than dispute that these and other missing documents will therefore greatly assist the Court in resolving the cross-claim, the Corps asks this Court to

---

[2] *See, e.g.*, D.E. 57, ¶ 36 (Corps delivers flowage easement for Lake Sakakawea, signed at the Omaha District level and dated just one week after the July 25 decision); ¶ 37 (multiple documents sent to Dakota Access on August 16, 2016 treating flowage easement and Lake Oahe easement as a single decision).  The referenced documents are attached as Exhibits 3 & 4.

decide the merits of that claim now by ruling that the decision to grant or deny an easement "has not been made." Opp. 10.[3]  A motion to supplement seeks to correct the record *before* the Court decides which side is right on the merits of a claim.

In any event, the Corps is wrong on the merits.  Its position rests on Dakota Access statements that the company would wait for an easement to issue before drilling beneath Lake Oahe.  Dakota Access is not somehow estopped from litigating its cross-claim just because it took the Corps at its word that an easement would soon be publicly documented.  As the motion explains, the Corps has told Dakota Access multiple times that (1) the approval process has been completed for the right-of-way, and (2) the easement is *already* signed.  D.E. 58-1 at 8.  On information and belief, additional undisclosed documents will show that the Corps has, in fact, approved and signed the easement, even though not necessary to the grant of a right-of-way.  Dakota Access cannot be faulted for having believed that the Corps would treat documentation of the easement as the ministerial act it always has been.  In fact, Dakota Access is unaware of— and the Corps has not identified—any other instance in which the Corps refused to acknowledge the existence of a right-of-way (and document it with an easement) soon after having concluding that the applicant's conduct would comply with all applicable laws and be consistent with the public interest.  Dakota Access did not create this unprecedented legal dispute; the government did.  Dakota Access is entitled to seek declaratory relief that avoids the Hobson's choice between abandoning its rights or risking prosecution.  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 152

---

[3]  The Corps again tries to argue the merits of the cross-claim when it asserts that Corps must notify Congress when it decides to grant a right-of-way.  Opp. at 10-11.  As Dakota Access's cross-claim explains, however, on information and belief the relevant committees have received notice, the declaratory relief requested can address that requirement, and the Corps is certainly capable to confirm notice itself if the cross-claim succeeds.  D.E. 57, ¶ 49.

(1967) (explaining "it was the very purpose of the Declaratory Judgment Act to ameliorate" that "dilemma").

## C.     Extra-Record Materials

An alternative ground for including the requested documents is that they also meet the requirements for extra-record evidence.  Documents falling outside the administrative record should be included where "needed to assist" this Court's review.  *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012).  The Corps notes that inclusion of extra-record evidence "is the exception, not the rule."  Opp. at 7 (citation and internal quotation marks omitted).  This case is *highly* exceptional.  After the Corps announced final agency action and then defended it successfully in court, it unilaterally issued a statement proclaiming the potential need to reconsider unspecified aspects of the same action, filed an Answer that instead denied any error in that action, and later issued another statement confirming that the action comported with all legal requirements.  Yet even after all of this, the Corps insists it has not made the very determination that it expressly started and ended that part of process with:  that crossing federal land with the DAPL is not injurious to the public interest.  The Corps does not point to any case that comes close to that anomaly.  The documents underlying this agency rigmarole are essential to assist this Court's review of the July 25 authorizations.

## D.     Discovery

The Corps argues that discovery is inappropriate in an APA case.  That rule has no effect here.  First, the arguments above do not rest on the availability of discovery; they are based on rules for completing the administrative record or including extra-record evidence.  Second, and more importantly, the cross-claim does not invoke the APA; it seeks declaratory relief based on the threat that the government would take federal legal action against Dakota Access if it starts drilling at Lake Oahe.  Thus, Dakota Access need not make a special showing peculiar to APA

claims.  As explained earlier, Dakota Access has made a strong showing that the right-of-way decision and the July 25, 2016, decision whether to "allow the proposed Dakota Access Pipeline (DAPL) Project to cross federal real property interests" at "Lake Oahe," AR 71174, were one and the same.  The requested records are needed to decide that claim.

## II.   The Court Should Require The Corps To Add The Missing Records Within One Week Of Its Order

The Corps states it needs more than a week to turn over the missing documents, but it offers no alternative schedule, much less one that will prevent Dakota Access from suffering further irreparable harm.  Dakota Access has prevailed in this Court and the D.C. Circuit on each challenge to the lawfulness of the DAPL Project and on each effort to inject delay into the pipeline's completion, yet the Corps's proposal for an open-ended approach to this litigation threatens to render Dakota Access's legal victories meaningless.  To avoid that, the Court should order production of the requested records within one week of its order.

When the Army announced its new reconsideration process in September, it said it would "move expeditiously" because "everyone involved—including the pipeline company and its workers—deserves a clear and timely resolution."  September 9 Joint Statement.  The government told this Court the process was "not likely to take months;" "[w]e're talking weeks." TR Sept. 16, 2016 at 13.  Now into its third month, the Army *still* has not completed its process, even after reaffirming just last week that "its previous decisions comported with legal requirements."  D.E. 56-1.  In a turn of events that would make even Lewis Carroll blush, the government has now "invit[ed] the Standing Rock Sioux Tribe to engage in discussion concerning" conditions for "the pipeline crossing" at Lake Oahe, D.E. 56-2, after the Corps successfully argued, and recently reaffirmed, that the consultation process was properly concluded months ago, in significant part because SRST "repeatedly obstructed" a "two-year

consultation process" and already "had ample opportunity to voice concerns about the nature of the consultation process during" the "Environmental Assessment for Lake Oahe," D.E. 21 at 42–43.[4]

As a direct result of the Corps changing the rules after the game is over, it now presents Dakota Access and the Court with the following:  At some time (the Corps does not say when) the Corps will document its easement decision.  Opp. at 12.  After that, either Plaintiffs or Dakota Access will need to file a new claim.  The Corps will get "a minimum of 60 days after service" of that new claim "to lodge an index of the administrative record."  Opp. at 13.  Thus, by the time the parties are in a position to contest the record, it will be *at least* the end of January 2017, weeks *after* Dakota Access has contractually committed to delivering oil through a pipeline that will take another two months to complete even after the drilling begins at Lake Oahe.

That outcome is unacceptable.  Dakota Access needs a prompt resolution of its cross-claim to avoid irreparable harm from the delay the Corps seeks.[5]  Dakota Access recognizes that

---

[4]  The Corps also now accuses Dakota Access of adopting "a risky strategy" by "beginning construction months before obtaining necessary verifications and permissions."  Opp. at 14, n.7.  But as the Corps itself made clear *nearly four months* ago, obtaining verifications and permissions is not the problem here.  Nor was there any reason to think it would be because, as the Corps told this Court, the general permitting system for the Clean Water Act "has the added benefit of incentivizing project sponsors to conform their construction activities to existing general permits."  D.E. 21 at 43 (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 43 (D.D.C. 2013)).  The Corps's continued insistence that Dakota Access must put its work on hold indefinitely, despite having every verification and permission in hand, does not bode well for incentivizing future infrastructure projects.

[5]  The Corps mistakenly asserts that Dakota Access's allegations of financial harm are "unsupported."  Opp. 14.  Dakota Access's motion to supplement, and its motion to expedite, *see* D.E. 59 at 5-7 (citing D.E. 22-1, Ex. A (Mahmoud Decl.)), explain in detail the irreparable harm that the company and third parties will suffer.  Those allegations are supported by a sworn declaration of Dakota Access's Vice President and Executive Vice President of Engineering & Construction at Energy Transfer Partners, L.P. *Id.*

this means the government will need to act "expeditiously"—just as the Army committed to doing on both September 9 and November 14.  By the Corps's own admission, though, it is *already* "compil[ing] relevant documents" "in anticipation of" an expected need to produce them after a challenge to its yet-to-be-publicly-documented easement decision.  Opp. at 12.  There is no reason the Corps cannot promptly produce what it admits it started compiling even before this motion was filed.

Finally, the Corps relegates to a footnote—in an argument that merely addresses *when*, not *whether*, documents should be produced—the vague concern that unspecified documents "may be deliberative or protected by various privileges."  Opp. at 13, n.5.  Dakota Access's motion provided a detailed description, including references to specific dates, of the eight categories of documents the Court should order the Corps to produce.  The motion also explained that the primary purpose is to determine the *scope* of what the Corps and other agencies considered during the highly unusual reconsideration process.  Dakota Access intends to show through those and other materials that the right-of-way decision had already been made, despite the government's contrary statements.  The deliberative process privilege, by contrast, "applies to circumstances where the government *decisionmaking* process is 'collateral' to a plaintiff's claim."  *In re Subpoena Duces Tecum*, 156 F.3d 1279, 1279 (D.C. Cir. 1998).  For instance, where—as here—a plaintiff alleges "political motivation" for government action, the privilege does not apply, because inquiry into the government's process is necessary.  *Alexander v. FBI*, 186 F.R.D. 170, 179 (D.D.C. 1999).

Apart from the fact that arguments summarily made in footnotes are "forfeited," *Am. Immigration Council v. Dep't of Homeland Sec.*, 905 F. Supp. 2d 206, 219 n.3 (D.D.C. 2012) (Boasberg, J.), the Corps offers no description of any document in any of the eight categories

that the Corps seeks to withhold, much less does it explain how they qualify for protection.  The Court therefore has none of the information it needs to decide if the documents are indeed pre-decisional (Dakota Access expects the records to show that the right-of-way decision had been made); are "purely factual," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26 (D.C. Cir. 2002) (not privileged) (citation omitted); were "'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made," *Petroleum Information Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (privilege applies only to the former) (citation omitted); or merely "explain a decision already made," *United States v. Phillip Morris*, 218 F.R.D. 312, 316 (D.D.C. 2003) (not privileged).

The privilege also is not absolute.  Courts are "careful to apply the privilege only when its central purpose"—"to prevent injury to the quality of agency decisions"—"is truly served." *Phillip Morris*, 218 F.R.D. at 315 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152 (1975)).  It "can be overcome by a sufficient showing of need." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).  This determination "is to be made flexibly on a case-by-case, *ad hoc* basis … taking into account factors such as the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees." *Id*. at 737–38 (quotation marks omitted).  Here, the evidence is highly relevant to whether the right-of-way decision was made in July; the evidence specific to this issue is held by the government; the litigation is unquestionably serious to all parties; the government's role in the right-of-way is central; and records showing that the decision had already been made will not make government employees timid about properly performing their duties.

The Court should reject the Corps's proposal to make these records available later rather than sooner.

**CONCLUSION**

For these reasons, Dakota Access's motion should be granted.


Dated:  November 20, 2016

Kimberly H. Caine
William J. Leone (*Pro Hac Vice* granted)
Robert D. Comer (*Pro Hac Vice* granted)
NORTON ROSE FULBRIGHT US LLP
799 9th St. NW, Suite 1000
Washington, D.C. 20001-4501
(202) 662-0200

Edward V. A. Kussy
Robert D. Thornton
Alan M. Glen
NOSSAMAN LLP
1666 K Street, NW, Suite 500
Washington, DC 20006
202-887-1400

/s/ William S. Scherman

William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
(202) 530-9557 (fax)
wscherman@gibsondunn.com


*Counsel for Defendant–Intervenor*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of November, 2016, I electronically filed the

foregoing document with the Clerk of the Court for the U.S. District Court for the District of

Columbia using the CM/ECF system.  Service was accomplished by the CM/ECF system on the

following counsel:

> Patti A. Goldman
> Jan E. Hasselman
> EARTHJUSTICE
> 705 Second Avenue, Suite 203
> Seattle, WA  98104
> (206) 343-7340
> pgoldman@earthjustice.org
> jhasselman@earthjustice.org
>
> *Counsel for Plaintiff Standing Rock Sioux*
> *Tribe*
>
>
> Nicole E. Ducheneaux,
> FREDERICKS PEEBLES & MORGAN, LLP
> 3610 North 163rd Plaza
> Omaha, NE 68116
> (402) 333-4053
> nducheneaux@ndnlaw.com
>
> Conly J. Schulte
> FREDERICKS PEEBLES & MORGAN, LLP
> 1900 Plaza Drive
> Louisville, CO  80027
> (303) 673-9600
> cschulte@ndnlaw.com
>
> *Counsel for Plaintiff–Intervenor Cheyenne*
> *River Sioux Tribe*

Matthew M. Marinelli
Erica M. Zilioli
U.S. DEP'T OF JUSTICE
Environment & Natural Resources Division
P.O. Box 7415
Washington, D.C.  20044
(202) 514-2000
Matthew.Marinelli@usdoj.gov
Erica.zilioli@usdoj.gov

*Counsel for Defendant U.S. Army Corps of
Engineers*

 /s/ William S. Scherman
William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Defendant–Intervenor Dakota
Access, LLC*