# Exhibit 1



DEPARTMENT OF THE ARMY
OFFICE OF THE ASSISTANT SECRETARY
CIVIL WORKS
108 ARMY PENTAGON
WASHINGTON DC 20310-0108

4 DEC 2016

MEMORANDUM FOR Commander, U.S. Army Corps of Engineers

SUBJECT: Proposed Dakota Access Pipeline Crossing at Lake Oahe, North Dakota

1. On July 25, 2016, the U.S. Army Corps of Engineers (Corps) granted a permission to applicant Dakota Access, L.L.C., under Section 14 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 408 (Section 408 permission), for a proposed crossing of Lake Oahe, a Corps project on the Missouri River, by the Dakota Access Pipeline, an approximately 1,172 mile pipeline that would connect the Bakken and Three Forks oil production areas in North Dakota to an existing crude oil market near Patoka, Illinois. The pipeline is 30 inches in diameter and is projected to transport approximately 470,000 barrels of oil per day, with a capacity as high as 570,000 barrels per day. Total North Dakota field production of crude oil, as of September 2016, was 962,000 barrels per day.

2. The Section 408 permission was accompanied by an Environmental Assessment, as contemplated under the National Environmental Policy Act (NEPA), 42 U.S.C. §4321-4335, and its implementing regulations. The Environmental Assessment was prepared and evaluated in accordance with Section 1506.5 of the Council on Environmental Quality regulations for implementing NEPA, 40 C.F.R. §1506.5, which allow an applicant to prepare an environmental assessment if the Federal agency independently evaluates and verifies its information and analysis. The Environmental Assessment included a finding that granting the Section 408 permission for the proposed crossing of Lake Oahe did not constitute a major Federal action that would have significant environmental impacts.

3. The proposed crossing of Lake Oahe is approximately 0.5 miles upstream of the northern boundary of the Standing Rock Sioux Tribe's reservation. The Tribe relies on Lake Oahe for drinking water and irrigation, portions of Lake Oahe downstream from the proposed crossing remain within the Tribe's reservation boundaries, and the Tribe retains water, hunting and fishing rights in the lake.

4. The Environmental Assessment included a brief description and characterization of factors used in evaluating a potential alternative route and crossing location that it said was considered and eliminated "early in the routing phase." The alternative route would cross the Missouri River approximately 10 miles north of Bismarck, ND.

5. Because of security concerns and sensitivities, several documents supporting the Environmental Assessment were marked confidential and were withheld from the public or representatives and experts of the Standing Rock Sioux Tribe. These documents include a North Dakota Lake Oahe Crossing Spill Model Discussion prepared by the



Wood Group Mustang, the Lake Oahe HDD Risk Analysis Report, and the DAPL – Route Comparison and Environmental Justice Considerations Memorandum.

6. In addition to the Section 408 permission, the proposed crossing of Corps property requires the granting of a right-of-way (easement) under the Mineral Leasing Act, 30 U.S.C. §185. To date, the Army has not made a final decision on whether to grant the easement pursuant to this section.

7. On September 9, 2016, the Army, along with the Departments of Interior and Justice, issued a joint statement noting that there were "important issues raised by the Standing Rock Sioux Tribe and other tribal nations and their members regarding the Dakota Access pipeline," and that it "will not authorize constructing the Dakota Access pipeline on Corps land bordering or under Lake Oahe until it can determine whether it will need to reconsider any of its previous decisions regarding the Lake Oahe site under the National Environmental Policy Act (NEPA) or other federal laws."

8. After completing that review of its previous decisions, as well as information received from Tribes and the applicant, the Army concluded on November 14, 2016 that, although its previous decisions comported with legal requirements, additional discussion with the Standing Rock Sioux Tribe and analysis were warranted in light of the history of the Great Sioux Nation's dispossessions of lands; the importance of Lake Oahe to the Tribe; our government-to-government relationship; and the Mineral Leasing Act's direction to protect the environment, those who rely on fish and wildlife in the area for subsistence, and the public. See, for example, 30 U.S.C. §185(h)(2).

9. On November 22, 2016, the Omaha District Commander requested the Standing Rock Sioux Tribe to meet in order to engage in additional discussion and analysis during the week of November 28, 2016. On November 23, 2016, the Chairman of the Standing Rock Sioux Tribe responded that he was willing to engage in discussions, but that the Tribe needed additional detailed information for a full assessment of oil spill risk.

10. On December 2, 2016, the Omaha District Commander convened representatives of the Standing Rock Sioux Tribe, the applicant, and Omaha District staff. The express purpose of the meeting was to review the Tribe's concerns that were expressed in its October 29, 2016 letter. The group also discussed over 30 additional terms and conditions that could further reduce the risk of a spill or pipeline rupture. For example, the additional terms and conditions discussed include enhanced documentation (plans, drawings and records), and numerous pipeline safety enhancements, for example, a Supervisory Control and Data (SCADA) System, Computational Pipeline Monitoring (CPM) Leak Detection, Overpressure Protection Control, Interference and Corrosion Surveys, High Resolution Deformation Analysis, and Pipeline Patrolling. While the 5-hour long meeting did not produce any definitive mutual agreements, the technical discussions produced a meaningful exchange of information.

11. NEPA requires that Federal agencies consider reasonable alternatives to recommended actions whenever those actions "involve[ ] unresolved conflicts concerning alternative uses of available resources." See 42 U.S.C. §4332(2)(E). The Council on Environmental Quality's (CEQ) has advised that in some circumstances, including in some cases where environmental effects on Tribal resources are at stake, agencies "should heighten agency attention to alternatives (including alternative sites), mitigation strategies, monitoring needs, and preferences expressed by the affected community or population." See CEQ, "Environmental Justice Under the National Environmental Policy Act" at p. 10 (1997).

12. This more heighted analysis, in my judgment, is appropriate in the circumstances present here. Thus, after careful review and consideration, to include the revised proposed easement furnished to me on December 3, 2016, I have concluded that a decision on whether to authorize the Dakota Access Pipeline to cross Lake Oahe at the proposed location merits additional analysis, more rigorous exploration and evaluation of reasonable siting alternatives, and greater public and tribal participation and comments as contemplated in the CEQ's National Environmental Protection Act (NEPA) implementing regulations, 40 C.F.R. §1502.14 and §1503.1. Accordingly, the Army will not grant an easement to cross Lake Oahe at the proposed location based on the current record. The robust consideration of reasonable alternatives that I am directing, together with analysis of potential spill risk and impacts, and treaty rights, is best accomplished, in my judgment, by preparing an Environmental Impact Statement (EIS) that satisfies the accompanying procedures for broad public input and analysis. See, for example, 40 C.F.R. §1502 *et seq.*

13. Consistent with 40 C.F.R. §1500.2(e), the Corps shall engage in the following additional review and analysis (at a minimum):

- A robust consideration and discussion of alternative locations for the pipeline crossing the Missouri River, including, but not limited to, more detailed information on the alternative crossing that was considered roughly ten miles north of Bismarck;

- Detailed discussion of potential risk of an oil spill, and potential impacts to Lake Oahe, the Standing Rock Sioux Tribe's water intakes, and the Tribe's water rights as well as treaty fishing and hunting rights; and

- Additional information on the extent and location of the Tribe's treaty rights in Lake Oahe.

14. The Corps is encouraged to allow, with appropriate safeguards (including redaction), tribal government leaders and their representatives or experts, as well as relevant Federal agencies, the ability to review and respond to all analyses that are central to the concerns raised by the Standing Rock Sioux Tribe and other Tribal Nations, including the Lake Oahe Spill Model Discussion Report, the Lake Oahe HDD

Risk Analysis Report, and the DAPL – Route Comparison and Environmental Justice Considerations Memorandum.

15. This policy decision is based on the totality of circumstances in this case, more specifically, the specific mandates of the Mineral Leasing Act (30 U.S.C. §185), the involvement of historic tribal homelands, the close proximity to reservation lands that extend into the potentially affected waters, and the potential impacts on treaty hunting and fishing rights. I want to be clear that this decision does not alter the Army's position that the Corps' prior reviews and actions have comported with legal requirements. Rather, my decision acknowledges and addresses that a more robust analysis of alternatives can be done and should be done, *under these circumstances*, before an easement is granted for the Dakota Access Pipeline to cross the Missouri River on Corps land.

16. The Corps, and particularly the Omaha District and Northwestern Division, have performed with remarkable diligence and professionalism in responding to a demanding situation that has galvanized tribal communities across the nation, and presented difficult and unique challenges in protecting public safety, First Amendment rights, property rights, and law enforcement.

Jo-Ellen Darcy

Jo-Ellen Darcy
Assistant Secretary of the Army
(Civil Works)