# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

STANDING ROCK SIOUX TRIBE,

                Plaintiff,

and

CHEYENNE RIVER SIOUX TRIBE,

                Plaintiff–Intervenor,

    v.

UNITED STATES ARMY CORPS OF ENGINEERS,

                Defendant–Cross Defendant,

and

DAKOTA ACCESS, LLC,

                Defendant–Intervenor–Cross Claimant.

Case Number: 16-cv-1534 (JEB)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Kimberly H. Caine
William J. Leone
Robert D. Comer
NORTON ROSE FULBRIGHT US LLP
799 9th St. NW, Suite 1000
Washington, D.C. 20001-4501
(202) 662-0200

Edward V. A. Kussy
NOSSAMAN LLP
1666 K Street, NW, Suite 500
Washington, DC 20006
202-887-1400

William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Defendant–Intervenor–Cross Claimant Dakota Access, LLC*

Pursuant to Local Civil Rule 7(h) of the Local Rules of the U.S. District Court for the District of Columbia, Defendant–Intervenor–Cross Claimant Dakota Access, LLC ("Dakota") submits in support of its motion for summary judgment this statement of material facts as to which there is no genuine dispute.

## I.   THE DAKOTA ACCESS PIPELINE

1. The Dakota Access Pipeline ("DAPL") is an oil pipeline that will run approximately 1,100 miles from the Bakken region of North Dakota on a southeast path, ending at refineries and terminals in Patoka, Illinois. D.E. 39 (Mem. Op.), at 12–13; AR 71174.[1]

2. DAPL is a $3.78 billion project. AR 71304.

3. Dakota Access acquired the rights to a roughly 400-foot-wide construction corridor over the length of the pipeline. D.E. 39, at 13 (citing Ex. C (D.E. 22-3), at ¶ 3).

4. The planned DAPL route crosses federal flowage easements near Lake Sakakawea in North Dakota, and federally owned lands at Lake Oahe in North Dakota. AR 71227.

5. At the point where the requested DAPL route runs beneath Lake Oahe, that route includes a total of approximately 1,100 feet of Corps-owned lands. AR 71238.

## II.   THE REGULATORY APPROVAL PROCESS

6. On October 21, 2014, Dakota Access submitted paperwork to the Omaha District to obtain permission to drill from private land on one side of Lake Oahe to private land on the other side in order to install and operate the pipeline. Ex. H (D.E. 62-5), at 24.

---

[1] "D.E." refers to the docket entry number in this Court. "AR" refers to the administrative record.

7. On June 7, 2016, Rick Noel, Chief of the Civil Branch of the Omaha District's Real Estate Division, sent an email stating that the Corps "may have a decision on the [Environmental Assessment]/Section 408 in the near future" and, "[i]n anticipation of that occurring, I am finalizing the easement." Ex. G (D.E. 62-2), at 3.

8. In his June 7, 2016 email, Noel also asked "to whom should I send the easement for signature," and stated he would "complete the easement and have it ready to be sent back to you after the final environmental documents are signed and any site specific conditions are provided to me to add to the easement." Ex. G, at 3.

9. On June 10, 2016, Larry Janis, the Chief of the Recreation and Natural Resources Branch of the Corps's Omaha District, signed a memorandum for Colonel John W. Henderson, the Commander and District Engineer of the Omaha District, stating that Dakota Access sought authorization to "cross under the Missouri River (Lake Sakakawea) . . . and cros[s] under Lake Oahe," and that "technical reviewers have reviewed and have determined the request to not be injurious to the public interest and not impair the usefulness of work built by the United States." AR 71181.

10. On July 19, 2016, the Omaha District's Section 408 Coordinator, Brent Cossette, signed a document stating that Dakota Access "is requesting an easement on Corps-owned lands with a 30-inch crude oil pipeline." AR 71184.

11. The July 19, 2016 document states that Dakota Access's "proposal meets all legal and policy requirements" and that "a Section 408 decision may be rendered by the District Commander" without a "final decision by the Director of Civil Works at HQUSACE" because "[n]one of the questions" relevant to the potential need for additional approval "were answered 'yes.'" AR 71185.

12. On July 25, 2016, Colonel Henderson signed a document titled "District Commander's Approval of Section 408 Decision Document," which has the subject line: "Dakota Access Pipeline Project, Garrison Project (Consent Flowage Easements), Oahe Project (Easement)."  AR 71182.

13. In the July 25, 2016 document, Colonel Henderson "attest[ed] that the Decision Document for the Dakota Access Pipeline Project is consistent with Army policy, and has been reviewed for legal sufficiency by District Counsel. Accordingly, [he] approve[d] this Decision Document."  AR 71182.

14. On July 25, 2016, Colonel Henderson signed a document titled "Mitigated Finding of No Significant Impact" that accompanied the Corps's final Environmental Assessment.  AR 71174.

15. The Finding of No Significant Impact document states that the Environmental Assessment "was prepared to evaluate the potential effects of" a decision by the Omaha District "granting permission under Section [408]" to "allow the proposed Dakota Access Pipeline (DAPL) Project to cross federal real property interests administered by the District."  AR 71174.

16. The Finding of No Significant Impact document also states that the "purpose and need of the federal action [was] to determine whether [the Corps] may grant permission for Dakota Access to place the pipeline on federal real property interests" at "the Garrison Dam/Lake Sakakawea and Oahe Dam/Lake Oahe projects."  AR 71174.

17. The Finding of No Significant Impact document also sets forth various "Conditions of Easement (Lake Oahe crossing)" and includes several "conditions" that "will be placed on real estate outgrants."  AR 71176–78.

18.     The Finding of No Significant Impact document concludes with a statement that Colonel Henderson had "evaluated the anticipated environmental, economic, cultural, and social effects, and any cumulative effects of the Proposed Action and determined that the Proposed Action is not injurious to the public interest and will not impair the usefulness of the federal projects."  AR 71179.

19.     In July 2016, the Crops issued the final Environmental Assessment.  AR 71220.

20.     The Environmental Assessment states that the Corps evaluated the effects of allowing Dakota Access "to place a portion of the Dakota Access Pipeline Project (DAPL Project) on federal real property interests acquired and managed for the Garrison Dam/Lake Sakakawea and Oahe Dam/Lake Oahe Projects in North Dakota."  AR 71225.

21.     The Environmental Assessment states that its "analysis is limited to the effects of allowing the pipeline to cross federal flowage easements near Lake Sakakawea and federally owned lands at Lake Oahe in North Dakota, to determine whether the placement of the pipeline on federal real property interests is injurious to the public interest or will impair the usefulness of the federal projects."  AR 71225.

22.     On August 2, 2016, Noel (the head of the Civil Branch of the Omaha District's Real Estate Division) sent a "fully executed copy of Consent No. DACW45-9-16-8071" that "provides the Government's approval of and consent to the construction, operation and maintenance of a crude oil pipeline by [Dakota Access] over, across and under Government Flowage Easements . . . at the Lake Sakakawea Project."  Ex. I (D.E. 62-4), at 4.  Consent No. DACW45-9-16-8071, titled "Department of the Army Corps of Engineers Omaha District Consent to Easement Structures," is an easement for crossing Lake Sakakawea.  *Id.* at 5.  Noel signed this Lake Sakakawea easement on behalf of the Corps.  *Id.* at 7.

5

23. Consent No. DACW45-9-16-8071 (the Lake Sakakawea easement) provided that the Corps's consent was subject to a condition that Dakota Access would conduct "[a] full scale open water and a full scale winter/ice exercises [*sic*] at Lake Sakakawea and Lake Oahe." Ex. I, at 6.

24. On August 16, 2016, Thomas Tracey, District Counsel to the Omaha District, sent an e-mail to counsel for Dakota Access stating: "Here is the Section 408 permission package for the Oahe crossing." Ex. H (D.E. 62-5), at 2.

25. An internal Corps document dated November 7, 2016 states that the Corps "granted two Section 408 permissions for the DAPL project. One permission gave consent to cross flowage easements held by USACE at Lake Sakakawea, ND; the other provided an easement to cross federal property administered by [the Corps] for flood control & navigation at Lake Oahe, ND." Ex. B (D.E. 57-1), at 3.

26. The Corps's approval decisions for the Dakota Access pipeline, including its July 25, 2016 Finding of No Significant Impact document, were reported in the media, and both the President and members of both the House Committee on Natural Resources and the Senate Committee on Energy and Natural Resources have publicly commented on the project since that date. *See, e.g.*, Madison Park, *5 Things To Know About the Dakota Access Pipeline*, CNN, Aug. 31, 2016, http://www.cnn.com/2016/08/31/us/dakota-access-pipeline-explainer/; Rebecca Hersher, *Obama: Army Corps Examining Possible Rerouting of Dakota Access Pipeline*, NPR, Nov. 2, 2016, http://www.npr.org/sections/thetwo-way/2016/11/02/500363689/obama-army-corps-examining-possible-rerouting-of-dakota-access-pipeline; Ex. P (Letter from Bernard Sanders, Senator and Energy and Nat. Res. Comm. Member, to President Barack Obama (Oct. 28, 2016)); Press Release, Nat. Res. Comm. Democrats Ranking Member Raul M. Grijalva,

Grijalva 'Disappointed' by Court Ruling on DAPL; Calls on Dakota Access To Voluntarily Halt Construction Until Corps of Engineers Concludes Ongoing Review (Oct. 11, 2016), https://democrats-naturalresources.house.gov/media/press-releases/grijalva-disappointed-by-court-ruling-on-dapl-calls-on-dakota-access-to-voluntarily-halt-construction-until-corps-of-engineers-concludes-ongoing-review; Press Release, House Comm. on Nat. Res., Bishop: Obama Administration Is Exploiting Native Americans to Advance Their Extreme Environmental Agenda (Sept. 23, 2016), http://naturalresources.house.gov/newsroom/documentsingle.aspx?DocumentID=401256.

### III.   RECENT DEVELOPMENTS

27.   On September 9, 2016, the Department of Justice, the Department of the Army, and the Department of the Interior issued a joint statement in which they asked Dakota Access to "voluntarily pause all construction activity within 20 miles east or west of Lake Oahe" and said that "the Army will not authorize constructing the Dakota Access pipeline on Corps land bordering or under Lake Oahe until it can determine whether it will need to reconsider any of its previous decisions regarding the Lake Oahe site under the National Environmental Policy Act (NEPA) or other federal laws." Ex. Q (D.E. 42-1).

28.   On October 10, 2016, the Department of the Army, the Department of Justice, and the Department of the Interior issued a joint statement stating that "the Army continues to review issues raised by the Standing Rock Sioux Tribe and other Tribal nations and their members and hopes to conclude its ongoing review soon. In the interim, the Army will not authorize constructing the Dakota Access Pipeline on Corps land bordering or under Lake Oahe." Ex. R.

29.   On November 14, 2016, the Army stated in a letter to the Standing Rock Sioux Tribe, Dakota Access, and Dakota Access's parent company that the Army had "completed [its] review, accounting for information it has received from the Tribes and the pipeline company

since September, and has concluded that its previous decisions comported with legal requirements." Ex. A (D.E. 56-1), at 1.

30.     The November 14, 2016 letter also stated that "additional discussion with the Standing Rock Sioux Tribe and analysis are warranted"—and that it would "be completed expeditiously"—and invited the Standing Rock Sioux Tribe "to engage in discussion" regarding "[p]otential conditions in an easement for the pipeline crossing." Ex. A, at 2.

31.     On November 22, 2016, Colonel Henderson sent a letter to the Chairman of the Standing Rock Sioux Tribe. Ex. F. The letter states: "During our meeting on November 17 in Rapid City, you stated that you had no desire to further discuss opportunities to address pipeline safety concerns. Additionally, you stated that the only acceptable solution was to relocate the pipeline." *Id.* The letter notes that the "Army takes its tribal consultation requirements seriously and we feel it is our responsibility to continue to reach out you [*sic*] on this matter." *Id.* It further states that the "goal would be to seek potential easement conditions that would further reduce the risk of a spill or rupture, hasten detection and response, or otherwise enhance the protection of Lake Oahe, the Tribe's water supplies, and treaty rights." *Id.* The final paragraph of the letter states: "Our team is available during the week of November 28, 2016 to meet with you and your staff," and asks the Chairman to "let us know if you are interested in this opportunity." *Id.*

32.     On December 4, 2016, Jo-Ellen Darcy issued a memorandum to the Commander, U.S. Army Corps of Engineers, in which she asserted that "a decision on whether to authorize the Dakota Access Pipeline to cross Lake Oahe at the proposed location merits additional analysis, more rigorous exploration and evaluation of reasonable siting alternatives, and greater public and tribal participation and comments." Ex. S (D.E. 65-1), at ¶ 12. She went on to say

that "the Army will not grant an easement to cross Lake Oahe at the proposed location based on the current record." *Id.*  In the memorandum, Ms. Darcy further asserted that additional review "is best accomplished . . . by preparing an Environmental Impact Statement." *Id.*  This additional review is to include "alternative locations for the pipeline crossing the Missouri River, including, but not limited to . . . the alternative crossing that was considered roughly ten miles north of Bismarck." *Id.* ¶ 13.  She added:  "I want to be clear that this decision does not alter the Army's position that the Corps' prior reviews and actions have comported with legal requirements.  Rather, my decision acknowledges and addresses that a more robust analysis of alternatives can be done and should be done, *under these circumstances*, before an easement is granted for the Dakota Access Pipeline to cross the Missouri River on Corps land." *Id.* ¶ 15.

Dated:  December 5, 2016

| | |
|---|---|
| Kimberly H. Caine<br>William J. Leone<br>Robert D. Comer<br>NORTON ROSE FULBRIGHT US LLP<br>799 9th St. NW, Suite 1000<br>Washington, D.C. 20001-4501<br>(202) 662-0200<br><br>Edward A. Kussy<br>NOSSAMAN LLP<br>1666 K St. NW, Suite 500<br>Washington, D.C. 20006<br>(202) 887-1400 | /s/ William S. Scherman<br>William S. Scherman<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>(202) 955-8500<br>(202) 530-9557 (fax)<br>wscherman@gibsondunn.com |

*Counsel for Defendant–Intervenor–Cross Claimant Dakota Access, LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of December, 2016, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the District of Columbia using the CM/ECF system. Service was accomplished by the CM/ECF system on the following counsel:

>Patti A. Goldman
>Jan E. Hasselman
>EARTHJUSTICE
>705 Second Avenue, Suite 203
>Seattle, WA  98104
>(206) 343-7340
>pgoldman@earthjustice.org
>jhasselman@earthjustice.org
>
>*Counsel for Plaintiff Standing Rock Sioux Tribe*
>
>
>Nicole E. Ducheneaux,
>FREDERICKS PEEBLES & MORGAN, LLP
>3610 North 163rd Plaza
>Omaha, NE 68116
>(402) 333-4053
>nducheneaux@ndnlaw.com
>
>Conly J. Schulte
>FREDERICKS PEEBLES & MORGAN, LLP
>1900 Plaza Drive
>Louisville, CO  80027
>(303) 673-9600
>cshulte@ndnlaw.com
>
>*Counsel for Plaintiff–Intervenor Cheyenne River Sioux Tribe*

Matthew M. Marinelli
Erica M. Zilioli
U.S. DEP'T OF JUSTICE
Environment & Natural Resources Division
P.O. Box 7415
Washington, D.C. 20044
(202) 514-2000
Matthew.Marinelli@usdoj.gov
Erica.zilioli@usdoj.gov

*Counsel for Defendant–Cross Defendant U.S. Army Corps of Engineers*

   /s/ William S. Scherman
William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Defendant–Intervenor–Cross Claimant Dakota Access, LLC*