## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| CHEYENNE RIVER SIOUX TRIBE, | ) |
| | ) |
|      Plaintiff-Intervenor | ) |
| | ) |
| v. | )    Case No. 1:16-cv-01534 (JEB) |
| | ) |
| UNITED STATES ARMY CORPS OF ENGINEERS, | ) |
| | ) |
|      Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| DAKOTA ACCESS, LLC, | ) |
| | ) |
|      Defendant-Intervenor and Cross-Claimant | ) |

## UNITED STATES ARMY CORPS OF ENGINEERS' MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS AND IN OPPOSITION TO DAKOTA ACCESS, LLC'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ............................................................................................................... 1

STATUTORY AND REGULATORY BACKGROUND ........................................................... 1

    I.      Administrative Procedure Act ................................................................... 1

    II.     Property Clause of the United States Constitution ................................. 2

    III.    Rivers and Harbors Act .......................................................................... 3

    IV.    Mineral Leasing Act ............................................................................... 3

    V.     Regulatory Background ........................................................................... 4

STATEMENT OF FACTS ................................................................................................... 5

STANDARDS OF REVIEW ................................................................................................ 7

    I.      Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) .......................... 7

    II.     Summary Judgment ................................................................................ 8

ARGUMENT ..................................................................................................................... 9

    I.      Dakota Access's cross-claim should be dismissed because it fails to state a claim on which relief can be granted. ................................................... 9

          A.    Dakota Access's cross-claim should be dismissed because the Declaratory Judgment Act does not provide Dakota Access with a cognizable cause of action. ........................................................ 9

          B.    Dakota Access's cross-claim should be dismissed because it does not plausibly allege that the Army has completed the final statutory step necessary before the Corps can grant the Lake Oahe easement under Section 185(w)(2). ........................................................ 10

          C.    Dakota Access's cross-claim should be dismissed because it has not stated a plausible claim that the Corps' grant of permission under the Rivers and Harbors Act also granted Dakota Access an easement to install a pipeline at Lake Oahe under the Mineral Leasing Act. ............. 15

               i.     The July 25, 2016 grant of permission under 33 U.S.C. § 408 was limited in scope. ................................................................ 16

i

   ii. The process for evaluating a Mineral Leasing Act easement to install a pipeline under Corps-managed Federally-owned lands at Lake Oahe largely follows, and is distinct from, the process for evaluating whether to grant permission under 33 U.S.C. § 408.............................................................................................. 18

II. Dakota Access's Motion for Summary Judgment should be denied because it fails to establish that the Corps granted Dakota Access an easement under the Mineral Leasing Act to construct a pipeline under Federal lands at Lake Oahe. ........................................................................................................... 24

  A. Documents pre-dating July 25, 2016 establish that the Corps did not complete its evaluation of Dakota Access's easement application by July 25, 2016. .......................................................................................... 24

  B. Dakota Access's submission of documents post-dating July 25, 2016 refutes its contention that the Corps effectively granted it an easement to cross Lake Oahe on July 25. ................................................. 27

CONCLUSION .................................................................................................... 30

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Ali v. Rumsfeld*,
  649 F.3d 762 (D.C. Cir. 2011) ................................................................................. 9

*Am. Wildlands v. Kempthorne*,
  530 F.3d 991 (D.C. Cir. 2008) ............................................................................... 27

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 8

*Anglers Conservation Network v. Pritzker*,
  809 F.3d 664 (D.C. Cir. 2016) ............................................................................... 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 7, 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 7, 8

*Browning v. Clinton*,
  292 F.3d 235 (D.C. Cir. 2002) ................................................................................. 7

*Cal. Coastal Com v. Granite Rock Co.*,
  480 U.S. 572 (1987) ................................................................................................ 2

*California Co. v. Udall*,
  296 F.2d 384 (D.C. Cir. 1961) ............................................................................... 18

*Camfield v. United States*,
  167 U.S. 518 (1897) ................................................................................................ 2

*Christensen v. Harris County,*
  529 U.S. 576 (2000) .............................................................................................. 26

*Cmty. Care Found. v. Thompson,*
  318 F.3d 219 (D.C. Cir. 2003) ............................................................................... 28

*Doe v. United States Parole Comm'n,*
  602 Fed. Appx. 530 (D.C. Cir. 2015) ........................................................... 1, 10, 24

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) ................................................................................. 8

*Franklin v. Massachusetts,*
  505 U.S. 788 (1992) ............................................................................... 2, 10, 13, 14

*Hammond v. Norton,*
  370 F. Supp. 2d 226 (D.D.C. 2005) ......................................................................... 3

*Holistic Candlers & Consumers Ass'n v. FDA,*
  664 F.3d 940 (D.C. Cir. 2012) ......................................................................... 1, 10

iii

*In re Aiken County*,
  725 F.3d 255 (D.C. Cir. 2013) ................................................................................ 11

*INS v. Chada*,
  462 U.S. 919 (1983) .............................................................................................. 12

*Kaseman v. Dist. Of Columbia*,
  444 F.3d 637 (D.C. Cir. 2006) ................................................................................ 12

*Kleppe v. New Mexico*,
  426 U.S. 529 (1976) ................................................................................................ 2

*Kowal v. MCI Communications Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) .................................................................................. 8

*Lewis v. Gov't of the Dist. of Columbia*,
  161 F. Supp. 3d 15 (D.D.C. 2015) ............................................................................ 9

*Light v. United States*,
  220 U.S. 523 (1911) ................................................................................................ 2

*Louisville & Nashville R. Co. v. Mottley*,
  219 U.S. 467 (1911) .............................................................................................. 12

*Mich. Land & Lumber Co. v. Rust*,
  168 U.S. 589 (1897) ................................................................................................ 3

*Morton v. Mancari*,
  417 U.S. 535 (1974) .............................................................................................. 21

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
  551 U.S. 644 (2007) .............................................................................................. 29

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) ................................................................................................ 11

*Perez v. Mortgage Bankers Ass'n*,
  135 S.Ct. 1199 (2015) ........................................................................................... 29

*Public Citizen v. FERC*,
  839 F.3d 1165 (D.C. Cir. 2016) .......................................................................... 2, 10

*Resolute Forest Prods. v. United States Dep't of Agric.*,
  No. 14-2103 (JEB), 2016 U.S. Dist. LEXIS 64439 (D.D.C. May 17, 2016) ............................. 8

*Schilling v. Rogers*,
  363 U.S. 666 (1960) ................................................................................................ 9

*Silver State Land, LLC v. Schneider*,
  145 F. Supp. 3d 113, 127 (D.D.C. 2015), ............................................................... 29

*Silver State Land, LLC v. Schneider*,
  No. 16-5018, 2016 U.S. App. LEXIS 22343 (D.C. Cir. Dec. 16, 2016) ..................... 3, 13, 26

iv

*United States v. Atl. Research Corp.*,
　551 U.S. 128 (2007) ............................................................................................ 12

*United States v. Republic Steel Corp.*,
　362 U.S. 482 (1960) ............................................................................................ 17

*Utah Power & Light Co. v. United States*,
　243 U.S. 389 (1917) ...................................................................................... 2, 26

*Vernal Enters. v. FCC*,
　355 F.3d 650 (D.C. Cir. 2004) ........................................................................... 28

*Wilderness Soc. v. Morton*,
　479 F.2d 842 (D.C. Cir. 1973) .................................................................... 12, 23

## **STATUTES**

*5 U.S.C. § 702 ............................................................................................. 1, 10

*5 U.S.C. § 704 ................................................................................................. 29

5 U.S.C. § 706(1) ....................................................................................... 10, 11

10 U.S.C. § 2668 ................................................................................................ 21

30 U.S.C. §§ 181 et seq ....................................................................................... 3

30 U.S.C. § 185 ......................................................................................... *passim*

30 U.S.C. § 185(d) ..................................................................................... 19, 21

30 U.S.C. § 185(f) ............................................................................................. 21

30 U.S.C. § 185(g) ..................................................................................... 19, 21

30 U.S.C. § 185(h)(2) ........................................................................... 17, 19, 21

30 U.S.C. § 185(i) ............................................................................................. 19

30 U.S.C. § 185(j) ............................................................................................. 19

30 U.S.C. § 185(l) ....................................................................... 19, 20, 21, 22

30 U.S.C. § 185(n) ............................................................................................. 20

30 U.S.C. § 185(p) ............................................................................................. 20

30 U.S.C. § 185(v) ............................................................................................. 20

*30 U.S.C. § 185(w)(2) ............................................................................... *passim*

30 U.S.C. § 185(x) ............................................................................................. 20

33 U.S.C. § 408 ......................................................................................... *passim*

Pub. L. No. 66-146, 41 Stat. 437 (Feb. 25, 1920) ........................................... 18

Pub. L. No. 93-153, 87 Stat. 576 (Nov. 16, 1973) ........................................... 23

Pub. L. No. 99-88, 30 Stat. 1152 (Mar. 3, 1899) ........................................................................ 3

U.S. Const. art. IV, § 3 ............................................................................................................... 2

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 7

Local Rule 7(h)(2) ....................................................................................................................... 7

# INTRODUCTION

Dakota Access's cross-claim should be dismissed because it fails to identify a final agency action with respect to the United States Army Corps of Engineers ("Corps") consideration of whether to issue a right-of-way or easement required to install a portion of the Dakota Access pipeline under Federally-owned, Corps-managed lands at Lake Oahe, North Dakota. Dakota Access's cross-claim fails to state a claim on which relief can be granted because Dakota Access does not, and cannot, plausibly allege that the United States Department of the Army ("Army") completed the administrative decision-making process required to grant the Lake Oahe easement pursuant to the Mineral Leasing Act. Dakota Access's inability to establish that the decision-making process was completed – including a statutorily-mandated submission of a formal notice to Congress of the Army's intent to grant an easement – is fatal to its cross-claim. If the Court reaches Dakota Access's motion for summary judgment, that motion should be denied because Dakota Access cannot establish that the Corps' analysis of the two factors required to grant a permission under the Rivers and Harbors Act concluded its evaluation of more than a dozen factors under the Mineral Leasing Act.

## STATUTORY AND REGULATORY BACKGROUND

### I.   Administrative Procedure Act

The Administrative Procedure Act "only provides a right to judicial review of '*final* agency action.'" *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (emphasis in original). To invoke Section 702 of the APA's "'generic cause of action in favor of persons aggrieved by agency action,' . . . the challenged decision [must] be 'final agency action.'" *Doe v. U.S. Parole Comm'n*, 602 Fed. Appx. 530, 535 (D.C. Cir. 2015). "An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.' The core

1

question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) (citation omitted).  While there is a strong presumption in favor of judicial review of agency action, the presumption does not attach where an agency takes a step that "does not reflect an agency decision that fully resolved the issue or completed the process." *Public Citizen v. FERC*, 839 F.3d 1165, 1171 (D.C. Cir. 2016).

## II.      Property Clause of the United States Constitution

The Property Clause of the United States Constitution provides that "Congress shall have Power to dispose of and make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. The Supreme Court has "repeatedly observed that '[the] power over the public land thus entrusted to Congress is without limitations.'" *Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976) (citations omitted).  *See also Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 581 (1987) ("Property Clause gives Congress plenary power to legislate the use of the federal land").  Among other things, the Property Clause "gives Congress the power over the public lands 'to control their occupancy and use, to protect them from trespass and injury, and to prescribe the conditions upon which others may obtain rights in them . . . .'" *Kleppe,* 426 U.S. at 540 (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 405 (1917)).  "[T]he Government has, with respect to its own lands, the rights of an ordinary proprietor, to maintain its possession . . . . It may deal with such lands precisely as a private individual may deal with his farming property. It may sell or withhold them from sale." *Camfield v. United States*, 167 U.S. 518, 524 (1897).  "And if it may withhold from sale and settlement, it may also, as an owner, object to its property being used" for certain purposes. *Light v. United States*, 220 U.S. 523, 536 (1911).  "'Generally speaking, while the

legal title remains in the United States, the grant is in process of administration, and the land is subject to [agency] jurisdiction.'" *Silver State Land, LLC v. Schneider*, 2016 U.S. App. LEXIS 22343, *17-*18 (D.C. Cir. Dec. 16, 2016) (quoting *Mich. Land & Lumber Co. v. Rust*, 168 U.S. 589, 592 (1897)).

### III.    Rivers and Harbors Act

The Rivers and Harbors Act was passed in 1899 to provide for the "construction, completion, repair, and preservation of" public works.  Act making appropriations for the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes, Pub. L. No. 99-88, § 14, 30 Stat. 1152 (Mar. 3, 1899).  Section 14 of the Rivers and Harbors Act is codified in Title 33, which addresses navigation and navigable waters.  33 U.S.C. § 408.  Section 408 generally prohibits taking possession of, using, or impairing Corps-managed projects, but allows the Secretary of the Army to "grant permission for the alteration or permanent occupation or use of . . . public works when in the judgment of the Secretary such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work."  *Id.*

### IV.    Mineral Leasing Act

The Mineral Leasing Act, 30 U.S.C. §§ 181 et seq., requires a project proponent to obtain a right-of-way or easement "before it can construct, operate, or maintain a pipeline on federal lands."  *Hammond v. Norton*, 370 F. Supp. 2d 226, 233 (D.D.C. 2005).  Such easements "may be granted" in accordance with 30 U.S.C. §185(a)-(y).  The Mineral Leasing Act prohibits granting an easement through Federal lands for pipeline purposes until, among other things, "a notice of intention to grant the right-of-way" along with detailed findings as to the terms and conditions the agency "proposes to impose, has been submitted" to the Committee on Natural Resources of

the United States House of Representatives and the Committee on Energy and Natural Resources of the United States Senate.  30 U.S.C. § 185(w)(2).

## V.     Regulatory Background

The Army issued regulations that broadly govern the "Management of Title and Granting Use of Real Property."  Army Regulation 405-80 (Oct. 10, 1997) (Ex. 1).  Regulation 405-80 requires, among other things, that all "non-Army use [of Army-controlled real property] must be authorized by an appropriate realty instrument."  Army Reg. 405-80 at 4-1(c).

The Corps subsequently issued a letter specifically governing its policy on issuing easements for "fuel carrying pipelines that are 24 inches or more in diameter."  USACE Policy Guidance Letter No. 27 (Oct. 29, 2008) (Ex. 2).  Policy Guidance Letter No. 27 provides that upon receipt of an application for such an easement, the Corps' district office must "provide a letter . . . for the Deputy Assistant Secretary of the Army (Installations and Housing)['s] execution and notification to Congress."  *Id*. at ¶ 3(a)(1).

Policy Guidance Letter No. 27 further provides that, if the Corps' intent is to grant an easement over its fee lands for pipeline purposes, the District must provide a letter to Corps Headquarters for the Deputy Assistant Secretary of the Army (Installations and Housing)'s execution and notification to Congress.[1]  "For review purposes," the letter must be accompanied by an information paper, map, the proposed easement, Report of Availability, and environmental analysis.  *Id*. at ¶ 3(a)(2).  Policy Guidance Letter No. 27 requires the use of a model "easement

---

[1] No such notice to Congress is required if a "pipeline only crosses an area held in less than fee, such as an easement."  *Id*. at ¶ 3(b).  Granting permission for the Dakota Access Pipeline to cross Federal flowage easements, as opposed to fee lands, at Lake Sakakawea therefore required no notice to Congress.  Real Estate Routing and Review, AR 71193. On August 2, 2016, the Corps executed and transmitted a "Consent to Easement Structures" at Lake Sakakawea after Dakota Access executed and transmitted the "Consent, Certificate of Authority and Payment."  Dakota Access Mem., ECF 66-3, Ex. I at 2.

format." Policy Guidance Letter No. 27 at ¶ 3(a)(3), Enclosure 3. The guidance requires the District office to "wait 14 days following Committee notification before" executing the easement unless the Committee provides "an affirmative response." *Id*.

## STATEMENT OF FACTS

On October 21, 2014, Dakota Access initiated the process for requesting "a permanent easement" over Corps-managed lands at Lake Oahe. Letter from M. Howard, Dakota Access, to B. Cossette, Corps (Oct. 21, 2014) (Ex. 3). On June 29, 2015, Dakota Access applied for an easement to traverse "federally owned property at Lake Oahe." Dakota Access Application for Transportation and Utility Systems and Facilities on Federal Lands (Ex. 4). The Army transmitted letters to the Chairman and Ranking Members of the Senate Committee on Energy and Natural Resources and House of Representatives Committee on Natural Resources notifying Congress that Dakota Access had **applied** for an easement pursuant to 30 U.S.C. § 185(w). *See* Letter from P. Cramer, Deputy Asst. Sec'y of the Army, to Hon. R. Bishop, U.S. House of Representatives (Sep. 3, 2015) (Ex. 5).

Dakota Access's proposed pipeline would "cross . . . federally-owned property at Lake Oahe in Morton and Emmons counties, North Dakota." Finding of No Significant Impact at 1, AR 71174 (Ex. 6). Constructing a pipeline under Lake Oahe would require "real estate actions and Section 10 permits and Section 408 permissions." *Id*. at 2, AR 71175. The Corps made clear to Dakota Access that it did not "want to start routing [the easement, or real estate, application] up the chain until we have a Section 408 determination." Email from L. Janis to J. Mahmoud (Apr. 5, 2016) (Ex. 7).

On July 25, 2016, the Corps completed an Environmental Assessment. Dakota Access Pipeline Project Crossings of Flowage Easements and Federal Lands, AR 71220 (Ex. 8). The Environmental Assessment recognized that the "proposed crossings of Corps-owned lands and

easements would require the Corps to grant . . . Section 408 permissions as well as real estate

outgrants." *Id*. at 3, AR 71227.  The Environmental Assessment's "scope . . . is limited to the

crossings of Corps-owned lands and flowage easements." *Id*.  While the Corps is generally

neither prohibited from nor required to rely on a single Environmental Assessment for multiple

decisions, the Environmental Assessment here set forth the Corps' intention to "use the

information in the EA to make a final determination whether to grant the required 408

permissions using the information contained herein." *Id*. at 4, AR 71228.  The Corps also issued

a Finding of No Significant Impact on July 25, 2016.  That document states that constructing a

pipeline would require "real estate actions and Section 10 permits and Section 408 permissions."

Finding of No Significant Impact at 2, AR 71175 (Ex. 7).  The Finding of No Significant Impact

provides that the "EA and . . . Finding of No Significant Impact deal exclusively with granting

the Section 408 permissions." *Id*.

The Army has not transmitted a letter to Congress stating its intent to grant an easement

to install a pipeline under Corps-managed lands at Lake Oahe.  *See* Dakota Access Mem. at 12;

Press Release, Nat. Res. Comm. Democrats Ranking Member Raúl M. Grijalva, Grijalva

'Disappointed' by Court Ruling on DAPL; Calls on Dakota Access to Voluntarily Halt

Construction Until Corps of Engineers Concludes Ongoing Review (Oct. 11, 2016) (Ex. 9) ("Per

[the D.C. Circuit's October 9, 2016 Order], 'a necessary easement still awaits government

approval.'").  The Army is still considering Dakota Access's easement application and

developing an administrative record for a final decision on that easement, which may include

documents that also informed the Corps' Section 408 permission. Mem. re: Proposed Dakota

Access Pipeline Crossing at Lake Oahe, North Dakota at ¶¶ 6, 12 (Dec. 4, 2016) (Ex. 10).

Neither the Army nor the Corps issued a final decision on the application for an easement at any time, including on July 25, 2016.  Nor have they signed a document conveying to Dakota Access an easement to construct a pipeline under Corps-managed Federal lands at Lake Oahe. Cross-Claimant Dakota Access, LLC's Memorandum in Support of its Motion for Summary Judgment. at 2 (ECF 66-1) ("Dakota Access Mem.").[2]

## STANDARDS OF REVIEW

### I.     Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct

---

[2] The Corps submits this statement of facts with references to the administrative record pursuant to Local Rule 7(h)(2).  As the Corps set forth in its opposition to Dakota Access's Motion to Supplement the Administrative Record, ECF 61, the Corps cannot compile the administrative record for a decision until it makes that decision.  Accordingly, there is no administrative record for an easement decision.  Regardless, to the extent that the Court reaches Dakota Access's motion for summary judgment, the only potential material dispute – whether the Corps did or did not grant Dakota Access an easement to cross Corps-managed Federal Lands at Lake Oahe on or before July 25, 2016 – would be resolved by examining the July 25 decision and the administrative record that supports that decision.  To the extent a response to Dakota Access's Statement of Undisputed Facts, ECF 66-2, is required the Corps also objects to Paragraphs 22 through 32 of that Statement because they set forth allegedly undisputed facts that occurred after the July 25 decision that Dakota Access contends granted it the Lake Oahe easement. Nonetheless, in conformance with the Court's order generally denying Dakota Access's motion to supplement the administrative record but ordering the Corps to "supplement the Administrative Record by January 6, 2017, with all documents concerning the easement that were created on or before July 25, 2016" the Corps has produced non-privileged documents concerning the easement that were created on or before July 25, 2016 (that were not already included in the record for the July 25 decision) and treats those documents as administrative record documents under Local Rule 7(h)(2).

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cause of action and must be disregarded. *Iqbal*, 556 U.S. at 678. (citing *Twombly*, 550 U.S. at 555).  Similarly, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).  In evaluating a Rule 12(b)(6) motion, the Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [it] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## II.    Summary Judgment

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Facts are material if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  In Administrative Procedure Act "cases, 'the function of the district court is to determine whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did.'" *Resolute Forest Prods. v. United States Dep't of Agric.*, 2016 U.S. Dist. LEXIS 64439 at *11 (D.D.C. May 17, 2016) (citation omitted).

8

## ARGUMENT

**I.      Dakota Access's cross-claim should be dismissed because it fails to state a claim on which relief can be granted.**

Dakota Access's cross-claim fails to state a claim on which relief can be granted because its allegations establish that the Army has not completed its review of Dakota Access's easement application and that the Corps has not granted Dakota Access any real estate interest at Lake Oahe under the Mineral Leasing Act.

**A.   Dakota Access's cross-claim should be dismissed because the Declaratory Judgment Act does not provide Dakota Access with a cognizable cause of action.**

The Declaratory Judgment Act does not provide Dakota Access with the necessary cause of action.  It is a "well-established rule that the Declaratory Judgment Act 'is not an independent source of federal jurisdiction.' Rather, 'the availability of [declaratory] relief presupposes the existence of a judicially remediable right.'" *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)); *Lewis v. Gov't of the Dist. of Columbia*, 161 F. Supp. 3d 15, 23 (D.D.C. 2015) (dismissing count for declaratory relief because "[r]equests for declaratory judgments and injunctions are not 'freestanding cause[s] of action' but rather invoke 'form[s] of relief to redress the other claims asserted by Plaintiff'") (citation omitted).   Dakota Access's cross-claim should be dismissed because it does not identify any judicially remediable right.

**B. Dakota Access's cross-claim should be dismissed because it does not plausibly allege that the Army has completed the final statutory step necessary before the Corps can grant the Lake Oahe easement under Section 185(w)(2).**

Dakota Access has also failed to state a claim under the Administrative Procedure Act.[3] Section 702 of the Administrative Procedure Act "only provides a right to judicial review of '*final* agency action.'"  *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (emphasis in original).  To invoke Section 702 of the APA's "'generic cause of action in favor of persons aggrieved by agency action, . . . the challenged decision [must] be 'final agency action.'" *Doe v. United States Parole Comm'n*, 602 Fed. Appx. 530, 535 (D.C. Cir. 2015).  "An agency action is not final if it is only 'the ruling of a subordinate official,' or 'tentative.' The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) (citation omitted).  And while there is a strong presumption in favor of judicial review of agency action, the presumption does not attach where an agency takes a step that "does not reflect an agency decision that fully resolved the issue or completed the process." *Public Citizen v. FERC*, 839 F.3d 1165, 1171 (D.C. Cir. 2016) (Commission's announcement that it had deadlocked due to a 2-2 vote was not a reviewable action).  Dakota Access does not plausibly allege that the Army has completed the necessary final agency action, and it therefore cannot state a cause of action under the Administrative Procedure Act.[4]

---

[3] As an initial matter, it is unclear whether Dakota Access even invokes the Administrative Procedure Act.  *Compare* Cross-claim at ¶ 9 (citing 5 U.S.C. §§ 701-706) *with* Reply Mem. in Support of Expedited Motion to Supplement the Administrative Record, ECF 62 at 8 ("the cross-claim does not invoke the APA").

[4] While Dakota Access has styled its claim as a Declaratory Judgment Action, it appears to instead be seeking to mandate agency action.  Section 706(1) of the Administrative Procedure

10

There is no dispute that the Mineral Leasing Act prohibits granting an easement through Federal lands for pipeline purposes until "**a notice of intention** to grant the right-of-way, together with the . . . **agency head's** detailed findings as to the terms and conditions he **proposes to impose, has been submitted**" to the Committee on Natural Resources of the United States House of Representatives and the Committee on Energy and Natural Resources of the United States Senate.  30 U.S.C. § 185(w)(2) (emphasis added); Cross-claim at ¶ 16 (ECF 57).  Dakota Access's cross-claim makes clear that there can be no legitimate dispute that the required Congressional notification never occurred.

Dakota Access's failure to allege that the Army complied with 30 U.S.C. § 185(w)(2)'s mandate to provide Congress notice of its intent to grant the Lake Oahe easement is fatal to its cross-claim.  Dakota Access's allegation that this necessary step was completed rests on its assertion that the Corps' "July 25, 2016 permission w[as] widely reported in the media, and both the President and members of Congress have publicly commented on the project."  Cross-claim at ¶ 39; ¶ 49 (suggesting that the Corps complied with Section 185(w)(2) because "both committees are already aware of the Corps's July 25, 2016 authorization allowing the pipeline to cross federal real property interests at Lake Oahe").  These allegations are, at best, irrelevant.

---

Act provides plaintiffs with the ability to "compel agency action unlawfully withheld or unreasonably delayed" in certain circumstances. 5 U.S.C. § 706(1).  But Dakota Access has not chosen to assert such a claim.  And even if it had, Section 706(1) would not provide the necessary waiver of sovereign immunity for such an action because Dakota Access alleges no action that the Corps is required to take.  *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*") (emphasis in original); *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 671 (D.C. Cir. 2016). *Cf. In re Aiken County*, 725 F.3d 255, 257-258 (D.C. Cir. 2013) (granting mandamus only where the applicable "law provides that the Nuclear Regulatory Commission 'shall consider' the Department of Energy's license application . . . and 'shall issue a final decision approving or disapproving' the application within three years of its submission.").  Even if Dakota Access invoked Section 706(1) of the Administrative Procedure Act, this would not save its claim.

Media reports and comments by Congress, standing alone, do not satisfy Section 185(w)(2)'s requirements.

It is well established that courts, "'must have regard to all the words used by Congress, and as far as possible give effect to them.'" *United States v. Atl. Research Corp.*, 551 U.S. 128, 137 (2007) (quoting *Louisville & Nashville R. Co. v. Mottley*, 219 U.S. 467, 475 (1911)).  And "courts have been wary of interpreting right-of-way statutes so as to make the conditions and limitations enacted by Congress 'of no value whatever.'" *Wilderness Soc'y v. Morton*, 479 F.2d 842, 892 (D.C. Cir. 1973).  As Dakota Access points out, "statutes should be interpreted to avoid . . . absurd consequences." Dakota Access Mem. at 22 (quoting *Kaseman v. Dist. of Columbia*, 444 F.3d 637, 642 (D.C. Cir. 2006)).  Dakota Access's suggestion that media reports regarding the ongoing consideration of the easement comply with Section 185(w)(2)'s notice requirements must be rejected because it would rob Congress's use of the terms "submit," "a notice," "intent," and "proposes" of any meaning and eliminate Congress's statutorily-reserved opportunity to review certain proposed easements.[5]

Dakota Access's cross-claim must be dismissed because it does not plausibly allege that the Army complied with the Mineral Leasing Act's explicit condition to "submit" "a notice" to Congress of its intent to grant an easement before it grants that easement.  Dakota Access's theory that the media provided the necessary statutory notification does not address the form or content of that notification.  And to the extent it addresses the timing of the media reports, Dakota Access suggests that Congress received notification that the Corps granted it an easement after the easement was allegedly granted, a scenario that would divest Congress of the authority

---

[5] Congress may retain the authority to (1) require an agency to report on its proposed actions and (2) respond to that proposal.  *INS v. Chada*, 462 U.S. 919, 934-35 (1983).

retained by the Mineral Leasing Act.  But the Mineral Leasing Act requires the Corps to notify

Congress **prior** to granting an easement.  30 U.S.C. § 185(w)(2).  The Corps' guidance requires

any notification of an intent to grant an easement to be formally submitted by the Deputy

Assistant Secretary of the Army for Installations and Housing and allows Congress 14 days to

review the letter before the Corps finalizes the easement.  Policy Guidance Letter No. 27 at ¶

3(a)(2)-(3) (Ex. 2). Dakota Access does not, nor could it, allege that the agency "**submitted**" the

statutorily-required "**notification**" of "**intention to grant**" an easement to Congress prior to July

25, 2016.  This failure, standing alone, is fatal to Dakota Access's cross-claim.

Dakota Access's assertions regarding the completion of the Section 185 review are also

meritless because they rest on the assumption that any individual can provide the required

Congressional notification of an intent to grant an easement.  *See* Cross-claim at ¶¶ 39, 49.  But a

Corps recommendation to the Deputy Assistant Secretary "serves more like a tentative

recommendation than a final and binding determination."  *Franklin*, 505 U.S. at 798.[6]  Indeed,

the Corps' transmission of a draft Congressional notification package is nothing more than a

recommendation to Deputy Assistant Secretary of the Army for Installations, Housing and

Partnerships.  The Deputy Assistant Secretary of the Army for Installations, Housing, and

Partnerships explicitly reserved the final decision on whether to notify Congress of the Army's

intent to grant or deny an easement under the Mineral Leasing Act.  Memorandum re: Delegation

of Authority to Acquire, Manage, and Dispose of Real Property at ¶ 5(c) (June 8, 2015) (Ex. 11)

---

[6] The Corps notes that even a notification of an intent to grant an easement is not final, as
legal title remains in the United States while the grant is in the process of administration.  *Silver
State Land, LLC v. Schneider*, 2016 U.S. App. LEXIS 22343 at *17-*18.

("excepted from this delegation [are] . . . letters of notification to Congress")[7]  There is no statute that prohibits the Deputy Assistant Secretary from amending the terms of the draft easement or even, after reviewing the Corps' recommendation, determining that the Army does not intend to grant the easement.  *Cf. Franklin*, 505 U.S. at 797-98.  Therefore, the Army has not completed its agency process for granting an easement until, at a minimum, the Deputy Assistant Secretary of the Army for Installations and Housing submits a notification to Congress of intent to grant an easement over fee land for pipeline purposes and the easement document itself is then signed by the authorized Corps official.  *See* Policy Guidance Letter No. 27 at ¶ 3(a)(2).  Dakota Access's inability to allege that the Deputy Assistant Secretary notified Congress of the Army's intent grant a Mineral Leasing Act easement, standing alone, is fatal to its claim.[8]

Even if it were possible for the media to satisfy Section 185(w)(2)'s notice requirement, Dakota Access has failed to plausibly allege that they did so here.  Dakota Access provides no support for its assertion that Congress received any notice of the Army's **intent** to grant the Lake Oahe easement.  Indeed, it relies upon a press release that suggests that Congress had the

---

[7] This delegation is consistent with Regulation 405-80, which reserved oversight authority for implementing the Army's real property programs to the Deputy Assistant Secretary of the Army (Installation and Housing) and the Assistant Secretary of the Army (Civil Works).  Army Regulation 405-80 at 1 (Ex. 1).  *See also* USACE Policy Guidance Letter No. 27 at ¶ 3(a)(2).

[8] While the Court need not, and should not, rely on documents post-dating the July 25, 2016 decision that Dakota Access claims granted it the right to construct a pipeline under Lake Oahe, Dakota Access is incorrect, Dakota Access Mem. at 17 n.4, that Colonel Henderson "recommended delivering the easement to Dakota Access" on December 2.  The Corps hereby attaches Colonel Henderson's recommendation, consistent with Army and Corps policy, "that the Army notify Congress that the Corps intends to grant the attached easement to Dakota Access" only "[a]fter notification to Congress."  Memorandum re: Application for an Easement for an Oil Pipeline to Cross U.S. Army Corps of Engineer-Managed Federal Land at Lake Oahe, North Dakota at 9 (Dec. 3, 2016) (Ex. 12).  Colonel Henderson provided the Assistant Secretary of the Army for Civil Works with only a "proposed" easement. Mem. re: Proposed Dakota Access Pipeline Crossing at Lake Oahe, North Dakota ¶ 12 (Dec. 4, 2016) (Ex. 10).

14

opposite understanding – that the Army did not intend to grant the Lake Oahe easement.  *See* Cross-claim at ¶ 39; Dakota Access Mem. at 12 n.3 (citing Press Release, Nat. Res. Comm. Democrats Ranking Member Raúl M. Grijalva, Grijalva 'Disappointed' by Court Ruling on DAPL; Calls on Dakota Access to Voluntarily Halt Construction Until Corps of Engineers Concludes Ongoing Review (Oct. 11, 2016) (Ex. 9)).  Representative Grijalva stated his understanding that "the [Corps] continues to evaluate its permitting decision."  *Id.*  And Representative Grijalva cited with approval the D.C. Circuit's affirmation that "[a] necessary easement still awaits government approval."  *Id. See* Order, *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 16-5259 (Oct. 9, 2016).  Any suggestion that Congress had notice that the Army intended to grant the Lake Oahe easement is therefore beyond implausible.  Even if Dakota Access was correct that Section 185(w)(2) could be satisfied by media reports rather than the Army submitting "a notice," no such notification occurred here.  And even if the Army had notified Congress of its intention to grant the Lake Oahe easement, such an intention is not tantamount to a final agency action conveying an easement under the Mineral Leasing Act. Dakota Access does not, and cannot, allege that any such instrument conveying a real estate interest under the Mineral Leasing Act exists.

**C. Dakota Access's cross-claim should be dismissed because it has not stated a plausible claim that the Corps' grant of permission under the Rivers and Harbors Act also granted Dakota Access an easement to install a pipeline at Lake Oahe under the Mineral Leasing Act.**

Dakota Access's cross-claim hinges on a foundational misconception – that the Corps' approval processes and officials with the authority to finalize agency action under 33 U.S.C. § 408 and 30 U.S.C. § 185 are "identical."  Dakota Access Mem. at 20-21.  Dakota Access is incorrect.  The Secretary of the Army's evaluation of whether to "grant permission for the alteration or permanent occupation or use of . . . public works" is governed by the Rivers and

Harbors Act.  33 U.S.C. § 408.  Section 408 requires the Army to consider two factors – whether "such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work."  *Id*.  Agency decisions regarding whether to grant easements across Federal lands "for pipeline purposes for the transportation of oil" are governed by the Mineral Leasing Act.  The Mineral Leasing Act requires the Army to (1) consider more than just the two issues it considered in granting Dakota Access permission under Section 408 to occupy Corps-managed Federal land at Lake Oahe and (2) once it has completed its consideration and intends to grant a Mineral Leasing Act easement, provide notice of that intention to Congress.  30 U.S.C. § 185.  Dakota Access's cross-claim must be dismissed because it does not, and cannot, plausibly allege that the Corps' Rivers and Harbors Act review completed the process for granting an easement at Lake Oahe under the Mineral Leasing Act.

> ### i.     The July 25, 2016 grant of permission under 33 U.S.C. § 408 was limited in scope.

Dakota Access's suggestion that the Corps granted it the necessary easement to cross Federal property at Lake Oahe on July 25, 2016 is without merit.  Dakota Access is simply incorrect, Mem. at 23-25, that the Corps has treated the Lake Oahe 408 permission and the Lake Oahe easement as "a single process with a single outcome."  That the Corps may have closely coordinated a portion of its processes for considering whether to grant or deny the 408 permission and considering whether to recommend granting a Mineral Leasing Act easement did not convert those separate decisions into a single, unified decision.  To the contrary, the Corps' granting of a 408 permission to cross Corps-managed lands at Lake Oahe did not require the Corps to consider all factors necessary to also grant an easement at Lake Oahe, much less grant that easement.

The Rivers and Harbors Act was passed in 1899 to provide for the "construction, completion, repair, and preservation of" public works.  30 Stat. 1152.  It was passed, in part, to address the absence of common law prohibiting obstructing navigable rivers.  *United States v. Republic Steel Corp.*, 362 U.S. 482, 485-86 (1960).  Section 14 of the Rivers and Harbors Act is codified in Title 33, which addresses navigation and navigable waters.  33 U.S.C. § 408.  Section 408, consistent with Congress's goal of preserving navigation, focuses on two factors relevant to navigation.

Section 408 generally prohibits Dakota Access from taking possession of, using, or impairing the Corps-managed Lake Oahe flood control project.  It allows the Secretary of the Army to "grant permission for the alteration or permanent occupation or use of . . . public works when in the judgment of the Secretary such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work."  33 U.S.C. § 408.  The Corps' Environmental Assessment focused on the two determinations mandated by Section 408, concluding that "the Proposed Action is not injurious to the public interest and will not impair the usefulness of the federal projects."  Environmental Assessment at 1, AR 71225 (Ex. 8).  The Corps relied on that determination to support its grant of Section 408 permission.  Finding of No Significant Impact at 2, AR 71175 (Ex. 6).  The analysis supporting the two determinations that the Corps relied on in granting Section 408 permission may overlap with a subset of the decisions necessary to grant an easement under the Mineral Leasing Act.  *Cf.* 30 U.S.C. § 185(h)(2).  But "approval under Section 408 does not grant any property rights."  Engineering Circular 1165-2-216 at ¶ 6(b) (Sept. 30, 2015) (Ex. 13).  Dakota Access offers nothing more than conclusory allegations that the Corps' determinations that installing a pipeline under Corps-managed lands at Lake Oahe would neither be injurious to the public interest or impair the

usefulness of a Federal flood control project made all of the conclusions necessary to also grant an easement under the Mineral Leasing Act.[9]

### ii. The process for evaluating a Mineral Leasing Act easement to install a pipeline under Corps-managed Federally-owned lands at Lake Oahe largely follows, and is distinct from, the process for evaluating whether to grant permission under 33 U.S.C. § 408.

The Mineral Leasing Act is a different statute, with different requirements, than the Rivers and Harbors Act. Dakota Access's allegation that the Corps' evaluation under the Rivers and Harbors Act satisfies its distinct responsibilities under the Mineral Leasing Act is therefore without merit. Put another way, a final agency action granting Section 408 permission is not the same thing as a final agency action granting a Mineral Leasing Act easement.

The Mineral Leasing Act was passed to promote the wise development of the mineral resources of the public domain and to obtain for the public a reasonable financial return on assets that belong to the public. *See California Co. v. Udall*, 296 F.2d 384, 388 (D.C. Cir. 1961); Act to promote the mining of coal, phosphate, oil, oil shale, gas, and sodium on the public domain, Pub. L. No. 66-146, 41 Stat. 437 (Feb. 25, 1920). It is codified in Title 30 of the United States Code, which addresses Mineral Lands and Mining. *See* 30 U.S.C. § 185. Section 185 requires the Corps to consider twelve issues before granting an easement over Federal lands for pipeline purposes:

---

[9] The Corps notes that the Finding of No Significant Impact was signed by Colonel Henderson. AR 71178 (Ex. 6). District Commanders such as Colonel Henderson have authority to sign such Section 408 requests. Engineering Circular 1165-2-216 at 17, ¶ 7(c)(8) (Ex. 13). But the Omaha District's Chief of Real Estate, rather than Colonel Henderson, has been delegated authority to sign easements pursuant to statutes such as the Mineral Leasing Act. Memorandum re: Delegation of Authority to Acquire, Manage, and Dispose of Real Property (Oct. 28, 2015) (Ex. 14).

1) Whether the easement's width exceeds "fifty feet plus the ground occupied by the pipeline" and, if it does, whether "the wider right-of-way is necessary for operation and maintenance." 30 U.S.C. § 185(d);

2) Whether any requirements are necessary to "protect the safety of workers and protect the public from sudden ruptures and slow degradation of the pipeline."  30 U.S.C. § 185(g);

3) Whether the Corps has issued regulations or imposed necessary stipulations that include: "(A) requirements for restoration, revegetation, and curtailment of erosion of the surface of the land; (B) requirements to insure that activities in connection with the right-of-way or permit will not violate applicable air and water quality standards nor related facility siting standards established by or pursuant to law; (C) requirements designed to control or prevent (i) damage to the environment (including damage to fish and wildlife habitat), (ii) damage to public or private property, and (iii) hazards to public health and safety; and (D) requirements to protect the interests of individuals living in the general area of the right-of-way or permit who rely on the fish, wildlife, and biotic resources of the area for subsistence purposes." 30 U.S.C. § 185(h)(2);

4) Whether the project proponent has disclosed the identity of certain partners, shareholders, and affiliates. 30 U.S.C. § 185(i);

5) Whether the project proponent "has the technical and financial capability to construct, operate, maintain, and terminate the project." 30 U.S.C. § 185(j);

6) The quantification and collection of costs "for administrative and other costs incurred in processing the application, . . . the costs incurred in monitoring the construction,

19

operation, maintenance, and termination of any pipeline and related facilities on such

right-of-way or permit area and . . . the [annual] fair market rental value of the right-

of-way or permit, as determined by the Secretary or agency head." 30 U.S.C. §

185(l);

7) The appropriate duration of the easement. 30 U.S.C. § 185(n);

8) Whether an easement can be co-located with existing easements. 30 U.S.C. § 185(p);

9) The extent it is practical to "comply with State standards for right-of-way

construction, operation, and maintenance." 30 U.S.C. § 185(v);

10) Address potential liability, including "the extent to which . . . holders shall indemnify

or hold harmless the United States for liability, damage, or claims arising in

connection with the right-of-way or permit." 30 U.S.C. § 185(x);

11) Provide notification "to the Committee on Natural Resources of the United States

House of Representatives and the Committee on Energy and Natural Resources of the

United States Senate upon receipt of an application for a right-of-way for a pipeline

twenty-four inches or more in diameter." 30 U.S.C. § 185(w)(2); and

12) Provide those same committees with "a notice of intention to grant the right-of-way,

together with the [agency head's] detailed findings as to the terms and conditions he

proposes to impose." *Id*.

Dakota Access is therefore incorrect, Dakota Access Mem. at 22, that the Mineral

Leasing Act imposes "no additional requirements" beyond those imposed in the Rivers and

Harbors Act. *Cf. id*. at 25 (acknowledging that "Section 185 also contains certain other

'provisions, limitations, and conditions'"). As discussed below, Dakota Access does not

plausibly allege that the Corps' Section 408 determination considered all of the above issues.

Dakota Access's first effort to allege that the Section 408 permission satisfied all of the Mineral Leasing Act's requirements, Cross-claim at ¶ 6; Dakota Access Mem. at 20, 25-27, is without support.  Instead of addressing each of Section 185's requirements, Dakota Access alleges that the "full determination necessary to grant a right-of-way under 30 U.S.C. § 185" is made by determining that the right-of-way will "not be against the public interest."  Cross-claim at ¶ 45 (citing 10 U.S.C. § 2668).  Section 2668 is a general easement statute permissively authorizing thirteen types of easements.  But "[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one."  *Morton v. Mancari*, 417 U.S. 535, 550-551 (1974).  The Mineral Leasing Act, in contrast, applies only to pipelines through Federal lands.  30 U.S.C. § 185.  And Dakota Access concedes, as it must, that the Mineral Leasing Act applies to the Lake Oahe easement.  Dakota Access does not plausibly suggest how the Mineral Leasing Act's unique requirements are somehow nullified by a general easement statute, much less satisfied by a determination that the Lake Oahe easement would be in the public interest.

Dakota Access's other allegations addressing compliance with the Mineral Leasing Act are similarly ineffective.  Dakota Access's Cross-claim attempts to address only two of the Mineral Leasing Act's specific requirements.[10]  Cross-claim at ¶ 45 (citing 30 U.S.C. § 185(l)

_____

[10] Dakota Access's motion for summary judgment focuses on several of the Mineral Leasing Act's permissive sections.  *See* Dakota Access Mem. at 6 (citing 30 U.S.C. § 185(f), which provides that the Corps **may** also impose terms and conditions "regarding extent, duration, survey, location, construction, operation, maintenance, use, [or] termination").  But it only arguably alleges that the Corps Environmental Assessment completed the safety and environmental analysis required by 30 U.S.C. §§ 185(g) and (h)(2).  The Environmental Assessment addresses other elements that may satisfy other provisions of the Mineral Leasing Act.  *See* 30 U.S.C. § 185(d) (imposing 50-foot width limitation) and Environmental Assessment at 21, AR 71245 (Ex. 8) ("a 50-foot-wide permanent easement that is generally centered on the pipeline . . . would be retained along the pipeline route").  But Dakota Access does not plausibly allege that it satisfies all of the Mineral Leasing Act's requirements.

and (w)).  But Dakota Access's allegations regarding Sections 185(l) and (w) fall far short of plausibly alleging that the Corps' 408 permission satisfied those unique Mineral Leasing Act requirements.   Indeed, Dakota Access's cross-claim should be dismissed because it actually **alleges** the Corps has not completed its decision-making process for Sections 185(l) and (w).

First, Dakota Access admits that the Corps has not completed the statutorily mandated quantification and collection of construction and leasing costs.  30 U.S.C. § 185(l).  Section 185(l) requires the "applicant . . . [to] pay annually in advance the fair market rental value of the right-of-way or permit."  *Id*.  Dakota Access pointedly does not allege that it has submitted any payment for the easement.  The Environmental Assessment and Finding of No Significant Impact for Lake Oahe make no reference to those costs.  And Dakota Access identifies no document in which the Corps determined, much less collected, any costs associated with the easement.  *See* Statement of Undisputed Material Facts, ECF 66-2 (Dec. 5, 2016).  Dakota Access instead suggests that payment for an easement is a minor issue that can be resolved after the Court grants the easement through a declaratory judgment.  Cross-claim at ¶ 49 ("After the Court grants the relief requested, the Corps would also be free to notify Dakota Access of the amount needed, pursuant to Section 185(l), to reimburse the Corps for the costs of processing the right-of-way application.").  But advance payment of the annual rental fee is a statutory precondition to obtaining a Mineral Leasing Act easement.  Simply put, Dakota Access alleges that the Corps did not complete the decision-making required by 30 U.S.C. § 185(l) by July 25, 2016.  Dakota Access's cross-claim must therefore be dismissed.

Second, Dakota Access's allegations regarding compliance with Section 185(w)(2) cannot be squared with that section's requirement that the Army submit "**a notice of intention** to grant the right-of-way" along with detailed findings as to the terms and conditions the agency

"**proposes to impose**" to Congress prior to granting an easement.  30 U.S.C. § 185(w)(2).
Dakota Access suggests that the Corps complied with Section 185(w)(2) because sometime after
the July 25 decision that Dakota Access contends granted it the Lake Oahe easement, Congress
became "aware of the Corps's July 25, 2016 authorization allowing the pipeline to cross federal
real property interests at Lake Oahe." Cross-claim at ¶¶ 39, 49.  Even if the July 25, 2016
decisions purported to grant the Lake Oahe easement, which they did not, media reports
notifying Congress that the Corps had issued the Lake Oahe easement would violate Section
185(w)(2)'s requirement that Congress be notified **prior** to granting an easement.  Dakota
Access's allegations that the Corps' Section 408 permission completed all of the Mineral
Leasing Act's requirements actually establish the opposite – that the Corps could not have
complied with at least two of the Mineral Leasing Act's unique requirements.

The cases Dakota Access relies upon simply reinforce the conclusion that the Corps'
granting of Section 408 permission is not tantamount to its granting of an easement for pipeline
purposes under the Mineral Leasing Act.  Dakota Access's reliance on *Wilderness Society*,
Dakota Access Mem. at 22, is particularly misplaced.  In that case, the D.C. Circuit held that the
Interior Department's grant of special land use permits requested to construct portions of a
pipeline violated Section 28 of the Mineral Leasing Act.  479 F.2d at 847.  The D.C. Circuit's
holding focused on one of the conditions unique to the Mineral Leasing Act, Section 185's
requirement that "all construction work take place within" a fifty-foot-corridor.  *Id*. at 847-48.[11]
The D.C. Circuit notably distinguished its analysis under the Mineral Leasing Act from NEPA.
*id*. at 848 ("declin[ing] to pass on [the NEPA] issues at this time").  Put another way, *Wilderness*

---

[11] Congress responded to *Wilderness Society* by amending the Mineral Leasing Act.  *See*
Act to amend Section 28 of the Mineral Leasing Act of 1920, and to authorize a trans-Alaska oil
pipeline, and for other purposes, Pub. L. No. 93-153, 87 Stat. 576 (Nov. 16, 1973).

*Society*'s invalidation of an agency grant based upon a unique Mineral Leasing Act requirement makes clear that the Mineral Leasing Act imposes requirements that are separate and distinct from those imposed by other statutes.  Dakota Access's does not plausibly allege that the Corps completed the steps necessary to legally grant a Mineral Leasing Act easement at Lake Oahe. Accordingly, Dakota Access cannot establish "final agency action" with respect to its easement application and its cross-claim must be dismissed. *Doe*, 602 Fed. Appx. at 535.

**II.    Dakota Access's Motion for Summary Judgment should be denied because it fails to establish that the Corps granted Dakota Access an easement under the Mineral Leasing Act to construct a pipeline under Federal lands at Lake Oahe.**

To the extent it reaches Dakota Access's motion for summary judgment, the Court should deny that motion because Dakota Access falls far short of establishing that the Corps granted it any right under the Mineral Leasing Act to construct a pipeline under Corps-managed Federal lands at Lake Oahe.  The documents Dakota Access relies upon undermine its assertion that the Army has completed the process necessary to grant a valid Mineral Leasing Act easement to Dakota Access.  To the extent it is necessary for the Court to look beyond Dakota Access's allegations, the record simply provides additional support for the plain fact that the Army has not completed its evaluation of Dakota Access's easement application.

**A.  Documents pre-dating July 25, 2016 establish that the Corps did not complete its evaluation of Dakota Access's easement application by July 25, 2016.**

As discussed above, Dakota Access's cross-claim hinges on its incorrect assertion that the Corps treated its Rivers and Harbors Act and Mineral Leasing Act reviews as "a single process with a single outcome."  Dakota Access Mem. at 23.  The foundation of this claim appears to be the Corps' Environmental Assessment and Finding of No Significant Impact, which Dakota Access contends granted all permissions necessary under both statutes.  *Id.* at 23-25.  To the contrary, those documents recognize that constructing a pipeline would require "real

24

estate actions and Section 10 permits and Section 408 permissions."  Finding of No Significant

Impact at 2 AR 71175 (Ex. 6).  The "EA and . . . Finding of No Significant Impact deal

exclusively with granting the Section 408 permissions."  *Id*.  The Environmental Assessment,

standing alone, therefore did not grant the Mineral Leasing Act easement or "real estate action"

at issue here.

Dakota Access relies on only one additional document predating July 25, 2016 to support

its claim that the Corps granted it a Mineral Leasing Act easement on that date.  Contrary to

Dakota Access's reading, Dakota Access Mem. at 7, a June 7, 2016 email confirms that the

Corps did not consider its Environmental Assessment to conclude its decision-making for either

the Lake Sakakawea or Lake Oahe pipeline crossings.  Email from R. Noel, Corps, to S. Rowe,

HDR (June 7, 2016), Dakota Access Mem., ECF 66-3, Ex. G at 2. The email makes clear that the

Environmental Assessment is not the last step in evaluating the Lake Oahe easement but rather

that Mr. Noel must "forward the easement and **draft letters of Congressional notification** to

our Division Office who in turn will forward to" Corps Headquarters.  *Id*. (emphasis added).

The recognition that the Omaha District would transmit draft, rather than final, letters formally

notifying Congress is therefore consistent with the statutory requirement of formal notice and

policy reserving the easement decision to the Deputy Assistant Secretary of the Army for

Installations and Housing.  *See* 30 U.S.C. § 185(w)(2); USACE Policy Guidance Letter No. 27 at

¶ 3(a)(2) (Ex. 2).

The additional documents relating to Dakota Access's easement application that the

Court ordered the Corps to produce on December 9 further illustrate that neither the Corps nor

Dakota Access understood the Rivers and Harbors Act and Mineral Leasing Act evaluations to

be a single, combined process.   For example, on April 5, 2016 the Corps stated that it did not

"want to start routing [the easement application] up the chain until we have a Section 408

determination."  Email from L. Janis to J. Mahmoud (Apr. 5, 2016) (Ex. 7).  Dakota Access

responded by acknowledging that the easement would only be sent up the Corps' chain "should

the 408 get approved."  *Id*.  Email from J. Mahmoud to L. Janis (Apr. 5, 2016).  In short, the

Army decisionmakers would not even commence their Mineral Leasing Act review until the

Section 408 process concluded.  The record therefore confirms that the Corps' grant of

permission under 33 U.S.C. § 408 was insufficient to grant an easement under 30 U.S.C. § 185.

  In short, Dakota Access is incorrect, Dakota Access Mem. at 19, that it can acquire a real

estate interest without obtaining a formal document granting that interest.  The United States'

title cannot be acquired by implication.  *See Silver State Land, LLC v. Schneider*, 2016 U.S. App.

LEXIS 22343, *17-*18.  Nor can the actions of government officials convey the United States'

title absent compliance with all conditions imposed by Congress.  *Utah Power & Light*, 243 U.S.

at 408–09.  The Corps' established policy reasonably requires its submission for Deputy

Assistant Secretary of the Army review include a draft "easement." USACE Policy Guidance

Letter No. 27 at ¶ 3(a)(2)-(3).  The 1997 Army Regulations Dakota Access relies upon, Dakota

Access Mem. at 4, 6, 21, similarly recognize that easements can be granted, among other things,

only "when authorized by law or administrative authority" and that all "non-Army use [of Army-

controlled real property] must be authorized by an appropriate realty instrument."  Army Reg.

405-80 at 4-1(c).  *See also id.* at i (providing "authority to approve exceptions to this regulation

that are consistent with controlling law and regulation").  The Corps' reasonable interpretation of

the Mineral Leasing Act is "entitled to respect." *Christensen v. Harris County,* 529 U.S. 576, 587

(2000).  That is particularly true here, where Dakota Access puts forth no competing theory for

where precisely in this review process a right-of-way allegedly vests if not when an "appropriate

realty instrument" is provided to the applicant.  Dakota Access relies upon an August 2, 2016

signed "Consent to Easement Structures" that provided Dakota Access with the right to cross

non-fee Federal flowage easements at Lake Sakakawea but does not allege that the Corps signed

any similar instrument here.  *See* Dakota Access Mem., ECF 66-3, Ex. I at 4.  Dakota Access's

motion for summary judgment should be denied for this deficiency as well.

### B. Dakota Access's submission of documents post-dating July 25, 2016 refutes its contention that the Corps effectively granted it an easement to cross Lake Oahe on July 25.

Dakota Access's reliance on documents post-dating the July 25 date on which it contends

the Corps completed its Mineral Leasing Act decision fares no better.  First, as the Corps set

forth in its opposition to Dakota Access's motion to supplement the administrative record, it is

inappropriate to supplement the record of a decision made on July 25 with documents that were

created after that date.  *See* ECF 61 (citing, among other cases, *Am. Wildlands v. Kempthorne,*

530 F.3d 991, 1001–02 (D.C. Cir. 2008) (motion to supplement record properly denied where

"[b]oth letters were written after the Service issued its Reconsidered Finding, and are therefore

not part of the administrative record")).  Dakota Access's decision to style its cross-claim as a

declaratory judgment action does not alter the principle that the Court need not, and should not,

review documents created after July 25 to determine what the Corps decided on that date.

Dakota Access's reliance on documents post-dating July 25 is unavailing for a second reason –

those documents provide further support for the position that the Corps did not complete its

decision-making for the Lake Oahe easement on July 25.

Dakota Access is incorrect, Dakota Access Mem. at 11-12, that the Corps' consent to

cross Corps-managed flowage easements at Lake Sakakawea supports its claim.  First, the email

Dakota Access relies upon to suggest that the Corps granted both easements explicitly contrasted

the Corps' consent to cross the Lake Sakakawea flowage easements with the Lake Oahe

easement.  The email stated that the Corps' "draft Consent . . . is only for the Garrison tracts.  As

you are aware the Congressional notification of the request for an easement at Lake Oahe is in

process and the easement cannot be issued until that notification is complete."  Dakota Access

Mem., ECF 66-3, Ex. I at 2.  And the email makes clear that the Corps only granted the Lake

Sakakawea "Consent to Easement Structures" on August 2, 2016 after Dakota Access executed

and transmitted the "Consent, Certificate of Authority and Payment."  *Id.*  Dakota Access does

not establish that it executed similar documents for the Lake Oahe easement.  In other words, the

post-July 25 documents confirm that the Corps did not grant Dakota Access either the Lake Oahe

easement or the Lake Sakakawea consent to cross flowage easements on July 25 because it had

not completed all of the necessary steps.

Dakota Access's reliance on a November 7, 2016 package providing guidance for dealing

with a series of protests at Corps offices is similarly misplaced.  It is the D.C. Circuit's "well-

established view that an agency is not bound by the actions of its staff if the agency has not

endorsed those actions."  *Vernal Enters. v. FCC*, 355 F.3d 650, 660 (D.C. Cir. 2004). And "staff

error cannot bind an agency and force it, in effect, to continue such errors."  *Id.* at 661.  There is

no authority for the proposition that a lower component of a government agency may bind the

decision making of the highest level.  *Cmty. Care Found. v. Thompson*, 318 F.3d 219, 227 (D.C.

Cir. 2003).  The November 7 document was drafted to guide interactions with protestors rather

than adopt a position contrary to the Army's clear position that it had not authorized construction

of the pipeline under Corps-managed land at Lake Oahe.  *See* ECF Nos. 56; 61 at 7-9; 65.

Regardless, the November 7 document is not a substitute for a final decision by the designated

decision-maker on whether to provide Congressional notification – the Assistant Secretary of the

Army for Installations and Housing.  USACE Policy Guidance Letter No. 27 at ¶ 3(a)(2) (Ex. 2).

*See Nat'l Ass'n of Home Builders v. Defs. of Wildlife,* 551 U.S. 644, 659 (2007) ("The federal

courts ordinarily are empowered to review only an agency's final action, see 5 U.S.C. § 704, and

the fact that a preliminary determination by a local agency representative is later overruled at a

higher level within the agency does not render the decisionmaking process arbitrary and

capricious").  That is particularly true here given the multiple statements by both the Army and

Dakota Access confirming that the Lake Oahe easement has not been granted.  *See* ECF Nos. 56;

61 at 7-9; 65. And even if the November 7 statement stated that the Corps granted an easement at

Lake Oahe, such an easement would be deficient due to the lack of Congressional notification

under 30 U.S.C. § 185(w).  In short, the November 7 document cannot override either the

Army's clear position or the Mineral Leasing Act.

Dakota Access's reliance on the Corps' December 4, 2016 memorandum is similarly

unavailing.[12]  Dakota Access's cross-claim seeks a declaratory judgment regarding the nature of

the Corps' July 25, 2016 decisions.  Dakota Access fails to explain how a memorandum issued

months after the July 25, 2016 decisions that are the subject of this declaratory judgment action

is relevant.  Dakota Access's citation to *Perez v. Mortgage Bankers Ass'n* is particularly

inapposite, as the language Dakota Access cites does not suggest that challenges to allegedly

---

[12] As discussed above, the Army did not complete the process required to grant an easement under 30 U.S.C. § 185 on July 25, 2016.  The Court therefore need not, and should not, base any analysis of the nature of the Corps' July 25, 2016 decisions on any documents created in December 2016.  But to the extent the Court considers the December 4 memorandum, it falls within the Army's authority to continue evaluating a grant of a real estate interest up to the point at which the easement is signed.  *Silver State Land, LLC v. Schneider*, 145 F. Supp. 3d 113, 127 (D.D.C. 2015), *aff'd Silver State Land, LLC*, 2016 U.S. App. LEXIS 22343 ("[Interior] may evaluate the validity of a claim to government land at any time up to the actual issuance of the patent since, until title is transferred, [Interior] remains the legal steward responsible for ensuring that any conveyance of the land is in strict compliance with Congressional mandates.").

unsupported changes in agency policy should be brought as declaratory judgment actions, but rather under Section 706(2) of the Administrative Procedure Act.  135 S.Ct. 1199, 1209 (2015).  Dakota Access does not invoke Section 706(2).  Moreover, Dakota Access misses the mark by characterizing the December 4 memorandum as "reopening a final agency decision."  Dakota Access Mem. at 27-31.  The Memorandum instead makes clear that as of December 3 the Corps had provided the Assistant Secretary of the Army for Civil Works with only a "proposed" easement. Mem. re: Proposed Dakota Access Pipeline Crossing at Lake Oahe, North Dakota at ¶ 12 (Dec. 4, 2016) (Ex. 10).  The record therefore leads to the inescapable conclusion that "[t]o date, the Army has not made a final decision on whether to grant the easement" at Lake Oahe.  *Id*. at ¶ 6.

## CONCLUSION

Dakota Access's Cross-claim does not plausibly allege that the Army completed all of the steps necessary to reach a final agency action granting Dakota Access any real estate interest in the Corps-managed Federal lands at Lake Oahe.  Dakota Access' Cross-claim must therefore be dismissed.

Dated: January 6, 2017                                    Respectfully submitted,

                                                                     JOHN C. CRUDEN
                                                                     Assistant Attorney General
                                                                     Environment & Natural Resources Division

                                          By:      */s/  Matthew Marinelli*
                                                             MATTHEW MARINELLI, IL Bar 6277967
                                                             U.S. Department of Justice
                                                             Natural Resources Section
                                                             P.O. Box 7611
                                                             Benjamin Franklin Station
                                                             Washington, DC 20044
                                                             Phone: (202) 305-0293
                                                             Fax: (202) 353-2021

matthew.marinelli@usdoj.gov

ERICA M. ZILIOLI, D.C. Bar 488073
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 514-6390
Fax: (202) 514-8865
Erica.Zilioli@usdoj.gov

*Attorneys for the United States Army Corps
of Engineers*

OF COUNSEL:

MILTON BOYD
MELANIE CASNER
U.S. Army Corps of Engineers
Office of Chief Counsel
Washington, DC

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 6th day of January, 2017, a copy of the foregoing was filed through the Court's CM/ECF management system and electronically served on counsel of record.


/s/ Matthew Marinelli

MATTHEW MARINELLI