# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STANDING ROCK SIOUX TRIBE,

Plaintiff,

and

CHEYENNE RIVER SIOUX TRIBE,

Plaintiff–Intervenor,

v.

UNITED STATES ARMY CORPS OF
ENGINEERS,

Defendant–Cross Defendant,

and

DAKOTA ACCESS, LLC,

Defendant–Intervenor–Cross Claimant.

Case Number: 16-cv-1534 (JEB)

**CROSS-CLAIMANT DAKOTA ACCESS, LLC'S MEMORANDUM OF LAW SUPPORTING MOTION UNDER THE ALL WRITS ACT TO PREVENT PUBLICATION OF ENVIRONMENTAL-IMPACT-STATEMENT NOTICE IN FEDERAL REGISTER, AND EMERGENCY MOTION FOR INTERIM RELIEF THROUGH A TEMPORARY RESTRAINING ORDER**

Kimberly H. Caine
William J. Leone
Robert D. Comer
NORTON ROSE FULBRIGHT US LLP
799 9th St. N.W., Suite 1000
Washington, D.C.  20001-4501
(202) 662-0200

Edward V. A. Kussy
NOSSAMAN LLP
1666 K Street, N.W., Suite 500
Washington, D.C. 20006
(202) 887-1400

William S. Scherman
David Debold
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Defendant–Intervenor–Cross Claimant Dakota Access, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................ 1

BACKGROUND .............................................................................................................. 4

ARGUMENT ................................................................................................................... 8

     I.     The Court Should Enter An Order Under The All Writs Act That Prevents
            Initiation of An Environmental Impact Statement Process Through Federal
            Register Notice Or Otherwise While Dakota Access's Cross-Claim Is
            Pending. ............................................................................................................... 8

     II.    The Court Should Enjoin On An Emergency Basis The Publication In The
            Federal Register Of Any Notice Related To An Environmental Impact
            Statement For The Lake Oahe Crossing Until The Court Has Ruled On
            This Request For Injunctive Relief Under The All Writs Act. .............................. 14

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Belbacha v. Bush*,
  520 F.3d 452 (D.C. Cir. 2008) ............................................................................14

*FTC v. Dean Foods Co.*,
  384 U.S. 597 (1966) ...........................................................................................14

*Hammond v. Norton*,
  370 F. Supp. 2d 226 (D.D.C. 2005) ...................................................................10

*NML Capital, Ltd. v. Republic of Argentina*,
  727 F.3d 230 (2d Cir. 2013) ...............................................................................15

*Sarnecka-Crouch v. Billington*,
  No. 06-1169, 2012 WL 3060165 (D.D.C. July 26, 2012) ...................................15

*SEC v. Vision Commc'ns, Inc.*,
  74 F.3d 287 (D.C. Cir. 1996) ...............................................................................9

*United States v. N.Y. Tel. Co.*,
  434 U.S. 159 (1977) .........................................................................................9, 15

*Wildlands v. U.S. Forest Serv.*,
  791 F. Supp. 2d 979 (D. Or. 2011) .....................................................................10

*Zenith Elec. Corp. v. United States*,
  884 F.2d 556 (Fed. Cir. 1989) ..............................................................................9

**Statutes**

28 U.S.C. § 1651 ......................................................................1, 3, 8, 9, 13, 14, 15, 16

**Rules**

Fed. R. Civ. P. 65 ...........................................................................................................15

**Regulations**

1 C.F.R. § 17.2 .................................................................................................................8

1 C.F.R. § 17.4 .................................................................................................................8

33 C.F.R. § 230.5 ...........................................................................................................11

Department of the Army General Order 2012-01 ........................................................11

**Other Authorities**

*Dakota Access Pipeline FAQs*, U.S. Army Corps of Engineers ....................................................12

Statement from SRST Tribal Council (Dec. 21, 2016).................................................................7

## INTRODUCTION

Dakota Access, LLC ("Dakota Access") seeks a limited order under the All Writs Act to stop government officials from initiating an Environmental Impact Statement ("EIS") process for the Dakota Access Pipeline Project ("DAPL") crossing at Lake Oahe until this Court has ruled on Dakota Access's cross-claim.  That order—which includes restraining publication *as early as Wednesday, January 18, 2017,* of a Federal Register EIS notice—would preserve this Court's ability to rule on the cross-claim free from the risk that its ruling will be frustrated or thwarted by new governmental actions.  These new actions continue the political interference that has plagued this proceeding since late in the day on September 9, 2016.  Entering the requested order now would achieve significant benefit without any conceivable harm to others, because the order would simply pause an approval process that *Dakota Access* initiated for the purpose of allowing *Dakota Access* to install a pipeline.  The Court should therefore stop this new and ultimately unnecessary EIS process until the Court has an opportunity to consider the extensive briefing already prepared by the parties on the cross-claim.

Dakota Access respectfully requests a schedule under which any opposition to this motion is filed by Thursday, January 19, 2017, any reply is filed by January 23, 2017, and a hearing is held on this motion at the Court's earliest availability thereafter.  Moreover, to avoid frustrating the Court's ability to grant this limited relief, Dakota Access also respectfully requests an immediate emergency order barring initiation of a new EIS process, or Federal Register publication of any document relating to a proposed EIS, until the Court has ruled on this motion.[1]

---

[1]  Pursuant to Local Civil Rule 65.1, Dakota Access advises it has furnished this application and the accompanying documents to all other parties through electronic filing.  Counsel for Dakota Access also emailed counsel for the Corps early Monday afternoon to determine if the report Dakota Access heard about an imminent EIS notice was true, and to ask whether the government was willing to refrain from issuing the notice in the Federal Register or otherwise initiating the

The legal dispute at the core of Dakota Access's cross-claim is whether the United States Army Corps of Engineers (the "Corps") granted Dakota Access a right-of-way for DAPL to cross federal land at Lake Oahe when it made all of the necessary findings to grant Dakota Access that right-of-way on July 25, 2016 in conjunction with its grant of permissions under Section 408 of the Rivers and Harbors Act.  On December 9, 2016, this Court ordered expedited summary judgment briefing and concurrent expedited briefing on a motion to dismiss so that resolution of Dakota Access's cross-claim will be fully briefed by early February.  Dakota Access is preparing its consolidated reply and response papers and will file them well before the January 31 deadline set by the Court.  The motions will be fully briefed 10 days later.

Despite the Court's efforts to move forward expeditiously, impending governmental action threatens to frustrate the Court's ability to resolve the cross-claim promptly and conclusively.  In particular, Dakota Access has very recently received reliable information that notice formally initiating an EIS process for the crossing at Lake Oahe will be published in the Federal Register as soon as this Wednesday, January 18, 2017, in spite of the Corps's determination that an EIS is not needed for the Corps to approve that crossing.  Those in the government taking this step would be acting as though the Corps made no final decision in July on a right-of-way for that crossing.  But that is the very dispute this Court will be resolving when it rules on the cross-claim.  Moving ahead with publication as if the Court will rule in the Corps's favor on the cross-claim would interject a host of new disputed legal and factual issues into the litigation just as the parties are in the midst of concluding briefing on that cross-claim. For example, publication would raise serious questions about the legal effect of a partially

---

EIS process.  Dakota Access asked for a response by 4 p.m., given the high urgency of this issue, but counsel for the government replied at 9:30 p.m. that he had been at a family function all day and was unable to offer a response until checking with others Tuesday morning, January 17.

completed EIS process if this Court goes on to hold that the Corps gave Dakota Access a right-of-way to cross federal land at Lake Oahe on July 25—months before the new EIS process would be initiated.  This and other questions are bound to generate further litigation and corresponding delay.  Those questions should not—and need not—be introduced into the case while the cross-claim is pending, especially when the Corps successfully resisted a briefing schedule that would have resolved the cross-claim much earlier than will now be the case.

Unfortunately, the predicament addressed by this motion is all too familiar in this case. The various governmental announcements about the Lake Oahe crossing starting in September (*i.e.*, on September 9, October 10, November 14, December 4, and another expected on January 18) have presented the Court and the parties with a moving target, both as to the issues that need to be litigated and the very scheduling of that litigation.  The unusual, deliberate double-speak of each new announcement has added new issues to, raised new questions in, and unreasonably added to the burden of, this lawsuit.  Further complicating matters, a change in administrations between now and this Court's ruling on the cross-claim will add additional uncertainty about the nature and consequences of a new, likely unlawful EIS process if that process is allowed to begin and unfold while the cross-claim is pending.  Moreover, the Corps's failure to promptly notify the Court and the parties of this decision to publish notice in the Federal Register—leaving Dakota Access no choice but to seek this emergency relief—has further complicated this lawsuit.[2]

The All Writs Act allows federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C.

---

[2] *See* D.E. 68 at 20:7–10 (The Court:  "But if, between now and the end of briefing, or even after briefing, *anything happens to change the government's position or if there are other developments*, I would ask to be notified promptly.") (emphasis added).

§ 1651(a).  It would frustrate this Court's exercise of its jurisdiction if an EIS process is formally initiated—based on the assumption that no right-of-way has been granted—*before* this Court can rule on whether that assumption is wrong.  These plans would unnecessarily inject new legal issues into resolution of the cross-claim and threaten to deprive this Court's eventual ruling of its full legal effect.  If, however, the Court temporarily pauses this process and later rules that a right-of-way was granted in July, those responsible for the EIS process would very likely decide that they cannot and should not move forward with one.  At a minimum, the decision whether to go forward would then be governed by the different standards that apply to a right-of-way that has already issued.  By pausing the EIS process, the requested interim order and emergency relief would therefore aid in this Court's exercise of its jurisdiction by maintaining the status quo, and no legitimate interest counsels against that temporary step when the party that initiated the overall approval process is the one that asks for a pause.

An interim order temporarily restraining publication of a Federal Register notice is also warranted so that the Court has the brief time needed to hear from the government and rule on this motion.  That notice would cause irreparable harm by further delaying completion of this lawsuit—and, hence, completion of the pipeline—through additional legal issues to brief and litigate.

## BACKGROUND

This litigation began on July 27, 2016, when the Standing Rock Sioux Tribe ("Standing Rock") filed a complaint and sought preliminary injunctive relief against the Corps.  D.E. 1; D.E. 5.  Ever since, the government has steadfastly defended the legality of its actions—including the completeness of the Corps's efforts to consult with Standing Rock (and other tribes) as well as the appropriateness of its decision to grant permission under Section 408 without preparing an EIS.  D.E. 21, at 20–24; *see also* D.E. 47, at ¶¶ 1-3, 133, 146, 153, 177, 179, 182, 188, 193, 198,

202, 206, 210, 212; D.E. 65-1 (Ex. B) ¶ 15 ("[T]he Corps' prior reviews and actions have

comported with legal requirements."). This Court denied Standing Rock's request for a

preliminary injunction on September 9, concluding, among other things, that "the Tribe largely

refused to engage in consultations." D.E. 39 ("Op."), at 48. Those refusals included missed

opportunities for Standing Rock to express more fully its concerns about environmental impacts

and ways to mitigate them. *See*, *e.g.*, *id.* at 16 (Tribe prematurely finished October 2, 2014

meeting before Corps arrived to discuss pipeline); D.E. 21-20 (Ex. C) ¶ 7 (Shelman Decl.)

(October 2015 letter to Tribe "described the two proposed crossings … and solicited comments

that would be considered in the EA"); D.E. 22-3 (Ex. D) ¶ 35 (Howard Decl.) (Tribe's

representatives failed to show up for November 2015 site visit); Op. 24–25 (Tribe's

representatives failed to join two-day tribal meeting in December 2015, the same month the draft

Environmental Assessment was released).[3]

Immediately after this Court denied the injunction, the Department of Justice, the

Department of the Army, and the Department of the Interior announced that the Corps "will not

authorize constructing the Dakota Access pipeline on Corps land bordering or under Lake Oahe

until it can determine whether it will need to reconsider any of its previous decisions regarding

the Lake Oahe site." D.E. 42-1, at 1 (Ex. E). At a status conference one week later, government

counsel maintained that "[t]here has been no suspension or revocation of any authorization,

verification, or permit that's already been granted, none whatsoever." D.E. 49 (Ex. F), at 7:8–11.

---

[3] When Standing Rock chose to participate in the process by commenting on the project's possible environmental effects and related concerns, the Corps addressed them. *See* AR 72467–69, 72473–75 (summary of comments received in response to draft Environmental Assessment, along with the Corps's response, with Standing Rock denoted by Commenter ID #15). The Cheyenne River Sioux Tribe, on the other hand, did not submit comments to the draft Environmental Assessment.

It said that the purpose of the delay in authorizing construction was simply to "look[] at all our decision making to confirm compliance." *Id.* at 10:16–17. The same three Departments issued another joint statement on October 10, stating the Army "hopes to conclude its ongoing review soon." D.E. 66-3 (Ex. G).

On November 14, the Army notified Dakota Access by letter that it had "completed [its] review." D.E. 56-1 (Ex. H), at 1. After thorough consideration, the Corps "concluded that its previous decisions comported with legal requirements." D.E. 65-1 (Ex. B) ¶ 8. Among the legal requirements that the Corps had previously satisfied was an imposition of several conditions for the construction and operation of the pipeline that would mitigate potential environmental risks. AR 71176–78 (Finding of No Significant Impact, July 25, 2016). But rather than confirm that Dakota Access therefore had a right-of-way to proceed beneath federal land at Lake Oahe, the Corps invited "additional discussion" with the Tribes concerning, among other things, "[p]otential conditions in an easement for the pipeline crossing" that would reduce environmental risks. D.E. 56-1 (Ex. H), at 2.

Dakota Access filed its cross-claim on November 15, 2016, seeking a declaration that it has a right-of-way to construct, operate, and maintain an oil pipeline beneath federal land at Lake Oahe. D.E. 57, at 49. The Corps opposed Dakota Access's requested schedule for expedited briefing on summary judgment for that cross-claim. D.E. 59 & 63.

On December 4, 2016, the Assistant Secretary of the Army for Civil Works, Jo-Ellen Darcy, issued a memorandum stating that she had made a "policy decision" to have the Corps engage in "additional analysis" of alternative locations for the pipeline to cross the Missouri River, expressing her "judgment" that this would be "best accomplished … by preparing an Environmental Impact Statement." D.E. 65-1 (Ex. B) ¶¶ 12, 15. She did not direct the Corps to

initiate an EIS, however.  *Id.* at ¶ 13.  In fact, the Corps had already concluded that an EIS was

not warranted for this project.  AR 71179 (Finding of No Significant Impact, July 25, 2016).

And the December 4 memorandum cited no new facts to alter that conclusion.  To the contrary,

the memorandum maintained that "the Corps' prior reviews and actions"—which includes the

decision that an EIS was unnecessary—"comported with legal requirements."  D.E. 65-1 (Ex. B)

¶ 15.

     The next day, Dakota Access moved for summary judgment on its cross-claim.  D.E. 66.

The Corps continued to oppose the proposed schedule for expediting consideration of that

motion.  This Court agreed to expedite the cross-claim, but the schedule accommodates the

Corps's desire for more time to brief the issues.  Although Dakota Access has until January 31,

2017 to file a reply and opposition, it will be making that filing ahead of that date.  The Corps

and Plaintiffs will have 10 days to file any replies.  December 9 Minute Order.

     In the meantime, Standing Rock has seized on the idea of a new EIS process as an added

way to delay and complicate completion of the pipeline.  In a December 21, 2016 statement to its

"Members and Allies," Standing Rock proclaimed:  "We are not giving into the proposed route

and never will" and committed to "using every social and political tool in our power" to that end,

including "increasing pressure on the current administration to start the Environmental Impact

Statement (EIS) process before the end of President Obama's term."[4]

     Standing Rock's "pressure on the current administration" to change its position again

appears to have worked.  On Friday, January 13, 2017, Dakota Access learned from reliable

sources that the Army has cut Corps representatives out of the process and has worked with

---

[4] Statement from SRST Tribal Council (Dec. 21, 2016) (Ex. I), *available at*
https://www.facebook.com/402298239798452/photos/a.422881167740159.110630.
402298239798452/1482364991791766/?type=3&theater.

Standing Rock and others to prepare and submit a notice for publication in the Federal Register

stating the intent to conduct and prepare an EIS.  *See* Affidavit of Joey Mahmoud (Ex. A) ¶¶ 7–8.

According to Mr. Mahmoud's sources, including confirmation *today* based on information

relayed from the Secretary of the Interior to the North Dakota Governor's Office, this notice will

be published in the Federal Register as soon as Wednesday, January 18, 2017.  *See id.* at ¶¶ 7–8.

The government took no steps to notify the Court or Dakota Access of this decision to publish a

notice.[5]

## ARGUMENT

### I.  The Court Should Enter An Order Under The All Writs Act That Prevents Initiation of An Environmental Impact Statement Process Through Federal Register Notice Or Otherwise While Dakota Access's Cross-Claim Is Pending.

The Court should enter an order enjoining publication in the Federal Register of notice

initiating an EIS process until after this Court enters final judgment on Dakota Access's cross-

claim.  A favorable ruling for Dakota Access on its cross-claim would invalidate the assumption

on which this proposed EIS is based—*i.e.*, the assumption by the Corps that a right-of-way was

not granted in July 2016.  If the proposed EIS process is allowed to go forward, the Court's

consideration of the cross-claim will be complicated by disputes over the significance and

legality of that process, followed by yet more disputes over the effects of that new process on

any final judgment.  Such additional disputes will undoubtedly delay this litigation further,

resulting in further economic harm to Dakota Access by preventing the completion of the DAPL.

---

[5]  A decision to publish notice in the Federal Register must have been made last week. According to the regulations governing publication in the Federal Register, unless published on an emergency basis, 1 C.F.R. § 17.4, an agency wishing to publish a notice on Wednesday, January 18, 2017 would need to submit such a notice to the Federal Register no later than 2 P.M. on Thursday, January 12, 2017, *id.* § 17.2(c).

There is no countervailing interest against such an order.  If the Court eventually allows an EIS to go forward, only Dakota Access will have been disadvantaged by the added delay.

**A.**   The All Writs Act gives federal courts the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The Court "'may avail itself of all auxiliary writs as aids in the performance of its duties.'"  *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 173 (1977) (citation omitted).  This authority is to be exercised "flexibly in conformity with these principles."  *Id.*  Thus, the Act "empowers a district court to issue injunctions to protect its jurisdiction."  *SEC v. Vision Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996).  For example (and similar to the request here), it is "a proper exercise of the All Writs Act's 'broad grant of authority'" for a court to issue an injunction that prevents the government from "alter[ing]" agency action that is "before the court for review."  *Zenith Elec. Corp. v. United States*, 884 F.2d 556, 562 (Fed. Cir. 1989) (citation omitted).

**B.**   This case warrants the limited interim remedy of pausing the new EIS process so that the Court can first rule on the cross-claim.  The Court has set an expedited schedule for deciding whether Dakota Access is entitled to a judgment declaring that it received a right-of-way to cross federal land at Lake Oahe when the Corps issued its July 25 decisions.  It was nearly three weeks after Dakota Access filed its cross-claim that Assistant Secretary Darcy announced on December 4 her belief that, as a matter of "policy," D.E. 65-1 (Ex. B) ¶ 15, "additional review and analysis," *id.* at ¶ 13, of the Lake Oahe crossing was needed.  The December 4 announcement suggested a preference for the Corps to prepare an EIS, but did not order one or formally initiate the process.  *Id.* at ¶ 12–13.  Not until January 13 did Dakota Access first hear that governmental

officials, at the behest of at least one of the Plaintiffs, had made the additional decision to

formally initiate the EIS process.

Allowing the EIS to go forward would interfere with this Court's resolution of the cross-

claim.  That is because the legality of proceeding with a new EIS is deeply intertwined with the

decision this Court has yet to make on the cross-claim:  *i.e.*, whether Dakota Access already has

the right-of-way.  Government officials believe they are free to conduct further analysis,

including an EIS, because—as they see things—the Corps has yet to grant a right-of-way for the

Lake Oahe crossing.  Apart from the fact that Dakota Access disagrees with both the premise

*and* the conclusion, there can be no dispute that the correctness of the government's position on

conducting an EIS would be significantly altered by a judgment in Dakota Access's favor on the

cross-claim.

For one thing, an agency's discretion is more narrowly circumscribed after it makes a

final decision.  *Hammond v. Norton*, 370 F. Supp. 2d 226, 254–56 (D.D.C. 2005).  There is, at a

minimum, a very serious legal question whether the Corps can initiate a new EIS after it makes

the final decision to grant a right-of-way.  *See id.*  Other questions abound too, such as:  What

showing must be made before ordering an EIS in those circumstances?  *Cf. Wildlands v. U.S.

Forest Serv.*, 791 F. Supp. 2d 979, 983 (D. Or. 2011).  What notice is required in those

circumstances, as compared to notice of an EIS that pre-dates a final decision?  Could an EIS be

initiated on the right-of-way question when the Corps continues to insist (as it has here) that its

Section 408 determinations are legally correct?  If, under the relevant facts and circumstances,

the granting of a right-of-way occurred on July 25 based on the Corps's prior determination that

an EIS is not warranted, what would be the legal significance of an EIS process that is partially

completed when the Court decides the cross-claim?

Moreover, it is far from clear whether an Assistant Secretary for Civil Works even has the authority to initiate and direct an EIS for this project. *See*, *e.g.*, OAHE0001252–1285, at 1261–1262, Department of the Army General Order 2012-01, Assignment of Functions and Responsibilities Within Headquarters, Department of the Army (Ex. J) (indicating that the Assistant Secretary of the Army (Installations, Energy and the Environment), not the Assistant Secretary of the Army (Civil Works), has "assigned responsibility for:" "Supervising and developing policies and programs for Army environmental efforts, including environmental compliance, pollution prevention, *environmental impact analysis*, stewardship of natural, cultural and historic resources and environmental cleanup and restoration, including Formerly Used Defense Sites.") (emphasis added); *see also* 33 C.F.R. § 230.5 ("The district commander is the Corps NEPA official responsible for compliance with NEPA for actions within district boundaries."); *cf.* Affidavit of Joey Mahmoud (Ex. A) ¶ 7 (noting exclusion of various personnel from the process). The fact that the Assistant Secretary for Civil Works is interfering in this way further highlights the political motivation behind the repeated attempts to frustrate this Court's jurisdiction. *See*, *e.g.*, AR OAHE0001138–40 (Ex. K), at 1138 (August 2015 e-mail between Corps Real Estate personnel noting that the request by Civil Works to review the pipeline notification materials was unprecedented and beyond what Army regulations call for).

These questions and others like them demonstrate that if the new EIS process goes forward, the Court could be thwarted in deciding the merits of the cross-claim with the very real risk that intervening events will interfere with or undermine the Court's ultimate decision and seriously prejudice Dakota Access. For example, if an EIS is well underway at the time of a Court ruling for Dakota Access on the cross-claim, litigation will likely ensue from the plaintiffs or others on the question whether the pending EIS process is reason to prevent Dakota Access

from acting on the right-of-way it received in July.  This added issue—and several others like those noted in the previous paragraph—would likely *not* arise, however, if the Court grants this motion and later corrects the government's view on whether a right-of-way was already granted. As noted earlier, the further analysis proposed by Assistant Secretary Darcy in her December 4 memorandum was predicated on the Army's view of the options available to it *before* a right-of-way decision is made.[6]  If this Court enters judgment declaring that a right-of-way was granted in July, the Army would likely conclude that an EIS is therefore unnecessary and inappropriate.

One of the principal concerns prompting this motion is that additional litigation resulting from publication of an EIS-related document in the Federal Register will add even more delay to the schedule for Dakota Access to complete its pipeline.  As Dakota Access has pointed out before, that added delay is not mere happenstance.  The government personnel responsible for approving the pipeline previously granted all needed permissions after determining that neither the law nor the facts require an EIS.  Even to this day, the Corps states on its website that it "won't" "do a full Environmental Impact Study for a project of this magnitude," explaining that it "has jurisdiction only over a very small portions [sic] of the total DAPL project" and "not over the entire pipeline."  *Dakota Access Pipeline FAQs*, U.S. Army Corps of Engineers, http://www.usace.army.mil/Dakota-Access-Pipeline/FAQs/ (last visited Jan. 16, 2017) (Ex. M, at 4) (adding that the Corps "determined that an Environmental Impact Study prepared under the National Environmental Policy Act was not required for any of the portions of the pipeline

---

[6]  Without the requested relief, Dakota Access could also be put in the position of bringing its own new challenges.  As previewed in the Motion for Summary Judgment, D.E. 66-1, at 27–31, the December 4 memorandum does not purport to satisfy any of the requirements for the Corps to countermand its earlier decision, in which the Corps concluded that the action proposed by Dakota Access "does not constitute a major federal action that would significantly affect the quality of the human environment" and therefore "preparation of an Environmental Impact Statement is not required."  AR 71179 (Finding of No Significant Impact).

within USACE's jurisdiction").  Nonetheless, political interests in the same administration have

continually interfered with these proper legal determinations in an effort to delay the project.

Rather than follow the process mandated by law, these political interests are pursuing a strategy

in their final days in office that lacks rigor, accountability, or legal authorization.  A notice

purportedly initiating a formal EIS process would compound the extent of their interference with

this Court's decision-making process and reward their strategy.

 **C.**  Not only are there important benefits to pausing the EIS process, no factors weigh

against that interim relief.  The stated purpose of the heightened analysis by the Corps, including

a possible EIS, is to help the Corps decide whether and under what conditions the pipeline

should cross beneath Lake Oahe.  Dakota Access is the party that seeks to build and operate the

pipeline.  Dakota Access is therefore the sole party in a position to complain if part of the

Corps's purported approval process is briefly put on hold.  To be clear, Dakota Access hopes and

expects that a short-term pause will shorten the overall process, allowing Dakota Access to

complete the pipeline more quickly.  Among other things, a ruling for Dakota Access on its

cross-claim should cause the Corps to recognize that it has no reason—and no lawful basis—to

proceed with an EIS.[7]  A decision by the Corps to deliver a signed easement without preparing

an EIS would thus be an appropriate and entirely lawful result of a Court order under the All

Writs Act that pauses the EIS process.

---

[7]  The Corps is also free to admit in the meantime that it granted a right-of-way in July and, consistent with that admission, deliver a signed easement without preparing an EIS.  That would also save the parties and the Court the time and expense of additional litigation over the cross-claim.

**II.    The Court Should Enjoin On An Emergency Basis The Publication In The Federal Register Of Any Notice Related To An Environmental Impact Statement For The Lake Oahe Crossing Until The Court Has Ruled On This Request For Injunctive Relief Under The All Writs Act.**

Dakota Access only recently learned of plans to publish an EIS-related notice in the Federal Register as early as January 18, 2017.  *See* Affidavit of Joey Mahmoud (Ex. A) ¶ 7.  To preserve the Court's ability to resolve this All Writs Act motion—and thus preserve the ability to resolve Dakota Access's cross-claim without added confusion from new governmental action—this Court should grant the requested relief on an emergency, *ex parte* basis until it is able to address the relief requested in Part I.

"'In the absence of explicit direction from Congress,' [a] court retains authority pursuant to [the] All Writs Act to preserve [the] status quo when 'necessary to protect its own jurisdiction.'"  *Belbacha v. Bush*, 520 F.3d 452, 458 (D.C. Cir. 2008) (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 608 (1966)).  Here, if the Court does not grant emergency relief barring the Corps from publishing EIS-related notice in the Federal Register, the relief requested here would be frustrated.  That result, in turn, could hinder this Court's ability to issue effectual relief on Dakota Access's cross-claim.  *See supra* Part I.B.

Action on an emergency basis is also warranted because Dakota Access recently learned that the Corps plans to publish a notice relating to the Lake Oahe EIS as soon as this Wednesday, January 18.  *See* Affidavit of Joey Mahmoud (Ex. A) ¶ 7.  An order temporarily barring the Corps from doing so will allow the Court time to address the relief requested in Part I.

Moreover, Dakota Access will suffer irreparable harm without emergency relief.  Delay continues to be the chief source of irreparable harm to Dakota Access.  Publication of a Federal Register notice and EIS steps following that publication would generate yet more litigation in this case on the questions noted *supra*.  Wholly apart from the waste of judicial and party

14

resources from added issues to litigate, the resultant further delay in completing the pipeline directly and irrevocably harms Dakota Access.  As set forth in prior briefing and oral argument, any actions which result in further incremental delay to the completion of the pipeline project will result in tens of millions of dollars in unrecoverable damages to Dakota Access.  *See*, *e.g.*, D.E. 22-1 (Ex. L); D.E. 58-1, at 11; D.E. 59-1, at 5–7.

The government may have already submitted its notice for printing.  *See supra* n.5.  This Court's order should therefore bar the Government Printing Office from publishing such a notice, and bar the Department of the Army or the Department of the Interior from trying to publish or implement such a notice.  It is well-established that the All Writs Act permits this Court to "impose duties on third parties" so long as they are reasonable.  *N.Y. Tel. Co.*, 434 U.S. at 171.  And such an order is reasonable when necessary to bind "non-parties who are in a position to frustrate implementation of a court order" as the Government Printing Office, the Department of the Army, and the Department of the Interior would be here.  *Sarnecka-Crouch v. Billington*, No. 06-1169, 2012 WL 3060165, at *2 n.3 (D.D.C. July 26, 2012).[8]

## CONCLUSION

This Court should issue an emergency order barring the Corps and other related government agencies from publishing a Federal Register notice related to an Environmental Impact Statement for the Dakota Access Pipeline project until the Court is able to address this

---

[8]  Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), the Government Printing Office, the Department of the Army, the Department of the Interior—and any other person— would be prohibited from acting in active concert or participation with the Corps to publish the notice of the EIS in violation of the preliminary injunction. *See NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013) ("Every injunction issued by a district court automatically forbids others — who are not directly enjoined but who act 'in active concert or participation' with an enjoined party — from assisting in a violation of the injunction.").

motion under the All Writs Act.  The Court should also direct the filing of any opposition to

Dakota Access's motion by Thursday, January 19, 2017; direct the filing of any reply by January

23, 2017; and hold a hearing to consider this motion at the Court's earliest availability thereafter.

Following that hearing, the Court should grant Dakota Access's request to restrain publication of

EIS-related documents pertaining to the Lake Oahe crossing, or other steps to initiate an EIS,

pending resolution of its cross-claim.


Dated:  January 16, 2017

Kimberly H. Caine
William J. Leone (*Pro Hac Vice* granted)
Robert D. Comer (*Pro Hac Vice* granted)
NORTON ROSE FULBRIGHT US LLP
799 9th St. N.W., Suite 1000
Washington, D.C. 20001
(202) 662-0200

Edward V. A. Kussy
NOSSAMAN LLP
1666 K Street, N.W., Suite 500
Washington, D.C. 20006
(202) 887-1400

  /s/ William S. Scherman
William S. Scherman
David Debold
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
(202) 530-9557 (fax)
wscherman@gibsondunn.com


*Counsel for Defendant–Intervenor–Cross Claimant Dakota Access, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of January, 2017, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the District of Columbia using the CM/ECF system.  Service was accomplished by the CM/ECF system on the following counsel:

Patti A. Goldman
Jan E. Hasselman
EARTHJUSTICE
705 Second Avenue, Suite 203
Seattle, WA  98104
(206) 343-7340
pgoldman@earthjustice.org
jhasselman@earthjustice.org

*Counsel for Plaintiff Standing Rock Sioux Tribe*


Nicole E. Ducheneaux,
FREDERICKS PEEBLES & MORGAN, LLP
3610 North 163rd Plaza
Omaha, NE 68116
(402) 333-4053
nducheneaux@ndnlaw.com

Conly J. Schulte
FREDERICKS PEEBLES & MORGAN, LLP
1900 Plaza Drive
Louisville, CO 80027
(303) 673-9600
cschulte@ndnlaw.com

*Counsel for Plaintiff–Intervenor Cheyenne River Sioux Tribe*

Matthew M. Marinelli
Erica M. Zilioli
U.S. DEP'T OF JUSTICE
Environment & Natural Resources Division
P.O. Box 7415
Washington, D.C.  20044
(202) 514-2000
Matthew.Marinelli@usdoj.gov
Erica.zilioli@usdoj.gov

*Counsel for Defendant–Cross Defendant U.S.
Army Corps of Engineers*

  /s/ William S. Scherman
William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Defendant–Intervenor–Cross
Claimant Dakota Access, LLC*