# Exhibit 1

*Standing Rock Sioux Tribe v. United States Army Corps of Engineers*,
Case No. 1:16-cv-1534 (JEB)
February 8, 2017 Easement

DACW45-2-16-8059

# DEPARTMENT OF THE ARMY
## EASEMENT FOR FUEL CARRYING PIPELINE RIGHT-OF-WAY
## LOCATED ON
## LAKE OAHE PROJECT
## MORTON AND EMMONS COUNTIES, NORTH DAKOTA

This Easement is made on behalf of **THE UNITED STATES OF AMERICA** (the "United States"), between **THE SECRETARY OF THE ARMY**, acting by and through the Chief, Real Estate Division, U.S. Army Engineer District, Omaha, hereinafter referred to as the "Grantor," under and by virtue of the authority vested in Title 30, United States Code, Section 185, and **DAKOTA ACCESS, LLC, a Limited Liability Company, duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal office at 1300 Main, Houston, Texas 77002,** hereinafter referred to as the "Grantee."

**NOW THEREFORE:**

The Grantor, for good and valuable consideration set forth below, the receipt and sufficiency of all of which are hereby acknowledged, upon and subject to the terms, covenants and conditions set forth in this Easement for right-of-way, does hereby:

Grant and convey to Grantee, an easement for a fuel carrying pipeline right-of-way for the installation, construction, operation, maintenance, repair, replacement and termination of a **thirty-inch (30) diameter, horizontal directional drill (HDD) buried oil pipeline for the purpose of transporting crude oil**, and related facilities, hereinafter collectively referred to as the "Facilities," over, across, in and upon lands of the United States **at and under Lake Oahe and the Lake Oahe Project**, as identified in **Exhibits "A" and "B,"** hereinafter referred to as the "Premises," and which are attached hereto and made a part hereof; with the width of a right-of-way being fifty (50) feet plus the ground occupied by the pipeline (that is, the pipe and its related facilities);

Make no claim of title during the term of this Easement to any Facilities of whatever nature located, constructed, or placed on the Premises by the Grantee.

THIS EASEMENT is granted subject to the following conditions.

## 1.   TERM

This easement is hereby granted for a term of **Thirty Years**, beginning on the date of execution by the Grantor and ending thirty (30) years from the date of execution by the Grantor.

The Grantor shall renew this Easement in accordance with the provisions of 30 U.S.C. § 185, so long as the project is in commercial operation and is operated and maintained in accordance with all of the provisions of this Easement and applicable law. The Grantor prior to renewing this Easement must receive from the Grantee written notice of its intent to seek renewal or extension not less than one year prior to the Easement expiration or termination date and all plans, contracts, agreements, or other information or material which the Grantor deems necessary to determine whether a right-of-way shall be renewed and the terms and conditions which should be included in the right-of-way.

## 2.   CONSIDERATION, MITIGATION, AND DAMAGES

a. As consideration for this Easement, the Grantee shall pay cash consideration in advance to the Grantor in the amount of **Eight Thousand Fifty and No/100 Dollars ($8,050.00), payable annually on or before the anniversary date of the beginning of this easement**.

b. The Grantee will mitigate damages caused to the Premises, surrounding areas, or to the **Lake Oahe Project**, during initial installation and construction of the Facilities, and damages caused during operation, maintenance, or subsequent construction work, and complete all site restoration in accordance with the Mitigation/Restoration Plan submitted by Grantee on file in the U.S. Army Engineer District, **Omaha, specifically referenced in the Grantee's pipeline Environmental Assessment ("EA") in Section 3.3.2.5 "Clean-up and Restoration," and further outlined in the Stormwater Pollution Prevention Plan ("SWPPP") presented in Appendix A of the EA and the Environmental Construction Plan presented in Appendix G of the EA.**

c. The Grantee shall reimburse the Grantor in advance for the costs incurred in monitoring the construction, operation, maintenance, and termination of the pipeline and related facilities on the Premises in the amount of **Seven Hundred Fifty and No/100 Dollars ($750.00) payable annually on or before the anniversary date of the beginning of the Easement.**

d. Any checks or drafts payable to the Grantor will be made to the order of the **"FAO-USAED, OMAHA"**, and delivered to **USAED, Omaha, ATTN:  CENWO-RE, 1616 Capitol Avenue, Omaha, Nebraska  68102.**

e. Any payments due under the terms of this Easement must be paid on or before the date that they are due to avoid the mandatory sanctions imposed by the Debt Collection Act of 1982, as amended (31 U.S.C. Section 3717). This statute requires the imposition of an interest charge for the late payment of debts owed to the United States; an administrative charge to cover the costs of processing and handling delinquent debts; and the assessment of an additional penalty charge on any portion of a debt that is more than 90 days past due.

## 3.   NOTICES

All correspondence and notices to be given pursuant to this Easement shall be in writing and addressed, if to the Grantee, to **DAKOTA ACCESS LLC, 1300 Main Street, Houston, Texas 77002** and, if to the Grantor, to the **U. S. Army Engineer District, Omaha, Attention: Chief, Real Estate Division, 1616 Capitol Avenue, Omaha, Nebraska 68102,** or as may from time to time otherwise be directed by the parties. Notices shall be mailed by certified mail, postage prepaid, return receipt requested, addressed to the addresses above. The effective date of the notice shall be the earlier of the actual date of receipt or the date the addressee is notified of the attempted delivery of the certified mail, whether or not the addressee actually accepts delivery.

## 4.   AUTHORIZED REPRESENTATIVE

Except as otherwise specifically provided, any reference herein to "Grantor" or "Chief, Real Estate Division" shall include their duly authorized representatives. Any reference to "Grantee" shall include assignees, transferees and their duly authorized representatives.

## 5.   SUPERVISION BY THE GRANTOR

a. The installation and/or operation and maintenance of said pipeline shall be accomplished without cost or expense to the United States under the general supervision and subject to the approval of the Grantor's representative having immediate jurisdiction over the property, hereinafter designated as "said officer," and in such manner as not to endanger personnel or property of the United States on the said United States land or obstruct travel on any road thereon. The Grantee shall have the right of ingress and egress for such purposes, subject to approval of access by said officer.

b. The use and occupation of said Premises incident to the exercise of the privileges hereby granted shall be subject to such rules and regulations as the said officer may from time to time prescribe.

## 6.   APPLICABLE LAWS AND REGULATIONS

The Grantee shall construct, operate, maintain, and terminate the said pipeline in accordance applicable federal, state, county, and municipal laws, regulations, and ordinances. As required by 30 U.S.C. § 185, the Grantee shall construct, operate, and

maintain the Facilities as common carriers.  The pipeline installation shall be in accordance with the U.S. Department of Transportation's Minimum Federal Safety Standards and any other applicable federal or state safety requirements.

## 7.    CONDITION OF PREMISES

The Grantee acknowledges that it has inspected the Premises, knows its condition, and understands that the same is granted without any representations or warranties whatsoever and without any obligation on the part of the United States.

## 8.    INSPECTION AND REPAIRS

a.  Upon completion of any phase of the pipeline project which causes damage to the Premises, the Grantee shall restore said damage immediately, at the Grantee's own expense, to the same condition in which they existed prior to the commencement of such work, to the satisfaction of the said officer.

b.  The Grantee shall supervise the said pipeline and cause it to be inspected at reasonable intervals, and shall immediately repair any defects or leaks found by such inspection, or when requested by the Grantor to repair any defects or leaks.

## 9.    PROTECTION OF GOVERNMENT PROPERTY

The Grantee shall be responsible for any damage that may be caused to the property of the United States by the activities of the Grantee under this Easement and shall exercise due diligence in the protection of all property located on the Premises against fire or damage from any and all other causes.  Any property of the United States damaged or destroyed by the Grantee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Grantee to a condition satisfactory to the Grantor, or at the election of the Grantor, reimbursement made therefor by the Grantee in an amount to reimburse for the loss satisfactory to the Grantor.

## 10.    RIGHT TO ENTER

a.  The right is reserved to the Grantor, the United States, its officers, agents, and employees to enter upon the premises at any time and for any purpose necessary or convenient in connection with government purposes, to make inspections, to remove timber or other material, except property of the Grantee, to flood the Premises, to manipulate the level of the lake or pool in any manner whatsoever and/or to make any other use of the lands as may be necessary in connection with government purposes, and the Grantee shall have no claim for damages on account thereof against the Grantor, the United States or any officer, agent, or employee thereof.

b.  If the entry will involve removal of timber or other material, or heavy equipment, the Grantor will provide reasonable notice to Grantee of any such entry or use so that Grantee may take any necessary measures to assure the safety of its pipeline and

any personnel of the United States working in proximity to such pipeline.  Grantee will ensure that Grantor has emergency contact information.

## 11.   TRANSFERS AND ASSIGNMENTS

Without prior written approval by the Grantor, the Grantee shall neither transfer nor assign this Easement or any part thereof nor grant any interest, privilege or license whatsoever in connection with this Easement.  The provisions and conditions of this Easement shall extend to and be binding upon and shall inure to the benefit of the representatives, successors and assigns of the Grantee.

## 12.   INDEMNITY

a.  The Grantee shall be strictly liable to the United States for damage or injury which may arise from or be incident to the activities of the Grantee under this Easement, or for damages to the property of the Grantee, or for damages to the property or injuries to the person of the Grantee's officers, agents, or employees or others who may be on the Premises at their invitation or the invitation of any one of them, and the Grantee shall hold the United States harmless from any and all such claims not including damages due to the fault or negligence of the United States or its contractors.  Grantee shall exercise due diligence in the protection of all property located on the Premises.

b.  All owners of any interest in, and all affiliates or subsidiaries of the Grantee shall be liable to the United States in the event that a claim for damage or injury cannot be collected from the Grantee.  Liability without fault hereunder shall be limited to **Ten Million and No/100 Dollars ($10,000,000.00)** for any one incident.  Liability of such Grantee for damages in excess **Ten Million and No/100 Dollars ($10,000,000.00)** shall be in accord with ordinary rules of negligence.  However, this condition shall not impose strict liability on the Grantee for damage or injury resulting from (a) an act of war or force majeure, or (b) negligence of the United States.  In any case where liability without fault is imposed pursuant to this condition and the damage or injuries involved were caused by the negligence of a third party, the rules of subrogation shall apply in accordance with the law of the jurisdiction where the damage or injury occurred.

c.  The Grantee does hereby accept liability, if any, imposed by Federal and state statutes to third parties for injuries incurred in connection with the use and occupancy of the pipeline right-of-way.

## 13.   SUBJECT TO EASEMENTS

a.  This Easement is subject to all other existing easements, or those subsequently granted as well as established access routes for roadways and utilities located, or to be located, on the Premises.

b.  To minimize adverse environmental impacts and the proliferation of separate rights-of-way across federal lands, the utilization of rights-of-way in common shall be

required to the extent practical, and this Easement hereby reserves to the Grantor the right to grant additional rights-of-way or permits for compatible uses on or adjacent to the Premises.

c. Provided that the proposed grant of any new easement or route will be coordinated with the Grantee, and easements will not be granted which will, in the opinion of the Grantor, interfere with the use of the Premises by the Grantee.

14.    **REQUIRED SERVICES**

This condition was deleted.

15.    **RELOCATION OF FACILITIES**

In the event all or any portion of said Premises occupied by said Facilities shall be needed by the United States, or in the event the existence of said Facilities shall be considered detrimental to governmental activities, the Grantee shall, from time to time, upon notice to do so, and as often as so notified, promptly seek authorization from the Federal Energy Regulatory Commission, or other applicable entity, to remove said Facilities, or portion thereof, to such other location or locations on said Premises as may be designated by the Grantor.  In the event said Facilities shall not be removed or relocated within ninety (90) days after any aforesaid notice, the Grantor, after receipt of required approvals, may cause the same to be done at the expense of the Grantee.

16.    **SUSPENSION OR TERMINATION**

a. Abandonment of the Easement herein granted or noncompliance with any provisions of this Easement or applicable provisions of 30 U.S.C. 185 may be grounds for suspension or termination of the right of way if (a) after due notice to the Grantee, (b) a reasonable opportunity to comply with this Easement or applicable provisions of 30 U.S.C. § 185, and (c) an appropriate administrative proceeding pursuant to 5 U.S.C. § 554, the Grantor determines that any such ground exists that suspension or termination is justified.  No administrative proceeding shall be required where the Easement by its terms provides that it terminates on the occurrence of a fixed or agreed upon condition, event, or time.

b. If the Grantor determines that an immediate temporary suspension of activities within the Premises is necessary to protect public health or safety or the environment, the Grantor may abate such activities prior to an administrative proceeding.

c. Deliberate failure of the Grantee to use the Easement for the purpose for which it was granted or renewed for any continuous two-year period shall constitute a presumption of abandonment of the Easement; provided, that where the failure to use the right-of-way is due to circumstances not within the Grantee's control, the Grantor is not required to commence proceedings to suspend or terminate the right-of-way.

17.   **SOIL AND WATER CONSERVATION**

The Grantee shall maintain, in a manner satisfactory to said officer, all soil and water conservation structures that may be in existence upon said Premises at the beginning of or that may be constructed by the Grantee during the term of this Easement, and the Grantee shall take appropriate measures to prevent or control soil erosion within the right-of-way herein granted.  Any soil erosion occurring outside the Premises resulting from the activities of the Grantee shall be corrected by the Grantee as directed by said officer.

18.   **ENVIRONMENTAL PROTECTION**

a.  Within the limits of their respective legal powers, the parties hereto shall protect the Premises against pollution of its air, ground, and water.  The Grantee shall promptly comply with any laws, regulations, conditions, or instructions affecting the activity hereby authorized if and when issued by the Environmental Protection Agency, or any federal, state, interstate, or local governmental agency having jurisdiction to abate or prevent pollution.  The disposal of any toxic or hazardous materials within the Premises is strictly prohibited.  Such regulations, conditions, or instructions in effect or prescribed by the said Environmental Protection Agency or any federal, state, interstate, or local governmental agency are hereby made a condition of this Easement.  The Grantee shall not discharge waste or effluent from the Premises in such a manner that the discharge will contaminate streams or other bodies of water or otherwise become a public nuisance.

b.  The use of any pesticides or herbicides within the Premises shall be in conformance with all applicable federal, state, and local laws and regulations.  The Grantee must obtain approval in writing from said officer before any pesticides or herbicides are applied to the Premises.

c.  The Grantee will use all reasonable means available to protect the environment and natural resources, and where damage nonetheless occurs arising from the Grantee's activities, the Grantee shall be liable to restore the damaged resources.

19.   **ENVIRONMENTAL CONDITION OF PROPERTY**

An Environmental Condition of Property (ECP) documenting the known history of the property with regard to the storage, release, or disposal of hazardous substances thereon, is attached hereto and made a part hereof as **Exhibit "C."**  Upon expiration, revocation, or termination of this Easement, another ECP shall be prepared which will document the environmental condition of the property at that time.  A comparison of the two studies will assist the said officer in determining any environmental restoration requirements.  Any such requirements will be completed by the Grantee in accordance with the condition on **RESTORATION**.

**20.   HISTORIC PRESERVATION**

The Grantee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural or other cultural artifacts, relics, vestiges, remains or objects of antiquity.  In the event such items are discovered on the Premises, the Grantee shall immediately notify the Grantor, and the site and the material shall be protected by the Grantee from further disturbance until the Grantor gives clearance to proceed.

**21.   NON-DISCRIMINATION**

The Grantee shall not discriminate against any person or persons or exclude them from participation in the Grantee's operations, programs or activities conducted on the Premises because of race, color, religion, sex, sexual orientation, gender identity, age, handicap, or national origin, pursuant to Executive Order 13672, 21 July 2014.  The Grantee will comply with the Americans with Disabilities Act and attendant Americans with Disabilities Act Accessibility Guidelines (ADAAG) published by the Architectural and Transportation Barriers Compliance Board.  The Grantee shall comply with Department of Justice rules on non-discrimination.

**22.   HAZARDOUS WASTE MANAGEMENT**

The Grantee will not store or dispose of non-DoD hazardous materials on the premises unless authorized under 10 U.S.C. § 2692, *Storage, Treatment, and Disposal of Non-Defense Toxic and Hazardous Materials*.  The Grantee shall strictly comply with the hazardous waste management requirements under the Resource Conservation and Recovery Act and the applicable state hazardous waste management rules, including proper hazardous waste characterization, labeling, storage, disposal and documentation requirements.  Except as specifically authorized by the Grantor in writing, the Grantee must provide, at its own expense such hazardous waste management facilities as needed to maintain compliance with all laws and regulations.  Army hazardous waste management facilities will not be available to the Grantee.

**23.   HAZARDOUS WASTE OR FUEL SPILL**

The Grantee shall submit to the Grantor and maintain, thereafter, a plan for responding to hazardous water, fuel, and other chemical spills prior to commencement of use of the Premises.  Such plan shall be independent of the Government's spill contingency plan and, except for initial fire response and/or spill containment, shall not rely on use of project personnel or equipment.  Should the Grantor provide any personnel or equipment, whether for initial fire response and/or spill containment, or otherwise on request of the Grantee or because the Grantee was not, in the opinion of the said officer, conducting timely clean-up actions, the Grantee agrees to reimburse the Grantor for its costs.

## 24.   RESTORATION

On or before the expiration or termination of this Easement, the Grantee shall, without expense to the United States, and within such time as the Grantor may indicate, remove said Facilities and restore the Premises to the satisfaction of the Grantor.  In the event the Grantee shall fail, neglect or refuse to remove said Facilities and restore the Premises, the Grantor shall have the option to take over said Facilities without compensation, or to remove said Facilities and perform the restoration at the expense of the Grantee, and the Grantee shall have no claim for damages against the United States or its officers or agents for such action.  This provision is subject to all regulatory requirements and approvals covering any of the activities described in this condition.

## 25.   DISCLAIMER

It is understood that this instrument is effective only insofar as the rights of the United States in the said property are concerned, and that the Grantee shall obtain such permission as may be necessary on account of any other existing rights.  It is also understood that the granting of this Easement does not eliminate the necessity of obtaining any Department of the Army permit that may be required pursuant to the provisions of Section 10 of the Rivers and Harbors Act of March 3, 1899 (30 Stat. 1151; 33 U.S.C. § 403), Section 404 of the Clean Water Act (33 U.S.C. § 1344), or any other permit or license which may be required by federal, state or local statute in connection with the use of the Premises.  The grant of this Easement pursuant to 30 U.S.C. § 185 shall grant no immunity from the operation of the federal antitrust laws.

## 26.   OTHER AGENCY AGREEMENTS

It is understood that the provision of the Easement shall not abrogate or interfere with any agreements or commitments made or entered into between the Grantee and any other agency of the United States with regard to financial aid to the Grantee in connection with the installation, operation, or maintenance of said pipeline.

## 27.   CONSTRUCTION, OPERATION AND REHABILITATION PLAN

In compliance with 30 U.S.C. § 185, the Grantee will follow the plan(s) of construction, operation, and rehabilitation submitted to the Grantor prior to the execution of this Easement, on file in the **U.S. Army Engineer District, Omaha District. Restoration will be in accordance with Section 3.3.2.5 of the EA "Clean-up and Restoration" and further outlined in the SWPPP and the Environmental Construction Plan presented in Appendices "A" and "G," respectively, of the EA. Ground disturbing activities will not occur on Corps-managed lands; therefore, reseeding is not anticipated in those areas.  However, if reseeding were to become necessary on Corps-managed lands, all activities shall be conducted in accordance with applicable Lake Oahe revegatation guidelines.**

## 28.   FEDERAL ENERGY REGULATORY COMMISSION ORDER ISSUING CERTIFICATES

The Grantee shall comply with the conditions set forth in the Federal Energy Regulatory Commission's Order Issuing Certificate **dated December 24, 2014, as applicable, to Docket No. OR14-42-00, Dakota Access LLC.**

## 29.   SPECIAL CONDITIONS

See attached **Exhibit "D"** for the Special Conditions for this Easement.

## 30.   EXECUTIVE ORDER 13658

a.  Any reference in this section to "prime contractor" or "contractor" shall mean the Grantee and any reference to "contract" shall refer to the Easement.

b.  It has been determined that this contract is not subject to Executive Order 13658 or the regulations issued by the Secretary of Labor in 29 CFR part 10 pursuant to the Executive Order.

c.  If a duly authorized representative of the United States discovers or determines whether before or subsequent to executing this contract, that an erroneous determination regarding the applicability of Executive Order 13658 was made, contractor, to the extent permitted by law, agrees to indemnify and hold harmless the Unites States, its officers, agents, and employees, for and from any and all liabilities, losses, claims, expenses, suits, fines, penalties, judgments, demands or actions, costs, fees, and damages directly or indirectly arising out of, caused by, related to, resulting from or in any way predicated upon, in whole or in part, the erroneous Executive Order 13658 determination.  This includes contractor releasing any claim or entitlement it would otherwise have to an equitable adjustment to the contract and indemnifying and holding harmless the United States form the claims of subcontractors and contractor employees.

DACW45-2-16-8059

**IN WITNESS WHEREOF,** I have hereunto set my hand to this Easement by authority of the Secretary of the Army, this _8th_ day of _February_ 2017.

_D. V. Ch._

**DAVID V. CHIPMAN**
Chief, Real Estate Division, Omaha District
Real Estate Contracting Officer

**ACKNOWLEDGMENT**

STATE OF _Nebraska_ )
) ss:
COUNTY OF _Douglas_ )

    **PERSONALLY APPEARED BEFORE ME,** the undersigned authority in and for said County and State, within my jurisdiction, the within named **David V. Chipman,** who acknowledged that he is the Chief of Real Estate Division, U.S. Army Engineer District, Omaha, and that in said capacity he executed the above and foregoing **Department of the Army Easement for Fuel Carrying Pipeline Right-Of-Way** by authority of the Secretary of the Army for the purposes therein expressed and as the act and deed of the United States of America.

    **GIVEN UNDER MY HAND AND SEAL,** this _8th_ day of _February_ , **2017.**

(SEAL)

> General Notary - State of Nebraska
> **JOSHUA D. ANDREWS**
> My Comm. Exp. Aug. 27, 2018.

_____
NOTARY PUBLIC

My Commission Expires:

_August 27, 2018_

DACW45-2-16-8059

**THIS EASEMENT** is also executed by the Grantee this 8th day of FEBRUARY, 2017.

DAKOTA ACCESS LLC

Robert Rose
Vice President, Land and Right of Way

## ACKNOWLEDGMENT

STATE OF Texas )
) ss:
COUNTY OF Harris )

**PERSONALLY APPEARED BEFORE ME**, the undersigned authority in and for the county and state, on this 8th day of February, 2017, within my jurisdiction, the within named **Robert Rose**, who acknowledged that he is **Vice President, Land and Right of Way, DAKOTA ACCESS LLC** a Delaware Limited Liability Company, and that for and on behalf of the said company, and as its act and deed he executed the above and foregoing **Department of the Army Easement for Fuel Carrying Pipeline Right-Of-Way,** having been duly authorized by said company so to do.

(SEAL)

DONNA WALTERS
Notary Public, State of Texas
Comm. Expires 03-04-2020
Notary ID 2342771

NOTARY PUBLIC

My Commission Expires:

3|4|20



# OAHE DAM AND RESERVOIR

0   600   1,200   2,400
Feet



Date: 28-May-2015

Disclaimer: The Government furnishes this data and the recipient accepts and uses it with the express understanding that the United States Government makes no warranties, expressed or implied, concerning the accuracy, completeness, reliability, usability, or suitability for any particular purpose of the information and data furnished. The United States shall be under no liability whatsoever to any person by reason of any use made thereof. Data displayed on this map are approximations derived from GIS layers and should NOT be used in place of survey data or legal land descriptions.

Path: (regsi1)\re2\jesse\bob_incontro\Oahe\DAPL_Easement\DAPL_Easement.mxd

**Legend**

▪▪▪ Project Boundary (Fee)
—— 50' Wide Proposed Easement (±7.37 Acres)
☐ Tracts
☐ Sections
Counties

EXHBIT "A" ATTACHED TO AND
MADE A PART OF DACW45-2-16-8059





## <u>METES AND BOUNDS DESCRIPTION</u>
## <u>CENTERLINE 50' WIDE PERMANENT EASEMENT</u>

Being a centerline description located in the Section 10, Township 134 North, Range 79 West of the 5th P.M., in Morton and Emmons County, North Dakota and Section 11, Township 134 North, Range 79 West of the 5th P.M., in Emmons County, North Dakota, and crossing the following tracts of land and described as follows:

Basis of Bearing:
Bearing are based on UTM Zone 14 Grid North.

Tracts of land:
Tract 1: Portion of Lot 6 of Section 10; Document Number 199601, Deed Records, Morton County.
Tract 2: Lake Oahe.
Tract 3: Portion of the N1/2 of Section 11; Civil Case No. 486, Judgment Records, Emmons County.

**COMMENCING** at a 3/8-inch iron rod found for the Northwest corner of said Section 10;

**THENCE**, crossing said Section 10, South 46 degrees 08 minutes 26 seconds East a distance of 3,664.72 feet to the west line of said United States of America Tract 1 for the **POINT OF BEGINNING** of this centerline description;

**THENCE**, crossing the United States of America tracts and through said Section 10 and said Section 11, North 83 degrees 59 minutes 34 seconds East a distance of 6,420.72 feet to the east line of said United States of America Tract 3 for the **TERMINAL POINT** of this centerline description, from which a 1-inch USGS monument found on said east line bears South 01 degrees 17 minutes 30 seconds West a distance of 296.68 feet. Said centerline having a length of 6,420.72 feet, 389.14 rods, and said fifty foot (50') wide.

Permanent Easement containing 7.37 acres of land.

Wood Group Mustang, Inc.
17325 Park Row
Houston, Texas 77084
(832) 809-8000
April 23, 2015
Job No. 103957

**Exhibit "B"**
**DACW45-2-16-8059**

## ENVIRONMENTAL CONDITION OF PROPERTY
Helpful instructions for ECP are located at:
https://w3.nwo.usace.army.mil/intranet/od-tn/policypage/policies/RE/ECQ%20Instructions.pdf

This form covers Purpose, Site Location, Current Use of Property and adjacent property, Historical Use of Property and Adjacent Property, User provided Information, Site Reconnaissance, and Records Search and Interviews.  Specific Records Search and Interview information will be provided in sections 4.0 and 5.0. Pictures, Maps, Record and Interview information are appendices.

| Project Name:<br>Dakota Access Pipeline Project | DACW#:<br>Pending | Address/location:<br>Lake Oahe, Morton and Emmons Counties, North Dakota, Approx. 3.5 miles North of Cannonball, North Dakota. |
|---|---|---|

### 1.0 Purpose

Construct, install and operate an approximate 1,100 mile long crude oil pipeline from near Stanley, North Dakota to Patoka, Illinois.  The main trunk line of 30 inch diameter pipe will cross government fee owned property at the Oahe Reservoir.  The pipeline will transfer crude oil from the Bakken oil production area in North Dakota to a crude oil transportation terminal in Illinois.

### 2.0 Site Description

#### 2.1 Property Legal Description and Site Address:

NE 1/4 Section 10, T134 N, R79 W, Morton County, North Dakota-Lat 46.43783, Long 100.59806 and NE 1/4 Section 11, T134 N, R79 W, Emmons County, North Dakota- Lat. 46.439908, Long. 100.576745

#### 2.2 Site and Vicinity General Characteristics:

The proposed DAPL pipeline will cross the Oahe Reservoir and lies within the Missouri River corridor and flood plane.  The pipeline and corresponding easement band of 30 to 50 feet wide for construction and subsequent operation and maintenance will occur on gently rolling hills and in significant elevation relief in the transition zones of upland to river bed.  Land use on the west side of the reservoir is primarily native grasses and legumes with minimal amount of herbaceous and shrub vegetation, while on the east side is native grasses and minor amounts of tillage and farming with scattered herbaceous vegetation.  More specific information on land features, vegetation, geology, and environmental features are addressed in the current Draft Environmental Assessment.  The proposed pipeline is to be installed by horizontal directional boring (HDD) will be underground below Lake Oahe, with the boring entrance and exit located in the uplands on the west side and east side respectively.  The pipeline crossing will occur in a corridor that currently has an existing overhead 500 KV power line crossing administered by Basin Electric Cooperative and an underground 42 inch diameter natural gas line crossing administered by Northern Border Pipeline.

### 3.0 General Site Setting

| Yes answers must be documented.  Records and interviews must be documented. | | | | |
|---|---|---|---|---|
| **a.  Current and Past use of Property:** | | | | |
| (1)(a)  Is the property used for industrial use? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| (1)(b)  Is any adjoining property used for an industrial use?  For the purposes of this inquiry, adjoining | | | | |

Page | 1

EXHIBIT "C"
DACW45-2-16-8059

### ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| | | | | |
|---|---|---|---|---|
| | property is considered to be property located within a quarter mile of the subject property and individual properties located within a mile of the subject property that exhibit a potential for environmental concern. | | | |
| | Record Search and/or Interview: Existing easements for overhead power line and underground gas line. | ☑ Yes | ☐ No | ☐ Unk |
| | Observed during site visit: Existing power line observed. | ☑ Yes | ☐ No | |
| | (2)(a)  Did you observe evidence or do you have any prior knowledge that the property has been used for an industrial use in the past? | | | |
| | Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk |
| | Observed during site visit: | ☐ Yes | ☑ No | |
| | (2)(b)  Did you observe evidence or do you have any prior knowledge that any adjoining property has been used for an industrial use in the past? | | | |
| | Record Search and/or Interview: Existing easements for overhead power line and underground gas line. | ☑ Yes | ☐ No | ☐ Unk |
| | Observed during site visit: Existing power line observed. | ☑ Yes | ☐ No | |
| | (3)(a)  Is the property used as a gasoline station, motor repair facility, dry cleaners, photo developing laboratory, junkyard, or landfill, or as a waste treatment, storage, disposal, processing, or recycling facility (if applicable, identify which)? | | | |
| | Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk |
| | Observed during site visit: | ☐ Yes | ☑ No | |
| | (3)(b)  Is any adjoining property used as a gasoline station, motor repair facility, dry cleaners, photo developing laboratory, junkyard, or landfill, or as a waste treatment, storage, disposal, processing, or recycling facility (if applicable, identify which)? | | | |
| | Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk |
| | Observed during site visit: | ☐ Yes | ☑ No | |
| | (4)(a)  Did you observe evidence or do you have any prior knowledge that the property has been used as a gasoline station, motor repair facility, dry cleaners, photo developing laboratory, junkyard, or landfill, or as a waste treatment, storage, disposal, processing, or recycling facility (if applicable, identify which)? | | | |
| | Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk |
| | Observed during site visit: | ☐ Yes | ☑ No | |
| | (4)(b)  Did you observe evidence or do you have any prior knowledge that any adjoining property has been used as a gasoline station, motor repair facility, dry cleaners, photo developing laboratory, junkyard, or landfill, or as a waste treatment, storage, disposal, processing, or recycling facility (if applicable, identify which)? | | | |
| | Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk |
| | Observed during site visit: | ☐ Yes | ☑ No | |
| **b.  Specific Property Conditions/Exterior Observations** | | | | |
| | (5)(a)  Are there currently any damaged or discarded automotive or industrial batteries, pesticides, paints, or other chemicals, hazardous substances or petroleum products in individual containers of >5 gal (19 L) in volume or 50 gal (190 L) in the aggregate, stored on or used at the property or at the facility? | | | |
| | Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk |
| | Observed during site visit: | ☐ Yes | ☑ No | |
| | (5)(b)  Did you observe evidence or do you have any prior knowledge that there have been previously any damaged or discarded automotive or industrial batteries, pesticides, paints, or other chemicals, hazardous substances or petroleum products in individual containers of >5 gal (19 L) in volume or 50 gal (190 L) in the aggregate, stored on or used at the property or at the facility? | | | |

## ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| | Yes | No | Unk |
|---|---|---|---|
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (6)(a)  Are there currently any industrial drums (typically 55 gal (208 L)) or sacks of chemicals located on the property or facility? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (6)(b)  Did you observe evidence or do you have any prior knowledge that there have been previously any industrial drums (typically 55 gal (208 L)) or sacks of chemicals located on the property or facility? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (7)(a)  Did you observe evidence or do you have any prior knowledge that fill dirt has been brought onto the property that originated from a contaminated site? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (8)(a)  Are there currently any pits, ponds, or lagoons located on the property in connection with waste treatment or waste disposal? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (8)(b)  Did you observe evidence or do you have any prior knowledge that there have been previously, any pits, ponds, or lagoons located on the property in connection with waste treatment or waste disposal? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (9)(a)  Is there currently any stained soil on the property? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (9)(b)  Did you observe evidence or do you have any prior knowledge that there have been previously, any stained soil on the property? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (10)(a)  Are there currently any registered or unregistered storage tanks (above or underground) located on the property? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (10)(b)  Did you observe evidence or do you have any prior knowledge that there have been previously, any registered or unregistered storage tanks (above or underground) located on the property? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (11)(a)  Are there currently any vent pipes, fill pipes, or access ways indicating a fill pipe protruding from the ground on the property or adjacent to any structure located on the property? | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk |
| Observed during site visit: | ☐ Yes | ■ No | |
| (11)(b)  Did you observe evidence or do you have any prior knowledge that there have been previously, | | | |

### ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| | | | | |
|---|---|---|---|---|
| any vent pipes, fill pipes, or access ways indicating a fill pipe protruding from the ground on the property or adjacent to any structure located on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☑ No | | |
| (12)(a)  Are there currently any strong, pungent, or noxious odors located on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☑ No | | |
| (12)(b)  Did you observe evidence or do you have any prior knowledge that there have been previously, any strong, pungent, or noxious odors located on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☑ No | | |
| (13)(a)  Are there currently any standing surface water, pools or sumps containing liquids likely to be hazardous substances or petroleum products, located on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☑ No | | |
| (13)(b)  Did you observe evidence or do you have any prior knowledge that there have been previously, any standing surface water, pools or sumps containing liquids likely to be hazardous substances or petroleum products located on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☑ No | | |
| **c.  Facility Conditions or Interior Observations** | | | | |
| (c.)(1) Are there facilities currently on site?   See comments below, no enclosed struct. | ☑ Yes | ☐ No | ☐ Unk | |
| (c.)(2) Is there evidence or prior knowledge of facilities previously on site? | ☐ Yes | ☑ No | ☐ Unk | |
| If answers (c.)(1) and (c.)(2) are No, than questions 14-16 are | | | ☐ N/A | |
| (14)(a)  Is there currently evidence of leaks, releases or staining by substances other than water, or foul odors, associated with any flooring, drains, walls, ceilings, or exposed grounds on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☑ No | | |
| (14)(b)  Did you observe evidence or do you have any prior knowledge that there have been previously any leaks, releases or staining by substances other than water, or foul odors, associated with any flooring, drains, walls, ceilings, or exposed grounds on the property, infrastructure Conditions | | | | |
| Record Search and/or Interview: | ☐ Yes | ☑ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☑ No | | |
| (15)  Describe the means of heating and cooling the buildings on the property, including the fuel source for heating and cooling. | | | | |
| The facility that is adjacent to the proposed pipeline site is an overhead high voltage power line and on the west and east side of the Oahe Reservoir there is a secured area of above ground piping, valves and controls for the underground gas line.  No enclosed buildings exist, or have existed, on the Government property under consideration for the proposed DAPL oil pipeline to my knowledge. | | | | |
| (16)  Describe sumps or drains visually and/or physically observed or identified from the interviews that are present in the buildings on the property. | | | | |
| N/A | | | | |
| **d.  Infrastructure Conditions** | | | | |
| (17)  Identify the source of potable water for the property. | | | | |

### ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| | | | | |
|---|---|---|---|---|
| N/A | | | | |
| (18)  Identify the sewage disposal for the property. | | | | |
| N/A | | | | |
| (19)(a)  If the property is served by a private well or non-public water system, is there evidence or do you have prior knowledge that contaminants have been have been identified in the well or system that exceed guidelines applicable to the water system? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| (19)(b)  If the property is served by a private well or non-public water system is there evidence or do you have prior knowledge that the well has been designated as contaminated by any government environmental/health agency? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| (19)(c)  Does the property discharge waste water (not including sanitary waste or storm water) onto or adjacent to the property and/or into a storm water system? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| (19)(d)  Does the property discharge waste water (not including sanitary waste or storm water) onto or adjacent to the property and/or into a sanitary sewer system? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| (20)(a)  Has there been a discharge of any substance or material from the property that might contaminate the public water system? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| (20)(b)  Is the property known to be served by asbestos cement mains, lead containing lines, or piping that uses copper and/or lead solder? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| (21)(a)  Is the property served by a private/nonpublic water system that has been found to be contaminated in excess of drinking water guidelines or otherwise contaminated? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| **e.  CERCLA and Related Liability** | | | | |
| (22)  Is there any knowledge of environmental remediation orders or agreements applicable to the property or any facility located on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| (23)(a)  Is there information on the past existence of hazardous substances or petroleum products with respect to the property or any facility located on the property? | | | | |

### ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| | | | | | |
|---|---|---|---|---|---|
| Record Search and/or Interview: Draft Env. Assess., | | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ■ No | | |
| (23)(b)  Is there information on the current existence of hazardous substances or petroleum products with respect to the property or any facility located on the property? | | | | | |
| Record Search and/or Interview: | | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ■ No | | |
| (23)(c)  Is there information on the past existence of environmental violations with respect to the property or any facility located on the property? | | | | | |
| Record Search and/or Interview: | | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ■ No | | |
| (23)(d)  Is there information on the current existence of environmental violations with respect to the property or any facility located on the property? | | | | | |
| Record Search and/or Interview: | | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ■ No | | |
| (24)  Is there any knowledge of any environmental site assessment of the property or facility that indicated the presence of hazardous substances or petroleum products on, or contamination of, the property or recommended further assessment of the property? | | | | | |
| Record Search and/or Interview: | | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ■ No | | |
| (25)  Is there any knowledge of any past, threatened, or pending lawsuits or administrative proceedings concerning a release or threatened release of any hazardous substances or petroleum products involving the property by any owner or occupant of the property? | | | | | |
| Record Search and/or Interview: | | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ■ No | | |
| (26)  Is there any prior knowledge that any hazardous substances or petroleum products, unidentified waste materials, tires, automotive or industrial batteries, or any other waste materials have been dumped above grade, buried and or burned on the property? | | | | | |
| Record Search and/or Interview: | | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ■ No | | |

### 3.1  TOXIC SUBSTANCES CONTROL ACT (TSCA):

| | | | | | |
|---|---|---|---|---|---|
| a.  Is there a transformer, capacitor, or any hydraulic equipment known to contain or likely to contain polychlorinated biphenyls (PCBs) or any records indicating the presence of such? | | | | | |
| Record Search and/or Interview: | | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ■ No | | |

### 3.2  ASBESTOS ABATEMENT AND INSPECTION:

| | | | | | |
|---|---|---|---|---|---|
| | | | If no facilities then | ■ N/A | |
| a.  Were any of the facilities located on the property constructed prior to 1980? | | | | | |
| Record Search and/or Interview: | | ☐ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ☐ No | | |
| b.  Have all facilities on the property been inspected by a certified asbestos abatement team? | | | | | |
| Record Search and/or Interview: | | ☐ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: | | ☐ Yes | ☐ No | | |

ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| | | | | |
|---|---|---|---|---|
| c. Is there any documented evidence of asbestos (e.g., tests, surveys, management plan) in any of the facilities on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☐ No | | |
| d. Has all friable asbestos on the property or within facilities on the property been removed or become subject to an Operation and Maintenance (O&M) program so that it does not create the potential for human exposure? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☐ No | | |
| e. Does the site survey of pre-1980 construction identify potential asbestos containing materials (e.g., boiler insulation, floor tiles, building siding, shingles, roofing felt, wall and ceiling insulation, acoustical ceiling tiles, window putty, fuse boxes, heat reflectors, air duct lining)? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☐ No | | |

| | | | | |
|---|---|---|---|---|
| **3.3 LEAD-BASED PAINT ABATEMENT AND INSPECTION:** | | | | |
| | | If there were never structures then ■ N/A | | |
| a. Were any structures or facilities on the property constructed prior to 1979? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☐ No | | |
| b. Has a screening test been conducted on the property for lead-based paint? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☐ No | | |
| c. Did the results of the screening tests identify lead-based paint? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☐ No | | |
| d. Is any of the on-site paint peeling or chipped? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ☐ No | | |

| | | | | |
|---|---|---|---|---|
| **3.4 FEDERAL INSECTICIDE, FUNGICIDE, AND RODENTICIDE ACT (FIFRA):** | | | | |
| a. Are there or has there been any pesticides, fungicides, or herbicides used on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| b. In greater than household quantities? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| c. Applied not in accordance with the manufacturers recommendations? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| d. Are there or has there been any pesticides, fungicides, or herbicides stored onsite? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |

**ENVIRONMENTAL CONDITION OF PROPERTY, CON'T**

| e. In greater than house-hold quantities? | | | | |
|---|---|---|---|---|
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| f. Have there been reports or evidence of a spill of any pesticides, fungicides, or herbicides on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |

**3.5 MEDICAL/BIOHAZARDOUS WASTE:**

| a. Has the property been used for chemical or biological testing? | | | | |
|---|---|---|---|---|
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| b. Has the property been used for burying medical or biohazardous waste? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |

**3.6 MUNITIONS AND EXPLOSIVES OF CONCERN** (MEC - i.e., military munitions that may pose unique explosives safety risks, including: (A) unexploded ordnance (UXO), as defined in 10 U.S.C. 2710(e)(9); (B) discarded military munitions (DMM), as defined in 10 U.S.C. 2710(e)(2); or (C) munitions constituents (e.g., TNT, RDX), as defined in 10 U.S.C. 2710(e)(3), present in high enough concentrations to pose an explosive hazard.)

| a. Have any citizen complaints or local law enforcement actions occurred regarding MEC on the property? | | | | |
|---|---|---|---|---|
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| b. Has the site served as a small arms test range or otherwise to service weapons? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| c. Are any ranges, berms, open burning/open detonation (OB/OD), training, or impact areas onsite? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |

**3.7 RADIOLOGICAL SUBSTANCES:**

| a. Has the property ever been suspected to contain radioactive waste, including mixed waste? | | | | |
|---|---|---|---|---|
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| b. Have radiological substances ever been used or services provided on the property? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| c. Has the property been surveyed for radon? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| d. Did the radon survey indicate test results above 4 pCi/l (pico curies/liter)? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |

## ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| | | | | |
|---|---|---|---|---|
| Observed during site visit: | ☐ Yes | ■ No | | |
| e.  If a radon survey has not been conducted does the vicinity exhibit radon above 4 pCi/l (pico curies/liter)? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| f.  Do records indicate that nearby structures have elevated indoor levels of radon? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |

| 3.8 Clean Air Act | | | | |
|---|---|---|---|---|
| a. Does the facility emit air pollutants into the environment? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| b. Is the facility a type for which new standards of performance (NSPS) have been promulgated? See 40 C.F.R. Part 60 for a list of new source categories and applicable standards. | | | | |
| Record Search and/or Interview: Draft Env. Assess., EPA, SD Dept. Health | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| c. Is the facility in violation or has the facility been in violation of the NSPS or the permit? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| d. Is the facility located in a nonattainment area? | | | | |
| Record Search and/or Interview: Draft Env. Assess., EPA. | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| e. Will the facility be subject to maximum attainable control technology (MACT)? | | | | |
| Record Search and/or Interview: | ☐ Yes | ☐ No | ■ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| f. Is the capital expenditure required to meet the requirements of emissions reductions in the new Clean Air Act, i.e., is the facility required to reduce emissions because it is a non-attainment area? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| g. Does the facility incinerate any wastes of any kind? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |

| 3.9 ADDITIONAL ISSUES: | | | | |
|---|---|---|---|---|
| a.  Does the property exhibit any stressed vegetation or diseased wildlife? | | | | |
| Record Search and/or Interview: | ☐ Yes | ■ No | ☐ Unk | |
| Observed during site visit: | ☐ Yes | ■ No | | |
| b.  Does the property have erosion problems (i.e., gullies, arroyos, sediment loading during storms)? | | | | |
| Record Search and/or Interview: Erosion along shoreline | ■ Yes | ☐ No | ☐ Unk | |
| Observed during site visit: of the Oahe Reservoir. | ■ Yes | ☐ No | | |
| c.  Are there any floodplains or wetlands? | | | | |

### ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Record Search and/or Interview: Draft Env. Assess., not impacted. | ■ Yes | | ☐ No | | ☐ Unk | |
| Observed during site visit: Wetland Map Attached. No impact. | ■ Yes | | ☐ No | | | |
| d.  Are there any sinkholes? | | | | | | |
| Record Search and/or Interview: | ☐ Yes | | ■ No | | ☐ Unk | |
| Observed during site visit: | ☐ Yes | | ■ No | | | |
| e.  Are there any valuable mineral resources? | | | | | | |
| Record Search and/or Interview: | ☐ Yes | | ■ No | | ☐ Unk | |
| Observed during site visit: | ☐ Yes | | ■ No | | | |
| f.  Is mold present in facilities on the property? | | | | | | |
| Record Search and/or Interview: | ☐ Yes | | ■ No | | ☐ Unk | |
| Observed during site visit: | ☐ Yes | | ■ No | | | |

### 3.10  OTHER CONDITIONS:

Are there any other conditions that exist on the property that should be considered in the decision to outgrant?  Describe.

No other conditions on the property of the proposed installation-DAPL Pipeline.   However, the proposed project is in close proximity of two other approver crossings-1. Overhead Power Line, 2. Underground Gas Line.

### 3.11  ADDITIONAL COMMENTS:

The two existing utility lines have existing authorization and are regulated for installation, maintenance and operation.   Several of the answers in Section 3 and 4  were obtained from a record search of the DRAFT ENVIRONMENTAL ASSESSMENT and PROPOSED PLANS AND SPECIFICATIONS.  FINAL ANSWERS MAY BE CHANGED OR CONFIRMED UPON THE FINALIZATION OF THE DRAFT ENVIRONMENTAL ASSESSMENT, PLANS AND SPECIFICATIONS.

### 4.0  GOVERNMENT RECORDS/HISTORICAL RESOURCES INQUIRY

a. Do any of the following Federal Government record systems list the property or any property within the search distance noted below:

| Federal Government Source | Approximate Minimum Search Distance, miles (kilometers) | Response | |
|---|---|---|---|
| Federal NPL site list | 1.0 (1.6) | ☐ Yes | ■ No |
| Federal CERCLIS list | 0.5 (0.8) | ☐ Yes | ■ No |
| Federal CERCLIS NFRAP site list | property and adjoining properties | ☐ Yes | ■ No |
| Federal RCRA CORRACTS TSD facilities list | 1.0 (1.6) | ☐ Yes | ■ No |
| Federal RCRA non-CORRACTS TSD facilities list | 0.5 (0.8) | ☐ Yes | ■ No |
| Federal RCRA generators list | property and adjoining properties | ☐ Yes | ■ No |
| Federal ERNS list | property only | ☐ Yes | ■ No |

b. Do any of the following state record systems list the property or any property within the search distance noted below:

| State lists of hazardous waste sites identified for investigation or remediation | Approximate Minimum Search Distance, miles (kilometers) | Response | |
|---|---|---|---|
| State – Equivalent NPL | 1.0 (1.6) | ☐ Yes | ■ No |

## ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| | | | |
|---|---|---|---|
| State – Equivalent CERCLIS | 0.5 (0.8) | ☐ Yes | ☒ No |
| State landfill and/or solid waste disposal lists | 0.5 (0.8) | ☐ Yes | ☒ No |
| State leaking UST lists | 0.5 (0.8) | ☐ Yes | ☒ No |
| State registered UST lists | property and adjoining properties | ☐ Yes | ☒ No |
| c. Based upon a review of fire insurance maps or consultation with the local fire department serving the property, are any buildings or other improvements on the property or on any adjoining property identified as having been used for industrial use or uses likely to lead to contamination of the property? Please state remarks below. | | ☐ Yes | ☒ No |

Remarks: The two adjoining utilities, overhead power line and underground gas pipeline, are improvements that are associated with industrial use. These may have uses and operational equipment that could lead to contamination of the adjoining property. The respective utility companies would be responsible for any contamination of their leased property and for compliance with applicable environmental regulations..

### 5.0 Interviews

| | Name | Position |
|---|---|---|
| 1 | Phil Sheffield | Oahe Lake Manager, Operations Div., CENWO-OD-OA |
| 2 | Francis Kuhn | Riverdale Realty Specialist, Real Estate Div., CECO-C-RAQ |
| 3 | Brent Cossette | Natural Resources Specialist, Omaha District, CENWO-OD-TN |
| 4 | Richard Harnois | Archeologist, Operations Div., CENWO-OD-OA |
| 5 | | |
| 6 | | |

### 6.0 Records

| | |
|---|---|
| 1 | COE Oahe Project Real Estate Files and Records. |
| 2 | COE Omaha Distric Real Estate Files |
| 3 | DAPL Final Draft Environmental Assessment, 2016.05.10, with Appendices. |
| 4 | US Environmental Protection Agency Database |
| 5 | North Dakota Dept. of Health Database |
| 6 | |

**7.0** We have performed a Phase I Environmental Site Assessment in conformance with the scope and limitations of ASTM Practice E 1527 of Sections 10 & 11, T134 N, R79 W _____ the property. Any exceptions to, or deletions from this practice are described in Section N/A _____ of this report. This assessment has revealed no evidence of recognized environmental conditions in connection with the property.

Environmental Professional (Print) **William Harlon, RF**

Environmental Professional's Signature HARLON.WILLIAM.D.III.12 58312887 Digitally signed by HARLON.WILLIAM.D.III 1258312887 DN: c=US, o=U.S. Government, ou=DoD, ou=PKI, ou=USA, cn=HARLON.WILLIAM.D.III.1258312657 Date: 2016.05.20 08:58:01 -05'00' | Date **5/20/16**

### 8.0 CERTIFICATIONS:

| | |
|---|---|
| 15.a. The Environmental Professional Completing this report: | |
| Name: | William D. Harlon III |
| Title: | Environmental Compliance Coordinator |
| Organization: | US Army Corps of Engineers, Omaha District |
| Address: | 1616 Capitol Avenue, Omaha Nebraska 68102 |
| Phone number: | (402) 995-2500 |
| Date: | 5/20/16 |
| Qualifications: | B.S. Forest Science with 13+ years of environmental compliance experience |

## ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

| |
|---|
| "[I, We] declare that, to the best of [my our] professional knowledge and belief, [I, we] meet the definition of Environmental professional as defined in 312.10 of 40 CFR 312 and [I, We] have the specific qualifications based on education, training, and experience to assess a property of the nature, history and setting of the subject property.  [I, We] have developed and performed the all appropriate inquiries in conformance with the standards and practices set forth in 40 CFR Part 312." |

**9.0  RECOMMENDATION:**

| | |
|---|---|
| ☒ | I recommend that the proposed real estate outgrant be approved and that the action proceed. |
| ☐ | I do not recommend that the proposed real estate outgrant be approved and recommend that no further review and processing be done. |

| OPM/ECC Signature | STASCH.ERIC.D.1231345589 | Digitally signed by STASCH.ERIC.D.1231345589<br>DN: c=US, o=U.S. Government, ou=DoD, ou=PKI, ou=USA,<br>cn=STASCH.ERIC.D.1231345589<br>Date: 2016.05.13 14:01:06 -05'00' | Date | **13 May 2016** |
|---|---|---|---|---|

ENVIRONMENTAL CONDITION OF PROPERTY, CON'T

## Appendix A
## Aerial Photographs

| Aerial Photo Date | Flight Date | Source | Item or Feature Observed |
|---|---|---|---|
| Aug., 2015 | Unknown | Google Earth | Project Location, south central North Dakota |
| Unknown | | Map-Draft Env. Assess. | Detailed L. Oahe pipeline crossing map. |
| 09/28/2015 | #1 | On Site | Existing Condtions, West Side of Lake |
| 09/28/2015 | #2 | On Site | Existing Condtions, West Side of Lake |
| 09/28/2015 | #3 | On Site | Existing Conditions, East Side of Lake |
| 09/28/2015 | #4 | On Site | Existing Conditions, East Side of Lake |
| 09/28/2015 | #5 | On Site | Existing Conditions, East Side of Lake |
| Aug., 2014 | Unknown | Google Earth | Nat. Wetland Inventory Map |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |



## DAPL Pipe Line Crossing

Morton and Emmons County, North Dakota
Sec 10, R134N, R79W / Sec. 11, T134N, R79W





P.14



OAHE PROJECT AREA
DAPL Pipeline Crossing Map

DAPL LAKE OAHE CROSSING



Pipeline HDD Crossing, West side of Lake Oahe, Photo-West to East.    # 1



Pipeline HDD Approximate Entrance Point, West side of Lake Oahe, Photo-West to East    # 2

DAPL LAKE OAHE CROSSING



Pipeline HDD Crossing, East Side of Lake Oahe, Photo East to West.     # 3



Pipeline HDD Crossing, Approximate Exit Point, East Side of Lake Oahe, Photo East to West.   # 4

DAPL LAKE OAHE CROSSING



DAPL Pipeline Alignment to East, East Side of Lake Oahe, Photo West to East.   # 5



**OAHE PROJECT, DAPL PIPELINE CROSSING**
**National Wetlands Inventory Map**

OAHE DAPL ECP

RE-CERTIFICATION

This addendum to the Draft DAPL ECP of May, 2016 is to certify that the Environmental Conditions of the Property has been reviewed and updated within 180 days of the certification date of May 13, 2016.  Based upon recent visual assessments and review of the site, I certify that all conditions are unchanged from the date of the documentation.


Eric D. Stasch

Operations Project Manager


20 May 2016

Date

**SPECIAL CONDITIONS**
**LAKE OAHE, EASEMENT NO DACW45-2-16-8059**

| Condition | |
|---|---|
| **1.** | **Procedures and Specifications:** For the pipeline segments crossing Lake Oahe and its "could affect" High Consequence Areas ("could affect" HCAs) (as defined in 49 CFR § 195.450), Grantee must meet the U.S. Army Corp of Engineers easement special conditions by developing, implementing, and maintaining for the duration of the easement all easement special conditions in specifications and procedures for the design, construction, testing, operation and maintenance specifications and procedures as required in 49 CFR §§ 195.100, 195.202, 195.302, and 195.402 and this easement.<br><br>For the purposes of these special conditions, "pipeline segment" is defined as Lake Oahe and the "could affect" HCAs noted in EA for the vicinity of Lake Oahe.. |
| **2.** | Grantee will conduct all HDD work according to the HDD Construction Plan [August 18, 2015] (Final EA, Appendix B) that it has prepared, and implement the HDD Contingency Plan [March 11, 2011] (Appendix B) in the event of an inadvertent release. |
| **3.** | Grantee is not authorized to discharge hydrostatic test water under this easement. |
| **4.** | Grantee will follow response, containment, mitigation measures, and cleanup measures described in SPCC, SWPPP, and ECP. |
| **5.** | Grantee will use temporary sediment control measures, such as silt fence, to minimize the introduction of sediment into waterbodies during construction and minimize the movement of spoil and sediment from surface runoff during and after construction. |
| **6.** | Grantee will return all surface drainage contours and vegetation to preconstruction conditions as much as practical. |
| **7.** | Grantee will avoid groundwater contamination by implementing the protective measures set forth in the Project specific spill prevention, control and Countermeasures prepared by the contractor and in the Spill Prevention, Control and Countermeasure Plan [December 2014] (Final EA, Appendix A). |
| | |
| | **Documentation Conditions** |
| **8.** | The Grantee will submit the Facility Response Plan to the Oahe OPM for review prior to the operation of the pipeline. |
| **9.** | The Grantee will submit all plans not final at the time this easement is granted to the Oahe OPM for review and the incorporation of U.S. Army Corps of Engineers comments prior to the Grantee's submittal to the Pipeline and Hazardous Management Safety Administration. These plans include, but are not limited to the following:<br>    a.  Geographical Response Plan,<br>    b.  Operations and Maintenance Manual,<br>    c.  Risk Assessment (Integrity Management Plan), and<br>    d.  Spill Models (Using the National Hydrography Dataset by the U.S. Geological Survey) |
| **10.** | The Grantee must send any updated plans in the Facility Response Plan to the Oahe OPM for review by the U.S. Army Corps of Engineers Environmental Compliance Coordinators at the Omaha District Office and the Oahe Project Office within one year of the update. |

**EXHIBIT "D"**
**DACW45-2-16-8059**

| 11. | The Grantee shall provide as-built drawings for the crossing at Lake Oahe to the Oahe OPM within 6 months of the completion of pipeline construction. |
|---|---|
| 12. | All records demonstrating compliance with these easement conditions herein must be maintained for the duration of the easement. |
| | **Pipeline Safety Conditions (Construction)** |
| 13. | **Pipeline Design Factor - Pipelines:**  Pipe installed must comply with a design factor of 0.50 or lower in the Lake Oahe crossing and "could affect" HCAs. |
| 14. | **Pipe Girth Weld – Nondestructive Tests:**  Grantee must nondestructively test <u>all girth welds</u> in accordance with 49 CFR §§ 195.218, 195.230 and 195.234. |
| 15. | **Pressure Test Level:**  The pre-in-service hydrostatic test for mainline pipe must be to a pressure producing a hoop stress of either: a minimum 100% specified minimum yield strength (SMYS) or a minimum of 1.25 times maximum operating pressure (MOP) for eight (8) continuous hours for pipeline segments using a design factor of 0.50 or less. |
| 16. | **Assessment of Test Failures:**  Any pipe failure occurring during the pre-in service hydrostatic test must undergo a root cause failure analysis to include a metallurgical examination of the failed pipe. The results of this examination must preclude a systemic pipeline material issue and the results must be reported to the Operations Project Manager at the Oahe Project Office (Oahe OPM) within 60 days of the failure. |
| 17. | **Coatings for Trenchless Installation:**  Coatings used for directional bore, slick bore and other trenchless installation methods must be capable of resisting abrasion and other damage that may occur due to rocks and other obstructions encountered in this installation technique. |
| 18. | **Pipe Coating:** Pipe coatings must be non-shielding to cathodic protection (CP).  Coatings such as tape and shrink sleeves would be shielding coatings to CP that protects the pipe from external corrosion.  The application of a corrosion resistant coating to the steel pipe must be performed according to a coating application quality control program.   The program must address pipe surface cleanliness standards, blast cleaning, application temperature control, adhesion, cathodic disbondment, moisture permeation, bending, minimum coating thickness, coating imperfections and coating repair. |
| 19. | **Field Coating:**  Field joint coatings must be non-shielding to CP.  Grantee must implement field girth weld joint coating application specification and quality standards to ensure pipe surface cleanliness, application temperature control, adhesion quality, cathodic disbondment, moisture permeation, bending, minimum coating thickness, holiday detection and repair quality.  Field coating applicators must use valid qualified coating procedures and be trained to use these procedures. |
| 20. | **Construction Coating Survey after Installation:** Promptly after a ditch for the pipeline is backfilled, but not later than  three months after placing the pipeline in service, the operator must perform an assessment to ensure integrity of the coating using direct current voltage gradient (DCVG) or alternating current voltage gradient (ACVG).  The operator must repair any coating damage classified as moderate or severe (voltage drop greater than 35% for DCVG or 50 dBµV for ACVG) in accordance with section 4 and Appendix A of NACE SP0502-2008 (or latest edition referenced in 49 CFR § 195.3) within six months of the assessment. |
| 21. | **Mainline Valve(s) with Remote Control or Automatic Shutdown:** |

|  | |
|---|---|
|  | a.  Mainline valves with remote control or automatic shutdown for water crossings and reservoirs must be installed on either side of the crossing and additional mainline valves(s) installed either upstream, downstream, or both to protect the water body from the "could affect" HCA on either side of the water crossing. Mainline valves must either be located outside of the flood plain or have valve actuators and other control equipment installed so as to not be impacted by flood conditions.<br><br>b.  Mainline valves with remote control or automatic shutdown must contain transit inhibit switches that prevent the valves from shutting at a rate (and in conjunction with pumps being shutdown) so that no pressure surges can occur, or other damage caused by unintended valve closures or too fast of a closure.<br><br>c.  Mainline valves must be remotely controlled and actuated or automatic shutdown, and the Supervisory Control and Data Acquisition (SCADA) system must be capable of closing the valve and monitoring the valve position, upstream pressure and downstream pressure so as to minimize the response time in the case of a failure.  Remote power backup is required to ensure communications are maintained during inclement weather.  Mainline valves must be capable of closure at all times.  If it is impracticable to install a remote controlled valve, Grantee must submit a valve design and installation plan to the appropriate Oahe OPM to confirm the alternative approach provides an equivalent level of safety.<br><br>d.  Mainline valves in the pipeline segment must have actuation capability (i.e., remote control shut-off, automatic shut-off, manual shut-off where personnel are in proximity, or alternative equivalent technology) to ensure pipeline ruptures are promptly mitigated based upon maximum valve shut-off times, location, and spacing specified.<br><br>e.  For each mainline valve that is a remote-control shut-off or automatic shut-off valve, the operator must conduct a point-to-point verification between SCADA displays and the mainline valve, sensors, and communications equipment in accordance with 49 CFR § 195.446(c) and (e), or an equivalent verification. |
| 22. | **Supervisory Control and Data Acquisition (SCADA) System:**  Grantee must develop, install, operate, and maintain a SCADA system to provide remote monitoring and control of the entire pipeline segment in accordance with 49 CFR Part 195 requirements. |
| 23. | **Computational Pipeline Monitoring (CPM) Leak Detection:** The pipeline segment must have a computational pipeline monitoring (CPM) leak detection system in accordance with 49 CFR § 195.134 and must have adequate pressure sensors at pump stations, laterals, mainline valves and liquid flow volume measurement along the pipeline at inflows, outflows and spaced along the pipeline to perform accurate leak detection.  The pipeline segment must be operated as a continuously pressurized pipeline (with no pressure, slack line pipeline segments).  If the pipeline segment is operated as a slack line pipeline segment, an operating plan must be developed, reviewed by a responsible third party independent expert engineering company and submitted to the Oahe OPM for "no objection" prior to being implemented by Grantee. |
| 24. | Grantee will minimize or avoid impacts on soils by implementing the mitigation measures described in the DAPL Project's Spill Prevention Control and Countermeasure Plan [December 2014] (SPCC), Storm water Pollution Prevention Plan[July 2015] (SWPPP), and Environmental Construction Plan [April 2015 (ECP) as well as requirements of applicable state and federal permits. |

|  | **Pipeline Safety Conditions (Operation)** |
|---|---|
| **25.** | **Overpressure Protection Control:** Grantee must limit mainline pipeline segment overpressure protection to a maximum of 110% maximum operating pressure (MOP) during surge events consistent with 49 CFR § 195.406(b). Before commencing operation, Grantee must perform a surge analysis showing how the pipeline segment will be operated to be consistent with these overpressure protection conditions. Grantee shall equip the pipeline with field devices to prevent overpressure conditions. Remotely actuated valves or automatic shutoff valves should be fitted with devices that will stop the transit (intentional or uncommanded) of the mainline valve should an overpressure condition occur or an impending overpressure condition is expected. Sufficient pressure sensors, on both the upstream and downside side of valves, must be installed to ensure that an overpressure situation does not occur. Sufficient pressure sensors must be installed along the pipeline to conduct real time hydraulic modeling, and which can be used to conduct a surge analysis to determine whether pipeline segments have experienced an overpressure condition. |
| **26.** | **Cathodic Protection:** The initial Cathodic Protection system must be operational within six (6) months of placing a pipeline segment in service. Cathodic Protection will be operated and maintained per applicable codes and the Grantee's 'Operations and Maintenance Manual'. Wall thickness testing will be performed in-lieu of periodic hydro tests. The Grantee shall send the inspection reports to the Operations Project Manager at the Oahe Project Office (hereinafter the Oahe OPM)." |
| **27.** | **Interference Current Surveys:** Interference surveys must be performed over the entire pipeline segment within six months of placing the pipeline in service to ensure compliance with applicable NACE International Standard Practice 0169-2007 (2007 or the latest version incorporated by reference in § 195.3) and 0177 (2007 or the latest NACE standard version, since NACE SP 0177 is not incorporated by reference in 49 CFR § 195.3) (NACE SP 0169-2007 and NACE SP 0177) for interference current levels. If interference currents are found, Grantee must determine if there have been any adverse effects on the pipeline and mitigate such effects as necessary as required below.<br><br>The interference current mitigation program for the pipeline segment must include:<br>   1) As frequently as needed, including when new or uprated high voltage alternating current power lines greater than or equal to 69 kVA or electrical substations are co-located near the pipeline, but not to exceed every seven years conduct an interference survey (at times when static or dynamic voltages are at the highest values for a time period of at least 24-hours) to detect the presence and level of any electrical current that could impact external corrosion where interference is suspected;<br>   2) Analyze the results of the survey to identify locations where interference currents are greater than or equal to 20 Amps per meter squared; and<br>   3) a remedial action plan and apply for any necessary permits within four months of completion of the inspection or testing that identified the presence of deleterious electrical stray current.<br>   4) Implement remedial actions to protect the pipeline segment from detrimental interference currents. Remedial actions must be completed promptly, but no later than one year after completion of the survey, or as soon as practicable after obtaining necessary permits. Remedial action means the implementation of measures including, but not limited to, |

| | |
|---|---|
| | additional grounding along the pipeline to reduce interference currents below 20 Amps per meter squared. The following criteria shall be used to determine when remedial actions are required.<br>   a)  AC-induced corrosion does not occur at AC densities less than 20 A/m2 (1.9 A/ft2). The operator shall monitor these locations per (a) above.<br>   b)  AC corrosion is unpredictable for AC densities between 20 to 100 A/m2 (1.9 to 9.3 A/ft2). These locations require an engineering assessment to determine if remediation is required.<br>   c)  AC corrosion occurs at current densities greater than 100 A/m2 (9.3 A/ft2). These areas require mitigation. Any location that is determined to require mitigation must be mitigated to reduce the AC current density to less than 20 A/m2. |
| 28. | **Corrosion Surveys:**  Grantee must complete corrosion surveys for the pipeline segment within six (6) months of placing the respective CP system(s) in operation to ensure adequate external corrosion protection per NACE RP 0169-2007.  The survey shall also address the proper number and location of CP test stations as well as alternating current (AC) interference mitigation and AC grounding programs per NACE RP 0177.  At least one (1) CP test station must be located within each "could affect" HCA with a maximum spacing between test stations of one-half mile. |
| 29. | **Initial Inline Inspection (ILI):**  Within three (3) years of placing a pipeline segment in service, Grantee must perform a baseline ILI using a high-resolution Magnetic Flux Leakage (HR-MFL) tool, high resolution (HR) deformation tool, and an ultrasonic crack detection tool or equivalent of each. |
| 30. | **ILI Deformation Tool:**  Grantee must perform a high resolution deformation tool run after completion of the hydrostatic strength test and backfill of the pipeline segment and prior to placing the pipeline segment in service.  Grantee must remediate pipe in accordance with 49 CFR Part 195 and Subpart O.  All expanded pipe must be remediated in accordance with PHMSA's "Interim Guidelines for Confirming Pipe Strength in Pipe Susceptible to Low Yield Strength for Liquid Pipeline" dated October 6, 2009 or any subsequent PHMSA update to this provision. |
| 31. | **Future ILI:**  Future ILI inspections must be based upon pipeline segment integrity threats and must include as a minimum of a high-resolution Magnetic Flux Leakage (MFL) tool, high resolution deformation tool, and an ultrasonic crack detection tool or equivalent of each.  ILI inspections must be performed on the entire pipeline segment on a frequency consistent with 49 CFR § 195.452(j)(3) assessment intervals or on a frequency determined by fatigue studies or anomalies found that are indicative of actual operating conditions.<br>   1)  Conduct periodic close interval surveys (CIS) along the entire pipeline segment with current interrupted to confirm voltage drops in association with periodic ILI assessments under § 195.452(j)(3).  Pipeline segments under Lake Oahe would not be able to CIS due to water segment and depth of directional drill across Lake Oahe.<br>   2)  CIS must be conducted within three (3) months of running ILI surveys when using a five (5) year ILI frequency, not to exceed sixty-eight (68) months, in accordance with 49 CFR § 195.452 (j) (3) assessment intervals.<br>CIS findings must be integrated into ILI Tool findings. |
| 32. | **Internal Corrosion:** Grantee must limit basic sediment and water (BS&W) to 0.5% by volume and report BS&W testing results to Ain the annual report.  Grantee must report upset conditions causing BS&W level excursions above the limit on the annual report. |

| | |
|---|---|
| | 1) Grantee must run cleaning pigs twice in the first year and as necessary in succeeding years based on the analysis of oil constituents, liquid test results, weight loss coupons located in areas with the greatest internal corrosion threat and other internal corrosion threats.  At a minimum in the succeeding years following the first year Grantee must run cleaning pigs every five years unless analysis necessitates earlier action.<br>2) Liquids collected during cleaning pig runs, such as BS&W, must be sampled, analyzed and internal corrosion mitigation plans developed based upon lab test results.<br>3) Grantee shall review the program at least quarterly based upon the crude oil quality and implement adjustments to monitor for, and mitigate the presence of, deleterious crude oil stream constituents. |
| **33.** | **Pipeline Patrolling:** Grantee must patrol the pipeline segment right-of-way on a two (2) week interval but not exceeding three (3) weeks, for at least twenty-six (26) times each calendar year, to inspect for excavation activities, ground movement, unstable soil, wash outs, leakage, or other activities or conditions affecting the safe operation of the pipeline segment. |
| **34.** | The Grantee shall conduct the following training exercises:<br><br>1) A full scale open water and a full scale winter/ice exercises at Lake Sakakawea and Lake Oahe.  A full scale exercise will occur once every 3 years (triennial cycle) with the location and type of exercise occurring on alternating schedules (e.g. open water exercise at Lake Oahe the first triennial cycle, followed by winter exercise at Lake Sakakawea the following triennial cycle, followed by a winter exercise at Lake Oahe the following triennial cycle, etc.). The first exercise will occur within the first 3 years after the pipeline becomes operational.<br><br>2) To facilitate USACE staff involvement, the Grantee shall notify the USACE Environmental Compliance Coordinators at the Omaha District Office and the Oahe Project Office at least ninety (90) days prior to initiation of the training exercises.  The Grantee shall also solicit the participation of key stakeholders (federal, state, local, and Tribal) in these exercises. |
| **35.** | Within 1 month following the pipeline becoming operational, the Grantee shall provide for an all-weather access and collection point downstream of the HDD crossing at Lake Oahe.  The Grantee shall provide an equipment storage facility on non-federal lands that includes a fenced permanent storage area for winter and open water spill response equipment.  The storage facility should be placed in a strategic location and near existing facilities that would support access to the water.  The Grantee will coordinate with the USACE and any other applicable stakeholders to obtain all necessary permits and approvals prior to construction for any ground disturbing activities associated with these facilities. The storage facility should contain sufficient response equipment at a minimum to mitigate an unintended worst case release for this Lake crossing. |
| | |
| | **Overall Condition from EA** |
| **36.** | Grantee is generally responsible for commitments made and mitigation measures in the Final Environmental Assessment, Grantee Pipeline Project Crossing of Flowage Easements and Federal Lands (July 2016), including all Plans includes within Appendices thereof, even if they are not specifically made as a condition to this easement. |

## CERTIFICATE OF AUTHORITY

I hereby certify that I am the _____Secretary_____ of
(Secretary or Attesting Officer)

the organization named in the foregoing agreement with the United States of America; that said organization is organized under the laws of the State of _____Delaware_____; that the seal, if applicable, affixed to said instrument
(State)

is the seal of said organization; that _____Robert Rose_____
(Name of Officer)

who signed said agreement was then _Vice President - Land and Right of Way_ of said
(Title of Officer)

organization and has been duly authorized to sign the foregoing agreement on behalf of said organization, binding said organization to the terms therein.

I, as the Secretary/Attesting Officer, hereby attest to the validity of the Signature of said Officer; and that said signature affixed to such agreement is genuine.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal, if applicable, of said organization, this _8th_ day of _February_, ~~2013~~ 2017.

X _____

Secretary or Attesting Officer

_Dakota Access, LLC_

Corporation or Organization

_This form certifies that the person signing the attached instrument has the authority to do so. The signature of the Secretary/Attesting Officer and the individual signing the attached instrument cannot be the same._

**MRO Form 851** (21 Aug 02) (Edition dated 1 Oct 91 is obsolete)