UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

----------------------------X

STANDING ROCK SIOUX TRIBE,

              Plaintiff

        v.             Civil Action 16-1534.

U.S. ARMY CORPS OF ENGINEERS,

              Defendant

----------------------------X

                Washington, D.C
           Friday, December 9, 2016
               10:30 a.m.

TRANSCRIPT OF STATUS CONFERENCE/MOTION
BEFORE THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:  Jan Hasselman, Esq.
                  Stephanie Tsosie, Esq. (telephonically)
                  EARTHJUSTICE LEGAL DEFENSE FUND
                  705 Second Avenue, Suite 203
                  Seattle, WA 98104-1711
                  (206) 343-7340

Intervenor Cheyenne Nicole E. Ducheneaux, Esq.
River Sioux Tribe:  Conly Schulte, Esq.
                  FREDERICKS PEEBLES & MORGAN LLP
                  3610 North 163rd Plaza
                  Omaha, NE 68116
                  (402) 333-4053

Court Reporter:     Lisa Walker Griffith, RPR
                  U.S. District Courthouse
                  Room 6507
                  Washington, D.C.  20001
                  (202) 354-3247

```
APPEARANCES:  (Cont'd.)



For the Defendant:   Matthew M. Marinelli, Esq.
                     Erica M. Zilioli, Esq.
                     U.S. DEPARTMENT OF JUSTICE
                     Environment & Natural Resources Division
                     P.O. Box 663, Ben Franklin Station
                     Washington, DC 20044-0663
                     (202) 305-0293



For Cross Claimant   David Debold, Esq.
Dakota Access:       William S. Scherman, Esq.
                     GIBSON, DUNN & CRUTCHER, LLP
                     1050 Connecticut Avenue, NW
                     Washington, DC 20036
                     (202) 955-8551

                     William Leone, Esq.
                     Robert D. Comer, Esq. (telephonically)
                     Norton Rose Fulbright US LLP
                     799 9th Street NW, Suite 1000
                     Washington, DC 20001-4501
                     (202) 662-0200
```

<u>**P R O C E E D I N G S**</u>

THE COURTROOM DEPUTY:  This is Civil Action 16-1534.  Standing Rock Sioux Tribe versus United States Army Corps of Engineers.

Counsel appearing telephonically, could you identify yourselves for the record please.

MS. TSOSIE:  Stephanie Tsosie for Standing Rock Sioux Tribe.

MR. COMER:  Bob Comer from Norton Rose Fulbright for Dakota Access.

THE COURTROOM DEPUTY:  Counsel at the tables, if you would please identify yourselves individually at the lectern.

MR. HASSELMAN:  Good morning, Your Honor.  Jan Hasselman for plaintiff Standing Rock Sioux Tribe.

THE COURT:  Good morning.

MS. DUCHENEAUX:  Nicole Ducheneaux and Conly Schulte for the Cheyenne River Sioux Tribe.

THE COURT:  Good morning to you both.

MR. MARINELLI:  Good morning, Your Honor.  Matt Marinelli for defendant United States Army Corps of Engineers.  With me at counsel table is Erica Zilioli of the Department of Justice and Melanie Casner of the Corps of Engineers.

THE COURT:  Good morning to all of you.

1          MR. DEBOLD:  Good morning, Your Honor.  David

2     Debold of Gibson Dunn on behalf of Dakota Access.  With me

3     at counsel table is William Leone, William Scherman, and

4     from Dakota Access, Joey Mahmoud.

5          THE COURT:  Good morning to all of you.

6          Let me go over first what has happened since we

7     were here last.  Then if there are any other updates

8     anybody wants to provide, I'll let them do it.  Then we can

9     talk about the schedule going forward.

10          So, we were last here November 10.  And since

11     that time, Dakota Access has filed an answer as well as a

12     cross claim against the Army Corps of Engineers.  The cross

13     claim asserts that the Corps' July 25, 2016 decision to

14     permit the pipeline also in actuality granted the Dakota

15     Access the right of way or easement under the Mineral

16     Leasing Act which is necessary to cross Corps land and thus

17     build under Lake Oahe at the present proposed site.

18          Dakota Access has filed a motion to supplement

19     the administrative record, and also wants to expedite the

20     consideration of its cross claim.  And then this week,

21     Dakota Access filed a Motion for Summary Judgment on this

22     cross claim.

23          On December 4th, the Corps announced that it will

24     not, at this time anyway, grant a right of way or easement

25     required under the Mineral Leasing Act to cross Corps land

1    at Lake Oahe.  It has determined to engage in additional

2    analysis, including an environmental impact statement or

3    EIS, before determining to ultimately issue the easement.

4           Also a couple of days ago, the Standing Rock

5    Sioux Tribe and the Cheyenne River Sioux Tribe have

6    responded by filing a status report indicating that, given

7    the Corps' decision, they are happy to stay this litigation

8    during the pendency of the EIS process.  So that is what

9    has happened over the last few weeks.  So, the question now

10   is where do we go from here.

11          On the last issue, I agree with the tribes that

12   it certainly makes sense to stay their claims which

13   ultimately may become moot depending on what the Corps

14   does.  But I still must decide the merits of Dakota Access'

15   cross claim.

16          So what I first want to do is confirm the nature

17   of the cross claim because that was filed before the Corps'

18   December 4th announcement.

19          So there could be two claims you are bringing

20   here.  And Mr. Debold, I want to clarify that with you.  So

21   the Motion for Summary Judgment and also the cost claim

22   argue only that the July 25th, 2016 decision should be

23   interpreted as including or granting the right of way or

24   easement, correct?

25          MR. DEBOLD:  That's what the cross claim

1   basically says, that the final decision on the right of way

2   was made on July 25.

3           THE COURT:   In other words, you are not arguing,

4   or intending to argue at least, on the Motion for Summary

5   Judgment, anything about the Corps' decision of December

6   4th, for example, that it was final agency action, that it

7   was arbitrary and capricious, something like that.

8           MR. DEBOLD:   Right.   Our understanding based on

9   reading the December 4th memorandum is it doesn't change

10  anything from a legal perspective.   It says the Corps is

11  still doing whatever it is doing.   And frankly, we're not

12  quite sure what to call what the Corps has been doing since

13  September 9th.   But our argument is that the decision had

14  already been made on July 25th.

15          If this Court grants us our declaratory judgment

16  on our cross claim, then we will be able to go ahead and

17  proceed.   Now, the Corps may dispute that or may try to

18  institute some legal action at that point.   I can't predict

19  what they will do.

20          But we believe that if you resolve -- that the

21  legal issue of what the significance of that July 25th

22  decision is now squarely before the Court and the Court can

23  decide that on our Motion for Summary Judgment.

24          THE COURT:   Okay.   All right.   So now what we

25  need to do is to decide on a schedule for me to decide that

1   issue that has been teed up by Dakota Access' Motion for

2   Summary Judgment.  Now, I know that Dakota Access is

3   seeking expedited ruling on that.  These are complex

4   issues.  And I want to give everybody a chance to be heard.

5   Again, the tribes indicated in their status report that

6   they may also wish to be heard on that issue.  So, what I

7   want to do is talk to them about timetable and then we'll

8   come back to you.

9           MR. DEBOLD:  Thank you.

10          THE COURT:  So let me first start with the

11  government.

12          So Mr. Marinelli, in some of your pleadings with

13  regard to the earlier motions by Dakota Access, you say, we

14  may want to file a motion to dismiss; we have other issues.

15  And actually, I think even before we set the schedule of

16  briefing, I do need to address the issue about Dakota

17  Access' motion to supplement the record.

18          And I believe your point, Mr. Marinelli, on this

19  issue, is that there is no supplementation required because

20  if their argument is that the July 25th decision in

21  actuality granted the easement, then they have no need for

22  any documents that post date July 25.

23          MR. MARINELLI:  Yes, that is our primary point.

24  But there are other arguments in our pleadings.

25          THE COURT:  Is there anything, given their

1    motion, having reviewed their motion -- I know it was just

2    filed, but having reviewed their motion, that changes your

3    position on whether any further supplementation of the

4    administrative record is required?

5            MR. MARINELLI:  No.  If anything, we submit that

6    the motion reinforces the government's position with

7    respect to both supplementation and extra record evidence.

8            THE COURT:  Why is that?

9            MR. MARINELLI:  Well, the standard for extra

10   record evidence, and it's in the Dakota Access' brief, is

11   whether it is needed to assist the Corps.  The way Dakota

12   Access frames it is whether extra record evidence is needed

13   to assist the Corps in its review.  The precedence is

14   whether National Mining Association, among others, says

15   whether the record is so bare as to prevent effective

16   judicial review.

17           We submit that by filing for Summary Judgment

18   asserting that there are no uncontested facts, Dakota

19   Access has essentially said the record is not so bare as to

20   prevent effective judicial review.

21           THE COURT:  I'm going to get back to you, Mr.

22   Marinelli, on briefing.

23           But let me ask you, Mr. Debold, on the

24   administrative record issue, given--

25           When you filed a motion to supplement, there was

1   some lack of clarity because it preceded the December 4th

2   decision.

3              MR. DEBOLD:  Yes.

4              THE COURT:  So obviously, you had a little bit of

5   a moving target to shoot at.  The decision has now been

6   issued.  Why isn't the government right that you should

7   have to rely for the administrative record on documents

8   that precede July 25th and don't post date it?

9              MR. DEBOLD:  Your Honor, the reason why we think

10  it is still a live issue is that it is our understanding

11  that the government is going defend against the Summary

12  Judgment motion and against the cross claim on the ground

13  that this other activity has been taking place since the

14  25th.  So it wasn't a final decision on the 25th.  And what

15  we believe is, if we can get those records, it will show

16  that the government acknowledged that it had in fact

17  completed all the process for granting a right of way by

18  July 25th.  It will basically confirm that we've argued in

19  our claim.

20              Now, we believe we can win the Summary Judgment

21  motion without those records.  But we also believe that the

22  government is going to take that position, that there was

23  no final decision, because there is all this other activity

24  going on after July 25, then we'll be entitled to use the

25  records that we request in order to show that that is

1    simply not the case.  A final decision had been made.

2    Everything that's been going on since then has been

3    internal discussions that do not in any way impugn the

4    finality of the decision that was made on July 25th.

5            And we believe the documents, such as the ones

6    we've already identified that were not provided as part of

7    administrative record, and we identify three or four of

8    them in the cross claim, show that the government

9    acknowledged that it had already made a final decision on

10   whether to grant a right of way.  That's why we believe the

11   documents are still relevant and why the Court should not

12   deny the motion simply because we have Summary Judgment

13   motion pending.

14           THE COURT:  All right.  What I am going to do is

15   this.  I am going to deny that motion without prejudice.

16   And because I do largely agree with the government's

17   position that, right now, if you are arguing that the July

18   25th decision was determinative, then the documents that

19   predate and include that July 25th date should be

20   sufficient.

21           If, however, the government's opposition -- to

22   use a more familiar phrase in the law -- opens the door by

23   relying on documents postdating that, then I will permit

24   you to renew that motion to seek, not only the documents

25   upon which they rely, which I certainly would trust would

1    be included in any brief, but if you believe there are

2    related documents, I'll let you renew that motion and I'll

3    address that on expedite basis.

4            MR. DEBOLD:  Appreciate that, Your Honor.  One

5    other thing I would like to add, though, one of the main

6    arguments in their opposition was that it would take time

7    to gather all this material and have it available.

8            What I would like is for the government to at

9    least take the effort to make sure that it is compiling

10   those documents, if this Court ultimately does not grant or

11   renew motion, fine.  But what we don't want is to have

12   additional delay by sequencing these events when a lot of

13   things can be done simultaneously, which is really the gist

14   of the motion that we made in our response to the

15   government's position, that while we have motions to

16   dismiss, we want to do as much as we can simultaneously to

17   get this all teed up as quickly as possible.

18           THE COURT:  Thank you.

19           Mr. Marinelli, let me ask you a couple of things.

20   The first is, is there any objection to what I will say,

21   what I will term making good faith efforts to

22   simultaneously compile documents that were sought, even

23   though I have not ordered you to supplement the record?

24           MR. MARINELLI:  Yes, Your Honor.  So we have a

25   general objection to compiling administrative records or

1    compiling discovery responses where they're not needed or

2    called for by the rules or Court order.

3         I think we came to this hearing I think

4    recognizing what Your Honor and what the plaintiffs

5    recognize, that really the issue that is teed up for review

6    is Dakota Access' Motion for Summary Judgment.  We do not

7    wish to unduly delay the review of that issue.

8         We're planning to propose that our opposition and

9    our motion to dismiss be combined to a single filing due

10   January 11th.  I do not know if I can meet that date if we

11   are also simultaneously compiling additional -- it is not

12   just compiling.  So it would be compiling, conducting a

13   privilege review, and perhaps redacting those documents.

14        Then there are a number of let's say technical

15   things that have to happen, where Corps has to prepare them

16   for transfer to the Department of Justice.  Our information

17   technology people would have to then go through a series of

18   processing steps.  All of that takes work away from what I

19   think is the real issue here, whether the briefing, whether

20   Dakota Access is correct that the Corps granted permission

21   to an easement to construct a pipeline under Lake Oahe on

22   July 25th.

23        THE COURT:  But they are asking for fairly

24   specific documents.  And do you expect in your briefing to

25   cite any documents that post date July 25th?

1          MR. MARINELLI:  It is difficult for me to answer
2     that question four days after getting a brief.
3          THE COURT:  Right.  I understand, but similarly,
4     I don't think it is fair to put them in a position where,
5     if you do cite a bunch of stuff, and then they say, well we
6     want the other related documents, and you say it is going
7     to take us a while to procure those.
8          MR. MARINELLI:  We appreciate what the Court and
9     what Mr. Debold were saying on that point.  But I guess at
10    this point I think we have said what we've said about the
11    administrative record being complete and certified on July
12    25th.
13         THE COURT:  What I am going to do is require you
14    to make reasonable efforts to compile the documents sought.
15    I don't expect that to be complete at the time of your
16    briefing but I am going to ask you to begin the process.
17         So your proposal -- and you are saying you would
18    bring a combined motion to dismiss and opposition?
19         MR. MARINELLI:  Yes.
20         THE COURT:  What will the grounds of the motion
21    to dismiss be?
22         MR. MARINELLI:  We expect to raise issues
23    relating to the United States sovereign immunity and
24    jurisdiction as we are working through those issues, just
25    as we are working through Dakota Access' Motion for Summary

1   Judgment.  But we think that the Court would benefit from a

2   combined brief that addresses issues of that nature.

3         THE COURT:  I am going to require a combined

4   brief.  So why is it going to take until January 11?

5         MR. MARINELLI:  Well, among other things, this

6   brief falls over the holidays.  The holidays are

7   approaching.  People take leave during the holidays.  We

8   have not yet assessed what is required to respond.  But

9   were we in a position where we had to, for example, provide

10  a declaration in response, that would be extremely

11  challenging in the timeframe suggested by Dakota Access.

12        So I think we -- I would note for the Court that

13  the response date that we propose is before answer date for

14  Dakota Access' cross claim.  And I think that should be

15  evidence of our good faith and approach to resolving this

16  issue brought by Dakota Access.

17        THE COURT:  Thank you.

18        Mr. Hasselman, do you intend to file a brief

19  weighing in on the Motion for Summary Judgment?

20        MR. HASSELMAN:  We do.

21        THE COURT:  And when would you be prepared to

22  file that?  And would you -- I apologize for interrupting.

23  But would you and the Cheyenne River expect to be filing a

24  joint brief or not?  I'll  ask Mr. Ducheneaux the same

25  thing when you're done.

1          MR. HASSELMAN:  As to schedule a date that Mr.

2     Marinelli proposed would work for us.  If the Court wants

3     us to move more quickly, we can move more quickly.  But it

4     makes sense to all file on the same day.  We began the

5     conversation about filing a joint brief or coordinating.

6     We haven't completed that discussion.  So I guess I can't

7     give you a firm answer on that.

8          THE COURT:  Okay.  Thank you.

9          Mr. Ducheneaux, same questions.

10         MS. DUCHENEAUX:  Your Honor, thank you.  I think

11    what Mr. Hasselman said reflects the status for Cheyenne

12    River, that we are amenable to the date that has been

13    proposed by the Corps and that we're still in discussion

14    with the Standing Rock Sioux Tribe whether we will file

15    jointly or separately.

16         THE COURT:  Thank you.

17         Sure.

18         MR. MARINELLI:  For the sake of completeness, I

19    would also like to lay out that, if the Court grants our

20    request to file an opposition and motion to dismiss on

21    January 11th, we would allow Dakota Access whatever time it

22    requires to file a combined opposition and reply brief in

23    support of its motion.  And request 14 days for our reply.

24    I wanted to put that out for the Court.

25         THE COURT:  Thank you.

1    I'm sure Mr. Debold is relieved to hear that

2  you'll give them as much time as they want.

3    MR. DEBOLD:  That's all we need, Your Honor, is

4  more time.

5    We proposed originally that we file our Motion

6  for Summary Judgment on Monday.  And frankly, we weren't

7  going to file it until the December 4th memorandum came

8  out.  And it was quite clear that this process was going to

9  drag on forever.  I might add as an aside, we do not read

10  the December 4th memorandum as necessarily requiring an

11  EIS.  It is our understanding it is still under

12  consideration, but that's another matter.

13    If Mr. Marinelli is worried about ruining the

14  holidays, we would gladly agree to a schedule that ruins

15  our holiday.  They file before the 25th of December, we

16  will file a week later.  I know the associates at my firm

17  are not going to be glad to hear that I'm saying this in

18  court, but we really do in all seriousness, all kidding

19  aside, we really do need to move this along, Your Honor,

20  because it is costing us close to $20 million a week.  And

21  any delay from now on is costing us nearly $20 million a

22  week because we cannot proceed with the project that the

23  Corps approved back in July.  So, we really do want to push

24  that schedule.

25    One other thing on the records, I meant to add

1   that, in their response the Corps said that -- they have

2   not in fact given us all the records from pre-July 25th

3   that relate to, quote unquote, the easement.  We do think

4   that at least the Corps should be compiling and turning

5   those records over to us because our position is that the

6   two decisions are one in the same.

7        We understand they take a different position but

8   we should be entitled to have those records.  They added a

9   few as exhibits to their response, but they didn't

10  represent that those are all the records that went into any

11  decision before July 25th vis-a-vis the easement, if their

12  position is that is somehow a separate decision.

13       THE COURT:  Thank you.

14       Mr. Marinelli, let me ask you about that last

15  point.  You would agree, I trust, that any documents that

16  relate to the easement prior to July 25th should be part of

17  the administrative record.

18       MR. MARINELLI:  Your Honor, I don't think so,

19  given the way Dakota Access has styled its Motion for

20  Summary Judgment as one challenging the Corps' July 25th

21  decisions.  Our position is that there are a set of

22  documents that do relate to an easement decision that has

23  not been made.  There cannot be an administrative record

24  absent an administrative decision.

25       So in considering that, I would flag for the

1    Court that the administrative record sometimes takes many

2    months to compile.  And we have moved in this case quite

3    quickly in compiling the record that we did compile.  So as

4    a practical matter, I do not see how that could be

5    compiled, whatever documents Mr. Debold is seeking there, I

6    do not see how they can be compiled and turned over in the

7    timeframe that Mr. Debold just laid out.

8              THE COURT:  Okay.

9              Here is what I am going to do.  Again, I

10   understand the fact that Dakota Access wishes to move

11   forward expeditiously here.  I have to balance the

12   complexity of the issues involved with the interests on all

13   sides here.  And so, I will order some expedition of this

14   but not as much as Dakota Access seeks.

15             So I'm going require the government to file its

16   motion on January 6th.  And so, that's the motion and

17   opposition on January 6th.  I will require all documents

18   relating to the easement pre-7-25 to also be produced on

19   that same day as part of administrative record at the same

20   time you are filing your brief so that Dakota Access may be

21   able to use that in its opposition and reply.

22             So, Mr. Hasselman, Ms. Ducheneaux, that January 6

23   date will also govern any pleading you wish to file.  So

24   thank you.

25             Now, Mr. Debold, for your opposition and reply,

1    we can do a couple of things.  Either we can set a

2    timetable now or, since you are the one who wants to move

3    quickly, what I'm perfectly happy to do is say you can file

4    it when you want because I know that the tribes and the

5    government aren't asking for this to be resolved speedily.

6    So, whatever you want.

7           MR. DEBOLD:  That's fine, Your Honor.  I'm sure

8    our client will put us under a timetable that will be as

9    enforceable as one that you might.  I also want to clarify

10   one thing.  When you said pre-July 25th, we would also like

11   to include any records that may be dated July 25th.

12          THE COURT:  I agree.  I'll say pre-decision I

13   think is a better way to put it.  Anything on July 25th is

14   included, I agree.  What I am going to do is I'm just going

15   to say that your reply, opposition will be due by, I'm

16   going say January 31.  I know you'll file it sooner.

17          Then I will require replies by the tribes and the

18   government within 10 days of whenever you do file, Mr.

19   Debold.  So not February 10th, unless you file on January

20   31.  But within 10 days of whenever filed.

21          I will then set a hearing date if I need one,

22   which would be then most likely probably early February.

23   Again, none of us have any idea whether the incoming

24   administration will make any or all of this moot.  And

25   that's not my business to guess on.  Mine is to try to

1   resolve the matter as it is teed up now.

2          But I would ask the government to do what it did

3   most recently in providing prompt notice to the Court if,

4   upon any decision that any agency makes that would have

5   direct relevance to this issue.  I appreciate the

6   government having done so, even on a Sunday when that was

7   issued on December 4th.  But if, between now and the end of

8   briefing, or even after briefing, anything happens to

9   change the government's position or if there are other

10  developments, I would ask to be notified promptly.

11         Are there any other issues that anybody wants to

12  raise today?

13         I'll start with Mr. Hasselman.

14         MR. HASSELMAN:  No, Your Honor.

15         THE COURT:  Ms. Ducheneaux?

16         MS. DUCHENEAUX:  No, Your Honor.

17         THE COURT:  Mr. Debold?

18         MR. DEBOLD:  At the last status conference we had

19  agreed to basically keep the administrative record from

20  being disclosed outside of the parties until we could

21  resolve any possible issues.

22         THE COURT:  Particularly relating to

23  confidentiality?

24         MR. DEBOLD:  Right.

25         THE COURT:  Yes.

1          MR. DEBOLD:  There were 31 documents that the

2     Corps and my client were looking at as to possible

3     confidentiality.  We have agreed that three of them can be

4     released without any problem.  28 remain where we believe

5     that there is at least some information in them that should

6     not be released to the public.

7          And I've talked with counsel for all parties.

8     And the procedure we've agreed on is that the Corps will

9     make those available to the plaintiffs under the same

10    understanding that we will not -- nobody will release them

11    until we finally resolve this issue.

12          We're going to draft the proposed protective

13    order.  Once they see the documents, they can decide if

14    they agree that they should be subjected to a protective

15    order.  If they disagree we'll come back.  But in the

16    meantime they will have access to the documents and we'll

17    just have to decide that confidentiality issue.

18          THE COURT:  If you file a proposed protective

19    order that everyone agrees on, I'm happy to sign it.

20          Thank you.

21          Mr. Marinelli, anything else to the government?

22          MR. MARINELLI:  Your Honor, Mr. Debold's

23    statements about that confidentiality review made me want

24    to flag one other issue for you.  In the past few weeks, we

25    have subjected the 31 documents to review by the Pipeline

1   and Hazardous Safety Materials Administration and the

2   Transportation Security Administration, who are the subject

3   matter experts.

4            I don't know if the additional documents that the

5   Court has called for will require similar security review.

6   I just note that issue for the Court.  And I imagine we

7   will have some discussion with the other parties about how

8   to address that issue.

9            Second, in our review of the record, we

10  determined that three documents were incorrectly included

11  in the record.  We expect to file some sort of correction

12  at some point in the future.

13           THE COURT:  Okay.  Thank you.

14           MR. MARINELLI:  Thank you.

15           THE COURT:  All right.

16           Thank you all.  I appreciate everybody's hard

17  work and civil discourse on this matter.  I know it has

18  raised a lot of interest.  I appreciate the fact again that

19  we have a full house and people remain interested and

20  committed.  So, we'll move forward as best we can.  Thank

21  you everybody.  Have a nice holiday.

22           (Whereupon, at 11:09 a.m., the hearing

23  adjourned.)

24

25

CERTIFICATE OF REPORTER

     I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


_____     _____
Lisa Walker Griffith, RPR                          Date