UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
----------------------------X

STANDING ROCK SIOUX TRIBE,

Plaintiff

v.                    Civil Action 16-1534.

U.S. ARMY CORPS OF ENGINEERS,

Defendant

----------------------------X

Washington, D.C
Wednesday, January 18, 2017.
3:00 p.m.

TRANSCRIPT OF MOTION for TRO
BEFORE THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:  Jan Hasselman, Esq. (telephone)
                    Stephanie Tsosie, Esq. (telephone)
                    EARTHJUSTICE LEGAL DEFENSE FUND
                    705 Second Avenue, Suite 203
                    Seattle, WA 98104-1711
                    (206) 343-7340


Intervenor Cheyenne Nicole E. Ducheneaux, Esq. (telephone)
River Sioux Tribe:  Conly Schulte, Esq. (telephone)
                    FREDERICKS PEEBLES & MORGAN LLP
                    3610 North 163rd Plaza
                    Omaha, NE 68116
                    (402) 333-4053




Court Reporter:     Lisa Walker Griffith, RPR
                    U.S. District Courthouse
                    Room 6507
                    Washington, D.C.  20001
                    (202) 354-3247

APPEARANCES:   (Cont'd.)


For the Defendant:   Matthew M. Marinelli, Esq.
                     Erica M. Zilioli, Esq.
                     U.S. DEPARTMENT OF JUSTICE
                     Environment & Natural Resources Division
                     P.O. Box 663, Ben Franklin Station
                     Washington, DC 20044-0663
                     (202) 305-0293


For Cross Claimant   David Debold, Esq.
Dakota Access:       William S. Scherman, Esq.
                     GIBSON, DUNN & CRUTCHER, LLP
                     1050 Connecticut Avenue, NW
                     Washington, DC 20036
                     (202) 955-8551

                     William Leone, Esq. (telephone)
                     Robert D. Comer, Esq. (telephone)
                     Norton Rose Fulbright US LLP
                     799 9th Street NW, Suite 1000
                     Washington, DC 20001-4501
                     (202) 662-0200

# P R O C E E D I N G S

1

2          THE DEPUTY CLERK:  This is Civil Action 16-15 34.

3  Standing Rock Sioux tribe et.al versus United States Army

4  Corps of Engineers et.al.

5          Counsel, on the telephone, please state your

6  names.

7          THE COURT:  Mr. Hasselman, can you hear me?

8          MR. HASSELMAN:  Yes, I can, Your Honor.

9          THE COURT:  You are in and out.  We'll hope that

10 when you need to talk you'll be in.  But otherwise, we may

11 stop you.

12          Can you say who is with you on the phone from

13 Standing Rock?

14          MR. HASSELMAN:  Yes, Your Honor.

15          Yes, I'm with Patti Goldman and Stephanie Tsosie

16 from Standing Rock.

17          THE COURT:  Good afternoon to you folks.

18          And then Ms. Ducheneaux, are you on the phone?

19          MS. DUCHENEAUX:  Yes, Your Honor, this is Nicole

20 Ducheneaux on behalf of Cheyenne River Sioux Tribe and also

21 Conly Schulte also on behalf of Cheyenne River Sioux Tribe.

22          THE COURT:  Welcome to you folks as well.  All

23 right.  From the government?

24          MR. MARINELLI:  Good afternoon, Your Honor.

25 Matthew Marinelli for the Department of Justice from Army

1    Corps of Engineers.  With me at counsel table is Erica

2    Zilioli.

3            THE COURT:  Good afternoon.

4            MR. DEBOLD:  Good afternoon, Your Honor. David

5    Debold on behalf of Dakota Access.  With me at counsel

6    table is Bill Scherman.  Also on the phone from Norton Rose

7    Fulbright also on behalf of Dakota Access are Mr. Bill

8    Leone and Bob Comer.

9            THE COURT:  Thank you very much.

10           So Mr. Debold, I'll let you begin because you are

11    the movant.

12           We're here on Dakota Access' motion for temporary

13    restraining order asking the Court to block the issuance of

14    the notice of intent to conduct an Environmental Impact

15    Statement or EIS.

16           Now, I understood yesterday afternoon from our

17    discussion that that was going to be published today.  Do

18    you know whether it in fact was published already?

19           MR. DEBOLD:  According to the filing from Mr.

20    Marinelli, it has been published.

21           THE COURT:  Okay.  So I'm less concerned with the

22    mootness argument but I guess we'll start with the question

23    in terms of my power.  Do you believe I have the power to

24    order the notice withdrawn?

25           MR. DEBOLD:  Yes, we do Your Honor, for the same

1   reasons that we believe you have the power under the All

2   Writs Act to control further developments while the cross

3   claim is under your consideration.

4           And let me sort of back up a little bit.  We

5   would have preferred not to be here on this emergency

6   basis.  We were expecting to get some sort of notice from

7   the government that the publication would occur knowing

8   that it takes at least two full business days plus another

9   one for it to end up in the Federal Register.  We would

10  have had that information last week.  We could have come to

11  the Court and probably stopped the publication from

12  occurring.

13          But we do believe the Court could order it to be

14  retracted.  We also ask for the Court in our motion and in

15  the proposed order to prevent the EIS process from going

16  forward.

17          We're trying to get through basically, what our

18  goal is, is to get through the next couple of weeks without

19  any new events that add complexities and complications to

20  issues that the Court has before it on the summary judgment

21  motion.

22          And as we said in our reply which we filed today,

23  which I hope Your Honor had a chance to look at, either the

24  Federal Register notice that we sought to restrain would

25  create new legal issues or it wouldn't.  If the Court

1    concludes that it would be null and void or have no legal

2    significance on any issue that relates to the right of way

3    for Dakota Access, and if this Court, until such time as

4    this Court or the government recognizes that a right of way

5    was previously granted, then that's what we need to hear,

6    not only from the Court but also from the other parties.

7           We don't want to be litigating these other issues

8    relating to the notice.  That's the whole purpose of the

9    motion.  We think that it complicates the case.  It is

10   unnecessary for it to go forward.  Given that we're going

11   to have a decision on the right of way either by the Court

12   or by the government, if it changes its position, in the

13   coming weeks.  So there is no advantage to allowing it to

14   go forward.  And there are plenty of obstacles that it

15   creates.

16          We haven't seen any indication in any of the

17   pleadings as to why it would be necessary to have that

18   notice in effect.  Now as to whether it makes any

19   difference in the case, I mean, we think ultimately that we

20   can prevail despite the notice.  But we also believe that

21   there are arguable differences that the notice has compared

22   to the December 4th memorandum.

23          The December 4th memorandum for example had, we

24   contend and will contend if we need to, has no legal

25   effect.  It is a memorandum, not a decision, not even an

1  interim one issued by somebody who didn't have authority to

2  issue it.  We note in our reply that, in our motion that

3  there is a serious question whether the Assistant Secretary

4  for Civil Works has any authority in this area as compared

5  to the Assistant Secretary for Installations Energy and

6  Environment.

7        So what happened on December 4th in our view has

8  no legal consequence.  We don't want to be litigating

9  whether something that happened yesterday based in part on

10  a general order that was issued on January 5th, well into

11  the briefing of this matter, somehow changes the calculus.

12  If the Court can conclude that it does not and if the other

13  parties agree that it doesn't, then we probably have

14  different issue.

15        THE COURT:  So you say the government under my

16  order should have informed me about this development.  And

17  that instead, they're sneaking this through in the dead of

18  night.  But the December 4th memorandum actually does talk

19  about the government's directing that an EIS be prepared,

20  right?

21        MR. DEBOLD:  I don't think anything that

22  Assistant Secretary Darcy directed anything.  She said that

23  in her judgment an environmental impact statement is the

24  way to go here.  But there was no action on that

25  quote/unquote judgment.  We were expecting that if they

1    were going to in fact go forward, as Cheyenne River notes

2    in its reply, they're supposed to do so promptly if in fact

3    they do intend to go forward while this case is being

4    litigated with the Federal Register notice.

5            THE COURT:  Why are you waiting until now to say,

6    hey, wait a minute, you can't go forward with this EIS;

7    this is the first we've heard of it.

8            MR. DEBOLD:  Not the first we've heard of an idea

9    of an EIS.  This is the first we've actually heard that

10   they are going to actually publish a Federal Register

11   notice, which we expect the purpose of that was based on

12   the efforts that were spelled out by the Standing Rock

13   tribe in its December 21 release that we cite in our

14   papers, they seem to think this was going to have some

15   significance otherwise they wouldn't have gone through the

16   trouble.

17           But if they're going to tell, look, whatever

18   happened after December 4th has no bearing on what this

19   Court is going to decide or on our right of way in general,

20   then we have a different issue.  But our main purpose was

21   to make sure that we don't have the other side bringing in

22   these other issues based on an effort that was made while

23   the case was being briefed.

24           THE COURT:  And I understand that.  And it is

25   certainly not an unreasonable position.  But I think the

1   way you framed it here and in your reply is not really

2   consistent with the burden that you bear in coming to seek

3   relief here and under the All Writs Act.  In other words,

4   you essentially put the burden on the government to prove

5   that there wouldn't be any adverse effect when that's not

6   where the burden lies, right?.

7         MR. DEBOLD:  We're not trying to put the burden

8   on anybody to say there would be no adverse effect.  We do

9   have adverse effect which is that we will have further

10  delay in the ability to complete the pipeline due to the

11  inevitable litigation over issues that the other parties

12  will no doubt raise based on the January 18th notice.

13        THE COURT:  If I end up ruling against you on

14  your cross claim, on the Motion for Summary Judgment--

15        MR. DEBOLD:  Right.

16        THE COURT:  Then in fact, you would prefer an EIS

17  to go forward now rather than wait, right?

18        MR. DEBOLD:  We've taken that into consideration.

19  And the other parties note that it would be to our

20  disadvantage to have that added delay.  We understand that

21  that would happen if you rule against us or if there is no

22  recognition of the right of way through other means.  But

23  we're hopeful that we will get the right of way recognized.

24  That we've had the right of way since July 25th.  And if

25  that is the case, this other issue will no longer be on the

1    table.

2         THE COURT:  And again, I understand your desire

3    to have that spelled out clearly.  And made, and either

4    have me or the government so represent.  But what I'm

5    struggling with here and I mentioned this on the phone

6    yesterday, is that your requirement here is to show, among

7    other things, irreparable harm.

8         MR. DEBOLD:  Right.

9         THE COURT:  The irreparable harm you have to show

10   in this motion is that, if I grant your summary judgment

11   motion--

12        MR. DEBOLD:  If our right of way is recognized.

13        THE COURT:  --and the right of way is recognized,

14   the fact that the government has filed notice of intent to

15   conduct an EIS would somehow irreparably injure you.

16   That's what you have to show in this motion.

17        MR. DEBOLD:  We're going to have a whole new

18   round of motions.  Let me make clear.  We were supposed to

19   be able to go forward when you issued your opinion denying

20   the preliminary injunction on September 9th.  Four months

21   have passed.  Those four months of delay have caused

22   serious irreparable harm to my client.  We are now looking

23   forward to the possibility that we do get the right of way

24   recognized.  And that the plaintiffs -- and it is really

25   more the plaintiffs that we're worried about than the

1    government in terms of litigating positions -- will come in

2    and say: Your Honor, we have to now litigate because there

3    was an EIS formally noticed on January 18.  Even though you

4    recognize that a right of way had previously been granted,

5    even though the right of way has been recognized that

6    should prevent the project from going forward.

7            And it's that very serious risk of further delay

8    that is going to be our irreparable harm.  Among other

9    things we also believe that the January 18th notice is

10   unlawful because of the lack of authority for the Assistant

11   Secretary for Civil Works to enter it.  We're hoping that

12   we don't have to argue that issue by asking for the relief

13   that we're asking for.

14           THE COURT:  Okay.  Thank you very much.

15           Let me hear from the government.

16           And Mr. Debold, you remind me, I should have

17   pointed out at the beginning of the hearing that I was able

18   to read everybody's briefs although obviously I have not

19   considered them in great detail since the two of them were

20   filed just a couple of hours ago and the others were filed

21   yesterday.  But I have read everybody's.  So that includes

22   the government's opposition today.

23           So, let me start, Mr. Marinelli, with the point I

24   raised with Mr. Debold, is that, why isn't this a

25   significant step that you should have at least informed me

1   and the other parties about, as opposed to saying yesterday

2   and now today, it's too late to do anything about the

3   Federal Register, what is printed is printed.

4          MR. MARINELLI:  Your Honor, it is certainly a

5   step toward an EIS  But it is a step I think as Your Honor

6   recognized, was telegraphed if not formally announced in

7   the December 4th memorandum.  And I direct the Court to

8   paragraph 13 of that memorandum.  That paragraph says that

9   the Court shall engage in review of three different issues.

10          THE COURT:  Then you believe that is synonymous

11   with an EIS?

12          MR. MARINELLI:  That combined with paragraph 12

13   suggesting--

14          THE COURT:  So paragraph 12 says:  The robust

15   consideration of reasonable alternatives that I am

16   directing, together with analysis of potential spill risk

17   and impacts and treaty rights, is bested accomplished in my

18   judgment by preparing an Environmental Impact Statement

19   that satisfies the accompanying procedures for broad public

20   input and analysis.

21          So, what Mr. Debold said is that this is just the

22   judgment of the author, Ms. Darcy, the Assistant Secretary

23   of the Army for Civil Works.  And that it is not a binding

24   statement of intent.

25          MR. MARINELLI:  I think here, I'm not sure I

```
1   would use the phrase 'binding statement of intent.'
2           THE COURT:  Tell me how you would characterize
3   that.
4           MR. MARINELLI:  It was a memorandum setting forth
5   a course of action.  Going back to the actual language of
6   the Federal Register, it notices the Army's intent to look
7   at the same three issues identified in paragraph 13 in the
8   same way that they're identified in paragraph 13.  So it is
9   very much consistent with that December 4th memorandum.
10          But to step back and look at the types of actions
11  that we should notify the Court of, I would note that we
12  did not notify the Court that we were thinking of issuing a
13  memorandum on December 4th because, as with all government
14  action, it is not final until it is final.
15          So, too, with the Federal Register notice, which
16  is we notified or were prepared to notify the Court after
17  we took an action, not while we were considering taking
18  that action.
19          THE COURT:  So, let me ask you the same question
20  that I asked Mr. Debold then about my authority.  Do you
21  believe that if I find in their favor on the summary
22  judgment motion and that they have been granted a right of
23  way, that I could order the EIS notice withdrawn?  And
24  again without affecting your ability to appeal my decision
25  on the right of way?
```

1          MR. MARINELLI:  Your Honor, I think that that is

2    a conceivable order.  Certainly, agencies have withdrawn

3    notices to proceed with environmental impact statements

4    prior to conclusion.

5          THE COURT:  Right.  But that's not a whole lot of

6    solace for Dakota Access to say, hey, look, in the past

7    agencies have withdrawn these.  Who knows?  We might

8    withdraw ours.  That doesn't really help them, does it?

9          MR. MARINELLI:  To the extent that this Court in

10   issuing an order on Dakota Access' Motion for Summary

11   Judgment or crossclaim holds against the government in

12   favor of Dakota Access, and as we've set forth we strongly

13   believe that Dakota Access' motion is not meritorious.  We

14   would stand, I see no reason why we could not obey an order

15   to withdraw the EIS or have the functional equivalent of

16   withdrawing the EIS.  But standing here, I cannot,

17   certainly cannot waive our appeal rights.

18         THE COURT:  Nor would I ask you to.  Again, I

19   haven't even reviewed the briefing on the summary judgment

20   because we still have, we've completed two steps of four.

21   So everybody here knows, any questions that I ask do not in

22   any way telegraph or imply any ruling that I might make

23   because I haven't even read the pleadings.

24         So I understand that you don't need to, I

25   understand that you are saying that you strongly believe

```
 1   they shouldn't win, and you shouldn't waive your appeal

 2   right.  I completely understand that.  I'm just telling you

 3   I have no idea who is going to win until I read the

 4   briefing.

 5          But the focus of your irreparable harm argument,

 6   in other words, that there is a lack of irreparable harm,

 7   is that this notice does not change anything regarding the

 8   right of way.

 9          MR. MARINELLI:  It certainly is that, Your Honor,

10   but it is more.

11          THE COURT:  So tell me why that is correct and

12   why it is more than that.

13          MR. MARINELLI:  Well, so first, there, as with

14   the December 4th memorandum, the notice of intent to

15   proceed with an Environmental Impact Statement is not a

16   final agency action.  And as I mentioned earlier, and the

17   notice could be withdrawn in the case of, for example, the

18   Court ordering or granting Dakota Access' Motion for

19   Summary Judgment.

20          But more than that, to go back to the

21   government's mootness argument, the notice is already

22   issued.  It is difficult to see how the issues that Dakota

23   Access complains of, or harms it complains of, if they

24   existed at all, haven't already occurred because we would

25   expect the plaintiff tribes to challenge the granting of
```

1    the easement by Court order, possibly by Court order on the

2    same basis, on either the December 4th memo or the January

3    18th notice to proceed.  They raise the same legal issues.

4           At heart, what Dakota Access is saying that it is

5    harmed because the notice raises new legal issues.  But it

6    is the same issue, the same analysis that was raised in the

7    December 4th memorandum.

8           THE COURT:  Okay.  That was both prongs of your

9    argument on that issue?

10          MR. MARINELLI:  Yes, Your Honor.

11          THE COURT:  All right.  Anything else you want to

12   raise then, Mr. Marinelli, before I move to the plaintiffs?

13          MR. MARINELLI:  Just simply flag for the Court

14   that Dakota Access' claim is premised on the notice somehow

15   interfering with this Court's jurisdiction.  They have not

16   met their burden to obtain emergency injunctive relief on

17   that argument either.

18          THE COURT:  Thank you very much.

19          Mr. Hasselman, I'm happy to hear anything you

20   want to add.  Again I have read your pleadings and heard

21   from Mr. Marinelli.  But I want to give you and Ms.

22   Ducheneaux a chance to speak since you are parties to the

23   litigation.

24          MR. HASSELMAN:  Thank you, Your Honor.  This is

25   Jan Hasselman.

1          I make a few very brief points, in pick up where

2     Mr. Marinelli left off.  They're asking this Court for

3     extraordinary relief the TRO, under the extraordinary

4     remedy of the All Writs Act.  And they haven't even

5     attempted to meet their burdens of showing that they're

6     entitled to that relief including likelihood of success on

7     the merits.

8          In particular, the question of irreparable harm,

9     I think the only harm that they have shown or alleged that

10    they would have to write additional pages in a legal brief

11    about the effect of the EIS process on the pending motion.

12         I guess that's, that isn't irreparable harm that

13    entitles you to a TRO.  I think those issues are already in

14    play.  The EIS has started, the public notice has begun.

15    How a resolution of the summary judgment motion in their

16    favor affects that process is a question that can be

17    resolved and should be resolved in the briefing on the

18    cross motion, it is essentially a question of remedy.  If

19    they prevail, what is the affect of the EIS process.

20         So, our position is that we can work out these

21    questions about what a favorable ruling for them means in

22    the context of your existing briefing schedule without a

23    temporary restraining order under the extraordinary remedy

24    of the All Writs Act.

25              THE COURT:  Okay.  Thank you very much.

1          Ms. Ducheneaux, I'm happy to hear anything you

2     want to add.

3          MS. DUCHENEAUX:  Thank you, Your Honor.

4          I think what I will say will slightly reiterate

5     what others have said.  But again, I would point out that

6     the only claim of irreparable harm that Dakota Access has

7     made is that there may be litigation on additional issues

8     in an existing litigation which may or may not cause

9     additional delay which may cause them some economic harm.

10    That is simply not irreparable harm under any standard.

11    Nor is it, does it raise any jurisdictional issue under the

12    All Writs Act.

13         I would also point out that Tribes have always

14    said that we would challenge the granting of the right of

15    way whether it was by the Court or by the Army Corps.  And

16    the notice of intent does not change that.  So Dakota

17    Access's motion did not meet it.

18         THE COURT:  Thank you very much.

19         Mr. Debold, I'll give you a couple of minutes for

20    rebuttal since it is three against one here.

21         MR. DEBOLD:  Thank you, Your Honor.

22         I thought I heard, maybe the Court can clarify

23    with plaintiffs, but at least in the papers from Standing

24    Rock and the argument just made by Cheyenne River, that

25    they're saying this January 18th notice doesn't change

anything; that is no different than what happened on

December 4th.

        If that is true and if they're willing to commit

to that, that they will not argue something specific to the

January 18th notice, if and when we get the right of way

recognized, then this issue can be resolved.  But our

concern is, as I've said before, that if you don't take

that January 18th notice off the table --

        And let me remind you, if we had gotten the

briefing schedule we had asked for back in December, the

cross claim would have been ready for Your Honor to decide

before this notice got published.  So we are being

disadvantaged by the delay.  And we're bearing the risk

that there is something about this January 18th notice that

will further delay the completion of the pipeline and all

the other arguments that the tribes plan to make because

we'll be dealing with an issue that frankly I've never seen

before.

        We've got an Assistant Secretary for Civil Works

stating in a memorandum in December that she, in her

judgment, thinks there should be an EIS but doesn't order

one and can't really direct the Court to order one because

she doesn't that have that authority.

        There is a new general order that comes out in

January that may or may not have changed her authority.

1    Now we're going to be arguing over whether she could have

2    legitimately published that notice on January 18.

3           The easiest solution is to say we're not going to

4    have the January 18th notice play a part in this case.  And

5    that could happen one of two ways: either the Court

6    declares it null and void through a temporary restraining

7    order, or you enter an order that says I'm denying this

8    motion, but on the grounds that everybody agrees the

9    January 18th notice is not going to affect the further

10   litigation of these issues.

11          Either way, they can't it both ways.  They can't

12   say it doesn't really matter and then have the ability

13   later on to come in and say it does matter and the pipeline

14   gets delayed another month or two, which at this point is

15   as I said causing serious financial harm to the company and

16   for a pipeline that was supposed to have been in service on

17   January 1.

18          THE COURT:  Okay.  Thank you very much.

19          Again, I appreciate the timely and helpful

20   arguments by counsel and the papers in a very compressed

21   timeframe, and also by their good points in argument here.

22          I am going to deny the application for temporary

23   restraining order temporary restraining order.  I just

24   believe that the irreparable harm has not been

25   demonstrated.  This is the burden that Dakota Access bears

1   when they seek an extraordinary remedy such as temporary

2   restraining order to prove that they have a likelihood of

3   irreparable harm here.  I just don't see it.  It is very

4   possible that there is no harm or injury to them from this

5   notice of intent that has been filed.

6          Again, I have no idea whether I am going to grant

7   their right of way or not.  If I don't grant it then they

8   actually benefit from my ruling today because the EIS is

9   not delayed and it will go forward.  And if they do emerge

10  victorious on the summary judgment issue, they have not

11  shown me that today's or yesterday's action of the notice

12  of intent is likely to cause irreparable harm.  So I deny

13  the motion.

14         So, I've got a couple of logistical issues on the

15  case that I want to raise.

16         Mr. Debold, let me start with you.  Your motion

17  is for a temporary restraining order or a preliminary

18  injunction which is the way it is supposed to be filed if

19  you've complied with Court rules.  But if we then set a

20  briefing, a further briefing schedule for a preliminary

21  injunction, I don't really see that that is going to be

22  decided any sooner than I'm going to be able to decide the

23  merits issue.  And in fact, it might delay the merits if

24  I've got to issue an opinion on the preliminary injunction.

25         So I'll hear you.  It is certainly your right to

1  maintain your motion and to seek a briefing schedule and

2  argument on it.  And to convince me what I've ruled today

3  is wrong.  But I wonder whether that is the best use of

4  everybody's time.

5       MR. DEBOLD:  Your Honor, I think if I could get

6  one clarification that it may make it unnecessary to go

7  forward with the P I. briefing.  If Your Honor is saying

8  that you can conclude that this January 18th notice is not

9  going to interfere with your ability to resolve the cross

10 claim, which is really one of our main objectives here in

11 bringing the motion, and I'm not sure if I heard that.

12       THE COURT:  I understand.  What I can tell you is

13 that, I don't expect it to.  But there may be a separate

14 issue of whether plaintiffs, if I rule in your favor,

15 whether plaintiffs then sought to block the pipeline based

16 on some other issue that might be related to the EIS.  I

17 don't know what they're going to do.  I don't foresee that

18 will affect my decision on the merits because, as I said to

19 you earlier, the record that I will be reviewing ends on

20 July 25th.  So, that's the best I can do which I hope is

21 helpful.

22       MR. DEBOLD:  Well, if the possibility of the

23 January 18th notice having some impact on what the Court

24 can do is still in play, then I do think that we do need to

25 continue briefing because as I said one of the possible

1  remedies is for the Court, even though the notice is out

2  there, is to declare it to be null and void.

3  THE COURT:  But again, it seems to me it is

4  putting the cart before the horse.  What I would propose to

5  you is that I decide the merits.  If I decide in your

6  favor, and there is still argument by the plaintiffs or

7  even the government that you still can't go forward for

8  some reason, then I'll hear argument on that.

9  But, to spend time trying to decide what the

10  result, what the affect of the EIS would be if I ruled one

11  way before I rule, that seems to be a waste of time.

12  MR. DEBOLD:  That was the whole point of our

13  motion, Your Honor, was to take that issue off the table

14  because, had we been notified last week, we could have come

15  to you and said this is going to interfere.  We wouldn't

16  have been trying to undo a notice that had already been

17  published.  We just want to take this issue off the table

18  so we can get to the completion of the other issues more

19  quickly.

20  THE COURT:  What I would tell you is I assume it

21  is not going to affect, but I have not heard, again, I have

22  not seen all of the arguments that people will subsequently

23  make.

24  I'll hear, does the government, Mr. Marinelli, do

25  you expect to argue in your pleadings that what happened on

1   January 18th regarding the EIS affects my decision

2   regarding the July 25, 2016 decisions?

3             MR. MARINELLI:  No, Your Honor.  As we stated in

4   our opposition to Dakota Access' motion and our motion to

5   dismiss, we believe the record ends on July 25th of 2016.

6             THE COURT:  Mr. Hasselman, do you concur?

7             MR. HASSELMAN:  I'm having a little trouble

8   following the exact question.

9             THE COURT:  Okay.  So the question is, are you

10  planning to argue in your summary judgment briefing that

11  we're in the midst of, in other words, regarding whether a

12  right of way was granted on July 25, 2016, are you going to

13  make any argument regarding the affect of yesterday's or

14  rather I guess today's notice of intent on that ruling?

15            MR. HASSELMAN:  I don't think that's the way that

16  we would present this.  Now, we have argued in our

17  opposition that the EIS process that has been initiated is

18  legally compelled.  And so, I think you are correct that if

19  you were to find that the easement was already granted

20  there would be new legal issues presented.  But to the

21  extent that the question is whether this notice divests the

22  Court of jurisdiction over their motion, that is -- I don't

23  think that question was presented.

24            THE COURT:  That's not quite the issue.  It is

25  not sort of a divesting of jurisdiction.  It is whether

1    that act somehow is relevant in my interpretation of what

2    occurred up until July 25th.

3         MR. HASSELMAN:  To the extent that they are

4    arguing that they already have their easement and that the

5    easement was granted on July 25th, it is hard to see how

6    yesterday's announcement bears on that question.

7         THE COURT:  That's what I think.  But--.

8         All right, Ms. Ducheneaux.

9         MS. DUCHENEAUX:  Yeah, I think I concur with what

10   Jan just said regarding July 25th and that.

11        THE COURT:  So Mr. Debold, is that good enough?

12        MR. DEBOLD:  It depends on the purpose.  Is it

13   good enough not to do further briefing?  May I have one

14   minute, Your Honor?

15        THE COURT:  Sure.

16        (There was a pause in the proceedings.)

17        MR. DEBOLD:  Your Honor, in the interest of the

18   efficiency we think that it does not make sense to go

19   forward.  From what we hear, we certainly hope that we're

20   not going to be litigating the legal significance of the

21   January 18th statement or notice, especially if you rule in

22   our favor.  I would like to hope that I can put a lot of

23   faith in that.

24        THE COURT:  You might be litigating it after I

25   rule in your favor.  But the point is you won't be

1  litigating it in the context of the Motion for Summary

2  Judgment.  That is what these folks have said.  And that's

3  what seems to me appropriate.

4          MR. DEBOLD:  What I heard the other side, the

5  tribe saying, is that we may be litigating whether or not

6  the decision to grant an easement or right of way or in

7  fact the 408 permission was a proper decision.  What I

8  wasn't hearing is that somehow the January 18th decision or

9  notice is going to play into that.  That's basically what

10 we were trying to avoid.

11         THE COURT:  If I rule in your favor, they may say

12 we're still moving to enjoin that.  And one of the reasons

13 we're moving is the EIS.

14         MR. DEBOLD:  The EIS in general.

15         THE COURT:  Yes, but they can of course do that.

16 But that's a separate issue.  And it wouldn't interfere

17 with my ability to resolve summary judgment, which is why

18 it seems to me, as I said earlier, that's what I should do

19 now.  And then again, if you win, then maybe there is

20 further briefing and maybe there is not.

21         MR. DEBOLD:  We expect we're going to be briefing

22 on the EIS in general.  If that's where we end up, then

23 that's satisfactory to us.

24         THE COURT:  So I'll rule that the motion for

25 temporary restraining order is denied and the motion for

1    preliminary injunction is withdrawn without prejudice.

2    Again, if you on further consultation think there is a

3    reason why you need to bring it again, you are certainly

4    free to do that.

5            Okay.  That's issue number one.

6            Number issue number two.  I think that, let me

7    ask the plaintiffs one other question.  I just saw, there

8    was an remand from the D.C. Circuit on the appeal which

9    again is moot for now given what the government has done.

10   But there is an issue about whether you folks want to elect

11   to look at this under a Rule 60 motion.  Maybe I haven't

12   had a chance to read it and figure out what you're going to

13   do.  But if you had, I just wanted to know your approach on

14   that, Mr. Hasselman.

15           MR. HASSELMAN:  Thank you, we have not had an

16   opportunity confer with our clients on that.  It wasn't

17   clear to me whether the appeals Court was remanding it

18   directly to you for reconsideration of our request to

19   vacate the preliminary injunction or indicating that we

20   should make a motion.  So, I don't think we've had an

21   opportunity to run that one to ground yet.

22           THE COURT:  Okay.  That's fair enough.

23           Mr. Ducheneaux?

24           MS. DUCHENEAUX:  Your Honor, although Cheyenne

25   River is technically an intervenor in the appeal we were

```
 1  not parties to the preliminary injunction order that was

 2  issued.  So we defer to Standing Rock on that.

 3            THE COURT:  Fair enough.

 4            So again, Mr. Hasselman, if you are seeking some

 5  kind of relief, you can file a motion but I'll not take

 6  other steps on that until you do.

 7            Okay.  Thank you everybody.  Again, we'll wait

 8  for the briefing.

 9            Mr. Debold, any preview on likely filing date for

10  your next set of briefing?  I know you have until the end

11  of the month.  But you indicated you would likely do it

12  sooner.  Nothing I'll hold you to, but just--

13            MR. DEBOLD:  We're aiming for Monday, possibly

14  earlier.

15            THE COURT:  Thank you very much.

16            Then the government's will be due, 10 days

17  thereafter, Mr. Marinelli.

18            If I wish to have a hearing on that, I'll

19  certainly inform counsel and give you some advanced notice.

20  And also tell you if there are any specific issues I would

21  like to hear.  Okay.  Thank you all.  Appreciate you being

22  here.

23            (Whereupon, at 3:46 p.m., the hearing concluded.)

24

25
```

```
 1

 2                        CERTIFICATE OF REPORTER

 3                  I, Lisa Walker Griffith, certify that the

 4       foregoing is a correct transcript from the record of

 5       proceedings in the above-entitled matter.

 6




10       _____     _____
         Lisa Walker Griffith, RPR                          Date
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```