```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```
----------------------------X

STANDING ROCK SIOUX TRIBE,

              Plaintiff

              v.                           Civil Action 16-1534.

U.S. ARMY CORPS OF ENGINEERS,

              Defendant

----------------------------X

                            Washington, D.C
                        Monday, January 30, 2017
                           11:00 a.m.

        TRANSCRIPT OF STATUS CONFERENCE
     BEFORE THE HONORABLE JAMES E. BOASBERG
         UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:   Jan Hasselman, Esq. (telephone)
                   Stephanie Tsosie, Esq. (telephone)
                   Patti A. Goldman, Esq. (telephone)
                   EARTHJUSTICE LEGAL DEFENSE FUND
                   705 Second Avenue, Suite 203
                   Seattle, WA 98104-1711
                   (206) 343-7340

Intervenor Cheyenne   Nicole E. Ducheneaux, Esq. (telephone)
River Sioux Tribe:    Conly Schulte, Esq.  (telephone)
                   FREDERICKS PEEBLES & MORGAN LLP
                   3610 North 163rd Plaza
                   Omaha, NE 68116
                   (402) 333-4053

Court Reporter:      Lisa Walker Griffith, RPR
                   U.S. District Courthouse
                   Room 6507
                   Washington, D.C.  20001
                   (202) 354-3247

```
APPEARANCES:  (Cont'd.)


For the Defendant:   Matthew M. Marinelli, Esq.
                     Erica M. Zilioli, Esq.
                     U.S. DEPARTMENT OF JUSTICE
                     Environment & Natural Resources Division
                     P.O. Box 663, Ben Franklin Station
                     Washington, DC 20044-0663
                     (202) 305-0293



For Cross Claimant   David Debold, Esq.
Dakota Access:       William S. Scherman, Esq.
                     GIBSON, DUNN & CRUTCHER, LLP
                     1050 Connecticut Avenue, NW
                     Washington, DC 20036
                     (202) 955-8551

                     William Leone, Esq.
                     Norton Rose Fulbright US LLP
                     799 9th Street NW, Suite 1000
                     Washington, DC 20001-4501
                     (202) 662-0200
```

P R O C E E D I N G S

     THE DEPUTY CLERK:  This is Civil Action 16-1534. Standing Rock Sioux Tribe versus United States Army Corps of Engineers.

     Would counsel on the phone please identify yourselves for the record.

     MR. HASSELMAN:  Good morning, Your Honor.  This is Jan Hasselman.  I'm with Stephanie Tsosie and Patti Goldman on behalf of Standing Rock Sioux Tribe.

     THE COURT:  Good morning.

     MS. DUCHENEAUX:  Good morning, Your Honor.  This is Nicole Ducheneaux for Cheyenne River Sioux Tribe.  I also have Conly Schulte and (inaudible))

     MR. MARINELLI:  Good morning, Your Honor. Matthew Marinelli with me Erica Zilioli of the Department of Justice and Melanie Casner who is counsel with the Army Corps of Engineers.

     THE COURT:  Good morning to you folks.

     MR. DEBOLD:  Good morning, Your Honor.  David Debold on behalf of Dakota Access, with me are Bill Leone and Miguel Estrada.

     THE COURT: Welcome to all of you.  We are here today, everyone, including the public, to be oriented on where we are.  In order to go forward with the pipeline, Dakota Access needs an easement or right of way from the

Army Corps of Engineers under the Mineral Leasing Act.

What is in front of me is Dakota Access' Motion for Summary Judgment on its cross claim asking for a ruling that the Corps' decision in July of last year has already effectively granted such easement or right of way and they should be permitted to go forward.

The Corps and the Tribes disagree arguing that the easement has yet to be granted. With that backdrop, that has been the briefing that has been, we've under gone at the moment. And then the reason I called this status was the executive order that was issued by the president on January 24th in which he directed the Secretary of the Army to instruct the Assistant Secretary of the Army for Civil Works and the U. S. Army Corps of Engineers to review and approve in an expedited manner request the approval to construct the DAPL, including easements or rights of way across federal areas under the MLA.

So, what I don't want to have happen is what happened last time, as I'm sure you folks understand, which is for me to issue a ruling and then to hear immediately thereafter that the issue is now moot because the government has taken a further step.

So, what I would like to know, Mr. Marinelli, and maybe you can't answer my first question, is what does this mean.

MR. MARINELLI: Your Honor, I think at this point what you can say is that the Corps and the Army are continuing to undertake their decision-making process regarding the Lake Oahe easement application in accordance with the presidential memorandum. I know the memorandum says review and approve in an expedited manner to the extent it is permitted by law and is warranted, as you noted, the Army and the Corps are continuing to look at the administrative record and moving to implement that memorandum.

At this point I can't tell you, I can't give you a timetable for the completion of that decision-making process.

THE COURT: Also part of the executive order ordered the officials to consider whether to withdraw the notice of intent to prepare an Environmental Impact Statement. So, is that part of the decision that is under review?

MR. MARINELLI: I think my understanding is that the army is reviewing, trying to implement all portions of the -- all of the reviews that are called for in this memorandum.

THE COURT: In other words, though, you understand that I don't want to spend the time and again write another opinion and then, and if I say that -- in the

event I say, if I deny the Dakota Access' motion and say that you still need to get the easement, and then immediately thereafter it is granted, that would be hardly an efficient use of resources.

But you are telling me you can't give me any kind of timetable in weeks or months when this decision is going to be reached?

MR. MARINELLI:  I can't, Your Honor.  I can tell you that acting Secretary of the Army met and was, or is in a meeting today on this subject.

THE COURT:  Well, can you tell me when you might know when you will know?  In other words, if we came back in a week, you would be able to say we're going to know in two weeks or you are telling me there is no sort of next stage when you would know?

MR. MARINELLI:  I cannot tell you, I can't give you a timetable today, Your Honor.  I appreciate the Court's concern.  The government shares your desire to resolve this matter in an efficient manner.  I think that's one of the reasons why the parties agreed to put off the Tribes' and the United States' reply briefs until February 20th.  We appreciate that the Court has ordered us to apprize it of developments in the case.  But I have no further developments to report.

THE COURT:  I appreciate your filing the notice

expeditiously on the 24th, thank you.

But by staying or postponing the reply briefs on your and the Tribe's motion to dismiss, and I'll ask Dakota Access, but Dakota Access' motion is still ripe.  So is your understanding of your agreement with them is that I would hold off issuing a ruling on their motion or just your briefing would be postponed?  Are you following that question?

MR. MARINELLI:  I'm not sure I am, Your Honor.

THE COURT:  In other words, they moved for summary judgment.  You folks cross moved to dismiss and for summary judgment.  They filed an opposition to your motion and a reply on their motion.  So that is, their motion is therefore ripe.  That has been fully briefed.  What has not been fully briefed is your cross motion because that is going to be extended for three weeks.

But is your understanding that, when you talked to Dakota Access, and of course I'll ask them, that I would hold off ruling on their motion until everything was ripe or was just going to hold off ruling on your cross motion? Again, it is a little semantic because it is one major decision.

MR. MARINELLI:  I do not think Dakota Access agrees that its motion would be, that the Court would hold off on ruling on its motion when we agreed to postpone

briefing on the government's motion, I would suggest to the Court that in the interest of efficiency both motions should be addressed if necessary in the same oral argument.

THE COURT:  If I went ahead and ruled on theirs, it would moot out your motion anyway.

MR. MARINELLI:  Certainly that is a possibility.

THE COURT:  Okay.  Thank you.

Mr. Debold, let's start with the last issue.  Is it your understanding that I would still go ahead and rule on your motion?

MR. DEBOLD:  Your Honor, we didn't reach any kind of agreement on that.  But our position is that we don't, we're not asking the Court to go ahead and rule on the summary judgment motion before the completion of the other briefing.  We may change on that depending on what happens with the result of the presidential memorandum.  It just makes it clear.

The reason we didn't object to giving them more time, they essentially got 21 additional days, was that the government -- understandably there is a new person in charge of their particular division and needed some time to get up to speed.

Plus this presidential memorandum came out on the 24th.  The president claimed it was in the national interest to have the pipeline proceed in an expedited

manner. It was our understanding of that meant we were going to have a decision fairly promptly one way or the other about the right of way, reserving our argument obviously that we already have a right of way.

The problem we're facing here is that, Mr. Marinelli apparently doesn't have information, maybe it doesn't exist but he doesn't have information to tell the Court what the timeline is. Since we've agreed or since the Court has extended the time for them to file their replies on the motions to dismiss and on the plaintiff's cross motions for summary judgment, although I don't believe the Corps filed a Cross Motion for Summary Judgment, just to be clear on that, if they're not able to give us a timeline, what we suggest the Court do and we think it would be very instructive is to set a time later this week, perhaps Friday, have the person who has the decision authority in the army for this issue to come to Your Honor and give you that timeline because, if they're going to tell us it's going to be weeks, then that has a big affect on whether to go forward with, for example, hearing argument on the Motion for Summary Judgment, whether we wait for the additional briefs and be done.

That's why I said depending on how things develop we're not asking you to rule on the summary judgment motion at this time but it may become necessary if we learn that

this is going to be a long process. Our understanding is that it won't be. The army has a regulation that allows it to stop an EIS. All it has to do is give notice that it is determined that it is not necessary.

We don't think it will take a long time. But if we're hearing something different from the person in charge of that process we think that would be available information for the Court and obviously for the parties to know.

THE COURT: I agree that that would be valuable information for everybody to know. So I'll get back no Mr. Marinelli in just a minute.

What you are telling me though, Mr. Debold, until you inform the Court differently you are not asking the Court to rule on your motion.

MR. DEBOLD: Correct.

THE COURT: So before I go back to Mr. Marinelli, I'm not sure either of you folks have anything to add but I want to give you the opportunity.

Mr. Hasselman?

MR. HASSELMAN: No, Your Honor, I think holding off on the summary judgment motions that are pending for now is the way to go. We do have some other concerns about our current status that ultimately we'll have a chance to come back to.

>               THE COURT:  Okay.  Thank you.
>
>               Mr. Ducheneaux.
>
>               MS. DUCHENEAUX:  Likewise, we feel holding off on that process is fine.
>
>               THE COURT:  So Mr. Marinelli, I don't know whether we need to have the person here or not.  I assume you can make representations.  But what Mr. Debold proposes seems to me not an unreasonable position which is why I asked you when do you think you'll know when you'll know.  And your answer was, you couldn't give a date.
>
>                But it seems that we should then periodically have statuses to find out the answer to that.  Again you could file notices about it.  But I think it's more effective because we want to hear from everybody.  They may have different positions.
>
>                So how about, you know, I hope, or you may know when certain meetings may occur in your division and in the agency.  But if we came back in a week, 10 days, what is your sense of what would be a productive time to come back?  Because I will hold off per Mr. Debold's request ruling on that motion.
>
>               MR. MARINELLI:  Your Honor, I think I would like to respond to a few different issues.  First, to address the attendance by acting Secretary of the Army in this courtroom, I strongly oppose that.  He is a very busy,

high-ranking official with a lot of important duties.

As to coming back to a status conference as opposed to providing the Court with written notice, we would suggest that it probably would be more efficient for us to provide written notice than return to a status conference.  But as, in part because I don't know when I will have concrete information for the Court.  But if the Court wishes to set a status conference, I think certainly next week would be much preferable to the Friday conference that Mr. Debold suggested.

And I will reiterate that my clients are working towards responding to that presidential memorandum, they're actively working on that.

THE COURT:  Okay.  Thank you.

So Mr. Debold, again, the extension right now and the briefing is through February 20th.  So I'm not sure we need to come back on Friday.  But I'm happy to come back on a day next week that you would prefer.  So I think you are coming further than Mr. Marinelli is.

MS. DUCHENEAUX:  Actually I'm coming from across town myself.  Mr. Leone has to come down from New York.  I don't think he minds.  I'm still going to push for Friday and if not, Monday.

Your Honor, I think, I understand Mr. Marinelli's position.  I used to be in that position as the government

attorney and documents have all the information that you want to have necessarily.

I think that those who are in the position to make a decision about the timeline, there is nothing like an order from a federal judge saying I need to have an update, whether it be Mr. Marinelli relaying it to the person who is too business or whether the person wants to come in person, that has affect on their attention that something needs to be decided soon.

I think if you set it for Friday, if they don't have an answer, you can deal with it that way. But I think putting a deadline in front of somebody that comes from a federal judge usually that has kind of a persuasive affect.

THE COURT: I'll set it for Monday. As we see, a lot happens over the weekend these days. So I'll set it for Monday and we'll see, I'll let you folks look at your schedules.

Mr. Hasselman, you are still calling in from Seattle?

MR. HASSELMAN: Yes.

THE COURT: I don't want to inconvenience you. So is 11:30 better than 11:00 or earlier?

MR. HASSELMAN: 11:00 onward is fine.

THE COURT: Okay. Thank you. Are you available on that day?

>MR. HASSELMAN: Yes, I am.
>
>THE COURT: Ms. Ducheneaux?
>
>MS. DUCHENEAUX: Yes, Your Honor, I am available.
>
>THE COURT: Mr. Marinelli, is that available for you.
>
>MR. MARINELLI: Yes, I am available at that time, Your Honor.
>
>THE COURT: Thank you.
>
>Mr. Debold.
>
>MR. DEBOLD: That works for us.
>
>THE COURT: I'll set it for that date and time again. I know you have the message, Mr. Marinelli, that the more information you can have for me on that day, the better. I will then, in the interim, not issue any orders relating to the Dakota Access' pending Motion for Summary Judgment and obviously the government and the Tribes' motions, the briefing is still not due until the 20th.
>
>Anything else that either side wants to raise this morning?
>
>Mr. Debold?
>
>MR. DEBOLD: FYI, Your Honor, we've been here a couple of times talking about the protection of certain documents which has information in them that Dakota Access believes should be subject to a protective order. We have not been able to reach agreement on that. So, we expect to

be filing a motion probably later today.  It affects about 19 documents.

      We'll give the Court a sealed version of what things we think need to be protected.  Just to be clear, all we're asking is that not be made public information and the motion will explain all that.  But just to give you a heads up on that.

      THE COURT:  Thank you.

      Mr. Marinelli?

      MR. MARINELLI:  Nothing further from the United States.

      THE COURT:  Thank you, Mr. Hasselman, anything else?

      MR. HASSELMAN:  I wanted to touch on a concern that we have.  Right now, the plaintiffs' claims are being held in abeyance.  And our concern with the presidential memorandum is that we are at risk of coming into a situation where we're all waiting for the government to take action, and then we're back, potentially back in a mode of emergency briefing.

      And of greatest concern is the risk that we'll be stuck with a fait accompli.  That, by the time the issues can be briefed, the work is complete and operating.  We have big legal concerns about the existing permits that have been existed from the beginning, those would be

ripened immediately if the easement is issued.  Normally there is a 14 day waiting period after notification to Congress.

But the presidential memorandum asks the Army Corps to look into waiving that 14 day waiting period.  We're not aware of any provision in the rules that would allow for that.

So, our concern that the construction will be complete before we can seek any relief from the Court and the government would be asking for more time to file a brief and compile a record.

So we would like to discuss whether the Court can impose some kind of waiting period to allow these issues to be briefed before construction can begin, or at least time for us to get into court because, as we understand it, the work could be completed fairly quickly.

THE COURT:  I understand that issue.  That is certainly something I've thought about as well.  I mean, in the event the government were to grant the easement that you would be back seeking relief.  But it would seem that the injury would be the actual, at this point would be the opening of the pipeline for oil rather than the digging under the lake given my prior ruling.  So in other words, isn't there a little more time that you would have before irreparable harm would occur in your mind?

>        MR. HASSELMAN:  Well, I'm not sure, totally sure
> my clients would agree completely with that.  I do agree
> that the turning on of the stay is really the operative
> time.  But it would be useful to get some insight from the
> Dakota Access team into what that timeline looks like.
>
>        We understand from media reports that workers are
> staged nearby.  And we've heard the estimate of two weeks
> from the resumption of construction to operating the
> pipeline.  That's from when we heard months ago when we
> were talking about 90 days.
>
>        THE COURT:  I think it is a reasonable question.
> So Mr. Debold, let me ask you, again, let's say either by
> my ruling or by the government's ruling, an easement is
> granted.  Can you walk me through as best you can what
> happens then in terms of timeline?
>
>        MR. DEBOLD:  I don't have a timeline for you.  We
> can go back to the client and find out.  But process as I
> understand it is they have to do their horizontal drilling
> beneath Lake Oahe.  There is some drilling that has taken
> place before they get to the federal land, which is above.
> So that's about a mile from point to point on each side of
> the lake.  So, I can find out how long it's going to take.
>
>        I remember that we represented previously that
> before any drilling began it was going to be between two,
> three months.  Some drilling was done but I don't know if

that carves off of that figure.

There are also additional completion steps that need to be done. There are some tieing-in requirements, some substance beyond oil to see if there are any leaks. That's the process. We have to get back to Your Honor on how long that is expected to take.

THE COURT: I trust there is no objection to my ordering you to provide a notice by say the end of the week stating how long you expect it to take from a granting of the easement until oil is actually flowing through the pipeline. And that way I think that, again, what Mr. Hasselman is saying and what I have certainly been thinking is, better for us all to understand the different ramifications so that we can all be prepared depending on what happens, people will be prepared to know how to proceed.

MR. DEBOLD: Since we're going to be here on Monday, could we do it at that time, Your Honor?

THE COURT: Sure.

Thank you, Mr. Hasselman.

Ms. Ducheneaux, anything further from you?

MS. DUCHENEAUX: No, Your Honor.

THE COURT: Thank you all, see you all on Monday at 9:30.

(Whereupon, at 11:29 a.m., the hearing

concluded.)

CERTIFICATE OF REPORTER

I, Lisa Walker Griffith, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____   _____
Lisa Walker Griffith, RPR                                  Date