IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | Case No. 1:16-cv-1534-JEB |
| Plaintiff, | |
| and | |
| CHEYENNE RIVER SIOUX TRIBE, | |
| Plaintiff-Intervenor, | |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, | |
| Defendant-Cross Defendant, | |
| and | |
| DAKOTA ACCESS, LLC, | |
| Defendant-Intervenor-Cross Claimant. | |

**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Standing Rock Sioux Tribe ("Tribe") respectfully submits the following short

reply in support of Plaintiff-Intervenor Cheyenne River Sioux Tribe's ("CRST") motion for a

preliminary injunction, which the Tribe joined without separate briefing.  The Tribe joins

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

CRST's reply, and writes separately because some of the issues identified in the preliminary injunction briefing overlap with issues raised by the Tribe in its motion for summary judgment. The Tribe seeks to identify this overlap to provide the Court with context that will assist in the orderly resolution of these critical issues on summary judgment.

First, the Corps' obligations under the two Fort Laramie Treaties is a critical issue in Standing Rock's summary judgment motion. The Tribe's right to hunt, fish and gather on lands of its Reservation – including Reservation lands taken for the Oahe project – is undisputed, and recognized by the Corps in connection with this matter. *Menominee Tribe v. United States*, 391 U.S. 404 (1968); ECF 65-1 (Assistant Secretary Memo, Dec. 4, 2016), at 1; ECF117-24 (Corps October 20 Technical and Legal Analysis), at 12. One of the Tribe's fundamental claims, presented in its summary judgment motion, is that the Corps treated these rights dismissively, and never addressed the impact an oil spill would have on these vital Treaty rights.

In its brief on the preliminary injunction, DAPL addresses the Treaty in a different manner – arguing that the Tribe does not have the authority to exclude non-Indians from lands taken for the Oahe project. DAPL Br. at 21. But the right to exclude others from lands owned by the Corps is distinct from the right of Tribal members to hunt, fish and gather on their Reservation free from state law. That distinction is underscored by the very case relied upon by DAPL. *South Dakota v. Bourland*, 508 U.S.679, 690 (1993). The scope of the Corps' trust responsibilities was also addressed at great length in an authoritative memo from the Interior Solicitor. ECF 117-6 at 10 ("As the Supreme Court held in *Bourland*, there is no evidence that Congress sought to extinguish Standing Rock and Cheyenne River on-reservation hunting and fishing rights via the Oahe Acts (or any other statute)."). While we will address this matter in more detail in the summary judgment, we call this to the Court's attention, to provide a broader

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

context of how this issue is implicated in the case.  While both the Corps and DAPL discuss the Corps' responsibilities under the Treaties, as Cheyenne River explains in its reply brief, the trust issues are not essential to the RFRA claim and should not be ruled on as part of the preliminary injunction proceedings.

Second, the Tribe's motion for summary judgment includes a significant claim that the Corps did not consider and address the impact an oil spill would have on the Tribe's water rights, which are federally protected *Winters* doctrine rights.  In its preliminary injunction brief, DAPL argues that the Tribe's water rights do not include the right "to somehow occupy the water," citing *Fed. Power Comm'n v. Niagara Mohawk Power Corp*, 347 U.S. 239, 246 (1954).  DAPL Br. at 22.  But no one is claiming a right to "occupy" water, making this argument irrelevant.  Moreover, the case relied on by DAPL involves state riparian water rights, which arise under state law and are fundamentally different than federally protected *Winters* doctrine rights.  As we expect to discuss in connection with the summary judgment, *Winters* doctrine rights are vested property rights that exist independent of state law and regulation.  *See, e.g., Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976); *Criteria and Procedures for the Participation of the Federal Government in Negotiations for the Settlement of Indian Water Rights Claims*, 55 Fed. Reg. 9,223, 9,223 (Mar. 12, 1990) ("Indian reserved water rights are vested property rights for which the United States ... [holds] legal title ... in trust for the benefit of the Indians.").

A third critical issue in the pending summary judgment motions is the adequacy of the Corps' analysis of oil spill risk at, and around, the Lake Oahe crossing.  As the Tribe explains in its summary judgment motion, after careful review, in December 2016, the Assistant Secretary of the Army directed that a full environmental impact statement ("EIS") be undertaken to assess the

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

risk of oil spills on the Tribe's Treaty and other rights.  A primary concern underlying that decision was that the oil spill technical analysis prepared by DAPL had never been shared with the Tribes, or, indeed, any other agency, independent expert, or the public.  After a new President ordered the Corps to issue the Oahe easement, the Corps summarily reversed this previous considered decision, without any explanation or analysis about oil spill risks or the withheld technical documents.  This reversal is a critical component of the Tribe's summary judgment motion.

With respect to the RFRA preliminary injunction motion, CRST does not need to and does not invoke the risk of an oil spill.  For RFRA purposes, the imminent injury to Tribal members is from the *presence* of oil in the pipeline under Lake Oahe, which will desecrate the river and render it unfit for ceremonial and religious purposes.  CRST TRO Memo (ECF 99) at 2 (the "mere existence of oil under the waters of Lake Oahe will desecrate those waters"); *id.* at 26 (discussing how "construction and operation" of the pipeline harm Tribe's religious interests).  CRST's preliminary injunction motion does not seek to prove the risk of an oil spill, as no such proof is needed to establish the harm under a RFRA claim.  DAPL even acknowledges as much.  DAPL Opp. (ECF 124) at 1 (issue in RFRA claim is the "presence of oil" in the pipeline).  Even so, DAPL in its opposition to the PI repeats its belief that the risk of an oil spill is low.  *Id.* at 29-30.  These characterizations of the administrative record, which are the subject of intense dispute, are immaterial to the preliminary injunction motion—since the event that the CRST seeks to enjoin is the presence of oil in the pipeline.  They are, however, central to the pending summary judgment motions.  Accordingly, the Tribe respectfully requests that the Court not make any findings with respect to the likelihood of an oil spill until it has had an opportunity to

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

review the full record on summary judgment.[1]

In sum, the oppositions to the CRST's preliminary injunction motion have raised issues in a tangential manner that are at the core of the Tribe's summary judgment motion. The summary judgment motion includes full briefing on these issues, and provides an opportunity to review the robust administrative record, including the Interior Solicitor's considered analysis of the Treaty rights and trust responsibility. The nature of the Tribe's rights, the scope of the Corps' trust responsibility, and its consideration of oil spill risk are not issues that need to be reached by this Court in order to resolve the preliminary injunction motion.

Dated:  February 24, 2017                Respectfully submitted,


                                         */s/ Jan E. Hasselman*
                                         Patti A. Goldman, DCB # 398565
                                         Jan E. Hasselman, WSBA # 29107
                                         (*Admitted Pro Hac Vice*)
                                         Stephanie Tsosie, WSBA # 49840
                                         (*Admitted Pro Hac Vice*)
                                         Earthjustice
                                         705 Second Avenue, Suite 203
                                         Seattle, WA  98104
                                         Telephone:  (206) 343-7340
                                         pgoldman@earthjustice.org
                                         jhasselman@earthjustice.org
                                         stsosie@earthjustice.org

                                         *Attorneys for Plaintiff*

---

[1] DAPL mischaracterizes the record when it asserts that undersigned counsel agreed that the presence of oil is not irreparable harm. Opp. at 28 (citing transcript). The cited exchange is about Standing Rock's non-RFRA summary judgment motion, not the harm under CRST's RFRA argument.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2017, I electronically filed the foregoing *REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION* with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.


*/s/ Jan E. Hasselman*
Jan E. Hasselman

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*