# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>   Plaintiff,<br><br>and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>   Intervenor-Plaintiff,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>   Defendant – Cross-Defendant.<br><br>and<br><br>DAKOTA ACCESS, LLP,<br><br>   Intervenor-Defendant Cross-Claimant. | Case No. 1:16-cv-1534-JEB<br>(and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |

**INTERVENOR-PLAINTIFF'S CONSOLIDATED REPLY IN SUPPORT OF
MOTION TO AMEND COMPLAINT**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

BACKGROUND ........................................................................................................................... 2

ARGUMENT ................................................................................................................................. 4

    A.    Dakota Access Is Not Prejudiced ................................................................................ 5

    B.    The Tribe's Motion Is Not Untimely .......................................................................... 6

    C.    The Amendment Is Not Futile ..................................................................................... 7

CONCLUSION .............................................................................................................................. 8

CERTIFICATE OF SERVICE ...................................................................................................... 9

# TABLE OF AUTHORITIES

**Cases**

*Aalco Constr. Co. v. F.H. Linneman Const.*, 399 F.2d 516 (10th Cir. 1968) .................................. 6

*Djourabchi v. Self*, 240 F.R.D. 5 (D. D.C. 2006) ............................................................... 4, 6, 7, 9

*\*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................................................... 4, 9

*Lyng v. Northwest Indian Cemetery Protective Assoc.*, 485 U.S. 439 (1989) ................................. 8

*\*Nat'l Black Chamber of Commerce v. Busby*, 795 F. Supp. 2d 1 (D. D.C. 2011) ..................... 4, 6

*National Community Reinvestment Coalition v. Novastar Financial,*
    604 F.Supp.2d 26 (D.D.C. 2009) ............................................................................................. 8

*Richardson v. United States*, 193 F.3d 545 (D.C.Cir. 1999) ......................................................... 8

*\*Rumber v. Dist. of Columbia*, 598 F. Supp. 2d 97 (D. D.C. 2009) ....................................... 4, 8, 9

*\*Triad at Jeffersonville I, LLC v. Leavitt*, 563 F.Supp.2d 1(D. D.C. 2009) ........................... 4, 6, 7

**Statutes**

42 U.S.C. 2000bb.......................................................................................................................... 1

**Rules**

*Fed. R. Civ. P. 15 ................................................................................................................. 1, 4, 8

**Other Authorities**

82 Fed. Reg. 5543 (Jan. 18, 2017) ................................................................................................ 3

**INTRODUCTION**

The Cheyenne River Sioux Tribe's ("Tribe") Motion to Amend Complaint (ECF No. 97) ("Motion") should be granted because it falls squarely within the liberal policy to permit amendment of pleadings contained in Fed. R. Civ. P. 15. Justice requires the Tribe's claims based upon a violation of its rights under the Religious Freedom Restoration Act ("RFRA") (42 U.S.C. 2000bb, et seq.) and First Amendment Free Exercise Clause be tested on the merits in this Court. Defendants Dakota Access, LLC ("Dakota Access") and the U.S. Army Corps of Engineers ("Corps") simply have not met their burden to show undue prejudice, undue delay, and futility of the proposed amendment.[1]

Dakota Access sets forth a litany of irrelevant events involving the pre-July 2016 administrative process. It then makes the unsupported assertion that the Tribe somehow engineered, to Dakota Access' detriment, the continuing administrative process that began in September 2016, which was actually instituted by its co-defendant, the Corps. In the final analysis however, Dakota Access has simply failed to demonstrate how the present Motion creates undue delay or undue prejudice to it. Additionally, Dakota Access fundamentally misstates the standard for determining futility of amendment. The governing standard in this jurisdiction and others is that amendments should be freely granted, and it is an abuse of discretion to deny an amendment where there is insufficient demonstrated reason to deny the amendment. The Motion should be granted.

---

[1] The Corps filed what can fairly be characterized as a non-substantive opposition to the Motion. The Corps makes no arguments, but simply sets forth an objection. This is a consolidated Reply to the Corps' Opposition and Dakota Access' Opposition, but in substance is a reply to the substance of Dakota Access' Opposition.

## BACKGROUND

For the purposes of the Motion, the background on this matter can be categorized into two parts: matters occurring before the Corps' issuance of the July 2016 authorizations to Dakota Access; and matters occurring after the issuance of the July 2016 authorizations. Matters occurring before the July 2016 auhotizations issued are not relevant to this Motion. Even so, it warrants noting that Dakota Access freely admits that the Black Snake prophecy was publicly known years before the July 2016 EA issued. See Dakota Access' Opposition at n.1. Additionally, it is beyond question that the Tribe raised its concerns about the sacred nature of the water during the pre-July 2016 administrative process. (ECF Nos. 143 and 143-1.) The instant Motion focuses mainly on events occurring after the July 2016 authorizations, however.

Dakota Access makes the unsupported and false assertion that the Tribe "engineered" a "continuation of the administrative process" after the issuance of the July 2016 authorizations. Dakota Access' Opposition, p. 2. Dakota Access relies on this false accusation to support its claim that it was somehow prejudiced by this process. To the contrary, it was the Tribe that was prejudiced. The record in this matter clearly shows that the Corps, Dakota Access' co-defendant, was solely responsible for the continuation of the administrative process. This was a process during which, at every step, the Corps led the Tribe to believe that it would have an administrative forum to voice its RFRA and First Amendment concerns. And it was a process that was ended without either a reasoned explanation or consideration of issues that the Tribe justifiably believed it would be provided by the Corps.

Contrary to Dakota Access' assertion, the post-July 2016 process did not begin on January 18, 2017. Dakota Access' Opposition, p. 10. It began on September 9, 2016 with the issuance of a joint statement by the Justice Department, Corps, and Department of the Interior ("September

9th Statement"). The September 9th Statement clearly stated that the government was "reconsider[ing]" its previous decisions on the pipeline construction around Lake Oahe. ECF 80-2 at Ex. E. On November 14, 2016, the Corps issued a statement setting forth that "additional discussion and analysis are warranted" on the pipeline ("November 14th Statement"). ECF 80-2 at Ex. H. On December 4, 2016, the Corps issued a statement denying Dakota Access' easement, explaining that "more rigorous exploration and evaluation of reasonable siting alternatives, and greater public and tribal participation" will be undertaken by the Corps ("December 4th Statement"). ECF 80-2 at Ex. B. On January 18, 2017, the Corps caused to be filed in the Federal Register a Notice of Intent to Prepare and Environmental Impact Statement ("EIS") on the Lake Oahe crossing. 82 Fed. Reg. 5543 (Jan. 18, 2017). Then, of course, on February 8, 2017, the entire process was abruptly halted, and the easement was granted without the Corps conducting the EIS. ECF 96-1. Contrary to the implausible fabrication set forth in Dakota Access' briefing, the Tribe did not create or drive this tortuous process. On the contrary, the Tribe was the victim of this process, as it was led to believe it would have the ability to present a broad range of concerns not previously considered by the Corps, including its religious freedom concerns, without the need to litigate these issues. This litigation is now the last forum in which the Tribe's rights can be considered.

The litigation is far from over. There is no trial date set. The Court has not made a ruling on any dispositive motions. Even rulings on the currently pending Motions and Cross Motions for Summary Judgment will not dispose of this matter as both the Cheyenne River Sioux Tribe and the Standing Rock Sioux Tribe have brought motions for *partial* summary judgment and recently consolidated plaintiffs, the Oglala Sioux Tribe and the Yankton Sioux Tribe, have not filed any dispositive motions. Further, the Corps has not filed its answer to the Tribe's First Amended

Complaint and neither defendant has filed an answer to the uncontested post-easement claims contained in the Tribe's Second Amended Complaint at issue in the present Motion. Importantly, the record on this matter is still dynamic because the post-easement administrative record materials were just filed on March 21, 2017. Motions to supplement the administrative record are possible, and the evidentiary record is still being developed. The procedural status of this matter is in its infancy.

## ARGUMENT

The standard for allowing leave to amend is liberal, and this liberality is a "mandate to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by plaintiff may be a proper subject for relief, [plaintiff] ought to be afforded an opportunity to test [plaintiff's] claim on the merits."). Leave to amend should be granted in the absence of any apparent or declared reason, such as undue delay or prejudice to opposing parties. *Id.* The non-movant generally carries the burden of persuading the court to deny leave to amend. *E.g., Rumber v. Dist. of Columbia*, 598 F. Supp. 2d 97, 102 (D. D.C. 2009). Prejudice typically will not exist at the early stages of litigation, such as before a trial date is set or discovery has begun. *See, e.g., Nat'l Black Chamber of Commerce v. Busby*, 795 F. Supp. 2d 1, 6 (D. D.C. 2011). Federal Rule of Civil Procedure 15(a) does not prescribe any time limits in amending. Delay alone is an insufficient reason to deny leave; instead, the non-moving party must show prejudice. *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D. D.C. 2006); *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F.Supp.2d 1, 11(D. D.C. 2009). If no prejudice is found, the amendment must be allowed. *Triad at Jeffersonville I, LLC*, 563 F. Supp. 2d at 11. Dakota Access has failed to show prejudice. The delay it complains of is either not relevant or not significant, and it is certainly not prejudicial.

### A. DAKOTA ACCESS IS NOT PREJUDICED

In determining whether an amendment is inappropriate, one of the most important factors is whether the party opposing the amendment can demonstrate that it is prejudiced by the amendment. *Djourabchi*, 240 F.R.D. at 13. Dakota Access has failed to demonstrate any prejudice that would be caused by granting the Motion. Instead, Dakota Access complains generally about having to be in this lawsuit at all. It complains that "any lawsuit" casts uncertainty on the project, Dakota Access' Opposition, p. 7, and that a possible "rerouting" of the project is also prejudicial. However, these issues are not related to the Motion.

This lawsuit, and any uncertainties created by it, have been pending since August 2016, and they are not yet resolved. A claim that is somewhat delayed or even one based on new legal theories is not objectionable unless the other party is prejudiced. *Triad at Jeffersonville I, LLC*, 563 F.Supp.2d at 11; *Aalco Constr. Co. v. F.H. Linneman Const.*, 399 F.2d 516, 519 (10th Cir. 1968). Dakota Access writes as though this matter is over and it has won. It makes the unsupported claim that the Tribe's proposed amendment will prolong this litigation. But, prejudice typically will not exist at the early stages of litigation, such as before a trial date is set or discovery has begun. *See Nat'l Black Chamber of Commerce*, 795 F.Supp.2d at 6. That this litigation is in its early stages is highlighted by the fact that two new plaintiffs, the Oglala Sioux Tribe and the Yankton Sioux Tribe, were consolidated into this litigation less than a month ago in a motion that Dakota Access did not oppose. *See* ECF No. 174. Neither of the new parties' claims have been briefed or considered by this Court.

Dakota Access cannot claim prejudice by relying on considerations that are attendant to the already existing litigation. Nor can it claim prejudice based upon its decision to continue with construction of the project after this litigation was filed in August 2016. Dakota Access took a

calculated risk by continuing construction while this litigation was pending, and now it is attempting to use its own reckless behavior as a basis to deny the instant Motion. The oil company's poor judgment does not create prejudice.

### B. THE TRIBE'S MOTION IS NOT UNTIMELY

As set forth above, mere delay, without a showing of prejudice, is not enough to deny this Motion. *Djourabchi*, 240 F.R.D. at 13; *Triad at Jeffersonville I, LLC*, 563 F.Supp.2d at 11. Dakota Access has failed to show prejudice, and this fact alone should decide the matter. However, the Motion is timely in any event.

Dakota Access' primary argument regarding delay rests on its claim that the Tribe did not sufficiently present its RFRA claims to the Corps in the administrative process prior to July 2016. However, this is not the correct measure. Timeliness of an amendment will usually be considered in the context of the litigation, measured from the time between the last pleading and the amendment. *Djourabchi*, 240 F.R.D. at 13.

The Tribe's First Amended Complaint, the operative pleading, was filed on September 8, 2016. The very next day the government issued the September 9th Statement informing all parties that it was reconsidering its decisions on the project— *i.e.*, that the agency's review was not yet finished. Then again on November 14th and December 4th, the Corps issued official statements informing the parties that the administrative process was ongoing and that it wanted to engage further with the affected Tribes prior to making a final decision. The Corps' official EIS notice was filed in the Federal Register on January 18, 2017. Based upon the Corps' position on these issues, the Tribe reasonably believed that the administrative process was not over and that it would be able to present further concerns to the Corps in that process, rendering further amendment of the complaint in this litigation potentially unnecessary, and premature. The Tribe sought its

6

amendment shortly after the Corps abruptly changed course and terminated its administrative review process on February 8, 2017.

Immediately thereafter, the Tribe sought to amend its complaint to assert RFRA and First Amendment claims that it had just discovered would not be considered by the Corps. Dakota Access' co-defendant, the Corps, is solely responsible for any alleged delay in the filing of the Tribe's Amended Complaint that asserts is RFRA and First Amendment claims. The Tribe's amendment is not untimely.

### C. THE AMENDMENT IS NOT FUTILE

Dakota Access offers no substantive argument on why the Motion is "futile." Instead, it attempts to apply the "likelihood of success" standard applicable to a motion for preliminary injunction to the Motion.[2] Dakota Access' Opposition, p. 12. However, the standards are vastly different when considering the plain meaning of the words "futile" versus "likely." *See Nat'l Cmty. Reinvestment Coalition v. Novastar Fin.,* 604 F.Supp.2d 26, 31 (D.D.C. 2009)("But even if defendants are right [about plaintiff's proposed amendment being frivolous] a low likelihood of success is not an acceptable reason for denying leave to amend."); *Richardson v. United States*, 193 F.3d 545, 548-49 (D.C.Cir. 1999) (holding that standard for granting a motion to amend is whether the amendment would futile).

Rule 15 is much more liberal than the "likelihood of success standard" applicable to injunctions. Fed. R. Civ. P. 15(a) mandates that leave is to be freely given when justice requires. *Rumber,* 598 F.Supp.2d at 102. The purpose of the Rule 15 is "to facilitate a *proper decision on the merits*." *Rumber*, 598 F.Supp.2d at 103 (emphasis added) (internal quotations deleted). "If

---

[2] This Court's decision on the Tribe's Motion for Preliminary Injunction is currently on appeal to the D.C. Circuit Court of Appeals. A major issue for that court will be the applicability of *Lyng v. Northwest Indian Cemetery Protective Assoc.*, 485 U.S. 439 (1989) to this controversy. This Court should not determine that the Motion is futile based on an application of *Lyng* while the effect of *Lyng* is still unresolved.

the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [Plaintiff] *ought to be afforded an opportunity to test his claim on the merits*." *Foman*, 371 U.S. at 182; *Rumber*, 598 F. Supp. 2d at 102 (emphasis added). It is Dakota Access' burden to show that the Motion would be "futile." *Djourabchi*, 240 F.R.D. at 13. It has not done so. The Tribe must be allowed to test its RFRA claims on the merits.

## CONCLUSION

For the foregoing reasons, the Tribe's Motion for Leave to Amend First Amended Complaint should be granted.

Dated: April 3, 2017

                                                               CHEYENNE RIVER SIOUX TRIBE,
                                                               Intervenor-Plaintiff,

By:   /s/ Nicole E. Ducheneaux
       Nicole E. Ducheneaux
       Fredericks Peebles & Morgan LLP
       3610 North 163rd Plaza
       Omaha, NE 68116
       Telephone: (402) 333-4053
       Facsimile: (402) 333-4761
       Email: nducheneaux@ndnlaw.com

       Conly J. Schulte
       FREDERICKS PEEBLES & MORGAN LLP
       1900 Plaza Drive
       Louisville, CO 80027
       Telephone: (303) 673-9600
       Facsimile: (303) 673-9839
       Email: cschulte@ndnlaw.com

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 3rd day of April, 2017, a copy of the foregoing was filed electronically with the Clerk of the Court.  The electronic filing prompted automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

                                                      /s/ Nicole E. Ducheneaux