```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
-----------------------------X

STANDING ROCK SIOUX TRIBE, et al

                     Plaintiffs

            v.                        Civil Action 16-1534.

U.S. ARMY CORPS OF ENGINEERS, et al

                     Defendant

-----------------------------X
                                    Washington, D.C
                              Wednesday, October 18, 2017
                                     10:00 a.m.
```

```
                 TRANSCRIPT OF STATUS CONFERENCE
             BEFORE THE HONORABLE JAMES E. BOASBERG
                   UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

| | |
|---|---|
| For Plaintiff<br>Standing Rock<br>Sioux Tribe: | Jan Hasselman, Esq.<br>EARTHJUSTICE LEGAL DEFENSE FUND<br>705 Second Avenue, Suite 203<br>Seattle, WA 98104-1711<br>(206) 343-7340 |
| For Plaintiff<br>Cheyenne River<br>Sioux Tribe and<br>Plaintiff Vance: | Joseph Messineo, Esq.<br>FREDERICKS PEEBLES & MORGAN LLP<br>3610 North 163rd Plaza<br>Omaha, NE 68116<br>(402) 333-4053 |
| Court Reporter: | Lisa Walker Griffith, RPR<br>U.S. District Courthouse<br>Room 6507<br>Washington, D.C.  20001<br>(202) 354-3247 |

```
APPEARANCES:  (Cont'd.)

For Plaintiff Yankton
Sioux Tribe:          Jennifer Baker, Esq. (telephone)
                      Jeffrey Rasmussen, Esq. (telephone)
                      FREDERICKS PEEBLES & MORGAN LLP
                      1900 Plaza Drive
                      Louisville, CO 80027
                      (303)-673-9600

For Intervenor Plaintiffs:

Jumping Eagle:        Bruce I. Afran, Esq. (telephone)
                      10 Braeburn Dr.
                      Princeton, NJ 08540
                      (609) 454-7435

For the Defendant:    Matthew Marinelli, Esq.
                      Ben Schifman, Esq.
                      Erica M. Zilioli, Esq.
                      U.S. DEPARTMENT OF JUSTICE
                      Environment & Natural Resources Division
                      P.O. Box 663, Ben Franklin Station
                      Washington, DC 20044-0663
                      (202) 305-0293



Intervenor Defendant  David Debold, Esq.
Dakota Access:        William S. Scherman, Esq.
                      GIBSON, DUNN & CRUTCHER, LLP
                      1050 Connecticut Avenue, NW
                      Washington, DC 20036
                      (202) 955-8551

                      Robert D. Comer, Esq. (telephone)
                      NORTON ROSE FULBRIGHT US LLP
                      1200 17th Street, Suite 1000
                      Denver, CO 80202
                      (303) 801-2700
```

For Amici:

National Indigenous            Mary Kathryn Nagle, Esq.
Women's Resource Center,       PIPESTEM LAW FIRM, PC
Additional Amici:              1333 New Hampshire Avenue, NW
(telephone)                    Washington, DC 20036
                               (202) 407-0591


Oglala Sioux Tribe:            Michael L. Roy, Esq.
                                     HOBBS, STRAUS, DEAN &
                                  WALKER, LLP
                               2120 L Street, NW, Suite 700
                               Washington, DC 20037-1527
                               (202) 822-8282

```
 1              P R O C E E D I N G S

 2            THE DEPUTY CLERK:  This is Civil Action 16-1534.

 3   Standing Rock Sioux Tribe versus United States Army Corps

 4   of Engineers, et al.

 5            Counsel, please approach the lectern and identify

 6   yourselves for the record.

 7            We also have via telephone conference Bob Comer,

 8   Jennifer Baker, Jeffrey Rasmussen and Bruce Afran.

 9            MR. HASSELMAN:  Jan Hasselman for Standing Rock

10   Sioux Tribe.

11            THE COURT:  Good morning.

12            MR. MESSINEO:  Good morning, Your Honor.  Joseph

13   Messineo for Cheyenne River Sioux Tribe and for Steve

14   Vance.

15            THE COURT:  Good morning.

16            MR. ROY:  Michael Roy for the Oglala Sioux Tribe.

17            THE COURT:  Good morning.

18            To other plaintiffs or intervenors, other

19   plaintiffs on the phone, I heard some names but if you can

20   tell me who you are representing, that would be helpful.

21            MR. AFRAN:  Your Honor, Bruce Afran. I'm

22   representing what will be called the Jumping Eagle

23   Intervenors, the individual plaintiff.

24            THE COURT:  Okay.  Good morning.

25            MR. AFRAN:  Good morning.
```

1          MS. NAGLE:  Good morning, Your Honor.  Mary

2    Kathryn Nagle from Pipestem law.  I represent the amicus

3    party, National Indigenous Resource Center, among others.

4          THE COURT:  Good morning.

5          MS. BAKER:  This is Jennifer Baker and Jeffrey

6    Rasmussen, representing the Yankton Sioux Tribe.

7          THE COURT:  Good morning to you.

8          MS. BAKER:  Good morning.

9          THE COURT:  Okay.  Defense?

10          MR. MARINELLI:  Good morning, Your Honor.  Matt

11    Marinelli for the federal defendants.  With me at counsel

12    table is Ben Schifman, Erica Zilioli also from Department

13    of Justice and Milton Boyd from the Army Corps of

14    Engineers.

15          THE COURT:  Good morning to you folks.

16          MR. DEBOLD:  Good morning, Your Honor.  On behalf

17    of Dakota Access, David Debold.  Also with me at counsel

18    table are Bill Scherman, Rajiv Mohan, and on the phone is

19    Bill Comer.

20          THE COURT:  Good morning to you.

21          There are a few issues I want to talk about this

22    morning which mainly relate to how we're going to proceed

23    from here.  The first issue that I did raise in the opinion

24    relates to measures that plaintiffs have raised that should

25    occur during remand.  And as my opinion noted, defense

1    didn't discuss those as specifically as I would have liked

2    in the briefing.  So I would like to have them have an

3    opportunity to brief that.  But I would like to move

4    forward on that fairly quickly.  And I don't expect lengthy

5    briefing at all on this.

6            So Mr. Marinelli, how quickly can you respond to

7    plaintiffs' demands?

8            MR. MARINELLI:  Your Honor, our proposal is that

9    the United States and Dakota Access each get a chance to

10   file briefs by November 29.  I say -- I'm sorry, November

11   8th.  Sorry.  I was reading my date for the plaintiffs.  I

12   apologize.  So, by November 8th for the defendants.  I see

13   he say that date because we want to have an opportunities

14   to coordinate fully with both PHMSA and the Court.

15           THE COURT:  And the plaintiffs respond--

16           MR. MARINELLI:  By November 29th or earlier if

17   they choose.  Our proposal there would be that Standing

18   Rock and Cheyenne River, again, make the effort to file a

19   combined brief of no more than 15 pages.  And the other

20   plaintiffs attempt to coordinate with Cheyenne River and

21   Standing Rock.  If that fails, have the ability -- or if

22   they feel a need to say something else, have the ability to

23   file an additional five page brief.

24           THE COURT:  Okay.

25           Mr. Hasselman, your response to that proposal?

1            MR. HASSELMAN:  Thank you, Your Honor.

2            As we always try to do, we endeavor to reach an

3  agreement on a schedule so we wouldn't drag you into it.

4  We were not able to do that here.  Our position is that,

5  since the oil is flowing, since there is a risk, we would

6  like to get this moving more quickly than that.  We put our

7  proposal in our August brief.  Our proposal was to the

8  government was they get a week to -- after this hearing, to

9  respond.  Then we take a week after that.  So, we weren't

10  able to reach an agreement on the dates.

11            As to the pages, we will always endeavor to file

12  a joint brief with Cheyenne River Tribe but we can't make

13  that firm commitment up front.  Both parties are sovereign

14  governments.  So what I would propose in the alternative is

15  Standing Rock and Cheyenne River would use as many pages as

16  were used by the government and Dakota Access in our

17  response brief.  So we're proposing one week to file a

18  brief and one week to reply.

19            THE COURT:  Thank you.

20            Mr. Debold, do you want to be heard?

21            MR. DEBOLD:  Yes, Your Honor.  We join in the

22  Corps' request to have until November 8th for some of the

23  same reasons.  We would like to make sure that any

24  conditions that we brief are not going to be in some way

25  duplicative of what PHMSA may already be planning to do.

1          I would also note that in their briefs the

2    plaintiffs had asked for three things, actually two things.

3    The second one has two parts.  The first was to have the

4    tribes involved in the emergency planning.  Frankly, that's

5    the most urgent of the things that they have asked for.

6    And as we've said in our brief, the company has no

7    objection to being involved, have the tribes involved in

8    that process.

9          And in fact, we'll lay this out in our brief,

10   we've already had communication between the company and

11   Elliott Ward who was the representative from Standing Rock

12   who was designated by the tribe as the right person to

13   contact.  And they're planning to have a meeting.

14   Mr. Ward asked for us to wait until after October 31st to

15   have that meeting because needs to coordinate with the new

16   leadership of the tribe.  So the short point there is we're

17   already in the process of getting the tribe involved in the

18   emergency planning and developing a new--

19          THE COURT:  But that meeting wouldn't delay the

20   briefing, though.

21          MR. DEBOLD:  No.  I'm saying that issue, we think

22   it is off the table already because we've already basically

23   acquiesced to the request informally.

24          The other things that the tribes are asking for

25   are an audit process.  According to the condition that

1   PHMSA proposed that they think the Court should propose,

2   that audit would take place and be required by April 1.

3   The reporting requirements that they're asking for, again

4   recommended by PHMSA, PHMSA recommended that the reporting

5   take place by February 1st, I believe.  So, having us brief

6   this in November gives the Court plenty of time to decide

7   whether or not to impose the conditions, at least as they

8   were proposed by PHMSA because of the timing that goes with

9   those proposed conditions.  So that's part of reason why we

10  suggest that we stick with the schedule that the Corps

11  proposed.

12          THE COURT:  Okay.

13          Mr. Hasselman, do you want to respond to that?

14          MR. HASSELMAN:  Sure, briefly.

15          On the audit, what we asked for was to have the

16  audit completed by the end of the year, not as the original

17  condition had imagined.  So we do think there is some

18  urgency getting that done.

19          As to the first issue, yes, folks at Dakota

20  Access sent an e-mail on Monday of this week after your

21  ruling, initiating a conversation that we had asked to

22  begin back in May.  I don't think that takes it off the

23  table for purposes of this Court's briefing.  We'll see if

24  things can be worked out.  But we're still going to be

25  asking you to impose some conditions around that.

1        THE COURT:  Okay.

2        Mr. Marinelli, do we really need three -- tell me

3   why you need three full weeks for this?  I think, as Mr.

4   Hasselman points out, this was in their brief which was

5   filed a few months ago.

6        MR. MARINELLI:  Your Honor, I spoke with PHMSA

7   yesterday, I will speak to them today.  I've spoken with

8   the Corps about this Court's order on the subject.  My

9   understanding is that the availability of PHMSA program

10  people is going to push, is going to make it very hard for

11  me to coordinate with PHMSA by next week completely.  But I

12  see three weeks because, in my initial discussions with

13  both the Corps and PHMSA, that appeared to be the most

14  reasonable date to be able to effectively--

15       THE COURT:  It is not an unreasonable date.  But

16  I think given the fact that the issues were teed up early

17  enough, I'll give you two weeks.  I'll say November 1.

18  Again, write 10 pages, up to 10 pages for each, the

19  government and Dakota Access.

20       Mr. Hasselman, what do you want for, I'll give

21  you as much time as you want since you are the one pressing

22  the urgency.  Do you want two weeks from the first?  Do

23  you--

24       MR. HASSELMAN:  I think for docketing purpose, if

25  you put in a deadline of two weeks after the first and

1    we'll try to get it in sooner.

2            THE COURT:  Okay.  That sounds fine.

3            Does anyone else on the phone object to --

4            And what I will say is, again, I would prefer

5    combined briefs.  I understand Mr. Hasselman's point.  I

6    think that Standing Rock and Cheyenne River have certainly

7    collaborated throughout cooperatively.  But I'm not going

8    to require them to do so.  But I'll give, that your briefs

9    can be up to 15 pages each.  Any other brief by any other

10   party can be up to five pages.

11           So, Mr. Messineo, anything you want to add to

12   that?

13           MR. MESSINEO:  No, Your Honor.  Cheyenne River is

14   in agreement with Standing Rock on these issues.

15           THE COURT:  Thank you.

16           Anyone else on the phone that wants to be heard,

17   objecting to what I just proposed?

18           (No verbal response).

19           THE COURT:  All right.  Thank you.

20           So the next issue, and I know that the tribes

21   have to make tactical decisions about how to proceed in the

22   litigation.  But we have other counts that still exist,

23   namely the RFRA claim and the National Historic

24   Preservation Act claim.

25           In my preliminary injunction rulings, I have

1   ruled in part on a lack of likelihood of success on the

2   merits.  Now, I don't know whether, from a tactical or

3   appellate position, you are willing to simply -- we could

4   have cross summary judgment briefs that simply rely on the

5   papers that were already filed.  Obviously, I welcome for

6   you to produce new evidence and arguments that are going to

7   change my mind.  I thought the issues were well briefed.

8   And I certainly gave it plenty of thought the first time

9   around.  I don't know if you are going to succeed or not on

10  the merits of those.

11          But we have a few options.  One is we can wait

12  until the remand is complete and then you can brief, if

13  there is another EA after the remand or if they don't

14  change their mind on the remand, then you can brief that.

15  I'll address that.  And then we can hold the issues in

16  abeyance until then.

17          Second, we can go further with the other issues

18  either by full briefings or you can rely on what you all

19  have already briefed.  I would then just issue an opinion,

20  saying I adopt the reasoning that I had earlier.  Again,

21  that cleans it up for appellate purposes if that is what

22  you want.  Again, you have a lot of ways you can go with

23  this.  I want to accommodate everybody and be as efficient

24  as possible.

25          But why don't you give me your position, Mr.

1    Hasselman.

2          MR. HASSELMAN:  We appreciate the opportunity to

3    talk about that.  I think from my client's perspective, we

4    would want to focus on the remand.  So the option that you

5    first articulated is let's hold off until that process is

6    complete, there may be another round of amended complaints

7    and briefing, and we'll wrap it all up at that time.

8          THE COURT:  So in other words, aside from the

9    remedial steps during remand that you are briefing now, the

10   remainder of the case will be held in abeyance until after

11   the April decision on the remand.

12         MR. HASSELMAN:  I think that's right, with some

13   exceptions that might be characterized as cleaning up the

14   docket.  One thing that we are considering is taking the

15   Court of Appeals' invitation to return to you with a

16   request to vacate the preliminary injunction order as moot.

17   So, you might see that while the remand is underway and

18   some other things with respect to the protected materials.

19   But substantively I think we're talking about post remand.

20         THE COURT:  Okay.  Thank you.

21         Mr. Messineo, do you want anything different from

22   your perspective?

23         MR. MESSINEO:  No, Your Honor.  Cheyenne River

24   Sioux and Mr. Vance are perfectly satisfied with holding

25   off on briefing until the remand is finished.

1           THE COURT:  All right.

2           Any other plaintiffs on the phone who disagree?

3           MS. BAKER:  Your Honor, this is Jennifer Baker

4    for the Yankton Sioux Tribe.

5           The Yankton Sioux Tribe is looking at filing a

6    motion for partial summary judgment on issues that are

7    separate from what has already been briefed to this Court

8    and what the remand is focusing on.  The tribe takes the

9    position that the oil is still flowing, so the potential

10   for harm is still very much there.  And the tribe is

11   entitled to basically protect its interest through a motion

12   for partial summary judgment without needing to wait or

13   delay.

14          There is no rule or requirement that the tribe

15   should need to wait until after the remand is processed and

16   as a matter of due process should be able to move forward

17   with its motion.

18          THE COURT:  On which claim?

19          MS. BAKER:  One is a treaty-related claim.  But

20   it is different from the claim made by Standing Rock.  The

21   other claim is on segmentation under NEPA.

22          THE COURT:  All right.  I can't prohibit you, I

23   suppose I could, but I won't prohibit you from filing a

24   separate summary judgment if there is claim that is

25   different from what has been raised by the other

1   complaints.

2           So I won't give you a deadline for that because

3   the case will otherwise be held in abeyance until we come

4   back after remand.  But if you want to file something, you

5   may I do so.

6           Mr. Roy, I'm sorry, I didn't mean to ignore you.

7   I'm trying to keep all the players straight.

8           MR. ROY:  Very well, Your Honor.  The Oglala

9   Sioux Tribe has raised some claims that are different from

10  the NEPA claim.  For example, there is a statute, the Mni

11  Wiconi Act, that creates a federal water project for the

12  tribe, that is in trust for the tribe.  It draws water from

13  the Missouri River, would be impacted if there was spill.

14  And we've certainly informed our client of which claims we

15  feel are different than the NEPA claim that has been

16  adjudicated.  And that could go forward if the client

17  wanted us to.  Or we've identified the other option that we

18  wait until the remand.  We don't have any client

19  instruction yet.  So we've endeavored in the past week to

20  get that.  But that's where we stand right now.

21          THE COURT:  So you are sort of in the same boat

22  as Ms. Baker.

23          MR. ROY:  They sound like they're in the planning

24  process and they're going to do it.  I'm not saying that

25  we're going to do it.  I'm saying that we're still

1    identifying.

2            THE COURT:  I'm happy to give you the same

3    response that I gave her.

4            MR. ROY:  Thank you.

5            THE COURT:  Thank you.

6            All right.  Mr. Marinelli --

7            MR. AFRAN:  Your Honor, Bruce Afran for the

8    individual intervenor plaintiff.

9            I was instructed to review the issue of whether

10   there is a scientific or engineering basis for injunctive

11   relief on the flow of oil beyond what has been raised thus

12   far.

13           I frankly don't know if my client will produce a

14   report along those lines.  They've had some preliminary

15   work on it.  I can't say they're going to do it.  But I

16   wanted to give notice that that is something they're

17   considering at some point.

18           THE COURT:  Okay.  Thank you very much.

19           Anybody else on the phone?

20           Mr. Marinelli?

21           MR. MARINELLI:  Thank you, Your Honor.  First, I

22   would respectfully return to the page limits on the--

23           THE COURT:  Yes.

24           MR. MARINELLI:  I think you gave the defense side

25   10 pages and the plaintiffs side 15 pages in reply.

```
 1            THE COURT:  Yes, because the point is that they

 2    are responding to two times 10.  In other words, yours plus

 3    Dakota Access'.

 4            MR. MARINELLI:  Okay.

 5            So in that case, I would like to state our

 6    general agreement with what Standing Rock and Cheyenne

 7    River stated, that the case should largely be held in

 8    abeyance until after remand.

 9            I would like to flag a few additional issues.

10    One, the United States has four outstanding answers that

11    are due: Our answers to Standing Rock's amended complaint,

12    Cheyenne River's amended complaint, Mr. Vance's complaint

13    and the individual plaintiffs complaint.  So I would ask

14    that those be included in the matters that are held in

15    abeyance until after remand.

16            Related to that, we believe as the first

17    principle that all parties should have the opportunity to

18    amend their complaints after remand.  So we would rather

19    not answer the current complaints, we are expecting there

20    is a good chance that many parties will amend their

21    complaints.  Okay.

22            Let me ask Mr. Hasselman, any objection to

23    holding that in abeyance as well?

24            MR. HASSELMAN:  No.

25            THE COURT:  Okay.  Thank you.
```

1            MR. MARINELLI:  If I could also address the issue

2    of summary judgment briefing.

3            THE COURT:  You mean by the other parties who

4    mentioned it, other plaintiffs?

5            MR. MARINELLI:  Yes.  We do not object to Yankton

6    being able to file a Motion for Summary Judgment.  But we

7    believe that all parties should essentially just get one

8    more bite at the apple and that they should bring all their

9    claims going forward in a single summary judgment motion.

10           THE COURT:  But the parties are disparate.  You

11   mean they're disparate parties, so do you mean while -- in

12   the same timeframe?

13           MR. MARINELLI:  Not necessarily but that each

14   party get one more bite at the apple, not that Yankton

15   would have one summary judgment motion now and get to bring

16   a summary judgment motion on a different set of claims

17   later.  We would apply that to the Oglala Sioux Tribe as

18   well.

19           THE COURT:  Let me hear, Ms. Baker, your position

20   on that.

21

22           MS. BAKER:  Your Honor, there is no requirement

23   or no limitation by law on the number of summary judgment

24   motions.  If we're going to have an opportunity for

25   amending our complaint after remand, it may be that a

1    summary judgment motion would then become appropriate based

2    on those claims, separate from what we're looking at

3    bringing right now.  So we would ask that that restriction

4    not be placed on the tribe, again, as a matter of due

5    process.

6              THE COURT:  It is really a judicial efficiency

7    question.  I agree that there is no requirement that only

8    one summary judgment motion be brought.  But it is

9    difficult for the defense and for me if these are brought

10   in piecemeal and then rebrought after amendment.

11             What I'll say is this, because this all remains

12   speculative, that if any party wishes to file a summary

13   judgment motion before the remand is complete, that party

14   will first file a notice with the Court.  This would just

15   be, I'll just say a very short notice explaining the basis

16   and proposed timing because that way I can decide how I

17   want to proceed with it.  So in other words, you can't file

18   a Motion for Summary Judgment without my leave.  And after

19   you provide notice, if, in the event -- and this relates to

20   all parties, Mr. Roy and Mr. Afran, too.  That you will

21   file a notice with me and I'll permit whether I will permit

22   the filing and timing.  That's the easiest way to proceed.

23             MR. MARINELLI:  One final issue, Your Honor.  We

24   think it advisable to set a status conference after remand.

25             THE COURT:  I'm going to have periodic status

```
 1    reports, status reports every 60 days about how things are
 2    proceeding.  So we'll start, I think what I'll start is
 3    December 1.  And then February 1, April 1.  Then I'm happy
 4    to set, I agree we'll have a status after remand.  But we
 5    don't have a date when that is.  So I would hope that the
 6    April 1st status report will let me know more likely
 7    timetable.  Then we can set a status conference thereafter.
 8    Does that make sense?
 9              MR. MARINELLI:  Yes.
10              THE COURT:  So I guess, I'm open to -- this will
11    be a status report by the defense -- by the government.
12    And if any other side wants to file its own status, that's
13    fine.  But I'm mainly interested in hearing how the remand
14    is proceeding.  Okay?
15              MR. MARINELLI:  Thank you, Your Honor.
16              THE COURT:  Mr. Debold, anything you want to
17    raise?
18              MR. DEBOLD:  No, nothing further, Your Honor.
19              THE COURT:  Okay.
20              Mr. Hasselman, anything else that we have not
21    covered today?
22              MR. HASSELMAN:  No, thank you.
23              THE COURT:  Mr. Messineo?
24              MR. MESSINEO:  No, Your Honor, thank you.
25              THE COURT:  Mr. Roy?
```

1          MR. ROY:  No, Your Honor, thank you.

2          THE COURT:  Anybody else on the phone want to be

3    heard?

4          (No verbal response)

5          THE COURT:  Thank you all very much.  I'll issue

6    a minute order that reflects this proposed schedule.  And

7    we'll be in touch.  Thank you.

8          (Whereupon, at 12:02 p.m., the hearing

9    concluded.)

10

11

12

13                    CERTIFICATE OF REPORTER

14          I, Lisa Walker Griffith, certify that the

15    foregoing is a correct transcript from the record of

16    proceedings in the above-entitled matter.

17

21    _____        _____
      Lisa Walker Griffith, RPR                    Date
22

23

24

25