# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**STANDING ROCK SIOUX TRIBE,**

          **Plaintiff,**

**and**

**CHEYENNE RIVER SIOUX TRIBE,**

          **Intervenor-Plaintiff,**

**v.**

**U.S. ARMY CORPS OF ENGINEERS,**

          **Defendant.**

**and**

**DAKOTA ACCESS, LLP,**

          **Intervenor-Defendant.**

**Case No. 1:16-cv-1534-JEB**
**[Consolidated with 1:16-cv-1796 and**
**1:17-cv-267]**

## YANKTON SIOUX TRIBE AND ROBERT FLYING HAWK'S REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

# Table of Contents

Table of Authorities ………………………………………………………………… iii

Introduction………………………………………..…………………………………… 1

Reply Regarding Undisputed Facts…………………………………………………… 3

Analysis…………………………………………………………………………….... 5

   I.   Federal Defendants Violated NEPA by Failing to Analyze Numerous Connected and Similar Agency Actions in a Single NEPA Document……………………………….... 5

     A.  Requirements of NEPA……………………………………………………… 6

       1.  Segmentation is Not Allowed……………………………………………… 6

       2.  If Actions are Connected or Similar, those Actions Must be Considered in One Comprehensive NEPA Analysis…………………………………………… 7

     B.  Federal Defendants Unlawfully Segmented their Review by Failing to Analyze Connected and Similar Actions in a Single NEPA Document……………………….. 9

       1.  Federal Defendants Failed to Consider Other Federal Defendants' Respective Actions Relating to the Pipeline……………………………………………… 9

       2.  The Numerous Federal Agency Approvals for the Pipeline are Connected Actions that Should Have Been Analyzed in a Single NEPA Document…………………... 10

       3.  The Numerous Federal Agency Approvals for the Pipeline are Similar Actions that Should Have Been Analyzed in a Single NEPA Document……………………….. 18

       4.  Defendants' Argument that the Current Case is Controlled by *Sierra Club v United States Army Corps of Engineers* is Wholly Dependent on Defendants' Open Misstatement of Plaintiffs' Argument……………………………………………… 20

     C.  Under Binding Cases Applying the Anti-Segmentation Rule, this Court is Required to Remand for the Statutorily Required Single NEPA Review, and Defendants' Claims of "Harmless Error" are Incorrect…………………………………………………… 20

     D.  The Rule of Exhaustion of Administrative Remedies Does Not Preclude Plaintiffs' Segmentation Claim…………………………………………………………….... 24

   II.   Plaintiffs' National Historic Preservation Act Claims are Not Moot…………………... 29

Certificate of Service…………………………………………………………………       34

**Cases**

*Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124 (9th Cir. 2011) ................................... 28

*Bonaparte v. United States DOJ,* 531 F. Supp. 2d 118 (D.D.C. 2008) ............................ 4

*Church of Scientology of Cal. v. United States,* 506 U.S. 9 (1992) ................................ 29

*Custer County Action Ass'n v. Garvey,* 256 F.3d 1024 (10th Cir. 2001) ....................... 12

*Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752 (2004) ......................................... 14, 28

*Envtl. Prot. Agency,* 824 F.2d 1146 (D.C. Cir. 1987) ..................................... 25, 26, 27

*Evans v. Holder,* 618 F. Supp. 2d 1 (D.D.C. 2009) ................................................ 3, 4

*Finca Santa Elena Inc.,* 62 F. Supp. 3d 1 (D.D.C. 2014) .......................................... 31

*Fla. Wildlife Fed'n v. United States Army Corps of Eng'rs,* 401 F. Supp. 2d 1298 (S.D. Fla.
  2005) .......................................................................................................... 1

*Found. on Econ. Trends v. Lyng,* 817 F.2d 882 (D.C. Cir. 1987) ................................. 8

*Great Basin Mine Watch v. Hankins,* 456 F.3d 955 (9th Cir. 2006) ............................ 12

*Grunewald v. Jarvis,* 886 F.3d 893 (D.C. Cir. 2015) (D.C. Cir. 2015) ........................ 20

*Johnson v. Wash. Gas Light Co.,* 404 F. Supp. 2d 179 (D.D.C. 2005) ........................... 4

*Jones v. Rossides,* 2009 U.S. Dist. LEXIS 89017 (D.D.C. Sept. 28, 2009)*Jones v. Rossides,*
  2009 U.S. Dist. LEXIS 89017 (D.D.C. Sept. 28, 2009) ........................................... 4

*Lathan v. Brinegar,* 506 F.2d 677 (9th Cir. 1974) .................................................. 2

*Native Ecosystems Council v. Dombeck,* 304 F.3d 886 (9th Cir, 2002) ................... 18, 20

*Natural Resources Defense Council v. Hodel,* 865 F.2d 288 (D.C. Cir. 1988) ................ 1

*Natural Resources Defense Council, Inc. v. Morton,* 458 F.2d 827 (D.C. Cir. 1972) ........ 15

*Network v. Pritzker,* 139 F. Supp. 3d 102 (D.D.C. 2015) ........................................ 13

*Nevada v. Doe,* 457 F.3d 78 (D.C. Cir. 2006) ....................................................... 8

*Oceana, Inc. v. Evans,* 2005 WL 555416 (D.D.C. Mar. 9, 2005) ........................... 13, 14

*Ramey v. Darkside Prods.*, 2004 U.S. Dist. LEXIS 10107 (D.D.C. May 17, 2004)*Ramey v.
  Darkside Prods.*, 2004 U.S. Dist. LEXIS 10107 (D.D.C. May 17, 2004) ..................... 4

*Reliance Std. Life Ins. Co. v. Masoomeh Ashoori Matini,* 05-01101 (HHK), 05-02254, 2006 U.S.
  Dist. LEXIS 46889 (D.D.C. July 12, 2006) ......................................................... 3

*Riverkeeper Network v. FERC,* 753 F.3d 1304 (D.C. Cir. 2014) ..........................Passim

*Sierra Club v. U.S. Army Corps of Engineers,* 803 F.3d 31 (D.C. Cir. 2015)........ 15, 20, 29

*Slovinec v. Am. Univ.,* 565 F. Supp. 2d 114 (D.D.C. 2008)....................................... 4

*Thomas v. Peterson,* 753 F.2d 754 (9th Cir. 1985)................................................... 1

*Vieux Carre Property Owners, Residents and Associates, Inc. v. Brown,* 948 F.2d 1436 (5th Cir.
  1991) ........................................................................................................ 32

*Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519 (1978) ............. 24

*Weiss v. Kempthorne,* 580 F. Supp. 2d 184 (D.D.C. 2008) ................................... 10, 14

**Statutes**

5 U.S.C. § 500................................................................................................ 15

42 U.S.C. § 4321 ............................................................................................. 1

54 U.S.C. § 100101 .......................................................................................... 3

**<u>Regulations</u>**

40 C.F.R. § 1502.4 ............................................................................................ 7, 8, 28

40 C.F.R. § 1502.4(a) .................................................................................................. 8

40 C.F.R. § 1508.18(a) .............................................................................................. 11

40 C.F.R. § 1508.25 ....................................................................................... 6, 18, 27

40 C.F.R. § 1508.25(a) ..................................................................................... 7, 12, 27, 28

40 C.F.R. § 1508.25(a)(1) ..................................................................................... 8, 18

40 C.F.R. § 1508.25(a)(1)(iii) ................................................................................ 10,23

40 C.F.R. § 1508.25(a)(3) ........................................................................................ 18

## INTRODUCTION

Plaintiffs Yankton Sioux Tribe ("Tribe") and Robert Flying Hawk (together, "Plaintiffs") submit the following as their reply in support of their motion for partial summary judgment and their opposition to Defendant U.S. Army Corps of Engineers ("USACE") and Defendant U.S. Fish and Wildlife Service's ("USFWS") (together, "Federal Defendants") cross motion for partial summary judgment in which Intervenor-Defendant Dakota Access, LLP ("Dakota Access") has joined.

Plaintiffs moved for partial summary judgment on two distinct claims. First, Federal Defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, et seq., when they chose to conduct not one, but three separate NEPA analyses and issued three separate Environmental Assessments ("EA") to analyze the potential environmental effects of their multitude of approvals necessary for Dakota Access to construct the Dakota Access Pipeline ("Pipeline") when the actions were plainly both connected and similar. Second, Defendants violated NEPA by failing to consider impacts of the Pipeline on its treaty/usufructuary rights which are likely to be violated through the operation of the Pipeline, which has already leaked at least three times.

The primary rationale for the anti-segmentation rule is "to prevent agencies from dividing one project into *multiple individual actions* 'each of which individually has an insignificant environmental impact, but which collectively have a substantial impact'" and to prevent agencies from evading their NEPA responsibilities. *Natural Resources Defense Council v. Hodel*, 865 F.2d 288, 297-98 (D.C. Cir. 1988), quoting *Thomas v. Peterson*, 753 F.2d 754, 758 (9th Cir. 1985) (emphasis added); *Fla. Wildlife Fed'n v. United States Army Corps of Eng'rs*, 401 F. Supp. 2d 1298, 1313 (S.D. Fla. 2005). Including connected and similar actions in the scope of a NEPA

1

review is key to fulfilling the overall purpose of the NEPA process, which "is intended to help public officials make decisions that are based on understanding of environmental consequences, and take actions that protect, restore, and enhance the environment." 40 U.S.C. § 1502.1. This is also the sole issue in Plaintiffs' first claim for partial summary judgment: whether or not Federal Defendants unlawfully segmented their reviews of their various permits and approvals for the Pipeline, thereby evading their responsibilities under NEPA. When agencies unlawfully segment their reviews of connected or similar actions as Federal Defendants have here, the combined impacts of those actions, which cannot be fully known and understood absent a combined NEPA process, cannot be taken into account by public officials.

While NEPA is a procedural statute and does not mandate the particular outcome of a NEPA process, its procedures, such as determining the proper scope by including connected and similar actions, "'are designed to secure the accomplishment of the vital purpose of NEPA. *That result can be achieved only if the prescribed procedures are faithfully followed*.'" *Del. Riverkeeper Network v. FERC*, 753 F.3d 1304, 1309-10 (D.C. Cir. 2014), quoting *Lathan v. Brinegar*, 506 F.2d 677, 693 (9th Cir. 1974) (emphasis added). It is imperative, therefore, that this Court apply NEPA and its implementing regulations strictly, which can only result in a finding that Federal Defendants unlawfully segmented the NEPA process with respect to the various federal approvals for the Pipeline.

After reviewing Federal Defendants' response, and given the complexities of rules for interpretation of treaties, Plaintiffs hereby withdraw the second claim presented in their motion for partial summary judgment regarding Federal Defendants' failure to consider the Tribe's treaty rights, and choose not to pursue that claim at this time.

Finally, Defendants' cross motion for summary judgment regarding Plaintiffs' claims under the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 100101, et seq., are properly before this Court.   Defendants allege that Plaintiffs' NHPA claims, Counts 2-5 of Plaintiffs' complaint, are moot because construction of the Pipeline has been completed.   However, the risk of a spill through operation and maintenance of the Pipeline still very much exists and threatens the Tribe's cultural and historic sites.   Completion of Pipeline construction did nothing to negate this risk, which means that Plaintiffs' claims are still viable and are not moot.

## REPLY REGARDING UNDISPUTED FACTS

As Defendants failed to controvert any facts identified by Plaintiffs in the statement of material facts filed in conjunction with their motion for partial summary judgment, this Court should assume Plaintiffs' facts are admitted in accordance with LCvR 7(h) ("Rule 7(h)").   Rule 7(h)(1) reads, in part, that, "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."   This point finds significant support in case law.

In the case of *Reliance Std. Life Ins. Co. v. Masoomeh Ashoori Matini*, 05-01101 (HHK), 05-02254, 2006 U.S. Dist. LEXIS 46889 (D.D.C. July 12, 2006), an insurance company brought an interpleader action to determine the appropriate beneficiary of the decedent's life and accident insurance policies.   The decedent's widow's statement of material facts was admitted pursuant to Rule 7(h) because the executor of the decedent's estate did not provide a countervailing statement of genuine issues of material fact.   *Id*.   Likewise, in *Evans v. Holder*, 618 F. Supp. 2d 1 (D.D.C. 2009), a former employee failed to dispute 12 assertions of fact made by her former employer in its statement of material facts, thereby allowing the court to treat those uncontroverted assertions

3

as conceded pursuant to Rule 7(h).  *See also Johnson v. Wash. Gas Light Co.*, 404 F. Supp. 2d 179

(D.D.C. 2005) (admitting facts identified by employer in its statement of facts because employee

failed to submit a statement of facts to which there were genuine issues of material facts); *Slovinec*

*v. Am. Univ.*, 565 F. Supp. 2d 114 (D.D.C. 2008), affirmed by 2009 U.S. App. LEXIS 3028 (D.C.

Cir. Jan. 29, 2009) (facts identified by a university were deemed admitted pursuant to Rule 7(h)

where the university submitted a statement of material facts and the plaintiff failed to include such

a statement in his opposition to the university's motion for summary judgment); *Jones v. Rossides*,

2009 U.S. Dist. LEXIS 89017 (D.D.C. Sept. 28, 2009) (facts set forth by a movant on a motion

for summary judgment were deemed admitted when the non-movants did not identify the facts as

controverted in a statement of genuine issues filed in opposition to the motion).

Additionally, there are cases that explicitly note that uncontroverted facts will be admitted

in accordance with Rule 7(h).  For example, in *Bonaparte v. United States DOJ*, 531 F. Supp. 2d

118 (D.D.C. 2008), the court, citing to Rule 7(h), stated that "[i]n determining a motion for

summary judgment, the court may assume that facts identified by the moving party in its statement

of material facts are admitted, unless such a fact is controverted in the statement of genuine issues

filed in opposition to the motion." *Id*. at 121.  In *Ramey v. Darkside Prods.*, 2004 U.S. Dist. LEXIS

10107 (D.D.C. May 17, 2004), the court noted that "if the party opposing the motion fails to

comply with [Rule 7(h)] then the district court is under no obligation to sift through the record and

should instead . . . deem as admitted the moving party's facts that are uncontroverted by the

nonmoving party's Rule [7(h)] statement." *Id*. at 3.

## ANALYSIS

### I.   FEDERAL DEFENDANTS VIOLATED NEPA BY FAILING TO ANALYZE NUMEROUS CONNECTED AND SIMILAR AGENCY ACTIONS IN A SINGLE NEPA DOCUMENT.

Federal regulations and case law require that an agency conduct its NEPA review for connected or similar federal actions in a single NEPA analysis. Plaintiffs showed that the Federal Defendants broke their NEPA analysis into three separate analyses—two by the USACE and one by the USFWS. Plaintiffs showed that the Pipeline was a single project, from point A to Point B; that no part of it was proposed separate from the whole. Plaintiffs showed that none of those three parts had independent utility and that the three separate parts were connected and similar federal proposals, which resulted in connected and similar federal actions regarding the single Pipeline.

The primary issue presented in the current motion is therefore a straightforward legal question. Can the NEPA analysis for the various federal actions regarding the single Pipeline be broken into three separate analyses? If Plaintiffs are correct on that legal question, then the result has to be to vacate all of the federal permits.

Under NEPA, the more detailed environmental analysis of an EIS is required when the cumulative impact of <u>connected or similar federal actions</u> exceeds a threshold set in the NEPA. Here, Federal Defendants broke the NEPA analysis into three separate analyses, and then stated that none of the three pieces that they chose to break the matter into crossed the threshold which would have required the more detailed analysis of an EIS. Even when they broke the connected and/or similar federal actions into three pieces, their conclusion that none of those parts crossed the threshold for an EIS is debatable. Had they not broken the analysis into three pieces, it would seem a foregone conclusion that the cumulative impact would have easily crossed the threshold, and would have required an EIS. Federal Defendants cannot say whether the higher level of environmental analysis of an EIS would have been required if they had analyzed the cumulative

effects of all of the connected or similar federal actions in a single EA.  But materially for current

purposes, their failure to do the analysis of all connected or similar federal actions to determine if

the cumulative impacts required an EIS is a major error/violation of NEPA, which requires that all

of the federal actions based upon the foundationally flawed NEPA work must be vacated.  That is,

all of the permits for the connected federal actions on the Pipeline must be vacated and the matter

remanded for the required NEPA work.

Federal Defendants in this case are not the first parties who have tried to avoid the more detailed

environmental analysis of an EIS by breaking connected and similar federal actions into pieces.[1]

The purpose and structure of NEPA and the regulations and court decisions carrying out that

purpose simply do not allow this end-around the NEPA requirement that the cumulative impact of

connected and similar actions must be analyzed in a single NEPA process.

## A.  Requirements of NEPA.

### 1.  Segmentation is Not Allowed.

The regulation at issue in this claim, 40 C.F.R. § 1508.25, prohibits segmentation of the

NEPA process when federal agencies analyze "connected" and "similar" actions.  This unlawful

segmentation is precisely what Federal Defendants have done here, not just by splitting up analyses

between two separate agencies, but even more egregiously by splitting up analyses between two

districts of the same agency.  *Yankton Sioux Tribe and Robert Flying Hawk's Statement of Material*

*Facts in Support of Mot. For Partial Summ. J.* (hereinafter, *"SOF"*) 6, ECF No. 290-2.  This is

the primary issue in Plaintiffs' segmentation claim, and this is the argument Plaintiffs put forward

in their motion.  Extraneous matters raised by Defendants must not be permitted to distract from

---

[1] But the USACE might be the first federal defendant to have the audacity to argue that a single agency can break that single agency's NEPA analysis of connected and similar actions into multiple pieces.

this singular, central issue.  Plaintiffs do not argue that whole pipeline review was required, as Defendants have consistently attempted to mislead the Court to believe.  In fact, Defendants have made no response to the primary issue in this claim.  Instead, Defendants attempt to distort the Tribe's claim into something they think they might actually prevail on, rather than mounting a defense to the Tribe's actual argument.

In their effort to stray from the merits of Plaintiffs' argument, Federal Defendants suggest, without any case law in support, that Plaintiffs must prove intent on the part of Federal Defendants to evade their NEPA responsibilities.  This argument is merely a distraction, as intent to circumvent proper NEPA analysis is not an element of the anti-segmentation rule.  With respect to the anti-segmentation rule, as with NEPA itself, it is the effect – not the intent – that matters.  When the effect is separate analyses that enable agencies to evade their NEPA responsibilities by considering only whether individual actions are sufficient to trigger higher levels of NEPA review, instead of looking collectively at all of the connected or similar federal actions, those agencies have unlawfully segmented their environmental reviews in violation of NEPA.

2. <u>If Actions are Connected or Similar, those Actions Must be Considered in One Comprehensive NEPA Analysis.</u>

Defendants' position that  Federal Defendants' segmentation of their NEPA analyses was lawful fails because it misinterprets the regulatory requirement that a single course of action should be evaluated in a single impact statement as set forth in 40 C.F.R. § 1502.4.  Moreover, Defendants failed to respond to critical points raised by Plaintiffs in the memorandum in support of their motion for partial summary judgment which prove that the actions at issue were "connected actions" as defined in 40 C.F.R. § 1508.25(a).

Federal Defendants seem to suggest that there cannot be a "single course of action" if there is not a single proposal, but this is a blatant misinterpretation of the regulations and case law

interpreting what a "single course of action" is. *See Fed. Defs.' Opp'n to Yankton Sioux Tribe and Robert Flying Hawk's Mot. for Partial Summ. J. and Cross Mot. for Summ. J.* (hereinafter, "*U.S. Opp.*") 10, ECF No. 239. Likewise, Federal Defendants also misinterpret 40 C.F.R. § 1502.4(a) as only applying when there is a single federal action. This is not true, however, and, in fact, the regulations intended that multiple proposals or multiple federal actions could comprise a single course of action.

Here, the single course of action is the implementation of the entire pipeline project, while the proposals are the various approvals needed from the USFWS and USACE for crossings of federal land. This interpretation fits with the language of the regulation at 40 CFR § 1502.4. §1502.4(c) notes that some actions necessarily include proposals by more than one agency. Likewise, § 1502.4(a) states that "***[p]roposals or parts of proposals*** which are related to each other closely enough to be, in effect, a single course of action shall be evaluated in a single impact statement." (Emphasis added.) The plain and obvious interpretation of this language is that multiple proposals can be involved in a single course of action and that the actions requested of federal agencies for those proposals need to be evaluated in a single impact statement if they are closely related to the point of being a single course of action.

> A [single impact statement] is necessary, the guidelines state, where the ***proposals*** for federal action "are related to each other closely enough to be, in effect, a single course of action." 40 C.F.R § 1502.4(a). "Connected actions" are 'closely related,' and thus to be treated in one statement, "if they: (i) automatically trigger other actions which may require environmental impact statements, (ii) cannot or will not proceed unless other actions are taken previously or simultaneously, [or] (iii) are interdependent parts of a larger action and depend on the larger action for their justification." *Id.* § 1508.25(a)(1).

*Found. on Econ. Trends v. Lyng*, 817 F.2d 882, 884 (D.C. Cir. 1987) (emphasis added); *see also Nevada v. Doe*, 457 F.3d 78, 91 n.8 (D.C. Cir. 2006) ("Under 40 C.F.R. § 1508.25(a)(1), an agency must discuss '[c]onnected actions'--that is, 'closely related' actions—'in the same impact

statement.' 'Actions are connected if they;' (i) 'automatically trigger other actions which may require environmental impact statements;' (ii) 'cannot or will not proceed unless other actions are taken previously or simultaneously;' or (iii) 'are interdependent parts of a larger action and depend on the larger action for their justification.'").

### B. Federal Defendants Unlawfully Segmented their Review by Failing to Analyze Connected and Similar Actions in a Single NEPA Document.

#### 1. Federal Defendants Failed to Consider Other Federal Defendants' Respective Actions Relating to the Pipeline.

The USFWS, the USACE Omaha District, and the USACE St. Louis District each prepared separate EAs for their respective approvals for the Pipeline rather than preparing a single, comprehensive EA for all of the connected and similar federal actions. Furthermore, neither the USFWS, nor the USACE Omaha District, nor the USACE St. Louis District considered the others' actions in analyzing the impacts of their respective approvals. The NEPA review for Pipeline approvals was split between two different agencies, and even more egregiously, two districts of the same agency conducted entirely separate NEPA reviews. *SOF* 6, ECF No. 290-2. This fact is uncontested by Federal Defendants and Dakota Access.[2]

Agencies often have to analyze impacts outside of federal jurisdiction,[3] but more relevantly, they are required to consider impacts of connected or similar federal actions. Plaintiffs do not assert that Federal Defendants were required to go beyond the scope of their permitting authority, as alleged by Federal Defendants. *U.S. Opp.* 8, ECF No. 317-1. This would be

---

[2] These facts are contained in Plaintiffs' statement of facts filed in conjunction with their motion for partial summary judgment, and have therefore been conceded by Defendants. Moreover, Defendants would not have had any basis for disputing them.

[3] For example, the USACE Omaha District's EA "devoted a separate section to environmental-justice on the Standing Rock Sioux Reservation," which is clearly outside the USACE's jurisdiction. *Mem. Op.* 52, ECF No. 239.

tantamount to whole pipeline review, which Plaintiffs have repeatedly explained differs from comprehensive agency action review of the connected and similar federal actions. It was not only within Federal Defendants' authority to consider one another's actions in a single NEPA document, it was required by law. Federal Defendants cite *Weiss v. Kempthorne*, 580 F. Supp. 2d 184 (D.D.C. 2008), as support for their position that comprehensive review of the Pipeline was not required. *U.S. Opp.* 8, ECF No. 317-1. Federal Defendants are, once again, confusing Plaintiffs' argument with one for whole pipeline review. In *Weiss*, the court held that the federal agency was not required to examine an entire 500-acre golf and residential project and its impact on the environment. The court did <u>not</u> hold that other connected or similar federal agency actions need not be considered, which is the issue here. Here, Federal Defendants failed to consider other connected and similar agency actions in violation of NEPA.

2. <u>The Numerous Federal Agency Approvals for the Pipeline are Connected Actions that Should Have Been Analyzed in a Single NEPA Document.</u>

Again, Federal Defendants have continually attempted to distort Plaintiffs' argument into something they might be able to prevail on, rather than attempting to defend against Plaintiffs' actual argument. In its motion, Plaintiffs put forth a segmentation argument. Plaintiffs argue that the review by Federal Defendants was flawed because they failed to analyze numerous connected and similar agency actions in a single NEPA document. This runs afoul of the anti-segmentation principle and connected actions doctrine, and is a violation of NEPA's clear legal requirements.

The actions of the USFWS and the USACE were surely "connected actions," thereby mandating a single impact statement. Pursuant to 40 C.F.R. § 1508.25(a)(1)(iii) and its interpretation of "connected actions," the actions taken by Federal Defendants were clearly parts of a larger action and depended upon the larger action for their justification. In this case, the larger action is the implementation of the entire Pipeline project. It matters not that a significant portion

of the Pipeline is outside of the federal approvals issued by the USFWS and the USACE or that the Pipeline owner is a private entity.  As discussed below, the issue is whether the permits and permissions issued by Federal Defendants were part of, and justified by, the larger action (implementation of the Pipeline).  The private portion of the Pipeline does not affect the fact that the approvals issued by Federal Defendants were justified by, and part of, the greater implementation of the Pipeline, nor does it negate the fact that Federal Defendants' actions were connected and similar.

The Dakota Access Pipeline is a 1,172-mile-long crude oil pipeline built to transport crude oil from the Bakken and Three Forks production regions in North Dakota to a crude oil market hub located near Patoka, Illinois.  SUPP AR-1171; AR-69561.  The crossings of federal land approved by Federal Defendants were portions of the Pipeline's route.  AR-71227, AR-9831, FWS-2455.  Federal Defendants' approvals which allowed discrete crossings of federal land or federal interests in private land would not be justified without the Pipeline itself as a singular project.

Because the very purpose of the Pipeline is to carry crude oil from North Dakota to Illinois, there would be no justification for the approvals given by Federal Defendants without the Pipeline because those approvals would have no utility on their own.  *See SOF* 7, ECF No. 290-2.  Defendants argue against this point by stating that the Pipeline is not a federal action, but this goes against the very definition of actions provided in the regulations.  40 C.F.R. § 1508.18(a) says that "actions include new and continuing activities, including projects and programs entirely or partly financed, assisted, conducted, regulated, or approved by federal agencies." (Emphasis added.)  The Pipeline is a project partly approved by federal agencies, namely the USFWS and the USACE.  If the USFWS and the USACE had not approved the crossings necessary for the Pipeline,

then the Pipeline could not have been constructed, thereby deeming the Pipeline a project approved partly by federal agencies.  It would be illogical and nonsensical to disconnect the USFWS and USACE approvals of portions of the route from the Pipeline itself, which is the entire reason the approvals were given.  Again, Plaintiffs do not argue that the entire Pipeline should have been analyzed, but rather, that the permits and permissions granted by the USFWS, the Omaha District of the USACE, and the St. Louis District of the USACE for construction and operation of the Pipeline should have been analyzed together in a single NEPA process.

Furthermore, multiple circuits, including this one, determine whether actions or proposals are "connected" based upon whether the actions or proposals have independent utility.  *See Del. Riverkeeper Network v. FERC*, 753 F.3d 1304 (D.C. Cir. 2014) (employing the independent utility test to determine if multiple parts of a larger pipeline project could be analyzed individually); *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024 (10th Cir. 2001) (stating that projects that have "independent utility" are not "connected actions" under 40 C.F.R. § 1508.25(a)); *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 969 (9th Cir. 2006) ("We apply an 'independent utility' test to determine whether multiple actions are so connected as to mandate consideration in a single EIS.  The crux of the test is whether each of two projects would have taken place with or without the other and thus had 'independent utility.'").  Applying this analysis, none of the approvals made by the USFWS and the USACE would have any independent utility without the construction of the whole Pipeline.  *See SOF* 7, ECF No. 290-2.  None of the crossings of federal land or federal interests in private land approved by the USFWS, the USACE Omaha District, and the USACE St. Louis District would have independent utility without construction of the whole Pipeline.  The crossings of federal land or federal interests in private land which were approved by Federal Defendants would do nothing for carrying oil from North Dakota to Illinois without the Pipeline

itself.  In other words, none of these three sets of federal approvals would be useful at all on its

own, without the other approvals.  Federal Defendants violated NEPA by conducting three

completely separate analyses (two of which were within a single agency) when NEPA mandates

the preparation of a single impact statement analyzing all actions because Federal Defendants'

actions were "connected actions."

Federal Defendants contend that it was reasonable for the agencies to limit their

environmental review to their respective "jurisdictions," *U.S. Opp.* 11, and that this decision is

entitled to deference.  Federal Defendants cannot rely on these alleged jurisdictional boundaries to

protect them from claims of inadequate analysis under NEPA.

First, the alleged "jurisdictional" boundaries do not exist.  Most egregiously, there is no

"jurisdictional" boundary between the two USACE districts.  Both districts are part of the same

agency, and there is no textual basis and no case law which supports Federal Defendants' assertion

that an agency's NEPA analysis can be segmented based upon where a single agency chooses to

locate districts or how a single agency divvies up that single agency's work.  Similarly, Federal

Defendants have not cited any case law which supports its assertion that Federal Defendants can

segment analysis of connected or similar federal actions based upon divisions between two

agencies.  Both agencies are part of the same entity—the United States—and the United States is

required to conduct the NEPA analysis, consistent with the rule that bars segmentation.

Second, agency decisions that violate the law are arbitrary and capricious agency decisions,

or decisions that are unreasonable. *Oceana, Inc. v. Evans*, No. CIV.A.04-0811(ESH), 2005 WL

555416, at *7 (D.D.C. Mar. 9, 2005).  Here, Federal Defendants' failure to adhere to regulations

prohibiting improper segmentation of analysis and scoping under NEPA was unreasonable,

arbitrary, and capricious.  Scoping informs the rest of the analysis, therefore a defective scoping

should not be entitled to deference.  *Anglers Conserv. Network v. Pritzker*, 139 F. Supp. 3d 102, 110 (D.D.C. 2015) (the "court's review is ... deferential … but must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. … [T]his deferential standard cannot permit courts merely to rubber stamp agency actions, nor be used to shield the agency's decision from undergoing a thorough, probing, in-depth review" (internal citations and quotations omitted)).

Federal Defendants rely on inapplicable case law and distort Plaintiffs' arguments to allege that each agency did not have to go beyond the scope of its permitting authority.  In *Weiss v. Kempthorne*, the National Park Service was not required to review an entire golf and development project when approving lease of 22 acres of 500-acre project.  580 F. Supp. 2d 184 (D.D.C. 2008). Again, Federal Defendants misconstrue Plaintiffs' argument and make an unsuitable comparison. Plaintiffs are not arguing for full pipeline review, but that the review that did take place was improperly segmented.  In this case, there were multiple reviews of the same project, all connected and similar federal actions, that required comprehensive review.  The court in *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752 (2004), concluded that the agency did not have to consider the environmental effects of an impact it had no discretion to prevent.  The issue in this claim is not one of consideration of impacts, but rather scoping and segmentation.  None of the actions taken by the agencies in approving the Pipeline were non-discretionary, therefore *Department of Transportation* is not controlling.

Federal Defendants cite to *Oceana Inc v. Evans*, arguing that the scoping of the three EAs is entitled to deference.  2005 WL 555416, at *7.  The plaintiffs *Oceana Inc. v. Evans* argued that the defendants failed to consider sufficient alternative measures in an Environmental Impact Statement ("EIS").  *Id.*  The court held that the draft supplemental EIS had enough data to make

informed choices on preferred alternatives, and was entitled to deference.  *Id.* at 20.  In this case,

the segmentation of the NEPA review into multiple separate EAs did not allow for an informed

review of the scope of the project, thereby violating NEPA and the Administrative Procedures Act,

5 U.S.C. § 500, et seq.  *City of Alexandria, Virginia v. Slater* also required the court to analyze

whether alternatives considered in an EIS were adequate under NEPA.  198 F.3d 862 (D.C. Cir.

1999).  *City of Alexandria* interprets this Circuit's earlier decision in *Natural Resources Defense*

*Council, Inc. v. Morton*, 458 F.2d 827 (D.C. Cir. 1972), to recognize that in the context of a

coordinated effort, an agency can reasonably consider alternatives outside of its jurisdiction.  *Id.*

at 869.  Likewise, here the NEPA analysis should have considered the approvals and actions taken

by other Federal Defendants related to the Pipeline.

Federal Defendants also rest heavily on *Sierra Club v. U.S. Army Corps of Engineers*, 803

F.3d 31 (D.C. Cir. 2015).  *Sierra Club* does not support Defendants' arguments.  In *Sierra Club*,

the plaintiffs argued for whole-project NEPA analysis of the entire pipeline.  *Id.* at 50.  Again, this

is not the argument made by Plaintiffs in their motion for partial summary judgment.  Rather,

Plaintiffs argue only that the NEPA analysis was improperly segmented here.  This claim was not

considered by the court in *Sierra Club* because it was not preserved on appeal.  *Id.* at 45, 51.

The question presented here is not which agencies have the duty to review permit requests

for parts of, or the "entire pipeline," but rather a question of whether the NEPA analysis underlying

and required for permit approval was improperly segmented.  Because these actions are connected

and similar, they required inclusion in the same NEPA document.  While the agencies need not

analyze the entire Pipeline, they must analyze the impacts of their actions and connected and

similar actions with proper scope.  Federal Defendants have no response to the argument the Tribe

actually made, and their attempt avoid the issue and their own admitted segmentation of the NEPA

analysis for a single connected pipeline must be rejected, just as it has been rejected in the prior cases regarding segmentation.

Federal Defendants assert, without any case law in support, that "significant differences in geographical location" indicate that it was not arbitrary and capricious to consider each of the three sets of permissions separately. *U.S. Opp.* 16. Federal Defendants note that the Lake Oahe crossing is approximately 250 miles from the Lake Sakakawea crossing, yet the federal agency approvals at both of those locations were given by the same district of the same agency (the USACE Omaha District). *SOF* 7, ECF No. 290-2. Federal Defendants cite this distance to argue that the USACE and USFWS permissions are not "physically connected actions next to each other." While there may be distance between the crossing points, that is simply not material under the anti-segmentation rule. As Federal Defendants cannot and do not dispute, the Pipeline is a single project, from point A to point B, and all permissions and crossings <u>are</u> connected by the Pipeline. As is also undisputed, no separate part of the Pipeline has independent utility. *SOF* 7, ECF No. 290-2. For example, the record in this matter clearly shows that there was no need for or request for a permit to build a short pipeline solely for the Lake Oahe crossing. Federal Defendants' discussion of distances between parts of the single project is immaterial under the independent utility doctrine. *See supra* at 11-12.

Dakota Access duplicates Federal Defendants' argument on this point, but like Federal Defendants, Dakota Access can cite no case law to support its contention that distance should be a factor in whether federal actions for a single pipeline are connected. The two Missouri River crossings, which Defendants pointed out are 250 miles apart, were addressed in a single EA under a single NEPA process, so clearly a large distance does not require separate analysis, as even the USACE recognizes.

Federal Defendants argue each challenged action has primarily local effects limited to the specific area of the federal action.  However, the EAs considered issues beyond the Pipeline corridor.  For example, the USACE Omaha District's EA "devoted a separate section to environmental-justice on the Standing Rock Sioux Reservation," which is clearly outside the USACE's jurisdiction.  *Mem. Op.* 52, ECF No. 239.  Clearly, the environmental impacts were not merely localized, and the permissions and crossings have regional impacts.  In *Kleppe v. Sierra Club*, the coal projects were in the same region but were separate projects.  427 U.S. 390 (1976).  The pipeline at issue is one continuous project that crosses multiple bodies of water, and the different permissions are connected and similar actions warranting comprehensive review.  Here, there are no practical considerations of feasibility that necessitate restricting the scope of a comprehensive statement.  *Kleppe*, 427 U.S. at 414.

In attempting to refute that the separate EAs constrained the consideration of alternatives, Dakota Access points out that each EA contains a section devoted to alternatives with discussion that extends well beyond each individual crossing.  *Consolidated Brief of Dakota Access, LLC (i) Opposing Yankton Sioux Tribe's Mot. for Partial Summ. J. and (ii) Supporting Cross Mot. for Partial Summ. J. in Favor of Defs.* ("*D.A. Opp.*") 19.  Defendants cannot have it both ways, arguing that each permission only had localized impacts and only required looking at the localized area, and also arguing that because each EA looked outside each crossing, there would have been no practical effect of a single NEPA document.  Furthermore, it is evident that the separate EAs did constrain the consideration of alternatives.  That some alternatives were considered does not negate the fact that they were still constrained.  Constrain does not mean all possible alternatives have been eliminated, but without a single NEPA document, alternatives are inherently restricted because segmented approval foreclosed the opportunity to consider other reasonable alternatives.

3. <u>The Numerous Federal Agency Approvals for the Pipeline are Similar Actions that
Should Have Been Analyzed in a Single NEPA Document.</u>

Independent of the discussion above regarding the federal actions being connected, the
federal segmentation violated NEPA because the actions are "similar" as that word is used in
NEPA and in case law.  Just as NEPA required Federal Defendants to consider all federal actions
in a single NEPA analysis because those actions were connected, Federal Defendants were also
obligated to consider all federal actions in a single NEPA analysis because those actions were
similar.  40 C.F.R. § 1508.25.  Dakota Access failed entirely to address the merits of Plaintiffs'
claim that Federal Defendants' actions were similar actions.  Federal Defendants assert that 40
C.F.R. § 1508.25(a)(3) is discretionary.  However, courts including the District of Columbia
Circuit Court have found to the contrary.  For example, in *Delaware Riverkeeper Network v.
FERC*, the District of Columbia Circuit Court held that the "scope of an agency's NEPA review
<u>must include</u> both 'connected actions' <u>and 'similar actions</u>.'"  753 F.3d 1304 (D.C. Cir. 2014),
citing 40 C.F.R. § 1508.25(a)(1) (emphasis added).  Similarly, in *Earth Island Institute v. United
States Forest Service*, the Ninth Circuit Court of Appeals held that "'[a] single NEPA review
document is required for distinct projects when there is a single proposal governing the projects or
when the projects are connected, cumulative, <u>or similar actions</u> under the regulations implementing
NEPA.'"  351 F.3d 1291, 1304 (9th Cir. 2003), quoting *Native Ecosystems Council v. Dombeck*,
304 F.3d 886, 891-82 (9th Cir, 2002).

Furthermore, the geographical locations of the various federal offices and approvals does
not, as Federal Defendants assert, indicate that it was not arbitrary and capricious for the USFWS,
the USACE Omaha District, and the USACE St. Louis District to consider each permission
separately.  40 CFR § 1508.25(a)(3) states that "similar actions" have similarities "*such as*
common timing *or* geography."  (Emphasis added.)  In its opening brief, Plaintiffs discussed this

issue in detail, and Federal Defendants' responsive argument is based upon an attempt at statutory construction which is contrary to two of the most basic rules of statutory construction.

The legal standard is whether the federal actions are "similar."  The regulation then uses the standard words for providing a very short, non-exclusive, list of two types of "similar" actions: actions which have common timing or geography.  First, contrary to Federal Defendants' responsive argument, the standard remains whether the federal actions are similar, not whether the actions come within one of the two examples of similar actions.

Federal Defendants also incorrectly argue that Plaintiffs must show that the federal actions have both common timing *and* common geography.  But the regulation plainly uses the word "or," not "and."  Here, while there is some distance between the locations of the three sets of federal permissions, the common timing of the permissions clearly places those permissions in the category of "similar actions."  As Plaintiffs showed in the memorandum in support of their motion (and as is not disputed), the permissions for the Pipeline were issued within a span of less than four months, apart from the permissions at Lake Oahe, and less than ten months including the permissions at Lake Oahe.  *Mem. in Supp. of Mot. for Partial Summ. J.* 16, ECF No. 290-3; *SOF* 7, ECF No. 290-2.

As Plaintiffs have also pointed out, Federal Defendants' actions involved the same pipeline which would transport the same crude oil, largely through the same or similar types of permit. Defendants failed to even address these similarities, which strongly support Plaintiffs' position that the actions were similar as that term is used in the applicable regulation and case law, and that Federal Defendants abused their discretion in failing to treat them as such through a singular NEPA process.  The lack of merit of Federal Defendants' argument is further illustrated by the fact that they ask this Court to analogize their failed NEPA analysis here to the vastly different facts in

*Grunewald v. Jarvis*, 886 F.3d 893 (D.C. Cir. 2015).  In *Grunewald*, the court correctly found insufficient similarities between the actions because they were "distinct actions 'addressed in two different planning efforts.'"  *Id.* at 905.  In contrast, here the actions are all tailored to one singular project and planning effort and contain a multitude of similarities not present in *Grunewald*.  Due to the numerous similarities between Federal Defendants' actions, including timing, purpose, and type of agency action, these actions are similar and should have been considered together through a single NEPA process.

      4.   <u>Defendants' Argument that the Current Case is Controlled by *Sierra Club v United States Army Corps of Engineers* is Wholly Dependent on Defendants' Open Misstatement of Plaintiffs' Argument.</u>

As Plaintiffs clearly demonstrated in their memorandum in support of their motion for summary judgment, the holding in *Sierra Club v. United States Army Corps of Engineers*, 803 F.3d 31 (D.C. Cir. 2015), is inapplicable to the situation at bar.  While Plaintiffs distinguished *Sierra Club* by pointing out that *Sierra Club* involved a claim for <u>whole pipeline review</u> and that the court did not rule on whether the agencies were required to analyze the federal actions under the same NEPA document, Defendants attempt to sidestep this crucial distinction through its transparent straw-man argument that Plaintiffs are seeking NEPA review of the whole Pipeline.  Plaintiffs simply are not seeking that.  They are seeking, and case law plainly supports, a single NEPA review for all of the federal actions for the single pipeline.  Plaintiffs should prevail on this claim because, unlike the claim in *Sierra Club*, Plaintiffs' claim is that all connected and similar actions must be considered together in a single NEPA review, not that Federal Defendants should have reviewed the impacts of the entire Pipeline.

    **C.  Under Binding Cases Applying the Anti-Segmentation Rule, this Court is Required to Remand for the Statutorily Required Single NEPA Review, and Defendants' Claims of "Harmless Error" are Incorrect.**

After spending much of their brief seeking to avoid the clear law which prohibited them from segmenting review of the federal actions on the single pipeline, Federal Defendants claim that even if, as the case law shows, they did improperly segment their analysis of federal actions, that would be of no concern because the error was harmless and had little or no material effect on Plaintiffs. *U.S. Opp.* 17-18, ECF No. 317-1.  In other words, Federal Defendants claim that, unless Plaintiffs can show prejudice based on the improper segmentation of Federal Defendants' environmental analysis, there is nothing for the Court to address and Federal Defendants' actions should not be set aside.

The anti-segmentation cases discussed in detail by Plaintiffs preclude that attempted defense.  Pursuant to those cases, where the United States improperly segments its review of connected or similar federal actions, the result is to vacate the permits and remand for proper NEPA review.

For example, in a case which Federal Defendants cite multiple times, the District of Columbia Circuit Court of Appeals concluded the United States had improperly segmented, and the Court then remanded without even discussing or applying the harmless error doctrine.  In *Delaware Riverkeeper Network*, 753 F.3d 1304, the plaintiffs argued that the Federal Energy Regulatory Commission ("FERC") violated NEPA by segmenting its environmental review, among other things.  In reviewing this issue, the court never applied the harmless error doctrine. In fact, the entire opinion in the case is devoid of any mention of "harmless error," "prejudicial error," or "prejudice."  Instead of analyzing the improper segmentation claim under the harmless error rule, the Court simply noted that FERC offered no sufficient explanation to address why it segmented its environmental analysis, held that FERC's environmental analysis should have been analyzed in a single impact statement, and remanded the case back to FERC for further

consideration of its improper segmentation.  *Id*. at 1309.  Again, the court never discussed what harm the improper segmentation caused to the plaintiffs or made the plaintiffs show prejudice before remanding the improperly segmented analysis back to the agency.  Because *Delaware Riverkeeper Network* deals precisely with claims of improper segmentation, that case is more enlightening as to how a court should handle a claim of improper segmentation and what the remedy would be than are the cases cited by Federal Defendants.

Notably, Federal Defendants cannot locate even a single anti-segmentation case which supports their contrary argument.  Undeterred by the fact that the on-point case law is all to the contrary, Federal Defendants discussed that the District of Columbia Circuit Courts have applied harmless error analysis to issues of procedural error in the NEPA context.  None of Federal Defendants' cited cases deals with the issue of improper segmentation of NEPA analysis.  Federal Defendants seem to concede this point by noting that "[c]ourts have applied the prejudicial error rule in the NEPA context where the proposing agency *engaged in significant environmental analysis* before reaching a decision but failed to comply precisely with NEPA procedures." *U.S. Opp.* 17, ECF No. 317-1 (emphasis added).  Plaintiffs' claim is distinguishable from those cited cases because Federal Defendants here avoided engaging in significant environment analysis before reaching their decisions because no analysis was conducted at all of the other agencies' actions, preventing complete review and full disclosure of information to the public, and this is the crux of Plaintiffs' argument regarding improper segmentation.

By improperly segmenting their environmental analysis, the USFWS and the USACE inherently lowered the level of environmental review that they conducted.  The procedural error committed by Federal Defendants in improperly segmenting their environmental analysis prevented the full disclosure of information on the environmental effects of the Project to the

public, including Plaintiffs.   Unlike the cases cited by Federal Defendants to support their argument that the improper segmentation should be analyzed under the harmless error rule, Federal Defendants did not engage in significant environmental review and, instead, segmented their analysis, thereby avoiding the required environmental review.   Even more disturbing is the fact that a single agency—the USACE—segmented its analysis within its own agency.

Federal Defendants attempt to further justify their improper segmentation by saying that such segmentation did not frustrate NEPA's goal of ensuring that relevant information is available to those participating in agency decision-making.   In support of this justification, Federal Defendants cite to the "many comments submitted in response to the documents as a whole" that "manifest that the public had sufficient information to comment on the permissions and permits." *U.S. Opp.* 18, ECF No. 317-1.   This argument goes both ways though, and what Federal Defendants ignore to their benefit is the litany of comments they received on the issue of the improper segmentation of the environmental analysis.

For example, the Department of the Interior stated it "believe[s] that the [USACE] did not adequately explain why it was not analyzing impacts and disclosing consequences of spills *along the length of the Pipeline outside of those areas for which it is making a decision, as might be required under the definition of 'connected actions'* under 40 CFR Section 1508.25(a)(l)(iii)." AR-72159 (emphasis added).   That same viewpoint was expressed in several other comments that urged Federal Defendants to "end the segmentation of the proposed [Pipeline]" and assess "the entirety of the proposed [P]ipeline" and "the [environmental] impacts from start to finish."   AR-72518-873.   If Federal Defendants are going to cite to the comments they received as support for their claim that the improper segmentation had no effect, then it must also take into account the

several comments it received urging that the environmental impacts be analyzed in a single impact statement.

Finally, Federal Defendants repackage their incorrect "harmless error" argument as an argument that Plaintiffs have not identified how compliance with the NEPA anti-segmentation law would have led to any different outcome.  *U.S. Opp.* 18, ECF No. 317-1.  This argument also goes both ways.  It would be practically impossible for Plaintiffs to know what different outcome would have resulted if an EIS was properly conducted or what additional or different arguments would have been available had Federal Defendants prepared a single impact statement.  In that same vein, Federal Defendants are not able to claim that they would have reached the same conclusion that the Project would have no significant impact had they conducted their analysis in a single impact statement.  They cannot make that claim because, simply, they do not know, because they did not do the legally required analysis.

To conclude, Federal Defendants' reliance on the harmless error rule is misplaced and incorrect, and the additional arguments they raise in support fall short.

**D.  The Rule of Exhaustion of Administrative Remedies Does Not Preclude Plaintiffs' Segmentation Claim.**

As a general rule, courts require that a party seeking judicial review of an agency's action must have first exhausted its administrative remedies.  The rule of exhaustion of administrative remedies has two primary exceptions, and the general rule and the two primary exceptions to that general rule are based upon the underlying foundational rule that parties should not be able attempt to have an agency's determination overturned on the grounds that the agency failed to consider matters not brought to its attention.  *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553-54 (1978).

The first exception is that courts will "excuse the exhaustion requirements for a particular issue when the agency has in fact considered the issue." *Nat. Res. Def. Council v. Envtl. Prot. Agency*, 824 F.2d 1146, 1151 (D.C. Cir. 1987).   That is, contrary to Federal Defendants' argument, the law does not require every would-be plaintiff to duplicate arguments which are sufficieintly stated by others in the underlying administrative matter.  *Id.* at 1150.

In *Natural Resources Defense Council*, the Natural Resources Defense Council ("NRDC") filed suit against the Environmental Protection Agency ("EPA") alleging that the emission standard the EPA issued for a carcinogenic chemical was inadequate, even though NRDC had not participated in the EPA's rulemaking process for this regulation.  As here, the United States claimed the plaintiff could not press that claim because that plaintiff had not raised that precise argument in the agency proceedings.  The court rejected the United States' argument.  The Court found that NRDC's failure to raise the issue in the administrative matter was not an impediment because a different entity, the Environmental Defense Foundation, had "explicitly raised the issue before the EPA in its comments on the proposed amendments."  *Id.*  In other words, a party is not required to duplicatively give an agency notice before seeking judicial review of the issue so long as the agency actually had notice of the issue, even if from an entirely different party.  Because several other parties raised the issues that Plaintiffs now complain of during the comment period, specifically the argument that segmentation of the NEPA analysis was unlawful, the exhaustion of administrative remedies should not stand in the way of Plaintiffs seeking judicial review of the actions of the USFWS and the USACE in regards to segmentation.

Although Plaintiffs did not submit comments on the inadequacy of the segmented EAs to Federal Defendants, this does not preclude Plaintiffs from seeking judicial review of the segmentation of the EAs because both Federal Defendants received comments on the segmentation

issue from other parties.  Concentrating first on the USFWS, that agency received multiple comments on the inadequacy of its EA and, rather than publishing those comments in a publicly available location, merely noted in its EA that it had received several comments.  Although this makes it difficult to determine the substance of those comments, the USFWS noted that one substantive comment received "included concerns over the scope of the environmental analysis and cumulative effects of the action."  FWS-2488.  The USFWS went on to state that,

> [t]o clarify the scope of the analysis, a new section was added to the beginning of the EA (Section 2.1 Scope of Analysis) so that the reader is clear from the beginning as to what is USFWS jurisdiction and the scope of the EA.  To address the commenters [sic] concerns of cumulative effects a new section was added to the EA (Section 9.0 Cumulative Effects) to evaluate the potential for cumulative effects of construction, operation and maintenance of the Project within the scope of the EA.

*Id*.  It is clear that the USFWS had notice of and considered issues regarding the scope of its environmental analysis and the cumulative effects of the Pipeline project.  It is therefore proper for Plaintiffs to seek judicial review of the segmentation issue because the USFWS "has in fact considered the issue."  *Nat. Res. Def. Council*, 824 F.2d at 1151.

Turning to the USACE, both the USACE District in Omaha and the USACE District in St. Louis received comments on the segmentation issue.  The Omaha District received several comments regarding issues of the improper segmentation of the NEPA analysis, including comments 15(2)-3 and 15(2)-5.  AR-71773.  By way of example, Comment 15(2)-3 reads:

> While the Dakota Access pipeline is a single project, with cumulative environmental impacts, there has been no effort to review the proposal in any comprehensive manner.  To the contrary, the federal review process has been uncoordinated and disjointed, with different offices (including three Corps Districts) looking at limited aspects of the project as if they were wholly unrelated.

*Id*.  Comment 15(2)-5 is more specific and states:

NEPA requires (at a minimum) that all of the pending federal actions regarding the Dakota Access pipeline be reviewed together.  Dakota Access is seeking federal approval for a single, linear pipeline, and the various crossings of multiple rivers, wetlands and federal lands clearly constitute "connected" and "cumulative" actions under NEPA. 40 C.F.R. 1508.25(a).  Since the federal approvals Dakota Access seeks concern 'physically, functionally, and financially connected and independent' components of the same project, NEPA requires that they be analyzed together.

*Id.*

The USACE St. Louis District also received several comments on the issue of segmenting its environmental analysis.  These include comments 2-2, 2-3, 2-8 and 2-10.  AR-86686, 86689, and 86691.  Specifically, Comment 2-2 says that "NEPA requires federal agencies to analyze a project and all of its connected, cumulative, and similar actions together in a single EIS before the project is allowed to proceed" pursuant to 40 C.F.R. §1508.25(a), while Comment 2-3 argues that all sections of the Dakota Access Pipeline that require federal approval or come within federal jurisdiction

are "connected" actions that must be analyzed together in a single NEPA analysis pursuant 40 C.F.R. § 1508.25 (irrespective of whether the non-federal sections of the pipeline are included in that NEPA analysis as described below), as no individual part of the Dakota Access Pipeline would have independent utility apart from the other federally-approved parts of the pipeline.

AR-86686.  Likewise, Comment 2-8 echoes the concerns raised in Comment 2-3, and Comment 2-10 reminds the USACE that it "cannot look at the Section 408 portion of the project in a vacuum, but must look at the project as a whole and discuss its impacts within the context of the overall pipeline."  AR-86691.  These comments clearly demonstrate that Federal Defendants had notice of the unlawful segmentation issue and did consider it.

Independent from the arguments made above, the second exception to the exhaustion of administrative remedies rule is that administrative remedies do not need to be exhausted when the

claims brought are "so obvious that there is no need for a commentator to point them out specifically in order to preserve its ability to challenge a proposed action." *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 765 (2004).  This "so obvious" standard has been interpreted "as requiring that the agency have independent knowledge of the issues that concern petitioners." *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011).  Here, there is no doubt that Federal Defendants had independent knowledge of the requirement that NEPA requires a single impact statement when there is a single project with connected and/or similar actions.  An "agency bears the primary responsibility to ensure that it complies with NEPA." *Id.*  The requirement for a single impact statement is laid out in NEPA, in case law, and in regulations, including 40 C.F.R. § 1502.4 and 40 C.F.R. § 1508.25(a).  Because Federal Defendants were well aware of the requirement for a single impact statement under NEPA when the project or actions involve connected or similar actions, the issue of segmentation of the NEPA analysis was "so obvious that there is no need for a commentator to point them out specifically in order to preserve its ability to challenge a proposed action." *Public Citizen*, 541 U.S. at 765.

It should be noted that Plaintiffs were provided no opportunity to present their concerns to Federal Defendants through the legally mandated tribal consultation process because, as alleged in Plaintiffs' complaint, Federal Defendants failed to meaningfully consult with the Tribe.  *Compl. For Declaratory and Injunctive Relief* (hereinafter, "*Compl.*"), ECF No. 1.

There is no reason that Plaintiffs should be precluded from seeking judicial review on the issue of segmentation of the environmental analysis.  It matters not that Plaintiffs did not submit comments on the issue when the comment period for doing so was open because (1) other parties submitted comments on the segmentation issue to both the USFWS and the USACE and (2) alternatively, the issue of segmentation was one that was so obvious to the USFWS and the

USACE that it did not require comments or exhaustion of administrative remedies because both the USFWS and the USACE had independent knowledge that NEPA, case law, and regulations require a single impact statement for projects or actions that involve connected and/or similar actions.

## II. Plaintiffs' National Historic Preservation Act Claims are Not Moot.

Federal Defendants seek summary judgment on Plaintiffs' NHPA claims based upon a single, unsupported argument: they assert that all parts of all of Plaintiffs' NHPA claims are moot because the Pipeline has now been constructed.

Claims are moot only if there is no possibility that the Court can still give any "effective relief." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992); *Sierra Club v. United States Army Corps of Eng'rs*, 803 F.3d 31, 43-44 (D.C. Cir. 2015) (applying *Church of Scientology* to hold that completion of a pipeline did not moot claims). In their NHPA claims and in their "requests for relief," Plaintiffs sought relief which not only <u>can</u> still be provided, but which will be provided if Plaintiffs prevail on the claims. Plaintiffs sought relief based upon the USACE identifying the Area of Potential Effects ("APE") too narrowly, in violation of the NHPA. *Compl.*, Claim 5, ECF No. 1. Plaintiffs also sought relief based the USACE violating its duties to consult with the Tribe regarding identification and protection of historic and cultural locations near the Pipeline and upon it then issuing a finding of "No Historical Properties Affected" which was not adequately supported and which was issued in violation of the NHPA. *Compl.*, Claim 2, ECF No. 1. Plaintiffs will prevail on that claim if they prevail on their claim that the USACE defined the APE too narrowly; but could also prevail on that claim independently from their claim of legal error in identifying the APE. Plaintiffs also sought relief based upon the USACE failing to consult with the Tribe regarding Nationwide Permit 12. *Compl.*, Claim 3, ECF No. 1. Plaintiffs sought

relief based upon, inter alia, the USACE failing to comply with its duty to consult with the Tribe regarding pre-construction notifications ("PCN"); unlawfully delegating duties which the NHPA imposes upon the USACE related to the PCNs to a private party, and unlawfully failing to conduct the required review of historic properties. *Compl.*, Claim 4, ECF No. 1.

Plaintiffs' requests for relief included requests for declarations related to all of these claims. Not one of those requests for declaration is moot.

Plaintiffs also requested vacatur of Nationwide Permit 12 and PCN verifications. As discussed above, because Federal Defendants' sole current argument is mootness, the issue is not whether those remedies *will* be provided, but whether the Court *could* provide those remedies. Plainly the Court could provide those remedies based upon the alleged violations of the NHPA.

Finally Plaintiffs sought injunctions barring the reissuance of Nationwide Permit 12 and the PCN verifications unless and until Federal Defendants remedy the violations of the NHPA, NEPA, and consultation requirements. The Court plainly can grant that remedy as well.

As shown by the foregoing, Plaintiffs' claims based upon the NHPA are plainly not moot. Federal Defendants' contrary argument is based upon its substantial misstatement of Plaintiffs' NHPA claims, and independently upon its misstatement of the law.

Turning to the former, Federal Defendants' argument is dependent on its assertion, which has no basis at all in the text of Plaintiffs' complaint, that Plaintiffs' NHPA claims were solely based upon an allegation that "clearing, grading, excavation, and construction that would occur along the duration of the Pipeline route would destroy any historic or culturally significant sites encountered." *U.S. Opp.* 30, ECF No. 317-1. That is obviously incorrect, as discussed above. From that incorrect premise, Federal Defendants assert that the NHPA claims are moot because the construction has been completed. This argument is disingenuous, as only one part of Count 5

of Plaintiffs' complaint is based on the allegation quoted by Federal Defendants.  Counts 2, 3, and 4 are all based on allegations that the USACE violated § 106 of the NHPA in relation to the USACE Omaha District's EA, NWP 12, and verification of PCNs, respectively.  *Compl.* 15-21, ECF No. 1.  As such, completion of the Pipeline has no bearing on claims that Federal Defendants authorized the permits underlying said construction in violation of federal law.

Independently, Federal Defendants' discussion of law is wrong.  None of the case law cited by Federal Defendants supports the conclusion that completion of the Pipeline mooted claims for for declaratory relief or vacatur of permits.  Federal Defendants cite *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs* for the proposition that a long line of cases supports a conclusion that as soon as construction of a project is completed, environmental challenges become moot.  *U.S. Opp.* 31, ECF No. 317-1.  However, the court in *Finca Santa Elena* explicitly separated the claims for injunctive and declaratory relief in its mootness analysis.  In analyzing the plaintiff's claims for declaratory relief, the court found the claims moot only because additional administrative and environmental review would come before any future action was taken in relation to the project.  *Finca Santa Elena Inc.,* 62 F. Supp. 3d 1, 7 (D.D.C. 2014).  ("Thus, the Corps' commitment to future assessments, and its history of conducting such assessments before engaging in new activity, makes further judicial review of this matter inappropriate at this time.")

Unlike the facts presented in *Finca Santa Elena*, here there is no commitment from the USACE to undertake additional environmental or cultural reviews before allowing future activity related to the Pipeline.  Furthermore, in *Finca Santa Elena,* the court was reviewing a stream stabilization/flood control project, not an oil pipeline which requires significant and continuous actions to assess, inspect, maintain, and repair the project.  The declaratory relief requested here is therefore distinguishable from the relief sought in *Finca Santa Elena*.

The Tribe's NHPA claims are not moot as the declaratory relief sought in relation to these would offer effective relief.  *See Vieux Carre Property Owners, Residents and Associates, Inc. v. Brown*, 948 F.2d 1436 (5th Cir. 1991) (finding NHPA challenge to federal project was not moot even though project was already constructed because Section 106 consultation process could result in remedial action.)  The declaratory relief sought in relation to Plaintiffs' NHPA claims, which challenge the Omaha EA, Nationwide Permit 12, verification of PCNs, and defining of potential effects, would require the USACE to suspend the operation of the Pipeline prospectively until the USACE conducts an EA that complies with the NHPA and would preclude the USACE from allowing any additional work on the Pipeline, such as maintenance or repair, until the USACE issues a Nationwide Permit 12 that satisfies NHPA requirements.  This undoubtedly constitutes effective relief that the Court can grant as it would require compliance with the Act and guarantee additional evaluations to properly identify and assess the project's effects on properties of religious and cultural significance.  As such, Plaintiffs' NHPA claims are properly before the Court and are not moot, and Defendants' cross claim, based solely on alleged mootness, should be denied.

WHEREFORE, Plaintiffs Yankton Sioux Tribe and Robert Flying Hawk hereby respectfully request that the Court grant Plaintiffs' motion for partial summary judgment and deny Defendants' cross motion for partial summary judgment.

Dated: January 26, 2018.

YANKTON SIOUX TRIBE, et al.

By: _____

Jennifer S. Baker, OKBA# 21938
(*Pro Hac Vice*)
Jeffrey S. Rasmussen, WA #21121
(*Pro Hac Vice*)
Fredericks Peebles & Morgan LLP
1900 Plaza Drive
Louisville, CO 80027
Phone: (303) 673-9600
Facsimile: (303) 673-9155
jbaker@ndnlaw.com
jrasmussen@ndnlaw.com
*Attorneys for Plaintiffs*

*s/ Patricia A. Marks*
Fredericks Peebles & Morgan LLP
401 9th Street, N.W., Suite 700
Washington, D.C. 20004
Phone:  (202) 450-4887
Facsimile:  (202) 450-5106
pmarks@ndnlaw.com
*Attorney for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of January, 2018, a copy of the foregoing was filed electronically with the Clerk of the Court.  The electronic filing prompted automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

_____

Ashley Kinglesmith, Legal Assistant