**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| CHEYENNE RIVER SIOUX TRIBE, | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-01534 (JEB) |
| | ) [Consolidated with 1:16-cv-1796 |
| UNITED STATES ARMY CORPS OF | ) and 1:17-cv-267] |
| ENGINEERS | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES FISH AND | ) |
| WILDLIFE SERVICE, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| DAKOTA ACCESS, LLC, | ) |
| | ) |
| Defendant-Intervenor and Cross-Claimant | ) |
| | ) |

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR
<u>CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I.    The challenged Federal actions are neither "connected" nor similar" and
      the agencies appropriately defined the scope of their environmental
      review.............................................................................................................2

      A.    Connected actions ..............................................................................2

      B.    Similar actions ...................................................................................5

II.   Plaintiffs effectively concede that the court should grant federal
      defendants' motion for summary judgment regarding plaintiffs' Claims
      Relating to Alleged violations of trust responsibilities.....................................9

III.  Plaintiffs' National Historic Preservation Act claims are moot......................10

IV.   Federal Defendants did not waive any arguments by following local civil
      rule 7(h)(2)'s directive that the parties not submit statements of disputed
      material facts in administrative procedure act cases.......................................12

V.    CONCLUSION ...........................................................................................13

# TABLE OF AUTHORITIES

## Cases

*Abraham v. Diagnostic Ctr. Hosp. Corp. of Tex.*,
    138 F. Supp. 2d 809 (S.D. Tex. 2001) ................................................................. 9

*All. for Nat. Health U.S. v. Sebelius*,
    775 F. Supp. 2d 114 (D.D.C. 2011) .................................................................. 12

*Appalachian Power Co. v. EPA*,
    251 F.3d 1026 (D.C. Cir. 2001) ........................................................................ 5

*Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*,
    217 F.3d 393 (5th Cir. 2000) ..................................................................... 11, 12

*Brown v. Plata*,
    563 U.S. 493 (2011) ......................................................................................... 10

*Del. Riverkeeper Network v. FERC*,
    753 F.3d 1304 (D.C. Cir. 2014) ........................................................................ 5

*Earth Island Inst. v. Elliott*,
    No. 1:17-cv-01320-LJO-MJS, 2017 WL 5526572 (E.D. Cal. Nov. 17, 2017) ......... 6

*Finca Santa Elena Inc. v. U.S. Army Corps of Engineers*,
    62 F. Supp. 3d 1 (D.D.C. 2014) ...................................................................... 12

*Friends of the Earth, Inc. v. Bergland*,
    576 F.2d 1377 (9th Cir. 1978) ......................................................................... 11

*Koretoff v. Vilsack*,
    841 F. Supp. 2d 1 (D.D.C. 2012) .................................................................... 13

*Malladi v. Brown*,
    987 F. Supp. 893 (M.D. Ala. 1997) ................................................................. 13

*NRDC v. Hodel*,
    865 F.2d 288 (D.C. Cir. 1988) .......................................................................... 7

*Sierra Club v. Fed. Energy Regulatory Comm'n*,
    827 F.3d 36 (D.C. Cir. 2016) ............................................................................ 8

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    64 F. Supp. 3d 128 (D.D.C. 2014) ................................................................ 3, 8

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    803 F.3d 31 (D.C. Cir. 2015) ............................................................................ 3

*Spencer v. Kemna*,
    523 U.S. 1 (1998) ............................................................................................ 10

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
    205 F. Supp. 3d 4 (D.D.C. 2016) .................................................................. 3, 4

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................... 10

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ........................................................................... 10

*United States v. Ponder*,
   150 F.3d 1197 (11th Cir. 1998) ......................................................... 13

*Vieux Carre Prop. Owners v. Brown*,
   948 F.2d 1436 (5th Cir. 1991) ........................................................... 11

*Weiss v. Sec'y of the U.S. Dep't of Interior*,
   459 F. App'x 497 (6th Cir. 2012) ...................................................... 11

*WildEarth Guardians v. Jewell*,
   738 F.3d 298 (D.C. Cir. 2013) ............................................................. 8

## **Statutes**

15 U.S.C. § 717b(e)(1) ............................................................................ 3

15 U.S.C. § 717f(c) .................................................................................. 3

30 U.S.C § 185 ........................................................................................ 4

## **Regulations**

33 C.F.R. pt. 325 ..................................................................................... 3

40 C.F.R. § 1508.18(a) ............................................................................ 3

40 C.F.R. § 1508.25 ................................................................................. 2

40 C.F.R. § 1508.25(a)(1)(ii) .................................................................. 3

40 C.F.R. § 1508.25(a)(3) ....................................................................... 6

40 C.F.R. § 1508.8 ................................................................................... 7

## **Other Authorities**

Henry P. Monaghan, *Constitutional Adjudication: The Who and When*,
   82 Yale L.J. 1363 (1973) ................................................................... 10

As the Corps and Fish and Wildlife Service ("Federal Defendants") established in their opening Memorandum, summary judgment should be granted in their favor on six of the seven claims in the Yankton Sioux Tribe and Robert Flying Hawk's complaint. Plaintiffs' Opposition either concedes that their claims should be dismissed or fails to rebut Federal Defendants' motion for summary judgment.

First, Plaintiffs' Opposition resolves any doubt that their claims relating to the scope of Federal Defendants' NEPA review rest on Plaintiffs' misunderstanding that Federal Defendants are required to conduct an environmental review of the entire Dakota Access Pipeline. And to the extent that Plaintiffs assert that, rather than consider the entire Pipeline, Federal Defendants should have considered discrete actions located hundreds of miles apart in a single NEPA document, Plaintiffs provide neither factual nor legal support for such an argument. Second, Plaintiffs' Opposition concedes their treaty-related claims, requiring dismissal of the complaints' first claim for relief. Moreover, Plaintiffs' failure to establish standing provides an independent reason to dismiss all of their NEPA and NHPA claims, which concern properties hundreds of miles from Plaintiffs' reservation. Third, Plaintiffs' Opposition does nothing to rebut Federal Defendants' argument that their claims of injury based on the Pipeline's construction became moot once the Pipeline was fully built. Finally, Plaintiffs are incorrect that Federal Defendants conceded Plaintiffs' alleged facts by not controverting the factual statements. Plaintiffs mistakenly base this argument on Local Civil Rule 7(h)(1), which does not apply in cases, such as this one, brought under the APA.

**ARGUMENT**

I.   **THE CHALLENGED FEDERAL ACTIONS ARE NEITHER "CONNECTED" NOR "SIMILAR" AND THE AGENCIES APPROPRIATELY DEFINED THE SCOPE OF THEIR ENVIRONMENTAL REVIEW.**

Plaintiffs have no response to the basic argument that neither the Corps nor FWS have authority to approve the Pipeline.  This is fatal to Plaintiffs' argument that the agencies impermissibly "segmented" their analysis of each agency's discrete permissions.  Plaintiffs' brief implies otherwise, but neither the Corps nor FWS was presented with an overall "proposal" for the Pipeline which they approved or denied.  Rather, each agency considered applications to cross a variety of federal property interests over hundreds of miles and across multiple states.  Given the scope of federally managed lands and waters implicated, the agencies correctly focused their environmental review and decision making on the potential impacts associated with each jurisdictional crossing and Plaintiffs have identified no potential environmental impact that was overlooked or not considered.  The agencies' expert judgments about the scope of their environmental review were entirely reasonable, fully consistent with NEPA and D.C. Circuit case law, and are due considerable deference.  Plaintiffs cannot meet their burden to establish otherwise.

   **A.  Connected actions**

Plaintiffs' argument rests entirely upon 40 C.F.R. § 1508.25, which discusses "the range of actions, alternatives, and impacts to be considered in an environmental impact statement." There was no Environmental Impact Statement (EIS) in this case implicating that regulation, *see* ECF No. 317-1 at 13 n.6 (40 C.F.R. § 1508.25 applies not to the EAs and FONSI at issue here but only to an EIS), but even assuming this regulation applies here, the Corps and FWS complied with it fully and reasonably limited the scope of their environmental reviews.

2

First, Plaintiffs argue that the Corps' and FWS' actions were "connected actions" that needed to be addressed in a single document because they arguably are "interdependent parts of a larger action and depend on the larger action for their justification." 40 C.F.R. § 1508.25(a)(1)(ii).  This Court has reasoned that the "'connected actions' regulation requires that the impact on the environment of all *aspects of a particular major federal action* be evaluated together."  *Sierra Club v. U.S. Army Corps of Eng'rs,* 64 F. Supp. 3d 128, 154–55 (D.D.C. 2014) *(Sierra Club I)*, (emphasis added), *aff'd*, 803 F.3d 31 (D.C. Cir. 2015) *(Sierra Club II)*.  Plaintiffs argue "the larger action" in this case is "the implementation of the entire Pipeline project," ECF No. 324 at 10.  The problem with this argument is that the "entire Pipeline project" is not a major federal action and NEPA does not apply to non-federal action.[1] This fundamental misunderstanding pervades Plaintiffs' brief.

Plaintiffs are correct that federal actions *can* include "projects. . . approved by federal agencies."  ECF No. 324 at 11 (citing 40 C.F.R. § 1508.18(a)).  But this does not apply here where neither FWS nor the Corps have authority to "approve" the Pipeline project*. Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 7 (D.D.C. 2016) ("*SRST I*")*; see Sierra Club II*, 803 F.3d at 33 (noting "the absence of any general permitting requirement for domestic oil pipelines."); *cf.* 15 U.S.C. § 717f (c) (Federal Energy Regulatory Commission ("FERC") approval required to construct natural gas pipeline); 15 U.S.C. § 717b(e)(1) (FERC approval required to construct liquefied natural gas terminal).

---

[1]     In some cases extensive federal involvement with a private project can "federalize" that project such that NEPA review is appropriate.  *See, e.g.*, 33 C.F.R. pt. 325, App. B ¶ 7(b). However, that is not the case here, and Plaintiffs have not argued otherwise.

Neither the Corps nor FWS undertook to approve or deny the Pipeline.  Rather each agency focused its decision making on the federal property within its respective jurisdiction and potential impacts thereto. For instance, the Corps has limited authority under the Mineral Leasing Act to grant a right of way over federal land, and in doing so to consider the enumerated factors Congress had authorized the agency to consider for such rights-of-way.  *See* 30 U.S.C § 185; ECF No. 214 at 8-11; *SRST I*, 205 F. Supp. 3d at 15.  These factors do not include the general authority to approve or deny the pipeline for which the right-of-way is sought.  *Id.*  The Corps also considered crossings of "water of the United States" as required under the CWA and the Fish and Wildlife considered crossings of its Grassland and Wetland easements.  *See*, *e.g.*, ECF No. 183, *SRST I*, 205 F. Supp. 3d at 10-11, 27-31.  These agencies had no jurisdiction beyond these crossing types and had no reason or legal obligation to undertake to approve or analyze the remaining Pipeline route that expands well over 1000 miles.  The Plaintiffs are simply incorrect that the Pipeline is a federal action for which environmental review has been improperly segmented.  Rather, both the Corps and FWS appropriately considered the potential impacts of their respective actions.

Next, Plaintiffs attempt to argue that the FWS and Corps permissions are "connected actions" because they have no "independent utility" without the entire Pipeline being constructed.  ECF No. 324 at 12.  Even assuming this regulation applies here, *see* ECF No. 317-1 at 13 n.6, this is incorrect because it assumes that the Pipeline was never and could never be re-routed in the event a right-of-way was denied.  As the Federal Defendants demonstrated, the Pipeline was in fact re-routed several times. ECF No. 317-1 at 14 n.7.  Had the Corps or FWS denied permission to cross a given federal property, such a denial would not have resulted in the cancellation of the entire Pipeline.  Rather, the Pipeline would likely have been slightly re-routed, but would still have occurred and benefitted from all other federal permissions.  Thus,

each independent permission has independent utility—for instance, even if FWS denied

permission to cross certain easements, the Pipeline would have still benefitted from permission

to cross Lake Oahe.[2]

Therefore, this case is easily distinguishable from *Delaware Riverkeeper Network v.*

*FERC*, because in that case FERC has approval authority over multiple segments of a larger

Pipeline project, the entirety of which was subject to federal approval.  753 F.3d 1304, 1317

(D.C. Cir. 2014).  Had FERC approved one pipeline segment without the other, it would have no

utility; there was no way to re-route the natural gas pipeline at issue so that some portions would

not require FERC approval.  In contrast, the vast majority of the Pipeline at issue here crosses

only private land and requires no federal approval; if one federal permission was denied, the

Pipeline could be rerouted.  Thus, each crossing has independent utility.  In sum, to the extent the

"connected action" regulation even applies here, the Corps and FWS have done nothing to

violate it.

## B.  Similar actions

Plaintiffs next argue that the FWS and Corps permissions were "similar actions" and,

therefore, it was arbitrary to not consider them in a single document.  ECF No. 324 at 18-20.

This specific argument was not raised before either agency and is thus waived.  *Appalachian*

*Power Co. v. EPA*, 251 F.3d 1026, 1036 (D.C. Cir. 2001).[3]  Regardless, the actual text of the

CEQ regulation states that an agency "*may* wish to analyze [similar] actions in the same impact

---

[2]      Indeed, the FWS EA demonstrates that the Pipeline was routed in such a way as to
minimally impact FWS easements.  FWS Environmental Assessment: Grassland and Wetland
Easement Crossings 7, 12-13 (May 2016) (ECF No. 317-5).

[3]      Plaintiffs point to a single comment that mentions the word "similar" in restating the
regulation and a variety of comments on the general topic of scoping, ECF No. 324 at 27, but
neither Plaintiffs nor any other party made the specific argument advanced here.

statement" and "should do so when the best way to assess adequately the combined impacts of similar actions or reasonable alternatives to such actions is to treat them in a single impact statement." 40 C.F.R. § 1508.25(a)(3) (emphasis added).  The regulation's discretionary text appropriately contemplates that an agency ought to exercise its expert judgment as to whether actions are "similar" and, if so, whether they would benefit from being addressed in the same EIS, and Plaintiffs have not demonstrated that the agencies were arbitrary here.[4]

Plaintiffs do not dispute that scoping decisions such as how many actions to consider in a single NEPA review implicate agency expertise and are due deference. ECF No. 317-1 at 8.  Nor can Plaintiffs identify a concrete substantive reason why a single document would in some way better assess "the combined impacts of similar actions or reasonable alternatives to such actions." Indeed, Plaintiffs are not even able to articulate what the purported "combined impacts" of the various permissions are.

Federal Defendants are not arguing that various actions being hundreds of miles away from each other *per se* means analyzing them in separate documents is always reasonable.  *Cf.* ECF No. 324 at 18.  However, the record in this case shows that the agencies' actions had primarily local potential impact, and Plaintiffs offer no reason to think that a single NEPA document would have uncovered some potential impact spanning multiple states.  *See, e.g.*, *Earth Island Inst. v. Elliott*, No. 1:17-cv-01320-LJO-MJS, 2017 WL 5526572, at *14 (E.D. Cal. Nov. 17, 2017) (Separate NEPA review appropriate where the actions in question "are located in

---

[4]     Again, the agencies did not prepare an EIS so this regulation by its text does not apply. ECF No. 317-1 at 13 n.6.

different watersheds on opposite sides of the Greenhorn Mountains."); *cf. NRDC v. Hodel*, 865 F.2d 288, 297 (D.C. Cir. 1988).[5]

Plaintiffs argue "Defendants cannot have it both ways, arguing that each permission only had localized impacts…and also arguing that because each EA looked outside each crossing there would have been no practical effect of a single NEPA document."  ECF No. 324 at 17. But there is no contradiction here.  Each agency's action had primarily local impacts. Nonetheless it was reasonable and consistent with NEPA regulations to also consider impacts that are "later in time or farther removed in distance." 40 C.F.R. § 1508.8.  But that the agencies respectively considered indirect impacts of their discrete actions does not show it was necessary to analyze multiple actions in a single document as Plaintiffs suggest.  Crucially, Plaintiffs never identify what—aside from the largely clerical act of not including them in a single document— should have been different about the underlying analysis.  Plaintiffs imply that considering multiple discrete permissions in separate NEPA reviews constrained consideration of alternatives, ECF No. 324 at 17.  But they never identify—either in comments before the agency or in their brief—what alternatives were allegedly overlooked or how analyzing the discrete permissions together would have allowed for any additional alternatives to be considered.

Plaintiffs also argue that the Corps should have considered FWS actions and vice versa— though each action was outside of the other's control and jurisdiction.  This argument has been rejected by this Circuit.  NEPA does not require agencies to consider actions that may be part of a "larger project" but are outside their jurisdiction.  This Court has squarely held that:

---

[5]     If the only complaint Plaintiffs have is that the NEPA decision documents were finalized as three separate documents instead of one, then this truly is a non-prejudicial error. ECF No. 317-1 at 17-18.

> nothing in the regulations supports Plaintiffs' assertion that the scoping provisions require an agency to expand the EA or EIS to address actions that are completely outside the ambit of that agency's control and responsibility—that is, matters that are *not* the major federal action that originally triggered the agency's NEPA obligations—and to conclude otherwise would fly in the face of the well-established rule that an agency responsible for only a small part of a larger project need not consider aspects of that project outside of its jurisdiction.

*Sierra Club I*, 64 F. Supp. 3d at 154 (citations omitted). *See, also Sierra Club v. Fed. Energy Regulatory Comm'n*, 827 F.3d 36, 47 (D.C. Cir. 2016) (FERC's NEPA analysis did not need to cover anticipated export of natural gas "because the Department of Energy, not the Commission, has sole authority to license the export of any natural gas").

Moreover, Plaintiffs do not dispute that the agencies indeed acknowledged the other Pipeline-related actions including cumulative effects of the permissions collectively. Environmental Assessment, Omaha District at 98-107 (July 2016) (ECF No. 317-2); FWS Environmental Assessment: Grassland and Wetland Easement Crossings at 33-35 (May 2016) (ECF No. 317-4); St. Louis District Final Environmental Assessment and FONSI at 83-94 (Aug. 3, 2016) (ECF No. 317-3).   Plaintiffs have not shown what, substantively, was arbitrary about this approach or what—aside from the largely clerical act of not including them in a single document—should have been different about the underlying analysis.

The NEPA process "'involves an almost endless series of judgment calls,' and 'the line-drawing decisions necessitated by the NEPA process are vested in the agencies, not the courts.'" *WildEarth Guardians v. Jewell*, 738 F.3d 298, 312 (D.C. Cir. 2013) (citations omitted). In this case, the agencies properly exercised their judgment and acted reasonably in conducting separate NEPA analyses for discrete permissions to cross specific federal property interests. Plaintiffs would have preferred a single NEPA document that encompassed all permissions related to the Pipeline.  But they have not demonstrated such an omnibus document was

required, or that the Corps and FWS acted arbitrarily or capriciously in their environmental

reviews.

## II. PLAINTIFFS CONCEDE THAT THE COURT SHOULD GRANT FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING PLAINTIFFS' CLAIMS RELATING TO ALLEGED VIOLATIONS OF TRUST RESPONSIBILITIES.

Federal Defendants' established their entitlement to summary judgment on Plaintiffs'

claims related to alleged violations of trust responsibilities because 1) Plaintiffs failed to identify

any treaty rights to ceded lands located hundreds of miles from their current lands; 2) Plaintiffs'

claims relating to the issues remanded to the Corps are not ripe for review; 3) Federal

Defendants' actions did not endanger any treaty rights; and 4) Plaintiffs lack standing to

challenge Federal actions located hundreds of miles from their reservation.  ECF No. 317-1 at

18-30.  Plaintiffs seek to "withdraw the second claim presented in their motion for partial

summary judgment regarding Federal Defendants' failure to consider the Tribe's treaty rights,

and choose not to pursue that claim at this time."  ECF No. 324 at 2.  Plaintiffs therefore concede

that Federal Defendants' motion for summary judgment on the first claim in Plaintiffs'

complaint—"Violation of the 1851 Treaty, the Federal Trust Responsibility, and the United

Nations Declaration on the Rights of Indigenous Peoples"—should be granted.  ECF No. 317-1

at 18-30.  *See Abraham v. Diagnostic Ctr. Hosp. Corp. of Tex.*, 138 F. Supp. 2d 809, 816 (S.D.

Tex. 2001) (granting summary judgment where "[i]n his response to Diagnostic Center's motion

for summary judgment, Abraham responded that although he 'did complain about religious

discrimination and there is evidence of retaliation, [he] chooses not to pursue his retaliation

claim any further'").

Plaintiffs also do not rebut Federal Defendants' argument that they lack standing "to

challenge government actions relating to lands hundreds of miles from their lands."  ECF 317-1

at 29-30.  Plaintiffs' failure to establish standing pervades their claims and provides a separate

and independent basis for granting Federal Defendants' motion for summary judgment on

Plaintiffs' NEPA claim.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 493-4 (2009).

## III.   PLAINTIFFS' NATIONAL HISTORIC PRESERVATION ACT CLAIMS ARE MOOT.

Plaintiffs' Opposition, ECF No. 324 at 29, highlights that their claims based upon "clearing,

grading, excavation, and construction" should be dismissed as moot because Plaintiffs alleged that

now-completed construction "would destroy any historic or culturally significant sites encountered."

Yankton Compl. ¶ 139, *Yankton Sioux Tribe v. United States*, No. 16-1796 (ECF No. 1).  Plaintiffs

do not attempt to suggest how any possible relief could redress any of the harms Plaintiffs alleged

would be caused by construction, as opposed to operation, of the Pipeline.  This failure is fatal to

Plaintiffs' NHPA-related claims.

A plaintiff bears the burden of demonstrating the existence of a case or controversy at all

stages of the litigation. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  In order to demonstrate this,

"throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury

traceable to the defendant and is likely to be redressed by a favorable judicial decision." *Id.* at 7

(citation and internal quotation marks omitted).[6]  Plaintiffs' complaint makes clear that the

alleged injury complained of in their second through fifth claims has already occurred and cannot

be redressed by a favorable judicial decision.  And it is well-established that "the scope of [any]

remedy must be proportional to the scope of the violation." *Brown v. Plata*, 563 U.S. 493, 531

---

[6]      Mootness has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973) (footnote omitted)).

(2011).  Plaintiffs' NHPA-related claims are moot because no declaratory relief can reverse

completed construction activities.

Plaintiffs' citation to *Sierra Club II*, ECF No. 324 at 29, is inapposite.  *Sierra Club II*

held that NEPA claims were not moot because "[i]f the NEPA analysis were legally inadequate,

'we could order that the [pipeline] be closed or impose restrictions on its use,' at least on

federally authorized segments, 'until [the agencies] complied with NEPA.'"  But unlike

Plaintiffs' NEPA and Clean Water Act claims,[7] Plaintiffs' NHPA claims were based upon their

allegation that "clearing, grading, excavation, and construction that would occur along the

duration of the Pipeline route would destroy any historic or culturally significant sites."  Yankton

Compl. ¶ 139.  The Pipeline's construction is complete.  And even if the Corps' NHPA analysis

was inadequate, which it was not, no relief could remedy Plaintiffs' alleged harms related to the

impact of completed construction activities.  *See Weiss v. Sec'y of the U.S. Dep't of Interior*, 459

F. App'x 497, 500 (6th Cir. 2012) ("But any effects on the Park's historic character have already

occurred. Because 'construction on the [golf course] has been substantially completed,' we

cannot give any 'meaningful relief' and any declaratory judgment 'would be an advisory

opinion.'") (quoting *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 397 (5th

Cir. 2000)).

Plaintiffs' argument that their NHPA-related claims are saved because this Court might order

declaratory relief does not withstand scrutiny.  Plaintiffs rely upon *Vieux Carre Property Owners v.*

---

[7]      To be clear, Federal Defendants are not arguing that Plaintiffs' NEPA and CWA claims
are moot.  *But see Friends of the Earth, Inc. v. Bergland*, 576 F.2d 1377, 1379 (9th Cir. 1978)
("Where the activities sought to be enjoined have already occurred, and the [court] cannot undo
what has already been done, the action is moot.") (holding that a NEPA challenge to an
exploratory mining operation was moot because the action had already been completed).

*Brown*, 948 F.2d 1436 (5th Cir. 1991) to argue that declaratory relief could theoretically redress

some injury in some manner.  But the Fifth Circuit has held *Vieux Carre* to be inapplicable where, as

in this case, construction "has already been completed." *Bayou Liberty Ass'n*, 217 F. 3d at 397.

Plaintiffs similarly misinterpret *Finca Santa Elena Inc. v. U.S. Army Corps of Engineers*, which held

that NEPA and NHPA challenges to completed construction projects are moot. 62 F. Supp. 3d 1, 5

(D.D.C. 2014).  Plaintiffs are simply incorrect, ECF 324 No. at 31, that *Finca Santa Elena* suggested

that claims for declaratory relief related to NHPA review of completed construction projects are

justiciable.  *Finca Santa Elena* instead dismissed claims related to future construction projects as

unripe because those projects, unlike the Pipeline, had not been proposed, much less constructed.  62

F. Supp. 3d. at 6-7.  And Plaintiffs' suggestion that their NHPA-related claims are not moot

because the Court could enjoin "maintenance or repair" work, *Id.*, is both legally and factually

unsupported and would seemingly have the perverse effect of increasing environmental risks.

Plaintiffs' list of various forms of proposed declaratory relief, ECF No. 324 at 32, all suffer from the

same fatal flaw—they are untethered to any alleged harm that has not already occurred.

## IV.   FEDERAL DEFENDANTS DID NOT WAIVE ANY ARGUMENTS BY FOLLOWING LOCAL CIVIL RULE 7(H)(2)'S DIRECTIVE THAT THE PARTIES NOT SUBMIT STATEMENTS OF DISPUTED MATERIAL FACTS IN ADMINISTRATIVE PROCEDURE ACT CASES.

Plaintiffs repeatedly argue that Federal Defendants admitted all facts Plaintiffs alleged in

their Statement of Material Facts.  ECF No. 324 at 3-4.  Plaintiffs are incorrect that Local Civil Rule

7(h)(1) required Federal Defendants to controvert each fact alleged by Plaintiffs.  To the contrary,

Local Civil Rule 7(h)(1) "shall not apply to cases in which judicial review is based solely on the

administrative record." LCvR 7(h)(2).  In other words, "in cases 'in which judicial review is based

solely on the administrative record,' the parties are *not* required to submit statements of disputed or

undisputed material facts." *All. for Nat. Health U.S. v. Sebelius*, 775 F. Supp. 2d 114, 118 (D.D.C.

2011) (emphasis added) (quoting LCvR 7(h)(2)); *Malladi v. Brown*, 987 F. Supp. 893, 922 (M.D. Ala. 1997) (in Administrative Procedure Act case "the court does not look at whether there is a genuine issue of material fact, but instead turns directly to the question of the validity of the challenge.") (citation omitted)), *aff'd sub nom.*, *United States v. Ponder*, 150 F.3d 1197 (11th Cir. 1998).  Federal Defendants complied with Local Civil Rule 7(h) by including in their Memorandum "a statement of facts with references to the administrative record."  LCvR 7(h)(2); *Koretoff v. Vilsack*, 841 F. Supp. 2d 1, 5 n.3 (D.D.C. 2012), *aff'd*, 707 F.3d 394 (D.C. Cir. 2013).

## CONCLUSION

Federal Defendants fully complied with NEPA by focusing their respective environmental reviews to the areas in which they have jurisdiction and did not improperly segment their analysis.  Plaintiffs identified no breach of a trust or treaty duty, but rather conceded that their first claim for relief should be dismissed. And Plaintiffs' NHPA-related claims are moot because the construction work that Plaintiffs claimed would destroy any historic or culturally significant sites has been completed. For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment should be denied and Federal Defendants' Motion for Partial Summary Judgment should be granted.

Dated: February 9, 2018                    Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment & Natural Resources Division

By:     */s/  Matthew Marinelli*
REUBEN S. SCHIFMAN, NY Bar
MATTHEW MARINELLI, IL Bar 6277967
U.S. Department of Justice
Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Washington, DC 20044
Phone: (202) 305-0293 (Marinelli)

Phone: (202) 305-4224 (Schifman)
Fax: (202) 305-0506
matthew.marinelli@usdoj.gov
reuben.schifman@usdoj.gov

ERICA M. ZILIOLI, D.C. Bar 488073
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 514-6390
Fax: (202) 514-8865
Erica.Zilioli@usdoj.gov

*Attorneys for the United States Army Corps of Engineers*

OF COUNSEL:

MILTON BOYD
MELANIE CASNER
U.S. Army Corps of Engineers
Office of Chief Counsel
Washington, DC

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 9th day of February, 2018, a copy of the foregoing was filed through the Court's CM/ECF management system and electronically served on counsel of record.

*/s/  Matthew Marinelli*
Matthew Marinelli
U.S. Department of Justice
Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Washington, DC 20044
Phone: (202) 305-0293
Fax: (202) 305-0506
matthew.marinelli@usdoj.gov