**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| CHEYENNE RIVER SIOUX TRIBE, | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-01534 (JEB) |
| | ) [Consolidated with 1:16-cv-1796 |
| UNITED STATES ARMY CORPS OF | ) and 1:17-cv-267] |
| ENGINEERS | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES FISH AND | ) |
| WILDLIFE SERVICE, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| DAKOTA ACCESS, LLC, | ) |
| | ) |
| Defendant-Intervenor and Cross-Claimant | ) |
| | ) |

**FEDERAL DEFENDANTS' RESPONSE TO THE CHEYENNE RIVER
SIOUX TRIBE'S REQUEST TO COMPEL CONSULTATION AND
STANDING ROCK SIOUX TRIBE'S MOTION FOR CLARIFICATION**

**TABLE OF CONTENTS**

I.      Introduction.............................................................................................................. 1

II.     Plaintiffs Cannot Control the Corps' Remand Analysis Process...................................... 2

III.    The Corps Has No Legal Obligation to Consult in the Manner the Tribes
        Demand.................................................................................................................... 7

IV.     The Corps Has Endeavored to Consult But the Tribes Have Not
        Participated in Consultation...................................................................................... 9

V.      Cheyenne River's Motion should be denied for lack of points and
        authorities............................................................................................................. 14

VI.     Conclusion ............................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Alaska Cmty. Action on Toxics v. EPA*,
   943 F. Supp. 2d 96 (D.D.C. 2013)............................................................................................ 6

*American Radio Relay League, Inc. v. FCC*,
   524 F.3d 227 (D.C. Cir. 2008)................................................................................................. 4

*Anacostia Riverkeeper, Inc. v. Jackson*,
   798 F. Supp. 2d 210 (D.D.C. 2011).................................................................................... 4, 6

*Appalachian Power Co. v. EPA*,
   208 F.3d 1015 (D.C. Cir. 2000).............................................................................................. 7

*Barrick Goldstrike Mines, Inc. v. Browner*,
   215 F.3d. 45 (D.C. Cir. 2000).................................................................................................. 7

*Bennett v. Donovan*,
   703 F.3d 582 (D.C. Cir. 2013)............................................................................................ 2, 8

*Buffalo Field Campaign v. Zinke*,
   No. 16-1909 (CRC), 2018 U.S. Dist. LEXIS 15433 (D.D.C. Jan. 31, 2018) .......................... 3

*Cement Kiln Recycling Coal. v. EPA*,
   493 F.3d 207 (D.C. Cir. 2007)................................................................................................ 7

*Crow Creek Sioux Tribe v. Donovan*,
   No. CIV09-3021 RAL, 2010 WL 1005170 (D.S.D. Mar. 16, 2010)....................................... 8

*Cty. of Los Angeles v. Shalala*,
   192 F.3d 1005 (D.C. Cir. 1999).............................................................................................. 2

*Flaherty v. Pritzker*,
   17 F. Supp. 3d 52 (D.D.C. 2014) ........................................................................................... 3

*In re Surface Mining Regulation Litig.*,
   627 F.2d 1346 (D.C. Cir. 1980).............................................................................................. 8

*Indep. Meat Packers Ass'n v. Butz*,
   526 F.2d 228 (8th Cir. 1975) .................................................................................................. 8

*N. Air Cargo v. U.S. Postal Serv.*,
   674 F.3d 852 (D.C. Cir. 2012)................................................................................................ 2

*Palisades Gen. Hosp., Inc. v. Leavitt*,
   426 F.3d 400 (D.C. Cir. 2005)................................................................................................ 2

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
   249 F. Supp. 3d 516 (D.D.C. 2017)...................................................................................... 13

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
   255 F. Supp. 3d 101 (D.D.C. 2017)...................................................................................... 14

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
　No. 16-1534, 2017 U.S. Dist. LEXIS 198603 (D.D.C. Dec. 4, 2017)................................. 2, 10

*Steinbuch v. Cutler*,
　463 F. Supp. 2d 4 (D.D.C. 2006) ........................................................................................ 14

*United States v. Navajo Nation*,
　537 U.S. 488 (2003)........................................................................................................... 14

*Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*,
　533 F.3d 634 (8th Cir. 2008) ............................................................................................... 7

**Statutes**

5 U.S.C. § 553(b)-(c) .............................................................................................................. 4

33 U.S.C. § 1321(d)(1) ........................................................................................................... 6

33 U.S.C. § 1321(j)(4)(B) ....................................................................................................... 5

33 U.S.C. §§ 2701-2762 ......................................................................................................... 5

**Regulations**

38 Fed. Reg. 21,243 (Aug. 3, 1973)........................................................................................ 6

40 C.F.R. § 130.7(c)(1)(ii) ................................................................................................... 4, 5

40 C.F.R. § 1501.4(b) ............................................................................................................. 5

56 Fed. Reg. 54,757 (Oct. 18, 1991)....................................................................................... 6

65 Fed. Reg. 67,249 (Nov. 6, 2000)........................................................................................ 8

**TABLE OF EXHIBITS**

| Exhibit Letter | Description |
|---|---|
| A | Tribal Consultation Policy |
| B | Letter from Col Hudson, Corps, to Chairman Archambault (Sept. 25, 2017) |
| C | Letter from Col Hudson, Corps, to Chairman Frazier, Cheyenne River (Nov. 27, 2017) |
| D | Letter from Chairman Frazier, Cheyenne River, to Col. Hudson, Corps (Jan. 30, 2018) |
| E | Email from C. Borkland to D. Nelson, Cheyenne River (Dec. 8, 2017) |
| F | Email from C. Borkland, to the Corps, Cheyenne River, and Standing Rock (Jan. 12, 2018) |
| G | Letter from Chairman Frazier, Cheyenne River, to C. Borkland, Energy Transfer Partners, L.P. (Feb. 7, 2018) |
| H | Letter from Col. Hudson to Chairman Fraizer (Feb. 23, 2018) |
| I | Letter from Col. Hudson to Chairman Faith (Feb. 23, 2018) |
| J | Letter from Col. Hudson to Standing Rock (Mar. 5, 2018) |
| K | Letter from Chairman Faith, Standing Rock, to C. Borkland (Feb. 28, 2018) |
| L | Email from Ames to Standing Rock (March 7, 2018) |

## I.     Introduction

The Cheyenne River and Standing Rock Sioux Tribes ask the Court to intervene in the Corps' remand process to direct the manner in which the Corps and Tribes consult, and to dictate what information the Corps provides to the Tribes. The Tribes' motions should be denied. First, it is inappropriate as a matter of law for the Court to manage the Corps' remand process. Second, the Corps has engaged in good faith with the Tribes and is seeking to involve them in the remand process, but despite the Corps continuing and repeated efforts, the Tribes have refused to meaningfully engage.

The Corps has consulted with the Tribes, proffered repeated information requests, afforded numerous extensions, engaged in various forms of outreach, and has offered to present the Tribes with additional information.  The Corps sought input from the Tribes regarding hunting, fishing, and other cultural practices for its remand analysis in September 2017 but received no substantive response at all from Cheyenne River and no response from Standing Rock until March 5, 2018.[1]  Moreover, the Tribes had the opportunity for in-person meetings and to obtain at least some of the information they seek in their motions had they participated in at least one of the meetings held on January 11, February 8, or March 7, 2018.  But the Tribes did not attend the January or March meetings and chose to leave the February meeting before any substantive discussions began.    Thus the Tribes have not engaged with Dakota Access, LLC and the Corps in furtherance of efforts to finalize the spill response plan for Lake Oahe as contemplated in this Court's December 4, 2017 order, ECF No. 304.

_____

[1] Standing Rock's March 5, 2018 submission is over 300 pages of information and was followed with additional information on March 15, 2018.  The Corps is in the process of reviewing that information to determine whether it includes the requested information and the next steps in the remand process.  As a result the Corps will likely not be able to conclude the remand process by April 2, 2018 and will further explain its expected timeline in a Notice to the Court.

The Corps has worked in good faith with the Tribes, sending them some of the information they requested as it becomes available and seeking their input in the remand process. That the Tribes are dissatisfied with the process and seek additional information is not a basis for the Court to intervene or allow the Tribes to control the Corps' remand process, a process that is indeed not complete and still ongoing.

## II.    Plaintiffs Cannot Control the Corps' Remand Analysis Process.

The Tribes' efforts to dictate the nature of the Corps' remand analysis process by requiring the Corps to provide information (including spill model data that Dakota Access recently developed in response to the Corps' request), ECF No. 336 at 13, dictate which technical staff the Corps consults with, *id.,* and engage in a process that the Tribes deem as "meaningful consultation," ECF No. 327, on remand fail because the Court lacks jurisdiction over the remand analysis process.

As this Court recognized, it is inappropriate for a court to impose "injunctive relief relating to the relevant agency's analysis or discretion on remand." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 16-1534, 2017 U.S. Dist. LEXIS 198603, at *8 (D.D.C. Dec. 4, 2017) (citation omitted). Rather, "it is the prerogative of the agency to decide in the first instance how best to provide relief." *Bennett v. Donovan*, 703 F.3d 582, 589 (D.C. Cir. 2013) (citation omitted).  The D.C. Circuit has held it inappropriate to require an agency to take a "precise series of steps" on remand.  *Id.  See also Palisades Gen. Hosp., Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005) ("The district court had no jurisdiction to order specific relief."); *N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) ("When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such

situations is to act as an appellate tribunal." (citation omitted)); *Cty. of Los Angeles v. Shalala*, 192 F.3d 1005, 1011-12 (D.C. Cir. 1999) ("Not only was it unnecessary for the court to retain jurisdiction to devise a specific remedy . . ., but it was error to do so." (citation omitted)); *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 57 (D.D.C. 2014) (same); *Buffalo Field Campaign v. Zinke*, No. 16-1909 (CRC), 2018 U.S. Dist. LEXIS 15433, at *18-19 (D.D.C. Jan. 31, 2018) (rejecting request to "direct [an agency] to begin a 12-month review").

Standing Rock does not directly refute this binding caselaw but instead argues that while the Court "may not be able to cabin the Corps' discretion as the [sic] *substance* of its ultimate decision, it is commonplace for courts to put in place procedural safeguards to ensure that the remand is completed in a timely, lawful, and useful manner." ECF No. 336 at 9.

The Corps does not dispute that courts may in some circumstances impose conditions on remand, as indeed the Court has done in this case. But what the Tribes now seek goes well beyond what is appropriate and crosses the line into seeking additional injunctive relief. What the Tribes seek is inconsistent with the Court's previous decision, which drew a distinction between conditions that are "a means of providing the Court with relevant information during this [remand] period," ECF No. 304 at 3, and those that are "constraints on the Corps' analysis or a grant of 'specific relief' to the Tribes." *Id.* at 5. Rather than granting specific relief or dictating the manner in which the Corps must undertake its analysis on remand, the Court required discrete conditions "tailored to monitoring the status of the pipeline during remand." *Id.* at 6. In so doing, the Court made clear that these conditions "do not affect the remand process…" *Id.* at 4. Indeed, the Court's purpose in ordering the remand conditions was to provide "a means by which the Court can ensure that it receives up-to-date and necessary information about the

operation of the pipeline and the facts on the ground" and specifically "tailored to keeping the Court abreast of the conditions at Lake Oahe pending further Corps analysis…".  *Id.* at 2.

In contrast, what the Tribes seek now is *not* directed at "keeping the Court informed as to all parties' efforts to preserve the status quo pending the Corps' further environmental analysis." *Id.* at 7.  Rather, the Tribes seek to dictate how the Corps conducts the remand, for instance dictating the type of information the Corps discloses and requiring the Corps to engage with particular tribal staff and consult with the Tribes regarding the remand in the manner the Tribes prefer.  *See, e.g.*, ECF No. 336 at 13.  It is the prerogative of the agency to undertake remand and the specific relief the Tribes seek is inappropriate and outside this Court's jurisdiction.

Moreover, the cases Standing Rock cites in an attempt to show that the Court may intervene as the Tribes request do not concern the type of remand at issue here—i.e. a discrete analysis under NEPA.  For instance, in *American Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 236 (D.C. Cir. 2008), the court set aside a rule and required the agency provide for public comment on materials the agency relied upon in promulgating the rule.  This requirement was not something the court imposed as a separate extra-statutory requirement on remand. Rather this requirement arose directly from the APA, which in the context of rulemaking requires an agency to publish "notice" of "either the terms or substance of the proposed rule or a description of the subjects and issues involved," in order to "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." 5 U.S.C. § 553(b)-(c). Unlike *American Radio Relay League* this case does not concern rulemaking.

Similarly, in *Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210, 235 (D.D.C. 2011)[2] a regulation provided for the disclosure that plaintiffs sought in that case.  40 C.F.R. § 130.7(c)(1)(ii).  EPA did not object to providing the requested relevant water pollution data, only to the timeline that plaintiffs had proposed.  Indeed, EPA noted that the relevant regulations provide for the public to participate in the development of pollution standards called Total Maximum Daily Loads (TMDL) and "to comment on the TMDL and its supporting data and technical assumptions." EPA's Reply In Supp. of Mot. to Extend Stay 3-4, *Anacostia Riverkeeper*, No. 09-0098 (JDB) (D.D.C. Jan. 1, 2009), ECF No. 38. (citing 40 C.F.R. § 130.7(c)(1)(ii) (calculations to establish TMDLs shall be subject to public review)).

An important difference in this case is there is no law that requires the Corps to share the technical information it is in the process of collecting and evaluating as part of its environmental review on remand, or take any of the other actions the Tribes request.  To be clear, as explained below, the Corps agrees to provide certain appropriate information to the Tribes as has Dakota Access.  An agency decision making, however, is not an unfettered opportunity for any interested party to seek and obtain every piece of information that is before a decision maker. NEPA provides for information to be shared at the conclusion of the agency's process of creating the environmental review documents—and only need involve the public in the interim to the extent practicable. 40 C.F.R. § 1501.4(b).

The only statute Standing Rock appears to cite for the proposition that the Corps has some legal duty to disclose the information the Tribes seek is 33 U.S.C. § 1321(j)(4)(B).  ECF No. 336 at 5 (citing ECF No. 293 at 7); ECF No. 336 at 13 (asking the Court to require the Corps

---

[2] To clarify, though Standing Rock refers to it as "Anacostia Waterkeeper" the plaintiff in the case is "Anacostia Riverkeeper." *See* ECF No. 336 at 10.

"take a convening role, consistent with its obligations under the Oil Pollution Act, to engage with tribal staff…").  This provision does not apply to the Corps and is generally not implicated in this suit.  But even if it were, it does not require any specific disclosures as the Tribes request here.

Section 1321(j)(4)(B) of Title 33 is a portion of section 311 the Oil Pollution Act of 1990, Pub. L. No. 101-380, 104 Stat. 484 (codified as amended at 33 U.S.C. §§ 2701-2762).  Pursuant to section 311(d), the president is required to "prepare and publish  a National Contingency Plan for removal of oil and hazardous substances." *See* 33 U.S.C. § 1321(d)(1).  The National Contingency Plan is informed by "Area Contingency Plans" prepared by "Area Committees" consisting of presidential appointees. *Id.* at § 1321(j)(4)(B)*.* The President has delegated this authority to EPA for inland areas such as those at issue here.  *See* 33 U.S.C. § 1321(d)(1); Exec. Order No. 12,777, 56 Fed. Reg. 54,757, 54,757 (Oct. 18, 1991); Exec. Order No. 11,735, 38 Fed. Reg. 21,243, 21243 (Aug. 3, 1973).  Under this authority the EPA undertakes the production of Area Contingency Plans, chairing the Area Committees and working with state, local, and tribal governments to develop plans.  *See generally Alaska Cmty. Action on Toxics v. EPA*, 943 F. Supp. 2d 96, 98 (D.D.C. 2013).

EPA is not a party to this suit and this provision imposes no duties on the Corps.  But even if this provision applied here, it does not necessitate any disclosures such as those the Tribes seek, only that the committee "works with" the tribes and other interested parties.  As there is no statutory basis for the Court to require the Corps to take the action the Tribes seek, it would be inappropriate for the Court to require it as a component of remand.

In sum, the Tribes seeks to compel the Corps to conduct its remand analysis in the manner they prefer, not according to what the Corps believes is required and is best.  The Tribes would require the Corps to disseminate certain data in a manner of their choosing prior to Dakota

Access addressing the Corps' questions regarding the data.  Whether and to what extent the

Corps disseminates underlying data during the remand process is up to the Corps, as is the

manner and extent to which the Corps consults with the Tribes.  An order specifying a particular

process as to consultation or disclosure of technical information is both inappropriate and beyond

this Court's jurisdiction.

### III.   The Corps Has No Legal Obligation to Consult in the Manner the Tribes Demand.

Standing Rock asks the Court to require the Corps to fulfil "obligations with respect to

government-to-government consultation in carrying out the remand." ECF No. 336 at 12.

Cheyenne River asks the Court to compel the Corps to engage in "meaningful consultation" with

the Tribe.  ECF No. 327.  Regardless of what the precise definition of "meaningful consultation"

may be, it is clear that the Tribes' seek to impose some process upon the Corps' remand analysis

above and beyond what is required by law or appropriate for the Court to order on remand.

The primary basis for Standing Rock's argument that there is an "obligation" for the

Corps to consult in a certain way stems from the Corps' tribal consultation policy.  *See* ECF No.

336 at 11 (citing ECF No. 24-7).  The Corps is complying with its consultation policy: the Tribes

requested consultation and the Corps is honoring that request.  Regardless, the Corps' tribal

consultation policy imposes no "obligation[s]" – it is a guidance document and thus is presumed

non-binding. *Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 228 (D.C. Cir. 2007). While

guidance documents may be binding if they threaten enforcement against, or create legal

consequences for a third party regulated entity, neither situation is present here and Standing

Rock has not argued it is. *See Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1023 (D.C. Cir.

2000); *see also Barrick Goldstrike Mines, Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000).

Rather, the guidance expressly states it "is not intended to, and does not grant, expand, create, or

diminish any legally enforceable rights, benefits, or trust responsibilities, substantive or procedural, not otherwise granted or created under existing law." ECF No. 24-7 at 1 n.2.  *See Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*, 533 F.3d 634, 644 (8th Cir. 2008) (affirming dismissal of claim that government had not met requirements of a tribal consultation policy); *Crow Creek Sioux Tribe v. Donovan*, No. CIV09-3021 RAL, 2010 WL 1005170, at \*5 (D.S.D. Mar. 16, 2010) (same).[3]

Standing Rock complains that there have been no "in-person meetings between Corps leadership and Tribal leadership" ECF No. 336 at 5, but the Corps' non-binding tribal consultation policy expressly acknowledges that most government-to-government "interaction will be staff to staff" and does not require an in-person meeting between Corps leadership and Tribal leadership.  Ex. A, Tribal Consultation Policy ¶ 5(c)(3).  As discussed below, the Corps staff in fact participated in a meeting with representatives from Dakota Access, LLC, which Tribal representatives left before substantively participating.  Moreover, the sustained communications from Corps staff to the Tribes belies the argument that the Corps have not attempted to engage with and consult with the Tribes in carrying out their decision making process on remand.

Regardless, it would be inappropriate for the Court to order the Corps to alter its remand process and dictate the "precise series of steps" on remand in accordance with each Tribes

---

[3] The Corps' tribal consultation policy was mandated by Exec. Order No. 13,175, 65 Fed. Reg. 67,249, 67,249 (Nov. 6, 2000).  It is well established that executive orders do not create a private right of action. *In re Surface Mining Regulation Litig.*, 627 F.2d 1346, 1357 (D.C. Cir. 1980). This Order specifically states that it was "not intended to create any right, benefit, or trust responsibility, substantive or procedural, enforceable at law by a party against the United States, its agencies, or any person." 65 Fed. Reg. at 67, 252; *see Indep. Meat Packers Ass'n v. Butz*, 526 F.2d 228, 234–35 (8th Cir. 1975).

preferred interpretation of the Corps' nonbinding consultation policy. *See Bennett*, 703 F.3d at

589.  It should be left to the Corps in its discretion to consult with each Tribe pursuant to its

policies as it believes to be proper, without unnecessary involvement by the Court.

IV.    **The Corps Has Endeavored to Consult But the Tribes Have Not Participated**
       **in Consultation.**

The Corps has fully complied with its non-binding tribal consultation policy and has

made good faith efforts to engage the Tribes as it prepares its additional analysis on remand.

However, the Corps' consultation efforts have met with less than full cooperation from the

Tribes.

As an initial matter, the Corps has sought to engage with the Tribes and seek Tribal input

regarding Tribal uses of the area near Lake Oahe including for hunting, fishing, and gathering.

*See* Ex. B., Letter from Col Hudson, Corps, to Chairman Archambault (Sept. 25, 2017).  As

Cheyenne River notes, ECF No. 327 at 3, it initially responded to the Corps' request by seeking

additional time to "meaningfully respond."  The Corps responded by requesting that the

information be submitted by December 20, 2017 instead of October 25, 2017. Ex. C., Letter from

Col Hudson, Corps, to Chairman Frazier, Cheyenne River (Nov. 27, 2017).  Cheyenne River

later responded that it was not able to provide any of the requested information until the end of

February 2018.   Ex. D., Letter from Chairman Frazier, Cheyenne River, to Col. Hudson, Corps

(Jan. 30, 2018).  The Tribe indicates in its brief it "will produce to the Corps additional

information and responses to the Corps' request for information no later than **March 2, 2018.**"

ECF No. 327 at 4 (emphasis in original).  However as of the date of this filing, the Corps has not

received a substantive response from the Tribe.

Cheyenne River claims in its brief that the materials it was to provide on March 2 "will

be incomplete as the Tribe has not been permitted to access the spill modeling data," ECF No.

327 at 4. However a brief review of the information requested by the Corps—information specific to Cheyenne River's hunting, fishing, and cultural practices—makes clear that Cheyenne River was not prevented from providing information regarding its hunting and fishing by an absence of spill modeling data, or any other Corps data for that matter.[4]

The Corps received information from Standing Rock pursuant to its September 25, 2017 request for information specific to Standing Rock's hunting, fishing, and cultural practices on March 5, 2018 with additional information provided on March 15, 2018 (i.e. over five months after it was requested).  The Corps is in the process of reviewing Standing Rock's submissions, which total more than 300 pages, to determine whether the submission includes the requested information, evaluate the information, and determine next steps.

Though the Tribes have not been available for meetings nor forthcoming with their provision of information, the Corps, in contrast, has been available on multiple occasions to discuss information requested by the Tribes as that information reasonably becomes available. Beginning on December 8, 2017, Dakota Access attempted to schedule a meeting with the Corps, Standing Rock, and Cheyenne River in December 2017 or January 2018 to "coordinate to finalize spill response plans at Lake Oahe" pursuant to the Court's Order regarding remand conditions. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 2017 U.S. Dist. LEXIS 198603 (D.D.C. Dec. 4, 2017) .  Based on the Corps' records, Cheyenne River did not respond to multiple requests during the months of December and January, including the initial invitation that attached the then-current Geographical Response Plan for the Lake Oahe Crossing.  Ex. E.,

---

[4] Seven of the eight categories of information requested by the Corps generally seek information specific to Cheyenne River's hunting, fishing, and cultural practices. *See* Ex. B.

Email from C. Borkland to D. Nelson, Cheyenne River (Dec. 8, 2017).  Similarly according to

the Corps' records Standing Rock did not respond during the month of December. Having not

heard from the Tribes, the Corps and Dakota Access met on January 11, 2018 "to discuss the

necessary steps and receive initial input from the parties on the response planning." Ex. E at 7.

Cheyenne River did not attend that meeting, nor did Standing Rock.

 Having not received any dates of availability from Cheyenne River or Standing Rock

during the month of January, Dakota Access scheduled a second meeting on February 8, 2018 in

Bismarck, North Dakota, to comply with this Court's order.  Ex. F., Email from C. Borkland, to

the Corps, Cheyenne River, and Standing Rock (Jan. 12, 2018).  Cheyenne River did not respond

to multiple follow up requests in the months of January and February.  On February 2, 2018,

Standing Rock emailed Energy Transfer Partners inviting them to the Standing Rock Reservation

on February 8.  On *February 8*, Cheyenne River hand-delivered a letter to Energy Transfer

Partners *in Bismarck, North Dakota* inviting company representatives to the Tribe's reservation

*in South Dakota*, more than 150 miles away, on the same day.  Ex. G., Letter from Chairman

Frazier, Cheyenne River, to C. Borkland, Energy Transfer Partners, L.P. (Feb. 7, 2018).

 At the February 8 meeting, Dakota Access planned to share and discuss the updated

revised Geographic Response Plan, which is informed by the oil spill model, and the Corps

planned to share a list of irrigation and municipal easements on the Lake Oahe Project.  The

updates to the Geographic Response Plan and the list were products of the "productive multi-

hour meeting" on January 11.  Ex. F. at 5.

 However, representatives from Standing Rock and Cheyenne River left the meeting after

introductions had concluded and before Standing Rock and Cheyenne River could present "any

information that either tribe wants [Dakota Access] to consider," including "any errors or

relevant omissions that [the Tribes] have identified in either [the draft Geographic Response Plan

or the Facility Response Plan]," or Dakota Access and the Corps could either: (1) provide the

Tribes with the information, including information that they seek in the instant motion, that

Dakota Access and the Corps intended to provide or (2) discuss the updated revised

Geographical Response Plan pursuant to this Court's December 4, 2017 order. Ex. F. at 5.

Following this meeting, the Corps, by letter, provided the Tribes with the then-current

draft Geographic Response Plan and Oahe Project Irrigation/Municipal Easements list.  Ex. H.,

Letter from Col. Hudson to Chairman Fraizer (Feb. 23, 2018); Ex. I., Letter from Col. Hudson to

Chairman Faith (Feb. 23, 2018).  The Corps also provided another copy of the draft Facility

Response Plan, information regarding composition of the oil within the pipeline, and Oahe

project personnel as requested by Standing Rock in its December 18, 2017 letter.  Ex. J., Letter

from Col. Hudson to Standing Rock (Mar. 5, 2018).

A third meeting to discuss finalization of spill response plans was held on March 7.  At

this meeting, Dakota Access sought information from the Corps and Standing Rock on historic

properties, Mad Bear I and II, that were identified by Standing Rock.  Ex. K., Letter from

Chairman Faith, Standing Rock, to C. Borkland (Feb. 28, 2018).  In addition, Dakota Access

presented an overview of the spill modelling summary and updates to the Geographic Response

Plan based on input received during the February 8, 2018 meeting.  Neither Standing Rock nor

Cheyenne River attended the meeting.

The Corps is still considering the Tribes' request for spill modeling data in a reasonable

manner.  The Corps requested that Dakota Access provide additional spill modeling at Lake

Oahe.  *See* ECF No. 281.  The Corps is still working with Dakota Access to address questions

posed by Corps personnel regarding the spill modeling data.  To be clear, the Corps has had in-

person meetings with Dakota Access to review and discuss information Dakota Access provided

in response to the Corps' August 24, 2017 letter.  The Corps envisioned a similar process with

the Tribes, but never received a substantive response to its request for information from them (at

least until the March 5 and 15 submissions from Standing Rock, which the Corps is still

evaluating).

Following the resolution of the Corps' questions to Dakota Access regarding the spill

modeling, the Corps anticipates coordinating with other Federal agencies as part of its evaluation

of what data is appropriate to share with the Tribes.  As this Court previously concluded, "there

is good cause to protect from public disclosure" information contained in spill model reports.

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 249 F. Supp. 3d 516, 522 (D.D.C.

2017).  Even if there was a legal basis for compelling the Corps to share the spill modeling data

sought by the Tribes, it would be premature to order the Corps to share the data at this time.  Put

another way, the Tribes' motions concerning the manner in which the Corps is conducting its

remand review are also unripe.[5]

Indeed, as the Corps will explain in a Notice filed shortly, the Corps expects to delay the

conclusion of the remand process in order to allow the Tribes a last opportunity to provide

information.  This time period will also allow the Corps to analyze the information it receives,

including the information it has just received from Standing Rock.

In sum, the Corps has made a good faith effort to involve the Tribes in the remand

process. Both Standing Rock and Cheyenne have not fully participated, and indeed in one

instance left a meeting where the Corps was available to discuss some of the very same issues

---

[5] Indeed the Corps continues to coordinate with the Tribes regarding remand issues and schedule additional meetings. *See, e.g.*, Ex. L., Email from Ames to Standing Rock (March 7, 2018).

raised in their briefs and provide the information they seek.  Nonetheless, the Corps has provided

some of the documents the Tribes requested and is considering providing others.  In contrast,

when the Corps sought information from the Tribes, they have either not provided it timely, or

not provided it at all.  Nothing about the facts of consultation in this case contravenes the Corps'

policy of tribal consultation, and there is no justification for the Court to manage the remand

process as the Tribes request.

## V.    CHEYENNE RIVER'S MOTION SHOULD BE DENIED FOR LACK OF POINTS AND AUTHORITIES

Finally, Cheyenne River's motion to compel should also be denied because Cheyenne

River failed to include a statement of points and authorities in support of its motion.  Local Civil

Rule 7(a) provides that "[e]ach motion shall include or be accompanied by a statement of the

specific points of law and authority that support the motion, including where appropriate a

concise statement of facts."  Failure "to provide any memorandum of law or any legal authority

supporting [a] claim" is cause for denying a motion to compel.  *Steinbuch v. Cutler*, 463 F. Supp.

2d 4, 8-9 (D.D.C. 2006).  Cheyenne River provided no statement of points of law in support of

its motion.  Indeed, Cheyenne River did not cite a single case in support of its motion.  The

motion fails on this basis.[6]

---

[6] To the extent that Cheyenne River suggests that the Corps has a trust duty to consult with it, Cheyenne River "must identify a substantive source of law that establishes specific fiduciary or other duties and allege that the Government failed faithfully to perform those duties."  *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 143 (D.D.C. 2017) (citing *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003)).

VI.     CONCLUSION

Standing Rock and Cheyenne River's motions seek to inappropriately involve the Court in the Corps remand process. The Tribes believe that process should proceed differently, but have no legal basis for the relief they seek.  The Corps has worked in good faith with the Tribes, and there is no a basis for the Court to intervene or allow the Tribes to control the Corps' ongoing remand process.


Dated: March 16, 2018                        Respectfully submitted,

                                             JEFFREY H. WOOD
                                             Acting Assistant Attorney General
                                             Environment & Natural Resources Division

                           By:     */s/ Reuben Schifman*___
                                   REUBEN S. SCHIFMAN, NY Bar
                                   MATTHEW MARINELLI, IL Bar 6277967
                                   U.S. Department of Justice
                                   Natural Resources Section
                                   P.O. Box 7611
                                   Benjamin Franklin Station
                                   Washington, DC 20044
                                   Phone: (202) 305-0293 (Marinelli)
                                   Phone: (202) 305-4224 (Schifman)
                                   Fax: (202) 305-0506
                                   matthew.marinelli@usdoj.gov
                                   reuben.schifman@usdoj.gov

                                   ERICA M. ZILIOLI, D.C. Bar 488073
                                   U.S. Department of Justice
                                   Environmental Defense Section
                                   P.O. Box 7611
                                   Washington, DC 20044
                                   Phone: (202) 514-6390
                                   Fax: (202) 514-8865
                                   Erica.Zilioli@usdoj.gov

                                   *Attorneys for the United States Army Corps of*
                                   *Engineers*

                                   OF COUNSEL:

15

MILTON BOYD
MELANIE CASNER
U.S. Army Corps of Engineers
Office of Chief Counsel
Washington, DC

**CERTIFICATE OF SERVICE**

I hereby certify that, on the 16th day of March, 2018, a copy of the foregoing was filed through the Court's CM/ECF management system and electronically served on counsel of record.

*/s/  Reuben Schifman*
REUBEN SCHIFMAN
U.S. Department of Justice
Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Washington, DC 20044
Phone: (202) 305-4224
Fax: (202) 305-0506
reuben.schifman@usdoj.gov

# EXHIBIT  A

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification



**DEPARTMENT OF THE ARMY**
U.S. ARMY CORPS OF ENGINEERS
441 G STREET, NW
WASHINGTON, DC 20314-1000

REPLY TO
ATTENTION OF

NOV   1 2012

CECG

MEMORANDUM FOR Commanders, Directors and Chiefs of Separate Offices, US Army Corps of Engineers

SUBJECT:  Tribal Consultation Policy

1.  This memorandum affirms and formalizes current tribal consultation procedures for the U. S. Army Corps of Engineers (USACE).

2.  The interaction between the federal government and federally recognized Indian Tribes (including Alaska Natives) has its origins in the U. S. Constitution and has been upheld and defined through Treaties, U.S. Supreme Court cases, various statutes and regulations, presidential documents and policies, including the Department of Defense American Indian and Alaska Native Policy, and the USACE Tribal Policy Principles, recently reissued on 10 May 2010.

3.  The Policy provides an outline of our responsibilities to federally recognized Tribes as well as a framework for consulting with them.  It is purposefully general in nature because each of the 565 federally recognized American Indian and Alaska Native Tribes are distinct and separate governments, requiring a consultation process that may be completely unique to them.

4.  USACE recognizes the sovereign status of Tribal governments and our obligation for pre-decisional government-to-government consultation.  USACE also recognizes the unique role Tribes play as partners in water resources projects and seeks to develop relationships with all Tribes who may need our assistance in their capacity building and self-determination.

5.  USACE has an excellent tribal program coordinated by a tribal liaison at Headquarters and a point of contact or liaison in each District and Division office.  These experts are ready to support you and answer any questions you have regarding tribal policies.

6.  An accountable process to interact with Tribes is mandated in Executive Order 13175, *Consultation and Coordination with Indian Tribal Governments*, 06 Nov 2000, and Presidential Memorandum, *Tribal Consultation*, 05 Nov 2009.  Please ensure that your staff is aware of and abides by our Consultation Policy to ensure effective and mutually beneficial relationships with tribal partners.

7.  My point of contact on this issue is Dr. Georgeie Reynolds, (202) 761-5855.

Encl

THOMAS P. BOSTICK
Lieutenant General, U. S. Army
Commanding

October 4, 2012

## U.S. Army Corps of Engineers
## Tribal Consultation Policy

1. References.

    a. U.S. Constitution, Articles I, Section 8; Article VI.

    b. National Historic Preservation Act.

    c. American Indian Religious Freedom Act.

    d. Archaeological Resources Protection Act.

    e. Native American Graves Protection and Repatriation Act.

    f. Religious Freedom Restoration Act.

    g. Executive Order 13007, *Indian Sacred Sites*, 24 May 1996.

    h. Department of Defense American Indian and Alaska Native Policy,
20 Oct 1998.

    i. Executive Order 13175, *Consultation and Coordination with Indian Tribal Governments*, 06 Nov 2000.

    j. Engineer Regulation 1105-2-100, *Planners Guidance Notebook*, 22 Apr 2000.

    k. Department of Defense Instruction Number 4710.02: DoD Interactions with Federally Recognized Tribes, 14 Sep 2006.

    l. Army Regulation 200-1, *Environmental Protection and Enhancement*, 13 Dec 2007.

    m. Engineer Regulation 1130-2-540, *Project Operations – Environmental Stewardship Operations and Maintenance Guidelines and Procedures*, 11 Aug 2008.

    n. Presidential Memorandum, *Tribal Consultation*, 5 Nov 2009.

    o. USACE *Tribal Policy Principles*, 18 Feb 1998 and 10 May 2010.

    p. Announcement of Presidential support for the *United Nations Declaration on the Rights of Indigenous Peoples*, Public Papers of the President, December 16, 2010.

2. Purpose. On November 5, 2009, President Barack Obama issued a Memorandum to the heads of all federally agencies entitled *Tribal Consultation* (74 Fed Reg 57881) reaffirming Executive

Order 13175, *Consultation and Coordination with Indian Tribal Governments* (65 Fed Reg 67249) signed by President William J. Clinton on November 6, 2000. E.O. 13175 requires all federal agencies to formulate "an accountable process to ensure meaningful and timely input by tribal officials in the development of regulatory policies that have tribal implications." This document affirms the U.S. Army Corps of Engineers'(USACE) commitment to engage in consultation with federally recognized Tribes.

3. Background.  There are responsibilities to Tribes resulting from the Federal Trust Doctrine, as well as from Treaties, statutes, regulations, Executive Orders and agreements between the United States government and tribal governments. Department of Defense *American Indian and Alaska Native Policy*, Department of Defense Instruction number 4710.02: *DoD Interactions with Federally Recognized Tribes,* and US Army Corps of Engineers *Tribal Policy Principles* (Attachment 1) provide guidance.

For the purposes of this policy, the following definitions are applied:

a. Tribe:  Indian Tribes as defined in E.O. 13175, "an Indian or Alaska Native tribe, band, nation, pueblo, village, or community that the Secretary of the Interior acknowledges to exist as an Indian tribe pursuant to the Federally Recognized Indian Tribe List Act of 1994, 25 USC 479a."

b. Consultation: Open, timely, meaningful, collaborative and effective deliberative communication process that emphasizes trust, respect and shared responsibility.  To the extent practicable and permitted by law, consultation works toward mutual consensus and begins at the earliest planning stages, before decisions are made and actions are taken; an active and respectful dialogue concerning actions taken by the USACE that may significantly affect tribal resources, tribal rights (including treaty rights) or Indian lands.

4. Applicability.  This regulation applies to all HQUSACE elements, Major Subordinate Commands, District Commands, the Institute for Water Resources, the Humphreys Engineering Center Support Activity, and the Engineer Research and Development Center.

5. General Policy.  The Tribal Policy Principles.

a. All federally recognized Tribes are sovereign governments and will be treated with respect.

(1) Sovereignty is the foundation of tribal governments.

(2) Tribes are responsible for their own governance and management.

b.  The Trust responsibility will be honored and fulfilled.

(1) The federal government has a unique legal and political relationship with Tribal governments that recognizes self-government and self-determination.

2

(2) USACE is committed to supporting projects and programs beneficial to Tribes through partnership with them.

(3) USACE will ensure that it addresses Tribal concerns regarding protected tribal resources, tribal rights (including treaty rights) and Indian lands.

(4) USACE will protect and allow access to protected tribal resources under USACE jurisdiction to the extent practicable, and will work to develop and implement access policies as needed.

(5) USACE will share information that is not otherwise controlled or classified information.

c. USACE will maintain a government-to-government relationship with Tribes.

(1) Tribes have a unique and distinctive political and legal relationship with the United States.

(2) A Tribe may have access to the Chief of Engineers, the Assistant Secretary of the Army (Civil Works), and other high level individuals if the need arises.

(3) While most interaction will be staff to staff, decision making will be leader to leader (the head of the Tribe and the district commander), with the assistance of the local subject matter expert (typically, the Tribal Liaison).

d. Consultation will be an integral, invaluable process of USACE planning and implementation.

(1) When appropriate, potentially affected Tribes, as determined by the Corps, including Tribes whose aboriginal territories extend to the lands where an activity would occur, will be contacted by letter, telephone or e-mail sufficiently early to allow a timely review of the proposed action. If contacted Tribes notify USACE that other Tribes are potentially affected, USACE has the responsibility to notify those Tribes as well.

(2) Any activity that has the potential to significantly affect protected tribal resources, tribal rights (including treaty rights) and Indian lands-individual projects, programs, permit applications, real estate actions, promulgation of regulations and policies-regardless of land status, will be reviewed at the district level by an individual who effectively interacts with Tribes, usually the Tribal Liaison.

(3) Consultation will be conducted at the district or division level under the guidance of an individual who effectively interacts with Tribes, usually the Tribal Liaison, unless there is a request for HQUSACE (and/or OASA(CW) in the case of Civil Works) input, or if HQUSACE determines input is necessary.

3

(4) Commands will ensure that all Tribes with an interest in a particular activity that has the potential to significantly affect protected tribal resources, tribal rights (including treaty rights) and Indian lands are contacted and their comments taken into consideration.

(5) Consultation procedures for individual projects or programs may be developed at the local level to meet the needs of particular Tribe(s).

(6) In recognition of the varied organizations and customs of different Tribes, written protocols for consultation procedures may be considered and implemented at the local level with a specific Tribe.

(7) A dispute resolution process will be developed during the consultation process, including a provision to elevate the consultation to higher USACE and/or Tribal levels.

(8) Requests for consultation by a Tribe to USACE will be honored.

e.  USACE will support Tribal self-determination, self reliance and capacity building by:

(1) Partnering with Tribes on studies, projects, programs and permitting procedures will be supported and promoted to the extent permitted by law and policy.

(2) To the extent permitted by law and policy, provide information on opportunities to compete for requests for proposals or other potential contracts with USACE.

(3) Sharing appropriate information on USACE programs, policies and procedures, and public documents.

(4) Utilizing Tribal knowledge for planning purposes and to inform operational activities.

(5) Supporting Tribal efforts to lease and operate water resource projects and lands, where appropriate.

(6) Identifying and implementing, within existing authority, other capacity-building opportunities as they occur.

f.  Protection of natural and cultural resources.

(1) USACE recognizes the importance of strict compliance with the Native American Graves Protection and Repatriation Act (NAGPRA), the National Historic Preservation Act (NHPA) and other statutes concerning cultural and natural resources.

(2) USACE acknowledges that compliance with the above statutes may not comprise the full range of consultation, nor of cultural property and resource protection.

4

(3) To the extent allowed by law, USACE will protect the location of historic properties, properties of religious and cultural significance, and archaeological resources, in consultation with and when requested by the affected Tribe(s).[1]

6. Responsibilities of Commanders and other USACE officials interacting with federally recognized Tribes.

a. Build relationships with Tribes soon after each change of command by face-to-face interaction at the local headquarters or at tribal offices when at all possible.

b. Identify and remove procedural impediments to working with Tribes whenever possible.

c. Share appropriate Corps procedures, regulations and organizational information with Tribes.

d. Maintain open lines of communication through consultation with Tribes during the decision making process for those matters that have the potential to significantly affect protected tribal resources, tribal rights (including treaty rights) and Indian lands.

e. Provide Tribes with points of contact on project-related issues, and issues in general.

f. Encourage partnerships on projects with Tribes wherever possible.

g. Encourage collaborative partnerships by other federal and state agencies with Tribes to further their goals and projects.

7. Education. To develop a proactive well-informed workforce, in-house training, workshops, and an annual meeting of USACE tribal liaisons have been developed and should be attended by Corps employees who interact with Tribes-liaisons, project managers, program managers, real estate professionals, regulators, leaders, contracting specialists, etc.

8. Accountability. To assess the effectiveness of USACE Tribal consultation, professionals who interact with Tribes will keep records of consultation meetings and other tribal interactions. These records will be accessible and can be made available for purposes of reporting to OMB through DoD as per the reporting requirement in the Presidential Proclamation of 5 Nov 2009. The report will be synthesized at HQUSACE and transmitted to DoD (OSD) on a yearly basis. A copy of this report will be distributed to federally recognized Tribes upon request.

9. Implementation. USACE will incorporate the six Tribal policy principles, including pre-decisional consultation, into its planning, management, budgetary, operational, and legislative

---

[1] USACE will make every reasonable effort, consistent with law, to withhold this information. However, USACE is required to provide public access to its records under the Freedom of Information Act and can only withhold those records protected from disclosure under a statutory exemption or exclusion. Tribes are encouraged to seek legal advice before providing sensitive information to USACE.

initiatives, management accountability system and ongoing policy and regulation development processes.

10. General Provision: This policy does not establish new requirements, but reaffirms procedures and policies already in place, clarifies responsibilities and establishes clear measures of implementation success. [2]

---

[2] This policy is not intended to, and does not grant, expand, create, or diminish any legally enforceable rights, benefits, or trust responsibilities, substantive or procedural, not otherwise granted or created under existing law. Nor shall this policy be construed to alter, repeal, interpret, or modify tribal sovereignty, any treaty rights, or other rights of any Indian Tribe, or to preempt, modify or limit the exercise of any such right.

# EXHIBIT  B

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification



**DEPARTMENT OF THE ARMY**
CORPS OF ENGINEERS, OMAHA DISTRICT
1616 CAPITOL AVENUE
OMAHA NE 68102-4901

SEP 25 2017

REPLY TO
ATTENTION OF

District Commander

Chairman Dave Archambault II
Standing Rock Sioux Tribe
Bldg. #1, North Standing Rock Avenue
P.O. Box D
Fort Yates, North Dakota 58538

Dear Chairman Archambault:

The purpose of this letter is to request information from the Standing Rock Sioux Tribe (Tribe) to help us in our review of the three issues that the U.S. District Court for the District of Columbia remanded to the U.S. Army Corps of Engineers for further review. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 16-1534, Memorandum Opinion (D. D.C. June 14, 2017) (ECF No. 239). Specifically, the Corps requests that the Tribe participate in the remand analysis being undertaken by the Corps by providing the following information and supporting documentation.

(1) A summary of the number of game, fish and wildlife licenses and permits that were issued by the Tribe, to both Tribal members (resident and non-resident), members of other federally recognized Tribes, and non-members, during 2015, 2016, and 2017. The summary should include a description of the activity permitted and the classification of the license or permit (e.g., Member Game, Fish and Wildlife License for Big Game (Muzzleloader Deer/Antelope); Non-resident non-member Game, Fish and Wildlife license, Migratory Bird), the duration of the permit or license, and any other details you wish to provide.

(2) A summary of the subsistence hunting or fishing licenses or permits that have been issued by the Tribe to Tribal members during 2015, 2016, and 2017. Please also provide citations to all Tribal regulations established for permitting the taking of game, fish, wildlife, timber and plants for disabled persons or for subsistence and ceremonial purposes, and summary of any applications for, and permits issued for, the same during 2015, 2016, and 2017.



Printed on Recycled Paper

-2-

(3) Copies of all hunting or fishing proclamations for 2015, 2016, and 2017.  Please also provide the number of game tags issued in 2015, 2016, and 2017, including the type of species for which the tag was issued and information on any hunting and fishing restrictions, such as size, species, season, or amount.

(4) A summary of harvest reports of game taken during 2015, 2016, and 2017, including the type of species taken, quantity of each species taken, location of where the game was taken, and the type of license or permit under which the game was taken.

(5) Documentation of hunting or fishing permit reciprocity between your Tribe and other tribes, including the Cheyenne River Sioux Tribe, Oglala Sioux Tribe or the Yankton Sioux Tribe during 2015, 2016 and 2017.

(6) Any studies or reports on game (aquatic life, birds and mammals) species, estimated population, and habitat within the Standing Rock Sioux Reservation, and the designated hunting grounds for such game, in relation to Lake Oahe.

(7) Documentation of distinct cultural practices and subsistence hunting, fishing and gathering of your Tribe that are connected to Lake Oahe.  Please describe the practice, its historical origins, and how the practice is connected to Lake Oahe. Please identify any information that you believe is sensitive. To the extent allowed by applicable federal law, cultural practices information will be treated as sensitive information and will be protected or redacted to ensure the confidentiality of the provided information.

(8) Any additional demographic data on your Tribal reservation that you want the Corps to consider beyond what is obtainable from the U.S. Census.

(9) Please verify the completeness of the following list of documents as what has been provided by the Tribe to the Corps since July 25, 2016:

- Accufacts Inc., Memorandum to Jan Hasselman, Earthjustice, Re: Accufacts Review of the U.S. Army Corps of Engineers (USACE) Environmental Assessment (EA) for the Dakota Access Pipeline ("DAPL") (Oct. 28, 2016).

-3-

- Declaration of Jeff Kelly, Director of Standing Rock Sioux Tribe's Department of Game, Fish and Wildlife Conservation, (filed Feb. 14, 2017) (ECF No. 117-16).

- Second Declaration of Richard B. Kuprewicz (March 24, 2017)(ECF No. 272-1).

- Kuprewicz Report Update, filed under seal (February 12, 2017).

- Holmstrom Declaration (August 7, 2017) (ECF No. 272-4).

- Goodman Declaration (August 7, 2017)(ECF No. 272-5).

- Gillian Bowser, Ph.D., Assessment and Review Dakota Access Pipeline Environmental Assessment Terrestrial and Aquatic Organisms (Jan. 2017) (ECF No. 131-5).

We would appreciate receiving this information in the next thirty days. If you need additional time, please let us know. We will determine the next steps in the remand process and whether we need any additional information from your tribe after we receive the requested information and documentation.

Please send your response to Mr. Brent Cossette, at the above address. If you have any questions, then you may contact Mr. Cossette at brent.j.cossette@usace.army.mil or at (402) 995-2712.

Sincerely,

SIGNED
COL JOHN L. HUDSON

John L. Hudson, PE
Colonel, Corps of Engineers
District Commander

# EXHIBIT  C

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification



**DEPARTMENT OF THE ARMY**
CORPS OF ENGINEERS, OMAHA DISTRICT
1616 CAPITOL AVENUE
OMAHA NE  68102-4901

NOV 2 7 2017

REPLY TO
ATTENTION OF

District Commander

Chairman Harold Frazier
Cheyenne River Sioux Tribe
P.O. Box 590
Eagle Butte, South Dakota 57625

Dear Chairman Frazier:

   This letter is in response to your October 24, 2017 letter regarding my September 25, 2017 letter requesting information from your Tribe to assist the Corps in its review of the three issues remanded to the Corps by the U.S. District Court for the District of Columbia in *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*.  I appreciate your Tribe's willingness to participate with the Corps in the remand process.  In your letter, you requested additional time to submit information in response to my September 25, 2017 letter.  Please submit the requested materials by December 20, 2017 so that we can maintain the schedule that we provided to the court.

   Please send the requested information to Mr. Brent Cossette at the above address.  If you have any questions, you may contact Mr. Cossette at Brent.j.cossette@usace.army.mil or at (402) 995-2712.

                                                   Sincerely,

                                                   John L. Hudson, P.E.
                                                   Colonel, Corps of Engineers
                                                   District Commander

cc:
Counsel for Cheyenne River Sioux Tribe:
Nicole Ducheneaux
Fredericks Peebles & Morgan LLP
3610 N. 163rd Plaza
Omaha, NE 68116



Printed o          Recycled Paper

# EXHIBIT  D

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification



**CHAIRMAN**
Harold C. Frazier

**SECRETARY**
EvAnn White Feather

**TREASURER**
Benita Clark

**VICE-CHAIRMAN**
Robert Chasing Hawk

P.O. Box 590
Eagle Butte, South Dakota 57625
Phone: (605) 964-4155
Fax: (605) 964-4151

**TRIBAL COUNCIL MEMBERS**

**DISTRICT 1**
Bernita In the Woods
Bryce In the Woods

**DISTRICT 2**
Theodore Knife, Jr.

**DISTRICT 3**
Edward Widow
John Kessler

**DISTRICT 4**
Jim Pearman
Kevin Keckler
Merrie Miller-White Bull
Mark Knight

**DISTRICT 5**
Ryman LeBeau
Raymond Uses The Knife
Robert Chasing Hawk
Derek Bartlett

**DISTRICT 6**
Tuffy Thompson
Wade "Tater" Ward

January 30, 2018

**VIA REGULAR MAIL AND EMAIL**

Colonel John L. Hudson
U.S. Army Corps of Engineers, Omaha District
1616 Capitol Ave., Ste. 9000
Omaha, NE 68102-4901

     Re:    Cheyenne River Sioux Tribe: *Standing Rock Sioux Tribe et al. v. U.S. Army Corps of Engineers et al.*, Case No. 1:16-cv-01534 (D.D.C.)

Dear Colonel Hudson:

This letter is a follow-up to my previous correspondence to you dated December 18, 2017. In that correspondence, I advised you that in light of the Cheyenne River Sioux Tribe's ("Tribe") limited resources and personnel, the Tribe would not be able to submit remand materials to the U.S. Army Corps of Engineers ("Corps") any earlier than January 30, 2018. The Tribe has continued to work toward generating that material, but the Tribe's existing constraints and cooperation meeting with remand conditions has further delayed finalization of the Tribe's remand materials. At this time, the Tribe does not anticipate having final remand materials until the end of February 2018.

My last correspondence to you addressed your failure to respond to the Tribe's request to review Dakota Access's spill modeling and the Tribe's request to participate in this remand as a cooperating agency. You still have not responded. Furthermore, you have not even acknowledged

The blue represents the thunderclouds above the world where live the thunder birds who control the four winds. The rainbow is for the Cheyenne River Sioux people who are keepers of the Most Sacred Calf Pipe, a gift from the White Buffalo Calf Maiden. The eagle feathers at the edges of the rim of the world represent the spotted eagle who is the protector of all Lakota. The two pipes fused together are for unity. One pipe is for the Lakota, the other for all the other Indian Nations. The yellow hoops represent the Sacred Hoop, which shall not be broken. The Sacred Calf Pipe Bundle in red represents Wakan Tanka – The Great Mystery. All the colors of the Lakota are visible. The red, yellow, black and white represent the four major races. The blue is for heaven and the green for Mother Earth.

Col. John Hudson
January 30, 2018
Page 2

receipt of my correspondences concerning the remand.  In this process, which is so critical to the
Tribe's interest and in light of the government-to-government relationship, your failure to respond
is not only unprofessional, but disrespectful to the special relationship between our two
governments and the integrity of this remand process.

Please contact me as soon as possible, but no later than February 7, 2018, to provide a
response to my previous requests and to discuss the ongoing timeline.  You may reach me at
haroldcfrazier@yahoo.com,      with      a      cc      to      my      attorney      Nicole      Ducheneaux
(nducheneaux@ndnlaw.com) or via telephone at 605-964-4155.

Sincerely,

Harold Frazier, Chairman
Cheyenne River Sioux Tribe

# EXHIBIT   E

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification

| | |
|---|---|
| **From:** | <u>BORKLAND, CARL G</u> |
| **To:** | <u>Stasch, Eric D CIV USARMY CENWO (US)</u>; <u>Harlon, William D III CIV USARMY CENWO (US)</u>; <u>Cossette, Brent J CIV USARMY CENWO (US)</u>; <u>Lindquist, Todd J CIV USARMY CENWO (US)</u> |
| **Cc:** | <u>MINTER, JUSTIN D</u>; <u>Kruger, Heath Robert CIV USARMY CENWO (US)</u>; <u>Sheffield, Phillip R CIV USARMY CENWO (US)</u>; <u>Fairbanks, Walter S CIV USARMY CENWO (US)</u>; <u>Feiock, Patrick D CIV USARMY CENWO (US)</u> |
| **Subject:** | [EXTERNAL] RE: Emergency Planning Meeting |
| **Date:** | Thursday, January 4, 2018 8:19:39 AM |

That sounds great Eric. Thanks for getting back to use. The 11th it is.

We are finalizing the location and times now and I will send a follow-up email  with the details. But, we will meet at the Hampton Inn located at 2020 Schafer Street, Bismarck, ND 58501. We will start at 0800 and will stop around 1600. I don't think we will need that long, but we have the conference room reserved for the entire day.

More to follow.

-----Original Message-----
From: Stasch, Eric D CIV USARMY CENWO (US) [mailto:Eric.D.Stasch@usace.army.mil]
Sent: Thursday, January 04, 2018 8:51 AM
To: BORKLAND, CARL G <CARL.BORKLAND@energytransfer.com>; Harlon, William D III CIV USARMY CENWO (US) <William.D.Harlon@usace.army.mil>; Cossette, Brent J CIV USARMY CENWO (US) <Brent.J.Cossette@usace.army.mil>; Lindquist, Todd J CIV USARMY CENWO (US) <Todd.J.Lindquist@usace.army.mil>
Cc: MINTER, JUSTIN D <JUSTIN.MINTER@energytransfer.com>; Kruger, Heath Robert CIV USARMY CENWO (US) <Heath.R.Kruger@usace.army.mil>; Sheffield, Phillip R CIV USARMY CENWO (US) <Phillip.R.Sheffield@usace.army.mil>; Fairbanks, Walter S CIV USARMY CENWO (US) <Walter.S.Fairbanks@usace.army.mil>; Feiock, Patrick D CIV USARMY CENWO (US) <Patrick.D.Feiock@usace.army.mil>
Subject: RE: Emergency Planning Meeting

Good Morning Carl,

The Oahe Project, Corps of Engineers, would like the meeting to be on the 11th if possible.  Looking at Natural Resource Specialists Walter Fairbanks and Pat Feiock from our Bismarck and Mobridge offices respectively attending.  At this time I also plan on attending.

Eric Stasch
Operations Project Manager
Oahe Project Office
605/945-3400 Office
605/222-5067 Cell

-----Original Message-----
From: BORKLAND, CARL G [mailto:CARL.BORKLAND@energytransfer.com]
Sent: Wednesday, January 3, 2018 9:51 AM
To: Harlon, William D III CIV USARMY CENWO (US) <William.D.Harlon@usace.army.mil>; Cossette, Brent J CIV USARMY CENWO (US) <Brent.J.Cossette@usace.army.mil>; Lindquist, Todd J CIV USARMY CENWO (US) <Todd.J.Lindquist@usace.army.mil>; Stasch, Eric D CIV USARMY CENWO (US) <Eric.D.Stasch@usace.army.mil>
Cc: MINTER, JUSTIN D <JUSTIN.MINTER@energytransfer.com>; Kruger, Heath Robert CIV USARMY CENWO (US) <Heath.R.Kruger@usace.army.mil>
Subject: [EXTERNAL] RE: Emergency Planning Meeting

Sure Will.

We have been ordered by Judge Boasberg on December 4, 2017, "The parties shall coordinate to finalize an oil-spill

response plan affecting Tribal resources and land at Lake Oahe, which they shall submit to the Court by April 1, 2018".  That is what was ordered by the Court, so we are using our best efforts and judgement to fulfill that order.

In addition to the Facility Response Plan that was submitted and approved by PHMSA, we had developed a Geographic Response Plan (GRP) as part of the Corp Permitting process back in 2016. The Corp was provided a copy of that plan and we again supplied a copy to the Corp back in early December, 2017.

As part of our management process, in the fall of 2017 our team meet in North Dakota  to review and update the GRP. We now have an updated draft of the plan. We want to review that plan with the Corp and Tribes and make modifications to that new draft plan. So, we want to spend the day reviewing the plan and making changes that you think should be made.

We are sure that we will need another meeting after the additional comments are incorporated. But, since we do have a court ordered deadline of April 1, 2018, we do need to make some progress on updating the GRP.

Thanks for your help Will. If you need anything else, please let me know.


-----Original Message-----
From: Harlon, William D III CIV USARMY CENWO (US) [mailto:William.D.Harlon@usace.army.mil]
Sent: Wednesday, January 03, 2018 9:33 AM
To: BORKLAND, CARL D <CARL.BORKLAND@energytransfer.com>; Cossette, Brent J CIV USARMY CENWO (US) <Brent.J.Cossette@usace.army.mil>; Lindquist, Todd J CIV USARMY CENWO (US) <Todd.J.Lindquist@usace.army.mil>; Stasch, Eric D CIV USARMY CENWO (US) <Eric.D.Stasch@usace.army.mil>
Cc: MINTER, JUSTIN D <JUSTIN.MINTER@energytransfer.com>; Kruger, Heath Robert CIV USARMY CENWO (US) <Heath.R.Kruger@usace.army.mil>
Subject: RE: Emergency Planning Meeting
Good morning Gus. The reasoning for this meeting is still fuzzy to me. Can you provide an agenda that provides more clarity as to what the goals will be and deliverables will be provided/discussed at the meeting?
Thanks, Will


-----Original Message-----
From: BORKLAND, CARL G [mailto:CARL.BORKLAND@energytransfer.com]
Sent: Wednesday, January 03, 2018 6:13 AM
To: Cossette, Brent J CIV USARMY CENWO (US) <Brent.J.Cossette@usace.army.mil>; Lindquist, Todd J CIV USARMY CENWO (US) <Todd.J.Lindquist@usace.army.mil>; Stasch, Eric D CIV USARMY CENWO (US) <Eric.D.Stasch@usace.army.mil>; Harlon, William D III CIV USARMY CENWO (US) <William.D.Harlon@usace.army.mil>
Cc: MINTER, JUSTIN D <JUSTIN.MINTER@energytransfer.com>
Subject: [EXTERNAL] FW: Emergency Planning Meeting

Gentleman,


We have reserved a conference Room for next Thursday and Friday January 11 and 12 at the Hampton Inn in Bismarck. We are hoping to review the current Draft Tactical Response Plan at the meeting.


Before I send another invite and reminder to the team, I just wanted to verify that reps from the Corp will be present at the meeting. Please let me know if the Thursday the 11 works for the Corp. If the 12th works better, please let me know that as well. We are trying to be flexible.

Thanks!

C. Gus Borkland

VP- Environmental Projects & Emergency Planning/Response

EHS&S

Energy Transfer Partners


4041 Market Street

Aston, PA 19014


O: 610.859.5419

C:  215.620.5934

From: BORKLAND, CARL G
Sent: Sunday, December 31, 2017 7:01 PM
To: 'dnelson@crstepd.org' <dnelson@crstepd.org>; 'Elliott Ward' <eward@standingrock.org>
Cc: 'Cossette, Brent J CIV USARMY CENWO (US)' <Brent.J.Cossette@usace.army.mil>;

'Todd.J.Lindquist@usace.army.mil' <Todd.J.Lindquist@usace.army.mil>; 'eric.d.stasch@usace.army.mil'
<eric.d.stasch@usace.army.mil>; Harlon, William D III CIV USARMY CENWO (US)
<William.D.Harlon@usace.army.mil>
Subject: RE: Emergency Planning Meeting

Good evening everyone,

I am again following up and requesting your availability to meet and discuss response planning at the Lake Oahe
River Crossing. We have heard back from the US Army Corp of Engineering and they are available to meeting in
Bismarck on either January 10, 11 or 12. Please let me know if any of those dates will work for Standing Rock or
Cheyenne River.  We will secure a meeting location in Bismarck for the team to meet.

Thank you very much.

C. Gus Borkland

VP- Environmental Projects & Emergency Planning/Response

EHS&S

Energy Transfer Partners

4041 Market Street

Aston, PA 19014

O: 610.859.5419

C:  215.620.5934

From: BORKLAND, CARL G
Sent: Wednesday, December 20, 2017 8:11 AM
To: 'dnelson@crstepd.org' <dnelson@crstepd.org <mailto:dnelson@crstepd.org> >; 'Elliott Ward'
<eward@standingrock.org <mailto:eward@standingrock.org> >; 'Cossette, Brent J CIV USARMY CENWO (US)'
<Brent.J.Cossette@usace.army.mil <mailto:Brent.J.Cossette@usace.army.mil> >
Subject: RE: Emergency Planning Meeting


Hello everyone,


I am following up on the request for availability to meet and discuss response planning. Please advise which dates
would work.  We still are willing to meet in Bismarck to make it more convenient for Standing Rock and Cheyenne
River.  But if we don't have a response by December 29 with availability we will go ahead and schedule a meeting
with the Corps in Omaha to start the process.  In the meantime please continue to feel free to send me input about
planning including any corrections you believe are needed to the draft geographic response plan that we provided to
Standing Rock and Cheyenne River.

Thank you!

C. Gus Borkland

VP- Environmental Projects & Emergency Planning/Response

EHS&S

Energy Transfer Partners


4041 Market Street

Aston, PA 19014


O: 610.859.5419

C:  215.620.5934


From: BORKLAND, CARL G
Sent: Friday, December 08, 2017 12:49 PM
To: 'dnelson@crstepd.org' <dnelson@crstepd.org <mailto:dnelson@crstepd.org> >; 'Elliott Ward'
<eward@standingrock.org <mailto:eward@standingrock.org> >; 'Cossette, Brent J CIV USARMY CENWO (US)'
<Brent.J.Cossette@usace.army.mil <mailto:Brent.J.Cossette@usace.army.mil> >
Subject: Emergency Planning Meeting


All:


I will be in the lead for Dakota Access, LLC on the first condition of Judge Boasberg's December 4 Order (requiring
the parties to coordinate on finalizing an oil-spill response plan affecting Tribal resources and lands at Lake Oahe).
We would like to schedule a meeting to discuss the necessary steps and receive initial input from the parties on
response planning.  We suggest meeting in Bismarck and are available the following dates:


December  19, 20

January 3, 4, 5, 9, 10, 11, 12

Once we have responses, we will circulate a date that is mutually convenient.  Also, attached to this email is the current Geographic Response Plan for the Lake Oahe crossing (with minimal redactions).  If there is any information relevant to response planning that you would like us to have before we meet, please feel free to email it to me.


Thanks,




C. Gus Borkland

VP- Environmental Projects & Emergency Planning/Response

EHS&S

Energy Transfer Partners


4041 Market Street

Aston, PA 19014


O: 610.859.5419

C:  215.620.5934

Private and confidential as detailed here
<BlockedBlockedBlockedhttp://www.energytransfer.com/mail_disclaimer.aspx> . If you cannot access hyperlink,
please e-mail sender.

Private and confidential as detailed here<BlockedBlockedhttp://www.energytransfer.com/mail_disclaimer.aspx>. If
you cannot access hyperlink, please e-mail sender.


Private and confidential as detailed here<Blockedhttp://www.energytransfer.com/mail_disclaimer.aspx>. If you
cannot access hyperlink, please e-mail sender.

# EXHIBIT F

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification

**From:** Borkland, Carl G
**To:** Doug Crow Ghost
**Cc:** Lindquist, Todd J CIV USARMY CENWO (US); Stasch, Eric D CIV USARMY CENWO (US); Elliott Ward; Mike Faith; dnelson@crstepd.org; Stasch, Eric D CIV USARMY CENWO (US); Everett Iron Eyes; Cossette, Brent J CIV USARMY CENWO (US); Harlon, William D III CIV USARMY CENWO (US); Minter, Justin D; Peter Capossela; Dean DePountis; Janet Thomas
**Subject:** [Non-DoD Source] RE: Emergency Planning Meeting SRST/ETP/ACOE
**Date:** Monday, February 5, 2018 8:06:02 AM
**Attachments:** image006.png
image009.png

Thanks for your email Doug. Because our travel plans and logistics have already been set, we are still planning on meeting in Bismarck this Thursday, February 8 to continue our Lake Oahe spill planning. We will start the meeting at 9:00 to allow your team to travel to Bismarck. But if you arrive later, that is fine. We will just continue our meeting after you arrive.  If either Standing Rock or Cheyenne River are able to attend, please let us know so we can make sure we have ample room.

We would also like to schedule another meeting in March in Bismarck.  This meeting would be a plan review meeting, but we would be happy to travel to Standing Rock to review some of the tactical response planning areas. Please let us know if any of these dates work for you:

March 6, 7, 8, 13, or 14

Thanks!

C. Gus Borkland

VP- Environmental Projects & Emergency Planning/Response

EHS&S

Energy Transfer Partners

4041 Market Street

Aston, PA 19014

O: 610.859.5419

C:  215.620.5934

From: Doug Crow Ghost [mailto:dcrowghost@standingrock.org]
Sent: Friday, February 2, 2018 4:06 PM
To: Borkland, Carl G <CARL.BORKLAND@energytransfer.com>
Cc: Todd.J.Lindquist@usace.army.mil; Stasch, Eric D NWO <Eric.D.Stasch@usace.army.mil>; Elliott Ward
<eward@standingrock.org>; Mike Faith <mfaith@standingrock.org>; dnelson@crstepd.org; Stasch, Eric D CIV
USARMY CENWO (US) <Eric.D.Stasch@usace.army.mil>; Everett Iron Eyes
<EVERETT.IRONEYES@standingrock.org>; Cossette, Brent J CIV USARMY CENWO (US)
<Brent.J.Cossette@usace.army.mil>; Harlon, William D III CIV USARMY CENWO (US)
<William.D.Harlon@usace.army.mil>; Minter, Justin D <JUSTIN.MINTER@energytransfer.com>; Peter
Capossela <pcapossela@nu-world.com>; Dean DePountis <ddepountis@standingrock.org>; Janet Thomas
<jthomas@standingrock.org>
Subject: RE: Emergency Planning Meeting SRST/ETP/ACOE

Mr. Borkland

Per Chairman Mike Faith letter, which is attached to this email, the SRST cordially invites Energy Transfer Partners
for a meaningful discussion.

Thanks.

Errol D CrowGhost Jr

Standing Rock Sioux Tribe

Department of Water Resources

Water Administrator

P.O. Box D



Fort Yates, ND. 58538

7018548534 wk

6058483919 cell

dcrowghost@standingrock.org <mailto:dcrowghost@standingrock.org>

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient's and may contain confidential or proprietary information covered by the Electronics Communication Privacy Act, 18 U.S.C. Sections 2510-2521. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail and destroy all copies of the original message

From: Borkland, Carl G [mailto:CARL.BORKLAND@energytransfer.com]
Sent: Friday, January 26, 2018 2:47 PM
To: Doug Crow Ghost <dcrowghost@standingrock.org <mailto:dcrowghost@standingrock.org> >
Cc: Todd.J.Lindquist@usace.army.mil <mailto:Todd.J.Lindquist@usace.army.mil> ; Stasch, Eric D NWO <Eric.D.Stasch@usace.army.mil <mailto:Eric.D.Stasch@usace.army.mil> >; Elliott Ward <eward@standingrock.org <mailto:eward@standingrock.org> >; Mike Faith <mfaith@standingrock.org <mailto:mfaith@standingrock.org> >; dnelson@crstepd.org <mailto:dnelson@crstepd.org> ; Stasch, Eric D CIV USARMY CENWO (US) <Eric.D.Stasch@usace.army.mil <mailto:Eric.D.Stasch@usace.army.mil> >; Cossette, Brent J CIV USARMY CENWO (US) <Brent.J.Cossette@usace.army.mil <mailto:Brent.J.Cossette@usace.army.mil> >; Harlon, William D III CIV USARMY CENWO (US) <William.D.Harlon@usace.army.mil <mailto:William.D.Harlon@usace.army.mil> >; Minter, Justin D <JUSTIN.MINTER@energytransfer.com <mailto:JUSTIN.MINTER@energytransfer.com> >
Subject: RE: Emergency Planning Meeting SRST/ETP/ACOE

All

I am following up to make sure we have a meeting on the calendar for February.  The Corps has confirmed availability on February 8.  We have not heard from either Tribe.  Please advise whether you can attend a February 8 meeting.

We plan to hold the meeting at the same facility as the January 11 meeting. That is the Hampton Inn located at 2020 Schafer Drive, Bismarck, ND.

Thank you very much and have a great weekend.

From: Borkland, Carl G
Sent: Friday, January 12, 2018 5:04 PM
To: 'Doug Crow Ghost' <dcrowghost@standingrock.org <mailto:dcrowghost@standingrock.org> >
Cc: 'Todd.J.Lindquist@usace.army.mil' <Todd.J.Lindquist@usace.army.mil
<mailto:Todd.J.Lindquist@usace.army.mil> >; 'Stasch, Eric D NWO' <Eric.D.Stasch@usace.army.mil
<mailto:Eric.D.Stasch@usace.army.mil> >; 'Elliott Ward' <eward@standingrock.org
<mailto:eward@standingrock.org> >; 'Mike Faith' <mfaith@standingrock.org <mailto:mfaith@standingrock.org>
>; 'dnelson@crstepd.org' <dnelson@crstepd.org <mailto:dnelson@crstepd.org> >; 'Stasch, Eric D CIV USARMY
CENWO (US)' <Eric.D.Stasch@usace.army.mil <mailto:Eric.D.Stasch@usace.army.mil> >; 'Cossette, Brent J CIV
USARMY CENWO (US)' <Brent.J.Cossette@usace.army.mil <mailto:Brent.J.Cossette@usace.army.mil> >;
'Harlon, William D III CIV USARMY CENWO (US)' <William.D.Harlon@usace.army.mil
<mailto:William.D.Harlon@usace.army.mil> >; MINTER, JUSTIN D <JUSTIN.MINTER@energytransfer.com
<mailto:JUSTIN.MINTER@energytransfer.com> >
Subject: RE: Emergency Planning Meeting SRST/ETP/ACOE

All:

Three of us from Dakota Access and one of our response planning consultant representatives had a productive multi-hour meeting with three representatives from the Corps on Jan. 11.  We received very helpful input from the Corps and will continue to work on gathering relevant information.  We will want to go over all of it with both tribes when we meet in February to get your additional input.

As I have said before, if there is any information that either tribe wants us to consider in the meantime based on your review of the existing drafts of the Geographic Response Plan or the Facility Response Plan, please feel free to send that to us before we meet in February.  This includes any errors or relevant omissions that you have identified in either plan.  One takeaway from Thursday's meeting is that we have our work cut out for us if we are going to have the best possible response plan ready by the April 1 deadline.  We expect to need at least two more meetings to accomplish that.  The sooner we get input from the tribes the better.

We have not heard back from either tribe on availability in February.  Our preferred date is February 8.  Other available dates for Dakota Access are February 6, 7, or 9.  We should plan for several hours so that we have the opportunity to make site visits to locations relevant to spill planning.  Please let us know your availability as soon as possible.  April 1 will be here before we know it.

Thank you and have a nice weekend!

C. Gus Borkland

VP- Environmental Projects & Emergency Planning/Response

EHS&S

Energy Transfer Partners

4041 Market Street

Aston, PA 19014

O: 610.859.5419

C:  215.620.5934

From: BORKLAND, CARL G
Sent: Friday, January 05, 2018 4:15 PM
To: 'Doug Crow Ghost' <dcrowghost@standingrock.org <mailto:dcrowghost@standingrock.org> >
Cc: Todd.J.Lindquist@usace.army.mil <mailto:Todd.J.Lindquist@usace.army.mil> ; Stasch, Eric D NWO
<Eric.D.Stasch@usace.army.mil <mailto:Eric.D.Stasch@usace.army.mil> >; Elliott Ward
<eward@standingrock.org <mailto:eward@standingrock.org> >; Mike Faith <mfaith@standingrock.org
<mailto:mfaith@standingrock.org> >; 'dnelson@crstepd.org' <dnelson@crstepd.org <mailto:dnelson@crstepd.org>
>; Stasch, Eric D CIV USARMY CENWO (US) <Eric.D.Stasch@usace.army.mil
<mailto:Eric.D.Stasch@usace.army.mil> >; Cossette, Brent J CIV USARMY CENWO (US)
<Brent.J.Cossette@usace.army.mil <mailto:Brent.J.Cossette@usace.army.mil> >; Harlon, William D III CIV

USARMY CENWO (US) <William.D.Harlon@usace.army.mil <mailto:William.D.Harlon@usace.army.mil> >;
MINTER, JUSTIN D <JUSTIN.MINTER@energytransfer.com <mailto:JUSTIN.MINTER@energytransfer.com> >
Subject: RE: Emergency Planning Meeting SRST/ETP/ACOE

Hello Errol:

Thank you for your email and letter.  We look forward to the chance to meet in February.  Because of the time constraints, we will go ahead and proceed with our response planning efforts in the meantime while we wait for tribal input.  I am also copying the Corps and Cheyenne River to bring them up to speed on meeting planning.

Dakota Access and the Corps will go ahead with our plan to meet this month in Bismarck.  Details are below.  If Cheyenne River wishes to attend (and Standing Rock is still welcome as well), please send me the names of those who will be there.  Please also provide some dates in February that will work for another meeting.  And, as I have said before, feel free in the meantime to send me whatever information you believe is appropriate to assist in response planning.  As you all know, we have an April 1 deadline for the parties to coordinate to finalize an oil-spill response plan affecting Tribal resources and lands at Lake Oahe.

Here are the logistics for the meeting next week:

Date:  January 11, 2018

Time:  8:00AM

Location:  Hampton Inn, 2020 Schafer Drive, Bismarck, ND 58501

Thank you very much!

C. Gus Borkland

VP- Environmental Projects & Emergency Planning/Response

EHS&S

Energy Transfer Partners


4041 Market Street

Aston, PA 19014


O: 610.859.5419

C:  215.620.5934


From: Doug Crow Ghost [mailto:dcrowghost@standingrock.org <mailto:dcrowghost@standingrock.org> ]
Sent: Thursday, January 04, 2018 5:30 PM
To: BORKLAND, CARL G <CARL.BORKLAND@energytransfer.com
<mailto:CARL.BORKLAND@energytransfer.com> >
Cc: Todd.J.Lindquist@usace.army.mil <mailto:Todd.J.Lindquist@usace.army.mil> ; Stasch, Eric D NWO
<Eric.D.Stasch@usace.army.mil <mailto:Eric.D.Stasch@usace.army.mil> >; Elliott Ward
<eward@standingrock.org <mailto:eward@standingrock.org> >; Mike Faith <mfaith@standingrock.org
<mailto:mfaith@standingrock.org> >
Subject: Emergency Planning Meeting SRST/ETP/ACOE


Good Day Everyone,


Hope everyone had a great new year celebration and is looking forward to a great 2018!

Here is a letter from Chairman Mike Faith to Mr. Borkland for the planning of the Lake Oahe River Crossing.

The date for the SRST to be available for a meeting with ETP and ACOE will be in February.

Thanks!

Errol D CrowGhost Jr

Standing Rock Sioux Tribe

Department of Water Resources

Water Administrator

P.O. Box D

Fort Yates, ND. 58538

7018548534 wk

6058483919 cell

dcrowghost@standingrock.org <mailto:dcrowghost@standingrock.org>

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient's and may contain confidential or proprietary information covered by the Electronics Communication Privacy Act, 18 U.S.C. Sections 2510-2521. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail and destroy all copies of the original message

Private and confidential as detailed here <Blockedhttp://www.energytransfer.com/mail_disclaimer.aspx> . If you cannot access hyperlink, please e-mail sender.

# EXHIBIT  G

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification



**CHAIRMAN**
Harold C. Frazier

**SECRETARY**
EvAnn White Feather

**TREASURER**
Benita Clark

**VICE-CHAIRMAN**
Robert Chasing Hawk, Sr.

P.O. Box 590
Eagle Butte, South Dakota 57625
Phone: (605) 964-4155
Fax: (605) 964-4151

**TRIBAL COUNCIL MEMBERS**

**DISTRICT 1**
Bernita In The Woods
Bryce In The Woods

**DISTRICT 2**
Theodore Knife, Jr.

**DISTRICT 3**
Edward Widow
John C. Kessler

**DISTRICT 4**
James L. Pearman
Kevin Keckler
Merrie Miller
Mark J. Knight

**DISTRICT 5**
Ryman LeBeau
Raymond Uses The Knife
Robert Chasing Hawk, Sr.
Derek Bartlett

**DISTRICT 6**
Tuffy Thompson
Wade Tater Ward

February 7, 2018

Carl G. Borkland
Energy Transfer Partners, L.P.
8111 Westchester Drive
Dallas, Texas 75225

Dear Mr. Borkland:

I am inviting Energy Transfer Partners to the Cheyenne River Sioux Tribe on February 8, 2018 which you have identified as an available date for ETP. We are in Council in Green Grass, SD and would be happy to meet with ETP in our meeting as is our custom and governmental procedure. This would be a great opportunity to meet and discuss your efforts with the decision makers responsible to the people of the Cheyenne River Sioux Tribe.

We believe that a meeting should involve information sharing mandated by Judge Boasberg's December 4, 2017 order. We require an unredacted Facility Response Plan, The hazards specific to the Bakken Crude transported in DAPL, as well as prior Energy Transfer Partners and Sunoco oil spill responses.

If you have any questions please feel free to call my office at (605) 964-4155 or haroldcfrazier@yahoo.com.

Sincerely,

Harold Frazier
Chairman

The blue represents the thunderclouds above the world where live the thunder birds who control the four winds. The rainbow is for the Cheyenne River Sioux people who are keepers of the Most Sacred Calf Pipe, a gift from the White Buffalo Calf Maiden. The eagle feathers at th e edges of the rim of the world represent the spotted eagle who is the protector of all Lakota. The two pipes fused together are for unity. One pipe is for the Lakota, the other for all the other Indian Nations. The yellow hoops represent the Sacred Hoop, which shall not be broken. The Sacred Calf Pipe Bu ndle in red represents Wakan Tanka – The Great Mystery. All the colors of the Lakota are visible. The red, yellow, black and white represent the fo ur major races. The blue is for heaven and the green for Mother Earth.



**CHAIRMAN**
Harold C. Frazier

**SECRETARY**
EvAnn White Feather

**TREASURER**
Benita Clark

**VICE-CHAIRMAN**
Robert Chasing Hawk

**TRIBAL COUNCIL MEMBERS**

**DISTRICT 1**
Bernita In the Woods
Bryce In the Woods

**DISTRICT 2**
Theodore Knife, Jr.

**DISTRICT 3**
Edward Widow
John Kessler

**DISTRICT 4**
Jim Pearman
Kevin Keckler
Merrie Miller-White Bull
Mark Knight

**DISTRICT 5**
Ryman LeBeau
Raymond Uses The Knife
Robert Chasing Hawk
Derek Bartlett

**DISTRICT 6**
Tuffy Thompson
Wade "Tater" Ward

P.O. Box 590
Eagle Butte, South Dakota 57625
Phone: (605) 964-4155
Fax: (605) 964-4151

February 7, 2018

**VIA EMAIL AND HAND-DELIVERY**

C. Gus Borkland
VP- Environmental Projects & Emergency Planning/Response
EHS&S
Energy Transfer Partners
4041 Market Street
Aston, PA 19014

Re:   Dakota Access Pipeline – Emergency Response Planning

Dear Mr. Borkland:

The Cheyenne River Sioux Tribe ("Tribe") requests that at least one additional consultation between Energy Transfer Partners ("ETP") and the Tribe with regard to Dakota Access Pipeline ("DAPL") Emergency Response Planning must occur on the Tribe's territory, the Cheyenne River Sioux Reservation.

As you know, the present Emergency Response Planning process implicates the U.S. Army Corps of Engineers permitting process for the DAPL under federal law.   Furthermore, as acknowledged by the U.S. District Court in the ongoing lawsuit, the placement of the DAPL and impacts therefrom affect my Tribe's Treaty rights and trust resources.

The blue represents the thunderclouds above the world where live the thunder birds who control the four winds. The rainbow is for the Cheyenne River Sioux people who are keepers of the Most Sacred Calf Pipe, a gift from the White Buffalo Calf Maiden. The eagle feathers at the edges of the rim of the world represent the spotted eagle who is the protector of all Lakota. The two pipes fused together are for unity. One pipe is for the Lakota, the other for all the other Indian Nations. The yellow hoops represent the Sacred Hoop, which shall not be broken. The Sacred Calf Pipe Bundle in red represents Wakan Tanka – The Great Mystery. All the colors of the Lakota are visible. The red, yellow, black and white represent the four major races. The blue is for heaven and the green for Mother Earth.

C. Gus Borkland
February 7, 2018
Page 2

Consequently, the Tribe requests that ETP work with me to schedule a consultation regarding Emergency Response planning on the Cheyenne River Sioux Reservation, including a site visit to areas of concern on Lake Oahe.

Please contact me at your earliest convenience at 605-964-4155 or haroldcfrazier@yahoo.com.

Sincerely,

Harold Frazier, Chairman
Cheyenne River Sioux Tribe

cc:      Brent Cossette

# EXHIBIT   H

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification



**DEPARTMENT OF THE ARMY**
CORPS OF ENGINEERS, OMAHA DISTRICT
1616 CAPITOL AVENUE
OMAHA NE 68102-4901

February 23, 2018

REPLY TO
ATTENTION
District Commander

Chairman Harold Frazier
Cheyenne River Sioux Tribe
P. O. Box 590
Eagle Butte, South Dakota 57625

Dear Chairman Frazier:

We appreciate your involvement thus far in the Corps' remand analysis process. This letter is in response to your letter dated January 30, 2018, and your previous correspondence. We are not at a point in the National Environmental Policy Act process where we would consider adding cooperating agencies. Nonetheless, we continue to believe that our remand analysis would benefit from information submitted by your Tribe. We look forward to getting that information from you this month in response to our September 25, 2017 and November 27, 2017 letters.

We will provide you a courtesy copy of a letter sent to the Standing Rock Sioux Tribe, with enclosures. The enclosures relate to information requested by the Standing Rock Sioux Tribe and we are providing the documents for your information. Also, we have attached copies of the draft Geographic Response Plan and Oahe Project Irrigation/Municipal Easements list that Dakota Access and the Corps were prepared to discuss and share with your representative, Mr. Nelson, at the February 8, 2018, meeting in Bismarck, North Dakota. The purpose of this meeting was to comply with the Court's order for the parties to coordinate finalization of spill response plans at Lake Oahe. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 16-1534, Order (D. D.C. Dec. 4, 2017)(ECF No. 303). However, shortly after the meeting began, Mr. Nelson left the meeting with representatives from the Standing Rock Sioux Tribe and therefore missed the discussion on the updated Geographical Response Plan.

We are in the process of finishing our review of the spill model and the results submitted by Energy Transfer Partners. We are still considering your request for information related to the spill model. Prior to releasing any spill model information, the Corps will consult with other federal agencies to ensure that protected Sensitive Security Information or protected Critical Infrastructure Information is not disclosed.

Please contact Joel Ames at (402) 995-2909 to schedule a time for us to meet at a mutually agreeable location to discuss the information from your Tribe that will inform the remand analysis.

Sincerely,

John L. Hudson, P.E.
Colonel, Corps of Engineers
District Commander

Printed on Recycled Paper

-2-

cc:
Nicole Ducheneaux
Fredericks Pebbles & Morgan LLP
3610 N. 163rd Plaza
Omaha, Nebraska  68116

# EXHIBIT  I

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification



**DEPARTMENT OF THE ARMY**
CORPS OF ENGINEERS, OMAHA DISTRICT
1616 CAPITOL AVENUE
OMAHA NE  68102-4901

February 23, 2018

REPLY TO
ATTENTION
District Commander

Chairman Mike Faith
Standing Rock Sioux Tribe
Bldg. #1, North Standing Rock Avenue
P.O. Box D
Fort Yates, North Dakota 58538

Dear Chairman Faith:

We appreciate your involvement thus far in the Corps' remand analysis process.  This letter is in response to your letter dated December 18, 2017.  We are in the process of finishing our review of the spill model and the results submitted by Energy Transfer Partners, as well as gathering documents related to your request. During that time, please continue in your efforts to provide your information related to the remand issues that we request on September 25, 2017.

Certain items that you have requested and issues that you have raised are the subject of ongoing coordination efforts between the parties in response to the court's December 4, 2017 order on the oil-spill response plan.  I am enclosing copies on a disk of the draft Geographic Response Plan and Oahe Project Irrigation/Municipal Easements list that Dakota Access and the Corps were prepared to discuss and share with your representatives at the 8 February 2018 meeting in Bismarck, North Dakota.  The purpose of this meeting was to comply with the Court's order for the parties to coordinate finalization of spill response plans at Lake Oahe.  *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 16-1534, Order (D. D.C. Dec. 4, 2017)(ECF No. 303).  However, shortly after the meeting began, the Standing Rock Sioux Tribe's representatives left the meeting with a representative from the Cheyenne Rock Sioux Tribe and therefore missed the discussion on the updated Geographical Response Plan, the intakes that exist between the crossing and Mobridge, South Dakota, and what sensitive receptors can be added to the Geographic Response Plan.  We look forward to continued coordination with your Tribe and Dakota Access to finalize spill response plans at Lake Oahe.

We also look forward to reviewing the forthcoming submittals from the Tribe and applying that information to our analysis.  Please contact Joel Ames at (402) 995-2909 to schedule a time for us to meet at a mutually agreeable location to discuss information from your Tribe that will inform the remand analysis.

Sincerely,

John L. Hudson, P.E.
Colonel, Corps of Engineers
District Commander

Enclosure

-2-

cc: (w/encl):

Jan Hasselman
EarthJustice, Incorporated.
705 2nd Ave, Suite 203
Seattle, Washington  98104-1711

# EXHIBIT   J

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification



**DEPARTMENT OF THE ARMY**
CORPS OF ENGINEERS, OMAHA DISTRICT
1616 CAPITOL AVENUE
OMAHA NE 68102-4901

March 5, 2018

REPLY TO
ATTENTION
District Commander

Chairman Mike Faith
Standing Rock Sioux Tribe
Bldg. #1, North Standing Rock Avenue
P.O. Box D
Fort Yates, North Dakota 58538

Dear Chairman Faith:

As promised in my letter of February 23, 2018, and in response to your letter dated December 18, 2017, we have enclosed materials that are responsive to your requests for documents and information. We are in the process of finishing our review of the spill model and the results submitted by Energy Transfer Partners, as well as gathering documents related to cathodic protection. Prior to releasing any spill model information, the Corps will consult with other federal agencies to ensure that protected Sensitive Security Information or Critical Infrastructure Information is not disclosed. While this process is ongoing, please provide the information we requested in the letter dated September 25, 2017.

The copy of the Facility Response Plan we are providing still contains minimal redactions for privacy and security reasons. While the Environmental Assessment completed in July 2016, included some information regarding the composition of the oil within the Dakota Access pipeline, the Geographic Response Plan provided to you last week also includes information in Appendix H on the composition of Bakken crude transported in the Dakota Access pipeline. In addition to the documents we are providing, as far as Oahe Project personnel, we can advise that there is a total of 43 employees located in Bismarck, Mobridge, and the project offices in Pierre.

We are still working on gathering other materials that may be responsive to your request. We continue to look forward to reviewing the forthcoming submittals from the Tribe and applying that information to our analysis.

Sincerely,

John L. Hudson, P.E.
Colonel, Corps of Engineers
District Commander

Enclosure

cc: (w/ encl):
Jan Hasselman
EarthJustice, Incorporated.
705 2nd Ave, Suite 203
Seattle, Washington 98104-1711

-2-

Chairman Harold Frazier
Cheyenne River Sioux Tribe
P. O. Box 590
Eagle Butte, South Dakota  57625

President Troy Scott Weston
Oglala Sioux Tribe
P. O. Box 2070
Pine Ridge, South Dakota  57770

Chairman Robert Flying Hawk
Yankton Sioux Tribe
P. O. Box 1153
800 Main SW
Wagner, South Dakota  57380

Nicole Ducheneaux
Fredericks Pebbles & Morgan LLP
3610 N. 163rd Plaza
Omaha, Nebraska  68116

Jennifer P. Hughes
Michael Roy
Hobbs Straus Dean & Walker, LLP
2120 L Street NW, Suite 700
Washington, District of Columbia 20037

Jennifer S. Baker
Fredericks Peebles & Morgan LLP
1900 Plaza Drive
Louisville, Colorado 80027

# EXHIBIT   K

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification

Mike Faith
*Chairman*

**TRIBAL COUNCIL**
**(AT LARGE)**

Paul Archambault

Kory McLaughlin

Charles Walker

Frank White Bull

Courtney Yellow Fat

Dana Yellow Fat

Ira Taken Alive
*Vice Chairman*

Susan Agard
*Secretary*

John Pretty Bear
*Cannon Ball District*

Brandon Mauai
*Long Soldier District*

Wayne Looking Back
*Wakpala District*

Delray Demery
*Kenel District*

Joe White Mountain Jr.
*Bear Soldier District*

Caroline Thompson
*Rock Creek District*

Verdell Bobtail Bear
*Running Antelope District*

Samuel B. Harrison
*Porcupine District*

*Sent by email to Carl.borkland@Energytransfer.com*

February 28, 2018

Energy Transfer Partners, L.P.
8111 Westchester Drive
Dallas, Texas 75225

Attention:     Carl Borkland

RE:     Proposed Meeting on Emergency Planning and Response – Dakota Access Pipeline
          March 7, 2018 at the Tribal Administrative Building in Fort Yates, N.D.

Dear Energy Transfer Partners, L.P.:

I write to invite you to the Standing Rock Reservation for a meeting on emergency response planning for the Dakota Access Pipeline, for March 7, 2018, at 10:00 am. This date was identified by Carl Borkland as being available for ETP. Be assured that we will take all steps to ensure that our visitors are treated respectfully, consistent with our Lakota culture.

The information relating to emergency response that has been requested by the Tribe has not been provided by ETP. As stated to you previously, the Geographic Response Plan is only one aspect of emergency planning. We would appreciate your providing the documentation requested prior to March 7, to enable us to review the information prior to the meeting.

Mr. Borkland stated in his email dated February 24th that ETP would like to go to potential clean-up sites on the Reservation. ETP will need the Tribe's permission to enter the Reservation and to traverse Tribal land. At this point, the only permission granted to ETP to enter the Reservation is invitation to meet with him in Tribal chambers.

1

There are numerous historic properties of Lakota and Dakota origin in low-lying areas along the Missouri River.  We remain very concerned with the impact of an oil spill on these sites, and the clean-up and remediation that could further affect these sites.  There needs to be an evaluation of the potential impacts of an oil spill and clean-up activities on these properties.

We are especially concerned with Mad Bear I and II, which are under the continuing jurisdiction of the Corps of Engineers pursuant to the consent decree in the federal *Mato Chezeka* litigation.  All sites must be properly protected and impacts mitigated.  As there have been no discussions or evaluation of the impacts on our cultural properties downstream from the DAPL Lake Oahe crossing, ETP personnel are not permitted on Tribal land for the purpose of conducting any field surveys, at this time.

Thank you for your attention to this matter.

Sincerely,

Mike Faith, Jr., Chairman
Standing Rock Sioux Tribe

# EXHIBIT  L

*Standing Rock Sioux Tribe & Cheyenne River Sioux Tribe*
*v.*
*United States Army Corps of Engineers*
Case No. 1:16-cv-01534 (JEB) [Consolidated with 1:16-cv-1796 and 1:17-cv-267]
Federal Defendants' Response to the Cheyenne River Sioux Tribe's
Request to Compel Consultation and Standing Rock Sioux Tribe's Motion for Clarification

**From:**      Doug Crow Ghost
**To:**        Ames, Omar J CIV USARMY CENWO (US)
**Subject:**   [Non-DoD Source] RE: Meeting dates
**Date:**      Wednesday, March 07, 2018 1:51:08 PM

Joel

I just got word from our Tribal Council that March 26th will be the date that SRST will meet with Colonel Hudson ACOE on remand issues here at the Tribal Administration Building in Fort Yates ND.


Errol D CrowGhost Jr
Standing Rock Sioux Tribe
Department of Water Resources
Water Administrator
P.O. Box D
Fort Yates, ND. 58538
7018548534 wk
6058483919 cell
dcrowghost@standingrock.org


CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient's and may contain confidential or proprietary information covered by the Electronics Communication Privacy Act, 18 U.S.C. Sections 2510-2521. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail and destroy all copies of the original message


-----Original Message-----
From: Ames, Omar J CIV USARMY CENWO (US) [mailto:Joel.O.Ames@usace.army.mil]
Sent: Wednesday, March 07, 2018 8:40 AM
To: Doug Crow Ghost <dcrowghost@standingrock.org>
Subject: Meeting dates
Importance: High

Doug,
  It was good speaking with you this morning.  I didn't realize you were out of office due to the snow.  Again, as discussed let's look at 26, 29, or 30 March for potential meeting  dates.  The sooner you can get back to me the better as the Col's calendar fills in rater quickly.............Joel

NWO Tribal Liaison
1616 Capitol Av, Suite 9000
Omaha, NE 68102-4901
Joel.o.ames@usace.army.mil

Work - (402) 995-2909
Cell - (402) 659-5221