**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STANDING ROCK SIOUX TRIBE,**<br><br>**Plaintiff,**<br><br>**and**<br><br>**CHEYENNE RIVER SIOUX TRIBE,**<br><br>**Intervenor-Plaintiff,**<br><br>**v.**<br><br>**U.S. ARMY CORPS OF ENGINEERS,**<br><br>**Defendant – Cross-Defendant.**<br><br>**and**<br><br>**DAKOTA ACCESS, LLP,**<br><br>**Intervenor-Defendant Cross-Claimant.** | **Case No. 1:16-cv-1534-JEB (and Consolidated Case Nos. 16-cv-1796 and 17-cv-267)** |

**INTERVENOR-PLAINTIFF CHEYENNE RIVER SIOUX TRIBE'S REPLY IN
SUPPORT OF MOTION TO COMPEL MEANINGFUL CONSULTATION**

The Cheyenne River Sioux Tribe hereby submits this Reply in Support of Motion to Compel Meaningful Consultation.

The Defendants' responses to the Cheyenne River Sioux Tribe's ("Tribe") Motion to Compel Meaningful Consultation conveniently ignore the facts set forth in the Tribe's Motion. The Tribe made specific, written, substantive requests of the U.S. Army Corps of Engineers ("Corps") concerning the nature of the remand process, possibilities for broader cooperation with the Tribe, dialog, and access to documents that may be relevant to the Corps' decision-making.

*See* ECF 327.  It made these requests on July 7, 2017, August 15, 2017, September 8, 2017, October 24, 2017, December 18, 2017, and January 30, 2018.  *See* ECF 327-1.  The Corps did not even acknowledge receipt of these inquiries, let alone provide a substantive response, until February 23, 2018, only ***after*** the Tribe filed the instant motion.   Declaration of Nicole Ducheneaux, Exhibit A.

Further, instead of addressing the Corps' utter disregard for the Tribe's substantive inquiries, both Defendants shifted the focus to the chaotic back and forth between representatives of Dakota Access and the Tribes concerning spill response planning.  The ***U.S. Army Corps of Engineers, not Dakota Access,*** is the agency burdened, both by federal statute and this Court's order, with conducting this remand.  The remand, moreover, includes issues well beyond spill response planning.  Hence, engaging in a forty-page he-said-she-said about attendance at meetings with Dakota Access misses the point.  Dakota Access clearly has a role in the remand, but the Tribe's six letters requesting dialog, consultation, and information were not addressed to Dakota Access.  Dakota Access is not authorized to grant or deny a permit under the Rivers and Harbors Act or an easement under the Mineral Leasing Act.  Dakota Access also lacks any authority to evaluate the risks of an oil spill on the Tribe's sacred treaty rights to hunt and fish.  Further, during the ***seven*** long, mostly silent, months between the Tribe's first attempt to engage the Corps and the Corps' halfhearted February 23, 2018 response letter, the Corps did not once advise the Tribe that it should consider contact with the oil company to be a substitute for the requested engagement with the agency.

Even to the extent that interactions with Dakota Access are significant to this question, as noted above, that process has been chaotic.  Both Defendants make much of the problems the parties encountered scheduling meetings between the Tribes and Dakota Access, and in so doing,

lay significant blame on the Tribes without providing further context.  The Defendants fail to note that the Tribe missed the January meeting because of severe winter weather.   Ducheneaux Declaration, Exhibit B.  The Tribe attended the February meeting but was not afforded prior access to information and the technical data in Dakota Access's possession relevant to the process.  *Id.* That technical data never materialized before a March meeting either, despite the Tribe's request. *Id.*  As to the March meeting, Dakota Access not only failed to provide the requested technical data, but also did not advise the Tribe of the meeting until just one week before it was to take place. *Id.*  In a letter to Dakota Access, David Nelson, the director of the Tribe's Department of Environment and Natural Resources, properly highlighted the difficulty with "attending a meeting to discuss data and analysis that Dakota Access presumably has been developing for at least the past six months without first having the opportunity to review and analyze that information."  *Id.* Mr. Nelson explained that "[t]o expect us to appear at this meeting and absorb and respond to such complicated technical information without prior access to that information is unreasonable and unfair."  *Id.*  Further, the short notice disadvantaged this Tribe that is severely lacking in resources. Mr. Nelson advised Dakota Access that "[u]nlike Dakota Access, we do not have technical experts working in-house or the kind of vast financial resources that [the oil company] enjoys.  In order to properly prepare and participate in your meeting we will need, at the very least, two weeks lead time to provide the data and information you have prepared to our experts and arrange for their attendance at our meeting."  *Id.*  Mr. Nelson never received a response to the letter.

All the Cheyenne River Sioux Tribe has requested from the Corps and Dakota Access are the common courtesies of dialog, transparency, and information such that this remand process has integrity and so the Tribe's sacred treaty rights are afforded the respect that they demand.  Instead, the Tribe has been met with resistance, confusion, and silence.  The Corps' ***seven month delay*** in

responding to the Tribe's inquiries does not simply frustrate the process, but it is offensive to the dignity of this sovereign Tribe[1] and disrespectful to the elected Tribal leaders who have reached out in good faith to the agency in a spirit of cooperation. Dakota Access's refusal to share technical data prior to meetings, likewise, not only hinders discourse, but also hints at gamesmanship and a desire to put the Tribe and its technical team at a disadvantage.

By this motion, the Cheyenne River Sioux Tribe is requesting simply that the Court direct the Corps to engage meaningfully with the Tribes by: (1) sharing relevant data related to the decision-making process and spill response planning; (2) engaging actively with the Tribes concerning the remand process and spill response planning; and (3) responding respectfully to good faith requests for information. These are simple, commonsense requests grounded in basic decency and professionalism, but they are also well within this Court's authority on remand. *See, e.g., Friends of the Earth v. Environmental Protection Agency*, 446 F.3d 140, 148 (D.C. Cir. 2006).

In light of the foregoing, the Tribe respectfully requests that the Court order the Corps to engage in meaningful consultation.

Dated: March 23, 2018

<div style="margin-left:40%">

CHEYENNE RIVER SIOUX TRIBE,
Intervenor-Plaintiff,


By:   /s/ Nicole E. Ducheneaux
Nicole E. Ducheneaux
Fredericks Peebles & Morgan LLP
3610 North 163rd Plaza
Omaha, NE  68116
Telephone:  (402) 333-4053
Facsimile:  (402) 333-4761
Email: nducheneaux@ndnlaw.com

</div>

---

[1] The Corps' lack of respect for the Tribes in this process is also evident in its careless interaction with the Yankton Sioux Tribe, who it misidentified as the Oglala Sioux Tribe in *two* consecutive correspondences, despite having been specifically admonished after the first correspondence. *See* ECF 305.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of March, 2018 a copy of the foregoing was filed electronically with the Clerk of the Court.  The electronic filing prompted automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.


_____  /s/ Nicole E. Ducheneaux_____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>                    Plaintiff,<br><br>     and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>                  Intervenor-Plaintiff,<br><br>     v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>               Defendant.<br><br>     and<br><br>DAKOTA ACCESS, LLP,<br><br>                Intervenor-Defendant. | Case No. 1:16-cv-1534-JEB<br>(and Consolidated Case Nos.<br>16-cv-1796 and 17-cv-267) |

**DECLARATION OF NICOLE E. DUCHENEAUX IN SUPPORT OF
REPLY IN SUPPORT OF MOTOIN TO COMPEL MEANINGFUL CONSULTATION
ON REMAND**

I, Nicole E. Ducheneaux, declare as follows:

      1.     I am counsel of record for Intervenor-Plaintiff Cheyenne River Sioux Tribe.  I have

been admitted to practice before this Court.

      2.     A true and correct copy of the February 23, 2018 correspondence from Colonel

John L. Hudson, Corps of Engineers District Commander to Cheyenne River Sioux Tribal

Chairman Harold Frazier is attached hereto as **Exhibit A**.

3.      A true and correct copy of the March 6, 2017 correspondence from David Nelson, Director of the Cheyenne River Sioux Department of Environment and Natural Resources, is attached hereto as **Exhibit B**.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Dated: March 23, 2018

Nicole E. Ducheneaux

2

Case No. 1:16-cv-1534-JEB

# CHEYENNE RIVER SIOUX TRIBE

# EXHIBIT A

Case No. 1:16-cv-1534-JEB



**DEPARTMENT OF THE ARMY**
CORPS OF ENGINEERS, OMAHA DISTRICT
1616 CAPITOL AVENUE
OMAHA NE 68102-4901

February 23, 2018

REPLY TO
ATTENTION
District Commander

Chairman Harold Frazier
Cheyenne River Sioux Tribe
P. O. Box 590
Eagle Butte, South Dakota 57625

Dear Chairman Frazier:

We appreciate your involvement thus far in the Corps' remand analysis process. This letter is in response to your letter dated January 30, 2018, and your previous correspondence. We are not at a point in the National Environmental Policy Act process where we would consider adding cooperating agencies. Nonetheless, we continue to believe that our remand analysis would benefit from information submitted by your Tribe. We look forward to getting that information from you this month in response to our September 25, 2017 and November 27, 2017 letters.

We will provide you a courtesy copy of a letter sent to the Standing Rock Sioux Tribe, with enclosures. The enclosures relate to information requested by the Standing Rock Sioux Tribe and we are providing the documents for your information. Also, we have attached copies of the draft Geographic Response Plan and Oahe Project Irrigation/Municipal Easements list that Dakota Access and the Corps were prepared to discuss and share with your representative, Mr. Nelson, at the February 8, 2018, meeting in Bismarck, North Dakota. The purpose of this meeting was to comply with the Court's order for the parties to coordinate finalization of spill response plans at Lake Oahe. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 16-1534, Order (D. D.C. Dec. 4, 2017)(ECF No. 303). However, shortly after the meeting began, Mr. Nelson left the meeting with representatives from the Standing Rock Sioux Tribe and therefore missed the discussion on the updated Geographical Response Plan.

We are in the process of finishing our review of the spill model and the results submitted by Energy Transfer Partners. We are still considering your request for information related to the spill model. Prior to releasing any spill model information, the Corps will consult with other federal agencies to ensure that protected Sensitive Security Information or protected Critical Infrastructure Information is not disclosed.

Please contact Joel Ames at (402) 995-2909 to schedule a time for us to meet at a mutually agreeable location to discuss the information from your Tribe that will inform the remand analysis.

Sincerely,

John L. Hudson, P.E.
Colonel, Corps of Engineers
District Commander

Printed on Recycled Paper

Case No. 1:16-cv-1534-JEB

# CHEYENNE RIVER SIOUX TRIBE

# EXHIBIT B

Case No. 1:16-cv-1534-JEB



**Department of Environment & Natural Resources**
PO Box 590, South Willow & Airport Rd., Eagle Butte, SD 57625
**Fax: 605-964-1072**

PPG General Assistance
**605-964-6559**
David D. Nelson
Kelsey K. Knight

Brownfields Response
**605-964-3102**
Robert Smith

Pesticide Circuit Rider
**605-964-6558**
Jayme Mestes
Delbert Longbrake
Lakota S. Nordvold

106 Water Quality
**605-964-6560**
Carlyle Ducheneaux
Brandee Jewett
Lonny White Eyes
Misti Hebb

March 6, 2018

<u>**VIA REGULAR MAIL AND EMAIL**</u>

C. Gus Borkland
VP- Environmental Projects & Emergency Planning/Response
Energy Transfer Partners
4041 Market Street
Aston, PA 19014
Email: carl.borkland@energytransfer.com

      Re:     Dakota Access Pipeline – Emergency Response Planning

Dear Mr. Borkland,

      I appreciate Dakota Access's invitation to attend a meeting on March 7, 2018 to discuss technical data related to the remand process. As you know, representatives of the Cheyenne River Sioux Tribe ("Tribe") were unable to attend your January meeting in light of severe weather conditions. Further, as your March 1, 2018 email notes, at the February meeting, the Tribes requested information and data from Dakota Access relevant to the remand prior to further discussion as well as an in-person meeting on our Reservation.

      You chose to wait until nearly a month later to advise that you would not accept our invitation to meet on our Reservation and advised of a date for a meeting seven days hence. Also, as of March 1, 2018, you had not provided us with any data or information related to the remand process.

      As I am sure you can appreciate, we cannot possibly attend a meeting to discuss data and analysis that Dakota Access presumably has been developing for at least the past six months without first having the opportunity to review an analyze that information. To expect us to appear at this meeting and absorb and respond to such complicated technical information without prior access to that information is unreasonable and unfair.

      Further, as you are aware, my Tribe is severely lacking in resources. Unlike Dakota Access, we do not have technical experts working in-house or the kind of vast financial resources that your company enjoys. In order to properly prepare and participate in your meeting we will need, at the very least, two weeks lead time to provide the data and information you have prepared to our experts and arrange for their attendance at our meeting.

C. Gus Borkland
March 5, 2018
Page 2

Significantly, we remain concerned that Dakota Access continues to focus primarily on the concerns of the Standing Rock Sioux Tribe. I would remind you that the Court has imposed remand obligations as to both Tribes.

It is our hope to accomplish the rest of this process in an open and organized manner. In light of that, we request the following with regard to scheduling a further meeting:

1. That Dakota Access provide a comprehensive list of any and all data, analysis, or other information that will be relevant to our upcoming meeting;

2. That Dakota Access make any and all data, analysis, or other information that will be relevant to our upcoming meeting available to the Cheyenne River Sioux Tribe as soon as possible; and

3. That Dakota Access work with the Tribe to schedule a meeting to discuss the above-referenced data, analysis, or other information at least two weeks after transmission.

If Dakota Access will cooperate with the Tribe on these reasonable requests, we will consent to meet with Dakota Access off-Reservation, including Bismarck, North Dakota or Pierre, South Dakota.

Please respond substantively to this correspondence no later than Friday, March 9, 2018.

Very Truly Yours,

David D. Nelson

cc:     Col. John Hudson, *via email and regular mail*
        Brent Cossette, *via email and regular mail*
        Joel Ames, *via email and regular mail*