## DECLARATION OF MIKE FAITH, JR.

I, Mike Faith, Jr., under penalty of perjury, hereby state and affirm:

1. That I serve as Chairman of the Standing Rock Sioux Tribal Council. I was inaugurated as Chairman on October 7, 2017. Prior to that time, I have served as Vice Chairman, and as a Tribal Council representative representing the Standing Rock Reservation at-large. My professional experience includes over 16 years as an elected Tribal official, in which I have represented the Tribe in numerous negotiations with state and federal agencies, non-governmental organizations and companies doing business on the Standing Rock Reservation. I also have over 10 years of experience in the Standing Rock Game and Fish Department, where I managed the Tribe's extensive buffalo herd.

2. Beginning on approximately December 4, 2017, I directed my staff and consultant team to prepare for meetings with Energy Transfer Partners (ETP) on emergency response planning.

3. Our consultant team consists of experts in chemical spill emergency planning and response; oil pipeline safety systems; environmental and biological science; economics and modelling. The team recommended that the Tribe request from Energy Transfer Partners and the Army Corps of Engineers certain information relating to emergency response, prior to the first meeting. The review and evaluation of certain documentation in advance of the meeting was deemed necessary, in order to be a full collaborative partner as directed by the Court.

4. I made a written request for documentation on the worst case discharge into Lake Oahe, in order to estimate the manpower and equipment that would be needed for spill response; the location and operation of shut-off valves, in order to verify the maximum spill estimate; the composition of the Bakken crude, in order to protect Tribal workers involved in spill response; and the spill model to be produced by ETP as directed the Corps of Engineers. (*See* Letter to Col. John L. Hudson dated December 18, 2017; Letter to Energy Transfer Partners dated February 8, 2018, attached hereto). On March 5, 2018, the Corps of Engineers responded to my request in part. (Letter of Vol. John L. Hudson to Chairman Mike Faith, Jr. dated March 5, 2018). Energy Transfer Partners ignored my request. Very little of the information that our experts sought to review prior

1

to a meeting, in order to collaborate with ETP and comply with the December 4, 2014 order in *Stranding Rock Sioux Tribe v. Army Corps of Engineers*, was ever provided. That made it difficult, or impossible, to fully collaborate on oil spill response. We lacked the basic information.

5. At my direction, the program directors of the Standing Rock Sioux Tribe Emergency Response Commission, Department of Water Resources, Department of Environmental Regulation and Tribal Historic Preservation Office held several preparatory meetings and compiled Tribal information to share with ETP. The type of documentation compiled included location of certain cultural sites that need to be protected, including sites protected under consent decree in prior litigation; Reservation and land status maps; and water quality monitoring sites. Our Tribe dutifully prepared to negotiate a collaborative emergency response plan with ETP and the Cheyenne River Sioux Tribe.

6. ETP's communications with our Tribe were confusing. Different people contacted our Tribe at different times, all holding themselves out as being authorized to schedule a meeting. Carl Borkland exchanged several email with tribal staff, and held himself out as the lead point of contact. Attorney Robert Comer introduced himself to me at a Tribal/State Relations Conference in Bismarck on approximately February 1, 2018. I was a speaker on the conference agenda, and I was surprised that an oil company attorney would contact me directly, in person at the conference, and try to hold a meeting on the spot. On February 15, a different attorney, William Brotherton, contacted a Tribal attorney and stated he was authorized to schedule a meeting, even though, upon my information and belief, ETP litigation counsel previously informed Standing Rock's litigation counsel that Mr. Brotherton may not in fact represent the company. I wrote to ETP on February 8, 2018, requesting clarification on exactly who we should be working with, but there was no response by ETP.

7. The failure by ETP to provide documentation on emergency response for our experts to review, and the inconsistent communications by various individuals holding themselves out as ETP personnel, and saying conflicting things, made it virtually impossible to conduct a good-faith, meaningful negotiation on emergency planning.

8. The Standing Rock Sioux Tribe seeks meaningful dialogue with the Corps of Engineers and Energy Transfer Partners on emergency planning for DAPL, to protect public health and welfare of our Tribal members, and to comply with the Court's December 4, 2017 order. We stand prepared to negotiate, but more transparency on issues relating to emergency planning is needed. ETP has refused to work with us in good faith.

9. The communities on the Standing Rock Indian Reservation have become very stressed from the unevaluated risk of an oil spill. Our Reservation land is very dear to us. As Lakota and Dakota people, under our original 1851 Fort Laramie Treaty, we owned and occupied over 60 million acres of land, from the Big Horn mountains in present-day Wyoming, to the Missouri River. Treaty violations reduced our land holdings to the 2.3 million acres comprising the Standing Rock Indian Reservation. This is our home, and we need to preserve it. The threat of an oil spill poses risk to our remaining land and our water. This risk should be mitigated, through the proper evaluation of the potential impacts of an oil spill. That has never occurred.

_____
Mike Faith, Jr.

STATE OF NORTH DAKOTA    )
                         :
COUNTY OF SIOUX          )

SUBSCRIBED and SWORN to before me this 27 day of March, 2018

_____
Notary Public

My Commission Expires _____

EDIE RHOADES
Notary Public
State of North Dakota
My Commission Expires March 7, 2021



*Hand Delivered on February 8, 2018*

February 8, 2018

Energy Transfer Partners, L.P.
8111 Westchester Drive
Dallas, Texas 75225

RE:   Proposed Meeting on Emergency Planning and Response – Dakota Access Pipeline

Dear Energy Transfer Partners, L.P.:

I am in receipt of Carl Borkland's February 5th electronic mail message regarding a meeting on oil spill planning in Bismarck on February 8, 2018. Mr. Borkland declined my invitation to visit the Standing Rock Reservation. (Letter to Carl Borkland, February 1, 2018).

I authorize the following persons to be present and speak on our behalf on February 8:

Doug Crow Ghost, Director, SRST Department of Water Resources
Allyson Two Bears, Director SRST EPA/DER
Everett Iron Eyes, SRST External Affairs Director
Virgil Taken Alive, Tribal elder
Tim Mentz, Sr. Tribal elder
Don Holmstron, Esq., Boulder, Colorado
David Kane, WindHorse Strategic Initiatives, LLP, Boulder, Colorado
Peter Capossela, Attorney at Law, Eugene, Oregon

These individuals are authorized to present this letter, and schedule a future meeting with Tribal government officials at the Tribal headquarters in Fort Yates, N.D.

Customarily, government and corporate officials and nongovernmental organizations with whom our Tribe conduct business respect certain decorum, in dealing with our sovereign nation. Our Lakota values promote respect for all persons, and we expect our friends and neighbors to show respect when conducting business with our Tribe. Carl Borkland's February 5th email responded to my invitation to Energy Transfer Partners to visit Standing Rock and meet with Tribal government officials by stating:

> Because our travel plans and logistics have already been set, we are still planning on Bismarck this Thursday, February 8 to continue our Lake Oahe spill planning. We will start the meeting at 9:00 to alow your team to travel to Bismarck. But if you arrive later that is fine. We will just continue our meeting after you arrive.

> We would also like to schedule another meeting in March in Bismarck. This meeting would be a plan review meeting, but we would be happy to travel to Standing Rock to review some of the tactical response planning areas.

In conducting business with our Tribe in a productive manner, a more collaborative, respectful approach is warranted. In addition, it will be helpful for there to be clarification of the roles of different Energy Transfer Partners executives. Tom Mason of Energy Transfer Equities and outside counsel Robert Comer approached me at a conference in Bismarck on January 30, seeking an immediate meeting. I explained that the proper protocol involves a meeting with Tribal government officials at Council Chambers in Fort Yates. Nevertheless, Mr. Borkland indicated in his February 5th email that ETP declined our invitation. That will limit the overall scope of discussions on February 8; as no elected Tribal officials will be present.

I would be happy to meet with senior ETP officials to discuss a collaboration process for emergency planning. In the meantime, in order to properly cooperate on emergency planning, it shall be necessary to identify the risk that our communities face from the operation of the Dakota Access Pipeline. The spill model and worst case discharge calculations are essential elements of the response plans. Accordingly, it is incumbent that Energy Transfer Partners provide the latest un-redacted Facility Response Plan (FRP), Risk Assessment and Spill Model. In order to discuss the accuracy of the FRP, provide the locations of the shut-off valves for the Lake Oahe crossing, and describe whether they are operated manually, automatically or remotely.

Additionally, any dialogue on emergency response planning will require discussion of ETP's systems for detection of a comparatively low level of oil release. It will be necessary to provide information on the ETP systems that are in place for the detection of

smaller leaks from the Dakota Access Pipeline. We are interested in the plans that have been developed by ETP for all credible discharge scenarios.

This includes the worst case discharge and the undetected leak discharge (ULD) values that are associated with the pipeline location and operating rates. Along with the WCD and ULD values, it will be helpful for you to provide the values and assumptions for the pipeline safety systems at the Lake Oahe crossing, which, as you know, impact the calculation of WCD and ULD. The system design details that we shall need include shutoff valves (location and controls), emergency shutdown system (ESD interlocks with pumps), and the leak detection system. This is obviously necessary in order to discuss emergency planning and remediation that in the event of an oil spill affecting the Standing Rock Indian Reservation.

We are interested in the actual response time for the reported spills from other ETP pipelines. This directly relates to the response time estimated by ETP for an oil release from DAPL. Moreover, we will need the location, number and status of available response teams. Sharing this information is necessary in order to have a productive discussion on emergency response for DAPL.

The adequacy of leak detection is another important issue for discussions on emergency planning. This is a particular concern for the segment of the pipeline inserted in the horizontal directional drilling bore beneath the bed of Lake Oahe. We will need information on the cathodic protection and the SCADA program being utilized.

The composition of Bakken crude will influence its behavior upon a release, as well as the risk and toxicity. We are interested in discussing the composition of the oil transported in the Dakota Access Pipeline. The information on the composition of the Bakken crude utilized by ETP in the FRP will be helpful.

In sum, in order to facilitate a meaningful discussion on emergency planning and response for the Dakota Access Pipeline, we request that you provide the following:

- Most current Facility Response Plan, without redactions
- Most current Lake Oahe Spill Model, including scenarios analyzed and technical documentation
- Most current Risk Analysis specific to the Lake Oahe crossing
- Worst case discharge
- Location and specifications of the Lake Oahe crossing shut-off valves; elevation of the valves and the pipeline segment between the shut-off valves; whether they are automatic or manually operated; and calculation of the drainage volume
- DAPL Pipeline Safety Management System requirements, framework and implementation plan
- Actual response time at other ETP/Sunoco reported pipeline leaks
- Number and location of personnel at Lake Oahe

3

- Cathodic protection program, including design and monitoring specific to the Lake Oahe crossing
- Information on the composition of Bakken crude transported in DAPL that was utilized by ETP in the preparation of the FRP. Identify the hazards specific to the Bakken crude, including flammability and toxicity, and information on how the emergency response plans address those specific hazards.

By providing this information, ETP will truly demonstrate good faith in working with our Tribe. Our staff and consultants are only authorized to discuss the scheduling of a more formal meeting with the Tribal government officials on the Standing Rock Indian Reservation. The February 8th meeting does not constitute a consultation or negotiation with the Standing Rock Tribal government. Thank you for your attention to this matter.

Sincerely,

Mike Faith, Jr., Chairman
Standing Rock Sioux Tribe

4

TRIBAL COUNCIL
(AT LARGE)

Paul Archambault

VACANT

VACANT

Kory McLaughlin

Charles Walker

Dana Yellow Fat

Ira Taken Alive
*Vice Chairman*



Mike Faith

Susan Agard
*Secretary*

John Pretty Bear
Cannon Ball District

Brandon Mauai
Long Soldier District

Wayne Looking Back
Wakpala District

Delray Demery
Kenel District

Joe White Mountain Jr.
Bear Soldier District

Caroline Thompson
Rock Creek District

Verdell Bobtail Bear
Running Antelope District

Samuel B. Harrison
Porcupine District

December 11, 2017

Col. John L. Hudson, P.E.
District Commander
U.S. Army Corps of Engineers – Omaha District
CENWO-DE
1616 Capitol Ave, Suite 9000
Omaha, NE 68102-4901

    Re:    *Standing Rock Sioux Tribe et al. v. U.S. Army Corps of Engineers*

Dear Colonel Hudson:

    I am writing in response to your letter of November 27, 2017. Your letter raises a number of concerns for the Tribe regarding the process, scope and timing of the remand, and the overall fairness and legality of the approach suggested in your letter.

    Judge Boasberg's June 14 decision requires a hard look under NEPA with respect to the Treaty right to hunt and fish, principles of environmental justice, and the controversy arising from expert critique regarding oil spill risks and impacts. As a starting point for this hard look, the Corps is required – including under its own policies – to consult on a government to government basis with Standing Rock (and the other affected Tribes) regarding the issues that must be addressed.

    But your letter (like your predecessor's September 25 letter) skips over this critical first step and instead seeks to unilaterally determine what information you will consider and when. Rather than engaging in meaningful consultation, your letter suggests that the Corps intends to start the remand process by dictating the limited extent to which you will engage. Further, your letter indicates that you decline to meet with the Tribe until we submit specific information requested by the Corps – despite our concerns regarding the inadequacy of the Corps' request, and the clear need for a more comprehensive approach to the remand.

    Your letter (like the September 25, letter) suggests a cursory, narrow approach, fundamentally at odds with the actual breadth and significance of the issues implicated by the remand. For example, while the scientifically-based controversy surrounding oil spill risk and potential impact is a central part of the remand, your letters ask for no new information at all on this broad and overarching topic – suggesting

154472-1

Col. John L. Hudson, P.E.
District Commander
December 11, 2017
Page 2

the you plan to give no meaningful consideration to any new information. And, your letters fail to recognize that the issues remanded by Judge Boasberg are interrelated – as, among other things, the determination of worst case spill discharge (the subject of robust criticism from multiple independent experts) would have a significant impact on both hunting and fishing and environmental justice concerns. For these and other reasons, the simple listing of questions as contained in the September 25 letter, primarily concerning number of hunting and fishing licenses, is roundly inadequate and cannot serve as the outline for a proper process.

The task at hand – addressing the issues for the remand – is vitally important and significantly broader than your letter reflects. The Tribe is working conscientiously to address our issues of concern for the remand. We will soon provide more details regarding our expected time frame – and we would appreciate your keeping us informed regarding any changes in the Corps' overall time frame of April 2, 2018.

There is also an important relationship between the remand and Judge Boasberg's December 4 order and opinion regarding imposing conditions during the period of the remand. In both regards – the remand and the interim conditions – the Tribe has a right to participate. And in both regards, the right is being unduly impaired by the Corps and DAPL withholding important information from the Tribe. Proper consideration of both the issues of the remand, and the issues necessary for proper response planning, require spill model, risk analysis and worst case discharge information, regarding the Lake Oahe crossing – but that information has not been provided.

So, for purposes of both the remand as well as for the required collaboration on response planning, it is requested that you provide the following:

- Most current Facility Response Plan, without redactions, and with all appendices
- Most current Lake Oahe Spill Model, including scenarios analyzed and technical documentation. This should include the spill model information that the Corps has indicated to the Court that it has requested from DAPL recently
- Most current Risk Analysis specific to the Lake Oahe crossing
- Worst case discharge calculations for the Lake Oahe crossing
- Location and specifications of the Lake Oahe shut-off valves; elevation of the valves and the pipeline segment between the shut-off valves; whether they are automatic or manually or remotely operated; and calculation of the drainage volume
- DAPL Pipeline Safety Management System requirements, framework and implementation plan
- Actual response time at other ETP/Sunoco reported pipeline leaks
- Number and location of personnel at Lake Oahe
- Location and contents of oil spill response equipment staged for Oahe area spills
- Cathodic protection program, including design and monitoring specific to the Lake Oahe crossing
- Information on the composition of Bakken crude transported in DAPL that was utilized by ETP in the preparation of the FRP. Identify the hazards specific to the Bakken crude, including

Col. John L. Hudson, P.E.
District Commander
December 11, 2017
Page 3

        flammability and toxicity, and information on how the emergency response plans address those specific hazards.

    Disclosure of this information is necessary in order for the Tribes to meaningfully participate in discussions with the Corps and Energy Transfer Partners, as directed by Judge Boasberg. It is incumbent upon the Corps of Engineers to assist with facilitating a collaborative oil spill response plan for the Missouri River, by disclosing information that is necessary for the development of this plan.

    Moreover, NEPA, Executive Order 13175 and the DoD American Indian and Alaska Native Policy all require genuine government-to-government consultation on issues affecting Tribal resources, such as the study conducted by the Corps on remand. Consultation is an obligation of the Corps of Engineers – it is not conditional upon any action of the Tribe. Accordingly, I reiterate our invitation to the Standing Rock Indian Reservation, to meet and discuss this important matter.

    Thank you.

                                               Sincerely,

                                               Mike Faith, Chairman
                                               Standing Rock Sioux Tribe

cc:     Brent J. Cossette
        U.S. Army Corps of Engineers
        Omaha District
        CENWO-OD-TN
        1616 Capitol Avenue, Suite 9000
        Omaha, NE 68102
        brent.j.cossette@usace.army.mil

154472-1