IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>Plaintiff,<br><br>and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>Defendant-Cross Defendant,<br><br>and<br><br>DAKOTA ACCESS, LLC,<br><br>Defendant-Intervenor-Cross Claimant. | Case No. 1:16-cv-1534-JEB<br>(and Consolidated Case Nos. 16-cv-1796<br>and 17-cv-267)<br><br>MOTION FOR LEAVE TO FILE<br>SUPPLEMENTAL COMPLAINT |

## INTRODUCTION

Pursuant to Fed. R. Civ. P. 15(d), plaintiff Standing Rock Sioux Tribe ("Tribe") hereby

respectfully moves for leave to file a supplemental complaint in this action.  The supplemental

complaint challenges the Army Corps' recent decision to affirm its conclusion that issuance of a

Mineral Leasing Act ("MLA") easement allowing the Dakota Access Pipeline to cross federal

land at Lake Oahe, immediately upstream of the Standing Rock reservation, did not involve

"significant" environmental impacts under the National Environmental Policy Act ("NEPA").

The supplemental complaint also raises claims under the Administrative Procedure Act related to

MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

- 1 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

the Tribe's treaty rights.  A copy of the proposed supplemental complaint is lodged as Exhibit A

to this motion.

Defendant U.S. Army Corps of Engineers ("Corps") and intervenor Dakota Access

Pipeline, LLC ("DAPL") has stated that they will take a position on this motion once they have

had a chance to review it.

ARGUMENT

Unlike an amended complaint, which "typically rest on matters in place prior to the filing

of the original pleading," *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002), a

supplemental complaint sets forth "transaction[s], occurrence[s], or event[s] that happened after

the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).  A supplemental complaint is

used "to set forth new facts that update the original pleading or provide the basis for additional

relief; to put forward new claims or defenses based on events that took place after the original

complaint or answer was filed; [and] to include new parties where subsequent events have made

it necessary to do so." *Hicks*, 283 F.3d at 386 (*citing* 6A Charles Alan Wright, Arthur R. Miller

& Mary Kay Kane, Federal Practice and Procedure § 1504 (3d ed.2010)).

Before filing a supplemental complaint, a plaintiff must first request leave from the

Court.  *Hall v. C.I.A.*, 437 F.3d 94, 100 (D.C. Cir. 2006); Fed. R. Civ. P. 15(d) (providing that a

court "may, on just terms, permit a party to serve a supplemental pleading").  A motion for leave

to supplement a pleading is "to be freely granted when doing so will promote the economic and

speedy disposition of the entire controversy between the parties, will not cause undue delay or

trial inconvenience, and will not prejudice the rights of any of the other parties to the action."

*Hall*, 437 F.3d at 101 (internal quotation marks omitted); *BEG Investments, LLC v. Alberti*, 85

F.Supp.3d 13, 24 (D.D.C. 2015).  Generally, leave to supplement should be freely given.  *Id.*;

MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

- 2 -

*Wildearth Guardians v. Kempthorne*, 592 F.Supp.2d 18, 23 (D.D.C. 2008).  "It is the opposing

party's burden to demonstrate why leave should not be granted."  *Lannan Foundation v. Gingold*,

300 F.Supp.3d 1, 12 (D.D.C. 2017).

 Here, leave to supplement should be granted.  Last year, the Tribe prevailed in part on its

challenge to the Corps' findings under NEPA.  *Standing Rock Sioux Tribe v. U.S. Army Corps of

Engineers*, 255 F. Supp.3d 101 (D.D.C. 2017).  This Court remanded the analysis to the Corps

for additional analysis on three specific issues at the heart of the Tribe's opposition to DAPL.

This Court has repeatedly observed that it expects additional proceedings regarding the legality

of the remand.  In *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 282 F.Supp.3d

91, 109 (D.D.C. 2017), this Court observed: "After the agency's further work on remand, the

parties may well disagree over the sufficiency of its conclusion.  If and when such a dispute

arises, they will again have the opportunity to address whether Defendants have in fact fulfilled

their statutory obligation."  Furthermore, in rejecting the Tribe's request for clarification during

the remand process, this Court again emphasized that the Tribe would have its day in court once

the Corps finalized the remand.  "If the Tribes believe that the Corps has not conducted the

remand appropriately or has not sought out information it should have, then Plaintiffs are, of

course, free to make such arguments in the post-remand briefing that the Court expects will

occur."  *See* Order, ECF 352 (April 16, 2018), at 2.  Regrettably, the Court predicted correctly.

The remand turned out to be a one-sided process in which the Tribe was not provided critical

technical materials or consulted adequately.  The Corps reached conclusions that were squarely

at odds with the record, and failed to grapple with extensive technical input provided by the

Tribe and others undermining its conclusions.

MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

- 3 -

In supplementing its complaint to challenge the remand decision, the Tribe has not acted with any improper or dilatory motive, nor does supplementation prejudice any party.  Moreover, supplementation is in the interests of justice and judicial economy: the Tribe would have the right to initiate a new lawsuit against the Corps if supplementation is denied.  *See Thorp v. District of Columbia*, 325 F.R.D. 510, 514 (D.D.C. 2018) (denying supplementation in favor of a new lawsuit where claims are insufficiently related); *see also Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) ("leave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading.")  Here, given the history of this case and this Court's oversight over the remand process, it makes more sense to bring these claims in the context of the existing litigation than initiate a new one.

The focus of the proceedings on remand will be whether the remand lawfully addressed the shortcomings identified by this Court in its partial summary judgment decision, and whether the Corps adequately considered the materials provided by the Tribe and others, subject to the judicial review standards of the Administrative Procedure Act ("APA").  The Tribe has also asserted APA claims arising under the Tribe's treaty rights and the Corps' trust obligations.  The Tribe recognizes that the Court has ruled against the Tribe on these issues, but believes that inclusion of these claims in the supplemental complaint may be necessary to preserve them for appeal, should the Tribe choose to pursue one.

## CONCLUSION

For the foregoing reasons, the Tribe's motion for leave to supplement its complaint should be GRANTED.  A proposed order is submitted herewith.

MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

- 4 -

Respectfully submitted this 1st day of November, 2018.

*/s/ Jan E. Hasselman*

Jan E. Hasselman, WSBA # 29107
(*Admitted Pro Hac Vice*)
Stephanie Tsosie, WSBA # 49840
(*Admitted Pro Hac Vice*)
Patti A. Goldman, DCBA # 398565
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
Telephone: (206) 343-7340
jhasselman@earthjustice.org
stsosie@earthjustice.org
pgoldman@earthjustice.org

*Attorneys for Plaintiff*

MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

- 5 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2018, I electronically filed the foregoing *Motion for Leave to File Supplemental Complaint* with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

*/s/ Jan E. Hasselman*
Jan E. Hasselman

MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

- 6 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | Case No. 1:16-cv-1534-JEB |
| Plaintiff, | (and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |
| and | FIRST SUPPLEMENTAL COMPLAINT |
| CHEYENNE RIVER SIOUX TRIBE, | |
| Plaintiff-Intervenor, | |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, | |
| Defendant-Cross Defendant, | |
| and | |
| DAKOTA ACCESS, LLC, | |
| Defendant-Intervenor-Cross Claimant. | |

INTRODUCTION

1.     Pursuant to Fed. R. Civ. P. 15(d), plaintiff, Standing Rock Sioux Tribe ("Tribe")

hereby files this supplemental complaint in connection with federal actions relating to the Dakota

Access Pipeline ("DAPL").  DAPL is a 1,168-mile-long crude oil pipeline that crosses the

Missouri River at Lake Oahe half a mile upstream of the Tribe's reservation, on the Tribe's

treaty lands.

2.     This supplemental complaint addresses events that have occurred since this Court

granted in part the Tribe's motion for partial for summary judgment on June 14, 2017.  *Standing*

*Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 255 F. Supp.3d 101 (D.D.C. 2017).  In that

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

decision, this Court found unlawful and remanded the environmental analysis conducted by defendant U.S. Army Corps of Engineers ("Corps") for additional consideration on specific issues.  It further admonished the Corps to give "serious consideration" to the errors identified in its decision, warning that compliance with the law "cannot be reduced to a bureaucratic formality, and the Court expects the Corps not to treat remand as an exercise in filling out the proper paperwork *post hoc*."  *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 282 F.Supp.3d 91, 109 (D.D.C. 2017).

3.    The remand process is now complete and has resulted in another final decision by the Corps.  Regrettably but not surprisingly, the Corps ignored this Court's admonition to approach the remand with an open mind.  Instead, it treated the remand as a *post hoc* effort to justify its unlawful decision to circumvent an adequate review of the pipeline and its impacts on the Tribe and the Tribe's rights.  In the remand decision, the Corps' without qualification affirmed its original decision to authorize the pipeline without a comprehensive environmental review under the National Environmental Policy Act ("NEPA").  Rather than "serious consideration" of the remand issues, the Corps produced a one-sided analysis that failed to provide a fair or transparent review of the matters this Court remanded to it.

4.    This supplemental complaint challenges the Corps' remand decision, which is a final agency action subject to review by this Court under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*., ("APA"), and the process underlying it.  As directed by Fed. R. Civ. P. 15(d), it focuses on the additional background and claims that have arisen since the original complaints were filed.

5.    The Tribe seeks a declaration that the Corps' decision to affirm its original decision without a comprehensive environmental review and adequate consultation with the

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Tribe was arbitrary, capricious and in violation of the APA, NEPA, and the Tribe's Treaty rights. The Tribe asks that the Corps' permits authorizing DAPL under Lake Oahe be vacated pending full compliance with NEPA and the APA.

## JURISDICTION AND VENUE

6.      This supplemental complaint presents claims under the APA, which authorizes a federal court to find unlawful and set aside any final agency action that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. § 706.  The Tribe brings these claims on its own behalf and on behalf of its members.

7.      Jurisdiction arises under 28 U.S.C. § 1362 ("district courts shall have original jurisdiction of all civil actions, brought by any Indian Tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States"); § 1331 (general federal question jurisdiction); § 2201 (declaratory relief); § 2202 (injunctive relief).

8.      Venue in this district is appropriate under 28 U.S.C. § 1391(e) because it is the district in which the defendant resides and in which "a substantial part of the events or omissions giving rise to the claim occurred."  No party has contested jurisdiction or venue during this litigation to date.

## PARTIES

9.      The Standing Rock Sioux Tribe is a federally recognized Indian tribe.  Since time immemorial, the Tribe's ancestors lived on the landscape crossed by DAPL.  The pipeline crosses areas of great historical and cultural significance to the Tribe, the damage or destruction of which greatly injures the Tribe and its members.  The pipeline crosses waters of utmost cultural, religious, spiritual, ecological, and economic significance to the Tribe and its members.

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

- 3 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

The Tribe and its members have been, are being, and, unless the relief sought herein is granted, will be harmed by the Corps' failure to comply with environmental and administrative statutes and the Tribe's Treaties.

10.     The U.S. Army Corps of Engineers is an agency of the United States government, and a division of the U.S. Army, part of the U.S. Department of Defense.  It is charged with regulating any dredging and filling of the waters of the United States under § 404 and § 408 of the Clean Water Act, issuing leases under the Mineral Leasing Act ("MLA"), fulfilling the United States' trust responsibility to Tribes, and complying with NEPA in the course of undertaking major federal actions.  Issuance of permits for DAPL is a major federal action subject to NEPA and other laws.

11.     Intervenor-Defendant Dakota Access, LLC is a limited liability company formed to construct and own Dakota Access Pipeline.  Energy Transfer Partners, L.P., Sunoco Logistics Partners, L.P. and Phillips 66 are the beneficial owners of Dakota Access, LLC.

12.     By filing this action, the Tribe does not waive its sovereign immunity and does not consent to suit as to any claim, demand, offset, or cause of action of the United States, its agencies, officers, agents, or any other person or entity in this or any other court.

FACTUAL ALLEGATIONS

13.     The Tribe originally filed this action on June 27, 2016, two days after the Corps issued an initial set of permits authorizing construction of DAPL at Lake Oahe, immediately upstream of the Tribe's reservation and on territory that was part of the Tribe's Treaty lands.  In its original complaint, the Tribe raised multiple statutory and common law claims against the Corps regarding its authorization of DAPL.  Shortly thereafter, DAPL moved to intervene as a

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

- 4 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

defendant, and the Cheyenne River Sioux Tribe ("CRST") moved to intervene as a plaintiff. This Court granted both motions.

14.     The Tribe immediately moved for a preliminary injunction pursuant to its claims under the National Historic Preservation Act ("NHPA"), seeking to prevent further construction of the pipeline around Lake Oahe pending resolution of the legal claims in the case.  By the time of the Court's consideration of that motion, the Tribe's peaceful and principled opposition to DAPL at Lake Oahe had garnered global attention.

15.     On September 9, 2016, this Court denied the motion for a preliminary injunction. *Standing Rock Sioux Tribe v. Corps,* 205 F. Supp.3d 4 (D.D.C. 2016).  That same day, multiple federal agencies affirmed that the Tribe had raised serious concerns that necessitated a closer look at the Corps' permits at Lake Oahe and their underlying environmental analysis.  The Corps affirmed that the remaining authorization needed to construct the pipeline under Lake Oahe—an easement to cross federally owned land at Lake Oahe issued under the MLA—would not be issued at that time.

16.     After several months of additional consideration, the Corps announced on Dec. 4, 2016, that the MLA easement would not be granted without a comprehensive analysis of alternatives and impacts, including an analysis of the Tribe's Treaty rights, and that this analysis would most likely be undertaken through an environmental impact statement ("EIS").  Shortly thereafter, the Corps formally initiated that process with a notice of intent to prepare an EIS, requesting public input on the critical issues and scope of the EIS.  The Tribe, and many others, provided the Corps with extensive comments in response to the notice of intent.

17.     A new President was inaugurated on January 20, 2017.  On January 24, the new President executed a "Presidential Memorandum" directing the Corps to abandon the December

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

- 5 -

4 decision and the recently initiated EIS process.  The Corps shortly thereafter issued the MLA

easement at Lake Oahe without additional environmental review, and formally terminated the

EIS process.  Construction of the pipeline under Lake Oahe resumed immediately.

18.     After filing an amended complaint, the Tribe moved for partial summary

judgment on its NEPA, Treaty, and APA claims against the Corps.  The Corps and DAPL cross-

moved for summary judgment, and briefing was completed on April 4, 2017.  Construction of

the pipeline was finished soon thereafter, and DAPL announced that it had commenced

commercial operations of the pipeline on June 1, 2017.

19.     This Court issued its opinion on the Tribes' summary judgment motion on June

14, 2017.  While rejecting some of the Tribe's claims, the Court agreed that the Corps' analysis

of three specific issues was arbitrary, capricious, and in violation of NEPA.  First, the Court

ruled that the Corps failed to adequately analyze the impacts of an oil spill on the Tribe's treaty

hunting and fishing rights.  Second, the Court held that the Corps' consideration of

environmental justice implications of the permit was flawed.  Finally, the Court held that the

Corps failed to address the significant scientific "controversy" around its dismissal of oil spill

risk and impacts.  The Court remanded the analysis back to the Corps for further consideration in

light of its decision.

20.     This Court subsequently denied the Tribe's request that the permits be vacated

during the remand process, finding a "serious possibility" that the Corps could substantiate its

decision on remand.  *Standing Rock*, 282 F. Supp.3d at 109.  In a further decision, this Court

granted the Tribe's request to impose interim conditions on DAPL's operation during the

remand, finding that they were necessary to keep the Court informed of conditions and address

its "ongoing concern with the risk of a spill at Lake Oahe."  *Standing Rock Sioux Tribe v. U.S.*

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

*Army Corps of Engineers*, 2017 WL 6001726, at *2 (D.D.C. Dec. 4, 2017).  The Court cited a recent oil spill from another nearby pipeline, noting that such events "have the potential to wreak havoc on nearby communities and ecosystems."  *Id*. at *3.  The Court directed the finalization of oil spill response plans; completion of a third-party audit; and directed public reporting on various measures.

21.     The Tribe repeatedly attempted to engage with the Corps in good faith during the remand process, submitting many requests for information and for meetings, and submitting extensive technical and other information intended to inform the Corps' analysis of the remand issues.  The Tribe retained multiple experts on oil spill risk and response in order to assist it in participating in the remand and in preparing for a potential oil spill affecting the reservation. The Tribe also dedicated significant staff and other resources to providing information to the Corps and participating in the remand.

22.     The Corps largely refused to provide any of the critical information requested by the Tribe, nor did it take steps to address the Tribe's request for meaningful consultation.  For example, on multiple occasions, the Tribe asked the Corps to share with it the oil spill modeling that the Corps was relying on, so that the Tribe's technical team could review it and provide input to the Corps as to its reliability and accuracy.  The Corps never provided this information, leaving the Tribe's technical advisors to provide input on analyses that they were never permitted to see.

23.     Despite these handicaps, the Tribe on February 21, 2018, provided the Corps with a substantial body of technical material ("Remand Report") for the Corps to consider in its review.  Accompanied by multiple technical appendices, the Tribe's Remand Report provided extensive expert input on the critical issues of spill risk and impact, authored by a team of

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

engineers, attorneys, a former federal safety regulator, a Ph.D. economist, and the directors of several of the Tribe's governmental agencies.  The report also included detailed information on the Tribe's Treaty rights, supported by numerous declarations from hunters, elders, staff members, and others.

24.     For example, the Remand Report and supplementary material provided by the Tribe provided extensive expert information on how the Corps had seriously underestimated the "worst case spill" ("WCD") discharge volume.  It provided extensive expert information on how the Corps' reliance on generic spill statistics understated the risk of an oil spill, which was considerably higher than the Corps had estimated due in part to the abysmal safety and compliance record of DAPL's corporate parents.  It provided extensive information about unique health and environmental risks presented by Bakken crude oil.  It provided extensive independent analysis on the issue of environmental justice.

25.     While the remand process was underway, DAPL's corporate parents publicly announced their intention to expand the capacity of DAPL by 100,000 barrels a day.  On information and belief, expansion could take place without additional Corps authorization at Lake Oahe.  A significant increase in operation volume would render obsolete much of the spill risk and impact analysis and emergency response planning conducted by DAPL and the Corps to date.

26.     The Corps concluded the remand process on August 31, 2018, with a two-page "memorandum for record" documenting the Corps' conclusion that there was no need to formally reconsider its July 2016 environmental assessment, and stating that an EIS was not necessary.  As to the three flaws identified by this Court, the Corps concluded that its review of the Tribe's hunting and fishing Treaty rights would not be impacted "because the risk of an

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

- 8 -

incident is low and any impacts to hunting and fishing resource [sic] will be of limited scope and

duration." As to the issue of environmental justice, the Corps concluded that the Oahe crossing

"does not result in disproportionately high and adverse human health or environmental effects on

minority populations, including Tribes, and low-income populations."  And as to the issue of

whether the Corps conclusions were likely to be "highly controversial," the Corps incorrectly

characterized the Tribe's significant technical input as simply being opposed to the pipeline

authorizations, stating that they did not "provide information that a substantial dispute exists as

to the size, nature, or effect of the federal action."

27.    The Memorandum stated that the rationale supporting these findings was

contained in the "enclosed document" and in the administrative record.  However, at the time the

Memorandum was filed, no such "document" was enclosed or provided to the Tribe or the Court.

It was not until October 1, 2018, that undersigned counsel was provided with a copy of the

enclosed analysis supporting the remand decision ("Remand Analysis"), which was subject to

confidentiality restrictions and could not be shared publicly.  On October 24, 2018, a redacted

version of the remand analysis was made available for the public.

28.    The Remand Analysis entirely ignores much of the information provided to the

Corps by the Tribe.  It mostly reiterates the flawed conclusions of the Corps' earlier analyses

without even mentioning, let alone addressing, most of the Tribe's information critiquing that

analysis.  For example, the Remand Analysis continues to calculate risk based on generic

national statistics, without regard to any of the unique risk factors of this project in this place, in

light of DAPL's parent companies' abysmal safety record.  Like previous versions, it fails to

grapple with extensive evidence that the risks of slow leaks that cannot be detected is higher than

it claims.  The Remand Analysis ignores DAPL's failure to utilize vital industry pipeline safety

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

standards despite the Corps claim in the EA to do so.  Similarly, it continues to underestimate the impacts of an oil spill (which rely on its erroneous WCD and risk estimates), the elevated hazards of Bakken crude oil, and to overestimate the ability of responders to clean it up—all of which place emergency responders at risk.

29.     A key shortcoming of the remand analysis is its failure to provide a lawfully adequate WCD.  In the remand analysis, the Corps essentially repeats the identical WCD from before the remand—without so much as a word about the Tribe's extensive explanations of why the Corps' original estimate was deeply inaccurate.  Furthermore, the Corp fails to address the impact of circumstances listed in the 49 C.F.R. § 194.5 definition of WCD, including adverse weather conditions.  The WCD also fails to implement the formula required by 49 C.F.R. § 194.105(b)(1), including consideration of the operators' "historic discharge[s]" and relies on unrealistic shutdown times that bear little resemblance to multiple real-world pipeline incidents. As noted, DAPL's parent companies have among the industry's worst safety records, which by law should have been considered in developing the WCD, but was not.

30.     The remand also ignored critical findings regarding DAPL's failure to comply with easement conditions, for example, the requirement of independent power to shutoff valves near Lake Oahe and an undocumented spill incident.

31.     The remand analysis calculates the risk and impacts of an oil spill based on DAPL's original capacity.  The Corps conducted no new analyses to respond to DAPL's announced intention to increase capacity by 100,000 barrels a day.  Such an increase fundamentally alters both the risks of a spill as well as its potential impacts.  As such, the remand analysis is already out of date and inapplicable to anticipated future operations of the pipeline.

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

32.     The above examples are intended as illustrations of the flaws in the Corps' analysis, not a comprehensive list.

33.     These and other fundamental flaws in the Corps' estimate of the risk and impact of oil spills infect all three of the remand topics.  For example, the Remand Analysis dismisses the potential impacts to the Tribe's Treaty hunting and fishing rights by reasoning that the risk of an oil spill is low and its impacts manageable—a conclusion that is fundamentally flawed due to the underestimated WCD and the other reasons discussed above.  Similarly, the Remand Analysis dismisses the environmental justice implications of the pipeline permits by, again, relying on the claimed low likelihood and manageable impacts of a spill.  And it simply ignores most of the technical input provided by the Tribe in the Remand Report, thereby sidestepping the Court's directive to address the "controversy" over the Corps' conclusions on spill risk and impact.  Contrary to the Corps' conclusions, the record reflects extensive unaddressed "controversy" over its WCD, risk analysis, impact analysis, and other conclusions.

34.     The Remand Analysis incorporates and relies on a number of technical documents that are cited throughout the document.  For example, the "Spill Model Report" is a technical document describing the results of various oil spill scenarios.  The "Downstream Receptor Report" is a technical document assessing fate and transport of spilled crude.  The "Submission Review" is an assessment of the various comments submitted by the Tribe and other Tribes. None of these documents, or any other technical documents, was ever made available to the Tribe during the course of the remand, despite many requests.  Nor have they been made available to the Tribe or its counsel subsequent to the finalization of the Remand Analysis, again despite requests.

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

- 11 -

CLAIMS FOR RELIEF

I.      FIRST CLAIM FOR RELIEF – VIOLATION OF NEPA

35.     Plaintiff hereby alleges and incorporates and restates all previous paragraphs of this complaint and of the Amended Complaint.

36.     Under NEPA, federal agencies are required to prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

37.     Binding Council of Environmental Quality ("CEQ") regulations further define whether impacts are "significant" enough to warrant a full EIS, requiring consideration of both "context" (i.e., the various scales, regions, and interests affected by the action) and "intensity" (i.e., the "severity of the impact"). 40 C.F.R. § 1508.27. With respect to the latter, the regulations lay out several factors that are to be considered. Examples of these criteria include: "the degree to which the proposed action affects public health or safety"; "unique characteristics of the geographic area such as proximity to historic or cultural resources…"; the degree to which the effects on the environment "are likely to be highly controversial," are "highly uncertain" or "involve unique or unknown risks"; and "the degree to which the action … may cause loss or destruction of significant scientific, cultural, or historical resources." *Id.*

38.     In June of 2017, the Court found "significant" flaws in the Army Corps' analysis of the risk and impacts of its decision to authorize DAPL underneath Lake Oahe, and ordered the Corps to conduct a remand to give "serious consideration" those flaws. The three flaws identified by the Court—involving the Tribe's treaty rights, the environmental justice implications, and the "controversy" attending its spill and impact analysis—struck at the heart of the Tribe's concerns with the Corps' review of DAPL.

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

- 12 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

39.     By concluding the remand by affirming its original decision, the Corps acted arbitrarily, capriciously, contrary to the evidence before it, and in violation of NEPA and the CEQ regulations and contrary to the APA.  The Corps also acted arbitrarily, capriciously, and in violation of NEPA and the CEQ regulations by failing to meaningfully engage with the Tribe by providing information so that the Tribe could provide input during the remand.

## II.     SECOND CLAIM FOR RELIEF – FAILURE TO CONSIDER IMPACTS TO TREATY RIGHTS

40.     Plaintiff incorporates by reference all preceding paragraphs and of the Amended Complaint.

41.     The Tribe holds vested Treaty rights in the Tribe's lands within the Standing Rock Sioux Reservation and the waters of Lake Oahe.  These rights include reserved water rights and Treaty rights to hunt, fish, and gather natural resources within the Reservation including the waters of Lake Oahe.  The Tribe's rights include the right to clean, safe water to sustain a livable permanent homeland and self-sufficiency for the Tribe and its people.  By virtue of various acts of Congress including the Pick-Sloan Act of 1944, the Corps manages and controls in many respects the waters of Lake Oahe, where the Tribe exercises its Treaty rights.

42.     The Corps, by virtue of the Treaties, federal statutes, and the federal trust responsibility, has a duty to consider the Tribe's Treaty rights, including the Reservation, reserved water rights, and rights to hunt, fish, and gather, when taking other actions, and to avoid taking actions that would damage, degrade or destroy these rights.  The Corps must fully assess, in consultation with the Tribe, the impacts of its actions like authorizations, permits, and easements for a pipeline crossing Treaty rights areas, and ensure that the Tribe's Treaty rights will be safeguarded.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

43.     In issuing the original permit, and in affirming them at the conclusion of the remand process, the Corps failed to adequately consider the Tribe's treaty rights and its obligations to protect those rights.  It further ignored policies related to consultation with Tribes on actions that impact treaty rights.  As a result, its conclusions were arbitrary, capricious, and otherwise not in accordance with the Corps' duties under the Treaties, its trust responsibility, and its obligation to consult appropriately under its U.S. government policies, in violation of the APA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

1.     Declare that the Remand Analysis, and the underlying MLA easement which it attempted to address, is arbitrary, capricious, and in violation of the NEPA and APA;

2.     Vacate the Remand Analysis, the final environmental analysis and finding of no significant impact, and the underlying MLA easement pending full compliance with the law;

3.     Direct the Corps to resume the EIS process initiated in November 2016, and provide the Tribe with all technical documents related to oil spill and impact so that it can participate meaningfully in such EIS process;

4.     Retain jurisdiction over this matter to ensure that the Corps complies with the law;

5.     Award Plaintiff its reasonable fees, costs, expenses, and disbursements, including attorneys' fees, associated with this litigation; and

6.     Grant Plaintiff such further and additional relief as the Court may deem just and proper.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Respectfully submitted this 1st day of November, 2018.

/s/ Jan E. Hasselman

Jan E. Hasselman, WSBA # 29107
(*Admitted Pro Hac Vice*)
Stephanie Tsosie, WSBA # 49840
(*Admitted Pro Hac Vice*)
Patti A. Goldman, DCBA # 398565
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
Telephone: (206) 343-7340
jhasselman@earthjustice.org
stsosie@earthjustice.org
pgoldman@earthjustice.org

*Attorneys for Plaintiff*

FIRST SUPPLEMENTAL COMPLAINT
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

- 15 -

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2018, I electronically filed the foregoing *First*

*Supplemental Complaint* with the Clerk of the Court using the CM/ECF system, which will send

notification of this filing to the attorneys of record and all registered participants.


/s/ Jan E. Hasselman
Jan E. Hasselman

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>        Plaintiff,<br><br>   and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>        Plaintiff-Intervenor,<br><br>  v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>        Defendant-Cross<br>        Defendant,<br><br>   and<br><br>DAKOTA ACCESS, LLC,<br><br>        Defendant-Intervenor-<br>        Cross Claimant. | Case No. 1:16-cv-1534-JEB<br>(and Consolidated Case Nos. 16-cv-1796<br>and 17-cv-267)<br><br>PROPOSED ORDER GRANTING<br>MOTION FOR LEAVE TO FILE<br>SUPPLEMENTAL COMPLAINT |

Plaintiff Standing Rock Sioux Tribe has filed a Motion for Leave to File Supplemental

Complaint.  Having reviewed the parties' pleadings, exhibits, and the entire record of this case, it

is hereby ORDERED that, the motion is GRANTED.

Dated:  _____       _____
                                    JAMES E. BOASBERG
                                    United States District Judge

PROPOSED ORDER GRANTING
MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT
 (No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

- 1 -

Presented by:


*/s/ Jan E. Hasselman*
Jan E. Hasselman, WSBA # 29107
(*Admitted Pro Hac Vice*)
Stephanie Tsosie, WSBA # 49840
(*Admitted Pro Hac Vice*)
Patti A. Goldman, DCBA # 398565
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
Telephone: (206) 343-7340
jhasselman@earthjustice.org
stsosie@earthjustice.org
pgoldman@earthjustice.org

*Attorneys for Plaintiff*

PROPOSED ORDER GRANTING
MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT
 (No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*