IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE; YANKTON SIOUX TRIBE; ROBERT FLYING HAWK; OGLALA SIOUX TRIBE,<br><br>              Plaintiffs,<br><br>and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>              Intervenor Plaintiff,<br><br>      v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br>              Defendant,<br><br>and<br><br>DAKOTA ACCESS, LLC,<br><br>              Intervenor Defendant. | Case No. 1:16-cv-01534-JEB |

**MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT**

Pursuant to Fed. R. Civ. P. 15(d), plaintiff Oglala Sioux Tribe ("Tribe") hereby respectfully moves for leave to file a supplemental complaint in this action. The proposed supplemental complaint is submitted herewith.

The supplemental complaint challenges the decision by Defendant U.S. Army Corps of Engineers ("Corps"), announced in its Memorandum for Record dated August 31, 2018 (Doc. 362-1), to affirm its conclusion that issuance of a Mineral Leasing Act ("MLA") easement and other approvals to Defendant-Intervenor Dakota Access, LLC ("Dakota Access") allowing the construction and operation of the Dakota Access Pipeline at a crossing at Lake Oahe, upstream

of the Tribe's water intake on the Missouri River and immediately upstream of the Standing Rock Sioux Reservation, did not involve "significant" environmental impacts under the National Environmental Policy Act ("NEPA"). The supplemental complaint also raises claims under NEPA, the Administrative Procedure Act, the MLA, the Tribe's treaty rights, and the Mni Wiconi Project Act.

The Corps and Dakota Access have stated that they will take a position on this motion once they have had a chance to review it.

## ARGUMENT

Federal Rule of Civil Procedure 15 governs the process and standard for amending and supplementing pleadings. A supplemental complaint sets forth "transaction[s], occurrence[s], or event[s] that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). *See United States v. Hicks*, 283 F.3d 380, 386 (D.C. Cir. 2002) (supplemental complaint is used "to set forth new facts that update the original pleading or provide the basis for additional relief; to put forward new claims or defenses based on events that took place after the original complaint or answer was filed….").

Before filing a supplemental complaint, a plaintiff must request leave from the Court. *BEG Investments, LLC v. Alberti,* 85 F.Supp.3d 13, 24 (D.D.C. 2015) (citing *Hall v. C.I.A.*, 437 F.3d 94, 100 (D.C. Cir. 2006)); Fed. R. Civ. P. 15(d) (court "may, on just terms, permit a party to serve a supplemental pleading"). A motion for leave to supplement a pleading is "to be freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action." *BEG Investments,* 85 F.Supp.3d at 24 (quoting *Hall*, 437 F.3d at 101) (internal quotation marks omitted); *see also Wildearth*

*Guardians v. Kempthorne*, 592 F.Supp.2d 18, 23 (D.D.C. 2008) (leave "should be freely given unless there is a good reason, such as futility, to the contrary.") (quoting *Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C.Cir.1996) (internal citations omitted)). "It is the opposing party's burden to demonstrate why leave should not be granted." *Lannan Foundation v. Gingold*, 300 F.Supp.3d 1, 12 (D.D.C. 2017)

The Tribe's motion for leave to supplement should be granted. On June 14, 2017, the Court granted in part plaintiff Standing Rock Sioux Tribe's motion for summary judgment in this case. Doc. 239. The Court determined that the Corps' analysis of three specific issues was arbitrary and capricious and in violation of NEPA. It therefore remanded to the Corps for further consideration in light of its decision. This Court has observed that it expects additional proceedings regarding the legality of the remand. *See* Memorandum Opinion, Doc. 284 (this Court observed: "After the agency's further work on remand, the parties may well disagree over the sufficiency of its conclusion. If and when such a dispute arises, they will again have the opportunity to address whether Defendants have in fact fulfilled their statutory obligation."); Order, Doc. 352 at 2 ("If the Tribes believe that the Corps has not conducted the remand appropriately or has not sought out information it should have, then Plaintiffs are, of course, free to make such arguments in the post-remand briefing that the Court expects will occur.").

In supplementing its complaint to challenge the remand decision, the Tribe has not acted with any improper or dilatory motive, not does supplementation prejudice any party. The Corps' Memorandum of Record was issued August 31, 2018; the supporting Remand Analysis containing protected information was provided to the undersigned counsel on October 9, 2018, and the redacted Remand Analysis was provided on October 24, 2018, Supp. Complt. Para. 12 at

6, and on November 15, following a status conference in this case, the Court entered a minute order providing for the filing of motions for leave to file supplemental complaints by this date.

Supplementation is in the interests of justice and judicial economy: the Tribe would have the right to initiate a new lawsuit against the Corps if supplementation is denied.  *See E.G., Defenders of Wildlife v. Kempthorne*, No. CIV A 04-1230 GK, 2006 WL 2844232, at *5 (D.D.C. Sept. 29, 2006) (plaintiff filed new APA case following decision on remand), *on reconsideration in part sub nom. Defs. of Wildlife v. Salazar*, 842 F. Supp. 2d 181 (D.D.C. 2012), *app. dismissed, Defs. of Wildlife v. Salazar*, No. 12-5111, 2012 WL 2371618 (D.C. Cir. June 21, 2012).  It makes more sense to bring these claims in the context of the existing case than initiate a new one.

The focus of the proceedings on remand will be whether the remand lawfully addressed the shortcomings identified by this Court in its partial summary judgment decision, subject to the judicial review standards of the Administrative Procedure Act ("APA").  The Tribe also asserts APA claims arising under the Tribe's treaty rights and the Corps' trust obligations thereunder, the MLA, and under the Mni Wiconi Project Act of 1988, 102 Stat. 2566 (Oct. 24, 1988), as amended,[1] which provides that the United States has a trust responsibility to provide clean water to the Tribe's Pine Ridge Indian Reservation.  *Id.* § 2(a).

---

[1] Pub. L. 103-434 (October 21, 1994); Pub. L. 105-277 (October 21, 1998); Pub. L. 106-53 (August 17, 1999); Pub. L. 107-367 (December 2, 2002); and Pub. Law 110-161 (December 26, 2007).

## CONCLUSION

For the foregoing reasons, the Tribe's motion for leave to supplement its complaint should be GRANTED. A proposed order is submitted herewith.

Respectfully submitted this 26th day of November, 2018.

s/ *Michael L. Roy*
Michael L. Roy (DC Bar No. 411841)
mroy@hobbsstraus.com
Jennifer P. Hughes (DC Bar No. 458321)
jhughes@hobbsstraus.com
Elliott A. Milhollin (DC Bar No. 474322)
emilhollin@hobbsstraus.com
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW, Suite 700
Washington, DC  20037
202-822-8282 (Tel.)
202-296-8834 (Fax)
Attorneys for Oglala Sioux Tribe

Mario Gonzalez
Gonzalez Law Office
522 7th St 202
Rapid City, SD 57701
(605) 716-6355
Of Counsel for the Oglala Sioux Tribe

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STANDING ROCK SIOUX TRIBE; )
YANKTON SIOUX TRIBE; ROBERT )
FLYING HAWK; OGLALA SIOUX )
TRIBE, )
                               Plaintiffs, )
                               )
and )
                               )
CHEYENNE RIVER SIOUX TRIBE, )
               Intervenor Plaintiff, )    Case No. 1:16-cv-01534-JEB
                               )    (and consolidated case nos. 16-cv-1796
v. )    and 17-cv-267)
                               )
U.S. ARMY CORPS OF ENGINEERS, )    **SUPPLEMENTAL COMPLAINT**
                               )    **OF THE OGLALA SIOUX TRIBE**
               Defendant, )
                               )
and )
                               )
DAKOTA ACCESS, LLC, )
                               )
Intervenor Defendant. )

**[PROPOSED] SUPPLEMENTAL COMPLAINT**

**INTRODUCTION**

      1.      This supplemental complaint challenges the decision of the United States Army Corps of Engineers ("Corps"), issued in a Memorandum for Record dated August 31, 2018 (Doc. 362-1), following a remand in this case, reaffirming earlier decisions approving the construction and operation of the Dakota Access Pipeline (DAPL) across Lake Oahe. In the Memorandum for Record, the Corps erroneously found that (1) the potential impacts of an oil spill on hunting and fishing resources did not reveal any significant impacts, (2) approval of the DAPL crossing at Lake Oahe does not result in disproportionately high and adverse human health or

1

environmental effects on minority populations, and (3) no substantial dispute exists as to the size, nature and effect of the environmental action. The Corps concluded that its July 2016 Final Environmental Assessment (Final EA) and Finding of No Significant Impact (FONSI) need not be reconsidered, and that the preparation of supplemental documentation pursuant to the National Environmental Policy Act (NEPA) was not required.  This decision, together with the Corps' earlier decisions approving the DAPL crossing at Lake Oahe, violates NEPA and the Administrative Procedure Act (APA), as well as the Tribe's Treaty rights and rights under the Mni Wiconi Project Act and the Mineral Leasing Act (MLA).

## JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 because it arises under the Constitution, laws, and treaties of the United States, including but not limited to the Treaty of Fort Laramie, 11 Stat. 749 (Sep. 17, 1851); the 1868 Sioux Nation Treaty, 15 Stat. 635 (Apr. 29, 1868); NEPA, 42 U.S.C. §§ 4321–4370f; the Mineral Leasing Act, 30 U.S.C. §§ 181 *et seq.*; the Mni Wiconi Project Act of 1988, 102 Stat. 2566 (Oct. 24, 1988), as amended[1] (Mni Wiconi Project Act); the APA, 5 U.S.C. § 701 *et seq.*, which authorizes the Court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity," 5 U.S.C. § 706(2)(A)–(B); 28 U.S.C. § 1362 ("district courts shall have original jurisdiction of all civil actions, brought by any Indian Tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States"); 28 U.S.C. § 2201 (declaratory relief); and 28 U.S.C. § 2202 ("necessary or proper relief based on a declaratory judgment").

---

[1] Pub. L. 103-434 (October 21, 1994); Pub. L. 105-277 (October 21, 1998); Pub. L. 106-53 (August 17, 1999); Pub. L. 107-367 (December 2, 2002); and Pub. Law 110-161 (December 26, 2007).

3. Venue in the District of Columbia is appropriate under 28 U.S.C. § 1391(e) because this is an action in which the Defendant is an agency of the United States and a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

4. Plaintiff Oglala Sioux Tribe is an Indian Nation that is part of the Oceti Sakowin (the Seven Council Fires), which is also known as the Great Sioux Nation. The Tribe is federally recognized and maintains a government-to-government relationship with the United States of America. The Oglala Sioux Tribe is a party to the 1851 Fort Laramie Treaty, 11 Stat. 749, and the 1868 Sioux Nation Treaty, 15 Stat. 635. The DAPL runs through lands that are the Oglala Sioux Tribe's aboriginal territory as well as its ancestral Treaty lands. The Oglala Sioux Tribe, along with its sister Sioux Tribes, has rights to the water in the Missouri River based on the 1851 and 1868 Treaties. The Oglala Sioux Tribe operates the Oglala Sioux Rural Water Supply System, a part of the Mni Wiconi (meaning "Water is Life") Project, which provides drinking water to the Pine Ridge (Oglala Sioux Tribe) Indian Reservation as well as to the Rosebud Sioux Reservation, Lower Brule Sioux Reservation, and the non-Indian West River/Lyman Jones Water District. The Mni Wiconi Project draws its water from the Missouri River downstream from the DAPL crossing.

5. Defendant U.S. Army Corps of Engineers is an agency in the Executive Branch of the Federal government and a division of the Department of the Army. It is charged with regulating any dredging and filling of the waters of the United States under § 404 of the Clean Water Act and § 10 of the Rivers and Harbors Act. It also has the authority to issue rights-of-

way or easements for pipeline purposes for the transportation of oil through federal land over which it has jurisdiction under the Mineral Leasing Act. 30 U.S.C. § 185.

6. Intervenor-Defendant Dakota Access, LLC is a limited liability company formed to construct and own Dakota Access Pipeline. The beneficial owners of Dakota Access, LLC (Dakota Access) are Energy Transfer Partners, L.P. (ETP), Sunoco Logistics Partners, L.P., Energy Transfer Equity, which recently purchased ETP, and Phillips 66.

## SUPPLEMENTAL FACTS

7. Plaintiff Oglala Sioux Tribe initially filed a complaint challenging the Corps' approval of the DAPL crossing on February 11, 2017, three days after the Corps granted the easement at Lake Oahe to Dakota Access, LLC. (case no. 17-cv-00267) That case was later consolidated with this case which was brought by the Standing Rock Sioux Tribe, and in which Cheyenne River Sioux Tribe had intervened. The Court granted Dakota Access leave to intervene as Defendant in the Oglala case.

8. On June 14, 2017, this Court decided motions for partial summary judgment as to environmental impact claims brought by plaintiffs Standing Rock Sioux Tribe and Cheyenne River Sioux Tribe. Doc. 239. Although the Court upheld some of the Corps' environmental analysis, it determined that the Corps' analysis of three specific issues was arbitrary, capricious, and in violation of NEPA. First, the Court held that the Corps had failed to address the significant scientific "controversy" around its dismissal of oil spill risk and impacts by not addressing expert reports submitted by the Oglala Sioux Tribe, the Standing Rock Sioux Tribe, and the Cheyenne River Sioux Tribe before the easement was granted. In addition, the Court ruled that the Corps failed to adequately analyze the impacts of an oil spill on the Standing Rock Sioux Tribe's treaty hunting and fishing rights, and that the Corps' consideration of

environmental justice implications of the permit was flawed.  The Court remanded the analysis back to the Corps for further consideration in light of its decision.

9.  During the remand, the Corps received various submittals from Dakota Access or ETP.  Although the Oglala Sioux Tribe requested that information provided by Dakota Access relating to the remand be provided to the Tribe, none was provided, and the Tribe had no opportunity to review or comment on any information provided by Dakota Access or generated by the Corps during the remand.

10.  During the remand, ETP publicly announced its intention to expand the capacity of DAPL by 100,000 barrels a day.  On information and belief, expansion could take place without additional Corps authorization at Lake Oahe.  A significant increase in operation volume would render obsolete much of the spill risk and impact analysis and emergency response planning conducted by Dakota Access, ETP, and/or the Corps to date.

11.  The Corps concluded the remand process with the issuance of the Memorandum for Record dated August 31, 2018 (Doc. 362-1), in which the Corps concluded that there was no need to formally reconsider its July 2016 Final EA, or to perform further NEPA studies, and that an EIS was not necessary.  The Memorandum for Record briefly addressed the three flaws in its environmental analyses which the Court directed the Corps to review on remand.  As to tribal hunting and fishing Treaty rights, the Corps concluded that they would not be impacted "because the risk of an incident is low and any impacts to hunting and fishing resources [sic] will be of limited scope and duration."  As to the issue of environmental justice, the Corps concluded that the Oahe crossing "does not result in disproportionately high and adverse human health or environmental effects on minority populations, including Tribes, and low-income populations." Finally, as to the issue of whether the Corps conclusions were likely to be "highly controversial,"

the Corps incorrectly characterized information provided by the Oglala Sioux Tribe and other tribal plaintiffs as simply being opposed to the pipeline authorizations, stating that the Tribes did not "provide information that a substantial dispute exists as to the size, nature or effect of the federal action."

12. The Memorandum of Record stated that the rationale supporting these findings was contained in the "enclosed document" and in the administrative record, but no document was enclosed or provided to the Tribe or the Court on August 31. On October 9, 2018, undersigned counsel were provided with a copy of the enclosed analysis supporting the remand decision ("Remand Analysis"), which was subject to confidentiality restrictions pending agreement of the parties or Court decision on protected information contained therein. On October 24, 2018, after all parties reached agreement as to what information was subject to the Protective Order in this case, a redacted version of the Remand Analysis was made available for the public.

13. Although the Oglala Sioux Tribe has been provided a copy of the Remand Analysis, it has not been provided copies of any other materials contained in the administrative record. The Remand Analysis relies extensively upon two documents that have not been provided—the "Spill Model Report," a technical document describing the results of various oil spill scenarios, and the "Downstream Receptor Report," a technical document assessing rate and transport of spilled crude. The Oglala Sioux Tribe therefore reserves its right to challenge the analyses in those documents and the Corps' reliance on them once provided in this litigation.

14. Even without access to the underlying studies relied upon, it is plain that the Remand Analysis itself is highly flawed. For instance, in addressing the highly controversial intensity issue, the Remand Analysis unsuccessfully attempted to dismiss or refute the study

submitted by Earthfax Engineering Group, LLC (EarthFax) on behalf of the Oglala Sioux Tribe. The Corps' effort in this regard fell far short. As one example, the Remand Analysis justifies the Final EA's worst case scenario focus on benzene alone, ignoring other constituents of crude oil. In doing so, the Remand Analysis relies in part on a study identified only as "(O'Reilly 2001)" that cannot be located, even while admitting "that benzene is volatile and that other hydrocarbon components are present and responsible for impacts beyond benzene." The Remand Analysis, like the EA, thus fails to adequately address whether a worst case spill would present a significant risk to drinking water.

15.     Like the Final EA, the Remand Analysis failed to provide a lawfully adequate "worst case spill" (WCD). In the Remand Analysis, the Corps fails to address the impact of circumstances listed in the definition of WCD in 49 C.F.R. § 194.5, including adverse weather conditions. The WCD also fails to correctly implement the formula required by 49 C.F.R. § 194.105(b)(1), including consideration of the operators' "historic discharge[s]" and relies on unrealistic shutdown times that bear little resemblance to multiple real-world pipeline incidents. Furthermore, the WCD calculation fails to take into account Dakota Access's parent companies' abysmal safety record, as required by the regulation.

16.     As another example of a serious flaw, the Remand Analysis errs in finding no significant impact to tribal hunting and fishing rights, despite its findings in Table I-7 that predict 100% mortality to aquatic biota in the event of a spill. The table shows, for example, that, depending on various factors, a spill from the ND-380 valve located just west of the Lake Oahe crossing could result in 100% mortality to sensitive aquatic species over an area of up to 74.7 square kilometers (28.8 mi$^2$ or 18,400 acres). The predicted extent of this mortality impact area is substantially higher than estimated by the Final EA and contradicts the Final EA, which, as

noted in the Remand Analysis, concluded that "under the conservative assumptions, a large oil spill over 10,000 barrels would still not result in sufficient benzene concentrations large enough to surpass the acute toxicity threshold for aquatic organisms." The Remand Analysis also acknowledges that ingestion of contaminated fish could create human health issues.

17. Unlike the Final EA, which never addressed the Mni Wiconi intake serving the Oglala Sioux Tribe, the Remand Analysis does address it, but it assumes that there would be no impact to the intake because of its location south of the Oahe Dam, and the depth of the dam's discharge pipes. The Remand Analysis predicts there will be no hydrocarbons that flow through the discharge pipes in the event of a spill. This assumption is incorrect for many reasons, including the erroneous WCD calculation, and because the Corps relied upon a 10-day spill model, although a spill would take longer to reach the dam. This assumption also fails to account for the fact that even if spilled oil and the associated dissolved constituents may initially be concentrated within the upper 10 meters of the Lake Oahe water column, it is likely that some of the oil will combine with the suspended sediment in the water to form OPAs and sink within the water column. It also fails to account for the hydroelectric plant at the Oahe Dam which pulls water from various depths and creates turbulence. In its 2010 Final Master Plan for Oahe Dam, the Corps has noted that "[t]he area around the intakes is a good fishery because the turbulent water attracts many species of fish."

18. The Remand Analysis also relies upon the Facility Response Plan (FRP) and the Geographic Response Plan (GRP). These plans, which address response to an oil spill, are themselves flawed. For example, they do not provide, either through on-site storage or by contract, for sufficient containment boom or sorbent boom in the event of a spill at the Oahe crossing.

19. The above examples are intended as illustrations of the flaws in the Corps' analysis, not a comprehensive list.

20. These and other fundamental flaws in the Corps' estimate of the risk and impact of oils spills infect all three of the remand topics.

## CAUSES OF ACTION

(The Causes of Action in this Supplemental Complaint are numbered consecutively beginning with VI, because the Oglala Sioux Tribe's initial Complaint contains Counts I-V.)

### VI.   SIXTH CAUSE OF ACTION: VIOLATION OF NEPA AND THE APA

21. Plaintiff reincorporates the allegations in all preceding paragraphs.

22. Under NEPA, federal agencies are required to prepare an EIS for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

23. Binding Council of Environmental Quality ("CEQ") regulations further define whether impacts are "significant" enough to warrant a full EIS, requiring consideration of both "context" (i.e., the various scales, regions, and interests affected by the action) and "intensity" (i.e. the severity of the impact"). 40 C.F.R. § 1508.27. With respect to the latter, the regulations lay out several factors that are to be considered. Examples of these criteria include: "the degree to which the proposed action affects public health or safety"; "unique characteristics of the geographic area such as proximity to historic or cultural resources…"; the degree to which the effects on the environment "are likely to be highly controversial," are "highly uncertain" or "involve unique or unknown risks"; and "the degree to which the action … may cause loss or destruction of significant scientific, cultural, or historical resources." *Id.*

24. Full and effective public participation in agency decision-making is a cornerstone of NEPA. *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989) (NEPA

"guarantees that the relevant information [concerning environmental impacts] will be made available to the larger audience," including the public, "that may also play a role in the decisionmaking process and implementation of the decision."); 40 C.F.R. § 1500.1(b) ("NEPA procedures must insure that environmental information is available to public officials and citizens before decisions are made and before actions are taken.") *See also id*. §1500.2 (d).

25. In June of 2017, the Court found "significant" flaws in the Army Corps' analysis of the risk and impacts of its decision to authorize DAPL underneath Lake Oahe, and ordered the Corps to conduct a remand to give "serious consideration" to those flaws.

26. By concluding the remand by affirming its original decision, the Corps acted arbitrarily, capriciously, contrary to the evidence before it, and in violation of NEPA and the CEQ regulations and contrary to the APA. The Corps also acted arbitrarily, capriciously, and in violation of NEPA and the CEQ regulations by failing to meaningfully engage with the Tribe by providing information so that the Tribe could provide input during the remand.

VII. **SEVENTH CAUSE OF ACTION: VIOLATION OF MINERAL LEASING ACT AND THE APA**

27. Plaintiff reincorporates the allegations in all preceding paragraphs.

28. Section 28 of the Mineral Leasing Act (MLA), 30 U.S.C. § 185, known as Section 185, provides federal agencies with the authority to grant rights-of-way over federal lands for pipeline purposes, including for oil and natural gas pipelines. Section 185 imposes specific environmental review and public hearing requirements, without altering the applicability of NEPA. 30 U.S.C. § 185(h)(1)–(2).

29. In its June 14, 2017 Memorandum Opinion, the Court reserved its decision on the Cheyenne River Sioux Tribe's MLA claim, pending the Corps' analysis on remand as to the

three issues identified above. For the reasons explained above, the Corps' decision on remand is flawed.

30. For these reasons, the Corps has acted in a manner that is arbitrary, capricious, and not in accordance with law, in violation of the MLA and the APA.

### VIII. EIGHTH CAUSE OF ACTION: BREACH OF TREATY RIGHTS AND THE APA

31. Plaintiff reincorporates the allegations in all preceding paragraphs.

32. The Oglala Sioux Tribe holds vested Treaty Rights in the waters of Lake Oahe and the Missouri River. The Tribe enjoys reserved water rights to the waters in the Missouri River and its tributaries, including sufficient water to fulfill the purpose of the reservation to provide for a permanent livable homeland. The Tribe's reserved waters rights "are vested property rights for which the United States has a trust responsibility, with the United States holding legal title to such water in trust for the benefit of the Indians." Notice, Department of the Interior, Working Group in Indian Water Settlements, Criteria and Procedures for the Participation of the Federal Government in Negotiations for the Settlement of Indian Water Rights Claims, 55 Fed. Reg. 9223, 9223 (Mar. 12, 1990). These rights include water rights, including the right to clean and safe drinking water.

33. The Corps, by virtue of the Treaties, has a duty to consider the Tribe's Treaty rights when taking actions, so as not to destroy or impair those rights, and to consult the Tribe with regard to any action that may destroy or impair those rights, and to assess any such impairment.

34. In issuing the approvals for the DAPL crossing at Lake Oahe, and in reaffirming its decision following the remand, the Corps has acted in a manner that is arbitrary, capricious, and not in accordance with law, in violation of its trust responsibility and the APA.

### IX. NINTH CAUSE OF ACTION: BREACH OF TRUST, MNI WICONI PROJECT ACT, AND THE APA

35.  Plaintiff reincorporates the allegations in all preceding paragraphs.

36.  The Mni Wiconi Project Act provides: "the United States has a trust responsibility to ensure that adequate and safe water supplies are available to meet the economic, environmental, water supply, and public health needs of the Pine Ridge Indian Reservation…." *Id.* § 2(a). Among the purposes of the Act are to "ensure a safe and adequate municipal, rural, and industrial water supply for the residents of the Pine Ridge Indian Reservation…." *Id.* §§ 2(b)(1). The United States holds the title to the Oglala Sioux Rural Water Supply System of the Mni Wiconi Project in trust for the Tribe. *Id.* § 3(e).

37.  In issuing the approvals for the DAPL crossing at Lake Oahe, and in reaffirming its decision following the remand, the Corps has breached its trust obligations to the Tribe by failing to ensure compliance with federal law in authorizations for the DAPL, which threaten the Tribe's rights in the Mni Wiconi Project.

38.  For these reasons, the Corps has acted in a manner that is arbitrary, capricious, and not in accordance with law, in violation of trust responsibility, the Mni Wiconi Project Act, and the APA.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Court grant the following relief:

1. Declare that the Remand Analysis, and the underlying Final EA/FONSI, are inadequate because the Corps failed to conduct a full EIS that analyzed impacts to the Tribe's Treaty-protected water rights and rights in the Mni Wiconi Project and failed to make a reasoned analysis of the risks and potential impacts of a spill;

2. Declare that the Corps has breached its trust responsibility to the Tribe by issuing a Final EA/FONSI without assessing impacts to the Tribe's Treaty rights and rights in the Mni Wiconi Project, and by reaffirming that decision in the Remand Analysis and Memorandum for Record;

3. Declare that the Corps has violated the Mineral Leasing Act by failing to fulfill its independent environmental review requirements, and by not correcting such failure in the Remand Analysis and Memorandum for Record;

4. Vacate the Final EA/FONSI, and the Remand Analysis;

5. Enjoin the Corps and direct it to vacate the easement issued on February 8, 2017, and any rights-of-way for DAPL on lands within the Corps' jurisdiction;

6. Enjoin the Corps from allowing Dakota Access to drill or transport oil under Lake Oahe until such time as a full EIS is completed that assesses impacts to the Tribe's rights;

7. Retain jurisdiction over this matter to ensure that the Corps complies with the law;

8. Award Plaintiff its reasonable fees, costs, expenses, and disbursements, including attorney's fees, associated with this litigation; and

9. Grant such further and additional relief as the Court may deem just and proper.

                Respectfully submitted,

                s/ *Michael L. Roy*
                Michael L. Roy (DC Bar No. 411841)
                mroy@hobbsstraus.com
                Jennifer P. Hughes (DC Bar No. 458321)
                jhughes@hobbsstraus.com
                Elliott A. Milhollin (DC Bar No. 474322)
                emilhollin@hobbsstraus.com
                Hobbs, Straus, Dean & Walker, LLP
                2120 L Street NW, Suite 700
                Washington, DC 20037
                202-822-8282 (Tel.)
                202-2968834  (Fax)
                Attorneys for the Oglala Sioux Tribe

                Mario Gonzalez
                Gonzalez Law Office
                522 7th St 202
                Rapid City, SD 57701
                (605) 716-6355
                Of Counsel for the Oglala Sioux Tribe

November 26, 2018

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE; YANKTON SIOUX TRIBE; ROBERT FLYING HAWK; OGLALA SIOUX TRIBE, <br><br>        Plaintiffs, <br><br>and <br><br>CHEYENNE RIVER SIOUX TRIBE, <br><br>        Intervenor Plaintiff, <br><br>    v. <br><br>U.S. ARMY CORPS OF ENGINEERS, <br><br>        Defendant, <br><br>and <br><br>DAKOTA ACCESS, LLC, <br><br>        Intervenor Defendant. | Case No. 1:16-cv-01534-JEB <br>(and consolidated case nos. 16-cv-1796 and 17-cv-267) |

## [PROPOSED] ORDER

Plaintiff Oglala Sioux Tribe has filed a motion for leave to file a supplemental complaint.

For good cause shown, it is hereby ORDERED that the motion is GRANTED.

Dated:_____     _____
                                                                                      James E. Boasberg
                                                                                     United States District Judge