**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

<table>
<tr><td>

**STANDING ROCK SIOUX TRIBE,**

                  **Plaintiff,**

    **and**

**CHEYENNE RIVER SIOUX TRIBE,**

                  **Intervenor-Plaintiff,**

  **v.**

**U.S. ARMY CORPS OF ENGINEERS,**

                  **Defendant – Cross-
                  Defendant.**

    **and**

**DAKOTA ACCESS, LLP,**

                  **Intervenor-Defendant
                  Cross-Claimant.**

</td><td>

**Case No. 1:16-cv-1534-JEB
(and Consolidated Case Nos.
16-cv-1796 and 17-cv-267)**


**MOTION FOR LEAVE TO FILE
SUPPLEMENTAL COMPLAINT**

</td></tr>
</table>

Intervenor-Plaintiff Cheyenne River Sioux Tribe ("Tribe") hereby moves for leave to file a Supplemental Complaint in this action pursuant to Fed. R. Civ. P. 15(d).  The purpose of the Supplemental Complaint is to facilitate a dispositive motion as to the U.S. Army Corps of Engineers' ("Corps") decision on remand affirming its prior conclusion that its issuance of a Mineral Leasing Act ("MLA") permit allowing the Dakota Access Pipeline to cross under the Missouri River does not raise significant environmental impacts under the National Environmental Policy Act ("NEPA"), the risk of a spill will not affect the Tribe's treaty rights in the Missouri

River, and that its decision to site the pipeline directly upstream of the Tribe's sole source of fresh drinking water does not implicate environmental justice concerns.

The proposed Supplemental Complaint, which is attached hereto as Exhibit A, reiterates the claims upon which the Court remanded to the Corps for reconsideration pursuant to its Order on Summary Judgment dated June 14, 2018.  ECF 238.  A review of the authorities in this circuit, including interpretations of Fed. R. Civ. P. 15(d), suggest that a supplemental complaint is not necessary to reopen a matter for briefing after a decision on remand.  *See, e.g.*, *Coburn v. Murphy*, 77 F. Supp. 3d. 24 (D.D.C. 2016) (ruling on dispositive briefing pursuant to motion to reopen briefing in joint status report after decision on remand); *New Life Evangelistic Ctr, Inc. v. Sebelius*, 753 F. Supp. 2d. 103 (D.D.C. 2010) (ruling on dispositive briefing submitted after decision on remand without necessity of supplemental complaint); *Paige Int'l, Inc. v. U.S. Dep't of Transp.*, No. Civ.A. 03-2213, 2005 WL 3276196 (D.D.C. Sept. 27, 2005) (resolving dispositive briefing on remand decision via "supplemental motion for summary judgment," not supplemental complaint). These cases further suggest that plaintiffs are ***entitled*** to renewed dispositive briefing on the remand decision flowing from the existing operative complaint.

To the extent that this Court views a supplemental complaint pursuant to Fed. R. Civ. P 15(d) to be necessary to facilitate dispositive briefing on the Corps' remand decision, the Tribe hereby incorporates by reference arguments contained in the Standing Rock Sioux Tribe's Motion for Leave to File Supplemental Complaint, filed November 1, 2018.  ECF 371 at pp. 2-4.

Dated: November 26, 2018

CHEYENNE RIVER SIOUX TRIBE,
Intervenor-Plaintiff,

By:    /s/ Nicole E. Ducheneaux
       Nicole E. Ducheneaux
       Joseph V. Messineo
       Fredericks Peebles & Morgan LLP
       3610 North 163rd Plaza
       Omaha, NE  68116
       Telephone:  (402) 333-4053
       Facsimile:  (402) 333-4761
       Email:    nducheneaux@ndnlaw.com
                 jmessineo@ndnlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of November, 2018 a copy of the foregoing was filed electronically with the Clerk of the Court.  The electronic filing prompted automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

       /s/ Nicole E. Ducheneaux

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | |
| Plaintiff, | Case No. 1:16-cv-01534-JEB |
| and | FIRST SUPPLEMENTAL COMPLAINT |
| CHEYENNE RIVER SIOUX TRIBE, | |
| Intervenor-Plaintiff, | |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, | |
| Defendant – Cross-Defendant. | |
| and | |
| DAKOTA ACCESS, LLP, | |
| Intervenor-Defendant Cross-Claimant. | |

## INTRODUCTION

1.      Pursuant to Fed R. Civ. P. 15(d), Intervenor-Plaintiff Cheyenne River Sioux Tribe

("Tribe") hereby supplements its Second Amended Complaint in the above-captioned case.

2.      This Supplemental Complaint sets out the claims the Tribe now brings forth against

the Army Corps of Engineers ("Corps") and Dakota Access, LLC ("Dakota Access") following

this Court's Order dated June 14, 2017 granting in part and denying in part the Tribe's Motion for

Partial Summary Judgement.  ECF 238.  In that Order, this Court held the Corps' granting of

**EXHIBIT A**

permits to Dakota Access to construct an oil pipeline under Lake Oahe to be unlawful and remanded for additional consideration on specific issues.

3.      The Court further ordered the Corps to give "serious consideration" to the errors identified in the Corps' decision, warning that compliance with the law "cannot be reduced to a bureaucratic formality, and that the Court expects the Corps not to treat remand as an exercise in filling out the proper paperwork *post hoc*."  ECF 284 at p. 28.

4.      The Corps' Remand Analysis unlawfully affirms the Corps' pre-remand decision authorizing the Dakota Access Pipeline ("DAPL") without an environmental impact statement ("EIS") as required by the National Environmental Policy Act ("NEPA").

5.      Rather than conduct a comprehensive analysis of available data, including data disfavorable to Dakota Access, the Corps merely relied upon the same data used in its pre-remand analysis to conclude that DAPL would not result in significant harm to the environment, the Tribe, or the hunting and fishing rights reserved by the Tribe in its Treaties.

6.      The Corps' decision to authorize DAPL without a NEPA-required EIS is a final agency action that is reviewable by this Court under the Administrative Procedure Act ("APA").

7.      The Corps' decision not to require an EIS is arbitrary, capricious, an abuse of discretion, and not in accordance with law, and therefore violates the APA.

8.      The Tribe seeks a declaration that the Corps' affirmation of its pre-remand decision to authorize DAPL without an EIS (as required by NEPA), and without an adequate tribal consultation violates the APA, NEPA, and the Tribe's Treaty rights.

9.      The Tribe asks this Court to vacate the permits issued to Dakota Access by the Corps pending the Corps' compliance with the APA and NEPA.

**JURISDICTION AND VENUE**

10.     The Tribe's Supplemental Complaint is brought pursuant to the APA, which authorizes a federal court to find unlawful and set aside any final agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706.

11.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1362 (Indian tribe as a plaintiff), 28 U.S.C. § 2201 (declaratory relief), and 28 U.S.C. § 2202 (injunctive relief).

12.     Venue in this district is appropriate pursuant to 28 U.S.C. § 1391(e) because this is the district where the Defendant resides and in which a substantial part of the events or omissions giving rise to the claim occurred.   No party has contested jurisdiction or venue during this litigation.

**PARTIES**

13.     The Tribe is a federally-recognized Indian tribe whose ancestors, since time immemorial, lived on the land that DAPL crosses.  DAPL crosses the Tribe's sacred waters which hold cultural, religious, and economic significance to the Tribe and its members.   DAPL also crosses areas of great historical, cultural, and religious significance to the Tribe.   The damage DAPL causes to the Tribe in these areas is substantial and irreparable.   This harm is the direct result of the Corps' failure to abide by the APA, NEPA, and the Tribe's Treaties.

14.     The U.S. Army Corps of Engineers is an agency of the United States federal government.  Among the Corps' duties is fulfilling the United States' trust responsibility to the Tribe and other federally-recognized tribes, complying with the APA, and complying with NEPA when undertaking major federal actions that significantly affect the quality of the human

environment.  Issuing permits for the continued construction and operation of DAPL is a major federal action that significantly affects the quality of the human environment.

15.     Intervenor-Defendant Dakota Access, LLC is a limited liability company formed to construct and own DAPL.

16.     By filing this action, the Tribe does not waive its sovereign immunity and does not consent to suit as to any claims, demand, offset, or cause of action of the United States, its agencies, officers, agents, or other persons or entities in this or any other court.

## FACTUAL ALLEGATIONS

17.     The Corps issued an initial set of permits on July 25, 2016 to construct DAPL at Lake Oahe.

18.     The Standing Rock Sioux Tribe ("SRST") filed its initial complaint two days later on July 27, 2018 raising several statutory and common law claims against the Corps.

19.     Shortly thereafter, this Court granted motions by Dakota Access to intervene as defendant and the Tribe to intervene as plaintiff.

20.     On September 9, 2016, this Court denied SRST's motion for a preliminary injunction pursuant to the National Historic Preservation Act.  On that same day, multiple federal agencies affirmed that the tribes had raised serious concerns that necessitated a closer look at the Corps' permits at Lake Oahe and the underlying environmental analyses of these permits.  The Corps affirmed that the remaining authorization needed to construct the pipeline under Lake Oahe—an easement to cross federally-owned land at Lake Oahe issued under the Mineral Leasing Act ("MLA")—would not be issued at that time.

21.     On December 4, 2016, the Corps announced that the MLA easement would not be granted without a comprehensive analysis of alternatives and impacts, including an analysis of the

Tribe's Treaty rights.  The Corps then formally initiated that process by publishing a Notice of Intent  to prepare an EIS and the Corps requested public comments on the critical issues and scope of the EIS.

22.      On January 24, 2017, the newly-inaugurated President executed a "Presidential Memorandum" directing the Corps to abandon its December 4, 2016 decision to initiate the EIS process.  The Corps then changed course, terminated the EIS process, issued the MLA easement at Lake Oahe, and allowed construction of DAPL to begin immediately without further environmental review.

23.      The Tribe moved this Court for partial summary judgment on its APA, NEPA, and Treaty claims against the Corps.  The Corps and Dakota Access cross-moved for summary judgment.

24.      This Court ruled on June 14, 2017 that the Corps' failure to adequately analyze the impacts of an oil spill on the Tribe's Treaty rights to hunt and fish on the land, in Lake Oahe, and in the Missouri River violated the requirements of NEPA.  Additionally, this Court held that the Corps did not adequately consider issues of environmental justice as required by federal law. Finally, this Court held that the Corps failed to address issues of significant scientific controversy regarding the risk of an oil spill and the potential impacts therefrom.

25.      This Court remanded the Corps' analysis back to the Corps and ordered the Corps to correct its errors in the initial analysis.  The Court ordered that the Corps must complete oil spill response plans, that a third-party audit of the project must be completed, and that public reporting of the project must occur.

26.      During the time when the Corps was ordered to conduct its Remand Analysis, the beneficial owners of Dakota Access, LLC publicly announced their intention to expand the

capacity of DAPL by 100,000 barrels of crude oil per day.  On information and belief, this expansion could take place without additional Corps' authorization at the Lake Oahe crossing. Such a significant increase in crude oil flow would make the Corps' spill risk and impact analysis and emergency response planning useless as these analyses would be based on, at best, inaccurate data, and at worst, false data.

27.    The Corps completed its Remand Analysis on August 31, 2018 and concluded that it did not need to reconsider its 2016 environmental assessment nor was it required to complete an EIS.  The Corps affirmed its pre-remand conclusion that the risk of an oil spill is low, and therefore, ". . . any impacts on hunting and fishing resource [sic] will be of limited scope and duration."  ECF 362-1 at p. 1.  Additionally, the Corps concluded that the Lake Oahe crossing "does not result in disproportionately high and adverse human health or environmental effects on minority populations, including Tribes, and low-income populations."  *Id.*  Finally, as to whether the Corps' conclusions were likely to be highly controversial, the Corps incorrectly characterized technical input and data from interested stakeholders as mere opposition to the pipeline and stated that these stakeholders did not "provide information that a substantial dispute exists as to the size, nature, or effect of the federal action."  *Id.* at p. 2.

28.    The Corps' Remand Analysis ignores much of the information provided to the Corps during the remand period by interested stakeholders, it does not provide a critical response to these data, and it simply reiterates the Corps' flawed pre-remand conclusions.  The Remand Analysis continues to calculate risk based on generic national statistics rather than accounting for DAPL's specific risk factors particular to its specific route.  The Remand Analysis fails to address the extensive evidence that the risks of slow pipeline leaks that cannot be detected is higher than the Corps acknowledges.  The Remand Analysis relies heavily upon an ill-founded worst case

discharge ("WCD") analysis that grossly underestimates the impacts of an oil spill, does not adequately account for the unique hazards of Bakken crude oil, and severely overestimates the ability of responders to clean up oil after it has spilled.

29. The Remand Analysis fails to address adverse weather conditions and the impact of circumstances listed in the regulatory definition of "worst case discharge" in 49 C.F.R. § 194.5.

30. The Remand Analysis fails to implement the formula required by 49 C.F.R. § 194.105(b)(1), including consideration of the operators' historic discharges.

31. The Remand Analysis relies heavily upon unrealistic shutdown times that bear little-to-no resemblance to multiple real-world oil pipeline spills.

32. The Remand Analysis ignored DAPL's failure to comply with easement conditions, including the requirement that shutoff valves near Lake Oahe have independent power sources to ensure operational safety.

33. The Remand Analysis fails to calculate the risks and impacts of an oil spill based upon Dakota Access's publicly-stated intention to increase DAPL's capacity by 100,000 barrels of crude oil per day. Such a drastic increase changes both the risks of a spill as well as the potential impacts of a spill. By not accounting for this volume of crude oil flow through the pipeline, the WCD analysis is rendered useless and constitutes little more than the Corps merely checking an administrative box to proceed with its pre-determined decision.

34. The failures in the Remand Analysis endanger the Tribe's hunting and fishing Treaty rights, disproportionately endanger low-income and Tribal residents along the pipeline route, and do not adequately address the controversy over the Corps' conclusions that the risk of oil spill is low and the effects therefrom are minimal.

## CLAIMS FOR RELIEF

### I.     VIOLATION OF NEPA

35.     Intervenor-Plaintiff hereby alleges, incorporates, and restates all previous paragraphs of this Supplemental Complaint and of Intervenor-Plaintiff's prior Second Amended Complaint.

36.     Federal agencies are required under NEPA to prepare an EIS for all "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).

37.     In determining whether any federal action is significant, Council of Environmental Quality ("CEQ") regulations require consideration of both the context of the action and the intensity of its impacts.  40 C.F.R. § 1508.27.

38.     Factors to be considered when determining the intensity of an action include "the degree to which the proposed action affects public health or safety"; "unique characteristics of the geographic area such as proximity to historic or cultural resources…"; the degree to which the effects on the environment "are likely to be highly controversial," are "highly uncertain" or "involve unique or unknown risks"; and "the degree to which the action … may cause loss or destruction of significant scientific, cultural, or historical resources."  *Id.*

39.     In June of 2017, this Court found significant flaws in the Corps' analysis of the risk and the impacts of its decision to authorize DAPL beneath Lake Oahe.  The three flaws identified by the Court failed to adequately consider effects to the Tribe's Treaty rights to hunt and fish, failed to adequately consider the environmental justice effects of DAPL on low-income and tribal communities, and failed to consider the controversy of the Corps' spill and impact analysis.

40. The Corps' decision to affirm its pre-remand analysis without adequately considering the Tribe's Treaty rights, environmental justice implications, or controversy of DAPL violated NEPA's requirement to take a hard look at the action.

## II.     VIOLATION OF THE APA

41. Intervenor-Plaintiff hereby alleges, incorporates, and restates all previous paragraphs of this Supplemental Complaint and of Intervenor-Plaintiff's prior Second Amended Complaint.

42. The APA requires a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  5 U.S.C. § 706.

43. The Corps' Remand Analysis largely affirms its pre-remand analysis of the risk of oil spills and the effects of those spills on Tribal members and the Treaty rights secured to these members and to the Tribe.

44. This Court found the Corps' pre-remand analysis to be deficient with regard to Treaty rights to hunt and fish, with regards to environmental justice concerns, and with regard to the controversy surrounding DAPL.

45. The Corps' Remand Analysis fails to provide a WCD analysis that complies with the requirements of 49 C.F.R. § 194.5 because the Corps relies on its pre-remand WCD that does not account for the impact of circumstances such as adverse weather conditions and other factors listed in 49 C.F.R. § 194.5.

46. The Corps' Remand Analysis fails to comply with the requirements of 49 C.F.R. § 194.105(b)(1), including the requirement to consider the historic discharges from DAPL's pipeline operators, even though DAPL's parent companies have among the industry's worst safety records.

47.     The Corps' Remand Analysis fails even to consider Dakota Access's public statement that it intends to increase the flow of crude oil through DAPL by 100,000 barrels per day.

48.     Given the Corps' failure to abide by CEQ regulations in its Remand Analysis, and its failure to consider the increased crude oil flow through DAPL, the Corps' decision to reaffirm its pre-remand analysis is arbitrary, capricious, an abuse of discretion, and not in accordance with the law.

### III.     FAILURE TO ADEQUATELY CONSIDER IMPACTS TO TREATY RIGHTS

49.     Intervenor-Plaintiff hereby alleges, incorporates, and restates all previous paragraphs of this Supplemental Complaint and of Intervenor-Plaintiff's prior Second Amended Complaint.

50.     The Tribe holds vested Treaty rights in the lands within the Cheyenne River Sioux Reservation, the waters of Lake Oahe, and the Missouri River.  These rights include reserved water rights and Treaty rights to hunt, fish, and gather natural resources from the lands within the Cheyenne River Sioux Reservation, including the waters of Lake Oahe and the Missouri River. These rights include the right to clean, safe water to sustain a livable permanent homeland and self-sufficiency for the Tribe and its people.  The Corps manages and controls the waters of Lake Oahe where the Tribe exercises its treaty rights.

51.     The Corps, by virtue of the Treaties, federal statutes, and the federal trust responsibility, has a duty to consider the Tribe's treaty rights when taking action.  The Corps also has a duty to avoid taking actions that would damage, degrade, or destroy the Tribe's reserved water rights and the Tribe's Treaty rights to hunt, fish, and gather.  The Corps must fully assess, in consultation with the Tribe, the impacts of its actions such as authorizing, permitting, or granting

easements for pipelines to cross areas where the Tribe retains rights guaranteed to the Tribe and its members by Treaties.

52.     The Corps' Remand Analysis renews its pre-remand assertion that the likelihood of an oil spill is minimal, and concludes therefrom that the effects and impacts of an oil spill on the Tribe's hunting and fishing rights are minimal.  This conclusion relies upon a narrow selection of data used to confirm the Corps' pre-remand decision, and fails to analyze data critical of the Corps' pre-remand decision.  This conclusion excludes much of the feedback provided by the Tribe, the Standing Rock Sioux Tribe, and other Tribal parties to this action in violation of the Corps' obligation to consult with the Tribes before taking action that could jeopardize the Tribes' treaty rights and resources.

53.     By reaffirming its pre-remand decisions, the Corps' Remand Analysis failed to adequately consider the Tribe's Treaty rights and failed to consider the Corps' duty to act as trustee to protect those rights.

## IV.     VIOLATION OF THE RIVERS AND HARBORS ACT

54.     Intervenor-Plaintiff hereby alleges, incorporates, and restates all previous paragraphs of this Supplemental Complaint.

55.     Section 408(a) of the Rivers and Harbors Act prohibits the alteration, occupation, or use of public works if such activity will be "injurious to the public interest."  In determining if the activity will be injurious to the public interest, the Corps must consider the benefits that reasonably may be expected to accrue from the activity against the reasonably foreseeable detriments.

56.     The Corps is required to consider the effects on the Tribe's hunting and fishing rights in its determination of whether DAPL will be injurious to the public interest.

57.     This Court found the Corps' pre-remand analysis to be deficient with regards to Treaty rights to hunt and fish.

58.     The Corps' Remand Analysis does not take into account Dakota Access's intention to expand the capacity of DAPL by 100,000 barrels of crude oil per day.

59.     The Corps' Remand Analysis does not provide an adequate analysis of how the Corps weighed the risks of DAPL to the Tribe's Treaty rights against the reasonably anticipated benefits of DAPL.  The Remand Analysis fails to even consider Dakota Access's public statement that it intends to increase the flow of crude oil through DAPL by 100,000 barrels per day.

60.     By failing to provide an adequate analysis of how the Corps weighed the risks and benefits of DAPL, the Corps violated its duty under Section 408 of the Rivers and Harbors Act to ensure that any alteration to a public works project is not injurious to the public interest.

**PRAYER FOR RELIEF**

WHEREFORE, Intervenor-Plaintiff respectfully requests that this Court grant the following relief:

   i.     Declare that the Remand Analysis and the underlying MLA easement which it attempted to address is arbitrary, capricious, and in violation of NEPA and the APA;

   ii.     Vacate the Remand Analysis, the final environmental analysis and finding of no significant impact, and the underlying MLA easement pending full compliance with the law;

   iii.     Direct the Corps to resume the EIS process initiated in November 2016, and provide the Tribe with all technical documents related to oil spill and impact so that it can meaningfully participate in the EIS process;

    iv.  Retain jurisdiction over this matter to ensure that the Corps complies with the law;

    v.  Award Intervenor-Plaintiff its reasonable fees, costs, expenses, and disbursements, including attorneys' fees, associated with this litigation; and

    vi.  Grant Intervenor-Plaintiff such further and additional relief as the Court may deem just and proper.

Dated this 26th day of November, 2018.

       CHEYENNE RIVER SIOUX TRIBE,
       Intervenor-Plaintiff,


    By:  /s/ Nicole E. Ducheneaux
       Nicole E. Ducheneaux
       Joseph V. Messineo
       Fredericks Peebles & Morgan LLP
       3610 North 163rd Plaza
       Omaha, NE  68116
       Telephone:  (402) 333-4053
       Facsimile:  (402) 333-4761
       Email: nducheneaux@ndnlaw.com
         jmessineo@ndnlaw.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of November, 2018 a copy of the foregoing was filed electronically with the Clerk of the Court.  The electronic filing prompted automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

       /s/ Nicole E. Ducheneaux

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STANDING ROCK SIOUX TRIBE,**<br><br>              **Plaintiff,**<br><br>       **and**<br><br>**CHEYENNE RIVER SIOUX TRIBE,**<br><br>              **Intervenor-Plaintiff,**<br><br>       **v.**<br><br>**U.S. ARMY CORPS OF ENGINEERS,**<br><br>              **Defendant – Cross-Defendant.**<br><br>       **and**<br><br>**DAKOTA ACCESS, LLP,**<br><br>              **Intervenor-Defendant Cross-Claimant.** | **Case No. 1:16-cv-1534-JEB (and Consolidated Case Nos. 16-cv-1796 and 17-cv-267)** |

**PROPOSED ORDER GRANTING MOTION FOR LEAVE TO
FILE SUPPLEMENTAL COMPLAINT**

Intervenor-Plaintiff Cheyenne River Sioux Tribe filed a Motion for Leave to File

Supplemental Complaint.  Having reviewed the parties' pleadings, exhibits, and the entire record

of this case, it is hereby ORDERED that, the Motion is GRANTED.

Dated: _____, 2018          _____

                                                                         JAMES E. BOASBERG
                                                                         United States District Court Judgment

1