# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, YANKTON SIOUX TRIBE; ROBERT FLYING HAWK; OGLALA SIOUX TRIBE, <br><br>            Plaintiffs, <br><br>   and <br><br> CHEYENNE RIVER SIOUX TRIBE; SARA JUMPING EAGLE ET AL., <br><br>           Plaintiff-Intervenors, <br><br>     v. <br><br> U.S. ARMY CORPS OF ENGINEERS, <br><br>           Defendant-Cross Defendant, <br><br>   and <br><br> DAKOTA ACCESS, LLC, <br><br>           Defendant-Intervenor-Cross Claimant. | Case No. 1:16-cv-1534-JEB <br> (and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |

---

## DAKOTA ACCESS, LLC'S OPPOSITION
## TO PLAINTIFF OGLALA SIOUX TRIBE'S MOTION TO AMEND

---

William S. Scherman
David Debold
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Dakota Access, LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................2

ARGUMENT ..............................................................................................................................5

I.      Oglala's Motion Is Futile ...............................................................................................6

II.     Oglala's Untimely Motion Would Unduly Prejudice Dakota Access ..................................7

CONCLUSION ...........................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atchinson v. District of Columbia*, 73 F.3d 418 (D.C. Cir. 1996) ................................................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................................... 8

*Bell v. Dep't of Defense*, 2018 WL 4637005 (D.D.C. Sept. 27, 2018) ........................................... 7

*Brown v. FBI*, 744 F. Supp. 2d 120 (D.D.C. 2010) ........................................................................ 7

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................................ 5

*In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213 (D.C. Cir. 2010) ................................... 6

*Nat'l Ass'n of Manufacturers v. Nat'l Labor Relations Bd.*,
2012 WL 13063447 (D.D.C. Mar. 2, 2012) ................................................................................ 6, 8

*Ross v. DynCorp*, 362 F. Supp. 2d 344 (D.D.C. 2005) ................................................................... 7

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
255 F. Supp. 3d 101 (D.D.C. 2017) ..................................................................................... *passim*

*Thorp v. District of Columbia*, 325 F.R.D. 510 (D.D.C. 2018) ...................................................... 7

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971) ........................................... 7

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................................................... 5

**Regulations**

82 Fed. Reg. 5,543 (Jan. 18, 2017) ................................................................................................ 3

**INTRODUCTION**

The Oglala Sioux Tribe seeks to beef up a claim that this Court has already decided in fa-
vor of the United States Army Corps of Engineers ("Corps").  Its motion is both futile and un-
timely and should be denied.

Oglala is one of six plaintiffs that have sued the Corps to challenge the construction and
operation of the Dakota Access Pipeline.  Like the complaints filed by other plaintiffs, including
the Standing Rock and Cheyenne River Sioux Tribes, Oglala's complaint includes a challenge to
the Corps' decisions in February 2017 to withdraw its notice of intent ("NOI") to prepare an En-
vironmental Impact Statement ("EIS") and to issue an easement to Dakota Access for construc-
tion of the pipeline on federal lands under Lake Oahe.

Almost two years after filing its original Complaint, Oglala now seeks leave to add an al-
legation to this claim challenging withdrawal of the NOI to prepare an EIS.  The proposed new
sentence reads:  "Further, the Corps' decisions to withdraw the NOI and to issue the easement to
Dakota Access, LLC were made without the Corps reviewing thousands of submissions in re-
sponse to the NOI."  D.E. 376, at 3.  That additional assertion would be new to Oglala's com-
plaint, but it is far from new to this litigation.  Cheyenne River was previously granted leave to
amend *its* complaint to allege that the Corps did not consider new information submitted in re-
sponse to the same NOI.  CRST Second Amended Compl., D.E. 240, ¶¶ 274 & 276.  Cheyenne
River also argued in its summary judgment motion in support of this claim that the Corps failed
to consider "more than 200,000 comments filed in response to the EIS Notice."  D.E. 131 at 5
n.3.  The claim failed.  *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d
101, 143 (D.D.C. 2017).

Oglala's proposed amendment is futile because this Court fully considered and granted summary judgment to the Corps and Dakota Access on Cheyenne River's indistinguishable claim challenging withdrawal of the NOI.  The Court's rejection of Cheyenne River's claim and grant of summary judgment to Dakota Access and the Corps came *after* Oglala filed its original complaint, *after* Oglala's case was consolidated with this one, and *after* Oglala participated in the summary judgment briefing—and raised this exact argument—as an amicus curiae.  Oglala's proposed amendment seeks only to rehash a claim that has already been decided.

If the proposed amendment is not futile, it should be denied as untimely and prejudicial. Oglala provides no excuse for its 22-month delay in seeking to add to a claim that has already been litigated and decided.  And granting Oglala's leave to amend would serve only to further prejudice Dakota Access and the Corps by requiring them to re-litigate an issue, threatening further delay in already protracted litigation.  The Court should not revisit a claim that has been resolved, particularly as the litigation approaches its final round of dispositive briefing.  Oglala's Motion should be denied.

## BACKGROUND

Since Standing Rock first filed this lawsuit on July 27, 2016, this Court has presided over two rounds of preliminary injunction briefing, two rounds of summary judgment briefing, and a remand to the Corps.  The number of plaintiffs grew steadily through interventions (Cheyenne River Sioux Tribe, D.E. 11; Steve Vance, D.E. 111; and Sarah Jumping Eagle, D.E. 145) and consolidation (Oglala Sioux Tribe and Yankton Sioux Tribe), *see* Mar. 16, 2017 Minute Order.

The number and nature of claims grew, too.  Standing Rock initially brought claims under the National Historic Preservation Act ("NHPA"), National Environmental Policy Act

("NEPA"), Clean Water Act ("CWA"), Rivers and Harbors Act ("RHA"), Administrative Proce-
dure Act ("APA"), and tribal treaty rights.  D.E. 1 ¶¶ 128-212.  Cheyenne River's similar com-
plaint, as amended on September 8, 2016, added claims for breaches of the Government's trust
responsibilities and violations of the Flood Control Act.  D.E. 37 ¶¶ 154-254.

In late 2016, the Corps considered whether to deliver an easement under the Mineral
Leasing Act ("MLA") for Dakota Access to cross federal property at Lake Oahe.  Specifically,
the Army "'concluded that its previous decisions comported with legal requirements,'" but that
"additional discussion" and "additional analysis" were warranted before it would issue the ease-
ment.  *Standing Rock*, 255 F. Supp. 3d at 117-19 (quoting D.E. 56-1, at 1 and D.E. 172-7).

On January 18, 2017, the Army published a NOI to prepare an EIS.  *See* 82 Fed. Reg.
5,543 (Jan. 18, 2017).  It then published a notice of termination of its intent to prepare an EIS on
February 7, 2017 and issued the easement on February 8, 2017.  *Standing Rock*, 255 F. Supp. 3d
at 120.

After the easement issued, the number of claims grew again.  In February 2017, Standing
Rock and Cheyenne River filed their First and Second Amended Complaints, respectively.  D.E.
97 & 106.  The amended complaints added allegations that the Corps' decision to withdraw its
NOI to prepare an EIS and the Corps' issuance of an easement allowing construction to proceed
under Lake Oahe violated, among other things, NEPA and the APA.  *See, e.g.*, SRST First
Amended Compl., D.E. 241, ¶ 4 ("In reversing course, abandoning the EIS process, and granting
the easement, the Corps . . . violated NEPA, the MLA, and its trust obligation."); CRST Second
Amended Compl., D.E. 240, ¶ 277 ("The Corps' decision to withdraw the EIS Notice is without
any basis in fact or law.").  Critically, in Cheyenne River's Sixth Claim (alleging that the Corps
"violated NEPA with respect to the withdrawal of the right-of-way EIS notice"), Cheyenne River

alleged that the "Tribe submitted preliminary facts and analysis pursuant to the EIS Notice for

the Corps' consideration under NEPA," and that, "[a]fter recognizing that the EIS was required

to grant the right-of-way and inviting persons to provide information, it is clear that no infor-

mation was considered or analysis performed." *See* CRST Second Amended Compl., D.E. 240,

¶¶ 274 & 276; *see also id.* ¶¶ 169-76 (alleging specific facts related to Corps' failure to complete

the EIS process pursuant to the EIS notice).

Then, on February 11, 2017, Oglala filed its own complaint.  D.E. 1, No. 17-267

(D.D.C.).  Oglala asserted claims under NEPA, the APA, and the MLA, and also claimed

breaches of its treaty rights and the Government's trust obligations.  D.E. 1, No. 17-267, ¶¶ 78-

102.  In support of its NEPA cause of action, and as relevant here, Oglala alleged that "[t]he

Corps erred in concluding that an EIS was not required because the grant of the easement and the

construction and operation of the pipeline will cause significant impacts to the environment and

to the Tribe's Treaty and statutory rights." *Id.* ¶ 87.  Oglala additionally alleged that "[t]he

Corps' decision to withdraw the NOI for the EIS before the end of the public comment period

and without holding a scoping session violated NEPA." *Id.* ¶ 88.  The Court consolidated

Oglala's case with this one on March 16, 2017.  S*ee* Mar. 16, 2017 Minute Order.

Three months after the cases were consolidated, on June 14, 2017, the Court granted par-

tial summary judgment to the Corps and Dakota Access finding, among other things, that the

Corps' decisions to withdraw its NOI to prepare an EIS and grant the easement comported with

the law. *See Standing Rock*, 255 F. Supp. 3d at 143 ("The Corps did enough to satisfy the APA's

requirements regarding policy reversals.").  The Court received full briefing before it ruled:

Standing Rock and Cheyenne River moved for partial summary judgment, D.E. 117 & 131; and

the Corps and Dakota Access filed cross-motions for summary judgment, *see* D.E. 159, 172, 183,

184 & 185.  Critically, Oglala filed an amicus brief in support of the claim, advanced by Stand-ing Rock and Cheyenne River and then rejected by this Court, that the Corps' decision to with-draw the NOI was improper.  D.E. 138 at 19-21.  Oglala's brief specifically asserted that "[t]he withdrawal of the NOI is arbitrary and capricious because it does not take into account the com-ments of [Oglala] and its expert . . . , or other numerous comments received by the Corps subse-quent to the EA."  *Id.*

In its order, the Court remanded to the Corps for consideration of three narrow issues. *Standing Rock*, 255 F. Supp. 3d at 112.  More than a year later, on August 31, 2018, the Corps notified the Court that remand was complete.  D.E. 362.  Oglala now seeks to amend its original complaint by adding an allegation to a claim that was litigated more than a year ago:  Oglala al-leges that the Corps' "withdrawal of the Notice of Intent ("NOI") to prepare an environmental impact study ("EIS")" and grant the easement violated the APA and NEPA because the Corps "fail[ed] to consider the thousands of submissions it received in response to the NOI."  D.E. 376 at 1-2.

## ARGUMENT

This Court may grant leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It undermines the interests of justice to give leave when, among other things, the amendment would be futile, the movant engages in "undue delay," or the amendment threatens "undue prejudice to the opposing party."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Oglala's Motion should be denied.  Oglala seeks to add allegations to a claim the Court has already rejected.  If the amendment is not futile, Oglala's untimely request unduly prejudices Dakota Access.

## I.  Oglala's Motion Is Futile

A motion to amend is futile when it "reasserts a claim on which the court previously ruled." *Nat'l Ass'n of Manufacturers v. Nat'l Labor Relations Bd.*, 2012 WL 13063447, at *1 (D.D.C. Mar. 2, 2012) (citation omitted); *see also In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (A court may properly deny a motion to amend if "the amended pleading would not survive a motion to dismiss.").

Oglala aims to add language to its Complaint supporting *the exact same claim* that the Parties, including Oglala itself, have argued and that the Court has rejected.  Oglala's amend-ment would allege that the Corps failed to review "thousands of submissions in response to the NOI" before withdrawing the NOI and delivering the easement.  D.E. 376 at 3.  Cheyenne River already argued, in seeking summary judgment on the same legal claim, that the Corps ignored its comments as well as "more than 200,000 comments filed in response to the EIS Notice."  D.E. 131 at 5 n.3.  What's more, Oglala filed a brief in support of the other tribes' motions for sum-mary judgment, arguing that "[t]he withdrawal of the NOI is arbitrary and capricious because it does not take into account the comments of [Oglala] and its expert . . . , or other numerous com-ments received by the Corps subsequent to the EA"; that "the EA and [Finding of No Significant Impact, ("FONSI")] cannot reasonably be relied on for [a finding of no significant impact] as of February 7, 2017, at least not without a reasoned decision addressing the post-EA comments;" and that "[t]he absolute silence on the substance of these comments in the decision to withdraw the NOI and to rely on the EA renders the decision arbitrary and capricious."  D.E. 138 at 19-21.

The Court reviewed those arguments and nonetheless granted summary judgement to the Corps and Dakota Access, upholding the Corps' decisions to withdraw its NOI and issue the easement without an EIS.  *See Standing Rock*, 255 F. Supp. 3d at 143 ("The Corps did enough to satisfy the APA's requirements regarding policy reversals.").  Because the Parties have already

litigated and the Court has already granted summary judgment *on this exact claim*, Oglala's motion should be denied as futile.  This Court need not "waste [its] time [or] judicial resources" (or the Parties time and resources) to allow a claim that "must fail, as a matter of law, in light of the record in th[is] case." *See Ross v. DynCorp*, 362 F. Supp. 2d 344, 364 n.11 (D.D.C. 2005).

## II.    Oglala's Untimely Motion Would Unduly Prejudice Dakota Access

When considering a motion to amend, a court must "take into account any prejudice that [the opposing party] would . . . suffer[] as a result." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971).  "A delay of several years between the filing of the initial action and the request to amend is generally undue and suggests prejudice to a defendant." *See Bell v. Dep't of Defense*, 2018 WL 4637005, at *17 (D.D.C. Sept. 27, 2018) (denying motion to amend when case has been pending for two and half years).  Such prejudice is pronounced when a plaintiff's motion to amend arrives "at a critical juncture of [the] case," *Thorp v. District of Columbia*, 325 F.R.D. 510, 514 (D.D.C. 2018) (citation omitted), or when amendment would create an "added expense and the burden of a more complicated and lengthy trial," *Bell*, 2018 WL 4637005, at *17 (citation omitted).

If the amendment is not deemed futile, Dakota Access will be prejudiced by Oglala's delay.  Though Oglala frames this as a "minor change," the Tribe asserts it as an additional basis for Oglala to challenge the Corps' actions.  Oglala's additional language—in a request that comes 22 months after Oglala filed its original Complaint—is untimely and would unduly prejudice Dakota Access if the claim must be litigated.  *See, e.g.*, *Atchinson v. District of Columbia*, 73 F.3d 418, 424-25 (D.C. Cir. 1996) (holding that delay of two years from filing of action, in part, creates undue prejudice); *Brown v. FBI*, 744 F. Supp. 2d 120, 123 (D.D.C. 2010) (same).  Oglala provides no explanation for why it did not add this new allegation earlier, or why it waited until after the remand to bring this Motion, particularly when the language concerns a

pre-remand claim.  There is no excuse for this delay when, as discussed *supra*, *both* Oglala and its co-plaintiffs asserted the same arguments more than a year ago during summary judgment briefing.

Oglala's unwarranted delay should not be condoned, particularly when the Parties are "at a critical juncture of the case" with the final round of dispositive briefs on the horizon.  Permitting this language now would unnecessarily "complicate and lengthen this already protracted litigation" by requiring the Parties and the Court to revisit well-settled issues.  *See, e.g.*, *Thorp*, 325 F.R.D. at 514 (denying motion to supplement, in part, because parties were on the verge of resolution) (citation omitted).  Given the protracted nature of these proceedings, the costs of litigating a legal issue that has been decided will only add to the harm that Dakota Access has already incurred.

Oglala cannot avoid this prejudicial effect by characterizing the new allegation as merely a "clarifying" change to the Complaint.  That characterization effectively concedes that the allegation Oglala seeks to add is *not* part of the original Complaint.  A complaint must at a minimum "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  If Oglala's original Complaint was not clear enough to give notice of this specific allegation, then the allegation was not a part of that Complaint, and Oglala must provide some basis for requesting its addition now.  And conversely, if Oglala was correct that the new language merely clarified allegations already presented in the original Complaint, that would only strengthen the conclusion that Oglala's amendment is futile.  *See Nat'l Ass'n of Manufacturers*, 2012 WL 13063447, at *1 ("An amendment is futile if it merely restates the same facts as the

original complaint in different terms.") (citation omitted).  Either way, the Court should deny

Oglala's untimely request.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiff Oglala Sioux Tribe's Motion for Leave to File an Amended Complaint.

Dated:  December 21, 2018                                 Respectfully submitted,


                                                          /s/ William S. Scherman
                                                          William S. Scherman
                                                          David Debold
                                                          GIBSON, DUNN & CRUTCHER LLP
                                                          1050 Connecticut Avenue, N.W.
                                                          Washington, D.C.  20036
                                                          (202) 955-8500
                                                          wscherman@gibsondunn.com

                                                          *Counsel for Dakota Access, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of December, 2018, I electronically filed the foregoing document using the CM/ECF system.  Service was accomplished by the CM/ECF system.

/s/ William S. Scherman
William S. Scherman
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
wscherman@gibsondunn.com

*Counsel for Dakota Access, LLC*