**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| STANDING ROCK SIOUX TRIBE; YANKTON SIOUX TRIBE; ROBERT FLYING HAWK; OGLALA SIOUX TRIBE, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| CHEYENNE RIVER SIOUX TRIBE, | ) ) | |
| Intervenor Plaintiff, | ) ) | Case No. 1:16-cv-01534-JEB (and consolidated case nos. 16-cv-1796 |
| v. | ) ) | and 17-cv-267) |
| U.S. ARMY CORPS OF ENGINEERS, | ) ) | |
| Defendant, | ) ) | |
| and | ) ) | |
| DAKOTA ACCESS, LLC, | ) ) | |
| Intervenor Defendant. | ) | |

**PLAINTIFF OGLALA SIOUX TRIBE'S REPLY BRIEF IN FURTHER SUPPORT
OF ITS MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

In their oppositions to Plaintiff Oglala Sioux Tribe's Motion for Leave to File an Amended Complaint, Defendant U.S. Army Corps of Engineers ("Corps") and Intervenor-Defendant Dakota Access, LLC ("Dakota Access") wrongly claim that the proposed amendment to the complaint filed by the Oglala Sioux Tribe ("Tribe") would be futile and that the motion is untimely.  Neither is correct.

First, the proposed amendment is not futile.  The Court has not addressed and ruled on the issue of whether the Corps' wholesale failure to consider comments submitted in response to the notice of intent ("NOI") to prepare an environmental impact study ("EIS") violated the National Environmental Policy Act ("NEPA"), the Administrative Procedures Act ("APA"), or regulation.  The Court's previous decision on summary judgment motions addressed whether the Corps had justified its reversal of its decision to perform an EIS, and whether the Corps had adequately considered certain post-environmental assessment submissions made by plaintiff tribes, but it did not address the issue raised by the Tribe's proposed amendment, which is the Corps' wholesale failure to consider thousands of submissions to the Corps in response to the NOI before it withdrew the NOI and granted the easement.  Further, the Tribe's proposed amendment is not futile under the final agency action doctrine because the issuance of the easement is clearly a reviewable decision.  The Corps' decision to withdraw the NOI and issue the easement marked the culmination of the Corps' decision-making process.

Second, the motion is not made too late.  Defendants have not made the showing of prejudice required to defeat a motion for leave to file an amended complaint.  The proposed amendment would not delay the case, or raise novel new issues.  Further, the motion to amend was filed within the time allowed by the Court for such motions, and following a period during which the case was essentially held in abeyance pending the remand, with the consent of the Corps and Dakota Access.

Because the "court should freely give leave [to allow a party to amend its pleading] when justice so requires[,]" FED. R. CIV. P. 15(a)(2), the Tribe's motion should be granted.

I.    **The Proposed Amended Complaint Is Not Futile**

    A.  **The Court Has Not Ruled on the Issues Raised in the Amendment**

The Tribe proposes to amend Count II of its Complaint, which challenges the Corp's February 7, 2017 decision that an EIS was not required before issuing the easement for the pipeline to cross Lake Oahe, and the withdrawal of the NOI to prepare an EIS prior to issuance of the easement. *Oglala Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 17-cv-00267 (D.D.C. filed Feb. 11, 2017), Complaint ("Compl.") ¶¶ 84-89, ECF No. 1; *see also id.* ¶¶ 76-77.  In its original Complaint, the Tribe alleges that the decision that an EIS was not required was in error because the pipeline will cause significant impacts to the environment and to the Tribe's statutory and treaty rights, *id.* ¶ 87, and that the decision to withdraw the NOI before the end of the scoping period and without holding a scoping session violates the NEPA, the APA, and 33 C.F.R. Part 325, Appendix B, § 8(g) (concerning the withdrawal of NOIs).  Compl. ¶ 88.  The Tribe now seeks to amend paragraph 88 of its Complaint to add one sentence: "Further, the Corps' decisions to withdraw the NOI and to issue the easement to Dakota Access, LLC were made without the Corps reviewing thousands of submissions in response to the NOI." [Proposed] Amended Complaint ¶ 88, ECF No. 377-1.

    Defendants' arguments that the Court has already addressed this allegation and ruled on it misconstrues prior filings and rulings.  Dakota Access's argument that the Court has previously "considered and granted summary judgment to the Corps and Dakota Access on Cheyenne River's indistinguishable claim[,]" Dakota Access Opp. Br. at 2, ECF No. 388, confuses the arguments raised by Cheyenne River Sioux Tribe ("CRST") in support of its motion for summary judgment, and the Court's ruling.  Although CRST did state in a footnote in the fact section of its summary judgment brief, as noted by Dakota Access, that "[t]he Corps' decision[]

3

to rescind the EIS Notice ignored more than 200,000 comments filed in response to the EIS Notice[,]" ECF No. 131 at 5 n.3, CRST asserted no claim for summary judgment based on this fact, and the Court's decision on CRST's summary judgment motion does not mention this fact, or any argument based on it. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101 (D.D.C. 2017), ECF No. 239.  (Rather, CRST based its summary judgment motion on other claims and legal arguments, such as lack of consultation. *Id.* at 148-61, ECF No. 239 at 67-90).

Similarly, Dakota Access notes that in denying the motion for summary judgment brought by the Standing Rock Sioux Tribe ("SRST"), the Court rejected the argument that the Corps' decision to grant the easement without an EIS was an arbitrary and capricious reversal of its previous position to perform an EIS, holding that "the Corps did enough to satisfy the APA's requirements regarding policy reversals." *Id.* at 143, ECF No. 239 at 59.[1]  That is so, but although SRST argued that the Corps did not meet the requirements for policy reversals, it did not assert the issue raised by the Tribe in its proposed Amended Complaint that the Corps had not considered all of the comments submitted in response to the NOI.

Dakota Access and the Corps rely on the Tribe's amicus brief filed in support of SRST's motion for summary judgment, in which the Tribe argued that "[t]he withdrawal of the NOI is arbitrary and capricious because it does not take into account the comments of the Tribe and its expert (which was resubmitted to the Corps in response to the NOI, Ex. 3), or other comments received by the Corps subsequent to the EA."  ECF No. 138 at 20, quoted in Dakota Access Opp. Br. at 5, ECF No. 388, Corps' Opp. Br. at 3, ECF No. 387.  In its decision, the Court did address

---

[1]  While Dakota Access discusses this decision as "upholding the Corps' decisions to withdraw its NOI and issue the easement without an EIS[,]" Dakota Access Opp. Br. at 6, ECF No. 388, SRST did not challenge the withdrawal of the NOI as such. *Standing Rock Sioux Tribe*, 255 F. Supp. 3d at 142, ECF No. 239 at 56 ("Standing Rock does not, it clarifies in its Reply, assail the withdrawal of the [NOI].").

certain submissions received by the Corps after the environmental assessment and prior to the

issuance of the easement which the Corps had received by channels other than the NOI comment

process and which the Corps had included as part of the administrative record, including

specifically plaintiffs' expert reports submitted prior to the NOI. *Standing Rock Sioux Tribe*, 255

F. Supp. 3d at 124, ECF No. 239 at 24 (holding that "the Court can review the materials before

the Corps as of February 8, 2017, for purposes of evaluating the decision to grant the easement

absent an EIS"), *see also id*. at 129, ECF No. 239 at 34 (holding that the Corps violated NEPA

by failing to address plaintiffs' expert reports, some of which were "wholly ignore[d]," and by

failing to consider the degree to which the pipeline's effects are likely to be highly

controversial).  The Court did not, however, address the Corps' wholesale failure to consider

documents received by the Corps in response to the NOI—which documents were not, by the

Corps' admission, included in the administrative record.  *See* U.S. Army Corps of Eng'rs Opp. to

CRST's Mot. to Suppl. the Admin. R. and Alternative Mot. to Consider Docs. Outside the

Admin. R. at 11, ECF No. 232.

In short, the Court's summary judgment decision did not address whether the Corps'

failure to consider comments filed in response to the NOI violated NEPA, the APA, or

regulation, nor did it even address the fact that the Corps had not considered those comments.

**B. The Corps' Decision to Withdraw the NOI and to Issue the Easement Without Preparing an EIS and Without Considering Comments is Reviewable under the APA**

The Corps' argument that the proposed amendment is futile because the withdrawal of

the NOI does not constitute final agency action reviewable under the APA is a red herring.

There is no doubt that the issuance of the easement is a reviewable decision.  *See Standing Rock*

*Sioux Tribe*, 255 F. Supp. 3d 101, ECF No. 239.  Although as a general rule an NOI "and

5

<u>ongoing</u> scoping activities" are not the agency's "last word," *Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv*., 653 F. Supp. 2d 1066, 1092 (E.D. Cal. 2009) (emphasis added), cited in Corps' Opp. Br. at 4, ECF No. 387, here there were no ongoing scoping activities, and the Tribe challenges not only the withdrawal of the NOI and the decision that no EIS was required (itself a reviewable decision), but also the issuance of the easement. [Proposed] Amended Complaint ¶ 88, ECF No. 377-1 ("Further, the Corps' decisions to withdraw the NOI and to issue the easement to Dakota Access, LLC were made without the Corps reviewing thousands of submissions in response to the NOI."); *see Citizens Ass'n of Georgetown v. Fed. Aviation Admin*., 896 F.3d 425, 434 (D.C. Cir. 2018) ("The December 2013 publication of the FONSI/ROD satisfied both elements of this court's finality test: it 'mark[ed] the consummation of the agency's decisionmaking process and ... [was] a source of legal consequences.'") (quoting *City of Phoenix, Ariz. v. Huerta*, 869 F.3d 963, 968 (D.C. Cir. 2017), *opinion amended on reh'g*, 881 F.3d 932 (D.C. Cir. 2018)).

## II.    The Proposed Amendment Does Not Unfairly Prejudice Defendants and is Not Too Late

### A.    Defendants Have Not Met Their Burden of Showing That They Will Be Prejudiced by the Proposed Amendment

"[D]elay alone is not a sufficient reason for denying leave . . . . If no prejudice [to the non-moving party] is found, the amendment will be allowed." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C.Cir.1998) (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kane, Federal Practice & Procedure § 1488 (2d ed. 1990 & Supp. 1997)); *see also 2910 Georgia Ave. LLC v. District of Columbia*, 312 F.R.D. 205, 213 (D.D.C. 2015) (quoting *id.*).

Defendants have not shown and cannot show that they would be burdened by the proposed amendment. It does not "substantially change[] the theory on which the case has been

proceeding[,]" it would not "require[] [Defendants] to engage in significant new preparation," nor would it would require "added expense and the burden of a more complicated and lengthy trial[,]," or raises "issues . . . remote from the other issues in the case." *Djourabchi v. Self*, 240 F.R.D. 5, 13 (D.D.C. 2006) (internal quotations omitted).

Dakota Access's arguments to the contrary are vague and unsupported.  It asserts that we are at a critical juncture in this case, Dakota Access Opp. Br. at 8, ECF No. 388, but in fact we are awaiting the production of the administrative record on the remand decision, and summary judgment briefing has not yet been scheduled.  If the proposed amendment is permitted, it will not cause delay in this case.  The Tribe will litigate this claim at the summary judgment stage along with its other claims.  Cases relied upon by Dakota Access do not support the argument that it will suffer prejudice.  The cases are fact-specific, and require that the defendants show actual prejudice, and not just delay.  *E.g.*, *Atchison v. District of Columbia*, 73 F.3d 418, 425-27 (D.C. Cir. 1996) (finding prejudice—based on three factual reasons specific to the case—where plaintiff sought to amend complaint to sue defendant police officer in his personal capacity on eve of trial); *Bell v. Dep't. of Def.*, No. 16-0959, 2018 WL 4637005, at *17 (D.D.C. Sept. 27, 2018) ("Plaintiff's proposed amendment would significantly delay the resolution of this matter by necessitating a renewed round of briefing by all parties."); *Thorp v. District of Columbia*, 325 F.R.D. 510, 514 (D.D.C. 2018) ("[G]ranting Plaintiff's request would only unduly increase discovery—a process that has already lasted more than 19 months—and delay a resolution on the merits.") (internal quotation and citation omitted).

The Corps' argument that it would be prejudiced because the proposed amendment would "revive and reframe" arguments already considered by the Court, Corps Opp. Br. at 5, ECF No. 387, should be rejected for the reasons stated previously concerning what the Court has decided.

**B.  The Tribe Did Not Delay Unreasonably**

Although the lack of prejudice to Defendants is dispositive, it bears noting that the Tribe did not unreasonably delay filing its motion to amend.  First, the motion was filed within the time set for the Court to file motions to amend complaints.  *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, 891 F. Supp. 2d 13, 32 (D.D.C. 2012) ("[I]t is worth noting that Plaintiffs first filed their Motion to Amend within the deadline expressly contemplated by the Court's scheduling order . . . . The fact that Plaintiffs acted within the specific time constraints contemplated by the Court is an important consideration counseling against a finding that Plaintiffs acted with undue delay in filing the pending motion.").

Second, it bears noting that the case was largely held in abeyance during the remand, with the consent of the Corps and Dakota Access, and further, that the Corps consented to the case being held in abeyance with the express understanding that plaintiffs would amend their complaints following the remand.  On October 18, 2017, after ruling on the cross-motions for summary judgment and ordering a partial remand, the Court held a status conference.  At that conference, the Corps' attorney stated as follows:

> So in that case, I would like to state our general agreement with what Standing Rock and Cheyenne River stated, that the case should largely be held in abeyance until after remand.
>
> I would like to flag a few additional issues.  One, the United States has four outstanding answers that are due:  Our answers to Standing Rock's amended complaint, Cheyenne River's amended complaint, Mr. Vance's complaint and the individual plaintiffs['] complaint.  So I would ask that those be included in the matters that are held in abeyance until after remand.
>
> Related to that, we believe as the first principle that all parties should have the opportunity to amend their complaints after remand.  So we would rather not answer the current complaints, we are expecting there is a good chance that many parties will amend their complaints.  Okay.

Transcript of Status Conference, attached as Exhibit A, at 17 ll. 5-21.  Dakota Access tacitly

consented to the case being held in abeyance as well.  At the end of the status conference, the

Court inquired of Dakota Access's lawyer whether he had anything to raise, to which he replied

simply "No, nothing further, Your Honor."  Ex. A at 20 ll. 16-18.  Following the status

conference, the Court entered a minute order that, *inter alia*, held in abeyance Defendants'

obligation to file answers until further order, and required any plaintiff wishing to file a motion

for summary judgment before the conclusion of the remand to first seek leave of Court to do so.

Minute Order entered Oct. 18, 2017.

On these facts, the Tribe did not unreasonably delay in filing its motion to amend the

complaint.

## CONCLUSION

For the foregoing reasons, as well as those stated in the Tribe's opening memorandum in

support of the motion, we ask that this Court grant the Tribe's Motion for Leave to File an

Amended Complaint.

Respectfully submitted,


s/ *Michael L. Roy*
Michael L. Roy (DC Bar No. 411841)
mroy@hobbsstraus.com
Jennifer P. Hughes (DC Bar No. 458321)
jhughes@hobbsstraus.com
Elliott A. Milhollin (DC Bar No. 474322)
emilhollin@hobbsstraus.com
Hobbs, Straus, Dean & Walker, LLP
2120 L Street NW, Suite 700
Washington, DC  20037
202-822-8282 (Tel.)
202-296-8834 (Fax)
*Attorneys for Oglala Sioux Tribe*

Mario Gonzalez
Gonzalez Law Office
522 7th St 202
Rapid City, SD 57701
(605) 716-6355
*Of Counsel for Oglala Sioux Tribe*

January 2, 2019

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---------------------------X

STANDING ROCK SIOUX TRIBE, et al

Plaintiffs

v.                              Civil Action 16-1534.

U.S. ARMY CORPS OF ENGINEERS, et al

Defendant

---------------------------X

Washington, D.C
Wednesday, October 18, 2017
10:00 a.m.

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT JUDGE

APPEARANCES:

| | |
|---|---|
| For Plaintiff Standing Rock Sioux Tribe: | Jan Hasselman, Esq.<br>EARTHJUSTICE LEGAL DEFENSE FUND<br>705 Second Avenue, Suite 203<br>Seattle, WA 98104-1711<br>(206) 343-7340 |
| For Plaintiff Cheyenne River Sioux Tribe and Plaintiff Vance: | Joseph Messineo, Esq.<br>FREDERICKS PEEBLES & MORGAN LLP<br>3610 North 163rd Plaza<br>Omaha, NE 68116<br>(402) 333-4053 |
| Court Reporter: | Lisa Walker Griffith, RPR<br>U.S. District Courthouse<br>Room 6507<br>Washington, D.C.  20001<br>(202) 354-3247 |

```
APPEARANCES:  (Cont'd.)

For Plaintiff Yankton
Sioux Tribe:          Jennifer Baker, Esq. (telephone)
                      Jeffrey Rasmussen, Esq. (telephone)
                      FREDERICKS PEEBLES & MORGAN LLP
                      1900 Plaza Drive
                      Louisville, CO 80027
                      (303)-673-9600


For Intervenor Plaintiffs:

Jumping Eagle:        Bruce I. Afran, Esq. (telephone)
                      10 Braeburn Dr.
                      Princeton, NJ 08540
                      (609) 454-7435


For the Defendant:    Matthew Marinelli, Esq.
                      Ben Schifman, Esq.
                      Erica M. Zilioli, Esq.
                      U.S. DEPARTMENT OF JUSTICE
                      Environment & Natural Resources Division
                      P.O. Box 663, Ben Franklin Station
                      Washington, DC 20044-0663
                      (202) 305-0293



Intervenor Defendant  David Debold, Esq.
Dakota Access:         William S. Scherman, Esq.
                       GIBSON, DUNN & CRUTCHER, LLP
                       1050 Connecticut Avenue, NW
                       Washington, DC 20036
                       (202) 955-8551

                       Robert D. Comer, Esq. (telephone)
                       NORTON ROSE FULBRIGHT US LLP
                       1200 17th Street, Suite 1000
                       Denver, CO 80202
                       (303) 801-2700
```

For Amici:

National Indigenous            Mary Kathryn Nagle, Esq.
Women's Resource Center,       PIPESTEM LAW FIRM, PC
Additional Amici:              1333 New Hampshire Avenue, NW
(telephone)                    Washington, DC 20036
                               (202) 407-0591


Oglala Sioux Tribe:            Michael L. Roy, Esq.
                                      HOBBS, STRAUS, DEAN &
                                  WALKER, LLP
                               2120 L Street, NW, Suite 700
                               Washington, DC 20037-1527
                               (202) 822-8282

1                    P R O C E E D I N G S

2              THE DEPUTY CLERK:  This is Civil Action 16-1534.

3    Standing Rock Sioux Tribe versus United States Army Corps

4    of Engineers, et al.

5              Counsel, please approach the lectern and identify

6    yourselves for the record.

7              We also have via telephone conference Bob Comer,

8    Jennifer Baker, Jeffrey Rasmussen and Bruce Afran.

9              MR. HASSELMAN:  Jan Hasselman for Standing Rock

10   Sioux Tribe.

11             THE COURT:  Good morning.

12             MR. MESSINEO:  Good morning, Your Honor.  Joseph

13   Messineo for Cheyenne River Sioux Tribe and for Steve

14   Vance.

15             THE COURT:  Good morning.

16             MR. ROY:  Michael Roy for the Oglala Sioux Tribe.

17             THE COURT:  Good morning.

18             To other plaintiffs or intervenors, other

19   plaintiffs on the phone, I heard some names but if you can

20   tell me who you are representing, that would be helpful.

21             MR. AFRAN:  Your Honor, Bruce Afran. I'm

22   representing what will be called the Jumping Eagle

23   Intervenors, the individual plaintiff.

24             THE COURT:  Okay.  Good morning.

25             MR. AFRAN:  Good morning.

1          MS. NAGLE:  Good morning, Your Honor.  Mary

2     Kathryn Nagle from Pipestem law.  I represent the amicus

3     party, National Indigenous Resource Center, among others.

4          THE COURT:  Good morning.

5          MS. BAKER:  This is Jennifer Baker and Jeffrey

6     Rasmussen, representing the Yankton Sioux Tribe.

7          THE COURT:  Good morning to you.

8          MS. BAKER:  Good morning.

9          THE COURT:  Okay.  Defense?

10         MR. MARINELLI:  Good morning, Your Honor.  Matt

11    Marinelli for the federal defendants.  With me at counsel

12    table is Ben Schifman, Erica Zilioli also from Department

13    of Justice and Milton Boyd from the Army Corps of

14    Engineers.

15         THE COURT:  Good morning to you folks.

16         MR. DEBOLD:  Good morning, Your Honor.  On behalf

17    of Dakota Access, David Debold.  Also with me at counsel

18    table are Bill Scherman, Rajiv Mohan, and on the phone is

19    Bill Comer.

20         THE COURT:  Good morning to you.

21         There are a few issues I want to talk about this

22    morning which mainly relate to how we're going to proceed

23    from here.  The first issue that I did raise in the opinion

24    relates to measures that plaintiffs have raised that should

25    occur during remand.  And as my opinion noted, defense

1    didn't discuss those as specifically as I would have liked

2    in the briefing.  So I would like to have them have an

3    opportunity to brief that.  But I would like to move

4    forward on that fairly quickly.  And I don't expect lengthy

5    briefing at all on this.

6           So Mr. Marinelli, how quickly can you respond to

7    plaintiffs' demands?

8           MR. MARINELLI:  Your Honor, our proposal is that

9    the United States and Dakota Access each get a chance to

10   file briefs by November 29.  I say -- I'm sorry, November

11   8th.  Sorry.  I was reading my date for the plaintiffs.  I

12   apologize.  So, by November 8th for the defendants.  I see

13   he say that date because we want to have an opportunities

14   to coordinate fully with both PHMSA and the Court.

15          THE COURT:  And the plaintiffs respond--

16          MR. MARINELLI:  By November 29th or earlier if

17   they choose.  Our proposal there would be that Standing

18   Rock and Cheyenne River, again, make the effort to file a

19   combined brief of no more than 15 pages.  And the other

20   plaintiffs attempt to coordinate with Cheyenne River and

21   Standing Rock.  If that fails, have the ability -- or if

22   they feel a need to say something else, have the ability to

23   file an additional five page brief.

24          THE COURT:  Okay.

25          Mr. Hasselman, your response to that proposal?

1          MR. HASSELMAN:  Thank you, Your Honor.

2          As we always try to do, we endeavor to reach an

3   agreement on a schedule so we wouldn't drag you into it.

4   We were not able to do that here.  Our position is that,

5   since the oil is flowing, since there is a risk, we would

6   like to get this moving more quickly than that.  We put our

7   proposal in our August brief.  Our proposal was to the

8   government was they get a week to -- after this hearing, to

9   respond.  Then we take a week after that.  So, we weren't

10  able to reach an agreement on the dates.

11          As to the pages, we will always endeavor to file

12  a joint brief with Cheyenne River Tribe but we can't make

13  that firm commitment up front.  Both parties are sovereign

14  governments.  So what I would propose in the alternative is

15  Standing Rock and Cheyenne River would use as many pages as

16  were used by the government and Dakota Access in our

17  response brief.  So we're proposing one week to file a

18  brief and one week to reply.

19          THE COURT:  Thank you.

20          Mr. Debold, do you want to be heard?

21          MR. DEBOLD:  Yes, Your Honor.  We join in the

22  Corps' request to have until November 8th for some of the

23  same reasons.  We would like to make sure that any

24  conditions that we brief are not going to be in some way

25  duplicative of what PHMSA may already be planning to do.

1          I would also note that in their briefs the

2   plaintiffs had asked for three things, actually two things.

3   The second one has two parts.  The first was to have the

4   tribes involved in the emergency planning.  Frankly, that's

5   the most urgent of the things that they have asked for.

6   And as we've said in our brief, the company has no

7   objection to being involved, have the tribes involved in

8   that process.

9          And in fact, we'll lay this out in our brief,

10  we've already had communication between the company and

11  Elliott Ward who was the representative from Standing Rock

12  who was designated by the tribe as the right person to

13  contact.  And they're planning to have a meeting.

14  Mr. Ward asked for us to wait until after October 31st to

15  have that meeting because needs to coordinate with the new

16  leadership of the tribe.  So the short point there is we're

17  already in the process of getting the tribe involved in the

18  emergency planning and developing a new--

19          THE COURT:  But that meeting wouldn't delay the

20  briefing, though.

21          MR. DEBOLD:  No.  I'm saying that issue, we think

22  it is off the table already because we've already basically

23  acquiesced to the request informally.

24          The other things that the tribes are asking for

25  are an audit process.  According to the condition that

```
 1   PHMSA proposed that they think the Court should propose,

 2   that audit would take place and be required by April 1.

 3   The reporting requirements that they're asking for, again

 4   recommended by PHMSA, PHMSA recommended that the reporting

 5   take place by February 1st, I believe.  So, having us brief

 6   this in November gives the Court plenty of time to decide

 7   whether or not to impose the conditions, at least as they

 8   were proposed by PHMSA because of the timing that goes with

 9   those proposed conditions.  So that's part of reason why we

10   suggest that we stick with the schedule that the Corps

11   proposed.

12             THE COURT:  Okay.

13             Mr. Hasselman, do you want to respond to that?

14             MR. HASSELMAN:  Sure, briefly.

15             On the audit, what we asked for was to have the

16   audit completed by the end of the year, not as the original

17   condition had imagined.  So we do think there is some

18   urgency getting that done.

19             As to the first issue, yes, folks at Dakota

20   Access sent an e-mail on Monday of this week after your

21   ruling, initiating a conversation that we had asked to

22   begin back in May.  I don't think that takes it off the

23   table for purposes of this Court's briefing.  We'll see if

24   things can be worked out.  But we're still going to be

25   asking you to impose some conditions around that.
```

1          THE COURT:  Okay.

2          Mr. Marinelli, do we really need three -- tell me

3    why you need three full weeks for this?  I think, as Mr.

4    Hasselman points out, this was in their brief which was

5    filed a few months ago.

6          MR. MARINELLI:  Your Honor, I spoke with PHMSA

7    yesterday, I will speak to them today.  I've spoken with

8    the Corps about this Court's order on the subject.  My

9    understanding is that the availability of PHMSA program

10   people is going to push, is going to make it very hard for

11   me to coordinate with PHMSA by next week completely.  But I

12   see three weeks because, in my initial discussions with

13   both the Corps and PHMSA, that appeared to be the most

14   reasonable date to be able to effectively--

15         THE COURT:  It is not an unreasonable date.  But

16   I think given the fact that the issues were teed up early

17   enough, I'll give you two weeks.  I'll say November 1.

18   Again, write 10 pages, up to 10 pages for each, the

19   government and Dakota Access.

20         Mr. Hasselman, what do you want for, I'll give

21   you as much time as you want since you are the one pressing

22   the urgency.  Do you want two weeks from the first?  Do

23   you--

24         MR. HASSELMAN:  I think for docketing purpose, if

25   you put in a deadline of two weeks after the first and

1    we'll try to get it in sooner.

2              THE COURT:  Okay.  That sounds fine.

3              Does anyone else on the phone object to --

4              And what I will say is, again, I would prefer

5    combined briefs.  I understand Mr. Hasselman's point.  I

6    think that Standing Rock and Cheyenne River have certainly

7    collaborated throughout cooperatively.  But I'm not going

8    to require them to do so.  But I'll give, that your briefs

9    can be up to 15 pages each.  Any other brief by any other

10   party can be up to five pages.

11             So, Mr. Messineo, anything you want to add to

12   that?

13             MR. MESSINEO:  No, Your Honor.  Cheyenne River is

14   in agreement with Standing Rock on these issues.

15             THE COURT:  Thank you.

16             Anyone else on the phone that wants to be heard,

17   objecting to what I just proposed?

18             (No verbal response).

19             THE COURT:  All right.  Thank you.

20             So the next issue, and I know that the tribes

21   have to make tactical decisions about how to proceed in the

22   litigation.  But we have other counts that still exist,

23   namely the RFRA claim and the National Historic

24   Preservation Act claim.

25             In my preliminary injunction rulings, I have

1    ruled in part on a lack of likelihood of success on the

2    merits.  Now, I don't know whether, from a tactical or

3    appellate position, you are willing to simply -- we could

4    have cross summary judgment briefs that simply rely on the

5    papers that were already filed.  Obviously, I welcome for

6    you to produce new evidence and arguments that are going to

7    change my mind.  I thought the issues were well briefed.

8    And I certainly gave it plenty of thought the first time

9    around.  I don't know if you are going to succeed or not on

10   the merits of those.

11            But we have a few options.  One is we can wait

12   until the remand is complete and then you can brief, if

13   there is another EA after the remand or if they don't

14   change their mind on the remand, then you can brief that.

15   I'll address that.  And then we can hold the issues in

16   abeyance until then.

17            Second, we can go further with the other issues

18   either by full briefings or you can rely on what you all

19   have already briefed.  I would then just issue an opinion,

20   saying I adopt the reasoning that I had earlier.  Again,

21   that cleans it up for appellate purposes if that is what

22   you want.  Again, you have a lot of ways you can go with

23   this.  I want to accommodate everybody and be as efficient

24   as possible.

25            But why don't you give me your position, Mr.

1    Hasselman.

2           MR. HASSELMAN:  We appreciate the opportunity to

3    talk about that.  I think from my client's perspective, we

4    would want to focus on the remand.  So the option that you

5    first articulated is let's hold off until that process is

6    complete, there may be another round of amended complaints

7    and briefing, and we'll wrap it all up at that time.

8           THE COURT:  So in other words, aside from the

9    remedial steps during remand that you are briefing now, the

10   remainder of the case will be held in abeyance until after

11   the April decision on the remand.

12          MR. HASSELMAN:  I think that's right, with some

13   exceptions that might be characterized as cleaning up the

14   docket.  One thing that we are considering is taking the

15   Court of Appeals' invitation to return to you with a

16   request to vacate the preliminary injunction order as moot.

17   So, you might see that while the remand is underway and

18   some other things with respect to the protected materials.

19   But substantively I think we're talking about post remand.

20          THE COURT:  Okay.  Thank you.

21          Mr. Messineo, do you want anything different from

22   your perspective?

23          MR. MESSINEO:  No, Your Honor.  Cheyenne River

24   Sioux and Mr. Vance are perfectly satisfied with holding

25   off on briefing until the remand is finished.

1               THE COURT:  All right.

2               Any other plaintiffs on the phone who disagree?

3               MS. BAKER:  Your Honor, this is Jennifer Baker

4      for the Yankton Sioux Tribe.

5               The Yankton Sioux Tribe is looking at filing a

6      motion for partial summary judgment on issues that are

7      separate from what has already been briefed to this Court

8      and what the remand is focusing on.  The tribe takes the

9      position that the oil is still flowing, so the potential

10     for harm is still very much there.  And the tribe is

11     entitled to basically protect its interest through a motion

12     for partial summary judgment without needing to wait or

13     delay.

14              There is no rule or requirement that the tribe

15     should need to wait until after the remand is processed and

16     as a matter of due process should be able to move forward

17     with its motion.

18              THE COURT:  On which claim?

19              MS. BAKER:  One is a treaty-related claim.  But

20     it is different from the claim made by Standing Rock.  The

21     other claim is on segmentation under NEPA.

22              THE COURT:  All right.  I can't prohibit you, I

23     suppose I could, but I won't prohibit you from filing a

24     separate summary judgment if there is claim that is

25     different from what has been raised by the other

```
1  complaints.

2           So I won't give you a deadline for that because

3  the case will otherwise be held in abeyance until we come

4  back after remand.  But if you want to file something, you

5  may I do so.

6           Mr. Roy, I'm sorry, I didn't mean to ignore you.

7  I'm trying to keep all the players straight.

8           MR. ROY:  Very well, Your Honor.  The Oglala

9  Sioux Tribe has raised some claims that are different from

10 the NEPA claim.  For example, there is a statute, the Mni

11 Wiconi Act, that creates a federal water project for the

12 tribe, that is in trust for the tribe.  It draws water from

13 the Missouri River, would be impacted if there was spill.

14 And we've certainly informed our client of which claims we

15 feel are different than the NEPA claim that has been

16 adjudicated.  And that could go forward if the client

17 wanted us to.  Or we've identified the other option that we

18 wait until the remand.  We don't have any client

19 instruction yet.  So we've endeavored in the past week to

20 get that.  But that's where we stand right now.

21           THE COURT:  So you are sort of in the same boat

22 as Ms. Baker.

23           MR. ROY:  They sound like they're in the planning

24 process and they're going to do it.  I'm not saying that

25 we're going to do it.  I'm saying that we're still
```

1   identifying.

2           THE COURT:  I'm happy to give you the same

3   response that I gave her.

4           MR. ROY:  Thank you.

5           THE COURT:  Thank you.

6           All right.  Mr. Marinelli --

7           MR. AFRAN:  Your Honor, Bruce Afran for the

8   individual intervenor plaintiff.

9           I was instructed to review the issue of whether

10  there is a scientific or engineering basis for injunctive

11  relief on the flow of oil beyond what has been raised thus

12  far.

13          I frankly don't know if my client will produce a

14  report along those lines.  They've had some preliminary

15  work on it.  I can't say they're going to do it.  But I

16  wanted to give notice that that is something they're

17  considering at some point.

18          THE COURT:  Okay.  Thank you very much.

19          Anybody else on the phone?

20          Mr. Marinelli?

21          MR. MARINELLI:  Thank you, Your Honor.  First, I

22  would respectfully return to the page limits on the--

23          THE COURT:  Yes.

24          MR. MARINELLI:  I think you gave the defense side

25  10 pages and the plaintiffs side 15 pages in reply.

1          THE COURT:  Yes, because the point is that they

2   are responding to two times 10.  In other words, yours plus

3   Dakota Access'.

4          MR. MARINELLI:  Okay.

5          So in that case, I would like to state our

6   general agreement with what Standing Rock and Cheyenne

7   River stated, that the case should largely be held in

8   abeyance until after remand.

9          I would like to flag a few additional issues.

10  One, the United States has four outstanding answers that

11  are due: Our answers to Standing Rock's amended complaint,

12  Cheyenne River's amended complaint, Mr. Vance's complaint

13  and the individual plaintiffs complaint.  So I would ask

14  that those be included in the matters that are held in

15  abeyance until after remand.

16          Related to that, we believe as the first

17  principle that all parties should have the opportunity to

18  amend their complaints after remand.  So we would rather

19  not answer the current complaints, we are expecting there

20  is a good chance that many parties will amend their

21  complaints.  Okay.

22          Let me ask Mr. Hasselman, any objection to

23  holding that in abeyance as well?

24          MR. HASSELMAN:  No.

25          THE COURT:  Okay.  Thank you.

1          MR. MARINELLI:  If I could also address the issue

2     of summary judgment briefing.

3          THE COURT:  You mean by the other parties who

4     mentioned it, other plaintiffs?

5          MR. MARINELLI:  Yes.  We do not object to Yankton

6     being able to file a Motion for Summary Judgment.  But we

7     believe that all parties should essentially just get one

8     more bite at the apple and that they should bring all their

9     claims going forward in a single summary judgment motion.

10          THE COURT:  But the parties are disparate.  You

11     mean they're disparate parties, so do you mean while -- in

12     the same timeframe?

13          MR. MARINELLI:  Not necessarily but that each

14     party get one more bite at the apple, not that Yankton

15     would have one summary judgment motion now and get to bring

16     a summary judgment motion on a different set of claims

17     later.  We would apply that to the Oglala Sioux Tribe as

18     well.

19          THE COURT:  Let me hear, Ms. Baker, your position

20     on that.

21

22          MS. BAKER:  Your Honor, there is no requirement

23     or no limitation by law on the number of summary judgment

24     motions.  If we're going to have an opportunity for

25     amending our complaint after remand, it may be that a

1   summary judgment motion would then become appropriate based

2   on those claims, separate from what we're looking at

3   bringing right now.  So we would ask that that restriction

4   not be placed on the tribe, again, as a matter of due

5   process.

6          THE COURT:  It is really a judicial efficiency

7   question.  I agree that there is no requirement that only

8   one summary judgment motion be brought.  But it is

9   difficult for the defense and for me if these are brought

10  in piecemeal and then rebrought after amendment.

11         What I'll say is this, because this all remains

12  speculative, that if any party wishes to file a summary

13  judgment motion before the remand is complete, that party

14  will first file a notice with the Court.  This would just

15  be, I'll just say a very short notice explaining the basis

16  and proposed timing because that way I can decide how I

17  want to proceed with it.  So in other words, you can't file

18  a Motion for Summary Judgment without my leave.  And after

19  you provide notice, if, in the event -- and this relates to

20  all parties, Mr. Roy and Mr. Afran, too.  That you will

21  file a notice with me and I'll permit whether I will permit

22  the filing and timing.  That's the easiest way to proceed.

23         MR. MARINELLI:  One final issue, Your Honor.  We

24  think it advisable to set a status conference after remand.

25         THE COURT:  I'm going to have periodic status

1    reports, status reports every 60 days about how things are

2    proceeding.  So we'll start, I think what I'll start is

3    December 1.  And then February 1,  April 1.  Then I'm happy

4    to set, I agree we'll have a status after remand.  But we

5    don't have a date when that is.  So I would hope that the

6    April 1st status report will let me know more likely

7    timetable.  Then we can set a status conference thereafter.

8    Does that make sense?

9              MR. MARINELLI:  Yes.

10             THE COURT:  So I guess, I'm open to -- this will

11   be a status report by the defense -- by the government.

12   And if any other side wants to file its own status, that's

13   fine.  But I'm mainly interested in hearing how the remand

14   is proceeding.  Okay?

15             MR. MARINELLI:  Thank you, Your Honor.

16             THE COURT:  Mr. Debold, anything you want to

17   raise?

18             MR. DEBOLD:  No, nothing further, Your Honor.

19             THE COURT:  Okay.

20             Mr. Hasselman, anything else that we have not

21   covered today?

22             MR. HASSELMAN:  No, thank you.

23             THE COURT:  Mr. Messineo?

24             MR. MESSINEO:  No, Your Honor, thank you.

25             THE COURT:  Mr. Roy?

1        MR. ROY:  No, Your Honor, thank you.

2        THE COURT:  Anybody else on the phone want to be

3   heard?

4        (No verbal response)

5        THE COURT:  Thank you all very much.  I'll issue

6   a minute order that reflects this proposed schedule.  And

7   we'll be in touch.  Thank you.

8        (Whereupon, at 12:02 p.m., the hearing

9   concluded.)

10

11

12

13              CERTIFICATE OF REPORTER

14        I, Lisa Walker Griffith, certify that the

15   foregoing is a correct transcript from the record of

16   proceedings in the above-entitled matter.

17

21   _____     _____
     Lisa Walker Griffith, RPR                      Date

22

23

24

25