IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>        Plaintiff,<br><br>  and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>        Plaintiff-Intervenor,<br>  v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>        Defendant-Cross<br>        Defendant,<br><br>  and<br><br>DAKOTA ACCESS, LLC,<br><br>        Defendant-Intervenor-<br>        Cross Claimant. | Case No. 1:16-cv-1534-JEB<br>(and Consolidated Case Nos. 16-cv-1796<br>and 17-cv-267) |

**MOTION TO COMPLETE ADMINISTRATIVE RECORD**

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

## TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

BACKGROUND ..........................................................................................................................2

ARGUMENT ...............................................................................................................................4

I.       LEGAL STANDARD FOR MOTIONS TO COMPLETE THE RECORD .....................5

II.      THE REMAND RECORD IS INCOMPLETE IN KEY RESPECTS...............................7

        A.       Sources Cited in Remand Analysis and its Two Key Supporting
                Documents. ..........................................................................................................8

        B.       Documents Missing from the Original Administrative Record. ...........................10

        C.       Documents DAPL Had to Submit Under the Terms of the Easement...................13

        D.       Documents Related to the Independent Third Party Audit. ..................................14

        E.       Final Versions of Key Documents Only Provided in Draft. .................................15

CONCLUSION............................................................................................................................17

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                                    - i -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Citizens to Preserve Overton Park v. Volpe,*
    401 U.S. 402 (1971) ................................................................................................5

*City of Duluth v. Jewell,*
    968 F. Supp. 2d 281 (D.D.C. 2013) .......................................................................8

*Ethyl Corp. v. EPA,*
    541 F.2d 1 (D.C. Cir. 1976) (en banc) ...................................................................5

*Fund for Animals v. Williams,*
    391 F. Supp. 2d 191 (D.D.C. 2005) .......................................................................6

*Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) .................................................................................................5

*Nat. Res. Def. Council, Inc. v. Daley,*
    209 F.3d 747 (D.C. Cir. 2000) ...............................................................................6

*Nat. Res. Def. Council, Inc. v. Train,*
    519 F.2d 287 (D.C. Cir. 1975) ...............................................................................6

*Oceana, Inc. v. Ross,*
    290 F. Supp. 3d 73 (D.D.C. 2018) ..................................................................7, 10

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corp. of Eng'rs,*
    448 F. Supp. 2d 1 (D.D.C. 2006) ...........................................................................6

*Pinnacle Armor, Inc. v. United States,*
    923 F. Supp. 2d 1226 (E.D. Cal. 2013) .................................................................9

*Portland Audubon Soc'y v. Endangered Species Comm.,*
    984 F.2d 1534 (9th Cir. 1993) ...............................................................................6

*Thompson v. U.S. Dep't of Labor,*
    885 F.2d 551 (9th Cir. 1989) .................................................................................6

*Univ. of Col. Health at Memorial Hospital v. Burwell,*
    151 F. Supp. 3d 1 (D.D.C. 2015) .......................................................................6, 7

*Walter O. Boswell Mem'l Hosp. v. Heckler,*
    749 F.2d 788 (D.C. Cir. 1984) .............................................................................10

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)

- ii -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7310*

**Statutes**

5 U.S.C. § 706(2)(A)..................................................................................................................5

16 U.S.C. § 1855(f)(1)(B).........................................................................................................5

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

INTRODUCTION

Plaintiffs Standing Rock Sioux Tribe ("SRST"), Cheyenne River Sioux Tribe ("CRST"), Oglala Sioux Tribe, and Yankton Sioux Tribe (collectively, "Tribes") hereby submit this consolidated motion to compel production of a complete administrative record. The Tribes are disappointed that after more than a year of work to produce a deeply flawed remand decision, and several months more to produce an initial administrative record, the Corps has lodged a fragmented and incomplete record that fails to meet the requirements of the law and masks key information essential to this Court's review on remand. As documented further below, the record is deficient in at least five ways: a) it fails to include studies and technical documents cited to and relied on by the Corps in the Remand Analysis and its two key supporting documents; b) it excludes documents that were omitted from the original administrative record, even though the Tribes specifically asked for them; c) it excludes documents that the easement requires Dakota Access, LLC ("DAPL") to submit to the Corps which are pertinent to the risks posed at Lake Oahe; d) it excludes documents related to the independent third party audit carried out at the direction of this Court; and e) it includes drafts of documents, but not the final versions that may exist.

The Tribes identified these concerns about the scope of the record prior to the submission of the record, identifying numerous specific documents that should be included. The Corps never responded to the Tribes' concerns, and failed to include many of these documents in the record. Accordingly, the Tribes ask this Court to order the Corps to complete the record with the documents identified in this memorandum and accompanying proposed order.

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                    - 1 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

BACKGROUND

In June of 2017, this Court found that the Corps' National Environmental Policy Act ("NEPA") review for the Lake Oahe crossing of the pipeline was flawed in three "significant" respects. ECF 239. The three topics on which the Court found the Corps fell short were all issues within the special expertise of the Tribes: the input of its technical experts; the impact of an oil spill on the Tribes' Treaty rights; and the environmental justice implications of siting the pipeline at the edge of an Indian reservation. In a contemporaneous order, this Court remanded the challenged permits back to the Corps "for further analysis." ECF 238. The Court subsequently declined to vacate the permit during the remand process, but admonished the Corps not to treat the process as a "bureaucratic formality." ECF 284 ("the Court expects the Corps not to treat remand as an exercise in filling out the proper paperwork *post hoc*"). The Corps originally estimated that the remand process would be complete by April 2 of 2018. ECF 326. However, a two-page decision announcing the Corps' decision on remand was not issued until August 31, 2018 (ECF 362-1) ("Remand Decision"), and the Corps' analysis supporting that decision was not provided to the Tribes until mid-October. Once the remand was complete, all four Tribes filed amended complaints challenging the Remand Decision.

While the remand was underway, the availability of underlying technical documents and the scope of the future administrative record was a key concern of the Tribes. SRST filed a motion describing its many efforts to obtain key technical documents from the Corps so that it could participate meaningfully in the remand. ECF 336. The motion was accompanied by a declaration from one of SRST's technical experts explaining why it was critical for the Tribe to be able to see the technical basis for the Corps' worst-case discharge and other spill risk calculations. 2nd Declaration of Don Holmstrom (ECF 342-1). CRST also filed a motion to

compel meaningful consultation during the remand.  ECF 328.  One key issue in these motions

was the independent assessment ordered by this Court as an interim condition.  ECF 349-2

("Audit").  This Court denied those motions as moot in light of the completion of the remand

conditions, including the Audit, but observed that issues with respect to the remand were likely

to be litigated once the remand was complete.  ECF 352.

The Corps' two-page Remand Decision is supported by a lengthier analysis that provides

the technical basis for the Corps' conclusions ("Remand Analysis").  RAR 0003.[1]  In turn, the

Remand Analysis is supported by three key supporting documents:  the "Submission Review,"

(RAR 141) which responded to submissions from the Tribes; the "Downstream Receptor

Report," (RAR 2739) which looked at the impacts of spilled oil downstream from the pipeline

site; and the "Spill Model Report," which analyzed the risks and estimated the size of potential

oil spills.  RAR 8743.  For example, the Remand Analysis cites to the Downstream Receptor

Report no fewer than 92 times, and cites to the Spill Model Report 121 times.

Once the Tribes had the opportunity to review the Remand Analysis, concerns about the

scope of the record grew.  SRST initiated correspondence via counsel with the Corps regarding

its concerns about the future administrative record.  Declaration of Jan Hasselman, Ex. 1.  The

letter highlighted the importance of the key supporting documents listed above; asked for all

documents that DAPL is required to submit to the Corps under the terms of the easement, as well

as documents underlying the Audit; identified a number of documents missing from the original

administrative record; and asked for a number of additional key technical documents that the

Tribe had reason to believe existed and that were key to this Court's review of the Corps'

---

[1] Pursuant to L.R. 7(n), plaintiff Tribes and federal defendants have agreed to file an index including all citations to the administrative record on remand ("RAR") at the conclusion of this briefing.

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                                                  - 3 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

decisions on remand.  As has been typical throughout the history of this case, however, the Corps

ignored the Tribe's letter.  Instead, it notified the Court that it had served the administrative

record, which includes documents potentially deemed sensitive and subject to protective order,

on February 5, 2019.  ECF 398.  Because the record is incomplete in critical respects identified

in the SRST correspondence, this motion followed.

ARGUMENT

It is axiomatic that review of agency decisions under the Administrative Procedure Act

("APA") requires the "whole record" that was before the agency.  The complete administrative

record includes all material that the agency considered, either directly or *indirectly*.  Here, the

agency directly or indirectly considered and referenced a number of studies, memoranda, emails,

and reports when making its decision that it did not include in the administrative record.  It also

omitted relevant documents from the record that were surely before the Corps at the time it made

its decision, such as records DAPL is required to file under the terms of the easement.  It also

failed to include documents specifically identified by the Tribes that were never included in the

original administrative record filed in support of its initial, unlawful decision to grant the permits

and easement without an environmental impact statement ("EIS").

These documents bear directly on the validity of the agency action being challenged in

this case—the Corps' decision to affirm its original decision reversing the notice of intent to

prepare an EIS and concluding that the impacts of the Dakota Access Pipeline at Lake Oahe were

so "insignificant" that no EIS was necessary.  The record already shows that the Remand

Analysis is not a good faith and transparent analysis of the complex and highly contested issues

at the heart of this question.  It reveals that the Corps drafted the *conclusion* of its remand

analysis in February of 2018, before they had even received the Tribes' remand submissions.

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                             - 4 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

RAR 10203.  The draft memo states that the Corps "has identified no new information" that the agency had not already considered, and that "decisions made by the USACE were in accordance with the law and neither arbitrary nor capricious." *Id.*  Instead, the Remand Analysis is a legal brief designed for one purpose: to withstand judicial review by this Court.  The Corps has prepared the administrative record in the same spirit.  This Court should direct the Corps to complete the record as discussed further below.

I.      LEGAL STANDARD FOR MOTIONS TO COMPLETE THE RECORD

Review of the Remand Decision by this Court is guided by the APA, which requires a court to hold unlawful and set aside final agency action that is arbitrary, capricious, or otherwise not in accordance with law.  16 U.S.C. § 1855(f)(1)(B); 5 U.S.C. § 706(2)(A).  Agency action is unlawful if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency," or if the agency has not drawn "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted).  To make these determinations, courts are required to engage in a "thorough, probing, in-depth review" of agency action. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971).  That careful review is particularly important where the agency has engaged in an analysis of technical information:

> The close scrutiny of the evidence is intended to educate the court.  It must understand enough about the problem confronting the agency to comprehend the meaning of the evidence relied upon and the evidence discarded; the questions addressed by the agency and those bypassed; the choices open to the agency and those made. The more technical the case, the more intensive must be the court's effort to understand the evidence . . .

*Ethyl Corp. v. EPA*, 541 F.2d 1, 36 (D.C. Cir. 1976) (en banc).  Courts "do not hear cases

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                - 5 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

merely to rubber stamp agency actions." *Nat. Res. Def. Council, Inc. v. Daley*, 209 F.3d 747,756 (D.C. Cir. 2000).

To engage in the "in-depth review" required to determine whether the agency's decisions comply with these standards, the Court "shall review the whole record" that was actually before the agency. *Nat. Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975). "The 'whole record' includes everything that was before the agency pertaining to the merits of its decision." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citation omitted) ("An incomplete record must be viewed as a 'fictional account of the actual decision-making process.' . . . If the record is not complete, then the requirement that the agency decision be supported by 'the record' becomes almost meaningless.") (citation omitted). "This Court has interpreted the 'whole record' to include 'all documents and materials that the agency 'directly or indirectly considered' . . . [and nothing] more nor less.'" *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corp. of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006). (alterations in original) (citations omitted). The agency "may not skew the record in its favor by excluding pertinent but unfavorable information." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005*); see also Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (noting whole record "includes evidence contrary to the agency's position") (citation omitted).

There is a "presumption of regularity" that an agency properly designated the administrative record in the first instance. *Pac. Shores Subdivision*, 448 F. Supp. 2d at 4. Even so, a plaintiff can overcome this presumption by identifying "reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Id*. at 6; *accord Univ. of Col. Health at Memorial Hospital v. Burwell*, 151 F. Supp. 3d

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                - 6 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

1, 13 (D.D.C. 2015).  This standard for when a party seeks "completion" of the record with

documents that were before the agency directly or indirectly is different than the standard for

when a record should be "supplemented" with extra-record evidence that was never before the

agency in the first place.[2]  Courts in this Circuit sometimes use the same language to describe

both scenarios, leading to "'some confusion' about the proper test to apply." *Burwell*, 151 F.

Supp. 3d at 13.  Courts should distinguish between "completion" of the record—in which there is

no obligation to demonstrate "unusual circumstances"—and "supplementation" of the record

with extra-record evidence, in which there is.  *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 79

(D.D.C. 2018).  This Court already has recognized this distinction, for example, specifically

differentiating at the last status conference the process for inclusion of "extra-record" evidence

from the process for determining whether the record is complete.  Transcript of Status

Conference, Dec. 12, 2018, Hasselman Decl., Ex. 2 at 6-7.   As discussed below, the Tribes more

than meet the standard of articulating "reasonable, non-speculative grounds" to show that

relevant documents exist that were considered by the Corps but not included in the record.[3]

II.     THE REMAND RECORD IS INCOMPLETE IN KEY RESPECTS

The Corps failed to compile an administrative record that included all evidence that it

directly or indirectly considered when it made its remand decision.  Instead, it produced a

---

[2] A party seeking to supplement the record must show one of three circumstances: (1) that "the agency deliberately or negligently excluded documents that may have been adverse to its decision: (2) that "background information [is] needed to determine whether the agency considered all the relevant factors," or (3) that "the agency failed to explain administrative action so as to frustrate judicial review."  *Univ. of Colo. Health at Memorial Hosp.*, 151 F. Supp. 3d at 13.

[3] However, if Court finds that the Corps never considered, directly or indirectly, any evidence listed below, the Tribes reserve the right to argue subsequently that the record should be "supplemented" with the applicable material.

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                    - 7 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

fragmented and incomplete record designed to defend a flawed agency action, one that omits key documents important to the Tribes' legal challenge.

    A.    <u>Sources Cited in Remand Analysis and its Two Key Supporting Documents.</u>

The Remand Analysis cites to and relies on a number of technical supporting documents that are not in the record.  For example, it cites the "EFRD Inspection and Test Plans," and a "DAPL Pipeline Surge Analysis Report" in explaining how risks of spills is reduced.  RAR 122.  The report cites an ETP "Close Interval Survey" to "obtain cathodic protection potential readings," that DAPL claimed showed that its systems are operating in accordance with regulations.  RAR 128.  These documents are not in the record.  There is no way of determining whether they support the conclusions that are claimed in the Remand Analysis or whether they reveal key issues that the Corps failed to grapple with in its final decision.

The Remand Analysis further cites to and relies on a "report" on pipeline spills that it compiled from Pipeline and Hazardous Materials Safety Administration ("PHMSA") data.  *Id*. at 11-12.  However, neither the report nor any of its underlying data is included in the record.  Instead, the Remand Analysis provides a website where, presumably, one could generate a new report.  Such a report would surely be objected to as "extra-record" if the Tribes were to submit it.   In fact, the Remand Analysis cites to websites containing raw data in several places, but doesn't include that data in the record.  *See, e.g.,* RAR 70-71.  It is well established that it is insufficient to merely cite to a website in order to include a document in the record.  *City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 293-94 (D.D.C. 2013).  The Corps must include the reports generated from these websites, and the data collected from them, in the record.

The Remand Analysis also block quotes portions of the original environmental assessment that, in turn, cite to studies or other technical reports that are not included in this

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)    - 8 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

record or the original one.  Remand Analysis, at 8.  As one example, the Remand Analysis cites "O'Reilly et al. 2001" in its response to a comment from the Earthfax report that the Court directed the Corps to consider on remand.  *Id.* 8, 110.  However, "O'Reilly et al 2001" is in neither the Corps' original record nor the record on remand.  Whether or not this and similar studies support the statements made in the Remand Analysis is anyone's guess.  Technical citations from the EA cited in the Remand Analysis should also be included if they are not already in the record.

This same problem infects the two key supporting technical documents that support the Remand Decision.  The Downstream Receptor Report contains a list of references that runs for twelve single-spaced pages, none of which are included in the record.  For example, the report cites numerous studies about how vegetation, fish, and other species react to spilled crude oil. *See, e.g.,* RAR 2756; 2765-68; 2790.  This report's findings, and even the cited studies themselves, are explicitly incorporated into the Remand Analysis.  *See, e.g.,* RAR 42-43; 89-90. The same is true with the "Spill Model Report," which is cited over a hundred times in the Remand Analysis.  For example, the Spill Model Report cites numerous studies that purportedly validate the model used in the report.  RAR 8797.  It reaches several conclusions about spilled oil's effect on wildlife by citing various technical studies.  RAR 8818.  None of this underlying information is included in the record.

A document "that is cited in the agency's actual decision document indicates 'consideration of the contents of the [] document' by the decision-maker." *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1241-42 (E.D. Cal. 2013).  While the Tribes do not seek every reference cited anywhere in the administrative record, references in the Remand Analysis

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                    - 9 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

and its two key supporting documents—which effectively constitute the Corps' NEPA analysis

on remand—must be included.  In a closely similar situation, this Court recently held:

> If a document was substantively cited [in a NEPA document], the Service clearly
> considered that document. After all, to know what the document said the Service had to
> at least read it, and by citing the document to justify a substantive factual proposition, the
> Service is purporting to have relied on the document and its contents. As such, these
> documents were before the Service and belong in the administrative record.

*Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 79 (D.D.C., 2018).  The Court further ordered all

documents included as references in the EIS to be added to the record, even where they were

never specifically cited to justify any factual finding.  *Id*. at 81 ("the Court concludes that the

inclusion of the documents in a reference list is a concrete, non-speculative basis upon which to

conclude that the Service considered them, directly or indirectly, in developing the EIS"); *see*

*also Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court

is to review an agency's action fairly, it should have before it neither more nor less information

than did the agency when it made its decision.")

This Court should adhere to this standard and order the Corps to complete the record with

all sources cited in the Remand Analysis as well as the Downstream Receptor Report and Spill

Model Report.  This includes the lists of references contained in the latter two documents, as

well as all information obtained or reports generated from websites.

B.    <u>Documents Missing from the Original Administrative Record.</u>

When SRST filed its motion for summary judgment in February of 2017, the Corps had

not yet filed an administrative record.  ECF 117.  Instead, the record was filed while summary

judgment briefing was already well underway.  ECF 181.  Accordingly, there was never an

opportunity for any plaintiff Tribe to challenge the scope or adequacy of the original

administrative record during the initial round of summary judgment motions.  Once the remand

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                             - 10 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

began, the Tribes' technical teams and outside experts were able to give more scrutiny to that

record, and identified several critical documents that were missing from it.  For example, the

Tribes' review of the original record was stymied by the absence of any "spill model" underlying

the Corps' conclusions.  2nd Holmstrom Decl. ¶¶ 12-13 (ECF 343-1) (explaining importance of

spill model).  However, the current record indicates that such a spill model existed at the time of

the original decision.  *See, e.g.,* RAR 12257 ("Previously, Dakota Access has conducted spill

modeling utilizing a software package called OILMAPLand.");  RAR 6565 ("You have the

*original spill model* with a worst case discharge of more than 12,000 barrels.").  The record

contained a copy of a spill "discussion" (USACE_DAPL 74092), but that document is not

actually a spill model and contains none of the information needed in one.  *See* 2nd Holmstrom

Decl. ¶ 12-13 (ECF 342-1).  And even as to that document, there appear to be different drafts and

versions that were before the Corps that were never included in the record.  USACE_DAPL

72183-72185 (referring to different spill reports with different titles).  Obtaining all of the

different original spill models and their drafts, and assessing how they deviated over time, is

important to the Tribes' challenge of the Remand Decision.

Furthermore, a key document in the original administrative record was a lengthy review

compiling and responding to internal technical comments.  USACE_DAPL 72161.  That

document in turn references several critical comments that bear directly on the adequacy of the

Corps' analysis.  For instance, the document describes a comment from a Corps staff person that

the data in the spill model "does not appear to correlate with Mid-Missouri River SACP [Subarea

Contingency Plan]," noting that the SACP uses a "conservative estimate of 50,800 barrels for a

thirty inch crude oil pipeline—over four times as large as DAPL's estimate."  *Id*. 72184.  But the

SACP is not in the record.  Further, DAPL sent the Corps a document in response to this

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                    - 11 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

comment, and another one containing a "white paper" on spill prevention and control. *Id*. The record did not include any of these attachments either.

There are other examples. USACE_DAPL 72253 mentions an email from a DAPL contractor that "provided the rationale for the calculations behind" the WCD volumes—a critical issue in this case. No such email is in the record. There are various references to a Bakken "crude composition" analysis that the Corps never produced. RAR 8403; *see also* FRP at 37. The record refers to "coordination" with PHMSA, EPA, Coast Guard, and other agencies which have discussed "high profile spills" near DAPL. USACE_DAPL 72250. But there is no evidence of any such coordination or communication in the record.

In terms of completing the record, these are not close calls. The SRST letter identified specific documents, by date, author, and record citation, that were directly relevant to the Corps' decision, and that plainly relate to whether the Corps' original decision was arbitrary and capricious. Had the Tribes had the opportunity to move to complete the record with these documents earlier in the litigation, there would be no question that they had satisfied the standard of "reasonable, non-speculative grounds" that the documents belonged in the record. There is no basis to exclude them now either. The adequacy of the Remand Decision turns on how well the Corps grapples with critical issues raised by experts, who have identified major flaws in the Corps risk analysis and worst case discharge estimates, among other things. The limited earlier administrative record materials sought in this motion will help the Tribes explain why the Corps' conclusions on remand ignore critical information and fail to address contrary conclusions. The Tribes provide a specific list of documents omitted from the original administrative record as Appendix A to this motion.

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7310*

C.      Documents DAPL Had to Submit Under the Terms of the Easement

Under the terms of the Corps' Mineral Leasing Act easement to DAPL, there is an extensive body of technical information that DAPL is required to submit to the Corps related to the integrity and ongoing safe operation of the pipeline at Lake Oahe.  ECF 96-1 ("Easement").  For example, DAPL must submit its "operations and maintenance manual."  *Id*. at 36 (Condition 9); *see also* RAR 4500.  However, no DAPL-specific O&M manual is provided in the record.  The same is true of the requirement to submit a "Risk Assessment (Integrity Management Plan)."  Easement at 36.  Instead, the Corps has provided a generic Sunoco integrity management plan that predates and does not include a word about DAPL.  RAR 4743.[4]   The Easement further requires DAPL to submit "as built drawings" for the Lake Oahe crossing to the Corps.[5]  Easement at 37 (Condition 11).  Either DAPL is out of compliance with these easement conditions, or the Corps has failed to provide materials that have been provided to it that are salient to its decision on remand.  The Court should direct the Corps to provide the compliant versions of these documents, if they exist.

The easement further directs DAPL to submit reports of any "root cause failure analyses" arising out of hydrostatic testing.  *Id*. (Condition 16).  It must provide the Corps with "inspection reports" from the mandatory cathodic protection system, *id*. at 39 (Condition 26), as well as provide an annual report with any deviations from limits imposed to reduce corrosion.  *Id*. at 40

---

[4] In fact, the independent Audit specifically found that there was no evidence that DAPL had complied with the obligation that these two easement requirements were met.  Audit, at 7-8.

[5] The record contains some documents identified as "as built" drawings at Lake Oahe but they are completely redacted as "critical infrastructure" data.  RAR 4894.  This Court has already rejected the claim that "critical infrastructure" provides a sufficient basis to withhold key documents related to this project without suitable identification by the appropriate agency.  ECF 206 at 5 (information needs to be labeled by Department of Homeland Security).  Unredacted versions of these documents can be provided to the Tribes pursuant to the Protective Order.

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7740*

(Condition 32).   No such documents appear in the record.   This information must have been

before the Corps, since it is required under the terms of the easement and the Audit did not find

any noncompliance as to these standards.   Nor can there be any dispute that these documents are

centrally relevant to the issues before the Corps on remand, as they bears on the integrity and

safe operation of the pipeline.   It bears noting that the Remand Analysis relies upon the easement

conditions in some of its responses to comments by the Tribes' experts that the Corps was

required to address in the remand.   *See, e.g.,* Remand Analysis, at 117, 122.   A list of specific

documents related to the easement conditions that should be included in the Record is provided

in Appendix B below.

> D.      Documents Related to the Independent Third Party Audit.

On December 4, 2017, this Court issued a decision imposing "interim conditions" on the

operation of the pipeline during the time that the Corps was conducting the remand.   ECF 303

(Order) and 304 (Mem. Op.).   The Court cited recent crude oil pipeline spills, highlighting how

they can "wreak havoc on nearby communities and ecosystems."   *Id.*   One such interim condition

was the completion of a third-party compliance audit, which had been previously recommended

by PHMSA.   The process leading to the selection of the auditor and the conduct of the audit was

deeply flawed, as described in SRST's Motion for Clarification of Remand Conditions (ECF

336), which was denied as moot shortly after the audit was filed with this Court.   ECF 352.

Despite the flaws in both the selection of the auditor and the conduct of the audit, the audit

contains some revealing information that is salient to the Corps' decision on remand.

Specifically, the Audit makes repeated references to technical documents that were never

provided to the Tribes nor included in the record.   For example, the audit makes reference to a

"pipeline integrity management plan" that was being revised at that time, with an estimated

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                              - 14 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

completion date of April 2018.  Audit, at 20.  Similarly, a March 22, 2018 email from DAPL

indicated that "[a]t the time a newly-updated-integrated-combined O&M Manual/Plan becomes

available, DAPL will submit same to the USACE for review and comment, prior to submittal to

PHMSA, consistent with the easement conditions."  RAR 4500.  However, the administrative

record does not contain any integrity management plan specific to the pipeline.  It contains only

a generic plan, dated June 2015, applicable to all Sunoco-operated pipelines, but no plan specific

to the pipeline itself—despite an explicit statement in the audit and other statements in the record

that one would be prepared and provided to the Corps.

The audit also discussed an incident where drilling mud breached the containment

facilities and clean-up was in progress.  Audit at 4.  It refers to a "three-volume report, including

Daily Field Reports" associated with drilling.  *Id.*  It also refers to "Environmental Inspection

Reports" which describe this spill incident.  *Id.* at 5.  The Audit further refers to welding

inspection reports (*id.* at 9) and the results of hydrostatic testing (*id.* at 10).

None of this information, which bears on the integrity of the pipeline and the safety

processes used to assess it, was included in the administrative record.  The materials related to

the spill event documented in the Audit are of particular concern, as the Corps' failure to account

for the proponent's abysmal record of environmental compliance and well-established history of

accidents is a key component of the Tribes' claims on remand.  Review of this documentation is

necessary to determine whether the Corps' conclusions in the Remand Analysis are supported.

A list of all the cited documents sought by the Tribes is included in Appendix C below.

E.     Final Versions of Key Documents Only Provided in Draft.

The record contains drafts of what appear to be critical documents, but not final versions.

The Tribes are unable to determine whether the documents were even finalized at all, or whether

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                          - 15 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

there are documents that should have been included in the record but were not.  Specifically, in

the remand package prepared by the Corps, several versions of a draft "technical analysis" of the

three remand issues appear.  RAR 990; RAR 2678; RAR 10203.  Accompanying this analysis

are various appendices, for example, a table laying out draft responses to comments.  RAR 2868.

Appendices A and B to the analysis constitute a series of technical figures and maps, again

labelled as draft.  RAR 2895-2909.  A separate Appendix C contains additional responses to

comments labeled as drafts.  RAR 2910.  Final version of these documents do not appear in the

administrative record and should be produced if they exist.

Additionally, the record contains an unredacted version of the Facility Response Plan

("FRP"), dated October 2017.  RAR 16716.  However, SRST has obtained from PHMSA,

through a Freedom of Information Act request, a more up-to-date version of the FRP, dated April

2018, that is materially different and contains information that appears to significantly

undermine the Corps' conclusions on remand.  Submission of updated and final FRPs to the

Corps is a specific requirement of the easement.  ECF 96-1 at 36 (Conditions 8 and 10).  The

exclusion from the remand record of this final FRP with information contrary to the Corps'

conclusions is deeply problematic.  Separately, the record refers to a final "risk analysis" report,

dated May 2016 that is not provided, while an earlier version with a different report number is

included.  RAR 9190.  The Tribes request that the above described documents be included in a

revised record.[6]

---

[6] In addition to the items described above, it appears that a few documents reflecting
correspondence with the Yankton Sioux Tribe should be in the record are not there.  For
example, a letter dated May 2, 2018 from Col. John L. Hudson to Yankton Sioux Tribal
Chairman Robert Flying Hawk does not appear to be in the record anywhere and should be
added.  Appendix D contains these missing documents.

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                              - 16 -

CONCLUSION

For the foregoing reasons, the Tribes respectfully request that their motion to complete the record is GRANTED.  A proposed order is attached herewith.


Respectfully submitted this 27th day of February, 2019.


*/s/ Jan E. Hasselman*
Jan E. Hasselman, WSBA # 29107
(*Admitted Pro Hac Vice*)
Stephanie Tsosie, WSBA # 49840
(*Admitted Pro Hac Vice*)
Patti A. Goldman, DCBA # 398565
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
Telephone: (206) 343-7340
jhasselman@earthjustice.org
stsosie@earthjustice.org
pgoldman@earthjustice.org
*Counsel for Standing Rock Sioux Tribe*

*/s/ Joseph V. Messineo*
Joseph V. Messineo
Fredericks Peebles & Morgan LLP
3610 North 163rd Plaza
Omaha, NE 68116
Telephone: (402) 333-4053
Facsimile: (402) 333-4761
jmessineo@ndnlaw.com
*Counsel for Cheyenne River Sioux Tribe and Steve Vance*


*/s/ Michael L. Roy*
Michael L. Roy (DC Bar No. 411841)
mroy@hobbsstraus.com
Jennifer P. Hughes (DC Bar No. 458321)
jhughes@hobbsstraus.com
Elliott A. Milhollin (DC Bar No. 474322)
emilhollin@hobbsstraus.com
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW, Suite 700
Washington, DC 20037
Telephone: (202) 822-8282
Facsimile: (202) 296-8834
*Counsel for Oglala Sioux Tribe*

*/s/ Jennifer S. Baker*
Jennifer S. Baker, *Pro Hac Vice*
Jeffrey S. Rasmussen, WA #21121
Fredericks Peebles & Morgan LLP
1900 Plaza Drive
Louisville, CO 80027
Telephone: (303) 673-9600
Facsimile (303) 673-9155
jbaker@ndnlaw.com
*Counsel for Yankton Sioux Tribe and Robert Flying Hawk*

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                              - 17 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2019, I electronically filed the foregoing MOTION

TO COMPLETE ADMINISTRATIVE RECORD with the Clerk of the Court using the CM/ECF

system, which will send notification of this filing to the attorneys of record and all registered

participants.


*/s/ Jan E. Hasselman*
Jan E. Hasselman

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                                      - 18 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

**APPENDIX A – DOCUMENTS MISSING FROM ORIGINAL ADMINISTRATIVE RECORD**

| DOCUMENT | SOURCE | COMMENTS |
|---|---|---|
| Original spill model(s) | RAR 6565; RAR 12257 ; 2916 | |
| Different drafts of spill model reports | USACE_DAPL 72183; 72185 | Attachment: DAPL- Lake_Oahe_Spill Model Report_2016-04-11.pdf; Attachment: DAPL_ND_Lake_Oahe_Crossing_ Spill_Model_Discussion_Rev-A.pdf. |
| Mid-Missouri River SACP | USACE_DAPL 72184 | |
| "Confidential White Paper discussing Federal Spill Prevention and Control Regulation of Oil Transmission Pipelines." | USACE_DAPL 72184 | Nov 12 2015 (Attachment: Oil_Spill_Planning_White_Paper_11-11-15.pdf) |
| Email dated 4-15-16 from Steve Rowe to the Corp that provided DAPL's rationale for the Lake Oahe worst case discharge (WCD) calculation | USACE_DAPL 72253 | |
| Bakken crude composition analysis | RAR 8403 | |
| Correspondence and records related to EPA, PHMSA and US Coast Guard concerning "lessons learned" from recent Bakken oil spills | USACE DAPL 72250-51 | |
| DAPL quantitative risk assessment | USACE_DAPL 74722; RAR 14969 | |
| Response to Harlon's Comments on Spill Emergency Response | USACE_DAPL 72184 | Attached Word document Nov 12 2015 (Attachment: Response to Open Harlon Comment ltems (6139320) _11 -11-15.docx |
| National Preparedness for Response Exercise Program (PREP) Training and Record Guide | USACE_DAPL 72263 | "The FRP has been updated to include the PREP training and record guide in attachment H." |

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

| Valve Site (LL3453E) drawing | USACE_DAPL 72164 | July 7, 2015 (Attachment: Valve_Site_and_Road_Typical_103957~MLV-ND-160-B_(3).pdf) |
|---|---|---|
| Bi-annual risk review and IMP updates | USACE DAPL 72185 | "DAPL will also make available the bi-annual risk review and IMP updates as appropriate." |
| Lake Oahe Boring Logs | RAR 2926 | The detailed logs that were used for the April 2015 Appendix B of the July 2016 EA |

| | |
|---|---|
| Ackerman, D.J. 1980. Ground-Water Resources of Morton County, North Dakota, North Dakota Geological Survey Bulletin 7Z - Part III, 51pp. | USACE_DAPL 71355 |
| Armstrong, C.A. 1978. Ground-Water Resources of Emmons County, North Dakota, North Dakota Geological Survey Bulletin 66-Part III, 43 pp. | USACE_DAPL 71355 |
| Charbeneau, R. J. 2003. Models for Design of Free-Product Recovery Systems for Petroleum Hydrocarbon Liquids. American Petroleum Institute, Publication 4729. Washington, D.C. August 2003. | USACE_DAPL 71355 |
| Charbeneau, R. J., R. T. Johns, L. W. Lake, and M. McAdams. 2000. Free-product recovery of petroleum liquid hydrocarbon liquids. Ground Water Monitoring and Remediation   20(3):147-158. | USACE_DAPL 71355 |
| Clayton, L.  1980.  Geologic Map of North Dakota: USGS, Scale 1:SOOK. | USACE_DAPL 71355 |
| Dickens, D. 2011. Behavior of Oil Spills in Ice and Implications for Arctic Spill Response. Arctic Technology Conference, Houston, Texas, February 7-9, 2011. | USACE_DAPL 71356 |
| GeoEngineers. 2014. Preliminary Geology and Geologic Hazards Evaluation, ETC Dakota Access Pipeline, North Dakota, South Dakota, Iowa, Illinois,  28 p. | USACE_DAPL 71356 |
| Kerr, J. M., H. R. Melton, S. J. McMillen, R. I. Magaw, and G. Naughton. 1999. Polyaromatic hydrocarbon content of crude oils around the world. In: SPE/EPS Exploration and Production Environmental Conference, SPE 52724 as cited in O'Reilly et al. 2001. | USACE_DAPL 71357 |
| Marathon Oil. 2010. Bakken Oil Storage Tank Emission Models. Presented by Paul Peacock, March 23, 2010. Internet website: https://www.ndoil.org/image/cache/Peacock_-_March_23_2010._ppt.pdf | USACE_DAPL 71357 |
| Muller, H. 1987. Hydrocarbons in the freshwater environment. A Literature Review.  Arch. Hydrobiol. Beih. Ergebn. Limnol 24:1-69. | USACE_DAPL 71357 |
| Neff, J. M. and J. W. Anderson. 1981. Response of Marine Animals to Petroleum and Specific Hydrocarbons. Applied Science Publishers, London. 177 pp. | USACE_DAPL 71358 |

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                     - 20 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

| | |
|---|---|
| North Dakota Department of Health. 2015. North Dakota 2014 Integrated Section 305(b) Water Quality Assessment Report and Section 303(d) List of Waters Needing Total Maximum Daily Loads. Z7_Publications/IntegratedReports/2014_North_Dakota_Integrated_ Report_Fina1_20150428.pdf. | USACE_DAPL 71358 |
| O'Reilly. 2001. [** Full citation not provided in the EA **] | USACE_DAPL 71270 |
| PHMSA dataset from 2002 to 2015 (PHMSA. 2016) [** Citation not provided in the EA **] | USACE_DAPL 71270 |
| Radbruch-Hall, D.H., R.B. Colton, W.E. Davies, I. Lucchitta, B.A. Skipp, and D.J. Varnes. 1982. Landslide Overview Map of the Conterminous United States, USGS Landslide Hazards Program. Available at: http://landslides.usgs.gov/hazards/nationalmap/. | USACE_DAPL 71359 |
| Turner, Mason and Company, 2014. The North Dakota Petroleum Council Study on Bakken Crude Properties. Prepared for the North Dakota Petroleum Council. | USACE_DAPL 71359 |
| U.S. Army Corps of Engineers. 2010a. Summary of Engineering Data - Missouri River Main Stem System. | USACE_DAPL 71359 |
| U.S. Army Corps of Engineers. 2010. Final Oahe Dam/Lake Oahe Master Plan: Missouri River, South Dakota and North Dakota. Design Memorandum MO-224.  Omaha District.  Omaha, Nebraska. | USACE_DAPL 71359 |
| U.S. Geological Survey. 2014a. North Dakota 2014 Seismic Hazard Map, USGS Earthquake Hazards Program. Available at: http://earthquake.usgs.gov/earthquakes/states/north_dakota/hazards.php . | USACE_DAPL 71362 |
| USGS. 2016b. National Water Information System data available on the World Wide Web (USGS Water Data for the Nation), accessed May 9, 2016 at http://nwis.waterdata.usgs.gov/nd/nwis/uv?cb_00060=on&format=g if_stats&site_no=0634250 O&period=3143&begin_date=2007-10-0l&end_date=2016-05-09. | USACE_DAPL 71362 |

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                              - 21 -

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

**APPENDIX B – DOCUMENTS DAPL HAD TO SUBMIT UNDER TERMS OF EASEMENT**

| | | |
|---|---|---|
| DAPL-specific Integrity Management Plan | Easement Condition 9.c; USACE DAPL 72185; PPIC Independent Assessment 6-7. | "PHMSA requires operating pipelines to conduct periodic O&M integrity risk inspections and analyses and then to prepare mitigative strategies as necessary. The findings of the testing and analysis, and any mitigation measures, are reported to PHMSA in an Integrity Management Plan (IMP)…. The operating pipeline is required to make the IMP available to PHMSA within one year of construction…DAPL agrees to a condition of approval in the Corps easement to make the IMP available to the USACE." |
| DAPL-specific Operation and Maintenance Manual | Easement Condition 9b, PPIC Independent Assessment pp. 6-7. | Record contains only a generic Sunoco version that is not DAPL-specific RAR004499. |
| "As built drawings" for Lake Oahe crossing. | Easement Condition 11; RAR 4894 (redacted drawings). | |
| "Root cause failure analyses" arising out of hydrostatic testing. | Easement Condition 16. | |
| "Inspection reports" from the mandatory cathodic protection system, | Easement Condition 26. | |
| Annual report with any deviations from limits imposed to reduce corrosion. | Easement Condition 32. | |

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7310*

**APPENDIX C – DOCUMENTS RELATED TO THE THIRD PARTY AUDIT**

| | | |
|---|---|---|
| Pipeline integrity management plan | Audit at 20 | |
| Three volume drilling analysis, including Daily Field Reports, and Environmental Inspections Reports. | Audit at 4 | |
| Welding Daily Inspection Reports | Audit at 9 | |
| Hydrostatic pressure test results | Audit at 10 | |
| Lake Oahe Supplemental Documents | Audit at 20 | |
| Environmental Inspection Report (March 24, 2017) | Audit at 4-8, 15. | The PPIC Independent Assessment on page 5 states there was an "Environmental Assessment Report" dated March 24, 2017 that occurred on Corps land around the drill pad inside the fencing. The report was referenced in relation to easement Condition #2 relating to HDD work and contingency plan "in the event of an inadvertent release." This release clearly occurred on Corps land. |
| Surge Analysis Report by Fluid Flow Consultants | Audit at 16. | "A surge analysis, which was conducted by Fluid Flow Consultants, with a report issued on June 2, 2017 (page 21.2.1 to 21.2.46)." |

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

**APPENDIX D – DOCUMENTS RELATED TO YANKTON CONSULTATION**

| DATE | TO | FROM | DOCUMENT |
|---|---|---|---|
| 5/2/18 | Robert Flying Hawk | John L. Hudson | Letter regarding YST Consultation Protocols |
| 4/20/18 – 8/27/18 | Thomas Tracy | Jennifer Baker | Email string regarding YST Consultation Protocols |
| 5/31/18 (date on Reservation) | Yankton Sioux Tribe | Mike Glason (USACE) | YST THPO Videography, Photography, Audio, and Other Recording Permit |

MOTION TO COMPLETE
ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, <br><br>       Plaintiff, <br><br> and <br><br> CHEYENNE RIVER SIOUX TRIBE, <br><br>       Plaintiff-Intervenor, <br> v. <br><br> U.S. ARMY CORPS OF ENGINEERS, <br><br>       Defendant-Cross <br>       Defendant, <br><br> and <br><br> DAKOTA ACCESS, LLC, <br><br>       Defendant-Intervenor- <br>       Cross Claimant. | Case No. 1:16-cv-1534-JEB <br> (and Consolidated Case Nos. 16-cv-1796 <br> and 17-cv-267) <br><br> DECLARATION OF JAN HASSELMAN <br> IN SUPPORT OF PLAINTIFF STANDING <br> ROCK SIOUX TRIBE'S MOTION TO <br> COMPLETE ADMINISTRATIVE <br> RECORD |

I, Jan Hasselman, declare as follows:

1.     I am counsel of record for plaintiff Standing Rock Sioux Tribe.  I am a member in good standing of the Washington state bar, and have been admitted to practice before this Court *pro hac vice*.

2.     Attached hereto are true and correct copies of the following materials which are relevant to the issues in this motion:

DECLARATION OF JAN HASSELMAN IN SUPPORT OF
PLAINTIFF STANDING ROCK SIOUX TRIBE'S MOTION
TO COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)               1

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

Exhibit 1        December 21, 2018 Letter from Jan Hasselman, Attorney, Earthjustice on behalf of clients Standing Rock Sioux Tribe to Reuben S. Schifman, U.S. Department of Justice, Natural Resources Section regarding scope of the administrative record and anticipated issues prior to deadlines to seek relief.

Exhibit 2        December 12, 2018 Transcript of Status Conference before the Honorable James E. Boasberg, United States District Judge.


I declare under penalty of perjury that the foregoing is true and correct.


Dated this 27th day of February, 2019.


_____

Jan E. Hasselman


DECLARATION OF JAN HASSELMAN IN SUPPORT OF
PLAINTIFF STANDING ROCK SIOUX TRIBE'S MOTION
TO COMPLETE ADMINISTRATIVE RECORD

(No. 1:16-cv-1534-JEB)                                  2

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2019, I electronically filed the foregoing document

with the Clerk of the Court using the CM/ECF system, which will send notification of this filing

to the attorneys of record and all registered participants.

*/s/ Jan E. Hasselman*
Jan E. Hasselman

DECLARATION OF JAN HASSELMAN IN SUPPORT OF
PLAINTIFF STANDING ROCK SIOUX TRIBE'S MOTION
TO COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)                    3

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

# Exhibit 1



December 21, 2018

**VIA E-MAIL**

Reuben S. Schifman
U.S. Department of Justice
Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Washington, D.C.  20044
reuben.schifman@usdoj.gov

  Re: *Administrative Record for Standing Rock Sioux Tribe v. U.S. Army Corps*

Dear Ben:

  I am writing regarding the scope of the administrative record that will be produced next month.  Because the Tribe has some serious concerns about the scope of the record to date, my hope is to work through any anticipated issues before facing deadlines to seek relief from the Court after the record is produced.

  Specifically, there are a number of documents that we believe need to be included in the administrative record.  Some of them should have been included in the previous administrative records but, for reasons that are not clear, were not.  We would like to get some clarity as to whether you will agree to include the following documents in the record.  Moreover, if you believe that some of these documents are subject to the confidentiality order, we do expect them to be produced in full by the Court's deadline.

1. The remand analysis identifies a number of technical support documents that the Corps relied on, such as the "submission review," the "downstream receptor report," and the "spill model report."  We have previously requested these documents, but you have refused to provide them.  Please confirm that they will be included in the administrative record, as they are critical to the issues before the Court.

2. In the EA, the Corps directed DAPL to provide it with "[a]ll plans not final at the time the EA is complete…. prior to submittal to U.S. Department of Transportation Pipeline and Hazardous Materials Safety Administration."   These plans include, but are not limited to the following:
   a. Geographical Response Plan;
   b. Maintenance Manual;
   c. Risk Assessment (Integrity Management Plan); and,
   d. Spill Models (Using the National Hydrography Dataset by the USGS)

Reuben S. Schifman
December 21, 2018
Page 2

These documents were also required to be submitted under the easement's conditions.  However, with the exception of various iterations of the GRPs, none of these documents were provided to the Tribe or included in the record.  Please confirm that these documents will be included in the record.

3.       In the remand report, the Corps makes reference to a document entitled "Dakota Access Pipeline Project, North Dakota, Lake Oahe Crossing Spill Model Discussion, Document No.: DAPL-WGM-GN000-PPL-STY-0019, Wood Group Mustang Project No.: 10395700 (May 2016)."  *See* Remand Report at 19 n. 10.   While a 2015 draft of this document was provided by the Corps, the May 2016 version cited in the Remand Report—or any other version reviewed by the Corps—was not.  Please confirm that all copies of this document and other technical documents will be included in the record.

4.       The Tribe is particularly concerned that repeated references throughout this litigation have been made to a "spill model".  However, the Wood Group document above, while denoted a "Spill Model Discussion" is not a spill model. The "DAPL Environmental Analysis" (USACE_DAPL0072252) indicates that Jonathan Shelman at the Corps received something deemed a spill model for Lake Oahe on October 21, 2015 – however, no such document has been provided to the Tribe.  Please either provide any document purporting to be a spill model that existed prior to the Corps Feb. 2017 easement decision, or confirm that there is no additional document beyond what has been provided.

5.       It appears that the Corps has never provided us with a full, unredacted copy of the Facility Response Plan ("FRP").  This may have simply been an oversight, and the Tribe would agree to treat the unredacted portions of the plan pursuant to the Protective Order.  Please provide us with (or include in the revised record) an unredacted copy of the FRP that was originally submitted to PHMSA for approval (February 2017) and any subsequent revisions that are in the Corps possession.  We are also concerned that the record to date contains no correspondence between the Corps and PHMSA.  Please ensure that any such correspondence is included in the record or confirm that there is none.

6.       Key DAPL documentation such as the EA, DAPL Environmental Analysis, PPIC Independent Assessment, and FRP list a number of documents (including emails, attachments etc.) that the Corps has referenced but have not been provided to the Tribe.  For example, the "DAPL Environmental Analysis" ProjNet correspondence between the Corps and DAPL (USACE_DAPL0072253) discusses an email dated 4-15-16 from Steve Rowe to the Corp that provided DAPL's rational for the Lake Oahe worst case discharge (WCD) calculation volume of 12,501 Bbls.  Other Lake Oahe documents referenced by the Corps include the Bakken crude composition analysis utilized in the EA and FRP (EA at 45-46, FRP at 37, USACE-

Reuben S. Schifman
December 21, 2018
Page 3

DAPL0074721); correspondence and records related to the EPA, PHMSA, Coast Guard and Corps communication of lesson learned from recent Bakken oil spills (USACE-DAPL0072250-1); the DAPL quantitative risk assessment performed (EA at 92, USACE_DAPL0074722, USACE_DAPL0072220); Sunoco Logistics Risk Algorithm Document 6-27-17 (Corps Analysis of the Issues Remanded at 113); Lake Oahe Supplemental Documents (PPIC Independent Assessment at 20), updated WCD calculation, EFRD valve locations, elevation and drainage volume calculation (Corps Analysis of the Issues Remanded at 18, 117-118 versus calculations used at USACE-DAPL0072253); HDD three-volume report including the Environmental Inspector's Reports, Daily Field Reports, and the March 15, 2017 Environmental Inspector's Report (PPIC Independent Assessment at 4); Welding Daily Inspection Reports (PPIC Independent Assessment at 9); and hydrostatic pressure test results (PPIC Independent Assessment at 10).  Please include any and all documents referenced in Corps documents such as the EA, PPIC Independent Assessment, DAPL Environmental Analysis and FRP that have not been provided to the Tribe by the Corps, or confirm that the Corps never received them.

7.      The Tribe has not received most of the identified attachments in the "DAPL Environmental Analysis" that lists the Corps project comments, responses from DAPL and how the comments were resolved (USACE_DAPL0072161). For example, the document lists a comment (6139320) from the Corps that the attached spill model does not appear to correlate with the EPA's Region 8 Mid-Missouri River Subarea Contingency Plan (SACP) (USACE_DAPL0072183-86). Specifically, the Corps notes that the SACP uses a planning distance of 27-hours and the SACP provides a conservative projected spill volume estimate of 50,800 Bbls released for a 30" inch pipe - the same size pipe as DAPL Lake Oahe crossing. The Corp questioned the projected DAPL spill volume and dataset used to plot the 27-hour projection.  In response, DAPL provided responses in a referenced attached MS Word document and a "confidential White Paper discussing Federal Spill Prevention and Control Regulation of Oil Transmission Pipelines." The same comment also lists an attached revised Lake Oahe Spill Model Report (4-11-16). The record did not include any of these attachments.

8.      As you know, the Court ordered DAPL to submit an independent, third party audit on the pipeline's compliance with easement conditions and other integrity threats.  While the audit itself has been filed with the Court, there is no record of any supporting documents or any correspondence with the Corps.  For example, it appears that in March, 2017, an inspection report was prepared on a drill mud spill.  This report bears on the remand because it addresses questions that have been raised about the proponent's poor record of accidents and spills.  Please confirm that you will include any documents related to the audit in the administrative record.

Reuben S. Schifman
December 21, 2018
Page 4

9.      The Lake Oahe Easement issued on February 8, 2017 includes 36 "Special Conditions" These conditions identify a number of documents that are required to be produced to the Corps, most of them by now.  These include various listed inspection reports, pipeline coating damage reports, updated Facility Response Plan, as-built drawings for the Lake Oahe crossing, pipeline safety conditions documentation, any root cause pipe failure analysis, pipeline surge analysis interference current remedial action plan, corrosion surveys, reported BS&W level excursions, cleaning pig run analysis, pipeline patrolling surveys, and after-action reviews from ER training exercises including notifications of the Tribe for participation required by the easement conditions. We believe that all of this information bears on the Corps' remand decision and should be included in the record.  Please confirm.

10.     Finally, DAPL has publicly announced it is acting to increase the flow through the DAPL pipeline which would include the section of the pipeline across the lake Oahe easement to as high as 600,000 BPD. Please provide any engineering, safety and environmental analysis in the Corps' possession related to this stated change, or any communications with or within the Corps about it. The Corp's EA stated that DAPL will "construct and maintain the pipeline to meet or exceed industry and governmental requirements and standards." The American Petroleum Institute Recommended Practice 1173, Pipeline Safety Management Systems, requires that pipeline operators perform a Management of Change (MOC) process and consider potential risks associated with operational changes such as throughput changes.  Increasing the crude oil flow will of DAPL will also require updates to other operational documentation such as the Integrity Management Plan, Risk Analysis, Surge Analysis, Geographic Response Plan, and the Facility Response Plan.  Please provide all documentation related to the MOC process and updated documentation addressing the DAPL throughput increase.

        Thank you for your consideration to these issues.  Please let me know if you need any clarification of the above questions, and whether you would like to discuss these issues further.

                Sincerely,

                Jan E. Hasselman

Exhibit 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

----------------------------X

STANDING ROCK SIOUX TRIBE,

                Plaintiff

           v.               Civil Action 16-1534.

U.S. ARMY CORPS OF ENGINEERS,

                Defendant

----------------------------X

                        Washington, D.C
                Wednesday, December 12, 2018
                    11:00 a.m.

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JAMES E. BOASBERG
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:  Jan Hasselman, Esq. (via phone)
                  EARTHJUSTICE LEGAL DEFENSE FUND
                  705 Second Avenue, Suite 203
                  Seattle, WA 98104-1711
                  (206) 343-7340

Intervenor Cheyenne  Nicole E. Ducheneaux, Esq. (via phone)
River Sioux Tribe:  Joe Messineo, Esq.
                  FREDERICKS PEEBLES & MORGAN LLP
                  3610 North 163rd Plaza
                  Omaha, NE 68116
                  (402) 333-4053

Court Reporter:    Lisa Walker Griffith, RPR
                  U.S. District Courthouse
                  Room 6507
                  Washington, D.C.  20001
                  (202) 354-3247

```
APPEARANCES:  (Cont'd.)

Intervenor Sara        Bruce I. Afran, Esq. (Via phone)
Jumping Eagle          10 Braeburn Dr.
                       Princeton, NJ 08540
                       609-454-7435


Amicus Oglala          Michael L. Roy, Esq.
Sioux Tribe:           Jennifer Hughes, Esq.
                       HOBBS, STRAUS, DEAN & WALKER, LLC
                       2120 L Street, NW, Suite 700
                       Washington, DC 20037-1527
                       (202) 822-8282

For the Defendant:     Reuben Schifman, Esq.
                       Brian Collins, Esq.
                       U.S. DEPARTMENT OF JUSTICE
                       Environment & Natural Resources Division
                       P.O. Box 663, Ben Franklin Station
                       Washington, DC 20044-0663
                       (202) 305-0293


For Cross Claimant     David Debold, Esq.
Dakota Access:         William S. Scherman, Esq.
                       Jason Fleischer, Esq.
                       GIBSON, DUNN & CRUTCHER, LLP
                       1050 Connecticut Avenue, NW
                       Washington, DC 20036
                       (202) 955-8551
```

1          **P R O C E E D I N G S**

2               THE DEPUTY CLERK:  This is civil action 16-1534.

3     Standing Rock Sioux Tribe, et al versus United States Army

4     Corps of Engineers, et al.

5               THE COURT:  Good morning, everyone.

6               THE DEPUTY CLERK:  Counsel, please approach the

7     podium and identify yourselves for the record.

8               Counsel who are on the phone, after the counsel

9     in the courtroom identify themselves, I am going to ask

10    that you all identify yourselves as well.

11              MR. SCHIFMAN:  Good morning.  Ben Schifman for

12    the defendant Army Corps of Engineers.  With me at counsel

13    table is Brian Collins from the Department of Justice and

14    Melanie Krasner from the Army Corps.

15              THE COURT:  Good morning.

16              MR. ROY:  Good morning.  Michael Roy for the

17    Oglala Sioux Tribe.  At table with me is Jennifer Hughes

18    for the Oglala Sioux Tribe.

19              THE COURT:  All right.  Good morning to you

20    folks.

21              THE COURT:  I'll hear from Standing Rock now.

22              MR. HASSELMAN:  Good morning, Your Honor.  It is

23    Jan Hasselman on the phone for Standing Rock Sioux Tribe.

24              THE COURT:  Good morning.

25              For Cheyenne River.

1         MS. DUCHENEAUX:  Good morning, Your Honor.  This

2  is Nicole Ducheneaux and I have with me Joe Messineo on

3  behalf of the Cheyenne River Sioux Tribe and Steve Vance.

4         THE COURT:  Thank you.

5         For the Yankton Sioux.

6         MR. RASMUSSEN:  Jeffrey Rasmussen and Jennifer

7  Baker for the Yankton Sioux Tribe.  Good morning.

8         THE COURT:  Good morning.

9         For Steve Vance?

10         MS. DUCHENEAUX:  This is Nicole Ducheneaux and

11  Joe Messineo on behalf of Steve Vance.

12         THE COURT:  Then for Dakota Access?

13         MR. DEBOLD:  Your Honor, I think there is one

14  more on the plaintiff's side.  Sara Jumping Eagle and

15  others.

16         MR. AFRAN:  Yes, Your Honor.  This is Bruce

17  Afran.  I'm on the line for the Jumping Eagle plaintiff.

18         THE COURT:  Okay.  Thank you very much.

19         MR. DEBOLD:  And then for Dakota Access, David

20  Debold.  With me at counsel table are William Scherman and

21  Jason Fleischer.

22         THE COURT:  Okay.  Welcome to you folks.

23         Okay, so I would like to say that the submissions

24  I got made this easy and that everyone agreed and we could

25  just move forward.  But that would not be the case.

1          So, after thinking it through and comparing what

2    people have proposed, I am going to tell you what I am

3    proposing to order.  Then I'll hear any questions or

4    objections from any side.

5          So first of all, given the supplemental report

6    from Cheyenne River and Standing Rock, I will issue an

7    order converting the RFRA ruling into a summary judgment

8    ruling.  Second, I will permit both Standing Rock and

9    Cheyenne River to bring their NHPA claim in summary

10   judgment briefing to argue that there is an exception to

11   mootness given my previous ruling.

12         I will also order that any other claims not

13   connected with the remand, in other words, any other claims

14   that don't arise from the Corps' decision on remand that

15   any plaintiff intends to pursue must be identified in a

16   filing by December 19th or it will be dismissed for failure

17   to prosecute.  So in other words, I appreciate Cheyenne

18   River's and Standing Rock's position on RFRA and NHPA and

19   maybe that's all there is.  But if there is anything more

20   then that will need to be identified by December 19th or it

21   will be dismissed.

22         Then as to the motion to supplement, I continue

23   to believe, and it looks like maybe even the plaintiffs

24   continue to believe and maybe the government believes too,

25   that the motions aren't necessary.  But if the plaintiffs

1   won't withdraw them, then I will require the defense to

2   either oppose them or file a non-opposition by December 21.

3        So again, defense, you may say these aren't

4   necessary but we're not prejudiced by them.  I think that

5   the supplemental report notes on page four that, the bottom

6   of page four, the plaintiffs agree that the focus of the

7   supplemental complaint is on post remand proceedings and

8   that there may be other boilerplate language there that

9   does not carry practical significance.

10        It would be nice if we could have that agreed

11   upon.  But I'm not sure what else I can do, other than

12   require the defense to oppose or file a non-opposition by

13   December 21.  Then plaintiffs' replies will be due December

14   31.

15        The administrative record, as we discussed, will

16   be lodged by January 31st.  Then any party may file a

17   challenge to it completeness by February 15th, with

18   oppositions due February 25th, and replies March 1st.

19        Now, this issue about extra record materials and

20   when that's going to be briefed, and so I'm trying to

21   thread the needle on that and here is what I will require.

22   That I'm not going to require the plaintiffs to file a

23   motion for inclusion of extra record material in connection

24   with the completeness of the administrative record.  But

25   plaintiffs take a gamble if they cite extra record evidence

1    in the summary judgment briefing that I won't consider.

2            So again, I'm not requiring the plaintiffs to

3    file in connection with the administrative record.  They

4    can cite extra record material in the summary judgment

5    briefing but they run the risk that I won't consider it.

6    Again, it will all depend, I'll apply the same standards

7    regarding extra record evidence that I've applied before.

8            If there is no challenge to the administrative

9    record, which has to be filed by February 15th, if there is

10   not one, then by February 22, in other words, one week

11   later, or if there is a challenge, seven days after that

12   ruling, I will order the parties to submit a joint proposed

13   summary judgment deadline.

14           So I am going to do that instead of imposing

15   deadlines today because I don't know about the

16   administrative record challenge.  I also think this is a

17   courtesy to you folks, that you'll know your schedules

18   better than you do now and you can work out an appropriate

19   briefing schedule at that point.

20           So if anything is not clear, or if there are

21   specific objections, although no need to reargue what you

22   have argued or pointed out in your reports.  I got those

23   points and I've ruled based on or despite them.  But if you

24   think I'm missing something or if something is unclear,

25   please don't hesitate to mention.  Again, I've tried to

1  cover a fair bit of grounds.  And if I have missed

2  anything, I'm happy to take a look at it.

3         So Mr. Hasselman, why don't you start.

4         MR. HASSELMAN:  As I'm scrambling to look here, I

5  don't have any immediate objection or questions about your

6  ruling.  Thank you.

7         THE COURT:  All right.  Since I made you go

8  first, I'll let you at the end, I'll give you another

9  chance if we come back and you realize something.

10         Ms. Ducheneaux.

11         MS. DUCHENEAUX:  Yes, Your Honor.  I am in the

12  same position as Mr. Hasselman.  At this time, I don't

13  foresee any objection or any questions right now.

14         THE COURT:  Thank you.

15         Mr. Roy?

16         MR. ROY:  Your Honor, just one thing.  You

17  referred to the motions to supplement.  Oglala also filed a

18  motion to amend the complaint.

19         THE COURT:  Yes, I saw that.  And the same

20  deadlines apply.

21         MR. ROY:  Thank you, Your Honor.

22         THE COURT:  Mr. Afran.

23         MR. AFRAN:  Your Honor, there is no objection.

24  I have one issue to schedule but separate for the schedule.

25         THE COURT:  Is it in connection with the schedule

```
 1   or should I come back to that at the end?

 2            MR. RASMUSSEN:  It's completely separate, Your

 3   Honor.

 4            THE COURT:  All right.  We'll come back to that

 5   at the end.

 6            Mr. Schifman?

 7            MR. SCHIFMAN:  Generally no objection, Your

 8   Honor.  But I would, on the extra record evidence point,

 9   just to reiterate the Government's position.  I really

10   think that it makes sense to have that decide in advance,

11   both for the reason that you identified, which is that the

12   parties would be in a better position to know what evidence

13   they will be using come summary judgment briefing.  But

14   also because, if that is a briefing that is going on

15   concurrently with the summary judgment briefing, that could

16   affect the schedule.

17            THE COURT:  I don't expect, it is not going to be

18   concurrent with the summary judgment briefing.  In other

19   words, you can -- the plaintiffs, in their motion, if they

20   end up citing extra record evidence, you, in your

21   opposition, can argue that I should disregard it and it

22   won't be separate briefing.

23            MR. SCHIFMAN:  Understood.  We in the past and

24   potentially could move to strike.  But it might be similar

25   to what you have just proposed.
```

1          THE COURT:  I think it is just easier to say I

2     shouldn't consider it.  So again, I think that the

3     plaintiffs understand that it may be helpful to raise this

4     earlier.  But I'm not going to preclude them if they don't.

5          MR. SCHIFMAN:  Okay.

6          THE COURT:  Mr. Debold.

7          MR. DEBOLD:  We have no objections to the

8     schedule you laid out.  One thing I want to the flag is on

9     the issue of motions to supplement and responding by

10    December 21.  One idea that we were considering is asking

11    for permission to basically not oppose, with the

12    understanding that if there are issues later raised in the

13    summary judgment briefing that rely on the supplemental

14    complaints to the point where they go beyond the scope of

15    the remand, that we would then be able to argue it at that

16    point.

17          That might save us, perhaps even the Corps, if

18    they're willing to do this, from having to brief the issue

19    about supplementing.  It is another way of putting off the

20    possible consequence of allowing supplementation.  We all

21    don't know whether there will be any consequence.  There

22    may be no consequence at all.

23          THE COURT:  If everyone agrees, that's fine with

24    me, because again, I think that it seems that the

25    plaintiffs are doing this just to cover their bases and

 1  make sure.  It seems we all think they don't need to do

 2  that.  And maybe there is a way to reach agreement along

 3  the lines that you have proposed, that's fine with me.

 4       MR. DEBOLD:  We'll try to do that.  If not, we'll

 5  file our opposition.

 6       THE COURT:  Great.

 7       So back to the supplemental issue, Mr. Afran.

 8       MR. AFRAN:  Yes, thank you, Your Honor.

 9       It is not an adversarial question, raise it with

10  it Mr. Schifman last week.  I know he'll get back to me,

11  but I just want to alert the Court to the question.

12       My client, as you know, came in after the

13  confidentiality order had been negotiated and signed.  I'm

14  sure there's nothing in it that I have a problem with.

15  But, though it has not been an issue up to this point

16  because the Corps' prior decision reversing the Obama

17  Administration decision was based on a wholly open

18  document, the new remand decision incorporates the decision

19  and findings that are in the confidential record.  So at

20  this point, my clients would need myself and Mr. Hall to be

21  added to the confidentiality order.

22       So I asked Mr. Schifman last week by e-mail to

23  give me his views on that, and obviously Dakota Access

24  would have to weigh in.  But I assume there would be no

25  objection to us being added.  I can't really, in ethical

1   honesty, address the remand questions without seeing the

2   confidential issues that the Corps now  raises.  So I just

3   want to alert the Court to the fact that myself and

4   Mr. Hall would request to be added to the confidentiality

5   order.

6           THE COURT:  I'll let you work that out with the

7   government but thanks for raising it.

8           So I think we're all set.

9           Mr. Schifman.

10          MR. RASMUSSEN:  Your Honor, this is Jeff

11  Rasmussen for Yankton Sioux Tribe.  And we hadn't actually

12  gotten to weigh in.  We had one minor thing we wanted to

13  suggest.  The Court is setting responses to the motions to

14  supplement for Friday the December 21.  And any replies

15  hopefully, we won't need them, but any replies on December

16  31.  We would ask to move that to January 2 just for

17  logistics.  It could be difficult for us to coordinate over

18  the prior week, of course, many people have off.

19          THE COURT:  Okay.  Fine.  Happy to do it.

20          MR. RASMUSSEN:  Thank you.

21          THE COURT:  Thank you.  Sorry to skip over you.

22  My sheet here is not exactly accurate.  I've been trying to

23  compare with the docket on the computer.  I'm sorry if I'm

24  missing anybody.

25          Mr. Schifman.

1          MR. SCHIFMAN:  Thank you, Your Honor.

2          We'll work with Mr. Afran on the confidentiality

3   order; it shouldn't be a problem.

4          One issue I realized is we had raised the

5   question of answering.  So due to an earlier order of the

6   Court, the answers are held in abeyance.  We think it makes

7   sense.

8          THE COURT:  Not the answers to the supplemental

9   complaints but answers to amended complaints?

10         MR. SCHIFMAN:  We think it makes sense to hold

11  them all in abeyance, given that this is an administrative

12  record action.  The answer is not the focus of the

13  litigation.  So it just seems to be logistically to make

14  sense to continue to hold all answers in abeyance which is

15  what we proposed in the JSR.

16         THE COURT:  I'm happy to do that.

17         MR. SCHIFMAN:  Thank you, Your Honor.

18         MR. AFRAN:  Your Honor, this is Bruce Afran.

19         I think that actually applies in large part to

20  the Jumping Eagle complaint, which I think is in abeyance.

21  We have no objection to Mr. Schifman has proposed as long

22  as it does not procedurally prevent anyone from moving for

23  summary judgment on remand issues if there's no answered

24  filed.

25         THE COURT:  It does not.  I will certainly permit

1  everyone to do that still.

2        So I will then be waiting to hear from people on

3  the -- of course, we'll issue a written order memorializing

4  everything that I have just said.  I will then wait to

5  hear, the first issue will be these other claims on

6  December 19.  Then we'll see what happens to the motion to

7  supplement.  Then I'll rule on the administrative record

8  challenges if there are any.  Otherwise, wait for a summary

9  judgment schedule from you folks.

10        So I would expect not to be back in court.  But

11  if there is substantial disagreements that require my

12  input, I will call everybody back.  I appreciate everyone

13  making themselves available and for their assistance.

14        So, happy holidays to all and we'll be in touch.

15        (Whereupon, at 11:20 a.m., the hearing

16  concluded.)

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF REPORTER

2                         I, Lisa Walker Griffith, certify that the

3    foregoing is a correct transcript from the record of

4    proceedings in the above-entitled matter.

5


9    _____12-14-18
     Lisa Walker Griffith, RPR              Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>    Plaintiff,<br><br> and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>    Plaintiff-Intervenor,<br> v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>    Defendant-Cross<br>    Defendant,<br><br> and<br><br>DAKOTA ACCESS, LLC,<br><br>    Defendant-Intervenor-<br>    Cross Claimant. | Case No. 1:16-cv-1534-JEB<br>(and Consolidated Case Nos. 16-cv-1796<br>and 17-cv-267)<br><br><br><br>PROPOSED ORDER GRANTING<br>MOTION TO COMPLETE<br>ADMINISTRATIVE RECORD |

The Court has reviewed the consolidated motion from the four plaintiff Tribes in this

case, the oppositions and replies thereto, and the entire record in this case, and hereby GRANTS

the motion to complete the record.  The Court ORDERS that within 30 days of the date of this

Order, the Corps shall serve all parties and lodge with the Court a supplementary administrative

record containing the following:

   1.   All documents and references cited in the Remand Analysis, the Downstream

Receptor Report, and the Spill Model Report, including documents included in the lists of

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

references and any data, information, or report generated from websites cited in those

documents.

      2.      All documents listed in Appendix A, B, C, and D of the Tribes' consolidated

motion to complete the record.

      3.      All documents referred to in § II.E of the Tribes' consolidated motion.


      Having reviewed the parties' pleadings, exhibits, and the entire record of this case, it is

hereby ORDERED that, the motion is GRANTED.



Dated: _____    _____

                                             JAMES E. BOASBERG
                                           United States District Judge



Presented by:


<u>/s/ Jan E. Hasselman</u>
Jan E. Hasselman, WSBA # 29107
(*Admitted Pro Hac Vice*)
Stephanie Tsosie, WSBA # 49840
(*Admitted Pro Hac Vice*)
Patti A. Goldman, DCBA # 398565
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA 98104
Telephone: (206) 343-7340
jhasselman@earthjustice.org
stsosie@earthjustice.org
pgoldman@earthjustice.org

*Attorneys for Plaintiff*


PROPOSED ORDER GRANTING
MOTION TO COMPLETE
ADMINISTRATIVE RECORD
 (No. 1:16-cv-1534-JEB)

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2019, I electronically filed the foregoing

PROPOSED ORDER GRANTING MOTION TO COMPLETE ADMINISTRATIVE RECORD

with the Clerk of the Court using the CM/ECF system, which will send notification of this filing

to the attorneys of record and all registered participants.

*/s/ Jan E. Hasselman*
Jan E. Hasselman

PROPOSED ORDER GRANTING
MOTION TO COMPLETE
ADMINISTRATIVE RECORD
 (No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*