**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, YANKTON SIOUX TRIBE; ROBERT FLYING HAWK; OGLALA SIOUX TRIBE, | Case No. 1:16-cv-1534-JEB (and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |
| Plaintiffs, | |
| and | **RESPONSE TO PLAINTIFFS' MOTION TO COMPLETE THE ADMINISTRATIVE RECORD** |
| CHEYENNE RIVER SIOUX TRIBE, | |
| Plaintiff-Intervenor, | |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, | |
| Defendant-Cross Defendant, | |
| and | |
| DAKOTA ACCESS, LLC, | |
| Defendant-Intervenor-Cross Claimant. | |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................................1

II.     FACTUAL BACKGROUND .................................................................................................1

III.    LEGAL STANDARD.............................................................................................................2

IV.     ARGUMENT ..........................................................................................................................4

        A.      Plaintiffs have failed to demonstrate that the Corps directly or indirectly
considered the remaining cited materials....................................................................4

                1.      Sources cited in the Remand Analysis......................................................6

                2.      Data and reports from websites..................................................................6

                3.      Sources cited in the Downstream Receptor Report and the Spill
Model Report ............................................................................................7

        B.      Documents that purportedly should have been part of the "original" record
were not considered for the Corps' decision on remand, are untimely, and
Plaintiffs' challenge to the "original" record is moot ...............................................9

                1.      The Court has already affirmed the completeness of the Corps'
previous administrative records .................................................................9

                2.      Plaintiffs' attempt to add documents that purportedly should have
been included in prior administrative records is untimely........................11

                3.      Plaintiffs' fail to demonstrate how allegedly omitted documents
were considered by the decisionmaker .....................................................12

        C.      The Record already contains documents related to easement conditions
considered by the Corps.............................................................................................13

        D.      Third-Party Audit documents were not considered .................................................15

        E.      Final versions of Draft Documents are included in the record ...............................16

        F.      Documents that the Corps will add to the remand administrative record..............17

V.      CONCLUSION......................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

282 F. Supp. 3d 91 ........................................................................................................ 1, 2

*Amfac Resorts, LLC v. U.S. Dep't of Interior*,
    143 F. Supp 2d. 7 (D.D.C. 2001) ................................................................................ 5

*Beyond Nuclear v. U.S. Dep't of Energy*,
    233 F. Supp. 3d 40 (D.D.C. 2017) ............................................................................. 3

*Camp v. Pitts*,
    411 U.S. 138 (1973) .................................................................................................... 3

*Charleston Area Med. Ctr. v. Burwell*,
    216 F. Supp. 3d 18 (D.D.C. 2016) ................................................................... 3, 6, 16

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) .................................................................................................... 2

*Ctr. for Native Ecosystems v. Salazar*,
    711 F. Supp. 2d 1267 (D. Colo. 2010) ................................................................... 5, 6

*Franks v. Salazar*,
    751 F. Supp. 2d 62 (D.D.C. 2010) .......................................................................... 5, 8

*Nat. Res. Def. Council., Inc. v. Train*,
    519 F.2d 287 (D.C. Cir. 1975) ................................................................................... 3

*Oceana, Inc. v. Ross*,
    290 F. Supp. 3d 73 (D.D.C. 2018) ...................................................................... 3, 7, 8

*Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
    448 F. Supp. 2d 1 (D.D.C. 2006) ....................................................................... 3, 15, 16

*Sara Lee Corp v. Am. Bakers Ass'n*,
    252 F.R.D. 31 (D.D.C. 2008) ........................................................................... 1, 3, 12

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock III)*,
    255 F. Supp. 3d 101 ....................................................... 1, 2, 9, 10, 11, 12

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock IV)*,
    282 F. Supp 3d 91 (D.D.C. 2017) .............................................................................. 2

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock V)*,
    301 F. Supp. 3d 50 (D.D.C. 2018) ............................................................................. 1

*W. Watersheds Project v. Bureau of Land Mgmt.*,
    No. 3:11-cv-00053, 2012 WL 13937 (D. Nev. Jan. 4, 2012) ................................... 5

*W. Watersheds Project v. Bureau of Land Mgmt.*,
    No. 3:11-cv-00053-HDM-VPC, 2012 WL 13937 (D. Nev. Jan. 4, 2012) ............ 5, 6

*WildEarth Guardians v. Salazar*,
   713 F. Supp. 2d 1243 (D. Colo. 2010)......................................................................................... 5

**Statutes**

5 U.S.C. § 706......................................................................................................................... 2

## I.     INTRODUCTION

To meet the D.C. Circuit's standard for adding documents to complete the record, Plaintiffs must identify specific documents, provide concrete evidence, and identify reasonable, non-speculative grounds that the specific documents were considered by the decision maker but not included in the record.  *See Sara Lee Corp v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008).  With only a few exceptions, Plaintiffs' Motion fails to meet this standard.  *See* Pls.' Mot. to complete the Administrative Record, ECF No. 401 ("Motion" or "Pls.' Mot.").  Rather than meet the standard, Plaintiffs' Motion consists of non-specific requests for a broad universe of references and bibliographic material, and documents related to past administrative records, past decisions, compliance questions, or a third party audit—topics unrelated to the narrowly focused issues that the Corps considered in its remand review.  Moreover, a number of the documents Plaintiffs demand are already in the remand record and the Corps plans to add eight documents to the remand administrative record.  As to those documents, the Court should deny the Motion as moot.  As to the remainder, the Court should deny the Motion because Plaintiffs have failed to carry their burden to establish that the documents were directly or indirectly considered by the Corps.

## II.    FACTUAL BACKGROUND

Although the facts surrounding the permitting, legal background, and remand process for the Dakota Access Pipeline ("DAPL") are well known to this Court, *see Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock III)*, 255 F. Supp. 3d 101 (D.D.C.), ); *subsequent determination,* 282 F. Supp. 3d 91 (D.D.C.), *subsequent determination,* 280 F. Supp. 3d 187, (D.D.C. 2017); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock V)*, 301 F. Supp. 3d 50 (D.D.C. 2018); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*

(*Standing Rock IV*), 282 F. Supp. 3d 91 (D.D.C.) , *subsequent determination,* 280 F. Supp. 3d

187, (D.D.C. 2017), the Corps provides the following factual background and timeline to give

context to certain aspects of Plaintiffs' Motion.

The compilation of the remand administrative record consisted of a review of documents

related to three issues that this Court remanded back to the Corps for further consideration.  This

Court previously directed the Corps to consider on remand: (1) the degree to which the project's

effects are likely to be highly controversial; (2) the consequences of a spill for the Tribes' fishing

and hunting rights; and (3) the environmental justice impacts of the project.  *Standing Rock IV,*

282 F. Supp. 3d at 96,  (citing *Standing Rock III*, 255 F. Supp. 3d at 111-12).  To address the

Court's findings, the Corps engaged in a yearlong remand process.  The process included seeking

input from Dakota Access, the Standing Rock Sioux Tribe, Cheyenne River Sioux Tribe, Oglala

Sioux Tribe and Yankton Sioux Tribe.  The Corps considered the input it received from those

parties in its own analysis.  RAR000001.  The Corps concluded its review on August 31, 2018

and its findings were summarized in a memorandum for the record ("Remand Analysis").  *Id.*

That document explains that the Corps' review did not reveal any significant new circumstances

or information relevant to the three remand areas.  *Id.*  Therefore, the Corps found that the

conclusions in July 2016 EA and Finding of No Significant Impact were fully supported and that

the Corps' prior final agency actions did not require further reconsideration.  *Id.*

## III.    LEGAL STANDARD

The APA provides that the reviewing court may "review the whole record or those parts

of it cited by a party."  5 U.S.C. § 706.  The Supreme Court has established that judicial review

of an agency decision must be based on the record the agency presents to the reviewing court.

*Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971), *abrogated on other*

grounds by *Califano v. Sanders*, 430 U.S. 99 (1977); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").  The administrative record consists of "all documents and materials that the agency directly or indirectly considered."  *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (internal quotation marks and citation omitted).  It is the agency's responsibility to designate the contents of the administrative record and its designation is entitled to a presumption of regularity.  *Beyond Nuclear v. U.S. Dep't of Energy*, 233 F. Supp. 3d 40, 48 (D.D.C. 2017).

To be successful on a motion to complete the record, a plaintiff must overcome this presumption of regularity.  "A plaintiff may show that the record is '[i]nsufficien[t]' — *i.e.*, incomplete — only if she is able to 'specif[y] . . . documents that ha[ve] been omitted.'"  *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016) (quoting *Nat. Res. Def. Council., Inc. v. Train*, 519 F.2d 287, 291 (D.C. Cir. 1975) (alterations in original)).  It is insufficient to "imply that the documents at issue were in the [agency's] possession. . . . Rather, plaintiff must prove that the documents were before the actual decisionmakers involved in the [challenged] determination."  *Sara Lee Corp.*, 252 F.R.D. at 34 (citation omitted).  Put differently, a "plaintiff must put forth concrete evidence" and "'identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record."  *Id.* (internal citation omitted); *see also Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78-79 (D.D.C. 2018).  "Then, if the Court finds that the record produced 'clearly do[es] not constitute the "whole record" compiled by the agency,' it will order the agency to complete the record."  *Charleston Area Med. Ctr.*, 216 F. Supp. 3d at 23 (quoting *Overton Park*,

401 U.S. at 419 (alteration in original)).

## IV.    ARGUMENT

Plaintiffs' Motion attempts to add a broad array of documents to the record, most of which were not directly or indirectly considered by the Corps on remand.  As noted below, the Corps plans to add certain documents to the remand administrative record.  For the remaining documents, however, Plaintiffs fail to provide the concrete evidence or identify the reasonable, non-speculative grounds that such documents were directly or indirectly considered by the decisionmaker.

Plaintiffs requests can be categorized into five groups: (1) materials referenced in documents in the record; (2) documents that Plaintiffs suggest should have been included in a previously lodged administrative record; (3) documents that purportedly relate to the Lake Oahe easement conditions; (4) documents related to the third-party audit ordered by the Court; and (5) draft versions of the final Remand Analysis document.  None of these documents are properly part of the remand administrative record, or are already included in the record, and on that basis, the Court should deny Plaintiffs' Motion.

### A.    Plaintiffs have failed to demonstrate that the Corps directly or indirectly considered the remaining cited materials

Plaintiffs' Motion begins with a request to add sources cited in the Corps' Remand Analysis and documents cited in reports that were cited in the Remand Analysis.  With regard to documents that were directly cited in the Remand Analysis, the Corps has agreed to include those mentioned in section F below, including two documents Energy Transfer Partners provided to the Corps—the Downstream Receptor Report and the Spill Model Report.  This Court should deny Plaintiffs remaining general requests for cited sources found in the Remand Analysis, website data, and two non-NEPA documents because the website data is already in the remand

record, and the sources cited in the two technical documents were never properly before the

Corps.  Further, agencies are not required to include every document cited or referenced within a

document—such as all documents cited in a bibliography, footnotes, and endnotes—when

compiling a record.

Whether a cited reference should be included the record depends on whether the

reference was indirectly considered.  "[F]or purposes of inclusion in the record, documents are

indirectly considered where they are the work and recommendations of subordinates upon which

the relevant decision makers based their decision." *Ctr. for Native Ecosystems v. Salazar*, 711 F.

Supp. 2d 1267, 1275-77 (D. Colo. 2010) (citing *WildEarth Guardians v. Salazar*, 713 F. Supp.

2d 1243, 1255-56 (D. Colo. 2010)); *see also Amfac Resorts, LLC v. U.S. Dep't of Interior*, 143 F.

Supp 2d. 7, 12 (D.D.C. 2001) ("[I]f the agency decisionmaker based his decision on the work

and recommendations of subordinates, those materials should be included as well.").  Mere

"references to documents in the administrative record," however, "do not prove that the

documents were 'before' the deciding agency." *Franks v. Salazar*, 751 F. Supp. 2d 62, 70

(D.D.C. 2010) (citing *WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 6 (D.D.C. 2009)).  To

be included in the record, those documents and materials must have been "'so heavily relied on

in the recommendation that the decision maker constructively considered' them." *W.

Watersheds Project v. Bureau of Land Mgmt.*, No. 3:11-cv-00053-HDM-VPC, 2012 WL 13937,

at *1 (D. Nev. Jan. 4, 2012) (internal citation omitted).  Thus, this heavy reliance standard

applies to recommendations made by agency subordinates, not documents prepared by outside

sources. *Id.*

Additionally, there is no such thing as "consideration through citation"— cited

documents are not viewed as indirectly considered by an agency unless heavily relied upon by a

subordinate.  *See id.* ("[M]erely arguing 'consideration through citation' will not suffice because that 'argument stretches the chain of indirect causation to its breaking point' and it fails to give appropriate deference to the agency's designation of the record." (quoting *Ctr. for Native Ecosystems,* 711 F. Supp. 2d at 1277 (footnote omitted))).

### 1.   Sources cited in the Remand Analysis

Here, Plaintiffs' request for "all sources cited in the Remand Analysis," Pls.' Mot. 10, fails to meet the standard outlined above.  Plaintiffs can only show the record is insufficient if it can point to specific documents that have been omitted.  *Charleston Area Med. Ctr.*, 216 F. Supp. 3d at 23.  Their broad request does not meet the D.C. Circuit's specificity requirement. Plaintiffs simply have failed to establish that the decision maker indirectly considered a reference within the Corps' Remand Analysis.  Plaintiffs' effectively blanket request for every single footnote, citation, and reference in the entire Remand Analysis is vague, overbroad, and unsupported by D.C. Circuit case law.  Accordingly, Plaintiffs' blanket request for all sources cited in the Remand Analysis should be denied.

### 2.   Data and reports from websites

Plaintiffs' request for all data and reports from websites fails for a different reason—this information is already contained within the record.  Plaintiffs state the Remand Analysis "cites to and relies on a 'report' on pipeline spills that it compiled from [PHMSA] data" and further claims the report and its underlying data generated online are not included in the record.  Pls.' Mot. 8.  As part of its Remand Analysis, the Corps "analyzed the frequency of reported hazardous liquid 'accidents.'"  RAR000014.  The Corps based this analysis on annual reporting data obtained from the PHMSA website.  *Id.*, *see also* Decl. of Col. John L. Hudson, ¶ 3 attached as Ex. 1 ("Decl.").  This annual data is provided in the Remand Analysis as tables.  RAR000015-

16.  These tables represent the "reports" that Plaintiffs claim are not in the record.  Decl. ¶ 3.

The Corps did not have access to any underlying data; the numbers, and tables reflected in the

Remand Analysis consist of everything that was before the Corps from PHMSA's website.  *Id.*

Accordingly, any request for additional data should be denied because that data (assuming for

arguments sake it exists) was not before the Corps.

    3.    Sources cited in the Downstream Receptor Report and the Spill Model
          Report

The third subset of materials requested in Plaintiffs' Motion are references within

documents prepared by Energy Transfer Partners — the Downstream Receptor Report and the

Spill Model Report.  Pls.' Mot. 9.  Energy Transfer Partners produced both documents and

provided those documents to the Corps' Omaha District, for its consideration.  *See* Decl. ¶ 4. The

Downstream Receptor Report provides the results of a review of the general effects that

hydrocarbons have on biological communities and ecological receptors.  RAR002739-41.  The

Spill Model Report essentially describes the trajectory of oil, in the unlikely event of a spill.

RAR0008743-46.  Plaintiffs request a list of references from the Downstream Receptor report

and "all sources cited" within the Downstream Receptor Report and Spill Model Report.  Pls.'

Mot. 9-10. The Corps did not consider secondary references and citations within those

documents, but reviewed the documents themselves in conducting the Remand Analysis.

Plaintiffs point to *Oceana, Inc. v. Ross*, 290 F. Supp. 3d at, 79-81, for the proposition that

all citations, including a list of references from the Downstream Receptor Report and Spill

Model Report should be in the record.  Pls.' Mot. 9-10.  *Oceana* dealt with documents referenced

within the Fish and Wildlife Service's EIS rather than documents prepared by a third party.  290

F. Supp. 3d at 79-81.  *Oceana* focused on references substantively cited within the EIS,

documents cited within the body of the EIS "but solely as a source of further information," and

documents cited that were never cited within the body of the EIS but were included in a list of references at the end of each EIS chapter.  *Id.*  The Court held that documents substantively cited within the EIS should be included in the record.  *Id.* at 79.  The Court also held that the list of references at the end of each EIS chapter should also have been included in the record, but only because the Fish and Wildlife Service did not indicate another reason for why the references were offered.  *Id.* at 81.  Here, Plaintiffs essentially argue that *Oceana* sets the standard to include any substantive citation from any document in the remand record.  Pls.' Mot. 10.  But *Oceana* only considered the narrow issue of citations within an EIS.

The Downstream Receptor Report and the Spill Model Report are not akin to the EIS at issue in *Oceana*.  The *Oceana* court held that a document *substantively* cited within a NEPA document is deemed considered by the agency.  *Oceana, Inc.*, 290 F. Supp. 3d at 79 (emphasis added).  Unlike the EIS prepared by the Fish and Wildlife Service in *Oceana*, the Downstream Receptor Report and Spill Model Reports are not NEPA documents and the Corps did not prepare them.  The Corps acknowledges that the Downstream Receptor Report and the Spill Model Report were substantively cited within the Remand Analysis, and those documents are appropriately included in the Record.  Plaintiffs' request here takes *Oceana* one step too far by requesting citations from referenced documents that are not NEPA documents, let alone documents prepared by the Corps.  *Oceana* does not provide a basis for Plaintiffs to add "all sources cited" and a list of references contained within these two documents.  Pls.' Mot. 10.  Simply noting a document is referenced in a record is not enough to require its addition to the administrative record.  *Franks*, 751 F. Supp. 2d at 70.  As a result, Plaintiffs' Motion, with respect to citations and references within these two technical documents from Energy Transfer Partners, should be denied.

**B.**     **Documents that purportedly should have been part of the "original" record were not considered for the Corps' decision on remand, are untimely, and Plaintiffs' challenge to the "original" record is moot**

Separate from the remand administrative record, Plaintiffs' Motion requests documents that allegedly should have been included in the "original administrative record." Pls.' Mot. 10. The Corps filed its first administrative record in this case on November 10, 2016, and it related to Nationwide Permit verifications and Rivers and Harbors Act Section 408 permissions. Notice of Lodging Administrative R., ECF No. 55. The Corps lodged a second administrative record on March 21, 2017. That record related to the Corps' February 8, 2017 Lake Oahe easement decision. Notice of Lodging Administrative R., ECF No. 181. This Court summarized the Corps' two previous administrative records in *Standing Rock III*,

> [t]he Section 408 and NWP 12 decisions were based on the conclusion set out in the EA and FONSI that the permissions would not have a significant impact on the environment, and the easement decision was also based on 'additional review, analysis of terms and conditions for the easement, and on the Corps' decision that supplementation of the EA/FONSI was not required.' The Corps thus decided at two junctures that an EIS was not required, and it prepared an administrative record encompassing the materials that were before it at each decision date.

*Standing Rock III*, 255 F. Supp. 3d at 123-24(internal citation omitted).

Because the Court has already ruled on Plaintiffs' claims, any challenge to the completeness of the previous administrative records is now moot. Furthermore, Plaintiffs' attempt to add these documents is untimely and has long since been waived. Finally, documents purportedly "omitted" from a record pertaining to a separate agency decision are simply not part of the remand administrative record.

1.     The Court has already affirmed the completeness of the Corps' previous administrative records

Plaintiffs' suggestion that they did not have the opportunity to move to complete the November 2016 administrative record is absolutely baseless. As an initial manner, Plaintiffs

- 9 -

chose when to press forward with their motions for partial summary judgment.  That timing was

not dictated by the Corps.  In any event, Plaintiffs' motion incorrectly states that at the time

Standing Rock filed its motion for partial summary judgment in February 2017, "the Corps had

not yet filed an administrative record."  Pls.' Mot. 10.  The Corps lodged the NWP 12 and

Section 408 permit administrative record in November 2016 and lodged the easement decision

record in March 2017.  After the Corps lodged the November 2016 record, the Court offered the

parties an opportunity to challenge its completeness.  *See* Nov. 10, 2016 Minute Order ("In the

interim, they shall review the administrative record and meet and confer in an attempt to resolve

any disputes regarding completeness or confidentiality[.]").  The parties completed summary

judgment briefing on the merits on April 20, 2017.  ECF Nos. 213-214.  Dakota Access

challenged the completeness of the administrative record on April 21, 2017.  Mot. to Compel

Prompt Completion of Administrative R., ECF No. 216.  This Court issued its opinion on the

adequacy of the Corps' EA on June 14, 2017.  *Standing Rock III*, 255 F. Supp. 3d 101.  In that

decision, the Court opined on materials it would consider from the November 2016 and February

2017 administrative records.  *Id.* at 123-25.  The Court, at that time, ruled it would not

supplement those records with many of the documents Plaintiffs wish to add now (e.g. the "spill-

model").  *Id.* at 124.

This timeline shows that Plaintiffs have had ample opportunity to challenge the

completeness of previous records years ago but chose not to do so.  And the Court's holding on

the two previous administrative records in conjunction with the Court's judgment remanding the

challenged agency decisions, renders Plaintiffs' claim moot.  The Court has already reviewed the

agency actions supported by the November 2016 and March 2017 administrative records.  Here,

Plaintiffs challenge the Corps' Remand Analysis which has a separate administrative record, and

there is no further action for the Court to take with regard to the earlier agency decisions which have already been reviewed by the Court.

Indeed, Plaintiffs themselves have previously argued that the prior administrative records were already resolved by the Court.  As noted above, in *Standing Rock III*, the Court ruled that documents, up to February 8, 2017, would be included in the record and the Court found no basis to supplement the record.  255 F. Supp. 3d at 123-25.  Plaintiffs, in opposition to Dakota Access's supplemental brief on completing the administrative record, argued that issues regarding the record before the Court were already resolved by the Court's June 2017 opinion.[1] Pl.'s Resp. to Dakota Access' Suppl. Br. in Supp. of Mot. to Compel Completion of Administrative R. 6-7, ECF No. 265 at 10-11 (Cheyenne River Sioux Tribe arguing efforts to add documents to the record were "now moot." (citing *Standing Rock III*, 255 F. Supp. 3d at 123-24)).  Plaintiffs cannot use the remand administrative record as a vehicle to re-litigate matters that they have previously conceded were decided.

2. <u>Plaintiffs' attempt to add documents that purportedly should have been included in prior administrative records is untimely</u>

Plaintiffs' new attempt to add documents to record is also untimely and waived.  Indeed, Plaintiffs previously challenged the timeliness of a Dakota Access motion to complete the record.  *See* Pl. Standing Rock's Resp. to Mot. to Compel Completion of Administrative R. 6, ECF No. 219 ("The final defect in DAPL's motion is that it comes too late and threatens to gravely disrupt the timeline for resolution of the case.").  As provided in the timeline of filings above, the moment for Plaintiffs to challenge the completeness of either the November 2016 or

---

[1] Although Cheyenne River Sioux Tribe previously argued mootness, the Court requires Dakota Access to produce monthly reports as to whether it intends to move forward with its motion. Minute Order, Jan. 30, 2018.

March 2017 administrative records has long passed and Plaintiffs have waived the right to

challenge the completeness of those records.  Plaintiffs pushed forward with partial summary

judgment briefing on the record as lodged by the Corps.  The Corps lodged the March 2017

administrative record before Plaintiffs filed their responses to the Corps' cross-motions for

partial summary judgment.  *Compare* Notice of Lodging Admin. R., ECF No. 181 (March 21,

2017) and Pl.'s Resp., ECF Nos. 196 (March 28, 2017), 208 (April 13, 2017).  Neither Standing

Rock Sioux Tribe or Cheyenne River Sioux Tribe directly challenged the completeness of the

record in their responses, despite the opportunity to do so.[2]  Their ability to challenge the

completeness of those prior records is therefore waived, and there is no reason for the Court to

revisit the completeness of those records now.  Furthermore, the administrative record related to

the Corps' Remand Analysis is far from the proper forum to re-introduce these claims.

### 3. Plaintiffs' fail to demonstrate how allegedly omitted documents were considered by the decisionmaker

Finally, documents that Plaintiffs claim were "omitted" from the November 2016

administrative record have no bearing on remand because the allegedly omitted documents were

not directly or indirectly considered.  Plaintiffs' Motion points to no evidence refuting this fact.

The November 2016 administrative record consisted of materials that the Corps relied on when

completing its NWP 12 verifications and Section 408 permissions and the March 2017 record

consisted of materials the Corps considered when it was making its easement decision.

As this Circuit's legal standard requires, a "plaintiff must put forth concrete evidence"

and "identify reasonable, non-speculative grounds for its belief that the documents were

---

[2] Standing Rock Sioux Tribe and Cheyenne River Sioux Tribe did argue that reference to extra-record materials is appropriate.  ECF No. 195 at 10-11; ECF No. 208 at 15.  The Court ruled on extra-record evidence in *Standing Rock III*.  255 F. Supp. 3d at 123-25.

considered by the agency and not included in the record." *Sara Lee*, 252 F.R.D. at 34 (internal

citation omitted).  Plaintiffs argue that if they "had the opportunity to move to complete the

record with these documents earlier in the litigation, there would be no question that they had

satisfied the standard of 'reasonable, non-speculative grounds' that the documents belonged in

the record."  Pls.' Mot. 12., 19-21 (App. A).  They also claim there "is no basis to exclude them

now either."  *Id.*  But Plaintiffs' reasoning instead supports excluding the documents listed in

Appendix A of Plaintiffs' Motion.  Plaintiffs' claim—that they have grounds for including these

documents in the prior administrative records—has no bearing on providing reasonable, non-

speculative grounds for including those documents in *this* administrative record.  Firstly, even if

Plaintiffs could challenge the completeness of the November 2016 or March 2017 records,

Plaintiffs fail to provide any basis to show the previous administrative records are incomplete.

Secondly, there is no reason to revisit the completeness of the previous records now.  The

remand record is an entirely separate record for narrowly focused issues.  Put simply, Plaintiffs

fail to demonstrate how documents purportedly related to a prior agency decisions and analysis

should now be in the remand record.

### C.    The Record already contains documents related to easement conditions considered by the Corps

Plaintiffs' third category of documents sought are those related to conditions imposed by

the Lake Oahe easement.  Pls' Mot. 13-14, 22 (App. B).  Despite Plaintiffs contentions to the

contrary, many of the documents requested are in the remand record.  First, Plaintiffs incorrectly

claim that "no DAPL-specific O&M manual is provided in the record."  Pls.' Mot. 13.  The

O&M manual in the remand record states it is applicable to the Dakota Access Pipeline among

other pipelines operated by Sunoco Pipeline L.P.  RAR004507.  Plaintiffs also contend that the

only integrity management plan in the record is a "generic" Sunoco one that "predates [the

easement] and does not include a word about DAPL." Pls.' Mot. 13. This is also incorrect.

Plaintiffs cite to a previous version of this plan which was in effect before the easement was

granted. RAR004741. A revised integrity management plan, dated March 2017, is specific to

DAPL, and is also included in the record. RAR004827. The March 2017 integrity management

plan has been in effect since construction on the pipeline has been completed. RAR004741.

That integrity management plan also specifically states it applies to the Dakota Access Pipeline.

RAR004830. Plaintiffs also request a third document, referred to as "as built drawings" which is

likewise in the record. RAR004894. Plaintiffs note that as built drawings are redacted as critical

infrastructure data. Pls.' Mot 13 n. 5. The as built drawings are incorrectly labeled in the

remand record index as critical infrastructure data. *See* Decl. ¶ 5. Drawings within this

document are redacted in accordance with PHMSA guidance. *Id*. Other charts and data within

the document remain unredacted. RAR4894-4901.

 The three remaining easement condition-related documents that Plaintiffs seek to add

were not considered by the decisionmaker on remand. Decl. ¶ 6. Plaintiffs' argument to include

them is based purely on speculation. For instance, the "root cause failure analyses," that

Plaintiffs allege is missing from the record, does not exist. Such an analysis is predicated on a

pipe failure during construction. *See* Easement Condition 16, ECF No. 172-9 at 132 ("Any pipe

failure occurring during the pre-in service hydrostatic test must undergo a root failure analysis . .

. ."). Plaintiffs do not allege any pipe failure occurred during hydrostatic testing here. Without a

failure, there is no analysis.

 Plaintiffs similarly fail to show how documents related to conditions 26 and 32 were

considered on remand. *See* Pls.' Mot. 13. Instead, Plaintiffs claim this information "must have

been before the Corps" because they are terms of the easement and are "centrally relevant to the

issues before the Corps on remand." *Id.* at 14.  Condition 26 and 32 relate to safety processes

during operation of the pipeline.  ECF 172-9 at 134-36.  Simply claiming information is relevant

is not enough to require a Court to add the information to the record.  *Pac. Shores Subdivision*,

448 F.Supp. 2d at 5 ("Interpreting the word 'before' so broadly as to encompass any potentially

relevant document existing within the agency or in the hands of a third party would render

judicial review meaningless." (internal citation and alteration omitted)).  As the attached

declaration explains, to the extent documents submitted in compliance with the easement

conditions were considered by the Corps on remand, those documents are already in the record.

Decl. ¶ 6; *see, e.g.,* RAR004507 (O&M manual), RAR004827 (integrity management plan).

Plaintiffs present no basis to add these documents to the record beyond mere relevance, which is

not the standard for completing the record under the law of this Circuit.  *Pac. Shores*

*Subdivision*, 448 F.Supp. 2d at 5.  Accordingly, Plaintiffs' request to add more documents related

to easement conditions should be denied.

> **D.    Third-Party Audit documents were not considered**

A fourth batch of documents that Plaintiffs seek to add to the remand record are those

"related to the independent third party audit."  Pls.' Mot. 14-15, 23( App. C).  As part of its

December 4, 2017 Order, the Court required "Dakota Access, with input from the Tribes," to

"select a third-party independent expert engineering company to review easement conditions and

regulations, and to assess the compliance with all such conditions as well as other integrity

threats."  ECF No. 303 at 1-2.  Audit results were due to the Court on April 1, 2018.  *Id.* at 2; *see*

*also* ECF No. 304 at 7.  In its related opinion, the Court explained, the third party audit, as part

of a larger set of interim conditions imposed by the Court on remand, "do[es] not affect

Defendants' ongoing environmental analysis, nor do[es] [it] constrain the outcome of the remand

process." ECF No. 304 at 3.  Instead, the interim conditions are described as "a means of providing the Court with relevant information . . . ." *Id.*; *see also id.* at 4 ("[T]he interim conditions here do not affect the remand process . . . .").

As mentioned above, one of the documents Plaintiffs requests in this batch of documents—the Pipeline Integrity Management Plan—is already in the record.  RAR004827. Additionally noted below, the Corps will add the Surge Analysis Report to the remand record. The remaining documents in this category were not considered by the Corps on remand.

Plaintiffs' Motion concludes that a "[r]eview of this documentation is necessary to determine whether the Corps' conclusions in the Remand Analysis are supported," but fails to explain what evidence shows these documents were directly or indirectly considered as part of the Remand Analysis.  Pls.' Mot. 15.  Again, it is the Plaintiffs' burden to rebut the presumption of regularity with concrete evidence.  *Charleston Area Med. Ctr.*, 216 F. Supp. 3d at 23.  Here, the evidence clearly establishes that the Corps did not consider it as part of the remand process.

Notably, the audit was ordered at Plaintiffs' insistence, presumably to allay some of their concerns regarding pipeline operation pending completion of the Remand Analysis.  ECF No. 272 at 41-46.  The Corps was not a part of the audit process.  As noted above, some of the documents Plaintiffs request were considered by the Corps for reasons separate from the audit. None of the remaining documents Plaintiffs seek to add, however, were considered by the Corps during the remand process.  Decl. ¶ 7.  Therefore, the Court should deny Plaintiffs' attempt to include them in the remand record.

### E.     Final versions of Draft Documents are included in the record

Plaintiffs' final set of requested documents is the product of confusion.  Plaintiffs state the "record contains drafts of what appear to be critical documents, but not final versions."  Pls.'

Mot 15.  Plaintiffs further describe that they are unable to determine if these documents have been finalized.[3]  *Id.*  These documents and the "various appendices," *id.* at 16, are all initial draft versions of sections of the Corps' Remand Analysis.  Through various revisions, formatting, and edits based on Corps comments, the documents evolved over time to become the final Corps Remand Analysis document and related comments and responses.  RAR00001-140.  Thus, the final versions that Plaintiffs request are already contained in the remand record.

### F.      Documents that the Corps will add to the remand administrative record

After a review of Plaintiffs' Motion and the documents within the remand record, the Corps recognizes that certain documents are properly part of the record and will add them accordingly.  The Corps will add the following eight documents to the remand administrative record: (1) Lee, K., et al., Expert Panel Report on the Behavior and Environmental Impacts of Crude Oil Released into Aqueous Environments, Royal Society of Canada (2015); ( 2) Langangen, O. et al., The effects of oil spills on marine fish: Implications of spatial variation in natural mortality, 119 Marine Pollution Bulletin 102-109 (2017); (3) EFRD Inspection and Test Plans (Pls.' Mot. 8); (4) DAPL Pipeline Surge Analysis Report *id.*); (5) Close Interval Survey *id.*); (6) O'Reilly et al. 2001 (*id.* at 9); (7) May 2, 2018 letters from Omaha District to Yankton Sioux Tribe, Oglala Sioux Tribe, and Cheyenne River Sioux Tribe (*id.* at 16 n.6); and (8) an email string regarding Yankton Sioux Tribe's Consultation Protocols between Thomas Tracy and Jennifer Baker (4/20/18-8/27/18) (including the Corps' application for a Yankton Sioux Tribe Videography, Photography, Audio, and Other Recording Permit) (*id.*).

---

[3] Plaintiffs also claim to have obtained an April 2018 Facility Response Plan through a FOIA request to PHMSA.  The April 2018 version of the Facility Response Plan was not before the Corps during the remand decision-making process. Decl. ¶ 8.

## V.    CONCLUSION

The Corps respectfully requests that this Court deny Plaintiffs' motion to complete the administrative record with respect to all documents except those identified in Section IV.F, above.  Many of the remaining documents are already in the administrative record, and, for the remainder, Plaintiffs fail to overcome the presumption of regularity and fail to provide the concrete evidence and reasonable, non-speculative grounds necessary for the Court to consider adding documents to the remand administrative record.


Dated: March 11, 2019

Respectfully submitted,

JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment & Natural Resources Division

By: /s/ Amarveer Brar
BRIAN COLLINS, TX Bar 24038827
AMARVEER S. BRAR, CA Bar 309615
REUBEN SCHIFMAN, NY BAR
MATTHEW MARINELLI, IL Bar 6277967
U.S. Department of Justice
Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Washington, DC 20044
Phone: (202) 305-0479 (Brar)
Phone: (202) 305-4224 (Schifman)
Phone: (202) 305-0293 (Marinelli)
Phone: (202) 305-0428 (Collins)
Fax: (202) 305-0506
amarveer.brar@usdoj.gov
reuben.schifman@usdoj.gov
matthew.marinelli@usdoj.gov
brian.m.collins@usdoj.gov

ERICA M. ZILIOLI, D.C. Bar 488073
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611

Washington, DC 20044
Phone: (202) 514-6390
Fax: (202) 514-8865
Erica.Zilioli@usdoj.gov

*Attorneys for the United States Army Corps of Engineers*

OF COUNSEL:

MILTON BOYD
MELANIE CASNER
U.S. Army Corps of Engineers
Office of Chief Counsel
Washington, DC

**CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

*/s/ Amarveer Brar*
Amarveer Brar

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| STANDING ROCK SIOUX TRIBE, | ) | |
| Plaintiff, | ) ) ) | |
| and | ) ) | |
| CHEYENNE RIVER SIOUX TRIBE, | ) ) | |
| Plaintiff-Intervenor, | ) ) ) | |
| v. | ) ) | Case No. 1:16-cv-01534 (JEB) (consolidated with Cases No. 1:16-cv-01796 & 1:17-cv-00267) |
| UNITED STATES ARMY CORPS OF ENGINEERS, | ) ) ) | |
| Defendant, | ) ) ) | |
| and | ) ) | |
| DAKOTA ACCESS, LLC, | ) ) | |
| Defendant-Intervenor. | ) ) | |

## DECLARATION OF COLONEL JOHN L. HUDSON

I, Colonel John L. Hudson, declare as follows:

1.      I am currently the District Commander and District Engineer for the U.S. Army Corps of Engineers, Omaha District. In that capacity, I oversee all activities and operations of the Omaha District, including the Lake Oahe project.

2.      I submit this Declaration in support of Federal Defendant's Opposition to Plaintiffs' Motion to Complete Administrative Record.

3.      Plaintiffs seek to add a "report" on pipeline spills that was compiled from Pipeline and Hazardous Materials Safety Administration ("PHMSA") data. The USACE Omaha District did not compile a report from PHMSA data. The Corps did not have access to PHMSA's underlying data. Rather, the USACE Omaha District used "historical annual report data obtained from the PHMSA" to analyze "the frequency of reported hazardous liquid 'accidents' (accident frequency) per 1,000 pipeline miles." RAR000014. The data is already included in the Remand Administrative Record as

1

it is produced in the body of the Remand Analysis.  RAR000014-17.  The numbers and tables reflected in the remand analysis consist of everything that was before the Corps from PHMSA's website.  *Id.*

4.      Plaintiffs also seek to add all of the documents identified throughout, and in the list of references to, the Downstream Receptor Report and the Spill Model Report.  Energy Transfer Partners produced the Downstream Receptor Report and the Spill Model Report and provided those documents to the USACE Omaha District.  Beyond any documents already included in the Remand Administrative Record, the USACE Omaha District did not have the documents identified throughout, or listed as references to, the Downstream Receptor Report or the Spill Model Report before it in the process of making the remand decision.

5.      The Remand Administrative Record index incorrectly labeled RAR004894 as containing critical infrastructure data.  The as-built drawings are properly redacted in accordance with PHMSA guidance.  The updated index for the Revised Remand Administrative Record will correct this error.

6.      With respect to documents that are required to be submitted under the terms of the Special Conditions to Department of the Army Easement for Fuel Carrying Pipeline Right-of-Way Located on Lake Oahe Project Morton and Emmons Counties, North Dakota, any documents Energy Transfer Partners submitted in compliance with the easement that the USACE Omaha District considered in the remand analysis are already included in the Remand Administrative Record.  Any submitted documents not included in the Remand Administrative Record were not considered by the USACE Omaha District for purposes of evaluating the issues on remand.

7.      With respect to documents related to the third party audit, the USACE Omaha District was not involved in the third party audit and did not consider any documents related to the third party audit when evaluating the issues on remand beyond any already included in the Remand Administrative Record.

8.      With respect to the April 2018 Facility Response Plan that Plaintiffs obtained from PHMSA through a FOIA request, the USACE Omaha District did not have the April 2018 Facility Response Plan before it in the process of making the remand decision.

9.      This declaration is made under the provisions of 28 U.S.C. § 1746.  I declare under penalty of perjury that the foregoing is true and correct.

Dated:  March 11, 2019

_____
John L. Hudson, P.E.
Colonel, U.S. Army Corps of Engineers
District Commander