IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | Case No. 1:16-cv-1534-JEB |
| Plaintiff, | (and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |
| and | |
| CHEYENNE RIVER SIOUX TRIBE, | |
| Plaintiff-Intervenor, | |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, | |
| Defendant-Cross Defendant, | |
| and | |
| DAKOTA ACCESS, LLC, | |
| Defendant-Intervenor-Cross Claimant. | |

**REPLY IN SUPPORT OF MOTION TO COMPLETE
ADMINISTRATIVE RECORD**

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB)

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

I.     WHETHER THE MISSING DOCUMENTS ARE "PUBLICLY
AVAILABLE" ELSEWHERE IS IRRELEVANT. ................................................1

II.    THE ADMINISTRATIVE RECORD OMITS DOCUMENTS
DIRECTLY OR INDIRECTLY CONSIDERED BY THE CORPS......................3

     A.    Sources Directly Cited in Remand Analysis................................................3

     B.    Sources Cited in the Spill Model and Downstream Receptor
Reports. ....................................................................................................5

     C.    Documents Missing from the Original Administrative Record. ..................7

     D.    Documents DAPL Had to Submit Under the Terms of the
Easement. .................................................................................................9

     E.    Documents Related to the Independent Third Party Audit........................11

     F.    Final Versions of Key Documents Only Provided in Draft.......................11

CONCLUSION..................................................................................................................12

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - i

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

## INTRODUCTION

Plaintiffs Standing Rock Sioux Tribe ("SRST"), Cheyenne River Sioux Tribe ("CRST"), Oglala Sioux Tribe, and Yankton Sioux Tribe (collectively, "Tribes") respectfully submit this consolidated reply brief in support of their motion to complete the record. (ECF 401).  In its opposition to the Tribes' motion, the Corps does not deny that the administrative record omits several documents that are the subject of the motion, nor does it deny that these documents are important to the Court's review of the remand decision.  Indeed, it concedes that the record is incomplete.  For the most part, however, the Corps offers a litany of excuses to justify its refusal to provide these documents.  With a few exceptions, these excuses are ill-founded.  As discussed further below, the documents sought by the Tribes were considered either directly or indirectly by the Corps in arriving at its remand decision, and must be included in the record.[1]

I.      WHETHER THE MISSING DOCUMENTS ARE "PUBLICLY AVAILABLE" ELSEWHERE IS IRRELEVANT.

The parties generally agree that the administrative record includes "all documents and materials that the agency directly or indirectly considered. . ." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corp. of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006) (internal quotations and citations omitted).  Defendants also appear to agree that a plaintiff need not show "unusual circumstances" to warrant supplementation of the record with missing materials, but only "reasonable, non-speculative grounds" that documents were directly or indirectly considered by the agency.  *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78 (D.D.C. 2018).  DAPL, however, argues that documents need not be added to the record where they are "publicly

---

[1] As noted in the Tribes' Motion to Complete ("Tr. Mot. Compl."), pursuant to L.R. 7(n), the Tribes and Defendants agreed to file a joint appendix containing record documents cited in the briefing on this motion at the conclusion of the briefing.  Tr. Mot. Compl. 3 n.1.  The parties have agreed to file the appendix on or before March 22, 2019.

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 1

available."  DAPL Opposition to Plaintiff's Motion to Complete the Administrative Record

("DAPL Opp. Br.") (ECF 403), at 13.  In its view, documents requested by Tribes "are already

publicly available through a basic Google search."  *Id*. at 13, 18.  According to DAPL, "nothing

stops a party from urging a court to consider a legally relevant, publicly available document cited

(as opposed to formally included) in a paginated administrative record."  *Id*. at 17 n. 7.  And with

respect to data cited from websites, DAPL dismissively suggests that the Tribes can just go look

up the websites cited in the Remand Analysis themselves.  *Id*. at 18.

 This is a disingenuous sleight of hand.  The issue is not the *availability* of the documents

to the Tribes, but their *inclusion* in an administrative record that, under most circumstances,

defines the scope of this Court's review.  A plaintiff in an Administrative Procedure Act

("APA") case may urge the Court to consider extra-record evidence, but the standard is often a

difficult one.  ECF 401 at 7 n.2; *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F.

Supp.3d 101, 124-25 (D.D.C. 2017) (denying motion to supplement with extra-record

evidence).[2]  If the Tribes moved for consideration of extra-record documents or website data

during the summary judgment stage, DAPL surely would oppose it as vehemently as it has every

other motion the Tribes have filed.  The Tribes' ability to move at a later date to supplement the

record is irrelevant to the question of whether the materials should have been included in the

record in the first place, and DAPL's effort to reframe this motion should be rejected.

---

[2] This is so even when the evidence is such that it would normally be subject to judicial notice. "Because review of an agency decision is limited to the administrative record before the agency at the time of the decision, … a court may only consider an adjudicative fact subject to judicial notice that is *not* part of the administrative record if it qualifies for supplementation as extra-record evidence…." *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 32 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015).

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 2

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

II.     THE ADMINISTRATIVE RECORD OMITS DOCUMENTS DIRECTLY OR
        INDIRECTLY CONSIDERED BY THE CORPS.

        A.     Sources Directly Cited in Remand Analysis.

        Following remand, the Corps announced its findings in a conclusory two-page

Memorandum for the Record that concluded by stating: "The Corps has outlined the rationale

supporting these findings in the enclosed document and in the Administrative Record."  RAR 2.

The "enclosed document" was the Remand Analysis, RAR 3, which the Corps acknowledges as

summarizing its findings on remand.  Corps Opposition to Tribes Motion to Complete Record

(ECF 402) ("Corps Resp. Br.") at 2.  The Remand Analysis is, in essence, the Corps' decision on

remand.  Documents cited therein were clearly considered by the Corps, directly or indirectly,

and must be made part of the record.  A document "that is cited in the agency's actual decision

document indicates 'consideration of the contents of the [] document' by the decision-maker."

*Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1241-42 (E.D. Cal. 2013).  In

*Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73 (D.D.C. 2018), this Court agreed, stating "[i]f a

document was substantively cited [in a NEPA document], the [agency] clearly considered that

document."  *Id.* at 79.

        The Corps appears to concede the point that such documents belong in the record, as it

offers to supplement the record with a number of documents cited in the Remand Analysis and

called out in the Tribes' brief.  As to the rest, however, the Corps refuses to provide them,

claiming that the Tribes must cite to "specific documents." Corps Resp. Br. 6.  This narrow

parsing of the caselaw is unpersuasive.  *Charleston Area Med. Ctr v. Burwell,* 216 F. Supp. 3d

18, 23 (D.D.C. 2016), the case relied upon by the Corps, does not allow the Corps to refuse to

provide documents simply because the Tribes didn't include a specific list of each of them in the

motion itself, when they can be plainly identified from the underlying document.

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 3

A plaintiff may show that the record is "[i]nsufficien[t]"—*i.e.*, incomplete—only if she is able to "specif[y] ... documents that ha[ve] been omitted."  In other words, "a plaintiff must put forth concrete evidence" and "'identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.'"

*Id.* at 23 (citations omitted).  The Tribes' motion explicitly sought all documents referenced by name in the Remand Analysis.  The motion identified some specific documents as *examples* of the types of documents that are identified in the Remand Analysis but that not included in the record.  Tr. Mot. Compl. 8-9.  The motion was sufficient to satisfy the *Charleston Area Medical Center* standard, because it provides the concrete evidence and grounds for inclusion in the record—namely, that the Corps cited and relied on the materials in its decision.  The fact that it cited some specific documents as examples, while asking for all documents explicitly referenced in the analysis, is of no significance.  In the unlikely event the Court believes that a list of documents is necessary, the Tribes have included one as Appendix A to this reply.

While the Corps has agreed to update the Corps with some documents used as examples in the Tribes' motion, its failure to include them at the outset, combined with their failure to offer any explanation for these omission, demonstrates the deficiency of the record that was produced.  It overcomes the normal presumption of regularity that applies to the production of administrative records by an agency.  *See, e.g., Portland Audubon Soc. v. Endangered Species Committee*, 984 F.2d 1534, 1548 (9th Cir. 1993) ("where the so-called 'record' looks complete on its face and appears to support the decision of the agency but there is a subsequent showing of impropriety in the process, that impropriety creates an appearance of irregularity which the agency must then show to be harmless").

The Corps' agreement to add one particular document to the record highlights the inadequacy of their response.  The Corps concedes that "O'Reilly et al. 2001" should have been

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 4

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

included in the record, indicating that it was in fact considered by the Corps in the remand.

Corps Resp. Br. 17.  But the Corps does not address other studies and reports that were cited on

the very same pages of the Remand Analysis as the O'Reilly paper, on the same general subject,

and which are not contained in the record.  *See* RAR 11 (citing Charbendeau et al., 2000;

Charbeneau, 2003; Freeze and Cherry 1979; Kerr et al., 1999; Muller, 1987).  It offers no

explanation for these omissions or for the inconsistent treatment of these cited sources.

In sum, the Corps has provided no arguments to overcome case law recognizing that

documents cited by an agency in its decisional document were considered by the agency, and so

must be included in the record.  This Court should order the Corps to complete the record with

all sources cited in the Remand Analysis.

B.     Sources Cited in the Spill Model and Downstream Receptor Reports.

The Tribes also seek sources discussed, cited, or relied on in the Spill Model Report and

the Downstream Receptor Report (together, the "Reports").  The Corps and DAPL resist on the

grounds that the Reports were prepared by DAPL, not the Corps, and so the Corps did not

directly review and consider the sources cited in these two documents.  Corps Resp. Br. 7-8,

DAPL Opp. Br. 14-16.  This response ignores how and why the Reports were prepared, and how

they have been used in the remand.  Sources cited in the Reports are just like sources cited in the

Remand Analysis, and should be provided.

The Reports were produced by DAPL and its consultant at the Corps' request.  DAPL

Opp. Br. 15 & n. 15.  In turn, the Reports were relied on extensively by the Corps in its remand

decision.  They are, in fact, central to the decision.  The Downstream Receptor Report's findings,

and even some of the specific studies cited in it, are explicitly incorporated into the Remand

Analysis.  *See, e.g.,* RAR 42-43; 89-90.  The same is true with the Spill Model Report, cited over

a hundred times in the Remand Analysis.  *See* RAR 23 ("This document incorporates the Spill

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 5

Model results ….").  The Corps' Memorandum for the Record explicitly incorporates record

documents like the Reports in its final decision.  RAR 2 ("The Corps has outlined the rationale

supporting these findings in the enclosed document [i.e., the Remand Analysis] and in the

Administrative Record.").  As this Court recently confirmed, "[a]n agency's decision to rely on a

document to support a factual assertion is different from its mere mention of a document's

existence."  *Oceana*, 290 F. Supp. 3d at 80.

       While the Tribes do not contend that every reference cited anywhere in the administrative

record needs to be included, the Reports lie at the heart of the Corps' decision.  They were

prepared at the direction of the Corps (as opposed to, for example, the Tribes' submissions), and

relied on extensively by the Corps in its decisional document.  They are essentially part of the

decision itself.  While the Corps claims that it did not directly consider the referenced

documents, it is entirely customary for project proponents or third party consultants to prepare

EISs and other NEPA documents, subject to the agency "mak[ing] its own evaluation of the

environmental issues and tak[ing] responsibility for the scope and content [of the document]."

40 C.F.R. § 1506.5(b) (EAs); *see also* 40 C.F.R. § 1506.5(a), (c) ("If the [EIS] is prepared by

contract, the responsible Federal official … shall independently evaluate the statement prior to its

approval and take responsibility for its scope and contents.").  In such an instance, the agency

official signing the EIS presumably has not "directly" considered each and every document cited

in an EIS prepared by a third party.  Even so, courts require them to be included in the record, as

they were "indirectly considered."  *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345

F. Supp. 3d 1, 10 (D.D.C. 2018) (where National Indian Gaming Commission (NIGC)

considered letter from Interior Solicitor which addressed 39 documents submitted to it by

plaintiff, Court ordered the documents included in the record in case against NIGC:  "NIGC did

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 6

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

consider the entirety of the Solicitor's Letter and thus indirectly considered the 39 documents that were discussed in its analysis.").  The same is true for the Reports.

The Downstream Receptor Report and Spill Model Report are not like any other third-party submission document in the administrative record.  They are foundational components of the Corps' remand and, essentially, part of the decision itself.  They are akin to chapters in or appendices to an EIS—prepared by third parties but adopted by the Corps.  Insofar as the Corps has conceded that documents in the Remand Analysis must be included in the record (as long as they are specifically identified), this concession should extend to the Reports.  The references contained in the two documents, and listed in the documents themselves, should be included in the record.

      C.      <u>Documents Missing from the Original Administrative Record.</u>

The Tribes motion identified a small number of documents that were cited in the original EA, or that plainly existed—for example, documents referenced in another document—but were not included in the record.  Tr. Mot. Compl. 10-12; Appendix A (listing documents).  Defendants make no effort to argue that these documents did not belong in the record.  Instead, they primarily argue that it is too late for the Tribes to raise the issue.  Corps Resp. Br. 9-13.

These arguments fail for several reasons.  First, defendants appear to have combed through every brief and status conference transcript over the past two years to craft a narrative that the Tribes could have moved to complete the record at some earlier point.  Obviously missing from this timeline is any actual deadline established by the Court by which any party had to file such a motion.  Of course, this motion could have come at a different time, but there was never any requirement that it be filed earlier.  Nor has the Court previously determined whether it was proper for the Corps to exclude from the original record documents listed in the Tribes' motion.

Second, defendants primarily cite opportunities that SRST and CRST had to litigate the completeness of the record.  But the Oglala Sioux Tribe ("OST") and Yankton Sioux Tribe ("YST") have expressly preserved their pre-remand claims, ECF 385 (OST's notice preserving, *inter alia*, claim under Mni Wiconi Project Act unique to OST); ECF 386 (YST).  The original record remains "live" for purposes of the pending summary judgment motions for these parties at least.  As to all plaintiffs, as demonstrated in the Corp's remand decision, the adequacy of the Final EA and the Corps' decisions not to prepare an EIS remain at issue.  RAR 1 ("the Corps concludes that a formal reconsideration of the [Final EA] and [FONSI] or the preparation of supplemental [NEPA] documentation is not required").

Third, defendants' overheated rhetoric about what they perceive to be missed opportunities to address deficiencies in the original record ignores the unique circumstances of this case.  As the Court knows, the Tribes' goal of blocking the construction of the pipeline prior to a complete environmental review was achieved out of the courtroom: initially, on September 9, 2016, when the Corps and other federal agencies announced that they would be undertaking a review of the Tribes' concerns, and then finally on December 4, 2016, when it announced that it would undertake an EIS considering route alternatives.  During that phase, this litigation shifted and it was DAPL—not the Tribes—that was challenging the Corps' actions.  *See* ECF 66 (DAPL motion for summary judgment).  The Tribes were not at that time scrutinizing the initial record for shortcomings but rather focusing their efforts on the administrative processes.  It was only after the newly inaugurated Trump administration reversed the Corps' decision and abandoned the EIS, and pipeline construction started again, that the Tribe's litigation resumed.  *See, e.g.,* ECF 106 (SRST amended complaint).  And because it was important for the Tribes' concerns to be addressed before construction was completed, SRST moved for summary judgment on an

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 8

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

aggressive schedule before the administrative record (covering the new administration's about-face) was even filed.  ECF 117-1.  It is hardly surprising that there was limited opportunity to litigate the completeness of the record during this phase.

Now, having prevailed in part on its summary judgment motion and triggered a remand, the Tribes have worked in good faith to provide critical information to help shape the Corps' review and correct the errors it made during the original NEPA process.  During the course of that work, it became apparent that certain documents were missing from the original record that had not been apparent before.  Documents such as correspondence with other agencies about oil spills; emails from the proponent that were used to develop the Corps' deeply flawed worst case discharge calculation; and internal documents about federal efforts to control oil spills.  *See* Tr. Mot. Comp. at 19; App. A.  Defendants do not even try to argue that these missing documents do not meet the standards for inclusion in the record.  Nor could they, because they obviously meet the standard.  Instead, they claim that the Tribes should have sought them earlier.  This argument should be rejected and the Corps ordered to include the materials in Appendix A in a revised record.

       D.     <u>Documents DAPL Had to Submit Under the Terms of the Easement.</u>

The Tribes' motion identified six documents that DAPL was required to provide to the Corps under the terms of the easement, related to the very issues being studied in the remand.  Tr. Mot. Compl. at App. B.  The Corps opposes including any of these documents.

The Corps starts its opposition with egregious misdirection, claiming that the O&M manual and integrity management plans in the record are "specific" to DAPL.  Corps. Resp. Br. at 13.  That is simply false.  With respect to the O&M plan, the very document that the Corps cites explains that no DAPL-specific O&M plan had been prepared to that point and that until one was prepared, DAPL would operate under the generic Sunoco Plan.  RAR 4499-4500.  The

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

situation is the same with respect to the integrity management plan.  Emails indicate that the

pipeline was provisionally operating under this generic Sunoco plan until a DAPL-specific plan

could be finalized.  RAR 4741-42.  Both the easement and PHMSA regulations require these

plans to be finalized before the start of operations.  49 C.F.R. § 195.452(f) (detailed elements for

integrity management plans).  Whether or not these plans were prepared is important for the

summary judgment analysis.  It is telling that neither the Corps nor DAPL can confirm whether

these documents even exist.  The Court should order the Corps to either submit the final plans or

confirm that they do not exist, as they've done with other documents.  *See* Hudson Decl. (ECF

402-1).

      The Corps offers no explanation for redacting the as-built drawings except to say that

they were incorrectly labeled in the record, but redacted "in accordance with PHMSA guidance."

*Id*. at 14; Hudson Decl. ¶ 5.  This explanation is inscrutable.  The Corps does not cite to

guidance, or any statute or regulation, which allows this material to be redacted, or any

correspondence from PHMSA directing that it be withheld.  This information is protected by the

existing protective order.  Accordingly, the Corps should be required to complete the record with

an unredacted version of this document.

      With respect to certain documents, like the root cause failure analysis, the Corps avers

that they do not exist.  Corps Resp. Br. at 14.  If that is really so, then there is nothing to

produce.[3]  But with respect to others, the Tribes have offered "reasonable, non-speculative

grounds for their belief that the documents were considered by the agency."  *Pacific Shores Sub.*,

---

[3] These documents were specifically called out in the SRST letter to the Corps.  ECF 402-2.  Had
the Corps responded to the Tribe's letter or otherwise engaged in a dialogue around the record as
SRST requested, this issue and some others in this motion could have been resolved without
involving the Court.

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 10

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

448 F. Supp. 2d at 6.  The Corp *requires* DAPL to provide inspection reports and annual reports detailing deviations from corrosion limits.  Unlike the "root cause failure analysis" and some of the references in DAPL-produced documents, the Corps does not claim that such documents do not exist, and hence the Court should presume that they do.  They are also directly pertinent to the issues on remand—specifically, the operational safety of the pipeline.  If, for example, these reports reveal significant problems that threaten the pipeline's integrity, then that information was indirectly considered by the Corps' analysis on remand.  Allowing the Corps to keep such material confidential undermines the entire purpose of APA review and results in a one-sided record where unfavorable information is allowed to be withheld from the record.  *Walter O. Boswell Mem' l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision.").  The Court should require the Corps to include these documents in a revised record.

  E. <u>Documents Related to the Independent Third Party Audit.</u>

 The Corps avers that it did not review any of the material used during the independent audit process.  For example, the audit documents a spill and cleanup incident during construction, as well as various inspection reports.  It is shocking to the Tribes that the Corps is evidently uninterested in this material, which bears directly on the questions before the Corps on remand.  However, the Tribes agree that this is a matter for their substantive challenge to the remand.

  F. <u>Final Versions of Key Documents Only Provided in Draft.</u>

 The Corps has stated that the requested draft documents were finalized as other documents that appear in the record, and that the Corps never reviewed the 2017 Facility Response Plan ("FRP").  Accordingly, the Tribes do not pursue their request for such documents

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 11

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

in this motion but reserve the right to introduce the 2017 FRP as extra-record evidence in due course.

## CONCLUSION

For the foregoing reasons, as well as those stated in Plaintiff's Motion to Complete the Administrative Record (ECF 403), the Tribes respectfully request that their motion to complete the record be GRANTED.

Respectfully submitted this 18th day of March, 2019.

/s/ Jan E. Hasselman
Jan E. Hasselman, WSBA # 29107
(*Admitted Pro Hac Vice*)
Stephanie Tsosie, WSBA # 49840
(*Admitted Pro Hac Vice*)
Patti A. Goldman, DCBA # 398565
Earthjustice
705 Second Avenue, Suite 203
Seattle, WA  98104
Telephone: (206) 343-7340
jhasselman@earthjustice.org
stsosie@earthjustice.org
pgoldman@earthjustice.org
*Counsel for Standing Rock Sioux Tribe*

/s/ Joseph V. Messineo
Joseph V. Messineo
Fredericks Peebles & Morgan LLP
3610 North 163rd Plaza
Omaha, NE 68116
Telephone: (402) 333-4053
Facsimile: (402) 333-4761
jmessineo@ndnlaw.com
*Counsel for Cheyenne River Sioux Tribe and Steve Vance*

/s/ Michael L. Roy
Michael L. Roy (DC Bar No. 411841)
mroy@hobbsstraus.com
Jennifer P. Hughes (DC Bar No. 458321)
jhughes@hobbsstraus.com
Elliott A. Milhollin (DC Bar No. 474322)
emilhollin@hobbsstraus.com
Hobbs, Straus, Dean & Walker, LLP
2120 L Street, NW, Suite 700
Washington, DC 20037
Telephone: (202) 822-8282
Facsimile: (202) 296-8834
*Counsel for Oglala Sioux Tribe*

/s/ Jennifer S. Baker
Jennifer S. Baker, *Pro Hac Vice*
Jeffrey S. Rasmussen, WA #21121
Fredericks Peebles & Morgan LLP
1900 Plaza Drive
Louisville, CO 80027
Telephone: (303) 673-9600
Facsimile (303) 673-9155
jbaker@ndnlaw.com
*Counsel for Yankton Sioux Tribe and Robert Flying Hawk*

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 12

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

## APPENDIX A – DOCUMENTS CITED IN REMAND ANALYSIS MISSING FROM ADMINISTRATIVE RECORD[4]

| Document | AR |
|---|---|
| Standing Rock Game and Fish Dep't Website, http://gameandfish.standingrock.org/proclamations/fishingsmall-gameprairie-dog/ (last visited July 24, 2018) | RAR000010 |
| Charbendeau et al., 2000 | RAR000011 |
| Charbeneau, 2003 | RAR000011 |
| Freeze and Cherry 1979 | RAR000011 |
| Kerr et al., 1999 | RAR000011 |
| Muller, 1987 | RAR000011 |
| USEPA, 2016 | RAR000011 |
| Stantec, 2015 | RAR000012 |
| Marathon Oil 2010 | RAR000012 |
| Annual Report Mileage for Hazardous Liquid or Carbon Dioxide Systems, (Aug. 1, 2018) | RAR000014–15, RAR000058 |
| Pipeline Incident 20 Year Trends, Significant Incident 20 Year Trend, (Dec. 6, 2017) | RAR000015 |
| National Pipeline Performance Measures, Accidents Impacting People or the Environment (Dec. 7, 2017) | RAR000016 |
| Gas Distribution, Gas Gathering, Gas Transmission, Hazardous Liquids, Liquefied Natural Gas (LNG), and Underground Natural Gas Storage (UNGS) Annual Report Data, Reportable Incident Data for Hazardous Liquid and Gas Transmission Pipelines (2010-Present) | RAR000018–19, RAR000059 |
| United States Government Accountability Office, Pipeline Safety: Additional Actions Could Improve Federal Use of Data on Pipeline Materials and Corrosion, 20 (August 2017). | RAR000018 |
| French, D., et al. 1996, Final Report, The CERCLA Type A Natural Resource Damage Assessment Model for Coastal and Marine Environments (NRDAM/CME), Technical Documentation, Vol. I- V., Office of Environmental Policy and Compliance, U.S. Department of the Interior, Washington, DC, Contract No. 14-0001-91-C-11 (1996) | RAR000022 |
| Corps Lake Oahe cross-section data from 2007 and 2012 | RAR000023 |
| U.S. Geological Survey and Corps discharge data from gaging stations; | RAR000023 |
| Wind data from the U.S. National Centers for Environmental Prediction Climate Forecast System Reanalysis model for the period between 2000 and 2010 | RAR000023 |
| French McCay et al., 2011 | RAR000025 |
| French McCay et al., 2012 | RAR000025 |
| French McCay, 2016 | RAR000025 |
| French et al., 1996 | RAR000025 |

---

[4] List does not include documents that the Corps has agreed to add.

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 13

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

| | |
|---|---|
| French McCay, 2009 (based on review of Engelhardt, 1983, Clark 1984, Geraci and St. Aubin 1988, and Jessen 1994 on oil effects on aquatic birds and marine mammals); | RAR000025 |
| French McCay, 2009 | RAR000025 |
| Trudel et al. 1989 | RAR000025 |
| French McCay 2004 | RAR000025 |
| French McCay 2002 | RAR000025 |
| NMFS Website, http://response.restoration.noaa.gov/oil-andchemical-spills/oil-spills/how-oil-spills-affect-fishand-whales.html | RAR000042–43, RAR000090 |
| Hodson, P. V. Report on the Toxicity of Oil to Fish, DFO Contract #F2471-080006 (August 26, 2008). | RAR000043 |
| Water Problems on the Standing Rock Sioux Reservation: Oversight Hearing to Received Testimony on Problems that Have Been Experienced by the Standing Rock Sioux Tribe & Tribes Situated Along the Missouri River, 108th Cong., 2nd Sess. (2004) (statement of Dennis Breitzman, Area Manager, Dakotas Area Office, Bureau of Reclamation), available at https://www.gpo.gov/fdsys/pkg/CHRG-108shrg97093/html/CHRG-108shrg97093.htm. | RAR000066 |
| Chakraborty and Armstrong 1997 | RAR000069 |
| Hamilton and Viscusi 1999 | RAR000069 |
| Sheppard et al. 1999 | RAR000069 |
| Saha and Mohai 2005 | RAR000069 |
| Mohai and Saha 2006 | RAR000069 |
| U.S. Census Bureau. U.S. Census Bureau, 2011-2015 American Community Survey 5-Year Estimates | RAR000070, 71 n.17, 73–74, 76–81 |
| American Community Survey, https://www.census.gov/data/tables/timeseries/demo/income-poverty/historicalpoverty-thresholds.html | RAR000071 |
| Table B17021, https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml | RAR000071–72 |
| U.S. Census Bureau Report Number ACS-17, Changes in Areas with Concentrated Poverty: 2000 to 2010 | RAR000072 |
| U.S. Census Bureau Statistical Brief, Poverty Areas, June 1995 | RAR000072 |
| DGTC, 2014 | RAR000093 n.25 |
| Final Report, R-ETP-20160510: Dakota Access Pipeline Project Lake Oahe HDD Crossing Risk Analysis ("HDD Crossing Risk Analysis") (May 10, 2016). | RAR000116 |
| American Society of Mechanical Engineers (ASME) standard ASME B31.8S, Managing System Integrity of Gas Pipelines. | RAR000117 |
| DOT 195, Subpart H, Corrosion Control, ASME B31.4 | RAR000128 |
| Transportation specifications API RP 5L1 (Railroad), API RP 5LW (Marine), and API RP 5LT (Truck) | RAR000129 |
| Pipeline welding specification API 1104. | RAR000131 |
| PHMSA requirements and API-RP-1130 guidance. | RAR000126 |
| Horizontal Directional Drill Design Services Report (HDD Report) (August 2015) | RAR000134 |

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 14

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA 98104*
*(206) 343-7340*

| Directional Drill Plan of Procedure Dakota Access Pipeline Project (Michels Directional Crossings, August 18, 2015) | RAR000134 |
|---|---|
| ER 1130-2-550 | RAR000135 |
| Energy Transfer Capital Projects in Excess of US $50 million, 2006-2014 (provided Dec, 2, 2016). | RAR000135 |

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 15

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 18, 2019, I electronically filed the foregoing REPLY IN

SUPPORT OF MOTION TO COMPLETE ADMINISTRATIVE RECORD with the Clerk of the

Court using the CM/ECF system, which will send notification of this filing to the attorneys of

record and all registered participants.


*/s/ Jan E. Hasselman*
Jan E. Hasselman

REPLY IN SUPPORT OF MOTION TO
COMPLETE ADMINISTRATIVE RECORD
(No. 1:16-cv-1534-JEB) - 16

*Earthjustice*
*705 Second Ave., Suite 203*
*Seattle, WA  98104*
*(206) 343-7340*