UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STANDING ROCK SIOUX TRIBE,**<br><br>Plaintiff,<br><br>and<br><br>**CHEYENNE RIVER SIOUX TRIBE,**<br><br>Plaintiff-Intervenor, *et al.*,<br><br>v.<br><br>**U.S. ARMY CORPS OF ENGINEERS,**<br><br>Defendant,<br><br>and<br><br>**DAKOTA ACCESS, LLC,**<br><br>Defendant-Intervenor and Cross-Claimant. | Civil Action No. 16-1534 (JEB) (and Consolidated Case Nos. 16-267 and 16-1769) |

## MEMORANDUM OPINION

For three years, this Court has presided over a dispute regarding the legality of the construction and operation of the Dakota Access Pipeline. In 2017, it remanded several National Environmental Policy Act issues to the Army Corps of Engineers for reconsideration. The Corps has now issued its decision on remand, which is the subject of challenges from Plaintiffs, assorted American Indian Tribes. The substance of those challenges is not yet at issue; instead, the Court now addresses a threshold matter. Plaintiffs have moved for the inclusion of several documents and sets of documents in the administrative record that they believe were considered

1

by the agency but improperly excluded. Finding merit in some of these requests but not in others, the Court will grant in part and deny in part the Motion to Complete the Administrative Record.

I.      **Background**

The legal and factual background of this case has been laid out extensively in the Court's prior Opinions. Only a small subset is relevant to the present dispute.

On June 14, 2017, the Court ruled on cross-motions for partial summary judgment relating to "the Corps' alleged failure to comply with the National Environmental Policy Act" when it "grant[ed] permits to Dakota Access to construct and operate [the pipeline] under Lake Oahe." Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock III), 255 F. Supp. 3d 101, 112 (D.D.C. 2017). NEPA requires that an agency "prepare an Environmental Impact Statement [(EIS)] for any proposed major federal action 'significantly affecting the quality of the human environment.'" Id. at 113 (quoting 42 U.S.C. § 4332(2)(C)). To determine whether it must prepare an EIS, an agency "first drafts an Environmental Assessment [(EA)]." Id. "If, after preparing an EA, the agency determines that an EIS is not necessary, it must prepare a Finding of No Significant Impact (FONSI) setting forth the reasons why the action will not have any significant impact on the environment." Id. If there will be no significant impact on the environment because of the agency's commitment to ensure mitigation measures are performed, it prepares a Mitigated FONSI. Id. In this case, the Corps determined, after preparing an EA, that a Mitigated FONSI was all that was required. Id. at 116.

The Court found that "the Corps' decision . . . largely complied with NEPA," but with "substantial exceptions." Id. at 147. Consequently, it remanded to the Corps to consider: "(1) the degree to which the project's effects are likely to be highly controversial; (2) the

consequences of a spill for the Tribes' fishing and hunting rights; and (3) the environmental-justice impacts of the project." Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock IV), 282 F. Supp. 3d 91, 96 (D.D.C. 2017) (citing Standing Rock III, 255 F. Supp. 3d at 111–12).

The Corps completed the remand process on August 31, 2018. See ECF No. 407, Exh. A-1 (Remand Administrative Record) at 1. It "conclude[d] that a formal reconsideration of the . . . [EA] and [FONSI] or the preparation of supplemental [NEPA] documentation [was] not required." Id. That is, upon further analysis, it stood by its prior conclusions. Plaintiffs have now moved to complete the Administrative Record on which the Corps relied in reaching its decision after remand. See ECF No. 401 (Plaintiffs' Motion). In doing so, they seek to have the Corps add documents that they contend it actually considered in its decision. Id. at 4. Plaintiffs request, consequently, that the Court "direct the Corps to complete the record" with the documents they enumerate. Id. at 5. The purpose of their effort is to ensure that the Court has certain material before it when assessing the merits of the Corps' decision on remand.

## II.     Legal Standard

In any regulatory challenge, the Court's "review is to be based on the full administrative record that was before the Secretary at the time [s]he made h[er] decision." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971); see also 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party."). As part of the record, the Court may consider "any document that might have influenced the agency's decision" and not merely those documents the agency expressly relied on in reaching its final determination. See Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys., 516 F.2d 1229, 1241 (D.C. Cir. 1975); see also Amfac Resorts, LLC v. U.S. Dep't of the Interior, 143 F. Supp. 2d 7, 12 (D.D.C.

2001). The goal, ultimately, is for the Court to have before it a "record that delineates the path by which [the agency] reached its decision." Occidental Petroleum Corp. v. SEC, 873 F.2d 325, 338 (D.C. Cir. 1989).

And so the agency is responsible for producing such administrative record. See Univ. of Colo. Health at Mem. Hosp. v. Burwell, 151 F. Supp. 3d 1, 12 (D.D.C. 2015). When the agency does so, the record "is entitled to a strong presumption of regularity." Sara Lee Corp. v. Am. Bakers Ass'n, 252 F.R.D. 31, 34 (D.D.C. 2008); see also Marcum v. Salazar, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). A plaintiff may show that the record is "[i]nsufficien[t]" — *i.e.*, incomplete — only if she is able to "specif[y] . . . documents that ha[ve] been omitted." NRDC v. Train, 519 F.2d 287, 291 (D.C. Cir. 1975). In other words, "a plaintiff must put forth concrete evidence" and "identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." Marcum, 751 F. Supp. 2d at 78 (quoting Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)). Then, if the Court finds that the record produced "clearly do[es] not constitute the 'whole record' compiled by the agency," it will order the agency to complete the record. See Overton Park, 401 U.S. at 419 (quoting 5 U.S.C. § 706).

## III. Analysis

The instant dispute revolves around three categories of documents Plaintiffs believe should have been included in the record. They originally sought five but have apparently accepted the Corps' representation that the other two either were not considered or already appear in the record — namely, those relating to a third-party audit and final versions of documents they believed were provided only in draft. See ECF No. 405 (Plaintiffs' Reply) at 11–12. At issue here, consequently, are: (1) sources discussed in the Remand Analysis; (2)

documents Plaintiffs maintain should have been included in the prior Administrative Record underlying the Corps' <u>original</u> NEPA decision; and (3) documents related to the terms of Dakota Access's easement to operate the pipeline at Lake Oahe. The Court will address each in turn.

    A.    <u>Sources Discussed in Remand Analysis</u>

Plaintiffs first contend that the "Remand Analysis cites to and relies on a number of technical supporting documents that are not in the record." Pl. Mot. at 8. Several of these the Corps has agreed should properly have been included and has thus committed to add them. <u>See</u> ECF No. 402 (Defendant's Opposition) at 4, 17. Remaining at issue, therefore, are a report on pipeline spills and the Pipeline and Hazardous Materials Safety Administration (PHMSA) data underlying it; technical citations from the EA cited in the Remand Analysis; and the list of references and sources cited within "two key supporting technical documents that support the Remand Decision" — the "Downstream Receptor Report" (DRR) and the "Spill Model Report" (SMR). <u>See</u> Pl. Mot. at 8, 9. In addition to specifically enumerating those documents, Plaintiffs also request generally that the "Corps . . . complete the record with all sources cited in the Remand Analysis." <u>Id.</u> at 10. The Court will begin with the report derived from PHMSA data before moving to the sources cited in the Remand Analysis and, finally, the sources cited within the DRR and SMR.

The Tribes believe that, rather than including the report on pipeline spills or underlying PHMSA data in the record, the Corps provided only a website where one could generate a new report. <u>Id.</u> at 8. Inclusion of the website, they contend, is no substitute. <u>Id.</u> The Corps rejoins that the information Plaintiffs request is "already contained within the record." <u>See</u> Def. Opp. at 6. In the Remand Analysis, the Corps — based on annual reporting data from PHMSA's website — "analyzed the frequency of reported hazardous liquid 'accidents.'" RAR 14 & n.4; <u>see</u> Def.

5

Opp., Exh. 1 (Declaration of Colonel John L. Hudson), ¶ 3. The Remand Analysis expresses that data in a series of tables. See RAR 15–16. Plaintiffs have not offered reasonable, non-speculative grounds to believe that the agency had access to additional data or reports that are not included. Indeed, they barely press this claim in their Reply. See Pl. Reply at 2–5. The Court, accordingly, finds that no additional documents are required on this score.

Next, Plaintiffs posit that the record ought to include, apparently, both the material underlying the technical citations from the EA that appears in block quotations in the Remand Analysis and "all sources cited in the Remand Analysis." Pl. Mot. at 10. Rather than contending that these documents lack sufficient indicia of consideration, the Corps instead responds only that Plaintiffs' request fails for lack of specificity. Plaintiffs must, in the Corps' view, request particular documents, rather than this broad category. See Def. Opp. at 6. The Corps' exacting position finds no support in the case law, however. While requesters may not satisfy their burden to identify specific documents by asking for amorphous categories of information that may or may not exist or have been before the agency, see, e.g., Charleston Area Med. Ctr. v. Burwell, 216 F. Supp. 3d 18, 25–26 (D.D.C. 2016); Comm. of 100 on the Fed. City v. Foxx, 140 F. Supp. 3d 54, 60–61 (D.D.C. 2015), it is not legally necessary for Plaintiffs to enumerate every document they want in a list or appendix.

Additional specificity would, however, have been helpful since the Remand Analysis is well over a hundred pages. It is clear, at least, that Plaintiffs are entitled to more than what the Corps has now agreed to include in the record. For example, the Tribes specifically request an O'Reilly study cited by the Remand Analysis, contending its use is sufficient indication that agency decisionmakers considered it. See Pl. Mot. at 8–9. The Corps has agreed that that study is properly included in the record. See Def. Opp. at 17. Yet, as Plaintiffs point out, see Pl. Reply

at 4–5, the Remand Analysis cites several additional studies on the same page for similar propositions. The Corps has not agreed to include those, nor explained how, in its view, the O'Reilly study is distinguishable from the others. There seem also to be additional sources in the Remand Analysis that, like those studies, are cited to support a factual proposition. And while the Corps is correct that a mere reference to a document is not sufficient to meet a movant's burden to show that the agency actually considered it, see Franks v. Salazar, 751 F. Supp. 2d 62, 70 (D.D.C. 2010), citation of a source to support a factual proposition is generally enough to manifest actual consideration by the agency and support inclusion in the record. See Oceana, Inc. v. Ross, 290 F. Supp. 3d 73, 79–80 (D.D.C. 2018) (reasoning that "documents . . . that were cited substantively, *i.e.* to justify a factual statement or assertion made in the [decisional document] . . . [were] clearly considered" while "mere mention of a document's existence" does not show agency consideration). The Court, accordingly, will require Plaintiffs, within fourteen days, to file a Notice containing a list of sources substantively cited in the Remand Analysis to support a factual proposition. The Corps should, in the fourteen days thereafter, indicate which, if any, of those documents it objects to including in the record. The Court will resolve any disagreement that persists.

Finally, Plaintiffs request all sources cited in the DRR and SMR. See Pl. Mot. at 9. These reports themselves are heavily cited in the Remand Analysis, and they appear in the record. Plaintiffs' request to include all documents cited within the DRR and SMR, however, falls short because they have offered no reasonable, non-speculative basis to believe that the agency considered those citations. The DRR and SMR were prepared by a third party, and although the Corps relied on them, there is no suggestion the agency also actually relied on the sources those reports cite. Plaintiffs cite to a case holding that documents cited in an EIS must

be included in the record. See Pl. Mot. at 10 (citing Oceana, 290 F. Supp. at 79). Yet the EIS is prepared by the agency itself; the reports in question were not. Plaintiffs protest that, although the SMR and DRR were prepared by a third party, the Corps relied on them so heavily that they are functionally part of the decision and that the sources cited therein are equivalent to those cited by the Remand Analysis. See Pl. Reply at 5–6. Yet the Corps' heavy reliance on the reports suggests only that they should be in the record, as they are. Requiring otherwise would stretch the chain of indirect consideration *ad infinitum*. Plaintiffs offer no authority for the proposition that agencies must include in the record all sources cited within the documents on which they rely — or even heavily rely — in preparing their decision. That absence makes sense, since there is no indication here that agency decisionmakers considered not only the reports but every source they cite.

      B.      Documents from Original Administrative Record

Plaintiffs next explain that they have now reviewed the original administrative record — the one the Corps lodged in March 2017, related to its February 2017 Lake Oahe easement decision — and identified several "documents that were missing from it." Pl. Mot. at 10–11. In particular, they identify the absence of a "spill model" in the original record, which would be "important to the Tribes' challenge of the remand decision." Id. at 11. In addition, they contend that a "key document in the original administrative record was a lengthy review compiling and responding to internal technical comments," and that it "in turn references several critical comments that bear directly on the adequacy of the Corps' analysis." Id. Those comments referred to or elicited responses that are not themselves in the record. Id. Finally, Plaintiffs point to "other examples," including a mention of an email — not itself in the record — that "provided the rationale" for certain calculations. Id. at 12. In Plaintiffs' view, these documents "were

directly relevant to the Corps' decision, . . . plainly relate to whether the Corps' original decision was arbitrary and capricious," and "will help the Tribes explain why the Corps' conclusions on remand ignore critical information and fail to address contrary conclusions." Id.

As an initial matter, the Court is dubious about the Tribes' contention that it is raising these claims now because "there was never an opportunity for any plaintiff Tribe to challenge the scope or adequacy of the original administrative record during the initial round of summary judgment motions." Id. at 10. The Corps lodged the record at issue over two years ago — in March 2017 — and Dakota Access challenged the record's completeness not long afterward. See ECF No. 216 (Dakota Access's Motion to Compel Prompt Completion of the Administrative Record). In June 2017, the Court ruled on Plaintiffs' claims challenging the decision that the record underlies. While the Tribes are correct, therefore, that they have not flouted a specific deadline to challenge that record's completeness, see Pl. Reply at 7, their claims are less than timely and, in any event, are moot given that the Court has already passed on the lawfulness of the agency decision supported by that record.

It would not be appropriate to add those documents to the record at issue here, moreover, because Plaintiffs have not made any showing that any of these documents were actually before agency decisionmakers in the remand process. Their assertions that the documents were relevant to the lawfulness of the original decision or provide additional information Plaintiffs could use to rebut the Corps' conclusions on remand do not conform to that standard. The question is not whether the documents would now be useful to Plaintiffs, but whether they can provide "reasonable, non-speculative grounds for [the] belief that the documents were considered by the

9

agency and not included in the record." Marcum, 751 F. Supp. 2d at 78 (quoting Pac. Shores, 448 F. Supp. 2d at 6). That they have not done.

        C.        Documents Relating to Easement

Finally, Plaintiffs point out that under the terms of the easement, Dakota Access is "required to submit to the Corps" an "extensive body of technical information . . . related to the integrity and ongoing safe operation of the pipeline at Lake Oahe." Pl. Mot. at 13. Three reports — including any root-case-failure analyses, inspection reports from the cathodic protection systems, and an annual report with any deviations from limits imposed to reduce corrosion — are at issue. Id. at 13–14. (Plaintiffs concede, however, based on the Corps' representation that the first of those does not exist — because no failure has occurred requiring its generation — that it need not be included in the record, leaving two at issue. See Pl. Reply at 10.) Additionally, Dakota Access is required to submit an operations and maintenance manual, an integrity-management plan, and "as-built drawings" for the Lake Oahe crossing. See Pl. Mot. at 13. The record should be completed with these documents, Plaintiffs maintain, because they "are centrally relevant to the issues before the Corps on remand, [since] they bear[] on the integrity and safe operation of the pipeline." Id. at 14. These contentions are a mixed bag for the Tribes. Because the documents require differing treatment, the Court will analyze them in order, beginning with the two reports and proceeding to the O & M manual, integrity-management plan, and as-built drawings.

As to the two remaining reports, Plaintiffs have not made the required showing. As before, they emphasize the relevance of these documents to the Corps' action. But that is not the proper inquiry. See Pac. Shores, 448 F. Supp. 2d at 6 ("Pacific Shores cannot meet its burden simply by asserting that the documents are relevant[.]"); Stand Up for Cal.! v. U.S. Dep't of

10

Interior, 315 F. Supp. 3d 289, 295 (D.D.C. 2018) ("Plaintiffs' mere assertion that these documents 'are obviously important to the decision' do not warrant supplementing the record."). The Tribes must identify reasonable, non-speculative grounds to support their contention that the Corps considered them in formulating the remand decision but did not include them in the record. The fact that Dakota Access is required to submit them to the agency is not enough. See Pac. Shores, 448 F. Supp. 2d at 5 ("[I]nterpreting the word 'before' so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless." (citation omitted)). That Plaintiffs have not been able to make the required showing is perhaps not surprising. It is not obvious that the agency would consider any of that material during the course of the remand, given that those three reports relate to the pipeline's ongoing operation but not necessarily on the precise set of issues the Corps had to resolve.

The Court moves next to the O & M manual and the integrity-management plan. Both of those documents do, in fact, appear in the record. See RAR 4507, 4827, 4830. Plaintiffs protest that the included O & M manual and integrity-management plan are generic documents, rather than being specific to the pipeline, as required by the terms of the easement. See Pl. Reply at 9–10 (citing RAR 4499–4500, 4741–42). The Corps insists that they are appropriately specific in that they are plainly applicable to this pipeline. See Def. Opp. at 13–14. This dispute only demonstrates, however, that the Tribes are really taking issue with Dakota Access's compliance with the easement conditions, not with whether the agency considered some additional set of documents on remand. Indeed, Plaintiffs suggest as much themselves. See Pl. Mot. at 13 ("Either [Dakota Access] is out of compliance with . . . easement conditions, or the Corps has failed to provide materials that have been provided to it that are salient to its decision on

remand."). Dakota Access's compliance with easement conditions during the pendency of the Corps' remand analysis is separate from the question of whether the Corps considered documents it did not include in the record.

Last at issue are the as-built drawings. These present a different issue from the previous sets of documents because they <u>are</u> in the record but are redacted. <u>See</u> RAR 4894–4901. The record index indicates that they are redacted because they contain critical infrastructure data, although the Corps now avers that this is incorrect and that they are instead "properly redacted in accordance with PHMSA guidance." <u>See</u> Hudson Decl., ¶ 5. Plaintiffs protest that this explanation is "inscrutable" because the "Corps does not cite to any guidance, or any statute or regulation, which allows this material to be redacted." Pl. Reply at 10. As a result, Plaintiffs believe, this "information is protected by the existing protective order," and "the Corps should be required to complete the record with an unredacted version of this document." <u>Id.</u>

Without the precise provision the Corps is invoking to support the redaction, the Court cannot resolve this dispute. Some categories of information can properly be excluded from the record based entirely on their sensitive status. <u>See, e.g.</u>, <u>Amfac Resorts</u>, 143 F. Supp. at 13 (information subject to deliberative-process privilege); <u>Serono Labs., Inc. v. Shalala</u>, 35 F. Supp. 2d 1, 3–4 (D.D.C. 1999) (trade secrets). Information redacted pursuant to agency guidance, however, is not in one of those entirely excludable categories. Whether it can remain redacted, therefore, is a harder question that courts in this circuit have not clearly resolved. What is clear, however, is that at least <u>some</u> information redacted pursuant to a specific statutory scheme may properly remain withheld, even where subject to a protective order. <u>See</u> <u>Pub. Emps. for Envtl. Responsibility v. Beadreau</u>, 2012 WL 12942599, at *8 (D.D.C. Nov. 9, 2012) (affirming as "proper" withholding of six photographs "in accordance with the National Historic Preservation

Act" notwithstanding that protective order was in effect).  The Court will thus require the Corps to submit, within two weeks, an affidavit detailing its legal rationale for the redaction of the as-built drawings and the reasons, if any, that the information could not be revealed to Plaintiffs subject to the protective order.

**IV.     Conclusion**

For these reasons, the Court will grant in part and deny in part Plaintiffs' Motion to Complete the Administrative Record.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  May 8, 2019