IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>    Plaintiff,<br><br>    and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>    Intervenor-Plaintiff,<br><br>    v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>    Defendant,<br><br>    and<br><br>DAKOTA ACCESS, LLP,<br><br>    Intervenor-Defendant. | Case No. 1:16-cv-1534-JEB<br>[Consolidated with 1:16-cv-1796 and<br>1:17-cv-267] |

**PLAINTIFFS YANKTON SIOUX TRIBE'S AND ROBERT FLYING HAWK'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT**

# CONTENTS

INTRODUCTION ........................................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

LEGAL ARGUMENT.................................................................................................................4

I.      The Corps Acted Arbitrarily, Capriciously, and Not in Accordance with Law During the
Remand Process and in the Decision to Affirm the Prior Finding of No Significant Impacts........4

A.      The Remand Analysis Relies on a Flawed "Worst Case" Spill Estimate. .......................4

B.      The Risk Assessment on Remand is Arbitrary. ................................................................4

C.      The Corps Arbitrarily Dismisses Environmental Justice Impacts. ....................................4

II.     The Corps Acted Arbitrarily, Capriciously, and Not in Accordance with Law When It
Violated Its Duty to Engage in Meaningful Consultation with the Tribe.......................................6

A.      The Corps Failed to Consult with the Tribe in its Development of the EA and in its
Decision making Process to Permit the Lake Oahe Crossing.......................................................6

B.      The Corps Breached its Duty to Consult with the Tribe During the Remand Process......11

III.    The Court Should Vacate the Easement and Order an EIS. .............................................15

CONCLUSION...........................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bernhardt v. Los Angeles County,*
  339 F.3d 920 (9th Cir. 2003)................................................................................................7
*Burley v. Gagacki,*
  834 F.3d 606 (6th Cir. 2016)............................................................................................6, 7
*Burlington N. R.R. Co. v. Surface Transp. Bd.,*
  75 F.3d 685 (D.C. Cir. 1996)...............................................................................................9
*Cantrell v. City of Long Beach,*
  241 F.3d 674 (9th Cir. 2001)..............................................................................................10
*Del Monte Fresh Produce Co. v. United States,*
  570 U.S. (D.C. Cir. 2009) ...............................................................................................8, 9
*Guindon v. Pritzker,*
  31 F. Supp. 3d 169 (D.D.C. 2014) .......................................................................................8
*Hanover Ins. Co. v. American Engineering Co.,*
  105 F.3d 306 (6th Cir. 1997)................................................................................................7
*Honig v. Doe,*
  484 U.S. 305 (1988) .............................................................................................................8
*Jones v. Bernanke,*
  538 F. Supp. 2d 53 (D.D.C. 2008) .......................................................................................7
*Marsh v. Oregon Natural Res. Council,*
  490 U.S. 360 (1989) ...........................................................................................................10
*McMillan Park Comm. v. Nat'l Capital Planning Comm'n,*
  968 F.3d 1283, 1287-88 (D.C. Cir. 2002) ..........................................................................11
*Michigan v. Envt'l Protection Agency,*
  135 S.Ct. 2699 (2015) ........................................................................................................11
*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Auto. Ins. Co.,*
  463 U.S. 29 (1983) .......................................................................................................10, 11
*Nw. Envtl. Def. Ctr. v. Gordon,*
  849 F.2d 1241 (9th Cir. 1988)..............................................................................................7
*Pub. Utils. Comm'n v. FERC,*
  236 F.3d 708 (D.C. Cir. 2001) .............................................................................................9
*Quechan Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of the Interior,*
  755 F. Supp. 2d 1104 (S.D. Cal. 2010) .............................................................6, 13, 14, 15
*Ralls Corp. v. Comm'n on Foreign Inv. in U.S.,*
  758 F.3d 296 (D.C. Cir. 2014) .............................................................................................8
*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers,*
  255 F. Supp. 3d 101 (D.D.C. 2017) ...............................................................................3, 12
*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers,*
  280 F. Supp. 3d 187 (D.D.C. 2017) .....................................................................................2
*Tourus Records, Inc. v. Drug Enforcement Admin.,*
  259 F.3d 731 (D.C. Cir. 2001) ...........................................................................................10
*United Keetoowah Band of Cherokee Indians,*
  933 F.3d 728 (D.D.C. 2019) .......................................................................................10, 11

*Vander Boegh v. Energysolutions, Inc.*,
  772 F.3d 1056 (6th Cir. 2014) ........................................................................... 7
*Yankton Sioux Tribe v. Kempthorne*,
  442 F. Supp. 2d 774 (D.S.D. 2006) .................................................................. 10

Statutes

5 U.S.C. § 500 ...................................................................................................... 6
5 U.S.C. § 706 .................................................................................................... 10
5 U.S.C. § 706(2)(D) ......................................................................................... 15
54 U.S.C. § 306108 ............................................................................................ 11

Regulations

36 C.F.R. § 800.2(c)(2)(ii) ................................................................................... 6
36 C.F.R. § 800.2(c)(2)(ii)(C) ........................................................................... 14

Other Authorities

Executive Order 13175 ..................................................................... 10, 11, 12, 14

## INTRODUCTION

The Yankton Sioux Tribe and Chairman Flying Hawk (collectively, the "Tribe") file this reply in support of their Motion for Summary Judgment and response in opposition to Defendants' Cross-Motions for Summary Judgment. The actions and decisions of the U.S. Army Corps of Engineers ("Corps"), both in its initial determination to grant an easement for the Dakota Access pipeline and throughout the subsequent remand process ordered by this Court, have been arbitrary, capricious, and in violation of the law. This Court should vacate the Corps' decision and order preparation of a full Environmental Impact Statement ("EIS"). For the reasons below, the Tribe respectfully requests this Court grant the Tribe's Motion for Summary Judgment and deny the Corps' and Dakota Access LLC's ("Dakota Access") cross-motions.

The importance of this matter cannot be overstated. The question of a pipeline spill is not if, but when, an oil pipeline spill will occur. Oil pipeline spills can be catastrophic, as shown most recently by the devastating Keystone Pipeline oil spill in Walsh County, North Dakota, on October 29, 2019. As of October 31, 2019, the Keystone Pipeline, owned by TC Energy (formerly known as TransCanada), has reportedly leaked 9,120 barrels or 383,040 gallons of oil into a wetlands area, resulting in a partial shutdown of the pipeline.[1] According to the North Dakota Division of

---

[1] Forum News Source, Keystone Pipeline leak spills oil in northeastern North Dakota, Grand Forks Herald, Oct. 30, 2019, https://www.grandforksherald.com/business/energy-and-mining/4746997-Keystone-Pipeline-leak-spills-oil-in-northeastern-North-Dakota; Owen Daugherty, Keystone pipeline spills more than 350,000 gallons of oil in North Dakota, The Hill, Oct. 31, 2019, https://thehill.com/policy/energy-environment/468353-keystone-pipeline-spills-over-350000-gallons-of-oil-in-north-dakota?fbclid=IwAR2ulrMSKz9oq52Tc6Xc9MRHJarSNCHY2xxpYhB-KyXge5wPLDN2n2QelYI; Phil Helsel, Leak in Keystone pipeline spills 9,000 barrels of oil in North Dakota, NBC News, Oct. 31, 2019, https://www.nbcnews.com/news/us-news/leak-keystone-pipeline-spills-9-000-barrels-oil-north-dakota-n1074991; Mahita Gajanan, Keystone Pipeline Leaks 383,000 Gallons of Oil in North Dakota as Environmental Groups Express Concern, Time, Nov. 1, 2019, https://time.com/5716106/keystone-pipeline-leak/.

Water Quality, "the oil spill will harm vegetation and soil within the wetland area"[2] and "[i]t could take years for the wetland to return to its normal state . . . ."[3]   The spill prompted concern from the state and the Governor of North Dakota recently appealed to TC Energy to review its inspection and monitoring of the pipeline after the spill.[4]

This recent large spill, the second in two years,[5] affects the wetlands and soil, and the spill cleanup and repair themselves will also impact the nearby communities and ecosystems. Previously in this case, this Court raised and considered, *sua sponte*, the fact that <u>leaks and spills are "an inherent risk with any pipeline."</u>   *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 280 F. Supp. 3d 187, 190–91 (D.D.C. 2017) (emphasis added) (considering the 2017 Keystone Pipeline spill, finding that Plaintiffs' concerns with a spill under Lake Oahe are warranted, and requiring that Dakota Access share information about ongoing operations and safety).   Defendants continue to ignore or minimize the risks, producing a flawed risk assessment and flawed worst case discharge estimate on which its remand decision was based, and Defendants have failed to address the Court's concerns on remand.

The Corps' Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI") regarding the Dakota Access pipeline are insufficient under the requirements of the National Environmental Policy Act ("NEPA").   This Court granted the Corps an opportunity to

---

[2] Max Cohen, Portion of Keystone Pipeline shut down after 380,000-gallon oil leak in North Dakota, USA Today, Nov. 1, 2019, https://www.usatoday.com/story/news/nation/2019/11/01/keystone-pipeline-leak-oil-spilled-north-dakota/4121954002/

[3] Hannah Knowles, Keystone Pipeline leaks 383,000 gallons on oil in second big spill in two years, The Washington Post, Nov. 1, 2019, https://www.washingtonpost.com/climate-environment/2019/10/31/keystone-pipeline-leaks-gallons-oil-second-big-spill-two-years/

[4] Associated Press and News Staff, ND Governor appeals to owner of Keystone pipeline, BIG 81 Ranch Radio KBHB, Nov. 1, 2019, https://kbhbradio.com/ND-Governor-appeals-to-owner-of-Keystone-pipeline-

[5] *Id.*

2

correct deficiencies in its analysis consisting of its failure to properly consider environmental justice concerns, impacts to hunting and fishing rights, and whether the pipeline was highly controversial thus requiring a full EIS. *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 255 F. Supp. 3d 101, 147 (D.D.C. 2017). The Corps has not done so. Extreme environmental justice, treaty right, and cultural resource-related issues persist, and have not been adequately addressed. The Corps failed to consult with the Tribe in a meaningful way as required by law when federal actions have the potential to impact tribal resources. The Corps did not take the remand process seriously, has not adequately consulted with the Tribe in order to address the Court's concerns, and has acted arbitrarily and capriciously in its remand process. Therefore, the FONSI should be vacated and the approval granted by the Corps for the Dakota Access pipeline to cross Corps lands should be rescinded.

In addition, the Tribe has reasserted its National Historic Preservation Act ("NHPA") claims with respect to the underlying Corps action. Because this is a situation capable of repetition yet evading review, relief is available to the Tribe in the form of declaratory judgment to safeguard the Tribe against future violations by the Corps of its consultation rights. Because the Corps has and will continue to violate the Tribe's consultation rights with respect to federal undertakings, such declaratory relief should be granted.

STATEMENT OF FACTS

To avoid duplication and in the interest of judicial economy, the Tribe adopts the "Statement of Facts" found on pages 2-9 of its Memorandum in Support of Motion for Summary Judgment ("YST Memorandum"), ECF No. 435-1, and incorporates it as if fully set forth herein.

**LEGAL ARGUMENT**

I.   **THE CORPS ACTED ARBITRARILY, CAPRICIOUSLY, AND NOT IN ACCORDANCE WITH LAW DURING THE REMAND PROCESS AND IN THE DECISION TO AFFIRM THE PRIOR FINDING OF NO SIGNIFICANT IMPACTS.**

   A.   **THE REMAND ANALYSIS RELIES ON A FLAWED "WORST CASE" SPILL ESTIMATE.**

Because this matter is covered thoroughly in the Standing Rock Sioux Tribe's ("SRST") reply in support of its motion for summary judgment and opposition to Defendants' motions for summary judgment ("SRST Reply"), ECF No. 446, and the Tribe agrees with SRST's arguments, to avoid duplication, and in the interest of judicial economy, the Tribe adopts Argument Section II, pages 8-18, of the SRST Reply and incorporates it as if fully set forth herein.

   B.   **THE RISK ASSESSMENT ON REMAND IS ARBITRARY.**

Because this matter is covered thoroughly in the SRST Reply and the Tribe agrees with SRST's arguments, to avoid duplication, and in the interest of judicial economy, the Tribe adopts Argument Section III, pages 18-25, of the SRST Reply and incorporates it as if fully set forth herein.

   C.   **THE CORPS ARBITRARILY DISMISSES ENVIRONMENTAL JUSTICE IMPACTS.**

Because this matter is covered partially in the SRST Reply and the Tribe agrees with SRST's arguments, to avoid duplication, and in the interest of judicial economy, the Tribe adopts Argument Section IV, pages 25-27, of the SRST Reply and incorporates it as if fully set forth herein.   In addition, the Tribe asserts that the Corps' environmental justice analysis is not reasonable; the geographic scope was not sufficient; it did not consider the unique rights of tribal members; and it deprived the Tribe of an opportunity to meaningfully consult.

The Corps' environmental justice analysis is not reasonable.   The Corps argues that it is reasonable "to limit its consideration to the area that could have foreseeably been impacted by the

federal action." ECF No. 448 at 32.   While geography is also one of the Tribe's concerns, the Corps' response wholly ignores the Tribe's larger concern.   That is, the Corps failed to consider the Tribe's concerns as expressed in the YST Memorandum.   For example, the Tribe expressed concern that the environmental justice analysis omits from consideration the Tribe's traditional and cultural practices on its traditional lands, the potential impact to the Tribe's and other tribes' cultural resources on and near the crossing, and effects on the Tribe's subsistence, spiritual, and cultural activities involving the land and water on and near the crossing, *inter alia*. The Corps' focus solely on geographic concerns is a red herring that ignores and minimizes the Tribe's other valid concerns.

The geographic scope of the Corps' analysis excludes important considerations such as the unique rights of tribal members, the protection of which is guaranteed by federal law and policy. In explaining the miles of land that it included in its analysis, the Corps seemingly ignores the reason the Tribe has challenged the Corps' geographic scope.   It is not simply a matter of a miles-by-miles analysis.   This is too rigid and does not account for the unique rights of tribal members – rights that are exercised to this day.   RAR 3541 (Affid. of Kip Spotted Eagle); Decl. of Kip Spotted Eagle, ECF No. 290-6 at 3; Decl. of Glenn Drapeau, ECF No. 290-5 at 3; Decl. of Faith Spotted Eagle, ECF No, 290-4 at 4-5. It is the Tribe's position that the Corps' scope fails to include the very harm the Tribe fears the most – a spill on the land and in the water that the Tribe and its members rely on for hunting, fishing, gathering, medicines, and ceremony.   This analysis is more nuanced than a generic assertion by the Corps as to the number of miles it analyzed.   Simply put, the Corps missed the mark in its analysis by failing to consider the Tribe's concerns.

The Tribe vehemently opposes the assertions in Dakota Access' Response, footnote 14. ECF No. 456 at 52. Dakota Access seems to argue that the Corps was limited on remand to the

existing record yet also conducted consultations – in which the Tribe did not participate. This is incorrect. As set forth more fully in the YST Memorandum, the Tribe availed itself of, and attempted participation in, the remand process. The Corps was not responsive to the Tribe's communications following an initial pre-consultation (or information-gathering meeting). ECF No. 435 at 6-9. A major flaw in the consultation process undertaken by the Corps is that the agency simply expects parties, such as the Tribe, to show up and consult. However, meaningful consultation requires a degree of information exchange. "[G]overnment agencies are not free to glide over requirements imposed by Congressionally-approved statutes and duly adopted regulations. The required consultation must at least meet the standards set forth in 36 C.F.R. § 800.2(c)(2)(ii), and should begin early." *Quechan Tribe of Fort Yuma Indian Reservation v. U.S. Dep't of the Interior,* 755 F. Supp. 2d 1104, 1119 (S.D. Cal. 2010). This is particularly true when there is a set number of tribes to consult with on remand. It is not as if the Corps was tasked with consulting with all federally recognized tribes. The superficial interactions between the Corps and the Tribe do not qualify as meaningful consultation. The Corps breached its consultation duties to the Tribe, resulting in an EA and FONSI that are arbitrary, capricious, abuses of discretion, and contrary to law in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 et seq.

II. **THE CORPS ACTED ARBITRARILY, CAPRICIOUSLY, AND NOT IN ACCORDANCE WITH LAW WHEN IT VIOLATED ITS DUTY TO ENGAGE IN MEANINGFUL CONSULTATION WITH THE TRIBE.**

A. **THE CORPS FAILED TO CONSULT WITH THE TRIBE IN ITS DEVELOPMENT OF THE EA AND IN ITS DECISION MAKING PROCESS TO PERMIT THE LAKE OAHE CROSSING.**

As an initial matter, the Tribe's request for declaratory relief and enforcement of the NHPA is not barred by the law of the case, as the Corps posits. The "law of the case" doctrine is more nuanced than the Corps suggests. In order for judicial review of a claim to be precluded by this doctrine, the claim must have been "necessarily decided" earlier in the litigation. *Burley v.*

*Gagacki*, 834 F.3d 606, 618 (6th Cir. 2016).  "The phrase 'necessarily decided' . . . describes all

issues that were 'fully briefed and *squarely decided*' . . . ."  *Vander Boegh v. Energysolutions, Inc.*,

772 F.3d 1056, 1071 (6th Cir. 2014) (citation omitted) (emphasis added); *see also Hanover Ins.*

*Co. v. American Engineering Co.*, 105 F.3d 306, 310 (6th Cir. 1997) (opinion constituted law of

the case because the issue was "*directly addressed* by this court in the earlier decision" (emphasis

added)).  In this instance, the Court did not "decide[] upon a rule of law" that "should continue to

govern the same issues in the subsequent stages of the same case," *Jones v. Bernanke*, 538 F. Supp.

2d 53, 60 (D.D.C. 2008); rather, the Court found the Tribe's NHPA claims moot – it did not

directly address or rule on the merits of the claims.  A finding of mootness does <u>not</u> mean that an

issue has been "squarely decided."  *Burley*, 834 F.3d at 618; *see also Bernhardt v. Los Angeles*

*County*, 339 F.3d 920, 924 (9th Cir. 2003).  Because the Tribe's NHPA claims were dismissed

based on mootness and not on their merits, those claims have not been "necessarily decided" and

are therefore not barred by the law of the case doctrine.

The Tribe is entitled to relief because the Corps failed to meet its consultation duties

pursuant to the NHPA, *see* ECF No. 435-1 at 3-6; ECF No. 1 at 15-19, and is likely to continue to

do so in the future.  The Tribe asks the Court to reconsider the Tribe's NHPA claims and halt the

Corps' ongoing practice of granting approvals that threaten the Tribe's interests without engaging

in federally-mandated, *meaningful* consultation with the Tribe.  While the relief initially sought in

this case may no longer be available to the Tribe because the Dakota Access pipeline has now been

constructed, "the question is not whether the precise relief sought at the time the application for an

injunction was filed is still available.  The question is whether there can be *any* effective relief."

*Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244–45 (9th Cir. 1988) (internal citations

omitted).

Because the offending conduct at issue is capable of repetition yet evading review, the Corps' argument that the Tribe's NHPA claims should be dismissed as moot must fail. *See*, e.g., *Del Monte Fresh Produce Co. v. United States*, 570 U.S. 316 (D.C. Cir. 2009). Claims that are capable of repetition yet evading review are exempted from the mootness doctrine. *Ralls Corp. v. Comm'n on Foreign Inv. in U.S.*, 758 F.3d 296, 321 (D.C. Cir. 2014). To meet this exception, the claim must be of short duration and the parties must be susceptible to the same legal issue—*not* the same precise facts, as argued by Defendants. *Id.* at 324.

"An action is 'capable of repetition' if there is 'a reasonable degree of likelihood that the issue will be the basis of a continuing controversy between the two parties.'" *Guindon v. Pritzker*, 31 F. Supp. 3d 169, 188 (D.D.C. 2014) (quoting *Del Monte Fresh Produce Co.*, 570 U.S. at 324). "The Supreme Court has instructed that the capable-of-repetition prong is not to be applied with excessive 'stringency.'" *Ralls Corp.*, 758 F.3d at 324 (quoting *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988)). Furthermore, for this exception to mootness to apply, "a controversy need only be '*capable*' of repetition,' not 'more probable than not.'" *Id.* (emphasis in original). Here, there is not just a reasonable degree of likelihood but a high probability that the Tribe will face the same legal wrong at the hands of the Corps. The Corps regularly grants easements and other permissions regarding Corps lands that impact tribal rights. Much of such lands are located in regions known to have been traveled and inhabited by the Tribe, including the Tribe's vast territory reserved to the Tribe by the 1851 Treaty of Fort Laramie. Given the vast swaths of this country which hold cultural and historic significance to the Tribe, it is without question that companies like Dakota Access will seek permission from the Corps to use lands that are of significance to the Tribe, thereby triggering the Corps' Section 106 consultation responsibilities, in the future. And given the Corps' consistent failures to consult with the Tribe when its Section 106 responsibilities are

8

triggered, ECF No. 435-1 at 3-6, 18; ECF No, 1 at 15-19, coupled with the fact that the Corps takes the position that it engaged in the appropriate level of consultation and has given no indication that it will consult more meaningfully in the future, it is more than likely that, absent relief from this Court, the Corps will trample on the Tribe's consultation rights under similar circumstances in the future.

The District of Columbia Circuit Court has "held that agency actions of less than two years' duration cannot be 'fully litigated' prior to cessation or expiration, [thereby evading review if the mootness doctrine is applied,] so long as the short duration is typical of the challenged action." *Del Monte Fresh Produce Co.*, 570 F.3d at 321 (citing *Pub. Utils. Comm'n v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001); *Burlington N. R.R. Co. v. Surface Transp. Bd.*, 75 F.3d 685, 690 (D.C. Cir. 1996)). EAs are, by nature, brief overviews of potential environmental effects rather than detailed analyses. It is common knowledge that preparation of an EA is generally completed in less than two years, and the Corps has not stated otherwise. Moreover, NHPA Section 106 analysis is generally conducted during a much shorter span of time while the NEPA review is being conducted, as was done here. The timelines for future NHPA reviews will certainly be well under a two-year duration, especially if the Corps continues its pattern of delayed and insufficient consultation.

Companies and agencies cannot be permitted to rush to finish projects in an effort to moot claims that the process through which the projects were permitted was flawed. "When evaluating the issue of mootness in NEPA cases, . . . if the completion of the action challenged under NEPA is sufficient to render the case nonjusticiable, entities 'could merely ignore the requirements of NEPA, build its structures before a case gets to court, and then hide behind the mootness doctrine.

9

*Such a result is not acceptable.*" *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001)

(emphasis added). <u>The same holds true for NHPA cases such as this.</u>

Just as the Corps violated its consultation duties under the NHPA, the agency also violated

its consultation duties under Executive Order 13175 and departmental policies during preparation

of the EA. Defendants misconstrue the Tribe's argument regarding these authorities. While the

Tribe's position is that the Corps has a duty to follow its nonbinding guidance documents, the

Tribe is arguing not whether the guidance documents create a legally enforceable right, but rather,

that <u>it is arbitrary and capricious for the Corps to ignore the Executive Order and its own policies</u>

<u>and procedures on consultation when engaging in activities to which those policies and procedures</u>

<u>apply.</u> *See Yankton Sioux Tribe v. Kempthorne*, 442 F. Supp. 2d 774 (D.S.D. 2006).

Under the Administrative Procedure Act ("APA"), a reviewing court must set aside an

agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with law." 5 U.S.C. § 706; *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736

(D.C. Cir. 2001). In this inquiry, a court must determine whether "the agency has relied on factors

which Congress has not intended it to consider, entirely failed to consider an important aspect of

the problem, offered an explanation for its decision that runs counter to evidence before the agency,

or is so implausible that it could not be ascribed to a difference in view or the product of agency

expertise." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotations

omitted). Here, the agency ignored and violated its own guidance policies and instructions, and

as a result, failed to consider potential impacts on the Tribe in violation of the APA. "An agency

action is arbitrary and capricious where the agency has 'entirely failed to consider an important

aspect of the problem' . . . ." *United Keetoowah Band of Cherokee Indians*, 933 F.3d at 738

(quoting *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mutual Auto. Ins. Co.*,

463 U.S. 29, 43 (1983)).  In failing to meaningfully consult with the Tribe, the Corps neglected to consider an important aspect of the problem – namely, impacts of its decision on the Tribe.  The Corps' decision was therefore arbitrary and capricious.  *Id.*

In addition, the District of Columbia Circuit Court has held that "[a]gencies' obligation to engage in 'reasoned decision making' means that '[n]ot only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational.'"  *United Keetoowah Band*, 933 F.3d at 738 (quoting *Michigan v. Envt'l Protection Agency*, 135 S.Ct. 2699, 2706 (2015)).  It is neither logical nor rational to willfully ignore applicable federal policy directives and Executive Orders.  The Tribe is entitled to relief because, in making a decision that was arbitrary and capricious through a process that was neither logical nor rational, the Corps violated the APA.

**B.     THE CORPS BREACHED ITS DUTY TO CONSULT WITH THE TRIBE DURING THE REMAND PROCESS.**

By its failure once again to engage the Tribe in meaningful consultation, the Corps again breached its duties to the Tribe under federal law.  54 U.S.C. § 306108; Exec. Order No. 13175, 65 Fed. Reg. 67249 (Nov. 6, 2000); *see* ECF No. 435-1 at 22-24.  Importantly, courts "owe no deference to [federal agencies'] interpretations of the NHPA . . . which [is] primarily administered by the Advisory Council [of Historic Properties]."  *United Keetoowah Band of Indians in Oklahoma v. Federal Communications Comm'n*, 933 F.3d 728, 738 (D.D.C. 2019) (citing *McMillan Park Comm. v. Nat'l Capital Planning Comm'n*, 968 F.3d 1283, 1287-88 (D.C. Cir. 2002)).  As a federal action with tribal implications and a federal undertaking that will affect tribal historic properties, the decision resulting from the remand process necessitated the Corps' engagement with the Tribe in meaningful consultation.  *Id.*  As discussed in detail in the YST Memorandum, nothing in the Corps' limited interactions with the Tribe rises to the level of

11

meaningful consultation and the Corps failed in its federal obligations to the Tribe.  ECF No. 435-1 at 6-9.

The Corps erroneously alleges that it was not required to consult with the Tribe during remand based on this Court's Memorandum Opinion of June 14, 2017, ECF No. 239 (*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101 (D.D.C. 2017)).  ECF No. 448 at 26.  The Corps' position overlooks this Court's actual order remanding the case, ECF No. 238 ("Remand Order").  Pursuant to the Remand Order, this Court remanded "the matter" to the Corps for further analysis of the three issues set forth in its Memorandum Opinion.  *Id.* at 1.  There was no qualification excluding other parties to this litigation from the remand.  *Id.*  As a party to the matter, the Tribe was fully entitled to participate in that process.  Further bolstering the Tribe's interpretation of the Remand Order, this Court subsequently confirmed the Tribe's entitlement to participation in remand in its order on the Tribe's motion for partial summary judgment, ECF No. 340, in which it "observe[d] that its conclusions . . . are not necessarily the end of the road for the Yankton Sioux's involvement with DAPL . . . [The Tribe] will therefore have the opportunity to voice [its] remaining concerns regarding the Corps' environmental assessments . . . ."  ECF No. 340 at 39.

The Corps had an obligation to consult with the Tribe during the remand process pursuant to the NHPA, Executive Order 13175, and Corps policies regardless of the scope of the Court's order because that process resulted in a federal action, the affirmation of the original FONSI, that will affect the Tribe's interests including (but not limited to) its historic properties.  The fact that the agency action came at the directive of the Court does not restrict the Corps' duties under federal law, nor does it negate the Corps' own policies.

For the same reasons, the Corps' pathetic and insufficient efforts at consultation *prior* to the EA and FONSI do not relieve the Corps of its consultation duties during the remand process. The remand itself resulted in a final agency action that impacts the Tribe's interests, notwithstanding the previous agency action. The fact that the remand decision came later in time or that it addressed issues that should have been addressed in the earlier agency action are irrelevant.

Furthermore, the Corps never fulfilled its consultation duties to the Tribe in the first place. As the Tribe clearly set forth in the YST Memorandum, pre-remand consultation was plainly lacking and the Corps in fact misled the Tribe to believe that consultation would occur, then promptly thereafter released its decision without even a heads up to the Tribe that an actual consultation meeting would not be held or that the EA and FONSI were being released. ECF No. 435-1 at 3-6. "[T]he regulations require the agency to consult extensively with Indian tribes that fall within the definition of 'consulting party . . . .'" *Quechan Tribe of Fort Yuma Indian Reservation,* 755 F. Supp. 2d at 1109 (emphasis added). "[M]ere *pro forma* recitals do not, by themselves, show [an agency] actually complied with the law." *Id.* at 1118. The limited correspondence with the Tribe touted by the Corps and brief unofficial meeting with a group of tribal members are hardly sufficient to fulfill the agency's consultation duties.

Even if the Corps had meaningfully engaged in consultation on some issues pre-remand, *which it did not*, the agency obviously did not do so with respect to all necessary issues – namely, the three issues identified by this Court in the Remand Order. Moreover, the fact that additional analysis was required as to those three issues means that tribal engagement was still needed for a complete assessment of those issues.

In further defiance of its own agency guidance, the Corps willfully ignored the Tribe's consultation protocols, the *Ihanktonwan* Consultation *Wo'ope*, despite the Tribe having provided them on numerous occasions. RAR 3303-09; RAR 3449-58; RAR 6412-18; RAR 10343-49; RAR 13307-16. While Corps guidance does not *mandate* compliance with tribal consultation protocols, it was arbitrary and capricious for the agency to wholly disregard them in light of its policy to "[m]eet its responsibilities to tribes as derived from Federal trust doctrine, treaties, and agreements between the United States Government and tribal governments, and to comply with Federal statutes, regulations, Presidential Memorandums, and Executive Orders governing DoD interactions with tribes." DoD Instr. 4710.02 (Sept. 14, 2006). Thus, the Corps' consultation requirements pursuant to the NHPA and Executive Order 13175 are incorporated in the Corps' policies. "The consultation requirement is not an empty formality; rather, it 'must recognize the government-to-government relationship between the Federal Government and Indian tribes' and is to be 'conducted in a manner sensitive to the concerns and needs of the Indian tribe.'" *Quechan Tribe of Fort Yuma Indian Reservation*, 755 F. Supp. 2d at 1108-09 (emphasis added) (quoting 36 C.F.R. § 800.2(c)(2)(ii)(C)). Compliance with tribal protocols such as those enacted by the Tribe is precisely what the NHPA regulations require.

Moreover, regardless of the enforceability of the Tribe's protocols, the Corps has an absolute duty to consult with the Tribe's governing body when engaging in consultation with the Tribe, as admitted in the Corps' cross-motion. ECF No. 448 at 20. As glaring evidence of the Corps' disregard for tribal law and self-governance, the agency is apparently oblivious to the fact that *the Tribe's General Council is its governing body pursuant to the Tribe's constitution.* Pursuant to the BIA-approved Amended Constitution and Bylaws of the Yankton Sioux Tribe, the governing body of the Tribe consists of its General Council. Because no General Council meeting

14

was held for the purpose of consultation with the Corps on this matter, an event which the Tribe repeatedly informed the Corps it would need to conduct following pre-consultation, no meaningful consultation could possibly have occurred.

## III.   THE COURT SHOULD VACATE THE EASEMENT AND ORDER AN EIS.

These circumstances warrant and mandate that the Court vacate the Corps easement and order an EIS to ensure that impacts of the federal action are properly and adequately considered. As in *Quechan Tribe of Fort Yuma Indian Reservation v. U.S. Department of the Interior,* a case with facts and issues substantially similar to those in this case, "[b]ecause the project was approved 'without observance of procedure required by law,' the Tribe is entitled to have the [agency's] actions set aside under 5 U.S.C. § 706(2)(D)." 755 F. Supp. 2d at 1120.

## CONCLUSION

The Corps violated the APA in failing to meaningfully consult with the Tribe both prior to and during remand, as required by federal law and policies, including failing to even attempt to engage with the Tribe's governing body and failing to adhere to the Tribe's consultation protocols. Furthermore, this behavior will continue, time and again, absent judicial interference. Such neglect can have devastating consequences on the Tribe because fragile, uniquely tribal interests, such as subsistence rights and cultural resources, are not accounted for in agency decision making. This can be no more true, than in the instance of ground being trenched through tribal treaty territory for construction of a crude oil pipeline that will lie, in part, below a lake of sacred water, and operation of that pipeline which will inevitably spill. The Corps further violated the APA by failing to adequately address environmental justice concerns, relying on a flawed "worst case" spill estimate, and using an arbitrary risk assessment.

For the foregoing reasons, the Tribe respectfully requests that this Court grant its motion for summary judgment, grant declaratory relief that the Corps is required to *meaningfully* consult

with the Tribe prior to making decisions that implicate the Tribe's interests in a manner consistent with federal law and policy as outlined in this brief, order preparation of an EIS, and vacate the underlying Corps approvals for the Pipeline.

Respectfully submitted this 4th day of November, 2019.


YANKTON SIOUX TRIBE, et al.


By: *s/Jennifer S. Baker*_____
Jennifer S. Baker, OKBA #21938
(*Pro Hac Vice*)
Jeffrey S. Rasmussen, WA #21121
(*Pro Hac Vice*)
Fredericks Peebles & Patterson LLP
1900 Plaza Drive
Louisville, CO 80027
Phone: (303) 673-9600
Facsimile: (303) 673-9155
jbaker@ndnlaw.com
jrasmussen@ndnlaw.com


*s/ Patricia A. Marks*_____
Patricia A. Marks, DCBA #446702
Fredericks Peebles & Patterson LLP
401 9th Street, N.W., Suite 700
Washington, D.C. 20004
Phone:  (202) 450-4887
Facsimile:  (202) 450-5106
pmarks@ndnlaw.com

*Attorneys for Plaintiffs*

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of November, 2019, a copy of the foregoing **PLAINTIFFS YANKTON SIOUX TRIBE'S AND ROBERT FLYING HAWK'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT** was filed electronically with the Clerk of the Court.  The electronic filing prompted automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

Legal Assistant

18