# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, YANKTON SIOUX TRIBE; ROBERT FLYING HAWK; OGLALA SIOUX TRIBE,<br><br>Plaintiffs,<br><br>and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>Defendant-Cross Defendant,<br><br>and<br><br>DAKOTA ACCESS, LLC,<br><br>Defendant-Intervenor-Cross Claimant. | Case No. 1:16-cv-1534-JEB<br>(and Consolidated Case Nos. 16-cv-1796 and 17-cv-267)<br><br>**REPLY BRIEF IN SUPPORT OF ARMY CORPS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO YANKTON SIOUX TRIBE'S CLAIMS** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1

II.  ARGUMENT .................................................................................................................... 1

    A.   Yankton's consultation claims are both moot and meritless ................................... 1

        i.   Yankton's moot NHPA claims are not subject to the capable of repetition exception to mootness ................................................. 1

        ii.  Yankton is unable to identify a relevant mandatory duty to consult ....................................................................................................... 7

        iii. The Corps met any duty to consult .................................................. 9

    B.   The Corps properly considered environmental justice ......................................... 12

    C.   Yankton's extra-record evidence regarding a spill from a different pipeline should be struck ...................................................................................................... 14

III. CONCLUSION ............................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*,
  217 F.3d 393 (5th Cir. 2000) ................................................................................................... 4

*Cantrell v. City of Long Beach*,
  241 F.3d 674 (9th Cir. 2001) ................................................................................................... 6

*Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs,*
  No. CV 14-1667 PSG (CWX), 2015 WL 12659937 (C.D. Cal. June 30, 2015) ........................ 5

*Del Monte Fresh Produce Co. v. United States*,
  570 F.3d 316 (D.C. Cir. 2009) ................................................................................................ 3

*Ferreira v. Borja*,
  93 F.3d 671 (9th Cir. 1996) ..................................................................................................... 7

*Friends of Santa Clara River v. U.S. Army Corps of Eng'rs,*
  887 F.3d 906 (9th Cir. 2018) ................................................................................................... 5

*Grant v. Vilsack*,
  892 F. Supp. 2d 252 (D.D.C. 2012) ..................................................................................... 3, 5

*IMS, P.C. v. Alvarez*,
  129 F.3d 618 (D.C. Cir. 1997) .............................................................................................. 14

*Kowal v. MCI Commc'ns Corp.*,
  16 F.3d 1271 (D.C. Cir. 1994) ................................................................................................ 3

*LaShawn A. v. Barry*,
  87 F.3d 1389 (D.C. Cir. 1996) ................................................................................................ 7

*Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*,
  448 F. Supp. 2d 1 (D.D.C. 2006) .......................................................................................... 14

*People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*,
  59 F. Supp. 3d 91 (D.D.C. 2014) ........................................................................................ 2, 4

*Quechan Tribe of the Fort Yuma Indian Reservation v. U.S. Dep't of Interior*,
  755 F. Supp. 2d 1104 (S.D. Cal. 2010) ................................................................................... 9

*Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*,
  758 F.3d 296 (D.C. Cir. 2014) ............................................................................................ 4, 5

*Sierra Club v. U.S. Army Corps of Eng'rs*,
  803 F.3d 31 (D.C. Cir. 2015) .................................................................................................. 6

*Sisseton-Wahpeton Oyate of the Lake Traverse Reservation v. U.S. Corps of Eng'rs*,
  No. 3:11-CV-03026-RAL, 2016 WL 5478428 (D.S.D. Sept. 29, 2016) .................................... 5

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  301 F. Supp. 3d 50 (D.D.C. 2018) ............................................................................... 4, 8, 9, 10

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  280 F. Supp. 3d 187 (D.D.C. 2017) ......................................................................................... 14

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  205 F. Supp. 3d 4 (D.D.C. 2016) ............................................................................... 10, 11, 13

*Theodore Roosevelt Conservation P'ship v. Salazar*,
  616 F.3d 497 (D.C. Cir. 2010) ................................................................................................ 14

*United Keetoowah Band of Cherokee Indians in Okla. v. Fed. Commc'ns Comm'n*,
  933 F.3d 728 (D.D.C. 2019) ...................................................................................................... 8

*United States v. Kpodi*,
  888 F.3d 486 (D.C. Cir. 2018) .................................................................................................. 7

*Wood ex rel. United States v. The Am. Inst. in Taiwan*,
  286 F.3d 526 (D.C. Cir. 2002) .................................................................................................. 3

**Statutes**

54 U.S.C. 306108 ................................................................................................................................ 8

**Rules**

Fed. R. Civ. P. 59(e) ........................................................................................................................... 7

**Regulations**

36 C.F.R. § 800.3(a) ........................................................................................................................... 6

## I.  INTRODUCTION

The Yankton Sioux Tribe's Opposition to the Corps' Motion for Summary Judgment is largely premised on Yankton's misconception that the Corps was required to engage in consultation on remand regarding Yankton's unspecified cultural properties.  Yankton's NHPA consultation claims fail for several reasons.  First, the Court already granted the Corps' previous motion for summary judgment on Yankton's NHPA claims because they are moot.  Second, Yankton is incorrect that the Court's remand order required the Corps to consult with Yankton pursuant to the NHPA because the Court determined that those claims were moot.  Third, Yankton identifies no alternative mandatory duty to consult.  Finally, even if Yankton were correct that the Corps had a mandatory duty to consult regarding Yankton's moot claims, the Corps complied with that duty.

Yankton's remaining arguments fare no better.  Its environmental justice claim should be denied because the Corps' environmental justice analysis on remand was wholly reasonable.  And Yankton's effort to challenge the Corps' decision on remand based on evidence of a spill on a different pipeline over one year after the remand analysis concluded fails because such post-decisional information has no bearing on the reasonableness of the Corps' decisions.  The Corps therefore respectfully submits that the Court should grant its motion for summary judgment.

## II.  ARGUMENT

**A.  Yankton's consultation claims are both moot and meritless**

   **i.  Yankton's moot NHPA claims are not subject to the capable of repetition exception to mootness**

Yankton's NHPA claim is moot, and it has failed to establish that its claim is subject to the capable of repetition exception to mootness.  The Tribe admits that the "relief initially sought

. . . may no longer be available," but nonetheless asks the Court to "reconsider the Tribe's NHPA claims." ECF No. 467 at 7. The Tribe's argument ignores this Court's earlier ruling on mootness, and misapplies D.C. Circuit precedent in an unsupportable attempt to resurrect its mooted claim. Its argument amounts to nothing more than an allegation that the Corps might somehow violate the NHPA in another as-yet-unidentified future permit application that might impact some interest of the Tribe. The Tribe's arguments fail, and its NHPA claim should be denied as moot.

The Tribe bases its argument on the premise that "the Corps regularly grants easements and other permissions regarding Corps lands that impact tribal rights." *Id.* at 8. The Tribe assumes that because "vast swaths of this country [] hold cultural and historic significance to the Tribe" the Corps will necessarily violate NHPA in future decisions. *Id*. The Tribe's argument amounts to an assertion that the Corps may violate the NHPA in some as-yet-undefined way in a decision on an as-yet-undefined permit, easement or other approval for an as-yet undefined project in an undefined location and, as a result, the Court should render a decision on whether the Corps complied with the NHPA when it granted the easement for the Dakota Access pipeline. But the Tribe cannot raise a challenge to Corps policy as a whole, or to the validity of Corps' regulations without a connection to a concrete agency action. *People for the Ethical Treatment of Animals, Inc. v. U.S. Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 99 (D.D.C. 2014) ("[A]t its core, this particular challenge is a challenge to an agency policy, which is better suited for an appeal to the Executive or to Congress.").

The Tribe also cannot point to any plans to conduct NHPA review of a Corps undertaking that implicates the Tribe's cultural or historical resources. The Tribe relies solely on its own unsupported speculation that: 1) a future pipeline might be planned; 2) that the future pipeline

would require permits from the Corps; 3) that the future pipeline would potentially affect the Tribe's cultural and historical resources; and 4) that the Corps will somehow fail to comply with the NHPA. This Court has held that similar unsupported assertions fall far short of the evidence required to avoid mootness. *Grant v. Vilsack*, 892 F. Supp. 2d 252, 259 (D.D.C. 2012) (challenge to expired permit for genetically-engineered sugar beets did not meet mootness exception). In that case, the court distinguished *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009), noting that in *Del Monte* "Plaintiffs submitted declarations that they would apply for such licenses on a continuing basis in the future [, and] . . . would suffer the same allegedly improper delay." *Grant*, 892 F. Supp. 2d at 259. In addition, the court noted that, in *Del Monte*, Plaintiffs provided "declarations that the agency had delayed 'on five separate occasions in the past,'" as well as evidence that the agency had announced that it expected future delays on the same permit applications. *Id.* (quoting *Del Monte*, 570 F.3d at 324). The Tribe cannot point to any similar evidence in this case, and its unsupported assertions cannot serve as a basis to maintain this Court's jurisdiction over the Tribe's mooted claim. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *see also Wood ex rel. United States v. The Am. Inst. in Taiwan*, 286 F.3d 526, 534 (D.C. Cir. 2002) ("Statements by counsel, of course, are not evidence.") (citation omitted). The Tribe has failed to establish that any of its mooted claims are capable of repetition sufficient to establish the exception to mootness.

The Tribe simply ignores the fact that the Corps' permit application and approval process is inherently highly fact-bound. Each application implicates a myriad of variables, and is tied to the unique facts of each potential Corps action—the location, the type of construction, and the proximity to tribal cultural and historic resources, among others. As a result, the Tribe cannot

carry its burden to show that there is a reasonable expectation that it would be subject to the same legal wrong again.[1]

In addition, this Court has already held that it cannot render an advisory opinion about the Corps' compliance with the NHPA generally.  This Court held that:

> any declaration by the Court at this point in time—after construction is complete and the clearing, grading, and excavation have taken place—would be of no practical effect.  To issue declaratory relief would be tantamount to issuing an advisory opinion, a result not within this Court's power. . . .  Because it can provide no meaningful remedy to address Plaintiffs' alleged injuries arising from their NHPA claims, the Court will dismiss the relevant counts of the Tribe's Complaint as moot.

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 301 F. Supp. 3d 50, 64 (D.D.C. 2018).  The Court was correct.  Arguments so far removed from an actual case or controversy between the Tribe and the Corps cannot sustain Article III standing.  In short, this Court has already considered and properly rejected the Tribe's argument that its request for relief regarding the scope of NHPA review can save its mooted claim.  *See also Bayou Liberty Ass'n. v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 398 (5th Cir. 2000) ("Therefore, any general declaratory judgment regarding Corps' procedures in issuing other permits would be an advisory opinion.").

The Tribe also argues that its NHPA claims evade review because the Corps' NHPA consultation process is too short to be fully litigated prior to cessation.  ECF No. 467 at 13.  The Tribe relies on *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296 (D.C. Cir. 2014), but fails to account for the significant factual distinctions that render it inapplicable to the NHPA claims here.  In *Ralls Corp.*, the D.C. Circuit made clear that the claims evaded review in part because even if the court had enjoined the order at issue, "there is no indication that the

---

[1] In addition to not satisfying the mootness exception, claims related to a hypothetical future Corps decision on a hypothetical future pipeline permit application are not ripe.  *People for the Ethical Treatment of Animals, Inc.*, 59 F. Supp. 3d at 99 (D.C. Circuit requires concrete dispute to know what defendant's policy is).

[agency's] process would have stopped in its tracks." *Id*. at 323.  Here, in contrast, an injunction would have "stopped the pipeline in its tracks," and the Court could have fully evaluated the merits of the Tribe's NHPA claims at summary judgment.  The Tribe, however, failed to show that it was entitled to preliminary injunctive relief on any of its claims, including failing to show that it was likely to succeed on the merits of its NHPA claims.

As the *Grant* court explained, the evading review prong of the mootness exception does not apply when the plaintiffs' legal claim—in that case, that the agency improperly segmented its decision—"can arise in a context with ample time for review." *Grant*, 892 F. Supp. 2d 252 at 258.  Here, the Tribe has not shown that the legal wrong it complains of—an alleged violation of consultation requirements under the NHPA—could not arise in a case with ample time for review.  Indeed, courts have ruled on the merits of the Corps' compliance with the NHPA in the context of tribal consultation.  *See, e.g., Ctr. for Biological Diversity v. U.S. Army Corps of Eng'rs,* No. CV 14-1667 PSG (CWX), 2015 WL 12659937, at *17 (C.D. Cal. June 30, 2015), *aff'd sub nom. Friends of Santa Clara River v. U.S. Army Corps of Eng'rs,* 887 F.3d 906 (9th Cir. 2018) ("[T]he Corps fulfilled its regulatory obligation by making a reasonable and good faith effort to identify interested tribes and that effort did not identify the Santa Ynez Band. Lastly, Plaintiffs have not demonstrated that the Santa Ynez Band has an interest in anything located in the Project area or that it is prejudiced by the Corps' failure to consult with it."); *Sisseton-Wahpeton Oyate of the Lake Traverse Reservation v. U.S. Corps of Eng'rs*, No. 3:11-CV-03026-RAL, 2016 WL 5478428, at *14 (D.S.D. Sept. 29, 2016), *aff'd sub nom. Sisseton-Wahpeton Oyate of Lake Traverse Reservation v. U.S. Corps of Eng'rs*, 888 F.3d 906 (8th Cir. 2018) (remanding to the Corps to determine whether a project was "the type of undertaking that could affect historic properties under 36 C.F.R. § 800.3(a) and to complete the Section 106

process if so necessary"). In short, the Tribe cannot support its claim that the NHPA claims at issue here are typically so short that they cannot be reviewed. The Tribe's NHPA claims are moot and must be denied.

Finally, the Tribe makes a policy argument that it is unfair to allow a project to be constructed and then permit the agency to "hide behind the mootness doctrine." ECF No. 467 at 13-14. The case the Tribe relies on, *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001), makes clear that its holding was premised on the idea that in NEPA cases, there is still meaningful relief that may be available, *i.e.*, further mitigation to minimize ongoing impacts of the project. For example, in that case, if the agency were required to conduct additional NEPA analysis, "the defendants could consider alternatives to the current reuse plan, and develop ways to mitigate the damage to the birds' habitat by, for example, creating new nesting and foraging areas on the land that was formerly the station or utilizing other nearby land for mitigation purposes." *Id*. at 678-79. Accordingly, the Court held that "[s]ince effective relief may still be available, the demolition of the Naval Station was insufficient to render the case moot." *Id*. at 679. Here, by contrast, any alleged impacts to the Tribe's cultural and historical properties were complete upon the pipeline's construction. There is no further mitigation that can ameliorate these alleged impacts because any impacts from this project have occurred. There is therefore no meaningful relief this Court can provide, and the Tribe's claims are moot. *Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 43 (D.C. Cir. 2015) ("This case is thus distinguishable from those in which the court could not provide any of the relief sought."). The Tribe has failed to establish that its NHPA claims are subject to the capable of repetition exception to mootness, and the Court should render judgment in favor of the Corps on those claims.

Yankton's NHPA claims also fail because the Court's dismissal of those claims as moot is law of the case. "The law-of-the-case doctrine is a rule of practice whereby courts generally . . . refuse to reopen what has been decided." *United States v. Kpodi*, 888 F.3d 486, 491 (D.C. Cir. 2018) (quotations and citations omitted). It "applies to questions decided explicitly or by necessary implication." *LaShawn A. v. Barry*, 87 F.3d 1389, 1394 (D.C. Cir. 1996) (quotations and citations omitted). Yankton cites a Ninth Circuit case that Yankton contends, ECF No. 467 at 7, stands for the proposition that an order finding a claim to be moot is not law of the case because the underlying issues have not been squarely decided. Yankton misses the point. As a different Ninth Circuit panel held, there is "no reason to recognize an exemption from the law of the case doctrine for constitutional questions of jurisdiction in general or the mootness doctrine in particular." *Johnson v. Contra Costa Cty. Sheriff's Dep't*, No. 97-15815, 1998 U.S. App. LEXIS 13456, at *6 (9th Cir. June 18, 1998). The Court fully considered whether Yankton's claims are moot and entered summary judgment on that basis. There is no reason for the Court to reconsider that law of this case. *Cf. Ferreira v. Borja*, 93 F.3d 671, 674 (9th Cir. 1996), *cert. denied*, 117 S. Ct. 972 (1997) ("Surely a court that has decided that it has jurisdiction is not duty-bound to entertain thereafter a series of repetitive motions to dismiss for lack of jurisdiction."). Indeed, Yankton does not even attempt to meet the standard for a motion for reconsideration under Federal Rule of Civil Procedure 59(e) or 60.[2] The Court need proceed no further.

### ii.     **Yankton is unable to identify a relevant mandatory duty to consult**

Yankton's consultation claim also fails because it is based on the misconception that the

---

[2] Yankton's reliance, ECF No. 467 at 7, on *Jones v. Bernanke*, 538 F. Supp. 2d 53 (D.D.C. 2008) is misplaced for several reasons. *Jones* does not suggest that a dismissal based on mootness is something other than a dismissal based on a "rule of law." *Id*. at 60. And Jones notably addressed a timely Rule 59(e) motion. *Id.* at 59-60. It therefore highlights Yankton's failure to properly seek reconsideration of its dismissed NHPA claims.

Court's remand order required the Corps to engage in consultation with Yankton under the NHPA during the remand process. Yankton's reliance on the NHPA to support an alleged consultation duty on remand, ECF No. 467 at 11 (citing 54 U.S.C. § 306108 and *United Keetoowah Band of Cherokee Indians in Okla. v. Fed. Commc'ns Comm'n,* 933 F.3d 728, 738 (D.D.C. 2019)), is logically infirm. The remand order did not, and could not, require the Corps to consult on Yankton's NHPA claims because the Court dismissed those claims as moot and no NHPA issue was remanded.

The Court remanded this case to the Corps for consultation on three discrete issues. Yankton is correct, ECF No. 467 at 12, that the Court's opinion granting the Corps' motion for summary judgment indicated that Yankton should engage in consultation on remand. But Yankton's citation to the Court's opinion omits the language focusing that consultation on the information sought by the Corps:

> [T]he Court observes that its conclusions today are not necessarily the end of the road for the Yankton Sioux's involvement with DAPL. **As of October 20, 2017, the Tribe has been contacted by Defendants and asked to provide input during the ongoing remand analysis. See** ECF No. 306, Exh. 1 (Letter from Corps requesting information from Yankton to assist in remand)**. Plaintiffs will** therefore have the opportunity to voice their remaining concerns regarding the Corps' environmental assessments **and, if they choose, to engage in an active dialogue with Defendants as this case continues to move forward**.

*Standing Rock Sioux Tribe*, 301 F. Supp. 3d at 75 (highlighted language omitted by Yankton). In other words, the Court tied Yankton's consultation to: 1) the Corps' letter seeking specific information from Yankton; and 2) Yankton's "remaining concerns."

Yankton's NHPA claims cannot support a mandatory consultation duty because the Court granted summary judgment on those claims. The Court dismissed Yankton's NHPA claims as moot because "the potential for the preservation of historic or cultural sites no longer exists." *Id.* at 63. The Court also rejected Yankton's argument "that meaningful relief remains

8

available because the 'risk of a spill through operation and maintenance of the Pipeline still . . . threatens the Tribe's cultural and historic sites,'" because "such an emphasis on ongoing harms is nowhere to be found in Plaintiffs' Complaint, nor are such prospective injuries supported by the record." *Id.* Yankton has not amended its Complaint and its Supplemental Complaint makes no reference to ongoing harms to cultural resources. *See* ECF No. 379-1; ECF No. 386. And Yankton's brief notably does not contain any reference to Yankton providing any information regarding specific cultural and historic sites that might be impacted by the Corps' approvals at the Lake Oahe crossing. In sum, the Court granted summary judgment on Yankton's NHPA claims. In so doing, the Court negated any consultation claims associated with Yankton's NHPA claims. Put another way, the Court's remand order cannot be construed to order consultation regarding Yankton's dismissed NHPA claims.

With respect to Yankton's remaining concerns regarding the remanded issues, Yankton fails to rebut the Corps' memorandum establishing that the Corps did not owe Yankton a mandatory duty to consult on remand. Contrary to Yankton's unsupported assertion, ECF No. 467 at 12, Executive Order 13175 imposes no such duty. ECF No. 448 at 16. *See also*, ECF No. 446 at 15-21; ECF No. 458 at 39-40. Yankton similarly offers nothing new in support of its allegation that "Corps policies" impose mandatory consultation duties. ECF No. 467 at 12. Yankton's post-remand consultation claim fails because it has no basis in law or the Court's remand order.

### iii. The Corps met any duty to consult

Yankton's reply does not seriously contest the Corps' argument, ECF No. 448 at 19-21, that the Corps met any duty to consult. Nor could it, as this Court rejected Yankton's mooted argument, ECF No. 467 at 13 (citing *Quechan Tribe of the Fort Yuma Indian Reservation v. U.S.*

9

*Dep't of Interior*, 755 F. Supp. 2d 1104 (S.D. Cal. 2010)), that the Corps' pre-remand consultation was "pathetic and insufficient."  The Court found that Yankton's assertions that it "'continually sought to protect'" its alleged lands were "somewhat belied . . . by the record regarding the Tribe's cooperation (or lack thereof) with the federal agencies involved in the project."  *Standing Rock Sioux Tribe*, 301 F. Supp. 3d at 55.  As the Court noted, "Yankton did not attend multiple meetings held by the Corps and FWS to discuss DAPL (meetings that were attended by other interested tribes) . . . nor did they respond to numerous efforts by the Corps and FWS to engage in discussion regarding the pipeline."  *Id*.  *See also*, ECF No. 448 at 2-3.  As the Court found with respect to Standing Rock, "'[t]his is not a case like *Quechan Tribe*, where a tribe entitled to consultation actively sought to consult with an agency and was not afforded the opportunity.'"  *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 33 (D.D.C. 2016) (citation omitted). *See also Ctr. for Biological Diversity v. BLM*, No. 2:14-cv-00226-APG-VCF, 2017 U.S. Dist. LEXIS 137089, at *53-54 (D. Nev. Aug. 23, 2017) (distinguishing *Quechan Tribe* where "plaintiffs also argue that BLM's single face-to-face meeting with the . . . tribe was insufficient consultation.  But the record indicates that BLM did much more than that.  BLM invited this tribe to engage in formal consultation five years prior to the pipeline's approval").  The record establishes that the Corps more than met any consultation obligation by repeatedly inviting Yankton to meetings even though Yankton explicitly deferred consultation to Standing Rock and the Cheyenne River Sioux Tribe.  ECF No. 448 at 20-21.

As the Corps established in its Memorandum, the Corps complied with any post-remand consultation duty by engaging and attempting to engage with Yankton regarding the three remand issues.  ECF No. 448 at 21-27.  Yankton's only response, ECF No. 467 at 14, is that the Corps did not comply with Yankton's consultation protocols, which Yankton contends renders

anything short of the Corps holding multiple meetings with every Yankton adult at a General Council meeting[3] something less than "consultation."  *See* ECF No. 448 at 19-20.  Yankton is simply incorrect, ECF No. 467 at 14, that the Corps was required to meet even once with Yankton's General Council.  It admits that the Corps' guidance does not mandate compliance with tribal consultation protocols.  *Id.*  And Yankton is mistaken that the Advisory Council on Historic Preservation regulations require the Corps to comply with Yankton's consultation protocols.  To the contrary, the ACHP regulations explicitly provide that consultation shall be conducted by "representatives designated or identified by the tribal government" rather than the entire tribal membership.  36 C.F.R. § 800.2(c)(2)(ii)(C).[4] Moreover, "the regulations . . . demand only that the Corps make a 'reasonable and good faith effort' to consult on identifying cultural properties, which 'may include background research, consultation, oral history interviews, sample field investigations, and field survey.'"  *Standing Rock Sioux Tribe*, 205 F. Supp. 3d at 33 (quoting 36 C.F.R. § 800.4(b)(1)).  In other words, the regulations that Yankton relies upon refute its already-mooted consultation claim.

Any doubt that Yankton can speak through its representatives is resolved by Yankton's Supplemental Complaint, which alleges that Chairman Flying Hawk makes claims in his "official capacity as *parens patriae* on behalf of the enrolled members of the Yankton Sioux Tribe."  ECF No. 379-1 at 4.  The Corps made a good faith effort to consult with Yankton both before and after remand.  ECF No. 448 at 2-3, 21-27.

---

[3] Yankton's General Council is composed of every Yankton member over the age of 18. Yankton Protocol § (C)(11), RAR13311-15.

[4] To the extent that Yankton's claims concern allegedly deficient consultation "on tribal lands" the ACHP regulations provide that "the tribal historic preservation officer (THPO) appointed or designated in accordance with the act is the official representative for the purposes of section 106."  36 C.F.R. § 800.2(c)(2)(i)(A).

## B.     The Corps properly considered environmental justice

In its work on remand, the Corps thoroughly considered input from all the plaintiff Tribes, including Yankton. Yankton argues that in considering environmental justice, "the Corps failed to consider the Tribe's concerns" including issues related to "traditional and cultural practices . . . on and near the crossing." ECF No. 467 at 5. This argument is belied by a record that shows consideration of these precise issues—and indeed an overall environmental justice analysis that "applies input provided by the . . . Yankton Sioux Tribe[] through targeted Tribal outreach." RAR45.

Yankton cites to the affidavits it provided and argues that the Corps ignored the Tribe's input and "does not account for the unique rights of tribal members." ECF No. 467 at 5. But the Corps took pains to consider this information from Yankton (as well as from the other tribes) regarding unique rights of tribal members, and their unique uses of the potentially affected area. *See, e.g.*, RAR83-87 ("Tribal cultural, spiritual, and ceremonial practices and beliefs that are vulnerable to impacts from a potential spill"); RAR88-90 ("Tribal hunting and fishing practices susceptible to impacts from a potential spill"); RAR91-98 ("Health Effects and Water Intake Considerations").

Indeed, the record makes clear that the Corps specifically considered the very affidavits that the Tribe cites to argue its concerns were ignored. ECF No. 467 at 5. *See also* RAR68 (quoting and discussing Kip Spotted Eagle Affidavit); RAR88; RAR105. For instance, citing Kip Spotted Eagle's affidavit directly, the Corps noted "[t]he importance of hunting and fishing from a subsistence and cultural standpoint was expressed in all of the tribal input received by the Corps." RAR88. The Corps also considered the Kip Spotted Eagle affidavit in its discussion of the geographic scope of its analysis, when it noted that the agency "considered input from the

12

YST and OST. These Tribes do not reside in the established buffer, but nonetheless have concerns about potential affects to their members in the event of a spill." RAR68.

Even more puzzling than Yankton's claim that its submissions were not considered is the Tribe's unsupported allegation that "the Corps' scope fails to include . . . a spill on the land and in the water that the Tribe and its members rely on for hunting, fishing, gathering, medicines, and ceremony." ECF No. 467 at 5.  The Corps' remand analysis extensively analyzes the impact of an unanticipated spill on hunting and fishing.  RAR88-90; RAR4-44.  And the Corps considered Tribal cultural, spiritual, and ceremonial practices and beliefs that are vulnerable to impacts from a potential spill.  RAR83-87.  In so doing, the Corps relied on Yankton's information regarding the scope of tribal members' hunting practices, RAR5-6, as well as on impacts to medicines and ceremonies.  RAR85 (noting that "[m]edicinal plants found along the Missouri River are also of extreme importance to the Yankton").  To the extent Yankton is arguing here that the geographic scope of the Corps' environmental justice analysis was too narrow to properly consider environmental justice impacts, it does not adequately respond to the argument that the oil spill models predicted a worst case discharge traveling at most 65 miles downstream.  RAR60.  Thus it was reasonable to limit the geographic scope to the area of analysis to no farther than the Cheyenne River Sioux Tribe's water intake, approximately 156-miles downstream of the Lake Oahe crossing.  *See id.*; RAR46.  Considering the impacts of a spill even further down river was not required by NEPA and would not have generated useful environmental justice analysis.  *See*, *e.g.*, RAR87.

In sum, the Corps' consideration of environmental justice appropriately considered the input of the Tribes and thoroughly considered Yankton's concerns related to "traditional and cultural practices" including "on and near the crossing." ECF No. 467 at 5.  The Corps'

13

environmental justice analysis was reasonable and fully consistent with NEPA.

**C.    Yankton's extra-record evidence regarding a spill from a different pipeline should be struck**

The extra-record articles regarding a spill from the Keystone pipeline on October 30, 2019 that Yankton relies on, ECF No. 467 at 1-2, have no bearing on the reasonableness of the Corps' August 31, 2018 remand decision. "It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). The administrative record consists of "'all documents and materials that the agency directly or indirectly considered.'" *Pac. Shores Subdivision Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) ("The APA limits judicial review to the administrative record 'except when there has been a strong showing of bad faith or improper behavior' or when the record is so bare that it prevents effective judicial review.'") (quotation omitted); *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010). In other words, news articles about events that occurred after an administrative decision are not part of the administrative record because they could not be considered by the agency.

Yankton is also incorrect, ECF No. 467 at 1-3, that news stories regarding a recent spill from a different pipeline have any bearing on evaluating the Corps' remand analysis.[5] The Keystone pipeline spill that Yankton highlights occurred on October 30, 2019, *id.*, approximately one year and two months after the Corps concluded its remand analysis on August 31, 2018. RAR1. Yankton's suggestion that such post-decisional documents should be considered misuses

---

[5] Yankton is incorrect that "[t]he question of a pipeline spill is not if, but when, an oil pipeline spill will occur." ECF No. 467 at 1. The question for this Court is whether the Corps' analysis relating to the Dakota Access pipeline's Lake Oahe crossing was arbitrary or capricious.

the Court's citation to a 2017 Keystone pipeline spill in its decision requiring monitoring of the Dakota Access pipeline during remand misses the mark.  As the Court stated, its concerns related to a 2017 spill from the Keystone pipeline made it in the Court's "interests to stay abreast of any relevant changes **during the remand period** and to order the parties to provide up-to-date information about the pipeline's operation." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 280 F. Supp. 3d 187, 191 (D.D.C. 2017) (emphasis added).  Neither the Court's remand decision nor other caselaw support using news reports from a spill on a different pipeline to assess the reasonableness of agency decision-making that concluded over a year before that spill.

### III.   CONCLUSION

The Corps respectfully submits that this Court should deny Yankton's motion for summary judgment and grant the Corps' motion for summary judgment.  It is too late for Yankton to raise or relitigate its pre-remand claims that were denied in summary judgment.  Even if it were not, Yankton's claims fail because the Corps fulfilled any duty to consult with Yankton.  Yankton's post-remand claims also fail because neither law nor this Court's remand require the Corps to consult with Yankton.  And in any event, the Corps satisfied any consultation duty by repeatedly seeking information relevant to the narrow issues remanded by the Court.  Lastly, Yankton's environmental justice claims fail because the Corps' analysis was wholly appropriate and Yankton has not and cannot show that it was arbitrary or capricious.

Dated: November 22, 2019

Respectfully submitted,

JEAN WILLIAMS
Deputy Assistant Attorney General
Environment & Natural Resources Division

By: */s/ Matthew Marinelli*
REUBEN SCHIFMAN, NY BAR
MATTHEW MARINELLI, IL Bar 6277967
U.S. Department of Justice

15

        Natural Resources Section
        P.O. Box 7611
        Benjamin Franklin Station
        Washington, DC 20044
        Phone: (202) 305-4224 (Schifman)
        Phone: (202) 305-0293 (Marinelli)
        Fax: (202) 305-0506
        reuben.schifman@usdoj.gov
        matthew.marinelli@usdoj.gov

        ERICA M. ZILIOLI, D.C. Bar 488073
        U.S. Department of Justice
        Environmental Defense Section
        P.O. Box 7611
        Washington, DC 20044
        Phone: (202) 514-6390
        Fax: (202) 514-8865
        Erica.Zilioli@usdoj.gov

        *Attorneys for the United States Army Corps of Engineers*


        OF COUNSEL:

        MILTON BOYD
        MELANIE CASNER
        U.S. Army Corps of Engineers
        Office of Chief Counsel
        Washington, DC

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

        */s/ Matthew Marinelli*
        Matthew Marinelli