APPEAL,CONSOL,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:16–cv–01534–JEB</u>

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE v. UNITED STATES ARMY CORPS OF ENGINEERS | Date Filed: 07/27/2016 |
| | Jury Demand: None |
| Assigned to: Judge James E. Boasberg | Nature of Suit: 893 Environmental Matters |
| Cases: 1:16–cv–01796–JEB | Jurisdiction: U.S. Government Defendant |
| 1:17–cv–00267–JEB | |
| Case in other court: USCA, 16–05259 | |
| 17–05043 | |
| USCA, 20–05197 | |
| Cause: 05:0706 Judicial Review of Agency Actions | |

**<u>Plaintiff</u>**

**STANDING ROCK SIOUX TRIBE**          represented by   **Jan Hasselman**
EARTHJUSTICE
810 Third Avenue
Suite 610
Seattle, WA 98104
206–343–7340
Fax: 206–343–1526
Email: jhasselman@earthjustice.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Stephanie Kathleen Tsosie**
EARTHJUSTICE
810 Third Avenue
Suite 610
Seattle, WA 98104
206–343–7340
Fax: 206–343–1526
Email: stsosie@earthjustice.org
*PRO HAC VICE*

**Patti A. Goldman**
EARTHJUSTICE
810 Third Avenue
Suite 610
Seattle, WA 98104
(206) 343–7340
Fax: (206) 343–1526
Email: pgoldman@earthjustice.org
*ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**YANKTON SIOUX TRIBE**
*16cv1796*

represented by **Jeffrey S. Rasmussen**
PATTERSON EARNHART REAL BIRD
& WILSON LLP
357 S. McCaslin Blvd.
Suite 200
Louisville, CO 80027
303−926−5292
Fax: 303−926−5293
Email: jrasmussen@nativelawgroup.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer S. Baker**
PATTERSON EARNHART REAL BIRD
& WILSON LLP
357 S. McCaslin Blvd.
Suite 200
Louisville, CO 80027
303−926−5292
Fax: 303−962−5293
Email: jbaker@nativelawgroup.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rollie Wilson**
PATTERSON EARNHART REAL BIRD
& WILSON LLP
601 Pennsylvania Ave., NW, South Bldg.
Suite 900
Washington, Suite 900
Washington, DC 20004
202−340−8232
Fax: 202−639−8238
Email: rwilson@nativelawgroup.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia Ann Marks**
FREDERICKS PEEBLES &
PATTERSON LLP
401 9th Street, NW
Suite 700
Washington, DC 20004
(202) 450−4887
Fax: (202) 450−5106
Email: pmarks@ndnlaw.com
*TERMINATED: 05/17/2019*

**Plaintiff**

represented by

**ROBERT FLYING HAWK**
*16cv1796, Chairman of the Yankton*
*Sioux Tribe Business and Claims*
*Committee*

**Jeffrey S. Rasmussen**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jennifer S. Baker**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Rollie Wilson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patricia Ann Marks**
(See above for address)
*TERMINATED: 05/17/2019*

**Plaintiff**

**OGLALA SIOUX TRIBE**
*17cv267*

represented by **Michael L. Roy**
HOBBS, STRAUS, DEAN & WALKER, LLP
1899 L Street, NW
Suite 1200
Washington, DC 20036
(202) 822–8282
Fax: (202) 296–8834
Email: mroy@hobbsstraus.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Plaintiff**

**CHEYENNE RIVER SIOUX TRIBE**

represented by **Conly John Schulte**
FREDERICKS PEEBLES & MORGAN LLP
1900 Plaza Drive
Louisville, CO 80027
(303) 673–9600
Fax: (303) 673–9839
Email: cschulte@ndnlaw.com *(Inactive)*
*TERMINATED: 02/28/2018*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph V. Messineo**
FREDERICKS PEEBLES & MORGAN

LLP
3610 North 163rd Plaza
Omaha, NE 68116
(402)–333–4053
Fax: (402)–333–4761
Email: jmessineo@bigfirelaw.com
*TERMINATED: 09/16/2019*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicole E. Ducheneaux**
Big Fire Law & Policy Group LLP
1404 Fort Crook Road South
Bellevue, NE 68005
United Sta
531–466–8725
Email: nducheneaux@bigfirelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tracey A. Zephier**
Cheyenne River Sioux Tribe Attorney
General
PO Box 590
Eagle Butte, SD 57625
(605) 964–6686
Fax: (605) 964–1160
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patricia Ann Marks**
(See above for address)
*TERMINATED: 05/17/2019*

**Intervenor Plaintiff**

**STEVE VANCE**                    represented by    **Joseph V. Messineo**
(See above for address)
*TERMINATED: 09/16/2019*
*LEAD ATTORNEY*
*PRO HAC VICE*

**Nicole E. Ducheneaux**
(See above for address)
*LEAD ATTORNEY*

V.

**Defendant**

represented by

**UNITED STATES ARMY CORPS OF ENGINEERS**

**Matthew M. Marinelli**
U.S. DEPARTMENT OF JUSTICE
Environment and Natural Resources
Division
Matthew Marinelli
4 Constitution Square
150 M Street, NE, Room 3.123
Washington, DC 20002
202–305–0293
Email: Matthew.Marinelli@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Reuben S. Schifman**
DEPARTMENT OF JUSTICE
Environment and Natural Resources
Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044
(202) 305–4224
Email: reuben.schifman@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amarveer Singh Brar**
U.S. DEPARTMENT OF JUSTICE
Environment & Natural Resources
Division
P.O. Box 7611
Washington, DC 20044–7611
(202) 305–0479
Email: amarveer.brar@usdoj.gov
*TERMINATED: 11/14/2019*

**Brian Matthew Collins**
U.S. DEPARTMENT OF JUSTICE
ENRD
P.O. Box 7611
Washington, DC 20044
(202) 305–0428
Fax: (202) 305–0506
Email: brian.m.collins@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Erica M. Zilioli**
U.S. DEPARTMENT OF JUSTICE
Envionment & Natural Resources Division
P.O. Box 7611
Washington, DC 20044
(202) 514–6390
Fax: (202) 514–8865

Email: erica.zilioli@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

**DAKOTA ACCESS LLC**                    represented by   **Kimberly Hope Caine**
NORTON ROSE FULBRIGHT US LLP
799 9th Street, NW
Suite 1000
Washington, DC 20001
(202) 662–0394
Fax: (202) 662–4643
Email: kim.caine@nortonrosefulbright.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan M. Glen**
NOSSAMAN LLP
816 Congress Avenue
Suite 970
Austin, TX 78701
(512) 813–7973
Fax: (512) 651–0770
Email: aglen@nossaman.com
*TERMINATED: 03/25/2019*

**David Debold**
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC 20036–5306
(202) 955–8551
Fax: (202) 530–9682
Email: ddebold@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Miguel A. Estrada**
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC 20036–5306
(202) 955–8257
Fax: (202) 530–9616
Email: mestrada@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Robert D. Comer**
NORTON ROSE FULBRIGHT US LLP
1200 17th Street
Suite 1000

Denver, CO 80202
(303) 801–2700
Fax: (393) 801–2777
Email: bob.comer@nortonrosefulbright.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William S. Scherman**
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, NW
Suite 300
Washington, DC 20036–5306
(202) 887–3510
Fax: (202) 530–9557
Email: wscherman@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DONALD J. TRUMP**
*Individually and in his official capacity*
*as President*
*TERMINATED: 06/20/2017*

**Intervenor Defendant**

**U.S. ARMY CORPS OF ENGINEERS**          represented by   **Matthew M. Marinelli**
                                                            (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Movant**

**LAKOTA PEOPLES LAW OFFICE**          represented by   **Patrick Michael Sullivan**
                                                        Dickinson Wright PLLC
                                                        1825 I St NW
                                                        Suite 900
                                                        Washington, DC 20006
                                                        (503) 659–6929
                                                        Email: psullivan@dickinson–wright.com
                                                        *TERMINATED: 10/24/2017*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Movant**

**LAW PROFESSORS AND**          represented by   **William John Snape , III**
**PRACTITIONERS**                                WASHINGTON COLLEGE OF LAW
                                                 4300 Nebraska Ave, NW
                                                 Washington, DC 20016
                                                 (202) 536–9351
                                                 Fax: (415) 436–9683
                                                 Email: wsnape@wcl.american.edu
                                                 *LEAD ATTORNEY*

7

*ATTORNEY TO BE NOTICED*

**Movant**

**18 FEDERALLY RECOGNIZED INDIAN TRIBES AND TRIBAL ORGANIZATIONS**

represented by **Matthew Lee Campbell**
NATIVE AMERICAN RIGHTS FUND
1506 Broadway
Boulder, CO 80302
(303) 447–8760
Email: mcampbell@narf.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**LAKOTA PEOPLE'S LAW PROJECT**

represented by **Daniel P. Sheehan**
THE ROMERO INSTITUTE
540 Sand Dollar Drive
La Selva Beach, CA 95076
(831) 763–9110
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION**

represented by **Joel William West Williams**
NATIVE AMERICAN RIGHTS FUND
1514 P Street, NW
Washington, DC 20005
(202) 785–4166
Email: williams@narf.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard A. Guest**
NATIVE AMERICAN RIGHTS FUND
1514 P Street, NW (Rear)
Suite D
Washington, DC 20005
(202) 785–4166
Fax: (202) 822–0068
Email: richardg@narf.org
*TERMINATED: 07/13/2017*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Lee Campbell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**OGLALA SIOUX TRIBE**

represented by **Michael L. Roy**
(See above for address)

8

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**ASSOCIATION ON AMERICAN**
**INDIAN AFFAIRS**

represented by **Elizabeth Lohah Homer**
HOMER LAW CHARTERED
1730 Rhode Island Avenue, NW
Suite 501
Washington, DC 20036
(202) 955–5601
Fax: (202) 955 5605
Email: ehomer@homerlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Lee Campbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**PUEBLO OF POJOAQUE**

represented by **Elizabeth Lohah Homer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**UNIVERSITY OF NEW MEXICO**
**SCHOOL OF LAW NATURAL**
**RESOURCES AND**
**ENVIRONMENTAL LAW CLINIC**

represented by **Elizabeth Lohah Homer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NATIONAL INDIGENOUS**
**WOMENS RESOURCE CENTER**
**AND ADDITIONAL AMICI**

represented by **Mary Kathryn Nagle**
PIPESTEM LAW FIRM PC
320 S Boston Ave
Suite 1705
Tulsa, OK 74103
202–407–0591
Email: mknagle@pipestemlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NATIONAL CONGRESS OF**
**AMERICAN INDIANS**

represented by **Matthew Lee Campbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**

KANJI & KATZEN, PLLC
303 Detroit Street
Suite 400
Ann Arbor, MI 48104
(734) 769–5400
Fax: (734) 769–2701
Email: rkanji@kanjikatzen.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**AFFILIATED TRIBES OF NORTHWEST INDIANS**

represented by **Matthew Lee Campbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**ALASKA INTER–TRIBAL COUNCIL**

represented by **Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION**

represented by **Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew Lee Campbell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**INTER TRIBAL ASSOCIATION OF ARIZONA**

represented by **Matthew Lee Campbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

represented by

**NATIONAL ASSOCIATION OF TRIBAL HISTORIC PRESERVATION OFFICERS**

**Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**NATIONAL INDIAN EDUCATION ASSOCIATION**

represented by **Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**NATIONAL INDIAN GAMING ASSOCIATION**

represented by **Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND, INC.**

represented by **Matthew Lee Campbell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**AMERICAN CIVIL LIBERTIES UNION**

represented by **Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**FRED T. KOREMATSU CENTER FOR LAW AND EQUALITY**

represented by **Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**34 FEDERALLY RECOGNIZED INDIAN TRIBES**

represented by **Riyaz A. Kanji**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**SARA JUMPING EAGLE**

represented by **Oliver B. Hall**
2515 Cliffbourne Place NW

Washington, DC 20009
617–953–0161
Email: oliverbhall@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**LADONNA BRAVE BULL ALLARD**          represented by  **Oliver B. Hall**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**VIRGIL TAKEN ALIVE**          represented by  **Oliver B. Hall**
                                                (See above for address)
                                                *LEAD ATTORNEY*
                                                *ATTORNEY TO BE NOTICED*

**Amicus**

**CHEYENNE GARCIA**          represented by  **Oliver B. Hall**
                                             (See above for address)
                                             *LEAD ATTORNEY*
                                             *ATTORNEY TO BE NOTICED*

**Amicus**

**WILLIAM WILD BILL LEFT HAND**          represented by  **Oliver B. Hall**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**MAXINE BRINGS HIM
BACK–JANIS**          represented by  **Oliver B. Hall**
                                      (See above for address)
                                      *LEAD ATTORNEY*
                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**KATHY WILLCUTS**          represented by  **Oliver B. Hall**
                                            (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

**Amicus**

**CRYSTAL COLE**          represented by  **Oliver B. Hall**
                                          (See above for address)
                                          *LEAD ATTORNEY*
                                          *ATTORNEY TO BE NOTICED*

**Amicus**

RUSSELL VAZQUEZ                     represented by   **Oliver B. Hall**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

Amicus

THOMAS E. BARBER, SR.              represented by   **Oliver B. Hall**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

Amicus

TATEOLOWAN GARCIA                  represented by   **Oliver B. Hall**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

Amicus

CHANI PHILLIPS                     represented by   **Oliver B. Hall**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

Amicus

WASTEWIN YOUNG                     represented by   **Oliver B. Hall**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

Amicus

NORTH DAKOTA PETROLEUM             represented by   **A. Kent Mayo**
COUNCIL                                             BAKER BOTTS, LLP
                                                    The Warner Building
                                                    1299 Pennsylvania Avenue, NW
                                                    Suite 1300
                                                    Washington, DC 20004–2400
                                                    (202) 639–1122
                                                    Email: kent.mayo@bakerbotts.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **Grant S. Snell**
                                                    CROWLEY FLECK PLLP
                                                    P.O. Box 759
                                                    1667 Whitefish Stage Road
                                                    Kalispell, MT 59901
                                                    406–752–6644
                                                    Email: gsnell@crowleyfleck.com
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

**Amicus**

**AMERICAN PETROLEUM
INSTITUTE**                                represented by   **David Hyler Coburn**
                                                           STEPTOE & JOHNSON LLP
                                                           1330 Connecticut Avenue, NW
                                                           Washington, DC 20036
                                                           (202) 429–8063
                                                           Fax: (202) 261–0565
                                                           Email: dcoburn@steptoe.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Amicus**

**AMERICAN FUEL &
PETROCHEMICAL
MANUFACTURERS**                           represented by   **David Hyler Coburn**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Amicus**

**ASSOCIATION OF OIL PIPE LINES**         represented by   **David Hyler Coburn**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Amicus**

**CHAMBER OF COMMERCE OF
THE UNITED STATES OF
AMERICA**                                 represented by   **David Hyler Coburn**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Amicus**

**NATIONAL ASSOCIATION OF
MANUFACTURERS**                           represented by   **David Hyler Coburn**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Amicus**

**BIG VALLEY BAND OF POMO
INDIANS OF THE BIG VALLEY
RANCHERIA**                               represented by   **Michael R. Sklaire**
                                                           GREENBERG TRAURIG, LLP
                                                           1750 Tysons Boulevard
                                                           Suite 1000
                                                           McLean, VA 22102
                                                           (703) 749–1300
                                                           Fax: (703) 749–1301
                                                           Email: sklairem@gtlaw.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Amicus**

**CONFEDERATED TRIBES OF THE
UMATILLA INDIAN
RESERVATION**

represented by **Michael R. Sklaire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**FORT BELKNAP INDIAN
COMMUNITY**

represented by **Michael R. Sklaire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**HOONAH INDIAN ASSOCIATION**

represented by **Michael R. Sklaire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**MICCOSUKEE TRIBE OF INDIANS
OF FLORIDA**

represented by **Michael R. Sklaire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NEZ PERCE TRIBE**

represented by **Michael R. Sklaire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**PASCUA YAQUI TRIBE**

represented by **Michael R. Sklaire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**RAMAPOUGH LENAPE NATION**

represented by **Michael R. Sklaire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**RED CLIFF BAND OF LAKE
SUPERIOR CHIPPEWA INDIANS**

represented by **Michael R. Sklaire**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**ROSEBUD SIOUX TRIBE**              represented by   **Michael R. Sklaire**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**SAN CARLOS APACHE TRIBE**          represented by   **Michael R. Sklaire**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**SENECA NATION**                    represented by   **Michael R. Sklaire**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**SWINOMISH INDIAN TRIBAL**          represented by   **Michael R. Sklaire**
**COMMUNITY**                                         (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**WAMPANOAG TRIBE OF GAY**           represented by   **Michael R. Sklaire**
**HEAD (AQUINNAH)**                                   (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**AMERICANS FOR INDIAN**             represented by   **Michael R. Sklaire**
**OPPORTUNITY**                                       (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**INDIAN LAW RESOURCE CENTER**       represented by   **Michael R. Sklaire**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**TRIBAL LAW AND POLICY**            represented by   **Michael R. Sklaire**
**INSTITUTE**                                         (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**STATE OF NORTH DAKOTA**     represented by  **Matthew A. Sagsveen**
ND OFFICE OF ATTORNEY GENERAL
500 N. 9th Street
Bismarck, ND 58501–4509
(701) 328–3640
Email: masagsve@nd.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**HESS CORPORATION**     represented by  **Ragan Naresh**
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave, NW
Washington, DC 20004
(202) 389–5267
Fax: (202) 389–5200
Email: ragan.naresh@kirkland.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**CONSUMER ENERGY ALLIANCE**     represented by  **Amy Miller**
BUCHANAN INGERSOLL & ROONEY,
PC
1700 K Street, NW
Suite 300
Washington, DC 20006
202–452–7935
Email: amy.miller@bipc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**NORTH DAKOTA FARM BUREAU**     represented by  **Adam Michael Dec**
BAKER BOTTS, LLP
700 K Street NW
Washington, DC 20001
202–639–7817
Email: Adam.Dec@bakerbotts.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Grant S. Snell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Amicus

**NORTH DAKOTA GRAIN**     represented by  **Adam Michael Dec**
**DEALERS ASSOCIATION**                   (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Grant S. Snell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**NORTH DAKOTA GRAIN**              represented by   **Adam Michael Dec**
**GROWERS ASSOCIATION**                              (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Grant S. Snell**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**SOUTH DAKOTA CORN GROWERS**       represented by   **Adam Michael Dec**
**ASSOCIATION**                                      (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Grant S. Snell**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**SOUTH DAKOTA FARM BUREAU**        represented by   **Adam Michael Dec**
**FEDERATION**                                       (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Grant S. Snell**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**SOUTH DAKOTA SOYBEAN**            represented by   **Adam Michael Dec**
**ASSOCIATION**                                      (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Grant S. Snell**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF INDIANA**                    represented by  **Thomas Molnar Fisher**
                                                        OFFICE OF THE INDIANA ATTORNEY
                                                        GERNERAL
                                                        302 West Govern ment Center South, Fifth
                                                        Floor
                                                        Indianapolis, IN 46204
                                                        (317) 232–6255
                                                        Email: tom.fisher@atg.in.gov
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF MONTANA**                    represented by  **Thomas Molnar Fisher**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF ALABAMA**                    represented by  **Thomas Molnar Fisher**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF ARKANSAS**                   represented by  **Thomas Molnar Fisher**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF IOWA**                       represented by  **Thomas Molnar Fisher**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF KANSAS**                     represented by  **Thomas Molnar Fisher**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

**STATE OF KENTUCKY**                   represented by  **Thomas Molnar Fisher**
                                                        (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **STATE OF LOUISIANA** | represented by | **Thomas Molnar Fisher** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **STATE OF NEBRASKA** | represented by | **Thomas Molnar Fisher** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **STATE OF OHIO** | represented by | **Thomas Molnar Fisher** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **STATE OF SOUTH DAKOTA** | represented by | **Thomas Molnar Fisher** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **STATE OF TEXAS** | represented by | **Thomas Molnar Fisher** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **STATE OF UTAH** | represented by | **Thomas Molnar Fisher** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **STATE OF WEST VIRGINIA** | represented by | **Thomas Molnar Fisher** |
| | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **MEMBERS OF CONGRESS** | represented by | **William Stewart Eubanks , II** |
| | | EUBANKS & ASSOCIATES, LLC |
| | | 1331 H Street NW |
| | | Suite 902 |
| | | Washington, DC 20005 |

970–703–6060
Email: bill@eubankslegal.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**BOLD ALLIANCE**                    represented by   **Karimah Schoenhut**
                                                      SIERRA CLUB
                                                      50 F Street, NW
                                                      8th Floor
                                                      Washington, DC 20001
                                                      (202) 548–4584
                                                      Fax: (202) 547–6009
                                                      Email: karimah.schoenhut@sierraclub.org
                                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**CENTER FOR BIOLOGICAL**            represented by   **Karimah Schoenhut**
**DIVERSITY**                                         (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**DAKOTA RURAL ACTION**              represented by   **Karimah Schoenhut**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**FRIENDS OF THE EARTH**             represented by   **Karimah Schoenhut**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**HONOR THE EARTH**                  represented by   **Karimah Schoenhut**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**SAVE OUR ILLINOIS LAND**           represented by   **Karimah Schoenhut**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**SIERRA CLUB**                      represented by   **Karimah Schoenhut**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**350.ORG**                          represented by   **Karimah Schoenhut**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**MIDWEST ALLIANCE OF**                    represented by   **Matthew Lee Campbell**
**SOVEREIGN TRIBES**                                       (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Amicus**

**28 FEDERALLY RECOGNIZED**                represented by   **Matthew Lee Campbell**
**INDIAN TRIBES**                                          (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Cross Claimant**

**DAKOTA ACCESS LLC**                      represented by   **Kimberly Hope Caine**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Alan M. Glen**
                                                           (See above for address)
                                                           *TERMINATED: 03/25/2019*

                                                           **David Debold**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Miguel A. Estrada**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Robert D. Comer**
                                                           (See above for address)
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **William S. Scherman**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**UNITED STATES ARMY CORPS OF**           represented by   **Matthew M. Marinelli**
**ENGINEERS**                                              (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Brian Matthew Collins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Erica M. Zilioli**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/27/2016 | 1 | | COMPLAINT *for Declaratory and Injunctive Relief* against UNITED STATES ARMY CORPS OF ENGINEERS ( Filing fee $ 400 receipt number 0090–4619146) filed by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Civil Cover Sheet, # 2 Summons to US Army Corps of Engineers)(Goldman, Patti) (Entered: 07/27/2016) |
| 07/27/2016 | 2 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Jan Hasselman, :Firm– Earthjustice, :Address– 705 Second Avenue, Suite 203, Seattle, WA 98104. Phone No. – (206)343–7340. Fax No. – (206)343–1526 Filing fee $ 100, receipt number 0090–4619367. Fee Status: Fee Paid. by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Declaration of Jan Hasselman ISO Mtn for Admission Pro Hac Vice, # 2 Text of Proposed Order Plaintiff's Proposed Order Granting Mtn to Appear Pro Hac Vice)(Goldman, Patti) (Entered: 07/27/2016) |
| 07/27/2016 | 3 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Stephanie Tsosie, :Firm– Earthjustice, :Address– 705 Second Avenue, Suite 203, Seattle, WA 98104. Phone No. – (206)343–7340. Fax No. – (206)343–1526 Filing fee $ 100, receipt number 0090–4619381. Fee Status: Fee Paid. by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Declaration of Stephanie Tsosie ISO Mtn for Admission Pro Hac Vice, # 2 Text of Proposed Order)(Goldman, Patti) (Entered: 07/27/2016) |
| 07/27/2016 | | | Case Assigned to Judge James E. Boasberg. (jd) (Entered: 07/28/2016) |
| 07/29/2016 | 4 | | SUMMONS (1) Issued Electronically as to UNITED STATES ARMY CORPS OF ENGINEERS. (Attachment: # 1 Consent Forms)(jd) (Entered: 07/29/2016) |
| 08/01/2016 | | | MINUTE ORDER: The Court ORDERS that: 1) Plaintiff's 2 Motion for Admission *Pro Hac Vice* of JAN HASSELMAN is GRANTED; and 2) Plaintiff's 3 Motion for Admission *Pro Hac Vice* of STEPHANIE TSOSIE is GRANTED. Signed by Judge James E. Boasberg on 8/1/16. (lcjeb1) (Entered: 08/01/2016) |
| 08/04/2016 | 5 | | MOTION for Preliminary Injunction *and Memo in Support of Motion for Preliminary Injunction*, MOTION for Hearing *Expedited Hearing Requested* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Text of Proposed Order Granting Motion for Preliminary Injunction, # 2 Text of Proposed Order Granting Request for Expedited Hearing)(Hasselman, Jan) (Entered: 08/04/2016) |
| 08/04/2016 | 6 | | LARGE ADDITIONAL ATTACHMENTS by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Declaration of Dave Armabault II In Support of Mtn |

| | | | |
|---|---|---|---|
| | | | for PI, # 2 Declaration of Jon Eagle Sr In Support of Mtn for PI, # 3 Declaration of Jan Hasselman In Support of Mtn for PI, # 4 Exhibit 1 to Decl of J Hasselman, # 5 Exhibit 2 to Decl of J Hasselman, # 6 Exhibit 3 Part 1 to Decl of J Hasselman, # 7 Exhibit 3 Part 2 to Decl of J Hasselman, # 8 Exhibit 3 Part 3 to Decl of J Hasselman, # 9 Exhibit 3 Part 4 to Decl of J Hasselman, # 10 Exhibit 4 to Decl of J Hasselman, # 11 Exhibit 5 to Decl of J Hasselman, # 12 Exhibit 6 to Decl of J Hasselman, # 13 Exhibit 7 to Decl of J Hasselman, # 14 Exhibit 8 to Decl of J Hasselman, # 15 Exhibit 9 to Decl of J Hasselman, # 16 Exhibit 10 to Decl of J Hasselman, # 17 Exhibit 11 to Decl of J Hasselman, # 18 Exhibit 12 to Decl of J Hasselman, # 19 Exhibit 13 Part 1 to Decl of J Hasselman, # 20 Exhibit 13 Part 2 to Decl of J Hasselman, # 21 Exhibit 13 Part 3 to Decl of J Hasselman, # 22 Exhibit 13 Part 4 to Decl of J Hasselman, # 23 Exhibit 13 Part 5 to Decl of J Hasselman, # 24 Exhibit 13 Part 6 to Decl of J Hasselman, # 25 Exhibit 13 Part 7 to Decl of J Hasselman, # 26 Exhibit 13 Part 8 to Decl of J Hasselman, # 27 Exhibit 13 Part 9 to Decl of J Hasselman, # 28 Exhibit 14 to Decl of J Hasselman, # 29 Exhibit 15 to Decl of J Hasselman, # 30 Exhibit 16 to Decl of J Hasselman, # 31 Exhibit 17 to Decl of J Hasselman, # 32 Exhibit 18 to Decl of J Hasselman, # 33 Exhibit 19 to Decl of J Hasselman, # 34 Exhibit 20 to Decl of J Hasselman, # 35 Exhibit 21 to Decl of J Hasselman, # 36 Exhibit 22 to Decl of J Hasselman, # 37 Exhibit 23 to Decl of J Hasselman, # 38 Exhibit 24 to Decl of J Hasselman, # 39 Exhibit 25 to Decl of J Hasselman, # 40 Exhibit 26 to Decl of J Hasselman, # 41 Exhibit 27 to Decl of J Hasselman, # 42 Exhibit 28 to Decl of J Hasselman, # 43 Exhibit 29 to Decl of J Hasselman, # 44 Exhibit 30 to Decl of J Hasselman, # 45 Exhibit 31 to Decl of J Hasselman, # 46 Exhibit 32 to Decl of J Hasselman, # 47 Exhibit 33 to Decl of J Hasselman, # 48 Exhibit 34 to Decl of J Hasselman, # 49 Exhibit 35 to Decl of J Hasselman, # 50 Exhibit 36 to Decl of J Hasselman, # 51 Exhibit 37 to Decl of J Hasselman, # 52 Exhibit 38 to Decl of J Hasselman, # 53 Exhibit 39 to Decl of J Hasselman, # 54 Exhibit 40 to Decl of J Hasselman, # 55 Exhibit 41 to Decl of J Hasselman, # 56 Exhibit 43 to Decl of J Hasselman, # 57 Exhibit 44 to Decl of J Hasselman, # 58 Exhibit 45 to Decl of J Hasselman, # 59 Exhibit 46 to Decl of J Hasselman, # 60 Exhibit 47 to Decl of J Hasselman, # 61 Exhibit 48 to Decl of J Hasselman, # 62 Exhibit 49 to Decl of J Hasselman, # 63 Exhibit 50 to Decl of J Hasselman, # 64 Exhibit 51 to Decl of J Hasselman, # 65 Exhibit 52 to Decl of J Hasselman, # 66 Exhibit 53 to Decl of J Hasselman, # 67 Exhibit 54 to Decl of J Hasselman, # 68 Text of Proposed Order Granting Motion for Preliminary Injunction, # 69 Text of Proposed Order Granting Request for Expedited Hearing)(Hasselman, Jan) Modified on 8/5/2016 (ztd). (Entered: 08/04/2016) |
| 08/05/2016 | | | NOTICE OF ERROR re 6 Motion for Preliminary Injunction; emailed to jhasselman@earthjustice.org, cc'd 4 associated attorneys –– The PDF file you docketed contained errors: 1. In the future, please use the event Large Additional Attachments found under Other Documents. (ztd, ) (Entered: 08/05/2016) |
| 08/05/2016 | 7 | | Unopposed MOTION to Intervene *in Support of Defendant* by DAKOTA ACCESS LLC (Attachments: # 1 Memorandum in Support, # 2 Declaration, # 3 Proposed Responsive Pleading, # 4 Text of Proposed Order, # 5 Disclosure Statement)(Caine, Kimberly) (Entered: 08/05/2016) |
| 08/05/2016 | 8 | | NOTICE of Appearance by Kimberly Hope Caine on behalf of DAKOTA ACCESS LLC (Caine, Kimberly) (Entered: 08/05/2016) |

| 08/05/2016 | 9 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– William J. Leone, :Firm– Norton Rose Fulbright US LLP, :Address– 666 Fifth Avenue, New York, NY 10103. Phone No. – 212–318–3000. Fax No. – 212–318–3400 Filing fee $ 100, receipt number 0090–4630102. Fee Status: Fee Paid. by DAKOTA ACCESS LLC (Attachments: # 1 Declaration)(Caine, Kimberly) (Entered: 08/05/2016) |
|---|---|---|---|
| 08/05/2016 | 10 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Robert D. Comer, :Firm– Norton Rose Fulbright US LLP, :Address– 1200 17th Street, Suite 1000, Denver, CO 80202. Phone No. – 303–801–2700. Fax No. – 393–801–2777 Filing fee $ 100, receipt number 0090–4630120. Fee Status: Fee Paid. by DAKOTA ACCESS LLC (Attachments: # 1 Declaration)(Caine, Kimberly) (Entered: 08/05/2016) |
| 08/08/2016 | | | MINUTE ORDER granting Unopposed 7 Motion to Intervene on behalf of Dakota Access, LLC. Signed by Judge James E. Boasberg on 8/8/16. (lcjeb2) (Entered: 08/08/2016) |
| 08/08/2016 | | | MINUTE ORDER granting 9 Motion for Leave to Appear Pro Hac Vice of WILLIAM J. LEONE. Signed by Judge James E. Boasberg on 8/8/16. (lcjeb2) (Entered: 08/08/2016) |
| 08/08/2016 | | | MINUTE ORDER granting 10 Motion for Leave to Appear Pro Hac Vice of Robert D. Comer. Signed by Judge James E. Boasberg on 8/8/16. (lcjeb2) (Entered: 08/08/2016) |
| 08/08/2016 | | | MINUTE ORDER: The Court ORDERS that a conference call in Chambers is hereby set for Monday, August 8, 2016, at 3 p.m. EST to discuss scheduling. The Court ORDERS that parties shall dial into Chambers' toll–free conference–call number, (877) 402–9753, at this time. Chambers will contact the parties separately via email with the dial–in code. Signed by Judge James E. Boasberg on 8/8/16. (lcjeb2) (Entered: 08/08/2016) |
| 08/08/2016 | | | MINUTE ORDER: As discussed in today's conference call, the Court ORDERS that any opposition to the preliminary–injunction motion shall be filed by August 18, 2016, with any reply due by August 22, 2016, and a hearing shall be set for August 24, 2016, at 2:00 p.m. in Courtroom 19. Signed by Judge James E. Boasberg on 8/8/16. (lcjeb2) (Entered: 08/08/2016) |
| 08/08/2016 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Telephone Conference held on 8/8/2016. (ad) (Entered: 08/09/2016) |
| 08/09/2016 | | | Set/Reset Deadlines/Hearings: Any opposition to the preliminary–injunction motion shall be filed by 8/18/2016, with any reply due by 8/22/2016, and a hearing shall be set for 8/24/2016, at 2:00 PM, in Courtroom 19, before Judge James E. Boasberg. (ad) (Entered: 08/09/2016) |
| 08/10/2016 | 11 | | MOTION to Intervene in Support of Plaintiff by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration Steve Vance, # 2 Exhibit 1 to Vance Decl, # 3 Exhibit 2 to Vance Decl, # 4 Exhibit 3 to Vance Decl, # 5 Exhibit 4 to Vance Decl, # 6 Exhibit 5 to Vance Decl, # 7 Declaration Chairman Harold Frazier, # 8 Exhibit 1 to Frazier Decl, # 9 Exhibit 2 to Frazier Decl, # 10 Exhibit 3 to Frazier Decl, # 11 Declaration Joye Braun, # 12 Exhibit Text of Proposed Complaint, # 13 Text of Proposed Order, # 14 Exhibit Disclosure Statement)(Schulte, Conly) (Entered: 08/10/2016) |

| 08/10/2016 | 12 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Nicole E. Ducheneaux, :Firm– Fredericks Peebles & Morgan LLP, :Address– 3610 North 163rd Plaza, Omaha, NE 68116. Phone No. – 402–333–4053. Fax No. – 402–333–4761 Filing fee $ 100, receipt number 0090–4634821. Fee Status: Fee Paid. by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration Nicole Ducheneaux, # 2 Text of Proposed Order)(Schulte, Conly) (Entered: 08/10/2016) |
| --- | --- | --- | --- |
| 08/11/2016 | | | MINUTE ORDER granting 12 Motion for Admission *Pro Hac Vice* of NICOLE E. DUCHENEAUX. Signed by Judge James E. Boasberg on 8/11/16. (lcjeb2) (Entered: 08/11/2016) |
| 08/11/2016 | | | MINUTE ORDER: The Court ORDERS that if Dakota Access opposes the 11 Motion to Intervene, it shall file such opposition by August 15, 2016. Signed by Judge James E. Boasberg on 8/11/16. (lcjeb2) (Entered: 08/11/2016) |
| 08/11/2016 | | | Set/Reset Deadlines: Dakota Access' opposition, if any, to 11 Motion to Intervene due by 8/15/2016. (tg) (Entered: 08/11/2016) |
| 08/11/2016 | 13 | | NOTICE of Appearance by Erica M. Zilioli on behalf of UNITED STATES ARMY CORPS OF ENGINEERS (Zilioli, Erica) (Entered: 08/11/2016) |
| 08/11/2016 | 14 | | MOTION for Leave to File *to File Supplemental Declaration in Support of Motion for Preliminary Injunction* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Exhibit 1 Declaration of Tim Mentz, Sr., # 2 Text of Proposed Order)(Hasselman, Jan) (Entered: 08/11/2016) |
| 08/11/2016 | 15 | | NOTICE of Appearance by Matthew M. Marinelli on behalf of UNITED STATES ARMY CORPS OF ENGINEERS (Marinelli, Matthew) (Entered: 08/11/2016) |
| 08/12/2016 | | | MINUTE ORDER granting Plaintiff's 14 Motion for Leave to File Supplemental Declaration in Support of Motion for Preliminary Injunction. Signed by Judge James E. Boasberg on 8/12/16. (lcjeb2) (Entered: 08/12/2016) |
| 08/12/2016 | 16 | | SUPPLEMENTAL Declaration to re 5 MOTION for Preliminary Injunction *and Memo in Support of Motion for Preliminary Injunction* MOTION for Hearing *Expedited Hearing Requested* filed by STANDING ROCK SIOUX TRIBE. (td) (Entered: 08/12/2016) |
| 08/15/2016 | 17 | | Memorandum in opposition to re 11 MOTION to Intervene *in Support of Plaintiff* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Text of Proposed Order)(Caine, Kimberly) (Entered: 08/15/2016) |
| 08/16/2016 | 18 | | REPLY to opposition to motion re 11 MOTION to Intervene *in Support of Plaintiff* filed by CHEYENNE RIVER SIOUX TRIBE. (Schulte, Conly) (Entered: 08/16/2016) |
| 08/16/2016 | 19 | | MOTION for Joinder by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration Robert Walters, # 2 Declaration Chairman Harold Frazier, # 3 Exhibit 1 to Frazier Declaration, # 4 Exhibit 2 to Frazier Declaration, # 5 Declaration Melvin Garreau, Sr., # 6 Declaration Dave Nelson)(Schulte, Conly) (Entered: 08/16/2016) |
| 08/17/2016 | 20 | | |

| | | |
|---|---|---|
| | | MOTION for Leave to File Excess Pages *in Opposition to Plaintiff's Motion for Preliminary Injunction* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Caine, Kimberly) (Entered: 08/17/2016) |
| 08/18/2016 | | MINUTE ORDER: Given the accelerated timetable for the Court to prepare for this proceeding, the Court ORDERS that the 20 Motion for Excess Pages is DENIED. Signed by Judge James E. Boasberg on 8/18/2016. (lcjeb1) Modified on 8/19/2016 to include the word "Minute Order" within the entry (ad). (Entered: 08/18/2016) |
| 08/18/2016 | 21 | Memorandum in opposition to re 5 MOTION for Preliminary Injunction *and Memo in Support of Motion for Preliminary Injunction* MOTION for Hearing *Expedited Hearing Requested* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Declaration Declaration of Joel Ames, # 18 Declaration Declaration of Martha Chieply and accompanying exhibits 1 through 16, # 19 Declaration Declaration of Richard Harnois and accompanying exhibits 1 through 5, # 20 Declaration Declaration of Jonathan Shelman)(Zilioli, Erica) (Entered: 08/18/2016) |
| 08/18/2016 | 22 | Memorandum in opposition to re 5 MOTION for Preliminary Injunction *and Memo in Support of Motion for Preliminary Injunction* MOTION for Hearing *Expedited Hearing Requested* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit A1, # 3 Exhibit B, # 4 Exhibit B1, # 5 Exhibit B2, # 6 Exhibit B3, # 7 Exhibit B4, # 8 Exhibit B5, # 9 Exhibit B6, # 10 Exhibit B7, # 11 Exhibit C, # 12 Exhibit C1, # 13 Exhibit C2, # 14 Exhibit C3, # 15 Exhibit C4, # 16 Exhibit C5, # 17 Exhibit C6, # 18 Exhibit C7, # 19 Exhibit C8, # 20 Exhibit C9, # 21 Exhibit C10, # 22 Exhibit C11, # 23 Exhibit D, # 24 Exhibit E, # 25 Exhibit F, # 26 Exhibit G, # 27 Exhibit H, # 28 Exhibit I, # 29 Exhibit J, # 30 Exhibit K, # 31 Exhibit L, # 32 Exhibit M, # 33 Exhibit N, # 34 Exhibit O, # 35 Exhibit P, # 36 Exhibit Q, # 37 Exhibit R, # 38 Exhibit S, # 39 Exhibit T, # 40 Exhibit U, # 41 Exhibit V, # 42 Exhibit W, # 43 Exhibit X, # 44 Text of Proposed Order)(Caine, Kimberly) (Entered: 08/18/2016) |
| 08/19/2016 | | MINUTE ORDER: The Court ORDERS that: 1) The Cheyenne River Sioux Tribe's 11 Motion to Intervene is GRANTED, and the CRST may participate as a party in this litigation; 2) Given the compressed timetable for the Preliminary Injunction, the fact that Defendants' Opposition briefs have already been filed, and the comprehensiveness of the briefing by the Standing Rock Sioux Tribe, however, the CRST may not participate in the preliminary–injunction briefing or hearing; and 3) The CSRT's 19 Motion for Joinder, accordingly, is DENIED. Signed by Judge James E. Boasberg on 8/19/2016. (lcjeb1) (Entered: 08/19/2016) |
| 08/19/2016 | 23 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Alan M. Glen, :Firm– Nossaman LLP, :Address– 816 Congress Ave., Ste. 970, Austin, TX 78701. Phone No. – 512–813–7943. Fax No. – 512–651–0770 Filing fee $ 100, receipt number 0090–4644415. Fee Status: Fee Paid. by DAKOTA ACCESS LLC (Attachments: # 1 Declaration In Support of Motion for Admission of Attory Pro Hac Vice)(Quarles, Steven) (Entered: 08/19/2016) |

| 08/19/2016 | | | MINUTE ORDER granting 23 Motion for Leave to Appear *Pro Hac Vice* of ALAN M. GLEN. Signed by Judge James E. Boasberg on 8/19/2016. (lcjeb1) (Entered: 08/19/2016) |
|---|---|---|---|
| 08/22/2016 | 24 | | REPLY to opposition to motion re 5 MOTION for Preliminary Injunction *and Memo in Support of Motion for Preliminary Injunction* MOTION for Hearing *Expedited Hearing Requested* filed by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Declaration of Jan Hasselman ISO Reply re Motion for Preliminary Injunction, # 2 Exhibit 55, # 3 Exhibit 56, # 4 Exhibit 57, # 5 Exhibit 58, # 6 Exhibit 59, # 7 Exhibit 60, # 8 Exhibit 61, # 9 Exhibit 62, # 10 Exhibit 63, # 11 Exhibit 64)(Hasselman, Jan) (Entered: 08/22/2016) |
| 08/23/2016 | | | MINUTE ORDER: The Court ORDERS that at tomorrow's hearing, Plaintiff may have 25 minutes for its initial argument, Defendants may jointly have 30 minutes, and Plaintiff may have 5 minutes for rebuttal. No witnesses may be called. Signed by Judge James E. Boasberg on 8/23/2016. (lcjeb1) (Entered: 08/23/2016) |
| 08/23/2016 | 25 | | MOTION for Leave to File *Supplemental Declaration of Joey Mahmoud* by DAKOTA ACCESS LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Text of Proposed Order)(Caine, Kimberly) (Entered: 08/23/2016) |
| 08/24/2016 | | | MINUTE ORDER: The Court ORDERS that Dakota Access' 25 Motion for Leave to File Supplemental Declaration is DENIED. Signed by Judge James E. Boasberg on 8/24/2016. (lcjeb1) (Entered: 08/24/2016) |
| 08/24/2016 | 26 | | ANSWER to Complaint by DAKOTA ACCESS LLC.(Caine, Kimberly) (Entered: 08/24/2016) |
| 08/24/2016 | | | MINUTE ORDER: The Court ORDERS that a status conference will be held on September 14, 2016, at 2 P.M. Plaintiffs may appear by telephone. Signed by Judge James E. Boasberg on 8/24/2016. (lcjeb1) (Entered: 08/24/2016) |
| 08/24/2016 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Motion Hearing held on 8/24/2016 re 5 MOTION for Preliminary Injunction and Memo in Support of Motion for Preliminary Injunction. 5 Motion for Preliminary Injunction and Memo in Support of Motion for Preliminary Injunction, HEARD and TAKEN UNDER ADVISEMENT. A Status Conference is set for 9/14/2016, at 2:00 PM, in Courtroom 19, before Judge James E. Boasberg. (Court Reporter Lisa Griffith) (ad) (Entered: 08/24/2016) |
| 09/01/2016 | 27 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 8−24−16; Page Numbers: 1−62. Date of Issuance:9−1−16. Court Reporter/Transcriber Lisa W GRIFFITH, Telephone number 2023543247, Tape Number: Lisa_Griffith@dcd.uscourts.gov. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will |

| | | |
|---|---|---|
| | | be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 9/22/2016. Redacted Transcript Deadline set for 10/2/2016. Release of Transcript Restriction set for 11/30/2016.(Griffith, Lisa) (Entered: 09/01/2016) |
| 09/01/2016 | 28 | NOTICE of Appearance by Alan M. Glen on behalf of DAKOTA ACCESS LLC (Glen, Alan) (Entered: 09/01/2016) |
| 09/02/2016 | 29 | MOTION for Leave to File *Supplemental Declaration* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Declaration Supplemental Declaration of Tim Mentz, Sr., # 2 Exhibit 1 to Supp'l Declaration, # 3 Exhibit 2 to Supp'l Declaration, # 4 Exhibit 3 to Supp'l Declaration, # 5 Exhibit 4 to Supp'l Declaration)(Hasselman, Jan) (Entered: 09/02/2016) |
| 09/04/2016 | 30 | Emergency MOTION for Temporary Restraining Order by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Declaration Declaration of Tim Mentz In Support of TRO, # 2 Declaration Declaration of Jan Hasselman In Support of TRO, # 3 Text of Proposed Order)(Hasselman, Jan) (Entered: 09/04/2016) |
| 09/04/2016 | 31 | MOTION for Temporary Restraining Order by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration Nicole Ducheneaux, # 2 Text of Proposed Order)(Schulte, Conly) (Entered: 09/04/2016) |
| 09/05/2016 | | MINUTE ORDER: The Court ORDERS that a hearing on Plaintiff's TRO shall take place on September 6, 2016, at 3:00 p.m., in Courtroom 19. Signed by Judge James E. Boasberg on 9/05/2016. (ad) (Entered: 09/05/2016) |
| 09/05/2016 | | Set/Reset Hearing: A hearing on Plaintiff's TRO is set for 9/6/2016, at 3:00 PM, in Courtroom 19, before Judge James E. Boasberg. (ad) (Entered: 09/05/2016) |
| 09/05/2016 | 32 | RESPONSE re 30 Emergency MOTION for Temporary Restraining Order , 31 MOTION for Temporary Restraining Order filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Zilioli, Erica) (Entered: 09/05/2016) |
| 09/06/2016 | 33 | MOTION for Leave to Appear to Appear Telephonically by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 09/06/2016) |
| 09/06/2016 | | MINUTE ORDER: The Court GRANTS Cheyenne River's 33 Motion for Leave to Appear Telephonically. Signed by Judge James E. Boasberg on 9/6/2016. (lcjeb1) (Entered: 09/06/2016) |
| 09/06/2016 | 34 | RESPONSE re 30 Emergency MOTION for Temporary Restraining Order , 31 MOTION for Temporary Restraining Order , 29 MOTION for Leave to File *Supplemental Declaration* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Text of Proposed Order)(Caine, Kimberly) (Entered: 09/06/2016) |
| 09/06/2016 | 35 | REPLY to opposition to motion re 31 MOTION for Temporary Restraining Order filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Declaration Ducheneaux, # 2 Exhibit 1 to Ducheneaux Decl, # 3 Declaration Chairman Harold Frazier)(Ducheneaux, Nicole) (Entered: 09/06/2016) |

| 09/06/2016 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Motion Hearing held on 9/6/2016 re 30 Emergency MOTION for Temporary Restraining Order filed by STANDING ROCK SIOUX TRIBE, 31 MOTION for Temporary Restraining Order filed by CHEYENNE RIVER SIOUX TRIBE. (Order forthcoming). (Court Reporter Patricia Kaneshiro–Miller.) (tg) (Entered: 09/06/2016) |
|---|---|---|---|
| 09/06/2016 | | | MINUTE ORDER: The Court ORDERS that Plaintiff's 29 Motion for Leave to File Supplemental Declaration is GRANTED. Signed by Judge James E. Boasberg on 9/6/2016. (lcjeb1) (Entered: 09/06/2016) |
| 09/06/2016 | | | MINUTE ORDER: As explained at today's hearing, the Court ORDERS that Plaintiffs' [30, 31] Motions for Temporary Restraining Order are GRANTED IN PART and DENIED IN PART. As agreed by Defendants, the Court ORDERS that no construction activity on the DAPL may take place between Highway 1806 and 20 miles to the east of Lake Oahe. Construction activity to the west of Highway 1806 may proceed. Signed by Judge James E. Boasberg on 9/6/2016. (lcjeb1) (Entered: 09/06/2016) |
| 09/06/2016 | 36 | | SUPPLEMENTAL Declaration to re 5 MOTION for Preliminary Injunction *and Memo in Support of Motion for Preliminary Injunction* MOTION for Hearing *Expedited Hearing Requested* filed by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Exhibit)(td) (Entered: 09/07/2016) |
| 09/07/2016 | | | MINUTE ORDER: As the Court will now be in trial on another matter on September 14, 2016, it ORDERS that the status conference set for that date is VACATED and RESET for September 16, 2016, at 2:00 p.m. The Court apologizes for any inconvenience. Signed by Judge James E. Boasberg on 9/7/2016. (lcjeb1) (Entered: 09/07/2016) |
| 09/07/2016 | | | Set/Reset Hearings: The Status Conference set for 9/14/2016, at 2:00 PM, is hereby VACATED and RESCHEDULED for 9/16/2016, at 2:00 PM, in Courtroom 19, before Judge James E. Boasberg. (ad) (Entered: 09/07/2016) |
| 09/08/2016 | 37 | | AMENDED COMPLAINT against CHEYENNE RIVER SIOUX TRIBE filed by CHEYENNE RIVER SIOUX TRIBE.(Ducheneaux, Nicole) Modified on 9/12/2016 (td). Modified on 10/20/2016 (znmw). (Entered: 09/08/2016) |
| 09/09/2016 | 38 | | ORDER DENYING 5 Motion for Preliminary Injunction. Signed by Judge James E. Boasberg on 9/9/2016. (lcjeb1) (Entered: 09/09/2016) |
| 09/09/2016 | 39 | | MEMORANDUM OPINION re 38 Order on Motion for Preliminary Injunction. Signed by Judge James E. Boasberg on 9/9/2016. (lcjeb1) (Entered: 09/09/2016) |
| 09/09/2016 | 40 | | ENTERED IN ERROR. . . . .NOTICE *of Appeal to US Court of Appeals DC Circuit* by STANDING ROCK SIOUX TRIBE re 38 Order on Motion for Preliminary Injunction, 5 MOTION for Preliminary Injunction *and Memo in Support of Motion for Preliminary Injunction* MOTION for Hearing *Expedited Hearing Requested*, 39 Memorandum & Opinion (Attachments: # 1 Exhibit Order)(Hasselman, Jan) Modified on 9/12/2016 (td). (Entered: 09/09/2016) |
| 09/09/2016 | 41 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 38 Order on Motion for Preliminary Injunction, 39 Memorandum & Opinion by STANDING ROCK SIOUX TRIBE. Filing fee $ 505, receipt number 0090–4668363. Fee |

| | | |
|---|---|---|
| | | Status: Fee Paid. Parties have been notified. (Attachments: # 1 Exhibit Order)(Hasselman, Jan) (Entered: 09/09/2016) |
| 09/09/2016 | 42 | MOTION Injunction Pending Appeal by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE (Attachments: # 1 Exhibit 1, # 2 Declaration of Thomas F King PhD, # 3 Text of Proposed Order)(Hasselman, Jan) (Entered: 09/09/2016) |
| 09/09/2016 | 43 | RESPONSE re 42 MOTION Injunction Pending Appeal filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Zilioli, Erica) (Entered: 09/09/2016) |
| 09/09/2016 | | USCA Case Number 16–5259 for 41 Notice of Appeal to DC Circuit Court, filed by STANDING ROCK SIOUX TRIBE. (zrdj) (Entered: 09/12/2016) |
| 09/12/2016 | | MINUTE ORDER: The Court ORDERS that Plaintiff's 42 Motion for Injunction Pending Appeal is GRANTED IN PART and DENIED IN PART. With the consent of both Defendants, the terms of the Temporary Restraining Order issued September 6, 2016, are REINSTATED until the status conference on September 16, 2016. The Motion is otherwise DENIED. Signed by Judge James E. Boasberg on 9/12/2016. (lcjeb1) (Entered: 09/12/2016) |
| 09/12/2016 | | NOTICE OF CORRECTED DOCKET ENTRY: re 40 Notice (Other), was entered in error and counsel refiled said pleading as docket entry no. 41 . (td) (Entered: 09/12/2016) |
| 09/12/2016 | 44 | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date9/9/16 re USCA Case Number 16–5259, 41 Notice of Appeal to DC Circuit Court,. (td) (Entered: 09/12/2016) |
| 09/12/2016 | | MINUTE ORDER: As each Plaintiff in a civil suit is not entitled to its own separate Complaint, the Court ORDERS that Intervenor Plaintiff's 37 First Amended Complaint is STRICKEN. Signed by Judge James E. Boasberg on 9/12/2016. (lcjeb1) (Entered: 09/12/2016) |
| 09/16/2016 | | MINUTE ORDER: As discussed at today's status hearing, the Court ORDERS that: 1) The Corps' response to Plaintiffs' Complaint is due on October 11, 2016; 2) The Corps shall file the administrative record by November 10, 2016; and 3) The parties shall appear for a status hearing on November 10, 2016, at 2:00 p.m. Signed by Judge James E. Boasberg on 9/16/2016. (lcjeb1) (Entered: 09/16/2016) |
| 09/16/2016 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 9/16/2016. Attorneys Ducheneaux, Pieper, Hasselman, Schulte, and Goldman appeared via telephone. (The Corps' response to Plaintiffs' Complaint is due on 10/11/2016; The Corps shall file the administrative record by 11/10/2016). A Status Conference is set for 11/10/2016, at 2:00 PM, in Courtroom 19, before Judge James E. Boasberg. (Court Reporter Patricia Kaneshiro) (ad) (Entered: 09/16/2016) |
| 09/19/2016 | 45 | MOTION for Reconsideration *of Minute Order Striking Amended Complaint* by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 09/19/2016) |
| 09/23/2016 | | |

| | | | |
|---|---|---|---|
| | | | MINUTE ORDER: Intervenor–Plaintiff Cheyenne River seeks 45 reconsideration of the Court's Order striking its Amended Complaint. For purposes of judicial efficiency, the Court continues to believe that proceeding with one, rather than two, Complaints is preferable. As Cheyenne River points out that Standing Rock will shortly seek amendment of its Complaint, see Mot. at 5–6, the Court believes the wiser course is for the two Plaintiffs to file one Amended Complaint, setting forth the separate (or joint) claims each wishes to make. If either Plaintiff believes it would somehow be prejudiced by such a course of action, the Court ORDERS that it may file a pleading by September 30, 2016, articulating such prejudice. Signed by Judge James E. Boasberg on 9/23/2016. (lcjeb1) (Entered: 09/23/2016) |
| 09/23/2016 | | | Set/Reset Deadline: If either Plaintiff believes it would somehow be prejudiced by such a course of action, the Court ORDERS that it may file a pleading by 9/30/2016, articulating such prejudice. (ad) (Entered: 09/23/2016) |
| 09/30/2016 | 46 | | RESPONSE to Minute Order filed 9/23/16,,, *Concerning Amended Complaint* by CHEYENNE RIVER SIOUX TRIBE. (Ducheneaux, Nicole) Modified on 10/3/2016 (td). (Entered: 09/30/2016) |
| 10/11/2016 | 47 | | ANSWER to Complaint by UNITED STATES ARMY CORPS OF ENGINEERS.(Zilioli, Erica) (Entered: 10/11/2016) |
| 10/19/2016 | 48 | | ORDER: The Court ORDERS that: 1) Intervenor–Plaintiff Cheyenne River Sioux Tribe's 45 Motion for Reconsideration is GRANTED; 2) Cheyenne River's Amended Complaint 37 is FILED; and 3) Defendants shall respond to Cheyenne River's Amended Complaint by December 19, 2016. Signed by Judge James E. Boasberg on 10/19/2016. (lcjeb1) (Entered: 10/19/2016) |
| 10/19/2016 | | | Set/Reset Deadline: Defendants shall respond to Cheyenne River's Amended Complaint by 12/19/2016,. (ad) (Entered: 10/19/2016) |
| 10/26/2016 | 49 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on September 16, 2016; Page Numbers: 1–36. Date of Issuance:October 26, 2016. Court Reporter/Transcriber Patricia Kaneshiro–Miller, Telephone number 202–354–3243, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the cou rt reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 11/16/2016. Redacted Transcript Deadline set for 11/26/2016. Release of Transcript Restriction set for 1/24/2017.(pk) (Entered: 10/26/2016) |

| 10/26/2016 | 50 | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on September 6, 2016; Page Numbers: 1–37. Date of Issuance:October 26, 2016. Court Reporter/Transcriber Patricia Kaneshiro–Miller, Telephone number 202–354–3243, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the cour t reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 11/16/2016. Redacted Transcript Deadline set for 11/26/2016. Release of Transcript Restriction set for 1/24/2017.(pk) (Entered: 10/26/2016) |
| --- | --- | --- |
| 11/08/2016 | 51 | NOTICE of Appearance by Miguel A. Estrada on behalf of DAKOTA ACCESS LLC (Estrada, Miguel) (Entered: 11/08/2016) |
| 11/08/2016 | 52 | NOTICE of Appearance by William S. Scherman on behalf of DAKOTA ACCESS LLC (Scherman, William) (Entered: 11/08/2016) |
| 11/08/2016 | 53 | NOTICE of Appearance by David Debold on behalf of DAKOTA ACCESS LLC (Debold, David) (Entered: 11/08/2016) |
| 11/09/2016 | 54 | MOTION for Extension of Time to *Lodge Portion of Administrative Record* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Text of Proposed Order)(Marinelli, Matthew) (Entered: 11/09/2016) |
| 11/10/2016 | 55 | NOTICE *of Lodging Administrative Record* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit 1 – Certifications, # 2 Exhibit 2 – Admin. Record Index)(Zilioli, Erica) (Entered: 11/10/2016) |
| 11/10/2016 |  | MINUTE ORDER: As discussed at today's status hearing, the Court ORDERS that: 1) The parties shall return for a further status hearing on December 9, 2016, at 10:30 a.m.; 2) In the interim, they shall review the administrative record and meet and confer in an attempt to resolve any disputes regarding completeness or confidentiality; and 3) The Government's 54 Motion for Extension of Time is DENIED as moot. Signed by Judge James E. Boasberg on 11/10/2016. (lcjeb1, ) (Entered: 11/10/2016) |
| 11/10/2016 |  | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 11/10/2016. A further Status Conference is set for 12/9/2016, at 10:30 AM, in Courtroom 19, before Judge James E. Boasberg. (Court Reporter Elizabeth Saint–Loth) (ad) (Entered: 11/10/2016) |
| 11/14/2016 | 56 | NOTICE *Regarding Recently Issued Public Documents* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit 1 – Letter, # 2 |

| | | | |
|---|---|---|---|
| | | | Exhibit 2 – Statement)(Zilioli, Erica) (Entered: 11/14/2016) |
| 11/15/2016 | 57 | | ANSWER to 37 Amended Complaint , CROSSCLAIM against UNITED STATES ARMY CORPS OF ENGINEERS by DAKOTA ACCESS LLC. Related document: 37 Amended Complaint filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Exhibit A)(Scherman, William) (Entered: 11/15/2016) |
| 11/15/2016 | 58 | | MOTION to supplement the administrative record on an expedited basis by DAKOTA ACCESS LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Scherman, William) (Entered: 11/15/2016) |
| 11/15/2016 | | | MINUTE ORDER: The Court ORDERS that if the Government opposes Dakota Access's 58 Motion to Supplement, it shall file such Opposition by November 18, 2016. Signed by Judge James E. Boasberg on 11/15/2016. (lcjeb1) (Entered: 11/15/2016) |
| 11/15/2016 | | | Set/Reset Deadline: If the Government opposes Dakota Access's 58 Motion to Supplement, it shall file such Opposition by 11/18/2016. (ad) (Entered: 11/15/2016) |
| 11/15/2016 | 59 | | MOTION to Expedite *Consideration of Cross−Claim* by DAKOTA ACCESS LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Scherman, William) (Entered: 11/15/2016) |
| 11/15/2016 | | | MINUTE ORDER: In the event the Government opposes Dakota Access's 59 Motion to Expedite, the Court ORDERS that it shall file such Opposition by November 21, 2016. Signed by Judge James E. Boasberg on 11/15/2016. (lcjeb1) (Entered: 11/15/2016) |
| 11/16/2016 | | | Set/Reset Deadline: In the event the Government opposes Dakota Access's 59 Motion to Expedite, the Court ORDERS that it shall file such Opposition by 11/21/2016. (ad) (Entered: 11/16/2016) |
| 11/18/2016 | 60 | | TRANSCRIPT OF STATUS CONFERENCE before Judge James E. Boasberg held on 11−10−2016; Page Numbers: 1 − 29. Date of Issuance:11−18−2016. Court Reporter/Transcriber Elizabeth SaintLoth, Telephone number 202−354−3242, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 12/9/2016. Redacted Transcript Deadline set for 12/19/2016. Release of Transcript Restriction set for 2/16/2017.(Saint−Loth, Elizabeth) (Entered: 11/18/2016) |
| 11/18/2016 | 61 | | |

| | | | |
|---|---|---|---|
| | | | Memorandum in opposition to re 58 MOTION to supplement the administrative record on an expedited basis filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit October 2014 letter, # 2 Exhibit Standard Form 299 Application, # 3 Exhibit August 11, 2016 B. Comer letter, # 4 Exhibit August 11, 2016 E. Zilioli email, # 5 Exhibit October 2008 Policy Guidance)(Marinelli, Matthew) (Entered: 11/18/2016) |
| 11/20/2016 | 62 | | REPLY to opposition to motion re 58 MOTION to supplement the administrative record on an expedited basis filed by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit List, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4)(Scherman, William) (Entered: 11/20/2016) |
| 11/21/2016 | 63 | | Memorandum in opposition to re 59 MOTION to Expedite *Consideration of Cross−Claim* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 11/21/2016) |
| 11/22/2016 | 64 | | REPLY to opposition to motion re 59 MOTION to Expedite *Consideration of Cross−Claim* filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 11/22/2016) |
| 12/02/2016 | | | MINUTE ORDER: The Court ORDERS that the parties may present argument on Intervenor's [58−59] Motions at the status hearing currently set for December 9, 2016. Signed by Judge James E. Boasberg on 12/2/2016. (lcjeb1) (Entered: 12/02/2016) |
| 12/04/2016 | 65 | | NOTICE *Regarding Recently Issued Public Document* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit December 4, 2016 Army Memorandum)(Marinelli, Matthew) (Entered: 12/04/2016) |
| 12/05/2016 | 66 | | MOTION for Summary Judgment by DAKOTA ACCESS LLC (Attachments: # 1 Memorandum in Support, # 2 Statement of Facts, # 3 Declaration, # 4 Text of Proposed Order)(Scherman, William) (Entered: 12/05/2016) |
| 12/07/2016 | 67 | | STATUS REPORT by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE. (Ducheneaux, Nicole) (Entered: 12/07/2016) |
| 12/09/2016 | | | MINUTE ORDER: As discussed at today's status hearing, the Court ORDERS that: 1) Dakota Access's 58 Motion to Supplement the Administrative Record is DENIED WITHOUT PREJUDICE to be renewed in the event that it believes additional records are required to respond to the Government's forthcoming brief; 2) The Government shall nonetheless make good−faith efforts to begin compiling the documents sought by Dakota Access, and it shall also supplement the Administrative Record by January 6, 2017, with all documents concerning the easement that were created on or before July 25, 2016; 3) Dakota Access's 59 Motion to Expedite is DENIED IN PART, given the announced briefing schedule; 4) The Government shall file a combined Opposition to Dakota Access's Motion for Summary Judgment and any Motion to Dismiss by January 6, 2017; 5) The Tribes shall file any Opposition(s) by that same date; 6) Dakota Access shall file its combined Opposition and Reply by January 31, 2017; 7) The Government and the Tribes shall file any Replies within 10 days of Dakota Access's filing; 8) The Court shall notify the parties of a date for oral argument if it requires one; and 9) The Government shall promptly notify the Court should it change its position regarding the easement. Signed by Judge James E. Boasberg on 12/09/2016. (lcjeb3) (Entered: 12/09/2016) |

| 12/09/2016 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 12/9/2016. (Court Reporter Lisa Griffith) (nbn) (Entered: 12/09/2016) |
|---|---|---|---|
| 12/09/2016 | 68 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 12–9–16; Page Numbers: 1–23. Date of Issuance:12–9–16. Court Reporter/Transcriber Lisa W GRIFFITH, Telephone number 202–354–3247, Tape Number: Lisa_Griffith@dcd.uscourts.gov. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 12/30/2016. Redacted Transcript Deadline set for 1/9/2017. Release of Transcript Restriction set for 3/9/2017.(Griffith, Lisa) (Entered: 12/09/2016) |
| 12/14/2016 | 69 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Joseph V. Messineo, :Firm– Fredericks Peebles & Morgan LLP, :Address– 3610 North 163rd Plaza, Omaha, NE 68116. Phone No. – 402–333–4053. Fax No. – 402–333–4761 Filing fee $ 100, receipt number 0090–4776916. Fee Status: Fee Paid. by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration of Joseph Messineo, # 2 Text of Proposed Order)(Schulte, Conly) (Entered: 12/14/2016) |
| 12/15/2016 | | | MINUTE ORDER denying without prejudice 69 Motion for Admission *Pro Hac Vice* of JOSEPH V. MESSINEO for failure to comply with LCvR 83(d)(4). The declaration does not state whether the attorney has been disciplined by any bar, and if the attorney has been disciplined by any bar, the circumstances and details of the discipline. Signed by Judge James E. Boasberg on 12/15/2016. (lcjeb1) (Entered: 12/15/2016) |
| 12/15/2016 | 70 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Joseph v. Messineo, :Firm– Fredericks Peebles & Morgan LLP, :Address– 3610 North 163rd Plaza, Omaha, NE 68116. Phone No. – 402–333–4053. Fax No. – 402–333–4761 Fee Status: No Fee Paid. by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration of Joseph Messineo, # 2 Text of Proposed Order)(Schulte, Conly) (Entered: 12/15/2016) |
| 12/15/2016 | | | MINUTE ORDER granting 70 Motion for Admission *Pro Hac Vice* of JOSEPH V. MESSINEO. Signed by Judge James E. Boasberg on 12/15/2016. (lcjeb1) (Entered: 12/15/2016) |
| 12/16/2016 | 71 | | Joint MOTION to Hold in Abeyance *Claims of Standing Rock Sioux Tribe and Cheyenne River Sioux Tribe* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Text of Proposed Order)(Zilioli, Erica) (Entered: 12/16/2016) |

| 12/16/2016 | 72 | | ORDER: (1) The 71 Joint Motion to Hold Claims in Abeyance is GRANTED. (2) The U.S. Army Corps of Engineers' response to the Cheyenne River Sioux Tribe's Amended Complaint and all briefing regarding the Standing Rock Sioux Tribe's and Cheyenne River Sioux Tribe's claims in this case shall be held in abeyance until the resolution of Dakota Access's pending motion for summary judgment and any motion to dismiss Dakota Access's cross–claim filed by the U.S. Army Corps of Engineers on or before January 6, 2017. (3) The parties shall file a status report and proposal for resolving this matter within 14 days of the resolution of that motion for summary judgment and motion to dismiss. Signed by Judge James E. Boasberg on 12/16/2016. (lcjeb3) (Entered: 12/16/2016) |
|---|---|---|---|
| 12/16/2016 | | | Set/Reset Deadlines: Any motion to dismiss Dakota Access's cross–claim filed by the U.S. Army Corps of Engineers on or before 1/6/2017. (nbn) (Entered: 12/20/2016) |
| 01/06/2017 | 73 | | MOTION to Dismiss *And Memorandum in Opposition to Dakota Access, LLC's Motion for Summary Judgment* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Memorandum in Support of Motion to Dismiss and in Opposition to Dakota Access, LLC's Motion for Summary Judgment, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 8a, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Text of Proposed Order)(Marinelli, Matthew) (Entered: 01/06/2017) |
| 01/06/2017 | 74 | | MOTION to Dismiss *and Opposition to Motion for Summary Judgment and Cross–Motion for Summary Judgment* by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Statement of Facts, # 2 Declaration Nicole Ducheneaux, # 3 Exhibit A to Ducheneaux Decl, # 4 Exhibit B to Ducheneaux Decl, # 5 Exhibit C to Ducheneaux Decl, # 6 Exhibit D to Ducheneaux Decl, # 7 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 01/06/2017) |
| 01/06/2017 | 75 | | Memorandum in opposition to re 66 MOTION for Summary Judgment , *Cross Motion for Summary Judgment and Motion to Dismiss* filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Statement of Facts, # 2 Declaration Nicole Ducheneaux, # 3 Exhibit A to Ducheneaux Decl, # 4 Exhibit B to Ducheneaux Decl, # 5 Exhibit C to Ducheneaux Decl, # 6 Exhibit D to Ducheneaux Decl, # 7 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 01/06/2017) |
| 01/06/2017 | 76 | | Cross MOTION for Summary Judgment , *Opposition to Motion for Summary Judgment and Motion to Dismiss* by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Statement of Facts, # 2 Declaration Nicole Ducheneaux, # 3 Exhibit A to Ducheneaux Decl, # 4 Exhibit B to Ducheneaux Decl, # 5 Exhibit C to Ducheneaux Decl, # 6 Exhibit D to Ducheneaux Decl, # 7 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 01/06/2017) |
| 01/06/2017 | 77 | | MOTION to Dismiss, CROSS MOTION for Summary Judgment filed by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Text of Proposed Order Proposed Order)(Hasselman, Jan) Modified event title on 1/9/2017 (znmw). (Entered: 01/06/2017) |
| 01/06/2017 | 78 | | Memorandum in opposition to re 66 MOTION for Summary Judgment *and In Support of Motion to Dismiss and Cross–Motion for Summary Judgment* filed |

| | | |
|---|---|---|
| | | by STANDING ROCK SIOUX TRIBE. (Attachments: # <u>1</u> Declaration of Jan Hasselman, # <u>2</u> Exhibit 1–6 to Decl of J Hasselman, # <u>3</u> Exhibit 7–14 to Decl of J Hasselman, # <u>4</u> Exhibit 15–17 to Decl of J Hasselman, # <u>5</u> Exhibit 18–21 to Decl of J Hasselman)(Hasselman, Jan) (Entered: 01/06/2017) |
| 01/06/2017 | 79 | Memorandum in opposition to re <u>66</u> MOTION for Summary Judgment filed by UNITED STATES ARMY CORPS OF ENGINEERS. (See Docket Entry <u>73</u> to view document). (znmw) (Entered: 01/09/2017) |
| 01/16/2017 | <u>80</u> | MOTION for Preliminary Injunction , Emergency MOTION for Temporary Restraining Order by DAKOTA ACCESS LLC (Attachments: # <u>1</u> Memorandum in Support, # <u>2</u> Exhibit, # <u>3</u> Text of Proposed Order for Temporary Restraining Order, # <u>4</u> Text of Proposed Order for Preliminary Injunction)(Scherman, William) (Entered: 01/16/2017) |
| 01/17/2017 | <u>81</u> | NOTICE OF SUPPLEMENTAL AUTHORITY by DAKOTA ACCESS LLC (Scherman, William) (Entered: 01/17/2017) |
| 01/17/2017 | | MINUTE ORDER: The Court ORDERS that a conference call with Chambers is hereby set for today, January 17, 2017 at 4:30 p.m. EST to discuss scheduling for the TRO motion. The Court ORDERS that the parties shall dial into Chambers' toll–free conference–call number, 877–402–9753, at that time. Chambers will contact the parties via email with the dial–in code. Signed by Judge James E. Boasberg on 1/17/2017. (lcjeb2) (Entered: 01/17/2017) |
| 01/17/2017 | 82 | Memorandum in opposition to re <u>80</u> MOTION for Preliminary Injunction Emergency MOTION for Temporary Restraining Order filed by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 01/17/2017) |
| 01/17/2017 | | MINUTE ORDER: As discussed in today's conference call, the Court ORDERS that the parties shall appear in person or by telephone at a hearing on Dakota Access's Application for TRO on January 18, 2017, at 3:00 p.m., in Courtroom 19. Signed by Judge James E. Boasberg on 1/17/17. (lcjeb2) (Entered: 01/17/2017) |
| 01/17/2017 | | Set/Reset Hearings: TRO Hearing set for 1/18/2017 at 3:00 PM in Courtroom 19 before Judge James E. Boasberg. (zlsj) (Entered: 01/17/2017) |
| 01/18/2017 | 83 | RESPONSE re <u>80</u> MOTION for Preliminary Injunction Emergency MOTION for Temporary Restraining Order filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # <u>1</u> Declaration Nicole Ducheneaux, # <u>2</u> Exhibit A to Ducheneaux Decl, # <u>3</u> Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 01/18/2017) |
| 01/18/2017 | 84 | REPLY to opposition to motion re <u>80</u> MOTION for Preliminary Injunction Emergency MOTION for Temporary Restraining Order filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 01/18/2017) |
| 01/18/2017 | 85 | Memorandum in opposition to re <u>80</u> MOTION for Preliminary Injunction Emergency MOTION for Temporary Restraining Order filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # <u>1</u> Exhibit, # <u>2</u> Exhibit)(Marinelli, Matthew) (Entered: 01/18/2017) |
| 01/18/2017 | | Minute Entry for proceedings held before Judge James E. Boasberg: Motion Hearing held on 1/18/2017 re <u>80</u> MOTION for Preliminary Injunction Emergency MOTION for Temporary Restraining Order filed by DAKOTA |

| | | | |
|---|---|---|---|
| | | | ACCESS LLC. (Order forthcoming). (Court Reporter Lisa Griffith) (tg) (Entered: 01/18/2017) |
| 01/18/2017 | | | MINUTE ORDER: As explained in open court following today's hearing, the Court ORDERS that Dakota Access's 80 Motion for Temporary Restraining Order is DENIED and its Motion for Preliminary Injunction is WITHDRAWN WITHOUT PREJUDICE. Signed by Judge James E. Boasberg on 01/18/2017. (lcjeb3) (Entered: 01/18/2017) |
| 01/18/2017 | 88 | | MANDATE of USCA as to 41 Notice of Appeal to DC Circuit Court, filed by STANDING ROCK SIOUX TRIBE. USCA Case Number 16–5259. (Attachments: # 1 order filed January 18, 2017)(zrdj) (Entered: 01/23/2017) |
| 01/20/2017 | 86 | | REPLY to opposition to motion re 66 MOTION for Summary Judgment filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration)(Scherman, William) Modified links on 1/23/2017 (znmw). (Entered: 01/20/2017) |
| 01/20/2017 | 87 | | Memorandum in opposition to re 77 MOTION to Dismiss MOTION for Summary Judgment, 74 MOTION to Dismiss *and Opposition to Motion for Summary Judgment and Cross–Motion for Summary Judgment*, 73 MOTION to Dismiss *And Memorandum in Opposition to Dakota Access, LLC's Motion for Summary Judgment*, 76 Cross MOTION for Summary Judgment , *Opposition to Motion for Summary Judgment and Motion to Dismiss* filed by DAKOTA ACCESS LLC. (See Docket Entry 86 to view document). (znmw) (Entered: 01/23/2017) |
| 01/24/2017 | 89 | | NOTICE by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit)(Marinelli, Matthew) (Entered: 01/24/2017) |
| 01/25/2017 | | | MINUTE ORDER: Given the 89 Notice just filed by the Corps, the Court ORDERS that the parties shall appear for a status hearing on January 30, 2017, at 11:00 a.m. to discuss its impact on the pending motions. Signed by Judge James E. Boasberg on 1/25/2017. (lcjeb3) (Entered: 01/25/2017) |
| 01/25/2017 | | | Set/Reset Hearings: Status Conference set for 1/30/2017 at 11:00 AM in Courtroom 19 before Judge James E. Boasberg. (nbn) (Entered: 01/25/2017) |
| 01/26/2017 | 90 | | Unopposed MOTION for Extension of Time to File Response/Reply by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Text of Proposed Order)(Marinelli, Matthew) (Entered: 01/26/2017) |
| 01/26/2017 | | | MINUTE ORDER granting 90 Consent Motion for Extension of Time to File. The Court ORDERS that the United States Army Corps of Engineers, the Standing Rock Sioux Tribe, and the Cheyenne River Sioux Tribe shall file any reply briefs in support of their Motions to Dismiss or for Summary Judgment on Dakota Access's Cross–Claim on or before February 20, 2017. Signed by Judge James E. Boasberg on 1/26/2017. (lcjeb3) (Entered: 01/26/2017) |
| 01/26/2017 | | | Set/Reset Deadlines: United States Army Corps of Engineers, the Standing Rock Sioux Tribe, and the Cheyenne River Sioux Tribe shall file any reply briefs in support of their Motions to Dismiss or for Summary Judgment on Dakota Access's Cross–Claim on or before 2/20/2017. (nbn) (Entered: 01/26/2017) |
| 01/30/2017 | | | MINUTE ORDER: As discussed at today's status hearing, the Court ORDERS that the parties shall appear for a further status hearing on February 6, 2017, at |

| | | |
|---|---|---|
| | | 11:30 a.m., at which time the Government will provide an update on any decisionmaking regarding the easement, and Dakota Access will provide an estimated timeline from their potential receipt of an easement through the commencement of oil flow through the pipeline. Signed by Judge James E. Boasberg on 1/30/2017. (lcjeb3) (Entered: 01/30/2017) |
| 01/30/2017 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 1/30/2017. Status Conference set for 2/6/2017 at 11:30 AM in Courtroom 19 before Judge James E. Boasberg. (Court Reporter Lisa Griffith) (nbn) (Entered: 01/30/2017) |
| 02/01/2017 | 91 | NOTICE *Regarding Recently Issued Public Document* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit 1)(Zilioli, Erica) (Entered: 02/01/2017) |
| 02/01/2017 | 92 | MOTION for Protective Order by DAKOTA ACCESS LLC (Attachments: # 1 Declaration of William S. Scherman, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(Scherman, William) (Entered: 02/01/2017) |
| 02/01/2017 | 93 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DAKOTA ACCESS LLC (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A)(Scherman, William) (Entered: 02/01/2017) |
| 02/03/2017 | | MINUTE ORDER: The Court ORDERS that 93 Dakota Access's sealed Motion for Leave to File Under Seal an unredacted version of Exhibit A to its Motion for a Protective Order is GRANTED. Signed by Judge James E. Boasberg on 2/3/2017. (lcjeb3) (Entered: 02/03/2017) |
| 02/03/2017 | 94 | SEALED DOCUMENT filed by DAKOTA ACCESS LLC. re 92 MOTION for Protective Order filed by DAKOTA ACCESS LLC, Minute Order on Sealed Motion for Leave to File Document Under Seal. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 02/06/2017) |
| 02/06/2017 | | MINUTE ORDER: As discussed at today's status hearing, the Court ORDERS that the parties shall appear for a further status hearing on February 13, 2017, at 2:00 p.m. in Courtroom 19. Signed by Judge James E. Boasberg on 2/6/2017. (lcjeb3) (Entered: 02/06/2017) |
| 02/06/2017 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 2/6/2017. A further Status Conference set for 2/13/2017 at 02:00 PM in Courtroom 19 before Judge James E. Boasberg. (Court Reporter Lisa Griffith) (nbn) (Entered: 02/06/2017) |
| 02/07/2017 | 95 | NOTICE *Regarding Recently Issued Public Documents* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Marinelli, Matthew) (Entered: 02/07/2017) |
| 02/08/2017 | 96 | NOTICE *of Recently Issued Public Document* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit 1)(Zilioli, Erica) (Entered: 02/08/2017) |
| 02/09/2017 | 97 | MOTION to Amend/Correct 37 Amended Complaint by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 02/09/2017) |

| 02/09/2017 | 98 | | MOTION for Preliminary Injunction by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration, # 2 Declaration, # 3 Declaration, # 4 Declaration, # 5 Declaration, # 6 Declaration, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Text of Proposed Order)(Ducheneaux, Nicole) Modified text per counsel on 2/9/2017 (td). (Entered: 02/09/2017) |
|---|---|---|---|
| 02/09/2017 | 99 | | Ex Parte MOTION for Temporary Restraining Order by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration, # 2 Declaration, # 3 Declaration, # 4 Declaration, # 5 Declaration, # 6 Declaration, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Affidavit, # 13 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 02/09/2017) |
| 02/09/2017 | 100 | | NOTICE of Appearance by Reuben S. Schifman on behalf of UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben) (Entered: 02/09/2017) |
| 02/09/2017 | 101 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 12−9−16; Page Numbers: 1−23. Date of Issuance:2−9−17. Court Reporter/Transcriber Lisa W GRIFFITH, Telephone number 2023543247, Tape Number: Lisa_Griffith@dcd.uscourts.gov. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 3/2/2017. Redacted Transcript Deadline set for 3/12/2017. Release of Transcript Restriction set for 5/10/2017.(Griffith, Lisa) (Entered: 02/09/2017) |
| 02/09/2017 | 102 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 1−18−17; Page Numbers: 1−30. Date of Issuance:2−9−17. Court Reporter/Transcriber Lisa W GRIFFITH, Telephone number 2023543247, Tape Number: Lisa_Griffith@dcd.uscourts.gov. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is |

| | | | |
|---|---|---|---|
| | | | located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 3/2/2017. Redacted Transcript Deadline set for 3/12/2017. Release of Transcript Restriction set for 5/10/2017.(Griffith, Lisa) (Entered: 02/09/2017) |
| 02/09/2017 | 103 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 1–30–17; Page Numbers: 1–20. Date of Issuance:2–9–17. Court Reporter/Transcriber Lisa W GRIFFITH, Telephone number 2023543247, Tape Number: Lisa_Griffith@dcd.uscourts.gov. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 3/2/2017. Redacted Transcript Deadline set for 3/12/2017. Release of Transcript Restriction set for 5/10/2017.(Griffith, Lisa) (Entered: 02/09/2017) |
| 02/09/2017 | 104 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 2–6–17; Page Numbers: 1–22. Date of Issuance:2–9–17. Court Reporter/Transcriber Lisa W GRIFFITH, Telephone number 2023543247, Tape Number: Lisa_Griffith@dcd.uscourts.gov. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 3/2/2017. Redacted Transcript Deadline set for 3/12/2017. Release of Transcript Restriction set for 5/10/2017.(Griffith, Lisa) (Entered: 02/09/2017) |
| 02/09/2017 | 105 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 8–24–16; Page Numbers: 1–62. Date of Issuance:2–9–17. Court Reporter/Transcriber Lisa W GRIFFITH, Telephone number 2023543247, Tape Number: Lisa_Griffith@dcd.uscourts.gov. Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be |

| | | |
|---|---|---|
| | | accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 3/2/2017. Redacted Transcript Deadline set for 3/12/2017. Release of Transcript Restriction set for 5/10/2017.(Griffith, Lisa) (Entered: 02/09/2017) |
| 02/09/2017 | | MINUTE ORDER: The Court ORDERS that it will hear argument on Intervenor Plaintiff Cheyenne River Sioux Tribe's 99 Motion for Temporary Restraining Order at the status hearing on February 13, 2017, at 2:00 p.m. Signed by Judge James E. Boasberg on 2/9/17. (lcjeb3) (Entered: 02/09/2017) |
| 02/10/2017 | 106 | MOTION for Leave to File *Amended Complaint* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Exhibit First Amended Complaint, # 2 Text of Proposed Order Proposed Order)(Hasselman, Jan) (Entered: 02/10/2017) |
| 02/10/2017 | 107 | Joinder 99 *in Motion for Temporary Restraining Order* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Declaration Second Declaration of Dave Archambault, II)(Hasselman, Jan) Modified per Chambers on 2/16/2017 (td). (Entered: 02/10/2017) |
| 02/10/2017 | 108 | NOTICE of Appearance by GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION (Guest, Richard) Modified event title on 2/13/2017 (znmw). (Entered: 02/10/2017) |
| 02/10/2017 | 109 | MOTION for Leave to File *Amicus Curiae Brief* by GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION (Attachments: # 1 Amicus Curiae Brief)(Guest, Richard) (Entered: 02/10/2017) |
| 02/11/2017 | 110 | NOTICE of Appearance by Joseph V. Messineo on behalf of STEVE VANCE (Messineo, Joseph) (Entered: 02/11/2017) |
| 02/11/2017 | 111 | MOTION to Intervene by STEVE VANCE (Attachments: # 1 Exhibit Complaint, # 2 Text of Proposed Order, # 3 Declaration Joseph Messineo)(Messineo, Joseph) (Entered: 02/11/2017) |
| 02/11/2017 | 112 | NOTICE of Appearance by Nicole E. Ducheneaux on behalf of STEVE VANCE (Ducheneaux, Nicole) (Main Document 112 replaced on 2/13/2017) (znmw). (Entered: 02/11/2017) |
| 02/13/2017 | 113 | Memorandum in opposition to re 99 Ex Parte MOTION for Temporary Restraining Order filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration of William S. Scherman)(Scherman, William) (Entered: 02/13/2017) |
| 02/13/2017 | 114 | RESPONSE re 99 Ex Parte MOTION for Temporary Restraining Order filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(Schifman, Reuben) (Entered: 02/13/2017) |
| 02/13/2017 | 115 | |

| | | |
|---|---|---|
| | | AFFIDAVIT re 99 Ex Parte MOTION for Temporary Restraining Order by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Ducheneaux, Nicole) (Entered: 02/13/2017) |
| 02/13/2017 | | MINUTE ORDER: As discussed at today's status hearing, the Court ORDERS that: 1) CRST's 99 TRO Application is DENIED; 2) Dakota Access shall provide an update on February 21, 2017, and every Monday thereafter as to the likely date that oil will begin to flow beneath Lake Oahe; 3) The Court will hold a hearing on CRST's Motion for Preliminary Injunction on February 27, 2017, at 2:00 p.m.; 3) Oppositions to such Motion shall be due by February 21, 2017, with any Reply due by February 24, 2017; 4) SRST's Motion for Partial Summary Judgment shall be filed by February 14, 2017, with Oppositions due by March 7, 2017, and any Reply due by March 21, 2017; 5) The Government may have a two–week extension to oppose Dakota Access's Motion for Protective Order; and 6) Defendants may have a 30–day extension to respond to the Tribes' Motions to Amend Complaint. Signed by Judge James E. Boasberg on 2/13/2017. (lcjeb3) (Entered: 02/13/2017) |
| 02/13/2017 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference/Motion Hearing held on 2/13/2017. Oral arguments heard, and Motion for TRO Application 99 , is DENIED in open Court. Motion for Leave to File Brief 109 , GRANTED in open court. Motion for Partial Summary Judgment due by 2/14/2017. Response to Motion for Partial Summary Judgment due by 3/7/2017. Reply to Motion for Partial Summary Judgment due by 3/21/2017. Oppositions to CRST's Motion for Preliminary Injunction due by 2/21/2017. Replies due by 2/24/2017. Motion Hearing set for 2/27/2017 at 02:00 PM in Courtroom 19 before Judge James E. Boasberg. (Court Reporter Lisa Moreira) (nbn) Modified on 2/14/2017 to take off party named for opposition. (nbn). (Entered: 02/14/2017) |
| 02/14/2017 | | MINUTE ORDER: The Court ORDERS that the 109 Motion of the Great Plains Tribal Chairmans' Association for Leave to File Brief as *Amicus Curiae* is GRANTED. Signed by Judge James E. Boasberg on 2/14/2017. (lcjeb3) (Entered: 02/14/2017) |
| 02/14/2017 | 116 | AMICUS BRIEF by GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION. (td) (Entered: 02/14/2017) |
| 02/14/2017 | 117 | MOTION for Partial Summary Judgment by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Memorandum in Support of SRST's Motion for Partial Summary Judgment, # 2 Declaration of Jan Haselman ISO SRST's Motion for Partial Summary Judgment, # 3 Exhibit 1 to J Hasselman Decl, # 4 Exhibit 2 to J Hasselman Decl, # 5 Exhibit 3 to J Hasselman Decl, # 6 Exhibit 4 to J Hasselman Decl, # 7 Exhibit 5 to J Hasselman Decl, # 8 Exhibit 6 to J Hasselman Decl, # 9 Exhibit 7 to J Hasselman Decl, # 10 Exhibit 8 to J Hasselman Decl, # 11 Exhibit 9 to J Hasselman Decl, # 12 Exhibit 10 to J Hasselman Decl, # 13 Exhibit 11 to J Hasselman Decl, # 14 Exhibit 12 to J Hasselman Decl, # 15 Exhibit 13 to J Hasselman Decl, # 16 Exhibit 14 to J Hasselman Decl, # 17 Exhibit 15 to J Hasselman Decl, # 18 Exhibit 16 to J Hasselman Decl, # 19 Exhibit 17 to J Hasselman Decl, # 20 Exhibit 18 to J Hasselman Decl, # 21 Exhibit 19 to J Hasselman Decl, # 22 Exhibit 20 to J |

| | | | |
|---|---|---|---|
| | | | Hasselman Decl, # <u>23</u> Exhibit 21 to J Hasselman Decl, # <u>24</u> Exhibit 22 to J Hasselman Decl, # <u>25</u> Exhibit 23 to J Hasselman Decl, # <u>26</u> Text of Proposed Order)(Hasselman, Jan) (Entered: 02/14/2017) |
| 02/14/2017 | <u>118</u> | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by STANDING ROCK SIOUX TRIBE (This document is SEALED and only available to authorized persons.) (Attachments: # <u>1</u> Declaration of Richard B. Kuprewicz)(Hasselman, Jan) (Entered: 02/14/2017) |
| 02/15/2017 | | | MINUTE ORDER: The Court ORDERS that Plaintiff Standing Rock Sioux Tribe's <u>118</u> Sealed Motion for Leave to File Document Under Seal is GRANTED. Signed by Judge James E. Boasberg on 2/15/2017. (lcjeb3) (Entered: 02/15/2017) |
| 02/15/2017 | <u>119</u> | | TRANSCRIPT OF STATUS CONFERENCE/MOTION HEARING before Judge James E. Boasberg held on February 13, 2017; Page Numbers: 1–45. Date of Issuance:February 15, 2017. Court Reporter/Transcriber Lisa A. Moreira, RDR, CRR, Telephone number 202–354–3187, Transcripts may be ordered by submitting the <u>Transcript Order Form</u><br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or p urchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 3/8/2017. Redacted Transcript Deadline set for 3/18/2017. Release of Transcript Restriction set for 5/16/2017.(Moreira, Lisa) (Entered: 02/15/2017) |
| 02/15/2017 | <u>120</u> | | SEALED DOCUMENT (Declaration of Richard B. Kuprewicz) filed by STANDING ROCK SIOUX TRIBE. re Order on Sealed Motion for Leave to File Document Under Seal. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 02/15/2017) |
| 02/15/2017 | <u>121</u> | | MOTION for Extension of Time to File Response/Reply *Opposition to Dakota Access Motion for Protective Order* by STANDING ROCK SIOUX TRIBE (Attachments: # <u>1</u> Text of Proposed Order)(Hasselman, Jan) (Entered: 02/15/2017) |
| 02/15/2017 | | | MINUTE ORDER: The Court ORDERS that, given Dakota Access's agreement that its Cross–Claim should be held in abeyance, no further briefing on such Cross–Claim need be filed until further Order of the Court. Signed by Judge James E. Boasberg on 2/15/2017. (lcjeb3) (Entered: 02/15/2017) |
| 02/15/2017 | | | MINUTE ORDER granting <u>121</u> Motion for Extension of Time to File. The Court ORDERS that any opposition to Dakota Access's Motion for a |

| | | | |
|---|---|---|---|
| | | | Protective Order shall be due on or before March 1, 2017. Signed by Judge James E. Boasberg on 2/15/2017. (lcjeb3) (Entered: 02/15/2017) |
| 02/15/2017 | | | Set/Reset Deadlines: Any opposition to Dakota Access's Motion for a Protective Order shall due by 3/1/2017. (nbn) (Entered: 02/16/2017) |
| 02/16/2017 | | | MINUTE ORDER: At the request of counsel, the Court ORDERS that the hearing on CRST's Motion for Preliminary Injunction set for February 27, 2017, at 2:00 p.m. is VACATED AND RESET for February 28, 2017, at 11:00 a.m. Signed by Judge James E. Boasberg on 2/16/17. (lcjeb2) (Entered: 02/16/2017) |
| 02/16/2017 | | | Set/Reset Hearings: Motion Hearing set for 2/28/2017 at 11:00 AM in Courtroom 19 before Judge James E. Boasberg. (nbn) (Entered: 02/17/2017) |
| 02/21/2017 | 122 | | NOTICE of Appearance by Michael L. Roy on behalf of OGLALA SIOUX TRIBE (Roy, Michael) (Entered: 02/21/2017) |
| 02/21/2017 | 123 | | STATUS REPORT by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 02/21/2017) |
| 02/21/2017 | 124 | | RESPONSE re 98 Ex Parte MOTION for Preliminary Injunction filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration of William S. Scherman)(Scherman, William) (Entered: 02/21/2017) |
| 02/21/2017 | 125 | | MOTION for Leave to File *Brief as Amici Curiae in Support of Plaintiff Standing Rock Sioux Tribe's Motion for Partial Summary Judgment* by ASSOCIATION ON AMERICAN INDIAN AFFAIRS, PUEBLO OF POJOAQUE, UNIVERSITY OF NEW MEXICO SCHOOL OF LAW NATURAL RESOURCES AND ENVIRONMENTAL LAW CLINIC (Attachments: # 1 Exhibit Brief of Amici Curiae)(Homer, Elizabeth) (Entered: 02/21/2017) |
| 02/21/2017 | 126 | | MOTION for Leave to File *Amicus Brief in Support of Plaintiff Standing Rock Sioux Tribe's Motion for Partial Summary Judgment* by OGLALA SIOUX TRIBE (Attachments: # 1 Text of Proposed Order granting leave to file amicus brief, # 2 Amicus Brief in Support of Plaintiff Standing Rock Sioux Tribe's Motion for Partial Summary Judgment, # 3 Declaration of Michael L. Roy, # 4 Exhibit 1, # 5 Exhibit 2, # 6 Exhibit 3, # 7 Exhibit 4)(Roy, Michael) (Entered: 02/21/2017) |
| 02/21/2017 | 127 | | Memorandum in opposition to re 98 Ex Parte MOTION for Preliminary Injunction filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O)(Zilioli, Erica) (Entered: 02/21/2017) |
| 02/21/2017 | 128 | | MOTION for Leave to File *Amici Curiae in Support of Plaintiff Standing Rock Sioux Tribe's Motion for Partial Summary Judgement* by NATIONAL INDIGENOUS WOMENS RESOURCE CENTER AND ADDITIONAL AMICI (Attachments: # 1 Exhibit Amicus Curiae Brief, # 2 Exhibit Exhibit A)(Nagle, Mary) (Entered: 02/21/2017) |
| 02/21/2017 | 129 | | NOTICE of Appearance by Mary Kathryn Nagle on behalf of NATIONAL INDIGENOUS WOMENS RESOURCE CENTER AND ADDITIONAL |

| | | | |
|---|---|---|---|
| | | | AMICI (Nagle, Mary) (Entered: 02/21/2017) |
| 02/22/2017 | | | MINUTE ORDER: The Court ORDERS that the 128 Motion of the National Indigenous Women's Resource Center and Additional *Amici* for Leave to File Brief as *Amicus Curiae* is GRANTED. Signed by Judge James E. Boasberg on 2/22/2017. (lcjeb3) (Entered: 02/22/2017) |
| 02/22/2017 | 130 | | MOTION for Leave to File *Brief Amici Curiae* by National Congress of American Indians, et al. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Memorandum in Support Proposed Brief Amici Curiae, # 3 Declaration Declaration of Riyaz Kanji)(Kanji, Riyaz) (Entered: 02/22/2017) |
| 02/22/2017 | | | MINUTE ORDER: The Court ORDERS that the 126 Motion of the Oglala Sioux Tribe for Leave to File Brief as *Amicus Curiae* is GRANTED. Signed by Judge James E. Boasberg on 2/22/2017. (lcjeb3) (Entered: 02/22/2017) |
| 02/22/2017 | | | MINUTE ORDER: The Court ORDERS that the 125 Motion of the Association on American Indian Affairs, Pueblo of Pojoaque, and University of New Mexico School of Law Natural Resources and Environmental Law Clinic for Leave to File Brief as *Amicus Curiae* is GRANTED. Signed by Judge James E. Boasberg on 2/22/2017. (lcjeb3) (Entered: 02/22/2017) |
| 02/22/2017 | | | MINUTE ORDER: The Court ORDERS that the 130 Motion of the National Congress of American Indians, et al., for Leave to File Brief as *Amicus Curiae* is GRANTED. Signed by Judge James E. Boasberg on 2/22/2017. (lcjeb3) (Entered: 02/22/2017) |
| 02/22/2017 | 131 | | MOTION for Partial Summary Judgment by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Statement of Facts, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 02/22/2017) |
| 02/22/2017 | 132 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CHEYENNE RIVER SIOUX TRIBE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit, # 2 Exhibit)(Ducheneaux, Nicole) (Entered: 02/22/2017) |
| 02/22/2017 | 133 | | MOTION to Expedite by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 02/22/2017) |
| 02/22/2017 | 136 | | AMICUS BRIEF by NATIONAL INDIGENOUS WOMENS RESOURCE CENTER AND ADDITIONAL AMICI. (Attachments: # 1 Exhibit A)(znmw) (Entered: 02/24/2017) |
| 02/22/2017 | 137 | | AMICUS BRIEF by ASSOCIATION ON AMERICAN INDIAN AFFAIRS, PUEBLO OF POJOAQUE, UNIVERSITY OF NEW MEXICO SCHOOL OF LAW NATURAL RESOURCES AND ENVIRONMENTAL LAW CLINIC. (znmw) (Entered: 02/24/2017) |
| 02/22/2017 | 138 | | AMICUS BRIEF by OGLALA SIOUX TRIBE. (Attachments: # 1 Declaration, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4)(znmw) (Entered: 02/24/2017) |
| 02/23/2017 | | | MINUTE ORDER: The Court ORDERS that Plaintiff–Intervenor Cheyenne River Sioux Tribe's 132 Sealed Motion for Leave to File Document Under Seal is GRANTED. Signed by Judge James E. Boasberg on 2/23/2017. |

| | | |
|---|---|---|
| | | (lcjeb3) (Entered: 02/23/2017) |
| 02/23/2017 | | MINUTE ORDER granting 133 Intervenor–Plaintiff Cheyenne River Sioux Tribe's Unopposed Motion for Expedited Briefing Schedule on the Tribe's 131 Motion for Partial Summary Judgment. The Court ORDERS that any opposition shall be due on or before March 23, 2017, and that Cheyenne River Sioux Tribe's reply shall be due on or before April 6, 2017. Signed by Judge James E. Boasberg on 2/23/2017. (lcjeb3) (Entered: 02/23/2017) |
| 02/23/2017 | 134 | AMICUS BRIEF by NATIONAL CONGRESS OF AMERICA INDIANS, UNITED SOUTH AND EASTER TRIBES SOVEREIGNTY PROTECTION FUND, INC., NATIONAL INDIAN GAMING ASSOCIATION, NATIONAL INDIAN EDUCATION, ASSOCIATION, NATIONAL ASSOCIATION OF TRIBAL HISTORIC PRESERVATION OFFICERS, INTER TRIBAL ASSOCIATION OF ARIZONA, GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION, FRED T. KOREMATZU CENTER FOR LAW AND EQUALITY, AMERICAN CIVIL LIBERTIES UNION, 34 FEDERALLY RECOGNIZED INDIAN TRIBES (Attachments: # 1 Declaration Declaration of Riyaz A. Kanji, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10)(Kanji, Riyaz) Modified event title and filers on 2/24/2017 (znmw). (Entered: 02/23/2017) |
| 02/23/2017 | | Set/Reset Deadlines: Opposition due by 3/23/2017. Replies due by 4/6/2017. (nbn) (Entered: 02/23/2017) |
| 02/23/2017 | 135 | SEALED DOCUMENT filed by CHEYENNE RIVER SIOUX TRIBE. re Order on Sealed Motion for Leave to File Document Under Seal. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 02/23/2017) |
| 02/24/2017 | 139 | Memorandum in opposition to re 111 MOTION to Intervene *by Steve Vance* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Brar, Amarveer) (Entered: 02/24/2017) |
| 02/24/2017 | 140 | REPLY to opposition to motion re 98 Ex Parte MOTION for Preliminary Injunction – *SRST's Reply In Support of CRST's Motion for PI* – filed by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 02/24/2017) |
| 02/24/2017 | 141 | REPLY to opposition to motion re 98 Ex Parte MOTION for Preliminary Injunction filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Declaration Nicole Ducheneaux)(Ducheneaux, Nicole) (Entered: 02/24/2017) |
| 02/25/2017 | 142 | Memorandum in opposition to re 111 MOTION to Intervene filed by DAKOTA ACCESS LLC. (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 02/25/2017) |
| 02/27/2017 | 143 | AFFIDAVIT *of Steve Vance in Support of Preliminary Injunction* by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Exhibit)(Ducheneaux, Nicole) (Entered: 02/27/2017) |
| 02/27/2017 | 144 | STATUS REPORT by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 02/27/2017) |
| 02/27/2017 | 145 | MOTION to Intervene by Sara Jumping Eagle, LaDonna Brave Bull Allard, Virgil Taken Alive, Cheyenne Garcia, William Lefthand, Maxine Brings Him |

| | | |
|---|---|---|
| | | Back–Janis, Kathy Willcuts, Crystal Cole, Russell Vazquez, Thomas E. Barber, Sr, Tatolowan Garcia, Chani Phillips, Wastewin Young (Attachments: # 1 Exhibit Proposed Intervenors' ComplaintComplaint, # 2 Exhibit Declarations, # 3 Exhibit Janis Exhibit)(Hall, Oliver) (Entered: 02/27/2017) |
| 02/28/2017 | | Minute Entry for proceedings held before Judge James E. Boasberg: Motion Hearing held on 2/28/2017 re 98 Ex Parte MOTION for Preliminary Injunction filed by CHEYENNE RIVER SIOUX TRIBE. Oral arguments heard and motion taken under advisement. Written ruling forthcoming. (Court Reporter Lisa Griffith) (nbn) (Entered: 02/28/2017) |
| 02/28/2017 | | MINUTE ORDER: As agreed by the parties at today's hearing, the Court ORDERS that the following motions are DENIED WITHOUT PREJUDICE, given that Dakota Access's Cross–Claim is currently moot: 1) Dakota Access's 66 Motion for Summary Judgment, 2) The Corps' 73 Motion to Dismiss, 3) Cheyenne River's 74 Motion to Dismiss, 4) Cheyenne River's 76 Cross Motion for Summary Judgment, and 5) Standing Rock's 77 Motion to Dismiss and Cross Motion for Summary Judgment. Signed by Judge James E. Boasberg on 2/28/2017. (lcjeb3) (Entered: 02/28/2017) |
| 03/01/2017 | 146 | RESPONSE re 92 MOTION for Protective Order filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Zilioli, Erica) (Entered: 03/01/2017) |
| 03/01/2017 | 147 | MOTION for Extension of Time to File Response/Reply as to 111 MOTION to Intervene by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Messineo, Joseph) (Entered: 03/01/2017) |
| 03/01/2017 | 148 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by UNITED STATES ARMY CORPS OF ENGINEERS (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A, # 2 Text of Proposed Order)(Zilioli, Erica) (Entered: 03/01/2017) |
| 03/01/2017 | 149 | Memorandum in opposition to re 92 MOTION for Protective Order filed by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 03/01/2017) |
| 03/01/2017 | 150 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Confidential – SRST's and CRST's Opposition to Mtn for Protective Order)(Hasselman, Jan) (Entered: 03/01/2017) |
| 03/02/2017 | | MINUTE ORDER granting 147 Motion for Extension of Time to File. The Court ORDERS that the Cheyenne River Sioux Tribe's Reply to Defendants' Opposition to Steve Vance's Motion to Intervene shall be due by March 6, 2017. Signed by Judge James E. Boasberg on 3/2/2017. (lcjeb3) (Entered: 03/02/2017) |
| 03/02/2017 | | MINUTE ORDER: The Court ORDERS that the Corps' 148 Sealed Motion for Leave to File Document Under Seal is GRANTED. Signed by Judge James E. Boasberg on 3/2/2017. (lcjeb3) (Entered: 03/02/2017) |
| 03/02/2017 | | MINUTE ORDER: The Court ORDERS that the Cheyenne River Sioux Tribe's 150 Sealed Motion for Leave to File Document Under Seal is |

| | | | |
|---|---|---|---|
| | | | GRANTED. Signed by Judge James E. Boasberg on 3/2/2017. (lcjeb3) (Entered: 03/02/2017) |
| 03/02/2017 | | | Set/Reset Deadlines: Answer due by 3/6/2017. (nbn) (Entered: 03/02/2017) |
| 03/02/2017 | 151 | | SEALED DOCUMENT (Exhibit A) filed by UNITED STATES ARMY CORPS OF ENGINEERS. re Minute Order on Sealed Motion for Leave to File Document Under Seal, 146 Response to motion filed by UNITED STATES ARMY CORPS OF ENGINEERS. (This document is SEALED and only available to authorized persons.)(ztd) (Entered: 03/02/2017) |
| 03/02/2017 | 152 | | SEALED OPPOSITION filed by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE re 92 MOTION for Protective Order (ztd) (Entered: 03/02/2017) |
| 03/03/2017 | 153 | | MOTION for Extension of Time to File Response/Reply as to 117 MOTION for Partial Summary Judgment by UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben) (Entered: 03/03/2017) |
| 03/03/2017 | 154 | | RESPONSE re 153 MOTION for Extension of Time to File Response/Reply as to 117 MOTION for Partial Summary Judgment filed by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 03/03/2017) |
| 03/03/2017 | | | MINUTE ORDER granting 153 Motion for Extension of Time to File. The Court ORDERS that the Corps shall file its Opposition and Cross–Motion to Plaintiff Standing Rock Sioux Tribes Motion for Partial Summary Judgment on or before March 14, 2017. Signed by Judge James E. Boasberg on 3/3/2017. (lcjeb3) (Entered: 03/03/2017) |
| 03/03/2017 | | | Set/Reset Deadlines: The Corps shall file its Opposition and Cross–Motion to Plaintiff Standing Rock Sioux Tribes Motion for Partial Summary Judgment by 3/14/2017. (nbn) (Entered: 03/06/2017) |
| 03/06/2017 | 155 | | REPLY to opposition to motion re 111 MOTION to Intervene filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Exhibit)(Ducheneaux, Nicole) (Entered: 03/06/2017) |
| 03/06/2017 | 156 | | STATUS REPORT by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/06/2017) |
| 03/07/2017 | 157 | | ORDER DENYING 98 Motion for Preliminary Injunction. Signed by Judge James E. Boasberg on 3/7/2017. (lcjeb3) (Entered: 03/07/2017) |
| 03/07/2017 | 158 | | MEMORANDUM OPINION re 157 Order on Motion for Preliminary Injunction. Signed by Judge James E. Boasberg on 3/7/2017. (lcjeb3) (Entered: 03/07/2017) |
| 03/07/2017 | 159 | | RESPONSE re 117 MOTION for Partial Summary Judgment filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration of William S. Scherman, # 2 Text of Proposed Order)(Scherman, William) (Entered: 03/07/2017) |
| 03/08/2017 | 160 | | Unopposed MOTION for Extension of Time to File Response/Reply as to 145 MOTION to Intervene by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Text of Proposed Order)(Zilioli, Erica) (Entered: 03/08/2017) |

| 03/08/2017 | 161 | | REPLY to opposition to motion re 92 MOTION for Protective Order filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/08/2017) |
|---|---|---|---|
| 03/09/2017 | | | MINUTE ORDER granting 160 Motion for Extension of Time to File. The Court ORDERS that all responses to the 145 Motion to Intervene filed by Sara Jumping Eagle, et al., shall be due on or before March 27, 2017. Signed by Judge James E. Boasberg on 3/9/2017. (lcjeb3) (Entered: 03/09/2017) |
| 03/09/2017 | | | Set/Reset Deadlines: All responses to the 145 Motion to Intervene filed by Sara Jumping Eagle, et al., due by 3/27/2017. (nbn) (Entered: 03/09/2017) |
| 03/10/2017 | 162 | | MOTION for Leave to File *Declaration of William R. Perry* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Exhibit Declaration of William R. Perry)(Hasselman, Jan) (Entered: 03/10/2017) |
| 03/10/2017 | | | MINUTE ORDER: The Court ORDERS that Standing Rock's 162 Motion for Leave to File Declaration of William R. Perry is GRANTED. Signed by Judge James E. Boasberg on 3/10/2017. (lcjeb3) (Entered: 03/10/2017) |
| 03/10/2017 | 163 | | RESPONSE re 162 MOTION for Leave to File *Declaration of William R. Perry* filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/10/2017) |
| 03/10/2017 | 164 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 158 Memorandum & Opinion, 157 Order on Motion for Preliminary Injunction by CHEYENNE RIVER SIOUX TRIBE. Filing fee $ 505, receipt number 0090–4873021. Fee Status: Fee Paid. Parties have been notified. (Ducheneaux, Nicole) (Entered: 03/10/2017) |
| 03/10/2017 | 165 | | MOTION Injunction Pending Appeal by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 03/10/2017) |
| 03/10/2017 | 166 | | DECLARATION of William R. Perry re 149 Memorandum in Opposition by STANDING ROCK SIOUX TRIBE. (znmw) (Entered: 03/13/2017) |
| 03/13/2017 | | | MINUTE ORDER: If Defendants oppose Plaintiff CRST's 165 Motion for Injunction Pending Appeal, the Court ORDERS that they shall file such opposition by March 14, 2017. Signed by Judge James E. Boasberg on 3/13/2017. (lcjeb3) (Entered: 03/13/2017) |
| 03/13/2017 | | | MINUTE ORDER: Given that the Court denied the CRST's Motion for Preliminary Injunction on grounds unrelated to standing, the Court ORDERS that those individuals who have sought to intervene as Plaintiffs, see ECF Nos. 111, 145, shall file a Notice by March 20, 2017, indicating whether they still wish to intervene and, if so, why their claims are not sufficiently represented by the existing Plaintiffs. Defendants may respond to such Notice by March 27, 2017, indicating their position on intervention. Signed by Judge James E. Boasberg on 3/13/2017. (lcjeb3) (Entered: 03/13/2017) |
| 03/13/2017 | 167 | | Transmission of the Notice of Appeal, Order Appealed, and Docket Sheet to US Court of Appeals. The Court of Appeals fee was paid this date re 164 Notice of Appeal to DC Circuit Court. (znmw) (Entered: 03/13/2017) |
| 03/13/2017 | | | Set/Reset Deadlines: Individuals who have sought to intervene as Plaintiffs, see ECF Nos. 111 , 145 , shall file a Notice by by 3/20/2017. Defendants may |

| | | | |
|---|---|---|---|
| | | | respond to such Notice by by 3/27/2017. (nbn) (Entered: 03/13/2017) |
| 03/13/2017 | | | Set/Reset Deadlines: Opposition due by 3/14/2017. (nbn) (Entered: 03/13/2017) |
| 03/13/2017 | 168 | | Memorandum in opposition to re 165 MOTION Injunction Pending Appeal filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/13/2017) |
| 03/13/2017 | 169 | | STATUS REPORT by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/13/2017) |
| 03/14/2017 | 170 | | Memorandum in opposition to re 165 MOTION Injunction Pending Appeal filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Brar, Amarveer) (Entered: 03/14/2017) |
| 03/14/2017 | 171 | | ORDER denying 165 Motion for an Injunction Pending Appeal. Signed by Judge James E. Boasberg on 3/14/2017. (lcjeb3) (Entered: 03/14/2017) |
| 03/14/2017 | 172 | | Memorandum in opposition to re 117 MOTION for Partial Summary Judgment *and Cross Motion for Partial Summary Judgment* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Text of Proposed Order)(Schifman, Reuben) (Entered: 03/14/2017) |
| 03/14/2017 | 173 | | CROSS MOTION for Partial Summary Judgment by UNITED STATES ARMY CORPS OF ENGINEERS. (See Docket Entry 172 to view document). (znmw) (Entered: 03/15/2017) |
| 03/15/2017 | 174 | | Unopposed MOTION to Consolidate Cases by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Text of Proposed Order)(Brar, Amarveer) (Entered: 03/15/2017) |
| 03/15/2017 | | | USCA Case Number 17–5043 for 164 Notice of Appeal to DC Circuit Court, filed by CHEYENNE RIVER SIOUX TRIBE. (td) (Entered: 03/17/2017) |
| 03/16/2017 | | | MINUTE ORDER: The Court ORDERS that: (1) The Corps' 174 Unopposed Motion to Consolidate Cases is GRANTED; (2) The cases Standing Rock Sioux Tribe v. United States Army Corps of Engineers, 16–1534; Yankton Sioux Tribe v. United States Army Corps of Engineers, 16–1796; and Oglala Sioux Tribe v. United States Army Corps of Engineers, 17–267, SHALL BE CONSOLIDATED; (3) All filings in these consolidated cases shall be made only in the first–filed case, 16–1534; and (4) The Clerk is directed to administratively close any of the open cases that are being consolidated. Signed by Judge James E. Boasberg on 3/16/2017. (lcjeb3) (Entered: 03/16/2017) |
| 03/16/2017 | 175 | | MOTION for Extension of Time to File Response/Reply as to 173 MOTION for Partial Summary Judgment *and 159 Opposition Brief* by STANDING ROCK SIOUX TRIBE (Hasselman, Jan) (Entered: 03/16/2017) |
| 03/16/2017 | 176 | | Memorandum in opposition to re 175 MOTION for Extension of Time to File Response/Reply as to 173 MOTION for Partial Summary Judgment *and 159* |

| | | | |
|---|---|---|---|
| | | | *Opposition Brief* filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/16/2017) |
| 03/17/2017 | | | MINUTE ORDER granting 175 Motion for Extension of Time to File. The Court ORDERS that Standing Rock shall file its brief in support of its summary judgment motion and in opposition to the Corps' cross–motion and Dakota Access' opposition on or before March 28, 2017. Signed by Judge James E. Boasberg on 3/17/2017. (lcjeb3) (Entered: 03/17/2017) |
| 03/17/2017 | | | Set/Reset Deadlines: Brief in support of its summary judgment motion and in opposition to the Corps' cross–motion and Dakota Access' opposition on or before 3/28/2017. (nbn) (Entered: 03/17/2017) |
| 03/20/2017 | 177 | | RESPONSE TO ORDER OF THE COURT re Order,, filed by STEVE VANCE. (Messineo, Joseph) (Entered: 03/20/2017) |
| 03/20/2017 | 178 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DAKOTA ACCESS LLC (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit)(Scherman, William) (Entered: 03/20/2017) |
| 03/20/2017 | 179 | | STATUS REPORT *[REDACTED]* by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/20/2017) |
| 03/21/2017 | 180 | | RESPONSE TO ORDER OF THE COURT re Order,, filed by SARA JUMPING EAGLE. (Hall, Oliver) (Entered: 03/21/2017) |
| 03/21/2017 | | | MINUTE ORDER: The Court ORDERS that Dakota Access's 178 Sealed Motion for Leave to File Document Under Seal is GRANTED. Signed by Judge James E. Boasberg on 3/21/2017. (lcjeb3) (Entered: 03/21/2017) |
| 03/21/2017 | 181 | | ADMINISTRATIVE RECORD *of Lodging Administrative Record* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit, # 2 Exhibit)(Schifman, Reuben) Modified event title on 3/22/2017 (znmw). (Entered: 03/21/2017) |
| 03/21/2017 | 182 | | SEALED DOCUMENT (Status Report) filed by DAKOTA ACCESS LLC. (This document is SEALED and only available to authorized persons.)(znmw) (Entered: 03/22/2017) |
| 03/23/2017 | 183 | | RESPONSE re 131 MOTION for Partial Summary Judgment *and Cross Motion for Partial Summary Judgment* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA)(Schifman, Reuben) (Entered: 03/23/2017) |
| 03/23/2017 | 184 | | NOTICE *of Joinder* re 186 Cross Motion for Summary Judgment by DAKOTA ACCESS LLC (Scherman, William) Modified to add link on 3/24/2017 (znmw). (Entered: 03/23/2017) |
| 03/23/2017 | 185 | | RESPONSE re 131 MOTION for Partial Summary Judgment *and CROSS–MOTION for Partial Summary Judgment* filed by DAKOTA |

| | | | |
|---|---|---|---|
| | | | ACCESS LLC. (Attachments: # 1 Declaration of William S. Scherman, # 2 Text of Proposed Order)(Scherman, William) (Entered: 03/23/2017) |
| 03/23/2017 | 186 | | CROSS MOTION for Partial Summary Judgment by UNITED STATES ARMY CORPS OF ENGINEERS. (See Docket Entry 183 to view document). (znmw) (Entered: 03/24/2017) |
| 03/23/2017 | 187 | | CROSS MOTION for Partial Summary Judgment by DAKOTA ACCESS LLC. (See Docket Entries 184 and 185 to view documents). (znmw) (Entered: 03/24/2017) |
| 03/27/2017 | 188 | | RESPONSE re 106 MOTION for Leave to File *Amended Complaint*, 97 MOTION to Amend/Correct 37 Amended Complaint filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Schifman, Reuben) (Entered: 03/27/2017) |
| 03/27/2017 | 189 | | Memorandum in opposition to re 145 MOTION to Intervene filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Brar, Amarveer) (Entered: 03/27/2017) |
| 03/27/2017 | 190 | | REPLY re 177 Response to Order of the Court filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Brar, Amarveer) Modified event title on 3/28/2017 (znmw). (Entered: 03/27/2017) |
| 03/27/2017 | 191 | | STATUS REPORT by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/27/2017) |
| 03/27/2017 | 192 | | Memorandum in opposition to re 145 MOTION to Intervene filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration of William S. Scherman)(Scherman, William) (Entered: 03/27/2017) |
| 03/27/2017 | 193 | | Memorandum in opposition to re 106 MOTION for Leave to File *Amended Complaint*, 97 MOTION to Amend/Correct 37 Amended Complaint filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration of William S. Scherman)(Scherman, William) (Entered: 03/27/2017) |
| 03/27/2017 | 194 | | REPLY re 177 Response to Order of the Court filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration of William S. Scherman)(Scherman, William) (Entered: 03/27/2017) |
| 03/28/2017 | 195 | | RESPONSE re 173 MOTION for Partial Summary Judgment *and Reply re 159 Opposition Brief filed by Intervenor Dakota Access, LLC* filed by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Declaration (Second) of Richard B. Kuprewicz, # 2 Declaration of Elliott Ward, # 3 Declaration (Second) of Jan Hasselman, # 4 Exhibit 24, # 5 Exhibit 25, # 6 Exhibit 26, # 7 Exhibit 27, # 8 Exhibit 28)(Hasselman, Jan) (Entered: 03/28/2017) |
| 03/28/2017 | 196 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by STANDING ROCK SIOUX TRIBE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Pl's Opp to Mtn for PSJ and Reply ISO Mtn for PSJ, # 2 Declaration of Elliott Ward)(Hasselman, Jan) (Entered: 03/28/2017) |
| 03/28/2017 | 197 | | REPLY to opposition to motion re 117 MOTION for Partial Summary Judgment filed by STANDING ROCK SIOUX TRIBE. (See Docket Entry 195 to view document). (znmw) (Entered: 03/29/2017) |

| 03/31/2017 | 198 | | MOTION for Extension of Time to File Response/Reply *in Opposition to Cross–Motions for Summary Judgment and Reply in Support of Motion for Summary Judgment* by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 03/31/2017) |
|---|---|---|---|
| 04/03/2017 | | | MINUTE ORDER granting 198 Motion for Extension of Time to File. Cheyenne River Sioux Tribe shall file its reply in support of its motion for summary judgment and opposition to cross–motions filed by the Corps and Dakota Access on or before April 13, 2017. Signed by Judge James E. Boasberg on 4/3/2017. (lcjeb3) (Entered: 04/03/2017) |
| 04/03/2017 | | | Set/Reset Deadlines: Reply due by 4/13/2017. (nbn) (Entered: 04/03/2017) |
| 04/03/2017 | 199 | | REPLY to opposition to motion re 97 MOTION to Amend/Correct 37 Amended Complaint filed by CHEYENNE RIVER SIOUX TRIBE. (Ducheneaux, Nicole) (Entered: 04/03/2017) |
| 04/03/2017 | 200 | | REPLY to opposition to motion re 106 MOTION for Leave to File *Amended Complaint* filed by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 04/03/2017) |
| 04/04/2017 | 201 | | REPLY to opposition to motion re 173 MOTION for Partial Summary Judgment filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit R, # 2 Exhibit S, # 3 Exhibit T)(Schifman, Reuben) (Entered: 04/04/2017) |
| 04/04/2017 | 202 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DAKOTA ACCESS LLC (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 1, # 2 Declaration of William S. Scherman)(Scherman, William) (Entered: 04/04/2017) |
| 04/04/2017 | 203 | | REPLY to opposition to motion re 173 MOTION for Partial Summary Judgment filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration of William S. Scherman)(Scherman, William) (Entered: 04/04/2017) |
| 04/05/2017 | | | MINUTE ORDER: The Court ORDERS that Defendant–Intervenor Dakota Access's 202 Sealed Motion for Leave to File Document Under Seal is GRANTED. Signed by Judge James E. Boasberg on 4/5/2017. (lcjeb3) (Entered: 04/05/2017) |
| 04/05/2017 | 204 | | SEALED REPLY TO OPPOSITION filed by DAKOTA ACCESS LLC re 173 MOTION for Partial Summary Judgment (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration of William S. Scherman)(znmw) (Entered: 04/06/2017) |
| 04/07/2017 | 205 | | ORDER granting in part and denying in part 92 Dakota Access's Motion for Protective Order. The Court ORDERS that Dakota Access shall submit to the Court a modified protective order consistent with the accompanying Memorandum Opinion. Signed by Judge James E. Boasberg on 4/7/2017. (lcjeb3) (Entered: 04/07/2017) |
| 04/07/2017 | 206 | | MEMORANDUM OPINION re 205 Order on Dakota Access's Motion for Protective Order. Signed by Judge James E. Boasberg on 4/7/2017. (lcjeb3) (Entered: 04/07/2017) |
| 04/13/2017 | 207 | | |

| | | |
|---|---|---|
| | | REPLY to opposition to motion re 131 MOTION for Partial Summary Judgment filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 04/13/2017) |
| 04/13/2017 | 208 | RESPONSE re 186 MOTION for Partial Summary Judgment, 187 MOTION for Partial Summary Judgment filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 04/13/2017) |
| 04/14/2017 | 209 | JOINT APPENDIX of Administrative Record Citations by DAKOTA ACCESS LLC, STANDING ROCK SIOUX TRIBE, UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Appendix, # 2 Appendix, # 3 Appendix, # 4 Appendix, # 5 Appendix, # 6 Appendix, # 7 Appendix, # 8 Appendix, # 9 Appendix, # 10 Appendix, # 11 Appendix, # 12 Appendix, # 13 Appendix, # 14 Appendix, # 15 Appendix, # 16 Appendix, # 17 Appendix, # 18 Appendix)(Hasselman, Jan) (Entered: 04/14/2017) |
| 04/14/2017 | 210 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by STANDING ROCK SIOUX TRIBE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Appendix Portion of Joint Appendix Subject to Protective Order, # 2 Appendix Portion of Joint Appendix Subject to Protective Order)(Hasselman, Jan) (Entered: 04/14/2017) |
| 04/17/2017 | | MINUTE ORDER granting 210 Standing Rock Sioux Tribe's Sealed Motion for Leave to File Documents Under Seal. Signed by Judge James E. Boasberg on 4/17/2017. (lcjeb3) (Entered: 04/17/2017) |
| 04/17/2017 | 211 | SEALED DOCUMENT (Portions of Joint Appendix) filed by STANDING ROCK SIOUX TRIBE. re 209 Joint Appendix, filed by DAKOTA ACCESS LLC, STANDING ROCK SIOUX TRIBE, UNITED STATES ARMY CORPS OF ENGINEERS. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit 2)(znmw) (Entered: 04/18/2017) |
| 04/19/2017 | 212 | ERRATA to Joint Appendix of Administrative Record Citations by STANDING ROCK SIOUX TRIBE 209 Joint Appendix, filed by DAKOTA ACCESS LLC, STANDING ROCK SIOUX TRIBE, UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit Attachment 1, # 2 Exhibit Attachment 2)(Hasselman, Jan) (Entered: 04/19/2017) |
| 04/20/2017 | 213 | REPLY to opposition to motion re 187 MOTION for Partial Summary Judgment filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 04/20/2017) |
| 04/20/2017 | 214 | REPLY to opposition to motion re 131 MOTION for Partial Summary Judgment filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Schifman, Reuben) (Entered: 04/20/2017) |
| 04/21/2017 | | MINUTE ORDER: The Court ORDERS that Standing Rock Sioux Tribe's 196 Sealed Motion for Leave to File Document Under Seal is GRANTED. Signed by Judge James E. Boasberg on 4/21/2017. (lcjeb3) (Entered: 04/21/2017) |
| 04/21/2017 | 215 | SEALED OPPOSITION filed by STANDING ROCK SIOUX TRIBE re , 173 MOTION for Partial Summary Judgment, 186 MOTION for Partial Summary |

| | | | |
|---|---|---|---|
| | | | Judgment, 187 MOTION for Partial Summary Judgment and In Support of 117 MOTION for Partial Summary Judgment (ztd) (Entered: 04/21/2017) |
| 04/21/2017 | 216 | | MOTION to Compel *Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order, # 3 Declaration of William S. Scherman)(Scherman, William) (Entered: 04/21/2017) |
| 04/28/2017 | 217 | | ANSWER to Complaint *by the Oglala Sioux Tribe* by UNITED STATES ARMY CORPS OF ENGINEERS.(Brar, Amarveer) (Entered: 04/28/2017) |
| 05/04/2017 | 218 | | JOINT APPENDIX by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Appendix, # 2 Appendix, # 3 Appendix, # 4 Appendix, # 5 Appendix, # 6 Appendix)(Ducheneaux, Nicole) (Entered: 05/04/2017) |
| 05/04/2017 | 219 | | RESPONSE re 216 MOTION to Compel *Prompt Completion of the Administrative Record* filed by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 05/04/2017) |
| 05/04/2017 | 220 | | MOTION Supplement Administrative Record and Consider Documents Outside The Administrative Record by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration of Joseph Messineo, # 2 Exhibit to Messineo Decl, # 3 Exhibit to Messineo Decl, # 4 Exhibit to Messineo Decl, # 5 Exhibit to Messineo Decl, # 6 Exhibit to Messineo Decl, # 7 Exhibit to Messineo Decl, # 8 Exhibit to Messineo Decl, # 9 Declaration of Rollie Wilson, # 10 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 05/04/2017) |
| 05/05/2017 | 221 | | NOTICE *of Adding Documents to the November 10, 2016 and March 21, 2017 Administrative Records* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Affidavit Certificate)(Brar, Amarveer) (Entered: 05/05/2017) |
| 05/05/2017 | 222 | | RESPONSE re 216 MOTION to Compel *Prompt Completion of the Administrative Record* filed by OGLALA SIOUX TRIBE. (Roy, Michael) (Entered: 05/05/2017) |
| 05/05/2017 | 223 | | RESPONSE re 216 MOTION to Compel *Prompt Completion of the Administrative Record* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(Marinelli, Matthew) (Entered: 05/05/2017) |
| 05/11/2017 | 224 | | MOTION for Extension of Time to File Response/Reply as to 220 MOTION Supplement Administrative Record and Consider Documents Outside The Administrative Record by UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben) (Entered: 05/11/2017) |
| 05/12/2017 | 225 | | REPLY to opposition to motion re 216 MOTION to Compel *Prompt Completion of the Administrative Record* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration of David Debold)(Scherman, William) (Entered: 05/12/2017) |
| 05/15/2017 | 229 | | MANDATE of USCA as to 164 Notice of Appeal to DC Circuit Court, filed by CHEYENNE RIVER SIOUX TRIBE. USCA Case Number 17–5043. (Attachments: # 1 order filed May 15, 2017)(zrdj) (Entered: 05/18/2017) |

| | | |
|---|---|---|
| 05/16/2017 | | MINUTE ORDER GRANTING 224 Motion for Extension of Time to File Response/Reply. The Court ORDERS that Defendant United States Army Corps of Engineers shall file its Opposition to Cheyenne River Sioux Tribe's Motion to Supplement the Administrative Record on or before May 25, 2017. Signed by Judge James E. Boasberg on 5/16/2017. (lcjeb1) (Entered: 05/16/2017) |
| 05/16/2017 | | Set/Reset Deadlines: Defendant United States Army Corps of Engineers shall file its Opposition to Cheyenne River Sioux Tribe's Motion to Supplement the Administrative Record by 5/25/2017. (nbn) (Entered: 05/16/2017) |
| 05/17/2017 | 226 | Unopposed MOTION to Intervene by DAKOTA ACCESS LLC (Attachments: # 1 Proposed Responsive Pleading, # 2 Proposed Answer, # 3 Text of Proposed Order, # 4 Corporate Disclosure Statement)(Scherman, William) (Entered: 05/17/2017) |
| 05/17/2017 | | MINUTE ORDER granting Unopposed 226 Motion to Intervene by Dakota Access, LLC. Signed by Judge James E. Boasberg on 5/17/2017. (lcjeb3) (Entered: 05/17/2017) |
| 05/17/2017 | 227 | ANSWER to Complaint by DAKOTA ACCESS LLC.(znmw) (Entered: 05/18/2017) |
| 05/17/2017 | 228 | Corporate Disclosure Statement by DAKOTA ACCESS LLC identifying Corporate Parents/Affiliates DAKOTA ACCESS HOLDINGS, LLC, PHILLIPS 66 DAPL HOLDINGS LLC, BAKKEN PIPELINE INVESTMENT LLC, BAKKEN HOLDINGS COMPANY, LLC, LAGRANGE ACQUISITION, L.P., SUNOCO PIPELINE, L.P., PHILLIPS 66 DE HOLDINGS 20A LLC, PHILLIPS 66 DE HOLDINGS 20B LLC, PHILLIPS 66 DE HOLDINGS 20C LLC, PHILLIPS 66 DE PRIMARY LLC, PHILLIPS 66 DE HOLDINGS 20D LLC, PHILLIPS 66 PROJECT DEVELOPMENT, INC., ENERGY TRANSFER PARTNERS, L.P., ENERGY TRANSFER EQUITY, L.P., SUNOCO LOGISTICS PARTNERS L.P., PHILLIPS 66 COMPANY for DAKOTA ACCESS LLC.. (znmw) (Entered: 05/18/2017) |
| 05/24/2017 | 230 | REPLY to opposition to motion re 145 MOTION to Intervene filed by THOMAS E. BARBER, SR, LADONNA BRAVE BULL ALLARD, MAXINE BRINGS HIM BACK–JANIS, CRYSTAL COLE, CHEYENNE GARCIA, TATEOLOWAN GARCIA, SARA JUMPING EAGLE, WILLIAM WILD BILL LEFT HAND, CHANI PHILLIPS, VIRGIL TAKEN ALIVE, RUSSELL VAZQUEZ, KATHY WILLCUTS, WASTEWIN YOUNG. (Hall, Oliver) (Entered: 05/24/2017) |
| 05/25/2017 | 231 | RESPONSE re 220 MOTION Supplement Administrative Record and Consider Documents Outside The Administrative Record filed by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Scherman, William) (Entered: 05/25/2017) |
| 05/25/2017 | 232 | RESPONSE re 220 MOTION Supplement Administrative Record and Consider Documents Outside The Administrative Record filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit)(Schifman, Reuben) (Entered: 05/25/2017) |

| 05/26/2017 | 233 | | MOTION for Extension of Time to File Response/Reply by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 05/26/2017) |
|---|---|---|---|
| 05/26/2017 | | | MINUTE ORDER granting 233 Motion for Extension of Time to File. The Court ORDERS that Cheyenne River Sioux Tribe's reply in support of its Motion to Supplement the Administrative Record and Alternative Motion to Consider Documents Outside the Administrative Record shall be due by June 8, 2017. Signed by Judge James E. Boasberg on 5/26/2017. (lcjeb3) (Entered: 05/26/2017) |
| 05/26/2017 | | | Set/Reset Deadlines: Reply due by 6/8/2017. (nbn) (Entered: 05/31/2017) |
| 06/06/2017 | 234 | | NOTICE *Regarding Submission of Protective Order* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit)(Schifman, Reuben) (Entered: 06/06/2017) |
| 06/07/2017 | 235 | | Protective Order signed by Court. Signed by Judge James E. Boasberg on 6/7/2017. (lcjeb3) (Entered: 06/07/2017) |
| 06/08/2017 | 236 | | ADMINISTRATIVE RECORD *Notice of Lodging Updated Administrative Record* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit)(Schifman, Reuben) Modified event title on 6/9/2017 (znmw). (Entered: 06/08/2017) |
| 06/08/2017 | 237 | | REPLY to opposition to motion re 220 MOTION Supplement Administrative Record and Consider Documents Outside The Administrative Record filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Declaration of Joseph Messineo)(Ducheneaux, Nicole) (Entered: 06/08/2017) |
| 06/14/2017 | | | MINUTE ORDER: The Court ORDERS that Cheyenne River's 97 Motion for Leave to Amend is GRANTED, and its Second Amended Complaint is deemed FILED. Signed by Judge James E. Boasberg on 6/14/2017. (lcjeb3) (Entered: 06/14/2017) |
| 06/14/2017 | | | MINUTE ORDER: The Court ORDERS that Standing Rock's 106 Motion for Leave to Amend is GRANTED, and its First Amended Complaint is deemed FILED. Signed by Judge James E. Boasberg on 6/14/2017. (lcjeb3) (Entered: 06/14/2017) |
| 06/14/2017 | 238 | | ORDER. The Court ORDERS that: (1) Plaintiff Standing Rock Sioux Tribe's 117 Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART; (2) Defendant U.S. Army Corps of Engineers' 172 corresponding Cross–Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART; (3) Plaintiff–Intervenor Cheyenne River Sioux Tribe's 131 Motion for Partial Summary Judgment is DENIED IN PART; (4) Defendant U.S. Army Corps of Engineers' and Defendant–Intervenor Dakota Access LLC's 183 , 184 and 185 corresponding Cross–Motions for Partial Summary Judgment are GRANTED IN PART; (5) The matter is REMANDED to the Corps for further analysis as set forth in the Opinion; and (6) The parties shall appear on June 21, 2017, at 2:30 PM for a status conference to discuss further scheduling in the case. Signed by Judge James E. Boasberg on 6/14/2017. (lcjeb3) Modified to add event title on 6/15/2017 (znmw). Modified on 6/15/2017 (zlsj). (Entered: 06/14/2017) |

| 06/14/2017 | 239 | | MEMORANDUM OPINION re 238 Order on Cross–Motions for Partial Summary Judgment. Signed by Judge James E. Boasberg on 6/14/2017. (lcjeb3) (Entered: 06/14/2017) |
|---|---|---|---|
| 06/14/2017 | | | MINUTE ORDER: The Court ORDERS that Steve Vance's 111 Motion to Intervene is GRANTED, and his Complaint is deemed FILED. The Court further ORDERS that he shall comply with all filing deadlines applicable to the Cheyenne River Sioux Tribe. Signed by Judge James E. Boasberg on 6/14/2017. (lcjeb3) (Entered: 06/14/2017) |
| 06/14/2017 | | | MINUTE ORDER: The Court is prepared to grant Sara Jumping Eagle *et al.*'s 145 Motion to Intervene provided that the scope of their Complaint is coterminous with the current Complaints in the case. As Movant–Intervenors' [145–1] Proposed Complaint adds President Trump as a defendant and seeks relief beyond that sought by the Standing Rock and Cheyenne River Sioux Tribes, such intervention would unduly expand the scope of the case. If Movant–Intervenors wish to proceed against President Trump, either individually or in his official capacity, they must file a separate action. If they wish to join this case under the conditions stated herein, the Court will grant their Motion to Intervene. They shall file a notice by June 20, 2017, indicating their position. Signed by Judge James E. Boasberg on 6/14/2017. (lcjeb3) (Entered: 06/14/2017) |
| 06/14/2017 | | | MINUTE ORDER: In its 220 Motion to Supplement the Administrative Record and Alternative Motion to Consider Documents Outside the Administrative Record, Cheyenne River makes two separate arguments. First, the Tribe asks that six documents be included in the administrative record. There is a dispute about whether these documents were properly before the Corps when it made its permitting decisions, and thus whether they should be included in the administrative record. As the Court has reviewed the documents and concluded that they would not change the outcome in its 239 Opinion on the various Cross–Motions for Summary Judgment, the Court need not resolve this procedural question and therefore DENIES the Motion to Supplement. Second, and in the alternative, the Tribe asks that the Court consider eight extra–record documents. The Court DENIES the Motion to Consider Documents Outside the Administrative Record for the same reasons given in its 239 Opinion regarding Standing Rock's request that the Court consider extra–record evidence. Signed by Judge James E. Boasberg on 6/14/2017. (lcjeb3) (Entered: 06/14/2017) |
| 06/14/2017 | | | MINUTE ORDER: The Court ORDERS that Dakota Access shall be prepared at the status hearing on June 21, 2017, to address whether it wishes to proceed with its 216 Motion to Compel Prompt Completion of the Administrative Record. Signed by Judge James E. Boasberg on 6/14/2017. (lcjeb3) (Entered: 06/14/2017) |
| 06/14/2017 | 240 | | SECOND AMENDED COMPLAINT against DAKOTA ACCESS LLC, UNITED STATES ARMY CORPS OF ENGINEERS filed by CHEYENNE RIVER SIOUX TRIBE.(znmw) (Entered: 06/15/2017) |
| 06/14/2017 | 241 | | FIRST AMENDED COMPLAINT against DAKOTA ACCESS LLC, UNITED STATES ARMY CORPS OF ENGINEERS filed by STANDING ROCK SIOUX TRIBE.(znmw) (Entered: 06/15/2017) |

| 06/14/2017 | 242 | | Intervenor COMPLAINT filed by STEVE VANCE.(znmw) (Entered: 06/15/2017) |
| 06/14/2017 | | | Set/Reset Hearings: Status Conference set for 6/21/2017 at 02:30 PM in Courtroom 19 before Judge James E. Boasberg. (nbn) (Entered: 06/16/2017) |
| 06/14/2017 | | | Set/Reset Deadlines: Notice Regarding Intervention due by 6/20/2017. (nbn) (Entered: 06/16/2017) |
| 06/19/2017 | 243 | | MOTION for Leave to Appear Telephonically *for Status Conference on 6/21/17 at 2:30 p.m.* by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Schulte, Conly) (Entered: 06/19/2017) |
| 06/19/2017 | 244 | | MOTION for Leave to Appear Telephonically *for Status Conference on 6/21/17 at 2:30 p.m.* by YANKTON SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Baker, Jennifer) (Entered: 06/19/2017) |
| 06/19/2017 | 245 | | MOTION for Leave to Appear Telephonically *(Jeffrey S. Rasmussen) for the Status Conference on 6/21/17 at 2:30 p.m.* by YANKTON SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Baker, Jennifer) (Entered: 06/19/2017) |
| 06/19/2017 | 246 | | NOTICE *in Response to Court Order* by THOMAS E. BARBER, SR, LADONNA BRAVE BULL ALLARD, MAXINE BRINGS HIM BACK–JANIS, CRYSTAL COLE, CHEYENNE GARCIA, TATEOLOWAN GARCIA, SARA JUMPING BILL LEFT HAND, WILLIAM WILD BILL LEFT HAND, CHANI PHILLIPS, VIRGIL TAKEN ALIVE, RUSSELL VAZQUEZ, KATHY WILLCUTS, WASTEWIN YOUNG re Order,,, Set/Reset Hearings (Hall, Oliver) (Entered: 06/19/2017) |
| 06/19/2017 | | | MINUTE ORDER: The Court ORDERS that 244 Yankton Sioux Tribe's Motion for Leave to Appear by Telephone at the June 21, 2017, status hearing is GRANTED. Signed by Judge James E. Boasberg on 6/19/2017. (lcjeb3) (Entered: 06/19/2017) |
| 06/19/2017 | | | MINUTE ORDER: The Court ORDERS that 243 Cheyenne River Sioux Tribe's Motion for Leave to Appear by Telephone at the June 21, 2017, status hearing is GRANTED. Signed by Judge James E. Boasberg on 6/19/2017. (lcjeb3) (Entered: 06/19/2017) |
| 06/19/2017 | | | MINUTE ORDER: The Court ORDERS that 245 Yankton Sioux Tribe's Motion for Leave to Appear by Telephone at the June 21, 2017, status hearing is GRANTED. Signed by Judge James E. Boasberg on 6/19/2017. (lcjeb3) (Entered: 06/19/2017) |
| 06/19/2017 | | | MINUTE ORDER: Given the 246 Notice submitted by Intervenors Sara Jumping Eagle *et al.*, the Court ORDERS that their 145 Motion to Intervene is GRANTED and their proposed Complaint is deemed FILED, but President Donald Trump is DISMISSED WITHOUT PREJUDICE as a Defendant. Attorney Bruce Afran may appear telephonically on behalf of Intervenors at the status hearing on June 21, 2017. Signed by Judge James E. Boasberg on 6/19/2017. (lcjeb3) (Entered: 06/19/2017) |
| 06/19/2017 | 248 | | Intervenor COMPLAINT filed by WILLIAM WILD BILL LEFT HAND, KATHY WILLCUTS, CHEYENNE GARCIA, LADONNA BRAVE BULL ALLARD, CRYSTAL COLE, CHANI PHILLIPS, WASTEWIN YOUNG, |

| | | | |
|---|---|---|---|
| | | | TATEOLOWAN GARCIA, VIRGIL TAKEN ALIVE, THOMAS E. BARBER, SR, SARA JUMPING EAGLE, MAXINE BRINGS HIM BACK–JANIS.(td) (Entered: 06/20/2017) |
| 06/20/2017 | 247 | | MOTION for Leave to Appear to Appear Telephonically by STEVE VANCE (Attachments: # 1 Text of Proposed Order)(Messineo, Joseph) (Entered: 06/20/2017) |
| 06/20/2017 | | | MINUTE ORDER: The Court ORDERS that 247 Steve Vance's Motion for Leave to Appear by Telephone at the June 21, 2017, status hearing is GRANTED. Signed by Judge James E. Boasberg on 6/20/2017. (lcjeb3) (Entered: 06/20/2017) |
| 06/20/2017 | 249 | | Joint MOTION for Briefing Schedule by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 06/20/2017) |
| 06/20/2017 | | | NOTICE OF ERROR re 245 Motion for Leave to Appear ; emailed to jbaker@ndnlaw.com, cc'd 76 associated attorneys –– The PDF file you docketed contained errors: 1. Please note on future filings, that one attorney can not file on behalf of another. All attorneys must use their own passwords for their filings. (ztd, ) (Entered: 06/20/2017) |
| 06/20/2017 | 250 | | NOTICE of Opposition to Joint Motion to Set a Briefing Schedule by YANKTON SIOUX TRIBE re 249 Joint MOTION for Briefing Schedule (Baker, Jennifer) (Entered: 06/20/2017) |
| 06/20/2017 | 251 | | Memorandum in opposition to re 249 Joint MOTION for Briefing Schedule filed by YANKTON SIOUX TRIBE. (See docket entry no. 250 to view document.) (td) (Entered: 06/21/2017) |
| 06/21/2017 | | | MINUTE ORDER: As discussed at the June 21, 2017, status hearing, the 249 Joint Motion for Briefing Schedule is GRANTED. The Court ORDERS that: (1) Opening briefs of no more than 20 pages each shall be submitted by July 17, 2017, by Defendant United States Army Corps of Engineers and Intervenor Defendant Dakota Access; (2) Responses of no more than 40 pages in total shall be submitted by August 7, 2017, by Plaintiff Standing Rock Sioux Tribe and Intervenor Plaintiff Cheyenne River Sioux Tribe; (3) Any other Intervenor or Consolidated Plaintiff may file a brief up to 10 pages by August 7, 2017, dealing only with issues not raised by Standing Rock and Cheyenne River; (4) Replies of no more than 10 pages each shall be submitted by August 17, 2017, by the Corps and Dakota Access; (5) Sur–replies of no more than 20 pages in total shall be submitted by August 28, 2017, by Standing Rock and Cheyenne River; and (6) Any other Intervenor or Consolidated Plaintiff may file a sur–reply up to 5 pages by August 28, 2017, dealing only with issues not raised by Standing Rock and Cheyenne River. Signed by Judge James E. Boasberg on 6/20/2017. (lcjeb3) (Entered: 06/21/2017) |
| 06/21/2017 | | | MINUTE ORDER: As discussed at today's status conference, the Court ORDERS that: 1) Defendants need not respond to any of the Complaints until further Order of the Court; 2) All briefing on counts not covered in the Court's last Memorandum Opinion shall be stayed until further Order of the Court; and 3) The parties shall submit a joint status report containing a proposed briefing schedule within 14 days after the issuance of an Order on the remedies |

| | | | |
|---|---|---|---|
| | | | question. Signed by Judge James E. Boasberg on 6/21/2017. (lcjeb3) (Entered: 06/21/2017) |
| 06/21/2017 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 6/21/2017. Oral discussions in regard to 249 Joint Motion for Briefing Schedule, heard and Motion GRANTED. Order forthcoming. (Court Reporter Pat Kaneshiro–Miller) (nbn) (Entered: 06/21/2017) |
| 06/28/2017 | 252 | | SUPPLEMENTAL MEMORANDUM to re 216 MOTION to Compel *Prompt Completion of the Administrative Record* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit)(Scherman, William) (Entered: 06/28/2017) |
| 07/03/2017 | 253 | | MOTION for Briefing Schedule *with respect to Dakota Access' Supplemental Brief* by UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben) (Entered: 07/03/2017) |
| 07/05/2017 | | | MINUTE ORDER: The Court ORDERS that if Dakota Access opposes the Corps' 253 Motion for Briefing Schedule, it shall file such Opposition by July 7, 2017. Signed by Judge James E. Boasberg on 7/5/2017. (lcjeb3) (Entered: 07/05/2017) |
| 07/05/2017 | | | Set/Reset Deadlines: Dakota Access Opposition To 253 Motion For Briefing Schedule due by 7/7/2017. (mac) (Entered: 07/05/2017) |
| 07/06/2017 | 254 | | RESPONSE re 253 MOTION for Briefing Schedule *with respect to Dakota Access' Supplemental Brief* filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 07/06/2017) |
| 07/07/2017 | | | MINUTE ORDER GRANTING 253 Motion for Briefing Schedule. The Court ORDERS that Defendant United States Army Corps of Engineers shall file its supplemental memorandum regarding Intervenor Defendant Dakota Access's 216 Motion to Compel on or before July 24, 2017. Signed by Judge James E. Boasberg on 7/7/17. (lcjeb2) (Entered: 07/07/2017) |
| 07/07/2017 | | | Set/Reset Deadlines: Defendant United States Army Corps of Engineers shall file its supplemental memorandum regarding Intervenor Defendant Dakota Access's 216 Motion to Compel on or before 7/24/2017. (znbn) (Entered: 07/07/2017) |
| 07/13/2017 | 255 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION. Attorney Richard A. Guest terminated. (Guest, Richard) (Entered: 07/13/2017) |
| 07/13/2017 | 256 | | NOTICE of Appearance by Joel William West Williams on behalf of GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION (Williams, Joel) (Entered: 07/13/2017) |
| 07/17/2017 | 257 | | MOTION for Leave to File *Brief as Amicus Curiae in Opposition to Vacatur on Remand* by NORTH DAKOTA PETROLEUM COUNCIL (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit Exhibit A – amicus brief)(Mayo, A.) (Entered: 07/17/2017) |
| 07/17/2017 | 258 | | Memorandum Brief Regarding Remedy by UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben) Modified text not a Motion on 7/18/2017 (td). (Entered: 07/17/2017) |

| 07/17/2017 | 259 | | MOTION for Leave to File *as Amici Curiae in Support of Dakota Access, LLC's Brief on Vacatur* by THE AMERICAN PETROLEUM INSTITUTE, AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, THE ASSOCIATION OF OIL PIPE LINES, THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, THE NATIONAL ASSOCIATION OF MANUFACTURERS (Attachments: # 1 Exhibit A – Proposed Amicus Brief, # 2 Declaration of David Murk in Support of Amici Curiae Brief, # 3 Text of Proposed Order)(Coburn, David) (Entered: 07/17/2017) |
|---|---|---|---|
| 07/17/2017 | 260 | | MEMORANDUM Brief Regarding Remedy by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit)(Scherman, William) Modified text on 7/18/2017 (td). (Entered: 07/17/2017) |
| 07/20/2017 | | | MINUTE ORDER: The Court ORDERS that the 257 Motion of the North Dakota Petroleum Council for Leave to File Brief as Amicus Curiae is GRANTED. Signed by Judge James E. Boasberg on 7/20/17. (lcjeb2) (Entered: 07/20/2017) |
| 07/20/2017 | | | MINUTE ORDER: The Court ORDERS that if any party opposes the 259 Motion for Leave to File Amicus brief, it shall file such Opposition by July 27, 2017. Signed by Judge James E. Boasberg on 7/20/17. (lcjeb2) (Entered: 07/20/2017) |
| 07/20/2017 | | | Set/Reset Deadlines: Opposition due by 7/27/2017. (nbn) (Entered: 07/20/2017) |
| 07/20/2017 | 261 | | AMICUS BRIEF by NORTH DAKOTA PETROLEUM COUNCIL. (znmw) (Entered: 07/21/2017) |
| 07/21/2017 | 262 | | NOTICE of Appearance by Matthew Lee Campbell on behalf of GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION (Campbell, Matthew) (Entered: 07/21/2017) |
| 07/24/2017 | 263 | | RESPONSE re 216 MOTION to Compel *Prompt Completion of the Administrative Record* filed by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 07/24/2017) |
| 07/24/2017 | 264 | | RESPONSE re 216 MOTION to Compel *Prompt Completion of the Administrative Record* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Schifman, Reuben) (Entered: 07/24/2017) |
| 07/24/2017 | 265 | | RESPONSE re 216 MOTION to Compel *Prompt Completion of the Administrative Record* filed by CHEYENNE RIVER SIOUX TRIBE. (Ducheneaux, Nicole) (Entered: 07/24/2017) |
| 07/25/2017 | 266 | | Memorandum in opposition to re 257 MOTION for Leave to File *Brief as Amicus Curiae in Opposition to Vacatur on Remand* filed by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Declaration)(Ducheneaux, Nicole) (Entered: 07/25/2017) |
| 07/26/2017 | 267 | | REPLY to opposition to motion re 259 MOTION for Leave to File *as Amici Curiae in Support of Dakota Access, LLC's Brief on Vacatur* filed by AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, AMERICAN PETROLEUM INSTITUTE, ASSOCIATION OF OIL PIPE LINES, CHAMBER OF COMMERCE OF THE UNITED STATES OF |

| | | |
|---|---|---|
| | | AMERICA, NATIONAL ASSOCIATION OF MANUFACTURERS. (Attachments: # 1 Exhibit A – Proposed Amended Amici Curiae Brief, # 2 Declaration of David Murk in Support of Amici Curiae Brief)(Coburn, David) (Entered: 07/26/2017) |
| 08/04/2017 | 268 | NOTICE of Appearance by Patrick Michael Sullivan on behalf of LAKOTA PEOPLES LAW OFFICE (Sullivan, Patrick) (Entered: 08/04/2017) |
| 08/07/2017 | 269 | MOTION for Leave to File *Amicus Brief* by Law Professors (Attachments: # 1 Exhibit Brief)(Snape, William) (Entered: 08/07/2017) |
| 08/07/2017 | 270 | MOTION for Leave to File *Amici Curiae Brief* by GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION, NATIONAL CONGRESS OF AMERICAN INDIANS, 18 FEDERALLY RECOGNIZED INDIAN TRIBES AND TRIBAL ORGANIZATIONS (Attachments: # 1 Exhibit)(Campbell, Matthew) (Entered: 08/07/2017) |
| 08/07/2017 | 271 | MOTION for Leave to File *Amicus Curiae Brief* by LAKOTA PEOPLES LAW OFFICE (Attachments: # 1 Exhibit)(Sullivan, Patrick) (Entered: 08/07/2017) |
| 08/07/2017 | 272 | MEMORANDUM *Brief Regarding Remedy* by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Declaration of Richard Kuprewicz – Second, # 2 Declaration of Richard Kuprewicz – Third, # 3 Declaration of Dave Archambault II – Third, # 4 Declaration of Donald Holmstrom, # 5 Declaration of Ian Goodman)(Hasselman, Jan) Modified to add text on 8/8/2017 (znmw). (Entered: 08/07/2017) |
| 08/09/2017 | 273 | MOTION for Extension of Time to File *Intervenors' Brief on Remedy* by THOMAS E. BARBER, SR, LADONNA BRAVE BULL ALLARD, MAXINE BRINGS HIM BACK–JANIS, CRYSTAL COLE, CHEYENNE GARCIA, TATEOLOWAN GARCIA, SARA JUMPING EAGLE, WILLIAM WILD BILL LEFT HAND, CHANI PHILLIPS, VIRGIL TAKEN ALIVE, RUSSELL VAZQUEZ, KATHY WILLCUTS, WASTEWIN YOUNG (Attachments: # 1 Exhibit Intervenors' Brief on Remedy)(Hall, Oliver) Modified event title on 8/10/2017 (znmw). (Entered: 08/09/2017) |
| 08/10/2017 | 274 | RESPONSE re 273 MOTION for Extension of Time to File *Intervenors' Brief on Remedy* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 08/10/2017) |
| 08/11/2017 | 275 | REPLY to opposition to motion re 273 MOTION for Extension of Time to File *Brief on Remedy* filed by THOMAS E. BARBER, SR, LADONNA BRAVE BULL ALLARD, MAXINE BRINGS HIM BACK–JANIS, CRYSTAL COLE, CHEYENNE GARCIA, TATEOLOWAN GARCIA, SARA JUMPING EAGLE, WILLIAM WILD BILL LEFT HAND, CHANI PHILLIPS, VIRGIL TAKEN ALIVE, RUSSELL VAZQUEZ, KATHY WILLCUTS, WASTEWIN YOUNG. (Hall, Oliver) (Entered: 08/11/2017) |
| 08/17/2017 | 276 | REPLY re 258 MOTION on Remedy filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7)(Marinelli, Matthew) (Entered: 08/17/2017) |
| 08/17/2017 | 277 | |

| | | | |
|---|---|---|---|
| | | | REPLY re 260 Memorandum *on Remedy* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit)(Scherman, William) (Entered: 08/17/2017) |
| 08/22/2017 | 278 | | MOTION for Leave to File *Reply to Response by Jumping Eagle Intervenors* by DAKOTA ACCESS LLC (Attachments: # 1 Exhibit Proposed Reply)(Scherman, William) (Entered: 08/22/2017) |
| 08/25/2017 | | | MINUTE ORDER: The Court ORDERS that: 1) The American Petroleum Institute, et al.'s 259 Motion to file as Amici Curiae is GRANTED, and the brief at ECF No. 267–1 is deemed FILED; 2) The Law Professors' 269 Motion, the Great Plains Tribal Chairman's Association, et al.'s 270 Motion, and the Lakota Peoples Law Office's 271 Motion to file as Amici Curiae are GRANTED, and their briefs are deemed FILED; 3) Intervenors' 273 Motion for Extension is GRANTED; and 4) Dakota Access's 278 Motion for Reply is DENIED. Signed by Judge James E. Boasberg on 8/25/17. (lcjeb1) (Entered: 08/25/2017) |
| 08/28/2017 | 279 | | AMICUS BRIEF by AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, AMERICAN PETROLEUM INSTITUTE, ASSOCIATION OF OIL PIPE LINES, CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, NATIONAL ASSOCIATION OF MANUFACTURERS. (Attachments: # 1 Declaration of David Murk in Support of Amici Curiae Brief)(znmw) (Entered: 08/28/2017) |
| 08/28/2017 | 280 | | REPLY to opposition to motion re 258 MOTION on Remedy filed by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 08/28/2017) |
| 10/06/2017 | 281 | | NOTICE *of Revised Schedule for Remand* by UNITED STATES ARMY CORPS OF ENGINEERS (Marinelli, Matthew) (Entered: 10/06/2017) |
| 10/06/2017 | 282 | | MOTION for Protective Order *Revised Protective Order* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Proposed Order)(Hasselman, Jan) (Entered: 10/06/2017) |
| 10/06/2017 | | | MINUTE ORDER GRANTING 282 Motion to Amend Protective Order. The Court ORDERS that the Revised Protective Order shall govern the handling of all protected information. So ORDERED by Judge James E. Boasberg on 10/06/2017. (lcjeb2) (Entered: 10/06/2017) |
| 10/11/2017 | 283 | | ORDER: The Court ORDERS that remand following the Court's prior 239 Memorandum Opinion shall be WITHOUT vacatur. The parties shall appear for a status conference on October 18, 2017, at 11:30 a.m. to discuss a further schedule in this case. Signed by Judge James E. Boasberg on 10/11/2017. (lcjeb2) (Entered: 10/11/2017) |
| 10/11/2017 | 284 | | MEMORANDUM OPINION re 283 Order regarding vacatur. Signed by Judge James E. Boasberg on 10/11/2017. (lcjeb2) (Entered: 10/11/2017) |
| 10/11/2017 | | | Set/Reset Hearings: Status Conference set for 10/18/2017 at 11:30 AM in Courtroom 19 before Judge James E. Boasberg. (nbn) (Entered: 10/11/2017) |
| 10/16/2017 | 285 | | MOTION for Leave to Appear Telephonic *ally at the October 18, 2017, Status Conference Regarding Scheduling* by ROBERT FLYING HAWK, YANKTON SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Baker, Jennifer) (Entered: 10/16/2017) |

| 10/17/2017 | | | MINUTE ORDER: The Court GRANTS Yankton Sioux Tribe's 285 Motion for Leave to Appear Telephonically for the October 18, 2017 status conference. So ORDERED by Judge James E. Boasberg on 10/17/17. (lcjeb1) (Entered: 10/17/2017) |
|---|---|---|---|
| 10/18/2017 | | | MINUTE ORDER: As discussed in today's status conference, the Court ORDERS that: 1) Each Defendant may file a separate response of up to 10 pages by November 1, 2017, to the Tribes' request for the imposition of alternative measures during remand; 2) Standing Rock and Cheyenne River may each file a reply of up to 15 pages by November 15, 2017; 3) Other Plaintiffs may each file a reply of up to 5 pages by the same date; 4) Defendants' obligation to file Answers shall continue to be held in abeyance until further Order of the Court; 5) Should any Plaintiff wish to file an additional motion for summary judgment prior to the completion of the remand, it must first file a brief Notice with the Court indicating the grounds for its motion and the time by which it could be filed and then obtain Court approval of the filing; and 6) The Government shall file status reports regarding the progress of the remand by December 1, 2017, February 1, 2018, and April 2, 2018. So ORDERED by Judge James E. Boasberg on 10/18/17. (lcjeb1) (Entered: 10/18/2017) |
| 10/18/2017 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 10/18/2017. Order issued. (Court Reporter Lisa Griffith) (nbn) (Entered: 10/18/2017) |
| 10/18/2017 | | | Set/Reset Deadlines: Responses due by 11/1/2017. Replies due by 11/15/2017. Joint Status Report due by 12/1/2017 Joint Status Report due by 4/2/2018. Joint Status Report due by 2/1/2018. (nbn) (Entered: 10/20/2017) |
| 10/24/2017 | 286 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to LAKOTA PEOPLES LAW OFFICE. Attorney Patrick Michael Sullivan terminated. (Attachments: # 1 Declaration Declaration of Lanny A. Sinkin)(Sullivan, Patrick) (Entered: 10/24/2017) |
| 11/01/2017 | 287 | | RESPONSE re 272 Memorandum, *Response to Plaintiffs' Request for Imposition of Remand Conditions* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit)(Schifman, Reuben) (Entered: 11/01/2017) |
| 11/01/2017 | 288 | | MEMORANDUM by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit)(Scherman, William) (Entered: 11/01/2017) |
| 11/10/2017 | 289 | | MOTION for Leave to File *a Motion for Partial Summary Judgment* by YANKTON SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Baker, Jennifer) Modified event title on 11/13/2017 (znmw). (Additional attachment(s) added on 11/13/2017: # 2 Motion for Partial Summary Judgment, # 3 Exhibit A to Motion for Partial Summary Judgment, # 4 Exhibit B to Motion for Partial Summary Judgment, # 5 Exhibit to Motion for Partial Summary Judgment, # 6 Text of Proposed Order – Motion for Partial Summary Judgment) (znmw). (Entered: 11/10/2017) |
| 11/10/2017 | 290 | | ENTERED IN ERROR..... MOTION for Summary Judgment *by Robert Flying Hawk and* by YANKTON SIOUX TRIBE (Attachments: # 1 Text of Proposed Order, # 2 Statement of Facts, # 3 Memorandum in Support, # 4 Exhibit Exhibit A, # 5 Exhibit Exhibit B, # 6 Exhibit Exhibit C)(Baker, Jennifer) |

| | | | |
|---|---|---|---|
| | | | Modified on 11/13/2017 (znmw). (Entered: 11/10/2017) |
| 11/13/2017 | | | NOTICE OF CORRECTED DOCKET ENTRY: Docket Entry 290 MOTION for Summary Judgment *by Robert Flying Hawk and* was entered in error as a separate entry; the motion has been added to Docket Entry 289 MOTION for Leave to File and will be refiled by the Clerk's Office when leave to file is granted. (znmw) (Entered: 11/13/2017) |
| 11/13/2017 | | | MINUTE ORDER: The Court ORDERS that the Yankton Sioux Tribe's 289 Motion for Leave to File is GRANTED, and its Motion for Summary Judgment is hereby FILED. So ORDERED by Judge James E. Boasberg on 11/13/2017. (lcjeb2) (Entered: 11/13/2017) |
| 11/13/2017 | 292 | | MOTION for Partial Summary Judgment by YANKTON SIOUX TRIBE, ROBERT FLYING HAWK (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Text of Proposed Order)(znmw) Modified to add filer on 1/29/2018 (znmw). (Entered: 11/14/2017) |
| 11/14/2017 | 291 | | NOTICE *of Attachment to 272−4 Declaration of D. Holstrom* by STANDING ROCK SIOUX TRIBE re 272 Memorandum, (Hasselman, Jan) (Entered: 11/14/2017) |
| 11/15/2017 | 293 | | REPLY re 272 Memorandum *Reply In Support of Imposition of Remand Conditions* filed by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Text of Proposed Order)(Hasselman, Jan) Modified to add link on 11/16/2017 (znmw). (Entered: 11/15/2017) |
| 11/16/2017 | 294 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 10−18−17; Page Numbers: 1−21. Date of Issuance:11−16−17. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354−3247, Transcripts may be ordered by submitting the <a href="http://www.dcd.uscourts.gov/node/110">Transcript Order Form</a><P></P><P></P>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<P>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<P></P> Redaction Request due 12/7/2017. Redacted Transcript Deadline set for 12/17/2017. Release of Transcript Restriction set for 2/14/2018.(Griffith, Lisa) (Entered: 11/16/2017) |
| 11/16/2017 | 295 | | First MOTION for Extension of Time to File Response/Reply as to 292 MOTION for Partial Summary Judgment *(Expedited)* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Text of Proposed Order)(Marinelli, Matthew) (Entered: 11/16/2017) |
| 11/16/2017 | | | MINUTE ORDER: The Court ORDERS that if the Yankton Sioux Tribe opposes Defendant's 295 Motion for Extension, it shall file such opposition by November 20, 2017. So ORDERED by Judge James E. Boasberg on |

| | | | |
|---|---|---|---|
| | | | 11/16/2017. (lcjeb3) (Entered: 11/16/2017) |
| 11/17/2017 | | | Set/Reset Deadlines: Opposition Motions due by 11/20/2017. (lsj) (Entered: 11/17/2017) |
| 11/20/2017 | 296 | | MOTION for Briefing Schedule by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 11/20/2017) |
| 11/20/2017 | 297 | | RESPONSE re 295 First MOTION for Extension of Time to File Response/Reply as to 292 MOTION for Partial Summary Judgment *(Expedited)* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 11/20/2017) |
| 11/20/2017 | 298 | | SUPPLEMENTAL MEMORANDUM to re 293 Reply to Document, filed by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit)(Scherman, William) (Entered: 11/20/2017) |
| 11/20/2017 | 299 | | RESPONSE re 295 First MOTION for Extension of Time to File Response/Reply as to 292 MOTION for Partial Summary Judgment *(Expedited)* filed by YANKTON SIOUX TRIBE. (Baker, Jennifer) (Entered: 11/20/2017) |
| 11/21/2017 | 300 | | RESPONSE re 296 MOTION for Briefing Schedule filed by CHEYENNE RIVER SIOUX TRIBE, STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 11/21/2017) |
| 11/21/2017 | 301 | | RESPONSE re 296 MOTION for Briefing Schedule filed by OGLALA SIOUX TRIBE. (Roy, Michael) (Entered: 11/21/2017) |
| 11/27/2017 | | | MINUTE ORDER: The Court ORDERS that: 1) The Corps' 295 Motion for Extension is GRANTED, and any opposition to the Yankton Sioux Tribe's 292 Motion for Partial Summary Judgment shall be due by January 10, 2017; 2) Dakota Access's 296 Motion for Briefing Schedule is GRANTED IN PART and DENIED IN PART; 3) Should any other Plaintiff choose to file a motion for summary judgment prior to the completion of the remand, such motion shall be filed by January 16, 2018, with any opposition due by March 15, 2018, and any reply by April 1, 2018; and 4) Within 30 days following the completion of remand, all parties shall submit a joint status report and proposed schedule for post–remand briefing. So ORDERED by Judge James E. Boasberg on 11/27/2017.(lcjeb2) (Entered: 11/27/2017) |
| 11/27/2017 | | | Set/Reset Deadlines: Opposition to the Yankton Sioux Tribe's 292 Motion for Partial Summary Judgment due by 1/10/2018. Summary Judgment motions due by 1/16/2018. Response to Motion for Summary Judgment due by 3/15/2018. Reply to Motion for Summary Judgment due by 4/1/2018. (nbn) (Entered: 11/28/2017) |
| 12/01/2017 | 302 | | STATUS REPORT *Regarding Remand* by UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 12/01/2017) |
| 12/04/2017 | 303 | | ORDER: The Court ORDERS that: (1) The parties shall coordinate to finalize an oil–spill response plan, which they shall submit to the Court by April 1, 2018; (2) Dakota Access, with input from the Tribes, shall select an independent auditor to review easement conditions and regulations, and the results of such audit shall be filed with the Court by April 1, 2018; and (3) Dakota Access shall submit to the Court bi–monthly reports on the conditions |

| | | | |
|---|---|---|---|
| | | | at Lake Oahe. Signed by Judge James E. Boasberg on 12/4/2017. (lcjeb2) (Entered: 12/04/2017) |
| 12/04/2017 | 304 | | MEMORANDUM OPINION re 303 Order On Interim Conditions. Signed by Judge James E. Boasberg on 12/4/2017. (lcjeb2) (Entered: 12/04/2017) |
| 12/04/2017 | | | Set/Reset Deadlines: The parties shall coordinate to finalize an oil–spill response plan due by 4/1/2018. Dakota Access, with input from the Tribes, shall select an independent auditor to review easement conditions and regulations, and the results of such audit shall be filed with the Court by 4/1/2018. (nbn) (Entered: 12/04/2017) |
| 12/06/2017 | 305 | | RESPONSE re 302 Status Report *of Army Corps of Engineers' Regarding Remand* filed by YANKTON SIOUX TRIBE. (Attachments: # 1 Exhibit Ex 1 – 9/25/17 Letter from ACOE, # 2 Exhibit Ex 2 – 9/29/17 Response to ACOE, # 3 Exhibit Ex 3 – 10/5/17 Letter from ACOE, # 4 Exhibit Ex 4 – 10/6/17 Letter to DOJ, # 5 Exhibit Ex 5 – 11/27/17 3rd Letter from ACOE)(Baker, Jennifer) (Entered: 12/06/2017) |
| 12/14/2017 | 306 | | REPLY re 305 Response to Document, *Yankton Sioux Tribe and Robert Flying Hawk's Response to the Army Corps' Status Report Regarding Remand* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit Exhibit One)(Brar, Amarveer) (Entered: 12/14/2017) |
| 12/15/2017 | 307 | | Unopposed MOTION to Unseal Document 118 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by STANDING ROCK SIOUX TRIBE (This document is SEALED and only available to authorized persons.) filed by STANDING ROCK SIOUX TRIBE, 195 Response to motion, filed by STANDING ROCK SIOUX TRIBE, 203 Reply to opposition to Motion filed by DAKOTA ACCESS LLC, 196 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by STANDING ROCK SIOUX TRIBE (This document is SEALED and only available to authorized persons.) filed by STANDING ROCK SIOUX TRIBE, 132 SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by CHEYENNE RIVER SIOUX TRIBE (This document is SEALED and only available to authorized persons.) filed by CHEYENNE RIVER SIOUX TRIBE by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Hasselman, Jan) (Entered: 12/15/2017) |
| 12/19/2017 | 308 | | ORDER GRANTING 307 Motion to Unseal Documents. Signed by Judge James E. Boasberg on 12/19/2017. (lcjeb2) (Entered: 12/19/2017) |
| 12/19/2017 | 309 | | ENTERED IN ERROR. . . . . SURREPLY to re 302 Status Report *of the Army Corps' Reply to the Yankton Sioux Tribe and Robert Flying Hawk's Response to the Army Corps Status Report Regarding Remand* filed by YANKTON SIOUX TRIBE. (Baker, Jennifer) Modified on 12/20/2017 (td). (Entered: 12/19/2017) |
| 12/19/2017 | 310 | | Declaration of Richard B. Kuprewicz by STANDING ROCK SIOUX TRIBE. (td) Modified on 12/20/2017 (td). (Unsealed pursuant to 308 ) (Entered: 12/19/2017) |
| 12/19/2017 | 311 | | Declaration of Steve Martin by CHEYENNE RIVER SIOUX TRIBE. (unsealed pursuant to 308 ) (td) (Entered: 12/20/2017) |

| 12/19/2017 | 312 | | Declaration of Elliott Ward by STANDING ROCK SIOUX TRIBE. (Unsealed pursuant to 308 ) (td) (Entered: 12/20/2017) |
| 12/19/2017 | 313 | | Declaration of Hakan Bekar re 308 Order on Motion to Unseal Document by CHEYENNE RIVER SIOUX TRIBE. (td) (Entered: 12/21/2017) |
| 12/20/2017 | | | NOTICE OF ERROR re 309 Surreply; emailed to jbaker@ndnlaw.com, cc'd 89 associated attorneys –– The PDF file you docketed contained errors: 1. Leave to file not yet requested and/or granted, 2. You must file a Motion for Leave to File a Surreply. (ztd, ) (Entered: 12/20/2017) |
| 12/21/2017 | 314 | | MOTION for Leave to File *Surreply to the Army Corps' Reply to the Yankton Sioux Tribe and Robert Flying Hawk's Response to the Army Corps' Status Report Regarding Remand* by YANKTON SIOUX TRIBE (Attachments: # 1 Exhibit Exhibit 1 – Surreply)(Baker, Jennifer) (Entered: 12/21/2017) |
| 12/29/2017 | 315 | | First STATUS REPORT by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 12/29/2017) |
| 01/02/2018 | | | MINUTE ORDER: The Court GRANTS Yankton Sioux Tribe's 314 Motion for Leave to File Surreply and ORDERS that it is deemed filed. So ORDERED by Judge James E. Boasberg on 1/2/18. (lcjeb1) (Entered: 01/02/2018) |
| 01/02/2018 | 316 | | SURREPLY to re 302 Status Report Regarding Remand filed by ROBERT FLYING HAWK, YANKTON SIOUX TRIBE. (znmw) (Entered: 01/03/2018) |
| 01/10/2018 | 317 | | Memorandum in opposition re 292 MOTION for Partial Summary Judgment *and Cross Motion for Partial Summary Judgment* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K, # 13 Exhibit L, # 14 Exhibit M, # 15 Exhibit N, # 16 Exhibit O, # 17 Exhibit P, # 18 Exhibit Q, # 19 Exhibit R, # 20 Exhibit S, # 21 Exhibit T, # 22 Exhibit U, # 23 Exhibit V, # 24 Exhibit W, # 25 Exhibit X, # 26 Exhibit Y, # 27 Exhibit Z, # 28 Exhibit AA)(Marinelli, Matthew) Modified event title on 1/11/2018 (znmw). (Entered: 01/10/2018) |
| 01/10/2018 | 318 | | NOTICE *of Joinder in Cross–Motion* by DAKOTA ACCESS LLC re 320 Cross MOTION for Partial Summary Judgment. (Scherman, William) Modified link on 1/11/2018 (znmw). (Entered: 01/10/2018) |
| 01/10/2018 | 319 | | Memorandum in opposition re 292 MOTION for Partial Summary Judgment filed by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit, # 2 Text of Proposed Order)(Scherman, William) Modified event title on 1/11/2018 (znmw). (Entered: 01/10/2018) |
| 01/10/2018 | 320 | | Cross MOTION for Partial Summary Judgment by UNITED STATES ARMY CORPS OF ENGINEERS. (See Docket Entry 317 to view document). (znmw) (Entered: 01/11/2018) |
| 01/10/2018 | 321 | | Cross MOTION for Partial Summary Judgment by DAKOTA ACCESS LLC. (See Docket Entry 319 to view document). (znmw) (Entered: 01/11/2018) |
| 01/17/2018 | 322 | | NOTICE by ROBERT FLYING HAWK, YANKTON SIOUX TRIBE (Rasmussen, Jeffrey) (Entered: 01/17/2018) |

| 01/19/2018 | 323 | | Joint MOTION for Extension of Time to File Response/Reply as to 292 MOTION for Partial Summary Judgment by ROBERT FLYING HAWK, YANKTON SIOUX TRIBE (Baker, Jennifer) (Entered: 01/19/2018) |
| 01/22/2018 | | | MINUTE ORDER GRANTING Joint 323 Motion for Extension of Time to File Response/Reply. The Court ORDERS that Plaintiffs' reply/response shall be filed on or before January 26, 2018, and that Defendants' and Intervenor–Defendant's reply shall be filed on or before February 9, 2017. So ORDERED by Judge James E. Boasberg on 1/22/2018. (lcjeb2) (Entered: 01/22/2018) |
| 01/22/2018 | | | Set/Reset Deadlines: Responses due by 1/26/2018. Replies due by 2/9/2018. (znbn) (Entered: 01/22/2018) |
| 01/26/2018 | 324 | | REPLY to opposition to motion re 292 MOTION for Partial Summary Judgment *AND OPPOSITION TO CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT* filed by ROBERT FLYING HAWK, YANKTON SIOUX TRIBE. (Baker, Jennifer) Modified on 1/29/2018 (znmw). (Entered: 01/26/2018) |
| 01/26/2018 | 325 | | Memorandum in opposition to re 320 MOTION for Partial Summary Judgment, 321 MOTION for Partial Summary Judgment filed by ROBERT FLYING HAWK, YANKTON SIOUX TRIBE. (See Docket Entry 324 to view document). (znmw) (Entered: 01/29/2018) |
| 01/30/2018 | | | MINUTE ORDER: As Dakota Access's 216 Motion regarding completion of the administrative record remains outstanding, the Court ORDERS that by March 1, 2018, Dakota Access shall notify the Court whether it will withdraw the Motion, seek a stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 1/30/2018. (lcjeb2) (Entered: 01/30/2018) |
| 01/30/2018 | | | Set/Reset Deadlines: Notice of Intent due by 3/1/2018. (lsj) (Entered: 01/30/2018) |
| 02/01/2018 | 326 | | Second STATUS REPORT *Regarding Remand* by UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 02/01/2018) |
| 02/07/2018 | 327 | | RESPONSE re 326 Status Report *And Request for Meaningful Consultation on Remand* filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Declaration Ducheneaux Declaration)(Ducheneaux, Nicole) (Entered: 02/07/2018) |
| 02/07/2018 | 328 | | MOTION to Compel *Meaningful Consultation on Remand* by CHEYENNE RIVER SIOUX TRIBE. (See Docket Entry 327 to view document). (znmw) (Entered: 02/08/2018) |
| 02/09/2018 | 329 | | REPLY to opposition to motion re 320 MOTION for Partial Summary Judgment filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 02/09/2018) |
| 02/09/2018 | 330 | | REPLY to opposition to motion re 321 MOTION for Partial Summary Judgment filed by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit)(Scherman, William) (Entered: 02/09/2018) |
| 02/20/2018 | 331 | | |

| | | | |
|---|---|---|---|
| | | | Joint MOTION to Stay re 328 MOTION to Compel by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Text of Proposed Order)(Marinelli, Matthew) (Entered: 02/20/2018) |
| 02/20/2018 | | | MINUTE ORDER GRANTING 331 Motion to Stay Deadline to Respond. The Court ORDERS that the deadline for Federal Defendants and Dakota Access to respond to Cheyenne River's 328 Motion is STAYED. The parties shall submit a proposal for further briefing on the consultation motion(s) on or before February 23, 2018. So ORDERED by Judge James E. Boasberg on 2/20/2018. (lcjeb2) (Entered: 02/20/2018) |
| 02/20/2018 | | | Set/Reset Deadlines: Proposed Further Briefing Schedule due by 2/23/2018 (lsj) (Entered: 02/20/2018) |
| 02/23/2018 | 332 | | Joint MOTION for Briefing Schedule by UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben) (Entered: 02/23/2018) |
| 02/26/2018 | | | MINUTE ORDER ADOPTING the parties' 332 Motion for Briefing Schedule. The Court ORDERS that (1) Plaintiff Standing Rock shall file any motion related to the remand process on or before March 2, 2018; (2) Defendants shall file any opposition to the Standing Rock/Cheyenne River motions fourteen days after Standing Rock's filing; and (3)Plaintiffs shall file any reply seven days after Defendants' opposition. So ORDERED by Judge James E. Boasberg on 2/26/18.(lcjeb1) (Entered: 02/26/2018) |
| 02/27/2018 | 333 | | MOTION to Withdraw as Attorney *Removal of Counsel of Record* by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Ducheneaux, Nicole) Modified event title on 2/28/2018 (znmw). (Entered: 02/27/2018) |
| 02/28/2018 | | | MINUTE ORDER GRANTING 333 Motion for Removal of Counsel. The Court ORDERS that Intervenor–Plaintiff Cheyenne River Sioux Tribe's Notice of and Motion for Removal of Counsel of Record Conly Schulte is hereby GRANTED. So ORDERED by Judge James E. Boasberg on 2/28/2018. (lcjeb2) (Entered: 02/28/2018) |
| 02/28/2018 | 334 | | Second STATUS REPORT by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 02/28/2018) |
| 03/01/2018 | 335 | | MOTION to Stay re 216 MOTION to Compel *Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 03/01/2018) |
| 03/02/2018 | | | MINUTE ORDER GRANTING 335 Motion to Stay. The Court ORDERS that Intervenor Defendant Dakota Access, LLCs motion to stay resolution of its 216 Motion to Compel Prompt Completion of the Administrative Record is GRANTED and that Dakota Access shall, on or before March 31, 2018, inform the Court as to whether it will withdraw the Motion to Compel, seek a further stay of the Motion, or ask for its resolution. So ORDERED by Judge James E. Boasberg on 3/2/2018. (lcjeb2) (Entered: 03/02/2018) |
| 03/02/2018 | | | Set/Reset Deadlines: Status Report due by 3/31/2018 (lsj) (Entered: 03/02/2018) |
| 03/02/2018 | 336 | | MOTION to Clarify*Remand Process and Remand Conditions* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Declaration of Jan Hasselman, # 2 |

| | | | |
|---|---|---|---|
| | | | Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10)(Hasselman, Jan) (Entered: 03/02/2018) |
| 03/05/2018 | | | MINUTE ORDER staying 216 Motion to Compel. So ORDERED by Judge James E. Boasberg on 3/5/18, by the Minute Order filed on 3/2/2018. (nbn) (Entered: 03/05/2018) |
| 03/16/2018 | 337 | | RESPONSE re 328 MOTION to Compel, 336 MOTION to Clarify*Remand Process and Remand Conditions* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit)(Schifman, Reuben) (Entered: 03/16/2018) |
| 03/16/2018 | 338 | | NOTICE *Regarding Remand Schedule* by UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben) (Entered: 03/16/2018) |
| 03/16/2018 | 339 | | Memorandum in opposition to re 328 MOTION to Compel, 336 MOTION to Clarify*Remand Process and Remand Conditions* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Affidavit Mintner Declaration, # 2 Affidavit Borkland Declaration, # 3 Affidavit Frey Declaration, # 4 Affidavit Nardozzi Declaration, # 5 Affidavit Scherman Declaration, # 6 Affidavit Siguaw Declaration, # 7 Text of Proposed Order Proposed Order)(Scherman, William) (Entered: 03/16/2018) |
| 03/19/2018 | 340 | | ORDER DENYING 292 Yankton Sioux Tribe's Motion for Partial Summary Judgment; GRANTING 320 U.S. Army Corps of Engineers' Cross–Motion for Partial Summary Judgment; GRANTING 321 Dakota Access LLC's Cross–Motion for Partial Summary Judgment; and ENTERING JUDGMENT in favor of Defendants as to Count One and the NHPA and NEPA claims of Yankton Sioux Tribe's Complaint. Signed by Judge James E. Boasberg on 3/19/2018. (lcjeb2) (Entered: 03/19/2018) |
| 03/19/2018 | 341 | | MEMORANDUM OPINION re 340 Order on Motion for Partial Summary Judgment. Signed by Judge James E. Boasberg on 3/19/2018. (lcjeb2) (Entered: 03/19/2018) |
| 03/23/2018 | 342 | | REPLY to opposition to motion re 336 MOTION to Clarify*Remand Process and Remand Conditions Reply in Support of Motion for Clarification Re Remand Process and Remand Conditions* filed by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Declaration Second Declaration of Donald Holmstrom, # 2 Declaration Second Declaration of Jan Hasselman)(Hasselman, Jan) (Entered: 03/23/2018) |
| 03/23/2018 | 343 | | REPLY to opposition to motion re 328 MOTION to Compel *Meaningful Consultation* filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Declaration of Nicole Ducheneaux)(Ducheneaux, Nicole) (Entered: 03/23/2018) |
| 03/29/2018 | 344 | | MOTION for Leave to File *Motion to File and Consider Declaration Out of Time* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Exhibit Exhibit A – Declaration of Mike Faith, Jr., # 2 Text of Proposed Order Proposed Order)(Hasselman, Jan) (Entered: 03/29/2018) |
| 03/30/2018 | 345 | | |

| | | |
|---|---|---|
| | | MOTION to Stay re Order on Motion to Stay, *Resolution of Motion to Compel Completion of Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 03/30/2018) |
| 04/02/2018 | | MINUTE ORDER GRANTING 344 Motion for Leave to File. The Court ORDERS that the Clerk's Office will enter as filed the attached Declaration of Chairman Mike Faith, Jr. and related documents. So ORDERED by Judge James E. Boasberg on 4/2/2018. (lcjeb2) (Entered: 04/02/2018) |
| 04/02/2018 | 346 | ENTERED IN ERROR..... STATUS REPORT by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit)(Scherman, William) Modified on 4/3/2018 (znmw). (Entered: 04/02/2018) |
| 04/02/2018 | 347 | ENTERED IN ERROR..... STATUS REPORT by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit, # 2 Exhibit)(Scherman, William) Modified on 4/3/2018 (znmw). (Entered: 04/02/2018) |
| 04/02/2018 | 348 | STATUS REPORT by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit)(Marinelli, Matthew) (Entered: 04/02/2018) |
| 04/02/2018 | 351 | Declaration of Mike Faith, Jr., by STANDING ROCK SIOUX TRIBE. (td) (Entered: 04/04/2018) |
| 04/03/2018 | | NOTICE OF ERROR re 346 Status Report; emailed to wscherman@gibsondunn.com, cc'd 88 associated attorneys –– The PDF file you docketed contained errors: 1. Please refile document, 2. ENTERED IN ERROR; Incorrect format (letter); Refile in proper pleading/brief format in accordance with Local Rules. (znmw, ) (Entered: 04/03/2018) |
| 04/03/2018 | | NOTICE OF ERROR re 347 Status Report; emailed to wscherman@gibsondunn.com, cc'd 88 associated attorneys –– The PDF file you docketed contained errors: 1. Please refile document, 2. ENTERED IN ERROR; Incorrect format (letter); Refile in proper pleading/brief format in accordance with Local Rules. (znmw, ) (Entered: 04/03/2018) |
| 04/03/2018 | 349 | STATUS REPORT by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit, # 2 Exhibit)(Scherman, William) (Entered: 04/03/2018) |
| 04/03/2018 | 350 | STATUS REPORT by DAKOTA ACCESS LLC. (Attachments: # 1 Exhibit)(Scherman, William) (Entered: 04/03/2018) |
| 04/10/2018 | | MINUTE ORDER GRANTING 345 Motion to Stay Resolution of 216 Motion to Compel Completion of Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by May 2, 2018, as to whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 4/10/2018. (lcjeb2) Modified on 4/10/2018 (zlsj). (Entered: 04/10/2018) |
| 04/10/2018 | | Set/Reset Deadlines: Dakota Access LLC's Status Report due by 5/2/2018 (lsj) Modified on 4/11/2018 (zlsj). (Entered: 04/10/2018) |
| 04/16/2018 | 352 | ORDER DENYING 328 Motion to Compel and 336 Motion to Clarify. Signed by Judge James E. Boasberg on 4/16/2018. (lcjeb2) (Entered: 04/16/2018) |
| 04/30/2018 | 353 | |

| | | | |
|---|---|---|---|
| | | | Third STATUS REPORT *Regarding Pipeline Conditions at Lake Oahe* by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 04/30/2018) |
| 05/02/2018 | 354 | | MOTION to Stay *Resolution of 216 Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 05/02/2018) |
| 05/02/2018 | | | MINUTE ORDER GRANTING 354 Motion to Extend Stay Resolution of 216 Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by May 31, 2018, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 5/2/2018. (lcjeb2) (Entered: 05/02/2018) |
| 05/02/2018 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 5/31/2018. (znbn) (Entered: 05/02/2018) |
| 05/02/2018 | 355 | | STATUS REPORT by UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 05/02/2018) |
| 05/03/2018 | | | MINUTE ORDER: Per the United States Army Corps of Engineers 355 Status Report, the Court ORDERS that the Corps provide the Court with a status report on or before June 8, 2018, identifying the specific date on which the Corps expects to complete the remand process. So ORDERED by Judge James E. Boasberg on 5/3/2018. (lcjeb2) (Entered: 05/03/2018) |
| 05/31/2018 | 356 | | MOTION to Extend Stay *Resolution of 216 Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) Modified text on 5/31/2018 (ztd). (Entered: 05/31/2018) |
| 06/04/2018 | | | MINUTE ORDER GRANTING 356 Motion to Stay 216 Motion to Compel Completion of Administrative Record. The Court ORDERS that Dakota Access, LLC, shall update the Court by July 2, 2018, as to whether it will withdraw the 216 Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 6/4/2018. (lcjeb2) (Entered: 06/04/2018) |
| 06/04/2018 | | | Set/Reset Deadlines: Dakota Access, LLC, shall update the Court by 7/2/2018. (znbn) (Entered: 06/04/2018) |
| 06/08/2018 | 357 | | STATUS REPORT *Regarding Remand* by UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 06/08/2018) |
| 06/29/2018 | 358 | | STATUS REPORT *Regarding Pipeline Conditions at Lake Oahe* by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 06/29/2018) |
| 07/02/2018 | 359 | | MOTION to Stay *Resolution of 216 Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 07/02/2018) |
| 07/03/2018 | | | MINUTE ORDER GRANTING 359 Motion to Stay Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by August 1, 2018 as to whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge |

| | | | |
|---|---|---|---|
| | | | James E. Boasberg on 7/3/2018. (lcjeb2) (Entered: 07/03/2018) |
| 07/03/2018 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 8/1/2018, as to whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. (znbn) (Entered: 07/03/2018) |
| 08/01/2018 | 360 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 08/01/2018) |
| 08/02/2018 | | | MINUTE ORDER GRANTING 360 Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by September 3, 2018, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 8/2/2018. (lcjeb2) (Entered: 08/02/2018) |
| 08/02/2018 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 9/3/2018, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. (znbn) (Entered: 08/02/2018) |
| 08/07/2018 | 361 | | STATUS REPORT *Regarding Remand* by UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 08/07/2018) |
| 08/31/2018 | 362 | | STATUS REPORT *Regarding Remand* by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit)(Brar, Amarveer) (Entered: 08/31/2018) |
| 09/10/2018 | 363 | | MOTION to Extend Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William); Modified text on 9/14/2018 (tth). (Entered: 09/10/2018) |
| 09/10/2018 | | | MINUTE ORDER GRANTING 363 Motion to Stay Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by October 10, 2018, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 9/10/2018. (lcjeb1) (Entered: 09/10/2018) |
| 09/10/2018 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it by 10/10/2018. (znbn) (Entered: 09/11/2018) |
| 10/01/2018 | 364 | | Joint STATUS REPORT by CHEYENNE RIVER SIOUX TRIBE. (Ducheneaux, Nicole) (Entered: 10/01/2018) |
| 10/02/2018 | | | MINUTE ORDER ADOPTING 364 Joint Status Report. The Court ORDERS that (1) any party wishing to include additional redactions or seeking to prohibit redactions shall either reach agreement with the other parties or file a protective order within ten days of receiving the document; any Opposition shall be due within fourteen days; and any Reply three days after that; and (2) the parties shall file proposals for post–remand proceedings on or before November 1, 2018. So ORDERED by Judge James E. Boasberg on 10/2/2018. (lcjeb1) (Entered: 10/02/2018) |

| 10/02/2018 | | | Set/Reset Deadlines: The parties shall file proposals for post−remand proceedings on or before due by 11/1/2018. (znbn) (Entered: 10/03/2018) |
| 10/10/2018 | 365 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 10/10/2018) |
| 10/10/2018 | | | MINUTE ORDER GRANTING 365 Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by November 12, 2018, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 10/10/2018. (lcjeb1) (Entered: 10/10/2018) |
| 10/10/2018 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 11/12/2018. (znbn) (Entered: 10/10/2018) |
| 10/30/2018 | 366 | | MOTION for Extension of Time to *FILE A PROPOSAL FOR POST−REMAND PROCEEDINGS* by OGLALA SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Roy, Michael) (Entered: 10/30/2018) |
| 10/30/2018 | 367 | | Memorandum in opposition to re 366 MOTION for Extension of Time to *FILE A PROPOSAL FOR POST−REMAND PROCEEDINGS* filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 10/30/2018) |
| 10/30/2018 | 368 | | MOTION for Extension of Time to *File a Proposal for Post−Remand Proceeding* by YANKTON SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Baker, Jennifer) (Entered: 10/30/2018) |
| 10/30/2018 | | | MINUTE ORDER: The Court ORDERS that Plaintiff Oglala Sioux's 366 Motion for Extension and Plaintiff Yankton Sioux's 368 Motion for Extension are GRANTED IN PART, and they shall file their proposals by November 6, 2018. So ORDERED by Judge James E. Boasberg on 10/30/2018. (lcjeb1) (Entered: 10/30/2018) |
| 10/30/2018 | 369 | | MOTION for Extension of Time to File *Post−Remand Proceedings* by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 10/30/2018) |
| 10/30/2018 | 370 | | RESPONSE re 369 MOTION for Extension of Time to File *Post−Remand Proceedings* filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 10/30/2018) |
| 10/31/2018 | | | MINUTE ORDER GRANTING 369 Motion for Extension of Time to File. The Court ORDERS that Plaintiff−Intervenor Cheyenne River Sioux Tribe shall file its proposal for post−remand proceedings by November 6, 2018. So ORDERED by Judge James E. Boasberg on 10/31/2018. (lcjeb1) (Entered: 10/31/2018) |
| 10/31/2018 | | | MINUTE ORDER: The Court ORDERS that all parties may have until November 6, 2018, to set forth their positions on post−remand scheduling. So ORDERED by Judge James E. Boasberg on 10/31/2018. (lcjeb1) (Entered: 10/31/2018) |
| 10/31/2018 | | | |

| | | | |
|---|---|---|---|
| | | | Set/Reset Deadlines: Positions on post–remand scheduling due by 11/6/2018. (znbn) (Entered: 10/31/2018) |
| 11/01/2018 | 371 | | MOTION for Leave to File *Supplemental Complaint* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Supplement Complaint, # 2 Text of Proposed Order)(Hasselman, Jan) (Entered: 11/01/2018) |
| 11/01/2018 | 372 | | STATUS REPORT by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 11/01/2018) |
| 11/06/2018 | 373 | | Joint STATUS REPORT by UNITED STATES ARMY CORPS OF ENGINEERS. (Schifman, Reuben) (Entered: 11/06/2018) |
| 11/06/2018 | 374 | | Joint STATUS REPORT *for Post–Remand Scheduling* by CHEYENNE RIVER SIOUX TRIBE, STEVE VANCE. (Messineo, Joseph) (Entered: 11/06/2018) |
| 11/07/2018 | | | MINUTE ORDER: The Court ORDERS that the parties shall appear for a status hearing on November 15, 2018, at 11:00 a.m. to discuss briefing schedules. Parties wishing to appear telephonically shall inform chambers at least 24 hours in advance. So ORDERED by Judge James E. Boasberg on 11/7/2018. (lcjeb1) (Entered: 11/07/2018) |
| 11/07/2018 | | | Set/Reset Hearings: Status Conference set for 11/15/2018 at 11:00 AM in Courtroom 25 before Judge James E. Boasberg. (znbn) (Entered: 11/07/2018) |
| 11/12/2018 | 375 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 11/12/2018) |
| 11/13/2018 | | | MINUTE ORDER GRANTING 375 Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by December 12, 2018, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 11/13/2018. (lcjeb1) (Entered: 11/13/2018) |
| 11/13/2018 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 12/12/2018. (znbn) (Entered: 11/14/2018) |
| 11/15/2018 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 11/15/2018. A further Status Conference is set for 12/12/2018 at 11:00 AM in Courtroom 25A before Judge James E. Boasberg. (Order forthcoming.) (Court Reporter Lisa Griffith.) (hmc) (Entered: 11/15/2018) |
| 11/15/2018 | | | MINUTE ORDER: As discussed at today's status hearing, the Court ORDERS that: 1) Any motions to amend or supplement a complaint shall be filed by November 26, 2018; 2) By December 6, 2018, the parties shall submit a joint status report: a) that proposes how supplemental/amended complaints should be handled; b) in which Plaintiffs shall identify each claim they intend on continuing to pursue and for each such claim, the parties shall identify whether they will agree to convert a preliminary ruling of the Court on the claim into a judgment or whether they will include this claim in further summary–judgment briefing; and c) that proposes a briefing schedule moving forward, assuming that only one round of summary–judgment briefing will be |

| | | | |
|---|---|---|---|
| | | | permitted; 3) The parties shall return for a further status hearing on December 12, 2018, at 11:00 a.m.; and 4) The Government shall lodge the Administrative Record by January 31, 2019. So ORDERED by Judge James E. Boasberg on 11/15/2018. (lcjeb1) (Entered: 11/15/2018) |
| 11/15/2018 | | | Set/Reset Deadlines/Hearings: Amended Pleadings due by 11/26/2018. Joint Status Report due by 12/6/2018. Status Conference set for 12/12/2018 at 11:00 AM in Courtroom 25A before Judge James E. Boasberg. Administrative Record due by 1/31/2019. (znbn) (Entered: 11/15/2018) |
| 11/26/2018 | 376 | | MOTION for Leave to File *Amended Complaint* by OGLALA SIOUX TRIBE (Attachments: # 1 [Proposed]First Amended Complaint, # 2 Text of Proposed Order)(Roy, Michael) (Entered: 11/26/2018) |
| 11/26/2018 | 377 | | MOTION for Leave to File *Supplemental Complaint* by OGLALA SIOUX TRIBE (Attachments: # 1 [Proposed] Supplemental Complaint, # 2 Text of Proposed Order)(Roy, Michael) (Entered: 11/26/2018) |
| 11/26/2018 | 378 | | MOTION for Leave to File *Supplemental Complaint* by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Exhibit Supplemental Complaint, # 2 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 11/26/2018) |
| 11/26/2018 | 379 | | MOTION for Leave to File Amended Complaint against U.S. ARMY CORPS OF ENGINEERS filed by YANKTON SIOUX TRIBE. (Attachments: # 1 Supplement Supplemental Complaint, # 2 Text of Proposed Order Proposed Order)(Baker, Jennifer) Modified on 11/29/2018 to correct docket event/text (jf). (Entered: 11/26/2018) |
| 12/06/2018 | 380 | | Joint STATUS REPORT by UNITED STATES ARMY CORPS OF ENGINEERS. (Schifman, Reuben) (Entered: 12/06/2018) |
| 12/11/2018 | 381 | | Supplemental STATUS REPORT by CHEYENNE RIVER SIOUX TRIBE, OGLALA SIOUX TRIBE, STANDING ROCK SIOUX TRIBE, YANKTON SIOUX TRIBE. (Hasselman, Jan) (Entered: 12/11/2018) |
| 12/12/2018 | | | MINUTE ORDER: As discussed at today's status conference, the Court ORDERS that: 1) By consent, judgment is entered in favor of Defendant on Plaintiffs' RFRA claims for the reasons set forth in the Court's preliminary–injunction denial; 2) Plaintiffs may argue in their summary–judgment briefing that their NHPA claims are not moot; 3) If any Plaintiff seeks to pursue any other claim (beyond NHPA) not related to the remand, it must identify such claim in a filing by December 19, 2018, or such clam will be dismissed; 4) If Plaintiffs do not withdraw their Motions to Supplement or Amend, Defendants must file an opposition (or notice of non–opposition) by December 21, 2018, with replies due by January 2, 2019; 5) The Administrative Record shall be lodged by January 31, 2019; 6) Any party shall file any challenge to the completeness of the AR by February 15, 2019, with oppositions due by February 25, 2019, and replies by March 1, 2019; 7) In such challenge a party may seek the inclusion of extra–record material, but failure to do so will not bar that party from citing such material in its summary–judgment briefs, which citation may be opposed; 8) If no challenge is filed to the completeness of the AR, the parties shall submit a joint proposed briefing schedule for summary judgment by February 22, 2019; 9) If a challenge is filed, the parties shall submit such proposal within seven days of the Court's ruling on the challenge; and 10) All answers shall be held |

| | | | |
|---|---|---|---|
| | | | in abeyance pending further Order of the Court. So ORDERED by Judge James E. Boasberg on 12/12/2018. (lcjeb1) (Entered: 12/12/2018) |
| 12/12/2018 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 12/12/2018. See Order for details. (Court Reporter Lisa Griffith) (nbn) (Entered: 12/12/2018) |
| 12/12/2018 | 382 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 11–15–18; Page Numbers: 1–22. Date of Issuance:12–12–18. Court Reporter/Transcriber Lisa Griffith, Telephone number (202) 354–3247, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above . After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 1/2/2019. Redacted Transcript Deadline set for 1/12/2019. Release of Transcript Restriction set for 3/12/2019.(Griffith, Lisa) (Entered: 12/12/2018) |
| 12/12/2018 | 383 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 12/12/2018) |
| 12/12/2018 | | | MINUTE ORDER GRANTING 383 Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by January 14, 2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 12/12/2018. (lcjeb1) (Entered: 12/12/2018) |
| 12/12/2018 | | | Set/Reset Deadlines: Proposed Briefing Schedule due by 2/22/2019. Responses due by 12/21/2018. Replies due by 1/2/2019. Administrative Record due by 1/31/2019. (znbn) (Entered: 12/14/2018) |
| 12/12/2018 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 1/14/2019. (znbn) (Entered: 12/14/2018) |
| 12/19/2018 | 384 | | Unopposed MOTION to Amend/Correct 235 Protective Order, Order on Motion for Protective Order by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit A – Proposed Second Revised Protective Order)(Collins, Brian) (Entered: 12/19/2018) |
| 12/19/2018 | 385 | | NOTICE *REGARDING NON–REMAND CLAIMS* by OGLALA SIOUX TRIBE re Order,,,,,, (Roy, Michael) (Entered: 12/19/2018) |

| 12/19/2018 | 386 | | NOTICE *REGARDING IDENTIFICATION OF CLAIMS* by YANKTON SIOUX TRIBE (Baker, Jennifer) (Entered: 12/19/2018) |
|---|---|---|---|
| 12/21/2018 | 387 | | RESPONSE re 376 MOTION for Leave to File *Amended Complaint* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Brar, Amarveer) (Entered: 12/21/2018) |
| 12/21/2018 | 388 | | Memorandum in opposition to re 376 MOTION for Leave to File *Amended Complaint* filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 12/21/2018) |
| 12/21/2018 | 389 | | RESPONSE re 377 MOTION for Leave to File *Supplemental Complaint*, 378 MOTION for Leave to File *Supplemental Complaint*, 371 MOTION for Leave to File *Supplemental Complaint*, 379 MOTION for Leave to File *Supplemental Complaint* filed by DAKOTA ACCESS LLC, UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 12/21/2018) |
| 12/26/2018 | 390 | | ORDER GRANTING Unopposed 384 Motion to Amend Protective Order. Signed by Judge James E. Boasberg on 12/26/2018. (lcjeb1) (Entered: 12/26/2018) |
| 01/02/2019 | 391 | | REPLY to opposition to motion re 376 MOTION for Leave to File *Amended Complaint* filed by OGLALA SIOUX TRIBE. (Attachments: # 1 Exhibit A)(Roy, Michael) (Entered: 01/02/2019) |
| 01/03/2019 | | | MINUTE ORDER: As agreed by the parties, the Court ORDERS that Plaintiffs' [371, 377–79] Motions to Supplement are GRANTED, and the [371–1, 377–1, 378–1, 379–1] proposed Supplemental Complaints are deemed FILED. Such Order is without prejudice for Defendants to subsequently argue that such supplementation exceeded the scope of FRCP 15(d) or the topics in the Court's remand Order. So ORDERED by Judge James E. Boasberg on 1/3/2019. (lcjeb1) (Entered: 01/03/2019) |
| 01/10/2019 | 392 | | MEMORANDUM OPINION AND ORDER DENYING 376 Motion to Amend. Signed by Judge James E. Boasberg on 1/10/2019. (lcjeb1) (Entered: 01/10/2019) |
| 01/14/2019 | 393 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 01/14/2019) |
| 01/15/2019 | | | MINUTE ORDER GRANTING 393 Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by February 14, 2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 1/15/2019. (lcjeb1) (Entered: 01/15/2019) |
| 01/15/2019 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 2/14/2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it (znbn) (Entered: 01/17/2019) |
| 01/17/2019 | 394 | | WITHDRAWN PURSUANT TO NOTICE FILED ON 1/28/2019..... MOTION to Stay *due to lapse in appropriations* by UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben); Modified text on |

| | | | |
|---|---|---|---|
| | | | 1/29/2019 (tth). (Entered: 01/17/2019) |
| 01/17/2019 | 395 | | RESPONSE re 394 MOTION to Stay *due to lapse in appropriations* filed by CHEYENNE RIVER SIOUX TRIBE. (Ducheneaux, Nicole) (Entered: 01/17/2019) |
| 01/22/2019 | | | MINUTE ORDER: Should any other Plaintiff oppose Defendant Corps' 394 Motion to Stay, the Court ORDERS that any opposition must be filed by January 24, 2019, with any Corps reply due by January 28, 2019. So ORDERED by Judge James E. Boasberg on 1/22/2019. (lcjeb3) (Entered: 01/22/2019) |
| 01/22/2019 | | | Set/Reset Deadlines: Opposition due by 1/24/2019. Reply due by 1/28/2019. (znbn) (Entered: 01/24/2019) |
| 01/28/2019 | 396 | | MOTION to Withdraw 394 MOTION to Stay *due to lapse in appropriations* by UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben) (Entered: 01/28/2019) |
| 01/29/2019 | | | MINUTE ORDER: The Court ORDERS that Defendant's 396 Motion to Withdraw is GRANTED, and its 394 Motion to Stay is WITHDRAWN. So ORDERED by Judge James E. Boasberg on 1/29/2019. (lcjeb1) (Entered: 01/29/2019) |
| 01/31/2019 | 397 | | Unopposed MOTION to Modify *Schedule* by UNITED STATES ARMY CORPS OF ENGINEERS (Schifman, Reuben) (Entered: 01/31/2019) |
| 01/31/2019 | | | MINUTE ORDER: The Court ORDERS that Federal Defendants' Consent 397 Motion to Modify Schedule is GRANTED and that the following schedule shall govern proceedings: 1) Federal Defendants shall lodge the Administrative Record by February 4, 2019; 2) Any party shall file any challenge to the completeness of the Administrative Record by February 18, 2019; 3) Oppositions are due by February 28, 2019; 4) Replies are due by March 6, 2019; 5) If no challenge is filed to the completeness of the Administrative Record, the parties shall submit a joint proposed briefing schedule for summary judgment by February 25, 2019; and 6) If a challenge is filed, the parties shall submit such proposal within seven days of the Court's ruling on the challenge. So ORDERED by Judge James E. Boasberg on 1/31/2019. (lcjeb3) (Entered: 01/31/2019) |
| 01/31/2019 | | | Set/Reset Deadlines: Federal Defendants Administrative Record due by 2/4/2019. Any party shall file any challenge to the completeness of the Administrative Record by 2/18/2019. Responses due by 2/28/2019 Replies due by 3/6/2019. If no challenge is filed to the completeness of the Administrative Record, the parties shall submit a Joint Proposed Briefing Schedule for summary judgment by 2/25/2019. (znbn) (Entered: 02/01/2019) |
| 02/04/2019 | 398 | | NOTICE *of service of the administrative record* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit)(Schifman, Reuben) (Entered: 02/04/2019) |
| 02/14/2019 | 399 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 02/14/2019) |
| 02/14/2019 | 400 | | |

| | | | |
|---|---|---|---|
| | | | MOTION to Modify *Schedule* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Text of Proposed Order Proposed Order Granting Motion to ModifySchedule)(Hasselman, Jan) (Entered: 02/14/2019) |
| 02/14/2019 | | | MINUTE ORDER GRANTING 400 Motion to Modify Schedule. The Court ORDERS that the following schedule shall govern proceedings: 1) Any party shall file any challenge to the completeness of the Administrative Record by February 27, 2019; 2) Oppositions are due by March 11, 2019; 3) Replies are due by March 18, 2019; 4) If no challenge is filed to the completeness of the Administrative Record, the parties shall submit a joint proposed briefing schedule for summary judgment by March 6, 2019; and 5) If a challenge is filed, the parties shall submit such proposal within seven days of the Court's ruling on the challenge. So ORDERED by Judge James E. Boasberg on 2/14/2019. (lcjeb2) (Entered: 02/14/2019) |
| 02/14/2019 | | | Set/Reset Deadlines: Any party shall file any challenge to the completeness of the Administrative Record by 2/27/2019. Joint Proposed Briefing Schedule due by 3/6/2019. Responses due by 3/11/2019. Replies due by 3/18/2019. (znbn) (Entered: 02/15/2019) |
| 02/15/2019 | | | MINUTE ORDER GRANTING 399 Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by March 14, 2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 2/15/2019. (lcjeb1) (Entered: 02/15/2019) |
| 02/15/2019 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 3/14/2019 whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. (znbn) (Entered: 02/15/2019) |
| 02/27/2019 | 401 | | MOTION To Complete Administrative Record by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Declaration Declaration of Jan Hasselman in Support of Motion to Complete Administrative Record, # 2 Exhibit Exhibit 1 to Declaration of Jan Hasselman, # 3 Exhibit Exhibit 2 to Declaration of Jan Hasselman, # 4 Text of Proposed Order Proposed Order Granting Motion to Complete Administrative Record)(Hasselman, Jan) (Entered: 02/27/2019) |
| 03/11/2019 | 402 | | RESPONSE re 401 MOTION To Complete Administrative Record filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit 1)(Brar, Amarveer) (Entered: 03/11/2019) |
| 03/11/2019 | 403 | | Memorandum in opposition to re 401 MOTION To Complete Administrative Record filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/11/2019) |
| 03/14/2019 | 404 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 03/14/2019) |
| 03/14/2019 | | | MINUTE ORDER GRANTING 404 Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by April 15, 2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg |

| | | | |
|---|---|---|---|
| | | | on 3/14/2019. (lcjeb1) (Entered: 03/14/2019) |
| 03/14/2019 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it by 4/15/2019. (znbn) (Entered: 03/15/2019) |
| 03/18/2019 | 405 | | REPLY to opposition to motion re 401 MOTION To Complete Administrative Record filed by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 03/18/2019) |
| 03/22/2019 | 406 | | JOINT APPENDIX *OF REMAND ANALYSIS RECORD* by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 03/22/2019) |
| 03/22/2019 | 407 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by STANDING ROCK SIOUX TRIBE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A–1, # 2 Exhibit A–2, # 3 Exhibit A–3, # 4 Exhibit A–4, # 5 Exhibit A–5, # 6 Exhibit A–6_Part 1, # 7 Exhibit A–6_Part 2, # 8 Exhibit A–7, # 9 Exhibit A–8, # 10 Exhibit A–9, # 11 Exhibit A–10_Part 1, # 12 Exhibit A–10_Part 2, # 13 Exhibit A–11, # 14 Exhibit A–12, # 15 Exhibit A–13, # 16 Exhibit A–14, # 17 Exhibit A–15, # 18 Exhibit A–16, # 19 Exhibit A–17, # 20 Exhibit A–18_Part 1, # 21 Exhibit A–18_Part 2, # 22 Exhibit A–19, # 23 Exhibit A–20, # 24 Exhibit A–21, # 25 Exhibit A–22, # 26 Text of Proposed Order)(Hasselman, Jan) (Entered: 03/22/2019) |
| 03/25/2019 | 408 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to DAKOTA ACCESS LLC. Attorney Alan M. Glen terminated. (Attachments: # 1 Declaration of Kimberly H. Caine on behalf of Dakota Access, LLC Consenting to Withdrawal of Counsel)(Glen, Alan) (Entered: 03/25/2019) |
| 03/25/2019 | 409 | | SEALED DOCUMENT Exhibits A–1 through A–22 filed by STANDING ROCK SIOUX TRIBE. (See Docket Entry 407 to view documents.) (This document is SEALED and only available to authorized persons.) (ztth) (Entered: 03/26/2019) |
| 04/04/2019 | 410 | | NOTICE *OF CHANGE OF FIRM NAME* by YANKTON SIOUX TRIBE (Baker, Jennifer) (Entered: 04/04/2019) |
| 04/15/2019 | 411 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 04/15/2019) |
| 04/15/2019 | 412 | | NOTICE of Change of Address by Nicole E. Ducheneaux (Ducheneaux, Nicole) (Entered: 04/15/2019) |
| 04/15/2019 | 413 | | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Tracey A. Zephier, :Firm– Cheyenne River Sioux Tribe Attorney General, :Address– PO Box 590, Eagle Butte, SD 57625. Phone No. – 605–964–6686. Fax No. – 605–964–1160 Filing fee $ 100, receipt number 0090–6060857. Fee Status: Fee Paid. by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(Ducheneaux, Nicole) (Entered: 04/15/2019) |
| 04/15/2019 | | | MINUTE ORDER GRANTING 413 Motion for Admission *Pro Hac Vice* of TRACEY A. ZEPHIER. So ORDERED by Judge James E. Boasberg on 4/15/2019. (lcjeb1) (Entered: 04/15/2019) |

| 04/15/2019 | | | MINUTE ORDER GRANTING 411 Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by May 20, 2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 4/15/2019. (lcjeb1) (Entered: 04/15/2019) |
|---|---|---|---|
| 04/15/2019 | 414 | | NOTICE of Appearance by Patricia Ann Marks on behalf of CHEYENNE RIVER SIOUX TRIBE (Marks, Patricia) (Entered: 04/15/2019) |
| 04/15/2019 | 415 | | NOTICE *OF NAME CHANGE* by CHEYENNE RIVER SIOUX TRIBE (Marks, Patricia) (Entered: 04/15/2019) |
| 04/15/2019 | 416 | | MOTION for Removal of Counsel of Record by Patricia Ann Marks on behalf of CHEYENNE RIVER SIOUX TRIBE, Substituting for attorney Joseph V. Messineo and Nicole E. Ducheneaux (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Marks, Patricia); Modified event and text on 4/17/2019 (tth). (Entered: 04/15/2019) |
| 04/15/2019 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it by 5/20/2019. (znbn) (Entered: 04/16/2019) |
| 04/22/2019 | | | MINUTE ORDER GRANTING 416 Motion for Removal of Counsel of Record. The Court ORDERS that Nicole E. Ducheneaux and Joseph V. Messineo be removed as counsel of record for Intervenor–Plaintiff Cheyenne River Sioux Tribe and removed from all service lists. So ORDERED by Judge James E. Boasberg on 4/22/2019. (lcjeb1) (Entered: 04/22/2019) |
| 05/08/2019 | 417 | | ORDER GRANTING IN PART and DENYING IN PART Plaintiffs' 401 Motion to Complete the Administrative Record. The Court ORDERS that: 1) Plaintiffs shall, within fourteen days, file a Notice containing a list of sources substantively cited in the Remand Analysis to support a factual proposition; 2) Defendant shall, in the fourteen days thereafter, indicate which, if any, of those documents it objects to including in the record; and 3) Defendant shall, within fourteen days, submit an affidavit detailing its legal rationale for the redaction of the as–built drawings and the reasons, if any, that the information could not be revealed to Plaintiffs subject to the protective order. Signed by Judge James E. Boasberg on 5/8/2019. (lcjeb1) (Entered: 05/08/2019) |
| 05/08/2019 | 418 | | MEMORANDUM OPINION re 417 Order on Motion to Complete the Administrative Record. Signed by Judge James E. Boasberg on 5/8/2019. (lcjeb1) (Entered: 05/08/2019) |
| 05/14/2019 | 419 | | NOTICE of Appearance by Nicole E. Ducheneaux on behalf of CHEYENNE RIVER SIOUX TRIBE (Ducheneaux, Nicole) (Main Document 419 replaced on 5/15/2019) (ztth). (Entered: 05/14/2019) |
| 05/14/2019 | 420 | | NOTICE of Appearance by Joseph V. Messineo on behalf of CHEYENNE RIVER SIOUX TRIBE (Messineo, Joseph) (Entered: 05/14/2019) |
| 05/14/2019 | 421 | | MOTION to Strike by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Declaration, # 2 Declaration, # 3 Declaration)(Ducheneaux, Nicole); Modified event and text on 5/15/2019 (tth). (Entered: 05/14/2019) |
| 05/16/2019 | 422 | | |

| | | | |
|---|---|---|---|
| | | | MOTION to Withdraw as Attorney , MOTION to Strike <u>421</u> MOTION to Strike by CHEYENNE RIVER SIOUX TRIBE (Attachments: # <u>1</u> Text of Proposed Order)(Marks, Patricia) (Entered: 05/16/2019) |
| 05/17/2019 | | | MINUTE ORDER: As it appears there is full agreement on representation for the Cheyenne River Sioux Tribe, the Court ORDERS that: 1) The <u>422</u> Motion to Withdraw is GRANTED; and 2) The <u>421</u> Motion to Strike is DENIED as moot. So ORDERED by Judge James E. Boasberg on 5/17/2019. (lcjeb1) (Entered: 05/17/2019) |
| 05/20/2019 | <u>423</u> | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # <u>1</u> Text of Proposed Order)(Scherman, William) (Entered: 05/20/2019) |
| 05/20/2019 | | | MINUTE ORDER GRANTING <u>423</u> Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by June 20, 2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 5/20/2019. (lcjeb1) (Entered: 05/20/2019) |
| 05/20/2019 | | | Set/Reset Deadlines: Status Report due by 6/20/2019 (lsj) (Entered: 05/20/2019) |
| 05/22/2019 | <u>424</u> | | NOTICE *of sources cited in the Remand Analysis for a factual proposition* by OGLALA SIOUX TRIBE (Roy, Michael) (Entered: 05/22/2019) |
| 05/22/2019 | <u>425</u> | | NOTICE *of Filing Pursuant to ECF 417* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # <u>1</u> Exhibit One)(Brar, Amarveer) (Entered: 05/22/2019) |
| 06/05/2019 | | | MINUTE ORDER: In light of the Corps' Notice and particularly paragraph 7 of the Casner Declaration (ECF No. 425−1), the Court ORDERS that the Corps shall provide the unredacted as−built drawings to the parties subject to the protective order. So ORDERED by Judge James E. Boasberg on 6/5/2019. (lcjeb1) (Entered: 06/05/2019) |
| 06/05/2019 | <u>426</u> | | RESPONSE re <u>424</u> Notice (Other) filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Brar, Amarveer) (Entered: 06/05/2019) |
| 06/06/2019 | | | MINUTE ORDER: As Plaintiffs propose (ECF No. 424 at 3 n.2), the Court ORDERS that they may file a response to the Corps' response (ECF 426) by June 7, 2019. So ORDERED by Judge James E. Boasberg on 6/6/2019. (lcjeb1) (Entered: 06/06/2019) |
| 06/06/2019 | | | Set/Reset Deadlines: Responses due by 6/7/2019. (znbn) (Entered: 06/06/2019) |
| 06/07/2019 | <u>427</u> | | RESPONSE re <u>426</u> Response to Document *Plaintiffs' Notice of Additional Documents* filed by OGLALA SIOUX TRIBE. (Roy, Michael) (Entered: 06/07/2019) |
| 06/11/2019 | | | MINUTE ORDER: The parties have narrowed in their notices (ECF Nos. 424, 426, 427) their dispute regarding completion of the record to one category of documents. Per its reasoning on pp. 7−8 of its Memorandum Opinion (ECF No. 418), the Court ORDERS that the documents cited in Table 2−2 of the |

| | | | |
|---|---|---|---|
| | | | Remand Analysis (ECF No. 407, at RAR 12) need not be added to the record. So ORDERED by Judge James E. Boasberg on 6/11/2019. (lcjeb1) (Entered: 06/11/2019) |
| 06/18/2019 | 428 | | STATUS REPORT *AND JOINT PROPOSED BRIEFING SCHEDULE* by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 06/18/2019) |
| 06/19/2019 | | | MINUTE ORDER ADOPTING the parties' 428 Joint Status Report and Proposed Briefing Schedule. The Court ORDERS that: 1) the United States Army Corps of Engineers shall add additional documents to the administrative record by June 26, 2019; 2) Plaintiffs will file motions for summary judgment by August 16, 2019; 3) Defendant and intervenors will file cross–motions for summary judgment and oppositions to Plaintiffs motions by October 9, 2019; 4) Plaintiffs will file their oppositions to the cross–motions and replies in support of their summary judgment motions by October 30, 2019; and 5) Defendant and intervenors will file their replies by November 20, 2019. So ORDERED by Judge James E. Boasberg on 6/19/2019. (lcjeb1) (Entered: 06/19/2019) |
| 06/19/2019 | | | Set/Reset Deadlines: United States Army Corps of Engineers shall add additional documents to the Administrative Record by 6/26/2019. Summary Judgment motions due by 8/16/2019. Response to Motion for Summary Judgment due by 10/9/2019. Cross Motions due by 10/9/2019. Reply to Motion for Summary Judgment due by 10/30/2019. Response to Cross Motions due by 10/30/2019. Reply to Cross Motions due by 11/20/2019. (znbn) (Entered: 06/19/2019) |
| 06/20/2019 | 429 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 06/20/2019) |
| 06/20/2019 | | | MINUTE ORDER GRANTING 429 Motion to Extend Stay of Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by July 22, 2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 6/20/2019. (lcjeb1) (Entered: 06/20/2019) |
| 06/20/2019 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by July 22, 2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it.(znbn) (Entered: 06/21/2019) |
| 06/26/2019 | 430 | | NOTICE *of Addition of Documents to the Remand Administrative Record* by UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Exhibit)(Schifman, Reuben) (Entered: 06/26/2019) |
| 07/09/2019 | 431 | | NOTICE of Change of Address by Michael L. Roy (Roy, Michael) (Entered: 07/09/2019) |
| 07/22/2019 | 432 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 07/22/2019) |
| 07/22/2019 | | | MINUTE ORDER: The Court ORDERS that Defendant–Intervenor Dakota Access's 432 Motion to Extend Stay of Resolution of Motion to Compel |

| | | | |
|---|---|---|---|
| | | | Completion of Administrative Record is GRANTED. The Court further ORDERS that Dakota Access shall update the Court by August 22, 2019, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 7/22/2019. (lcjeb3) (Entered: 07/22/2019) |
| 07/22/2019 | | | Set/Reset Deadlines: Dakota Access shall update the Court whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it by 8/22/2019. (znbn) (Entered: 07/22/2019) |
| 08/16/2019 | 433 | | MOTION for Summary Judgment *on Remand* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Text of Proposed Order Granting Plaintiff Standing Rock Sioux Tribe's Motion for Summary Judgment on Remand, # 2 Memorandum in Support of Standing Rock Sioux Tribe's Motion for Summary Judgment on Remand, # 3 Declaration of Jon Eagle, Sr. in Support of Plaintiff Standing Rock Sioux Tribe's Motion for Summary Judgment on Remand)(Hasselman, Jan) (Entered: 08/16/2019) |
| 08/16/2019 | 434 | | MOTION for Partial Summary Judgment by OGLALA SIOUX TRIBE (Attachments: # 1 Text of Proposed Order granting Oglala Sioux tribe's motion for partial summary judgment, # 2 Memorandum in Support of Oglala Sioux tribe's motion for partial summary judgment, # 3 Declaration of Michael L. Roy in support of Oglala Sioux Tribe's motion for partial summary judgment, # 4 Exhibit A)(Roy, Michael) (Entered: 08/16/2019) |
| 08/16/2019 | | | MINUTE ORDER: The Court ORDERS that no other brief may exceed the page limits set forth in the Local Rules. So ORDERED by Judge James E. Boasberg on 08/16/2019. (lcjeb1) (Entered: 08/16/2019) |
| 08/16/2019 | 435 | | MOTION for Summary Judgment by ROBERT FLYING HAWK, YANKTON SIOUX TRIBE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Baker, Jennifer) (Entered: 08/16/2019) |
| 08/16/2019 | 436 | | MOTION for Summary Judgment by CHEYENNE RIVER SIOUX TRIBE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Ducheneaux, Nicole). Added MOTION for Joinder on 8/19/2019 (tth). (Entered: 08/16/2019) |
| 08/22/2019 | 437 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 08/22/2019) |
| 08/23/2019 | | | MINUTE ORDER GRANTING Defendant's 437 Motion to Stay. The Court ORDERS that Defendant Dakota Access, LLC shall update the Court by September 23, 2019. So ORDERED by Judge James E. Boasberg on 08/23/2019. (lcjeb2) (Entered: 08/23/2019) |
| 08/23/2019 | | | Set/Reset Deadlines: Defendant Dakota Access, LLC shall update the Court by 9/23/2019. (znbn) (Entered: 08/23/2019) |
| 08/23/2019 | 438 | | NOTICE of Appearance by Michael R. Sklaire on behalf of Big Valley Band of Pomo Indians of the Big Valley Rancheria, Confederated Tribes of the Umatilla Indian Reservation, Fort Belknap Indian Community, Hoonah Indian Association, Miccosukee Tribe of Indians of Florida, Nez Perce Tribe, Pascua Yaqui Tribe, Ramapough Lenape Nation, Red Cliff Band of Lake Superior |

| | | | |
|---|---|---|---|
| | | | Chippewa Indians, Rosebud Sioux Tribe, San Carlos Apache Tribe, Seneca Nation, Swinomish Indian Tribal Community, Wampanoag Tribe of Gay Head (Aquinnah) (Sklaire, Michael) (Entered: 08/23/2019) |
| 08/23/2019 | 439 | | MOTION for Leave to File *TO FILE AMICI CURIAE BRIEF* by Big Valley Band of Pomo Indians of the Big Valley Rancheria, Confederated Tribes of the Umatilla Indian Reservation, Fort Belknap Indian Community, Hoonah Indian Association, Miccosukee Tribe of Indians of Florida, Nez Perce Tribe, Pascua Yaqui Tribe, Ramapough Lenape Nation, Red Cliff Band of Lake Superior Chippewa Indians, Rosebud Sioux Tribe, San Carlos Apache Tribe, Seneca Nation, Swinomish Indian Tribal Community, Wampanoag Tribe of Gay Head (Aquinnah) (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Sklaire, Michael) (Entered: 08/23/2019) |
| 08/26/2019 | 440 | | Memorandum in opposition to re 439 MOTION for Leave to File *TO FILE AMICI CURIAE BRIEF* filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 08/26/2019) |
| 08/26/2019 | | | MINUTE ORDER: The Court ORDERS that Amici's 439 Motion is GRANTED, and their Brief is deemed FILED. So ORDERED by Judge James E. Boasberg on 08/26/2019. (lcjeb1) (Entered: 08/26/2019) |
| 08/26/2019 | 441 | | AMICUS BRIEF by BIG VALLEY BAND OF POMO INDIANS OF THE BIG VALLEY RANCHERIA, CONFEDERATED TRIBES OF THE UMATILLA INDIAN RESERVATION, FORT BELKNAP INDIAN COMMUNITY, HOONAH INDIAN ASSOCIATION, MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, NEZ PERCE TRIBE, RAMAPOUGH LENAPE NATION, RED CLIFF BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, ROSEBUD SIOUX TRIBE, SAN CARLOS APACHE TRIBE, SENECA NATION, SWINOMISH INDIAN TRIBAL COMMUNITY, WAMPANOAG TRIBE OF GAY HEAD, (AQUINNAH), ASSOCIATION OF AMERICAN INDIAN AFFAIRS, AMERICANS FOR INDIAN OPPORTUNITY, INDIAN LAW RESOURCE CENTER, TRIBAL LAW AND POLICY INSTITUTE. (tth); Modified text and filers on 8/29/2019 (ztth). (Entered: 08/29/2019) |
| 09/16/2019 | 442 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to CHEYENNE RIVER SIOUX TRIBE, STEVE VANCE. Attorney Joseph V. Messineo terminated. (Messineo, Joseph) (Entered: 09/16/2019) |
| 09/23/2019 | 443 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 09/23/2019) |
| 09/23/2019 | | | MINUTE ORDER GRANTING Defendant's 443 Motion to Stay. The Court ORDERS that Defendant Dakota Access, LLC shall update the Court by October 23, 2019. So ORDERED by Judge James E. Boasberg on 09/23/2019. (lcjeb1) (Entered: 09/23/2019) |
| 09/23/2019 | | | Set/Reset Deadlines: Defendant Dakota Access, LLC shall update the Court by 10/23/2019. (znbn) (Entered: 09/23/2019) |
| 10/08/2019 | 444 | | Unopposed MOTION for Leave to File Excess Pages by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 10/08/2019) |

| 10/09/2019 | | | MINUTE ORDER GRANTING Defendant Dakota Access, LLC's 444 Motion for Leave to File Excess Pages. The Court ORDERS that Defendant shall file a memorandum of law in opposition to Paintiffs' motion for summary judgment and in support of its cross–motion for summary judgment of no more than 70 pages. So ORDERED by Judge James E. Boasberg on 10/9/2019. (lcjeb1) (Entered: 10/09/2019) |
|---|---|---|---|
| 10/09/2019 | 445 | | Cross MOTION for Summary Judgment *against Cheyenne River Sioux Tribe* by UNITED STATES ARMY CORPS OF ENGINEERS (Zilioli, Erica) (Entered: 10/09/2019) |
| 10/09/2019 | 446 | | Memorandum in opposition to re 436 MOTION for Summary Judgment MOTION for Joinder *and Memorandum in Support of Cross–Motion for Summary Judgment* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Zilioli, Erica) (Entered: 10/09/2019) |
| 10/09/2019 | 447 | | Cross MOTION for Summary Judgment *against Yankton Sioux Tribe* by UNITED STATES ARMY CORPS OF ENGINEERS (Zilioli, Erica) (Entered: 10/09/2019) |
| 10/09/2019 | 448 | | Memorandum in opposition to re 435 MOTION for Summary Judgment *and Memorandum in Support of Cross–Motion for Summary Judgment* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Zilioli, Erica) (Entered: 10/09/2019) |
| 10/09/2019 | 449 | | Cross MOTION for Summary Judgment *against Oglala Sioux Tribe* by UNITED STATES ARMY CORPS OF ENGINEERS (Zilioli, Erica) (Entered: 10/09/2019) |
| 10/09/2019 | 450 | | Memorandum in opposition to re 434 MOTION for Partial Summary Judgment *and Memorandum in Support of Cross–Motion for Summary Judgment* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Zilioli, Erica) (Entered: 10/09/2019) |
| 10/09/2019 | 451 | | CROSS MOTION for Summary Judgment by UNITED STATES ARMY CORPS OF ENGINEERS. (ztth) (Entered: 10/10/2019) |
| 10/09/2019 | 452 | | Memorandum in opposition to re 433 MOTION for Summary Judgment *on Remand* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (ztth) (Entered: 10/10/2019) |
| 10/09/2019 | 453 | | ENTERED IN ERROR.....CROSS MOTION for Summary Judgment by DAKOTA ACCESS LLC. (Attachments: # 1 Memorandum in Support, # 2 Declaration) (ztth); Modified on 10/10/2019 (ztth). (Entered: 10/10/2019) |
| 10/09/2019 | 454 | | ENTERED IN ERROR.....Memorandum in opposition to re 433 MOTION for Summary Judgment *on Remand* filed by DAKOTA ACCESS LLC. (See Docket Entry 453 to view document). (ztth); Modified on 10/10/2019 (ztth). (Entered: 10/10/2019) |
| 10/09/2019 | 455 | | Cross MOTION for Summary Judgment by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) Modified on 10/10/2019 to correct filing date (ztth). (Entered: 10/10/2019) |
| 10/09/2019 | 456 | | Memorandum in opposition to re 433 MOTION for Summary Judgment *on Remand*, 434 MOTION for Partial Summary Judgment , 436 MOTION for |

| | | |
|---|---|---|
| | | Summary Judgment MOTION for Joinder, 435 MOTION for Summary Judgment *and Memorandum in Support of Cross−Motion for Summary Judgment* filed by DAKOTA ACCESS LLC. (Attachments: # 1 Declaration of William S. Scherman)(Scherman, William); Modified on 10/10/2019 to correct filing date (ztth). (Entered: 10/10/2019) |
| 10/10/2019 | | NOTICE OF CORRECTED DOCKET ENTRY: re 453 MOTION for Summary Judgment, 454 Memorandum in Opposition was entered in error. Said pleadings were filed by counsel as Docket Entries 455 and 456 . (ztth) (Entered: 10/10/2019) |
| 10/16/2019 | 457 | MOTION for Leave to File Excess Pages *and to Refile Brief* by U.S. ARMY CORPS OF ENGINEERS, UNITED STATES ARMY CORPS OF ENGINEERS (Attachments: # 1 Text of Proposed Order)(Marinelli, Matthew). Added MOTION for Leave to File on 10/17/2019 (znmw). (Entered: 10/16/2019) |
| 10/17/2019 | | MINUTE ORDER GRANTING Defendant U.S. Army Corps of Engineers' 457 Motion for Leave to File Excess Pages. The Court ORDERS that Defendant U.S. Army Corps of Engineers shall re−file a memorandum of law in opposition to Paintiffs' motion for summary judgment and in support of its cross−motion for summary judgment of no more than 50 pages. So ORDERED by Judge James E. Boasberg on 10/17/2019. (Entered: 10/17/2019) |
| 10/17/2019 | 458 | SUPPLEMENTAL MEMORANDUM re 455 Cross MOTION for Summary Judgment *on Remand*, 456 Memorandum in opposition to re 433 MOTION for Summary Judgment filed by U.S. ARMY CORPS OF ENGINEERS, UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) Modified event title and link on 10/18/2019 (znmw). (Entered: 10/17/2019) |
| 10/23/2019 | 459 | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 10/23/2019) |
| 10/24/2019 | | MINUTE ORDER GRANTING Defendant's 459 Motion to Stay. The Court ORDERS that Defendant Dakota Access, LLC shall update the Court by November 25, 2019. So ORDERED by Judge James E. Boasberg on 10/24/2019. (lcjeb1) (Entered: 10/24/2019) |
| 10/24/2019 | | Set/Reset Deadlines: Defendant Dakota Access, LLC shall update the Court by 11/25/2019. (nbn) (Entered: 10/24/2019) |
| 10/30/2019 | 460 | Memorandum in opposition to re 455 Cross MOTION for Summary Judgment , 449 Cross MOTION for Summary Judgment *against Oglala Sioux Tribe* filed by OGLALA SIOUX TRIBE. (Roy, Michael) (Entered: 10/30/2019) |
| 10/30/2019 | 461 | REPLY to opposition to motion re 434 MOTION for Partial Summary Judgment filed by OGLALA SIOUX TRIBE. (Roy, Michael) (Entered: 10/30/2019) |
| 10/30/2019 | 462 | MOTION for Extension of Time to File Response/Reply as to 447 Cross MOTION for Summary Judgment *against Yankton Sioux Tribe*, 455 Cross MOTION for Summary Judgment , 435 MOTION for Summary Judgment by YANKTON SIOUX TRIBE (Attachments: # 1 Text of Proposed |

| | | | |
|---|---|---|---|
| | | | Order)(Baker, Jennifer) (Entered: 10/30/2019) |
| 10/30/2019 | 463 | | REPLY to opposition to motion re 445 Cross MOTION for Summary Judgment *against Cheyenne River Sioux Tribe* filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Declaration)(Ducheneaux, Nicole) (Entered: 10/30/2019) |
| 10/30/2019 | 464 | | RESPONSE re 445 Cross MOTION for Summary Judgment *against Cheyenne River Sioux Tribe* filed by CHEYENNE RIVER SIOUX TRIBE. (Attachments: # 1 Declaration)(Ducheneaux, Nicole) (Entered: 10/30/2019) |
| 10/30/2019 | 465 | | RESPONSE re 455 Cross MOTION for Summary Judgment , 451 MOTION for Summary Judgment filed by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 10/30/2019) |
| 10/30/2019 | 466 | | REPLY to opposition to motion re 433 MOTION for Summary Judgment *on Remand* filed by STANDING ROCK SIOUX TRIBE. (Hasselman, Jan) (Entered: 10/30/2019) |
| 10/31/2019 | | | MINUTE ORDER GRANTING Consent 462 Motion for Extension of Time. The Court ORDERS that 1) Plaintiff Yankton Sioux Tribe shall file its reply in support of its motion for summary judgment and its response in opposition to Defendant's motion for summary judgment by November 4, 2019; 2) Defendant U.S. Army Corps of Engineers shall file its reply by November 22, 2019; and 3) Defendant–Intervenor Dakota Access shall files its reply by November 25, 2019. So ORDERED by Judge James E. Boasberg on 10/31/2019. (lcjeb1) (Entered: 10/31/2019) |
| 10/31/2019 | | | Set/Reset Deadlines: Plaintiff Yankton Sioux Tribe shall file its reply in support of its motion for summary judgment and its response in opposition to Defendant's motion for summary judgment by 11/4/19. Defendant U.S. Army Corps of Engineers shall file its reply by 11/22/19. Defendant–Intervenor Dakota Access shall files its reply by 11/25/19. (znbn) (Entered: 11/01/2019) |
| 11/04/2019 | 467 | | RESPONSE re 447 Cross MOTION for Summary Judgment *against Yankton Sioux Tribe*, 455 Cross MOTION for Summary Judgment , 435 MOTION for Summary Judgment filed by YANKTON SIOUX TRIBE, ROBERT FLYING HAWK. (Baker, Jennifer); Modified to add filer on 11/7/2019 (ztth). (Entered: 11/04/2019) |
| 11/04/2019 | 468 | | REPLY to opposition to motion re 435 MOTION for Summary Judgment filed by YANKTON SOUX TRIBE and ROBERT FLYING HAWK. (See Docket Entry 467 to view document) (ztth) Modified text to add Yankton as a filer on 11/7/2019 (ztd). (Entered: 11/07/2019) |
| 11/07/2019 | 469 | | NOTICE of Change of Address by Jan Hasselman (Hasselman, Jan) (Entered: 11/07/2019) |
| 11/14/2019 | 470 | | NOTICE OF WITHDRAWAL OF APPEARANCE as to UNITED STATES ARMY CORPS OF ENGINEERS. Attorney Amarveer Singh Brar terminated. (Brar, Amarveer) (Entered: 11/14/2019) |
| 11/20/2019 | 471 | | REPLY to opposition to motion re 445 Cross MOTION for Summary Judgment *against Cheyenne River Sioux Tribe* filed by U.S. ARMY CORPS OF ENGINEERS, UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 11/20/2019) |

| 11/20/2019 | 472 | | REPLY to opposition to motion re 449 Cross MOTION for Summary Judgment *against Oglala Sioux Tribe* filed by U.S. ARMY CORPS OF ENGINEERS, UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 11/20/2019) |
| 11/20/2019 | 473 | | REPLY to opposition to motion re 451 MOTION for Summary Judgment *against Standing Rock Sioux Tribe* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Schifman, Reuben) (Entered: 11/20/2019) |
| 11/22/2019 | 474 | | Unopposed MOTION for Leave to File Excess Pages by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 11/22/2019) |
| 11/22/2019 | 475 | | REPLY to opposition to motion re 447 Cross MOTION for Summary Judgment *against Yankton Sioux Tribe* filed by U.S. ARMY CORPS OF ENGINEERS, UNITED STATES ARMY CORPS OF ENGINEERS. (Marinelli, Matthew) (Entered: 11/22/2019) |
| 11/22/2019 | 476 | | MOTION for Leave to File *Sur–Rely Brief* by OGLALA SIOUX TRIBE (Attachments: # 1 Sur–Reply Brief, # 2 Declaration of Michael L. Roy in support of Oglala Sioux Tribe's Sur–Reply Brief, # 3 Exhibit A to Michael Roy Declaration, # 4 Exhibit B to Michael Roy Declaration, # 5 Exhibit C to Michael Roy Declaration, # 6 Text of Proposed Order granting motion for leave to file Sur–Reply)(Roy, Michael) (Entered: 11/22/2019) |
| 11/25/2019 | | | MINUTE ORDER: The Court GRANTS Defendant Dakota Access, LLC's 474 Motion for Leave to File Excess Pages and ORDERS that Dakota Access shall file a Reply of no more than 35 pages. So ORDERED by Judge James E. Boasberg on 11/25/2019. (lcjeb1) (Entered: 11/25/2019) |
| 11/25/2019 | | | MINUTE ORDER: The Court GRANTS Plaintiff Oglala Sioux Tribe's 476 Motion for Leave to File a Sur–Reply and ORDERS that its Sur–Reply is deemed FILED. So ORDERED by Judge James E. Boasberg on 11/25/2019. (lcla) (Entered: 11/25/2019) |
| 11/25/2019 | 477 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 11/25/2019) |
| 11/25/2019 | | | MINUTE ORDER GRANTING Defendant's 477 Motion to Stay. The Court ORDERS that Defendant Dakota Access, LLC shall update the Court by December 23, 2019. So ORDERED by Judge James E. Boasberg on 11/25/2019. (lcjeb1) (Entered: 11/25/2019) |
| 11/25/2019 | 478 | | REPLY to opposition to motion re 455 Cross MOTION for Summary Judgment filed by DAKOTA ACCESS LLC. (Scherman, William) Modified date filed due to technical cmecf issues on the evening of 11/25/19 on 11/26/2019 (ztd). (Entered: 11/26/2019) |
| 11/25/2019 | 480 | | SURREPLY to re 451 MOTION for Summary Judgment filed by OGLALA SIOUX TRIBE. (Attachments: # 1 Declaration A, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C) (ztth) (Entered: 12/06/2019) |
| 12/05/2019 | 479 | | MOTION for Extension of Time to File *Administrative Record Appendix* by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Text of Proposed Order Granting Plaintiff Standing Rock Sioux Tribe's Motion for Extension of |

| | | | |
|---|---|---|---|
| | | | Time to File Administrative Record Appendix)(Hasselman, Jan) (Entered: 12/05/2019) |
| 12/06/2019 | | | MINUTE ORDER: The Court GRANTS Plaintiff Standing Rock Sioux Tribe's 479 Motion for Extension of Time to File and ORDERS that Plaintiff shall file the Administrative Record Appendix by December 13, 2019. So ORDERED by Judge James E. Boasberg on 12/6/2019. (lcjeb1) (Entered: 12/06/2019) |
| 12/06/2019 | | | Set/Reset Deadlines: Administrative Record due by 12/13/2019. Appendix due by 12/13/2019. (nbn) (Entered: 12/06/2019) |
| 12/13/2019 | 481 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by STANDING ROCK SIOUX TRIBE (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Exhibit A Part 1 of 4 (UNDER SEAL), # 3 Exhibit A Part 2 of 4 (UNDER SEAL), # 4 Exhibit A Part 3 of 4 (UNDER SEAL), # 5 Exhibit A Part 4 of 4 (UNDER SEAL))(Hasselman, Jan) (Entered: 12/13/2019) |
| 12/16/2019 | | | MINUTE ORDER: The Court ORDERS that Plaintiff Standing Rock Sioux Tribe's 481 Sealed Motion for Leave to File Document Under Seal is GRANTED. So ORDERED by Judge James E. Boasberg on 12/16/2019. (lcjeb1) (Entered: 12/16/2019) |
| 12/16/2019 | 482 | | JOINT APPENDIX *of Remand Administrative Record* by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Appendix Volume 1, # 2 Appendix Volume 2, # 3 Appendix Volume 3, # 4 Appendix Volume 4, # 5 Appendix Volume 5, # 6 Appendix Volume 6, # 7 Appendix Volume 7, # 8 Appendix Volume 8, # 9 Appendix Volume 9, # 10 Appendix Volume 10)(Hasselman, Jan) (Entered: 12/16/2019) |
| 12/16/2019 | 483 | | JOINT APPENDIX *Volume 11* by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Appendix Volume 11)(Hasselman, Jan) (Entered: 12/16/2019) |
| 12/16/2019 | 484 | | SEALED DOCUMENT – Exhibit A Part 1 of 4 filed by STANDING ROCK SIOUX TRIBE. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit A Part 2 of 4, # 2 Exhibit A Part 3 of 4, # 3 Exhibit A Part 4 of 4) (ztth) (Entered: 12/20/2019) |
| 12/23/2019 | 485 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 12/23/2019) |
| 12/28/2019 | | | MINUTE ORDER: The Court GRANTS 485 Motion to Stay Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by January 23, 2020, whether it will withdraw the Motion, seek a further delay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 12/28/2019. (lcjeb1) (Entered: 12/28/2019) |
| 12/30/2019 | | | Set/Reset Deadlines: Dakota Access, LLC To Update The Court due by 1/23/2020. (mac) (Entered: 12/30/2019) |
| 01/23/2020 | 486 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 01/23/2020) |

| 01/23/2020 | | | MINUTE ORDER: The Court GRANTS Dakota Access, LLC's <u>486</u> Motion to Stay Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by February 24, 2020, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 1/23/2020 (lcjeb1) (Entered: 01/23/2020) |
| 01/23/2020 | | | Set/Reset Deadlines: Dakota Access, LLC's Status Report due by 2/24/2020 (lsj) (Entered: 01/23/2020) |
| 01/28/2020 | | | MINUTE ORDER: The Court ORDERS that the parties shall appear for oral argument on the pending Motions for Summary Judgment on February 21, 2020, at 11:00 a.m. So ORDERED by Judge James E. Boasberg on 1/28/2020. (lcjeb2) (Entered: 01/28/2020) |
| 01/28/2020 | | | Set/Reset Hearings: Motion Hearing set for 2/21/2020 at 11:00 AM in Courtroom 25A before Judge James E. Boasberg. (nbn) (Entered: 01/28/2020) |
| 01/29/2020 | 487 | | Unopposed MOTION to Continue *Reschedule Oral Argument* by STANDING ROCK SIOUX TRIBE (Attachments: # <u>1</u> Text of Proposed Order)(Hasselman, Jan) Modified event title on 1/30/2020 (znmw). (Entered: 01/29/2020) |
| 01/30/2020 | | | MINUTE ORDER GRANTING Plaintiff's <u>487</u> Motion for Extension of Time. The Court ORDERS that the hearing currently set for February 21, 2020, at 11:00 a.m. is VACATED and RESET for March 18, 2020, at 11:00 a.m. So ORDERED by Judge James E. Boasberg on 1/30/2020. (lcjeb2) (Entered: 01/30/2020) |
| 01/30/2020 | | | Set/Reset Hearings: Motion Hearing set for 3/18/2020 at 11:00 AM in Courtroom 25A before Judge James E. Boasberg. (nbn) (Entered: 01/31/2020) |
| 02/24/2020 | 488 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # <u>1</u> Text of Proposed Order)(Scherman, William) (Entered: 02/24/2020) |
| 02/24/2020 | | | MINUTE ORDER GRANTING Defendant–Intervenor's <u>488</u> Motion to Stay Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access shall update the Court by March 24, 2020. So ORDERED by Judge James E. Boasberg on 2/24/2020.(lcjeb2) (Entered: 02/24/2020) |
| 02/24/2020 | | | Set/Reset Deadlines: Dakota Access shall update the Court by 3/24/2020. (nbn) (Entered: 02/24/2020) |
| 03/09/2020 | 489 | | MOTION to Clarify *Oral Argument on Summary Judgment Motions* by DAKOTA ACCESS LLC (Attachments: # <u>1</u> Text of Proposed Order)(Scherman, William) (Entered: 03/09/2020) |
| 03/10/2020 | | | MINUTE ORDER: The Court ORDERS that the parties shall focus their oral argument on the issue of "highly controversial" under the NEPA regulations. The Court further ORDERS that the <u>489</u> Motion to Clarify is GRANTED inasmuch as the Court expects to conclude argument by 12:30 p.m. So ORDERED by Judge James E. Boasberg on 3/10/2020. (lcjeb2) (Entered: 03/10/2020) |

| 03/13/2020 | 490 | | MOTION for Leave to Appear by Telephone by STANDING ROCK SIOUX TRIBE (Attachments: # 1 Text of Proposed Order Granting Motion to Conduct Hearing Telephonically)(Hasselman, Jan) (Entered: 03/13/2020) |
| --- | --- | --- | --- |
| 03/13/2020 | | | MINUTE ORDER: The Court ORDERS that Plaintiffs' 490 Motion for Telephonic Hearing is GRANTED, and all parties shall appear via telephone. The Court will determine if audio can be made publicly available. So ORDERED by Judge James E. Boasberg on 3/13/2020. (lcjeb2) (Entered: 03/13/2020) |
| 03/13/2020 | 491 | | Memorandum in opposition to re 490 MOTION for Leave to Appear by Telephone filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/13/2020) |
| 03/17/2020 | | | MINUTE ORDER: The Court ORDERS that given the complexity and importance of this matter, as well as the fact that all parties are appearing telephonically, the hearing set for March 18, 2020, shall proceed as scheduled. So ORDERED by Judge James E. Boasberg on 3/17/2020. (lcjeb2) (Entered: 03/17/2020) |
| 03/18/2020 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Motion Hearing held on 3/18/2020. Oral argument heard on the pending Motions for Summary Judgment. Motions taken under advisement. Opinion forthcoming. (Court Reporter Lisa Griffith) (nbn) (Entered: 03/18/2020) |
| 03/19/2020 | 492 | | NOTICE of Filing by STANDING ROCK SIOUX TRIBE (Hasselman, Jan) (Entered: 03/19/2020) |
| 03/20/2020 | 493 | | RESPONSE re 492 Notice (Other) of Filing filed by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 03/20/2020) |
| 03/24/2020 | 494 | | MOTION to Stay Resolution of Motion to Compel Prompt Completion of the Administrative Record by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 03/24/2020) |
| 03/24/2020 | | | MINUTE ORDER: The Court GRANTS Dakota Access, LLC's 494 Motion to Stay Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by April 24, 2020, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 3/24/2020. (lcjeb1) (Entered: 03/24/2020) |
| 03/24/2020 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 4/24/2020. (nbn) (Entered: 03/24/2020) |
| 03/25/2020 | 495 | | ORDER GRANTING IN PART AND DENYING IN PART the parties' [433, 434, 435, 436, 445, 447, 449, 451, 455] Motions for Summary Judgment. The Court ORDERS that: 1) Defendant and Defendant–Intervenor shall submit briefing on remedy by April 8, 2020; 2) Plaintiffs and Plaintiff–Intervenor shall submit their responses by April 15, 2020; and 3) Defendant and Defendant–Intervenor shall submit their replies by April 22, 2020. Signed by Judge James E. Boasberg on 3/25/2020. (lcmg) (Entered: 03/25/2020) |
| 03/25/2020 | 496 | | MEMORANDUM OPINION re 495 Order on Motions for Summary Judgment. Signed by Judge James E. Boasberg on 3/25/2020. (lcjeb2) (Entered: 03/25/2020) |

| 03/25/2020 | | | Set/Reset Deadlines: Brief due by 4/8/2020. Responses due by 4/15/2020. Replies due by 4/22/2020. (znbn) (Entered: 03/26/2020) |
|---|---|---|---|
| 03/26/2020 | 497 | | MOTION for Extension of Time to *File Opening Remedy Brief* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 03/26/2020) |
| 03/27/2020 | | | MINUTE ORDER GRANTING Intervenor Defendant's 497 Motion for Extension of Time. The Court ORDERS that: 1) Dakota Access and Defendant Army Corps of Engineers shall file their opening remedy briefs on April 29, 2020; 2) Plaintiffs shall file their briefs in response on May 20, 2020; and 3) Dakota Access and the Corps' shall file their reply briefs by May 27, 2020. So ORDERED by Judge James E. Boasberg on 3/27/2020. (lcjeb3) (Entered: 03/27/2020) |
| 03/27/2020 | | | Set/Reset Deadlines: Opening Remedy Brief due 4/29/2020. Response Brief due 5/20/2020. Reply Brief due 5/27/2020. (nbn) (Entered: 03/27/2020) |
| 04/20/2020 | 498 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 3/18/2020; Page Numbers: 1–48. Date of Issuance:4/20/2020. Court Reporter/Transcriber Lisa Griffith, Telephone number 202–354–3247, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above . After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/11/2020. Redacted Transcript Deadline set for 5/21/2020. Release of Transcript Restriction set for 7/19/2020.(Griffith, Lisa) (Entered: 04/20/2020) |
| 04/24/2020 | 499 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 04/24/2020) |
| 04/27/2020 | | | MINUTE ORDER: The Court GRANTS Dakota Access, LLC's 499 Motion to Stay Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by May 22, 2020, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 4/27/2020. (lcjeb1) (Entered: 04/27/2020) |
| 04/27/2020 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 5/22/2020. (nbn) (Entered: 04/27/2020) |
| 04/29/2020 | 500 | | |

| | | | NOTICE of Appearance by Matthew A. Sagsveen on behalf of STATE OF NORTH DAKOTA, STATE OF NORTH DAKOTA (Sagsveen, Matthew) (Entered: 04/29/2020) |
|---|---|---|---|
| 04/29/2020 | 501 | | MOTION for Leave to File *Amicus Curiae Brief* by HESS CORPORATION (Attachments: # 1 Text of Proposed Order (Exhibit 1), # 2 Exhibit 2 – Amicus Curiae Brief, # 3 Exhibit 3 – B. Lohnes Declaration)(Naresh, Ragan) (Entered: 04/29/2020) |
| 04/29/2020 | 502 | | MOTION for Leave to File *Amicus Curiae Brief* by CONSUMER ENERGY ALLIANCE (Attachments: # 1 Amicus Curiae Brief, # 2 Text of Proposed Order)(Miller, Amy) (Entered: 04/29/2020) |
| 04/29/2020 | 503 | | MOTION for Leave to File *Amicus Curiae Brief* by NORTH DAKOTA PETROLEUM COUNCIL (Attachments: # 1 Exhibit Brief of Amicus Curiae North Dakota Petroleum Council in Opposition to Vacatur on Remand, # 2 Exhibit Order Granting the North Dakota Petroleum Council's Motion for Leave to File Brief in Opposition to Vacatur on Remand, # 3 Exhibit Corporate Disclosure Certification)(Snell, Grant) (Entered: 04/29/2020) |
| 04/29/2020 | 504 | | AMICUS BRIEF re 495 Order on Motion for Summary Judgment,, Order on Motion for Partial Summary Judgment by STATE OF NORTH DAKOTA. (Attachments: # 1 Exhibit Ex. A – Affidavit of Joe Morrissette, # 2 Exhibit Ex. B Ex. B – Affidavit of Lynn Helms, # 3 Exhibit Ex. C – Affidavit of Justin Kringstad, # 4 Exhibit Ex. D – Affidavit of Ryan Rauschenberger)(Sagsveen, Matthew); Modified event and text on 4/30/2020 (ztth). (Entered: 04/29/2020) |
| 04/29/2020 | 505 | | MOTION for Leave to File *Amici Curiae Brief* by North Dakota Farm Bureau, North Dakota Grain Dealers Association, North Dakota Grain Growers Association, South Dakota Corn Growers Association, South Dakota Farm Bureau Federation, South Dakota Soybean Association (Attachments: # 1 Exhibit Proposed Amici Brief, # 2 Exhibit Proposed Order)(Dec, Adam) (Entered: 04/29/2020) |
| 04/29/2020 | 506 | | NOTICE of Appearance by Amy Miller on behalf of CONSUMER ENERGY ALLIANCE (Miller, Amy) (Entered: 04/29/2020) |
| 04/29/2020 | 507 | | MEMORANDUM by UNITED STATES ARMY CORPS OF ENGINEERS. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Schifman, Reuben) (Entered: 04/29/2020) |
| 04/29/2020 | 508 | | MOTION for Leave to File *Amici Curiae Brief* by AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, AMERICAN PETROLEUM INSTITUTE, ASSOCIATION OF OIL PIPE LINES (Attachments: # 1 Exhibit A – Amici Curiae Brief, # 2 Declaration of David Murk, # 3 Text of Proposed Order)(Coburn, David) (Entered: 04/29/2020) |
| 04/29/2020 | 509 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DAKOTA ACCESS LLC (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Brief Regarding Remedy, # 2 Scherman Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G, # 10 Exhibit H, # 11 Exhibit I, # 12 Exhibit J, # 13 Exhibit K)(Scherman, William) (Entered: 04/29/2020) |

| 04/29/2020 | 510 | | REDACTED DOCUMENT – by DAKOTA ACCESS LLC. (Scherman, William); Modified event and text on 4/30/2020 (ztth). (Entered: 04/29/2020) |
|---|---|---|---|
| 04/30/2020 | | | MINUTE ORDER: The Court ORDERS that the 501 Motion of the Hess Corporation for Leave to File Brief as *Amicus Curiae* is GRANTED. So ORDERED by Judge James E. Boasberg on 4/30/2020. (lcjeb1) (Entered: 04/30/2020) |
| 04/30/2020 | | | MINUTE ORDER: The Court ORDERS that Amicus's 502 Motion is DENIED WITHOUT PREJUDICE for violating the Court's Local Rule on excessive footnotes. Amicus may seek to refile with a brief containing no more than 10 footnotes with 50 aggregate lines of text. So ORDERED by Judge James E. Boasberg on 4/30/2020. (lcjeb1) (Entered: 04/30/2020) |
| 04/30/2020 | | | MINUTE ORDER: The Court ORDERS that the 503 Motion of the North Dakota Petroleum Council for Leave to File Brief as *Amicus Curiae* is GRANTED. So ORDERED by Judge James E. Boasberg on 4/30/2020. (lcjeb1) (Entered: 04/30/2020) |
| 04/30/2020 | | | MINUTE ORDER: The Court ORDERS that the 505 Motion of the North Dakota Farm Bureau, et al., for Leave to File Brief as *Amici Curiae* is GRANTED. So ORDERED by Judge James E. Boasberg on 4/30/2020. (lcjeb1) (Entered: 04/30/2020) |
| 04/30/2020 | | | MINUTE ORDER: The Court ORDERS that the 508 Motion of the American Fuel & Petrochemical Manufacturers, et al., for Leave to File Brief as *Amici Curiae* is GRANTED. So ORDERED by Judge James E. Boasberg on 4/30/2020. (lcjeb1) (Entered: 04/30/2020) |
| 04/30/2020 | 511 | | Amended MOTION for Leave to File *Amicus Curiae Brief* by CONSUMER ENERGY ALLIANCE (Attachments: # 1 Text of Proposed Order, # 2 Amicus Curiae Brief)(Miller, Amy) (Entered: 04/30/2020) |
| 04/30/2020 | 512 | | NOTICE *of Filing on the Public Docket Certain Documents Previously Filed Under Seal* by DAKOTA ACCESS LLC (Attachments: # 1 Scherman Declaration, # 2 Exhibit D, # 3 Exhibit E, # 4 Exhibit F, # 5 Exhibit H, # 6 Exhibit I)(Scherman, William) (Entered: 04/30/2020) |
| 04/30/2020 | 515 | | AMICUS BRIEF by HESS CORPORATION. (Attachment: # 1 Declaration) (ztth) (Entered: 05/04/2020) |
| 04/30/2020 | 516 | | AMICUS BRIEF by NORTH DAKOTA FARM BUREAU, NORTH DAKOTA GRAIN DEALERS ASSOCIATION, NORTH DAKOTA GRAIN GROWERS ASSOCIATION, SOUTH DAKOTA CORN GROWERS ASSOCIATION, SOUTH DAKOTA FARM BUREAU FEDERATION, SOUTH DAKOTA SOYBEAN ASSOCIATION. (ztth) (Entered: 05/04/2020) |
| 04/30/2020 | 517 | | AMICUS BRIEF by AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS, AMERICAN PETROLEUM INSTITUTE, ASSOCIATION OF OIL PIPE LINES. (Attachment: # 1 Declaration) (ztth) (Entered: 05/04/2020) |
| 04/30/2020 | 519 | | AMICUS BRIEF by NORTH DAKOTA PETROLEUM COUNCIL (ztth); (Main Document 519 replaced on 5/5/2020) (ztth). Modified filer and text on 5/5/2020 (ztth). (Entered: 05/05/2020) |

| 05/01/2020 | | | MINUTE ORDER: The Court ORDERS that the 511 Motion of the Consumer Energy Alliance for Leave to File Brief as *Amicus Curiae* is GRANTED. So ORDERED by Judge James E. Boasberg on 5/1/2020. (lcjeb1) (Entered: 05/01/2020) |
|---|---|---|---|
| 05/01/2020 | 513 | | NOTICE of Appearance by Thomas Molnar Fisher on behalf of States of Indiana, Montana, Alabama, Arkansas, Iowa, Kansas, Kentucky, Louisiana, Nebraska, Ohio, South Dakota, Texas, Utah and West Virginia (Fisher, Thomas) (Entered: 05/01/2020) |
| 05/01/2020 | 514 | | AMICUS BRIEF by States of Indiana, Montana, Alabama, Arkansas, Iowa, Kansas, Kentucky, Louisiana, Nebraska, Ohio, South Dakota, Texas, Utah and West Virginia. (Fisher, Thomas); Modified text and event on 5/4/2020 (ztth). (Entered: 05/01/2020) |
| 05/01/2020 | 518 | | AMICUS BRIEF by CONSUMER ENERGY ALLIANCE. (ztth) (Entered: 05/04/2020) |
| 05/07/2020 | 520 | | NOTICE *of Filing on the Public Docket the Remaining Documents Previously Filed Under Seal in Support of Remedy Brief* by DAKOTA ACCESS LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit G, # 5 Exhibit J, # 6 Exhibit K)(Scherman, William) (Entered: 05/07/2020) |
| 05/20/2020 | 521 | | MOTION for Leave to File *Amicus Brief* by Members of Congress (Attachments: # 1 Brief of Amici Members of Congress, # 2 Text of Proposed Order)(Eubanks, William) (Entered: 05/20/2020) |
| 05/20/2020 | 522 | | MOTION for Leave to File *Amicus Curiae Brief* by BOLD ALLIANCE, CENTER FOR BIOLOGICAL DIVERSITY, DAKOTA RURAL ACTION, FRIENDS OF THE EARTH, HONOR THE EARTH, SAVE OUR ILLINOIS LAND, SIERRA CLUB, 350.ORG (Attachments: # 1 Proposed Amicus Brief, # 2 Proposed Order)(Schoenhut, Karimah) (Entered: 05/20/2020) |
| 05/20/2020 | 523 | | NOTICE of Appearance by Karimah Schoenhut on behalf of 350.ORG, BOLD ALLIANCE, CENTER FOR BIOLOGICAL DIVERSITY, DAKOTA RURAL ACTION, FRIENDS OF THE EARTH, HONOR THE EARTH, SAVE OUR ILLINOIS LAND, SIERRA CLUB (Schoenhut, Karimah) (Entered: 05/20/2020) |
| 05/20/2020 | | | MINUTE ORDER: The Court ORDERS that the 521 Motion of Members of Congress for Leave to File Brief as *Amici Curiae* is GRANTED. So ORDERED by Judge James E. Boasberg on 5/20/2020. (lcjeb2) (Entered: 05/20/2020) |
| 05/20/2020 | 524 | | MOTION for Leave to File *Amicus Curiae Brief* by AFFILIATED TRIBES OF NORTHWEST INDIANS, ASSOCIATION ON AMERICAN INDIAN AFFAIRS, GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION, INTER TRIBAL ASSOCIATION OF ARIZONA, NATIONAL CONGRESS OF AMERICAN INDIANS, UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND, INC., Midwest Alliance of Sovereign Tribes, 28 Federally Recognized Indian Tribes (Attachments: # 1 Proposed Amicus Brief, # 2 Proposed Order)(Campbell, Matthew) (Entered: 05/20/2020) |
| 05/20/2020 | 525 | | |

| | | | |
|---|---|---|---|
| | | | STRICKEN PURSUANT TO THE MINUTE ORDER FILED ON 5/21/2020.....MEMORANDUM by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Marie Fagan, Ph.D, # 3 Exhibit 1 to Decl. of Marie Fagan, Ph.D, # 4 Exhibit 2 to Decl. of Marie Fagan, Ph.D, # 5 Declaration (Third) of Donald Holmstrom, # 6 Exhibit 1 to 3rd Decl. of Donald Holmstrom, # 7 Exhibit 2 to 3rd Decl. of Donald Holmstrom, # 8 Declaration of Patrick S. Flanders, # 9 Declaration (Second) of Elliot Ward, # 10 Declaration of Steve Vance, # 11 Declaration of Albert Two Bears)(Hasselman, Jan) (Attachment 8 replaced on 5/21/2020 as document was not viewable.) (ztnr). Modified on 5/22/2020 (znbn). (Entered: 05/20/2020) |
| 05/20/2020 | 528 | | NOTICE of Appearance by Daniel P. Sheehan on behalf of LAKOTA PEOPLE'S LAW PROJECT. (ztth) (Entered: 05/22/2020) |
| 05/20/2020 | 529 | | MOTION for Leave to File Amicus Brief by LAKOTA PEOPLE'S LAW PROJECT (Attachments: # 1 Certificate of Service, # 2 Exhibit A, # 3 Text of Proposed Order) (ztth) (Entered: 05/22/2020) |
| 05/20/2020 | 531 | | AMICUS BRIEF by MEMBERS OF CONGRESS. (ztth) (Entered: 05/22/2020) |
| 05/21/2020 | 526 | | Joint MOTION for Extension of Time to *File Reply Regarding Remedy* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William); Modified relief on 5/22/2020 (ztth). (Entered: 05/21/2020) |
| 05/21/2020 | | | MINUTE ORDER: The Court ORDERS that the 522 Motion of Bold Alliance, et al., for Leave to File Brief as *Amici Curiae* is GRANTED. So ORDERED by Judge James E. Boasberg on 5/21/2020. (lcjeb2) (Entered: 05/21/2020) |
| 05/21/2020 | | | MINUTE ORDER: The Court ORDERS that the 524 Motion of Affiliated Tribes of Northwest Indians, et al., for Leave to File Brief as *Amici Curiae* is GRANTED. So ORDERED by Judge James E. Boasberg on 5/21/2020. (lcjeb2) (Entered: 05/21/2020) |
| 05/21/2020 | | | MINUTE ORDER: The Court ORDERS that Standing Rock's 525 Memorandum is STRICKEN for violating the Court's Local Rule on excessive footnotes. Standing Rock may refile its Memorandum by May 22, 2020, provided that it contains no more than 10 footnotes with no more than 50 aggregate lines of text. So ORDERED by Judge James E. Boasberg on 5/21/2020. (lcjeb2) (Entered: 05/21/2020) |
| 05/21/2020 | | | MINUTE ORDER: The Court ORDERS that Defendants' 526 Motion for Extension is GRANTED in part, and they shall have until June 8, 2020, to file their Reply. So ORDERED by Judge James E. Boasberg on 5/21/2020. (lcjeb2) (Entered: 05/21/2020) |
| 05/21/2020 | | | Set/Reset Deadlines: Refile Memorandum due by 5/22/2020. (znbn) (Entered: 05/22/2020) |
| 05/21/2020 | | | Set/Reset Deadlines: Reply due by 6/8/2020. (znbn) (Entered: 05/22/2020) |
| 05/21/2020 | 532 | | AMICUS BRIEF by 350.ORG, BOLD ALLIANCE, CENTER FOR BIOLOGICAL DIVERSITY, DAKOTA RURAL ACTION, FRIENDS OF THE EARTH, HONOR THE EARTH, SAVE OUR ILLINOIS LAND, |

| | | | |
|---|---|---|---|
| | | | SIERRA CLUB. (ztth) (Entered: 05/22/2020) |
| 05/21/2020 | 533 | | AMICUS BRIEF by 28 FEDERALLY RECOGNIZED INDIAN TRIBES, ASSOCIATION ON AMERICAN INDIAN AFFAIRS, GREAT PLAINS TRIBAL CHAIRMAN'S ASSOCIATION, INTER TRIBAL ASSOCIATION OF ARIZONA, MIDWEST ALLIANCE OF SOVEREIGN TRIBES, NATIONAL CONGRESS OF AMERICAN INDIANS, UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND, INC. (ztth) (Entered: 05/22/2020) |
| 05/22/2020 | 527 | | AMENDED MEMORANDUM by STANDING ROCK SIOUX TRIBE. (Attachments: # 1 Text of Proposed Order, # 2 Declaration of Marie Fagan, Ph.D, # 3 Exhibit 1 to Decl. of Marie Fagan, Ph.D, # 4 Exhibit 2 to Decl. of Marie Fagan, Ph.D, # 5 Declaration (Third) of Donald Holmstrom, # 6 Exhibit 1 to 3rd Decl. of Donald Holmstrom, # 7 Exhibit 2 to 3rd Decl. of Donald Holmstrom, # 8 Declaration of Patrick S. Flanders, # 9 Declaration (Second) of Elliot Ward, # 10 Declaration of Steve Vance, # 11 Declaration of Albert Two Bears)(Hasselman, Jan); Modified text at the request of counsel on 5/22/2020 (ztth). (Entered: 05/22/2020) |
| 05/22/2020 | 530 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 05/22/2020) |
| 05/22/2020 | | | MINUTE ORDER: The Court GRANTS Dakota Access, LLC's 530 Motion to Stay Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall update the Court by June 22, 2020, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 5/22/2020. (lcjeb1) Modified on 5/26/2020 (znbn). (Entered: 05/22/2020) |
| 05/22/2020 | | | MINUTE ORDER: The Court ORDERS that the 529 Motion of the Lakota People's Law Project for Leave to File Brief as *Amicus Curiae* is GRANTED. So ORDERED by Judge James E. Boasberg on 5/22/2020. (lcjeb1) (Entered: 05/22/2020) |
| 05/22/2020 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 6/22/2020. (znbn) (Entered: 05/26/2020) |
| 06/03/2020 | 534 | | NOTICE OF SUBSTITUTION OF COUNSEL by Rollie Wilson on behalf of ROBERT FLYING HAWK, YANKTON SIOUX TRIBE Substituting for attorney Patty Marks (Wilson, Rollie) (Entered: 06/03/2020) |
| 06/03/2020 | 535 | | NOTICE of Change of Address by Rollie Wilson (Wilson, Rollie) (Entered: 06/03/2020) |
| 06/08/2020 | | | MINUTE ORDER: The Court ORDERS that Defendant–Intervenor Dakota Access, LLC's 509 Sealed Motion for leave to file unredacted versions of (1) Dakota Access, LLC's Brief Regarding Remedy; and (2) the Declaration Of William S. Scherman in support of the Brief Regarding Remedy, including the exhibits thereto, is GRANTED. So ORDERED by Judge James E. Boasberg on 6/8/2020. (lcjeb1) (Entered: 06/08/2020) |
| 06/08/2020 | 536 | | |

| | | | |
|---|---|---|---|
| | | | REPLY *Regarding Remedy* filed by UNITED STATES ARMY CORPS OF ENGINEERS. (Schifman, Reuben) (Entered: 06/08/2020) |
| 06/08/2020 | 537 | | MEMORANDUM by STATE OF NORTH DAKOTA re 527 (Attachments: # 1 Declaration Second Declaration of Lynn Helms, # 2 Declaration Second Declaration of Joe Morrisette)(Sagsveen, Matthew); Modified to add docket entry relationship on 6/9/2020 (ztth). (Entered: 06/08/2020) |
| 06/08/2020 | 538 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DAKOTA ACCESS LLC (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Reply Brief Regarding Remedy, # 2 Scherman Declaration, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E, # 8 Exhibit F, # 9 Exhibit G)(Scherman, William) (Entered: 06/08/2020) |
| 06/08/2020 | 539 | | REDACTED DOCUMENT– Reply Brief Regarding Remedy by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 06/08/2020) |
| 06/08/2020 | 540 | | SEALED DOCUMENT (Brief) filed by DAKOTA ACCESS LLC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K) (ztth) (Entered: 06/09/2020) |
| 06/09/2020 | | | MINUTE ORDER: The Court ORDERS that Defendant–Intervenor Dakota Access, LLC's 538 Sealed Motion for Leave to File unredacted versions of of (1) Dakota Access, LLC's Reply Brief Regarding Remedy; and (2) the Declaration of William S. Scherman in Support of the Reply Brief Regarding Remedy, including the exhibits thereto, is GRANTED. So ORDERED by Judge James E. Boasberg on 6/9/2020. (lcjeb1) (Entered: 06/09/2020) |
| 06/09/2020 | 541 | | SEALED DOCUMENT (Reply Brief) filed by DAKOTA ACCESS LLC. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H, # 10 Exhibit I, # 11 Exhibit J, # 12 Exhibit K) (ztth) (Entered: 06/09/2020) |
| 06/11/2020 | 542 | | NOTICE *of Filing on the Public Docket Certain Documents Previously Filed Under Seal in Support of Remedy Reply Brief* by DAKOTA ACCESS LLC (Attachments: # 1 Scherman Declaration, # 2 Exhibit C, # 3 Exhibit D, # 4 Exhibit E, # 5 Exhibit F, # 6 Exhibit G)(Scherman, William) (Entered: 06/11/2020) |
| 06/12/2020 | 543 | | NOTICE *of Filing on the Public Docket the Remaining Documents Previously Filed Under Seal in Support of Remedy Reply Brief* by DAKOTA ACCESS LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Scherman, William) (Entered: 06/12/2020) |
| 06/22/2020 | 544 | | MOTION to Stay *Resolution of Motion to Compel Prompt Completion of the Administrative Record* by DAKOTA ACCESS LLC (Attachments: # 1 Text of Proposed Order)(Scherman, William) (Entered: 06/22/2020) |
| 06/22/2020 | | | MINUTE ORDER: The Court GRANTS Dakota Access, LLC's 544 Motion to Stay Resolution of Motion to Compel Prompt Completion of the Administrative Record. The Court ORDERS that Dakota Access, LLC shall |

| | | | |
|---|---|---|---|
| | | | update the Court by July 22, 2020, whether it will withdraw the Motion, seek a further stay of the Motion, or ask for the Court to resolve it. So ORDERED by Judge James E. Boasberg on 6/22/2020. (lcjeb1) (Entered: 06/22/2020) |
| 06/22/2020 | | | Set/Reset Deadlines: Dakota Access, LLC shall update the Court by 7/22/2020. (znbn) (Entered: 06/22/2020) |
| 07/06/2020 | 545 | | ORDER: The Court ORDERS that: 1) The Mineral Leasing Act easement authorizing the Dakota Access Pipeline to cross the Missouri River at Lake Oahe is hereby VACATED; and 2) Dakota Access shall shut down the pipeline and empty it of oil by August 5, 2020. Signed by Judge James E. Boasberg on 7/6/2020. (lcjeb3) (Entered: 07/06/2020) |
| 07/06/2020 | 546 | | MEMORANDUM OPINION re Remedy. Signed by Judge James E. Boasberg on 7/6/2020. (lcjeb3) (Entered: 07/06/2020) |
| 07/06/2020 | | | Set/Reset Deadlines: Dakota Access shall shut down the pipeline and empty it of oil by by 8/5/2020. (znbn) (Entered: 07/06/2020) |
| 07/06/2020 | 547 | | MOTION to Stay *Vacatur* by DAKOTA ACCESS LLC (Attachments: # 1 Proposed Order)(Scherman, William) (Entered: 07/06/2020) |
| 07/06/2020 | 548 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 496 Memorandum & Opinion, 239 Memorandum & Opinion, 545 Order, 495 Order on Motion for Summary Judgment,, Order on Motion for Partial Summary Judgment,,,,,,,,,,,,,, 546 Memorandum & Opinion, 238 Order on Motion for Partial Summary Judgment,,, by DAKOTA ACCESS LLC. Fee Status: No Fee Paid. Parties have been notified. (Scherman, William) (Entered: 07/06/2020) |
| 07/07/2020 | 549 | | Memorandum in opposition to re 547 MOTION to Stay *Vacatur* filed by OGLALA SIOUX TRIBE. (Roy, Michael) (Entered: 07/07/2020) |
| 07/07/2020 | 550 | | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The fee remains to be paid and another notice will be transmitted when the fee has been paid in the District Court re 548 Notice of Appeal to DC Circuit Court. (ztth) (Entered: 07/07/2020) |
| 07/07/2020 | | | MINUTE ORDER: The Court ORDERS that: 1) Dakota Access's 547 Motion for Provisional Stay is DENIED; and 2) The Court will set a status hearing to discuss scheduling as soon as it receives Dakota Access's motion for a stay pending appeal. So ORDERED by Judge James E. Boasberg on 7/7/2020. (lcjeb1) (Entered: 07/07/2020) |
| 07/08/2020 | 551 | | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by DAKOTA ACCESS LLC (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Motion For Stay Pending Appeal, # 2 Stamm Declaration, # 3 Proposed Order)(Scherman, William) (Entered: 07/08/2020) |
| 07/08/2020 | 552 | | REDACTED DOCUMENT– Motion For Stay Pending Appeal by DAKOTA ACCESS LLC. (Scherman, William) (Entered: 07/08/2020) |
| 07/09/2020 | | | NOTICE of Hearing:Status Conference set for 7/9/2020 at 02:00 PM in Telephonic/VTC before Judge James E. Boasberg. (znbn) (Entered: 07/09/2020) |

| 07/09/2020 | | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 7/9/2020. Order forthcoming. (Court Reporter Lisa Griffith) (znbn) (Entered: 07/09/2020) |
|---|---|---|---|
| 07/09/2020 | 553 | | ORDER DENYING 551 Motion to Stay. Signed by Judge James E. Boasberg on 7/9/2020. (lcjeb3) (Entered: 07/09/2020) |
| 07/09/2020 | | | MINUTE ORDER: The Court GRANTS Dakota Access's 551 Motion to File Under Seal. So ORDERED by Judge James E. Boasberg on 7/9/2020. (lcjeb3) (Entered: 07/09/2020) |
| 07/09/2020 | | | USCA Case Number 20–5197 for 548 Notice of Appeal to DC Circuit Court, filed by DAKOTA ACCESS LLC. (zrdj) (Entered: 07/09/2020) |
| 07/09/2020 | 554 | | NOTICE *of Filing on the Public Docket A Document Previously Filed Under Seal* by DAKOTA ACCESS LLC (Attachments: # 1 Stamm Declaration)(Scherman, William) (Entered: 07/09/2020) |
| 07/09/2020 | 555 | | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 7–9–2020; Page Numbers: 1–20. Date of Issuance:7–9–2020. Court Reporter/Transcriber Lisa W Griffith, Telephone number (202) 354–3247, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced abo ve. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.

**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.

Redaction Request due 7/30/2020. Redacted Transcript Deadline set for 8/9/2020. Release of Transcript Restriction set for 10/7/2020.(Griffith, Lisa) (Entered: 07/09/2020) |
| 07/09/2020 | 558 | | SEALED MOTION filed by DAKOTA ACCESS LLC. (This document is SEALED and only available to authorized persons.) (Attachment: # 1 Declaration) (ztth) (Entered: 07/13/2020) |
| 07/10/2020 | | | USCA Appeal Fees received $ 505 receipt number 4616103519 re 548 Notice of Appeal to DC Circuit Court, filed by DAKOTA ACCESS LLC, 550 Transmission of Notice of Appeal and Docket Sheet to USCA, USCA Case Number 20–5197. (ztth) (Entered: 07/13/2020) |
| 07/13/2020 | 556 | | Supplemental Record on Appeal transmitted to US Court of Appeals re 548 Notice of Appeal to DC Circuit Court. Appeal Fees Received USCA Case Number 20–5197. (ztth) (Entered: 07/13/2020) |
| 07/13/2020 | 557 | | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 496 Memorandum & Opinion, 553 Order on Sealed Motion for Leave to File Document Under Seal, |

239 Memorandum & Opinion, 495 Order on Motion for Summary Judgment,, Order on Motion for Partial Summary Judgment,,,,,,,,,,,,,,, 238 Order on Motion for Partial Summary Judgment,,, by UNITED STATES ARMY CORPS OF ENGINEERS. Fee Status: No Fee Paid. Parties have been notified. (Schifman, Reuben) (Entered: 07/13/2020)

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| CHEYENNE RIVER SIOUX TRIBE, | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-01534 (JEB) |
| | ) (consolidated with Cases No. |
| UNITED STATES ARMY CORPS OF | ) 1:16-cv-01796 & 1:17-cv-00267) |
| ENGINEERS, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| DAKOTA ACCESS, LLC, | ) |
| | ) |
| Defendant-Intervenor. | ) |

## UNITED STATES ARMY CORPS OF ENGINEERS' NOTICE OF APPEAL

The Defendant United States Army Corps of Engineers hereby provides notice of its appeal

to the United States Court of Appeals for the District of Columbia Circuit of this Court's March 25,

2020 Opinion and Order, ECF Nos. 495 and 496; its July 9, 2020 Opinion and Order, ECF No. 553;

and its June 14, 2017 Opinion and Order, ECF Nos. 238 and 239.

Dated: July 13, 2020

Respectfully submitted,

PAUL SALAMANCA
Attorney
United States Department of Justice
Environment & Natural Resources Division

By: *Reuben Schifman*
REUBEN SCHIFMAN, NY BAR
MATTHEW MARINELLI, IL Bar 6277967
U.S. Department of Justice
Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Phone: (202) 305-4224 (Schifman)
Phone: (202) 305-0293 (Marinelli)
Fax: (202) 305-0506
reuben.schifman@usdoj.gov
matthew.marinelli@usdoj.gov

ERICA M. ZILIOLI, D.C. Bar 488073
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 514-6390
Fax: (202) 514-8865
Erica.Zilioli@usdoj.gov

*Attorneys for the United States Army Corps of Engineers*

OF COUNSEL:
MILTON BOYD
MELANIE CASNER
U.S. Army Corps of Engineers
Office of Chief Counsel
Washington, DC

## CERTIFICATE OF SERVICE

I, Reuben S. Schifman, hereby certify that on July 13, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and copies will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

*/s/ Reuben Schifman*
REUBEN S. SCHIFMAN

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STANDING ROCK SIOUX TRIBE,** *et al.***,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**U.S. ARMY CORPS OF ENGINEERS,** *et al.***,**<br><br>    **Defendants.** | **Civil Action No. 16-1534 (JEB)** |

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, the Court

ORDERS that:

1. Plaintiff Standing Rock Sioux Tribe's [117] Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART;

2. Defendant U.S. Army Corps of Engineers' [173] corresponding Cross-Motion for Partial Summary Judgment is GRANTED IN PART AND DENIED IN PART;

3. Plaintiff-Intervenor Cheyenne River Sioux Tribe's [131] Motion for Partial Summary Judgment is DENIED IN PART;

4. Defendant U.S. Army Corps of Engineers' and Defendant-Intervenor Dakota Access LLC's corresponding [186, 187] Cross-Motions for Partial Summary Judgment are GRANTED IN PART;

5. The matter is REMANDED to the Corps for further analysis as set forth in the Opinion; and

6. The parties shall appear on June 21, 2017, at 2:30 PM for a status conference to discuss further scheduling in the case.

**SO ORDERED.**

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: June 14, 2017

STANDING ROCK SIOUX TRIBE, *et al.*,

    Plaintiffs,

      v.

U.S. ARMY CORPS OF ENGINEERS, *et al.*,

    Defendants.

Civil Action No. 16-1534 (JEB)

## MEMORANDUM OPINION

Designed to transport oil from the Bakken oil fields in North Dakota to a storage hub in southern Illinois, the Dakota Access Pipeline (DAPL) has also borne substantial controversy in its wake. Most significant has been the opposition from Indian tribes whose reservations lie in close proximity to the pipeline's crossing of the Missouri River at Lake Oahe. To block Dakota Access LLC's construction of that last segment and its operation of DAPL, the Standing Rock Sioux Tribe filed this suit in July 2016, and the Cheyenne River Sioux Tribe intervened shortly thereafter.

The Tribes have since mounted two substantial legal challenges to DAPL, neither of which yielded success. The first contended that the grading and clearing of land for the pipeline threatened sites of cultural and historical significance, and that the U.S. Army Corps of Engineers had flouted its duty to engage in tribal consultations pursuant to the National Historic Preservation Act. See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock I), 205 F. Supp. 3d 4, 7 (D.D.C. 2016). The second maintained that the presence of oil in the pipeline under Lake Oahe would desecrate sacred waters and make it impossible for the Tribes to

1

freely exercise their religious beliefs, thus violating the Religious Freedom Restoration Act.  See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock II), No. 16-1534, 2017 WL 908538, at *1 (D.D.C. Mar. 7, 2017).

Now that the Court has rejected these two lines of attack, Standing Rock and Cheyenne River here take their third shot, this time zeroing in DAPL's environmental impact.  They seek summary judgment on several counts related to the Corps' alleged failure to comply with the National Environmental Policy Act.  In particular, the Tribes believe that the Corps did not sufficiently consider the pipeline's environmental effects before granting permits to Dakota Access to construct and operate DAPL under Lake Oahe, a federally regulated waterway.  This volley meets with some degree of success.  Although the Corps substantially complied with NEPA in many areas, the Court agrees that it did not adequately consider the impacts of an oil spill on fishing rights, hunting rights, or environmental justice, or the degree to which the pipeline's effects are likely to be highly controversial.

To remedy those violations, the Corps will have to reconsider those sections of its environmental analysis upon remand by the Court.  Whether Dakota Access must cease pipeline operations during that remand presents a separate question of the appropriate remedy, which will be the subject of further briefing.

2

**Table of Contents**

I.  Background ...................................................................................................... 4

   A.  NEPA                                             4
   B.  Factual History                               6
   C.  Litigation                                   11

      1.  Filing of Suit ................................................................................................ 11
      2.  Further Consideration ................................................................................... 12
      3.  A New Administration ................................................................................... 16

II.  Legal Standard ............................................................................................. 19
III. Analysis of Standing Rock's Claims ........................................................ 21

   A.  Decision Not to Prepare EIS                          21

      1.  Hard Look / Convincing Case ...................................................................... 22

         a.  Extent of Record ................................................................................... 23
         b.  Spill-Risk Analysis ............................................................................... 27
         c.  Impacts Analysis Re: Treaty Rights ..................................................... 36

      2.  Alternatives .................................................................................................. 43
      3.  Environmental Justice .................................................................................. 47

   B.  Decision to Grant the Easement                     54

      1.  Policy Change ............................................................................................... 55
      2.  Trust Responsibilities .................................................................................. 59

   C.  NWP 12                                       63
   D.  Remedy                                      66

IV. Analysis of Cheyenne River's Claims .................................................... 67

   A.  Section 408 Decision                            68

      1.  Impairment .................................................................................................... 69
      2.  Injurious to Public Interest .......................................................................... 71
      3.  Other Arguments .......................................................................................... 72

   B.  Easement Decision                               75

      1.  Section 185(b)(1) .......................................................................................... 76
      2.  Section 185(h)(2) .......................................................................................... 78
      3.  Section 185(x) ............................................................................................... 79

   C.  Trust Responsibilities                           80
   D.  Consultation                                 81

V.  Conclusion ................................................................................................... 91

## I.    Background

To familiarize the reader with the background information relevant to its analysis, the Court first briefly sets out the National Environmental Policy Act's statutory framework and then separately discusses the factual history and litigation to date.

### A. NEPA

The National Environmental Policy Act, the statute under which the majority of the Tribes' claims are brought, has two aims: it "places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action," and "it ensures that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process." Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc., 462 U.S. 87, 97 (1983) (citation omitted). NEPA's requirements are "procedural," requiring "agencies to imbue their decisionmaking, through the use of certain procedures, with our country's commitment to environmental salubrity." Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190, 193-94 (D.C. Cir. 1991). Importantly, "NEPA does not mandate particular consequences," id. at 194, and courts are discouraged from substituting their own policy judgments for that of the agency. See N. Slope Borough v. Andrus, 642 F.2d 589, 599 (D.C. Cir. 1980); see also Marsh v. Or. Nat. Res. Council, 490 U.S. 360, 378 (1989). "NEPA merely prohibits uninformed — rather than unwise — agency action." Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 351 (1989). Agency actions with adverse environmental effects can thus be NEPA compliant where "the agency has considered those effects and determined that competing policy values outweigh those costs." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 191 (4th Cir. 2009) (citations omitted).

4

115

Under NEPA, an agency must prepare an Environmental Impact Statement for any proposed major federal action "significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  An EIS must detail the environmental impact of the proposed action, any unavoidable adverse effects, alternatives to the proposed action, the relationship between short-term uses of the environment and long-term productivity, and any irreversible commitments of resources.  Id.

To determine whether an agency must prepare an EIS, it first drafts an Environmental Assessment.  See 40 C.F.R. § 1501.4(b).  An EA is a "concise public document" that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact."  Id. § 1508.9(a).  The EA must discuss the need for the proposal, the alternatives, the environmental impacts of the proposed action and alternatives, and the agencies and persons consulted.  Id. § 1508.9(b).  If, after preparing an EA, the agency determines that an EIS is not necessary, it must prepare a Finding of No Significant Impact (FONSI) setting forth the reasons why the action will not have any significant impact on the environment.  Id. §§ 1501.4(e), 1508.13; cf. Grand Canyon Trust v. FAA, 290 F.3d 339, 340 (D.C. Cir. 2002) ("If any 'significant' environmental impacts might result from the proposed agency action then an EIS must be prepared before agency action is taken.") (quoting Sierra Club v. Peterson, 717 F.2d 1409, 1415 (D.C. Cir. 1983)).  If the action will not have such impact because of the agency's commitment to ensure the performance of mitigation measures, the agency prepares a Mitigated FONSI.  See Council on Environmental Quality, Appropriate Use of Mitigation and Monitoring and Clarifying the Appropriate Use of Mitigated Findings of No Significant Impact 2, 7 (2011), https://energy.gov/sites/prod/files/NEPA-CEQ_Mitigation_and_Monitoring_Guidance_14Jan2011.pdf.  Mitigation includes "[a]voiding

5

an impact by not taking a certain action"; "[m]inimizing an impact by limiting the degree or magnitude of the action"; "[r]ectifying an impact by repairing, rehabilitating, or restoring the affected environment"; "[r]educing or eliminating an impact over time, through preservation and maintenance operations"; and "[c]ompensating for an impact by replacing or providing substitute resources or environments." Id. at 4-5. As will be explained below, the Corps here prepared an EA and a Mitigated FONSI. The central question this Opinion answers is whether that was sufficient.

### B. Factual History

As those who have followed this litigation and the concomitant public debate well know, DAPL is a nearly 1,200-mile pipeline designed to move more than half a million gallons of crude oil from North Dakota to Illinois every day. Standing Rock I, 205 F. Supp. 3d at 7. Although no government approval is necessary for oil pipelines traversing private lands, it is required for those segments that cross federally regulated waters. Id. DAPL crosses such waterways at hundreds of discrete places along its route, including, most prominently, at Lake Oahe. Id.

Created by the Corps in 1958 via a dam constructed on the Missouri River, Lake Oahe is a reservoir that spans North and South Dakota and borders the Standing Rock and Cheyenne River Sioux Reservations to the east. Id. at 13; ECF No. 172-1 (Environmental Assessment) at 35, 75; ECF No. 97-1 (CRST Second Amended Complaint), ¶ 29. DAPL crosses the Lake 0.55 miles north of the Standing Rock Reservation and 73 miles north of the Cheyenne River Reservation. See Standing Rock II, 2017 WL 908538, at *1; EA at 75. For orientation purposes, the southern border of the former Reservation also acts as the northern border of the latter. See ECF No. 117-5 (Map of Current Sioux Reservations).

6

Lake Oahe holds special significance for the Standing Rock and Cheyenne River Sioux Tribes. Its creation necessitated the taking of approximately 56,000 acres of some of "the best land" from Standing Rock's Reservation, as well as 104,420 acres of Cheyenne River's trust lands. See Act of Sept. 2, 1958, Pub. L. No. 85-915, 72 Stat. 1762; S. Rep. No. 102-267, at 188 (1992); Standing Rock II, 2017 WL 908538, at *16 (citing South Dakota v. Bourland, 508 U.S. 679, 683 (1993)). Today, Standing Rock members rely on Lake Oahe's waters to service "homes, a hospital, clinics, schools, businesses and government buildings throughout the Reservation" and to support agriculture and industrial activities. See ECF No. 117 (SRST MSJ) at 4. The Lake is also the primary source of water for the Cheyenne River Reservation. See CRST Second Amend. Compl., ¶ 2. Both Tribes consider the waters to be "sacred" and "central to [their] practice of religion." SRST MSJ at 4; see Standing Rock II, 2017 WL 908538, at *6, 8.

Dakota Access notified the Corps of its intent to construct a portion of DAPL under Lake Oahe in June 2014, see ECF No. 183-1 (Email from Monica Howard, Dir. Envtl. Sci., Dakota Access, to Jason Renschler, Project Manager, Corps, June 23, 2014), and first sought the Corps' approval to do so in October 2014. See ECF No. 159-1, Exh. A (Letter from Monica Howard to Brent Cossette, Nat. Resource Specialist, Corps, Oct. 21, 2014). Specifically, the Company needed three authorizations from the Corps: (1) verification that its activities satisfied the terms and conditions of Nationwide Permit 12; (2) permission under the Rivers and Harbors Act, 33 U.S.C. § 408; and (3) a real-estate easement under the Mineral Leasing Act, 30 U.S.C. § 185. See ECF No. 172-6 (Memorandum from John Henderson, Omaha District Commander & Engineer, Corps, Dec. 3, 2016), ¶ 4. The Court has previously discussed some of the details of these permitting schemes, see Standing Rock I, 205 F. Supp. 3d at 10-12, and will not repeat them here.

7

In December 2015, the Corps published and sought public comment on a Draft

Environmental Assessment that evaluated the environmental effects of DAPL's proposed

crossing of Lake Oahe and concluded that "construction of the proposed Project [was] not

expected to have any significant direct, indirect, or cumulative impacts on the environment."

ECF No. 6-19 (Draft EA) at 1; see EA at 1.  Standing Rock promptly submitted comments

touching on a range of concerns, including that the Draft EA failed to adequately address

potential harm from the pipeline's construction and operations to the Lake's water and the

Tribe's rights thereto; did not acknowledge the pipeline's proximity to the Reservation;

insufficiently analyzed the risks of an oil spill; and did not properly address environmental-

justice considerations.  See ECF No. 159-1, Exh. C (SRST Comments on Draft EA, Jan. 8, 2016)

at 9-17; id., Exh. D (SRST Suppl. Comments on Draft EA, Mar. 24, 2016) at 2-3.  The Tribe,

accordingly, asked that the Corps prepare an Environmental Impact Statement to assess the

pipeline's effects, a request it had also made prior to the Draft EA's release.  See ECF No. 209-6

(Notes for Feb. 18-19, 2016, Tribal Meeting) at 51; ECF No. 209-9 at 33-34 (Letter from Waste

Win Young, Tribal Historic Preservation Officer, Standing Rock Sioux Tribe, to Martha Chieply,

Omaha District Regulatory Branch, Corps, Feb. 25, 2015).  Cheyenne River expressed similar

views.  See ECF No. 185-1, Exh. II (Letter from Steve Vance, Tribal Historic Preservation

Officer, Cheyenne River Sioux Tribe, to Richard Harnois, Sr. Field Archaeologist, Corps, May 2,

2016); ECF No. 183-19 (Letter from Steve Vance to John Henderson, May 19, 2016); ECF No.

183-20 (Letter from Harold Frazier, Chairman, Cheyenne River Sioux Tribe, June 3, 2016).

Other federal agencies also weighed in on the Draft EA.  Like the Tribes, the Department

of the Interior requested that the Corps prepare an EIS, a step it believed necessary given

DAPL's "potential impact on trust resources" — i.e., 800,000 acres of land held in trust for the

8

Tribe by Interior, as well as waters on which the Tribe and its members depend for drinking and other purposes — should a leak or spill occur.  See ECF No. 209-7 at 21 (Letter from Lawrence Roberts, Acting Assistant Secretary for Indian Affairs, Dep't of Interior, to Brent Cossette, Mar. 29, 2016).  Interior criticized the Corps for, *inter alia*, "not adequately justify[ing] or otherwise support[ing] its conclusion that there would be no significant impacts upon the surrounding environment and community" and not assigning a level of intensity to those potential adverse impacts that were acknowledged.  Id.

The Environmental Protection Agency similarly expressed concern that the Draft EA "lack[ed] sufficient analysis of direct and indirect impacts to water resources," did not adequately address "the measures that will be required to assure that impacts from construction and operation of the pipeline are not significant," and did "not identify the related effects from the entire project segment."  ECF No. 209-16 at 184 (Letter from Philip Strobel, Director of NEPA Compliance & Review Program, EPA, to Brent Cossette, Jan. 8, 2016).  Although the EPA did not believe that the Draft EA "would support a FONSI," it did not call for the Corps to prepare an EIS; instead, it suggested that "information and mitigation could be added to the EA in order to support a mitigated FONSI."  Id. at 187.

After "becom[ing] aware of the proximity" of DAPL to Standing Rock's Reservation, the EPA supplemented its comments.  See ECF No. 209-8 at 123 (Letter from Philip Strobel to Brent Cossette, Mar. 11, 2016).  It recommended that the Corps revise the Draft EA and provide a second public-comment period "to assess potential impacts to drinking water and the Standing Rock Sioux Tribe," as well as "additional concerns regarding environmental justice and emergency response actions to spills/leaks."  Id.  Notably, the EPA took some issue with the Draft EA's spill analysis, stating that although it indicated only a minimal spill risk associated

9

with the project, based on its "experience in spill response," a break or leak could significantly affect water resources. Id. at 124. Given DAPL's proposed capacity of 13,100 to 16,600 gallons per minute of crude oil and the proximity of drinking-water intakes to the Oahe crossing, the agency explained, "There would be very little time to determine if a spill or leak affecting surface waters is occurring, to notify water treatment plants and to have treatment plant staff on site to shut down the water intakes." Id. at 125. Finally, the EPA urged the Corps to expand its analysis for purposes of assessing environmental-justice considerations from "the area of construction disturbance" to "the impacts of the proposed project," and to look at route alternatives. Id. at 126; see also ECF No. 209-9 at 209 (Email "Quick Summary of Conference Call with EPA," Feb. 25, 2016) ("EPA concerned over the lack of Environmental justice — Tribal interests have not been addressed sufficiently.").

On July 25, 2016, about eight months after releasing the Draft EA, the Corps published its Final EA and a Mitigated Finding of No Significant Impact. See EA; ECF No. 172-2 (FONSI). The Final EA — like the Draft EA — was prepared by Dakota Access with involvement from the Corps, as is permitted, when certain conditions are met, by Council on Environmental Quality regulations. See EA at 1; Draft EA at 1; 40 C.F.R. § 1506.5(a)-(b). The Mitigated FONSI explained that the Corps had "coordinated closely with Dakota Access to avoid, mitigate and minimize potential impacts of the Proposed Action" — largely via horizontal directional drilling (HDD) technology — and that the Company was required to comply with a set of mitigation measures set out in the EA. See FONSI at 3. Given those measures and its evaluation of DAPL's "anticipated environmental, economic, cultural, . . . social[, and] . . . cumulative effects," the Corps concluded that the crossing at Lake Oahe would not "significantly affect the quality of the human environment," and preparation of an EIS was therefore not

10

required. Id. at 6. The Corps, accordingly, verified that the pipeline activities satisfied the terms and conditions of NWP 12 and granted permission under Section 408 of the Rivers and Harbors Act for DAPL's placement at Lake Oahe. See ECF No. 209-9 at 149-53 (NWP 12 Permit); ECF No. 209-10 at 54 (Section 408 Permit). The parties disagree as to whether the Corps also at that time granted an easement pursuant to the Mineral Leasing Act, 30 U.S.C. § 185. See ECF Nos. 57, 66, 73. For purposes of this Opinion — and consistent with its understanding throughout the litigation — the Court will assume that it did not. Without such easement, Dakota Access could not construct the pipeline under the Lake.

## C. Litigation

### 1. *Filing of Suit*

While factual backgrounds to lawsuits are often considerably more involved than the litigation itself, that is not the case here. In part, that is because this action (as well as the 2016 election) generated significant further maneuvers. To begin, two days after the release of the EA on July 25, 2016, Standing Rock filed this suit against the Corps for declaratory and injunctive relief pursuant to the National Historic Preservation Act, National Environmental Policy Act, Clean Water Act, and the Rivers and Harbors Act. See ECF No. 1 (Complaint), ¶¶ 128-212. Dakota Access successfully moved to intervene in support of the Corps on August 5, see ECF No. 7, and the Cheyenne River Sioux Tribe intervened as a Plaintiff on August 10. See ECF No. 11. Cheyenne River then filed its own Complaint, see ECF No. 11-12, which it later amended on September 8. See ECF No. 37. Like Standing Rock's Complaint, Cheyenne River's pleadings stated claims under the NHPA, NEPA, CWA, and RHA, as well as for breach of trust responsibility and violations of the Flood Control Act and the Administrative Procedure Act. Id. at 38-56.

11

The Tribes initially sought a preliminary injunction based solely on the NHPA, contending principally that the clearing and grading of land along the pipeline route desecrated sites sacred to them. On September 9, 2016, immediately after this Court issued its Opinion denying that motion, see Standing Rock I, 205 F. Supp. 3d at 7, the Departments of Justice, the Interior, and the Army issued a joint statement explaining that, because "important issues raised by the Standing Rock Sioux Tribe and other tribal nations and their members regarding the Dakota Access pipeline" remained, "construction of the pipeline on Army Corps land bordering or under Lake Oahe [would] not go forward" until the Army could determine whether reconsideration of any of its previous decisions regarding the Lake Oahe crossing under NEPA or other federal laws was necessary. See ECF No. 42-1 at 1. More specifically, the Corps at that time refused to grant the necessary MLA easement.

## 2. *Further Consideration*

In response to the opportunity for additional consideration, Standing Rock sent several letters to Assistant Secretary of the Army for Civil Works, Jo-Ellen Darcy, expressing its concerns regarding DAPL, the EA's spill-risk analysis, and the impact of a potential spill on hunting, fishing, and other Treaty rights. See ECF Nos. 117-11 (Sept. 22, 2016), 117-12 (Oct. 28, 2016), 117-13 (Oct. 3, 2016), 117-14 (Oct. 21, 2016). It also submitted an expert review of the EA, which concluded that it was "seriously deficient and [could not] support the finding of no significant impact, even with the proposed mitigations." ECF No. 117-15 (Accufacts, Inc. Review of EA, Oct. 28, 2016).

As part of the Corps' internal-review process, its Chief Counsel prepared a memorandum concluding that the agency had "adequately considered and disclosed the environmental, cultural and other potential impacts of its actions and that its decisions were not arbitrary or capricious,"

12

and that "supplementation of the EA to address any new information [was] not legally required."
ECF No. 117-24 (Memorandum from David Cooper, Chief Counsel, Corps, Oct. 20, 2016)
(Cooper Memo) at 36. He also issued a memorandum that listed 36 possible conditions to be
included in an easement that would "provide further protection from any perceived risks posed
by the pipeline crossing at Lake Oahe." ECF No. 209-3 at 55 (Memorandum from David
Cooper, Oct. 31, 2016).

On November 14, 2016, Assistant Secretary Darcy wrote to Standing Rock and Dakota
Access to inform them that the Army had completed the review called for on September 9,
"accounting for information it . . . received from the Tribes and the pipeline company since
September," and had "concluded that its previous decisions comported with legal requirements."
ECF No. 56-1 (Letter from Jo-Ellen Darcy, Nov. 14, 2016). Nonetheless, in light of the United
States' history with the Great Sioux Nation, the importance of Lake Oahe to Standing Rock, the
government-to-government relationship with Standing Rock, and the mandates of the Mineral
Leasing Act regarding public safety and the interests of those who rely on fish, wildlife, and
biotic resources in the general area of a requested right-of-way, see 33 U.S.C. §§ 185(g),
(h)(2)(D), (k), "the Army determined that additional discussion with the Standing Rock Sioux
Tribe and analysis [were] warranted." Darcy Nov. 2016 Letter at 2. The Army thus invited
Standing Rock to engage in discussions concerning "[p]otential conditions in an easement for the
pipeline crossing" that would reduce spill risk "or otherwise enhance the protection of Lake
Oahe, the Tribe's water supplies, and its treaty rights"; the impact of those conditions on spill
risk; "whether to grant an easement for the pipeline to cross Lake Oahe at the location currently
proposed" given those conditions; and anything else "the Tribe believes is relevant to the
proposed pipeline crossing or easement." Id. Darcy also wrote to Frazier to inform him of the

13

Corps' decision and to express the Corps' interest in "confer[ring] with [him] to better understand" his concerns. See ECF No. 131-4, Attach. A (Letter from Jo-Ellen Darcy to Harold Frazier, Nov. 14, 2016); see also ECF No. 131-4 (Declaration of Harold Frazier, Feb. 22, 2017), ¶ 15. Two days later, Darcy and other Corps officials met with representatives of the Great Plains Tribal Chairpersons' Association, including Frazier, to confirm that the November 14 letters "constituted an invitation to the [T]ribes to provide any new information . . . relevant to the Corps' consideration of the easement." Id., ¶ 16.

During this next review phase, Standing Rock offered further comments urging the Corps to deny the easement because of the pipeline's potential harm to its water, hunting, fishing, and gathering rights. See ECF No. 117-17 (Dec. 2, 2016). The Oglala Sioux Tribe, which had brought a related case against the Corps that has been consolidated with Standing Rock's action, see Minute Order of Mar. 16, 2017, submitted an expert report critiquing the EA's spill-volume analysis. See ECF No. 117-18 (EarthFax Review of EA, Dec. 2, 2016). The Corps' Omaha District Commander met with representatives of Standing Rock and Dakota Access to review the Tribe's concerns and discuss conditions that could be imposed on an easement to reduce the risk of spill or rupture. See ECF No. 209-5 at 1-2 (Email from Scott Spellmon, Commanding General, NW Division, Corps, to Jo-Ellen Darcy, Dec. 2, 2016). The day after the meeting, the District Commander issued a memorandum recommending that the Corps grant an easement to Dakota Access to cross Lake Oahe. See Henderson Memo.

The Corps also used this review phase to solicit the opinion of the Department of the Interior "on the extent to which tribal treaty rights . . . weigh in favor of or against authorizations needed for the Lake Oahe crossing." ECF No. 117-6 (Memorandum from Hilary C. Tompkins, Solicitor, Dep't of Interior, Dec. 4, 2016) at 1. Interior's Solicitor accordingly supplied a

14

memorandum concluding that the Corps had "ample legal justification to decline to issue the proposed Lake Oahe easement on the current record," and that it "would be equally justified in suspending or revoking the existing Section 408 permit as it relates to the Lake Oahe crossing." Id. at 4. Alternatively, the Solicitor recommended that the Corps not make a decision to issue the easement prior to engaging in government-to-government consultation with the Tribe; preparing an EIS to "adequately evaluate[] the existence of and potential impacts to tribal rights and interests," "consider a broader range of alternative pipeline routes," and undertake "a catastrophic spill analysis prepared by an independent expert"; and more comprehensively assessing "DAPL's impact on tribal rights, lands, and resources, including the socio-economic impacts, . . . in light of the fact that the reservation is a permanent homeland for the Tribes, as well as other federal obligations towards the Tribes." Id.

On December 4, the same day the Interior Solicitor issued her Opinion, Assistant Secretary Darcy issued a memorandum to the Corps' Commander. She explained that, to date, the Army had "not made a final decision on whether to grant the easement pursuant to [the Mineral Leasing Act]." ECF No. 172-7 (Memorandum from Jo-Ellen Darcy, Dec. 4, 2016), ¶ 6. Despite the Omaha District Commander's recommendation that the Corps do so, Darcy stated that she had "concluded that a decision on whether to authorize the Dakota Access Pipeline to cross Lake Oahe at the proposed location merits additional analysis, more rigorous exploration and evaluation of reasonable siting alternatives, and greater public and tribal participation and comments." Id., ¶ 12. "Accordingly," she continued, the Army would "not grant an easement to cross Lake Oahe at the proposed location based on the current record." Id. She directed a "robust consideration of reasonable alternatives . . . , together with analysis of potential spill risk and impacts, and treaty rights," which she thought would be "best accomplished . . . by preparing

15

an Environmental Impact Statement." Id. Darcy emphasized, though, that her "policy decision" did "not alter the Army's position that the Corps' prior reviews and actions have comported with legal requirements." Id., ¶ 15.

On January 18, 2017, Darcy followed up by publishing in the Federal Register a notice of intent to prepare an EIS. See 82 Fed. Reg. 5,543 (Jan. 18, 2017). Cheyenne River sent a letter to her that same day requesting that the Corps include it as a Cooperating Agency in the preparation and drafting of the EIS given the potential for the pipeline to affect the Tribe and its Reservation. See ECF No. 131-4, Attach. B (Letter from Harold Frazier to Jo-Ellen Darcy, Jan. 18, 2017).

### 3. *A New Administration*

As we all know, elections have consequences, and the government's position on the easement shifted significantly once President Trump assumed office on January 20, 2017. A Presidential Memorandum issued on January 24 directed the Secretary of the Army to instruct the Assistant Secretary of the Army for Civil Works and the Corps "to take all actions necessary and appropriate to . . . review and approve in an expedited manner, to the extent permitted by law and as warranted, and with such conditions as are necessary or appropriate, requests for approvals to construct and operate the DAPL, including easements or rights-of-way" and to "consider, to the extent permitted by law and as warranted, whether to rescind or modify" the December 4 memorandum and the Notice of Intent to Prepare an EIS. See ECF No. 172-8, § 2.

The Army completed a technical and legal review on February 3 and determined that the Final EA and FONSI "satisf[ied] the NEPA requirements for evaluating the easement required for the DAPL to cross Corps-managed federal lands at Lake Oahe" and "support[ed] a decision to grant an easement." ECF No. 172-9 (Memorandum from Todd Semonite, Lieutenant General, Corps, Feb. 3, 2017) at 10. Based on a review of the entire record, including the input received

16

since September 2016, the Corps also concluded that the Final EA did not require further supplementation, as there were no "substantial changes in the proposed action" or "new significant circumstances or information relevant to environmental concerns." Id. at 11 (citing 40 C.F.R. §§ 1502.9(c)(1)(i)-(ii)).  The Corps thus published in the Federal Register a notice of termination of its intent to prepare an EIS, see ECF No. 95-3, provided notice to Congress of its intent to issue the easement, see ECF No. 172-10 (Congressional Notifications, Feb. 7, 2017), and did so on February 8.  See ECF No. 172-11 (Easement).  The final easement contains 36 conditions intended to mitigate the risk of rupture at Lake Oahe and otherwise address the Tribe's concerns.  Id. at 37-43.  To facilitate the Corps' granting of the easement, the Acting Secretary of the Interior withdrew the Interior Solicitor's December 4 Opinion.  See ECF No. 127-15 (Memorandum from K. Jack Haugrud, Acting Secretary, Dep't of Interior, Feb. 6, 2017). Having finally been given the green light, Dakota Access, by late March, completed construction of this last segment beneath Lake Oahe and began placing oil in the pipeline.  See ECF No. 191 (DA Status Report, Mar. 27, 2017).  DAPL became fully operational on June 1, 2017.  See Energy Transfer, Energy Transfer Announces the Bakken Pipeline Is in Service Transporting Domestic Crude Oil from the Bakken/Three Forks Production Areas, June 1, 2017, http://ir.energytransfer.com/phoenix.zhtml?c=106094&p=irol-newsArticle.

The day after the Corps granted Dakota Access the easement, Cheyenne River moved for leave to file a Second Amended Complaint, see ECF No. 97, and also filed a motion for preliminary injunction and application for a temporary restraining order, both based solely on the Religious Freedom Restoration Act.  See ECF Nos. 98, 99; Standing Rock II, 2017 WL 908538, at *3.  Standing Rock joined the TRO application, but not the preliminary-injunction motion. See ECF No. 107.  In both filings, Cheyenne River argued that its members "believe that the

17

mere existence of a crude oil pipeline under the waters of Lake Oahe will desecrate those waters and render them unsuitable for use in their religious sacraments," and that DAPL "correlates with a terrible Black Snake prophesied to come into the Lakota homeland and cause destruction." Standing Rock II, 2017 WL 908538, at *3 (quoting ECF No. 98 at 2-3). After orally denying the TRO, see Minute Order of Feb. 13, 2017; ECF No. 119 (TRO Oral Arg. Tr., Feb. 13, 2017) at 29:20-30:19, the Court issued an Opinion similarly denying the preliminary-injunction motion, as it concluded that the extraordinary relief requested was not appropriate in light of the equitable doctrine of laches and Cheyenne River's unlikelihood of success on the merits. Standing Rock II, 2017 WL 908538, at *1.

In the midst of these proceedings, Standing Rock — after moving for leave to amend its Complaint to address new developments since it first filed this case in July 2016, see ECF No. 106 — filed the instant Motion for Partial Summary Judgment on claims concerning the Corps' decision not to prepare an EIS for the Lake Oahe crossing; its granting of the easement; and its permitting of the Lake Oahe crossing under NWP 12. The Corps responded with its own Cross-Motion for Partial Summary Judgment on these causes of action, see ECF No. 172 (Corps SRST MSJ), and Dakota Access filed briefs opposing Standing Rock's Motion and joining the Corps' Cross-Motion. See ECF Nos. 159 (DA SRST Opp.), 184 (Notice of Joinder), 202-1 (DA SRST Reply). Cheyenne River joined Standing Rock's Motion, see ECF No. 131 (CRST MSJ) at 8, and filed its own Motion for Partial Summary Judgment on claims concerning the Corps' decisions to grant Dakota Access a permit under Section 408 of the RHA and an easement under the MLA. The Corps and Dakota Access then cross-moved for partial summary judgment on those claims as well. See ECF No. 183 (Corps CRST MSJ); ECF No. 185 (DA CRST MSJ).

18

These Motions are now ripe.  Although the Tribes do not raise exactly the same causes of action, because their Motions are closely related and sometimes overlap, the Court addresses both in this Opinion, turning first to Standing Rock's claims and then to Cheyenne River's.  For purposes of their resolution, the Court has also today issued a Minute Order granting the Tribes' motions for leave to amend, such that the claims relating to post-July 2016 events are properly before it.  After setting out the governing legal standard, the Court first addresses the relevant claims raised by Standing Rock, <u>see</u> Section III, *infra*, and then turns to those asserted by Cheyenne River.  <u>See</u> Section IV, *infra*.

## II.     Legal Standard

The parties have cross-moved for partial summary judgment on the administrative record. The summary-judgment standard set forth in Federal Rule of Civil Procedure 56(c), therefore, "does not apply because of the limited role of a court in reviewing the administrative record." <u>Sierra Club v. Mainella</u>, 459 F. Supp. 2d 76, 89 (D.D.C. 2006); <u>see also</u> <u>Bloch v. Powell</u>, 227 F. Supp. 2d 25, 30 (D.D.C. 2002), <u>aff'd</u>, 348 F.3d 1060 (D.C. Cir. 2003).  "[T]he function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did."  <u>Sierra Club</u>, 459 F. Supp. 2d. at 90 (quotation marks and citation omitted).  "Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the [Administrative Procedure Act] standard of review."  <u>Loma Linda Univ. Med. Ctr. v. Sebelius</u>, 684 F. Supp. 2d 42, 52 (D.D.C. 2010) (citation omitted), <u>aff'd</u>, 408 Fed. App'x 383 (D.C. Cir. 2010).

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness."  <u>FCC v. Fox Television Stations,</u>

Inc., 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if, for example, the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983).

This is a "narrow" standard of review, under which "a court is not to substitute its judgment for that of the agency." Id. Rather, the Court "will defer to the [agency's] interpretation of what [a statute] requires so long as it is 'rational and supported by the record.'" Oceana, Inc. v. Locke, 670 F.3d 1238, 1240 (D.C. Cir. 2011) (quoting C & W Fishing Co. v. Fox, 931 F.2d 1556, 1562 (D.C. Cir. 1991)). In other words, an agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43 (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)). Courts, accordingly, "do not defer to the agency's conclusory or unsupported suppositions," United Techs. Corp. v. Dep't of Def., 601 F.3d 557, 562 (D.C. Cir. 2010) (quoting McDonnell Douglas Corp. v. Dep't of the Air Force, 375 F.3d 1182, 1187 (D.C. Cir. 2004)), and "agency 'litigating positions' are not entitled to deference when they are merely [agency] counsel's '*post hoc* rationalizations' for agency action, advanced for the first time in the reviewing court." Martin v. Occupational Safety & Health Review Comm'n, 499 U.S. 144, 156 (1991). Although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," a decision

20

that is not fully explained may, nevertheless, be upheld "if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285-86 (1974) (citation omitted).

## III.     Analysis of Standing Rock's Claims

As earlier noted, Standing Rock seeks summary judgment on three claims: (1) The Corps' July 25, 2016, and February 8, 2017, conclusions that the Oahe crossing did not warrant an EIS violated NEPA because the agency did not make a convincing case that no significant impacts would result and failed to take a hard look at the project's effects on Treaty rights and environmental-justice considerations; (2) The Corps' February 8, 2017, decision to grant the easement was arbitrary, capricious, and contrary to law because the Corps reversed a prior policy without reasoned justification and because the decision constituted a breach of trust responsibilities; and (3) The Corps wrongfully concluded on July 25, 2016, that the pipeline activities satisfied the terms and conditions of NWP 12.  The Court addresses each in turn.

### A.  Decision Not to Prepare EIS

In reviewing an agency's decision not to issue an EIS, the Court's role is a "'limited' one, designed primarily to ensure 'that no arguably significant consequences have been ignored.'" TOMAC, Taxpayers of Michigan Against Casinos v. Norton, 433 F.3d 852, 860 (D.C. Cir. 2006) (quoting Pub. Citizen v. Nat'l Highway Traffic Safety Admin., 848 F.2d 256, 267 (D.C. Cir. 1988)).  An agency's decision to issue a FONSI and thus not to prepare an EIS will be overturned only "if the decision was arbitrary, capricious, or an abuse of discretion."  Sierra Club v. Peterson, 717 F.2d 1409, 1413 (D.C. Cir. 1983).

When examining the adequacy of the FONSI and the EA upon which it was based, courts must determine whether the agency:

21

> (1) has accurately identified the relevant environmental concern, (2) has taken a hard look at the problem in preparing its [FONSI or Environmental Assessment], (3) is able to make a convincing case for its finding of no significant impact, and (4) has shown that even if there is an impact of true significance, an EIS is unnecessary because changes or safeguards in the project sufficiently reduce the impact to a minimum.

Sierra Club v. Van Antwerp, 661 F.3d 1147, 1154 (D.C. Cir. 2011) (quoting TOMAC, 433 F.3d at 861) (internal quotation marks omitted). In so doing, courts in this circuit apply "a rule of reason to an agency's NEPA analysis" and decline to "'flyspeck' the agency's findings in search of 'any deficiency no matter how minor.'" Myersville Citizens for a Rural Cmty., Inc. v. FERC, 783 F.3d 1301, 1322–23 (D.C. Cir. 2015) (quoting Nevada v. Dep't of Energy, 457 F.3d 78, 93 (D.C. Cir. 2006)).

Standing Rock contends that the EA for DAPL "runs afoul of these standards." SRST MSJ at 19. In particular, the Tribe argues that the Corps did not take a hard look at or make a convincing case that the Lake Oahe crossing will have no significant environmental impact, and that it did not sufficiently consider route alternatives or environmental-justice implications. Id. at 19-31. For these reasons, it asserts that "[t]he Corps' conclusion that the Oahe crossing was not significant enough to warrant an EIS is arbitrary, capricious, and contrary to law." SRST MSJ at 17; see Nevada, 457 F.3d at 87 ("[Courts] apply the APA's arbitrary and capricious standard to a NEPA challenge."). The Court begins its analysis with environmental impact and then turns to alternatives and environmental justice.

### 1. *Hard Look / Convincing Case*

Pursuant to NEPA's "hard look" requirement, the agency must ensure that "the adverse environmental effects of the proposed action are adequately identified and evaluated." Robertson, 490 U.S. at 350. In evaluating the significance of a proposed action's impact, an

agency is to consider, *inter alia*, the effect on "public health or safety"; "[u]nique characteristics of the geographic area such as proximity to historic or cultural resources"; the extent to which the environmental effects "are likely to be highly controversial" or "are highly uncertain or involve unique or unknown risks"; "[w]hether the action is related to other actions with individually insignificant but cumulatively significant impacts"; and the degree to which the action "may cause loss or destruction of significant . . . cultural[] or historical resources." 40 C.F.R. § 1508.27.

The Tribe identifies several ways in which the Corps allegedly failed to take a hard look at the environmental consequences of permitting DAPL's construction and operation and to make a convincing case of no significant impact. It principally argues that the agency did not properly assess the risk of a spill under Lake Oahe or sufficiently consider the environmental impacts on Treaty rights of the construction of the pipeline or of a spill. Before proceeding to address each of the Tribe's points, however, the Court must dispense with a threshold issue.

a. Extent of Record

To substantiate many of its critiques of the EA's analysis, the Tribe relies on expert reports and other records dated <u>after</u> July 25, 2016, when the Final EA and Mitigated FONSI were published. Dakota Access argues that the Court should not consider these reports or any evidence from the Tribe that post-dates July 25.

"It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made." <u>IMS, P.C. v. Alvarez</u>, 129 F.3d 618, 623 (D.C. Cir. 1997) (listing cases). Here, in challenging the Corps' decision not to prepare an EIS, the Tribe in effect challenges authorizations made at two different times: the RHA Section 408 authorization and NWP 12

23

verification on July 25, 2016, and the easement approval on February 8, 2017. See ECF No. 196-1 (SRST Reply) at 3. The Section 408 and NWP 12 decisions were based on the conclusion set out in the EA and FONSI that the permissions would not have a significant impact on the environment, and the easement decision was also based on "additional review, analysis of terms and conditions for the easement, and on the Corps' decision that supplementation of the EA/FONSI was not required." Corps SRST MSJ at 10. The Corps thus decided at two junctures that an EIS was not required, and it prepared an administrative record encompassing the materials that were before it at each decision date. Although Dakota Access is technically correct that the expert reports and other evidence submitted after July 25, 2016, are outside the record for the RHA Section 408 and NWP 12 decisions, that offers them little aid. This is because the Court can review the materials before the Corps as of February 8, 2017, for purposes of evaluating the decision to grant the easement absent an EIS. The Court, consequently, will consider all materials dated up to February 8.

To complicate matters further, however, the Tribe wishes the Court to also review "some uncontroversial background materials (e.g., maps) and declarations from its expert" that post-date February 8. See SRST Reply at 3. It argues that such extra-record evidence comes within the "accepted exceptions to the principle that the court cannot consider information that falls outside the agency record" — namely, where "the agency failed to examine all relevant factors or to adequately explain its grounds for decision, or . . . acted in bad faith or engaged in improper behavior in reaching its decision." IMS, 129 F.3d at 624; SRST Reply at 3.

On this point, the Tribe first contends that the Corps engaged in improper behavior by withholding confidential spill-model discussions and geographic-response plans to which its post-easement expert declarations respond. See SRST Reply at 3-4. But the showing required

24

"to justify supplementing the record" is a "'strong'" one, IMS, 129 F.3d at 624 (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971)), and the Court does not find that the Tribe has made it here.  The Corps has explained that it withheld from the Tribe and the public a small number of documents supporting the EA "[b]ecause of security concerns and sensitivities."  Dec. 4 Memo, ¶ 5.  Indeed, the Court recently concluded that there was good cause to protect from public disclosure certain information in some spill-model reports that, if released, could endanger life or physical safety.  Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock III), No. 16-1534, 2017 WL 1316918, at *5-6 (D.D.C. Apr. 7, 2017).  Absent a showing to the contrary, the Court thus cannot permit supplementation of the record on the ground of some withholding impropriety.

     The Tribe next argues that its extra-record evidence describes how the Corps failed to examine all relevant factors and provide adequate grounds for its decision.  But "[t]his is not a case where the agency failed 'to explain administrative action [so] as to frustrate effective judicial review.'"  IMS, 129 F.3d at 624 (quoting Camp v. Pitts, 411 U.S. 138, 142-43 (1973)).  The EA addressed each factor for which the Tribe marshals extra-record evidence, even if not with the depth or ultimate conclusion the Tribe would prefer.  Compare SRST MSJ at 21 (criticizing Corps' failure to address "slow leaks in the HDD bore," which, based on Tribe-commissioned expert review, would be "'complicated if not impossible to clean up and likely would have significant impacts on soils' and underlying aquifers") (quoting ECF No. 117-23 (Envy Report, Jan. 5, 2017) at 14); SRST Reply at 11 ("Landslides are a major source of pipeline failures and a critical factor in route selection.") (citing ECF No. 195-4 (Corrective Action Order, Belle Fourche Pipeline Company, Dec. 20, 2016); Accufacts, Inc. Review at 3; ECF No. 120 (Sealed Declaration of Richard Kuprewicz, Feb. 12, 2017), ¶ 21); id. at 12 (describing EA's

25

failure to acknowledge "undisputed evidence" regarding failure rates of spill-detection systems) (citing ECF No. 209-5 at 110 (Letter from Sierra Club Indigenous Environmental Network, Oct. 10, 2016); Accufacts, Inc. Review at 5); id. at 12-13 ("[T]he EA fails to acknowledge that with a pipeline 90 feet underground, there is no way to discover a slow leak until the oil sheen appears on the surface of the water, at which point a massive release will have occurred that would be nearly impossible to clean up.") (citing Envy Report at 13-14; Oct. 28, 2016, SRST Letter at 5); id. at 13 (stating the EA's "startlingly optimistic times for responding to a spill after it has been detected . . . have been the subject of withering criticism") (citing Accufacts, Inc. Review at 5-6; EarthFax Report at 9; Sealed Kuprewicz Decl., ¶¶ 15-17; Envy Report at 27); id. at 13-14 ("One expert review found numerous flaws in the Corps' analysis of water quality impacts of a spill, including a failure to identify key pollutants; overstatement of flows that dilute likely pollutant impacts; use of an inappropriate standard to determine toxicity; and reliance on the wrong drinking water standard.") (citing EarthFax Report at 5-7); id. at 14 (arguing EA's treatment of impact of winter conditions on spill risk was inadequate) (citing EarthFax Report at 7-8; Oct. 28, 2016, SRST Letter at 5; ECF No. 196-2 (Declaration of Elliott Ward, Mar. 25, 2017), ¶ 12) with EA at 19, 36 (borehole leaks); 26-28 (landslides); 42, 46, 90-91 (description of leak-detection system as "capable of detecting leaks down to 1 percent or better of the pipeline flow rate within a time span of approximately 1 hour or less and capable of providing rupture detection within 1 to 3 minutes"); 36-49 (discussing impacts of spill to water quality); 39, 43, 123 (discussing impact of "[s]ub-freezing temperatures during the winter months" and means of responding to spill in winter, including identifying "all-weather access and collection point" downstream of Oahe crossing and undertaking "full scale winter/ice" emergency response drills/exercises).

26

Disagreement with an agency's analysis is not enough to warrant the consideration of extra-record evidence, which, after all, is "the exception, not the rule." Oceana, Inc. v. Pritzker, 126 F. Supp. 3d 110, 113 (D.D.C. 2015) (quoting Theodore Roosevelt Conservation Partnership v. Salazar, 616 F.3d 497, 514 (D.C. Cir. 2010)). As it proceeds through Standing Rock's arguments regarding the deficiencies in the EA's analysis, therefore, the Court will not engage with those contentions that turn on evidence that post-dates February 8, 2017. This procedural brush now cleared away, the Court tackles the substance of the Tribe's no-convincing-case position, beginning with spill risks and continuing to Treaty rights.

### b. Spill-Risk Analysis

Although grouped under the "spill-risk" heading, Standing Rock's challenges here encompass the risk of spills, the degree of scientific controversy, and the cumulative risk of the project, each of which is analyzed separately.

### i. Risk of Spill

Standing Rock first maintains that the EA understates and does not properly assess the risk of an oil spill under Lake Oahe. See SRST MSJ at 21 ("[T]he Corps falls back on a rote mantra that the risk of oil spills is low."); id. at 22 (citing Solicitor Op. at 28-29 & n.171 (noting PHMSA data shows average of over 283 significant incidents involving gas, oil, or other pipelines per year since 1996)). It argues that, although the EA repeats that the spill risk is "very low," "unlikely," or "negligible," see, e.g., EA at 48, 63, 87, it does not explain what "low" means. See SRST Reply at 9. And "to conduct a credible assessment of spill risks," the Corps should have addressed concerns relating to landslide risks, inadequate spill-detection systems, underground leaks, response times, spill volumes, water-quality analysis, and winter conditions,

27

id. at 11-14, and looked at portions of the pipeline entering and exiting the boreholes. Id. at 15-16.

The EA, in fact, devotes several pages to discussing DAPL's "reliability and safety." EA at 88-94. The relevant section first explains that, "[t]o prevent pipeline failures resulting in inadvertent releases," DAPL will be constructed and maintained in accordance with "industry and governmental requirements and standards," including those from PHMSA, the American Society of Mechanical Engineers, the National Association for Corrosion Engineers, and the American Petroleum Industry. Id. at 88. After its installation, the pipeline will undergo "hydrostatic pressure testing at the crossings, checking coating integrity, and X-ray inspection of the welds." Id. The pipeline right-of-ways will also "be patrolled and inspected by air . . . at least every three weeks and not less than 26 times per year[] to check for abnormal conditions or dangerous activities, such as unauthorized excavation along the pipeline route." Id. In addition, Dakota Access plans to use "a supervisory control and data acquisition . . . system to provide constant remote oversight of the pipeline facilities," including the detection of "rapid drops in pressure," and pipeline-monitoring software to identify any leaks by tracking "pipeline pressure, flow, and temperature data" pulled every six seconds. Id. at 89-90. The EA reports that such a system "is capable of detecting leaks down to 1 percent or better of the pipeline flow rate within a time span of approximately 1 hour or less and capable of providing rupture detection within 1 to 3 minutes." Id. at 90. If a leak is detected, remotely operated valves are to be triggered and closed within three minutes. Id.

Other courts, including this Circuit, have favorably viewed similar agency reliance on applicable regulatory standards when assessing impacts as part of a NEPA-required analysis. See, e.g., EarthReports, Inc. v. FERC, 828 F.3d 949, 957 (D.C. Cir. 2016) (holding agency

28

fulfilled its NEPA obligations to evaluate ballast-water impacts by, *inter alia*, noting

requirements of applicable regulatory agencies); Sierra Club v. Clinton, 746 F. Supp. 2d 1025,

1047 (D. Minn. 2010) (holding agency properly considered impacts of pipeline abandonment by

referencing PHMSA regulations).

   The EA then proceeds to review the basis for its conclusion that the risk of an oil spill is

"low." EA at 92. Specifically, that conclusion comes from a risk analysis conducted by Dakota

Access that was derived from criteria set out in "the W. Kent Muhlbauer Relative Index

Methodology (2004), in accordance with 49 CFR 195.452 'Hazardous Liquid Pipelines in High

Consequence Area', API RP 1160 'Managing System Integrity for Hazardous Liquid Pipelines',

and ASME B31.8S 'Managing System Integrity of Gas Pipelines.'" Id. That analysis

"addressed nine industry-recognized pipeline integrity threat categories": (1) third-party damage;

(2) external corrosion; (3) internal corrosion; (4) pipe-manufacturing defects; (5) construction-

related defects; (6) incorrect operations; (7) equipment failure; (8) stress-corrosion cracking; and

(9) natural forces. Id. at 92-94.

   The underlying analysis is not itself in the record, see SRST Reply at 8, but the EA

summarizes its conclusions as to each of the nine factors. Although no explanation is provided,

three of the nine factors — external corrosion, internal corrosion, and construction-related

defects — are assessed only as to the crossing at Lake Sakakawea; the other six are applied to

both Sakakawea and Oahe. See EA at 92-94. The EA's explanation of its choice of

methodology and subsequent treatment of the different factors is nonetheless enough to give

substance to the Corps' conclusion that the risk of a spill is low. See Sierra Club v. Watkins, 808

F. Supp. 852, 868 (D.D.C. 1991) (explaining courts should "defer to an agency's decision to use

a particular risk assessment methodology that is consistent with general principles of science")

(citing <u>Sierra Club v. Dep't of Transp.</u>, 753 F.2d 120, 128-29 (D.C. Cir. 1985)).  For example, the EA explains that, at the Oahe crossing, spill risk due to third-party damage is low because the pipeline is positioned 92 feet below the lakebed; spill risk from manufacturing defects is also slim because the pipeline will be "hydrostatically strength-tested"; and spill risk from "incorrect operations (*e.g.*, overpressure event caused by human error)" is low because the pipeline is designed to withstand twice the maximum-allowable operating pressure.  <u>See</u> EA at 92-94.  The EA thus does not simply use "[a]n unbounded term" that "provides no objective standard for determining what kind of differential makes one impact more or less significant than another." <u>Mainella</u>, 459 F. Supp. 2d at 101.  Admittedly, the EA does not quantify the risk of a spill with exact numerical precision.  But in setting out the specific factors that undergirded its risk analysis and explaining their application to DAPL, the EA reasonably gives the necessary content to its top-line conclusion that the risk of a spill is low.

As noted above in the discussion of extra-record evidence, moreover, the EA did not omit discussion of borehole leaks (EA at 19, 36); landslides (EA at 26-28); leak-detection systems (EA at 42, 46, 90-91); water quality (EA at 36-49); or winter temperatures (EA at 39, 43, 123). To the extent the Tribes' experts disagree with the Corps' technical assessments or overall conclusion, such disagreements are "a classic example of a factual dispute the resolution of which implicates substantial agency expertise."  <u>Wisc. Valley Improvement Co. v. FERC</u>, 236 F.3d 738, 746 (D.C. Cir. 2001) (quoting <u>Marsh</u>, 490 U.S. at 376).  In such situations, courts "must defer to 'the informed discretion of the responsible federal agencies.'"  <u>Id.</u> at 747 (quoting <u>Marsh</u>, 490 U.S. at 377); <u>see also</u> <u>Nat'l Comm. for the New River v. FERC</u>, 373 F.3d 1323, 1327 (D.C. Cir. 2004) ("When an agency 'is evaluating scientific data within its technical expertise,'

an 'extreme degree of deference to the agency' is warranted.") (quoting B&J Oil & Gas v. FERC, 353 F.3d 71, 76 (D.C. Cir. 2004)).

### ii. Highly Controversial

Although the Court cannot agree with Standing Rock that the Corps did not adequately consider or explain its conclusion that the risk of an oil spill is low, a related position gains more traction. As explained above, CEQ regulations provide that one factor that "should be considered" in evaluating the significance of a proposed action's impact is "[t]he degree to which the effects on the quality of the human environment are likely to be highly controversial." 40 C.F.R. § 1508.27(b)(4). Standing Rock argues that evidence in the record indicated that the pipeline's effects were highly controversial, and that the Corps therefore should have concluded that the project would have significant impacts on the environment. See SRST MSJ at 20-21.

Such controversy is not measured by newsworthiness; instead, according to the Court of Appeals, "The term 'controversial' refers to cases where a substantial dispute exists as to the size, nature, or effect of the major federal action rather than to the existence of opposition to a use." Town of Cave Creek, Arizona v. FAA, 325 F.3d 320, 331 (D.C. Cir. 2003) (quoting Found. for N. Am. Wild Sheep v. Dep't of Agric., 681 F.2d 1172, 1182 (9th Cir. 1982)). Despite that explanation, however, as other courts in this district have observed, "Just what constitutes the type of 'controversy' that requires a full EIS is not entirely clear." Nat'l Parks Conservation Ass'n v. United States, 177 F. Supp. 3d 1, 33 (D.D.C. 2016) (quoting Nat'l Wildlife Fed'n v. Norton, 332 F. Supp. 2d 170, 184 (D.D.C. 2004)). At a minimum, "something more is required besides the fact that some people may be highly agitated and be willing to go to court over the matter." Id. (quoting Fund for Animals v. Frizzell, 530 F.2d 982, 988 n.15 (D.C. Cir. 1975)).

"Many courts have found 'something more' to be scientific or other evidence that reveals flaws in the methods or data relied upon by the agency in reaching its conclusions." Id. (citing Nat'l Parks & Conservation Assoc. v. Babbitt, 241 F.3d 722, 736-37 (9th Cir. 2001) (holding agency action was highly controversial because "comments urg[ing] that the EA's analysis was incomplete, and the mitigation uncertain, . . . cast substantial doubt on the adequacy of the Parks Service's methodology and data," and thus the dispute went "beyond a disagreement of qualified experts over the 'reasoned conclusions' as to what the data reveal[ed]"); Nat'l Wildlife Fed'n, 332 F. Supp. 2d at 185 ("Such a controversy exists where the Corps is presented with scientific evidence specifically evaluating the environmental effects of the proposed project or calling into question the adequacy of the EA."); Fund for Animals v. Norton, 281 F. Supp. 2d 209, 235 (D.D.C. 2003) ("While plaintiffs have identified serious gaps in defendants' assessment of the local effects of the proposed action, they do not appear to have identified any scientific controversy *per se* as to the extent of the effects."); Sierra Club v. Van Antwerp, 719 F. Supp. 2d 58, 67-68 (D.D.C. 2010) ("While declarations were submitted to the Corps from numerous experts who claimed that [the development project] will have significant adverse impacts on Cypress Creek and its wetlands, these declarations alone fail to rise to the level of 'controversy' under NEPA."), aff'd in part, rev'd in part on other grounds, 661 F.3d 1147 (D.C. Cir. 2011), as amended (Jan. 30, 2012)); but cf. Humane Soc. of U.S. v. Dep't of Commerce, 432 F. Supp. 2d 4, 19–20 (D.D.C. 2006) (finding agencies' decision not to prepare EIS highly controversial based on comments from plaintiff and other agencies indicating disagreement with agencies' conclusions).

Here, as evidence of controversy, Standing Rock refers only generally to "the multiple critiques of the Corps' unexamined conclusions, expert evidence indicating greater risks, and

critical comment from other federal agencies." SRST MSJ at 20-21. The Tribe does not help the

Court to evaluate its argument by, for example, following these general references with specific

statements made by the Tribe, agencies, or experts critiquing the Corps' methodology or data. In

any event, based on its review of the record, the Court first concludes that none of the evidence

before the Corps as of July 25, 2016 — including Standing Rock's comments, see ECF No. 159-

1, Exh. C (SRST Comments on Draft EA, Jan. 8, 2016); id., Exh. D (SRST Suppl. Comments on

Draft EA, Mar. 24, 2016); ECF No. 209-6 at 51 (Notes for Feb. 18-19, 2016, Tribal Meeting);

ECF No. 209-9 at 33 (Letter from Waste Win Young to Martha Chieply, Feb. 25, 2015), and

submissions from the EPA and the Department of the Interior, see ECF No. 209-7 at 21 (Letter

from Lawrence Roberts to Brent Cossette, Mar. 29, 2016), ECF No. 209-16 at 184 (Letter from

Philip Strobel to Brent Cossette, Jan. 8, 2016), ECF No. 209-8 at 123 (Letter from Philip Strobel

to Brent Cossette, Mar. 11, 2016), ECF No. 209-9 at 209 (Email "Quick Summary of Conference

Call with EPA," Feb. 25, 2016) — suggested substantial methodological or data flaws in the

Corps' analysis.

  The expert reports submitted to the Corps after the Final EA was published but before the

Corps again decided in February 2017 that an EIS was not required, see Semonite Memo at 14,

however, do present such scientific critiques. See, e.g., EarthFax Report at 1-3 (critiquing EA

for considering spill volumes from pipelines generally, rather than from pipelines with 16-inch or

larger diameters, like DAPL); id. at 4 (suggesting EA used incorrect river-flow rates to assess

spill impacts); id. at 5-7 (explaining EA used inappropriate benzene-concentration limits); id. at

9 (arguing EA should have included quantitative analysis of risk of failure of system

components); id. at 9 (contending EA wrongly relied upon premise that emergency block valves

would close immediately upon leak detection); Accufacts, Inc. Review at 7 (stating corrosion

33

threats should be assessed based on field readings of in-line inspection runs, not assumed rates); id. at 9-10 (arguing that complete risk analysis required, *inter alia*, consideration of pipeline elevation profile, maximum operating pressure, location of mainline valves, location and type of "critical leak detection monitoring devices by milepost").

It may well be the case that the Corps reasonably concluded that these expert reports were flawed or unreliable and thus did not actually create any substantial evidence of controversial effects. Dakota Access, for example, offers a scathing assessment of the reports' "material flaws." DA SRST Opp. at 21 n.4. But the Corps never said as much. Its February 3, 2017, memo determining that the Final EA and FONSI satisfied NEPA's requirements and supported the decision to grant the easement is devoid of any discussion of the methodological and data flaws identified in the reports. Indeed, it acknowledges receiving only Standing Rock's Accufacts, Inc. Review and wholly ignores the others. See Semonite Memo at 12. As the agency did not demonstrate that it considered, as the CEQ regulations require, the degree to which the project's effects are likely to be highly controversial, despite being presented with evidence of scientific flaws, the Court cannot conclude that the Corps made a convincing case of no significant impact or took the requisite hard look. The remedy for such violation is discussed in Section III.D, *infra*.

### iii. Cumulative Risk

Finally, the Tribe contends that the EA "fails to consider the cumulative risk imposed by the pipeline." SRST MSJ at 22 (citing 40 C.F.R. § 1508.27(b)(7) ("Significance exists if it is reasonable to anticipate a cumulatively significant impact on the environment.")). "Cumulative impact is the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what

agency (Federal or non-Federal) or person undertakes such other actions." 40 C.F.R. § 1508.7. Such impacts "can result from individually minor but collectively significant actions taking place over a period of time." Id. Other pipelines cross under the Missouri River, but, the Tribe states, the EA does not analyze how the addition of DAPL compounds the overall risk of a pipeline spill in the Missouri River, nor does it consider "the cumulative risk to Tribal resources from the rest of the pipeline outside Lake Oahe." SRST MSJ at 23; see also id. at 23 n.12 (criticizing Corps for "unlawfully segmenting its NEPA review of one pipeline into [three] separate components"). This argument, like the Tribe's first in this subsection, does not succeed.

The EA devotes eleven pages to a discussion of cumulative impacts on eleven types of resources, including geology and soils, water and aquatic life, agriculture, land use, cultural and historic resources, and environmental justice. See EA at 98-107. It acknowledges at the outset that in the vicinity of the Oahe crossing are "oil and gas development and associated infrastructure, utility installation, and agriculture," and that the pipeline at the Oahe crossing is co-located with "a natural gas pipeline and a 345 kV power line." EA at 98. Although the EA does not expressly state whether the presence of other pipelines increases the risk that DAPL (or those pipelines) will rupture, it acknowledges the potential for unanticipated releases and refers back to the analysis of minimization and remediation activities to conclude that the potential cumulative impacts on water and aquatic resources from spills "would be minor." Id. at 101. It also considers the benefits of co-location, such as minimized land-use disturbance from construction. Id. at 105. The EA therefore does not simply conclude absent any actual analysis that cumulative impacts would be minimal; on the contrary, there is enough to "allow the Court to review the agency's finding." Friends of the Earth, Inc. v. U.S. Army Corps of Eng'rs, 109 F. Supp. 2d 30, 42 (D.D.C. 2000).

The Corps, moreover, was not required to consider the impacts from the whole pipeline. See Sierra Club v. U.S. Army Corps of Eng'rs, 803 F.3d 31, 34 (D.C. Cir. 2015) (holding that where federal easement and CWA permitting encompassed only five percent of pipeline's length, "the federal government was not required to conduct NEPA analysis of the entirety of the . . . pipeline, including portions not subject to federal control or permitting"); Sierra Club v. Bostick, 787 F.3d 1043, 1051-54 (10th Cir. 2015) (holding Corps was not required to prepare NEPA analysis of entire pipeline when verifying NWPs for 485-mile oil pipeline crossing over 2,000 waterways); Winnebago Tribe of Neb. v. Ray, 621 F.2d 269, 272-73 (8th Cir. 1980) (same for electric utility line). That it did not address the cumulative risk from the entire pipeline thus does not run afoul of NEPA.

c.  Impacts Analysis Re: Treaty Rights

In addition to challenging the EA's analysis of the risk of a spill, Standing Rock raises concerns about its discussion of the effects of the project, including a potential spill, should one occur, on the Tribe's Treaty rights.  According to Standing Rock, "NEPA requires the Army Corps to disclose and assess the suite of risks from the Lake Oahe crossing to the full range of the Tribe's Treaty rights, in the context of the Corps' heightened trust responsibilities."  SRST MSJ at 24.  Here, the relevant Treaty rights are those implicating water, hunting, and fishing.  Id. at 25; Corps SRST MSJ at 20; see also Winters v. United States, 207 U.S. 564, 576-78 (1980) (holding that when federal government creates an Indian reservation, it impliedly reserves otherwise unappropriated water to extent necessary to accomplish purposes of reservation); Fort Laramie Treaty of 1851, art. 55, 11 Stat. 749, 1851 WL 7655 (reserving for the Sioux tribes "the privilege of hunting, fishing, or passing over" lands described in Treaty); United States v. Dion, 476 U.S. 734, 738 (1986) ("As a general rule, Indians enjoy exclusive treaty rights to hunt and

36

fish on lands reserved to them, unless such rights were clearly relinquished by treaty or have been modified by Congress.").  The Court first explains the manner of the Corps' analysis of these rights and then turns separately to the effect of construction and the impact of a spill on such rights.

### i.  Manner of Analysis

Before turning to whether the Corps adequately considered these impacts, the Court discusses how it was required to do so.  The Tribe contends that the Corps had to address these Treaty rights *qua* Treaty Rights, see SRST MSJ at 25-26; SRST Reply at 23-24, whereas the Corps asserts that it needed only to consider the effects on the resources implicated by the Treaty rights — *i.e.*, water, fish, and game.  See Corps SRST MSJ at 20-21 & n.9.  To explain more fully, Standing Rock believes that the Corps' position "misunderstands the Tribe's Treaty rights," which "embody the fundamental rights of a people tied to a place since time immemorial" and thus demand a more "existential" analysis.  See SRST Reply at 23-24.  For example, the Tribe explains that, although "[e]cological impacts to fish and game habitat and populations present one dimension" of the impacts of an oil spill on aquatic resources, "[t]he impact to Tribal members of losing the right to fish and hunt, which provides both much-needed subsistence food to people facing extensive poverty as well as a connection to cultural practices that Tribal members have engaged in since time immemorial, is a separate issue."  Id.

Standing Rock may be right that the construction and operation of DAPL under Lake Oahe could affect its members in the broad and existential ways it details, but it offers no case law, statutory provisions, regulations, or other authority to support its position that NEPA requires such a sweeping analysis.  The Corps, conversely, points to several cases in which courts have approved an approach consistent with its view of its NEPA obligations — *i.e.*, an

37

agency may assess impacts on treaty rights by analyzing the effects on a specific resource identified in the treaty. See Ground Zero Ctr. for Nonviolent Action v. Dep't of the Navy, 918 F. Supp. 2d 1132, 1152 (W.D. Wash. 2013), on reconsideration in part No. 12-1455, 2013 WL 357509 (W.D. Wash. Jan. 29, 2013) (assessing impact on tribe's treaty fishing rights by considering surveys of fish patterns and Navy's mitigation efforts); Nw. Sea Farms, Inc. v. U.S. Army Corps of Eng'rs, 931 F. Supp. 1515, 1521-22 (W.D. Wash. 1996) (explaining Corps correctly concluded that project would impair treaty fishing rights by considering impact on tribe's access to fish); No Oilport! v. Carter, 520 F. Supp. 334, 356–57 (W.D. Wash. 1981) (concluding EIS's discussion of effect of pipeline rupture on "the fish resource," including via maps, adequately evaluated project's impact on tribe's treaty fishing rights). Absent any controlling or persuasive authority to the contrary, the Court sees no basis on which to conclude that NEPA demands the type of existential-scope analysis the Tribe advocates. Rather, it is sufficient that the agency adequately analyze impacts on the resource covered by a given treaty.

The next question, then, is whether the agency's weighing of those relevant Treaty rights here — *viz.*, water, fishing, and hunting — was adequate. The Court approaches that question by looking at the Corps' assessment of the impacts on the different Treaty rights from (1) the construction of the pipeline, and (2) an unanticipated oil spill. In so doing, the Court keeps in mind the definition of "hard look" recently articulated by the D.C. Circuit: "[A]n agency has taken a 'hard look' at the environmental impacts of a proposed action if the statement contains sufficient discussion of the relevant issues and opposing viewpoints, and the agency's decision is fully informed and well-considered." Myersville Citizens for a Rural Community, Inc. v. FERC, 783 F.3d 1301, 1324-25 (D.C. Cir. 2015).

The EA discussed in several places the potential impact of DAPL's construction on water resources, fish, and wildlife at Lake Oahe. See EA at 36 (acknowledging that, during HDD-construction phase, drilling fluid could inadvertently be released "directly or indirectly into the waterbody" and discussing mitigation measures); id. at 37 (explaining water required for HDD construction and hydrostatic testing at Oahe crossing would not be obtained from Lake Oahe); id. at 38 ("No waterbody would be permanently drained or filled as part of the DAPL Project, and effects on waterbodies are expected to be short-term and minor."); id. at 45 (addressing impacts of construction activities on groundwater); id. at 50 (explaining no wetlands exist within Oahe Project Area or Connected Action Area); id. at 58 (discussing "[t]emporary impacts on wildlife" that "could occur during construction," including displacement of "larger and more mobile animals"); id. ("No impacts to treaty fishing and hunting rights are anticipated due to construction within the Project Area or Connected Actions."); id. at 69 (discussing possible adverse impacts on "fish eggs, juvenile fish survival, benthic community diversity and health, and spawning habitat," as well as "fish fry[] and invertebrates inhabiting the river," from "subsurface disturbing activities," inadvertent release of drilling mud, and water withdrawal from Missouri River); id. at 75 ("The recreational enjoyment of wildlife (such as hunting or bird watching) may be temporarily affected by construction activities, depending on season and location."). Because the EA "clearly addressed" these impacts and concluded that they would either be insignificant or could be mitigated, the Court finds that, in this respect, it was adequate. See Minisink Residents for Envtl. Pres. & Safety v. FERC, 762 F.3d 97, 112 (D.C. Cir. 2014) (finding EA adequately examined compressor-station project's impact on property values where it recognized some adverse impacts might accrue but could be mitigated).

39

### iii. Spill Impacts

As to the second issue — namely, the spill effects —the Tribe contends that the EA "never examined the impacts of spills on the Tribe and its Treaty rights." SRST Reply at 1. The Court agrees in part.

First, it bears noting that even though a spill is not certain to occur at Lake Oahe, the Corps still had to consider the impacts of such an event on the environment. "[A]n agency conducting an EA generally must examine both the probability of a given harm occurring and the consequences of that harm if it does occur." New York v. Nuclear Regulatory Comm'n, 681 F.3d 471, 482 (D.C. Cir. 2012). "Only if the harm in question is so 'remote and speculative' as to reduce the effective probability of its occurrence to zero may the agency dispense with the consequences portion of the analysis." Id. (quoting Limerick Ecology Action, Inc. v. Nuclear Regulatory Comm'n, 869 F.2d 719, 739 (3d Cir. 1989)). Yet, "the finding that the probability of a given harm is nonzero does not, by itself, mandate an EIS: after the agency examines the consequences of the harm in proportion to the likelihood of its occurrence, the overall expected harm could still be insignificant and thus could support a FONSI." Id.; see also Gov't of the Province of Manitoba v. Salazar, 691 F. Supp. 2d 37, 50 (D.D.C. 2010) ("It may be that the risk of a breach is low given the pipeline's construction, but that is not an excuse for Reclamation to refuse entirely to analyze the consequences. When the degree of potential harm could be great, i.e., catastrophic, the degree of analysis and mitigation should also be great."); Sierra Club v. Watkins, 808 F. Supp. 852, 868 (D.D.C. 1991) (holding that, given disputed evidence concerning the possibility of severe accidents, an agency may not simply "refus[e] to include certain low probability risks" — it must at least "admit that such accidents are possible," determine the probability of occurrence, and "discuss[] their potential effects"). Here, the Corps did not wholly

ignore the consequences of a possible oil spill, despite its conclusion that the risk of such an event was low. On the contrary, it adequately discussed the impacts of such "a low risk/high consequence event," EA at 92, on water — but not on hunting or aquatic — resources.

As to water resources, the EA offered several comments. It acknowledged that, during operations, "[d]rinking water intakes located downstream from the Missouri River and Lake Oahe crossings could be at risk if there was a release that reached these bodies of water in the vicinity of the intake structures," and that "the Standing Rock Sioux . . . have intake structures within the river downstream of the Lake Oahe Project area." Id. at 38; see also id. at 42 ("In the unlikely event of a release during pipeline operations, drinking and irrigation water intakes located downstream from the Missouri River and Lake Oahe crossings could be at risk if hydrocarbons were to reach these bodies of water in the vicinity of the intake structures."); id. at 87 ("Concerns have been expressed regarding an inadvertent release reaching intake structures on Lake Oahe. . . . In the unlikely event of a release, sufficient time exists to close the nearest intake valve to avoid human impact."). Later, the EA further explained: "Accidental releases from the pipeline system during operations could potentially affect groundwater. . . . [C]rude oil released into soil can migrate toward water where certain constituents can dissolve into groundwater or surface water in limited amounts." Id. at 45.

It then presented a model estimating the concentrations of benzene, a potentially toxic compound found in crude oil, that could be released during a very small, small, moderate, or large spill at the Oahe crossing, and discussed how those results might vary during winter months when temperatures are likely to be colder. Id. at 46-47. Even assuming that "[t]he entire volume of a crude oil spill was released due to a catastrophic failure of the pipeline and reached the waterbody; [c]omplete, instantaneous mixing occurred; [and] [t]he entire benzene content of the

41

crude oil was solubilized into the water column," the model concluded that under no spill

scenario would the acute toxicity threshold for aquatic organisms be exceeded, and that under the

"most probable spill volume," benzene concentrations would not "exceed the drinking water

criteria." Id. In addition, at the conclusion of its discussion of the nine spill-risk factors

previously discussed, the EA, under the header "Consequences," stated: "In the event that a

pipeline failure occurs and product is released into the Missouri River at either crossing, the

worst case consequence scenario is ranked high because several drinking water intake High

Consequence Areas (HCAs) and multiple ecologically sensitive HCAs could be impacted." Id.

at 94.

The EA is not similarly attentive, however, to the impacts of a spill on fish or game, the

resources implicated by the Tribe's fishing and hunting rights. As to aquatic resources, the EA

offered only a cursory nod to the potential effects of an oil spill, stating simply that "[t]he

primary issue related to impacts on the aquatic environment from operation of the Proposed

Action would be related to a release from the pipeline." Id. at 69. It never explained, though,

what those effects would be. Instead, it simply reasoned that adherence to Dakota Access's

response plan "would minimize potential impacts on aquatic wildlife." Id. at 69-70; see also id.

at 101. Likewise, regarding hunting, the EA only discussed the effects of construction on

"recreationally and economically important species and nongame wildlife"; it said nothing about

the effects of a spill. Id. at 57-58.

Standing Rock, though, had alerted the Corps to its fishing- and hunting-related concerns

after the agency published the Draft EA. See, e.g., ECF No. 159-1, Exh. C (SRST Comments on

Draft EA, Jan. 8, 2016) at 13 ("[A] pipeline leak would threaten to damage . . . the fish and

wildlife on which many Tribal members depend for subsistence."); ECF No. 159-1, Exh. D

42

153

(SRST Suppl. Comments on Draft EA, Mar. 24, 2016) at 15 ("The waters of Lake Oahe also provide habitat for fish, wildlife, and plants important to the diet . . . of the Tribe."). The Director of Standing Rock's Department of Game, Fish, and Wildlife Conservation, moreover, explained that many of the Tribe's members rely on fishing as "an important supplemental source of food and nutrition" and that the Tribe issued 199 family fishing permits in 2015. See ECF No. 117-16 (Declaration of Jeff Kelly, Nov. 28, 2016), ¶ 5. An oil spill, he said, could "cause extensive fish kills." Id., ¶ 12. He also spelled out the ways in which an oil spill could seriously affect game along the Oahe shoreline, including by poisoning animals that ingest, inhale, or are otherwise externally exposed to oil and preventing those birds and mammals whose feathers or fur are coated with oil from maintaining their body temperatures. Id., ¶ 13. Although the Corps did not have Kelly's declaration before it when it issued the EA in July 2016, his remarks were before the agency when it concluded that the easement could be issued based on the EA absent any supplementation.

Without any acknowledgment of or attention to the impact of an oil spill on the Tribe's fishing and hunting rights, despite Plaintiff's efforts to flag the issue, the EA — in this limited respect — was inadequate. The appropriate remedy for such omission is discussed in Section III.D, *infra*.

### 2. *Alternatives*

To comply with NEPA, an Environmental Assessment must include a "'brief discussion[]' of reasonable alternatives to the proposed action." Myersville, 783 F.3d at 1323 (quoting 40 C.F.R. § 1508.9(b)). This consideration "need not be as rigorous as the consideration of alternatives in an EIS." Id.; compare 40 C.F.R. § 1508.9(b) (requiring "brief discussion[]") with id. § 1502.14(a) (requiring agency to "[r]igorously explore and objectively

43

evaluate all reasonable alternatives" when EIS required).  "An alternative is 'reasonable' if it is

objectively feasible as well as 'reasonable in light of [the agency's] objectives.'"  Myersville,

783 F.3d at 1323 (quoting Theodore Roosevelt Conservation P'ship v. Salazar, 661 F.3d 66, 72

(D.C. Cir. 2011)).  An agency's "specification of the range of reasonable alternatives is entitled

to deference."  Id.

Standing Rock believes that the Environmental Assessment lacks an adequate

consideration of such alternatives.  Specifically, the Tribe posits that the EA did not

appropriately examine an alternative route that would have had the pipeline cross the Missouri

River further north.  See SRST MSJ at 26, 30-31.  The Court disagrees: on this front, the EA

adequately discharged the Corps' NEPA obligations.

Before settling on the current DAPL route, Dakota Access considered routing the

pipeline to cross Lake Oahe approximately 10 miles north of Bismarck, North Dakota — i.e.,

approximately 50 miles north of its current location, which sits just 0.5 miles north of the

Standing Rock Reservation.  See EA at 8, 161 (Figure 13).  The Company soon determined,

however, that that route was not "a viable alternative."  Id.  The EA explains why.  A table

therein compares the Bismarck and Oahe crossings in terms of overall route mileage; co-location

with other pipelines and powerlines; the number of existing pipelines, floodplains, water

features, and powerlines crossed; miles of agriculture, developed/low intensity, developed/open

space, and grass/pasture land crossed; whether Corps-owned land would be crossed; the number

of waterbodies crossed; the number of high-consequence areas affected; and the number of

transportation crossings.  Id. at 9-10.  A separate table compares the two crossings in terms of

total pipeline and total HDD length, as well as in terms of cost for road/railroad bores,

44

installation for non-HDD areas, HDD, geotechnical investigation, above-ground facilities, right-of-way acquisition, and engineering and consulting. Id. at 11.

That data reveals that the Bismarck alternative would have required an additional 11 miles of pipeline, "consisting of roughly 165 additional acres of impact," 11 more floodplain crossings, 1 more powerline crossing, and 27 more transportation crossings. Id. at 8-10. In addition, it would have "crossed through or in close proximity to several wellhead source water protection areas" and "crossed other populated PHMSA high consequence areas" — *i.e.*, "locales where a release from a pipeline could have the most significant adverse consequences" — "not present on the [selected] route." Id. at 8. The North Dakota Public Service Commission, moreover, requires a 500-foot residential buffer, which would have "severely constrained" the Bismarck route. Id. By contrast, on the Reservation, the residence closest to the pipeline at Oahe is located more than 1.5 miles away. Id. at 86. And finally, the Bismarck alternative would have cost nearly $33 million more and been co-located with other pipelines or utility corridors for only 3% of the route as compared to the selected route's 41%. Id. at 9, 11.

Standing Rock largely focuses its critique on the EA's reliance on a memo prepared by DAPL consultants, which it argues offers "a one-sided analysis that considered downstream impacts for the Bismarck alternative, but not for the Oahe crossing." SRST MSJ at 30. But that memo, which the EA does not expressly cite, provides another reasonable basis on which the Corps could have rejected the Bismarck crossing in favor of Oahe. It explains that the two closest municipal-water intakes to the Bismarck crossing would have been at Mandan, 7.3 miles downstream and serving 19,381 people, and Bismarck, 11.6 miles downstream and serving 65,123 people. See ECF No. 209-16 at 18 (Memorandum from Tom Siguaw, Dakota Access, & Steve Rove, HDR Engineering, Apr. 12, 2016). The first downstream intake from the Oahe

45

156

crossing, comparatively, is 4.2 miles downstream but is non-tribal and for agricultural use.  Id.
The second is 7.6 miles downstream and is used by Standing Rock also for agricultural purposes.
Id.  The third — and the first to be used for drinking water — is 11.1 miles downstream and
belongs to the South Central Regional Water District, which serves 3,491 people in Emmons
County, North Dakota.  Id.  The fourth — and the first Standing Rock intake for public
consumption — is 26.2 miles downstream at Fort Yates and serves 229 people in Fort Yates and
up to 4,317 in Sioux County.  Id.  The Bismarck crossing thus would have been much closer —
nearly four miles — to a drinking-water intake than the Oahe crossing.  The drinking-water
intakes near Bismarck also serve many more people than the two closest to the Oahe crossing.
This difference will be even more pronounced once construction is complete on a new water-
intake structure being built to serve all communities on the Standing Rock Reservation, as that
system will be located approximately 50 miles further downstream from the Oahe crossing than
the existing structure serving the Tribe at Fort Yates.  See Cooper Memo at 19.

        This is not to say that the EA's analysis of the Bismarck alternative is without flaws.  As
the Cooper Memo points out, when counting the number of wetland and water features crossed,
the EA uses raw numbers of crossings, rather than "the total [number] of impacts measured as
acreage or linear feet," which would have given "a more accurate comparison of the route."
Cooper Memo at 9.  And although the Bismarck route would have crossed PHMSA high-
consequence areas that the Lake Oahe route does not, the Lake Oahe route also crosses high-
consequence areas.  Id.; EA at 94.  Despite these issues, by identifying and comparing several
features of the two routes as described, the EA easily clears NEPA's hurdle requiring "brief
discussion" of reasonable alternatives.

46

### 3. *Environmental Justice*

Standing Rock next contends that the Corps' environmental-justice analysis was arbitrary and capricious. A 1994 Executive Order requires that, "[t]o the greatest extent practicable and permitted by law," federal agencies "shall make achieving environmental justice part of [their] mission by identifying and addressing, as appropriate, disproportionately high and adverse human health or environmental effects of [their] programs, policies, and activities on minority populations and low-income populations." Exec. Order 12,898, Federal Actions to Address Environmental Justice in Minority Populations and Low-Income Populations, 59 Fed. Reg. 7629 (Feb. 11, 1994), § 1-101. The Order expressly states that it does not create a private right to judicial review, id. § 6-609, but the D.C. Circuit has permitted challenges to environmental-justice analyses under NEPA and the APA. See Communities Against Runway Expansion, Inc. v. F.A.A., 355 F.3d 678, 689 (D.C. Cir. 2004) ("The [agency] exercised its discretion to include the environmental justice analysis in its NEPA evaluation, and that analysis therefore is properly subject to arbitrary and capricious review under the APA.").

As the EA acknowledges, see EA at 84, the Council on Environmental Quality developed guidance to assist federal agencies in ensuring that environmental-justice concerns "are effectively identified and addressed." ECF No. 117-19 (CEQ, Environmental Justice Guidance Under the National Environmental Policy Act, Dec. 10, 1997) at 1. That guidance instructs that agencies "should consider the composition of the affected area, to determine whether minority populations, low-income populations, or Indian tribes are present in the area affected by the proposed action, and if so whether there may be disproportionately high and adverse human health or environmental effects on minority populations, low-income populations, or Indian tribes"; "should recognize the interrelated cultural, social, occupational, historical, or economic

47

factors that may amplify the natural and physical environmental effects of the proposed agency action"; and "should recognize that the impacts within . . . Indian tribes may be different from impacts on the general population due to a community's distinct cultural practices." Id. at 9. "Where environments of Indian tribes may be affected," CEQ advises, "agencies must consider pertinent treaty, statutory, or executive order rights and consult with tribal governments in a manner consistent with the government-to-government relationship." Id. at 14. Finally, the "unit of geographic analysis" for the environmental-justice assessment should "be chosen so as not to artificially dilute or inflate the affected minority population." Id. at 26.

Here, the Corps defined the unit of geographic analysis for its environmental-justice assessment as a 0.5-mile radius around the crossing, yielding a focus on the two census tracts in which the HDD boreholes would be drilled — *i.e.*, the places on either side of Lake Oahe at which the pipeline would enter the ground to pass under the water. See EA at 84. Those two census tracts were in Morton County and Emmons County; they did not include Sioux County, where the Reservation is located. Id. at 80, 83.

To identify the impact of the project on the populations in the chosen census tracts, the Corps compared the average demographic data from the two census tracts to that of "counties in the general vicinity" of the Oahe crossing — Emmons, Morton, and Sioux Counties — and to that of North Dakota generally. Id. at 84. Specifically, the Corps compared the areas by percentage of racial minorities and percentage of persons living below the poverty level. Id. at 83. That data analysis revealed that the minority population in the two census tracts was 2% — *i.e.*, 29% lower than the minority population in the general-vicinity counties and 9% lower than the minority population in North Dakota as a whole. Id. at 83, 85. It also showed that the percentage of persons living below the poverty level in the two census tracts was 9%. Id. at 83.

48

The EA states that this figure was 3% lower than the impoverished population in the general-vicinity counties and 50% higher than in North Dakota as a whole. Id. Based on these comparisons, the EA concluded that "there is no concern regarding environmental justice to minority populations at the Proposed Action Area at . . . Lake Oahe." Id. at 85. In actuality, some of the EA's calculations are incorrect. See Cooper Memo at 24 (identifying one of two errors). Using the correct figures, the percentage of persons living below the poverty line in the two census tracts was 11% lower than in the general-vicinity counties and 3% lower than in North Dakota as a whole. Id. at 83; Cooper Memo at 24. (As will be seen, the calculation errors play no significant role in the outcome on this issue.)

The Tribe challenges the Corps' decision to use a 0.5-mile buffer and the resulting analysis as arbitrary and capricious gerrymandering. See SRST MSJ at 28. The Standing Rock Reservation is 0.55 miles — or 80 yards beyond the 0.5-mile limit — downstream of the HDD site, and the Tribe contends that there was no principled basis on which to narrowly exclude it from the bounds of the Corps' analysis. Id. at 29. It also notes that the two census tracts selected as the "affected area" are "mostly upstream of the crossing site" with a 98% white population. Id. By comparing these tracts to a baseline of three counties that included Sioux County, Standing Rock argues, the EA "compar[ed] an area that will be almost entirely unaffected by a spill from the pipeline, and where few Tribal members live, against a baseline that included a significant portion of the Reservation." Id. "Unsurprisingly," the Tribe observes, the "'affected area' did not have a higher population of minority and low-income people than the claimed baseline, allowing the Corps to dismiss environmental justice concerns." Id.

The Corps and Dakota Access defend the reliance on a 0.5-mile buffer by repeating the justification given in the EA: "Transportation projects, such as under the Federal Transit

49

Administration, and natural gas pipeline projects under the Federal Energy Regulatory Commission . . . typically use a 0.5 mile buffer area to examine Environmental Justice effects." EA at 84; see also id. at 87 ("As stated above, linear projects typically use a 0.5 mile buffer area to examine Environmental Justice effects."); DA SRST Opp. at 29; Corps SRST MSJ at 27.

Although "[t]he 'identification of the geographic area' within which a project's impacts on the environmental resources may occur 'is a task assigned to the special competency of the appropriate agencies,'" Powder River Basin Res. Council v. BLM, 37 F. Supp. 3d 59, 75 (D.D.C. 2014) (quoting Tri-Valley CAREs v. Dep't of Energy, 671 F.3d 113, 1127 (9th Cir. 2012)) (quoting Kleppe v. Sierra Club, 427 U.S. 390, 414 (1976)), the Court is hard pressed to conclude that the Corps' selection of a 0.5-mile buffer was reasonable. DAPL is neither a transportation project nor a natural-gas pipeline; it is a crude-oil pipeline. The EA does not identify any project involving a crude-oil pipeline for which a 0.5-mile buffer was employed. The Corps, likewise, points only to other types of infrastructure projects. See Corps SRST MSJ at 27 (citing Coal. for Healthy Ports v. Coast Guard, No. 13-5347, 2015 WL 7460018, at *25 (S.D.N.Y. Nov. 24, 2015) (project to raise height of bridge); Bitters v. Fed. Highway Admin., No. 14-1646, 2016 WL 159216, at *14 (E.D. Cal. Jan. 13, 2016) (project to reintroduce vehicle traffic lanes to particular streets)).

The Corps nonetheless rejoins that there is no meaningful distinction between those projects and DAPL. Id. ("Analysis of a half-mile buffer, which is appropriate for bridges or other construction projects with street-level noise, traffic or other impacts, is certainly appropriate for the Lake Oahe crossing, where the construction is deep under the bed of Lake Oahe and is staged on private lands."); Corps SRST Reply at 13 n.3 ("[A] bridge that carries rail cars or truck traffic transporting oil or hazardous substances which could just as easily suffer low

probability accidents resulting in releases to the waterways underneath the bridges.").  The problem with the Corps' argument, however, is that the cases it cites did not consider an oil spill when evaluating impacts; if they had, perhaps a different geographic scope may have been selected.  Standing Rock, conversely, points to two oil-pipeline projects for which a much larger affected area was used to assess environmental-justice impacts.  See SRST MSJ at 30 n.16 (citing ECF No. 117-22 (Final Supplemental Environmental Impact Statement, Keystone XL Project) at 3.10-3) (assessing environmental-justice impacts 14 miles downstream of crossings)); SRST Reply at 25 n.23 (citing ECF No. 195-6 (Draft Supplemental Environmental Impact Statement for Line 67 Expansion, Jan. 2017) at 3.0-2 (looking at spill impacts up to 40 river-miles downstream)).

Standing Rock is not the only entity to criticize the 0.5-mile-buffer choice.  In its comments on the Draft EA, the EPA advised the Corps that "the area of analysis to assess potential impacts to EJ communities should correspond to the impacts of the proposed project instead of only the area of construction disturbance."  ECF No. 209-8 at 126 (Letter from Philip Strobel to Brent Cossette, Mar. 11, 2016).  "For oil pipeline projects, potential impacts to EJ communities would include the effects of leaks and spills to downstream water supplies (both drinking water quality, agricultural uses, and costs) and aquatic resources such as fish and riparian vegetation used by EJ populations."  Id.  Even the Corps' Chief Counsel expressed concern about the agency's geographic selection when reviewing the EA's legal sufficiency:

> The Corps' determination of the affected environment . . . can be questioned here. . . .  Sioux County is just outside the 0.5-mile pipeline buffer.  While the equally sized buffer on both sides of the pipeline seems reasonable along land areas, it is arguably less so at water areas because of the potential for water currents to carry a spill downstream.  Sioux County is located just south and downstream of the pipeline.  Thus, the SRST population present immediately outside of the proposed area or affected environment and

51

> downstream reasonably could have been within the area identified
> as the affected environment in the EA. If that area was included, the
> EA would then determine whether there might a disproportionately
> high and adverse human health or environmental effect on the
> SRST.

Cooper Memo at 25-26.

The Corps argues that the Court need not confine its analysis to the use of a 0.5-mile buffer, however, because the EA also devoted a separate section to environmental-justice impacts on the Standing Rock Sioux Reservation. See EA at 85-87. That additional section, as it turns out, does not yield the Corps a full reprieve. The Standing Rock-focused environmental-justice section begins with the "recogni[tion] that the Standing Rock Sioux Tribe is downstream of the Lake Oahe Crossing" and "has a high population of minorities and low-income residents." Id. at 85. It first discusses impacts from the project's construction and anticipated operation, and it explains that: the crossing will be installed via HDD on private lands adjacent to Corps-owned land, HDD drilling has no anticipated environmental effects, the pipeline's route "maintain[s] a minimum distance of 0.5 mile[s] from Tribal land," and the closest residence on the Reservation to the Oahe crossing is more than 1.5 miles away. Id. at 85-86. "As a result of this routing criteria, the nature of the action (construction associated with laying an underground oil pipeline), the short term duration of effects, construction and operation on private lands, the concurrent reclamation activities, state of the art construction techniques, [and] use of high quality materials and standards that meet or exceed federal standards," the EA concludes, "there will be no direct or indirect effects to the Standing Rock Sioux Tribe. This includes a lack of impact to its lands, cultural artifacts, water quality or quantity, treaty hunting and fishing rights, environmental quality, or socio-economic status." Id. at 86. Given the absence of impacts, it

continues, "there is no resulting adverse or disproportionate impacts of the Proposed Action with respect to Environmental Justice considerations." Id.

The problem here, as the Tribe points out, is that this analysis covers only construction impacts, not spill impacts. See SRST Reply at 26. As to the effects from a spill (as distinct from the risk of a spill occurring), the EA's discussion is minimal:

> Concerns have been expressed regarding an inadvertent release reaching intake structures on Lake Oahe. Given the engineering design, proposed installation methodology, quality of material selected, operations measures and response plans[,] the risk of an inadvertent release in, or reaching, Lake Oahe is extremely low. While the locations of water intakes is not public information for disclosure in this document, there are private and/or non-tribal intakes closer to the Lake Oahe crossing than any intakes owned by the tribe; further demonstrating the lack of disproportionate impacts of an inadvertent release to the Tribe and the reservation. We understand that due to the rural nature of this area, tribal drinking water supplies are obtained from a combination of wells and surface area. The siting and construction of oil pipelines upstream of drinking water intakes is not uncommon throughout the United States and is not considered an Environmental Justice issue. In the unlikely event of a release, sufficient time exists to close the nearest intake valve to avoid human impact.

EA at 87. This limited analysis, the Court believes, is not enough to discharge the Corps' environmental-justice responsibilities under NEPA.

"The purpose of an environmental justice analysis is to determine whether a project will have a disproportionately adverse effect on minority and low income populations." Allen v. Nat'l Institutes of Health, 974 F. Supp. 2d 18, 47 (D. Mass. 2013) (quoting Mid States Coal. for Progress v. Surface Transp. Bd., 345 F.3d 520, 541 (8th Cir. 2003)). The EA takes some steps toward satisfying this purpose. It acknowledges that Standing Rock, a community with a high percentage of minorities and low-income individuals, is based downstream of the Oahe crossing and could be affected by an oil spill, and it observes — without providing any specifics — that a

53

non-tribal community's drinking-water intake is closer to the Oahe crossing than is Standing Rock's. But these statements are not enough to reasonably support the conclusion that the Tribe will not be disproportionately affected by an oil spill in terms of adverse human health or environmental effects. See CEQ Guidance at 9.

The EA is silent, for instance, on the distinct cultural practices of the Tribe and the social and economic factors that might amplify its experience of the environmental effects of an oil spill. Id. at 9, 14. Standing Rock provides one such example in its briefing: many of its members fish, hunt, and gather for subsistence. See SRST MSJ at 41. Losing the ability to do so could seriously and disproportionately harm those individuals relative to those in nearby non-tribal communities.

The Corps need not necessarily have addressed that particular issue, but it needed to offer more than a bare-bones conclusion that Standing Rock would not be disproportionately harmed by a spill. Given the cursory nature of this aspect of the EA's analysis, the Court agrees with the Tribe that the Corps did not properly consider the environmental-justice implications of the project and thus failed to take a hard look at its environmental consequences. Once again, the remedy for such omission is considered in Section III.D, *infra*.

### B. Decision to Grant the Easement

The Tribe's second set of arguments centers around the Corps' February 8, 2017, decision to grant an easement to Dakota Access to construct and operate DAPL under Lake Oahe. As a reminder, the Corps had previously said, in a memo issued on December 4, 2016, that it would not grant such an easement based on the current record and would undertake additional analysis before making a final decision. Standing Rock first contends that the Corps' February 2017 easement decision was an arbitrary and capricious reversal of its previous

position.  It also asserts that the decision was in conflict with the Corps' trust-responsibility

obligations.  The Court addresses each in turn.

### 1.  *Policy Change*

When an agency action changes or reverses a prior policy, it must "display awareness

that it is changing position"; it may not, *e.g.*, "depart from a prior policy *sub silentio*."  FCC v.

Fox Television Stations, Inc., 556 U.S. 502, 515 (2009).  It also "must show that there are good

reasons for the new policy."  Id.  Generally, however, those reasons need not be better than the

reasons for the old policy.  To satisfy the APA's procedural-correctness requirements, it is

sufficient "that the new policy is permissible under the statute, that there are good reasons for it,

and that the agency believes it to be better, which the conscious change of course adequately

indicates."  Id.  Sometimes, though, more is required.  If the "new policy rests upon factual

findings that contradict those which underlay its prior policy," the agency must "provide a more

detailed justification than what would suffice for a new policy created on a blank slate," for "[i]t

would be arbitrary and capricious to ignore such matters."  Id.; see also id. at 537 (Kennedy, J.,

concurring) ("[A]n agency's decision to change course may be arbitrary and capricious if the

agency ignores or countermands its earlier factual findings without reasoned explanation for

doing so. An agency cannot simply disregard contrary or inconvenient factual determinations

that it made in the past, any more than it can ignore inconvenient facts when it writes on a blank

slate.").  The agency need not, though, "refute the factual underpinnings of its prior policy with

new factual data."  United States Sugar Corp. v. Envtl. Prot. Agency, 830 F.3d 579, 626 (D.C.

Cir. 2016), on reh'g en banc in part No. 11-1108, 2016 WL 7427434 (D.C. Cir. Dec. 23, 2016),

and on reh'g en banc, 2016 WL 7427453 (D.C. Cir. Dec. 23, 2016).  It is enough that it offer a

"reasoned explanation . . . for disregarding facts and circumstances that underlay . . . the prior policy." <u>Fox</u>, 556 U.S. at 516.

Standing Rock argues that the Corps' decision to grant the easement on February 8, 2017, was a reversal of the decision announced in the December 4, 2016, memorandum. Because the Corps "failed to address, let alone provide a reasoned explanation for, abandoning the determinations undergirding its December 4 decision to require an EIS," the Tribe contends, its action was arbitrary and capricious. <u>See</u> SRST MSJ at 36.

In response, the Corps and Dakota Access first argue that <u>Fox</u> simply does not apply: the decision to <u>grant</u> the easement was not a change in policy because the Corps had never <u>denied</u> the easement in the first place. <u>See</u> Corps SRST MSJ at 34; DA SRST Opp. at 32. That position, however, mischaracterizes the Tribe's argument. Standing Rock does not assert that the Corps previously denied the easement; indeed, it could not plausibly do so. Assistant Secretary Darcy clearly stated in her December 4 memo: "To date, the Army has not made a final decision on whether to grant the easement." Dec. 4 Memo, ¶ 6. Instead, Standing Rock's argument is that the Corps announced on December 4 that it would "<u>not grant</u> an easement to cross Lake Oahe at the proposed location <u>based on the current record</u>" — as "additional analysis, more rigorous exploration and evaluation of reasonable siting alternatives, and greater public and tribal participation and comments" were merited, <u>id.</u>, ¶ 12 (emphases added) — but nonetheless granted the easement on February 8 without having undertaken such additional analysis. The reversal, then, is the decision to grant the easement on the current record — *i.e.*, as it stood on December 4 — when the Corps had previously said it would not do so. This, the Tribe believes, was arbitrary and capricious. Standing Rock does not, it clarifies in its Reply, assail the withdrawal of the notice of intent to prepare an EIS. <u>See</u> SRST Reply at 30 n.24.

56

The Corps' reversal plainly constituted a change in "official policy."  See, e.g., Alaska Oil & Gas Ass'n v. Pritzker, 840 F.3d 671, 682 (9th Cir. 2016) (applying Fox to policy change in agency's approach to assessing foreseeable threats to endangered species triggered by internal agency memorandum); Sierra Club v. Bureau of Land Management, 786 F.3d 1219, 1226 (9th Cir. 2015) (explaining Fox did not apply to an agency's "evolving analysis" that "was not a change in a published regulation or official policy"); Loving v. I.R.S., 742 F.3d 1013, 1021 (D.C. Cir. 2014) (suggesting Fox applies where initial policy was articulated via testimony to Congress and guidance document — i.e., not final agency actions — and policy change was accomplished via rulemaking).  As the decision to grant the easement on the record as of December 4 did not rest on new factual findings not relied upon by Darcy or ignore or countermand prior factual findings absent reasoned explanation, the Corps need only have shown good reasons for its new policy.  Taking Fox's framework into account, the Court concludes that the Corps here satisfied its dictates.

First, the Corps displayed "awareness that it [was] changing position."  Fox, 556 U.S. at 515.  The February 3, 2017, memo from the Corps' Lieutenant General that recommended granting the easement acknowledged that Darcy had previously "directed the Corps to engage in additional review and analysis concerning" alternative locations, the potential risk of an oil spill and potential impacts to the Tribe, and the Tribe's treaty rights, but explained that, "[a]fter reviewing the record in its entirety and giving further consideration to the input received over the past four months, including additional review and analyses of the subjects identified by [Darcy], other federal executive offices, and the SRST, the Corps finds that the Final EA concerning the crossing of the DAPL at Lake Oahe is sufficient and does not need further supplementation."  Semonite Memo at 9, 11.

Second, the Corps provided a reasoned explanation for its new policy. Darcy's memo affirmed that "the Corps' prior reviews and actions" — including the EA and FONSI — "comported with legal requirements." Dec. 4 Memo, ¶ 15. Her "policy decision" that "a more robust analysis of alternatives [could] be done and should be done" was "based on the totality of the circumstances" — namely, "the specific mandates of the Mineral Leasing Act (30 U.S.C. § 185), the involvement of historic tribal homelands, the close proximity to reservation lands that extend into the potentially affected waters, and the potential impacts on treaty hunting and fishing rights." Id. In reversing course, the Corps started from the same premise as Darcy — *viz.*, that the EA and FONSI satisfied NEPA's requirements. See Semonite Memo at 10. It then explained that the EA "fully informed . . . the decision on whether to grant an easement under the Mineral Leasing Act." Id. Supplementation of an EA or EIS, it noted, is required by CEQ NEPA regulations only when there are "substantial changes in the proposed action that are relevant to environmental concerns" or when "significant new circumstances or information relevant to environmental concerns" emerge after an EA or EIS is final. Id. at 11 (quoting 40 C.F.R. §§ 1502.9(c)(1)(i), (ii)).

Here, the proposed action described in the EA did not change between July 2016 and February 2017. Id. The Corps also concluded that no new significant circumstances or information relevant to environmental concerns, including the federal government's trust relationship to the Tribe, the Corps' analysis of alternatives, risks from oil spills, and the impact of a spill on the Tribe's Treaty rights and water intakes, had emerged since the EA was finalized. It did so by comparing the various letters received from the Tribe after the EA was issued, including its expert report, with comments the Tribe previously submitted on the Draft EA, as well as by looking at the Corps' analysis in the Final EA, the subsequent review memos, and the

58

36 special conditions imposed on the easement.  Id. at 11-13.  In response to the Interior

Solicitor's memo "address[ing] a series of issues rooted in the perceived risk that the DAPL

would leak into Lake Oahe," the Corps explained that, as set out in the EA and Cooper Memo,

the risk of a spill was low and was further mitigated by the easement conditions.  Id. at 13.

By explaining why it was not compelled by the Tribe's letters, the Interior Solicitor's

Opinion, or the Corps' post-EA reviews to supplement the EA — which Darcy did not dispute

was legally sound — the Corps did enough to satisfy the APA's requirements regarding policy

reversals.

### 2.  *Trust Responsibilities*

In addition to challenging the decision to grant the easement as an arbitrary-and-

capricious reversal of prior agency policy, Standing Rock contends that this and other

authorizations to cross Lake Oahe violate the Corps' trust responsibility to protect the Tribe's

Treaty rights.  This trust responsibility, the Tribe argues, is "even higher than the one imposed by

NEPA."  SRST MSJ at 39.  In other words, "compliance with general environmental statutes" is

not sufficient "to discharge [the Corps'] trust duty"; a greater fiduciary duty is required.  See

SRST Reply at 34.

As best the Court can tell from the briefing, the Tribe argues that the Corps' failure to act

in accordance with its trust-responsibility obligations renders the granting of the easement

arbitrary and capricious under the APA.  See SRST MSJ at 35-43 (situating discussion of Treaty

rights under heading stating "The Granting of the Easement and Other Corps Authorizations is

Arbitrary, Capricious, and Contrary to Law"); SRST Reply at 30-34 (similar).  Whether that is so

or Plaintiff intends to also state a separate breach-of-trust action, see ECF No. 106-1 (SRST First

Amended Complaint), ¶¶ 266-285 (stating separate claims for relief for breach of trust

59

responsibility and violation of APA), Standing Rock's position comes up short for the same reason.

According to the Tribe, to fulfill its trustee duties, the Corps needed to "have before it a full and comprehensive understanding of how the project impacts treaty rights and tribes." SRST MSJ at 40. It did not so have here, the Tribe asserts, because it "assumed oil spills will never happen and on that basis refused to consider the impacts of an oil spill on the Tribe's Treaty rights and resources." Id. Standing Rock further argues that the Corps did not fulfill its fiduciary obligation to share information about the project, as it withheld from the Tribe the spill assessment, spill-response plans, and environmental-justice and route analyses. Id. at 41-42.

The problem for Standing Rock, however, is that "[t]he trust obligations of the United States to the Indian tribes are established and governed by statute rather than the common law." United States v. Jicarilla Apache Nation, 564 U.S. 162, 165 (2011). To bring a breach-of-trust claim, the Tribe "must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." United States v. Navajo Nation, 537 U.S. 488, 506 (2003). Standing Rock asserts that "[t]he federal government has a duty, arising from the Treaties and the federal trust responsibility, and reinforced in the MLA and other statutes, to protect treaty rights and resources," but it does not point in its Motion to a specific statute, treaty, executive order, or other provision that gives rise to specific fiduciary duties. See SRST MSJ at 39. In its Reply, the Tribe cites Section 185(h)(2)(D) of the Mineral Leasing Act, which provides that the Corps, "prior to granting a right-of-way or permit . . . for a new project which may have a significant impact on the environment," shall impose "requirements to protect the interests of individuals living in the general area of the right-of-way or permit who rely on the fish, wildlife, and biotic resources of

the area for subsistence purposes." 30 U.S.C. § 185(h)(2)(D); see SRST Reply at 36. Yet that provision does not contain any trust or fiduciary language, and, in any case, the Corps imposed such conditions on the easement. See Easement at 37-43. "Without an unambiguous provision by Congress that clearly outlines a federal trust responsibility, courts must appreciate that whatever fiduciary obligation otherwise exists, it is a limited one only." N. Slope Borough v. Andrus, 642 F.2d 589, 612 (D.C. Cir. 1980). "Thus, although the United States does owe a general trust responsibility to Indian tribes, unless there is a specific duty that has been placed on the government with respect to Indians, this responsibility is discharged by the agency's compliance with general regulations and statutes not specifically aimed at protecting Indian tribes." Morongo Band of Mission Indians v. FAA, 161 F.3d 569, 574 (9th Cir. 1998).

Standing Rock argues that the line of cases requiring a showing that the government owes a specific statutory fiduciary duty is limited to damages actions brought under the Indian Tucker Act, 28 U.S.C. § 1505, which waives sovereign immunity for certain claims brought by a tribe against the United States. That statute, it contends, does not apply here because "the APA establishes both the cause of action and waiver of sovereign immunity." SRST Reply at 36. Recent Circuit precedent, however, undermines such a position.

In El Paso Natural Gas Company v. United States, 750 F.3d 863 (D.C. Cir. 2014), the D.C. Circuit considered, *inter alia*, claims by the Navajo Nation concerning environmental hazards at uranium, waste, and dump sites. As to the Tribe's breach-of-trust cause of action, the court held that it had failed to state a claim for relief because it "ha[d] not identified a substantive source of law establishing specific fiduciary duties, a failure which [was] fatal to its trust claim regardless of whether [the court] read the claim as brought under the APA or under a cause of action implied by the nature of the fiduciary relationship itself." Id. at 892. The Navajo Nation

61

had argued that its breach-of-trust claim could "be maintained either (1) under the APA or (2) under a cause of action inferred from the fiduciary responsibilities undertaken by the Government." Id. The D.C. Circuit concluded that, "[o]n either conception of the claim," its inquiry would be "largely the same because, under controlling precedent, a cause of action will be inferred from a fiduciary relationship only where a plaintiff can identify specific trust duties in a statute, regulation, or treaty. And [that] analysis overlaps with the APA's requirement that a plaintiff allege 'that an agency failed to take a discrete agency action that it is required to take.'" Id. (quoting Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004)).

To explain that conclusion, the court addressed the Supreme Court's case law concerning Indian trust claims and the law of the circuit. It stated, as this Court has above, "The existence of a general trust relationship between the Government and Indian tribes is long established. But this general trust relationship alone does not afford an Indian tribe with a cause of action against the Government . . . . Something more is needed." Id. (citations omitted). It then explained, "[W]e apply these same principles" derived from "Indian trust claims arising in the context of the Indian Tucker Act" to "trust claims brought under the APA." Id. at 892-93; see also id. at 895 ("These principles control here, even though the claim is for equitable relief (not money damages) and even though sovereign immunity is waived under § 702 of the APA (and not the Indian Tucker Act)." Indeed, it noted, the D.C. Circuit has "consistently relied on principles announced in Indian Tucker Act cases in trust cases not arising under the Act." Id. at 895 (citing, e.g., Andrus, 642 F.2d at 611 ("[T]rust responsibility can only arise from a statute, treaty, or executive order."); Cobell v. Norton, 240 F.3d 1081, 1099 (D.C. Cir. 2001) (reiterating that fiduciary relationship depends on substantive laws and stating that "the government's obligations are rooted in and outlined by the relevant statutes and treaties").

62

This Court is bound by El Paso. It thus cannot accept the Tribe's position that "[t]he Tucker Act line of cases has no bearing on the existence of a claim here," SRST Reply at 36, or that of *amici curiae* that the APA affords broader trust enforcement than the statute. See ECF No. 137 (Amicus Brief of Assoc. of American Indian Affairs, *et al.*) at 8. Because Standing Rock has not identified a specific provision creating fiduciary or trust duties that the Corps violated, its breach-of-trust argument — whether considered a separate count or part of its larger APA cause of action — cannot survive.

C. NWP 12

Standing Rock's final claim is that the Corps' decision to issue a verification that the project complied with the terms of Nationwide Permit 12 was arbitrary and capricious. As the Court explained in a previous Opinion, the Rivers and Harbors Act forbids certain construction activities within the "navigable water of the United States" absent permission from the Corps. See Standing Rock I, 205 F. Supp. 3d at 12 (quoting 33 U.S.C. § 403). Because DAPL is, in part, a "structure . . . under . . . a navigable water of the United States," 33 C.F.R. § 322.3(a), Dakota Access required a permit under Section 10 of the RHA. The Corps often authorizes such activities through a general, nationwide permit. Standing Rock I, 205 F. Supp. 3d at 10. Nationwide Permit 12, the general permit at issue here, authorizes "[a]ctivities required for the construction, maintenance, repair, and removal of utility lines and associated facilities in waters of the United States, provided the activity does not result in the loss of greater than 1/2-acre of waters of the United States for each single and complete project." Reissuance of Nationwide Permits, 77 Fed. Reg. 10,184, 10,271 (Feb. 21, 2012). On July 25, 2016, the Corps verified that the Oahe crossing would satisfy the terms and conditions of NWP 12.

63

To qualify for NWP authorization, a permittee must comply with certain General Conditions. General Condition 17, for example, provides that "[n]o activity or its operation may impair reserved tribal rights, including, but not limited to, reserved water rights and treaty fishing and hunting rights." 77 Fed. Reg. at 10,283. General Condition 7 states, moreover, that "[n]o activity may occur in the proximity of a public water supply intake, except where the activity is for the repair or improvement of public water supply intake structures or adjacent bank stabilization." Id. The Tribe argues that because the Oahe crossing does not comply with these conditions, it does not qualify for NWP 12. See SRST MSJ at 43-44.

The Court, however, is already remanding on certain of these issues — *e.g.*, Treaty rights and environmental-justice considerations — and the Tribe offers no other basis for concluding that the project does not comply with GCs 7 and 17.

The Corps, furthermore, asserts that it was not obligated to evaluate whether these General Conditions were satisfied prior to verifying that the project was authorized under NWP 12. See Corps SRST MSJ at 45 (citing Snoqualmie Valley Preservation Alliance v. U.S. Army Corps of Eng'rs, 683 F.3d 1155, 1164 (9th Cir. 2012) ("The nationwide permit system is designed to streamline the permitting process. We decline to impose a new requirement of a full and thorough analysis of each general condition based on documentation the Corps may or may not have.")). Instead, it explains, "[A] permittee must adhere to the General Conditions to maintain eligibility for a Nationwide Permit." Id. (citing 77 Fed. Reg. at 10,282). Standing Rock insists that it is not asking the Court to require the Corps to undertake an in-depth analysis of each General Condition prior to issuing an NWP 12 verification, but rather is simply demanding that the Corps give GCs some attention when faced with "abundant information."

64

SRST Reply at 43; see also id. ("While it need not necessarily conduct a 'full and thorough' analysis of each and every GC, it must deal with the information in front of it.").

The Tribe, however, offers no case law to support its position. Other district courts in this circuit, moreover, have articulated the Corps' obligations as it presents them here. See Sierra Club v. U.S. Army Corps of Eng'rs, 990 F. Supp. 2d 9, 27 (D.D.C. 2013) ("When a prospective permittee files a pre-clearance notice [under the general permit process], the only thing left to be done is for the Corps's district engineers to verify that the planned project does, in fact, fit within the category of activities that the Corps has already authorized."). Given the streamlining and efficiency goals behind the nationwide-permit program, this view makes sense:

> [F]orcing the Corps to perform an extensive environmental review in the verification context under NWP 12 would (i) duplicate work already performed at the nationwide permit stage in pre-clearing this category of activities; (ii) contravene the purpose of the nationwide permit process; (iii) increase exponentially the documentation a permittee must submit to the Corps, including numerous items not specifically delineated as required documentation in the General Conditions; and (iv) multiply the delay and expense associated with verifications so as to render them functionally indistinguishable from individual permit decisions, thus collapsing two conceptually distinct regulatory processes into one.

Mobile Baykeeper, Inc. v. U.S. Army Corps of Eng'rs, No. 14-32, 2014 WL 5307850, at *15 (S.D. Ala. Oct. 16, 2014); see also id. at *16 ("[T]he Corps was not required to study compliance with General Condition 7 before issuing NWP 12 verifications.").

The Court thus agrees that the Corps need not have investigated compliance with General Conditions 7 and 17 before issuing NWP verifications on the DAPL crossing at Lake Oahe, and that its permitting decision was not arbitrary and capricious. This conclusion, however, does not forever insulate the NWP 12 permitting decision from challenge. Dakota Access has a duty to comply with these conditions if it wishes to maintain its eligibility for a Nationwide Permit.

To summarize its conclusions on Standing Rock's claims, therefore, the Court finds that the Corps' decision on July 25, 2016, and February 3, 2017, not to issue an EIS largely complied with NEPA. Yet there are substantial exceptions: the agency failed to adequately consider the impacts of an oil spill on Standing Rock's fishing and hunting rights and on environmental justice, and in February 2017, it did not sufficiently weigh the degree to which the project's effects are likely to be highly controversial in light of critiques of its scientific methods and data.

D. Remedy

So where does that leave us? The Court turns now to the question of remedy. The cure for the Corps' NEPA violation is governed by the APA, which provides that the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In this Circuit, vacatur is the "standard remedy" for a NEPA violation. Pub. Employees for Envtl. Responsibility v. U.S. Fish & Wildlife Serv., 189 F. Supp. 3d 1, 2 (D.D.C. 2016) (quoting Humane Soc'y of U.S. v. Johanns, 520 F. Supp. 2d 8, 37 (D.D.C. 2007)); see also Realty Income Tr. v. Eckerd, 564 F.2d 447, 456 (D.C. Cir. 1977) ("[W]hen an action is being undertaken in violation of NEPA, there is a presumption that injunctive relief should be granted against continuation of the action until the agency brings itself into compliance."). In other words, the Court would vacate DAPL's permits and easement, thus forcing it to cease operations until the Corps fully complied with the aforementioned NEPA requirements.

Such a move, of course, would carry serious consequences that a court should not lightly impose. In fact, courts have discretion to depart from that presumptive remedy and decide not to vacate an EA, FONSI, and corresponding authorizations pending NEPA compliance. Allied-

Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150–51 (D.C. Cir. 1993). "The decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" Id. (quoting Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin., 920 F.2d 960, 967 (D.C. Cir. 1990)). "[A] serious possibility that the [agency] will be able to substantiate its decision on remand" cautions in favor of remanding rather than vacating. Id. at 151.

Here, Standing Rock argues that "[v]acatur is the appropriate remedy," SRST MSJ at 45, whereas Dakota Access counters that the Allied-Signal factors require remand without vacatur. See DA SRST Opp. at 44-45. These discussions, however, are quite brief, and the Corps never even addresses the issue. This is not surprising — absent knowledge of whether or to what extent the Court would remand, the parties were unable to fully address the Allied-Signal factors in their summary-judgment briefs. That mystery now solved, the Court will order the litigants to submit briefing on whether remand with or without vacatur is appropriate in light of the deficiencies herein identified and any disruptive consequences that would result given the current stage of the pipeline's operation. As is set out in a contemporaneous Order, the Court will discuss the schedule of that briefing and the remand at an upcoming status conference to be held next week.

**IV.     Analysis of Cheyenne River's Claims**

The Standing Rock Sioux are not the only Tribe at the table. The Court thus now turns to Cheyenne River's Motion for Partial Summary Judgment and the Corps' and Dakota Access's Cross-Motions. Cheyenne River seeks summary judgment on four claims: (1) The Corps' issuance of the Section 408 permit was arbitrary, capricious, and unlawful; (2) The Corps'

67

issuance of the MLA easement was arbitrary, capricious, and unlawful; (3) The Corps' issuance of both constituted a breach of trust responsibility; and (4) The Corps issued both in violation of its pre-decisional consultation duty.

Before addressing each of these separately, a few preliminaries: First, certain aspects of these claims have been addressed in the Standing Rock analysis above — namely, the sufficiency of the EA's spill-risk analysis and the nature of the Corps' trust responsibilities — and the Court will refer back to those conclusions rather than repeat them here. Second, in light of the principles regarding extra-record evidence in administrative-law cases discussed in Section III.A.1.a, *supra*, the Court will consider only documents created on or before July 25, 2016, when evaluating the Corps' Section 408 decision and only documents created on or before February 8, 2017, when assessing the Corps' easement decision.

A. Section 408 Decision

Section 408 of the Rivers and Harbors Act makes it unlawful for a person to "take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, . . . or in any manner whatever impair the usefulness of any . . . work built by the United States, . . . in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods." 33 U.S.C. § 408(a). The Corps "may," however, permit the alteration, permanent occupation, or use of such public works when, in its judgment, such activity (1) "will not impair the usefulness of such work" and (2) "will not be injurious to the public interest." Id. The Corps so concluded here. See ECF No. 183-9 (Section 408 Decision Package) at 6. Cheyenne River contends that those conclusions were arbitrary, capricious, and contrary to law. In evaluating that argument, the Court considers the two Section 408 factors separately.

68

1. *Impairment*

As to the first prong, the Corps' objective "is to ensure that the proposed alteration will not limit the ability of the project to function as authorized and will not compromise or change any authorized project conditions, purposes or outputs." ECF No. 73-15 (Policy and Procedural Guidance for Processing Requests to Alter US Army Corps of Eng'rs Civil Works Projects Pursuant to 33 USC 408, Engineering Circular 1165-2-216 ¶ 7.c.(4)(b)i. (2015)). To do so, "[a]ll appropriate technical analyses including geotechnical, structural, hydraulic and hydrologic, real estate, and operations and maintenance requirements, must be conducted and the technical adequacy of the design must be reviewed." Id. If the Corps concludes "at any time . . . that the usefulness of the authorized project will be negatively impacted," its inquiry ends. Id.

To challenge the Corps' decision that DAPL would not impair the ability of the Lake Oahe project to function as authorized and would not compromise or change any of its conditions, purposes, or outputs, the Tribe first points to 33 U.S.C. § 701-1(b), a provision of the Flood Control Act of 1944. Cheyenne River reads § 701-1(b) to establish that consumptive uses of Lake Oahe's waters "may not be subrogated . . . to non-consumptive uses," and that no activity with the potential to have an adverse effect on the water's use — *e.g.*, an oil pipeline with some potential to leak — may be lawfully authorized. See CRST MSJ at 11-12.

Section 701-1(b), however, does not apply here. That provision provides:

> The use for navigation, in connection with the operation and maintenance of such works herein authorized for construction, of waters arising in States lying wholly or partly west of the ninety-eighth meridian shall be only such use as does not conflict with any beneficial consumptive use, present or future, in States lying wholly or partly west of the ninety-eighth meridian, of such waters for domestic municipal, stock water, irrigation, mining, or industrial purposes.

69

33 U.S.C. § 701-1(b) (emphasis added). As is clear from the statutory language, the provision applies to <u>navigational</u> uses of water, which DAPL is not. <u>See also</u> 33 U.S.C. § 701-1 (stating federal policy is to "limit the authorization and construction of <u>navigation works</u> to those in which a substantial benefit to navigation will be realized therefrom and which can be operated consistently with appropriate and economic use of the waters of such rivers by other users") (emphasis added).

The Tribe next maintains that the Corps did not adequately consider the risk of an oil spill or the environmental impacts of the pipeline; as a result, it could not reasonably have concluded that DAPL would not impair the purposes of the Lake Oahe project. Cheyenne River asserts, for example, that the Corps failed to assess the risk of landslides after mitigation efforts, the effects of a landslide or earthquake, or the impacts of a spill on vegetation, recreation, water quality, or the Tribe's water intake. <u>See</u> CRST MSJ at 16-18. It also points to the Missouri River Mainstem Reservoir System Master Water Control Manual, which explains that Congress "authorized the System to be operated for the purposes of flood control, navigation, irrigation, power, water supply, water quality control, recreation, and fish and wildlife." <u>Missouri River Mainstem Reservoir System Master Water Control Manual</u>, U.S. Army Corps of Engineers (March 2006), § 1-02, http://www.nwd-mr.usace.army.mil/rcc/reports/mmanual/ MasterManual.pdf. Cheyenne River interprets the Manual to "make[] clear that the Corps lacks authority to approve an oil pipeline crossing of the Missouri River that could impair the beneficial consumptive uses of the river both present and future." CRST MSJ at 12; <u>see also</u> <u>id.</u> at 14 ("The Master Manual does not provide any authorization to the Corps to permit the use of the Mainstem System for oil pipeline rights-of-way when they place any of the authorized purposes at risk.").

As the Court explained in Section III.A.1.b, *supra*, however, considering the record as of July 25, 2016, when the Corps issued the Section 408 permit, it had taken a hard look at the risk of an oil spill and provided sufficient explanation to support its conclusion that such a risk was low. The Corps' July 2016 determination that the Lake Oahe project's purposes would not be impaired by DAPL's construction and operation was therefore not arbitrary or capricious. Nothing in the Manual mandates a different result.

### 2. *Injurious to Public Interest*

As to the second prong, the Corps must compare "[t]he benefits that reasonably may be expected to accrue from" a proposed alteration or use of the federal project "against its reasonably foreseeable detriments." Engineering Circular 1165-2-216 ¶ 7.c.(4)(b)ii. "If the potential detriments are found to outweigh the potential benefits, then it may be determined that the proposed alteration is injurious to the public interest." Id. In making that evaluation, the Corps may consider factors such as "conservation, economic development, historic properties, cultural resources, environmental impacts, water supply, water quality, flood hazards, floodplains, residual risk, induced damages, navigation, shore erosion or accretion, and recreation." Id.

Cheyenne River raises two challenges to the Corps' determination that permitting DAPL to cross under Lake Oahe would not be injurious to the public interest. First, the Tribe contends that it was improper for the Corps to consider "benefits to Dakota Access, the oil industry, and the economy generally" in assessing the public interest. See CRST MSJ at 20-21 (citing EA at 105-06 (stating that DAPL's construction "would contribute more than $1 billion in direct spending" on materials and "$195 million in easement payments to landowners" with property crossed by the pipeline, and "would provide a benefit to local merchants and vendors" and

71

"temporary employment opportunities to the local workforce")). This argument fares poorly. The Corps' Policy and Procedural Guidance on Section 408 expressly permits consideration of "economic development" in determining a proposed project's benefits. See Engineering Circular 1165-2-216 ¶ 7.c.(4)(b)ii.

Second, the Tribe argues that the Corps did not explain how it "weighed the risks against the claimed benefit," CRST Reply at 17, failed to consider the consequences from an oil spill, see CRST MSJ at 18-19, did not adequately consider landslide risk or the impacts of a spill on vegetation or recreation, id. at 16-17, and never considered effects on Cheyenne River or its water intake. See CRST Reply at 18-19. This argument gains more traction because, as the Court previously explained, see Sections III.A.1.c, III.A.2.b., *supra*, the Corps' assessment of the impacts of a spill, although largely adequate, fell short as to fishing rights, hunting rights, and environmental justice. Because the Corps must submit its assessment of those impacts upon remand, see Section III.D, *supra*, the Court will await receipt of such information to decide whether the agency's conclusion that DAPL will not be injurious to the public interest was arbitrary and capricious.

### 3. *Other Arguments*

Finally, in addition to its arguments regarding the impairment and public-injury prongs, Cheyenne River asserts that the Corps' spill-risk and spill-impact conclusions were cursory, that the permit should not have been granted absent an EIS, and that the Corps did not satisfy its obligation to independently review the EA. See CRST MSJ at 2, 10, 18-21. The Court has already addressed the first two of these points. See Sections III.A.1, III.A.2, III.B.1, *supra*. As to the third, it is not persuaded.

CEQ regulations permit an applicant — here, Dakota Access — to prepare the EA as long as the agency independently evaluates the information submitted, "make[s] its own evaluation of the environmental issues[,] and take[s] responsibility for the scope and content of the environmental assessment," including its accuracy. See 40 C.F.R. § 1506.5(a)-(b). Here, the EA states that it was "prepared in accordance with" those regulations, and that the Corps "independently evaluated and verified the information and analysis undertaken in this EA and takes full responsibility for the scope and content contained herein." EA at 1. The record supports this assertion.

First, the Corps provided ample input to Dakota Access on the proper EA drafting procedure and on its substance. See ECF No. 183-3 (Email from Brent Cossette to Corps & Dakota Access Personnel, Mar. 5, 2015) (announcing start of "routine bi-weekly meetings to discuss the status of the Dakota Access Pipeline project") at 2; ECF No. 183-4 (Email from Brent Cossette to Monica Howard, Apr. 24, 2015) at 2 (advising Dakota Access that public and tribes had 30 days to submit comments, company had to address Corps' comments, Corps could not grant Section 408 permit absent certain geotech investigation, and Corps could not issue decision regarding historical properties absent concurrence of North Dakota State Historic Preservation Office); ECF No. 183-5 (Email from Brent Cossette, Sept. 18, 2015) (soliciting comments from twenty-two Corps employees on Draft EA and associated plans); ECF No. 183-12 (Email from Brent Cossette to Larry Janis, Corps, Recreation & Natural Resources Branch, May 6, 2016) (summarizing meeting with Dakota Access where Corps pushed company to use different spill-model data and disagreed with its assessment that potential impact to water intakes did not need to be in EA); ECF No. 183-11 (Email from Brent Cossette to Tom Sigauw & William Harlon, Dakota Access, May 11, 2016) (discussing need for sufficient information "to

73

ensure no negative impacts on irrigation and water supply"); ECF No. 212-2 (ProjNet: Environmental Review of DAPL) (record of 178 comments from Corps); ECF No. 209-16 at 147-56 (EA Comment Matrix) (spreadsheet of Corps' comments on Draft EA and Dakota Access's responses); Section 408 Decision Package at 23 (confirming Dakota Access satisfactorily addressed geotechnical comments from Corps reviewers); ECF No. 183-10 (Geotechnical Investigation Package) at 13-16.

To illustrate the meaningful back-and-forth engagement between the Corps and Dakota Access about the EA's content, the Court highlights one comment on the draft EA from the Corps and the exchange it sparked. In June 2015, a Corps official noted, "I did not see reference of a risk analysis for pipeline spills in the EA. Recommend inclusion of such analysis into the EA due to the size and scope of this transportation pipeline." ECF No. 183-6 at 24 (Comment 6139320). After Dakota Access supplied the spill model for Lake Oahe, the Corps asked the company to "include booming strategies and collection points for worst case scenario discharges" and "where [it] would gain access via water for response." Id. It also asked Dakota Access to show how spill volume and response times were calculated and to explain its plans for "cultural up front inspections/clearances at the control points." Id. at 25. Several more comments, document submissions by Dakota Access, and telephone calls between the company and the Corps followed. Id. at 25-26. The Corps only considered the initial comment in May 2016, nearly a year later, after Dakota Access agreed to insert the requested risk analysis into the EA and to adopt certain mitigation measures. Id. at 27.

Ultimately, seventeen different Corps officers are listed as having been involved in the EA's review, see EA at 126, and a range of Corps personnel reviewed the Section 408 application and certified that DAPL would not be injurious to Lake Oahe or the public interest.

74

See Section 408 Decision Package at 2, 5. On this record, the Court concludes that the Corps met its responsibility to make its own evaluation of the environmental issues and take responsibility for the scope and content of the EA. See City of Roseville v. Norton, 219 F. Supp. 2d 130, 165-66 (D.D.C. 2002) (holding agency satisfied 40 C.F.R. § 1506.5(a)-(b) where record showed contractor worked with agency employees on EA and included "extensive copies of e-mail communications between the agency staff discussing their comments on, and edits of, the EA").

### B. Easement Decision

Cheyenne River's next claim is that the Corps' issuance of the easement was arbitrary, capricious, and inconsistent with the requirements of the Mineral Leasing Act, 30 U.S.C. § 185. This stance makes minimal headway.

The Mineral Leasing Act was enacted by Congress in 1920 "to promote wise development of [the nation's] natural resources and to obtain for the public a reasonable financial return on assets that 'belong' to the public." Devon Energy Corp. v. Kempthorne, 551 F.3d 1030, 1033 (D. C. Cir. 2008) (quoting California Co. v. Udall, 296 F.2d 384, 388 (D.C. Cir. 1961)). It permits "appropriate agency head[s]" to grant "[r]ights-of-way through any Federal lands . . . for pipeline purposes for the transportation of oil . . . to any applicant possessing" the requisite statutory qualifications. See 30 U.S.C. § 185(a).

The Tribe challenges the Corps' decision to grant Dakota Access a right-of-way to cross Lake Oahe on the basis of three provisions in the MLA: (1) The Corps did not adequately analyze whether the easement would be "inconsistent with the purposes of the reservation," as required by 30 U.S.C. § 185(b)(1), and instead simply cross-referenced its Section 408 approval; (2) The Corps failed to impose stipulations protecting the "interests of individuals living in the

75

general area . . . who rely on the fish, wildlife, and biotic resources of the area for subsistence purposes," as required by 30 U.S.C. § 185(h)(2); and (3) The Corps did not impose sufficient liability on Dakota Access, as required by 30 U.S.C. § 185(x). See CRST MSJ at 37-44; CRST Reply at 20-22. Each is discussed separately.

### 1. *Section 185(b)(1)*

Section 185(b)(1) of the MLA provides that "[a] right-of-way through a Federal reservation" — *i.e.*, federally owned or managed land, rather than a federal Indian reservation — "shall not be granted if the Secretary or agency head determines that it would be inconsistent with the purposes of the reservation." 30 U.S.C. § 185(b)(1); see also Corps CRST MSJ at 22 n.11. Here, the reservation is the Lake Oahe project, and its "Congressionally-authorized purposes . . . include flood control, navigation, hydropower, recreation, water supply, and water quality." Henderson Memo at 3.

The Tribe contends that the Corps ran afoul of Section 185(b)(1) because it did not "articulate any rationale" for its conclusion that DAPL was consistent with the purposes of the Lake Oahe project and improperly relied on the documents and analysis from its Section 408 determination in undertaking its easement decision. See CRST MSJ at 40; Henderson Memo at 3 (explaining Corps' easement decision was "supported by the Final EA . . . and various memoranda supporting the District Commander's Section 408 approval"). But Cheyenne River cites no authority for the proposition that the Corps could not rely on its Section 408 decision in making its easement decision, and the Court can think of no reason why that would be so. While the approval procedures set out in the RHA and the MLA are not identical, compare 33 U.S.C. § 408 with 30 U.S.C. § 185 — a point acknowledged by the Corps in its briefing on Dakota Access's now-dismissed cross-claim, see ECF No. 73 at 15-16, 21-22 — the inquiry concerning

project impairment, injury to the public interest, and inconsistency with project purpose are certainly related and largely overlapping.

Cheyenne River also contends that any pipeline for which a right-of-way is sought that has the potential to have a high negative impact necessarily "is not 'consistent' with the authorized purposes" and cannot satisfy Section 185(b)(1). See CRST MSJ at 40. In other words, the MLA requires the Corps to reject every right-of-way application that poses any level of risk of serious harm because such risk renders the right-of-way inconsistent with the purposes of the federal project. The Court cannot accept this view, which is in direct tension with the text and purpose of the statute. The MLA expressly contemplates that agencies may grant rights-of-way through federal lands for pipelines used to transport "oil, natural gas, synthetic liquid or gaseous fuels, or any refined product produced therefrom." 30 U.S.C. § 185(a). Such pipelines necessarily involve some level of risk; no reasonable engineer, scientist, or agency official could assert that a pipeline project — or any construction or transportation project, for that matter — involves absolutely zero risk. It would be nonsensical for Congress to have created a mechanism for granting rights-of-way for oil pipelines if that mechanism could never be used.

Last, in arguing that DAPL specifically is inconsistent with the purposes of the Lake Oahe project, the Tribe relies on its already-discussed position that the Corps failed to consider impacts on most of the Lake's authorized purposes and underestimated the risks posed by the pipeline. Because the Corps did not adequately consider certain effects of a spill should one occur and because it did not, as of February 8, 2017, when it granted the easement, demonstrate that it had considered the degree to which DAPL's effects are likely to be highly controversial, see Sections III.A.1.c, III.A.2.b, *supra*, the Court will reserve its ultimate conclusion on this issue until the Corps submits its additional analysis after remand.

77

2. *Section 185(h)(2)*

The Tribe next turns to Section 185(h)(2), which instructs that the agency in charge of granting the right-of-way

> shall issue regulations or impose stipulations which shall include, but shall not be limited to: (A) requirements for restoration, revegetation, and curtailment of erosion of the surface of the land; (B) requirements to insure that activities in connection with the right-of-way or permit will not violate applicable air and water quality standards nor related facility siting standards established by or pursuant to law; (C) requirements designed to control or prevent (i) damage to the environment (including damage to fish and wildlife habitat), (ii) damage to public or private property, and (iii) hazards to public health and safety; and (D) requirements to protect the interests of individuals living in the general area of the right-of-way or permit who rely on the fish, wildlife, and biotic resources of the area for subsistence purposes.

30 U.S.C. § 185(h)(2). According to Cheyenne River, the Corps "ignore[d] the requirement to protect the 'interests of individuals living in the general area . . . who rely on the fish, wildlife, and biotic resources of the area for subsistence purposes'" because the EA does not address impacts of an oil spill on vegetation, recreational fishing, or land-based wildlife. See CRST MSJ at 42 (quoting 30 U.S.C. § 185(h)(2)(D)); CRST Reply at 21.

The Corps, however, imposed several stipulations on the easement granted to Dakota Access. See Easement, Exh. D (listing 36 special conditions). Those conditions relate to the construction, operation, and maintenance of the pipeline in order to minimize the risk of a spill and the effects from any spill that might occur. Id. For example, the Corps has required Dakota Access to perform certain girth-weld and pressure-level tests; use specific pipe and field-joint coatings; install mainline valves to be remotely controllable and equipped with automatic-shutdown capabilities; install adequate pressure sensors; implement particular mitigation measures to avoid impacts on soils; protect against overpressure in the pipeline; install a cathodic

78

protection system within six months; perform interference and corrosion surveys within six months of DAPL's entry into operation; patrol the pipeline at least twenty-six times per year; undertake specific training exercises; establish a storage facility for spill-response equipment; keep records of spill-response plans; and adopt all mitigation measures set out in the EA. Id.

By aiming to reduce the likelihood of an oil spill and to mitigate the impacts of a spill should one occur, these requirements clearly constitute "requirements designed to control or prevent . . . damage to the environment (including damage to fish and wildlife habitat)" and "to protect the interests of individuals living in the general area . . . who rely on the fish, wildlife, and biotic resources of the area for subsistence purposes." 30 U.S.C. § 185(h)(2)(C)(i), (D). The Corps thus satisfied its responsibilities under 30 U.S.C. § 185(h)(2).

### 3. *Section 185(x)*

Finally, the Tribe takes issue with the liability provisions set out in the easement. The easement provides that Dakota Access "shall be strictly liable to the United States for damage or injury which may arise from or be incident to" its activities under the easement, and it limits strict-liability damages to $10 million per incident. See Easement, ¶ 12(a), (b). Liability for damages in excess of $10 million is to be determined according to "ordinary rules of negligence." Id., ¶ 12(b). The easement also contemplates liability to third parties — *e.g.*, Standing Rock and Cheyenne River. It states: "The Grantee does hereby accept liability, if any, imposed by Federal and state statutes to third parties for injuries incurred in connection with the use and occupancy of the pipeline right-of-way." Id., ¶ 12(c). Cheyenne River contends that these liability provisions are "an abdication of [the Corps'] fiduciary responsibility to protect the resources it pervasively regulates and controls," CRST MSJ at 44, and inconsistent with the requirements of 30 U.S.C. § 185(x). See CRST Reply at 22.

Setting aside the fiduciary-duty question, which the Court deals with in Section IV.C, *infra*, the Tribe is mistaken in believing that the Corps has run afoul of 30 U.S.C. § 185(x). That provision permits the Corps to "impose stipulations specifying the extent to which holders of rights-of-way and permits under [the MLA] shall be liable to the United States for damage or injury incurred by the United States in connection with the right-of-way or permit." 30 U.S.C. § 185(x)(1). It further permits the Corps to "impose a standard of strict liability" and requires that if it does so, it must "include a maximum limitation on damages commensurate with the foreseeable risks or hazards presented." Id. § 185(x)(2), (4).

The Corps has complied with these requirements. Although the Tribe asserts that "Dakota Access'[s] statistics on the cost of cleanup of oil spills in the Environmental Justice Considerations Memo to the Corps demonstrates that $10 million will not begin to cover the cost of a cleanup," CRST Reply at 22 (citing ECF No. 203-1, Exh. BBB (Incident Rate Documents) at 3), that memo demonstrates just the opposite. It includes a table of PHMSA pipeline incidents between 1996 and 2015 in terms of number, fatalities, injuries, total cost in current-year dollars, barrels spilled, and net barrels lost. Between 1996 and 2015, there were 1,191 incidents with a total cost of $2,640,408,583, making the average cost per incident $2,216,968 — *i.e.*, far less than $10 million. The $10 million strict-liability-per-incident figure, then, is certainly commensurate with the foreseeable risks or hazards presented by an oil pipeline running under Lake Oahe.

C. Trust Responsibilities

Cheyenne River's next claim is virtually identical to one pursued by Standing Rock: the Corps' issuance of the Section 408 permit and the easement violated its trust responsibility to protect the Tribe's treaty rights. Cheyenne River contends that several sources give rise to such

a fiduciary obligation: the 1851 and 1868 Fort Laramie Treaties; the Oahe Taking Act, Pub. L. 83-776, 68 Stat. 1191-1193 (1954); Winters v. United States, 207 U.S. 564 (1908); the Master Water Control Manual, § 7-01.1 (explaining one of four objectives behind development of Missouri River Mainstem Reservoir System Water Control Plan was "to fulfill the Corps' responsibilities to Federally recognized Tribes"); the Corps' "pervasive[] and exclusive control over the Missouri River . . . and the entire project area"; 25 U.S.C. § 1632(a)(5) ("The Congress hereby finds and declares that . . . it is in the interest of the United States, and it is the policy of the United States, that all Indian communities and Indian homes, new and existing, be provided with safe and adequate water supply systems and sanitary sewage waste disposal systems as soon as possible."); and 30 U.S.C. § 185(x)(1) (permitting federal agencies to impose stipulations specifying permit holder's liability to United States for damage or injury incurred in connection with permit). See CRST MSJ at 5, 31-33, 35. None of these sources, however, establishes specific fiduciary or other duties. Cheyenne River's breach-of-trust cause of action thus meets the same fate as Standing Rock's. See Section III.B.2., *supra*.

### D. Consultation

Last, Cheyenne River argues that the Corps violated various duties when it granted the Section 408 permit and easement absent the requisite pre-decisional tribal consultation. See CRST MSJ at 22-30. Whereas Standing Rock — joined by Cheyenne River — brought a failure-to-consult claim in its preliminary-injunction motion under Section 106 of the National Historic Preservation Act, which requires a federal agency to consult with Indian tribes that attach cultural or religious significance to property affected by the agency's "undertakings," Standing Rock I, 205 F. Supp. 3d at 7-8, Cheyenne River here takes a different tack. Instead of

81

relying on the NHPA, it invokes Department of Defense Instruction 4710.02 and NEPA's implementing regulations.

The Defense Instruction sets out "procedures for DoD interactions with federally-recognized tribes" and requires all organizational entities in the Department — *e.g.*, the Corps — to "involve tribal governments early in the planning process for proposed actions that may have the potential to affect protected tribal rights, land, or resources." Department of Defense Instruction 4710.02 (2006), §§ 1, 6.6, http://www.dtic.mil/whs/directives/corres/pdf/ 471002p.pdf. "Early involvement," the Instruction explains, "means that a tribal government is given an opportunity to comment on a proposed action in time for the tribal government to provide meaningful comments that may affect the decision." Id. § 6.6. If an action "ha[s] the potential to significantly affect protected tribal resources, tribal rights, or Indian lands," the agency is to "[c]onsult with federally-recognized tribal governments on a government-to-government basis." Id. § 5.3.4 (emphasis added); see also id. §§ 6.1-6.5. Similarly, NEPA's implementing regulations require agencies to "consult[] early with appropriate State and local agencies and Indian tribes and with interested private persons and organizations" when actions are planned by private applicants. See 40 C.F.R. § 1501.2(d)(2). Based on the record of communication between the Corps and Cheyenne River in the lead-up to the EA's publication in July 2016, the Court concludes that the Corps did endeavor to consult early with the Tribe and gave it the opportunity to offer meaningful comments on the proposed crossing at Lake Oahe. It thus need not address the Corps' alternative contention that the DoD Instruction and NEPA's implementing regulations do not impose binding consultation duties. See Corps CRST MSJ at 39.

The Corps first contacted Cheyenne River about DAPL in October 2014, when it sent a letter with information about proposed soil borings and maps illustrating portions of the pipeline and nearby cultural sites.  See ECF No. 185-1, Exh. MM (Form Letter from Corps, Oct. 24, 2014); ECF No. 185-1, Exh. NN (Letter from Steve Vance to Richard Harnois, Aug. 17, 2015) (acknowledging receipt of Corps' October 2014 letter); EA at 80.  The letter invited "comments or concerns regarding this project" within 30 days, see Form Letter, but Cheyenne River did not respond until March 23, 2015, when the Corps' Regulatory Project Manager in the South Dakota Regulatory Office spoke with Steve Vance, Cheyenne River's Tribal Historic Preservation Officer, by phone.  See Standing Rock II, 2017 WL 908538, at *5; ECF No. 218-2 at 154 (Email from Jeff Breckenridge, Regulatory Project Manager, South Dakota Regulatory Office, to Corps Personnel, Mar. 23, 2015).  Vance stressed the Tribe's request for formal consultation, involvement in the NHPA Section 106 process, and ability "to review any EA's/NEPA documentation for the project."  Id.  Several months then passed, however, without any comments submitted from Cheyenne River.

Richard Harnois, the Corps' Senior Field Archaeologist, spoke with Vance on August 17, 2015, to "express[ his] concerns that [the Corps] had gotten no comments back yet."  ECF No. 183-15 (Richard Harnois Notes, Aug. 17, 2015).  Vance explained that he had been "promoting a coordinated response from the tribes through SRST," but Harnois encouraged the Tribes to respond individually, as "the way [the Corps] see[s] it, each response is like a vote — the more the better."  Id.  Vance committed to submitting a letter and requested an onsite meeting with "all of the interested tribal parties to inspect the crossing alignment and initiate a discussion of the pipeline as a whole."  Id.  His letter, sent that same day, acknowledged the "opportunity to comment [on] the proposed Dakota Access Pipeline . . . project," asked whether Standing Rock's

83

previously submitted questions and comments had been addressed, and expressed concerns about, *inter alia*, impacts of DAPL on birds, fish, and wildlife, as well as pipeline corrosion, faulty welding, and oil spills. ECF No. 183-14 (Letter from Steve Vance to Richard Harnois, Aug. 17, 2015). Julie Price, Manager of the Corps' Cultural Resource Program, later followed up with Vance to thank him for his letter and inform him that a copy of the Draft EA would be "distributed for Tribal . . . comments in mid-December, 2015." ECF No. 183-17 (Letter from Julie Price, Manager, Cultural Resource Program, Corps, to Steve Vance, Nov. 19, 2015).

Around the same time Harnois was reaching out to Vance, Col. John Henderson, the Corps' Omaha District Commander, sent a letter to Harold Frazier, Cheyenne River's Chairman. See ECF No. 218-2 at 14-16 (Letter from John Henderson to Harold Frazier, Sept. 3, 2015). Henderson described the DAPL project and explained that the purpose of his letter was "to initiate Section 106 consultation and review, determine [Frazier's] interest in consulting, . . . and to gather information that will assist the Corps in identifying historic properties." Id. at 14. He also noted that DAPL was "currently working to obtain the necessary easements for crossing federal lands, as well as" authorization under Section 408 of the RHA, and advised Frazier that "consultation on the project has also been initiated as part of the Corps Section 408 review process for the areas located on Corps Project Lands." Id. at 16. Henderson requested "engagement and/or comments by September 30, 2015," and supplied the contact information for three different Corps officials. Id.

Martha Chieply, the Corps' Regulatory Chief for the Omaha District, sent a follow-up letter to Frazier at the end of November 2015 to notify him of an NHPA Section 106 consultation meeting that was to be held on December 8-9, 2015, in Sioux Falls, South Dakota. See ECF No. 183-18 (Letter from Martha Chieply to Harold Frazier, Nov. 20, 2015). She also emphasized the

84

Corps' interest in hearing from the Tribe about "any culturally significant concerns that may affect" areas within the Corps' jurisdiction along the pipeline's route.  Id.

When the Corps released the Draft EA on December 8, 2015, it sent a notification to the Tribe and requested comments by January 8, 2016.  See ECF No. 185-1, Exh. VV (Declaration of Jonathan Shelman, Environmental Resource Specialist, Corps, Aug. 18, 2016), ¶ 8; EA at 1.

Shortly thereafter, Vance attended the December consultation meeting, at which five Corps officials and Dakota Access personnel were present.  See ECF No. 183-25 (Dakota Access Tribal Consultation Meeting Roster, Dec. 8, 2015); ECF No. 218-1 at 108 (DAPL Tribal Consultation Meeting Agenda); ECF No. 218-1 at 111 (Dakota Access Tribal Consultation Meeting, Dec. 8, 2015).  According to the Corps' "[s]ummary of meeting results," Dakota Access agreed to provide the Tribes with inadvertent-discovery plan drafts and "information related to spill response plans" by December 18, and the Tribes agreed to review the data within 30 days.  See ECF No. 218-1 at 112 (Email from Joel Ames, Tribal Liaison, Corps, to Corps Personnel, Dec. 10, 2015).

Vance then attended two more meetings — one on January 25, 2016, and one on February 18-19, 2016, held at Ponca Tribal Headquarters.  See ECF No. 185-1, Exh. DD (Declaration of Martha Chieply, Aug. 18, 2016), ¶¶ 21-22.  Cheyenne River maintains that "[t]he January and February 2016 meetings were . . . Section 106 meetings only," CRST Reply at 41, but the agenda for the February meeting lists a "Section 408 and Draft EA Update" to be given by "Brent Cossette, Omaha 408 Coordinator."  ECF No. 218-2 at 1 (DAPL Tribal Consultation Agenda, Feb. 18-19, 2016).  A transcript from that meeting confirms that the Corps' role under Section 408 and concerns relating to that permit were discussed.  See ECF No. 143-1 (Transcript of DAPL Meeting, Feb. 18-19, 2016) at 1, 4.  Vance also used that meeting to communicate to

the Corps the Tribe's preference that the agency undertake an EIS rather than an EA, see ECF No. 183-26 (Tribal Consultation Meeting Notes, Feb. 18-19, 2016), and its concerns about DAPL's impact on water quality, fish, and birds. See Transcript of DAPL Meeting at 3-4.

After that meeting, Chieply and two other Corps personnel "agreed to meet again" with Standing Rock and Cheyenne Rock together, as Vance and Standing Rock's Tribal Archaeologist "wanted to discuss specific cultural resource issues of importance to their Tribes." Chieply Decl, ¶ 24. As a result of concerns Standing Rock expressed at that meeting regarding certain tribal cultural resources, including burial sites, at the James River crossing, the Corps successfully urged Dakota Access to move the pipeline's route to avoid them. Id.

In addition to those meetings, the Corps vainly tried for several months to contact and meet with Chairman Frazier. In response to a voicemail Frazier left for Joel Ames, the Corps' Tribal Liaison, on February 8, Ames left several phone messages with Frazier's secretary, called his cell phone, sent multiple emails, and even asked Vance and the Tribe's Vice Chairman for help, all to no avail. See ECF No. 183-22 (Emails from Joel Ames to Harold Frazier, Feb. 22 – Mar. 7, 2016) (listing five emails from Corps to Frazier requesting phone call); ECF No. 185-1, Exh. EE (Declaration of Joel Ames, Aug. 18, 2016), ¶¶ 23-24 (describing repeated attempts to return Frazier's Feb. 8, 2016, voicemail), ¶ 26 (explaining how, in response to Vance's request that the Corps consult with Cheyenne River, he told Vance of his efforts to contact Frazier, and Vance "agreed to help make it happen"); ECF No. 218-1 at 292 (Emails between Julie Price and Larry Janis, Mar. 3, 2016) (discussing Price's communications with Vance and Frazier's secretary to arrange meeting with Frazier); ECF No. 185-1, Exh. QQ (Email from Joel Ames to Corps Personnel, May 9, 2016) (stating Ames had recently met Cheyenne River's Vice Chairman and communicated that he was trying to reach Chairman Frazier to arrange meeting).

86

On May 6, Henderson sent an email to Frazier explaining that the Corps had "been unsuccessful in identifying any potential meeting dates" with the Tribe and expressing his desire "to meet to discuss not only the DAPL project, but any other topics you may want to discuss." ECF No. 183-21 (Letter from John Henderson to Harold Frazier, May 6, 2016).

Vance sent two letters to the Corps in May that articulated concerns about DAPL's impact on the Tribe's historic sites, expressed frustrations with the lack of consultation to date, and repeated Standing Rock's comments that the draft EA was "insufficient for oil pipelines" and an EIS should be completed. See ECF No. 185-1, Exh. II (Letter from Steve Vance to Richard Harnois, May 2, 2016); ECF No. 183-19 (Letter from Steve Vance to John Henderson, May 19, 2016). Frazier, however, did not respond to the Corps' repeated outreach efforts until June, when he sent a letter stating that it had not initiated the requisite consultation and that the draft EA insufficiently analyzed DAPL's impact on the Tribe's cultural resources and historic sites and did not contain "proper environmental analysis." ECF No. 183-20 (Letter from Harold Frazier, June 3, 2016). The Corps responded to these letters with "recent Question and Answer summar[ies]" from recent consultation meetings that addressed, *inter alia*, actions the Corps was considering regarding DAPL, its expected decisionmaking timeline, and the impact of HDD on cultural resources. See ECF No. 183-23 (Letter from Martha Chiefly to Steve Vance, June 13, 2016); ECF No. 185-1, Exh. JJ (Letter from John Henderson to Harold Frazier, June 22, 2016).

When the Corps published the EA in July 2016, it included an appendix with the various comments received in response to the public notice of the Draft EA. See ECF No. 172-4 (Appendix J) at 38-58. No comments from Cheyenne River appear in the appendix, and the EA does not list Cheyenne River as a consulting party on the EA. See EA at 111-14 (list of "all individuals and agencies consulted during preparation of the EA"). On this point, the Court must

87

briefly digress from its review of the communication between the Corps and the Tribe. Cheyenne River protests its exclusion from Appendix J "even though the Corps received comments from the Tribe" as evidence of "the length to which the Corps went to exclude the Tribe from its analysis." CRST MSJ at 29. Rather than responding, as Dakota Access did, that the Tribe did not submit any timely comments to the Draft EA, but rather sent letters much later, see DA CRST MSJ at 2, 5, the Corps puzzlingly accuses Cheyenne River of misstating the facts. "Appendix J explicitly states Cheyenne River provided comments and also states those comments," it asserts. See Corps CRST MSJ at 35 n.18. But the Corps cites to comments from Northern Cheyenne, an entirely different tribe. See CRST Reply at 43 n.19. The Court trusts this error is simply a clerical oversight, albeit one with unfortunate connotations regarding how distinct Tribes may be perceived.

Appendix J confusion aside, the record clearly indicates that the Corps solicited Cheyenne River's views on the DAPL project well before publishing the EA and issuing the Section 408 permit and easement, and communicated regularly with Vance and Frazier via phone calls, letters, and in-person meetings. These actions were sufficient to satisfy the early-comment and consultation goals articulated in the Defense Department Instruction and NEPA's implementing regulations.

Cheyenne River's protests to the contrary do not persuade the Court otherwise. First, the cases on which the Tribe relies to demand a more robust consultation process rest on federal statutes governing the Bureau of Indian Affairs' consultation responsibilities and the NHPA's Section 106 substantive-consultation requirements, not the DoD Instruction and NEPA. See CRST MSJ at 23-24, 27-28 (citing Wyoming v. Dep't of Interior, 136 F. Supp. 3d 1317, 1345-46 (D. Wyo. 2015), vacated and remanded sub nom. Wyoming v. Sierra Club, No. 15-8126, 2016

88

WL 3853806 (10th Cir. July 13, 2016); Cheyenne River Sioux Tribe v. Jewell, 205 F. Supp. 3d 1052, 1057-58 (D.S.D. 2016); Quechan Tribe of Fort Yuma Indian Reservation v. Dep't of Interior, 755 F. Supp. 2d 1104 (S.D. Cal. 2010); Yankton Sioux Tribe v. Kempthorne, 442 F. Supp. 2d 774, 784 (D.S.D. 2006)).

The Tribe also argues that many of the contacts from the Corps were focused on the protection of cultural, religious, and historic sites implicated by Section 106 of NHPA and thus cannot "constitute consultation on the impact of DAPL on trust and treaty resources under NEPA." CRST MSJ at 30; see also CRST Reply at 40. The Corps, however, repeatedly invited the Tribe to share comments on the project that went beyond Section 106 concerns. And NHPA's implementing regulations encourage federal agencies "to coordinate compliance" with Section 106 and NEPA. See 36 C.F.R. § 800.8(a)(1); see also id. ("Agencies should consider their section 106 responsibilities as early as possible in the NEPA process, and plan their public participation, analysis, and review in such a way that they can meet the purposes and requirements of both statutes in a timely and efficient manner."); Apache Survival Coal. v. United States, 21 F.3d 895, 906 (9th Cir. 1994) ("NHPA's implementing regulations contemplate that NEPA and NHPA review should be integrated closely.").

Cheyenne River further maintains that the Corps made its decision on the Section 408 permit long before the EA was published, thus truncating the time period for meaningful comment. See CRST MSJ at 24-25. Its support for that proposition is wanting. The Tribe relies, for example, on a December 10, 2015, memorandum from the Chief of the Corps' Geotechnical Engineering and Sciences Branch that it characterizes as "sign[ing] off" on the permit, and points to the lack of comments from the Water Control and Water Quality Branch on the draft EA and the absence of a "Record of Decision for the Recreation and Natural Resource

Branch." Id. at 24-25. The cited memo, however, simply explains that the thirteen "geotechnical comments . . . generated during the technical review" had been "satisfactorily addressed by the Engineer-of-Record, Dakota Access LLC and GeoEngineers" and so "were closed out." ECF No. 209-10 at 73. In direct conflict with the Tribe's early-decision claim, it states: "The comments herein pertain only to the geotechnical and flowable easement issues related [to] HDD and Geotechnical investigations in the floodway and do not constitute USACE approval of any permits that may be required." Id. (emphasis added). The Water Quality Branch, moreover, did review the Lake Oahe crossing. See Section 408 Decision Package at 1.

The Tribe last argues that it could not have been adequately consulted prior to the permitting decisions because the Corps did not provide it with the Scoping Comments in Appendix J or the environmental-justice-considerations memo until December 2016, and it did not release the Spill and Analysis and Facility Response Plans to the Tribe's experts until February 2017. See CRST MSJ at 28; CRST Reply at 40. As the Court has previously explained, however, some of those documents were appropriately withheld from public disclosure. Standing Rock III, 2017 WL 1316918, at *5-6. More important, Cheyenne River does not explain how lacking access to those documents hindered its ability to meaningfully comment and consult on the EA when it was given access to the draft several months before the final version was published and offered repeated access to Corps personnel.

* * *

In sum, then, the Court reaches the same decision on Cheyenne River's claims as it did on Standing Rock's. Aside from the discrete issues that will be the subject of remand, the Court concludes that the Corps complied with its statutory responsibilities. In addition, it will similarly

permit Cheyenne River to participate in the briefing on vacatur pending remand, as set forth in Section III.D, *supra*.

## V.     Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Standing Rock's Motion for Partial Summary Judgment and grant in part and deny in part the Corps' corresponding Cross-Motion for Partial Summary Judgment. The Court also will deny in part Cheyenne River's Motion for Partial Summary Judgment and defer a decision on those claims that may be affected by the remand ordered in response to Standing Rock's Motion. It accordingly grants in part the corresponding Cross-Motions for Partial Summary Judgment from the Corps and Dakota Access. A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  June 14, 2017

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**STANDING ROCK SIOUX TRIBE,** *et al.*,

     **Plaintiffs,**

        **v.**

**U.S. ARMY CORPS OF ENGINEERS,** *et al.*,

     **Defendants.**

**Civil Action No. 16-1534 (JEB)**

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion, the Court hereby

ORDERS that:

1. Plaintiff Standing Rock Sioux Tribe's [433] Motion for Summary Judgment is

   GRANTED IN PART AND DENIED IN PART;

2. Plaintiff Oglala Sioux Tribe's [434] Motion for Partial Summary Judgment is

   GRANTED IN PART AND DENIED IN PART;

3. Plaintiffs Robert Flying Hawk and Yankton Sioux Tribe's [435] Motion for Summary

   Judgment is GRANTED IN PART AND DENIED IN PART;

4. Plaintiff-Intervenor Cheyenne River Sioux Tribe's [436] Motion for Summary

   Judgment is GRANTED IN PART AND DENIED IN PART;

5. Defendant United States Army Corps of Engineers' [445] Cross-Motion for Summary

   Judgment against Cheyenne River Sioux Tribe is GRANTED IN PART AND

   DENIED IN PART;

6. Defendant United States Army Corps of Engineers' [447] Cross-Motion for Summary Judgment against Yankton Sioux Tribe is GRANTED IN PART AND DENIED IN PART;

7. Defendant United States Army Corps of Engineers' [449] Cross-Motion for Summary Judgment against Oglala Sioux Tribe is GRANTED IN PART AND DENIED IN PART;

8. Defendant United States Army Corps of Engineers' [451] Cross-Motion for Summary Judgment against Standing Rock Sioux Tribe is GRANTED IN PART AND DENIED IN PART;

9. Defendant-Intervenor Dakota Access LLC's [455] Cross-Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART;

10. Defendant and Defendant-Intervenor shall submit briefing on remedy by April 8, 2020;

11. Plaintiffs and Plaintiff-Intervenor shall submit their responses by April 15, 2020; and

12. Defendant and Defendant-Intervenor shall submit their replies by April 22, 2020.

So ORDERED.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: March 25, 2020

STANDING ROCK SIOUX TRIBE, *et al.*,

      Plaintiffs,

        v.

U.S. ARMY CORPS OF ENGINEERS, *et al.*,

      Defendants.

Civil Action No. 16-1534 (JEB)

## MEMORANDUM OPINION

The Court returns once more to the segment of the Dakota Access Pipeline running under the Missouri River and to its effects on the Indian Tribes living nearby. In February 2017, Defendant U.S. Army Corps of Engineers concluded that granting an easement for the crossing would yield no significant environmental impact, thus exempting the agency from having to prepare an Environmental Impact Statement under the requirements of the National Environmental Policy Act. In these consolidated cases, several Tribes whose reservations lie near Lake Oahe challenge that decision.

In one of its many prior Opinions in this case, the Court held that the agency's decision "not to issue an EIS largely complied with NEPA." Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock III), 255 F. Supp. 3d 101, 147 (D.D.C. 2017). "Yet there [we]re substantial exceptions" to such compliance, one of which being the agency's failure to address expert comments noting that the pipeline suffered from serious flaws that could result in extensive environmental harm in the event of a spill. Id. The Court thus ordered the Corps to

1

consider these issues on remand. Id. at 160. That remand is now complete, and the Tribes, not surprisingly, strongly disagree with the Corps' most recent conclusions.

In analyzing those conclusions, this Court has received significant guidance from a recent case decided by the D.C. Circuit, National Parks Conservation Association v. Semonite, 916 F.3d 1075, 1082 (D.C. Cir. 2019). The appeals court there clarified the inquiry to be conducted by a district court when determining whether an agency has adequately dealt with expert criticisms such as these. Applying Semonite, this Court ultimately concludes that too many questions remain unanswered. Unrebutted expert critiques regarding leak-detection systems, operator safety records, adverse conditions, and worst-case discharge mean that the easement approval remains "highly controversial" under NEPA. As the Court thus cannot find that the Corps has adequately discharged its duties under that statute, it will remand the matter to the agency to prepare an Environmental Impact Statement.

## I. Background

In order to reacquaint the reader with the landscape against which this dispute unfolds, the Court will first briefly set out the statutory framework of NEPA. It will then separately discuss the factual background, the procedural history, and the recent remand and resulting claims.

### A. Statutory and Regulatory Scheme

The National Environmental Policy Act requires agencies to "consider every significant aspect of the environmental impact of a proposed action," Baltimore Gas & Elec. Co. v. NRDC, 462 U.S. 87, 97 (1983) (quoting Vt. Yankee Nuclear Power Corp v. NRDC, 435 U.S. 519, 553 (1978)), so as to "inform the public that it has indeed considered environmental concerns in its decisionmaking process." Id. (citing Weinberger v. Catholic Action of Haw., 454 U.S. 139, 143

2

(1981)).  In order to achieve these goals, NEPA imposes on agencies certain procedural requirements, Citizens Against Burlington, Inc. v. Busey, 938 F.2d 190, 193–94 (D.C. Cir. 1991), but it "does not mandate particular consequences."  Id. at 194.

First, an agency must draft an Environmental Assessment, see 40 C.F.R. § 1501.4(b), that "[b]riefly provide[s] sufficient evidence and analysis for determining whether to prepare an environmental impact statement [EIS] or a finding of no significant impact [FONSI]."  Id. § 1508.9(a).  "If any 'significant' environmental impacts might result from the proposed agency action[,] then an EIS must be prepared before agency action is taken."  Grand Canyon Trust v. FAA, 290 F.3d 339, 340 (D.C. Cir. 2002) (quoting Sierra Club v. Peterson, 717 F.2d 1409, 1415 (D.C. Cir. 1983)); see also 42 U.S.C. § 4332(2)(C) (requiring a statement of the environmental impact of any proposed action "significantly affecting the quality of the human environment"). If, on the other hand, the agency determines that no EIS is required, it must prepare either a FONSI or a Mitigated FONSI, depending on whether the lack of significant impact results from an agency's commitment to mitigation measures.  See 40 C.F.R. §§ 1501.4(e), 1508.13; Council on Environmental Quality, Appropriate Use of Mitigation and Monitoring and Clarifying the Appropriate Use of Mitigated Findings of No Significant Impact 2, 7 (2011), https://ceq.doe.gov/docs/ceq-regulations-and-guidance/Mitigation_and_Monitoring_Guidance_14Jan2011.pdf.

In order to determine whether its actions may result in "significant" environmental impacts — and therefore whether it must prepare an EIS — an agency must examine both the "context" and the "intensity" of the action.  See 40 C.F.R. § 1508.27.  When looking at intensity, an agency must consider ten factors, id. § 1508.27(b), and "[i]mplicating any one of the[se] factors may be sufficient to require development of an EIS."  Semonite, 916 F.3d at 1082 (citing Grand Canyon Trust, 290 F.3d at 347).  Relevant here is the fourth of these factors — viz., "[t]he

3

degree to which the effects on the quality of the human environment are likely to be highly controversial." 40 C.F.R. § 1508.27(b)(4). This factor will be discussed at length below. See *infra* Section III.A.1.

Although not in the above-described list of ten factors, two other issues require the Corps' attention under its NEPA obligations. First, in this Circuit, NEPA creates, through the Administrative Procedure Act, a right of action deriving from Executive Order 12,898. This order requires federal agencies to "make achieving environmental justice part of their mission" — "[t]o the greatest extent practicable and permitted by law" — "by identifying and addressing, as appropriate, disproportionately high and adverse human health or environmental effects of [their] programs, policies, and activities on minority populations and low-income populations." 59 Fed. Reg. 7629 (Feb. 11, 1994), § 1-101; see Cmtys. Against Runway Expansion, Inc. v. FAA, 355 F.3d 678, 688–89 (D.C. Cir. 2004) (recognizing right to environmental-justice review under NEPA and APA). Indian tribes are one of the populations that must be considered. See Council on Envtl. Quality, Environmental Justice: Guidance Under the National Environmental Policy Act 9 (1997), https://ceq.doe.gov/docs/ceq-regulations-and-guidance/regs/ej/justice.pdf.

Second, the parties agreed during the first round of summary-judgment briefing that NEPA additionally requires an agency to determine how a project will affect a tribe's treaty rights, in this case those arising from the Fort Laramie Treaty of 1851. Standing Rock III, 255 F. Supp. 3d at 130–31 (citing Fort Laramie Treaty of 1851, art. 5, 11 Stat. 749, 1851 WL 7655). As relevant at this stage, the Corps is required to consider how the pipeline would affect the Tribes' hunting and fishing resources. Id. at 130–32; see 11 Stat. 749, art. 5 (reserving to Tribes "the privilege of hunting" and "fishing" on treaty lands).

4

B.  Underline: Factual History

As the issues present in the current round of briefing are fairly cabined, the Court will provide only an abbreviated version of the factual history laid out in its prior Opinions in this case.  See, e.g., Standing Rock III, 255 F. Supp. 3d at 114–16.

The Dakota Access Pipeline, designed to carry crude oil from North Dakota to Illinois, crosses several waterways along its 1,200-mile path.  Id. at 114 (citing Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock I), 205 F. Supp. 3d 4, 7 (D.D.C. 2016)).  One of these is Lake Oahe, an artificial reservoir in the Missouri created by construction of a dam in 1958.  Id. (citing Standing Rock I, 205 F. Supp. 3d at 13).  The "lake" begins near Bismarck, North Dakota, and extends about 231 miles south, ending at the Oahe Dam in South Dakota.  See ECF No. 172-1 (Final EA) at 35.  In creating Lake Oahe, Congress effected a taking of 56,000 acres from Standing Rock's Reservation and 104,420 acres from the trust lands of the Cheyenne River Sioux Tribe.  Standing Rock III, 255 F. Supp. 3d at 114 (citing Act of Sept. 2, 1958, Pub. L. No. 85-915, 72 Stat. 1762).  The Tribes now rely on the waters of Lake Oahe in myriad ways, including for drinking, agriculture, industry, and sacred religious and medicinal practices.  Id.; see, e.g., ECF No. 289-3 (Declaration of Faith Spotted Eagle), ¶¶ 5–22.

As the first step in determining whether it would permit Dakota Access to construct a portion of DAPL under Lake Oahe, the Corps published a Draft EA, finding that it would not need to prepare the more involved EIS.  Standing Rock III, 255 F. Supp. 3d at 115–16; ECF No. 6-19 (Draft EA) at 1.  The Tribes and the Department of the Interior commented, both urging the Corps to go further and prepare an EIS.  Standing Rock III, 255 F. Supp. 3d at 115–16.  The EPA also commented, suggesting that the Corps must at least prepare a Mitigated FONSI.  Id. at 116.  In July 2016, the Corps published its Final EA — again finding that no EIS was required — and

5

a Mitigated FONSI.  See ECF Nos. 172-1 (Final EA), 172-2 (Mitigated FONSI).  Both the Draft and the Final EA were prepared by Dakota Access with input from the Corps, as is permitted by NEPA regulations under certain circumstances.  Standing Rock III, 255 F. Supp. 3d at 116 (citing 40 C.F.R. § 1506.5(a)-(b)).

### C. Procedural History

Shortly after the Corps published the Final EA, the Standing Rock Sioux Tribe filed suit against the agency in this Court, principally claiming that its decisions violated the National Historic Preservation Act and NEPA.  See Complaint, ¶¶ 128–93.  Dakota Access moved successfully to intervene as a defendant, see ECF No. 7; Minute Order of Aug. 8, 2016 (granting intervention), and the Cheyenne River Sioux Tribe so moved as a plaintiff.  See ECF No. 11; Minute Order of Aug. 19, 2016 (granting intervention).  On September 9, 2016, the Court denied Plaintiffs' Motion to enjoin construction of the pipeline, finding that the Tribes were unlikely to prevail on their NHPA claims that the construction process desecrated sacred lands adjoining Lake Oahe.  Standing Rock I, 205 F. Supp. 3d at 37.  As political protests in the pipeline's vicinity grew, the Departments of Justice, the Interior, and the Army that same day jointly announced that DAPL construction would be suspended pending the Corps' reconsideration of its statutory obligations.  See ECF No. 42-1 at 1–2.  Reversing course, the Corps subsequently published notice of its intent to prepare an EIS as to Dakota Access's request for an easement to cross Lake Oahe.  See 82 Fed. Reg. 5,543 (Jan. 18, 2017).

Following the change of administration in January 2017 and a presidential memorandum encouraging acceleration of the DAPL project, see 82 Fed. Reg. 8,661 (Jan. 24, 2017), the Corps again reconsidered its decision and ultimately decided to terminate its intent to prepare an EIS. See 82 Fed. Reg. 11,021 (Feb. 17, 2017).  After notifying Congress on February 7, 2017, see

ECF No. 172-10, the agency then issued the easement to Dakota Access on February 8, 2017. See ECF No. 172-11. The Court thereafter rejected a second preliminary-injunction motion, this time brought by Cheyenne River on Religious Freedom Restoration Act grounds, finding obstacles in both the doctrine of laches and the Tribe's low likelihood of success on the merits. Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock II), 239 F. Supp. 3d 77, 100 (D.D.C. 2017). Around this time, the case was consolidated with two others against the Corps, such that the Oglala Sioux Tribe and Yankton Sioux Tribe were added as Plaintiffs in this matter. See Minute Order of Mar. 16, 2017. All four Tribes currently remain in the suit.

Finally sending their ace pitcher out to the mound in Game 3 — after previously pushing weaker counts under the NHPA and RFRA — Standing Rock and Cheyenne River next sought summary judgment under NEPA, arguing that the Corps was required to prepare an EIS, and Defendants similarly cross-moved. In June 2017, the Court largely upheld the Corps' decision, including on the ground that it had fulfilled any consultation duties toward the Tribes. Standing Rock III, 255 F. Supp. 3d at 147. Yet, it nonetheless found "substantial exceptions" warranting remand. Id. As to Standing Rock, there were three such deficiencies in the Corps' work. The agency had inadequately considered, in accordance with its obligations under NEPA: (1) whether the project's effects were likely to be "highly controversial," id. at 127–29 (citing 40 C.F.R. § 1508.27(b)(4)); (2) the impact of a hypothetical oil spill on the Tribe's fishing and hunting rights, id. at 132–34; and (3) the environmental-justice effects of the project. Id. at 136–40. The Court consequently remanded the matter to the agency to address these issues. Id. at 160. It also reserved decision on two of Cheyenne River's arguments pending the results of the remand, id. at 150, 153, but the Tribe does not now re-assert those positions. See ECF No. 436 (Cheyenne River Second MSJ).

7

Oglala's and Yankton's claims, meanwhile, were in earlier stages. Yankton and Defendants cross-moved for summary judgment the following year, and the Court found in favor of the Corps. Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock V), 301 F. Supp. 3d 50, 75 (D.D.C. 2018). Both Yankton and Oglala later preserved issues they intended to pursue following a remand. See ECF Nos. 385 (Oglala); 386 (Yankton).

D. Remand and Results

While the Court remanded to the agency a few of Standing Rock's and Cheyenne River's claims, it did not at that point determine whether the easement for the pipeline would be vacated during the remand. Standing Rock III, 255 F. Supp. 3d at 147–48. In October 2017, it found that "[i]n light of the 'serious possibility' that the Corps w[ould] be able to substantiate its prior conclusions," vacatur was not appropriate. Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs (Standing Rock IV), 282 F. Supp. 3d 91, 109 (D.D.C. 2017) (quoting Nat'l Parks Conservation Ass'n v. Jewell, 62 F. Supp. 3d 7, 20 (D.D.C. 2014)).

The Corps completed its remand analysis in February 2019, see ECF No. 398 (Notice of Service of Remand Analysis), and the parties filed a joint appendix containing that record the following month. See ECF No. 406 (Remand Analysis Record). The Corps' work on remand will be discussed in more detail below. See infra Section III.

All parties have now again moved for summary judgment — for the first time, in the case of Oglala. In their briefs, the Tribes raised not only the remanded issues but several others. All Tribes jointly argue that the Corps has failed to remedy its three NEPA violations on remand. In addition, Standing Rock, Cheyenne River, and Yankton attempt to resurrect their NHPA claims, which the Court rejected in earlier Opinions. See Standing Rock I, 205 F. Supp. 3d at 10; Standing Rock V, 301 F. Supp. 3d at 64. Yankton also raised a preserved non-NHPA

8

consultation claim (as to the Corps' actions before the remand), and Oglala argued its preserved

claims under the Mni Waconi Act. All Tribes further contend that the Corps violated its

consultation duties toward them during remand. The Court heard oral argument via

teleconference on March 18, 2020, and it is now prepared to rule on the Motions.

## II.     Legal Standard

Upon a party's motion, Federal Rule of Civil Procedure 56(a) requires the Court to "grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." A fact is material if it would change

the outcome of the litigation, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006), and a dispute is genuine if the evidence

is such that a reasonable jury could return a verdict for the non-moving party. Scott v. Harris,

550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. In the event of conflicting evidence on a

material issue, the Court is to construe the conflicting evidence in the light most favorable to the

non-moving party. Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006).

"Factual assertions in the moving party's affidavits or declarations may be accepted as true

unless the opposing party submits its own affidavits[,] . . . declarations[,] or documentary

evidence to the contrary." Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87

(D.D.C. 2009) (citing Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992)).

The above-described standard, however, does not apply to the Tribes' NEPA claims,

which will be analyzed under the Administrative Procedure Act's judicial-review standard.

Sierra Club v. FERC, 867 F.3d 1357, 1367 (D.C. Cir. 2017) ("[B]ecause NEPA does not create a

private right of action, we can entertain NEPA-based challenges only under the [APA] and its

deferential standard of review."). That standard, set out below, applies in place of the typical

summary-judgment standard of Rule 56: "[W]hen a party seeks review of agency action under the APA, . . . the district judge sits as an appellate tribunal." Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). In other words, "[t]he entire case on review is a question of law." Id. (quoting Marshall Cty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

The Administrative Procedure Act "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Agency action is arbitrary and capricious if, for example, the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

"'The scope of review [in an APA case] is narrow and a court is not to substitute its judgment for that of the agency,' provided the agency has 'examine[d] the data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" Airmotive Eng'g Corp. v. FAA, 882 F.3d 1157, 1159 (D.C. Cir. 2018) (second and third alterations in original) (quoting State Farm, 463 U.S. at 43). While the Court "may not supply a reasoned basis for the agency's action that the agency itself has not given, [it] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)

(citation omitted) (citing <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947); then citing <u>Colo. Interstate Gas Co. v. FPC</u>, 324 U.S. 581, 595 (1945)). It is only these "certain minimal standards of rationality" to which a reviewing court holds an agency. <u>Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA</u>, 686 F.3d 803, 810 (D.C. Cir. 2012) (quoting <u>Ethyl Corp. v. EPA</u>, 541 F.2d 1, 36–37 (D.C. Cir. 1976) (*en banc*)).

## III.   Analysis

We now arrive at the crux of the matter: has the Corps remedied the three NEPA shortcomings that necessitated remand? And what of the other claims raised by the Tribes? The Court will focus on NEPA and then briefly address the remaining claims brought under two other statutes.

### A.  <u>NEPA</u>

As noted above, while the Court "[found] that the Corps' decision on July 25, 2016, and February 3, 2017, not to issue an EIS largely complied with NEPA," it also concluded that there were three "substantial exceptions" — that is, the Corps had violated NEPA in three ways. <u>Standing Rock III</u>, 255 F. Supp. at 147. To wit, it found wanting the Corps' analysis of: (1) whether the project's effects were likely to be highly controversial, <u>id.</u> at 129; (2) the impact of an oil spill on the Tribe's fishing and hunting rights under the Treaty of 1851, <u>id.</u> at 134; and (3) "whether," under a required environmental-justice analysis, "Standing Rock would be disproportionately harmed by a spill." <u>Id.</u> at 140.

The Court will begin its analysis by discussing relevant aspects of the standard of review of agency action under NEPA. It will then proceed to consider how the Corps fares under that standard. It will finish by explaining how its findings on the "highly controversial" factor

11

obviate a need for discussion of the other two remand issues as well as some other claims raised by the Tribes.

      1. *NEPA Standard*

NEPA requires an agency to prepare an Environmental Impact Statement "[i]f any 'significant' environmental impacts might result from the proposed agency action." Grand Canyon Trust, 290 F.3d at 340 (quoting Peterson, 717 F.2d at 1415). A court's "role in reviewing an agency's decision <u>not</u> to prepare an EIS is a limited one, designed primarily to ensure that no arguably significant consequences have been ignored." Myersville Citizens for a Rural Cmty., Inc. v. FERC, 783 F.3d 1301, 1322 (D.C. Cir. 2015) (emphasis added) (internal quotation marks omitted) (quoting TOMAC v. Norton, 433 F.3d 852, 860 (D.C. Cir. 2006)). It "must review whether the agency: '(1) has accurately identified the relevant environmental concern, (2) has taken a hard look at the problem in preparing its EA, (3) is able to make a convincing case for its finding of no significant impact, and (4) has shown that even if there is an impact of true significance, an EIS is unnecessary because changes or safeguards in the project sufficiently reduce the impact to a minimum.'" Michigan Gambling Opposition v. Kempthorne, 525 F.3d 23, 29 (D.C. Cir. 2008) (quoting TOMAC, 433 F.3d at 861). While NEPA does not direct agencies "to take one type of action or another," it does require courts to hold them accountable to its procedural requirements. Busey, 938 F.2d at 193–94. The decision not to prepare an EIS is part of the latter category — that is, courts may find that an agency was arbitrary and capricious not to prepare an EIS and order it to do so. See, e.g., Semonite, 916 F.3d at 1088.

As noted above, an agency considering whether a project will have a "significant" effect on the environment — and thus whether it must prepare an EIS, see Peterson, 717 F.2d at 1415;

42 U.S.C. § 4332(2)(C) — must analyze both the proposed action's "context" and its "intensity." 40 C.F.R. § 1508.27. "[I]n evaluating intensity," the agency must consider ten factors, id. § 1508.27(b), only one of which is relevant here. "Implicating any one of these factors may be sufficient to require development of an EIS." Semonite, 916 F.3d at 1082. For example, in Grand Canyon Trust, the D.C. Circuit found that, having decided that the FAA had not sufficiently considered one of the factors, it need not "reach[]" the plaintiff's claim that the agency had also failed to adequately analyze another of the ten. See 290 F.3d at 347.

The § 1508.27(b) factor at issue here is "[t]he degree to which [the project's] effects on the quality of the human environment are likely to be highly controversial." 40 C.F.R. § 1508.27(b)(4). Effects are "controversial" where "substantial dispute exists as to the size, nature, or effect of the major federal action rather than to the existence of opposition to a use." Town of Cave Creek v. FAA, 325 F.3d 320, 331 (D.C. Cir. 2003) (emphasis added) (quoting Found. for N. Am. Wild Sheep v. USDA, 681 F.2d 1172, 1182 (9th Cir. 1982)). While "what constitutes the type of 'controversy' that requires a full EIS is not entirely clear," Nat'l Parks Conservation Ass'n v. United States, 177 F. Supp. 3d 1, 33 (D.D.C. 2016) (quoting Nat'l Wildlife Fed'n v. Norton, 332 F. Supp. 2d 170, 184 (D.D.C. 2004)), "something more is required besides the fact that some people may be highly agitated and be willing to go to court over the matter." Id. (quoting Fund for Animals v. Frizzell, 530 F.2d 982, 988 n.15 (D.C. Cir. 1975)). In other words, the significant public protests near Lake Oahe do not transform the pipeline's approval into a highly controversial action within the meaning of 40 C.F.R. § 1508.27(b)(4).

This "something more" is often "scientific or other evidence that reveals flaws in the methods or data relied upon by the agency in reaching its conclusions." WildEarth Guardians v. Zinke, 368 F. Supp. 3d 41, 81 (D.D.C. 2019) (quoting Nat'l Parks Conservation Ass'n, 177 F.

13

Supp. 3d at 33). In its first summary-judgment Opinion, the Court found that "[t]he expert reports submitted to the Corps after the Final EA was published but before the Corps again decided in February 2017 that an EIS was not required . . . present such scientific critiques." Standing Rock III, 255 F. Supp. 3d at 129 (emphases omitted); see also id. (listing, as examples, seven methodological critiques made in the Tribes' expert reports). The agency's failure to sufficiently respond to these critiques was one of the issues necessitating remand. Id.

While the remand in this case was ongoing, the D.C. Circuit issued a significant opinion clarifying a court's role in reviewing an agency's finding that a project was not "highly controversial." In Semonite, the Corps examined the construction of power lines that would run through historic Jamestown and determined that it did not need to prepare an EIS. See 916 F.3d at 1078–80. Many commenters, including the National Park Service, the Advisory Council on Historic Preservation, the Virginia Department of Historic Resources, and "many non-governmental organizations," raised concerns about various aspects of the project. Id. at 1080. Some of these commenters "identified what they viewed as serious flaws in the Corps's methodologies." Id. In response, the Corps "twice directed [the power company building the lines] to revise its photo simulations," but "[c]ommenters remained unsatisfied." Id. The D.C. Circuit found that, contrary to the Corps' position, the agency action was likely to be "highly controversial" — and thus the project must be halted while the Corps prepared an EIS — because there was "consistent and strenuous opposition, often in the form of concrete objections to the Corps's analytical process and findings, from agencies entrusted with preserving historic resources and organizations with subject-matter expertise." Id. at 1086.

Crucially, the Semonite court explicitly rejected the agency's argument that it had fulfilled its duty under NEPA by "acknowledg[ing] and try[ing] to address concerns raised

14

during the NEPA process by, for example, instructing [the equivalent of DAPL here] to revise its analyses to address the shortcomings identified by commenters." Id. at 1085. That argument, the D.C. Circuit stated, "misse[d] the point." Id. "The question is not whether the Corps attempted to resolve the controversy, but whether it succeeded. Given that many critical comments, including from [agencies and non-governmental organizations], post-dated [those] revisions, the Corps obviously failed." Id. at 1085–86 (emphases added).

The Corps argues that Semonite does not control — and thus that "considering" responses "is all that is required," Oral Arg. Tr. at 44:5–6 — because in that case both private organizations and federal agencies with subject-matter expertise raised concerns with the agency's proposed plans. See ECF No. 458 (Corps Opp. to Standing Rock) at 29–30. Whereas "in Semonite, you had the neutral expert agency" objecting to the Corps' plans, it contends, "[Y]ou have the opposite here." Oral Arg. Tr. at 6:25–7:6. By "the opposite," the agency means that in this case, the Pipeline and Hazardous Materials Safety Administration (PHMSA) "did not object to the worst case discharge methodology or underlying assumptions." Corps Opp. to Standing Rock at 30.

The Court does not believe that these points distinguish the clear instruction of Semonite. First, the D.C. Circuit in that case did not rest its holding exclusively on the existence of federal-agency criticisms, ignoring those raised by private organizations. See, e.g., 916 F.3d at 1085 (describing the "considered responses" of "highly specialized governmental agencies and organizations"). Second, both the Department of the Interior and the EPA, under the previous administration, did express concerns with the agency's analysis here. Interior, for example, found that the Corps' Draft EA "did not adequately justify or otherwise support its conclusion that there would be no significant impacts upon the surrounding environment and community."

USACE_DAPL 5750.  EPA recommended, among other things, that the Corps analyze more closely the leak-detection system it had selected, including its "ability . . . to identify small volume leaks."  USACE_DAPL 5746.  In fact, as the Corps itself noted, EPA's own estimate for a spill from a pipeline of DAPL's size in that region was many times the size of the Corps'.  See USACE_DAPL 72184, 72252 (citing U.S. Nat'l Response Team, Mid-Missouri River Sub-Area Contingency Plan 9 (2015)).  The agencies' position changed after a new administration took office and President Trump urged the Corps to "review and approve [DAPL] in an expedited manner."  82 Fed. Reg. 8661.  This is certainly their prerogative, see State Farm, 463 U.S. at 59 (Rehnquist, J., concurring in part and dissenting in part) ("A change in administration brought about by the people casting their votes is a perfectly reasonable basis for an executive agency's reappraisal of the costs and benefits of its programs and regulations."), but the existence of the prior comments undercuts the Corps' emphasis on the lack of federal-agency critique in this case.

Third and finally, the Corps' position treats the Tribes and their experts as more akin to the "non-governmental organizations" in Semonite, 916 F.3d at 1080, than governmental entities.  As the Government well knows, however, "Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories."  Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla., 498 U.S. 505, 509 (1991) (quoting Cherokee Nation v. Georgia, 30 U.S. (5 Pet.) 1, 10 (1831)).  Here, these sovereign nations prepared expert comments with the help of not only third-party consultants but also their own relevant governmental departments.  See, e.g., RAR 7453 (report submitted by Standing Rock in collaboration with, among others, its Department of Water Resources, Department of Game and Fish, Tribal Emergency Management Commission, Department of Environmental Regulation,

and a five-member "Technical Consulting Team"). In sum, the Court does not find a reason to deviate from <u>Semonite</u> here.

In addition to the <u>nature</u> of the Court's review, the parties also disagree as to its <u>scope</u>. Dakota Access maintains that, in determining whether the Corps has fulfilled its NEPA obligations, the Court should consider only the critiques raised between July 2016 and February 2017 — that is, those that generated the unresolved scientific controversy prompting the Court's remand. <u>See</u> ECF No. 456 (Dakota Access Consolidated Opp.) at 14; Oral Arg. Tr. at 46:8–11 (arguing that Court should consider "the results of [the] new modeling" but not Plaintiffs' responses to them). The Tribes, on the other hand, believe that the Court should also review their comments submitted during the remand and the Corps' responses to those.

Once again, <u>Semonite</u> lights the way. Arguably, under that precedent, the Court could find the "highly controversial" factor met merely from the <u>existence</u> of "consistent and strenuous opposition" in the form of experts' "concrete objections to the Corps's analytical process and findings" that "post-dated" the Corps' revision efforts. <u>Semonite</u>, 916 F.3d at 1085–86. But this case stands in a more developed procedural posture than <u>Semonite</u>: here the agency has had an additional chance to respond to these renewed criticisms during the remand. <u>See</u> RAR 103 (confirming Corps considered in its remand analysis "the letters, written comments, and expert reports" as well as "all information verbally communicated at the meetings with the Tribes" during remand); <u>id.</u> at 104 tbl.III-1 (listing documents considered and responded to, including those received after the easement and during remand). As a result, and particularly since both Defendants argued the sufficiency of those responses in their briefs, <u>see, e.g.</u>, Dakota Access Consolidated Opp. at 25–27; ECF No. 446 (Corps Opp. to Standing Rock) at 28, the Court finds it prudent to analyze the substance of expert comments made both before and during the remand

to determine whether they "succeed" in resolving the points of scientific controversy that continue to be raised by experts.

### 2. *Points of Controversy*

Having thus delineated the nature and scope of its review, the Court may now engage in the business of reviewing. Given the volume of expert comments submitted both before the granting of the easement and during the remand, it finds that the best approach is to group these criticisms by subject matter. For each topic, the Court will discuss the concerns raised by the Tribes' experts, the responses offered by the Corps, and whether the latter succeed in resolving the scientific controversy. Plaintiffs' experts will be introduced as they appear in the below comments. The Corps also relied on reports prepared for Dakota Access by a third-party consulting expert. See, e.g., RAR 8743 (noting that Spill Model Analysis was done by private consulting group RPS for ETP); Final EA at 126–27 (including, in "List of Preparers and Reviewers," three "Environmental Specialists" from a private environmental consulting company). Citations to Bates numbers beginning with USACE_ESMT, USACE_DAPL, USFWS_DAPL, and OAHE indicate references to the pre-remand administrative record, including the expert comments contained therein. Citations to Bates numbers beginning with RAR refer to the remand-analysis record, again including expert comments raised during that time.

While there are many topics to choose from, the Court finds that examining four will be sufficient to demonstrate the amount of unresolved scientific controversy that remains. As will be explained, even this non-extensive selection suffices to show the necessity of an EIS.

18

The Court begins by discussing concerns raised about DAPL's leak-detection system —
one of the areas of unaddressed scientific controversy noted in the first summary-judgment
Opinion. <u>Standing Rock III</u>, 255 F. Supp. 3d at 129 (quoting USACE_ESMT 1081). Experts for
both Standing Rock and Cheyenne River expressed their skepticism as to the effectiveness of this
system both before and during the remand.

First, they asserted that there was serious reason to doubt the efficacy of the system. As
the above-mentioned report submitted by Standing Rock noted, "A 2012 PHMSA
comprehensive leak detection study found one type of leak detection system[, called
SCADA,] . . . detected hazardous liquid leaks 28 percent of the time," and another, called CPM,
"had a detection rate of 20 percent." RAR 7505. Another expert for Standing Rock had also
presented this data in October 2016, adding that "[t]his low success rate" was "consistent with
Accufacts' many liquid pipeline failure investigations spanning more than 40 years, especially
more recent investigations." ECF No. 117-15 (Accufacts Report of October 2016) at 4–5.
DAPL, it should be noted, uses a CPM leak-detection system. <u>See</u> RAR 173–74.

The Corps' response to the first of these comments was to merely refer to its response to
a different comment that did not specifically address the PHMSA data. <u>See</u> RAR 257 (directing
reader to RAR 143–44); RAR 143–44 (addressing worst-case discharge generally and not
PHMSA data from 2012). Its response to the second — which raised the same PHMSA data —
addressed only Accufacts's assertion that the PHMSA data was consistent with its 40 years of
experience investigating pipeline failures: "ETP asserts that a comparison to data from 40 years
ago, and from older pipelines installed prior to modern pipeline standards, overstates the risk of

19

this modern pipeline." RAR 173. It then went on to describe some features of DAPL's "state-of-the-art pipeline monitoring tools" and practices. See RAR 173–74.

These responses plainly do not succeed in resolving the serious concerns raised. Most critically, the Corps failed entirely to respond to the 2012 PHMSA study that indicated an 80% failure rate in the type of leak-detection system employed by DAPL. Instead, it focused on the expert's comment that its own experience corroborated the PHMSA data. The agency mischaracterized this comment as drawing only on "data from 40 years ago, and from older pipelines installed prior to modern pipeline standards," RAR 173, when the expert had specifically stated that its experience was drawn from a 40-year period and "especially more recent investigations." Accufacts Report at 5. Accufacts made no indication that its experience was only with "pipelines installed prior to modern pipeline standards." The Corps' statement that the expert's comment "overstates" the risk of a leak-detection failure, therefore, holds no water (or oil, as the case may be).

Second, experts noted that the apparent likelihood that DAPL's leak-detection system would not perform the detections for which it was designed was only part of the problem. In addition, the system was not even designed to detect leaks that constituted 1% or less of the pipe's flow rate. See RAR 7683. At the current pipeline flow rate of about 600,000 barrels per day, this means that "6,000 bbs/day" — that is, about 25,200 gallons — "could be released continuously, over a long period of time, without detection." Id. Oglala's expert, a civil and environmental engineer working for an engineering consultancy group, made similar points in a December 2016 report. See RAR 1250. The Corps did not respond to these comments, see RAR 155–59, 274, but in responses to other related topics, it stated that "[a]ccording to ETP," the leak-detection system in place for DAPL "is capable of detecting leaks down to 1 percent or

better of the pipeline flow rate." RAR 127. "In the event of a slow leak," it continued, "even if pressure measurements do not show a significant drop in pressure, a detectable meter imbalance will develop over a period of time resulting in an alarm to the Control Center." Id. "While the alarm threshold may be 1%," DAPL's leak-detection system is "sensitive to smaller changes in flow rate and pressure." Id.

The Court similarly cannot find that the agency adequately disposed of the experts' concerns here. Even while stating that the system was "sensitive to smaller changes in flow rate and pressure," the Corps confirmed that the threshold for a leak-detection alarm was 1%. See RAR 127. Its further response that a less-than-1% leak would eventually be detected over an unspecified "period of time" after building up enough to cause a meter imbalance, id., was less than reassuring given that the amount of undetected leaking oil could be as much as 6,000 barrels per day. See RAR 7683. Indeed, one of the experts noted that Sunoco had experienced a spill of 8,600 barrels on one of its pipelines when it had not recognized a leak even when there was an "imbalance indication[]" because that imbalance did not exceed "established normal operating tolerances." RAR 7491 (quoting PHMSA report of the incident). At oral argument, moreover, when asked why the spill modeling did not include such a slow-leak scenario, the Corps stated that "there was no particular reason that they didn't look at a slow leak." Oral Arg. Tr. at 12:8–9.

Third, Accufacts commented that a "complete risk analysis require[s], *inter alia*, consideration of . . . location and type of 'critical leak detection monitoring devices by milepost.'" RAR 7491 (quoting USACE_ESMT 1081); see also USACE_ESMT 1078–79 (same expert finding "key variables" such as "time to remotely recognize and react to a possible release" were not considered by Corps). The agency responded that the third-party engineering

21

company that had performed the risk analysis had, according to representations made to the Corps by ETP, considered "[i]nformation on critical leak detection monitoring devices associated with the [leak-detection system] consisting of pressure transmitters and ultra-sonic flow meters by milepost location." RAR 129.

This response does not quite succeed in resolving the issues raised. Stating that it had considered the information was a good start, but, while the Corps did indicate the type of monitoring devices that were used, it did not mention their locations, and, most critically, it did not point to any analysis that did in fact take these two details into consideration. Were this the only point of expert contention, it might be a closer call, but the Corps' responses to the first two groups of expert comments show that the scientific controversy surrounding DAPL's leak-detection system was not resolved.

>    *b.* Operator Safety Record

The next topic is the safety record of DAPL's operator, referred to interchangeably by the parties as ETP and Sunoco (the two completed a merger during this litigation). The thrust of these comments was that any analysis of the risk or magnitude of a spill for a certain pipeline should take into account the performance history of its operator. Donald Holmstrom, an "attorney, investigator, and process safety practitioner with many decades of experience in the oil industry and U.S. government," ECF No. 272-4 (Declaration of Donald Holmstrom), ¶ 1, commented, "A valid risk analysis would recognize the history of the operator, but that didn't happen here." Id., ¶ 9. Standing Rock's remand report made a similar comment. See RAR 7503 ("Nowhere d[id] DAPL explain why historic shutdown discharges from other Sunoco/ETP pipeline incidents are not discussed or relevant. . . . Leak detection estimates to be realistic or scientific need to be based on actual historic performance data."). In this case, the operator's

22

history did not inspire confidence: "PHMSA data shows Sunoco has experienced 276 incidents resulting in over $53 million in property damage from 2006–2016," which one expert described as "one of the lower performing safety records of any operator in the industry for spills and releases." Holmstrom Decl., ¶ 9.

The Corps focused its responses on defending the operator's performance record itself rather than on justifying its decision to not incorporate that record into its analysis. It did not directly reply to the comment that it had not explained "why historic shutdown discharges from other Sunoco/ETP pipeline incidents are not discussed or relevant." RAR 7503; see RAR 255. And in response to the comment that "[a] valid risk analysis would recognize the history of the operator," Holmstrom Decl., ¶ 9, it gave a verbatim repetition of its answer to the comment that "PHMSA data shows Sunoco has experienced 276 incidents resulting in over $53 million in property damage from 2006–2016." Id.; compare RAR 235–36, with RAR 136–37. That response, which addressed only the safety record (and not the failure to consider it), noted that 70% of the 276 incidents were confined to operators' property, and "if an incident is confined to the operators' property, then it would not reach Lake Oahe or any other land or water used by the Tribe." RAR 137. It also noted that Sunoco had increased inspections of its pipelines in recent years, see RAR 235, and stated that the commenter(s) "d[id] not identify a specific alternative methodology or particular criteria or performance metrics that the Corps should have considered" or studies "that would cause the Corps to doubt its previous methodologies and data supporting [its] conclusion to rely on ETP's risk analysis." Id.

This response does not resolve the issues raised by the Tribes' experts. Two central concerns went unaddressed: (1) the 30% of spills — about 80 of them — that were not limited to operator property; and (2) the criticism that the spill analysis should have incorporated the

23

operator's record. Indeed, the 70% of spills that occurred on operator property may still be relevant to the latter point — for example, by showing how an operator's practices might affect the risk of a spill, length of detection time, and speed of response. Finally, the Corps' form language about lack of "specific alternative methodology" and studies "that would cause the Corps to doubt its previous methodologies" — which appears, without alteration or explanation, in many of its responses, see, e.g., RAR 116, 119, 125, 130, 132 — is a *non sequitur* and does nothing to resolve the specific issues raised by the Tribes' experts.

### c. Winter Conditions

Another concern captured in expert comments was the Corps' failure to consider the impact of harsh North Dakota winters on response efforts in the event of a spill. First, as Oglala's expert noted, "[S]ubfreezing temperatures during winter months will affect emergency response conditions during cleanup of a spill," creating "significant difficulties that are not present during other periods," such as that "workers require more breaks and move slower due to the bundling of clothing," "daylight hours are shorter," and "slip-trip-fall risk increases significantly." Earthfax Report at 7. The Final EA, then, "should have quantified the effect of these factors on response time and the subsequent impacts to human health and the environment." Id.

The same expert pointed out, moreover, that the EA's statement that "ice itself often serves as a natural barrier to the spread of oil" by "naturally contain[ing]" pockets of oil, see Final EA at 39 (USACE_DAPL 71263), was an "oversimplification of oil recovery operations beneath ice." Earthfax Report at 7. In the first place, the report stated, ice makes it "difficult to determine where the largest pockets of oil may occur." Id. Beyond that, "[t]he trapped oil may move," and "[i]ce will naturally break both on the river and on the reservoir, shifting recovery

24

locations and increasing safety hazards." Id. Because of the above-described complications of emergency response during the winter, moreover, "the time required to recover the oil will be increased," in turn "increas[ing] the extent to which the oil dissolves into the water." Id. at 8. The expert noted that the study cited by the Corps for the proposition that ice may benefit spill response also indicated the ways in which winter may simultaneously hinder it. Id. Ultimately, the expert concluded, "[T]he EA should have presented a more serious, quantitative evaluation of the winter spill scenario" to ensure that the above-described factors "were properly evaluated." Id. Standing Rock and its experts made a similar point that will be discussed in the following section. See *infra* Section III.A.2.d.iii.

In its response to Oglala's expert, the Corps "agree[d]" that "the recovery of oil under ice is difficult." RAR 150. The agency stated that it had considered winter conditions in the EA, pointing to parts of the Final EA that the Oglala expert had criticized. Id. (citing Final EA at 39). It also stated that it had "mandated full-scale winter/ice exercises at . . . Lake Oahe as a condition to the easement," and that such exercises were "tentatively scheduled" for February 2019. Id. Finally, it noted that "the Spill Model Report includes an assessment of the winter spill scenario of oil movement under the ice at Lake Oahe." Id. (citing RAR 8875). That report "predicts that ice cover retards the movement of oil downstream by trapping the hydrocarbons in the vicinity of the release location." RAR 151. Thus, "ETP anticipates that the difficult winter conditions will be counterbalanced by the slower movement of the oil beneath the ice." Id.

The Court finds the Corps' response insufficient to resolve the points raised by Oglala's expert. To start, the agency's reference to the Spill Model Report does not necessarily support ETP's prediction. The report in fact found that, in simulations presuming 100% ice coverage, "[t]he ice effectively capped the oil, prevented evaporation, and resulted in enhanced dissolution,

25

all of which led to the maximum mass of oil in the water column." RAR 8875. This is in line with the expert's prediction, see Earthfax Report at 8 (winter response complications will "increase the extent to which the oil dissolves into the water"), and does not support ETP's conclusion that slow winter flow rates and the entrapment of oil pockets within the ice would counteract the response difficulties presented by winter conditions. The Corps' reference, moreover, to the parts of the EA that formed the basis of the expert's criticism does not "resolve" the scientific controversy. Semonite, 916 F. Supp. 3d at 1085–86. And practicing a winter response, while prudent and perhaps a good avenue for producing data as to how exactly winter conditions would delay response efforts, does not get to the point of addressing the concern that the spill model does not currently take that kind of data into account.

> ### d. Worst-Case Discharge

The largest area of scientific controversy, particularly during remand, was the worst-case-discharge estimate for DAPL used in the spill-impact analysis. As relevant here, the "worst case discharge" is

> [t]he pipeline's maximum release time in hours, plus the maximum shutdown response time in hours (based on historic discharge data or in the absence of such historic data, the operator's best estimate), multiplied by the maximum flow rate expressed in barrels per hour (based on the maximum daily capacity of the pipeline), plus the largest line drainage volume after shutdown of the line section(s) in the response zone expressed in barrels (cubic meters).

40 C.F.R. § 194.105(b)(1). In other words,

> WCD = ((maximum release time + maximum shutdown response time) × maximum flow rate) + largest line drainage volume

The idea, then, is to calculate the maximum amount of oil that could possibly leak from the pipeline before a spill is detected and stopped. The regulations further provide that the "[w]orst

case discharge means the largest foreseeable discharge of oil . . . in adverse weather conditions." 49 C.F.R. § 194.5.

One final introductory note. Defendants argue that the PHMSA regulations cited above, which require calculation of a worst-case discharge, see 40 C.F.R. § 194.105(a), are not mandatory under NEPA and thus that the Corps need not have complied with them under that statute. See Corps Opp. to Standing Rock at 12 (citing Robertson v. Methow Valley Citizens Council, 490 U.S. 332 (1989)). But even if it was not required to do so, the agency did perform such calculations using 40 C.F.R. § 194.105(b)(1), which formed the basis for other conclusions about the effects of a spill. See id. at 12–13 ("[T]he Corps based some of its analysis on an extremely pessimistic "worst case discharge" figure derived from a Spill Model Report prepared pursuant to PHMSA regulations."). Expert critiques raising serious doubts about the Corps' application of 40 C.F.R. § 194.105(b)(1) cannot be resolved by the fact that the agency may not have been required to use this particular method in the first place. Such a rule would immunize vast swaths of the Corps' analysis from judicial or expert review. Cf., e.g., Sierra Club v. Sigler, 695 F.2d 957, 966 (5th Cir. 1983) ("The purpose of judicial review under NEPA is to ensure the procedural integrity of the agency's consideration of environmental factors in the EIS and in its decision to issue permits. If the agency follows a particular procedure, it is only logical to review the agency's adherence to that procedure, not to some altogether different one that was not used."). Indeed, the Corps seemed to concede this at oral argument. See Oral Arg. Tr. at 8:25–9:4 ("The Court: . . . But since you did [a WCD analysis] here, shouldn't that analysis be subject to expert criticism?" Mr. Schifman: "Yes. It is absolutely, just as any analysis that the Corps or any agency does is subject to expert criticism in the appropriate comment period or whatever the case may be. So, it was subject to that criticism, the Corps evaluated the criticism

in great depth . . . .").  The Court, therefore, will consider expert critiques of the agency's calculation of the WCD as valid as any other critique.

Both before the easement was issued and during remand, experts raised myriad concerns with the WCD used by the Corps to evaluate impacts of a potential DAPL spill.  While there were many axes on which the WCD was challenged, the Court will discuss only three, finding them sufficient to illustrate the unresolved scientific criticisms posed by the Tribes' experts.

i.  Leak-Detection Time

In addition to the concerns raised about whether the leak-detection system would function as claimed and that it was not designed to detect spills of less than 1%, see *supra* Section III.A.2.a, experts also voiced strong criticisms of how quickly the Corps claimed the system would catch a spill in its WCD analysis.  Standing Rock's remand report commented that, while "[l]eak detection time is intended to be part of the WCD calculation formula," RAR 7502, "no actual detection time was provided or utilized."  RAR 7501.  (Recall that inclusion of detection time was also one of the areas for improvement suggested by EPA in its comment on the Draft EA.  See USACE_DAPL 5746 ("recommend[ing] that the NEPA analysis describe . . . the time that would be required for detection and shutoff of the pipeline").)  Instead, "[t]he DAPL calculation multiplied only the pump shutdown time by the maximum flow rate and added the drain down volume."  RAR 7501.  And far from being instantaneous, several experts noted, the worst-case leak-detection time was likely to be quite long.  See, e.g., RAR 1347 (commenting that spills have been documented to continue undetected for "hours and sometimes weeks"); RAR 7689 (recommending that the WCD "release time assumption" be increased to 8 hours to "reflect[] the actual (proven in use) performance of the Leak Detection System and the track record of the pipeline operator to identify pipeline leaks in remote locations such as the Lake

Oahe pipeline crossing"); Accufacts Report at 8 ("There appears to be considerable optimism in the EA in assuming a quick recognition and response by control room personnel.").

The Corps countered that, after "review[ing] the Lake Oahe Crossing Report numerous times resulting in numerous revisions by the applicant," it had determined that the estimated total time for leak detection, pump shutdown, and valve closure used in the WCD was "12.9 minute[s]." RAR 254. This was "based on the sum of the time to detect a break on the line and shutdown pumps (9 minutes) and the time to close the valves (3.9 minutes for standard valves)." Id. The agency stated that the 9-minute portion, to which it had previously referred only as the amount of time required to shut down mainline pumps, was in fact "not limited to pump shutdown time as it already includes 1 minute for time of detection." Id. The 1-minute figure was used because, "[a]ccording to ETP, the typical time of detection for a WCD rupture is less than 1 minute." Id.; see also RAR 126 ("According to ETP, the LeakWarn CPM system is . . . capable of providing rupture detection within 1 to 3 minutes."); RAR 127 (same).

The Corps' response does not resolve the issues raised by the experts' comments on many levels. To start, the Court finds it difficult to make sense of the agency's statement that its previous "reference to the mainline pumps being shutdown within 9 minutes of detection is not just limited to pump shutdown time as it already includes 1 minute for time of detection." RAR 254 (emphasis added). The "reference" is in the spill-model analysis prepared for Dakota Access by a third-party private consultant. See RAR 14959–87. There, the consultant explains that the numbers "utilized in the DAPL computer model" allow 12.9 minutes for "Detection and Shutdown*." RAR 14967. Below that, the asterisk is explained: "*The mainline pumps are shutdown within 9 minutes of detection and the adjacent block valves are completely closed within an additional 3.9 minutes." Id. Given that the latter sentence is meant to explain the

29

reference to "Detection and Shutdown," the Corps' statement that the 9 minutes include 1 minutes for detection appears unsupported. The clear meaning of "within 9 minutes of detection" is "9 minutes after detection." At best, the Corps' statement that the 9 minutes included time for detection requires more explanation.

But even if the Court accepted, *arguendo*, that the WCD did allow one minute for detection of the rupture, this does not resolve the serious concerns noted by experts about the propriety of using that number to calculate the WCD. Most obviously, what DAPL's leak-detection system is "capable of," RAR 126, 127, or what its "typical" performance would be, see RAR 254, are not necessarily the same as the figure that should be used in calculating its "maximum release time." 40 C.F.R. § 194.105(b)(1). The Corps itself betrays that one minute is not the longest time it could take for a full-bore rupture to be detected, since it admits that DAPL's leak-detection system is "capable of providing rupture detection within 1 to 3 minutes." RAR 126, 127. The difference between one and three minutes is not insignificant when speaking of a full-bore rupture: the current maximum flow rate of the pipeline (only half of its full capacity) is 600,000 barrels a day, which translates to over 416 barrels per minute.

But the difference between the one-minute number used in the WCD and the actual maximum detection time may be much larger. In response to the many experts who commented that hours, rather than minutes, were more accurate figures for the WCD, the Corps merely repeated that ETP had assured it that DAPL's system was capable of detecting a full-bore rupture one to three minutes after it occurred. See RAR 127, 205, 254. Of course, the fact that the system is capable of detecting a leak in this time does not mean that it will do so, only that it may. And in neither case does the one-to-three-minute timeframe purport to be the maximum

30

release time the WCD regulation requires and which the experts posited could well be hundreds of times longer than ETP's number.

<div align="center">ii. Shutdown Time</div>

Once a leak is detected, the pipeline's pumps must be shut down in order to stop the flow of oil. In addition, valves help to "reduce the total volume of oil that could be released in the event of a spill," RAR 120, by blocking already-pumped oil before it reaches the point of a leak or rupture. DAPL has two such valves near Lake Oahe; failure of these valves would cause the discharge amount to skyrocket. See RAR 121.

Recall that the WCD regulations require calculation of "the maximum shutdown response time in hours (based on historic discharge data or in the absence of such historic data, the operator's best estimate)." 40 C.F.R. § 194.105(b)(1). As noted above, the Corps used a total time of 12.9 minutes for shutdown — 9 minutes for the pumps and 3.9 minutes for the valves. See RAR 254, 14967. (As discussed, the 9-minute figure may also include 1 minute for leak detection, thus leaving 8 minutes for pump shutdown. See supra Section III.A.2.d.i.)

Holmstrom contended that the 12.9 (or possibly 11.9) minutes "from leak detection to the closing of the shut-off valves lacks supporting data and is not credible." Holmstrom Decl., ¶ 14. This number, he pointed out, was "based on a 'best case' scenario in which all systems function precisely as intended," including that "the correct decision and response is immediately initiated, and all equipment such as controls, sensors, pumps and valves function as intended." Id., ¶ 11. Such assumptions have no place in a worst-case scenario, experts said, since in reality "[m]ajor spill incidents typically occur with multiple system causes, when people, or equipment, or systems do not function exactly as they are expected to." Id. By failing to consider such

<div align="center">31</div>

eventualities, which is the modern standard for major accident prevention, the model had not, in fact, given a <u>worst-case</u> discharge analysis. <u>Id.</u>

The Corps responded to this criticism by stating that the valves at Lake Oahe "have a closure time of no greater than three (3) minutes." RAR 155 (quoting Final EA at 90); <u>see</u> RAR 236–37 (referring to RAR 155–59). The other parts of Holmstrom's comment — *i.e.*, those identifying why assuming a perfect valve-closure time was unrealistic for a WCD — were omitted from the Corps' response to the relevant paragraph of his declaration. <u>See</u> RAR 236. In its limited answer, moreover, the agency largely focused on the fact that its WCD figure was lower than an earlier, non-WCD spill-volume estimate made by Oglala's expert. <u>See</u> RAR 143–44; <u>see also</u> RAR 236 (referring to RAR 143–44, 151–55). It further explained that, "during the design process, ETP evaluated the potential for incorrect operation and/or equipment failure at the . . . pump stations[ and] mainline valves," resulting in a design that is "established to safeguard against incorrect operation using alarms and shutdowns to operate the pipeline within the guidelines of [the PHMSA pipeline regulations]." RAR 151.

The Corps' responses are, again, inadequate. The agency's statement that it takes no more than three minutes for the valve-closure process to occur, <u>see</u> RAR 155 (quoting Final EA at 90), does not respond to the fact that human or machine error might result in the valves' not beginning the closure process at all (even after a leak has been detected). <u>See</u> Holmstrom Decl., ¶ 11; <u>see also</u> Oral Arg. Tr. at 10:4–5 ("It does assume the valves close as they are, you know, able to do."); <u>id.</u> at 10:25–11:2 ("[T]here's no portion of the remand analysis that directly says here's what happened [if] the valves never closed.").

The Corps' myopic preoccupation with the Earthfax estimate, moreover, which pervades its responses to expert comments about flaws in the WCD, <u>see</u> RAR 143–44; <u>see also</u> RAR 155,

175, 213, 225, 226, 236, 237, 247, 248, 249, 251, 253, 257, 258, 261 (referring reader to RAR 143–44 for discussion of WCD), is not the *coup de grace* the agency believes it to be. The spill-volume estimate provided by Earthfax, which responded to the July 2016 EA, was not intended as a WCD estimate, <u>see</u> Earthfax Report at 3, since the Tribes had not yet been provided with the amount or supporting calculations of the Corps' WCD. <u>See</u> Final EA at 91 (USACE_DAPL 71315) (stating only that it had determined "a largest possible release volume" "[b]ased on a worst case discharge (WCD) scenario specific to . . . Lake Oahe"). Even had Earthfax's estimate been a WCD estimate, the fact that it was lower than that calculated by ETP and the Corps would not resolve the many comments raising concrete disagreements about factual assumptions underlying the numbers used for the DAPL WCD.

Finally, that human error was considered in the <u>design</u> of the pumps and/or valves does not mean that it was considered in a worst-case-discharge analysis, nor does the Corps so contend. The Court does not understand the Corps to be claiming that the design of the pipeline precludes <u>all</u> opportunities for human error between detection of a leak and triggering of valve closure such that it need never be considered when determining a worst-case discharge. Indeed, such a statement would recall assurances like "God himself could not sink this ship" (*RMS Titanic*), or "You're confused, RBMK reactor cores don't explode" (Chernobyl). The Corps' response, then, does not address the heart of the issue raised by experts — namely, that the numbers used in the WCD assume, contrary to the idea of a worst-case discharge, that "correct decision and response is immediately initiated, and all equipment such as controls, sensors, pumps and valves function as intended." Holmstrom Decl., ¶ 11.

### iii. Adverse Conditions

A third criticism of the worst-case-discharge calculation was that it did not comply with the portion of the WCD regulation that defines a WCD as "the largest foreseeable discharge of oil . . . in adverse weather conditions." 49 C.F.R. § 194.5 (emphasis added); see RAR 7503 (quoting same). Standing Rock's remand report expressed concern that "DAPL d[id] not address the adverse weather impact on the WCD for the shutdown of the pipeline." RAR 7503–04. In so doing, the report continued, it ignored important complicating factors like "harsh ND winter conditions, deep snow, ice cover limitations on oil spill sighting, extreme cold and availability and operation of the . . . shutdown valves in extreme environments." RAR 7504. The Corps did not respond to the first comment, see RAR 253–54, and in response to the second, it referred to the WCD response that, as noted above, focuses on a non-WCD estimate provided by Earthfax. See RAR 256 (referring to RAR 247–48, which in turn refers to RAR 143–44). It also provided information on equipment and personnel that are in place to respond to emergency situations and stated that "ETP provided design temperature specifications to . . . manufacturers to ensure that both high- and low-temperature concerns would be considered in the manufacturing of those materials and equipment." RAR 248.

As noted above, the Corps' reference to its catch-all WCD discussion that focuses largely on an Earthfax estimate does not move the needle. The fact that DAPL manufacturers incorporated low-temperature considerations into their designs runs into the same problem as discussed in the previous section: assurances that a product was designed to prevent certain problems does not answer the question of what the worst-case discharge would be if those problems occurred. Again, the Court cannot find that these rebuttals do away with the controversy created by expert comments.

As shown at great length in the preceding analysis, the Corps has not "succeeded" in "resolv[ing] the controversy" created by "consistent and strenuous opposition, often in the form of concrete objections to the Corps' analytical process and findings," by "organizations with subject-matter expertise." Semonite, 916 F.3d at 1086. As in Semonite, "[t]his demonstrates the 'something more' needed to show that the 'effects on the quality of the human environment are likely to be highly controversial.'" Id. (quoting 40 C.F.R. § 1508.27(b)(4)). The Corps has thus violated NEPA by determining that an EIS was unnecessary even though one of the EIS-triggering factors was met.

The Court acknowledges that in projects of this scope, it is not difficult for an opponent to find fault with many conclusions made by an operator and relied on by the agency. But here, there is considerably more than a few isolated comments raising insubstantial concerns. The many commenters in this case pointed to serious gaps in crucial parts of the Corps' analysis — to name a few, that the pipeline's leak-detection system was unlikely to work, that it was not designed to catch slow spills, that the operator's serious history of incidents had not been taken into account, and that the worst-case scenario used by the Corps was potentially only a fraction of what a realistic figure would be — and the Corps was not able to fill any of them.

The Court will therefore remand to the agency for it to complete such EIS. See id. at 1082 ("Implicating any one of the factors may be sufficient to require development of an EIS.") (citing Grand Canyon Trust, 290 F.3d at 347); Grand Canyon Trust, 290 F.3d at 340 ("If any 'significant' environmental impacts might result from the proposed agency action[,] then an EIS must be prepared before agency action is taken.") (quoting Peterson, 717 F.2d at 1415).

### 3. *Effect on Other Claims*

Having directed the Corps to prepare an EIS because the pipeline's "effects on the quality of the human environment are likely to be highly controversial," 40 C.F.R. § 1508.27(b)(4), the Court need not discuss the other two NEPA issues on which it remanded, see Standing Rock III, 255 F. Supp. 3d at 132–34, 136–40, given that the remedy for them would be the same. See Semonite, 916 F.3d at 1088 (remanding for preparation of EIS without discussing all grounds for appeal because, as here, "[i]n preparing its EIS, the Corps [would] have to revisit" those issues in any case) (citing American Iron & Steel Inst. v. EPA, 115 F.3d 979, 1008 (D.C. Cir. 1997)).

This holding also obviates examination of three groups of consultation claims: (1) Yankton's preserved claim that the Corps violated its consultation duties prior to granting the easement, see ECF No. 435-1 (Yankton Second MSJ) at 19–21; (2) Oglala's similar, also-preserved claim that the Corps did not consult with it under the Mni Waconi Act prior to issuing the EA and Mitigated FONSI; and (3) all Tribes' claims that the Corps violated its consultation duties during remand. Id. at 22–24; ECF No. 433-2 (Standing Rock Second MSJ) at 39–45; ECF No. 434 (Oglala MSJ) at 16–17; ECF No. 436-1 (Cheyenne River Second MSJ) at 18–22. This is because the Court has already found the decisions on which they claim the Corps failed to consult — that is, the EA, the Mitigated FONSI, and the Remand Analysis — to be invalid. In other words, a favorable holding by the Court on those other issues would not change the result in this case or offer the Tribes any greater relief than their success on the "highly controversial" issue already has.

### B. NHPA

Three of the Tribes also "ask[] the Court to revisit" its prior holding that their claims under the National Historic Preservation Act were moot. See Standing Rock Second MSJ at 46–

47; see also Yankton Second MSJ at 19 (adopting this portion of Standing Rock's brief); Cheyenne River Second MSJ at 17–18 (same). The Court so found because the construction of the pipeline under and around Lake Oahe had been completed, thus inflicting all damage that could have been enjoined by a successful NHPA claim. Standing Rock V, 301 F. Supp. 3d at 61–64 (finding no "means by which the Court can still grant Plaintiffs 'meaningful relief'") (quoting Sierra Club v. U.S. Army Corps of Eng'rs, 803 F.3d 31, 44 (D.C. Cir. 2015)). The Tribes now contend that, even if the claim is moot, it falls into "an exception to the mootness doctrine for a controversy that is "capable of repetition, yet evading review." Kingdomware Techs. v. United States, 136 S. Ct. 1969, 1976 (2016) (quoting Spencer v. Kemna, 523 U.S. 1, 17 (1998)). The exception on which the Tribes rely "applies 'only in exceptional situations' where (1) 'the challenged action [is] in its duration too short to be fully litigated prior to cessation of or expiration,' and (2) 'there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." Id. (alterations in original) (quoting Spencer, 523 U.S. at 17). The parties here dispute both parts of this test.

The Court need only address the second element to find that this case does not qualify for the exception. The Tribes argue that "the legal questions presented" are "all but certain to arise again." Standing Rock Second MSJ at 47. Standing Rock's Historic Preservation Office, it states, "receives over 250 requests to consult with federal agencies annually, and participates in around 50," including "other crude oil pipelines proposed in the Tribe's ancestral homelands that will need Corps permits." Id. Because of this, the Tribe states that "[i]t is possible, if not probable, that such permitting would trigger the same dispute over the scope of § 106 review [under the NHPA] that happened here." Id.

The Tribes misconstrue the scope of the exception. "The 'wrong' that is, or is not, 'capable of repetition' must be defined in terms of the precise controversy it spawns." PETA v. Gittens, 396 F.3d 416, 422 (D.C. Cir. 2005). Here, that would not include all consultations with all agencies, as the Tribes suggest. Even narrowing the scope to the other pipelines mentioned by Standing Rock, the Tribe provides no evidence for its bare assertion that the same NHPA issue may arise in a hypothetical litigation over those pipelines. Without any supporting facts, the Court cannot call such a remote and unsubstantiated possibility a "reasonable expectation" that the same harm will befall the Tribe again.

In any event, even if the Tribes' NHPA claims were not moot, they would fail on the merits for the reasons stated in the Court's first Opinion in this case. See Standing Rock I, 205 F. Supp. 3d at 8–10 (finding Standing Rock unlikely to succeed on merits of its NHPA claim). The Tribes attempt to resurrect only one of the three NHPA issues considered in that Opinion — viz., whether the Corps used too narrow a scope when evaluating whether DAPL would have an adverse effect on an identified historic property by "alter[ing], directly or indirectly, any of the characteristics of a historic property that qualify it for inclusion in the National Register" under NHPA regulations. Standing Rock I, 205 F. Supp. 3d at 10 (quoting 36 C.F.R. § 800.5(a)(1)). The Court found the scope to be appropriate, rejecting the Tribes' "sweeping claim that the Corps was obligated in permitting this narrow activity — i.e., certain construction activities in U.S. waterways — to consider the impact on potential cultural resources from the construction of the entire pipeline." Id. at 30. Guided by highly relevant and binding precedent, the Court refused to find "that a federal agency with limited jurisdiction over specific activities related to a pipeline is required to consider all the effects of the entire pipeline to be the indirectly or directly

foreseeable effects of the narrower permitted activity." Id. at 31; see also id. (citing Sierra Club v. U.S. Army Corps of Eng'rs, 803 F.3d 31, 34–35 (D.C. Cir. 2015)).

The Court now affirms this holding at the summary-judgment stage, finding that the Tribes' arguments lack merit for the same reasons stated in that Opinion. See id. at 30–32. Even if correct that the controversy is not moot, Plaintiffs would not prevail on this count.

## C. Mni Waconi Act

Last up is the claim brought by Oglala under the Mni Waconi Act of 1988, Pub. L. No. 100-516, 102 Stat. 2566. (*Mni wiconi* means "water is life" in Lakota.) The Act declares that "the United States has a trust responsibility to ensure that adequate and safe water supplies are available to meet the economic, environmental, water supply, and public health needs of the Pine Ridge Indian Reservation," id. § 2(a)(4), which is home to the Oglala Sioux Tribe. It directs the Secretary of the Interior to, among other things, "plan, design, construct, operate, maintain, and replace a municipal, rural, and industrial water system, to be known as the Oglala Sioux Rural Water Supply System." Id. § 3(a). The Act further provides that "[t]itle to the [OSRWSS] shall be held in trust for the Oglala Sioux Tribe by the United States." Id. § 3(e). After the passage of the Act, the Corps duly created the OSRWSS as part of the Mni Waconi Project. The OSRWSS has its water intake 205 miles down the Missouri River from where DAPL now crosses Lake Oahe. See RAR 92; USACE_ESMT 1358–59.

Oglala argues that the Act imposes a continuing fiduciary duty on the Corps to "provid[e] clean drinking water to residents of the Reservation and ensur[e] that the OSRWSS is maintained and preserved for that purpose and others," Oglala MSJ at 14, and that by failing to consider the effects of the pipeline's Lake Oahe crossing on the Mni Waconi Project, the United States (through the agency) has breached that duty. The Corps rejoins that Oglala overstates the scope

39

of the trust duty, that any duty was not breached by the approval of a project so far upstream from the OSRWSS, and that any breach of duty was remediated during the remand. The Court will first consider the nature of the duty owed to Oglala before taking up whether there has been a violation of such duty.

As the Court has had occasion to note previously in this case, "The trust obligations of the United States to the Indian tribes are established and governed by statute rather than the common law." Standing Rock III, 255 F. Supp. 3d at 143 (alteration omitted) (quoting United States v. Jicarilla Apache Nation, 564 U.S. 162, 165 (2011)). In order to bring a breach-of-trust claim, therefore, Oglala "must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties." United States v. Navajo Nation, 537 U.S. 488, 506 (2003). It is not enough that a statute places land in trust for the benefit of a tribe — it must also impose a "correlative duty of management" over the trust corpus in order to give rise to a cause of action. El Paso Natural Gas Co. v. United States, 750 F.3d 863, 897 (D.C. Cir. 2014).

The parties agree that the Mni Waconi Act does impose a trust duty on the United States, see ECF No. 450 (Corps Opp. to Oglala MSJ) at 7, but they disagree as to the scope of that duty. Whereas the Tribe believes that the Act's direction to "maintain . . . a municipal, rural, and industrial water system," § 3(a) (emphasis added), requires the Corps to continue to provide "adequate and safe water supplies" for the reservation, id. § 2(a)(4), the agency argues that this duty is "cabined by limited Congressional appropriations" as set out in the Act. See Corps Opp. to Oglala at 7 (citing Mni Waconi Act § 10(a)–(b)). Rather than creating a "perpetual trust obligation," the Corps argues, the Act limits any duty to the activities for which it provides

40

funding. Id. at 8; see also id. at 7 (citing Cobell v. Salazar, 573 F.3d 808, 811 (D.C. Cir. 2009); then citing Mni Waconi Act § 6(b)).

The Court need not determine the precise contours of the United States' trust duty toward Ogalala with respect to the OSRWSS because, regardless of scope, the Corps has not breached that duty by granting an easement under Lake Oahe for DAPL. The Tribe does not dispute that, at present, the OSRWSS does constitute an "adequate and safe water suppl[y]." Mni Waconi Act § 2(a)(4). The possibility of a future spill, which this Court has accepted is low, see Standing Rock III, 255 F. Supp. 3d at 127, does not render the drinking water inadequate and the Government's duty breached. This is particularly true since the OSRWSS takes its water from a point 205 miles downstream from where DAPL passes under Lake Oahe. See RAR 92; USACE_ESMT 1358–59.

The Tribe rejoins that the Corps owed it a fiduciary duty to consider the impacts of the Lake Oahe crossing on the Mni Waconi Project. See Oglala MSJ at 13 (citing Nw. Sea Farms Inc. v. U.S. Army Corps of Eng'rs, 931 F. Supp. 1515, 1520 (W.D. Wash 1996); then citing Muckleshoot Indian Tribe v. Hall, 698 F. Supp. 1504, 1523 (W.D. Wash 1988)). But the cases it cites, which in any case are not binding on this Court, discuss treaty rights, not statutory rights, and only the latter are at issue here. Even if there were a duty to consider the project's effects on the OSRWSS, moreover, the Court agrees with the Corps that, at the very least, it has done so during the remand. See, e.g., RAR 94 (finding the OSRWSS unlikely to be affected because of the predicted "near zero" concentration of hydrocarbons in water many miles upstream of the OSRWSS intake), 95 tbl.II-6 (listing predicted hydrocarbon concentrations at increasing points downstream of the DAPL crossing). The Court, accordingly, finds that the Corps has adequately performed any fiduciary duty imposed by the Mni Waconi Act.

41

D. Remedy

The Corps must prepare an EIS, but what is the status of the easement — and, ultimately, the oil — in the meantime?  As it has done before in this case, the Court will order the parties to brief the issue of whether the easement should be vacated during the remand.  See Standing Rock III, 255 F. Supp. 3d at 147–48.  Certainly, "vacating a rule or action promulgated in violation of NEPA is the standard remedy." Humane Soc'y of U.S. v. Johanns, 520 F. Supp. 2d 8, 37 (D.D.C. 2007) (citing Am. Bioscience, Inc. v. Thompson, 269 F. 3d 1077, 1084 (D.C. Cir. 2001)).  Because "[s]uch a move" would "carry serious consequences that a court should not lightly impose," Standing Rock III, 255 F. Supp. 3d at 147, the Court will ask the parties for dedicated briefing on the subject, which neither side addressed with much conviction in this round of briefing.  As before, "[t]his is not surprising — absent knowledge of whether or to what extent the Court would remand, the parties were unable to fully address the Allied-Signal factors in their summary-judgment briefs." Id. (citing Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n, 988 F.2d 146, 150–51 (D.C. Cir. 1993)).  The Court will therefore allow the parties to argue the issue of vacatur with the benefit of knowing the basis for remand set out above.

IV.     **Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part the Tribes' Motions for Summary Judgment and grant in part and deny in part the Corps' corresponding Cross-Motion for Summary Judgment.  A contemporaneous Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 25, 2020

42

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **STANDING ROCK SIOUX TRIBE**, *et al.*, <br><br>     **Plaintiffs,** <br><br>     **and** <br><br> **CHEYENNE RIVER SIOUX TRIBE**, *et al.*, <br><br>     **Plaintiff-Intervenors,** <br><br>         **v.** <br><br> **U.S. ARMY CORPS OF ENGINEERS,** <br><br>     **Defendant,** <br><br>     **and** <br><br> **DAKOTA ACCESS, LLC,** <br><br>     **Defendant-Intervenor.** | **Civil Action No. 16-1534 (JEB)** |

## ORDER

On July 6, 2020, this Court issued a Memorandum Opinion and separate Order addressing the question of remedy pending Defendant U.S. Army Corps of Engineers' conducting of an Environmental Impact Study on remand. See ECF Nos. 545–46. Of particular relevance, the Court ordered that Defendant-Intervenor Dakota Access, LLC shut down and empty the Dakota Access Pipeline within 30 days. Two days later, Dakota Access asked the Court to stay its ruling pending an appeal, which it had filed the day of the Court's ruling. See ECF Nos. 552 (Motion) & 548 (Notice of Appeal). Dakota Access also asked for an immediate status conference on July 9, see Motion at 2, to which request this Court promptly acceded.

1

At that conference, which took place this afternoon, Dakota Access emphasized its understandable desire to be heard in the Court of Appeals as soon as possible, and it asked this Court to rule expeditiously on its Motion to Stay. The Court explained that it did not see a basis for a stay; indeed, the four factors courts analyze in considering stays, see, e.g., Akiachak Native Cmty. v. Jewell, 995 F. Supp. 2d 7, 12 (D.D.C. 2014) (citing Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)), were essentially subsumed in the Court's latest Opinion granting vacatur pending remand.

The Court nonetheless expressed its willingness to consider a modification to the logistics and timing of the pipeline shutdown and emptying. Dakota Access had contended in its Motion that this would take 86-101 days, see Motion at 11 (citing Third Declaration of Todd Stamm), and the Court asked the Tribes if they would negotiate with Dakota Access with an eye toward reaching an agreement on, e.g., a somewhat longer timetable. The Tribes indicated their willingness to do so and, if no agreement was reached, to file a brief by Monday, July 13, regarding the stay. The Court then encouraged the parties to negotiate and explained that it would rule on those logistics (absent agreement) early next week.

Dakota Access, mindful of the running clock, told the Court that it preferred an immediate ruling denying the Motion to Stay if the Court was only waiting to try to resolve the logistical and timing issues, rather than the merits. The Court is thus obliging Dakota Access by issuing this expedited Order, although it remains willing to assist in mediating (or ultimately deciding) any dispute regarding such logistical and timing issues if jurisdictionally permitted to do so.

2

The Court, accordingly, ORDERS that Dakota Access's Motion to Stay is DENIED.

SO ORDERED.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: July 9, 2020