IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, <br><br> Plaintiff, <br><br> and <br><br> CHEYENNE RIVER SIOUX TRIBE, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, <br><br> Defendant, <br><br> and <br><br> DAKOTA ACCESS, LLC, <br><br> Defendant-Intervenor. | Case No. 1:16-cv-01534 (JEB) <br> (consolidated with Cases No. 1:16-cv-01796 & 1:17-cv-00267) |

### UNITED STATES ARMY CORPS OF ENGINEERS' STATUS REPORT

On August 10, this Court directed the Corps to "submit a status report by August 31, 2020, detailing the options it is considering on vacatur, steps taken by that point, and those that remain."  Minute Order dated August 10, 2020.  The Court also directed that, "[i]n the interim, the parties shall discuss in good faith mitigation measures that could lessen the likelihood and severity of any oil leak in or around Lake Oahe."  *Id*.  Pursuant to that order, the Corps respectfully provides the following Status Report.

1

## I.  The Army and Corps' Regulations and the Omaha District's Memorandum regarding encroachments

Following this Court's order vacating the easement allowing the Dakota Access Pipeline (Pipeline) to cross under Lake Oahe, ECF No 545, as per the policies and procedures of the Department of the Army (Army), the United States Army Corps of Engineers (Corps), and the Corps' Omaha District, the Pipeline now constitutes an "encroachment" on federal property.  In the Corps' remedy briefing, ECF Nos. 507, 536, and during the August 10, 2020, status conference, the Corps described the process for addressing encroachment as outlined by the Corps' Engineer Regulations and an Omaha District Memorandum providing guidance as to application of those regulations.  Consistent with this Court's instructions at the August 10, 2020 Conference, the Corps herein describes in greater depth the relevant Engineer Regulations and the processes the Corps is undertaking guided by these documents.

There are two main Corps and Army Regulations[1] and one Memorandum at issue here:

- First, a Department of the Army publication that describes the Army's policies and procedures regarding real estate.  *See* Exhibit 1, Department of the Army, *Management of Title and Granting Use of Real Property*, Army Regulation (AR) 405-80, October 10, 1997.

---

[1] The Army and Corps documents described herein are titled "Engineer Regulations" and "Army Regulations," respectively.  The Army and its components generally refer to their published internal procedures and rules as "regulations."  *See* https://go.usa.gov/xGYuH (Army Regulations); https://go.usa.gov/xGYuF (Corps Engineer Regulations).  However, it is important to note that these documents were not published through notice-and-comment rulemaking pursuant to the Administrative Procedure Act (APA).  *See* 5 U.S.C § 551(g) (defining a regulation as a legislative rule promulgated under the notice-and-comment procedures of 5 U.S.C. § 553); 44 Fed. Reg. 3168-01.  Under the definitions of the APA these documents are not "regulations" but "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C. § 553(b)(A).

- Second, the Corps' Real Estate Handbook. *See* Exhibit 2, U.S. Army Corps of Engineers, *Real Estate Handbook*, Engineer Regulation (ER) 405-1-12, September 30, 1994 (hereinafter, Real Estate Handbook).

- Third, the Corps' Omaha District's internal Memorandum regarding the District's process for addressing encroachments consistent with Corps and Army Regulation. *See* Exhibit 3, U.S. Army Corps of Engineers, Omaha District, *Real Estate Encroachments*, DM 405-2-1, October 1, 1980 (hereinafter, Omaha Memorandum).

In general, the Army's Management of Title and Granting Use of Real Property document provides the Army's "policy relating to granting use of real property." Exhibit 1 at 1. The Corps' Real Estate Handbook "describes existing procedures pertinent to the real estate activities of the Corps of Engineers as they relate to the acquisition, management and disposal of lands for the Department of the Army (military and civil works)…." Procedures Relating to Acquisition, Management and Disposal of Lands, 44 Fed. Reg. 3168-01; Exhibit 2. The Omaha Memorandum "[p]rescribes policy and procedures" the District uses to address encroachments. Exhibit 3 at 1.

Regarding encroachments specifically, the Real Estate Handbook provides that the Corps' general "policy is to require removal of encroachments" and restoration of the premises. *Id.* at 8-12. However, the Handbook provides for exceptions to this general policy, noted within the four primary means of curing an encroachment. *Id.* at 8-13. The "four basic methods of curing an encroachment" are "removal, disposal, exchange, and outgrant…." Exhibit 2 at 8-14. Exchange in this context means "exchange of Government-owned lands and interests therein for private lands and lands owned by states, other non-Federal agencies, and their instrumentalities."

3

*Id.* at 11-49. Disposal involves selling, giving away, or otherwise disposing of property interests of the United States. *Id.* at 11-42. Although every option available to the Corps in its exercise of enforcement discretion is being considered, the two most plausible options at this point are "removal" and "outgrant." *See id.*

Neither the Army or Corps Regulations or the Omaha Memorandum require the Corps to take any particular action to cure an encroachment within a specified time period, nor is there any requirement to ultimately cure the encroachment at all. And a determination to take any enforcement action rests within the discretion of the Corps and the Department of Justice as appropriate. However, if the Corps ultimately seeks to exercise its enforcement discretion to cure the encroachment through removal, the Management of Title and Granting Use of Real Property document and Real Estate Handbook provide for the Corps initially to seek to have the encroaching party remove the encroachment voluntarily. If the encroaching party is cooperative, the regulations provide for the Corps to allow "a reasonable period of time . . . for voluntary removal." *Id.* at 8-14. If the encroaching party is not cooperative in removing the encroachment, the Handbook provides for the matter "to be referred to the U.S. Attorney." [2] *Id.*

As noted above, the Army's Management of Title and Granting Use of Real Property document, Corps' Real Estate Handbook, and Omaha Memorandum recognize that an encroachment can be resolved through an outgrant, which is an umbrella term for an instrument that authorizes, *inter alia*, "private organizations…to use Army (military or civil) controlled real

---

[2] The Corps does not have independent litigating authority and thus any enforcement actions brought as described here would be subject to the discretionary litigating authority of the Department of Justice under the direction of the Attorney General. *See* 28 U.S.C. § 516; Sourcebook for United States Agencies (2018), https://www.acus.gov/research-projects/sourcebook-united-states-executive-agencies-second-edition.

property." *Id.* at 8-33; Exhibit 1 at 11.  The Real Estate Handbook provides that "[a] lease, easement or license may be appropriate depending on the nature of the encroachment.  In easements areas, a consent to structure, if applicable under the easement estate, may be issued after the fact."  *Id.* at 8-15.  The method of approving an outgrant depends on the encroachment at issue.  In this case, any easement for the Pipeline could be granted—just like the original, now vacated easement—under the process set forth in the Mineral Leasing Act (MLA), 30 U.S.C. § 181 *et seq.*  This process governs rights-of-way through federal lands "for pipeline purposes for the transportation of oil, natural gas, synthetic liquid or gaseous fuels, or any refined product produced therefrom."  The MLA authorizes the head of a federal agency "which has jurisdiction over Federal lands" to grant "[r]ights-of-way through any Federal lands" for such purposes.  30 U.S.C. § 185(a) and (b)(3); *see* ECF Nos. 183, 238.

Rights-of-way under the MLA are "subject to such terms and conditions as the . . . agency head may prescribe regarding extent, duration, survey, location, construction, operation, maintenance, use, and termination."  30 U.S.C. § 185(f).  To decide whether to grant easements under the MLA, the Corps generally follows the policies and procedures in Chapter 8 of the Real Estate Handbook, and the Army's Management of Title and Granting Use of Real Property document.  *See* Exhibits 1-2.  The Real Estate Handbook provides for the Corps to evaluate whether "the proposed easement will not be inconsistent with the authorized purposes of the Federal installation or project."  Exhibit 2.  The Handbook also provides for site-specific environmental, cultural, and operational requirements to be added to the easement as appropriate. *Id.*  The Corps may also impose any special requirements for safe operation of a pipeline or related facilities.  Exhibit 3 at 8-110 and 8-113.  If the Corps finds that a pipeline is not inconsistent with the authorized purposes of the Corps project and its lands, the Corps may sign a

real estate instrument that grants the easement.

The Real Estate Handbook's specified procedures for outgrants expressly contemplate "Compliance with NEPA." Exhibit 2 at 8-22. In particular, those procedures explain that "the environmental review required by NEPA" might result in preparation of an "Environmental Impact Statement (EIS)." *Id*.

## II. The process the Corps is following and steps taken regarding the encroaching Pipeline

The Omaha Memorandum provides the procedures the Omaha District is following to address the encroaching Pipeline, consistent with the Army and Corps Regulations. This process involves, in general, coordination between the various Corps components and other agencies to ascertain whether the Pipeline's unauthorized use presents risk to the Corps' project and to find the best way to ultimately "cure" the encroachment, or, in other words, to resolve the situation of unauthorized use of the property interest. Specifically, the Corps has undertaken the following steps:

First, coordination is ongoing between various Corps components including the Real Estate Division, Operations Division, the Area Engineer, Real Estate Field Office, and the Department of Justice as outlined by the Omaha District Memorandum. *See* Exhibit 3 at 7.

Second, as discussed at the August 10, 2020, conference, because of the nature of this encroachment—a pipeline—the Corps has also sought input from the Pipeline and Hazardous Materials Safety Administration (PHMSA) and Department of Energy (DOE). This coordination is also ongoing.

Third, the Corps is proceeding with the EIS process pursuant to this Court's March 25, 2020, order (ECF No. 496). The Corps anticipates finalizing a formal Notice of Intent to prepare an EIS by September 4, 2020 and anticipates submitting it to be processed for publication in the

Federal Register shortly thereafter.

Fourth, the Corps is in contact with and coordinating with the owner of the Pipeline, Dakota Access LLC ("Dakota Access"), regarding the encroachment. On August 17, 2020, the Corps notified Dakota Access of the Pipeline's encroachment status and described the process the Corps is embarking on to determine the appropriate resolution of the encroachment on federal lands. *See* Exhibit 4 (Correspondence between the Corps and Dakota Access). In that notice, the Corps conditioned its discretion to not immediately recommend an enforcement action to the Department of Justice upon Dakota Access's agreement to expressly abide by the conditions contained in the vacated easement and to provide any information that the Corps requests to inform its review of measures to address the encroachment. On August 20, Dakota Access confirmed that it will continue to comply with the easement conditions and provide information the Corps requests as outlined in the Corps' letter. *Id.*

Fifth, consistent with the Court's directive to confer with the parties regarding mitigation, the Corps is engaging in discussions regarding potential additional safety measures. The Corps has held several discussions with Dakota Access and has received correspondence from the Plaintiff Tribes. The Corps is also aware of additional communications between the Tribes and Dakota Access. On August 20, 2020, Dakota Access sent a letter to the Tribes stating that, although the company did not believe additional mitigation was necessary, "it nonetheless is willing to consider other mitigation measures that Plaintiffs believe would be appropriate." Exhibit 5. Dakota Access asked the Tribes to propose "specific proposed mitigation measures that you believe could further enhance DAPL's safety." *Id.* On August 28, 2020, the Plaintiff Tribes sent the Corps and Dakota Access a letter stating the Tribes' position is that the only way to ensure the safety of the pipeline is to "shut it down pending a full environmental review."

Exhibit 6.  The Tribes also take the position that they need additional information and will not discuss mitigation measures before receiving such information.  *Id.*  The Corps will consider the Tribes' request for information and nonetheless invites the Tribes to propose any safety-enhancing mitigation measures they believe are warranted.  The Corps will consider any such proposals if and when it receives them.

Sixth, as stated at the August 10, 2020, status conference, the Corps will consider communications from the Plaintiff Tribes as part of the process.  In addition to the communications described above, the Corps received a letter, Exhibit 7, from Plaintiff Yankton Sioux Tribe asking the Corps to direct Dakota Access to "empty the Dakota Access Pipeline of oil and cease operation of the Pipeline indefinitely."  *Id.*  The Corps will consider that letter as it proceeds with its process.

### III.     Steps the Corps anticipates taking regarding the encroaching Pipeline

Consistent with the Army and Corps' Regulations and the Omaha District Memorandum, the Corps anticipates continuing to seek information and to coordinate internally and with other federal agencies as it continues the encroachment review process.  Specifically, the steps the Corps anticipates include the following:

First, the Corps anticipates additional coordination between its offices and officials. *See* Exhibit 3 at 7.

Second, the Corps anticipates additional coordination between the Corps, PHMSA, and DOE.  The Corps anticipates continuing to seek PHMSA's input as to how to continuously assess the safety of the Pipeline and Lake Oahe crossing, including but not limited to informing the Corps' engagement pursuant to the court-ordered discussion of mitigation measures.  The Corps anticipates also continuing to seek PHMSA's input as to any other relevant design, safety,

or operational factors the agency should consider while evaluating the encroachment.

Third, as described above, the Corps anticipates finalizing the NOI for the EIS ordered by this Court and publishing it in the Federal Register.

Fourth, the Corps anticipates additional coordination with Dakota Access regarding information requests and any additional mitigation measures that may be considered.

Fifth, as discussed at the August 10, 2020, conference, the Corps anticipates completing an evaluation under the encroachment policies described above and making a recommendation to the Department of Justice regarding whether to seek enforcement action against the encroaching Pipeline.  At the August 10, 2020, conference, the Corps represented that it intended to make an initial decision as to enforcement action against to Pipeline within 60 days.  However, the Corps notes that, if it declines to pursue an enforcement action within 60 days, it does not waive any right to seek such an enforcement action in the future.  The Corps retains the ability to exercise its enforcement discretion to adapt its enforcement recommendations based on new information.  Therefore, in its discretion the Corps may elect to take enforcement action at any time, or defer making a decision on enforcement action until completion of the NEPA and MLA processes when it has made a decision whether a new easement is warranted.

Dated: August 31, 2020

Respectfully submitted,

JEAN E. WILLIAMS
Deputy Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

By: *Reuben Schifman*
REUBEN SCHIFMAN, NY BAR
MATTHEW MARINELLI, IL Bar 6277967
U.S. Department of Justice
Natural Resources Section

P.O. Box 7611
Benjamin Franklin Station
Phone: (202) 305-4224 (Schifman)
Phone: (202) 305-0293 (Marinelli)
Fax: (202) 305-0506
reuben.schifman@usdoj.gov
matthew.marinelli@usdoj.gov

ERICA M. ZILIOLI, D.C. Bar 488073
U.S. Department of Justice
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044
Phone: (202) 514-6390
Fax: (202) 514-8865
Erica.Zilioli@usdoj.gov
*Attorneys for the United States Army Corps of Engineers*

OF COUNSEL:
MILTON BOYD
MELANIE CASNER
U.S. Army Corps of Engineers
Office of Chief Counsel
Washington, DC

10

**CERTIFICATE OF SERVICE**

I, Reuben S. Schifman, hereby certify that on August 31, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and copies will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

*/s/ Reuben Schifman*
REUBEN S. SCHIFMAN