## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| and | ) |
| | ) |
| CHEYENNE RIVER SIOUX TRIBE, | ) |
| | ) |
| Plaintiff-Intervenor, | ) |
| | ) |
| v. | )   Case No. 1:16-cv-01534 (JEB) |
| | )   (consolidated with Cases No. |
| UNITED STATES ARMY CORPS OF | )   1:16-cv-01796  & 1:17-cv-00267) |
| ENGINEERS, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| DAKOTA ACCESS, LLC, | ) |
| | ) |
| Defendant-Intervenor. | ) |

## JOINT STATUS REPORT

On August 10, this Court directed the Corps to "submit a status report by August 31,
2020, detailing the options it is considering on vacatur, steps taken by that point, and those that
remain."  Minute Order dated August 10, 2020.  The Court also directed that, "[i]n the interim,
the parties shall discuss in good faith mitigation measures that could lessen the likelihood and
severity of any oil leak in or around Lake Oahe."  *Id*.  On August 31, 2020, the Corps submitted
the status report, including an update on the status of the Court-ordered mitigation discussion.
ECF No. 562.  On September 1, 2020, the Court ordered that "[g]iven the Corps' most recent
Status Report . . . the parties shall submit a Joint Status Report by September 8, 2020, with

1

proposals for next steps in the litigation."   Order (Sept. 1, 2020).   Pursuant to the Court's September 1, 2020 order, the Corps and Dakota Access respectfully provide the following Status Report.[1]

## I.        Corps of Engineers' Proposal

The Corps respectfully submits that additional litigation in this Court is unnecessary and inappropriate at this time.  The Corps proposes that the Court should allow the Corps' EIS and encroachment process to proceed, allow the Parties to continue a good-faith discussion of mitigation measures, and await the outcome of the proceedings in the Circuit Court that are now far advanced.

On September 4, 2020, the Corps signed and submitted to the Federal Register a notice of intent to prepare an EIS in connection with Dakota Access' application for an easement under Lake Oahe for the pipeline.   The Court has ruled that the Corps may not grant this application under the Mineral Leasing Act without this very EIS.   Further, as set forth in the Corps' August 31 Status Report, ECF 562, the Corps is proceeding with its encroachment review process.   As explained, in accord with the Corps' Real Estate Handbook, should the Corps ultimately determine that the issuance of any new MLA easement or outgrant is appropriate, the Corps must undertake an environmental review.   ECF 562 at 6.   Accordingly, the best path forward at the present time is for the Corps to focus its energy on continuing with its encroachment process and

---

[1] The Parties attempted to provide the Court with a single joint status report.  However, the need for review and coordination, combined with the holiday weekend, made it difficult for the Parties to file a single joint status report.  At approximately 5:00 p.m. Eastern Daylight Time on September 8, 2020, counsel for the Corps transmitted the below proposals to counsel for Plaintiffs.  The Corps and Dakota Access understand from Plaintiffs' emails that Plaintiffs may modify their proposal for next steps in this litigation based on the below proposals.  The Corps and Dakota Access therefore reserve the right to file an addendum to the below proposal in the event that Plaintiffs substantively modify their draft proposal.

preparing the EIS, while continuing to confer with the Tribes, Dakota Access, and other governmental agencies with respect to both monitoring and mitigation measures.

As noted in the August 31 Status Report, ECF No 562 at 7-8, the Corps is complying with this Court's directive to engage in good-faith discussions regarding mitigation measures. As previously reported, Dakota Access expressed a willingness to consider mitigation measures and invited the Tribes to suggest "specific proposed mitigation measures that you believe could further enhance DAPL's safety." ECF No. 562-5 at 1. Rather than propose specific mitigation measures, however, the Tribes stated they will not discuss mitigation measures before receiving certain information. *Id.* As set forth in Dakota Access's response to the Tribes' information request, the Tribes already possess much of the information they now claim to need prior to engaging in any discussion of mitigation measures. The Corps remains willing to consider the Tribes' request for information and any safety-enhancing mitigation measures that they believe are warranted. The Corps submits that an appropriate next step in this litigation would be for the Tribes to engage in the good-faith discussions regarding mitigation measures the Court ordered on August 10. Further proceedings in this Court, including briefing on injunctive relief, are unnecessary. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 20-5197 (D.C. Cir. Aug. 5, 2020), Doc. 1855206 at 2 (this Court should consider injunctive relief only if necessary).

The Corps respectfully submits that consideration of injunctive relief is not necessary at this time, for the following reasons. First, the Court's decision vacating the Corps' easement and ordering an EIS is being actively litigated in the District of Columbia Circuit, which expedited the appeal. Order at 3, Case No. 20-5197 (D.C. Cir. Aug. 5, 2020). The Corps, Dakota Access, and five amici filed briefs in support of the Defendants' appeal. Plaintiffs' response briefs are

due in only one week's time (by September 16, 2020), and the appeal will be fully briefed shortly thereafter. *Id*. The likelihood that the D.C. Circuit will render its decision shortly militates against additional District Court injunction briefing and upsetting the status quo that has been ongoing for over three years.

Second, that status quo—in which the pipeline has been operating has been ongoing for over three years—presents no basis to engage in a new round of injunction proceedings absent further direction from the Circuit Court. The Circuit Court stayed the order to empty the Pipeline and thus maintain the status quo, but did not direct further proceedings as Plaintiffs contend. The Circuit Court suggested that this Court may "consider additional relief," "if necessary," once the Corps "clarif[ies]" whether it "intends to allow the continued operation of the pipeline notwithstanding vacatur of the easement." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 20-5197 (D.C. Cir. Aug. 5, 2020), Doc. 1855206 at 2 ("Stay Order"). As explained above, the Corps' EIS process is ongoing and there is no need to proceed to further litigation in this Court at this time.

In the event that the Court determines that it should proceed to consider an injunction as Plaintiffs' request, the Corps respectfully submits that any such undertaking requires a motion and briefing. Plaintiffs are flatly wrong to suggest that the injunction issue has already been presented to the Court and that no further briefing is necessary. Indeed, the Circuit held that the district court did not make the findings necessary for injunctive relief. This court established at the August 10 status conference that the injunction factors as set forth in *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 158 (2010), were not fully briefed. *See* Transcript at 4 (Court: "But I don't think it's really fair to say that the issue the circuit remanded was ever in front of me. No one ever argued to me that I needed to consider the *Monsanto* factors.").

Further, there is additional information that was not before the district court previously that is now available, and should be considered, such as the declarations attached to the Corps Circuit Court filings that directly address the public interest factors. Accordingly, should this Court proceed to consider an injunction, the Corps respectfully requests that the parties be afforded three (3) business days to propose to the Court an agreed upon (or opposed) motion and briefing schedule.

## II.   Dakota Access's Position

Any further proceedings in this Court, including briefing on any motion for injunctive relief that Plaintiffs may believe is appropriate, should not occur while the Corps' encroachment process continues. The D.C. Circuit directed that this Court "consider additional relief" only "if necessary" after the Corps "clarif[ies]" whether it "intends to allow the continued operation of the pipeline notwithstanding vacatur of the easement." *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, No. 20-5197 (D.C. Cir. Aug. 5, 2020), Doc. 1855206 at 2 ("Stay Order"). The Corps has not yet done so. Instead, the agency is currently evaluating its enforcement options under its encroachment procedures. D.E. 562 at 9.

It would be premature to move forward with the possibility of injunctive relief while that process is underway. The Corps' enforcement process has not produced any final agency action that can even arguably be the subject of litigation. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (agency inaction unreviewable when action not legally required). And the outcome of the Corps' process is likely to influence how the parties frame any potential injunction that might be sought, including the associated briefing that any such motion will require. This Court thus should wait to "consider additional relief" until the Corps reaches any decision that may properly be challenged under applicable

5

principles of administrative law, including finality.  Stay Order at 2.

There also is no pressing need to move forward now.  DAPL has been operating safely for more than three years.  The odds of a large spill *ever* occurring at Lake Oahe, let alone over the next month or so, are infinitesimal.   And Dakota Access has taken steps to maintain the pipeline's safety while the Corps weighs its enforcement options.  Dakota Access has committed to the Corps that it will "continue to comply with" the conditions of the vacated easement and "provide any information the Corps requests" to inform its enforcement decision.   D.E. 562-4 at 3.   In the meantime the appeal will be fully briefed by September 30, with oral argument to be scheduled on an expedited basis.

In addition, in keeping with this Court's instructions, Dakota Access has reached out to Plaintiffs to discuss any "appropriate measures … that [Plaintiffs] believe will further enhance DAPL's safety."  D.E. 562-5 at 3.  Plaintiffs responded by demanding ten sets of technical documents (seven of which they already have and others that don't yet exist) "prior to any discussion of additional mitigation measures," while at the same time taking the position that "the only way to ensure the safety of the pipeline is to shut it down pending a full environmental review."  D.E. 562-6 at 1-2 & App. A; *see also* Exhibit 1 at 1-3 (correspondence between Dakota Access and Plaintiffs).  While this suggests that Plaintiffs will remain intransigent in the face of the process mandated by this Court's order, and will accept no additional safety measures as "appropriate"—even measures that their own experts recommended in the past—Dakota Access has "reiterate[d]" to Plaintiffs "its offer to discuss any legitimate proposals for additional mitigation measures at the Lake Oahe crossing."  Exhibit 1 at 4.

In all events, if and when the Court decides to consider any formal request by Plaintiffs for injunctive relief, the Court should order additional briefing on all of the injunction factors.  To

obtain an injunction, Plaintiffs carry the heavy burden of establishing that they have succeeded on a claim that warrants injunctive relief; that they are likely to suffer irreparable harm absent an injunction; and that the equities and the public interest support shutting down the pipeline pending remand. Plaintiffs have never attempted to make those showings. They do not even mention irreparable harm in their status report, much less explain how such harm is *likely* in light of the remote chance of a large spill at Lake Oahe. Moreover, the existing record on the equitable factors is months old and does not account for current economic circumstances that confirm the errors of Plaintiffs' prior predictions. As a result, before this Court considers injunctive relief, further briefing will be needed on all of the injunction factors.

Dated: September 8, 2020

Respectfully submitted,

JEAN E. WILLIAMS
Deputy Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

By: *Matthew Marinelli*
REUBEN SCHIFMAN, NY BAR
MATTHEW MARINELLI, IL Bar 6277967
U.S. Department of Justice
Natural Resources Section
P.O. Box 7611
Benjamin Franklin Station
Phone: (202) 305-4224 (Schifman)
Phone: (202) 305-0293 (Marinelli)
Fax: (202) 305-0506
reuben.schifman@usdoj.gov
matthew.marinelli@usdoj.gov

OF COUNSEL:
MILTON BOYD
MELANIE CASNER
U.S. Army Corps of Engineers
Office of Chief Counsel
Washington, DC

By: */s/ William S. Scherman by /s/ Matthew*
*Marinelli pursuant to permission on*
*September 8, 2020*
Miguel A. Estrada
William S. Scherman
David Debold
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
wscherman@gibsondunn.com
*Counsel for Dakota Access, LLC*

## CERTIFICATE OF SERVICE

I, Matthew Marinelli, hereby certify that on September 8, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and copies will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

*/s/ Matthew Marinelli*
MATTHEW MARINELLI

**GIBSON DUNN**

Gibson, Dunn & Crutcher LLP

1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel 202.955.8500
www.gibsondunn.com

William S. Scherman
Direct: +1 202.887.3510
Fax: +1 202.530.9557
WScherman@gibsondunn.com

David Debold
Direct: +1 202.955.8551
Fax: +1 202.530.9682
DDebold@gibsondunn.com

September 4, 2020

VIA E-MAIL

Jan E. Hasselman,
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA 98104
jhasselman@earthjustice.org

Nicole E. Ducheneaux
Big Fire Law & Policy Group LLP
1404 South Fort Crook Road
Bellevue, NE 68005
nducheneaux@bigfirelaw.com

Michael L. Roy
Hobbs, Straus, Dean & Walker, LLP
1899 L Street NW, Suite 1200
Washington, DC 20036
mroy@hobbsstraus.com

Jennifer S. Baker
Jeffrey S. Rasmussen
Patterson Earnhart Real Bird & Wilson LLP
357 S. McCaslin Blvd., Suite 200
Louisville, CO 80027
jbaker@nativelawgroup.com
jrasmussen@nativelawgroup.com

Re:   **Response to Tribes' Refusal to Discuss Additional Safety Measures at the Lake Oahe Crossing**

Dear Counsel:

We have reviewed your letter of August 28, 2020 responding to our letter inviting you to discuss any proposed operational safety measures at the Lake Oahe crossing pursuant to the District Court's August 10, 2020 order.  Minute Order of August 10, 2020, *Standing Rock Sioux Tribe et al. v. U.S. Army Corps of Eng'rs*, Case No. 1:16-cv-01534-JEB (D.D.C.) ("August 10 Minute Order") (directing the parties to undertake good faith discussions of potential "mitigation measures that could lessen the likelihood and severity of any oil leak in or around Lake Oahe").

We intend to proceed in good faith in discussing potential mitigation measures, but we have good reason to doubt that you are prepared to do the same.

*First*, you refuse to consider the comprehensive safety measures already in place, and the data that indisputably show that DAPL is one of the safest oil pipelines in the world.  Tribes' August 28, 2020 Letter at 1 ("[W]e will not engage further in that discussion.").  If we are to discuss

# GIBSON DUNN

Jan E. Hasselman
Nicole E. Ducheneaux
Michael L. Roy
Jennifer S. Baker
Jeffrey S. Rasmussen
September 4, 2020
Page 2

proposed *additional* safety measures to reduce even further the risk or impact of a spill or incident, we obviously must first consider how they could potentially add value given the safety measures *already* built into DAPL's design, construction, and operation to reduce the risk and impact of a spill or incident at the Lake Oahe Crossing.  Among other things, and as we explained in greater detail in our August 20, 2020 letter and in our many filings in this case, it is important to understand that the likelihood of a potential leak as large as (or larger than) those modeled is just once in every 200,000 years; that DAPL was constructed to exceed pipeline safety regulations; that DAPL's comprehensive leak monitoring system can detect and respond to even "pinhole" leaks in short order, reducing the volume of any potential spill or incident, no matter how unlikely; and that the Lake Oahe crossing was installed via HDD, virtually eliminating the possibility that a spill, in the highly unlikely event one should occur, could reach the waters of the Lake.

*Second*, we disagree that "in order to have any meaningful discussion about additional safety measures," you "need access to additional technical information."  Tribes' August 28, 2020 Letter at 1-2.

### A.  You have already been provided much of this information.[1]

Your second request seeks "Dakota Access LLC, Dakota Access Pipeline, North Dakota Spill Model Discussion Lake Oahe Crossing, Wood Group Mustang, Document No.: DAPL-WGM-GN000-PPL-STY-0019, Issued for Use 5-3-16."  This document is in the record of this proceeding at RAR 14959.

Your third request seeks an un-redacted version of "Dakota Access Pipeline, Facility Response Plan, Dakota Access Pipeline North Response Zone, April 2017."  An un-redacted copy of the most recent Facility Response Plan is Exhibit 8 to the Declaration of Todd Stamm In Support of Dakota Access LLC's Brief on the Question of Remedy, D.E. 509-5 in this proceeding.

Your sixth request seeks Energy Transfer's "Integrity Management Plan," and your seventh request seeks Energy Transfer's "Operations and Maintenance Manual."  The former is attached as Exhibit 1 to the Second Declaration of John Godfrey In Support of Dakota Access LLC's Brief on the Question of Remedy, D.E. 538-4 in this proceeding, and a version of the latter is in the record at RAR 4499 in this proceeding.

---

[1]  We remind you that many of these documents are subject to the protective order, and any dissemination to your "technical team" or others must be in accordance thereto.

# GIBSON DUNN

Jan E. Hasselman
Nicole E. Ducheneaux
Michael L. Roy
Jennifer S. Baker
Jeffrey S. Rasmussen
September 4, 2020
Page 3

And your fourth and fifth requests seek information related to Energy Transfer's implementation of the recommended practices in API 1173 and 1175. John Godfrey discussed this in his second declaration in this proceeding. *See* D.E. 538-4 at ¶¶17-18.

> **B.  Some of the information you requested will not help in the discussion the Court contemplated.**

For instance, your first request seeks "[t]he environmental inspection report dated March 15, 2017 referenced on page 2 of the Independent Assessment of Dakota Access Pipeline U.S. Army Corps of Engineers Easement Special Conditions" [the "P-PIC report"]. As you should know from the P-PIC report, D.E. 347-2, the referenced environmental inspection report relates to a small upland spill of drilling mud during the HDD *construction* activities (which are completed). It has nothing to do with pipeline *operations*. *See* P-PIC report at 24. In any event, the P-PIC report comprehensively summarizes the environmental inspection report (these reports are typically only a single page), so you have any information from the report that might be relevant.

Likewise, you ask for the un-redacted copy of an out-of-date Facility Response Plan when you already have the operative version (discussed above).

> **C.  You also seek information, particularly with respect to the Optimization, that does not yet exist and has nothing to do with mitigation measures for the pipeline as it will be operating during the EIS period.**

For example, your eighth and ninth requests seek, among other things, an updated "worst case discharge (WCD), and North Response Zone Facility Response Plan (FRP) produced as a result of the proposed DAPL capacity increase" and other information related to the Optimization. As you know, the proposed capacity increase has not been approved by the Illinois Commerce Commission and would take months to implement if it is approved. Neither PHMSA regulations nor the Corps' Easement conditions (which Dakota Access has voluntarily agreed to continue to comply with) require revision of the Facility Response Plan (and WCD calculation) months before a potential change is implemented. *See* 49 C.F.R. § 194.121(a) (requiring an updated response plan to be submitted every five years, or 30 days after a change to operating conditions that "would substantially affect the implementation of a response plan"); D.E. 172-11 (Corps Easement), at docket page no. 38 (requiring Dakota Access to submit any updated Facility Response Plan to the Corps "within one year after the update").

# GIBSON DUNN

Jan E. Hasselman
Nicole E. Ducheneaux
Michael L. Roy
Jennifer S. Baker
Jeffrey S. Rasmussen
September 4, 2020
Page 4


Thus, it is hard to take at face value that you want to engage in "meaningful discussion about additional safety measures," when you already have in your possession or available to you information related to *seven* of the ten items you say are needed for such discussion, and other items that you requested have no bearing on this discussion.

With most of the relevant information you requested already in your possession or available to you, there is no reason you cannot engage in good-faith discussion now.

*Finally*, we note that you are not yet ready to discuss *any* additional measures, even though Standing Rock and the "#NoDAPL Technical Consulting Team" have previously claimed that specific additional measures are needed and would be beneficial.  *See, e.g.*, RAR 7451; D.E. 433, at 21-23.  We do not understand how you could need more information before defending measures that you already told the Court are appropriate and even necessary.

Your refusal to engage notwithstanding, Dakota Access reiterates its offer to discuss any legitimate proposals for additional mitigation measures at the Lake Oahe crossing.  We remain willing to discuss any suggestions you may have regarding other mitigation measures as contemplated by the August 10 Minute Order.

Please do not hesitate to reach out if you have any questions.

Sincerely,


 /s/                                                                  /s/
William S. Scherman                        David Debold


cc:     Ben Schiffman, DOJ
         Matt Marinelli, DOJ