**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, YANKTON SIOUX TRIBE; ROBERT FLYING HAWK; OGLALA SIOUX TRIBE, | Case No. 1:16-cv-1534-JEB (and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |

STANDING ROCK SIOUX TRIBE, YANKTON
SIOUX TRIBE; ROBERT FLYING HAWK;
OGLALA SIOUX TRIBE,

                 Plaintiffs,

   and

CHEYENNE RIVER SIOUX TRIBE; SARA
JUMPING EAGLE ET AL.,

                 Plaintiff-Intervenors,

       v.

U.S. ARMY CORPS OF ENGINEERS,

                 Defendant-Cross Defendant,

   and

DAKOTA ACCESS, LLC,

                 Defendant-Intervenor-Cross
                 Claimant.

---

**MOTION FOR LEAVE TO FILE OUT-OF-TIME BRIEF OF *AMICUS CURIAE*
NORTH DAKOTA WATER USERS ASSOCIATION IN SUPPORT OF DEFENDANT-
INTERVENOR-CROSS CLAIMANT DAKOTA ACCESS, LLC**

---

The North Dakota Water Users Association ("NDWU") respectfully moves this Court for

leave to file the accompanying out-of-time amicus curiae brief in the above-captioned action.

The proposed amicus curiae brief is attached as Exhibit A to this Motion.  A proposed order

granting this Motion is attached as Exhibit B.

In accordance with Local Rule 7(m), counsel for NDWU has contacted counsel for the

parties in this case regarding the relief requested in this motion. Regarding Plaintiffs and

Intervenor-Plaintiffs Standing Rock Sioux Tribe, Yankton Sioux Tribe, Cheyenne River Sioux

Tribe, Steve Vance and Robert Hawk, NDWU counsel left voice messages and email messages but as of the time of this filing had not heard back from any of them and must presume they will oppose this motion. Undersigned counsel spoke with counsel for Plaintiff, Oglala Sioux Tribe and was informed they take no position as of now, but reserve the right to oppose after review of the brief. Regarding Defendant United States Corps of Engineers and Intervenor Defendant United States Army Corps of Engineers counsel conferred directly and neither one takes a position on the requested relief. Finally, undersigned counsel contacted counsel for Dakota Access, LLC and left a voicemail but was unable to talk to counsel by the time of this filing.

## NDWU'S INTEREST

NDWU is a non-partisan, nonprofit, statewide trade association dedicated to protect, develop, and manage North Dakota's water resources. NDWU coordinates grassroots efforts and cooperates with federal, state, and local agencies in securing authorizations and appropriations for construction of land and water development projects, which have the approval of the State of North Dakota and affected localities. The relief requested by plaintiffs will profoundly affect NDWU's members' ability to finance and construct necessary water resource development projects throughout the State of North Dakota.

NDWU, as the leading organization devoted to the protection and development of water projects throughout the State of North Dakota, wishes to participate as amicus curiae by filing a separate brief to ensure that its interests are heard.

## DESIRABILITY AND RELEVANCE OF NDWU'S AMICUS CURIAE BRIEF

The Court has broad discretion regarding whether to allow non-parties to participate as amici. *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 846 (D.D.C. 1996). Generally, the court will permit an amicus brief "if the information offered is timely and useful" or "the non-party movants have a special interest in th[e] litigation as well as a familiarity and

knowledge of the issues raised therein that could aid in the resolution of th[e] case." *Id.* (quotations omitted).

The plaintiffs' requested permanent injunction suspending operations of the Dakota Access Pipeline ("DAPL") will have significant economic consequences in the form of reduced State tax and royalty revenue that will affect all members of the NDWU and their ability to develop water projects throughout the State. This Court has previously heard from other parties about the reduction in state revenue and the impact on the oil industry, state taxes, and employment.  The NDWU brings a different perspective to this analysis, since a portion of the State's oil taxes gets deposited to a special account called the Resources Trust Fund, which operates as the primary funding mechanism for desperately needed water project development across the state.  Reduced oil tax revenues directly diminish the funding available to many NDWU members, thereby eliminating the ability of its members to provide reliable and high quality water and flood control to North Dakota communities. As the leading organization devoted to the protection, development, and management of North Dakota's water resources, NDWU is the entity best able to explain the direct impacts the District Court's order will have on much needed water projects throughout the state.

## CONCLUSION

NDWU hereby requests that the Court grant leave to file an amicus curiae brief in support of Dakota Access, LLC.

Dated:  November 25, 2020                    Respectfully submitted,


                                              /s/ *Christopher O. Murray*
                                             Christopher O. Murray (Bar No. 61490)


                                             Counsel for North Dakota Water Users
                                             Association

4

**CERTIFICATE OF SERVICE**

I hereby certify that on this day of November 25, 2020, I electronically filed the foregoing document using the CM/ECF system.  Service was accomplished by the CM/ECF system.

/s/ *Christopher O. Murray*
Christopher O. Murray (Bar No. 61490)

Counsel for North Dakota Water Users
Association

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, YANKTON SIOUX TRIBE; ROBERT FLYING HAWK; OGLALA SIOUX TRIBE,<br><br>          Plaintiffs,<br><br>  and<br><br>CHEYENNE RIVER SIOUX TRIBE; SARA JUMPING EAGLE ET AL.,<br><br>          Plaintiff-Intervenors,<br><br>     v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>          Defendant-Cross Defendant,<br><br>  and<br><br>DAKOTA ACCESS, LLC,<br><br>          Defendant-Intervenor-Cross Claimant. | Case No. 1:16-cv-1534-JEB<br>(and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |

**AMICUS BRIEF OF NORTH DAKOTA WATER USERS ASSOCIATION IN SUPPORT OF DEFENDANT-INTERVENOR-CROSS CLAIMANT DAKOTA ACCESS, LCC**

Christopher O. Murray (Bar No. 61490)
Brownstein Hyatt Farber
Schreck, LLP
410 17th Street
Denver, CO 80202
Telephone: (303) 223-1183
Email: cmurray@bhfs.com

*Counsel for Amicus Curiae*
*North Dakota Water Users Association*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to LCvR 7(o)(5), the North Dakota Water Users Association ("NDWU") discloses that it is a nonprofit trade association representing various entities involved in all aspects of water resource development projects throughout the State of North Dakota. NDWU has no parent corporation and no public company owns a ten percent or greater ownership interest in NDWU.

Dated: November 25, 2020                    /s/ *Christopher O. Murray*_____
                                             Christopher O. Murray

**TABLE OF CONTENTS**

Page

STATEMENT OF INTEREST OF AMICUS CURIAE ................................................................1

ARGUMENT ..........................................................................................................................1

I.      Shutting down the Dakota Access Pipeline will harm the members of the North
        Dakota Water Users Association and the communities that they serve............................. 1

CONCLUSION.......................................................................................................................5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed. 2d 641 (2006)..........................................................1

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)...................................................................................................................1

**Other Authorities**

FM Area Diversion Project, "How is it funded?" https://fmdiversion.gov/about-
    the-project/ ................................................................................................................................4

FM Area Diversion Project, "Why is the Project Needed?"
    https://fmdiversion.gov/about-the-project/#why-is-it-needed ..................................................3

Mouse River Plan, "Project History" https://www.mouseriverplan.com/project-
    history .......................................................................................................................................4

Mouse River Plan, "Why do we need it?" https://www.mouseriverplan.com/why-
    do-we-need-it ...........................................................................................................................4

N.D. Legislative Council, *2019-21 Biennium Oil and Gas Tax Revenue –
    Allocation Flowchart* (June 2019) ...........................................................................................2

N.D. State Water Commission July 16, 2020 Meeting, Project Summary....................................2

Red River Valley Water Supply Project, "History"
    http://www.rrvwsp.com/about/history/ ....................................................................................3

Red River Valley Water Supply Project, "System Participants"
    http://www.rrvwsp.com/about/participants/ ............................................................................3

**STATEMENT OF INTEREST OF AMICUS CURIAE**

The North Dakota Water Users Association ("NDWU") is a non-partisan, nonprofit, statewide trade association dedicated to protect, develop, and manage North Dakota's water resources. NDWU coordinates grassroots efforts and cooperates with federal, state, and local agencies in securing authorizations and appropriations for construction of land and water development projects, which have the approval of the State of North Dakota and affected localities. As the leading organization devoted to the protection, development, and management of North Dakota's water resources, NDWU is best able to explain the devastating impacts a shutdown of the Dakota Access Pipeline will have on water projects throughout the state.[1]

**ARGUMENT**

I.    **Shutting down the Dakota Access Pipeline will harm the members of the North Dakota Water Users Association and the communities that they serve.**

The impacts to NDWU members discussed in this brief demonstrate that third parties will suffer significant harms if the pipeline is shut down and that the public interest favors a ruling denying the Tribes' motion for a permanent injunction. "An injunction is a drastic and extraordinary remedy, which should be not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). The standard for an injunction requires consideration of whether the economic harm from shutting the pipeline down would be outweighed by the unlikely injury to the Tribes. *Id*. at 156-57 (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed. 2d 641 (2006)). This brief shows both highly disruptive consequences and severe economic harm from a shutdown of this pipeline. If the Dakota Access Pipeline ("DAPL") is required to cease operations, North Dakota

---

[1]   Counsel for North Dakota Water Users Association ("NDWU") hereby certifies that no person or entity other than NDWU and its counsel authored this brief in whole or in part, and no other person or entity other than NDWU and its member entities funded the preparation of the brief.

communities will be harmed by delays or cancellations of important water infrastructure projects. Many, if not most, communities throughout North Dakota are served in some way by a member of the NDWU, through the provision of municipal, rural or industrial water supply, flood protection, or irrigation development. NDWU's members receive much of their funding through the North Dakota's Resource Trust Fund ("RTF"), which is funded by a portion of the State's oil and gas tax. N.D. Legislative Council, *2019-21 Biennium Oil and Gas Tax Revenue – Allocation Flowchart* (June 2019), https://www.legis.nd.gov/files/fiscal/2019-21/docs/21_9003_01000.pdf.

Shutting down DAPL, which provides a significant portion of this tax revenue, will have devastating impacts on some of NDWU's members, limiting access to reliable, high quality potable water for some members, and in turn, undercutting the ability of those communities to provide water needed for sanitation and hygiene as well as drinking. Other NDWU members have suffered significant community devastation from flooding and remain vulnerable to future flood damage without much-needed flood-improvement projects funded by the RTF. A shortfall in RTF funding for NDWU-sponsored projects will also lead to economic curtailment in the agricultural industry, which is one of the top economic engines in the state, after oil and gas development. Agricultural property values and production will suffer due to limited funding for drainage projects for flooded farmland and limitations on irrigation development in the arid areas of the state.

This biennium, the State of North Dakota has budgeted $128 million for municipal and regional water supply, $37.2 million for rural water systems, $27.1 million for general water management, and $197 million in flood control for a total of $389.3 million. N.D. State Water Commission July 16, 2020 Meeting, Project Summary, 12-15,

https://www.legis.nd.gov/assembly/66-2019/documents/19-0233-05000.pdf.      Many of these

projects will be delayed or tabled if the requisite RTF funding is no longer available due to the

oil taxes plummeting due to shutting down the DAPL pipeline operations.

One water supply project in particular, the Red River Valley Water Supply Project

(RRVWSP), is a $1.19 billion water supply project that will provide water to areas of the state

that includes almost 50% of the state's population. Red River Valley Water Supply Project,

"System Participants," http://www.rrvwsp.com/about/participants/.      The RRVWSP was

authorized as a federal project in 2001 and has been in the process of environmental review and

design since that time, ultimately transitioning to a state and local project in 2011.  Red River

Valley Water Supply Project, "History," http://www.rrvwsp.com/about/history/. This long-

awaited and much-needed project heavily relies on funding from the RTF. The RRVWSP is an

important way to protect North Dakota communities from potential impacts of drought such as

those suffered during the 1930s.

After years of planning, the RRVWSP is scheduled to start construction this fall.  If the

pipeline is shut down during construction or delayed as a result of an order by this court, many

local jurisdictions who are invested in RRVWSP would be unable to afford the local cost-share

without the financial assistance provided by the State's additional revenues.   The adverse

impacts to members of the NDWU and the communities they serve far outweigh the speculative

harm to the Tribes from a pipeline that has been in service without incident for over three years.

The RTF also provides a majority of the funding for large flood control projects currently

under construction in North Dakota.  The Fargo-Moorhead Diversion project, a $2.75 billion

project (2018 dollars), will protect more than 235,000 people from flooding in an area that has

seen multiple "100-year floods" within the past 12 years.  FM Diversion Project, "Why is the

Project Needed?" https://fmdiversion.gov/about-the-project/#why-is-it-needed. The State has committed $750 million to the construction of this project. FM Diversion Project, "How is it funded?" https://fmdiversion.gov/about-the-project/. The funding comes from the RTF, which will be in jeopardy if DAPL is shut down.

In another part of the state, funding is being used by the Mouse River Enhanced Flood Protection Project (MREFPP), a $1 billion project originating in response to a 2011 flood that cost the region $690 million. Mouse River Plan, "Project History," https://www.mouseriverplan.com/project-history. Numerous roads were under water and impassable for months after that flood. Mouse River Plan, "Why do we need it?", https://www.mouseriverplan.com/why-do-we-need-it. This project is another example of large water infrastructure projects that impact hundreds of thousands of North Dakota citizens. The shutdown of DAPL will reduce funding available to continue construction on these important projects, along with a host of smaller projects that are critical to economic vitality, life and livelihood in other parts of the state.

NDWU submits this *amicus* brief to separately address how other parties, including its members, will be harmed from a pipeline shutdown and how the public interest favors the pipeline's continued operation. Simply put, NDWU and its members rely on state funding that is generated by taxes on the oil and gas industry. As has been explained by other parties and *amici* in this case, DAPL transports roughly 40% of North Dakota's oil production. ECF 537-1, ¶ 9. Shutting down DAPL would decimate state revenues and, in turn, diminish the RTF. ECF 504-1, ¶ 10. If the RTF is diminished, NDWU members would be unable to fund many of the necessary water infrastructure projects slated to be constructed in the coming years. Budgetary shortfalls associated with the shutdown of DAPL will have real impacts on the state's citizens, far beyond

the oil industry.  Shutting down the DAPL pipeline will impact revenue that is vital to North

Dakota communities because it funds needed projects, including the crucial water supply and

flood protection projects discussed in this brief.

## CONCLUSION

For the reasons outlined above, NDWU urges this Court to DENY the Tribes' motion for

a permanent injunction.


Dated: November 25, 2020                              Respectfully submitted,


                                                       /s/ *Christopher O. Murray*
                                                      Christopher O. Murray (Bar No. 61490)


                                                      Counsel for North Dakota Water Users
                                                      Association

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document complies with LCvR 7(o)(4) because it does

not exceed 25 pages.

/s/ *Christopher O. Murray*
Christopher O. Murray (Bar No. 61490)


Counsel for North Dakota Water Users
Association

**CERTIFICATE OF SERVICE**

I hereby certify that on this day of November 25, 2020, I electronically filed the foregoing document using the CM/ECF system.  Service was accomplished by the CM/ECF system.


/s/ *Christopher O. Murray*
Christopher O. Murray (Bar No. 61490)


Counsel for North Dakota Water Users
Association

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, YANKTON SIOUX TRIBE; ROBERT FLYING HAWK; OGLALA SIOUX TRIBE, <br><br>        Plaintiffs, <br><br>   and <br><br> CHEYENNE RIVER SIOUX TRIBE; SARA JUMPING EAGLE ET AL., <br><br>        Plaintiff-Intervenors, <br><br>      v. <br><br> U.S. ARMY CORPS OF ENGINEERS, <br><br>        Defendant-Cross Defendant, <br><br>   and <br><br> DAKOTA ACCESS, LLC, <br><br>        Defendant-Intervenor-Cross Claimant. | Case No. 1:16-cv-1534-JEB <br> (and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |

**[PROPOSED] ORDER GRANTING MOTION OF NORTH DAKOTA WATER USERS ASSOCIATION FOR LEAVE TO FILE OUT-OF-TIME AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANT-INTERVENOR-CROSS CLAIMANT DAKOTA ACCESS, LLC**

HAVING CONSIDERED the Motion of North Dakota Water Users Association for Leave to File an Out of Time Amicus Curiae Brief in Support of Defendant-Intervenor-Cross Claimant Dakota Access, LLC ("the Motion"), and HAVING REVIEWED the Motion and being otherwise full advised,

IT IS ORDERED that the Motion is GRANTED.

IT IS FURTHER ORDERED that the NORTH DAKOTA WATER USERS ASSOCIATION shall file its amicus brief within five days of the entry of this Order.

DATED this _____ day of _____, 2020.

_____
Honorable James E. Boasberg
United States District Judge