IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE,<br><br>   Plaintiff,<br><br>and<br><br>CHEYENNE RIVER SIOUX TRIBE,<br><br>   Plaintiff-Intervenor,<br><br>v.<br><br>U.S. ARMY CORPS OF ENGINEERS,<br><br>   Defendant-Cross Defendant,<br><br>and<br><br>DAKOTA ACCESS, LLC,<br><br>   Defendant-Intervenor – Cross Claimant. | Case No. 1:16-cv-1534-JEB<br>(and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |

**STANDING ROCK SIOUX TRIBE, CHEYENNE RIVER SIOUX TRIBE, OGLALA SIOUX TRIBE, AND YANKTON SIOUX TRIBES' RESPONSE TO SURREPLY IN OPPOSITION TO MOTION FOR PERMANENT INJUNCTION**

RESPONSE TO SURREPLY RE. MOTION
FOR CLARIFICATION AND
INJUNCTION  (No. 1:16-cv-1534-JEB)

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

INTRODUCTION

Plaintiffs Standing Rock Sioux Tribe, Cheyenne River Sioux Tribe, Oglala Sioux Tribe, and Yankton Sioux Tribe ("Tribes") respectfully file this response to the sur-reply (ECF 593) filed by Dakota Access, LLC ("DAPL") opposing the Tribes' motion for clarification and permanent injunction. The Tribes' decline to engage in another round of tit-for-tat of litigation experts, as the record is clear that closure of DAPL would involve modest and manageable impacts—as this Court has already found. DAPL's continued efforts to substantiate its claims of catastrophe rely on unsupported hearsay and exaggeration. The Tribes' case for an injunction is compelling and the motion should be granted.

ARGUMENT

I.  THE TRIBES' SUCCESS ON THE MERITS SHOULD BE THE PARAMOUNT CONSIDERATION.

The touchstone for this Court's review of the Tribes' motion should not be the economic impacts on parties who knowingly embraced the risk of relying on this controversial and unlawful pipeline. Rather, it should be the fact that the Tribes have prevailed in their legal claims against the federal government, and that their long-standing position that the project was never reviewed properly have been vindicated both by this Court and the D.C. Circuit. As of today, the pipeline is operating without a valid permit, in violation of the Mineral Leasing Act ("MLA"), 30 U.S.C. § 185, and NEPA. This Court has already ruled that the violations are so "serious" that the pipeline needs to be shut down, and nothing in DAPL's latest filing compels a different conclusion.

The Tribes' opening injunction brief placed the question of temporary shutdown in the context of both the terrible history of the U.S. Government's dispossession of the Great Sioux Nation's resources as well as its ongoing trust duty that governs its actions today. Motion (ECF

REPLY IN SUPPORT OF MOTION FOR
CLARIFICATION AND A PERMANENT INJUNCTION
(No. 1:16-cv-1534-JEB)   - 1 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

569), at 7-9.  The new administration has affirmed the principles of respect for Tribal sovereignty, and the importance of Tribal consultation.  *See Memorandum on Tribal Consultation and Strengthening Nation-to-Nation Relationships* (Jan. 26, 2021) ("The United States has made solemn promises to Tribal Nations for more than two centuries.  Honoring those commitments is particularly vital now, as our Nation faces crises related to health, the economy, racial justice, and climate change — all of which disproportionately harm Native Americans.")  However, it has chosen to allow the continued operation of the pipeline in violation of federal law and the principles it claims to follow, and has put the burden on this Court to enforce the law.  While the result is disappointing, it does not affect the legal analysis that this Court must apply—which looks first to the Tribes' success on the legal merits in weighing its request for an injunction.

II.  DAPL CONTINUES TO EXAGGERATE THE IMPACTS OF SHUTTING DOWN THE PIPELINE.

This Court has received extensive evidence from all parties, as well as many amici, on the question of the economic impacts of shutting down the pipeline.  It has already ruled twice that the impacts of shutting the pipeline, while worthy of consideration, are more modest than DAPL claims.  Vacatur Order at 17; *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 106 (D.D.C. 2017) (*"Standing Rock IV"*) (economic harm does not "weigh heavily" against vacatur).  Undeterred, DAPL now submits another round of litigation declarations supporting claims that this Court has already rejected.  In short, while DAPL previously argued that the pipeline should not be closed because the economy was doing poorly, it now argues that it should not be closed because the economy is doing well.  The Court should reject its redundant arguments anew.

RESPONSE TO SURREPLY RE. MOTION
FOR CLARIFICATION AND
INJUNCTION  (No. 1:16-cv-1534-JEB) - 2 -

*Earthjustice*
810 Third Ave., Suite 610
Seattle, WA  98104
(206) 343-7340

Independent market analysts have repeatedly confirmed the Tribes' central contention: shutting down the pipeline would have modest impacts on the basin's producers and midstream partners. A recent analysis found that shutting down DAPL "would not have a material impact on production volumes," nor would it affect ratings for Bakken producers. Hasselman Decl. Ex. 1, at 3. The analysis concludes that while crude oil production has increased somewhat relative to the 2020 collapse in the basin, it is unlikely to increase further, meaning that over half of DAPL's capacity is already accounted for via reduced production from its 2020 peak. *Id*. at 4. The report also found more than sufficient capacity in other pipelines and existing rail to handle a closure, and estimated that the price impact on Bakken producers to shift to rail would be in the $2-$4/barrel range, well below DAPL's inflated estimates and almost identical to the Tribes' expert's estimate. Fagan Rep (ECF 527-4) at 37. Ultimately, the report concluded that financial impacts would be "modest" and would present a mix of "challenges for some and potential opportunities for others"—again, precisely as the Tribes and their experts have predicted. *Id*. at 5-6. The same point was made in another analysis, finding that closure of DAPL would present significant *upsides* to other companies in the industry. Allison Good, *Dakota Access shutdown could boost Kinder Morgan, Enbridge, NuStar revenues*, S&B Market Intelligence (April 19, 2021).

DAPL's major customers also present a significantly different narrative than the one advanced in its filings. Last summer, the CEO of one of its top customers, the Hess Corporation, downplayed the impacts of shutdown on its North Dakota operations:

> If DAPL is shut in, we have the capacity to move all of our Bakken production because of the flexibility provided by our marketing capability; our [Hess Midstream LP] infrastructure and long-term commitments to multiple markets….And specifically, if DAPL were interrupted, rail would feature [in the company's transportation options], plus other pipeline systems that we move

RESPONSE TO SURREPLY RE. MOTION
FOR CLARIFICATION AND
INJUNCTION  (No. 1:16-cv-1534-JEB) - 3 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

> oil on currently….*So it would not have a major impact on moving all of our production if DAPL were shut in, and the cost to us would be a few dollars per barrel.*

Starr Spencer, *Hess raises Bakken output, has options if Dakota Access shuts down*, CEO says, S&P Global (July 29, 2020) (emphasis added).[1] Another major DAPL customer, Continental Oil, told investors on an earnings call the same thing as recently as February of this year, observing that the company was prepared for "multiple scenarios" and that if the pipeline is shut down, "we'd expect our corporatewide differentials to be adversely impacted by $1 to $2 a barrel."[2]

Moreover, while production in the Bakken rebounded from 2020 lows, the state itself predicts that production will taper off again due to the lack of investment in new wells. Sheela Tobbin, *North Dakota Sees Its One-Time Oil Gushers Stalled Until 2022*, Bloomberg News (Dec. 14, 2020) ("Wall Street has shown no signs of willingness to bankroll another shale boom. Investors had grown wary of the industry's inability to generate healthy cash flow even before this year's crash, and a growing number of institutional investors are shunning oil because of climate change concerns.").[3] This is precisely what the Tribes' expert opined. ECF 569-3 (2nd Fagan Report) ("prospects for recovery of oil production in the next one to two years are dim as oil prices remain low and the industry is starved of capital"); *see also* S&P Global Platts, *Bakken crude to be rerouted in every direction if DAPL shuts* (April 8, 2021) ("With fewer than 15

---

[1] Available at https://www.spglobal.com/marketintelligence/en/news-insights/latest-news-headlines/hess-raises-bakken-output-has-options-if-dakota-access-shuts-down-ceo-says-59656608 (last visited April 21, 2021).

[2] A transcript of the call is available here: https://www.fool.com/earnings/call-transcripts/2021/02/17/continental-resources-inc-clr-q4-2020-earnings-cal/ (last visited April 21, 2021).

[3] Available at https://www.bloomberg.com/news/articles/2020-12-14/north-dakota-sees-its-one-time-oil-gushers-stalled-until-2022 (last visited April 21, 2021).

RESPONSE TO SURREPLY RE. MOTION
FOR CLARIFICATION AND
INJUNCTION   (No. 1:16-cv-1534-JEB) - 4 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

drilling rigs active in the Bakken—which is 35 lower than the same timeframe last year—S&P Global Platts Analytics actually expects production to dip a bit more this spring even if DAPL remains open.  So a closure would have much less of an impact than during normal times.").[4]

Finally, the MHA Nation has previously supported efforts by Standing Rock Sioux Tribe and others to block construction of DAPL.  Hasselman Decl., Ex. 2.  Like plaintiff Tribes, the MHA Nation is a sovereign, and is free to change its position, although its assertions about economic impacts carry little weight if unsupported by admissible evidence.  Fox Decl., ¶ 10-11.  The Tribes have never denied that shutting down the pipeline would have impacts; however, they have emphasized that the profits of others should not come at the expense of the Tribes, especially when the law has not been followed.

III.    THE PIPELINE'S SAFETY HAS NEVER BEEN EVALUATED AS THE LAW REQUIRES.

Next, DAPL seeks yet another bite at the apple to claim that the pipeline is safe.  It even goes so far as to chastise this Court and the D.C. Circuit for finding that the Corps had not adequately assessed its safety record.  But it is DAPL that is promoting unfair comparisons.  As the Standing Rock Sioux Tribe outlined in detail in its scoping comments to the Corps on the EIS, ETP's safety record continues to raise serious red flags.  Hasselman Decl., Ex. 3.  Contrary to DAPL's one-sided presentation, the DAPL-ETCO line has suffered 12 spills, comprising 6,000 gallons of crude, during its brief lifespan.  *Id*. at 44.  The other ETP-managed pipelines tracked by Tribal safety managers from 2012 to present spilled on 290 occasions, an average of 2.9 spills per month, 32% of which were deemed "significant incidents" under federal regulations.  *Id*. at 45.  Collectively, ETP spilled 2 million gallons of hazardous liquids causing

---

[4] Available at https://www.spglobal.com/platts/en/market-insights/latest-news/oil/040821-bakken-crude-to-be-rerouted-in-every-direction-if-dapl-shuts (last visited April 22, 2021).
RESPONSE TO SURREPLY RE. MOTION
FOR CLARIFICATION AND
INJUNCTION  (No. 1:16-cv-1534-JEB) - 5 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

$90 million in property damage during this period.  Its more recent performance is barely better, reflecting little change in a broken safety culture, which is further reflected in the high number of recent enforcement actions and corrective action orders.  *Id*. at 45.  And its effort to focus on a "spills-per-mile" metric ignores that "not all pipeline miles would result in the same environmental consequences."  *Id*.  As Standing Rock has documented, ETP has significantly larger spills in more environmentally sensitive areas, including High Consequence Areas ("HCAs") similar to Lake Oahe.  DAPL is a major pipeline with a massive capacity adjacent and underneath a uniquely sensitive and important waterway, the Missouri River.  It is DAPL that is engaging in an apples-to-oranges comparison by setting it alongside minor pipelines in less sensitive locations.  *Id*.

Furthermore, notably absent from DAPL's sur-reply is any indication that it intends to delay its "optimization" plan to double the pipeline's capacity.  As the Tribes have noted, state permitting of the expansion is complete, construction is well underway, and the Corps has never confirmed that it will prevent DAPL from violating its permit by doubling crude volumes without a permit modification.  Not only is DAPL asking to continue illegal operations to mitigate economic harm, at the expense of the Tribes, it intends to compound the harm by doubling the risk and potential for catastrophic impacts.  This too supports the Tribes' request for an injunction.

Regardless, the back and forth over the company's safety record misses a crucial point: the Corps unlawfully authorized this project without fully assessing its risks and potential impacts as the law requires.  It would subvert NEPA and the MLA to allow those risks to continue while the Corps studies them, particularly in the context of this case and the history of the U.S. government's dispossession on the Tribes' resources.

RESPONSE TO SURREPLY RE. MOTION
FOR CLARIFICATION AND
INJUNCTION  (No. 1:16-cv-1534-JEB) - 6 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

CONCLUSION

For the foregoing reasons, the Tribes' motion for clarification and a permanent injunction should be granted.

Respectfully submitted this 23rd day of April, 2020.

*/s/ Jan E. Hasselman*
Jan E. Hasselman, WSBA # 29107
(*Admitted Pro Hac Vice*)
Patti A. Goldman, DCBA # 398565
Earthjustice
810 Third Ave., Suite 610
Seattle, WA 98104
Telephone: (206) 343-7340
jhasselman@earthjustice.org
pgoldman@earthjustice.org
*Attorneys for Standing Rock Sioux Tribe*

*/s/ Nicole E. Ducheneaux*
Nicole E. Ducheneaux, DC Bar No. NE001
Big Fire Law & Policy Group LLP
1404 South Fort Crook Road
Bellevue, NE 68005
Telephone: (531) 466-8725
Facsimile: (531) 466-8792
nducheneaux@bigfirelaw.com
*Attorney for Cheyenne River Sioux Tribe*

*/s/ Michael L. Roy*
Michael L. Roy (DC Bar No. 411841)
mroy@hobbsstraus.com
Jennifer P. Hughes (DC Bar No. 458321)
jhughes@hobbsstraus.com
Elliott A. Milhollin (DC Bar No. 474322)
emilhollin@hobbsstraus.com
Hobbs, Straus, Dean & Walker, LLP
1899 L Street NW, Suite 1200
Washington, DC 20036
Telephone: (202) 822-8282
Facsimile: (202) 296-8834
*Attorneys for Oglala Sioux Tribe*

RESPONSE TO SURREPLY RE. MOTION
FOR CLARIFICATION AND
INJUNCTION  (No. 1:16-cv-1534-JEB) - 7 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

/s/ Mario Gonzalez
Mario Gonzalez
Gonzalez Law Office
522 7th St. 202
Rapid City, SD 57701
Telephone: (605) 716-6355
*Of Counsel for Oglala Sioux Tribe*

/s/ Jeffrey S. Rasmussen
Jeffrey S. Rasmussen, WA #21121
(Pro Hac Vice)
Patterson Earnhart Real Bird & Wilson LLP
357 S. McCaslin Blvd., Suite 200
Louisville, CO 80027
Phone: (303) 926-5292
Facsimile: (303) 926-5293
Email: jrasmussen@nativelawgroup.com

/s/ Rollie E. Wilson
Rollie E. Wilson (D.C. Bar No. 1008022)
Patterson Earnhart Real Bird & Wilson LLP
601 Pennsylvania Avenue, NW
South Building, Suite 900
Washington, D.C. 20004
Phone: (202) 434-8903
Facsimile: (202) 639-8238
Email: rwilson@nativelawgroup.com
*Attorneys for Yankton Sioux Tribe and Robert Flying Hawk*

RESPONSE TO SURREPLY RE. MOTION
FOR CLARIFICATION AND
INJUNCTION  (No. 1:16-cv-1534-JEB) - 8 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2021, I electronically filed the foregoing STANDING ROCK SIOUX TRIBE, CHEYENNE RIVER SIOUX TRIBE, OGLALA SIOUX TRIBE, AND YANKTON SIOUX TRIBES' RESPONSE TO SURREPLY IN OPPOSITION TO MOTION FOR PERMANENT INJUNCTION with the Clerk of the Court using the CM/ECF system, which will send notification of this filing to the attorneys of record and all registered participants.

                                                */s/ Jan E. Hasselman*
                                                Jan E. Hasselman

REPLY IN SUPPORT OF MOTION FOR
CLARIFICATION AND A PERMANENT INJUNCTION
(No. 1:16-cv-1534-JEB)   - 9 -

*Earthjustice*
*810 Third Ave., Suite 610*
*Seattle, WA  98104*
*(206) 343-7340*