IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STANDING ROCK SIOUX TRIBE, | Case No. 1:16-cv-1534-JEB |
| Plaintiff, | (and Consolidated Case Nos. 16-cv-1796 and 17-cv-267) |
| and | |
| CHEYENNE RIVER SIOUX TRIBE, | |
| Plaintiff-Intervenor, | |
| v. | |
| U.S. ARMY CORPS OF ENGINEERS, | |
| Defendant-Cross Defendant, | |
| and | |
| DAKOTA ACCESS, LLC, | |
| Defendant-Intervenor-Cross Claimant. | |

**OPPOSITION OF STANDING ROCK SIOUX TRIBE, CHEYENNE RIVER SIOUX TRIBE, OGLALA SIOUX TRIBE, AND YANKTON SIOUX TRIBE TO STATE OF NORTH DAKOTA'S OPPOSED MOTION TO INTERVENE**

Plaintiffs Standing Rock Sioux Tribe, Cheyenne River Sioux Tribe, Oglala Sioux Tribe, and Yankton Sioux Tribe ("Tribes") file this memorandum in opposition to the State of North Dakota's Opposed Motion to Intervene.

## I.      INTRODUCTION

Following nearly five years of litigation in this case, over one year after this Court granted summary judgment to the Tribes, some nine months after the Court vacated the easement over Lake Oahe issued by Defendant U.S. Army Corps of Engineers ("Corps") to Defendant-Intervenor Dakota Access, LLP ("Dakota Access"), and over two months after those orders were

affirmed for the most part by the D.C. Circuit, and six months following the filing of the Tribe's

Motion for Clarification and Permanent Injunction, the State of North Dakota ("State") seeks to

intervene in this action. As justification for its belated motion, the State asserts that at the recent

status conference in this case the Corps changed its position regarding the continued operation of

the Dakota Access Pipeline ("DAPL") to the extent that the State can no longer "be confident

that the [Corps] will continue to be a zealous advocate for the continued and safe operation of

DAPL." Mem. Supp. State of North Dakota's Opposed Mot. Intervene Def. 3, ECF No. 592-1,

Apr. 19, 2021 (hereafter "Mem."). But the State does not claim that Dakota Access has either

changed its position or will no longer vigorously defend the operation of DAPL.

The State's motion to intervene should be denied because it is untimely, and because the

State's interests in the easement will not, as a practical matter, be impaired if it is denied

intervention, given both the zealousness of the defense of this action by Dakota Access, the

current status of the proceedings in this case, and the State's status as a permitted *amicus curiae*.

## II.    THE STATE IS NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT

### A.  The Motion is Untimely

#### 1.    The State Did Not Intervene for Over Four Years While the Parties Litigated the Validity of the Easement and the Potential Shutdown of DAPL

This case commenced with the filing of a complaint by the Standing Rock Sioux Tribe on

July 27, 2016. Dakota Access moved to intervene as a defendant almost immediately to protect

its interests and was granted intervention. Dakota Access, LLC's Unopposed Mot. Intervene

Supp. Def., ECF 7, Aug. 5, 2016; Minute Order, Aug. 8, 2016. The other Tribes either intervened

or filed separate actions, which were consolidated with this case by early 2017. Once the

easement was granted on February 8, 2017, the Tribes sought to vacate the easement. *E.g.*, Pl.

Standing Rock Sioux Tribe's Mem. Supp. Mot. Partial Summ. J. 44-45, ECF No. 117-1, Feb. 14,

2017. This Court granted partial summary judgment to the Tribes on June 14, 2017 and ordered further briefing on whether to vacate the easement pending a decision on remand. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 160-61 (D.D.C. 2017) ("*Standing Rock III*"). Numerous interested parties, including the North Dakota Petroleum Council, filed *amicus* briefs on the remedy issue. Br. Amicus Curiae N.D. Petrol. Council Opp'n Vacatur Remand, ECF No. 261, July 20, 2017. The Court decided at that stage not to vacate and remanded to the Corps. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 282 F. Supp. 3d 91, 109 (D.D.C. 2017) ("*Standing Rock IV*").

Following the remand, the Tribes filed motions for summary judgment, which were granted on March 25, 2020, with the Court ordering the Corps to conduct a full environmental impact study ("EIS"). *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 440 F. Supp. 3d 1, 29-30 (D.D.C. 2020) ("*Standing Rock V*"). The Court then again held a round of briefing on remedy. Many non-parties to the case, including the State, participated as *amici*. Amicus Br. State of N.D. Supp. Defs. & Opposing Vacatur Easement, ECF No. 504, Apr. 29, 20. In its *amicus* brief, the State explained its interest in the case as follows: "North Dakota is the second highest oil and gas producing state, with a significant portion of its economy and tax revenue derived from the production of oil and gas. A Court ordered shutdown of DAPL would result in a serious reduction in economic output in North Dakota and corresponding loss of tax revenue to the state." *Id*. at 1-2, ECF No. 504 at 5-6.

The Court decided to vacate the easement, and it also ordered DAPL to be shut down within thirty days. *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 471 F. Supp. 3d 71, 88 (D.D.C. 2020) ("*Standing Rock VI*"). After the Court denied a motion to stay its order pending appeal, Dakota Access filed an appeal and an emergency motion to stay pending appeal.

*Standing Rock Sioux Tribe v. United States Army Corps of Engineers*, No. 20-5197, 2020 WL 4548123, at *1 (D.C. Cir. Aug. 5, 2020) (per curiam). North Dakota filed an *amicus* brief in support of the motion to stay in the D.C. Circuit. Brief of Amicus Curiae the State of N.D. in Support of Def. Dakota Access, LLC's Motion for Stay Pending Appeal, *Standing Rock Sioux Tribe v. United States Army Corps of Engineers*, 985 F.3d 1032 (D.C. Cir. 2021) (No. 20-5197), 2020 WL 4000992. Once again, the State asserted that a shutdown would significantly impact it. *Id.* at *3 ("A shutdown will result in literally billions of dollars in losses to North Dakota's oil industry and will cause drastic reductions in North Dakota's tax revenue. State programs critical to the well-being of North Dakotans will have budgets reduced, impairing the State and its residents. Further, thousands of North Dakotans will lose employment that DAPL makes possible."). The State later filed an *amicus* brief in the D.C. Circuit at the merits stage supporting Appellant's arguments and once again emphasizing the impact of a shutdown of the pipeline to the State. Brief of Amicus Curiae State of N.D. in Supp. of Intervenor for Def.-Appellant, Dakota Access, LLC & Def.-Appellant U.S. Army Corps, *Standing Rock Sioux Tribe v. United States Army Corps of Engineers*, 985 F.3d 1032 (D.C. Cir. 2021) (No. 20-5197), 2021 WL 5250590.

While the appeal was pending, the Tribes filed their Motion for Clarification and Permanent Injunction, in which they seek a permanent injunction shutting down DAPL. Mot. Standing Rock Sioux Tribe, Cheyenne River Sioux Tribe, Oglala Sioux Tribe, and Yankton Sioux Tribe for Clarif. & a Permanent Inj., ECF No. 569, Oct. 16, 2020. That motion is now fully briefed and remains pending. The State filed an *amicus* brief opposing the motion. Amicus Br. State of N.D. in Supp. of Defs. & Opposing Pls.' Mot. for Permanent Inj., ECF No. 572, Nov. 20, 2020.

The validity of the easement to Dakota Access was at issue in this litigation from the day the easement was granted. As this Court noted when it decided not to vacate the easement following the grant of partial summary judgment to the Tribes in 2017, "Dakota Access began pumping oil into the pipeline with full knowledge that Plaintiffs were contesting the easement allowing them to do so." *Standing Rock IV*, 282 F. Supp. 3d at 104. Moreover, because the validity of the easement was at issue, so too was the continued operation of DAPL. The parties to the briefing on remedy following the grant of partial summary judgment in 2017 assumed that vacatur would result in shutting down the pipeline. U.S. Army Corps Br. Regard. Remedy 11, ECF No. 258 at 12, July 17, 2017 (arguing that vacatur would be disruptive because it would cause the oil transported by DAPL to be transported by other means); Br. Dakota Access, LLC Regard. Remedy 13, ECF No. 260 at 18, July 17, 2017 ("Halting the pipeline's operation would cause significant economic harm . . .").

Throughout this litigation, until now, the State has been content not to seek intervention, relying on the Corps and Dakota Access to defend the Corps' actions at issue in this case, coupled with filing *amicus* briefs when it saw fit.

2.   The State's Proffered Reason for Its Belated Motion Is Legally Insufficient

The State asserts that a "change in the Federal Defendant's position" announced at the status conference held April 9, 2021, "is reason to allow North Dakota to participate as a defendant," Mem. at 4, ECF No. 592-1, and that because of this so-called change of position by the Corps, the timeliness of the motion should be judged by the April 9th date of the status conference. *Id.* at 13, ECF No. 592-1. The Corps' decision not to seek *en banc* review in the D.C. Circuit cannot be deemed lack of vigorous defense, however, given that "[a]n *en banc* hearing or rehearing is not favored and ordinarily will not be ordered . . .," Fed. R. App. P. 35(a),

and that in the D.C. Circuit "petitions for rehearing *en banc* are frequently filed but rarely granted." *Handbook of Practice and Internal Procedures of the United States Court of Appeals for the District of Columbia Circuit* 58 (as amended through Mar. 16, 2021); *see* Aaron L. Nielson, *D.C. Circuit Review—Reviewed: En Banc Review*, Yale J. on Reg. Notice & Comment (Sept. 30, 2017), https://www.yalejreg.com/nc/d-c-circuit-review-reviewed-en-banc-review (D.C. Circuit decided eight cases *en banc* from January 2010 to September 30, 2017). Further, the Corps' stated position at the status conference as to a possible enforcement action against DAPL is consistent with filings in this case beginning in April 2020 in which the Corps stated that if the easement were vacated, then the pipeline would constitute an encroachment and would be subject to the Corps' policy regarding encroachments, with a range of resolutions including removal or outgrant, and further that the Corps and the Department of Justice have discretion as to enforcement of encroachments. U.S. Army Corps Br. Regard. Remedy 15, ECF No. 507 at 20, Apr. 29, 2020; U.S. Army Corps Reply Br. Regard. Remedy 11, ECF No. 536 at 16, Aug. 8, 2020; Tr. Teleconference 7-8, ECF No. 561, Aug. 10, 2020; U.S. Army Corps Status Report 3-4, ECF No. 562, Aug. 31, 2020. What changed at the April 9 status conference was not the Corps' position but that the Corps had not arrived at a definitive final decision as to whether to take enforcement action, after stating on August 10, 2020 that it expected a decision as to enforcement to be made within 60 days. Tr. Teleconference 6, ECF No. 561. Even then, however, the Corps cautioned that if it did not take enforcement action in 60 days, "in its discretion the Corps may elect to take enforcement action at any time." U.S. Army Corps Status Report 9, ECF No. 562, Aug. 31, 2020.

It is notable that the State's purported justification for its belated motion to intervene is based solely on a purported change of position by the Corps and not by Dakota Access, which

has zealously advocated for the continued operation of DAPL throughout this case, as discussed below at 10-13. Notably, although the State takes the position that the Corps' failure to file a petition for rehearing before the D.C. Circuit indicates its abandonment of a zealous defense, Dakota Access <u>did</u> file a petition for rehearing *en banc* in this case, which the D.C. Circuit denied on April 23 without a single judge calling for a vote. *Standing Rock Sioux Tribe v. U.S. Army Corps*, No. 20-5197 (D.C. Cir. Apr. 23, 2021) (*per curiam*). The State did not even bother to file an *amicus* brief supporting Dakota Access's petition for rehearing *en banc*, although it had a right to do so. Fed. R. App. P. 29(b)(2).

The proposition from *Smoke v. Norton*, 252 F.3d 468, 471 (D.C. Cir. 2001)—that timeliness is measured from the time that "the potential inadequacy of representation came into existence"—does not apply here. Even if the Corps' litigation position has changed, Dakota Access's position has not, and it continues to zealously defend the Corps' actions and the continued operation of DAPL. *See Amador Cty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901, 905-06 (D.C. Cir. 2014) (rejecting argument that motion to intervene was timely because representation had become inadequate).

The State's motion is untimely. "Timeliness is measured from when the prospective intervenor 'knew or should have known that any of its rights would be directly affected by the litigation.'" *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (quoting *Nat'l Wildlife Fed'n v. Burford,* 878 F.2d 422, 433–34 (D.C. Cir. 1989), *rev'd on other grounds sub nom. Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990). The State knew its rights were implicated at least as early as April last year following this Court's summary judgment ruling, and it certainly should have known at least <u>as early as 2017</u> when the Court held briefing on whether to vacate the easement following the grant of partial summary judgment to the Standing

Rock Sioux Tribe and Cheyenne River Sioux Tribe. At that time, *amicus* North Dakota Petroleum Council certainly knew that shutting down DAPL was at issue as it filed an *amicus* brief urging the Court not to do so. Br. Amicus Curiae N.D. Petrol. Council in Opp'n Vacatur Remand 2, ECF No. 261 at 5, Apr. 20, 2017 (brief submitted "to provide the Court with additional information on the disruptive consequences that will directly impact North Dakota oil producers should the Court vacate and require the shutdown of [DAPL].").

### B. Disposing of the Action Without the State as a Party Would Not Impede Any Legally Cognizable Interest the State Has in This Case

Given the current status of this case, the State's purported interest in the continued operation of DAPL would not be impeded by denying the State's motion to intervene. Although the State says that it seeks intervention to address the *Monsanto* factors, Mem. at 20, ECF No. 592-1, briefing on the injunction motion is completed, and the State has also indicated it would seek no further briefing. *Id.* at 2 ("North Dakota seeks no additional or special briefing privileges . . ."). In fact, the State filed an *amicus* brief opposing the Tribes' injunction motion. Amicus Br. State of N.D. Supp. Defs. & Opposing Pls. Mot. Perm. Inj., ECF No. 572, Nov. 20, 2020.

In the event that there is further briefing in this Court following a decision on the injunction motion—for example, a motion to stay the Court's order pending appeal—the State may participate as an *amicus curiae*, as it has in the past. LCvR 7(o) ("[A] state may file an *amicus curiae* brief without the consent of the parties or leave of Court."). In its vacatur decision, the Court cited the State's briefs and declarations explicitly:

> Specifically, Dakota Access estimates, "producers would have to shut-in between 3,460 and 5,400 wells, stranding up to 34.5% of North Dakota crude production." [Dakota Access Brief] at 36; see also, e.g., North Dakota Br. at 8 (estimating that "[e]ach of those wells represents 1.6 full time jobs") (citing ECF No. 504-2 (Declaration of Lynn Helms), ¶ 10). This would also have a reverberating effect on the state of North Dakota, whose economy derives a large part of its revenue from oil and gas taxes, largely from the Williston Basin, which includes the Bakken fields that supply DAPL. See North Dakota Br. at 2–3; DA Remedy Br. at 4; see

also North Dakota Br. at 2 (explaining that "despite the small overall size of North
Dakota's economy, [it] is a large producer of oil and natural gas").

*Standing Rock VI*, 471 F. Supp. 3d at 83. Participation as *amicus curiae* should be sufficient to

protect the State's interests. *See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.,* No.

CIV.A. 83-3347, 1988 WL 64960, at *2 (D.D.C. June 13, 1988) (denying intervention as of right

to State of Missouri on issue of state law because "[i]ntervention is not necessary . . . . Missouri

will have a full opportunity to present its position on this issue as *amicus curiae*.").

Similarly, in the event of an appeal of the injunction ruling, the State may assert its

position as to the impact of any shutdown on it in the Court of Appeals through *amicus* briefs, as

it did previously. Fed. R. App. P. 29(a)(2) ("[A] state may file an amicus brief without the

consent of the parties or leave of court.").

The State does not claim that it should be granted intervention in order to be able to

appeal if the Defendants do not appeal an injunction. In fact, it anticipates that any decision will

be appealed. Mem. at 14, ECF No. 592-1 ("Regardless of this Court's decision on the injunctive

relief issue, it will almost certainly be appealed . . . ."). In the highly unlikely event the Court

issued an injunction and the Corps and Dakota Access decided not to appeal, the State could

renew its motion.

The State discusses the Corps' views with respect to its discretion to enforce its

encroachment policy, *id.* at 3, 12, 14, and suggests that it may be seeking to protect an interest

under the Corps' policy. As of this time, no party has brought an action or a motion to compel a

decision by the Corps or to challenge a decision of the Corps under the encroachment policy.

Moreover, at this time it is entirely speculative whether the Corps will make a decision under

that policy or what that decision would be. Therefore, intervention is unnecessary at this stage to

protect any interest the State may have as to a possible future decision by the Corp on the

encroachment by DAPL. *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 947-48 (7th Cir. 2000) (whether interest the in outcome of the administrative process was protectable under Rule 24(a) was irrelevant where what the final decision from administrative process would be was speculative).

In its Memorandum, the State did not invoke an interest in the outcome of the EIS or a the decision of the Corps on remand regarding the easement following the EIS, but if it did the answer would be the same: it is at this point speculative what the outcome would be, and there is no need to grant intervention now to protect the State's interests.

The State also asserts that it has a protectable interest as a sovereign in its own permitting and regulatory process, Mem. at 16, 18-19, ECF No. 592-1, but the State's regulatory processes are in no way implicated in this case.

### C. The State's Interests Are Adequately Protected by Dakota Access

The Corps and Dakota Access have zealously defended the Corps' actions throughout this case, and the State admits as much, stating that "until the April 9 status conference, North Dakota was reasonably confident that its interests were being adequately represented by the existing parties." *Id.* at 11. The State argues that the burden of showing inadequacy of representation is not onerous, *id.* at 13-14, but the State's actions in accepting representation by the Corps and Dakota Access in this case until now, despite the State's stated interests in the continued operation of DAPL, and its admission in its motion as to its beliefs concerning such representation until April 9, show that it has not met even this standard.

Although the State argues that the Corps is "abandoning its previously vigorous defense" of DAPL, *id.* at 2, it makes no such assertion regarding Dakota Access. Undeniably, Dakota Access has vigorously advocated for the continued operation of the pipeline throughout this litigation. As the owner and holder of the now-vacated easement, and with millions of dollars in

revenue at stake, Dakota Access has every incentive to continue to protect its interests.
Throughout this case, Dakota Access has left no stone unturned. On the same day that the Court
ordered DAPL to be shut down within 30 days, Dakota Access filed a motion to stay and a notice
of appeal. Dakota Access, LLC's Emer. Mot. Provisionally Stay Remedy Order & Set Exped.
Br'g. Sched. for Mot. Stay Pend'g Appeal, ECF No. 547, July 06, 2020; Civil Notice of Appeal,
ECF No. 548, July 6, 2020. As the Court is well aware, Dakota Access succeeded in obtaining a
stay of that order pending appeal from the D.C. Circuit, *Standing Rock Sioux Tribe v. United
States Army Corps of Engineers*, No. 20-5197, 2020 WL 4548123, at *1 (D.C. Cir. Aug. 5,
2020), and a reversal of that order. *Standing Rock Sioux Tribe v. United States Army Corps of
Engineers*, 985 F.3d 103, 10532 (D.C. Cir. 2021). Just recently, Dakota Access filed a long-shot
petition for rehearing in the Court of Appeals and a sur-reply brief in opposition to the injunction
motion, Dakota Access, LLC's Surreply Opp'n Pl.'s Mot. Clarif. & Perm. Inj. ECF No. 593,
Apr. 19, 2021, supported by several new declarations, two of which directly addressed loss of tax
revenues to the State if DAPL were to shut down. Ex. 6 ¶¶ 26–27 & n.13 (Emery Supp. Dec.)
(filed under seal); Ex. 5 ¶ 5(d)(iii) (Ditzel Supp. Dec.) (filed under seal). After the D.C. Circuit
denied rehearing, and since the State filed its motion to intervene, Dakota Access filed
Intervenor-Appellant's Motion to Stay Issuance of the Mandate Pending the Filing and
Disposition of a Petition for a Writ of Certiorari, *Standing Rock Sioux Tribe v. United States
Army Corps of Engineers,* 985 F.3d 1032 (filed Apr. 29, 2021) (No. 20-5197), in which it
indicated that it intends to seek Supreme Court review of the D.C. Circuit's decision.

The State does not argue that Dakota Access has not zealously protected its interests, or
that it has in any way indicated that it will no longer do so. Rather, it asserts that it has a right to
intervene notwithstanding Dakota Access's defense of this case because the State has sovereign

interests, whereas the interest of Dakota Access are of a "more limited and commercial perspective." Mem. at 4, ECF No. 592-1. The State does not explain the discrepancy between its acknowledgment that <u>Dakota Access</u> had adequately defended the case before the <u>Corps</u>' supposed change in position on the one hand, and it suggestion that Dakota Access can no longer do so on the other. That the State may have sovereign interests does not mean that a court must find that an existing party does not adequately represent the state's interests, particularly where, as here, the State believed its interests to be adequately protected for years and there is a party that has every incentive to defend the agency's actions and has done so throughout this case. *See Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561-62 (1st Cir. 2021) ("Nor is perfect identity of motivational interests between the movant-intervenor and the government necessary to a finding of adequate representation."); *Elec. Data Sys. Fed. Corp. v. Gen. Servs. Admin.*, 629 F. Supp. 350, 353 (D.D.C. 1986) (denying Army's motion to intervene: "the Army has not demonstrated that the lack of precise parallel among their interests and those represented by the existing defendants rises to 'inadequate' representation. Any shortfalls in presentation of the Army's interests can be cured by permitting the Army to enter as *amicus*.").

Further, in opposing the shutdown of DAPL, Dakota Access has always briefed the potential impacts of a shutdown of DAPL on the State. Br. Dakota Access, LLC Regard. Remedy 23, ECF No. 260, July 17, 2017 (citing Ex. 5 ¶ 6 (Hanse Dec. 5, ECF No. 260-1)); Redacted Br. Dakota Access, LLC Regard. Remedy 38-40, ECF No. 510 at 44-46, Apr. 29, 2020 (citing Ex. I ¶ 30 (Markholm Dec.)) (tax revenues that the State would lose if the pipeline were to shut down); Resp. Dakota Access, LLC Opp'n Pls.' Mot. Clarification & Perm. Inj. 20, ECF No. 577 at 27, Nov. 20, 2020 (loss in tax revenues to the State); Dakota Access, LLC's Surreply Opp'n Pl.'s Mot. Clarif. & Perm. Inj. 5, ECF No. 593, Apr. 19, 2021 (same). Although the State

and Dakota Access may have some divergent interests, in terms of defending the continued

operation of the pipeline they are in lockstep.

## III.    THE COURT SHOULD NOT GRANT PERMISSIVE INTERVENTION

Permissive intervention should be denied as being untimely for the reasons discussed

above. Further, the Court should, in its discretion, deny permissive intervention given that

Dakota Access has zealously defended the pipeline, and will continue to do so, and that the State

may participate as *amicus curiae* in this Court and in the Court of Appeals. *See Victim Rts. L.

Ctr.*, 988 F.3d at 564 (denying permissive intervention where "the movant-intervenors did not

show that the government would not adequately protect their interests and the amicus procedure

provides sufficient opportunity for them to present their view"); *Cigar Ass'n of Am. v. U.S. Food

& Drug Admin.*, 323 F.R.D. 54, 66 (D.D.C. 2017) (denying permissive intervention where

existing parties were defending requirements proposed intervenor sought to defend "to the

fullest," and proposed intervenor could participate as *amicus*); *cf. Elec. Data Sys. Fed. Corp.*,

629 F. Supp. at 353 (denying intervention as of right by Army and GPO where their interests

were represented by existing parties, GPO was an *amicus*, and Army could participate as *amicus*

if necessary).

## CONCLUSION

For the foregoing reasons, the State of North Dakota's Opposed Motion to Intervene should be DENIED.

Dated:  May 3, 2021                    Respectfully submitted,


                                            *s/ Michael L. Roy*
                                            Michael L. Roy (DC Bar No. 411841)
                                            mroy@hobbsstraus.com
                                            Jennifer P. Hughes (DC Bar No. 458321)
                                            jhughes@hobbsstraus.com
                                            Elliott A. Milhollin (DC Bar No. 474322)
                                            emilhollin@hobbsstraus.com
                                            Hobbs, Straus, Dean & Walker, LLP
                                            1899 L Street NW, Suite 1200
                                            Washington, DC  20036
                                            202-822-8282 (Tel.)
                                            202-296-8834 (Fax)
                                            *Attorneys for Oglala Sioux Tribe*

                                            Mario Gonzalez
                                            Gonzalez Law Office
                                            522 7th St 202
                                            Rapid City, SD 57701
                                            (605) 716-6355
                                            *Of Counsel for Oglala Sioux Tribe*


                                            */s/ Jan E. Hasselman*
                                            Jan E. Hasselman, WSBA # 29107
                                            Patti A. Goldman, DCB # 398565
                                            Earthjustice
                                            810 Third Avenue, Suite 610
                                            Seattle, WA  98104
                                            Telephone:  (206) 343-7340
                                            jhasselman@earthjustice.org
                                            pgoldman@earthjustice.org
                                            *Attorneys for Plaintiff Standing Rock Sioux Tribe*

14

*/s/ Nicole E. Ducheneaux*
Nicole E. Ducheneaux, DC Bar No. NE001
*(Pro Hac Vice)*
Big Fire Law & Policy Group LLP
1404 South Fort Crook Road
Bellevue, NE 68005
Telephone: (531) 466-8725
Facsimile: (531) 466-8792
nducheneaux@bigfirelaw.com
*Attorney for Intervenor-Plaintiff Cheyenne River*
*Sioux Tribe*


*/s/ Jeffrey S. Rasmussen*
Jeffrey S. Rasmussen, WA #21121
(Pro Hac Vice)
Patterson Earnhart Real Bird & Wilson LLP
1900 Plaza Drive
Louisville, CO 80027
Phone: (303) 926-5292
Facsimile: (303) 926-5293
Email: jrasmussen@nativelawgroup.com

*/s/ Rollie E. Wilson*
Rollie E. Wilson (D.C. Bar No. 1008022)
Patterson Earnhart Real Bird & Wilson LLP
601 Pennsylvania Avenue, NW
South Building, Suite 900
Washington, D.C. 20004
Phone: (202) 434-8903
Facsimile: (202) 639-8238
Email: rwilson@nativelawgroup.com
*Attorneys for Yankton Sioux Tribe and Robert Flying*
*Hawk*